# EXHIBIT 3



U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

MKM:TH/MKP
F. #2017R01840

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

September 11, 2018

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Keith Raniere, et al.
               Criminal Docket No. 18-204 (NGG) (S-1)

Dear Judge Garaufis:

        The government respectfully submits this letter to provide the Court and defendants with a status update in advance of the status conference scheduled for September 13, 2018.

        I.      Status of Discovery and Privilege Review

             a.   Overview

        Since the defendants' arraignment on the superseding indictment in July, the government has produced approximately 410 gigabytes of discovery to all defendants, an additional approximately 6.64 terabytes of discovery to individual defendants,[1] and has made significant efforts to streamline the process of production. However, due to the volume of discovery and the necessity of conducting a privilege review on certain materials, the government anticipates that the provision of Rule 16 discovery currently in its possession will take several more months.

        By letter dated August 3, 2018, the government notified defendants that it was in possession of certain electronic evidence, including electronic devices obtained through the execution of search warrants at two properties in Clifton Park, New York. One of these

---

[1] For the reasons discussed herein, the majority of this data has been produced only to defendant Nancy Salzman.

properties is the residence of the defendant Nancy Salzman (the "Salzman Residence"), where she stored many Nxivm files. The other property is 8 Hale Drive, Halfmoon, New York, which was referred to as the "Library" by Nxivm members. Within days of the execution of the warrants on these properties, the Federal Bureau of Investigation's Computer Analysis and Response Team (CART) began the time-consuming process of imaging, indexing, processing, and searching the data that was seized. The government estimates that it is in possession of approximately 10 to 12 terabytes of electronic data. The Second Circuit has compared the capacity of one terabyte of data to that of 12 library floors' worth of books. See United States v. Ganias, 824 F.3d 199, 215 (2d Cir. 2016). The government has engaged a third-party vendor to manage searches of this electronic data as directed by the government and to facilitate production of electronic data in accessible, searchable formats to allow defense counsel the same ability to review the data. Certain defendants have specifically requested that discovery material be produced in this format, and the government believes that accommodating this request will substantially assist the defendants in preparing for trial.

In the interest of expediting the defendants' access to the voluminous electronic evidence in its possession, by letter dated August 3, 2018, the government notified all defendants of the searches conducted on the two properties and disclosed the applications for both search warrants, as well as photographs of the execution of the search warrants, including photographs of the devices seized during the course of the searches. The government requested that, to the extent any defendant objected to the disclosure of full discovery copies of such materials to all defendants, that it notify the government "as soon as possible and no later than August 8, 2018." Having received no objection, the government notified defense counsel on August 28, 2018 that discovery copies of certain materials, amounting to approximately three terabytes of data, were being made available to them. Several hours later, the government received an email by counsel for Nancy Salzman that raised an objection to the "distribution of items seized from our client—or places attributable to her—to anyone but us, unless such items are within the scope of the warrant and are established to not contain irrelevant, privileged, or otherwise confidential materials." Upon receipt of the email, the government halted production of any of these materials to any defendant other than Nancy Salzman. On September 6, 2018, counsel for Nancy Salzman for the first time clarified that she objected only to the disclosure of materials seized from the Salzman Residence and asserted no privacy interest in materials seized from the Library. Accordingly, the government intends to make available full discovery copies of devices seized from the Library to all defendants over the next several weeks or as soon as practicable, which is estimated to amount to several terabytes of data. In the meantime, the government will continue its searches of the non-privileged materials in its possession and produce the results of those searches on a rolling basis to all defendants. The material seized from the Salzman Residence will be reviewed for privilege as described below.

The government also continues to receive records from a variety of sources, including witnesses and entities located overseas. The government will continually review such records to determine whether they contain Rule 16 material (or otherwise give rise to disclosure obligations) and, if they do, disclose the records promptly.

2

b. Privilege Review

The government has engaged a privilege review team separate from the prosecutors and agents responsible for the instant prosecution and investigation (the "prosecution team") to review potentially privileged materials. To date, three defendants — Keith Raniere, Clare Bronfman and Nancy Salzman — have asserted that certain material seized by the government may contain potentially privileged communications.[2]

In response to requests by the government, defendants Raniere and Bronfman have provided lists of attorneys and law firms with whom these defendants assert they had privileged communications. Raniere has identified over 26 attorneys, Bronfman has identified over 42, and Nancy Salzman has yet to provide such a list but has indicated she may do so. The government has been in communication with counsel for each of these defendants to attempt to understand the scope of, and prepare to address, potential privilege issues, including whether the asserted privilege is the defendant's or Nxivm's.

The privilege review team is in the process of segregating potentially privileged communications, based on the lists provided to the government. The remaining material will be provided to the prosecution team to be searched and produced in discovery to all defendants. Simultaneously, the privilege review team will conduct its own review of the potentially privileged communications and coordinate with counsel for the defendants to determine if any of the materials identified as potentially privileged are in fact privileged.

II. Complex Case Designation

The government anticipates moving the Court, at the September 13, 2018 status conference, to designate this case as complex.

Under the Speedy Trial Act, any "period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the government" is excludable "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial," and the court "sets forth, in the record of the case, either orally or in writing, its reasons for [that] finding." 18 U.S.C. § 3161(h)(7)(A).

In determining whether a continuance serves the ends of justice, courts are to consider whether the case is so complex that, absent a continuance, it would be unreasonable to expect adequate preparation for trial or pretrial proceedings. See id. § 3161(h)(7)(B)(ii).

---

[2] Defendant Mack is still assessing whether there are certain materials as to which she will raise a privilege claim; however, the amount of data over which she might claim a privilege is substantially less than that of the other defendants.

3

In making that determination, courts consider "the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law." Id.

Here, each of these factors weighs in favor of a determination that complex case designation is warranted. The superseding indictment charges six defendants in a variety of crimes including a racketeering conspiracy spanning 15 years. The crimes alleged in the indictment relate to over a dozen separate schemes, including schemes involving sex trafficking, forced labor, document servitude, illegal entry, identity theft, obstruction of justice, money laundering and wire fraud. The government anticipates that the Rule 16 discovery in this case will be varied, as described above, and voluminous. Moreover, a significant portion of the discovery is in Spanish and/or consists of video or audio recordings, which requires time to review, transcribe and translate.

Accordingly, the government respectfully submits that this case is properly designated complex. See, e.g., United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1197-98 (2d Cir. 1989) (district court did not abuse its broad discretion in designating complex an eight defendant, 470-count case); United States v. Hernandez, 862 F.2d 17, 24 n.3 (2d Cir. 1988) ("It was hardly an abuse of discretion to hold a nineteen-defendant case complex."); United States v. Naseer, 38 F. Supp. 3d 269, 276 (E.D.N.Y. 2014) ("[T]he continued exclusion for purposes of the Speedy Trial Act is justified by the nature of the case, the significant amount of discovery that the government is in the process of providing to the defendant, and the importance of ensuring that both parties have time to sufficiently prepare for a fair trial."); United States v. Astra Motor Cars, 352 F. Supp. 2d 367, 369 (E.D.N.Y. 2005) ("The reason this case is designated as complex is not grounded solely on the relatively large number of defendants, but also the extraordinary volume of discovery."); see also United States v. Curanovic, 17-CR-404 (KAM), Docket Entry, October 2, 2017 (minute entry designating ten-defendant, non-racketeering case complex over one defendant's objection noting "the nature of the charges" and "the voluminous discovery"); United States v. Webb, 15-CR-252 (PKC), Docket No. 61, August 14, 2015 (minute entry designating FIFA racketeering case complex and noting "that discovery is voluminous and underway").

III.     Defendant Raniere's September 11, 2018 Letter

The government has received the defendant Raniere's September 11, 2018 letter, which raises a number of issues regarding discovery that are addressed by this letter. The government has invited counsel for each of the defendants to raise particularized questions regarding discovery, and remains available to discuss any such questions going forward.[3]

---

[3] As the government already informed defense counsel, it will provide the true names of the John and Jane Does identified in the Superseding Indictment. As to Keith Raniere's demand for Brady material, the government is aware of and will continue to comply with its Brady obligations.

4

   Although Keith Raniere seeks to keep the January 7, 2019 trial date and has not consented to the exclusion of speedy trial time, the other defendants in this case have each previously consented to the exclusion of time for the purpose of plea negotiations, discovery production and review and preparation for trial. The government has been notified that at least one co-defendant intends to do the same at this status conference. Applying Title 18, United States Code, Section 3171(h)(6), the Second Circuit has repeatedly held that "in the absence of severance, any excludable delay as to one defendant applies to all co-defendants, such that the case is governed by a unitary speedy trial clock." United States v. Curanovic, 2017 WL 4402452, 17-CR-404 (KAM), at *2 (citing United States v. Pena, 793 F.2d 486, 489 (2d Cir. 1986)). Moreover, the government notes that Keith Raniere's lead attorney is engaged on a trial that is scheduled to last from October 15, 2018 through January 1, 2019 and has informed the government and the Court's deputy that he may need a short adjournment because of the possibility that the other trial may extend into 2019.

               Respectfully submitted,

               RICHARD P. DONOGHUE
               United States Attorney

        By:  /s/
            Moira Kim Penza
            Tanya Hajjar
            Assistant U.S. Attorneys
            (718) 254-7000

cc:  Clerk of Court (NGG) (by ECF)
    Counsel of Record (by ECF)