

U.S. Department of Justice

United States Attorney
Eastern District of New York

MKM:TH/MKP
F. #2017R01840

271 Cadman Plaza East
Brooklyn, New York 11201

November 30, 2018

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Keith Raniere, et al.
      Criminal Docket No. 18-204 (S-1) (NGG) (VMS)

Dear Judge Garaufis:

  The government respectfully submits this letter to notify the Court regarding a potential conflict involving counsel for each of the defendants in the above-captioned case, except for counsel for Clare Bronfman. This potential conflict arises from the fact that the legal fees of each of the defendants in this case, except for defendant Clare Bronfman, have been, and will be continue to be, paid from an irrevocable trust to which Clare Bronfman is the primary contributor.

  The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982). See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

## BACKGROUND

I. The Superseding Indictment

  On July 23, 2018, a federal grand jury sitting in the Eastern District of New York returned a sealed superseding indictment, charging the defendants Keith Raniere, Clare Bronfman, Allison Mack, Kathy Russell, Lauren Salzman, and Nancy Salzman with participating in a long-running racketeering conspiracy, among other crimes. These charges arise out of conduct related to several pyramid-structured organizations that Raniere founded in the Albany, New York area, including NXIVM and various related entities, as well as an

organization referred to as "DOS," all of which offered purported self-help programs. As alleged in the superseding indictment, Raniere and an "inner circle" of individuals, including the defendants, comprised an organized criminal enterprise that engaged in various criminal activities with the aim of promoting Raniere and recruiting others into NXIVM and DOS for financial and personal benefits.

II. <u>Defendants' Representation Before the Court</u>

On April 13, 2018, Marc A. Agnifilo, Esq., Teny Rose Geragos, Esq., and Jacob Kaplan, Esq., attorneys with the law firm Brafman & Associates, P.C., filed notices of appearance on behalf of the defendant Keith Raniere. On April 10, 2018 and April 23, 2018, respectively, Paul DerOhanessian, Esq. and Danielle Renee Smith, Esq., attorneys from the law firm DerOhannesian & DerOhannesian, also filed notices of appearance on behalf of defendant Raniere.

On May 3, 2018, Sean Stephen Buckley, Esq. and William F. McGovern, Esq., attorneys with the law firm Kobre & Kim LLP, filed notices of appearance on behalf of defendant Allison Mack.

On July 24, 2018, Susan R. Necheles, Esq., Kathleen Elizabeth Cassidy, Esq., and Gedalia Moshe Stern, Esq., attorneys with the law firm Hafetz & Neches LLP, filed notices of appearance on behalf of the defendant Clare Bronfman. On September 27, 2018, Alexandra A.E. Shapiro, Esq. and Fabien Manohar Thayamballi, Esq., attorneys with the law firm Shapiro Arato LLP, also filed notices of appearance on behalf of defendant Bronfman.

On August 1, 2018 and October 16, 2018, respectively, Hector Diaz, Esq. and Andrea Tazioli, Esq., attorneys with the law firm Quarles & Brady, LLP, filed a notice of appearance on behalf of the defendant Lauren Salzman.

On August 3 and 7, 2018, David Stern and Robert Soloway, with the law firm Rothman, Schneider, Soloway & Stern. P.C., filed notices of appearance on behalf of defendant Nancy Salzman.

On August 15, 2018, Justine A. Harris, Esq. and Amanda Ravich, Esq., attorneys with Sher Tremonte LLP, were substituted as counsel on behalf of defendant Kathy Russell.

On November 28, 2018, Magistrate Judge Scanlon directed Michael Sullivan, Esq., counsel for Nxivm, to appear in connection with a hearing to determine the existence, scope and validity of claimed privileges.

III. <u>The Trust</u>

The government has been advised that the legal fees of the defendants in this case, as well as certain witnesses, including Nxivm the corporation, have been paid by an irrevocable trust (the "Trust"), to which defendant Clare Bronfman is the primary

2

contributor.  The government has been in contact with James Q. Walker, Esq. and Andrew Podolin, Esq. of Richards Kibbe & Orbe, LLP, who indicated that they serve as counsel to the trustee administering the Trust.  Mr. Walker informed the government that the trustee approved the reimbursement of legal fees expended by counsel for the defendants and other witnesses as long as they were, in the view of the trustee, reasonable and within certain guidelines.  Mr. Walker further stated that the grantor of the Trust, whom, based on conversations with counsel, the government understands to be the defendant Clare Bronfman, retains the ability to remove the trustee for cause.  Mr. Walker declined to provide the Trust documents to the government.

IV.     Witnesses

The government has learned that the legal fees of multiple witnesses and potential witnesses are also being paid by Bronfman or the Trust, and that there have been efforts to pay the legal fees of other witnesses.

For example, in the past several months, the government met with a witness (Witness #1), who had previously been served with a grand jury subpoena.  Witness #1 stated, among other things, that after she had been served with the subpoena, an attorney for one of the defendants provided her with the contact information of an attorney who practices in this District.  In a subsequent meeting with the attorney, the attorney explained to Witness #1 that his fees were being paid for by Clare Bronfman.  The attorney told Witness #1 that he recommended that she invoke the Fifth Amendment in response to the government's questions in the grand jury.  The attorney further stated that Witness #1 could decide not to invoke the Fifth Amendment and answer the government's questions, but that the attorney would not feel comfortable continuing to represent Witness #1.  Witness #1 then asked the attorney if she could pay his fees instead; the attorney explained that his fees were "expensive" and that he could refer her to another attorney.

## DISCUSSION

I.     Applicable Law

　　A.     Overview

The Sixth Amendment affords a criminal defendant the right to effective assistance of counsel.  See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003).  That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing.  See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).  While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict."  Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if the defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

1. Mandatory Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). The Second Circuit has recognized only two categories of conflicts that are unwaivable: where "counsel" is not admitted to the bar of any court and where counsel is implicated in the defendant's crimes.

2. Discretionary Disqualification

Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

3. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the Court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982). See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

4

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

    B.    Payment of Legal Fees by Third Parties

A conflict may arise when an attorney is paid by a third party, rather than by his or her own client:

> Ethical considerations warn against an attorney accepting fees from someone other than her client. As we stated in a different context, the acceptance of such "benefactor payments" "may subject an attorney to undesirable outside influence" and raises an ethical question "as to whether the attorney's loyalties are with the client or the payor."

United States v. Locascio, 6 F.3d 924, 932 (2d Cir. 1993) (quoting In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d 238, 248 n.6 (2d Cir. 1986) (en banc)); see also Wood v. Georgia, 450 U.S. 261, 269–70 (1981) ("Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party."); United States v. Wells, 394 F.3d 725, 733–34 (9th Cir. 2005); United States v. Arakelian, No. 04 Cr. 447 (RPP), 2005 WL 2173923, *6-7 (S.D.N.Y. Sept. 6, 2005) (describing Curcio-related inquiry related to potential benefactor payments); Moreno-Godoy v. United States, 2014 WL 1088300, at *32 (S.D.N.Y. Mar. 20,

2014) ("A conflict of interest can arise where a third party's payment of a defendant's attorney's fees leads to a theoretical division of loyalties.").[1]

"By their very nature, third-party fee arrangements create numerous ethical pitfalls into which even the most wary criminal defense attorney may stumble." United States v. Duran-Benitez, 110 F. Supp. 2d 133, 151-52 (E.D.N.Y. 2000) (citing New York Disciplinary Rule 5-107). See also Restatement § 134(1) ("A lawyer may not represent a client if someone other than the client will wholly or partly compensate the lawyer for the representation, unless the client consents . . . and knows of the circumstances and conditions of the payment."). "These ethical pitfalls become especially dangerous when a defendant's lawyer is hired and paid by 'the operator of the alleged criminal enterprise.'" Duran-Benitez, 110 F. Supp. 2d at 152 (quoting Wood, 450 U.S. at 269). In such situations, the Supreme Court wrote in Wood, there exists a "risk that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest." Wood, 450 U.S. at 269; see also In re: Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d at 248 n.6 (noting that when "the third party is the head of a criminal enterprise of which the clients are members . . . an ethical question arises as to whether the attorney's loyalties are with the client or the payor").

II.     Analysis

Because a third party is paying for the legal fees for each of the defendants in this case, except for defendant Clare Bronfman, as well as Nxivm and multiple witnesses, defendants' counsel faces a potential conflict of interest. The potential conflict is compounded by the fact that the third party funding the defense is their co-defendant, Clare Bronfman. These circumstances pose real "inherent dangers" in that the payment of legal fees by a third party—particularly a co-defendant—"may subject an attorney to undesirable outside influence" and raises an ethical question "as to whether the attorney's loyalties are with the client or the payor." Locascio, 6 F.3d at 932.

The primary concern is that this payment structure has the potential to affect defense counsel's advice, including (1) whether to seek possible leniency by cooperating with the government, including against Clare Bronfman, and (2) whether to testify in their own defense at trial, where such testimony might implicate Clare Bronfman. See, e.g., Wood, 450 U.S. at 270 ("One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest."); Amiel v. United States, 209 F.3d 195, 198–99 (2d Cir. 2000) (reasoning that if trial counsel advised defendant not to testify even though testifying was in the best interests of the defendant, to avoid inculpating

---

[1] "[A]bsent special circumstances . . . , disclosure of fee information and client identity is not privileged . . . ." In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d at 248.

6

the payor of counsel's fees, "these facts . . . would entitle appellant to relief [on an ineffective assistance claim] on the ground that trial counsel abdicated his duty of loyalty by permitting a third party who paid his fees to influence his professional judgment in representing [the defendant]" (citations omitted)); Wood, 450 U.S. at 270 ("Another kind of risk is present where, . . . the party paying the fees may have had a long-range interest in establishing a legal precedent and could do so only if the interests of the defendants themselves were sacrificed.").[2]

       These concerns are not merely theoretical, as is demonstrated by the efforts to pay the legal fees of Witness #1, who informed the government that the attorney she had been directed to stated that because he was being paid by Clare Bronfman, he would not continue to represent her, and by extension, her legal fees would not be paid, if she did not invoke the Fifth Amendment and decline to answer questions. If similar conditions are being placed on Bronfman's co-defendants, expressly or otherwise, the advice provided by their counsel might be similarly affected.

       In addition, the funds in the Trust are not unlimited and it is not clear how disbursements from the Trust for the reimbursement of legal fees will be apportioned or prioritized by the trustee. Based on their disclosures to Pretrial Services, most—if not all—of the defendants do not otherwise have the means to pay for their attorneys. Notably, counsel for the trustee advised the government that Clare Bronfman had the ability to remove the trustee "for cause," but did not provide additional detail on what would constitute cause.

       Therefore, a Curcio inquiry is appropriate to determine, as to each defendant except Clare Bronfman, (i) whether the payment of his or her legal fees by Clare Bronfman presents a conflict; (ii) the nature and extent of that conflict; and (iii) whether each defendant is willing and able to make a knowing and voluntary waiver of the conflict. The defendants should also be reminded that, if they cannot afford counsel, they need not rely on a co-defendant to pay their legal fees because counsel will be provided to them by the Court.

---

[2] See also United States v. Bernstein, 533 F.2d 775, 788 (2d Cir. 1976) ("Since the codefendants were underwriting Behar's defense, this readily apparent conflict could be seen by the court to indicate a significant probability of prejudice. The freedom of the attorney, whether in cross-examination or assertion of the defense of lack of authority, could have been inhibited and a full and uncompromised defense of his clients' interests have been seriously impaired. While neither Judge Travia nor this court in any manner questioned the integrity of Mr. Boitel or his assurance that he would give Behar full and proper representation regardless of who was paying him, the court had a special duty to make certain that any waiver was knowingly and intelligently made.").

## CONCLUSION

        For the foregoing reasons, the government respectfully requests that the Court notify the defendants of the potential conflicts described above and conduct an appropriate inquiry pursuant to Curcio. The Court should further advise each defendant regarding his or her right to conflict-free representation and determine if he or she waives those rights.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:   /s/ Tanya Hajjar
        Moira Kim Penza
        Tanya Hajjar
        Assistant U.S. Attorneys
        (718) 254-7000

cc:     Counsel of Record (by ECF)