D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
UNITED STATES OF AMERICA

**MEMORANDUM & ORDER**

-against-

18-CR-204-1 (NGG) (VMS)

KEITH RANIERE,

Defendant.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Keith Raniere has been indicted on charges of racketeering conspiracy[1]; conspiracy to cause another to engage in forced labor; wire fraud conspiracy; sex trafficking conspiracy; sex trafficking; attempted sex trafficking, and identity theft conspiracy. (Superseding Indictment (Dkt. 50) ¶¶ 14-23, 26-30, 34-40.) On November 14, 2018, he filed a second motion for release on bail pending trial, attempting to address the concerns that led this court to deny his first motion this past June. (See Def. 2d Mot. for Pretrial Release ("Def. Mot.") (Dkt. 191).) The Government opposes the motion. (Gov't Opp'n to Mot. ("Gov't Opp'n") (Dkt. 202).) For many of the same reasons that motivated the court's denial of Raniere's first motion for release (June 20, 2018 M&O ("First Bail Order") (Dkt. 46)), the court DENIES Raniere's second bail motion.

I.  **BACKGROUND**[2]

Raniere is the founder and leader of Nxivm, a for-profit self-help organization headquartered in Albany, New York, that "sells professional success training programs" relating

---

[1] This charge includes predicate acts of conspiracy to commit identity theft, conspiracy to alter records for use in an official proceeding, forced labor, trafficking and document servitude, extortion, and sex trafficking. (Superseding Indictment (Dkt. 50) ¶¶ 17-23, 26-30, 34.)

[2] A fuller summary of the government's allegations regarding Nxivm and the circumstances that led to Raniere's indictment is set forth in the First Bail Order. (See First Bail Order at 1-4.)

1

to "ethics, logical analysis, and problem-solving skills based on a patent-pending system called Rational Inquiry." (Def. Mot. at 1; see Compl. (Dkt. 1) ¶¶ 3-6.) Raniere has compared himself to Socrates in that he challenges Nxivm participants to "question, rather than blindly accept, the fundamental content of their lives." (Def. Mot. at 2.) He also claims to have had success treating people suffering from Tourette's Syndrome. (Def. Mot. at 2; Nxivm Video Ex. (undocketed).)

The Government alleges that Raniere was also the leader of an otherwise all-female secret society within Nxivm called "DOS",[3] which operates as a pyramid scheme in which more senior women in the organization (referred to as "masters") recruit more junior women (referred to as "slaves") to serve them and "masters above them in the DOS pyramid."[4] (Compl. ¶ 13; Superseding Indictment ¶¶ 1, 4.) In leading Nxivm and DOS, Raniere allegedly relied on an "inner circle" of individuals that included his fellow defendants Clare Bronfman, Allison Mack, Kathy Russell, Lauren Salzman, and Nancy Salzman. (Superseding Indictment ¶¶ 1-3.) According to the Government, this inner circle constituted an organized criminal enterprise that had a principal purpose of obtaining financial and personal benefits for the inner circle's members, including sexual partners for Raniere. (Id. ¶¶ 3-6.) Allegedly, many (but not all) DOS "slaves" were required to engage in sexual activity with Raniere. (Gov't Opp'n at 4.)

After having lived in New York his entire life and not having left the United States in years, Raniere flew to Mexico in October 2017 and again in November 2017. (Compl. ¶ 35; Def. Mot. at 7-8.) The Government avers that Raniere went back to Mexico in November 2017 in

---

[3] The Government alleges that "DOS" standards for "Dominus Obsequious Sororium," a broken Latin phrase roughly translating to "Lord/Master of the Obedient Female Companions." (Compl. ¶ 11 n.1.)

[4] Raniere does not appear to dispute that DOS exists. (See Def Mot. at 6 (referring to women who were in DOS).)

part because the New York Times had published an article in October 2017 relaying disturbing allegations about DOS, see Barry Meier, Inside a Secretive Group Where Women are Branded, N.Y. Times (Oct. 17, 2017), at A1, and the FBI had begun interviewing witnesses shortly thereafter. (Compl. ¶ 34.) Raniere claims that he traveled to Mexico only to be with his infant son and his son's mother. (Def. Mot. at 6-9.) Raniere spent time in Monterrey with his son and the boy's mother before moving to a gated resort in Puerto Vallarta,[5] where, on March 26, 2018, he was detained by Mexican authorities, deported to the United States, and arrested in connection with this case. (First Bail Order at 3; Def. Mot. at 6-9.) On April 13, 2018, Magistrate Judge Steven Tiscione entered an order of detention without prejudice to Raniere's presentation of a bail package. (Apr. 13, 2018, Min. Entry; Order of Detention (Dkt. 13).)

On June 5, 2018, Raniere moved for his release pending trial, subject to a number of conditions, including a $10 million bond and home confinement with round-the-clock supervision by two armed guards. (Def. 1st Mot. for Pretrial Release (Dkt. 43).) The court held a hearing and denied his motion without prejudice on June 12, 2018 (see Tr. of June 12, 2018, Hr'g ("Hr'g Tr.") (Dkt. No. Pending)), explaining its reasoning more fully in a written order dated June 20, 2018 (see First Bail Order).

On November 14, 2018, Raniere presented the court with the instant motion, which purports to address the concerns raised by the court in the prior bail proceedings. (Def. Mot.) In this motion, Raniere proposes that he be released pending trial, subject to several conditions. (Id.

---

[5] It is not clear when Raniere first moved to Puerto Vallarta. He avers that he went to the gated resort for a vacation with friends from Mexico and Albany, New York, who were "all together for the weeks leading up to 'Holy Week' in Mexico." (Def. Mot. at 9.) His son and the boy's mother visited Puerto Vallarta from March 16, 2018, until March 25, 2018, the day before Raniere was arrested. (Id.) They flew back to Monterrey on March 25 without Raniere so that the boy could continue his "language development at a school in Monterrey." (Id.; see Flight Itinerary (Dkt. 191-3).) Raniere stayed in Puerto Vallarta to continue vacationing with his friends. (Def. Mot. at 9.)

3

at 3-4.) First, he would sign a $1 million bond. (Id. at 3.) The bond would be secured by three properties, with the owners of those properties (none of whom are Raniere) signing the bond. (Id.) Several other people—the identities of whom would be provided to the Government and the court in advance of any hearing—would also sign the bond.[6] (Id. at 4.) Second, Raniere would be on home confinement in Clifton Park, New York, electronically monitored by a GPS device. (Id.) He would not communicate with anyone—aside from his attorneys and their staffers—without his attorneys present. (Id.) Raniere would have access to a computer in order to review the discovery provided in this case, but no internet access. (Id.) Finally, he would surrender his passport and agree not to seek new travel documents. (Id.)

## II. LEGAL STANDARD

Pretrial detainees have a right to bail under both the Eighth Amendment to the United States Constitution, which prohibits the imposition of "[e]xcessive bail," as well as the Bail Reform Act, 18 U.S.C. § 3141 et seq. Under the latter, the court must release a defendant "subject to the least restrictive further condition, or combination of conditions, that [it] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(c)(1)(B). Only if, after considering the factors set forth at 18 U.S.C. § 1342(g), the court determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community" may the court order the defendant to be held without bail. Id. § 3142(e)(1).[7]

---

[6] In another motion dated August 28, 2018, Raniere requested that the court seal the names of potential co-signers and grant a limited courtroom closure in which the co-signers could be vetted by the Government and the court in a non-public setting. (Def. Mot. to Seal (Dkt. 116).)

[7] As the court has already held one detention hearing, it need not hold another unless "'information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue' of whether pretrial

4

If, however, there is probable cause to find that the defendant committed an offense specifically enumerated in § 3142(e)(3), a rebuttable presumption arises "that no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of the community or others. Id. § 3142(e)(3).[8] Where such a rebuttable presumption arises, "the defendant 'bears a limited burden of production . . . to rebut that presumption by coming forward with evidence that he does not pose a danger to the community or a risk of flight.'" United States v. English, 629 F.3d 311, 319 (2d Cir. 2011) (quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)); see also United States v. Rodriguez, 950 F.2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."). If the defendant offers such evidence, the presumption favoring detention does not fall away but "remains a factor to be considered among those weighed by the district court" under 18 U.S.C. § 3142(g). English, 629 F.3d at 319 (quoting Mercedes, 254 F.3d at 436); see United States v. Martir, 782 F.2d 1141, 1144 (2d Cir. 1986). Even in such a "presumption case," however, "'the government retains the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community,' and 'by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight.'" English, 629 F.3d at 319 (quoting Mercedes, 254 F.3d at 436); see also Martir, 782 F.2d at 1144 ("The government retains the burden of persuasion [in a presumption case].").

---

detention is warranted." United States v. Havens, 487 F. Supp. 2d 335, 339 (W.D.N.Y. 2007) (quoting 18 U.S.C. § 3142(f)); see id. (electing not to reopen a detention hearing because the newly discovered information would not have changed the court's decision to detain the defendant pretrial).

[8] A different rebuttable presumption arises if the defendant recently committed one of certain offenses while on release pending trial. See 18 U.S.C. § 3142(e)(2). This case does not implicate this presumption.

## III. DISCUSSION

### A. Raniere Is Subject to the Presumption in Favor of Detention

Raniere concedes that he is subject to the presumption in favor of detention in this case. (Def. Mot. at 5; see Def. First Mot. for Pretrial Release at 21 n.8; Hr'g Tr. 30:3-7.) The Bail Reform Act's list of enumerated offenses includes any "offense under chapter 77 of this title for which a maximum term of imprisonment of 20 years or more is prescribed." 18 U.S.C. § 3142(e)(3)(D). That describes six of the seven offenses with which Raniere has been charged: The sex-trafficking, attempted sex-trafficking, and sex-trafficking conspiracy charges are punishable by up to life in prison, see 18 U.S.C. §§ 1591(b)(1), 1594(a), 1594(c); the wire-fraud conspiracy charge is punishable by up to 30 years' imprisonment, see 18 U.S.C. § 1343; and the racketeering and forced-labor conspiracy charges are punishable by up to 20 years' imprisonment, see 18 U.S.C. §§ 1589(d), 1594(b), 1963(a). Raniere's indictment by a grand jury establishes that there is probable cause to believe that he committed the offenses charged in the indictment. See United States v. Contreras, 776 F.2d 51, 53 (2d Cir. 1985). Accordingly, the court begins with the presumption that no condition or combination of conditions of pretrial release will reasonably assure Raniere's appearance and the safety of the community. See 18 U.S.C. § 3142(e)(3).

### B. Raniere Is a Flight Risk Notwithstanding the Proposed Conditions

Next, the court considers whether Raniere has introduced evidence rebutting the statutory presumption that he is a flight risk and a danger to the community and others. (See First Bail Order at 6.) In support of his bail motion, Raniere has submitted more information about Nxivm's training services, along with a twenty-five-minute video that purportedly demonstrates the value of Nxivm's Rational Inquiry system, particularly for people afflicted with Tourette's

Syndrome. (Def. Mot. at 1-3; Nxivm Video Ex.) Raniere has also alleged that multiple DOS members have told the government that they were not required to have sex with him. (Def. Mot. at 5-6.) Additionally, Raniere has provided more details regarding his travel in Mexico from November 2017 to March 2018, including an itinerary showing that his son and the boy's mother flew from Puerto Vallarta to Monterrey on March 25, 2018 (Flight Itinerary (Dkt. 191-3)); these details supposedly corroborate his assertion that he went to Mexico to be with his son and his son's mother, not to evade law enforcement. (Def. Mot. at 6-10.)

Raniere has carried his "limited burden of production . . . by coming forward with evidence that he does not pose a . . . risk of flight." English, 629 F.3d at 319 (citation and quotation marks omitted). The court thus turns to whether the Government has carried its ultimate burden of persuasion as to whether there are no conditions of release sufficient to reasonably assure Raniere's appearance.[9] See Rodriguez, 950 F.2d at 88.

In considering this issue, the court looks to the factors listed by 18 U.S.C. § 3142(g):

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of [18 U.S.C. §] 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

---

[9] As the court denies Raniere's motion based on a finding that he poses a flight risk, it need not decide whether he has proffered any "evidence that he does not pose a danger to the community." See English, 629 F.3d at 319 (citation and quotation marks omitted).

> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

As it did before (see First Bail Order at 8), the court finds that these factors support the conclusion that Raniere remains a flight risk notwithstanding his proposed bail conditions.

1. <u>The Nature and Circumstances of the Offense Charged</u>

In the First Bail Order, the court found that this factor weighed heavily in favor of continued detention.[10] (First Bail Order at 8-9.) As discussed above, Raniere has since been charged with four additional offenses, three of which carry maximum sentences of at least 20 years in prison. (See Superseding Indictment ¶¶ 14-23, 26-30, 34-40.) Therefore, this factor supports continued detention even more strongly than at the time of the First Bail Order. See United States v. Sabhnani, 493 F.3d 63, 76 (2d Cir. 2007) (noting that defendants had a strong motive to flee in part because they were charged with a serious crime and, if convicted, they would likely face lengthy prison terms); see also United States v. Khusanov, 731 F. App'x 19, 21 (2d Cir. 2018) (summary order) ("[A] district court does not clearly err in concluding that a defendant facing a potentially lengthy prison sentence possesses a strong motive to flee.")

---

[10] In doing so, the court noted that the first § 3142(g) factor specifically directs the court to consider whether the defendant has been charged with "a violation of [18 U.S.C. §] 1591," a sex-trafficking statute that Raniere has been charged with violating and conspiring to violate. (First Bail Order at 8 (alteration in original).) Since the First Bail Order, Raniere has also been charged with a separate count of attempting to violate that sex-trafficking statute. (Superseding Indictment ¶ 39.)

8

## 2. The Weight of the Evidence

In the First Bail Order, the court held that the second § 3142(g) factor weighed "at least weakly in favor of detention" because a grand jury had found probable cause to believe Raniere committed the three offenses he was charged with at the time and because the Government had proffered a number of text messages that appeared consistent with some of the Government's allegations regarding the nature of DOS. (First Bail Order at 9-10.) Since then, Raniere has been indicted by a grand jury on four additional counts. (See Superseding Indictment ¶¶ 14-40.) The Government claims to have significant evidence against Raniere, such as testimony from numerous witnesses (including unindicted co-conspirators), emails and text messages, video and audio recordings, and bank records. (Gov't Opp'n at 4.)[11]

As at the time of the First Bail Order, however, "there are [] reasons to proceed cautiously at this point in the proceedings." Raniere claims that the Government possesses critical exculpatory evidence related to its sex trafficking charges.[12] (Def. Mot. at 6.) He avers that the "overwhelming majority" of women in DOS did not have sex with him and that any sexual relationships he had were "entirely consensual and aggressively pursued by [his] partners." (Id.) Raniere has made no similar claims about the Government's evidence regarding the racketeering conspiracy, forced-labor conspiracy, wire fraud conspiracy, and identity theft conspiracy charges against him, however.

In sum, there appears to be ample evidence against Raniere—enough for a grand jury to indict him for seven offenses. On the flip side, Raniere alleges that the Government possesses

---

[11] One of these emails, which seems to fit the Government's theory of the case, is excerpted in the Government's opposition letter. (Gov't Opp'n at 4-5.)

[12] According to Raniere, "the government has been informed directly be multiple women during interviews that these women were in DOS and were not required to have sex with Mr. Raniere." (Def. Mot. at 6.)

9

exculpatory information regarding some (but not all) of the charges against him. Without more specifics regarding the nature of the evidence in the Government's possession, the court concludes that the second § 3142(g) factor weakly supports detention.

    3.    <u>Raniere's History and Characteristics</u>

The third § 3142 factor also supports detention, albeit perhaps not as strongly as it did in June (cf. First Bail Order at 10-15).

    *a.*    *Raniere is a flight risk*

The court previously found that Raniere's history and characteristics made him a flight risk for four reasons: (1) he likely moved to Mexico last fall and stopped using his phone at least partly to evade law enforcement; (2) he apparently has access to extensive financial resources supplied by anonymous parties; (3) he lacks personal wealth or an ordinary job that could secure a meaningful bond; and (4) he is accused of running an organization with a number of devoted adherents who could try to help him flee. (Id.) Raniere's latest motion does not cause the court to alter any of these conclusions, although the first two apply with slightly less force now than at the time of the First Bail Order.

    (1)    <u>Raniere's stay in Mexico</u>

In the First Bail Order, the court noted that Raniere had not explained why he returned to Mexico in November 2017 or why, when he did, he moved to Puerto Vallarta (which is hundreds of miles away from Monterrey, where his son and the son's mother were based). Raniere now claims that he returned to Mexico to be with his son and the boy's mother in Monterrey while the mother tried to secure a new U.S. visa. (Def. Mot. at 8.) He claims that he left Monterrey (and

10

his son) at some point after December 18, 2017, to protect his child from anti-Nxivm press,[13] and at some time thereafter[14] he went to Puerto Vallarta to socialize with friends. (Id. at 9.) While Raniere was in Mexico, he enlisted an attorney to interface with the U.S. Attorney's Office in the Northern District of New York, which supposedly demonstrates his willingness to work with authorities. (Id. at 8.)

With the benefit of these new details, the court recognizes that the FBI investigation into Nxivm was not Raniere's sole reason for moving to Mexico or for traveling to Puerto Vallarta. Nevertheless, the court continues to believe it more likely than not that his extended stay in Mexico was at least partly calculated to help him evade law enforcement. (See First Bail Order at 10-12.) Accepting that he left his son and the boy's mother in Monterrey to protect his son from anti-Nxivm press, that does not explain why he remained in Mexico for months thereafter despite having little history of international travel. Nor does it explain why he stopped using his phone and did not update authorities as to his location, which allegedly resulted in a month-and-a-half-long search culminating in his arrest in Puerto Vallarta.[15] (Gov't Mar. 26, 2018 Letter (Dkt. 4) at 6; see First Bail Order at 10-12 (explaining how Raniere had not been forthcoming with authorities about his location).) Put simply, he did not behave like someone willing to work with law enforcement.

---

[13] On December 18, 2017, an anti-Nxivm group posted photographs of Raniere in Monterrey with his son. (Def. Mot. at 9.)

[14] Raniere has not indicated whether he visited other locations in Mexico aside from Monterrey and Puerto Vallarta.

[15] Raniere contends that he used an encrypted email to prevent hacking by anti-Nxivm groups. (Def. Mot. at 9.) As the court noted in the First Bail Order, this does not explain why he stopped using his phone entirely because it is not clear how anti-Nxivm groups would have the ability to track his phone. (See First Bail Order at 11.)

(2) <u>Raniere continues to have access to substantial financial resources from anonymous third parties</u>

In the First Bail Order, the court expressed concern that Raniere had access to enormous financial resources contributed by anonymous third parties, chief among them Clare Bronfman, who has allegedly already provided Raniere with millions of dollars and access to private air travel and a private island in Fiji. (First Bail Order at 12.) One important fact has changed since the First Bail Order: Bronfman has been indicted (see Superseding Indictment ¶ 8), so she now has less ability to help Raniere flee. (See Def. Mot. at 12-13.) Nevertheless, Raniere continues to possess the means to flee because, as he acknowledges, he continues to have access to supporters with substantial resources, some of whom are in Mexico. (See Def. Mot. at 10; Gov't Opp'n at 3; see also Def. Mot. at 9 (suggesting that Raniere has friends from different parts of Mexico who gained access to a gated resort in Puerto Vallarta).) Thus, Bronfman's indictment has reduced but not eliminated the court's concern about Raniere's ability to flee. Cf. Sabhnani, 493 F.3d at 76 (finding that defendants' "ample means to finance flight" strengthened the case for detention).

(3) <u>Other reasons why Raniere is a flight risk</u>

The court previously expressed concern that Raniere's lack of personal wealth means he has little to lose if he were to flee. (First Bail Order at 12.) This has not changed. He submits that, if he fled, he would risk losing the love and respect of his friends—in particular, the love and respect of his sureties, who would lose the money they had posted for bail. (Def. Mot. at 10.) Considering the charges Raniere faces, the potential loss of love and respect is an unavailing substitute for a financial stake in his appearance. In the First Bail Order, the court also noted that Raniere was accused of running an organization with many devoted adherents

12

who could conceivably try to help him flee. (See First Bail Order at 15.) This has not changed either.

In sum, the court concludes once again that Raniere "poses a serious risk of flight if he is released pending trial." (See First Bail Order at 12.)

> b. *The proposed conditions of release do not adequately mitigate this risk*

Raniere proposes his release on a $1 million bond, secured by three properties owned by other individuals, with several people (whose identities would be provided to the government and the court) serving as sureties. (Def. Mot. at 3-4.) The Government avers that the present value of the three properties appears to be about $170,000, and the property owners are Nxivm clients (one of whom is not a United States citizen) with no personal relationship to Raniere. (Gov't Opp'n at 6.) After his release, Raniere would be on home confinement in Clifton Park, New York, and electronically monitored by a GPS device. (Def. Mot. at 4.)

As Raniere notes, this new proposal eliminates the court's previous concerns about the use of private security firms. (Def. Mot. at 4; see First Bail Order at 13-15.) Nevertheless, given Raniere's lack of a financial stake in his appearance and the relative lack of security for the bond, his proposed conditions of release do not adequately mitigate the serious risk that he may flee.

> 4. The nature and seriousness of the danger to any person or the community that would be posed by Raniere's release

As before (see First Bail Order at 15-16), the last § 3142 factor also supports detention. In light of the offenses Raniere is charged with, see United States v. Nikolow, 534 F. Supp. 2d 37, 39 (D.D.C. 2008), and the Government's representations as to how Raniere has psychologically abused DOS members, see, e.g., Gov't Opp'n at 5-6; the court continues to

13

believe "there is at least some risk that if [Raniere] is released, he may unlawfully exploit women or obstruct justice." (See First Bail Order at 16.)

### 5. The presumption in favor of detention

The court notes again that Raniere has been charged with offenses triggering a presumption of detention. While he has rebutted that presumption by introducing evidence that he is not a flight risk, the court "continue[s] to give the presumption of flight some weight by keeping in mind that Congress has found that [defendants facing charges like the ones Raniere faces] pose special risks of flight, and that a strong probability arises that no form of conditional release will be adequate to secure their appearance." See Martir, 782 F.2d at 1144; see also English, 629 F.3d at 319 ("Satisfying the burden of production does not eliminate the presumption favoring detention; it 'remains a factor to be considered among those weighed by the district court.'" (quoting Mercedes, 254 F.3d at 436)).

\* \* \*

In sum, the court concludes that the Government has once again shown that Raniere's proposed conditions are insufficient to reasonably assure his appearance. As it remains conceivable that Raniere could address the court's concerns, this denial is without prejudice to refiling a revised bail package.

## IV. CONCLUSION

Raniere's motion for release on bail (Dkt. 191) is DENIED without prejudice. Raniere's motion to seal portion of the bail proceedings (Dkt. 116) is DENIED as moot.

SO ORDERED.

Dated: Brooklyn, New York
December 5, 2018

/s Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge