UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>KEITH RANIERE, CLARE BRONFMAN, ALLISON MACK, KATHY RUSSELL, LAUREN SALZMAN, and NANCY SALZMAN,<br><br>Defendants. | Case No. 1:18 Cr. 00204-NGG<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Submitted on December 28, 2018 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF KEITH RANIERE'S MOTIONS TO DISMISS, MOTION FOR <u>BRADY</u> MATERIALS AND MOTION TO OBTAIN LIVE TESTIMONY FROM FOREIGN WITNESSES**

Marc Agnifilo, Esq.
Teny Geragos, Esq.
BRAFMAN & ASSOCIATES, P.C.
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 750-7800
Fax: (212) 750-3906

*Attorneys for Defendant Keith Raniere*

**Table of Contents**

Preliminary Statement ............................................................................................................. 1

    1.   Insufficient Allegations of Enterprise and Pattern ................................................. 2

    2.   Failure to State a Violation as to Sex Trafficking, and Duplicity ........................... 4

    3.   Lack of Grand Jury Voting Elements of Charged Offenses ................................... 6

    4.   The Government Persists in Refusing to Provide Brady Material .......................... 7

    5.   Live Video Conferencing for Foreign Witnesses ................................................... 9

Conclusion ............................................................................................................................... 9

**PRELIMINARY STATEMENT**

Everything about this case, the Government's Response included, betrays a clear reality: the prosecutors read about branding in The New York Times, spoke to different people writing books, making podcasts or starring in television dramas and endeavored to construct a criminal case from media and Hollywood-driven detritus. Central to the Government's success was keeping Raniere in prison. It accomplished this by falsely telling this Court that he escaped to Mexico when it knew he did not. The Government also falsely portrayed to the Mexican Government that it had overwhelming evidence that Raniere was a sex-trafficker—a crime with a particularly nefarious connotation in Mexico—so that Mexico, in an unprecedented and dangerous move, "deported" Raniere at gunpoint by forcibly throwing him into a police car, and later an airplane, to be flown to the U.S. to be arrested. The Government did not inform the Mexican authorities, for instance, that it possessed months of written communication between Raniere and numerous Jane Does that clearly showed a normal, consensual intimate relationship.[1]

The truth is that the sex trafficking charges that led to this misconduct are baseless, and are hanging by a thread, and the Government is still trying to cobble together a case by promising a last-minute superseding indictment. Throughout the last year, different witnesses have told the Government time and again that they were not sex trafficking victims and that Raniere is innocent. Unwilling to accept these answers, the Government in repeated interviews sought to convince these witnesses that while the witnesses may have been unaware of it, they were actually sex trafficking victims. Now, having been called on these tactics, the Government denies it ever made such statements or suggestions to any witness, and further refuses to admit that it has clear Brady

---

[1] In fact, the Government just turned the majority of this information over to the defense the week of December 7, 2018, after the formal Brady motion was made.

material. Keith Raniere again asserts his innocence to these charges. He continues to object to his being held without bail and he continues to press for this trial to commence with opening statements on March 18, 2019.

Keith Raniere has moved (i) to dismiss the RICO Conspiracy count as it fails to allege a sufficient enterprise or a horizontally-related pattern of activity; (ii) to dismiss the sex trafficking allegations in Counts 4, 5 and 6, as well as Act 8A as duplicitous and for failure to state a violation; (iii) to dismiss Acts 1A, 2A, 2B, 2C, 4, 6A, 6B and 10 as violating the principle announced in Russell v. United States, 369 U.S. 749 (1962), that felony charges must be voted by a Grand Jury; (iv) for immediate production of Brady material; and (v) for live video conferencing, or in the alternative Rule 15 depositions, for witnesses located outside the United States.[2] The Government's Memorandum in Opposition fails to sufficiently address these arguments and continues to ignore the defendants' ongoing Brady demand. Finally, the Government continues to frustrate the defendants' efforts to secure witness testimony from abroad by strategically waiting for the proverbial last minute to again supersede the indictment.

      1.      Insufficient Allegations of Enterprise and Pattern

The Government has failed to provide a satisfactory solution to the intractable problem presented by this Superseding Indictment, even assuming its baseless allegations to be true, namely how a cogent enterprise and pattern of activity can possibly exist, or be alleged, where DOS, and its alleged activities, were kept secret from non-DOS members, including certain defendants, and where the alleged activities of DOS are different in purpose, result, participants, purported victims

---

[2] Raniere joins in the motions of his co-defendants.

2

and method of commission from the other charged activities.[3] As a result, the Government fails to allege sufficient facts demonstrating relatedness among the racketeering acts precisely because the acts are clearly unrelated for purposes of RICO's pattern requirement. As set forth in Raniere's original motion (Raniere Memo at pp. 11-12), the Superseding Indictment's "means and methods" section (S.I. ¶ 6), shows division, rather than commonality, between the DOS-related acts and the non-DOS-related acts. As a result of the disparate nature of the racketeering activity, there is no horizontal relatedness of the type required by the RICO statute.

Moreover, the Government has not persuasively argued that it can rely on vertical relatedness in order to establish the relatedness element for purpose of the pattern of racketeering activity. As the case law makes clear, and as the Government does not seriously contest, vertical relatedness can be used to satisfy the pattern requirement only for enterprises in the business of committing crime, such as an organized crime family or criminal street gang. Clearly, the defendants here, regardless of how the Government seeks to mold them for purposes of constructing an enterprise, have devoted their lives to worthy causes and to impacting society in a positive manner. Therefore, because the charged enterprise, even as alleged, is not in the business of committing crime, the Government must rely on horizontal, rather than vertical, relatedness.

Regardless of the precise analysis as to the pattern of racketeering activity, the Government's failure to set forth factual allegations showing the relatedness of the racketeering acts, is fatal to Count One. See Proctor & Gamble Co. v. Big Apple Indus. Bldge., Inc., 879 F.2d 10, 15 (2d Cir. 1989)("If a pleading does not indicate the existence of both components of the

---

[3] These five factors were specifically cited in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985) as quoted in United States v. Teitler, 802 F.2d 606 (2d Cir. 1986).

3

pattern of racketeering activity, a RICO claim should be dismissed");[4] United States v. Bergrin, 650 F.3d 257 (3d Cir. 2011).

Based on the arguments in our principal memorandum and those set forth here, we ask the Court to dismiss the Racketeering Conspiracy.

    2.    <u>Failure to State a Violation as to Sex Trafficking, and Duplicity</u>

The most glaring deficiency with this Indictment relates to its abject failure to factually allege a "commercial sex act." The Government's response is that the Superseding Indictment used the phrase, "commercial sex act" and it "must be read to include facts which are necessarily implied by the specific allegations made." (Gov't Response at 52.) This decidedly unhelpful response ignores well-established case law of the Supreme Court and the Second Circuit pertaining to charges such as sex trafficking that rely on generic terms, such as "commercial sex act." The Supreme Court stated that, "(i)t is an elementary principle of criminal pleading, that where the definition of an offence…includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as the definition; but must state the species, - it must descend into particulars." Russell v. United States, 369 U.S. 749, 765 (1962) (quoting United States v. Cruikshank, 92 U.S. 542 (1875)). "An indictment not framed to apprise the defendant 'with reasonable certainty, of the nature of the accusation against him…is defective, although it may follow the language of the statute." Russell, 369 U.S. at 765 (quoting United States v. Simmons, 96 U.S. 360, 362 (1877)). "(I)t is not sufficient to set forth the offense in the words of the statute unless those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense to be punished." Russell,

---

[4] The Proctor & Gamble decision was favorably cited by, among other decisions, United States v. Private Sanitation Industry Ass'n of Nassau/Suffolk, Inc., 793 F.Supp. 1114 (E.D.N.Y. 1992) and United States v. Young & Rubicam, Inc., 741 F.Supp. 334 (D. Conn. 1990).

4

369 U.S. at 765 (quoting United States v. Carll, 105 U.S. 61 (1881)). In United States v. Urso, 369 F. Supp. 2d 254, 267 (E.D.N.Y. 2005), this Court noted that the degree and type of specificity varies on the specific charges.

As to the sex trafficking charges, the statute uses terms such as "force," "threats of force," "fraud," and "coercion" as well as "commercial sex act" which are susceptible to a wide variety of interpretations and meanings and therefore requires particularization in the charging document. This is especially true as to the term "commercial sex act" where, as here, the Government conflates social benefits allegedly related to a sex act such as "status," with economic benefits such as money or things of economic value. Most troubling, however, is the fact that the Government has sound, though unconstitutional, reasons for keeping this allegation as vague as possible. Plainly, there was no prostitution in this case, nor was there anything resembling sex for money, or sex for fame as an actress, or sex for the selling of photographs. The closest the Government gets to commercial sex is sex for love, sex for attention, sex for acceptance, sex for sex's own sake—in short, sex for many of the reasons people have been having sex since the Garden of Eden.

In sum, the Government is encouraging the Court to read the word "commercial" out of the term "commercial sex act," leaving only "sex act." At the end of the day, that is all the Government will ever prove: that people had knowing, consensual, non-commercial sex with Raniere. Acutely aware of its evidence, the Government seeks to transform a powerful, gravely punitive statute focused on appropriately punishing pimps and others who profit from the buying and selling of humans for sex into something that encompasses sex in general, without regard to

the commercial nature that makes the conduct it proscribes vile and blameworthy. The sex trafficking counts and acts are plainly deficient and should not be part of this trial.[5]

### 3. Lack of Grand Jury Voting Elements of Charged Offenses

The Government confuses the concept of RICO Conspiracy, and what is permitted when charging a conspiracy, with the Fifth Amendment requirement that a criminal defendant may not be charged with a felony absent a grand jury voting as to each and every element of the crimes in the indictment. Where a charged crime requires, for its commission, that the defendant committed a second crime, the grand jury must also vote the elements of this second crime, as the elements of the two crimes together comprise the totality of elements of the overall offense with which the defendant has been indicted. See United States v. Pirro, 212 F.3d 86, 92 (2d Cir. 2000)("If the indictment does not state the essential elements of the crime, the defendant cannot be assured that he is being tried on the evidence presented to the grand jury, or that the grand jury acted properly in indicting him"); see also United States v. Thompson, 141 F. Supp. 3d 188 (E.D.N.Y. 2015).

For the reasons set forth in our principal memorandum, the Government has failed to properly indict Acts 1A, 2A, 2B, 2C, 4, 6A, 6B and 10. The Government's response that this is a permissible way of charging a RICO Conspiracy is beside the point. The contours of conspiracy law do not redefine a criminal defendant's right to be charged with a felony only by a grand jury. By indicting these acts without the grand jury passing on all the elements of the charged offense, the Government has violated the defendant's Fifth Amendment right to be charged by a grand jury, rather than a prosecutor.

---

[5] Raniere incorporates the arguments of his co-defendants, specifically of Allison Mack, as they relate to challenges to the sex trafficking counts and acts.

6

### 4. The Government Persists in Refusing to Provide Brady Material

For months, the defense has been requesting two areas of information from the Government: (1) the broad area of exculpatory information, which has been set forth in the Affirmation attached to Raniere's principal motion; and (2) information that the Government has sought to change the answers of purported witnesses by either providing the witness with information the witness did not know, or by telling the witness certain things designed to change the witnesses' account. The Government denies that it has information in either category.[6] However, the Government's mantric statement that it "…takes seriously its obligations…and will continue to comply…" (Gov't Response, p. 62), need not be taken at face value. Unlike yoga, where a mantra is part of the process, the U.S. Constitution requires action, and in the face of specific Brady requests, especially over the course of many months, the defense believes action is required. In particular, the defense requests that the Government provide to the Honorable Vera M. Scanlon all 302 or other interview reports pertaining to (1) any witness in DOS, (2) any witness who was asked about DOS or related topics, (3) any witness who stated in substance that she was not required to have sexual contact with Raniere, or was not defrauded, forced or coerced to join DOS, and (4) any witness who stated in substance that she was not compelled to engage or did not engage in a commercial sex act. If the Government is right, and there is no Brady information in these interview reports, then they go back to the Government. If the defense is right, and there is Brady information in these reports, then they should be disclosed to the defense immediately.

---

[6] We interpret the Government's response to mean that they will not produce any more Brady material outside of what they produced the week of December 7th, including 3500 material or non-memorialized oral statements (see United States v. Rodriguez, 496 F.3d 221, 225–26 (2d Cir. 2007) (non-memorialized oral statements are discoverable under Brady)). If we interpret the Government's response incorrectly, and they will give us Brady material, although at a later date, we would like to know what date.

The Government's invocation of Shkreli, 2016 WL 8711065 at *2, is misplaced. (Gov't Response at p. 63.) In Shkreli, the Court found that the Government "made a good-faith representation to the Court and defense counsel that it recognizes and will comply with its disclosure obligations under Brady." (Gov't Response at 63 (citing Shkreli, id.)). As undersigned defense counsel in Shkreli, we agreed—and did not make a motion prior to the Court's Order in that case for witness statements—because the Government did make a good-faith effort to comply with their Brady obligations. There, a year before trial, the Government disclosed significant Brady material to defendants. Included in the Government's Brady disclosure was (1) reference to specific bates numbered Rule 16 discovery that contained exculpatory statements that negated guilt to Count Seven of the Indictment; and (2) a summary of two interviews with witnesses in which the witnesses provided exculpatory statements that negated guilt to Count Seven of the Superseding Indictment. (United States v. Shkreli, 15 CR 637, Dkt. 84, Ex. 2, Redacted Brady Disclosure.) Ironically, here, the Government asks this Court to look for guidance in that case where the Government complied early and often with their obligations under Brady.

Lastly, the Government states that it has not conducted a joint investigation with any agency listed in Mr. Raniere's brief and therefore is not required to obtain or produce any of the materials in the possession, custody or control of those agencies. Gov't Response at pp. 67-68. While counsel initially enumerated three agencies: the New York Attorney General, the New York State Police, and the New York State Department of Health, we expand our request to include all agencies that the USAO-EDNY has jointly investigated this case.

 5. Live Video Conferencing for Foreign Witnesses

The Government would have it that the defense commit to calling certain witnesses through live video conferencing or Rule 15 deposition, and that based on the defendant's witness selection,

8

the Government can then proceed into the grand jury to procure a superseding indictment. This would be unfair and unconstitutional. The Government bears the burden of proof and the burden of persuasion. The Government goes first and the defendant should not be in a position of being compelled to indicate or produce trial evidence in advance of a final indictment. Accordingly, as soon as the Government indicates that a particular indictment is the final indictment on which this trial will be held, the defense will produce its final list of witnesses as to whom it seeks video conferencing or a Rule 15 deposition.

## CONCLUSION

For these reasons, and those set forth in Raniere's November 16, 2018, Motion and supporting memorandum and affirmation, we ask for the relief set forth in each point.

Dated:     December 28, 2018
           New York, NY

Respectfully submitted,

_____
Marc Agnifilo, Esq.
BRAFMAN & ASSOCIATES, P.C.
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 750-7800
Fax: (212) 750-3906

9