UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

KEITH RANIERE,

Defendant.

No. 18-cr-204 (NGG)

**Date of service:  January 25, 2019**

**DEFENDANT KEITH RANIERE'S MOTION FOR IMMEDIATE
RELEASE OR IN THE ALTERNATIVE FOR RELEASE ON
CONDITIONS**

Marc Agnifilo, Esq.
Teny Geragos, Esq.
BRAFMAN & ASSOCIATES, P.C.
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 750-7800
Fax: (212) 750-3906

*Attorneys for Defendant Keith Raniere*

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

BACKGROUND .....................................................................................................................2

    A. Previous Bail Motion ...............................................................................................2
    B. The Government's Handling of Discovery and the Trial Date .................................2
        1. April 13, 2018 – Initial Appearance ...............................................................2
        2. May 4, 2018 – Arraignment............................................................................3
        3. June 12, 2018 – Bail Hearing .........................................................................4
        4. July 25, 2018 – Arraignment on Superseding Indictment ..............................4
        5. July 26, 2018 – August 2, 2018 – Government Rejecting Offers to Meet & Confer ............................................................................................................6
        6. The September 11, 2018 Discovery Letter ......................................................7
        7. September 14, 2018 – Status Conference .......................................................8
        8. September 14, 2018 – Status Conference – Judge Scanlon ...........................10
        9. September 27, 2018 Conference – Judge Scanlon .........................................11
        10. October 4, 2018 Status Conference – Judge Garaufis ...................................12
        11. October 2018 Search Warrants and December 6, 2018 Status Conference.....13

DUE PROCESS REQUIEST THAT RANIERE BE RELEASED ............................................15

    A. Legal Standard ......................................................................................................15
    B. Argument ..............................................................................................................16
        1. Because Raniere's Trial Has Now Been Delayed Two More Months, and Raniere Will Be Incarcerated Fifteen Months at the End of Trial, This Court Should Released...........................................................................................17
        2. The Prosecution's Responsibility for the Delay of Trial ................................17
        3. The Strength of the Evidence Upon Which Detention Was Based .................18
        4. The Relevance of Section 3164 .....................................................................19

IN THE ALTERNATIVE, THIS COURT SHOULD RELEASE RANIERE UNDER THE PROPOSED NEW CONDITIONS........................................................................................19

    A. Proposed Conditions of Release ............................................................................19
    B. The Proposed Conditions Will Assure Raniere's Appearance in Court ................20
        1. The Nature and Circumstances of the Offense Charged.................................20
        2. The Weight of the Evidence ..........................................................................21
        3. Raniere's History and Characteristics............................................................23
        4. The Nature and Seriousness of the Danger to Any person or the Community That Would Be Posed by Raniere's Release...................................................24

CONCLUSION......................................................................................................................25

**INTRODUCTION**

We respectfully submit this motion requesting Keith Raniere's release. This motion asks the Court to (1) immediately release Raniere on no conditions based on the Government's violation of 18 U.S.C. § 3164 and the Fifth Amendment's Due Process Clause or (2) in the alternative, release him on conditions as set forth below.

As to the first basis, Raniere must be released as a matter of fundamental fairness under the Due Process clause of the United States Constitution, as (1) the Government has **NEVER** stated it was ready to try this case, (2) the Government has stated repeatedly that it possessed discovery material that it was refusing to provide to an incarcerated defendant because of a "continuing investigation," and (3) the Government has engaged in a provable and intentional pattern of delay so as to avoid trying an incarcerated defendant who has continually proclaimed his innocence. Through no fault of Raniere's, but through the Government's efforts, he has now has been detained for <u>ten months</u> and will have been detained for <u>fifteen months</u> by the end of the trial. At virtually each adjournment, Raniere has demanded that the Government that incarcerated him with bold, false claims of his dangerousness and risk of flight actually try him. And, at each adjournment, the Government cleverly—using all the tricks in its apparently bottomless bag of adjournments—has managed to avoid a trial.

In Title 18, United States Code, Section 3164, Congress stated with simple and remarkable clarity a principle that has been systematically violated in this case: "the trial … of cases involving a detained person who is being held in detention solely because he is awaiting trial… **shall** be accorded priority." As will be demonstrated below, the Government has systematically violated this rule. Rather than giving the trial of Keith Raniere the priority that Congress mandated, the Government has engaged in a clear campaign to avoid the trial by delaying discovery, refusing to meet and confer with defense counsel regarding discovery (even when ordered to do so by this

Court), and refusing to turn over discovery in its possession due to the pending investigation since the inception of this case.

In the event the Court denies our Due Process application, we renew our bail application, as permitted under this Court's written decisions filed on June 20, 2018 (Dkt. 52), and December 5, 2018 (Dkt. 222), due to an increase in the collateral supporting a bond, specifically an additional suretor, who will post $300,000 to secure the $1 million bond.

## **BACKGROUND**

A.   Previous Bail Motions

Raniere has previously made two motions for bail, and one motion to seal co-signers' names and addresses. (Dkt. 43, First Motion for Bond; Dkt. 116, Motion to Seal; Dkt. 46, Second Motion for Bond.) In both Orders denying bail for Raniere, the Court has done so *without prejudice* because it "remains conceivable that Raniere could address the court's concerns." (Dkt. 222, Order Denying Second Bail Motion; Dkt. 46, Order Denying First Bail Motion.)

B.   The Government's Handling of Discovery and the Trial Date

A procedural review of this case shows (1) that Raniere has done everything in his power start his trial and (2) that the Government has intentionally misused the discovery process and other methods to systematically deny him one. This delay to an incarcerated defendant violates two important principles – the Due Process Clause and Section 3164.

1.   April 13, 2018 – Initial Appearance

On April 13, 2018, Keith Raniere made his first appearance in this District. He pleaded not guilty to the complaint and when asked the defense position regarding the preliminary hearing, counsel responded, "**we are not waiving anything, Your Honor**." (4/13/18 Transcript ("Tr.") at

2

4.) From that day and for every day during the 287 days since, Raniere has demanded a trial and the Government has refused to have one.

### 2.    May 4, 2018 – Arraignment

On April 19, 2018, one week later, the Government unsealed an indictment charging Raniere and Allison Mack. On May 4, 2018, Raniere and Mack appeared before Your Honor for arraignment. The Court, cognizant of the fact that Raniere was incarcerated, asked the Government how long it believed it would take to provide discovery.  The Government responded, "It is difficult for me to estimate exactly at this time," citing concerns regarding a firewall to review privilege,[1] but stated, "I certainly will produce the bulk of what we have within the next month or so, but there will be ongoing discovery after that." (5/4/18 Tr. at 5) The Government then added, "we anticipate that there will be additional charges and additional defendants."[2] (Id.)  The Court pressed the Government, "what is your current timeframe? And I ask this question because we have one defendant who is in custody…I think in this case it would be appropriate to move this case with alacrity…" (Id.) Defense counsel thanked the court for being mindful of Raniere's incarceration, and stated, "**my client is asking for a speedy trial. He is not in a position to waive the speedy trial protections of the statute**." (Id. at 9.) Responding to the Government's statements regarding discovery, defense counsel stated, "we will give the Government whatever hard drives we need to [] get the discovery as quickly as possible." (Id. at 10.) Raniere requested a trial date of **mid-July 2018** (id. at 14) and explained, "mid-July is not soon. It is down the road a way. If we need to scramble, that's what we do and we will get ready" (id. at 15). Mack wanted to first to review the

---

[1] Notably, the Government did not engage Raniere's attorneys with the Assistant U.S. Attorneys on the firewall team until **October 4, 2018**, **five months** after this appearance, and **nine months** after the account was seized.

[2] This would be the first of at least five times that the Government threatened a superseding indictment to delay trying Raniere. (See, e.g., 6/12/18 Tr. at 5; 7/25/18 Tr. at 12; Dkt. 248, Gov't Response to Motions at 47 n. 20; 1/9/19 Tr. at 4.)

preliminary discovery the Government had not yet produced, and the Court set an October 1, 2018 trial date. (Id. at 16.)

### 3.   June 12, 2018 – Bail Hearing

Raniere filed a bail motion which was heard on June 12, 2018 and denied without prejudice. The Court began that hearing by asking the Government, "I set a trial date of October 1st, when will you be done with your discovery transfers to the defendants?" (6/12/18 Tr. at 4.) The Government responded, "it is difficult for us to estimate right now because we are still in the process of receiving certain materials." (Id.) The Government, again citing the superseding indictment, said "we do expect a superseding indictment in this case and that there will be additional discovery obligations in accordance with the superseding indictment as well." (Id. at 5.) When asked if the Government had an application for the exclusion of time, the prosecution said, "at this time, the Government is still willing to engage in such plea negotiations, but we have not heard from defense counsel."[3] (Id. at 10.)

### 4.   July 25, 2018 – Arraignment on Superseding Indictment

The Government superseded and unsealed the Superseding Indictment, arresting four new defendants on July 24, 2018.[4] All six defendants were arraigned on July 25, 2018. At the arraignment, the Government, sending a clear message that though it arrested four new defendants,

---

[3] Being willing to have plea negotiations but not hearing from defense counsel is not a listed basis for an exclusion under the Speedy Trial Act.

[4] The Superseding Indictment involved the following charges: (1) Additional charges regarding DOS, including a Wire Fraud Conspiracy (the DOS discovery was not complete until December 7 and it is unclear whether there is more DOS discovery the Government has not produced); (2) Charges regarding "hacking" of Ms. Bronfman's father (from Raniere's review, there has been no discovery produced regarding this); (3) Charges alleging that Russell and Raniere aided a Mexico alien in entering the United States through Canada (the Government produced discovery that appears to be related to this charge at the late date of on December 7); (4) Charges alleging that Raniere and Lauren Salzman engaged in trafficking a victim for labor and services and document servitude (this allegation was made in the Government's March 26, 2018 letter in support of detention (Dkt. 4), yet documents that appear related to this were not produced until August 3, 2018 and November 2018); (5) A charge alleging "a scheme to alter records for use in an official proceeding" (the Government has still refused to indicate to the defendants what the basis is of this extremely broad allegation, but they alleged it in their March 26, 2018 Letter in Support of Detention),

it had no intention of trying them on the scheduled trial date, immediately argued that "[i]n light of the additional defendants, additional discovery that will be involved, and the complexity of our superseding indictment, the Government…does not believe that the October 1 trial date is feasible at this point. I believe that Mr. Raniere, however, disagrees." (7/25/18 Tr. at 8.)  The Government had won again. It had managed to keep Raniere in jail and managed, more importantly, to avoid trying him on yet another trial date set by the Court. Nonetheless, Raniere continued to press the Court for the October 1, 2018 trial date:

> I have a client who is incarcerated; I have a client about whom the Government says it will never, never, agree to any conditions of release…So, I feel it incumbent upon myself to do what I need to do to get ready for a trial October 1.  I'm prepared to do that. I recognize, and I expect you'll hear my co-counsel who have clients who are not incarcerated do not want a trial October 1. I'm well-versed in what that means from a speedy trial perspective, but asking me, personally, I would like a trial October 1.

(Id. at 9.) The Court then asked the Government about discovery. The Government responded:

> [i]n light of the fact that we knew that there were going to be additional charges, there's certainly a significant portion of discovery that was not produced to the defendants Raniere and Mack that is now relevant to the superseding indictment.

(Id. at 10.) This response made clear that despite the fact that Raniere was an incarcerated defendant demanding an immediate trial, the Government had intentionally withheld discovery from Raniere and Mack due to the impending Superseding Indictment. The Government kept open the possibility that there would be further superseding indictments. (Id. at 12.) The Court, announced a trial date stating, "January 7 to select a jury. We go to trial immediately after that." (Id. at 17.) The Court then excluded time in "the interests of justice under the Speedy Trial Act on consent of all parties but Mr. Raniere …"  (Id. at 22.)

5

5.      July 26, 2018 – August 2, 2018 – Government Rejecting Offers to
        Meet & Confer

On the day following the July 25, 2018 appearance, the Court entered a minute order requiring the parties to "meet and confer regarding discovery and a motion schedule prior to the next status conference." (9/26/18 Order.) All defense counsel approached the Government to meet and confer, as directed by the Court. Kathleen Cassidy (counsel for Clare Bronfman) first sent an email to the prosecutors and all defense counsel on July 26, 2018 at 10:09 am. She proposed a meeting the next day, when all defense lawyers would be present, and said, if the Government was available, "we will send you a list later today of what information defendants hope to gather from the meet and confer." (Ex. 1: Dkt. 127, Raniere Ltr. Requesting Discovery at Exhibit 3.)

When defense counsel still had not heard back from the prosecutors for over seven hours, counsel for Raniere sent a follow up email at 4:42 pm, stating, "since we have both out of town lawyers tomorrow…, can we lock in the meet and confer discussed in open court for after our appearances tomorrow.  Thanks. Marc." At 4:47 pm, the government responded, stating:

> thank you for your emails. The first step is to have the new defendants sign the protective orders, which we will send to them tomorrow. We will begin producing discovery to all defendants next week and if a meet and confer is necessary at some point in the near future, we will be available. In the interim, you are certainly invited to send us a list of information you are seeking to gather.

The co-defendants' counsel immediately signed the Protective Order. On August 1, 2018, William McGovern (counsel for Allison Mack) again asked for the meet and confer and stated that "Given the number of participants and summer schedules we don't want to risk letting it slip any further into August. We are also cognizant that Judge Garaufis is holding the week of August 20 for us to address any outstanding issues not resolved during the meet and confer." (Id.)

On August 2, 2018, the Government again refused to hold the meet and confer ordered by the Court stating:

> All – As we've said before, we believe it will be more productive and practical to meet and confer to address issues relating to discovery, should that prove necessary, after some productions have gone out to you. We will be calling some of you individually to discuss issues that may be unique to your clients in coming weeks, and, as always, we welcome specific questions or requests at any time.

(Id.) First, the Government stated a disingenuous and nonsensical excuse that certain defendants had not signed the protective order, then even after each defendant signed the protective order, the Government still refused to hold the meet and confer.

### 6. The September 11, 2018 Discovery Letter

After the Government refused to meet and confer with defense counsel about discovery, defense counsel had no choice but to bring this issue to the Court, which it did on September 11, 2018. The letter informed the court that (1) defendants were still not in receipt of the majority of the discovery—materials the Government had "in March 2018 or even earlier," (2) the Government refused to meet and confer with defense counsel, (3) Raniere continued to demand a January 7, 2018 trial,[5] (4) the Government had still not identified the Jane and John Does in the Superseding Indictment and (5) the Government failed to respond to a Brady letter.[6] (See Ex. 1: Dkt. 127.)[7] Counsel, once again, reiterated that "Raniere has not waived and does not waive his right to a speedy trial and requests that this Court keep the January 7, 2019 trial date." (Id.) Six months into the case, with Raniere in prison the entire time unable to get a trial, the Government had failed to turn over the vast majority of discovery. (Id. at 5.) In response, the Government blamed any discovery delay on "privilege review on certain materials," although they had not

---

[5] As part of his demand for a January 7, 2019 trial date, Raniere wrote that "since the inception of this case, the government has maintained that Mr. Raniere must be remanded pending trial and, yet, has employed every basis available to avoid a trial." Little did he know at the time that the Government's efforts to avoid a trial were only beginning.

[6] The Government has still not responded to this letter, and has instead indicated it will comply with its Brady obligations by belatedly disclosing statements when it turns over 3500 material.

[7] Between the Superseding Indictment and this date, the defendants received just three discovery productions. In the time since, the defendants have received thirteen.

engaged the defendants with the privilege team, and instead sought instead to designate the case as complex. (See Dkt. 129, Case Update Letter at 1, 3-4.)

The Government was intentionally slow-rolling discovery, specifically to avoid the trial date, which is clear from the fact that as of September 11, 2018, it had still refused to identify the Jane and John Does in the Superseding Indictment.[8] While the Government offered excuses for failing to provide other forms of discovery, identifying the Jane and John Does takes a matter of seconds. Therefore, the delays were not mere negligence; rather they were intentional. Worse still, the delays were intentional as means to avoid trying a case that the Government was not ready to try, despite the fact that the Government continued to demand Raniere remain held without bail.

### 7.    September 14, 2018 – Status Conference

At the September 14, 2018 conference, the Court started by mentioning the September 11 letter. The Government responded that it wanted to "first discuss our motion to designate this case as complex." (9/14/18 Tr. at 4.) The Court, bringing the Government back to the discovery issue, stated, "well, I think that the heart of the matter is the concern raised by the defendants that there has been a delay in providing discovery that was obtained back in February, March, January of 2018, which cannot be easily understood or explained." (Id. at 5.) In attempting to explain the delay, the Government stated that the defendants' "letter was misleading in a number of respects" and that discovery productions were taking time because the Government "have begun searches

---

[8] The defendants had sent a letter requesting a Bill of Particulars, including the names of the Jane and John Does, on August 14, 2018. (See Ex. 1 at 6.) The defendants followed up with the Government asking for the names of the Jane and John Does. It was not until the defendants filed the September 11 letter that the Government disclosed this basic piece of information.

of those materials indicated in the warrants" and the defendants "wanted metadata" and wanted "discovery bates stamped." (Id. at 6.)[9]

They also sought to designate the case as complex for the first time. (Id. at 10.) The Government's request to make this case complex should be seen for what it actually is: a ruse to be absolved from the problems the Government itself created by refusing to meet with defense counsel and failing to oblige by their discovery obligations in a case where it was holding a defendant in jail who had the temerity to demand a trial.

When asked if the Government could meet the schedule in the letter submitted by Raniere's counsel, the Government responded, "we don't believe that a hard-stop discovery deadline is going to be appropriate…the Government is always constantly receiving new evidence both from witnesses from subpoenas that have been issued." (Id. at 10.) The Government then returned to its mantra we have all been hearing for a year: "we think it is highly likely that we will supersede to add additional charges against the defendants, who have already been charged, within the next several months." (Id. 11-12.) Raniere's counsel noted the Government's refusal to meet and confer with counsel and continued to press for timely discovery:

> This is all manageable. And honestly…I think they [the Government] want[s] it complicated. I think they'd rather keep it vague, they'd rather keep it mysterious, because then they can say, 'well we might supersede; well, its 144 library floors of stuff, we don't want to have a trial January 7th.' **Well, we do, we want a trial**. …We will help the Court and we will help the Government get ready. **We want this trial. We all do and we want it January 7th, and we will make it happen.**

---

[9] This is yet another disingenuous excuse. The Government provides discovery with metadata in every case, especially where the Government has received returns on search warrants from technology companies such as Yahoo, Google and Apple, as it has here. Therefore, the defendants' request for metadata for these devices and accounts was entirely reasonable and has never, in our collective experience as defense counsel, taken over six months to be produced. Moreover, defense counsel has never been in a case where discovery is produced without bates stamps. When counsel for Raniere and Mack received un-bates stamped discovery in **May** and discovery without meta data, we immediately brought it to the attention of the Government. This was entirely reasonable. Yet, the Government used this as an excuse for its inexcusable delays at a **September** conference.

(Id. at 16.)  In a somewhat remarkable statement, the defendant in a criminal case stated explicitly to the court that he wanted a trial so desperately that he would help the Government get ready to try him. The Government, however, would not have it. The Court sent the parties to Judge Scanlon, who threw a spotlight onto the tardy and non-existent discovery productions.

8.    <u>September 14, 2018 – Status Conference – Judge Scanlon</u>

Judge Scanlon immediately asked the Government, "what's the Government's objection to starting with an all-counsel conversation and then coming back to me with … a somewhat more agreed-upon list of disputes." (<u>Id.</u> at 13.) The Government responded, "Well, I can tell you right now that dispute is one that we are unwilling to engage…" The Court then asked, "What does that mean, you're unwilling to engage?"  The prosecutor responded:

> So, what I'm telling you, Your Honor, is that we have already disclosed those things that are the products of searches that **we are willing to disclose**. We are not – this is an ongoing investigation, Your Honor. We've already stated in front of Judge Garaufis that we expect there to be additional charges. We are not in a place where we are willing to disclose everything based on – potentially based on charges that have not been brought, for example.

The prosecutor here stated explicitly that despite the fact that Raniere is incarcerated and has been demanding an immediate trial and discovery, the prosecution has intentionally not provided discovery because of an ongoing investigation. Moreover, the prosecutor stated that the Government is unwilling to tell the defense what materials the prosecutor has that it is unwilling to disclose. This obviously put the defense in an impossible position in terms of starting a trial because the Government is saying that it has discovery that it is intentionally not providing.

Judge Scanlon ordered the parties to meet and confer and the parties finally discussed the discovery issues. Judge Scanlon ordered the Government file multiple updates on the discovery (some of which did "not include all of the required information" she had asked for (9/24/18 Minute Order)), which forced the Government to start producing more of the material.

10

9.   September 27, 2018 Conference – Judge Scanlon

During this conference, the Court inquired about a discovery cut-off date of December 7, 2018.  The Government responded that "the December 7th date that we proposed was not proposed as a discovery cutoff."  The Court asked, "So what is it?" The Government responded:

> [w]e proposed that date as a date by which we would endeavor to make substantial productions on an ongoing basis. Your Honor, we're in a case that has been designated complex.  We understand that the defendants are saying that they want a trial soon….The government isn't aware of a criminal case in which an arbitrary discovery cutoff was made, absent there being a fixed trial date.
>
> **Your Honor, what the government doesn't want is an arbitrary cutoff date based on a trial date that appears not to be set right now.**[10]

(9/27/18 Tr. 6-7.) Judge Garaufis had already noted that the January 7th date was predicated upon the Magistrate Judge "establish[ing] a discovery schedule" and that "no one wants [a January 7th date] more than" him. (9/13/18 Tr. at 19.) Yet, the Government was in front of Judge Scanlon arguing that there *could not be a cut-off date* because there was no set trial date. Indeed, the *only* reason there was no set trial date was *because* the Government had not produced discovery. The Government continued that "we will try to endeavor to get substantial discovery out there by then." (Id. at 10.) The Court replied "Try and endeavor, this is the problem." (Id.) The Government continued that they had to complete discovery because they "have unindicted coconspirators" and obligations to produce discovery," but that "the trial is not looking like it's going to be until spring or some later date." (Id. at 10-11.)

Raniere's counsel again reiterated, "I want to try the case January 7th. Sometimes my colleagues don't always agree with that and I'm trying to harmonize all the views…it's really

---

[10]The Government has been permitted to use its failure to produce discovery as a means to violate Raniere's right to a speedy trial. Rather than enforcing the trial date and demanding that the Government produce discovery consistent with the trial date, the Court has permitted the Government to systematically and repeatedly move the trial date because the Government cannot, or worse still, will not, produce discovery that it has in its possession.

incumbent upon me, I think, to move as quickly as possible." (Id. at 26.) The Court ordered the

parties to work on the issues and propose a schedule by October 3, 2018. (Id. at 52.) The parties

filed a joint schedule on that date. In light of discussions before Judge Scanlon and the defendants

finally learning of the massive discovery, this schedule contemplated March 18, 2019 for opening

statements. (See Dkt. 157, 10/3/18 Jointly Proposed Schedule.)

10.   October 4, 2018 Status Conference – Judge Garaufis

The Court asked for the status of the discovery to which the Government responded that

they "have been working diligently to produce discovery and [] have made a significant portion

of discovery available to all defendants." (10/4/18 Tr. at 4.) They stated that they "**do not intend**

**at this point to file a comprehensive list of what is in the Government's possession**" because

"**what is discoverable under Rule 16 is continually in flux as our case develops**." (Id. at 5.)[11]

Next, as to the issue of the trial date moving from January 7 to March 18, 2019. When the

Court asked if Raniere was "consenting" to the adjournment from January to March, counsel

responded:

> I want to answer Your Honor's question about how we got here. We got here
> through a lot of compromise. We got here through a lot of conversation. I think we
> all feel that Your Honor sending us to Judge Scanlon has been very productive. It
> put us together. It was the right move at the right time. It's exactly what the case
> needed and I had to compromise. I didn't get what I wanted.

(10/4/18 Tr. at 8.) The Government agreed that the parties worked effectively with Judge Scanlon

and "have reached an agreement on a workable pretrial schedule with an anticipated trial date of

March 18, 201[9]." (Id. at 4.)

---

[11] If there was a clearer example of what a violation of 18 U.S.C. § 3164 looks like, counsel can't imagine it.  An incarcerated defendant is proclaiming his innocence and demanding an immediate trial – indeed has been demanding an immediate trial for several months – and the Government actually states on the record that it will not provide him with discovery because it is continuing to investigation and does not know what will be discoverable. When Congress stated that incarcerated defendants SHALL get priority, this is specifically what Congress was seeking to prevent.

This date, March 18, 2019, was the product of a tremendous amount of discussion with the Government. (See Dkt. 280, Raniere Ltr. Demanding March Trial at 1.) Raniere did not want this date. He wanted January 7, 2019, as has been stated clearly on the record. However, Raniere agreed to a March 18, 2019 trial date for one reason and one reason alone: because it was a **FIRM DATE**. It was a firm date because the **Government agreed to it** and because **all defense counsel agreed to it** and because the **Court agreed to it**. Getting the Government to agree to a trial date was such an uphill, seemingly impossible battle, that when the Government finally agreed (an agreement on which it could renege), this was something Raniere could not pass up. Moreover, his co-defendants, all of whom have stated repeatedly their need to review the discovery that was just being produced, all agreed. So, having demanded and been denied (1) a mid-July 2018 trial, (2) an October 1, 2018 trial, and (3) a January 7, 2019 trial, Raniere could not help but notice how adept the Government was at keeping innocent people in prison by simply refusing to try them and by using its own failure to produce discovery as an excuse to keep Raniere in prison. Therefore, securing the agreement of all parties and the Court to an agreed-upon trial date seemed like the only way to get an actual trial. The Court agreed that the March 18th trial date was a firm date and Raniere relied on the fact this date was being considered as a firm trial date with the consensus of all parties and the agreement of the Court.

11.   October 2018 Search Warrants and December 6, 2018 Status
        Conference

In the parties' October 3, 2018 letter, the Government agreed that December 7, 2018 was the "date by which Rule 16 discovery currently in government's possession would be substantially complete." (Dkt. 157 at 2 n.2.) Less than two weeks later, in late October, the Government obtained new search warrants for Keith Raniere's Yahoo account, Clare Bronfman's Google account, and all of the devices seized at Nancy Salzman's house. The Government first disclosed the existence

of these new warrants to defense counsel and Judge Scanlon in a letter filed on November 2, 2018.[12] Notably, the majority of the stated "probable cause" for the new warrants was information that the Government had apparently already investigated and relied upon at the outset of this case in their successful attempt at imprisoning Raniere. (Compare allegations in Government's Letter in Support of Detention (Dkt. 4) at 2-4 with statement of probable cause in the October warrants.)[13]

Despite the Government obtaining thousands of new documents from the new warrants, Raniere still agreed to the March date. At the December 6th status conference, Raniere once again stated, **"We're very happy with the March 18 date to open and we consent in the interim**." (12/6/18 Tr. at 22.) At the January 9, 2019 appearance, Raniere **agree[d] to continue it to March."** (1/9/18 Tr. at 72.) That day, however, the Government turned over three terabytes of data from Bronfman's email account, Raniere's email account, the Oregon Trail devices,[14] and numerous videos. This "massive volume of discovery" that was produced gave the non-DOS defendants "grave concerns that the March date is not feasible" due to insufficient "time to prepare for trial." (Dkt. 276, Motion to Sever at 23.)[15]

---

[12] The Government disclosed in this letter the massive amount of discovery they had produced in recent weeks, including "over 96,000 pages of discovery, including substantial productions of the result of searches of electronic accounts belonging to defendants Keith Raniere, Clare Bronfman, and Allison Mack." As noted several times before this Court, law enforcement seized this information from January to March of 2018 and only began producing this in late October, due to Judge Scanlon's order.

[13] The Government attempted to keep these warrants from the defendants, as well, until the defendants proposed that the search warrants be "Attorneys' Eyes Only" until the Government's arbitrary deadline of December 21, 2018. (See Dkt. 236, Limited Unsealing Order.) The reason for the arbitrary date of "December 21, 2018" is unknown to defendants because this was presented to the Court in an ex parte filing.

[14] The defendants have had "full discovery copies" of the Oregon Trail devices since October 29, 2018 and November 16, 2018. Ms. Bronfman and Mr. Raniere have declined to waive their 4th Amendment rights by sharing the entire contents of their email devices with co-defendants, so the defendants are now receiving bulk returns from the accounts. It is unclear whether the Government had the majority of the other items in their possession prior to December 7, 2018.

[15] **Incredibly, there is even more discovery the Government has in their possession that they have not produced to defendants**. The Government made an ex parte application to Judge Scanlon on December 4, 2018, seeking to "defer[] disclosure of certain evidence until six weeks before jury selection" in the case. (Dkt. 246, Order re 12/4/18 Ex Parte Filing at 1.) This application was granted. According to the March 18, 2019 trial schedule, the defendants would have received this discovery in January 2019—now, it will not be produced until February 25, 2019.

Unsurprisingly, the Government agreed to the continuance it made all but inevitable, stating that because the non-DOS defendants' were concerned that the March date will not allow them enough time to prepare with the benefit of the new discovery, "it would be appropriate for the Court to adjourn [] the current trial date." (Dkt. 279, Gov't Ltr. Requesting Adjournment at 1.)[16] Significantly, the Government did not indicate that it was ready to start the trial. Rather, seeing the non-DOS defendants open the adjournment door solely because of the Government's discovery production pattern, the Government rushed through it, seeking yet another reprieve to keep Raniere in jail six more weeks.

Raniere strenuously objected to this adjournment and noted that the Government "honestly has done everything in its power thus far to avoid a trial of the incarcerated Raniere." (Dkt. 280, Ltr. Demanding March Trial at 2.) On January 15th, the Court adjourned this trial six weeks, from March 18th until April 29th to accommodate the adjournment requests. (See Dkt. 287.) This adjournment violates Raniere's constitutional rights and the clear dictates of Section 3164, stating that the trial of an incarcerated person SHALL get priority.

## I.    Due Process Requires that Raniere Be Released

### A.    Legal Standard

As an initial matter, because this Court has denied Raniere bail *without prejudice*, this Court does not have to review a reopening of detention under 18 U.S.C. § 3142(f), which allows this Court to reopen detention at any time before trial if information exists that was not known to the movant at the time of the hearing. This Court may review a pretrial detention order "to determine whether [it] violates [Raniere's] right to due process." United States v. Ojeda Rios, 846 F.2d 167, 169 (2d Cir. 1988); United States v. Archambault, 240 F.Supp.2d 1082 (D.S.D.

---

[16] This is a clear set-up by the Government: fail to provide discovery, wait for at least one defendant to ask for an adjournment based on the lack of discovery, and then agree.

2002)(detention must be reopened for a fundamental reason to examine due process implications of the defendant's continued detention). "In some cases, due process violations have been found and the defendants ordered released due to their prolonged detention." Archambault, 240 F.Supp.2d at 1085 (citing Ojeda Rios, 846 F.2d 167, 168–69 (2d Cir.1988); United States v. Gonzales Claudio, 806 F.2d 334, 341–43 (2d Cir. 1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986); United States v. Ailemen, 165 F.R.D. 571, 572–601 (N.D.Cal. 1996); United States v. Shareef, 907 F.Supp. 1481, 1482–85 (D.Kan.1995); United States v. Chen, 820 F.Supp. 1205, 1209–11 (N.D.Cal. 1992); United States v. Gatto, 750 F.Supp. 664, 672–76 (D.N.J. 1990); United States v. Gallo, 653 F.Supp. 320, 334–45 (E.D.N.Y. 1986)).

In the Second Circuit, to determine whether prolonged pretrial detention implicates due process, a Court must consider (1) the length of detention; (2) the extent of the prosecution's responsibility for the delay of trial; and (3) the strength of the evidence upon which the detention was based. United States v. Orena, 986 F.2d 628, 630 (2d. Cir. 1993). Determinations concerning due process limitations on pre-trial detention require a case-by-case assessment. Gonzales Claudio, 806 F.2d at 340 ("the due process limit on the duration of preventive detention 'requires assessment on a case-by-case basis, since due process does not necessarily set a bright line limit for length of pretrial confinement."); Ojeda Rios, 846 F.2d 167 (where defendant was detained solely on risk of flight for 32 months prior to trial, "due process [could not] tolerate any further pretrial detention" where the Government would not agree to severance and they bore the burden of delay and the trial would last months").

B.    Argument

16

     1.      <u>Because Raniere's Trial Has Now Been Delayed Two More Months,
     and Raniere Will Be Incarcerated Fifteen Months at the End of Trial,
     This Court Should Release Him</u>

This Court must release Raniere because his due process rights have been violated due to the Government's systematic and constant delays. Raniere, a first arrest United States citizen who does not stand convicted of anything, yet has been held without bail since March 27, 2018.

     2.      <u>The Prosecution's Responsibility for the Delay of Trial</u>

The delay in this trial is solely due to the Prosecution's conduct. <u>First</u>, as detailed <u>supra</u> at pp. 1-16, due to the Prosecution's vague yet continuous promises to supersede the indictment, which will add even more discovery, Raniere will be incarcerated for over a year at the start of trial, despite asking for a prompt trial since April 13, 2018.

<u>Second</u>, the constant adjournments of the trial date are solely due to the Prosecution's conduct. When Raniere first stated he was not waiving anything, the Government indicted Raniere and Mack, knowing Mack would not consent to a July date. When the Court set an October date, the Government superseded the Indictment adding four defendants, knowing they would not consent to an October date without the benefit of all discovery. Then, in disregard of this Court's Order, the Government refused to meet and confer with defendants regarding discovery forcing defendants to file a discovery motion. When this Court sent the parties to meet with Judge Scanlon, the Government finally started turning over material that had been in their possession for <u>six months</u>, but then executed new warrants so that defendants would have even more terabytes to review <u>after</u> the December 7th deadline. Now, the Government is sitting on even more discovery that they will not produce until six weeks before jury selection.

Now, after dumping 3 terabytes of discovery on defendants on January 11th and 44 gigabytes on December 7th, the Government tells this Court "it would be appropriate for the Court

to adjourn [] the current trial date" to accommodate the non-DOS defendants' request to review the Government's own tardy discovery. (Dkt. 279, Gov't Ltr. Requesting Adjournment at 1.) A problem of the Prosecution's own making is now leading <u>them</u> to request a trial adjournment, keeping Raniere in prison in violation of his rights, all the while insisting he sits in prison while they continue their investigation.

Even if the Court "[does] not determine with precision the amount of pretrial delay attributable to the prosecution, nor assess the extent to which the Government may [be] at fault in contributing to the delay," it is clear that the Government "bears a responsibility for a portion of the delay significant enough to add considerable weight to [Raniere's] claim that the duration of detention has exceeded constitutional limits." <u>Gonzales Claudio</u>, 806 F.2d at 342-43.

### 3.     The Strength of the Evidence Upon Which Detention Was Based

The strength of the evidence upon which detention was based is addressed below in Point III.B.1 and III.B.2 on pages 20-24. Additionally, this Court has now received numerous submissions by defendants on the weakness of the Government's case.

Moreover, this Court has held multiple times that Raniere is detained because the proposed conditions of release do not mitigate against risk of flight and *not* because of any finding of dangerousness to the community. (<u>See</u> Dkt. 46 at 16; Dkt. 222 at 14). "[T]he constitutional limits on a detention period based on dangerousness to the community may be looser than the limits on a detention period based solely on risk of flight. In the former case, release risks injury to others, while in the latter case, release risks only the loss of a conviction." <u>Orena</u>, 986 F.2d at 631. Here, there is been no finding as to dangerousness, and indeed, Raniere has put forward several arguments that any dangerousness typically associated with sex trafficking does not exist here. (Dkt. 222, Order at 9: ("Raniere claims that the Government possesses critical exculpatory

evidence related to its sex trafficking charges. He avers that the 'overwhelming majority' of women in DOS did not have sex with him and that any sexual relationships he had were 'entirely consensual and aggressively pursued by [his] partners.'")

4.   The Relevance of Section 3164

When Congress stated that the trial of incarcerated defendants shall be given priority, Congress was seeking to prevent precisely what the Government has done here and it continuing to do here. Congress was concerned that prosecutors would arrest people, incarcerate them and then turn their attention to other aspects of the investigation, allowing them to sit in prison while the prosecutors built their case. That concern has come to pass. The Government has violated this provision. It arrested Raniere on the thinnest of evidence, kept him jail and has gone on to investigate other defendants and other aspects of the case while Raniere in vain demands to be either tried or released.  This conduct is not only wrongful, it violates the clear dictate of Congress in section 3164. Keith Raniere must be released immediately.

## II.   In the Alternative, This Court Should Release Raniere Under the Proposed New Conditions

With the benefit of the new proposed conditions below, Raniere asks this Court, in the alternative, to release him under the updated conditions of release:

A.   Proposed Conditions of Release

The proposed release conditions are as follows:

(1)    A $1M personal recognizance bond;
(2)    The bond shall be secured by the following five properties, with the owners of the properties signing onto the bond:



(3)    Several other people—the identities of whom will be provided to the government and the Court in advance of any hearing, will also sign onto the bond, offering the following cash amounts to secure the bond: ███████████████

(4)    The defendant shall be on full home confinement in Brooklyn, NY or Clifton Park, NY, until the trial begins;

(5)    The defendant will be electronically-monitored by a GPS device that tracks his every movement;

(6)    The defendant shall not leave the location of his home confinement, except for emergent medical matters and scheduled court appearances; his lawyers will be obligated to travel to this location for any meetings, and he must check in with his pretrial officer every day;[17]

(7)    When the trial starts, or if the defendant's presence at court is required on a more regular basis, he will live at a location near the courthouse, and will be accompanied by one of his attorneys from that location to the courthouse;

(8)    The defendant shall not communicate with anyone by phone or in person aside from his attorneys or authorized members of their staff or unless his attorneys are present;

(9)    The defendant shall have access to a computer to review the discovery provided in this case, but no internet access; and

(10)    Surrendering of the defendant's passport and an agreement not to secure new travel documents.

### B.   The Proposed Conditions Will Assure Raniere's Appearance in Court

We rely on our previous bail motions (Dkt. 43; Dkt. 191) and assume the Court's familiarity of Raniere's analysis with respect to risk of flight and safety to the community. We briefly write to address the bail factors, specifically, this Court's concern about (1) Raniere's lack of financial stake in the previous bail proposal and (2) the weight of the evidence. We submit this $1 million bond secured by more cash and property is a sufficient condition.

### 1.   The Nature and Circumstances of the Offense Charged

In its Second Order, this Court found that due to the Superseding Indictment, "this factor supports continued detention even more strongly than at the time of the First Bail Order." (Dkt. 222 at 8.) While Raniere does not dispute that these charges add potentially more prison time to

---

[17] The condition of requiring Raniere to call pretrial services once a day has been imposed in other cases where due process implications were considered. See Orena, 986 F.2d at 628.

an indictment that was already charging him with a potential life-in-prison offense, Raniere notes

that the Superseding Indictment in one instance does not even charge proper venue (Count Seven)

and the majority of its RICO acts were laid out in a Detention Letter to this Court filed the date of

Raniere's arrest. (Dkt. 4, Gov't Ltr. in Support of Detention.) In short, with the exception of a few

acts, these are allegations the Government started pedaling in March.

2.      The Weight of the Evidence

Though this Court recognizes Raniere's arguments that the Government possesses critical

exculpatory evidence related to its sex trafficking charges, it states that Raniere "has made no

similar claims about the Government's evidence regarding the racketeering conspiracy, forced-

labor conspiracy, wire fraud conspiracy, and identify theft conspiracy charges against him." (Dkt.

222 at 9.) The Court stated that the "Government claims to have significant evidence against

Raniere" and "there appears to be ample evidence against" him. (Id. at 9.) However, we caution

the court to

> be vigilant not to unduly rely upon a proffer of a set of accusations and weighty
> evidence in support thereof to substantiate an order of pretrial detention. After all,
> in this District, among many others, such a strong proffer is typical. Rather, a
> careful balancing of all the relevant factors is essential to ensuring that not even
> one defendant is unnecessarily deprived of her interest in liberty pending trial, all
> while protecting the community at large, and, by extension, ensuring the integrity
> of and respect for the criminal system.

United States v. Paulino, 335 F.Supp.3d 600 (S.D.N.Y. Aug. 16, 2018). We disagree that we have

not made similar claims about the Government's case, as we have repeatedly and vehemently

argued that Raniere is innocent. However, we attempt to provide "specifics regarding the nature

of the evidence in the Government's possession." (Dkt. 222 at 10.)

First, with respect to the racketeering conspiracy, as the Court will soon see, this conspiracy was predicated mainly on the acts of the ████████████████████████████ [18] The discovery shows that Raniere was not involved in these ██████████████████' schemes and at trial, this will become eminently clear to Your Honor and the jury. Raniere has also provided context for nearly every email cited in the Government's detention letters and search warrants in his Motion to Suppress and Motion for a Franks Hearing filed under seal on January 9, 2019. (Dkt. 269.)

Second, with respect to the Forced Labor Conspiracy, Raniere has argued that the forced labor conspiracies and sex trafficking conspiracies simply do not allege "force" as required by the statute. It is apparently the Government's theory that "collateral" formed the basis of the "force" element in the Forced Labor substantive and conspiracy charges and we have stated repeatedly that collateral did not act as a measure of force. In Raniere's First Motion for Bond, he stated:

> However, there has never been an instance where a woman provided collateral against her will, or where she was compelled to join DOS against her will. Rather, every woman who provided collateral in connection with her admission into DOS did so knowingly, intelligently and with full knowledge and awareness of her actions.
>
> Moreover, counsel is aware of no instance where the collateral of anyone was actually released as a punishment or for any other reason. The collateral is akin to "consideration" in a contract or as a form of commitment to one's membership in DOS. The view shared by many DOS members is that DOS is effective precisely because it requires a tangible commitment, and that the collateral is central to the personal commitment that makes DOS effective.

(Dkt. 43 at 6-7.) Moreover, the Court's question to the Government at oral argument goes to the heart of why Raniere, Mack and Lauren Salzman will strenuously argue that there was no forced labor: "going to Dunkin' Donuts and picking up some coffee and doughnuts for the folks that

---

[18] Raniere has been demanding a prompt trial because, among other reasons, Raniere is anxious for the Court and public to learn the truth about these accusations.

actively house, is that labor and services for purposes of a forced labor conspiracy?" (1/9/19 Tr. at 38.) A first-arrest, U.S citizen should not be held on allegations that are routine acts of friendship.

Third, with respect to the Wire Fraud Conspiracy, it is astonishing that the Government has charged this when the February Complaint acknowledges, and the discovery confirms, that every member of Ms. Mack's sorority women **knew of Raniere's involvement in DOS**. (Compl. ¶ 47.)

Finally, with respect to the Identity Theft Conspiracy, this Count does not even allege proper venue. However, even if it did—as we assume this will remain an act in the RICO count— we have stated in public filings the ridiculousness of this charge:

> The closest thing to [a charge of stealing another person's money] is that the government says that Mr. Raniere and the mother of his child used Pamela Cafritz's credit card after her death. (See Superseding Indictment at ¶ 40 (Count Seven); Gov't Detention Ltr. at 7.) It is undisputed that Ms. Cafritz and Mr. Raniere were live-in lovers, partners and the best of friends for the better part of three decades. **Mr. Raniere had an unlimited Power of Attorney over her affairs, was her estate's executor, and sole beneficiary.** So, the notion that Mr. Raniere misappropriated funds from an estate of which he was the beneficiary, with the goal of committing tax evasion on tax not yet due, is ridiculous.

(Dkt. 191, Raniere Second Motion for Bond at n.13) (emphasis added). The Government's only retort is "Raniere was the executor of Ms. Cafritz's estate in December 2016 and could not make "gifts" from her estate without violating a fiduciary duty unless and until the funds in the estate were transferred to him as a beneficiary." (Dkt. 291, Gov't Reply to Privilege Brief at 6 n.4.)

### 3.   Raniere's History and Characteristics

Raniere has exhaustively put forth details regarding his stay in Mexico and the Court has accepted these. The Court however, is troubled that Raniere "continues to have access to supporters with substantial resources, some of whom are in Mexico" because of Raniere's stay in the resort in Puerto Vallarta. Raniere seeks to provide more information about this stay. ███████ who has agreed to post ███████ to secure Raniere's bond, paid for this stay ███  Therefore, with

23

the benefit of ███████ in the courtroom, the Court would be able to assess Raniere's "supporter[] with substantial resources…in Mexico." (Dkt. 222 at 12.)

Additionally, the other guests at the Puerto Vallarta hotel included Ms. Bronfman, who, due to her indictment, "now has less ability to help Raniere flee." (Dkt. 222 at 12.) Ms. Lauren Salzman and Ms. Mack, were also at the resort and have no ability to help Raniere flee, as they too are indicted defendants held on bail with strict conditions. Several DOS members were also at the resort, all of whom live in Mexico and do not have great financial means, and, those who have houses in the United States, cannot act as suretors because they have a legitimate fear of arrest. (See Dkt. 197, Agnifilo Aff. ¶¶ 30, 32.) Yet, ███████ who paid for this trip is willing to come to this Court and pledge "substantial resources" to assure Raniere's appearance. (Dkt. 222 at 12.)

### 4.   The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed by Raniere's Release

The Court has accepted "the Government's representations as to how Raniere has psychologically abused DOS members…and continues to believe 'there is at least some risk that if Raniere is released, he may unlawfully exploit women or obstruct justice." (Dkt. 222 at 13-14.) Here, once again, the Government's proffers should not persuade the Court, especially in light of recently produced discovery. In the Government's Complaint, they write that after "a DOS slave (who was also a high-ranking member of Nxivm) defected in a public way" (Compl. ¶ 33), "Jane Doe [5][19] began to believe she might also be able to leave without having her collateral released" (Id. ¶ 51).

Once again, the Government has concealed from the Court—and from defendants for nine months of this case—the discovery that shows that Jane Doe 5 in fact thought that DOS was a

███████████████████████████████████████████████████

---

[19] Jane Doe 5 is referred to as Jane Doe 1 in the Complaint.

████████████████████████████████████████████████████ nearly two

months after the DOS slave "defected in a public way," and three weeks after a blog revealed the

existence of DOS (Dkt. 116 at 10 n.13), Jane Doe 5 wrote ██████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████  ████

A  month  later,  on  ██████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
██████████████████████  ████

Accordingly, we submit that the factors do not weigh in favor of the Government, and

instead, weigh in favor of Raniere's release. These are not ██████████████ of a DOS member

who was "psychologically abused." (Dkt. 222 at 13.)

## <u>CONCLUSION</u>

For the reasons set forth above, we ask that the Court release Raniere.

Dated:        January 25, 2019
              New York, NY

                                        Respectfully submitted,

                                         /s/
                                        Marc Agnifilo
                                        Teny Geragos

cc: The Court and the Government (via ECF and email)

---

[20] We are submitting these redacted on the docket pursuant to the Protective Order entered in this case. Counsel has discussed with the Government that if the Government's response discloses their own discovery that they have banned the defense from using publicly, we will immediately file a motion to unseal to this Motion.