UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
UNITED STATES OF AMERICA

    -against-

KEITH RANIERE,

                Defendant.
-----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**18-CR-204-1 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

    Defendant Keith Raniere has been indicted on charges of racketeering conspiracy;[1] conspiracy to cause another to engage in forced labor; wire fraud conspiracy; sex trafficking conspiracy; sex trafficking; attempted sex trafficking, and identity theft conspiracy. (Superseding Indictment (Dkt. 50) ¶¶ 14-23, 26-30, 34-40.) Before the court is Raniere's third motion for release pending trial.[2] (Def. 3d Mot. for Pretrial Release ("Mot.") (Dkt. 303).) In this motion, Raniere asks the court to either (1) release him immediately (with no bail conditions) because his continued pretrial detention allegedly violates the Fifth Amendment's Due Process Clause and 18 U.S.C. § 3164, or (2) release him subject to his proposed conditions. (Mot. at 1.) For the following reasons, the court DENIES Raniere's motion.

---

[1] This charge includes predicate acts of conspiracy to commit identity theft, conspiracy to alter records for use in an official proceeding, forced labor, trafficking and document servitude, extortion, and sex trafficking. (Superseding Indictment (Dkt. 50) ¶¶ 17-23, 26-30, 34.)

[2] The court has denied Raniere's two prior motions for pretrial release, finding him to be a flight risk. (See June 18, 2018 M&O ("First Bail Order") (Dkt. 46); Dec. 5, 2018 M&O ("Second Bail Order") (Dkt. 222).)

1

## I. BACKGROUND[3]

Raniere has been detained without bail since March 27, 2018. (Def. 3d Mot. for Pretrial Release ("Mot.") (Dkt. 303) at 17.) The court initially scheduled the trial of Raniere and his co-defendant Allison Mack to begin on October 1, 2018. (May 4, 2018 Min. Entry (Dkt. 34).) Since then, the court has postponed his trial three times: once on Raniere's consent, and twice over his objection. (See July 26, 2018 Min. Entry (rescheduling trial for January 7, 2019, despite Raniere's objection, after the Government had filed a superseding indictment charging four new defendants and levying additional charges against Raniere and Mack); Oct. 15, 2018 Order (changing trial date to March 18, 2019, at the request of all parties, including Raniere[4]); Jan. 14, 2019 Order (Dkt. 287) (putting off trial until April 29, 2019, at the request of the Government and three of Raniere's co-defendants and despite Raniere's objection).) Raniere's trial is now scheduled to begin on April 29, 2019—just over 13 months after his detention began. (See Jan. 14, 2019 Order).

On January 25, 2019, Raniere filed the instant motion (Mot.), which the Government opposes (Gov't Opp'n (Dkt. 304)). He argues that the Due Process Clause requires his immediate release due to his prolonged detention. (Mot. at 15-19.) Alternatively, he requests that the court release him subject to certain conditions. (Mot. at 19-25.) The only material difference between his proposed bail package and one that the court previously rejected is that it includes an additional surety who will post $300,000. (See Mot. at 2 (noting "an increase in the

---

[3] Summaries of the Government's allegations regarding Raniere and the circumstances that led to his indictment are set forth in the court's previous orders denying Raniere's motions for bail. (See First Bail Order at 6-16; Second Bail Order at 1-4.)

[4] The court rescheduled the trial only after the parties jointly proposed an adjournment until March 18, 2019. (See Oct. 3, 2018 Letter Proposing Schedule (Dkt. 157).)

2

collateral supporting a bond, specifically an additional suretor, who will post $300,000").)
(Compare Second Bail Order at 3-4, with Mot. at 19-20.)

On February 1 and February 4, 2019, Raniere filed supplements to his motion, describing the recent conditions of his confinement at the Metropolitan Detention Center, Brooklyn ("MDC"). (Raniere Feb. 1, 2019 Reply (Dkt. 314); Raniere Feb. 4, 2019 Letter (Dkt. 328).) Among other things, he indicated that the MDC had been without heat, electricity, hot water, or hot food since a fire took place on January 27, 2019. The court held a hearing at 2:30 P.M. on February 5, 2019, with Raniere, the Government, and MDC representatives present, regarding Raniere's living conditions at the MDC. MDC representatives reported that, as of February 5, 2019, MDC's essential services had been restored and the facility was complying with the February 4, 2019 Temporary Restraining Order in Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, which requires MDC to allow legal visitation for all inmates every day from 8:00 A.M. to 8:00 P.M. Mem. & Order, Federal Defenders of New York, Inc. v. Federal Bureau of Prisons, No. 19-CV-660 (MKB), (E.D.N.Y. Feb. 4, 2019) (Dkt. 9) at 5.

## II. DISCUSSION

### A. Due Process Limits on Prolonged Pretrial Detention

#### 1. Legal Standard

"Pretrial detention satisfies due process only if its purpose is regulatory rather than punitive." United States v. Briggs, 697 F.3d 98, 101 (2d Cir. 2012) (citations omitted). "Permissible regulatory purposes include preventing danger to the community and ensuring a defendant's presence at trial." Id. (alterations adopted) (citations and quotation marks omitted). "[D]ue process places no bright-line limit on the length of pretrial detention." Id. Instead, "the due process limit on the duration of preventive detention requires assessment on a case-by-case

3

basis." Id. (citation omitted). "In making such an assessment, we consider the strength of the evidence justifying detention, the government's responsibility for the delay in proceeding to trial, and the length of the detention itself." Id. (citations omitted); accord United States v. Williams, 736 Fed. App'x 267, 271 (2d Cir. 2018) (summary order). "The longer the detention, and the larger the prosecution's part in prolonging it, the stronger the evidence justifying detention must be if it is to be deemed sufficient to justify the detention's continuance." Briggs, 697 F.3d at 101.

  2. Application

    *a.* *Strength of the Evidence Justifying Detention*

In the First Bail Order, after considering the four 18 U.S.C. § 3142(g) factors, the court found that the Government had "easily shown" that Raniere was a flight risk and that his proposed conditions were insufficient to reasonably assure his appearance. (First Bail Order at 16.) In the Second Bail Order, the court concluded that the Government "ha[d] once again shown that Raniere's proposed conditions [were] insufficient to reasonably assure his appearance," although the court acknowledged that some of its previous findings applied with slightly less force than at the time of the First Bail Order. (Second Bail Order at 10, 14.)

Nothing has happened since the Second Bail Order to cause the court to alter its conclusion that Raniere is a significant flight risk. Accordingly, the court finds that the evidence justifying Raniere's pretrial detention is strong. See Briggs, 697 F.3d at 102 (affirming district court's finding that the evidence justifying a defendant's continued detention, after 26 months, was strong because the circumstances that made him a flight risk had not changed).

4

### b. *Responsibility for the Delay*

Contrary to Raniere's contention, the delay of his trial is not "solely due to the [Government's] conduct." (Mot. at 17.) The delay is primarily the result of "the inherent complexities of this large multi-defendant case, which presents defense counsel with voluminous discovery to absorb and the court with myriad motions to address." United States v. Hill, 462 Fed. App'x 125, 127 (2d Cir. 2012) (summary order); see Briggs, 697 F.3d at 102 (reaching a similar conclusion). Indeed, the court has previously designated this case as complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii) (Sept. 18, 2018 M&O (Dkt. 138)); Raniere consented to one of the trial-date adjournments (see Oct. 3, 2018 Letter Proposing Schedule); and three of his co-defendants asked for the latest adjournment to have more preparation time (see Jan. 14, 2019 Order). The current trial date—April 29, 2019—is only six weeks after a trial date to which Raniere consented (March 18, 2019). (See Oct. 3, 2018 Letter Proposing Schedule.) And a 13-month pretrial detention is common in a complex case with voluminous discovery; it does not necessarily indicate prosecutorial foot-dragging. See Williams, 736 Fed. App'x at 272 (holding that a 19-month delay was "attributable not to government foot-dragging but to voluminous discovery that had to be produced and reviewed . . ."); Briggs, 697 F.3d at 102 (finding that a nearly 26-month detention was partially the result of "repeated motions and abundant discovery" and not solely the prosecution's fault); Hill, 462 Fed. App'x at 127 (ruling that a 24-month detention was mostly "attributable to the continuances requested by [the defendant's] twenty co-defendants and the complexities inherent in a twenty-defendant case," not "intentional, unwarranted delay by the prosecution").

The court recognizes that the "difficulties faced by the prosecution in a large and complex case do not justify the indefinite detention of the defendants." Briggs, 697 F.3d at 103.

Nevertheless, the complexity of this case, the volume of discovery, and Raniere's co-defendants' repeated requests for adjournments weigh against a finding that the Government is primarily responsible for the delay of Raniere's trial.

       *c.*     *Length of Detention*

The Second Circuit has repeatedly rejected Due Process Clause challenges to pretrial detention periods that are substantially longer than Raniere's. See Williams, 736 Fed. App'x at 271-272 (19-month detention); Briggs, 697 F.3d at 101-104 (a nearly 26-month detention); Hill, 462 Fed. App'x at 127 (24-month detention). Raniere will have been detained for just over 13 months by the time his trial begins. Such a delay "is not so excessive as to be presumptively prejudicial, especially where, as here, there is no allegation that there was any impairment to the defense." Williams, 736 Fed. App'x at 272.

       *d.*     *Conditions of Raniere's Confinement*

Finally, while conditions of confinement are not typically a factor in the Second Circuit's analysis of whether prolonged detention violates the Due Process Clause, the court addresses them here nonetheless. The living circumstances that Raniere has described are tragic, inhumane, and greatly disturb the court. At the court's February 5, 2019 hearing, MDC representatives reported that, as of that morning, conditions at the facility had returned to their usual standard and the problems that Raniere identified are no longer as acute. Should there be further issues with Raniere's living conditions, his counsel should report them to the court immediately. But now that the abhorrent circumstances that Raniere suffered through appear to have been remedied, the court does not believe they require Raniere's release under the Due Process Clause.

      \*    \*    \*

"In conducting a case-specific inquiry into a defendant's pre-trial detention, [the court] consider[s] the length of the detention itself, the strength of the evidence justifying the detention, and the government's responsibility for the delay." Id. at 271. The evidence in favor of Raniere's continued detention is strong. A thirteen-month delay before trial is typical in a complex, multi-defendant case with voluminous discovery, such as this. And his detention has been substantially shorter than ones the Second Circuit has upheld. Accordingly, the court finds that Raniere's continued detention through the conclusion of his April 29, 2019 trial does not violate the Due Process Clause. If the trial is delayed substantially beyond that date, however, the length of his detention may "approach[] the limits of what due process can tolerate." Briggs, 697 F.3d at 103.

### B. Release on Bail[5]

The court has twice found that Raniere is a flight risk. (See First Bail Order at 6-16; Second Bail Order at 6-14.) The court's view has not changed. Raniere remains a flight risk for the reasons that the court has previously articulated.

Additionally, Raniere's proposed conditions of release do not mitigate the risk that he may flee. The only material difference between his proposed bail package and one that the court previously rejected is that it includes an additional surety who will post $300,000. (See Mot. at 2 (noting "an increase in the collateral supporting a bond, specifically an additional suretor, who will post $300,000").) (Compare Second Bail Order at 3-4, with Mot. at 19-20.) This one modification does not lead the court to alter its conclusion that Raniere's proposed conditions are

---

[5] The court assumes the parties' familiarity with the legal standard for release on bail that was set forth in the court's orders denying Raniere's first two motions for release. (See First Bail Order at 4-5; Second Bail Order at 4-5.)

insufficient to reasonably assure his appearance for trial. Thus, the court denies Raniere's motion for release on bail.

### III. CONCLUSION

Raniere's third motion for release pending trial (Dkt. 303) is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
February 5, 2019

/s Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge