

U.S. Department of Justice

United States Attorney
Eastern District of New York

MKM:MKP/TH/MJL
F. #2017R01840

271 Cadman Plaza East
Brooklyn, New York 11201

February 25, 2019

<u>By Email and ECF</u>

Marc Agnifilo, Esq.
Brafman & Associates
767 Third Avenue
New York, NY 10017

William F. McGovern, Esq.
Kobre & Kim LLP
800 Third Avenue
New York, NY 10022

David Stern, Esq.
Rothman, Schneider, Soloway &
Stern, LLP
100 Lafayette Street, Suite 501
New York, NY 10013

Susan R. Necheles, Esq.
Hafetz & Necheles LLP
10 E 40th St, 48th Fl
New York, NY 10016

Justine Harris, Esq.
Sher Tremonte LLP
90 Broad St., 23rd floor
New York, NY 10004

Hector Diaz, Esq.
Quarles & Brady, LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004

Re:   United States v. Keith Raniere, <u>et</u> <u>al.</u>
      Criminal Docket No. 18-204 (NGG) (S-1)

Dear Counsel:

Pursuant to Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure, the government hereby notifies you that it intends to call Michael Welner, M.D., as an expert witness in the trial of the above-captioned case. His CV is attached to this letter.

Dr. Welner has been a board-certified psychiatrist since 1993, and a board-certified forensic psychiatrist since 1996. He is both a clinical and forensic psychiatrist. From 1995 to 2011, he was on the teaching faculty of NYU School of Medicine as a Clinical Associate Professor of Psychiatry. In 2016, Dr. Welner joined the teaching faculty of Mt. Sinai School of Medicine as a Clinical Professor of Psychiatry where he has since taught and supervised senior psychiatry residents in case practice of forensic psychiatry and supervised graduate psychology students in research activities.

In 1998, Dr. Welner founded, and has since chaired, The Forensic Panel, a multi-specialty practice of the behavioral sciences, pathology, toxicology, medicine, and radiology. He

is a Fellow in the American Academy of Forensic Sciences.  Dr. Welner has published numerous articles in behavioral, forensic, and social science journals and has lectured on a range of topics.  Since 1992, Dr. Welner has examined hundreds of criminal defendants facing a range of charges.  For approximately two decades, he has been part of the panel of 'Highly Qualified Independent Psychiatrists' maintained by the New York State Supreme Court, to whom judges refer criminal and civil commitment matters for independent assessment.

In his capacity as a consulting forensic psychiatrist, Dr. Welner has studied and applied the topics and relevant literature of cult-like organizations, large-group awareness trainings, the "human potential movement," religious sects and chain-marketing organizations (the "comparative groups"), including financial and sexual exploitation and the psychological dynamics within the comparative groups.  This includes the techniques of how intense attention and recruitment contributes to special relationships within which such exploitation takes place, and then to isolation through which recruits are controlled and exploitation perpetuates.  As a clinical psychiatrist, Dr. Welner also has experience treating people who have left organizations like those described above.

He has also conducted extensive research, yet to be submitted for publication, on polygamous sect leaders and their followers, and has presented findings of this research at national forensic science meetings.  This research illustrates the qualities of leaders and how they relate to their organizations and followers, how they relate to the outside world and prevent scrutiny, how the ideals of the organizations as set up by leaders enable the absolute power through which sexual and financial exploitation can happen.  In the same research, Dr. Welner explored the followers of such organizations, what makes them vulnerable, and what makes it difficult for them to extricate themselves.

Dr. Welner has also conducted original published research on drug-facilitated sex assault perpetrators and their modus operandi (including the way they relate to their victims after the fact), as well as their victimology.  In particular, he has examined the various ways in which some, including people with no criminal background or history of sexual offending, manipulate power differential and opportunism to sexually exploit employees in what would otherwise be ordinary encounters.

He has also extensively studied the topics and relevant literature on situations of coercive influence, including within school and employment settings.  Dr. Welner has also published on educator sex abuse and how the power differential in scholastic settings is manipulated by teachers and mentors to sexually exploit the emotionally vulnerable, including those less mature.  This involves an understanding of how, within such relationships, the mentor/teacher is able to cultivate silence and even complicity.  He has consulted on a number of cases in which grooming behavior is alleged to have taken place, in both criminal and civil context, and to both those accusing others of grooming and themselves accused.

In addition, Dr. Welner has presented before national meetings and other professional audiences on financial exploitation, the assessment of populations vulnerable to financial exploitation, and the vectors of such exploitation.  This work is notable for its concentration on how intelligent and informed people can be taken advantage of because of emotional vulnerabilities that play out in the relationship between victim and victimizer.

Dr. Welner's proposed testimony concerns issues that are outside the average juror's knowledge and would assist the jury in understanding the evidence. The topics of Dr. Welner's proposed testimony include the following:

- How the actions of the alleged perpetrators within Nxivm and DOS compare to traits and practices of certain of the comparative groups and how such action can facilitate financial and sexual exploitation, including by:
    - Using aggressive recruiting tactics to lure recruits and foster their dependence,
    - Grooming the moral and value systems of members to conform with the objectives of the organization and undermining their senses of self in order to submit to control and exploitation,
    - Cultivating total deference and grooming towards a charismatic leader who has no meaningful accountability,
    - Leveraging emotional vulnerability and intimate trust to control followers,
    - Creating extreme power imbalances,
    - Not tolerating dissent, and emotionally manipulating followers to remain absolutely obedient, through an accusatory atmosphere in which betrayal is suspected and charged, withholding their connection to a group on which they are dependent, shunning, and other techniques,
    - Isolating members from friends and family,
    - Demonizing critics as "suppressives" and shunning of defectors,
    - Limiting the beliefs, behaviors and emotions that members are allowed to exhibit,
    - Creating financial dependence,
    - Gathering compromising material on members and exploiting it to create compliance out of fear,
    - Controlling the emotional attachments of members, and
    - Controlling the sex lives of members.
- How families who are invested in the belief system of a group are affected and may lose their independence.
- How abuse of the dynamics of relationships of supervisor-supervisee, teacher-student and other relationships of authority facilitate financial and sexual exploitation.

The government also anticipates offering experts to testify as to the following topics.

- Psychiatric and physiological effects of social, perceptual and occupational isolation including deleterious effects on mental functioning, such as depression, obsessive thoughts, agitation, confusion and suicidal ideation and behavior;

3

- Behavior of victims of sex crimes including common misconceptions about victim behavior, such as why victims often delay reporting to law enforcement and others, why victims continue to communicate and maintain relationships with their assailants and why victims often do not physically attack their assailants; and

- Psychiatric and physiological effects of lack of sleep and severe calorie restriction.

None of the experts called to testify by the government will state an opinion about whether a defendant did or did not have a mental state or condition that constitutes an element of any of the crimes charged.

Very truly yours,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/_____
Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of the Court (NGG) (VMS) (by ECF)