UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>KEITH RANIERE, CLARE BRONFMAN, ALLISON MACK, KATHY RUSSELL, LAUREN SALZMAN, and NANCY SALZMAN,<br><br>                            Defendants. | Case No. 1:18 Cr. 00204-NGG<br><br>**FILED UNDER SEAL**<br><br>**AFFIRMATION IN SUPPORT OF RANIERE'S MOTION TO SUPPRESS**<br><br>**Submitted on January 9, 2019** |

      1.       I am of counsel to the law firm of Brafman & Associates, P.C., am licensed to practice law in the State of New York and a member of the bar of this Court. As counsel for the defendant, Keith Raniere, I make this declaration in support of Raniere's Motion to Suppress Evidence and Motion for a Hearing Pursuant to Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978).

      2.       This declaration is made upon information and belief, the sources of which are discovery material provided by the United States Attorney's Office for the Eastern District of New York ("EDNY"), witness interviews and other investigative efforts undertaken by the defense to date, conversations with numerous individuals and other documents and materials comprising counsel's file in this matter.

## BACKGROUND

      3.       The Government has sworn to and executed three search warrants in the past year-and-a-half to search and seize Raniere's email account. Since December of 2018, the Government has also executed warrants on Allison Mack's iCloud account, Lauren Salzman's iCloud account, Clare Bronfman's gmail account, and the accounts of two of Raniere's long-time partners—one of

whom was dead at the time the warrants were signed and executed. In March 2018, the day of Raniere's arrest, the FBI also executed search warrants on 3 Oregon Trail (Nancy Salzman's home) and 8 Hale Drive in Halfmoon, a small community outside of Albany, New York.

4.  As set forth below, the affidavits in support of these warrants suffer from deficiencies, misrepresentations and omissions and are materially misleading as to significant facts.

5.  As to the first warrant, signed by Honorable Marilyn D. Go on December 3, 2017, this warrant sought to search the Apple IDs associated with Keith Raniere, Lauren Salzman and Allison Mack. (Exhibit 1, "the December Affidavit.")

6.  The second warrant, signed by the Honorable Cheryl L. Pollak on January 18, 2018 sought to search and seize Raniere's yahoo email account. (Exhibit 2, "the January Warrant.")

7.  Finally, on October 15, 2018, yet another affidavit was submitted in support of two warrants: (1) authorizing further searches and seizures of the information already obtained from Yahoo pursuant to the January Warrant, and (2) requiring Yahoo to disclose further information regarding Raniere's email account for the time period of May 26, 2008, when the account was created, through March 27, 2018, when Raniere was arrested. (Exhibit 3, "the October Warrant" ¶ 33.)

8.  Upon my initial review of the vast discovery in the case, including the discovery that the EDNY had in their possession at the time of each warrant (yet only made available to defendants on December 7, 2018), the warrant affidavits contained material misstatements and omissions, necessitating a hearing under Franks v. Delaware, 438 U.S. 154, 98 S. Ct. 2674 (1978).

### A. The December 2017 Warrant

9. The December 2017 Warrant sought to establish probable cause to show that the Apple IDs contained evidence of "violation of 18 U.S.C. 875 (interstate threats to injure property or reputation), 18 U.S.C. 1591 (sex trafficking by force, fraud or coercion), 18 U.S.C. 1589 (forced labor) and 18 US.C. 1962 (engaging in a pattern of racketeering activity). (Ex. 1 ¶ 4.) The affidavit focuses on the allegations regarding the sorority—sometimes called "DOS" or "The Vow." (Id. ¶ 1.) In an attempt to connect DOS to Nxivm, which is described as a "'professional business providing educational tools, coaching and trainings to corporations and people from all walks of life," (id. ¶ 2), the affidavit refers to the sorority as a "secret society within the organization Nxivm." (Id. ¶ 1.) The affidavit indicates that the agent has spoken to "former Nxians" who state that "participants are encouraged to keep attending classes and to recruit others into the organization," (id. ¶ 3), and that participants were "forced to take jobs working for the organization in order to earn money to pay tuition" (id.).

10. In an attempt to characterize Nxivm as a "cult" and a "multilevel marketing scheme" (neither of which has been ever charged as criminal conduct in this case), the affidavit described Nxivm as a vexatious litigation machine that has "filed numerous lawsuits against critics." (Id. ¶ 6.) Invoking press reports as a basis for a search warrant, the affidavit further states that "articles in Forbes, the Albany Times Union and Vanity Fair asked whether Nxivm was a cult. Nxivm and Raniere have filed numerous lawsuits against critics, including journalists." (Id.) Here, the affidavit materially omitted that the journalists from <u>both</u> the <u>Albany Times Union</u> and <u>Vanity Fair</u> hacked into the Nxivm servers to obtain client lists and non-public, proprietary information. By stating that Nxivm brings frivolous, vexatious litigation against "critics" without candidly stating that the "critics" were actually criminals who committed the crime of computer hacking,

3

the affidavit is materially misleading and false. The Government clearly knew that several "critics" were implicated in a criminal investigation by the Albany District Attorney and that several "critics" had been specifically named during the guilty plea allocution of John Tighe. (Ex. 4: Dkt. 116, Motion to Seal at Ex. 1: "I was told through Joe O'Hara that Toni Folet or Natale had access to it and I was told vaguely by Joe O'Hara that others did without being named, but when I asked him about Jim Odato he said he had access to the same information I did without specifically saying he had access to the passwords.") For the Government to conceal from the Court the existence of the criminal investigation and the guilty plea renders this factual assertion fundamentally false and misleading.

11. The Government also knew that once the widespread computer hacking was exposed, through multiple public filings, the Albany Times Union put James Odato, a journalist who conspired with others to commit this criminal act, on leave. He has not returned to the newspaper in the six years since these allegations came to light. In addition, as noted above and in prior filings in this case, a second blogger pleaded guilty to hacking into Nxivm's computer system, a fact that was also specifically omitted from the affidavit.

12. The nature of this omission was set forth in Raniere's Motion to Seal (Ex. 4), which states in relevant part:

> Over the last twenty years, people associated with Executive Success Programs ("ESP") and NXIVM have been the targets of threats, computer-hacking and blatant false statements on websites and other media specifically to damage their reputations, businesses and lives.

(Id. at 2.) Raniere specifically addressed the allegations that Nxivm is vexatious in lawsuits against others and described the depths of the criminal conduct that journalists engaged in:

> In addition to Parlato, a journalist from the Albany Times-Union, a former NXIVM consultant (who later went to prison in Texas for an unrelated conviction), and others, as detailed below, have been involved in misappropriating and printing

4

> stolen, confidential, personal information hacked and misappropriated from NXIVM's private computer files. These files contain *personal information* about people who sign up for ESP/NXIVM courses. This information is now in the hands of a federally indicted defendant (Parlato), journalists for a widely-read newspaper, and others. Despite the prosecution, conviction and incarceration of a member of a former Saratoga anti-NXIVM blogger who hacked NXIVM, the Times-Union and other "publications" remain in possession of stolen, confidential NXIVM information.

(Id. at 6.)

Raniere explained that due to Odato's criminal conduct, he was released from the newspaper:

> As for the Times-Union reporter, Odato, he was released from the paper in light of the allegations of his knowing complicity in the computer trespass of NXIVM's computer system and in causing stolen, secret information to be repeatedly published by the Times-Union. Following Tighe's theft of NXIVM information, Odato went on to write several articles based on the stolen information. Indeed, on October 8, 2007, just six days after an October 2, 2007 illegal breach of the NXIVM computer system traced to a Times-Union IP address, Odato published an article about NXIVM in the Albany Times Union in which he admitted being in possession of the NXIVM client list.

(Id. at 8.)

13. Although it is true that Nxivm did bring suit against these journalists and others, these journalists and other conspirators committed criminal conduct against the company, that amounted to stealing and printing Nxivm's client lists. The Government knew the truth at the time: that a group of conspirators agreed to commit the crime of computer trespass, that they illegally gained access to the confidential server of Nxivm, that they accessed confidential, proprietary, valuable information and that they stole this information as part of a demonstrated plot resulting in a criminal conviction. For the affidavit to characterize a convicted criminal and named co-conspirators as "critics" of Nxivm and for the affidavit to neglect to mention the guilty plea and the fact of a widespread criminal investigation makes the affidavit and the information in it

5

materially false and misleading. Unfortunately, the Court did not know any of this because the Government concealed it.

14. To continue the narrative that Nxivm retaliates against perceived critics with litigation, the affidavit also refers to alleged retaliation after many Nxians left the organization: "[s]ince defecting, several DOS victims have received 'cease and desist' letters from a Mexican attorney, and Clare Bronfman filed a criminal complaint against one victim in Canada." (Ex. 1 ¶ 24.)

15. Once again, the affidavit materially omits that that the DOS "victim" (whose name is Sarah Edmondson) stole and misappropriated Nxivm corporate documents upon leaving Nxivm. This is information that the Government had in their possession at the time of this affidavit, as it was obtained from the Canadian authorities when their investigation began. (See NXIVM00255121 - NXIVM00255124.)

16. In Raniere's Motion to Seal, he expanded on Edmondson's criminal conduct:

Between June 4 and June 8, 2017, NXIVM administrators discovered that their systems were being accessed in Canada and that data in the NXIVM servers were being deleted and manipulated. Upon further investigation, the undersigned counsel has learned that three accounts logged in and accessed the NXIVM servers: the accounts of J.O., Jennifer Kobelt and Sarah Edmondson. Edmondson was a former high-ranking NXIVM member, recruiter and ESP Vancouver center co-owner. At the end of May 2017, Edmondson resigned from NXIVM, telling her friends within the community that she wanted to focus on her family and not lead the ESP Vancouver Center anymore. Her assistant, Jennifer Kobelt, was also a long-time client of NXIVM's and an assistant to Mark Vicente, another co-owner of the ESP Vancouver center who had recently resigned.

While Edmondson, Kobelt, and J.O. were previously authorized to legitimately access the system (prior to their resignation), suddenly their login credentials were used *58 times* over the course of five days. Those same accounts then deleted data, stole ESP student profiles and documentation and cancelled over $100,000 worth of credit card payments. This amounts to intentional criminal conduct where the names, financial data and other identity information were unlawfully accessed and misappropriated.

6

>Specifically, on June 4th, Kobelt and others' accounts logged into the NXIVM system and changed their profiles (i.e. names, *but not passwords*) to mask the identities of who was logging into the system. The accounts continued to be used. For example, the account linked to J.O. logged into the system and viewed enrollment history information. The account linked to Sarah Edmondson logged into the system the same day and viewed a salesperson report. On June 5th, the account linked to J.O. again logged into the system and viewed enrollment history. Additionally, the account linked to Kobelt repeatedly logged into the system over those five days and cancelled dozens of payments from NXIVM clients. Kobelt's account also deleted at least 13 files from an area on the server designated to the clients that Vicente enrolled. Each of these files contained numerous NXIVM contracts with client information.
>
>This theft of client files gave those accessing NXIVM's servers access to confidential data including client lists, contact information and the intellectual property of the company. It is therefore not surprising that in counsel's investigation of this case, we have discovered that Edmondson, together with others including Vicente were able to contact nearly every NXIVM client and harass them through calls, Telegram and WhatsApp messages after this date—messages that continue to the present.

(Ex. 4: Dkt. 116, Motion to Seal at 8-9.)

17. Yet, the Government materially omits that the reason for filing this criminal complaint due to the theft and misappropriation of these corporate records. Instead, it portrays Edmondson as a victim who has not committed any wrongdoing.

18. The affidavit also falsely stated that Raniere evaded law enforcement, specifically that he fled to Mexico in response to a New York Times article. The affidavit states, "[i]n or around November 2016, several weeks after the New York Times broke a story on DOS, and days after the FBI began interviewing witnesses, Raniere flew to Mexico with Clare Bronfman."[1] (Ex. 1 ¶ 23.)

---

[1] The Government also repeated this in the October affidavit—after Raniere set the record straight—stating that they had probable cause to search the account because "[a]ccording to travel records, Raniere's departure from the United States coincided with the beginning of the FBI's investigation into Raniere's criminal conduct." (Ex. 3 ¶ 8.)

7

19. As we have already demonstrated to this Court over the course of several bail motions, this statement is false and completely misrepresents the facts. (See Dkt. 43; Dkt. 191; Dkt. 222, Court 12/5/19 Order Denying Bail at 7.) In recklessly misrepresenting the facts, the Government did not include the Custom and Border Patrol (CBP) records in its possession in any of the warrants. These records show that Raniere and Bronfman were in Mexico <u>before</u> <u>The New York Times</u> article, and then flew back to Albany <u>after</u> it was published. (<u>See</u> Ex. 5: Raniere CBP Records; Ex. 6: Bronfman CBP Records.) The Government knew the truth because it had the CPB records, yet it intentionally changed the timeline concerning the <u>Times</u> article to falsely convey to the Court that Raniere intentionally evaded law enforcement by fleeing the jurisdiction to Monterrey, Mexico because of the <u>Times</u> article when the Government <u>knew</u> he was there beforehand.

20. In Raniere's First Motion for Bond, we corrected this misrepresentation that the Government has repeated over the course of this case, stating in relevant part:

> These statements are inaccurate and are belied by documents and records in the Government's possession which they have overlooked and not provided to the Court. Contrary to paragraph 34 of the Complaint, Raniere had flown out of the country prior to his trip to Mexico in November 2017, and the circumstances surrounding his trip to Mexico were not to evade law enforcement's investigation. In fact, Raniere and the mother of his child were seeking to comply with United States law. The goal was not to travel south to Mexico, but rather north to Canada.
>
> \*   \*   \*   \*
>
> [D]ocumentary evidence conclusively shows that Raniere and the mother of his child left the United States on the precise date that her visa was to expire and that they did so to avoid any violation of United States law.
>
> Additionally, their entry into Mexico was *prior to* the publication of The New York Times article "revealing the existence of DOS." Ironically, and contrary to the Government's flight theory due to The New York Times story, the day The New York Times published the article on DOS, Raniere flew back to Albany from Mexico. See Ex. 7: Raniere Flight to NY. His flight itinerary was sent to his Yahoo! email account, on which the Government has executed a search warrant, yet they have still represented in their multiple public filings that prior to November 2017,

8

  he had not flown out of the country since 2015—ignoring that Raniere had traveled to Mexico weeks earlier. Raniere stayed in Albany until November 10, 2017 (several weeks after The New York Times published its article), to be at his former partner's home on November 7, 2017, the one year anniversary of her passing.

(Dkt. 43, Motion for Bond at 12-13.)

  21. The Government has never denied having the CBP records which show Raniere was in Mexico before the <u>Times</u> article. However, the Government nonetheless provided an account to the Court signing the warrant that Raniere went to Mexico because of the <u>Times</u> article when all the while it knew Raniere was in Mexico before the article was published.

  22. Additionally, the affidavit states that Raniere is "now reported to be living in Monterrey, Mexico, where Nxivm maintains a center, with a member of his harem, who is a branded DOS slave." (Ex. 1 ¶ 23.) The Government knew, at all points in their investigation, that the woman Raniere was living with—the mother of his child—was not a member of DOS and was not "branded." Yet, the affidavit includes this language to make it appear as if Raniere was hiding with a "DOS victim."

  23. The affidavit next focuses on Lauren Salzman and what he claims to be her efforts to recruit women, including Jane Doe 3 and Jane Doe 4,[2] into DOS.

  24. The affidavit states that "[b]oth Jane Doe 3 and Jane Doe 4 were seriously committed to Nxivm and felt that they were stalling in their Nxivm careers, so they saw DOS as a way to move up the Nxivm ranks." (Ex. 1 ¶ 43.) This statement is obviously false. <u>First</u>, as the Government itself alleges, DOS is secret from Nxivm. (<u>Id.</u> ¶ 1.) The entire purpose of DOS and the collateral was to be secret from anyone else within Nxivm. By December 2017, the Government already spoke to members of Nxivm's Executive Board, who would surely have told

---

[2] Counsel believes that Jane Doe 4 in the warrant affidavit is Sarah Edmondson. Jane Doe 4 in the Indictment is ■■■.

9

them that anyone's participation DOS did not factor into promotions on the Stripe Path. Second, both Jane Doe 3 and Jane Doe 4 were already high-ranking members. Jane Doe 3 was a founding member of Nxivm's San Francisco Center and high-level coach in Nxivm at the time she enrolled in DOS and was enrolled in Nxivm's University program at the time she enrolled in DOS. Jane Doe 4, Sarah Edmondson, was the owner of Nxivm's Vancouver Center and was "Sr. Proctor" on the Stripe Path—only one level below Counselor. Lauren Salzman was also Sr. Proctor. Out of only three people listed as "Counselor" on the Stripe Path, two are dead. Therefore, she was at the same level on the Stripe Path as Salzman.

25. After falsely stating the reasons for two of Lauren Salzman's members joining, the affidavit misrepresents Edmondson's knowledge of Raniere's participation in DOS. The affidavit discusses the branding ceremony, stating "[a]t one point, while Jane Doe 4 was filming, she noticed a text come in from "KAR" asking, in sum and substance, how the branding was going. At the time, Jane Doe 4 assumed "KAR" stood for Karen Unterriner, a high-ranking woman in Nxivm, who she assumed was Lauren Salzman's slave. Jane Doe 4 now believes the message was from Raniere, whose middle name is 'Alan.'" (Id. ¶ 48.) This statement is demonstrably false and the Agent knew it at the time of signing this affidavit, and every other affidavit.

26. On December 7, 2018, the EDNY turned over a memorandum written by blogger Frank Parlato and actress Catherine Oxenberg ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ hat is titled "Criminal Activity involving KR 11-12." (Ex. 7: Parlato and Oxenberg Memorandum.) According to Catherine Oxenberg's recent book titled Captive, she states that she gave this memorandum to authorities in November of 2017. Moreover, the properties of the document indicate that Oxenberg last modified the document on November 11, 2017—three weeks before Agent Lever signed the affidavit.

27. In this memorandum, Parlato and Oxenberg, who have both admitted multiple times that they spoke with Edmondson prior to the Government opening an investigation, write:

> At one point, Edmonson [sic] was asked to hold Lauren Salzman's cell phone. She saw a text come in from Keith asking how the girls were doing. She was previously unaware that he was involved with/guiding/ or monitoring the activities of DOS.

(Id. at p. 3.) Yet, just two weeks later, the Agent swears to an incredible and unbelievable statement that Edmondson supposedly believed that KAR actually stood for someone named "Karen." (Ex. 1 ¶ 48.)

28. This warrant did not turn up any iCloud account or Apple ID for Raniere because Raniere does not have an iPhone, has never used an iPhone, and does not have an Apple or iCloud account. Therefore, the FBI did not seize anything of Raniere's pursuant to this search warrant.

29. This warrant did find information from Lauren Salzman's account which included, according to the Government, emails "including about DOS and efforts to silence defectors. Most of Salzman's emails had been deleted but some were recovered." (Ex. 2 ¶ 47.)

**B. The January 2018 Warrant**

30. Nearly two months later, on January 18, 2018, another affidavit was submitted, this one in support of an application for a search warrant of "keithraniere@yahoo.com." (Ex. 2 ¶ 1.) Despite continuing the investigation and speaking to numerous witnesses in the intervening months, the affidavit is substantially similar to the December one. <u>The first 24 paragraphs are identical.</u> The Government did not change, correct or make complete any of the omissions or misstatements from the December Warrant. Instead, it continued to mislead the Court as to the facts underlying the warrant.

31. The January 2018 warrant affidavit contains an additional paragraph in which the agent relies on a blog "that covers Nxivm." The Affidavit stated "people present at the [January

11

Nxivm] meeting reported that Mack, Salzman, and another woman, Nikki Clyne, claimed to be the founders of DOS and further stated that Raniere was not involved in DOS." (Id. ¶ 25.)

32. The Agent seems to be relying on a blog post named <u>Lauren, Allison and Nicki take responsibility for DOS, at Coaches Summit; 'Keith had nothing to do with it'</u>, https://frankreport.com/2018/01/16/lauren-allison-and-nicki-take-responsibility-for-dos-at-coaches-summit-keith-had-nothing-to-do-with-it/ (Jan. 16, 2018.). This is a striking addition to the affidavit because not only is it the only substantial change, but it also relies on a blog that is (1) written by a defendant indicted with 19 felonies in the Western District of New York, and (2) the writer was not actually at the meeting on which it reported. The post simply attributes its post to "sources."[3]

33. This blogger is the same gentleman who claims to have law enforcement sources, including Richard Donoghue, the United States Attorney of the EDNY, himself. (See Ex. 4 at 6, 10-11.)

34. The affidavit conveys to the Court that this blog is something on which the Court should rely in concluding that probable cause exists for a search. However, the affidavit fails to inform the Court of the essential nature of the blog and its author: that the blogger is under

---

[3] Notably, the affidavit in support of a warrant to search and seize Bronfman, Marianna Fernandez and Pamela Cafritz's email accounts signed two months later also includes this language relying on this blog. (Ex. 8: March Affidavit ¶ 28.) It touts the reliability of the blog:

> On or about February 18, 2018, citing "numerous" local sources, the blog reported that Raniere may have left Monterrey and may now be living in the coastal town of Puerto Vallarta, Mexico. The blog has previously had accurate information regarding Raniere's whereabouts.

(Id. ¶ 32.)

12

indictment, that the blogger had been indicted for stealing $1 million from Bronfman[4] and that the professed goal of the blogger was to bring disrepute to Raniere. These are clearly material factors of which the Court signing the warrant should have been clearly told. However, the Government concealed these facts from the Court.

35.    Moreover, the Government once again tries to characterize Raniere's attempt to "silence defectors" by relying on an email between Raniere and Salzman regarding Edmondson. This email states: "I understand that you do not want to be part of the sorority and that is your right. However, you gave your word that you would keep information about it confidential. You pledged things of importance as a guarantee that you would uphold confidentiality and you have violated this agreement…." (Ex. 2 ¶ 49.)

36.    Here, the Government materially omits that Salzman and Raniere <u>never</u> engaged in any actions to "silence" Edmondson. To the contrary, Salzman let Edmondson freely leave the sorority without any so-called repercussions. Salzman never released Edmondson's collateral.

**C.    The October 2018 Warrant**

37.    The Government seized information from Raniere's account from January 1, 2015 through the present. (Ex. 2 ¶ I.) The Government then used that information to secure a broader warrant for the period of May 26, 2008 through March 26, 2018. (Ex. 3.)

38.    On October 15, 2018, the agent swore to another affidavit in support of two warrants and opined that the January Warrant could provide the "necessary authority" to search the information already obtained for "evidence of [these] additional crimes," since the "[January]

---

[4] Following the indictment in this case, the U.S. Attorney for the Western District of New York superseded the indictment against Parlato, removing the charges related to Bronfman but maintaining the eighteen other fraud charges against him. 15-cr-00149 (JJM) (WDNY) (Dkt. No. 118), Superseding Indictment filed 5/23/18.)

13

Warrant contemplates seizure of, among other things, 'contraband, fruits, evidence and/or instrumentalities' of 18 U.S.C. § 1962 (engaging in a pattern of racketeering activity),' '[e]vidence related to the organizational structure and hierarchy of Nxivm,' and attribution evidence." (Id. ¶ 15 & n.1). However, the October 2018 warrant affidavit sought an additional warrant pertaining to that prior Yahoo response allegedly "out of an abundance of caution." (Id. ¶ 15).

39. As part of the October Warrant, the Agent summarized some of the evidence in the alleged schemes, yet misrepresented and materially omitted certain facts.

40. Next, the Agent describes an apparent scheme to traffic Jane Doe 4 for labor and services and document servitude. The Agent states that "Jane Doe 4 was confined to a room as punishment after she developed romantic feelings for a man who was not Raniere."[5] (Id. ¶ 16(e).) "After nearly two years in the room, Jane Doe 4 left the room and, as threatened, she was driven by CW-1 to Mexico without any identification documents." (Id.)

41. This is a highly misleading, incomplete and fundamentally false representation. The truth, as the Government knew when it submitted the affidavit, was that the woman was living with her family. The "room" was in the home of her family. She was driven to Mexico by her father. These are not mere details. These are critical facts that the Court should have known when it signed the warrant, facts that change the essential nature of the story being conveyed. Instead, the Government falsely painted a picture for the Court of what it contended to be Mexican-related trafficking. A number of indisputable facts that the Government obviously found decidedly inconvenient in its false narrative include (1) that the woman was living in her home, (2) that the room was in her home where she lived with her family and (3) that the woman's father drove her to Mexico where she was from.

---

[5] As stated, Jane Doe 4 in the Indictment is ▮▮▮ not Sarah Edmondson.

42. The Government has moreover purposely misled this Court by including snippets of emails, out of context, to show that Raniere and Salzman were scheming to keep the girl in the room. In fact, the Government's own evidence show that Raniere was not forcing her to stay in the room. Raniere wrote to Salzman in November of 2010:

> You do not want to buy into [Jane Doe 4's] tantrum or externalizations. <u>Likewise you do not want to tell her what to do or how to be.</u> You might try asking her the difference between being in the room for a day... or as long as she has. From a present time perspective there is no difference except suffering and entitlement....

(Ex. 9, Email Chain Between Lauren Salzman and Keith Raniere) (emphasis added.)

43. Next, the affidavit falsely states that co-conspirators prevented Jane Doe 4 from receiving her identification documents, when the emails clearly show that it was the <u>family's</u> decision not to provide these documents to her. The affidavit provides, "[o]nce in Mexico, according to Jane Doe 4 and as corroborated by emails I have reviewed, Jane Doe 4 repeatedly reached out to her family by email for help with her identification documents. Jane Doe 4's family, including her brother, were instructed by co-conspirators, including Lauren Salzman, not to send Jane Doe 4 documents and to demand Jane Doe 4 resume performing services for the members of the Enterprise in order to see her family again." (<u>Id.</u>)

44. In fact, the emails show just the opposite. (<u>See</u> Ex. 10: Feb. 26, 2012 Email.) Specifically, in an email from Jane Doe 4's father to his family, copying Lauren Salzman and ▓-▓, the father states the following facts which contradict the Government's theory:

- "Driving south while in San Antonio [Jane Doe 4] said she wanted to do things right and ▓▓▓▓ asked about fully honesty." (<u>Proving that the father drove her to Mexico, not just</u> ▓▓▓▓)

- "She had 10 weeks to do 3 tasks while in Mexico 1.-earning her living down there. I just gave her 1660 pesos cash, around 128 US and I paid the bus ticket to Merida. 2.- Deliver book reports results. 3.- Getting her USA visa. I would pay the fees but [Jane Doe 4] needed to do all the paperwork." (<u>Contradicting that the book reports were "performing services for members of the Enterprise"</u>)

15

45. Moreover, emails show that rather than Salzman "instruct[ing]" Jane Doe 4's brother to not send Jane Doe 4 her documents, Salzman was <u>copied</u> on emails where the family was discussing what to do with the identification documents. Specifically, in the attached email, where Jane Doe 4's father forwards a chain between he and Jane Doe 4 to his <u>family</u>, copying Salzman and CW-1, her brother is the first to respond and say "if she wants those things (papers) she has to push and work for them…" (Ex. 11: Feb. 29, 2012 Email from Flofito.)

46. Accordingly, in the multiple warrants for Raniere's accounts, the Government has repeatedly misrepresented, omitted and recklessly described the facts. In doing so, they have risen to the level articulated in <u>Franks</u>, which necessitates a hearing in this instance.

Dated:     January 9, 2019
           New York, NY

                                                                      Respectfully submitted,

                                                                       /s/
                                                                      Marc Agnifilo, Esq.