UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- v. -<br><br>KEITH RANIERE, CLARE BRONFMAN, ALLISON MACK, KATHY RUSSELL, and LAUREN SALZMAN,<br><br>                      Defendants. | Case No. 18 Cr. 00204-NGG<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**Submitted on March 22, 2019** |

**MEMORANDUM OF LAW IN SUPPORT OF KEITH RANIERE'S MOTIONS RELATED TO THE TRIAL DATE, MOTIONS TO DISMISS, MOTION FOR A BILL OF PARTICULARS, MOTION TO PRECLUDE AND MOTION FOR CCTV TESTIMONY**

 

**BRAFMAN & ASSOCIATES, P.C.**
767 3rd Avenue, 26th Fl.
New York, NY 10017
Tel: (212) 750-7800
Fax: (212) 750-3906

Marc A. Agnifilo, Esq.
Teny R. Geragos, Esq.
      *Of Counsel*

**DEROHANNESIAN & DEROHANNESIAN**
677 Broadway – Ste. 707
Albany, NY 12207
Tel: (518) 465-6420
Fax: (518) 427-0614

Paul DerOhannesian, II, Esq.
Danielle R. Smith, Esq.
      *Of Counsel*

*Attorneys for Defendant Keith Raniere*

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

MOTIONS RELATED TO THE TRIAL SCHEDULE .................................................................1

    A. April 8, 2019 Date for Jury Selection and April 29, 2019 Date for Opening Statements ..1

    B. Motion to Compel Witness Lists and Case-in-Chief Trial Exhibits on April 7, 2019.........4

MOTIONS TO DISMISS .........................................................................................................5

    A. Motion to Dismiss Racketeering Acts Two, Three and Four Because They Are Neither Related to a Pattern of Racketeering Activity, Nor Related to the Charged Enterprise ......5

    B. Counts Three, Four, Five and Eleven Must Be Dismissed for Lack of Venue....................8

    C. In the Alternative, Raniere is Entitled to a Bill of Particulars Because the Second Superseding Indictment Omits Critical Information Necessary for Him to Prepare His Defense ..............................................................................................................................10

MOTION TO PRECLUDE THE GOVERNMENT'S PROPOSED EXPERTS ..........................12

MOTION TO OBTAIN TESTIMONY FROM FOREIGN WITNESSES ...................................15

CONCLUSION.........................................................................................................................16

# INTRODUCTION

Defendant Keith Raniere respectfully seeks the following relief: (1) to keep the current trial schedule of April 8, 2019 for jury selection and April 29, 2019 for opening statements; (2) to compel the parties to exchange case-in-chief trial exhibits and witness lists on April 7, 2019; (3) to dismiss Counts Three, Four, Five and Eleven for lack of venue, and to dismiss racketeering acts Two, Three and Four due to the timing of the recent Superseding Indictment; (4) for a Bill of Particulars for the acts and counts included in the First Superseding Indictment; (5) to preclude the government's proposed experts due to the government's failure to provide sufficient notice pursuant to the agreed-upon deadline; and (6) to order CCTV testimony for material witnesses located abroad.

Raniere also joins in the following motions filed by his co-defendants:

- Clare Bronfman's Motions to Dismiss Counts One, Two and Eleven, Motion to Dismiss the S-1 Indictment, and Motion for a Bill of Particulars.

- Allison Mack's Motions to Dismiss Counts One, Two, Six, Eight, Nine and Ten, Motion to Strike Racketeering Acts Two, Three and Four, or in the alternative, a Rule 104 Hearing, and Motion to Preclude Experts as Untimely and Insufficient.

- Lauren Salzman's Motion to Dismiss Racketeering Acts Ten and Thirteen. (Dkt. 455.)

In the interests of time, rather than asking for a reply to the government's responsive papers, which would ordinarily be granted, Raniere instead asks only for oral argument on these motions in advance of a decision by the Court.

# MOTIONS RELATED TO THE TRIAL SCHEDULE

### A. April 8, 2019 Date for Jury Selection and April 29, 2019 Date for Opening Statements

Raniere reiterates his statutory and constitutional right to a prompt trial, a right that the government has steadfastly denied him for almost a year. At the last court conference, the

government searched for ways to yet again adjourn the Court's firm trial date. It gratuitously stated, for example, that is was in active plea negotiations with three defendants, (3/18/19 Tr. at 18), and suggested that may delay the trial. The government also expressed concern that its last-minute superseding indictment might spawn motion practice, stating "the government has an additional concern given the current trial date if the defendants have additional motions to raise".[1] But none of these things should stand in the way of the Court's firm trial date, especially when the government has already caused extensive pretrial delay of an incarcerated defendant who has been demanding a trial for almost a year. That the government is "in active plea negotiations with three additional defendants" is *not* a basis to continue to infringe on Raniere's right to trial. Whether or not a co-defendant pleads guilty can have no impact on a firm trial date. Raniere is not pleading guilty. He wants a trial. He wants a trial immediately. Moreover, he has been demanding a prompt trial for a year.

Moreover, the government's eleventh-hour indictment should not serve to keep a defendant in jail longer. It should serve rather as a wake-up call to the prosecution that it will have to work harder and devote additional resources to ensure that the defendants have a fair trial given the last-minute charges and the large amount of discovery that has yet to be turned over. The answer is never delay. The answer is always to work hard and get the job done.

Also, when this Court sets a firm trial date, which it has done repeatedly in this case, it is the obligation of the parties, especially the Department of Justice, to respect that date and to meet it. Indeed, this Court stated its intention to begin the trial with jury selection on April 8th and begin

---

[1] That Raniere was contemplating additional motions to raise "regarding evidence that was produced pursuant to a court order" (3/18/19 Tr. at 24) was, once again, a problem of the government's own making. This should not be a basis to continue the trial date. Raniere is no longer filing a motion related to the evidence produced pursuant to the Court Order.

Opening Statements on April 29th. (See 3/18/19 Tr. at 20.) We are ready. This Court has set several firm trial dates in this case, and Raniere's counsel has been ready to commence this trial on every date that the Court has set. This continues to be true, even though the government has superseded the indictment, adding serious additional counts last week requiring the defense to conduct a forensic examination of the new material.

Because the trial date in this case has moved several times and because this Court issued an order barring trial counsel from taking on other trials between January 1, 2019 and June 30, 2019, counsel for Raniere has scheduled a series of other large, complex multi-defendant trials for after the June 30th date in the Court's order. The Court will recall that in September 2018, this Court ordered that "[n]o attorney who has appeared…on behalf of, any party in this case may commit to participating in any other trial between January 1, 2019, and June 30, 2019, without first requesting (in writing) and receiving specific permission from this court." (Dkt. 138, Order Granting Complex Case.) Both Mr. Agnifilo and Ms. Geragos have abided by this Order and set their trial calendar accordingly. Therefore, if this Court moves the trial date, counsel will not be available to try the Raniere case until March of 2020 due to the following series of cases that have been scheduled around the Raniere trial schedule and around this Court's order:

- On July 29, 2019, Mr. Agnifilo and Ms. Geragos commence a multiple week jury trial before the Honorable Jill Parrish in the District of Utah in United States v. Kingston, et al., 18 Cr. 365 (JNP). (See Ex. 1, March 14, 2019 Order.)[2] In this case, brought by the U.S. DOJ Tax Division, the Government alleges a massive $1.2 billion tax fraud scheme involving allegations that over $130 million was laundered to business interests in Turkey. Raniere's counsel here represent the lead defendant, who has been incarcerated awaiting trial since his arrest in August 2018. The Kingston trial was recently adjourned from a date in May 2019 to July 29, 2019 solely because this Court adjourned the Raniere trial, over our objection, from March 2019 to April 2019. Finally, it bears noting that three of the five defendants in the Kingston matter are incarcerated and two have significant health concerns. Because Judge Parrish has already adjourned the Kingston trial once due to the

---

[2] Mark J. Geragos, lead trial counsel for Ms. Clare Bronfman is lead trial counsel for co-defendant Lev Dermen in that matter.

3

latest adjournment of the Raniere trial, she has stated on the record that she is not moving the trial date again and that July 29, 2019 is a firm date.

- In September 2019, immediately following the Kingston trial, Mr. Agnifilo is scheduled to commence a several-month, multiple defendant trial in New York County Supreme Court in the case of People v. Dilber Kukic, Ind. No. 74/2016. This case involves homicide charges related to a natural gas explosion which leveled three Manhattan buildings, killing two people and severely injuring dozens more. This Court will recall that in October 2018, Raniere's counsel requested permission from this court, as required by its order, to commence the Kukic case on May 6, 2019. (Dkt. 174.) This Court denied that request (see Ex. 2, Dkt. 176). Accordingly, this trial has been set to begin in September 2019.

- On November 4, 2019, Mr. Agnifilo is scheduled to begin trial in the Southern District of New York in United States v. Goldstein, 18 Cr. 217 (KMW). (See Ex. 3, KMW Sept. 25, 2018 Order.) This is a date that Judge Kimba Wood specifically chose due to counsel's unavailability arising from the Raniere and Kukic trials. Counsel has been ordered to inform Judge Wood "of any adjournments or guilty pleas in his cases set for trial between October 15, 2018 and November 4, 2019." (Ex. 4, KMW Oct. 17, 2018 Order.)

- Finally, Mr. Agnifilo and Ms. Geragos are scheduled to begin trial in New York Supreme Court in People v. Pierides, Ind. No. 732/2018 on January 6, 2020. This trial has been scheduled by the Administrative Judge in New York County and was set based on the trials in Raniere, Kingston, Kukic and Goldstein.

In closing, counsel for Raniere has abided by this Court's Order and has not scheduled a trial in another matter between January 1, 2019 and June 30, 2019, causing the trial schedule outlined above. It would not be fair to Raniere, who has been requesting a prompt trial since the inception of this case, to have to wait another year while incarcerated in MDC due to the government's superseding indictment from last week. Therefore, Raniere respectfully requests that the Court keep the dates for the current trial schedule.

**B. Motion to Compel Witness Lists and Case-in-Chief Trial Exhibits on April 7, 2019**

Raniere renews his request, originally made in Docket 422, for the Court to set April 7, 2019 as the deadline to exchange case-in-chief trial exhibits and witness lists. (Ex. 5, Dkt. 422.) The government has argued that they should defer this discussion until they "have more clarity as to who the parties are going to be and what counts are being charged." (3/18/19 Tr. at 34.) This

4

argument does not have merit, as Raniere is *not* engaged in plea negotiations with the government and is charged in virtually every racketeering act and count. Therefore, many exhibits that will be admitted against Raniere will not change based on "who the parties are going to be." (Id.)

Counsel realizes that this Court's March 20, 2019 Minute Order states that the Court will address these deadlines at the next status conference scheduled for April 4, 2019. However, Raniere's concern is that <u>if</u> the Court is inclined to grant our request for exhibit lists and witness lists on April 7th, April 4th will be too short notice for the government to produce these materials to the defense. Counsel believes that in light of the lateness of the superseding indictment, it is fair and reasonable to have a deadline of April 7, 2019 for witness lists and case-in-chief trial exhibits.

## MOTIONS TO DISMISS

### A. Motion to Dismiss Racketeering Acts Two, Three and Four Because They Are Neither Related to a Pattern of Racketeering Activity, Nor Related to the Charged Enterprise

Racketeering Acts Two, Three and Four are neither related to the other racketeering acts so as to be part of a pattern of racketeering activity, nor are they related to the charged enterprise. The evidence consists of two sets of photographs that the government contends were taken by Raniere on November 5, 2005 and November 24, 2005 ███████████████████████████████████ ███████████████████████████████ There is also no indication from the photographs who took them or even whether they were taken by another person or rather from a self-timing function on a camera. Based on the purported dates on which the photographs were taken, the government contends that Jane Doe 2 was fifteen years of age at the time of the photographs.

The government maintains that these photographs were among upwards of 35,000 files recovered from a hard drive that was seized from 8 Hale Drive, in Halfmoon, New York, a location

5

that the government alleges was a library where Raniere spent a great deal of time and which was also open to other members of the community. A cursory review of electronic data accompanying the images indicates that the photos were never accessed after being taken. In other words, the cursory review reveals that the photos were obviously taken with a camera device, loaded onto a computer of some sort and then saved, likely as part of an automatic backup, to a hard drive which, according to the government, was inside 8 Hale Drive. However, at no time, according to the electronic information associated with these images, were these photographs ever accessed electronically or reviewed by anyone.

That these photographs were taken allegedly on November 2 and November 24 and then never looked at by anyone for fourteen years raises a serious question about what role these unreviewed photographs can possibly have on the affairs of the charged enterprise. Simply put, there is no role that these unreviewed photographs could possibly have in the affairs of the enterprise. In this regard, there is no connection or nexus between these photos and the enterprise for the simple reason that no one aside from the person photographed or allegedly Raniere, whom the government claims took the photos, even knows of their existence.

Therefore, in addition to the tremendous prejudice caused by the last-minute addition of these highly inflammatory charges carrying mandatory minimum fifteen-year jail sentences, the racketeering acts corresponding to these photos are not sufficiently connected to either the enterprise or the other racketeering acts.

In terms of the relationship between racketeering acts and the enterprise, while the RICO statute allows this relationship to take diverse forms, there must nonetheless be some relationship. For instance, cases have found that racketeering acts are related to the enterprise where: (1) the racketeering acts furthered the goals or benefited the enterprise, see United States v. Polanco, 145

F.3d 536, 541 (2d Cir. 1998); United States v. Irizarry, 341 F.3d 273, 301 (3d Cir. 2003); (2) the enterprise or the defendant's role in the enterprise enabled the defendant to commit, or facilitated the commission of, the racketeering act, see United States v. Bruno, 383 F.3d 65, 84 (2d Cir. 2004); (3) the racketeering acts were committed at the behest of, or on behalf of, the enterprise, see United States v. Daidone, 471 F.3d 371, 373 (2d Cir. 2006); or (4) the racketeering acts had the same or similar purposes, results, participants, victims or methods of commission.

In regard to the two unreviewed photographs from 2005, none of these factors apply. First, being secret, the photographs did not further the goals of or benefit the enterprise. Indeed, it is apparent that none of the enterprise's members (save allegedly Raniere) even knew of the photos' existence. Therefore, the government is hard-pressed to show how secret photos benefitted the enterprise. Second, to the extent that the government's theory is that Raniere took the photos, without any evidence that this is in fact the case, there is no reason related to the alleged enterprise for the photos being taken. Third, there is no theory that the enterprise caused the photos to be taken insofar as there is no indication anyone in the enterprise (again, aside from Raniere, as alleged) knew of the photos' existence. Fourth, to the extent that the government would attempt to connect the 2005 photographs to the concept of collateral in DOS, it must be remembered that DOS was not created until 2015, a full ten years after these photographs were allegedly taken. Therefore, any connection between the DOS collateral and the 2005 photographs is too remote to be relevant, while being highly prejudicial.

To be clear, Raniere's first argument that racketeering acts two, three and four be severed from the rest of the indictment is the immense prejudicial impact of returning these charges twenty-six days before jury selection when the defense lacks sufficient time to conduct an adequate examination of this evidence and investigation of the circumstances surrounding this evidence. As

7

stated on the record on March 18, 2019, the defense must launch a rushed forensic examination to determine what can be learned from the metadata and other circumstances related to these electronic images. Moreover, the defense must also conduct a significant investigation in another country that may shed light on this evidence. By returning these charges twenty-six days before jury selection, the government has created tremendous prejudice to Raniere and his counsel.

In this regard, the government has created a tension between two serious due process rights of a defendant. The first right is to be tried promptly, especially when the defendant is in jail. The second right is to be able to prepare a defense to serious charges. The government has virtually ensured that one of these significant due process rights will, in effect lose out to the other. However, if the Court dismisses the racketeering acts added to this indictment eight days ago, it removes the due process dilemma the government has caused. If the Court dismisses the three racketeering acts, the Court preserves both the defendant's right to a prompt trial and his right to prepare defenses to all the charges in the indictment.

Given the history of this case, where Raniere's trial has been repeatedly delayed, and where the government has returned significant charges twenty-six days before jury selection, the admittedly unusual remedy of dismissal of particular racketeering acts is appropriate and indeed is necessary to avoid a problem of constitutional dimension. Therefore, under the facts of this case, the Court should dismiss these racketeering acts from the superseding indictment.

**B. Counts Three, Four, Five and Eleven Must Be Dismissed for Lack of Venue**

Counts Three, Four, Five and Eleven allege crimes that did not take place in the Eastern District of New York and must be dismissed. The government indicting crimes occurring wholly in another District has been an ongoing problem in this case, and despite saying that it would cure the problem, the government has only exacerbated it in the most recent indictment. Specifically,

8

in response to defense counsel's argument that Count Seven of the First Superseding Indictment must be dismissed for lack of venue,[3] "[t]he government agree[d] that the Indictment alleges that Count Seven is venued in the Northern District of New York . . . [and that] if a superseding indictment is not returned to cure the venue defect, the government will consent to the severance of Count Seven and its transfer for trial in the Northern District of New York." (Dkt. 248 at 56.)

However, instead of curing the fatal flaw with the Second Superseding Indictment, the government chose to repeat the venue defect from Count Seven (which is now Count Eleven) and also charge three additional Counts venued entirely within the Northern District of New York: Counts Three, Four and Five. The government has never – not in their opposition to defense counsel's original motion to dismiss, during oral argument on that motion, or during the court conference held before Your Honor on March 18, 2019 – articulated a basis on which they could prosecute these four improperly venued Counts beyond Raniere waiving venue. (See 3/18/19 Tr. at 12.)[4] Nor could the prosecution articulate such a basis as the Federal Rules make clear that "the government *must* prosecute an offense in a district where the offense was committed," which the government alleges is entirely within the Northern District for Counts Three, Four, Five and Eleven. Fed. R. Crim. P. 18 (emphasis added). To be clear, Raniere does not consent to the change in venue.

---

[3] Raniere joined in Defendant Bronfman's Motion to Dismiss Count Seven. Dkt. Nos. Dkt. 194, 196, 201.

[4] THE COURT: . . . as Mr. Agnifilo pointed out in his letter, you had indicated that that was a charge that could be or should be, I'm not sure which, sent up to the Northern District of New York if the government sought to proceed on it, is that a fair statement?
    MS. PENZA: That is correct, Your Honor, . . . and certainly if the defendant chooses not to waive venue regarding the child pornography substantive counts, we will seek to have those brought in the Northern District of New York.

9

Accordingly, for the reasons set forth above and in defense counsel's original motion to dismiss Count Seven (now Count Eleven), Dkts. 194, 99. Raniere respectfully requests that Counts Three, Four, Five and Eleven of the Second Superseding Indictment be dismissed for lack of venue.[5]

### C. In the Alternative, Raniere is Entitled to a Bill of Particulars Because the Second Superseding Indictment Omits Critical Information Necessary for Him to Prepare His Defense

At the outset, Raniere renews his motion for a Bill of Particulars insofar as the Racketeering Acts and Substantive Counts included in the First Superseding Indictment are now encompassed by the Second Superseding Indictment. (See Dkts. 193, 194.) Raniere further submits that this Court should Order the government to provide a Bill of Particulars as to the new Racketeering Acts – namely Acts Two, Three and Four.[6] With respect to the interstate element, the Second Superseding Indictment merely tracks the language of 18 U.S.C. § 2251(a) for Racketeering Acts Two and Three[7] and 18 U.S.C. 2252(a)(4)(B) for Racketeering Act Four.[8] In so doing, the government fails to provide the facts and information necessary to permit Raniere to prepare a meaningful defense with only three weeks before the commencement of jury selection. See United States v. Hillie, 227 F Supp. 3d 57 [D.D.C. 2017) (dismissing child pornography charges where the "indictment . . . is, for the most part, a verbatim recitation of the broad and varied statutory

---

[5] As argued in defense counsel's Letter Motion of March 17, 2019 (Dkt. 436), as well as during the March 18, 2019 Court Conference, Raniere maintains that this Court did not have the authority to arraign him on the Northern District Counts. Fed. R. Crim. P. 5(c)(3).

[6] At this time, Raniere is not moving for a Bill of Particulars as to Counts Three, Four and Five as he anticipates those Counts will be dismissed for lack of venue.

[7] The government alleges that the "visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means." (Dkt. 430, ¶¶ 21, 22.)

[8] The prosecution alleges that the visual depictions "were produced using materials which had been mailed, and shipped and transported using a means and facility of interstate and foreign commerce and in and affecting interstate commerce." (Dkt. 430, ¶23.)

elements of the offenses that are charged . . . [and] fail[s] to provide adequate notice of the factual bases for the myriad, manifestly indistinguishable charges that the government has brought.").

Indeed, the Second Superseding Indictment fails to set forth any information demonstrating how the prosecution could prove the interstate element of an act committed approximately 14 years ago, such as: 1) the type of recording device used to create the images; 2) where the recording device was manufactured; and 3) the means by which the images were transmitted. Although the prosecution has made the images available for inspection by defense counsel, the government has not provided any discovery materials establishing the interstate element. Courts have routinely ordered the Government to provide this crucial information in the form of a Bill of Particulars where the Indictment is silent as to that element and the discovery fails to provide the necessary information. See United States v. Salemme, No. CR. 94-10287 (MLW), 1997 WL 37530, at *4 (D. Mass. Jan. 13, 1997) ("To eliminate any possible confusion or unfairness, . . . the court is requiring the government to file a bill of particulars to identify and clarify the allegations in Counts 1 and 2 of the 4SI concerning the interstate or foreign commerce jurisdictional element."); United States v. Ard, No. 10-40108-01 (RDR), 2011 WL 686178, at *3 (D. Kan. Feb. 18, 2011) (ordering a Bill of Particulars where "[i]t is not clear from the Indictment what the government's theory is regarding how defendant's conduct satisfied . . . the interstate commerce element of the statute. . . . [and] the discovery provided by the government has not clarified the government's theory either"); See United States v. Williams, 679 F.2d 504, 510 (5th Cir. 1982) (finding no error in the trial court's refusal to order a bill or particulars where "[t]he parties agree that all of the evidence relied upon by the government to establish the interstate commerce element of the offense was made available to the defense prior to trial" including "a raft of discovery documents and stipulations").

11

Accordingly, Raniere respectfully requests that this Court Order the government to provide a Bill of Particulars as set forth in his original motion for a Bill of Particulars (Dkts. 193, 194) as well as to Racketeering Acts Two, Three and Four of the Second Superseding Indictment.

### **MOTION TO PRECLUDE THE GOVERNMENT'S PROPOSED EXPERTS**

Raniere respectfully requests that the Court preclude the government's proposed experts as (1) the experts were not disclosed by the Court's February 25, 2019 deadline and (2) they have offered no more than the experts' curricula vitae ("CV") and a broad generalization of the topics on which the experts would testify; (3) the government has still not noticed an expert for the third topic it intends to seek an opinion. The government has no excuse for waiting until this stage of the proceeding to notice experts, as the government has had *over a year* to plan its case, which has always included allegations of "social isolation" (see, e.g., Dkt. 4 at at 3; Dkt. 44 at 6; Dkt. 52 at 3-4), "victims of sex crimes" (same); and "extreme calorie restriction and sleep deprivation" (see, e.g., Dkt. 1, Complaint ¶¶ 22, 26, 46 56; Dkt. 4 at 2).

On February 19, 2019, after briefing by both the government (Dkt. 347) and the defendants (Dkt. 349), this Court directed the government to make its expert disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) *by no later than February 25, 2019*." (Ex. 6, Court Order.) On February 25, 2019, the government filed a bare bones four-page letter disclosing Dr. Michael Welner as a government expert—dedicating three pages to points of proposed testimony—and three bullet points to experts it "also anticipates offering." (Ex. 7, Dkt. 378, Gov't Initial Expert Ltr.) The government filed Dr. Welner's CV, but did not disclose (i) any report prepared by Dr.

12

Welner; (ii) the names of the experts it intended to call on its three vague bullet points; or (iii) any reports generated on any of the proposed topics.[9]

Nearly three weeks later, on March 15, 2019—the date the defense was originally supposed to disclose *rebuttal experts* to the government's proposed experts—the government filed a letter "to update the Court regarding its expert disclosures." (Ex. 8, Dkt. 429, Gov't Expert Update.) For the first time, the government disclosed the names of two experts it was "in the process of retaining" to offer testimony "on the subject of social isolation" and "the behavior of victims of sex crimes." (Id. at 1.)[10] The government also notified the Court that it is "still in the process of evaluating who it will offer to testify regarding the health effects of extreme calorie restriction and sleep deprivation." (Id.)

As the Advisory Committee notes to Rule 16 explain, the disclosure requirement "is intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with fair opportunity to test the merit of the expert's testimony through focused cross-examination." United States v. Ferguson, 3:06 Cr. 137 (CFD), 2007 WL 4539646, at *1 (D. Conn. Dec. 12, 2007); Fed. R. Crim. P. 16, advisory committee's note to 1993 amendment. Under Rule 16, if a party fails to comply with a court-imposed deadline, this Court has broad discretion in fashioning a remedy, including "ordering the exclusion of evidence." United States v. Lee, 834 F.3d 145, 158 (2d. Cir. 2016); United States v. Mahaffy, 2007

---

[9] This is so even when the "government [] proposed that the government and defense counsel simultaneously disclose experts that they intend to rely upon in their cases-in-chief on February 25, 2019." (Dkt. 347 at 1.) In other words, this date for disclosures was *first proposed* by the government.

[10] The government notified the Court it does not intend to call Dr. Welner as a witness based on the current trial date. (Dkt. 429 at 1.)

13

WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007) (citing United States v. Wilson, No. 04 Cr. 1016 (NGG), 493 F. Supp. 2d 484, 2006 WL 3694550, at *2 (E.D.N.Y. Dec. 13, 2006).)

This Court should preclude the government's experts because "[n]ot only were the disclosures late, more importantly, they were plainly inadequate. Both disclosures merely listed general and in some cases extremely broad topics on which the experts might opine." United States v. Ulbricht, 858 F.3d 71, 82 (2d. Cir. 2017). Here, on the ordered date to provide expert disclosure, the government noticed an expert that it now does not intend to call and three broad topics on which they have belatedly disclosed experts on two of those topics. The government has not disclosed any expert reports or opinions. Moreover, the government has not even disclosed an expert on which it will seek to opine on the third topic. As the purpose of the expert disclosure requirement is to "minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused crossexamination," Mahaffy, 2007 WL 1213738, at *2, this is exactly the type of the notice that Rule 16 contemplates.

If the prosecution's letter purports to be "notice" of expert testimony, it does not conform to the requirements of Rule 16(a)(1)(G). That rule requires that the notice contain a "summary" of the witness' testimony, and, "[t]he summary provided . . . must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). The prosecution's letter merely provides topics that the expert will address. The letter does not tell us what the expert's opinion is with regard to any of the topics. Thus, without these required details it is impossible for the court to exercise its gatekeeper function, and it is equally impossible for the defense to prepare any Daubert challenge and questioning of the expert or seek an expert. The proposed experts' opinions on the topics is necessary for the defense to determine

14

whether to call an expert and effectively prepare objections to and cross-examination of any of the prosecution experts.

Therefore, the government's proposed experts and their not-yet-selected-experts should be precluded. Put simply, the government failed to comply by a date which they themselves suggested—February 25th—and Raniere should not be punished for that.

## MOTION TO OBTAIN TESTIMONY FROM FOREIGN WITNESSES

Raniere renews and reasserts his Motion to Obtain Testimony from Foreign Witnesses via Closed Caption Television. (Dkts. 196-198, 258.) Specifically, Raniere sought testimony from three categories of defense witnesses: (1) members of Jane Doe 4's family; (2) first-line DOS masters; and (3) DOS slaves." (Dkt. 197 ¶ 32.) In his reply, Raniere stated that Raniere could not "commit to calling certain witnesses through live video conferencing or Rule 15 deposition" because the government would use that selection and then "proceed into the grand jury to procure a superseding indictment…[which] would be unfair and unconstitutional." (Dkt. 258 at 9.) Raniere stated that "as soon as the government indicates that a particular indictment is the final indictment on which this trial will be held, the defense will produce its final list of witnesses as to whom it seeks video conferencing or a Rule 15 deposition." (Id.) The government prefers to categorize this as Raniere "punt[ing]" the issue. (3/18/19 Tr. at 24.)

In light of the new Superseding Indictment returned a week ago, counsel is considering making changes to our potential witness base, some of whom are in Mexico. (See Affirmation of Marc Agnifilo at ¶¶30-45.) The government's recent charges enhances the materiality of witnesses located abroad. In the event that the government confirms that this is the final indictment on which it will proceed to trial,, we will advise the government in advance of our April 4th status conference the witnesses we intend to call via CCTV.

15

## **CONCLUSION**

For the foregoing reasons, Raniere asks the Court to grant the relief requested herein.

Dated:    March 22, 2019
          New York, NY

                                        Respectfully submitted,

                                        Marc A. Agnifilo, Esq.
                                        Teny R. Geragos, Esq.
                                        **BRAFMAN & ASSOCIATES**
                                        767 3rd Avenue, 26th Fl.
                                        New York, NY 10017
                                        Tel: (212) 750-7800

                                        Paul DerOhannesian, II, Esq.
                                        Danielle R. Smith, Esq.
                                        **DEROHANNESIAN & DEROHANNESIAN**
                                        677 Broadway – Ste. 707
                                        Albany, NY 12207
                                        Tel: (518) 465-6420

                                        *Attorneys for Defendant*
                                        *Keith Raniere*