# Brafman & Associates, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN
———
MARK M. BAKER
OF COUNSEL
MARC A. AGNIFILO
OF COUNSEL

ANDREA L. ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY & CA
STUART GOLD

April 5, 2018

VIA ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, NY  11201

Re:    United States v. Keith Raniere, 18 Cr. 204 (NGG)

Dear Judge Garaufis:

We write to respectfully object to this Court's April 5, 2019 Order stating that the identities of all prospective jurors and empaneled jurors will remain anonymous to both the parties and public. We agree with the Court that the identities of the jurors should remain anonymous to "protect the jurors from unwanted interference" (4/4/19 Tr. at 6-7), but request that the identities of the jurors should be known to the parties during trial. Counsel for Ms. Bronfman joins in this motion and the government does not object to the Court's Order.

Here, the government and Mr. Raniere moved for a jury selection process similar to the one that was employed in United States v. Shkreli 15 Cr. 637 (KAM). Judge Matsumoto ruled that "[i]n order to safeguard [the defendant's] Sixth Amendment right to a fair trial by ensuring candor among prospective jurors in this high-profile case…the names of the jurors would not be released publicly by the court until the conclusion of trial, and [] juror names would be disclosed to, but were not be used by, the parties during the trial." (See Shkreli at Dkt. 325 (citing Dkt. 259; ABC v. Stewart, 360 F.3d 90, 204 (2d Cir. 2004) (proposing 'concealing the identities of the prospective jurors' in order to 'ensure juror candor' during voir dire)).'' The government and defendants' motion to proceed in this manner for this trial did not contemplate full anonymity from the parties.

BRAFMAN & ASSOCIATES, P.C.

The government and defendants' jury questionnaire contemplated that the parties would have access to the prospective jurors' names and identifying information.[1]

Indeed, juror anonymity from parties and the public presents substantial risks to the traditional deliberative processes of juries, undermining the presumption of innocence and diluting the standard of proof. The Second Circuit has recognized that allowing an anonymous jury carries with it "the possibility of unfair prejudice to the defendant and the danger of encroaching on the presumption of innocence." United States v. Tutino, 883 F.2d 1125, 1132 (2d Cir. 1989). The Sixth Amendment guarantees a criminal defendant the right to a trial by an impartial jury. See U.S. Const. amend VI. Defendants deserve "a full and fair opportunity to expose bias of prejudice on the part of venirement" and "there must be sufficient information elicited on voir dire to permit a defendant to intelligently exercise not only his challenges for cause, but also peremptory challenges. United States v. Barnes, 604 F.2d 121, 139 (2d Cir. 1979).

As this Court has recognized "anonymous juries sometimes are granted in cases where there…might be some dangers to jurors in some way." (4/4/19 Tr. at 6.) Indeed, the use of anonymous juries are routine in organized crime cases in the Eastern and Southern Districts. See Barnes, 604 F.2d 121 (2d Cir. 1979). This is not one of those cases.

In United States v. Thomas, 757 F.2d 1359 (2d. Cir. 1985), the Second Circuit outlined basic standards for determining when the use of an anonymous jury is constitutional:

> [T]here must be, at first, strong reason to believe that the jury needs protections and, second, reasonable precaution must be taken to minimize the effect that such a decision might have on jurors' opinions of the defendants.

Id. at 1365. This Court's solution to the question that the jury may need protections was there should be a "semi-sequestered jury," which we submit both protects the jury's anonymity when leaving the courthouse, and ensures that Mr. Raniere will receive a fair trial. (4/4/19 Tr. at 6-7.) Additionally, no facts have been presented that suggest that such drastic measures such as anonymity are warranted or that "the defendant or this case presents a threat to the judicial process. Under such circumstances, the law in this Circuit does not support the empanelment of an anonymous jury." United States v. Mostafa, 04 Cr. 356 (KBF), 7 F.Supp.3d 334 (S.D.N.Y. Mar.

---

[1] See Questionnaire at p. 5: "The Court has issued an order concealing the names of jurors from anyone other than the parties until after trial in this case. It is important to ensure that the jury will in no way be influenced by the public, by the members of the media and their articles and reports. The Court is taking these measures to protect your right to privacy and to assist you in discharging your responsibility as a juror fairly and impartially. You will be referred to by your juror number when in open court." (emphasis added).

Brafman & Associates, P.C.

12, 2014) (denying the government's motion for an anonymous jury in connection with the trial of Abu Hamza al-Masri, a Muslim cleric extradited from London).

Indeed, an anonymous jury will burden the defendant's presumption of innocence. There has been no evidence of explicit threats here, which the Court understands, and therefore an anonymous jury is not warranted. As such, the balancing of interest in safeguarding jurors with the defendants' interest in the presumption of innocence should tip in the defendants' favor. Once the seeds of suspicion are planted by use of juror anonymity, the jurors may attribute sinister implications to the defendants' courtroom appearance and demeanor. Keeping the jurors anonymous from the public *only* will "minimize the effect that such decision might have on jurors' opinions of the defendants." Thomas, 767 F.2d at 1365.

Additionally, allowing an anonymous jury *from the parties* here will impair Mr. Raniere's presumption of innocence and will disrupt the ability of counsel to investigate jurors for bias. Total anonymity of this jury will impair Raniere's right to a fair trial, a right which has become increasingly more fragile with the amount of press that exists in this case. The New York City Bar Association has even recognized that "standards of competence and diligence may require doing everything reasonably possible to learn about the jurors who will sit in judgment on a case." (Formal Opinion 2012-2: Jury Research and Social Media, New York City Bar, http://www.nycbar.org/ethics/ethics-opinions-local/2012opinions/1479-formal-opinion-2012-02 (last visited April 5, 2019) (emphasis added). Though a jury questionnaire can begin this research, attorneys also have the "ability to conduct research on potential and sitting jurors, and clients now often expect that attorneys will conduct such research." (Id.)

Providing counsel for both the government and the defendants the jurors' names and identifying information not only effects intelligent peremptory challenges, but it also keeps juror's honest. "[T]he internet appears to have increased the opportunity for juror misconduct...over the internet…and has even led to mistrials. Jurors have begun to use social media services as a platform to communicate about a trial, during the trial. (Id. citing WSJ Law Blog (March 12, 2012), http://blogs.wsj.com/law/2012/03/12/jury-files-the-temptation-of-twitter/).) Anonymity increases the opportunity for prospective jurors to conceal, misrepresent or lie about relevant issues in order to join or remain on the panel. If jurors here remain anonymous, the parties will be deprived of the opportunity to verify juror responses and make informed decisions regarding peremptory challenges.

Here, in balancing the defendant's right to a fair trial with the juror's need for privacy, the Mr. Raniere's proposed solution (originally proposed by the government) of having the juror names anonymous from the public but available to the parties, ensures just that. Here, there is no suggestion of a threat to any party that would justify an anonymous jury from the government and the defense. See, e.g., United States v. Farad Roland, 12 Cr. 0298 (ES) (D.N.J.) (Dkt. 261 filed

Brafman & Associates, P.C.

11/8/16) (denying the government's motion for an anonymous jury and ordering that the names and other identifying information of the jurors should be withheld from the public and the press, but provided to the government and defendant; United States v. Noor Zahi Salman, 17 Cr. 18 (PGB) (M.D.Fla 4/20/17) (ordering an anonymous jury from the public to ensure the privacy of the jurors, but disclosing the jurors names and biographical information to the parties).

        Thank you for your consideration.

                                    Respectfully submitted,

                                      _____

                                      Marc A. Agnifilo

                                      Teny R. Geragos

cc:      All Counsel (via ECF)