MKM:TH/MKP/KMT
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

KEITH RANIERE,

              Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

Docket No. <u>18-204 (S-2) (NGG) (VNS)</u>

## THE GOVERNMENT'S MOTIONS IN LIMINE

                                RICHARD P. DONOGHUE
                                UNITED STATES ATTORNEY
                                Eastern District of New York
                                271 Cadman Plaza East
                                Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 2

    I.    The Court Should Require the Parties to Refer to Victim Witnesses by Their First Names Only and Should Admit Certain Categories of Evidence Related to Victims under Seal ........................................................................................................... 2

        A.    Applicable Law ................................................................................................... 2

        B.    Limited Protections Requested for Victims Are Reasonable and Appropriate ......................................................................................................... 7

        C.    Sealing of Evidence ............................................................................................ 9

    II.    The Court Should Preclude Evidence and Argument Regarding the Government's Motives for Prosecution ............................................................................................... 11

    III.    The Court Should Preclude Marc Agnifilo from Referring to Himself as a "Former Prosecutor" Before the Jury ....................................................................... 13

    IV.    The Court Should Order the Defendant to Produce Reciprocal Discovery under Rule 16 and Rule 26.2 ................................................................................................. 14

        A.    Applicable Law ................................................................................................. 14

            1.    Rule 16 ................................................................................................... 14

            2.    Rule 26.2 ................................................................................................ 16

        B.    Discussion ......................................................................................................... 16

    V.    The Defendant's Motion to Offer Witness Testimony by CCTV Should Be Denied ........................................................................................................................ 17

CONCLUSION ............................................................................................................................. 18

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in support of its motions in limine in advance of trial in this matter, currently scheduled to commence on May 7, 2019. Specifically, the government seeks to (1) protect victim witnesses' identity information at trial; (2) preclude evidence or argument regarding the government's motives for prosecution; and (3) preclude defense counsel from referring to himself as a "former prosecutor" before the jury. In addition, the government respectfully requests that the Court order the defendant to produce reciprocal discovery under Rule 16 and Rule 26.2 and submits that the defendant's motion to offer witness testimony by CCTV should be denied.

For the reasons set forth below, the Court should grant the government's motions.

ARGUMENT

I.  The Court Should Require the Parties to Refer to Victim Witnesses by Their First Names Only and Should Admit Certain Categories of Evidence Related to Victims under Seal

The government moves in limine to allow testifying victims[1] to testify under a nickname, first name or pseudonym only, and to not be required to disclose uniquely identifying information, such as their addresses, names of family members, exact place of education or employment.  In addition, the government moves to refer to non-testifying DOS victims by first name or nickname, and to preclude disclosure of uniquely identifying information.  These measures are necessary to protect victims from potential harassment from the media and others, undue embarrassment and other adverse consequences.

A.  Applicable Law

The Sixth Amendment's Confrontation Clause guarantees defendants the right to cross-examine adverse witnesses.  U.S. Const. amend VI.  Nevertheless, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."  Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986).  Federal Rule of Evidence 611(a) provides that the Court "should exercise reasonable control over the mode and order of examining witnesses

---

[1]  In the alternative, the government moves specifically to allow Jane Doe 5 and Jane Doe 8 and any DOS victims who engaged in sex acts with the defendant to testify under a nickname, first name or pseudonym only, with leave to seek such protection for other victims during trial.

and presenting evidence so as to [inter alia] . . . protect witnesses from harassment or undue embarrassment." Fed. R. Evid. 611(a); see also United States v. Whitten, 610 F.3d 168, 183 (2d Cir. 2010) (citing Van Arsdall and Rule 611).

"[T]here is no absolute right of an accused to have a jury hear a witness's true name and address." Clark v. Ricketts, 958 F.2d 851, 855 (9th Cir. 1991). Rather, "only where the lack of a witness's name and address denies a defendant an opportunity to effectively cross-examine a witness . . . is [a defendant] denied his Sixth Amendment right to confrontation." United States v. Mohamed, 727 F.3d 832, 838 (8th Cir. 2013) (citing United States v. Spector, 793 F.2d 932, 937 (8th Cir. 1986) and United States v. Teller, 412 F.2d 374, 380 (7th Cir. 1969)). Where a defendant is aware of a witness's true name – but where that information is not disclosed to the jury or the public – he will be "able effectively to investigate and impeach the declarant" on cross-examination. See Siegfriedt v. Fair, 982 F.2d 14, 18 (1st Cir. 1992). Courts regularly permit the government to call victims and other witnesses using pseudonyms where doing do does not infringe on a defendant's Sixth Amendment rights. United States v. Dan Zhong, No. 16-CR-614 (DLI), 2018 WL 6173430, at *2 (E.D.N.Y. Nov. 26, 2018) (granting government's motion to have victim witnesses testify using pseudonyms); United States v. Alimehmeti, 284 F. Supp. 3d 477, 490–91 (S.D.N.Y. 2018) (permitting government to call witnesses using pseudonym where "the information that the[ government seeks to] preclude the defense from publicly eliciting – a UC's identity – is neither exculpatory . . . nor evidently relevant at trial"); United States v. Urena, 8 F. Supp. 3d 568, 573 (S.D.N.Y. 2014) ("Moreover, nothing about UC–188's real

3

name goes to his credibility or knowledge regarding the subject of his testimony. The limitation imposed on the defense is therefore negligible.").

In the context of victim witnesses, there are compelling reasons to limit public disclosure of not only victims' names, but also other sensitive information offered at trial. Indeed, the Crime Victims' Rights Act, 18 U.S.C. § 3771, requires district courts to implement procedures to ensure that crime victims are accorded, among other rights, "[t]he right to be reasonably protected from the accused," in addition to "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy." Id. §§ (a)(1), (a)(8). Moreover, "the public generally has a strong interest in protecting the identities of . . . victims so that other victims will not be deterred from reporting such crimes." United States v. Paris, 2007 WL 1484974, at *2 (D. Conn. May 18, 2007).

In the trial context, courts have found that the potential for reprisals, humiliation, or annoyance are sufficient to justify nondisclosure of personal identifying information by a witness. As Judge Ross has summarized:

> In advancing the contention that the defendant's rights under the Confrontation Clause of the Sixth Amendment require full disclosure of the witnesses's names, place of employment, and home addresses, the defendant relies on Smith v. Illinois, 390 U.S. 129 (1968), and Alford v. United States, 282 U.S. 687 (1931). Taken together, these cases have been interpreted by the Second Circuit to safeguard two main interests of the defendant: (1) obtaining information needed for in-court and out-of-court investigation of the witness; and (2) enabling defense counsel to elicit information that might be relevant to the jury's deliberations as to the credibility or knowledgeability of the witness. See United States v. Marti, 421 F.2d 1263, 1266 (2d Cir. 1970). In the event the government seeks to limit disclosure of identifying information in open court, the government must provide a reason for the limitation. Id. (citing

> Smith, 390 U.S. at 134 (White, J., concurring)). "[T]he reason
> may be that the answer may subject the witness to reprisals or
> that the question is being used to humiliate or annoy the
> witness." Id. (citing Alford, 282 U.S. at 694). The defendant is
> then required to demonstrate a "particularized need" for
> disclosure of the relevant information, which the court weighs
> against the risks to the witness. See United States v. Bennett,
> 409 F.2d 888, 901 (2d Cir. 1969); see also United States v.
> Cavallaro, 553 F.2d 300, 305 (2d Cir. 1977).

United States v. Marcus, No. 05-CR-457 (ARR), 2007 WL 330388, at *1 (E.D.N.Y. Jan. 31, 2007) (internal citations omitted).

In Marcus, the court relied in part on United States v. Marti, 421 F.2d 1263, 1266 (2d Cir. 1970), in which the Second Circuit analyzed the Supreme Court's holdings in Smith and Alford, and ultimately concluded that there was no prejudice to the defendant where he was precluded from inquiring about a witness's address, holding that although the government should come forward with a reason for withholding a witness's address, "the reason may be that the answer may subject the witness to reprisals or that the question is being used to humiliate or annoy the witness." See Marcus, 2007 WL 330388, at *1-2 (ruling that potential harassment, potential loss of employment, and the explicit nature of anticipated testimony are legitimate reasons to protect witnesses' full identity and to exclude mention of witnesses' home addresses, and current places of employment); accord United States v. Pepe, 747 F.2d 632, 656 n.33 (11th Cir. 1984) (finding no error in precluding cross-examination regarding witnesses' home addresses); United States v. Navarro, 737 F.2d 625, 633-34 (7th Cir. 1984) (cross-examination of an informant about his home address and current place of employment precluded); United States v. Harris, 501 F.2d 1, 9 (9th Cir. 1974) ("If the answer may subject the witness to harassment, humiliation, or danger, then

5

nondisclosure of the witness' home address may be justifiable."); United States v. Alston, 460 F.2d 48, 51-52 (5th Cir. 1972). As the Marcus court concluded, the relevant precedent looks to whether the information is necessary to the defendant in order to engage in an in- or out-of-court investigation of the witness or to attempt discrediting the victim before the jury.

In addition, the Second Circuit has upheld non-disclosure of full identifying information in order to protect the safety of the witness and his or her family. See, e.g., United States v. Watson, 599 F.2d 1149, 1157 (2d Cir.), amended on other grounds by 690 F.2d 15 (2d Cir. 1979), 633 F.2d 1041 (2d Cir. 1980) (government witness in witness protection program permitted not to disclose his occupation); United States v. Baker, 419 F.2d 83, 87 (2d Cir. 1969) (government witness permitted to withhold name and address of current employer); United States v. Persico, 425 F.2d 1375, 1383-84 (2d Cir. 1970) (two government witnesses permitted to conceal addresses and places of employment).

Where the government seeks to limit disclosure of a witness's identifying information in court, the government must articulate a need for withholding the identifiers, such as fear of reprisal, humiliation, or annoyance to the witness. Once the government identifies a need to protect the witness' full identity, the defendant must demonstrate a "particularized need" for the information, which the Court weighs against the harm to the witness. Marcus, 2007 WL 330388, at *1. In Marcus, Judge Ross expressly found, in a case involving sex trafficking allegations, that "[i]n light of the explicit nature of the conduct that the witnesses will be testifying about . . . the court has determined that the witnesses's fear of harassment and reprisals is legitimate." 2007 WL 330388, at *1. Similarly, in another trial case in this district, Judge Feuerstein also permitted victims testifying in graphic detail about

6

acts of forced prostitution and sexual contact with customers and others to testify using their first names only. See Order dated April 26, 2011 at 2, United States v. Rivera, 09-CR-619 (E.D.N.Y.) (Docket No. 231). Similarly, in a case where the defendant was charged with abusive sexual contact and assault on an airplane, Judge Amon permitted the victim-witness to testify using her first name only. See Transcript of April 5, 2016 Pre-Trial Conference at 6-10, United States v. Quraishi, 15-CR-598 (E.D.N.Y.) (Docket No. 46). In addition, at sentencings of sex traffickers, Judge Townes and Judge Amon permitted victims to give in-court victim impact statements using only their first name or the name Jane Doe, see United States v. Angel Cortez-Granados, 11-CR-657 (SLT); United States v. Benito Lopez-Perez, et al., 11-CR-199 (CBA).

        B.      Limited Protections Requested for Victims Are Reasonable and Appropriate

The limited protections requested by the government are reasonable, necessary and appropriate to protect the safety and well-being of the victims, prevent them from being harassed by the press and others, and prevent undue embarrassment and other adverse consequences, such as loss of employment. Because the defendant knows the true identity of all of them victims, to require these victims to provide full identifying information does not serve any of the legitimate purposes identified by the courts, such as the defendant's obtaining information for in- or out-of-court investigation or attempting to discredit the victim before the jury. Rather, requiring these victims to provide their identifying information would serve only to harass, embarrass and "to humiliate or annoy the [victim]," Marti, 421 F.2d at 1266, purposes that are directly at odds with the rights that victims are to be afforded under the Crime Victims' Rights Act, which include the right to be heard, but

7

also to be treated with respect for their dignity and privacy.  See 18 U.S.C. § 3771(a)(8).  Indeed, requiring victims of sex trafficking, extortion, wire fraud and other crimes[2] to provide their names in public could chill their willingness to testify, for fear of having their personal histories publicized, and the embarrassment and humiliation that such publicity could cause them as they rebuild their lives.  In addition, a ruling requiring these victims to disclose their full identities publicly could cause other victims to fear seeking help from law enforcement as that could subject them to further harassment and embarrassment.

The government expects that the defendant will be unable to articulate any "particularized need" for the disclosure of the identity of these victims in open court.  The defendant in this case knows who the victims are and will not be prevented from presenting a defense in the event that she is referred to by first name or pseudonym during the trial.  Moreover, the current address, family members' names and place of current education or employment are entirely irrelevant to the victims' testimony, while there is a risk that disclosure of that information would identify them with particularity, and thus subject them to harassment and embarrassment, or additional consequences, such as loss of employment.  See United States v. Bennett, 409 F.2d 888, 901 (2d Cir. 1969) (district court did not err in allowing government witness not to identify place of employment where defense failed to demonstrate a "particularized need" for the information).  For all of these reasons, the

---

[2]  As the Court is aware, in addition to those DOS victims who were tasked with engaging in sexual acts with the defendant, other victims were defrauded and/or extorted into providing sexually graphic or otherwise compromising photos and videos.

8

government respectfully requests that the Court limit the disclosure at trial of the personal identifying information of victims and allow them to testify by first name, nickname or pseudonym.

The government also requests that, throughout trial, non-testifying DOS "slaves" be referred to by first name only and that their addresses, names of family members, and exact place of education or employment not be disclosed. As the Court is aware, DOS "slaves" were required to provide explicit nude photographs of themselves and were, at times, subjected to particularly degrading and humiliating treatment. As to every such witness, the government has or will provide the individual's real name and other relevant information to the defendant, subject to the protective order entered by the Court. The defendant therefore will not be prejudiced in his ability to investigate or to effectively cross-examine witnesses. In these circumstances, referring to non-testifying witnesses by first name is particularly appropriate. This procedure will appropriately limit the "harassment or undue embarrassment" to which these individuals may be subject. See Fed. R. Evid. 611(a).

C. Sealing of Evidence

The government will also move to seal certain categories of evidence at trial. As the Court is aware from the extensive pre-trial motion practice in this case, DOS "slaves" were required to provide "collateral" to their "masters" to prevent them from leaving the group

or disclosing its existence to others.[3] "Collateral" included sexually explicit photographs and videos, rights to financial assets, and videos or letters of (true or untrue) confessions that would be damaging to the prospective slave's family members and friends.[4] These materials are relevant to, inter alia, the existence of, and membership in, the charged enterprise, the means and methods of the enterprise, and to racketeering acts that constitute the pattern of racketeering activity.

There is no basis for the public disclosure of these materials, whether offered by the government or by the defendant. Although "the public has an 'especially strong' right of access to evidence introduced in trials," United States v. Amodeo, 71 F.3d 1044, 1049 (2d Cir. 1995), it "is not absolute," Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978); see also United States v. Graham, 257 F.3d 143, 149 (2d Cir. 2001). For example, "subject matter [that] is traditionally considered private rather than public" will weigh "heavily against access." Amodeo, 71 F.3d at 1050. This includes certain "financial records . . . family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters . . . ." 71 F.3d at 1051; see, e.g., Application of Newsday, Inc., 895 F.2d 74, 80 (2d Cir. 1990) (noting that, when third party privacy interests are at issue, "a district court has the authority to redact

---

[3] (See Compl., DE 1, at ¶¶ 15-19; Bronfman Motion for Severance, DE 275 & Exhibit A.)

[4] Included among these materials are photographs of "close-up pictures of [DOS members'] vaginas" (DE 1, 48), videos of DOS members engaged in sexual acts, and signed statements from DOS members alleging that family members engaged in sexual or physical abuse, or other criminal activity.

a document to the point of rendering it meaningless, or not to release it at all"). "[T]he 'venerable' privacy-interest exception to the presumption of access exists to avert 'cater[ing] 'to a morbid craving for that which is sensational and impure.'" Amodeo, 71 F.3d at 1051; United States v. Cohen, No. 18 CR 602, 2019 WL 472577, at *8 (S.D.N.Y. Feb. 7, 2019). Accordingly, the government respectfully requests that these materials should be admitted into evidence under seal.

II. The Court Should Preclude Evidence and Argument Regarding the Government's Motives for Prosecution

The Court should preclude the defendant from presenting evidence or arguments concerning the government's alleged motive for this prosecution, alleged government misconduct in the course of this prosecution, or the existence, non-existence or outcome of any previous investigation. The defendant and his co-defendants have raised allegations of this sort in their pretrial motions,[5] and they are irrelevant to the question of guilt that will be before the jury at trial. See Fed. R. Evid. 401. To the extent the defendant seeks to raise these arguments or offer evidence in support of them at trial, their purpose would be to seek jury nullification, rather than to cast factual doubt on the government's case. The probative value of such evidence would be substantially outweighed by unfair prejudice. See Fed. R. Evid. 403.

---

[5] See, e.g., DE 198 (suggesting government overreach resulting from a "firestorm of press" and the "ire of the Justice Department"); DE 283 (alleging that "prosecutors' conduct and statements [to Kathy Russell] were misleading").

11

It is well-settled that a defendant may not raise these issues before the jury. The Second Circuit has explained that claims of purported government misconduct must be "directed to the court rather than jury." United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997). This is because allegations concerning the government's conduct are "ultimately separate from the issue of [a defendant's] factual guilt" and concern an alleged "constitutional violation in the institution of [a] prosecution, rather than factual innocence." Id. Accordingly, district courts routinely and correctly preclude defendants from raising these arguments at trial. See id. ("[W]e agree with the district court's decision to resolve for itself whether the government's conduct was lawful and to prevent Regan from presenting evidence on that subject."); United States v. Stewart, Cr. No. 03-717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004) (granting motion to preclude the defendant from "presenting arguments or evidence that would invite the jury to question the Government's motives in investigating and indicting" the defendant); United States v. Larkin, No. 12-CR-319, 2017 WL 928915, at *3 (D. Nev. Mar. 8, 2017) ("Defendant will be precluded from presenting evidence regarding the government's motive for prosecution in the instant case as such evidence is not relevant."); United States v. Starks, No. 10-CR-0160, 2012 WL 12878587, at *1 (N.D. Miss. July 20, 2012) (same); see generally United States v. Thomas, 116 F.3d 606, 614 (2d Cir. 1997) ("Nullification is, by definition, a violation of a juror's oath to apply the law as instructed by the court—in the words of the standard oath to jurors in the federal courts, to render a true verdict according to the law and the evidence. We categorically reject the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent."

(internal quotation marks and citation omitted; emphasis in original)). The Court should preclude such evidence and argument at trial.

III. The Court Should Preclude Marc Agnifilo from Referring to Himself as a "Former Prosecutor" Before the Jury

Marc Agnifilo, lead attorney for the defendant, served as an Assistant District Attorney in New York County and an Assistant United States Attorney in the District of New Jersey prior to entering private practice. The government respectfully requests that the Court preclude Mr. Agnifilo from referring to his prior roles in front of the jury.

First, a defense counsel's reference to being a "former federal prosecutor" or a "former prosecutor" would be improper because it could suggest to the jury that an argument or question should be given greater weight simply because of defense counsel's background. Cf. United States v. Newton, 369 F.3d 659, 681 (2d Cir. 2004) (prosecutor's vouching for the credibility of a witness is improper in part because it "carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence"). But a defense argument is not entitled to more or less weight because of the resume of the attorney making the argument. Precluding references to being a "former federal prosecutor" eliminates this risk.

Second, references by defense counsel to being a "former federal prosecutor" or "former prosecutor" may improperly suggest to the jury that the government's conduct in the investigation or prosecution of this case was improper. As described in Point II, supra, the government's investigation and prosecution of this case is not on trial and is not before the jury. Accordingly, any attempt by defense counsel to cast doubt on the government's

13

investigation and prosecution of the defendant by implying that defense counsel, as a "former prosecutor," would not have made the same investigative or charging decisions when they themselves were prosecutors is entirely inappropriate.

Because there is no legitimate reason for defense counsel to refer to his prior roles before the jury, any such reference should be precluded.

IV. **The Court Should Order the Defendant to Produce Reciprocal Discovery under Rule 16 and Rule 26.2**

   A. Applicable Law

      1. Rule 16

Rule 16(b) governs the defendant's disclosures in a criminal case. In relevant part, it requires the defendant to provide the government with documents and records that the defendant "intends to use . . . in the defendant's case-in-chief at trial." Fed. R. Crim. P.16(b)(1)(A). Rule 16 does not require a defendant to disclose documents he intends to use for purposes of cross-examining a government witness. However, to the extent that a defendant seeks to admit in evidence a document during the cross-examination of a witness during the government's case-in-chief to affirmatively support the defendant's theory of the case, such a document does fall within the ambit of Rule 16. As explained in United States v. Hsia, No. 98 CR 0057 (PLF), 2000 WL 195067, at *2 (D.D.C. Jan. 21, 2000):

> A "case-in-chief" is defined as "[t]he part of a trial in which a party presents evidence to support its claim or defense." Blacks Law Dictionary 207 (7th ed. 1999). Defendant's cross-examination of government witnesses, and the evidence introduced during that cross-examination, certainly may be used to support her defense … The cross examination of these and other government witnesses therefore is properly seen as part of defendant's case-in-chief if it buttresses her theory of the case.

14

Id.

In Hsia, the court distinguished documents a defendant introduces through a government witness—which fall within Rule 16 and must be disclosed—from documents used by a defendant "merely to impeach a government witness, and not as affirmative evidence in furtherance of [the defendant's] theory of the case, it is not part of [the defendant's] case-in-chief." Id. at *2 n.1. Other district courts have recognized this distinction. See United States v. Swenson, 298 F.R.D. 474, 477 (D. Idaho 2014) ("Defendants have a duty to produce any exhibits they intend to use at trial during cross examination of a government witness other than for impeachment purposes."); United States v. Holden, No. 13 CR 00444, 2015 WL 1514569, at *4 (D. Or. Mar 19, 2015) (holding, based on Swenson and Hsia, that a defendant must disclose non-impeachment substantive evidence that the defendant seeks to use in examination of government or defense witnesses); United States v. Larkin, No. 2:12 CR 319 (GWF), 2015 WL 4415506, at *5 (D. Nev. July 20, 2015) (approach adopted in Holden, Swenson and Hsia is "consistent with the structure and integrity of Rule 16(b) as a whole"); United States v. Aiyaswamy, No. 15 CR 00568 (LHK), 2017 WL 1365228, at *5 (N.D. Cal. Apr. 14, 2017) (same); United States v. Huntress, No. 13 CV 199S, 2015 WL 631976, at *33 (W.D.N.Y. Feb. 13, 2015) (observing that "it is not clear that defendants' case-in-chief would be limited to any case they may present after the government rests").

In Hsia, the court also observed that a defendant does not "satisfy her obligations under the Rule merely by providing the government with the thousands of pages of discovery she received from the government and stating that the documents upon which

she intends to rely are found somewhere therein. Although the Rule does not specifically say that the parties must identify the specific documents upon which they may rely at trial, its purpose is to avoid surprise and gamesmanship; 'it definitely contemplates reciprocity in the production of evidence that both parties intend to introduce in their case-in-chief at trial.'" Hsia, 2000 WL 195067, at *1.

2. Rule 26.2

Rule 26.2 "places in the criminal rules the substance of 18 U.S.C. § 3500 while also providing for production of statements of defense witnesses." United States v. Scotti, 47 F.3d 1237, 1249 (2d Cir. 1995). It provides that both the government and defendant must provide "any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony." Fed. R. Crim. P. 26.2(a). Rule 26.2 "is designed to place the disclosure of prior relevant statements of a defense witness in the possession of the defense on the same legal footing as is the disclosure of prior statements of prosecution witnesses in the hands of the government under the Jencks Act, 18 U.S.C. § 3500." Id., 1979 Advisory Committee Notes.

B. Discussion

To date, the defendant have not provided reciprocal discovery as required by Rule 16, although the defendant was ordered to do so by April 12, 2019. (April 4, 2019 Tr. at 31 (granting government's application, with agreement of counsel for the defendant, that reciprocal discovery be provided by April 12, 2019). And, although the government began producing 3500 material on April 1, 2019 – five weeks before opening statements on May 7, 2019 – the defendant has not reciprocated. Accordingly, the government respectfully

16

requests that the defendant be ordered to (1) produce any documents they intends to use in their case-in-chief, whether the defendant intends to use that evidence after the government rests or during cross-examination of government witnesses and (2) begin disclosing 3500 material for their proposed witnesses beginning on April 29, 2019, which is approximately five weeks from the date on which the government anticipates it will rest.

V.       The Defendant's Motion to Offer Witness Testimony by CCTV Should Be Denied

On November 16, 2018, the defendant moved this Court for an order permitting him to offer testimony from witnesses in Mexico by CCTV. (DE 198 at 22). On December 17, 2018, the government responded, noting that CCTV should be used only in "exceptional circumstances" and where it "furthers the interest of justice." United States v. Gigante, 166 F.3d 75, 81 (2d Cir. 1999). As set forth in the government's response, the government cannot respond to the defendant's request and this Court cannot assess it until he provides (1) the identities of the proposed witnesses; (2) the specific reasons each witness believes they will be arrested if they travel to the United States; (3) the substance of the evidence to which each witness is expected to testify; (4) the relationship between the proffered testimony from each witness and the central aspects of the government's allegations; (5) whether Mexican law would permit testimony in a U.S. criminal trial by CCTV; and (6) whether, assuming the Court were to permit CCTV testimony, the proposed witnesses would be subject to extradition if they committed perjury. (Id. at 70).

To date, the defendant has failed to provide any of this information. Because "[c]ourts have applied the same standard used regarding Rule 15 depositions when evaluating whether to permit testimony via [CCTV]," the defendant must provide

17

"reasonable written notice" of the information set forth above, as required by Rule 15(b). See United States v. Buck, 271 F. Supp. 3d 619, 622 (S.D.N.Y. 2017). "The reasonableness of the notice is a function of the time necessary for the opposing party to prepare . . . and thereby protect his rights." United States v. Drogoul, 1 F.3d 1546, 1556 (11th Cir. 1993). Because jury selection in this case has begun and opening statements are just over two weeks away, the government respectfully submits that, even in the unlikely event the defendant can demonstrate "exceptional circumstances" as set forth above, notice at this late date cannot be "reasonable" under Rule 15(b). His motion to offer testimony via CCTV should therefore be denied.

CONCLUSION

For the foregoing reasons, the Court should grant the government's motions in their entirety.

Dated:   Brooklyn, New York
         April 19, 2019

Respectfully submitted,

RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant United States Attorneys
    (Of Counsel)