

U.S. Department of Justice

United States Attorney
Eastern District of New York

MKM:MKP/TH/MJL/KMT
F. #2017R01840

271 Cadman Plaza East
Brooklyn, New York 11201

April 26, 2019

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Keith Raniere
             Criminal Docket No. 18-204 (NGG) (S-2)

Dear Judge Garaufis:

      The government respectfully writes in opposition to the defendant's Second Motion to Suppress (DE 574-76). For the reasons set forth herein, the Court should deny the defendant Keith Raniere's untimely motion to suppress certain evidence seized from a house located at 8 Hale Drive in Halfmoon, New York, filed more than a year after the basis for such a motion was known to Raniere and more than 14 weeks after the January 9, 2019 deadline set by this Court for motions to suppress. Raniere does not attempt to meet the "good cause" standard for untimely motions to suppress set forth in Rule 12(c)(3) and, to the extent Raniere intends to challenge the warrant as overbroad,[1] insufficiently particular,[2] or to challenge the government's seizure of the hard drive that contained the images of child pornography, those arguments were available to him prior to the Court's deadline for motions and should be rejected as untimely. See generally United States v. Yousef, 327 F.3d 56, 124–25 (2d Cir. 2003) ("A strategic decision by counsel not to pursue a claim, inadvertence of one's attorney, and an attorney's failure to timely consult with his client are all insufficient to establish cause.'").

---

[1]     See, e.g., Br. at 8 ("The warrant in effect permitted a search of the entire premises"), 9 (asserting that the warrant is "the sort of general warrant that is anathema to the Fourth Amendment").

[2]     See, e.g., Br. at 9 (citing United States v. George, 975 F.2d 72, 75 (2d Cir. 1992)).

To the extent Raniere challenges only the <u>execution</u> of the warrant with respect to the images of child pornography that the government first identified to the defendants by sealed letter dated February 22, 2019 (DE 362), and that underlie Racketeering Acts 2, 3 and 4 (Br. at 7-8), his motion is timely, but meritless. As set forth below, the government discovered the images Raniere seeks to suppress on a hard drive seized pursuant to a search warrant authorized on March 26, 2018 (the "March Warrant"). (Att. 1). Magistrate Judge Kuo authorized a second warrant to search the hard drive for additional images of child pornography on February 22, 2019 (the "February Warrant"). (Att. 2).

As described in the February Warrant, the images depict a minor female who was known to law enforcement at the time the images were discovered, and who, subsequent to the photographs, became a first-line DOS "slave." (Att. 2 ¶¶ 9-10). The minor victim is shown in sexually explicit poses that are similar to those shown in the "collateral" photographs of other DOS members, obtained by the government pursuant to grand jury subpoenas and search warrants for the defendant's email. (<u>Id.</u> ¶ 11). As such, the photographs are within the scope of the warrant and, in any event, were properly seized under the plain view doctrine. Accordingly, Raniere's motion should be denied.

I. <u>Applicable Law</u>

    a. <u>Rule 12(b)(3) Motions</u>

Rule 12(b)(3)(C) requires that motions to suppress must be made before trial. Rule 12(c)(1) provides that a district court "may . . . set a deadline for the parties to make pretrial motions" required by Rule 12(b)(3). Rule 12(c)(3) further provides that, "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely." Nevertheless, "a court may consider the defense, objection, or request if the party shows good cause." Fed. R. Crim. P. 12(c)(3).

Failure to timely move to suppress evidence "operates as a waiver of the right to challenge the subsequent admission of evidence on that ground." <u>United States v. Klump</u>, 536 F.3d 113, 120 (2d Cir. 2008). The Second Circuit has explained that a district court may only grant relief from an untimely motion "upon a showing of: (1) cause for the defendant's non-compliance, <u>and</u> (2) actual prejudice arising from the waiver." <u>United States v. Howard</u>, 998 F.2d 42, 52 (2d Cir. 1993) (emphasis added). To excuse untimeliness, the Court must make factual findings to support its "good cause" analysis. <u>See</u> <u>United States v. Crowley</u>, 236 F.3d 104, 110 (2d Cir. 2000) (holding that district court erred by considering untimely Rule 12(b)(3) motion in absence of finding of "good cause"). Moreover, because the two prongs are conjunctive, the Court need not address prejudice if the defendant fails to establish "good cause." <u>Id.</u> at 110 & n.8.

A "lawyer's belated identification of the issue cannot constitute cause affording relief" under Rule 12(c)(3). <u>United States v. Kopp</u>, 562 F.3d 141, 143 (2d Cir. 2009) (citing <u>United States v. Yousef</u>, 327 F.3d 56, 125 (2d Cir. 2003) (holding that attorney "inadvertence"

in recognizing issue is "insufficient to establish cause" for untimely motion (internal quotation marks omitted)). It is equally clear that "[a] strategic decision by counsel not to pursue a claim . . . and an attorney's failure to timely consult with his client are all insufficient to establish cause.'" Yousef, 327 F.3d at 124-25; see also United States v. Robinson, 357 F. Supp. 3d 221, 223-24 (E.D.N.Y. 2019).

      b. Scope of Search Warrant

"Like all activities governed by the Fourth Amendment, the execution of a search warrant must be reasonable." United States v. Lustyik, 57 F. Supp. 3d 213, 230 (S.D.N.Y. 2014) (citing United States v. Ramirez, 523 U.S. 65, 71 (1998)). Accordingly, "[a] search must be confined to the terms and limitations of the warrant authorizing it." United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988).

Where items outside the scope of a warrant are seized, "'[t]he retention of [those] items . . . can be justified only if the Government meets its burden of demonstrating that those items fall within an exception to the warrant requirement,' such as the plain view exception." United States v. Lustyik, 57 F. Supp. 3d 213, 230 (S.D.N.Y. 2014) (quoting Doane v. United States, 2009 WL 1619642, at *10–11 (S.D.N.Y. June 5, 2009)); see also United States v. Galpin, 720 F.3d 436, 448 (2d Cir. 2013) (when evidence seized from computer files pursuant to a defective warrant, one of the "proper next steps" is to determine "whether the challenged evidence was in plain view when it was seized"). "The plain view exception authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." United States v. Gamble, 388 F.3d 74, 76 (2d Cir. 2004) (internal quotation marks omitted). The belief that an item in plain view is evidence of a crime need not "be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required." Texas v. Brown, 460 U.S. 730, 742 (1983) (internal quotation marks omitted); see also Lustyik, 57 F. Supp. 3d 231-32 (applying plain view doctrine and denying motion to suppress).

II.    Discussion

      a. Raniere's Motion Should Be Dismissed as Untimely

To the extent Raniere challenges the warrant as facially overbroad, Raniere has made no effort to establish good cause for his untimely motion and none exists. The residence at 8 Hale Drive was searched on or about March 27, 2018, the warrant and supporting affidavit was disclosed to Raniere and his counsel on August 3, 2018, in the first production of discovery materials in this case, bearing bates numbers NXIVM00002169-2230, and the drive containing the images of child pornography was disclosed to defendants in full on October 5, 2018. (Att. 3-4 (cover letters)). Since that disclosure, the government has repeatedly noted in open court and in the presence of Raniere and his counsel that no defendant has asserted a privacy interest in 8 Hale Drive. For example, on March 4, 2019, at an appearance before Your Honor and in the presence of Raniere, the undersigned noted that "[n]o one in this case has asserted any

3

privacy interest over that house [8 Hale]." (Att. 5 at 24:19-26:14). Neither Raniere nor any of the other remaining defendants contradicted the government's assertion and, prior to Raniere's untimely motion, no defendant sought to suppress evidence seized from 8 Hale Drive.

With respect to his facial overbreadth claim, "this is not a situation where the Defendant did not know of the basis for his motion before the deadline expired, only to discover of its existence after it was too late." United States v. Robinson, 357 F. Supp. 3d 221, 224 (E.D.N.Y. 2019). Indeed, because a facial overbreadth argument is derived from the text of the warrant, Raniere cannot dispute that he was on notice of all the facts asserted in support of his motion to suppress on or before the January 9, 2019 deadline set by this Court. See United States v. Zemlyansky, 945 F. Supp. 2d 438, 450 (S.D.N.Y. 2013) (discussing overbreadth and particularity).

There can be little doubt that Raniere's decision not to move to suppress on this ground by the deadline set by the Court was a "quintessential strategic decision." United States v. Kopp, 562 F.3d 141, 143 (2d Cir. 2009). The decision plainly involves a difficult tradeoff that Raniere was likely reluctant to make: in order for Raniere to assert his purported privacy interest in 8 Hale Drive, he was required to concede that "at various times since . . . 2004" he has used 8 Hale Drive "as a private study and . . . a place to live." (DE 576 (affidavit of Raniere)). This concession significantly limits Raniere's ability to testify at trial, given the government's anticipated evidence of Raniere's activities at 8 Hale Drive, which the government described in the March Warrant as "one of the primary locations where [Raniere] committed the Subject Offenses." (Att. 1 ¶ 49; see also ¶ 41-48, 50). See, e.g., United States v. Jaswal, 47 F.3d 539, 543 (2d Cir. 1995) (holding that a defendant's "prior inconsistent suppression hearing testimony [i]s properly used to impeach him when he [takes] the stand during the trial"); Harrison v. Smith, No. 05 CIV. 5953 (JGK), 2012 WL 3822211, at *7 (S.D.N.Y. Sept. 4, 2012) ("Had the defendant admitted to possession for the purposes of the suppression motion, his trial strategy of denying possession would have been ruined."). That Raniere now regrets his strategic decision does not constitute "good cause," see Yousef, 327 F.3d at 124–25, and his motion should be denied.

b. The Images of Child Pornography Are Within the Scope of the Warrant

To the extent Raniere challenges the execution of the warrant, his motion is meritless. As an initial matter, Raniere is incorrect that the March Warrant "failed to describe any images . . . for which there was reason to believe would be located at the 8 Hale Drive premises." (Br. at 8). To the contrary, the affidavit in support of the warrant describes photographs and videos provided by DOS "slaves" as "collateral" (Att. 1 ¶¶ 22, 47), and notes that the "collateral" was provided to Raniere (id. ¶ 47) and would likely be found in 8 Hale Drive (id. ¶ 50, 51a). Accordingly, the warrant permitted law enforcement agents to seize "[c]omputers or storage media used as a means to commit or facilitate the commission of the Subject Offenses (including to store 'collateral,' as described in the affidavit)." (Id. Att. B.). The warrant plainly permitted law enforcement to seize the hard drive and law enforcement

4

relied in good faith on the magistrate's probable cause assessment in doing so.  See United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010).

       The images of child pornography are within the scope of the warrant and were properly seized from the hard drive.  As described in the February Warrant, the images that Raniere seeks to suppress are part of a collection including "two digital images of a juvenile nude female exposing her vagina" (Ex. 2 ¶ 11), including one in which the minor victim's "legs are open and her inner labia are visible" (id. ¶ 11b).  The original complaint against Raniere (attached and incorporated into the March Affidavit as Exhibit 1), describes Raniere's collection of materially similar photographs in connection with the crimes of sex trafficking and forced labor.  As set forth in the complaint, a DOS "master" identified as CC-1 "regularly required her slaves to pose for nude photographs, including on one occasion close-up pictures of their vaginas, either as assignments or collateral."  (Att. 1, Ex. 1 ¶ 48).  CC-1, in turn, sent these photographs to Raniere.  (Id.).[3]

       Given this context, it defies common sense to assert, as Raniere does, that the sexually explicit photographs of the minor are not "evidence, fruits and instrumentalities" of the crimes listed in Attachment B to the warrant.  As an initial matter, the images subsequently became the basis for Racketeering Acts 2, 3 and 4, and they are therefore plainly related to "involv[ement]" in violations of 18 U.S.C. § 1962.  Moreover, because the minor victim depicted in the images later became the first DOS "slave," the images constitute "evidence regarding the formation and structure of DOS."  (Att. 1, Att. Ba.).  For the same reason, the images also constitute "communication[] between RANIERE and any DOS masters/slaves." (id.).  And, although DOS was not formed until 2015, these images are plainly relevant to the concept of "collateral," and are evidence of, inter alia, Raniere's motive, opportunity, intent, preparation, plan, knowledge, absence of mistake and lack of accident.  There is no legal

---

[3]   At the Court's request the government will make available the images of child pornography for in camera review.  Redacted examples of collateral (where the emphasis on close-up images of the women's vaginas is apparent, despite the redactions) were attached to Exhibit A of Katherine Cassidy, Esq.'s affidavit in support of Clare Bronfman, Nancy Salzman and Kathy Russell's motion to suppress, filed under seal on January 9, 2019.

support for Raniere's assertion that, under these circumstances, agents lawfully reviewing the contents of the drive[4] were required to turn a blind eye to the images.[5]

        c. The Images of Child Pornography Were in Plain View

For these same reasons, even if the images were not within the scope of the March Warrant, it was plain to agents cursorily reviewing the contents of the hard drive that the images were evidence, fruits and instrumentalities of a host of crimes, including those identified in the warrant, as well as violations of 18 U.S.C. §§ 2251, 2252. As noted above, the agents immediately recognized the minor depicted in the images and were aware, from other evidence, that Raniere had a sexual relationship with her beginning when she was fifteen. (Att. 2 ¶ 11). They also immediately recognized that the minor "appear[ed] to be under the age of eighteen in the images." (Id. ¶ 12). "[G]iven the facts known to the government at the time[,] . . . a person 'of reasonable caution' would have believed those emails constituted evidence of

---

[4] See, e.g., Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976) (noting that "it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are" among the papers to be seized); United States v. Williams, 592 F.3d 511, 521-22 (4th Cir. 2010) (warrant authorized agents to open each file on computer and review contents, at least cursorily, to determine whether file fell under scope of search warrant); United States v. Graziano, 558 F. Supp. 2d 304, 317 (E.D.N.Y. 2008) ("[I]t was entirely reasonable for [the police forensic examiner] to engage in a cursory review of files and documents [on the computer], by opening them, to determine whether they contained evidence of illegal gambling that was within the scope of the warrant."); United States v. Fumo, No. 06–319, 2007 WL 3232112, at *6 (E.D. Pa. Oct.30, 2007) ("Regardless of the search protocols or keywords used by the government, the government may open and briefly examine each computer file to determine whether it is within the description recited in the warrant."); United States v. Scarfo, 180 F. Supp. 2d 572, 578 (D.N.J. 2001) ("Where proof of wrongdoing depends upon documents or computer passphrases whose precise nature cannot be known in advance, law enforcement officers must be afforded the leeway to wade through a potential morass of information in the target location to find the particular evidence which is properly specified in the warrant.").

[5] Nor is the date on which the images were created relevant to this assessment. The warrant permits the government to search for evidence, fruits and instrumentalities of Raniere's "involv[ement]" in the subject offenses "in or after January 1, 2015." As set forth above, and as a matter of common sense, evidence created prior to January 1, 2015 can constitute evidence of Raniere's commission of crimes on or after that same date. For example, even in the far more restrictive context of trial, evidence of entirely separate criminal acts that predate the charged crimes is admissible under Rule 404(b).

6

a crime." See Lustyik, 57 F. Supp. 3d at 233. For this additional reason, Raniere's motion should be denied.

## CONCLUSION

For the reasons set forth herein, the government respectfully submits that the Defendant's Second Motion to Suppress should be denied. Attachments 1 and 2 are being submitted under seal, because they are still sealed in part and in full, respectively.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/
Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin M. Trowel
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of Court (NGG) (by ECF)
       Counsel of Record (by ECF)