D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA,

                -against-

KEITH RANIERE,

                    Defendant.
-----------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**18-CR-204-1 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Keith Raniere moves to suppress images (the "Images") seized from a hard

drive, which are allegedly child pornography, arguing that the Images fell outside the scope of

the Government's search warrant. (Raniere Second Mot. to Suppress ("Mot.") (Dkt. 574).) For

the following reasons, the court DENIES Raniere's motion.

I.       **BACKGROUND[1]**

On March 26, 2018, Raniere was arrested. (See Mar. 26, 2018 ECF Entry.) That same

day, Magistrate Judge Daniel J. Stewart of the Northern District of New York signed a search

and seizure warrant (the "8 Hale Warrant") permitting agents to search a house at 8 Hale Drive,

Halfmoon, New York 12065 ("8 Hale Drive"), including any locked and closed containers and

closed items at that location. (8 Hale Warrant (Dkt. 594-1) at 1.) The warrant also authorized

the seizure of certain items that are "evidence, fruits and instrumentalities" of certain offenses—

sex trafficking, forced labor, extortion, and racketeering (collectively, the "Subject Offenses")—

involving Keith Raniere that occurred in or after January 1, 2015. (Id. at 5.) The items listed in

the warrant included: "Computers or storage media used as a means to commit or facilitate the

commission of the Subject Offenses (including to store 'collateral,' as described in the

---

[1] The court presumes familiarity with the record in this case and only discusses the aspects of the case relevant to the instant motion.

[Government's] affidavit[2]." (Id.) The affidavit described explicit photographs and videos from DOS "slaves" as collateral (Lever Aff. ¶¶ 21-22, 47), and notes that the collateral was given to Raniere (id. ¶ 47) and would likely be found at 8 Hale Drive (id. ¶¶ 50, 51). Additionally, the Government's complaint against Raniere—which was attached to Lever's affidavit—alleged that Raniere collected similar nude photographs of DOS slaves in connection with sex-trafficking and forced-labor crimes. (Compl. (Dkt. 594-1 at ECF p. 41) ¶ 48).

The next day, the Government searched 8 Hale Drive (Gov't Mem. in Opp'n to Mot. to Supp. ("Opp'n") at 3) and seized a hard drive (the "Device"), among other items (id. at 2). The Government produced the Device to Raniere and his co-defendants on October 5, 2018. (Gov't Oct. 5, 2018 Letter (Dkt. 593-2); Raniere Mem. in Supp. of Mot. to Supp. ("Raniere Mem.") (Dkt. 580) at 3.)

On February 21, 2019,[3] while searching the Device pursuant to the 8 Hale Warrant, FBI agents found the Images, i.e., two digital images of a nude female whom the agents believed to be under the age of eighteen. (Second Lever Aff. ¶¶ 11-12.) The agents recognized this female as a DOS slave who they believed had sex with Raniere when she was fifteen. (Id. ¶¶ 9-11.) The Images' metadata indicate that they were taken on or before November 2, 2005—a date on which the DOS slave in question was fifteen years old—and that they were taken on a camera seized from 8 Hale.[4] (Id. ¶¶ 12-14.) The Images were also in a folder dated November 2, 2005. (Id. ¶ 13.)

---

[2] The affidavit was submitted with the Government's application for the search warrant. (Mar. 26, 2018 Aff. of Michael Lever (Dkt. 594-1 at p. 10) ("First Lever Aff.").)

[3] In Michael Lever's affidavit, he states that this took place on February 21, 2018. (Feb. 21, 2019 Aff. of Michael Lever (Dkt. 594-2 at p. 2) ("Second Lever Aff.") ¶ 11.) That appears to be a typographical error; Lever meant to say 2019, not 2018.

[4] This same camera was used to take many pictures of Raniere and his other alleged sexual partners. (Second Lever Aff. ¶ 14.)

Also on February 21, 2019, the Government informed Raniere and his co-defendants that it had found "at least one image of child pornography" on the Device. (Gov't Feb. 21, 2019 Letter (Dkt. 362).) Raniere's counsel deleted all copies of the Device and returned it to the Government, in compliance with the Government's request. (Raniere Mem. at 3.) The next day, Magistrate Judge Peggy Kuo authorized a warrant to search the Device for additional evidence of child pornography and sexual exploitation of children. (Feb. 22, 2019 Warrant (Dkt. 594-2).) The Government provided the remaining defendants with a new copy of the Device on March 21, 2019, and then—after Raniere's counsel pointed out that the Images were still on this new copy of the Device—a sanitized copy on April 6, 2019. (Raniere Mem. at 4.)

In a March 29, 2019 brief opposing Raniere's motion to dismiss the indictment, the Government gave the following description of the Images:

> The sexually explicit photographs of Jane Doe 2 were found on a hard drive seized from 8 Hale Drive, in a folder titled "BACKUPS," in a subfolder titled "Studies," which in turn contained 12 subfolders, each of which contained numerous sexually explicit photographs of other members and associates of the Enterprise with whom Raniere had sexual relationships, including Raniere's codefendants Lauren Salzman and Kathy Russell. The photographs in each of the 12 subfolders were taken contemporaneously with the photographs of Jane Doe 2, and the women in all of the photographs – including Jane Doe 2 – were photographed in many of the same poses.

(Gov't Mem. in Opp'n to Mots. to Dismiss (Dkt. 485) at 12.) According to Raniere, it is clear from the face of each of the 12 subfolders that they contain photographs taken in 2005. (Raniere Mem. at 4.) As of the filing of the instant motion, Raniere had not received FBI reports from the Government detailing the search of the Device that led to FBI agents discovering the pornography. (Id.)

Raniere filed this motion on April 22, 2019. (Mot.) He claims to have a Fourth Amendment interest in 8 Hale Drive because it was his study, he renovated it, he stored books

and computers there, and he engaged in sexual activity there.[5]  (Raniere Mem. at 5-6.)  He argues that, in reviewing pornographic photographs from 2005, the Government exceeded the scope of the 8 Hale Warrant, which only permitted the Government to search "evidence, fruits and instrumentalities" of the Subject Offenses (none of which are child pornography) "occurring in or after January 1, 2015." (Id. at 7-9.)  As Raniere says, "[t]he warrant has a clear time limitation." (Id. at 8.)  The Government opposes Raniere's motion, positing that (1) it is untimely, (2) the Images are within the scope of the 8 Hale Warrant, and (3) even if they were not, the Images fall within the "plain view exception" to the Fourth Amendment's warrant requirement.  (Opp'n at 3-7.)

## II.    DISCUSSION

### A.    Whether Raniere's Motion is Timely

The Government contends that Raniere's motion is untimely to the extent that he challenges the 8 Hale Warrant as facially overbroad.  (Id. at 1, 3-4.)  But the Government concedes that Raniere's motion is timely to the extent that he challenges the execution of the 8 Hale Warrant with respect to the Images.  (Id. at 2.)  That is clearly what Raniere is doing. (Mem. at 7-9; Raniere Reply in Supp. of Mot. to Supp. ("Reply") (Dkt. 605) at 1.)  He did not receive notice that the Government had found the Images on the Device until February 21, 2019 (Gov't Feb. 21, 2019 Letter)—six weeks after the court's January 9, 2019 deadline for motions to suppress (Jan. 7, 2019 Order).  His motion is timely.

---

[5] The Government does not dispute that Raniere has a Fourth Amendment interest in 8 Hale Drive.

**B.      Whether the Images are Within the Scope of the 8 Hale Warrant**

      1.      Legal Standard

"Like all activities governed by the Fourth Amendment, the execution of a search warrant must be reasonable." United States v. Lustyik, 57 F. Supp. 3d 213, 230 (S.D.N.Y. 2014) (citing United States v. Ramirez, 523 U.S. 65, 71 (1998)). Accordingly, "[a] search must be confined to the terms and limitations of the warrant authorizing it" and "must be 'conducted in a manner that minimizes unwarranted intrusions upon privacy.'" United States v. Matias, 836 F.2d 744, 747 (2d Cir. 1988) (citing Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976)). Items outside the scope of a valid warrant must be suppressed unless they fall within an exception to the Fourth Amendment's warrant requirement. Lustyik, 57 F. Supp. 3d at 230 (citing, inter alia, Matias, 836 F.2d at 747).

      2.      Application

Raniere contends that, before opening the Images, the FBI agents knew they were from 2005 and were outside the scope of the 8 Hale Warrant, "which was limited to a very specific time period, namely after 2015." (Reply at 1-2.) Therefore, Raniere argues, the Government's execution of the 8 Hale Warrant violated the Fourth Amendment. (Mem. at 7-9; Reply at 1-2.) Raniere is wrong because he misreads the 8 Hale Warrant. The warrant permitted the Government to review materials created before 2015, so long as the materials were evidence, fruits, or instrumentalities of Subject Offenses involving Raniere that occurred in 2015 or later. (8 Hale Warrant at 5.)

Although the Images were created in 2005, they are within the scope of the 8 Hale Warrant because they are evidence of multiple Subject Offenses involving Raniere that occurred in 2015 or later. First, racketeering is a Subject Offense (id.), and the Images are the basis for

three predicate acts of an alleged racketeering pattern that lasted through March 2018 (Second Superseding Indictment (Dkt. 430) ¶¶ 17, 21-23).  Second, the female in the Images allegedly became a DOS slave and the Images share similarities with the collateral provided by other DOS slaves (Opp'n at 5), so the Images may be relevant to Raniere's motive, intent, or modus operandi in forming DOS.  Thus, the Images are "evidence regarding the formation and structure of DOS," which makes them evidence of Subject Offenses (sex trafficking, forced labor, and extortion) occurring in 2015 or later.  (8 Hale Warrant at 5.)

Even if the Images were outside the scope of the 8 Hale Warrant—e.g., they were not evidence, fruits, or instrumentalities of Subject Offenses involving Raniere that occurred in 2015 or later—the court would not suppress them because they fall within the plain view exception to the Fourth Amendment's warrant requirement.

### C.     Whether the Images Fall Within the Plain View Exception

#### 1.     Legal Standard

"The plain view exception authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." United States v. Gamble, 388 F.3d 74, 76 (2d Cir. 2004) (citation and quotation marks omitted). "Probable cause exists to believe that a certain item is evidence of a crime 'if the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be useful as evidence of a crime.'" Lustyik, 57 F. Supp. 3d at 231 (alteration adopted) (quoting, inter alia, Texas v. Brown, 460 U.S. 730, 742 (1983) (plurality opinion)). "The belief that an item in plain view is evidence of a crime need not 'be correct or more likely true than false.  A

practical, nontechnical probability that incriminating evidence is involved is all that is required.'" Id. (quoting Brown, 460 U.S. at 742).

Furthermore, "[i]n searches for papers, it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976). "Courts have applied this principle in analyzing the method used by the police in searching computers and have afforded them leeway in searching computers for incriminating evidence within the scope of materials specified in the warrant." United States v. Graziano, 558 F. Supp. 2d 304, 317 (E.D.N.Y. 2008) (citations omitted); see United States v. Fumo, No. 06-319, 2007 WL 3232112, at *6 (E.D. Pa. Oct. 30, 2007) ("Regardless of the search protocols or keywords used by the government, the government may open and briefly examine each computer file to determine whether it is within the description recited in the warrant.").

　　2.　　Application

The Government contends that "it was plain to agents cursorily reviewing the contents of the hard drive that the images were evidence, fruits and instrumentalities of a host of crimes, including those identified in the warrant, as well as [sexual exploitation of children and child pornography]." (Opp'n at 6.) Raniere retorts that the agents should never have opened the images in the first place because "[a]s soon as the agents saw the folders dated 2005, they were outside of the time-period permitted by the warrant and they had a duty, imposed by the constitution, to stop searching." (Reply at 2.)

As explained above, materials created in 2005 may be evidence, fruits, or instrumentalities of crimes that occurred in 2015 or later. FBI agents were not required to stop reviewing a folder once they saw that it was dated 2005. The agents were permitted to "engage

in a cursory review of files [in the folder dated 2005], by opening them, to determine whether they contained evidence . . . that was within the scope of the warrant." Graziano, 558 F. Supp. at 317; see Fumo, 2007 WL 3232112, at *6 ("[T]he government may open and briefly examine each computer file to determine whether it is within the description recited in the warrant.").

Once the agents opened the two Images, they recognized the depicted nude female as a DOS slave who they believed Raniere had sex with when she was fifteen. (Second Lever Aff. ¶¶ 9-11.) Given what the agents knew at the time they opened the Images, "a person of 'reasonable caution' would have believed [the Images] constituted evidence of a crime"—specifically, sexual exploitation of children in violation of 18 U.S.C. § 2251(a) and possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(b). See Lustyik, 57 F. Supp. 3d at 233 (quoting, inter alia, Brown, 460 U.S. at 742). Therefore, the Images fall within the plain view exception.

## III.   CONCLUSION

For the foregoing reasons, Keith Raniere's (Dkt. 574) motion to suppress the Images is DENIED.


SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      May 3, 2019

NICHOLAS G. GARAUFIS
United States District Judge