

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NS:TH/MKP/KKO
F. #2017R01840

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 12, 2019

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Keith Raniere
                  Criminal Docket No. 18-204 (S-2) (NGG)

Dear Judge Garaufis:

        The government respectfully submits this letter in response to the defendant's motion to preclude the government's noticed experts, Dr. Stuart Grassian and Dr. Dawn Hughes, on the grounds that (1) the government's expert notice was untimely and does not satisfy the requirements of Federal Rule of Criminal Procedure 16(a)(1)(G); and (2) the opinions to be offered by Dr. Grassian and Dr. Hughes do not satisfy the standard set forth in Federal Rule of Evidence 702 and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 588 (1993).  The defendant's arguments are meritless.

    I.    The Government's Expert Notice

        On February 25, 2019, the government provided notice that it intended to offer experts to testify on the topics of: (1) the psychiatric and physiological effects of social, perceptual and occupational isolation; (2) the behavior of victims of sex crimes; and (3) the psychiatric and physiological effects of lack of sleep and severe calorie restriction.  (Docket no. 378).  On March 15, 2019, the government filed an update regarding its expert notice, advising the Court and defense counsel that it was in the process of retaining two experts, Dr. Grassian and Dr. Hughes, to address the first two topics noticed on February 25, 2019.  The government provided the doctors' CVs to defense counsel and requested that the Court set a deadline for the government to provide supplementary disclosures as the government's procurement process was incomplete.  (Docket no. 429).  On March 22, 2019, counsel for Keith Raniere, joining a motion by co-defendant Alison Mack, moved to preclude the government's experts at trial on the grounds that the government's expert notice was

untimely and inadequate. (Docket no. 456).  On April 29, 2019, the Court issued a Memorandum & Order denying relief with leave to renew after expert disclosures were complete and directing the government "to inform the Court and Raniere of any experts it seeks to have testify" by May 2, 2019.  (Docket no. 600, at 62-63; hereinafter the "April 29, 2019 Memorandum & Order").  On May 2, 2019, the government filed a letter providing supplementary expert disclosures as to Dr. Grassian and Dr. Hughes.  This letter provided greater detail on the specific topics that the experts would cover in their testimony and the bases for their respective expertise.  The government separately provided the expert witnesses' prior statements to defense counsel on the same date.  (Docket no. 616).

II.  Applicable Law

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Id.  The proponent of the expert testimony "has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied." United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).

In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and its progeny, the Supreme Court focused on a district court's gatekeeping obligation when considering the admissibility of expert testimony based on specialized knowledge under Rule 702. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141-42 (1999).  In executing its gatekeeping function, the district court must ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597.  Daubert also "emphasizes the need for flexibility in assessing whether evidence is admissible . . . permit[ting] the trial judge to weigh the various considerations pertinent to the issue in question." Borawick v. Shay, 68 F.3d 597, 610 (2d Cir. 1995).  Thus, the central task of the trial court is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor

that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999).

In determining whether to admit or exclude expert testimony, the district court "has broad discretion in determining what method is appropriate for evaluating reliability under the circumstances of each case." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002). Indeed, the Second Circuit has instructed that "Daubert reinforces the idea that there should be a presumption of admissibility of evidence." Borawick, 68 F.3d at 610.

In order to determine whether a witness qualifies as an expert, a court must "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004). The advisory committee notes to Rule 702 make clear that to be admissible as expert testimony, the testimony need not necessarily be scientific, but instead may be based on "experience alone—or experience in conjunction with other knowledge, skill, training or education." Fed. R. Evid. 702, Advisory Committee's Note (2000). The Supreme Court has verified that an expert can draw conclusions from observations based on "extensive and specialized experience." Kumho Tire Co., 526 U.S. at 156 (emphasis added).

In Daubert, the Court laid out a list of nonexclusive factors to assist the trial court in its determination of whether the expert's opinion is grounded in "methods and procedures of science," and whether it is more than "subjective belief or unsupportive speculation." Daubert, 509 U.S. at 589-93 (factors include whether the theory or technique can be and has been tested, whether it has been subjected to peer review and publication, the known or potential rate of error, the standards that control the technique's operation, and the general acceptance of the theory or technique in the scientific community). The Court emphasized that this inquiry should be a "flexible one" focusing "solely on the principles and methodology, not the conclusions that they generate." Id. at 594-95. Daubert further instructs that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. at 596. In particular, if an expert's testimony is within "the range where the experts might reasonably differ," the jury, not the trial court, should be the one to decide among the conflicting views of different experts." Kumho Tire Co., 526 U.S. at 153. "Only if the expert's testimony is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." In re Viagra Prod. Liab. Litig., 572 F. Supp. 2d 1071, 1078 (D. Minn. 2008) (internal quotations omitted).

With respect to disclosure, Federal Rule of Criminal Procedure 16(a)(1)(G) requires the government, at the defendant's request, to provide the defendant with a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. Fed. R. Crim. P. 16(a)(1)(G). The rule requires that the summary provide the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications. Id.

### III. The Government's Experts Have Been Properly Noticed and Their Testimony Will Assist the Jury

As set forth below, the government's expert disclosures were timely and adequate, satisfying Rule 16(a)(1)(G). Further, the government has met its burden of showing that the testimony of each proposed expert would be based on a reliable foundation of professional studies and personal experience that is relevant to the issues at trial and not unduly prejudicial. Kumho Tire Co., 526 U.S. at 152; Williams, 506 F.3d at 160.

#### a. The Government's Disclosure Was Timely

Raniere argues that despite the government's compliance with the Court's May 2, 2019 expert disclosure deadline, the two experts disclosed on that date should nonetheless be precluded because they were not disclosed by February 25, 2019. (Docket no. 633, at 2). The Court already considered and denied this argument in the April 29, 2019 Memorandum & Order, finding that "Raniere has not shown that the extreme remedy of preclusion is warranted here, where the Government disclosed two experts . . . nearly two months before trial." (Docket no. 600, at 62). The Court further "recognized that the truncated pretrial schedule and the various motions that have been filed in this case have placed great burdens on the parties' counsel" and noted that this was the reason the Court "liberally granted deadline extensions to all parties throughout this case." (Id.). The Court then directed the government to file expert disclosures by May 2, 2019, and the government met this deadline. The government respectfully submits that the Court should deny this motion as Raniere has provided no additional information or argument warranting reconsideration of the Court's earlier decision.

#### b. The Defendant's Challenges to Dr. Grassian's Notice, Qualifications and Proffered Opinions Should Be Rejected

Dr. Grassian is a highly-credentialed psychiatrist whom the government intends to call to testify, consistent with its Rule 16(a)(1)(G) disclosures, regarding the effects of restricted and isolated conditions of prolonged confinement. This testimony is relevant to the allegations in Racketeering Act Nine involving Jane Doe 4 who, the evidence will show, was confined to a room for over a year while being subject to document servitude and forced labor. Dr. Grassian will not be testifying about any fact in issue and is not rendering an opinion as to any ultimate facts. Specifically, as set forth in the government's May 2, 2019 letter, Dr. Grassian is expected to offer the following testimony at trial:

>   (1)  severe restriction of social, perceptual and occupational stimulation ("environmental restriction")— including, but not limited to, lack of human contact, restriction of physical activity, lack of occupational stimulation, repetition of routine, and stagnancy of environment—has a profoundly deleterious effect on mental functioning;

4

    (2)    individuals who experience environmental restriction often become incapable of maintaining an adequate state of alertness and attention to the environment and may experience agitated confusional states;

    (3)    individuals who experience environmental restriction often develop severe anxiety and panic disorders;

    (4)    individuals who experience environmental restriction may become suicidal and self-destructive;

    (5)    there are documented examples of environmental restriction being used to weaken individuals and make them more susceptible to indoctrination; and

    (6)    individuals experiencing environmental restriction often experience fear and helplessness, because they have to depend entirely on others.

(Docket no. 616, at 1). Contrary to Raniere's description of this notice as a "list of topics," rather than "the proposed experts' opinions on the topics" (Docket no. 633, at 3), Dr. Grassian's actual opinion on each subject is clearly identified. See United States v. Lipscomb, 539 F.3d 32, 37 (1st Cir. 2008) (finding that the defendant was "on notice with respect to the particular conclusions drawn by the witnesses"). For example, to summarize the first item in the notice, Dr. Grassian will testify that "'environmental restriction' . . . has a profoundly deleterious effect on mental functioning." (Docket no. 616, at 1). Such a statement can only be described as an opinion, and therefore may only be offered into evidence by an expert who is qualified based on his experience, knowledge, skill, training and education. See Fed. R. Evid. 702, Advisory Committee's Note (2000). The government's expert notice as to Dr. Grassian is therefore adequate to "provide [Raniere] with a fair opportunity to test the merit of the expert's testimony through focused cross-examination." Fed. R. Crim. P. 16 advisory committee's note to 1993 amendment.

        Raniere next argues that Dr. Grassian's proposed expert testimony is not sufficiently reliable when offered in connection with a non-prison setting. (Docket no. 633, at 4-5). Dr. Grassian's work as a psychiatrist and consultant, lectures and publications, and review of extensive clinical and experimental literature on the effects of solitary confinement, meets the standard of "superior knowledge, education, experience, or skill with the subject matter of the proffered testimony," United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004). While Dr. Grassian's work on prolonged restrictive conditions often focuses on solitary detention in prison settings, his expertise covers research into how severe restriction of environmental and social stimulation affects persons in non-prison settings. These settings include isolation in the context of aviation, small group confinement (e.g., on expeditions, in submarines, or in Antarctic stations), solo voyages, medically required isolation such as tank-type respirators and bed rest, and sensory deprivation laboratories. (3500-SG-2, Psychiatric Effects of Solitary Confinement, Apps. A and C). The bases for an expert's opinion do not need to match the entirety of an expert's opinion. See Lipscomb, 539 F.3d at 38 ("The inferential step necessary to go from the notice provided by the Government

5

to the actual testimony given at trial is not one requiring more notice."); United States v. Cerna, No. CR 08-0730 WHA, 2010 WL 2347406, at *2 (N.D. Cal. June 8, 2010) ("Rule 16(a)(1)(G) does not require recitation of the chapter and verse of the experts' opinions, bases and reasons. No rule, statute, or decision necessitates such comprehensive disclosure."). Raniere's motion to preclude Dr. Grassian's expert testimony on the grounds of reliability should likewise be denied.

   c. The Defendant's Challenges to Dr. Hughes's Notice, Qualifications and Proffered Opinions Should Be Rejected

  Dr. Hughes is a board-certified forensic psychologist and a clinical psychologist. Her proposed testimony, consistent with the government's Rule 16(a)(1)(G) disclosures, is relevant to the jury's evaluation of multiple witnesses who will testify to sexual assault involving the defendant. As set forth in the government's May 2, 2019 expert notice, Dr. Hughes is expected to offer the following testimony at trial:

  (1) the vast majority of sexual assault victims know their perpetrators;

  (2) victims routinely fail to formally report sexual assault for a variety of reasons, and the evaluation of the "legitimacy" of a sexual assault should not be based on whether or not a victim reported the event to law enforcement;

  (3) victims frequently utilize informal strategies and disclosure to cope with sexual assault, including revealing only partial details of their assault, "talking around" assault and not labeling it as such, and utilizing defense mechanisms of avoidance, dissociation and suppression;

  (4) disclosure by sexual assault victims often unfolds over time, and the process of disclosure is influenced by multiple and changing factors including, but not limited to, the specific characteristics of the experience, the victim's psychological vulnerabilities, the victim's relationship to her perpetrator and her pattern of recovery and coping;

  (5) sexual assault can result in severe, long-lasting and wide-ranging psychological consequences and related difficulties, and can complicate the choice of a victim to formally report assault;

  (6) sexual assault victims may maintain relationships with their perpetrators and this is often influenced by the dynamic between the victim and perpetrator, including whether the victim and perpetrator are in intimate or work relationships characterized by abuse, coercion and/or dependence;

    (7)    false recanting or failure to cooperate with prosecution efforts may occur in situations of interpersonal victimization; and

    (8)    perpetrators often use "grooming" techniques on adult and child victims to normalize sexual behaviors and make their victims more susceptible to assault.

(Docket no. 616, at 2). As with Dr. Grassian's proposed testimony, the foregoing statements are not matters of fact but involve specialized knowledge and therefore may be offered into evidence as expert witness testimony by a qualified witness. Dr. Hughes is clearly qualified. She is a leading expert on sexual abuse, interpersonal violence and traumatic stress. She is a Clinical Assistant Professor of Psychology in Psychiatry at Weill Cornell Medical College, she served as President of the Women's Mental Health Consortium from 2009 to 2017 and she has frequently published and presented on the topics that will be the subject of her testimony. Dr. Hughes' proposed testimony also relies upon her extensive study of the medical and social science literature on sexual assault, interpersonal violence and trauma and on her extensive clinical experience treating hundreds of trauma and abuse patients over the past twenty years. As part of its disclosure the government also included an expert report Dr. Hughes offered in another case in December 2017, which includes Dr. Hughes's qualifications and the bases for the opinions she will offer here. (3500-DH-5.) This report identifies numerous studies supporting her opinions on topic nos. 1 through 7, above.

        Raniere takes issue with Dr. Hughes's qualifications to opine on the use of grooming techniques by perpetrators of sexual assault on adult and child victims (subject no. 8). Courts have found expert testimony on the modus operandi of abusers to be appropriate as "[t]his specialized information may very well be beyond the knowledge of many jurors." United States v. Batton, 602 F.3d 1191, 1201 (10th Cir. 2010) (citing similar holdings by the Seventh and Fifth Circuits); see also United States v. Hayward, 359 F.3d 631, 637 (3d Cir. 2004) (expert testimony was admissible as it "focused primarily on the modus operandi-on the actions normally taken by child molesters to find and seduce their victims"). Dr. Hughes's extensive personal experience in this field and review of medical literature is sufficient to qualify her to address this subject. See, e.g., United States v. Bighead, 128 F.3d 1329, 1330 (9th Cir. 1997) (permitting testimony about delayed disclosure based on expert's professional experience, including interviewing over 1,300 alleged victims of child abuse); United States v. Maurizio, No. CRIM. 3:14-23, 2015 WL 5228031, at *5 (W.D. Pa. Sept. 8, 2015) (finding Daubert standard satisfied by expert who "conducted hundreds of interviews of child sexual abuse victims"). Raniere's motion to preclude Dr. Hughes's testimony should therefore be denied.

    d.    <u>The Defendant's Argument that the Expert Testimony Should be Precluded as Unduly Prejudicial Should Be Rejected</u>

        Raniere moves in the alternative, that certain subjects of expert testimony—Dr. Hughes's proposed testimony about grooming and delayed disclosure, and Dr. Grassian's expertise about prison settings—should be precluded on the grounds of undue prejudice

7

pursuant to Federal Rule of Evidence 403.[1]  The government respectfully submits that this motion, too, should be denied.  With respect to abuser characteristics, multiple Circuit Courts of Appeal have allowed expert testimony on the modus operandi of sexual abusers where, as here, the expert does not offer an opinion on an ultimate issue for the factfinder.  Batton, 602 F.3d at 1201; United States v. Hitt, 473 F.3d 146, 158 (5th Cir. 2006); Hayward, 359 F.3d at 637; United States v. Romero, 189 F.3d 576, 584 (7th Cir. 1999) (recognizing "the value of expert testimony in explaining a complicated criminal methodology that may look innocent on the surface but is not as innocent as it appears.").  Similarly, courts have found expert testimony to be more probative than prejudicial on the topic of delayed disclosure by victims of sexual assault.  See, e.g., Gray v. Pate, No. 0:12-CV-03320-JMC, 2014 WL 1232151, at *10 (D.S.C. Mar. 24, 2014) (finding no federal due process violation where testimony about sexual assault victims' delayed disclosure was admitted for its probative value); Maurizio, 2015 WL 5228031, at *5 (holding that expert testimony about victim characteristics and victim-offender dynamics was not unduly prejudicial).  Here, the probative value of such expert testimony is not substantially outweighed by a danger of unfair prejudice.

With regard to prison settings, Dr. Grassian will be drawing on his expertise about multiple restrictive environments, including but not limited to prisons, to explain the effect of long-term environmental restrictions on a confined person.  The fact that the source of much of his expertise is a commonly found environment that, unlike medically required isolation, is a matter of public policy debate, does not render his resulting expertise prejudicial.  Further, any potential for confusion with respect to these areas of testimony can be addressed with a curative instruction from the Court.

---

[1] Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403 (emphasis added).

IV.     Conclusion

        For the reasons stated above, the government respectfully submits that the defendant's motion should be denied in its entirety.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:   /s/
        Moira Kim Penza
        Tanya Hajjar
        Mark J. Lesko
        Karin Orenstein
        Assistant U.S. Attorneys
        (718) 254-7000

cc:     Clerk of Court (NGG) (by ECF)
        Counsel of Record (by ECF)