D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA,

                    -against-

KEITH RANIERE,

                             Defendant.

TO BE FILED UNDER SEAL
**MEMORANDUM & ORDER**
**18-CR-204-1 (NGG) (VMS)**

------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

       Defendant Keith Raniere has been indicted on charges of racketeering conspiracy,

racketeering,[1] forced labor conspiracy, wire fraud conspiracy, sex trafficking conspiracy, sex

trafficking, and attempted sex trafficking. (Second Superseding Indictment ¶¶ 13-40; 44-48.)

Raniere has submitted a letter regarding Federal Rule of Evidence 412 ("Rule 412") and motions

in limine to preclude the introduction of certain evidence pertaining to abortions and to the trust

established by Clare Bronfman to pay the legal fees of Raniere and others. (See Raniere Letter

(Dkt. 568); Raniere Mots. in Limine ("Mots.") (Dkt. 559)).   For the reasons set forth below, the

court will not exclude any evidence pursuant to Rule 412 at this time, and Raniere's motions in

limine are DENIED IN PART, with the court RESERVING JUDGMENT until trial with respect

to several issues.

---

[1] This charge includes predicate acts of conspiracy to commit identity theft, sexual exploitation of a child, possession of child pornography, conspiracy to alter records for use in an official proceeding, money laundering, trafficking and document servitude, state law extortion, visa fraud, sex trafficking, and forced labor. (Second Superseding Indictment (Dkt. 430) ¶¶ 16-40.)

I.    **LEGAL STANDARD**

  A.    **Motions in Limine**

  "The purpose of a motion in limine is to allow the trial court to rule in advance of trial on

the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc.,

No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v.

United States, 469 U.S. 38, 40 n.2 (1984)); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996);

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 283

(S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence

is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179,

181 (S.D.N.Y. 2001). Further, "courts considering a motion in limine may reserve decision until

trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy,

840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at

287). The court's ruling on a motion in limine is preliminary and "subject to change when the

case unfolds . . ." Luce, 469 U.S. at 41.

  B.    **General Rules of Admissibility**

  Evidence must be relevant to be admissible at trial. Fed. R. Evid. 402. Evidence is

relevant if it "has any tendency to make a fact [that is of consequence to the determination of the

action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. This

relevance standard is "very low." United States v. White, 692 F.3d 235, 246 (2d Cir. 2012)

(quoting United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence

is admissible unless the United States Constitution, a federal statute, the Federal Rules of

Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; see

also White, 692 F.3d at 246.

"The court may exclude relevant evidence if its probative value is substantially
outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues,
misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."
Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as
distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives."
Old Chief v. United States, 519 U.S. 172, 184 (1997). In short, Rule 403 requires the court to
"make a 'conscientious assessment' of whether unfair prejudice substantially outweighs
probative value" with regard to each piece of proffered evidence. Al-Moayad, 545 F.3d at 160
(quoting United States v. Salameh, 152 F.3d 88, 110 (2d Cir. 1998) (per curiam)).

## II.   DISCUSSION[2]

The court addresses each of Raniere's requests in turn.

### A.   Applicability of Rule 412

Rule 412 prohibits a party, in a criminal proceeding "involving alleged sexual
misconduct," from introducing "(1) evidence offered to prove that a victim engaged in other
sexual behavior; or (2) evidence offered to prove a victim's sexual predisposition." Fed. R.
Evid. 412(a).

In his letter regarding Rule 412, Raniere urges the court to find that "the vast majority of
the evidence that the government is concerned about in the context of a Rule 412 analysis is
admissible." (Raniere Letter at 1.) Raniere argues that, among other things, the evidence he
seeks to introduce falls outside the scope of Rule 412 because it does not concern "other" sexual
behavior or relate to victims' alleged "sexual predispositions," but is instead "intrinsic to the

---

[2] The court assumes the parties' familiarity with the factual background and procedural history in this matter and
thus discusses background information relevant to the instant motions only as necessary.

offense charged." (Id. at 2.) Specifically, Raniere anticipates introducing "evidence from

multiple witnesses that [the government's] witnesses were interested in pursuing sexually

oriented discussions and often a sexual relationship with Raniere, and that they not only

consented to such a relationship but also eagerly pursued it." (Id. at 2.) Such evidence would

include "not only sexual contact between Raniere and the witness at issue, but also

conversations, communications and other interactions between Raniere and these women

concerning sex, intimacy and other related issues," which "gave Raniere ample reason to believe

that he was engaging in consensual sexual relations." (Id.) For example, Raniere might

introduce evidence showing that "one witness expressed a desire to be more comfortable in

certain sexual situations" (id. at 2) and that Raniere engaged in "certain conduct because it would

help this person overcome certain limitations, fears or concerns of which Raniere was aware" (id.

at 3). Such evidence, Raniere contends, "is absolutely essential and admissible because it is the

whole reason behind Raniere's decision to engage in certain conduct that the government now

claims is criminal in nature." (Id. at 3.) The Government does not address Raniere's argument

with respect to the scope of Rule 412.[3]

    In United States v. Rivera, a case involving sex trafficking and forced labor charges, the

Second Circuit held that the district court had not erred by precluding "[e]vidence of victims'

prior acts of commercial sex" because such evidence was "irrelevant to whether those victims

were coerced into working as prostitutes [by the defendants]." 799 F.3d 180, 185 (2d Cir. 2015).

The court noted approvingly, however, that the district court had not prevented the defendants

---

[3] The Government focuses instead on whether the evidence fits into one of the exceptions at Rule 412(b). Since, as
discussed below, the court finds that the evidence at issue is not within the scope of Rule 412, the court does not
consider whether one of the exceptions would apply.

from cross-examining the victims with respect to whether the defendants had coerced them into

engaging in acts of prostitution:

> Even without pursuing the precluded line of inquiry, [defendants]
> effectively cross-examined the victims and argued that they
> engaged in prostitution for pecuniary reasons—not because they
> were forced. The testimony that some of the victims quit working
> and subsequently returned or chose to work at the bars because
> they earned more money than they would at their next-best
> employment option could have been received by the jury as
> suggesting consent. Thus, the testimony elicited by [defendants']
> counsel, as emphasized by Rivera's counsel in closing, allowed
> [defendants] to contend that the victims freely consented to engage
> in prostitution. Because [defendants] were able to argue that the
> victims voluntarily engaged in prostitution, the court's exclusion of
> any evidence concerning the victims' prior engagement in a
> sexualized business did not prejudice [defendants] with respect to
> their sex trafficking or forced labor charges.

Id. at 186.

Here, evidence that Raniere's alleged victims had engaged in sexual acts prior to or

"other" than the ones on which Raniere's criminal charges are based, or that they had a certain

"sexual predisposition" to engage in such acts, would likely be irrelevant to the question of

whether they were coerced into engaging in sexual acts with Raniere. Such evidence would

certainly come within the scope of Rule 412. However, based on his representations (see

Raniere Letter), the court does not understand Raniere to be seeking leave to introduce such

evidence. Indeed, he does not appear to intend to argue that "because the victim previously

consented to have sex—for love or money—her claims of coercion should not be believed."

Rivera, 799 F.3d at 186 (explaining that the purpose of Rule 412 is to preclude such arguments).

Instead, Raniere appears to be seeking permission to introduce evidence that is intrinsic to and

purportedly undermines the claims of coercion that are at the heart of many of the charged

crimes. In other words, he seeks to introduce evidence not of other sexual acts or behavior, but

of Raniere's and the alleged victims' behavior in engaging in the sexual acts at issue here. Such

evidence is outside the scope of Rule 412. See Advisory Committee Notes, 1994 Amendments,

Fed. R. Evid. 412 (noting that "[t]he word 'other' is used to suggest some flexibility in admitting

evidence 'intrinsic' to the alleged sexual misconduct"); 23 Charles Alan Wright & Arthur R.

Miller, Federal Practice and Procedure § 5374.1 (2d ed. April 2019 update) (observing that "[t]he

sexual behavior excluded by Rule 412(a)(1) must be . . . 'other' than the 'alleged sexual

misconduct' that brings a given civil or criminal proceeding involving that misconduct within the

scope of Rule 412"); see also United States v. Brown, No. 3-CR-17-396, 2019 WL 1227427, at

*2 (M.D. Pa. Mar. 15, 2019) (allowing sex trafficking defendant to ask victim witnesses about

"other prostitution acts that occurred during the time period charged in the indictment, as they

are relevant to the issue of force or coercion," but precluding him from introducing evidence or

cross-examining victim witnesses regarding such acts engaged in before or after the time period

charged in the indictment). The Government may of course challenge particular evidentiary

proffers or lines of cross-examination at trial.

**B.    Evidence of Abortions**

With respect to evidence regarding abortions, Raniere makes three motions in the

alternative, requesting that the court: (1) preclude the Government from introducing any

testimony or evidence of abortions; (2) preclude the Government from introducing any testimony

or evidence concerning abortions unless the relevant witness testifies; or (3) require the

Government to redact abortion records. (Mots. at 1.) The court takes these motions in turn.

1.    Exclusion of All Evidence of Abortions

In support of his motion to preclude "all evidence, references and testimony concerning

abortions," Raniere advances several arguments under Federal Rules of Evidence 401, 402, and

403. (Raniere Mem. in Supp. of Mots. ("Mem.") at 7.) For the following reasons, Raniere's

6

motion to exclude all evidence of abortions is DENIED. The Government is, however,

DIRECTED to alert the court and defense counsel within <u>48 hours</u> of any expected testimony or

the admission of documentary evidence regarding abortion.

     a.    *Relevance*

     The Government contends that evidence of abortions is relevant to prove that Raniere

was having sex with the individuals who had abortions and to establish the timing of those sexual

relationships, as well as "Raniere's control over members of his enterprise and the lengths to

which members of the enterprise would go to placate his desires." (Gov't Resp. to Def. Mots.

("Gov't Resp.") at 3-4.) Raniere argues that the Government should not be permitted to argue

that abortion histories of Raniere's alleged victims are relevant to the enterprise because the

Government failed to reference such evidence in their motion to admit enterprise evidence. (<u>Id.</u>

at 3-4.) The court agrees with the Government that evidence of abortions meets the "very low"

threshold for relevance, <u>see</u> <u>White</u>, 692 F.3d at 246 (quoting <u>Al-Moayad</u>, 545 F.3d at 176), and

finds that the omission of such evidence from the enterprise motion is not a bar to its potential

introduction at trial so long as it is not otherwise inadmissible.

     b.   *Cumulative*

     Raniere further argues that evidence of abortions is not necessary to prove sexual

relationships because he will concede at trial that he had sexual relationships with many women,

including all women for whom the government has abortion records. (Mem. at 4; <u>see</u> Gov't

Resp. at 4; Reply at 2-3.) Although he labels this a challenge on relevance grounds, it appears to

be an argument under Rule 403 that the evidence, while arguably relevant, is needlessly

cumulative. In any case, the Government objects to excluding evidence on these grounds given

that Raniere has not specified how such a concession will come into evidence—whether by

stipulation or otherwise. (Gov't Resp. at 4.) Moreover, Raniere does not state that he will

stipulate to the timing of such relationships. (Id.) For example, the Government states that it is

unlikely that Raniere will stipulate to having had a sexual relationship with Jane Doe 2 while she

was a minor. The Government contends that evidence that she had an abortion when she was

eighteen years old would therefore be relevant to and probative of the Government's contention

that he had a sexual relationship with her before that time. (Id.) The court agrees that evidence

of abortions meets the threshold for relevance and does not appear at this time to be needlessly

cumulative. Of course, Raniere remains free to object at trial to the admission of such evidence

if, in the context of other evidence introduced at trial, it becomes, for example, "needlessly []

cumulative." See Fed. R. Evid. 403.

c.   *Prejudice*

Raniere also argues that introduction of evidence pertaining to abortions would be unduly

prejudicial and would serve "solely [to] inflame the jury." (Mem. at 4.) He expects that the

evidence concerning abortions will be inflammatory because abortion is "one of the most

contested issues facing this country;" █████████████████████

████████████████████████████████████████████

█████████████████ (Def. Mem. at 4-5.) Raniere highlights certain medical

records pertaining to an abortion obtained by Jane Doe 2 that Raniere contends the Government

seeks to admit. (Raniere Reply in Further Supp. of Mots. ("Reply") at 2.) Such records

apparently include images of pregnancy tests and sonogram photos.[4] (Id.)

---

[4] Although Raniere refers to these images as ███████████████ (Reply at 2 (emphasis in original)) the
court understands them to be sonogram images of a fetus that was later aborted, as opposed to images (like those
used by anti-abortion protestors) of a fetus that had been aborted and then photographed.

These records also contain a statement to the effect that Jane Doe 2 had been with her current partner for five years.
The court addresses the admissibility of this statement below.

The Government responds that it "recognize[s] the sensitivities regarding abortion and intends to offer only limited testimony and records regarding abortion." (Gov't Resp. at 4.) ███

███████████████████████████████████████████████

████████████████████████ (Id.) It also plans to take to take steps to protect the privacy of individuals who received abortions. (Id.) Finally, the Government offers to alert the court and defense counsel within 24 hours of any expected testimony or evidence regarding abortion to address outstanding issues. (Id.)

The court acknowledges the sensitivity of the subject of abortions and agrees that the Government must be careful to present any such evidence in a circumscribed and thoughtful manner to avoid any unfair prejudice to Raniere. To that end, the court adopts with modification the Government's suggestion for how to proceed. So that "questions of . . . potential prejudice may be resolved in proper context," Hennessy, 840 F. Supp. 2d at 554 (quoting Viada, 2005 WL 3435111, at *1), the Government is DIRECTED to alert the court and defense counsel within 48 hours of any expected testimony or the admission of documentary evidence regarding abortion.

d.   *Undue Delay*

Raniere also argues that the Government should not be permitted to argue that "Raniere unduly influenced [] women into receiving abortions" because the defense will be "forced to introduce contradictory evidence" showing that women obtained abortions voluntarily, which will "significantly delay trial and effectively create a mini-trial over irrelevant collateral evidence." (Mem. at 4-5; 6-7.) At this time, the court does not agree that the introduction of otherwise admissible evidence pertaining to abortions will unduly delay trial. See Fed. R. Evid. 403.

2.   Request to Preclude Evidence or Testimony Regarding Abortions Unless the Woman Who Received the Abortion Testifies

If the court does determine that evidence and testimony regarding abortions is admissible, Raniere asks that such evidence and testimony be allowed only if the woman who had the alleged abortion testifies to provide "context and explanation." (Mem. at 7.) ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮ At this stage, however, the court cannot make an informed ruling. The court therefore RESERVES JUDGMENT on the admissibility of testimony regarding abortions until trial, at which point the testimony sought and the purpose for which is offered can be properly assessed in context. See Wechsler v. Hunt Health Sys., Ltd., 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) ("A court considering a motion in limine may reserve judgment until trial, so that the motion is placed in the appropriate factual context." (citation omitted)).

3.     Redaction of Abortion Records

Raniere also moves to preclude the government from introducing a statement in Jane Doe 2's medical records on the ground that it is impermissible hearsay as it is unrelated to medical treatment. (Mem. at 8-9.) ████████████████████

██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

---

[5] In his reply brief, Raniere raises a concern for the first time that Jane Doe 2's medical records are protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and argues that "if the government can represent that this witness has no objection to her private medical information coming into evidence, then they should say that." (Reply at 2.) Courts in this Circuit disfavor new issues being raised in reply papers. See Keefe v. Shalala, 71 F.3d 1060, 1066 n. 2 (2d Cir. 1995) (stating that normally the court "will not consider arguments raised for the first time in a reply brief"); Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir.1993) (stating that "[a]rguments may not be made for the first time in a reply brief"); Nat'l Labor Relations Bd. v. Star Color Plate Serv., 843 F.2d 1507, 1510 n. 3 (2d Cir. 1988) (rejecting a party's "attempts to raise for the first time [a new question] in its reply brief"); Playboy Enters., Inc. v. Dumas, 960 F.Supp. 710, 720 (S.D.N.Y. 1997) (stating that a court need not consider arguments made for the first time in a reply brief). Here, the court has not had the benefit of full briefing as to whether or how HIPAA applies to admissibility of the medical records at issue. The court thus declines at this time to address this argument.





The court thus RESERVES JUDGMENT on the admissibility of the notation in Jane Doe 2's medical file until after the Government has had an opportunity to lay this foundation and place these records in their full context.[6]   At that time, Raniere may of course object on the ground that the notation's purported ambiguity is likely to cause unfair prejudice such that its probative value is substantially outweighed, pursuant to Federal Rule of Evidence 403.

### C.    Evidence of Clare Bronfman's Contributions to a Defense Trust

Raniere also moves to exclude any evidence that Clare Bronfman created and funded an irrevocable trust (the "Trust") that paid the legal fees for her co-defendants in this case (including Raniere).  (Mem. at 9-11.)  According to the Government, this evidence is relevant as "direct evidence of the Enterprise, the relationship between and among the defendants and co-conspirators, and of Bronfman's status within the Enterprise."  (Gov't Mem. in Supp. of Mot. to Admit Enterprise Evid. (Dkt. 414) at 38.)

---

[6] In his memorandum, Raniere briefly mentions that there may be a Confrontation Clause issue.  (Mem. at 9.)  As the court reserves judgment on the admissibility of this evidence, the court also reserves judgment on any Confrontation Clause issues.

Raniere makes three arguments for why this evidence should be excluded. (Mem. at 9-11.) First, he avers that the Trust cannot be direct evidence of the Enterprise because it was established in May 2018, while the alleged Enterprise ceased to exist in March 2018 (according to the Indictment). (Mem. at 9-10.) As the Government observes, however, the Enterprise did not necessarily end as of the date identified in the indictment. (Gov't Resp. at 5-6.) "A RICO conspiracy continues until the objectives of the conspiracy are either accomplished or abandoned." United States v. Eppolito, 543 F.3d 25, 48 (2d Cir. 2008) (alteration adopted) (quoting United States v. Spero, 331 F.3d 57, 61 (2d Cir. 2003)). "Where the government has presented sufficient evidence to show a conspiracy that has continuing purposes or goals, the burden is on the defendant to prove that the conspiracy was terminated or that he took affirmative steps to withdraw."[7] Eppolito, 543 F.3d at 49. Accordingly, the Government may introduce evidence of the Trust to show that the conspiracy continued even after Bronfman and her co-defendants were indicted.

Second, Raniere contends that the Trust evidence unfairly suggests that his lawyers acted improperly. (Mem. at 10.) The court disagrees. There is no suggestion Raniere's counsel has done anything wrong. Further, the Government does not plan to show that any of Raniere's current lawyers accepted Trust funds; the evidence is meant only to establish the existence and continuance the Enterprise. (Gov't Resp. at 6.)

Third, Raniere insists that admission of the Trust evidence will require him to submit evidence concerning the Trust's bona fides, creating a "mini-trial on an entirely collateral issue" and prejudicing Raniere's counsel. (Mem. at 10-11.) Again, the court disagrees. The bona fides

---

[7] This does not present Fifth or Sixth Amendment issues because "[t]he beginning and ending dates of a conspiracy are not elements of the offense, so proof of different dates could never raise the specter of conviction for a different crime." United States v. Kilgore, 401 F. App'x 842, 844 (4th Cir. 2010) (citing United States v. Hatten–Lubick, 525 F.3d 575, 581 (7th Cir. 2008)).

14

of the Trust and the lawyers involved with it are not relevant; the Trust evidence is meant only to show a continuing relationship between Raniere, Bronfman, and the other members of the Enterprise. (See Gov't Resp. at 6.) To the extent issues concerning the Trust's bona fides become relevant, these issues can be addressed in a stipulation. (See id.)

Therefore, Raniere's motion to exclude the Trust evidence is DENIED.

## III.    CONCLUSION

For the foregoing reasons, the court finds as follows with respect to Raniere's letter regarding Rule 412 (Dkt. 568) and his motions in limine (Dkt. 559):

- The court will not exclude any evidence pursuant to Rule 412 at this time, although the Government may challenge particular evidentiary proffers or lines of cross-examination at trial;

- Raniere's motion to exclude all evidence of abortions is DENIED;

- The Government is DIRECTED to alert the court and defense counsel within 48 hours of any expected testimony or the admission of documentary evidence regarding abortion;

- The court RESERVES JUDGMENT on the admissibility of testimony regarding abortions;

- The court RESERVES JUDGMENT on the admissibility of Jane Doe 2's medical records and the contents thereof; and

- Raniere's motion to exclude the Trust evidence is DENIED.

Out of an abundance of caution, the court initially files this memorandum and order under seal. By May 10, 2019, the parties are to submit a joint proposal as to those portions, if any, that they believe should be redacted and remain sealed so that the court may consider the

proposed redactions and file the memorandum and order publicly with appropriate redactions if

necessary.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
       May 3, 2019

NICHOLAS G. GARAUFIS
United States District Judge

16