# BRAFMAN & ASSOCIATES, P.C.

ATTORNEYS AT LAW

767 THIRD AVENUE, 26TH FLOOR

NEW YORK, NEW YORK 10017

TELEPHONE: (212) 750-7800

FACSIMILE: (212) 750-3906

E-MAIL: ATTORNEYS@BRAFLAW.COM

BENJAMIN BRAFMAN

———

MARK M. BAKER
OF COUNSEL

MARC A. AGNIFILO
OF COUNSEL

ANDREA L. ZELLAN
JOSHUA D. KIRSHNER
JACOB KAPLAN
TENY R. GERAGOS
ADMITTED IN NY & CA
STUART GOLD

May 23, 2019

VIA ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    United States v. Keith Raniere, 18 Cr. 204 (NGG)

Dear Judge Garaufis:

    By this letter, the defendant Keith Raniere moves for a mistrial due to the Court's abrupt termination of cooperating witness Lauren Salzman's testimony in the middle of her answer and terminating defense counsel's cross-examination without warning. Ms. Salzman, a critical government cooperating witness who has pleaded guilty to Racketeering and Racketeering Conspiracy, testified on direct examination for in excess of two full days.

    After less than five hours of cross-examination, the record is as follows:

    Mr. Agnifilo:    When you were in DOS, before anybody was arrested, were you doing things intentionally to break the law?

    Ms. Hajjar:    Objection.

    The Court:    That requires a legal conclusion.

Mr. Agnifilo: Was it your intention to hurt people or to help people?

Ms. Hajjar: Objection.

Mr. Agnifilo: What was your intention when you were in DOS?

The Court: You may answer.

Ms. Salzman: My intention was to prove to Keith that I was not so far below the ethical standard that he holds that I was - - I don't even know how far below I am. I was trying to prove my self-worth, and salvage this string of a hope of what I thought my relationship might some day be, and I put it above everything else; I put it above my friends and I put it above other people, helping them in their best interest. That's what I did when I was in DOS.

The Court: Okay, that's it. We are done.

Mr. Agnifilo: Okay Judge. Thank you.

The Court: You are done.

Mr. Agnifilo: I know. I am done.

The Court: No, I said you're done

Mr. Agnifilo: I know. I am.

The Court: So you can sit down.

The government indicated it had no redirect and the witness was excused. (Tr. 2264-2265.)

As the record shows, the Court permitted the witness to answer the question about what her intention was while she was in DOS. After the witness started giving her answer to that question and just after the witness referred to helping people in their best interest, the Court not only terminated the witness' answer, it terminated the entire cross-examination. This was done without any warning and was done specifically after the Court stated that the witness could indeed answer the question posed.

After the jury was discharged for the day and the witness excused, the Court stated of the witness: "this is a broken person, as far as I can tell. And whether she's telling the truth, whether the jury believes her, I think it is absolutely necessary that there be a certain level of consideration for someone's condition." (Tr. 2268.) The Court continued, "I had a crisis here. And not in my courtroom." (Id.)

The Court's actions strike at the heart of a fair trial. Indeed, "[i]n almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Goldberg v. Kelly, 397 U.S. 254 (1970). The jury must pass on the credibility of this critical *cooperating* witness. Central to that consideration is whether the witness genuinely believed that she was harming people, as opposed to helping people, through her actions in DOS. The jury is absolutely within its right to conclude that a cooperating witness pleaded guilty for reasons other than, or in addition to, her actual guilt. This is especially true where, as here, the government touts the cooperating witness' guilty plea as being truthful and consistent with the government's view that Raniere is guilty of the same crimes. The defense is under no obligation to merely accept this view of the facts. Indeed, defense counsel is well within his rights and legal obligation to shake the government's position on these issues, to show that perhaps the witness is not guilty of certain crimes and that the witness has pleaded guilty and cooperated against the defendant for personal reasons or for reasons unrelated to her actual guilt. See United States v. Lynn, 856 F.2d 430, 432 (1st Cir. 1988) (because bias is always relevant as discrediting the witness and affecting the weight of the witness' testimony, a defendant is entitled to explore a witness' motivation for testifying).

Moreover, the Court should not have saved the cooperating witness from herself or her own answers, in violation of Raniere's Sixth Amendment right. The Sixth Amendment guarantees that a criminal defendant "shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const., Amend VI. That right of confrontation is a "bedrock procedural guarantee;" Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354 (2004); and includes the "fundamental right" to cross-examine government witnesses. Pointer v. Texas, 380 U.S. 400, 404-05 (1965). See also Chambers v. Mississippi, 410 U.S. 284, 294-95 (1973).

The Confrontation Clause guarantees not merely the formal opportunity to cross-examine, but the opportunity for *effective* cross-examination. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986) (the Confrontation Clause is violated where "[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [] counsel been permitted to pursue his proposed line of cross-examination"); United States v. Desoto, 950 F.2d 626, 629 (10th Cir. 1991). Cross-examination "is essential to a fair trial" and should be given the "largest possible scope," with cooperating witnesses. See United States v. Hall, 653 F.2d 1002, 1008 (5th Cir. 1981); United States v. Harris, 501 F.2d 1, 9 (9th Cir. 1974). Thus, "a defendant should be afforded the

opportunity to present facts which, if believed, could lead to the conclusion that a witness who has testified against him either favored the prosecution or was hostile to the defendant." United States v. Haggett, 438 F.2d 96, 399 (2d Cir. 1971). The Supreme Court has declared that the "denial or significant *diminution*" of the right to cross-examine calls into question the "integrity of the fact-finding process." Chambers, 410 U.S. at 295 (emphasis added). Further, "[w]ide latitude should be allowed . . . when a government witness in a criminal case is being cross-examined by the defendant." United States v. Pedroza, 750 F.2d 187, 195-95 (2nd Cir. 1984) citing United States v. Masino, 275 F.2d 129, 132 (2nd Cir. 1960).

This is a critical cooperating witness. The government—who undoubtedly views her as a co-conspirator and not a victim—solicited and finalized her cooperation. The government then chose to put this witness on the witness stand in a very serious case where the possibility of life in prison is in the balance. If this witness is indeed "damaged," that is not the fault of the defendant who is, after all, seeking to demonstrate her lack of credibility. The jury must be able to see this witness for whatever she is—good, bad or indifferent—without the Court saving her by stopping her mid-testimony and ordering the defendant to ask her no more questions. This deprived Raniere the ability to confront Ms. Salzman effectively and elicit evidence which was favorable to his defense. See Gordon v. United States, 344 U.S. 414, 423 (1953) (trial judge's discretion "cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony.")

Our view and the view we were trying to share with the jury was that Ms. Salzman's difficulty with answering these questions was due to the fact that because she truly believed DOS was a positive influence on her and others (prior to seeing the discovery and undergoing the change in perspective to which she admitted) she was struggling to identify how exactly she broke the law given her outlook at the time she engaged in these actions. While her actions may or may not take on a different dimension in hindsight, her actions at the time were not intended to be hurtful. By stopping this examination and preventing wholesale the defendant's ability to develop this theme - which was at the core of the defendant's opening statement and was developed through other witness' at this trial - the Court impermissibly intervened into the facts, prevented the development of a central line of cross-examination and then scolded counsel sternly in front of the jury, all in the interest of minimizing the emotional upset of a cooperating witness.

While the Court's concern for the cooperating witness as a person is admirable in the abstract, the Court could have done many things short of announcing the end of cross-examination sternly and without warning. The Court could have, for instance, given the witness a break or adjourned for the day. But the Court opted to cause the jury to believe unfairly that defense counsel had done something wrong to a witness in a case with highly sensitive issues and to fully terminate a critical cross-examination without any notice or warning whatsoever.

Brafman & Associates, P.C.

 

      Due to the Court stopping the cross-examination, counsel was not permitted to question the witness about several areas covered during her direct examination. This includes (1) the impact of her potential jail term on her decision to cooperate, (2) certain other facts she learned in discovery that caused her to view Raniere and DOS differently than she had previously, (3) certain specific portions of the tape recordings she heard of meetings between Raniere and other DOS members, and (4) other aspects of her plea agreement and her cooperation. As a result, the jury is left with only the prosecution's version of these topics, which have not been covered in cross-examination.

      Finally, for the Court to chastise counsel by repeatedly directing him to end his cross-examination and to sit down, where the Court had specifically ruled that the witness could answer the question is patently unfair. Counsel has been fair and appropriate to every witness called by the government and whatever good will counsel has endeavored to engender in the minds of the jury is now forever lost. There is no coming back from this. The damage is done. The witness' cross-examination has been ended. Counsel has been dressed down in front of the jury. There is no remedy.

      We move for a mistrial.

                                                              Respectfully submitted,

                                                              /s/
                                                     Marc A. Agnifilo, Esq., *Of Counsel*
                                                     Teny R. Geragos, Esq.

cc:      Counsel for the government (via ECF)