# DerOhannesian & DerOhannesian   Attorneys and Counselors at Law

677 Broadway, Suite 707
Albany, New York 12207
(518) 465-6420 fax (518) 427-0614
www.derolaw.com

Paul DerOhannesian, Esq. (1953-2001)    Paul DerOhannesian II, Esq.    Danielle R. Smith, Esq.

June 3, 2019

*Via ECF*

Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   *United States v. Raniere, et al.* No. 18-cr-204 (NGG)

Dear Judge Garaufis:

We represent the defendant, Keith Raniere, in the above matter. We write in opposition to the government's motion for reconsideration, dated May 31, 2019 ("Reconsideration").[1] The government's motion constitutes an unjustified untimely disclosure and should therefore be precluded. Furthermore, the short letter motion fails to meet the requirements of Local Criminal Rule 49.1(d) and falls far short of meriting the "extreme remedy" of reconsideration. Finally, the additional material does not establish the reliability of "grooming" testimony such that a *Daubert* hearing is unnecessary. In other words, should this Court consider the additional material, Raniere respectfully submits that we must proceed with the *Daubert* hearing.

1. The Government's Untimely Disclosure Should Be Precluded

The government's motion for reconsideration, which consists almost entirely of material from Dr. Hughes, represents the second time the government has demonstrated a complete disregard for this Court's expert disclosure deadline. As Raniere argued in his motion to preclude experts (the motion and Order for which the government is seeking reconsideration), the government failed to identify Dr. Hughes as an expert until March 15, 2019, eighteen days after the prosecution's agreed upon and court-ordered disclosure deadline. Dkt. No. 633. The government's March 15 disclosure included only her CV with no supporting papers or reports. Nevertheless, this Court, over defendant's objection, allowed the government to submit additional supporting information by May 2, 2019. On that date, the prosecution provided defense counsel with various papers and cases involving Dr. Hughes. None of those papers or cases involved the instant matter. Based on that disclosure, Raniere filed a motion to preclude the government's experts the following week on May 8, 2019. Dkt. No. 633. Although the government's response was originally due Friday, March 10, 2019, it requested, and was granted, an adjournment until Monday, March 12, 2019. *See* May 9, 2019 Trial Transcript, p. 727. On May 22, 2019, this Court

---

[1] The government has not yet filed its motion on ECF. We are therefore unable to refer to the prosecution's filing with a docket number and instead will refer to it as "Reconsideration."

DerOhannesian & DerOhannesian

**Hon. Nicholas G. Garaufis**
**June 3, 2019**
**Page 2**

granted defendant a *Daubert* hearing concerning Dr. Hughes' "grooming" opinions but otherwise denied Raniere's motion to preclude experts. Dkt. No. 667.

Now, over three months after the initial February 25 deadline and nearly one month after the extended May 2 deadline, the government seeks to submit additional material to fulfill its Rule 16 obligations, supplement Dr. Hughes' opinions and negate the need for a hearing. Once again, the government provides no justification or explanation for not disclosing the material to defense counsel prior to the May 2 deadline.[2] Raniere respectfully submits that the government's behavior should not be rewarded, and its motion should be rejected without further discussion or analysis. Nevertheless, should this Court find otherwise, Raniere respectfully submits that the government's motion does not meet the fundamental requirements for reconsideration.

2. The Government's Motion Fails to Meet the Requirements of Local Criminal Rule 49.1(d) and Does Not Merit the "Extraordinary Remedy" of Reconsideration

The Federal Rules of Criminal Procedure do not include a mechanism by which a court can reconsider a prior order. Nevertheless, "such motions are tacitly accepted in criminal cases in this District by virtue of Local Crim. R. 49.1(d)." *United States v. Baldeo*, No. S1 13 Cr. 125 (PAC), 2015 US Dist LEXIS 6152, at *2 (S.D.N.Y. Jan. 20, 2015).[3] According to Local Criminal Rule 49.1(d), "[a] motion for reconsideration or reargument of a Court order determining a motion shall be filed and served within fourteen (14) days after the Court's determination of the original motion. A memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked shall accompany the motion."

That the Local Rules include the fundamental requirements for reconsideration does not suggest that such a motion should be regularly utilized or that the sought relief is easily achieved. Indeed, "[r]econsideration of a court's previous order is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'" *Baldeo*, No. S1 13 Cr. 125 (PAC), 2015 US Dist LEXIS 6152, at *2 (quoting *Montanile v. Nat'l Broad. Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002)). "The major grounds justifying reconsideration are an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *United States v. Kurti*, No. 11-CR-486 (DLI), 2013 US Dist LEXIS 55372, at *13 (E.D.N.Y. Apr. 17, 2013) (citing *Hinds County, Miss. v. Wachovia Bank N.A.*, 708 F. Supp. 2d 348, 369 (S.D.N.Y. 2010)). For the following reasons, Raniere respectfully submits that the government's two-page cover letter with attached materials from Dr. Hughes fails

---

[2] Dr. Hughes' May 31, 2019 letter to AUSA Moira Kim Penza (which is attached to the government's two-page cover letter) is based on literature produced between 1990 and 2018, meaning that Dr. Hughes' letter could easily have been drafted and submitted prior to the May 2, 2019 deadline.

[3] As this Court is no doubt aware, the Eastern and Southern Districts share one set of Local Rules. Accordingly, Raniere will refer to both Southern and Eastern District cases in this response.

DerOhannesian & DerOhannesian

Hon. Nicholas G. Garaufis
June 3, 2019
Page 3

to meet the requirements of Local Criminal Rule 49.1(d) and does not warrant the "extraordinary remedy" of reconsideration.

As noted above, Local Criminal Rule 49.1(d) requires that the moving party include "[a] memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." Nothing in the government's submission could be construed as such a "memorandum" of "overlooked" material. Of the government's six-page motion, only three sentences are originally drafted substantive material by the government. The remainder of the submission is material from Dr. Hughes. The government's first sentence is a request for relief, the second sentence advises the Court of the attached material from Dr. Hughes, and the final sentence submits that Dr. Hughes' opinions are sufficiently reliable as to negate the need for a *Daubert* hearing. At no point in these three sentences (or, indeed, even when considering the six-page submission in its entirety), does the government identify "an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kurti*, No. 11-CR-486 (DLI), 2013 US Dist LEXIS 55372, at *13.

In other words, the government does not identify any facts, law or evidence that they contend this Court "overlooked," as is required by Local Criminal Rule 49.1(d). Courts in both the Southern and Eastern districts routinely deny reconsideration where the motion is silent as to this fundamental requirement. *See United States v. Baldeo*, 2015 US Dist LEXIS 6152, at *3-4 ("Baldeo fails to submit 'memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked.' Instead, Baldeo merely submits a 'Notice of Motion' along with sworn statements . . . These statements do not present any matters 'overlooked;' instead, they present a cascade of new matters which were never put before the Court during the initial motion. . . . Since Baldeo fails to present any 'overlooked' matters, the motion to reconsider is denied."); *United States v. Robinson*, No. 16-CR-545 (ADS), 2018 US Dist LEXIS 193350, at *62, (E.D.N.Y. Nov. 13, 2018) ("Here, the new allegations in the August 16, 2018 affidavit present no facts 'overlooked' by the Court. . . . The Court will not reconsider its ruling, given the extensive opportunities the Defendant already received to be heard regarding his newfound theory.").

Furthermore, a motion for reconsideration is simply not a proper mechanism by which to present the court with new evidence and arguments when that material was readily available and could have been submitted in response to defendant's motion to preclude the government's experts. As one Eastern District Court correctly noted, "[a] motion for reconsideration cannot advance a new argument, as it is deemed waived, nor can such a motion be used as a vehicle to introduce new evidence that should have been set forth during the pendency of the prior motion or could have been discovered in the exercise of due diligence." *United States v. Gross*, No. 98-CR-0159 (SJ), 2002 US Dist LEXIS 28159, at *10 (E.D.N.Y. Dec. 5, 2002) (internal citations and quotations omitted).

DerOhannesian & DerOhannesian

Hon. Nicholas G. Garaufis
June 3, 2019
Page 4

Although Dr. Hughes' letter is dated May 31, 2019, she cites material published between 1990 and 2018 as the basis for her opinions. Neither the government's two-page cover letter nor Dr. Hughes' May 31 letter explain why this additional material could not have been submitted on May 12, 2019, in connection with the prosecution's response to defendant's motion to preclude experts.[4] Accordingly, this Court should deny the motion as an improper attempt to present evidence that was readily available to the government and should have been disclosed and submitted at a much earlier date. *See Gross*, No. 98-CR-0159 (SJ), 2002 US Dist LEXIS 28159, at *12-14 (denying the government's motion for reconsideration, in part, because "the Government fail[ed] to justify the introduction of new evidence" where that evidence was available to the prosecution prior to the court's order dismissing the indictments); *see also United States v. Smith*, No. 11-CR-633 (ENV), 2017 US Dist LEXIS 96059 (E.D.N.Y. June 21, 2017) ("a motion for reconsideration is not a vehicle for advancing an argument that was never even presented to the Court at the time the preliminary hearing was scheduled") (citation omitted).

Nevertheless, should this Court opt to consider the merits of Dr. Hughes' May 31 letter, Raniere respectfully submits that nothing in the government's submission merits altering the Court's decision and the government must proceed with a *Daubert* hearing.

3. A *Daubert* Hearing Is Required

Although Dr. Hughes' letter references several studies and publications concerning "grooming," it does not establish the necessary burden for the sought relief: <u>that courts have deemed such testimony to be so reliable as to negate the need for a *Daubert* hearing</u>. However, the government's submission does not include any decisions or case law from any state or federal court establishing that the science behind "grooming" is sufficiently reliable so as to meet the standard set forth in *Daubert*. Instead, the only case Dr. Hughes references is a New Jersey Civil Case, *Doe v. Boy Scouts of America*, BER-L-805-14, July 14, 2017, in which she testified to grooming in the context of whether the complaint should be dismissed on statute of limitations grounds.



---

[4] As noted above, the government's submission also fails to submit any justification for not disclosing the material prior to the May 2 expert disclosure deadline.

DerOhannesian & DerOhannesian

Hon. Nicholas G. Garaufis
June 3, 2019
Page 5



Rule 702 and *Daubert* require the proponent of an opinion to provide more than a mere bibliography, unaccompanied by explanation as to how the resources identified relate to the expert's proffered opinions. Indeed, the Supreme Court has closely scrutinized the particular methods by which proffered expert opinions claim to derive from particular studies and has not hesitated to bar such opinions when those methods do not scan. *See e.g. General Electric Co. v. Joiner*, 522 U.S. 136, 144-45 (1997) ("The studies [upon which the experts purported to rely] were so dissimilar to the facts presented in this litigation that it was not an abuse of discretion for the District Court to have rejected the experts' reliance on them.").

The government has also not rebutted *United States v. Raymond*, 700 F. Supp. 2d 142 (D. Me. 2010), referenced in Raniere's motion to preclude experts. Dkt. No. 633, p. 6. The court in *Raymond* granted defendant's motion to preclude the prosecution's expert from testifying to "the behavioral patterns of child molesters and their victims," including grooming, as the testimony "does not satisfy the fit or reliability requirements of Federal Rule of Evidence 702 and Daubert."[5] Id. Thus, not only does the government's motion for reconsideration fail to cite any case in which the court found "grooming" opinion testimony reliable, but it also fails to rebut or distinguish a federal court's finding that the testimony "does not satisfy the fit or reliability requirements of Federal Rule of Evidence 702 and Daubert."

Dr. Hughes' letter is also impermissibly vague. For example, although Dr. Hughes claims that abusers "tend" to act in several different ways, she fails to offer this court any guidance or clarification as to that statement. Reconsideration, p. 3. For example, what percentage of abusers "target a needy or vulnerable child"? *Id*. Is that the same percentage of abusers who "utilize pro-social behaviors such as love, attention, and appreciation"? *Id*. Dr. Hughes is silent as to these critical questions.

Dr. Hughes' reliance on her "experience" underscores the need for a *Daubert* hearing. Her letter and the prosecution's disclosure provide no description of the metrics of this experience, how her clients' experiences were verified, and whether her experiences with clients have been reported or peer reviewed. Her vague description of her experience is not what Congress or the Supreme Court had in mind when they required expert opinions to be "based on sufficient facts or data" and to be "the product of reliable principles and methods" that are "reliably applied" to the facts of the case. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 589-97.

---

[5] The prosecution expert in *Raymond* was Kenneth Lanning, whose commentary is referenced in Dr. Hughes' May 31, 2019 letter.

## DerOhannesian & DerOhannesian

Hon. Nicholas G. Garaufis
June 3, 2019
Page 6

Finally, Dr. Hughes' letter is highly misleading in that it suggests that the scientific evidence is clear and well-formed concerning "grooming" when that it simply not true and contradicted by her own references. For example, Dr. Hughes' first citation under her references is "Bennet, N. and O'Donohue, W. (2014). The construct of grooming in child sexual abuse: Conceptual and measurement issues. *Journal of Child Sexual Abuse, 23*, 957-976." Reconsideration, p. 6. Contrary to Dr. Hughes' suggestion that this article supports her opinions, it does just the opposite and supports the court's decision for a *Daubert* hearing concerning "grooming" expert testimony.[6] A threshold problem is the lack of consensus as to the definition of "grooming" as well as its lack of underlying reliable principles and methodology. The article, which is attached for this Court's review,[7] concludes with the following:

> Currently there is no consensus regarding how to define grooming. In addition, there is no valid method to assess whether grooming has occurred or is occurring. The field possesses an insufficient amount of knowledge about key issues such as the interrater reliability of these judgments or the error rates of these judgments including the frequency of false negatives or false positives. Thus currently it appears that grooming is not a construct that ought to be used in forensic settings as it does not meet some of the criteria in the Daubert standard. The Daubert standard indicates that in court an expert witness may only testify if (a) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case" (Rule 702: Testimony by expert witness). Right now it does not appear to be the case that there are "reliable principles and methods" to define and detect grooming.

*The Construct of Grooming in Child Sexual Abuse*, p. 974.

---

[6] The article is a review of the literature relating to grooming and addresses the use of grooming in a courtroom rather than a clinical setting. It notes: "The aim of this paper is to highlight the need for a clearer definition of the grooming construct that may be applied to both clinical and forensic work. The courts are currently unable to take much legal action against grooming as it is not well understood and clearly demarcated. Furthermore, psychologists are currently using clinical judgment to determine whether an alleged perpetrator's behaviors are considered grooming. The reliability and validity of these judgments are largely unknown, leaving concerns of unacceptable rates of false positives and false negatives." *The Construct of Grooming in Child Sexual Abuse*, p. 959.

[7] We are providing the article to the court via electronic mail only so as to avoid any issues with making a copyrighted publication available for free public consumption.

DerOhannesian & DerOhannesian

**Hon. Nicholas G. Garaufis**
**June 3, 2019**
**Page 7**

      Based on the foregoing, Raniere respectfully submits that Dr. Hughes' letter does not establish the reliability of "grooming" testimony and does not negate the necessity of a *Daubert* hearing.[8]

      Very truly yours,

      /s/ Paul DerOhannesian II
      DerOhannesian & DerOhannesian
      Paul DerOhannesian II
      Danielle R. Smith

PDII:drs
Attachment

cc:     All counsel of record (*via ECF*)

---

[8] It is now established that "[a]n opinion from an expert who is not a scientist should receive the *same* degree of scrutiny for reliability as an opinion from an expert who purports to be a scientist." Fed. R. Evid. 702 Advisory Committee's Note (2000 Amendments) (emphasis added).