MKM:TH/KMT/MKP
F.#2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

        - against -

                                          18-CR-204 (S-2) (NGG)

KEITH RANIERE,
      also known as "Vanguard,"
      "Grandmaster"
      and "Master,"

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## THE GOVERNMENT'S REQUESTS TO CHARGE

                                       RICHARD P. DONOGHUE
                                       UNITED STATES ATTORNEY
                                       Eastern District of New York
                                       271 Cadman Plaza East
                                       Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant United States Attorneys
      (Of Counsel)

## PRELIMINARY STATEMENT

The government respectfully requests that the Court include the attached instructions in its charge to the jury.  In addition, the government also requests leave to offer amended or additional instructions as may become appropriate.

The government also requests that copies of the jury instructions be provided to the jurors during their deliberations.

1

<u>REQUEST NO. 1</u>

<u>GENERAL REQUESTS</u>

The government requests that the Court charge the jury in its usual manner on the following subjects:

(a)     The Role of the Court and the Duties of the Jury;

(b)     Equality of the Parties Before the Court;

(c)     Presumption of Innocence;

(d)     Burden of Proof and Reasonable Doubt;

(e)     Punishment Not the Jury's Concern;

(f)     Dates in Indictment Are Approximate;

(g)     Circumstantial Evidence and Direct Evidence;

(h)     Function of the Indictment and What is Not Evidence;

(i)     Permissible Inferences Drawn from the Evidence;

(j)     Credibility of Witnesses and Discrepancies in Testimony;

(k)     Interest in Outcome;

(l)     Expert Witnesses;

(m)     Testimony of Law Enforcement Witnesses;

(n)     Testimony of the Defendant (If Applicable);

(o)     Defendant's Right Not To Testify (If Applicable);

(p)     Questioning Wisdom of Law and Basing Verdict on Sympathy or Prejudice Prohibited;

(q)     Evidence Obtained Pursuant to Searches;

(r)     Uncalled Witnesses Equally Available;

(s)     Multiple Counts;

(t)     Stipulations and Objections;

(u)     Deliberations;

(v)     Right to See Exhibits and Have Testimony Read During Deliberations;

(w)     Prior Inconsistent Statements (If Applicable); and

(x)     Venue.

REQUEST NO. 2

THE INDICTMENT

The defendant is formally charged in a Superseding Indictment, which I will simply call the indictment.  As I instructed you at the beginning of this case, an indictment is a charge or accusation.  The indictment in this case contains eight separate counts, on each of which you will be called upon to render a separate verdict.  Whether you find the defendant guilty or not guilty as to one offense should not affect your verdict as to any other offense charged.

REQUEST NO. 3

KNOWLEDGE AND INTENT; CONSPIRACY; AIDING AND ABETTING

I now will turn to the second part of this jury charge in which I instruct you as to the legal elements of the crimes charged.

I.     Knowledge and Intent

During these instructions, you will hear me use the words "knowingly" and "intentionally" from time to time.

A person acts "knowingly" when he acts intentionally and voluntarily, and not because of ignorance, mistake, accident or carelessness.  Whether a defendant acted knowingly may be proven by his conduct and by all of the facts and circumstances surrounding the case.

A person acts "intentionally" when he acts deliberately and purposefully.  That is, a defendant's acts must have been the product of his conscious, objective decision rather than the product of a mistake or accident.

These issues of knowledge and intent require you to make a determination about the defendant's state of mind, something that rarely can be proved directly.  A wise and careful consideration of all the circumstances of the case may, however, permit you to make such a determination as to the defendant's state of mind.  Indeed, in your everyday affairs, you frequently are called upon to determine a person's state of mind from his or her words and actions in a given circumstance.  You are asked to do the same here.

II.      Conspiracy

I will now instruct you on the law of conspiracy.  You should understand that a

conspiracy is an offense separate from the commission of any offense that may have been

committed pursuant to the conspiracy.  That is because the formation of a conspiracy, of a

partnership for criminal purposes, is in and of itself a crime.  If a conspiracy exists, even if it

fails to achieve its purpose, it is still punishable as a crime.  The essence of the charge of

conspiracy is an understanding or agreement between or among two or more persons that

they will act together to accomplish a common objective that they know is unlawful.

The two elements of the crime of conspiracy are as follows:

First, that two or more persons entered the unlawful agreement charged in the

conspiracy count that you are considering; and

Second, that the defendant knowingly and intentionally became a member of

the conspiracy.

Let me discuss these two elements of a conspiracy charge in a little more

detail.

First, as to the existence of a charged conspiracy, the government must prove

that two or more persons entered into the unlawful agreement that is charged in the count or

racketeering act that you're considering.  One person cannot commit the crime of conspiracy

alone.  Rather, the proof must convince you that at least two people joined together in a

common criminal scheme.  The government does not have to prove an express or formal

agreement when it seeks to prove a conspiracy.  It need not prove that the conspirators stated

6

in words or in writing what the scheme was, its object or purpose, or the means by which it was to be accomplished.  It's sufficient if the proof establishes that the conspirators tacitly came to a mutual understanding to accomplish an unlawful act by means of a joint plan or a common design.

Put another way, to establish a conspiracy, the government is not required to prove that the conspirators sat around a table and entered into a solemn contract, orally or in writing, stating that they have formed a conspiracy to violate the law, setting forth details of the plans, the means by which the unlawful project is to be carried out or the part to be played by each conspirator.  It would be extraordinary if there were such a formal document or specific oral agreement.  Common sense would suggest that when people do, in fact, undertake to enter into a conspiracy, much is left to an unexpressed understanding.  A conspiracy, by its very nature, is almost invariably secret in both origin and execution. Therefore, it is sufficient for the government to show that the conspirators somehow came to a mutual understanding to accomplish an unlawful act by means of a joint plan or common scheme.  Moreover, since a conspiracy is, by its very nature, characterized by secrecy, you may infer its existence from the circumstances of the case and the conduct of the parties involved.

In a very real sense, then, in the context of conspiracy cases, actions often speak louder than words.  In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as

proof that a common design existed on the part of the persons charged to act together to accomplish an unlawful purpose.

The second element requires that, if you find a conspiracy existed, you must determine whether the defendant was a member. That is, you must determine whether he participated in the conspiracy willfully and with knowledge of its unlawful purpose and in furtherance of its unlawful purpose.

To act "willfully" means to act knowingly and purposely with an intent to do something the law forbids, that is to say, with a bad purpose either to disobey or disregard the law. A defendant's knowledge is a matter of inference from the facts proved. To become a member of the conspiracy, the defendant need not have known the identities of every member, nor need he have been apprised of all of their activities. Moreover, a defendant need not have been fully informed as to all of the details, or the scope, of the conspiracy in order to justify an inference of knowledge on his or her part.

The extent or duration of a defendant's participation does not necessarily bear on the issue of the defendant's guilt. An equal role in the conspiracy is not what the law requires. If you find that the conspiracy existed and if you further find that the defendant participated in it knowingly and willfully, the extent or degree of his participation is not material. Moreover, it is not required that a person be a member of the conspiracy from its very start.

I want to caution you, however, that the defendant's mere presence at the scene of criminal activities, or at locations frequented by criminals, does not, by itself, make

8

him a member of the conspiracy.  Similarly, mere association with one or more members of

the conspiracy does not automatically make the defendant a member.  A person may know or

be friendly with a criminal without being a criminal himself.  Indeed, a person may be a

criminal without being a member of the charged conspiracy.  Mere similarity of conduct or

the fact that individuals may have assembled together and discussed common aims and

interests does not necessarily establish proof of the existence of a conspiracy.

I further caution you that mere knowledge or acquiescence, without

participation, in the unlawful plan is not sufficient.  The fact that the acts of the defendant

merely happen to further the purposes or objectives of the conspiracy, without his

knowledge, does not make the defendant a member.  More is required under the law.  What

is necessary is that the defendant must have participated with knowledge of at least some of

the purposes or objectives of the conspiracy and with the intention of aiding in the

accomplishment of those unlawful ends.

Thus, while someone who is present during a conspiracy is not necessarily a

member, I further instruct you that you may find that the defendant knowingly and willfully

became and was a member of a conspiracy if you find that his presence was purposeful – that

is, that the defendant's presence on one or more occasions was intended to serve the purposes

of the conspiracy.

In sum, the defendant, with an understanding of the unlawful character of the

conspiracy, must have intentionally engaged, advised or assisted in it for the purpose of

furthering the illegal undertaking.  The defendant thereby becomes a knowing and willing

participant in the unlawful agreement – that is to say, a conspirator.

III.    Aiding and Abetting

Before turning to the specific crimes charged, I will also inform you of the

principle of aiding and abetting liability under federal law and New York state law.

Title 18, United States Code, Section 2, provides:

**Whoever commits an offense against the United States or
aids or abets or counsels, commands or induces, or procures
its commission, is punishable as a principal; and**

**Whoever willfully causes an act to be done which, if directly
performed by him, would be an offense against the United
States, is punishable as a principal.**

Under the aiding and abetting statute, it is not necessary for the government to

show that a defendant himself physically committed the crime with which he is charged in

order for the government to sustain its burden of proof.  A person who aids or abets another

to commit an offense is just as guilty of that offense as if he committed it himself.

Accordingly, you may find a defendant guilty of the offense charged if you

find beyond a reasonable doubt that the government has proven that another person actually

committed the offense with which the defendant is charged, and that the defendant aided or

abetted that person in the commission of the offense.

As you can see, under the aiding and abetting statute, the first requirement is

that you find that another person has committed the crime charged.  Obviously, no one can

be convicted of aiding or abetting the criminal acts of another if no crime was committed by

10

the other person in the first place.  But if you do find that a crime was committed, then you must consider whether the defendant aided or abetted the commission of that crime.

In order to aid or abet another to commit a crime, it is necessary that the defendant knowingly associate himself in some way with the crime, and that he participate in the crime by doing some act to help make the crime succeed.

To establish that the defendant knowingly associated himself with the crime you are considering, the government must establish that the defendant knew that the crime was being committed.  To establish that the defendant participated in the commission of the crime, the government must prove that the defendant engaged in some affirmative conduct or overt act for the specific purpose of bringing about that crime.

The mere presence of a defendant where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or merely associating with others who were committing a crime, is not sufficient to establish aiding and abetting.  One who has no knowledge that a crime is being committed or is about to be committed but inadvertently does something that aids in the commission of that crime is not an aider and abettor.  An aider and abettor must know that the crime is being committed and act in a way that is intended to bring about the success of the criminal venture.

To determine whether the defendant aided or abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

11

Did he knowingly associate himself with the criminal venture?

Did he seek by his actions to make the criminal venture succeed?

If he did, then the defendant is an aider and abettor, and therefore guilty of the offense.  If, on the other hand, your answer to any one of these questions is "no," then the defendant is not an aider and abettor, and you must find him not guilty under that theory.

The relevant New York State statute on aiding and abetting is Section 20.00 of the New York Penal Law, which provides in pertinent part as follows:

> **When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.**

Under New York State law, as under federal law, a defendant charged with aiding and abetting a crime may be liable for the crime even if he himself does not commit the crime charged.

Before the defendant may be held criminally liable for the conduct of another person under New York State law, you must find each of the following two elements:

**First**: that the defendant solicited, requested, commanded, importuned, or intentionally aided the other person to engage in the criminal conduct; and

**Second**: that the defendant did so with the state of mind required for the commission of the offense.

<u>Authority</u>

Adapted from the charges in <u>United States v. Carneglia</u>, 08-CR-76 (JBW) (E.D.N.Y.); <u>United States v. Gioeli</u>, 08-CR-240 (BMC) (E.D.N.Y); <u>United States v. Herron</u>, 10-CR-613 (NGG)

12

(E.D.N.Y.); <u>United States v. Coppola</u>, 08-CR-763 (JG)
(E.D.N.Y.); <u>United States v. Barret</u>, 10-CR-806 (KAM)
(E.D.N.Y.); and <u>United States v. Taylor</u>, 10-CR-268 (DLI)
(E.D.N.Y.); Sand, Instructions 3A-1, 3A-4, 11-3, 19-4, 19-6.

REQUEST NO. 4

CO-CONSPIRATOR STATEMENTS AND LIABILITY

The charges against the defendant allege that he participated certain conspiracies.  In that regard, I admitted into evidence against the defendant the acts and statements of others because these acts and statements were committed by persons who, the government alleges, were also confederates or co-conspirators of the defendant on trial.

The reason for allowing this evidence to be received against the defendant has to do with the nature of the crime of conspiracy.  A conspiracy is often referred to as a partnership in crime.  Thus, as in other types of partnerships, when people enter into a conspiracy to accomplish an unlawful end, each and every member becomes an agent for the other conspirators in carrying out the conspiracy.

Accordingly, the reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy and in furtherance of the common purpose of the conspiracy, are deemed, under the law, to be the acts of all of the members, and all of the members are responsible for such acts, declarations, statements and omissions.

Thus, if you find that the defendant was a member of a criminal conspiracy charged, then any acts done or statements made in furtherance of the conspiracy by persons also found by you to have been members of that conspiracy, may be considered against the defendant.  This is so even if such acts were done and statements were made in the defendant's absence and without his knowledge.

Before you may consider the statements or acts of a co-conspirator in deciding the issue of the defendant's guilt, you must first determine that the acts and statements were made during the existence, and in furtherance, of the unlawful scheme.  If the acts were done or the statements made by someone whom you do not find to have been a member of the conspiracy, or if they were not done or said in furtherance of that conspiracy, they may not be considered by you as evidence against the defendant as to that conspiracy.

<u>Authority</u>

Adapted from the charges in <u>United States v. Rivera</u>, 13-CR-149 (KAM) (E.D.N.Y.).

REQUEST NO. 5

COUNT TWO: RACKETEERING

Counts One and Two of the indictment charge the defendant Keith Raniere

with the crimes of racketeering conspiracy and racketeering, commonly referred to as

violations of the "RICO" statute.  I will first instruct you on the law regarding Count Two,

which charges the defendant with the crime of racketeering, and then instruct you on the law

as it relates to Count One, which charges the defendant with the crime of racketeering

conspiracy.

Count Two reads as follows:

In or about and between 2003 and March 2018, both dates being
approximate and inclusive, within the Eastern District of New
York and elsewhere, the defendant KEITH RANIERE, also
known as "Vanguard," "Grandmaster" and "Master," together
with others, being persons employed by and associated with the
Enterprise, an enterprise that engaged in, and the activities of
which affected, interstate and foreign commerce, did knowingly
and intentionally conduct and participate, directly and indirectly,
in the conduct of the affairs of such enterprise through a pattern
of racketeering activity, as that term is defined in Title 18,
United States Code, Sections 1961(1) and 1961(5), consisting of
the racketeering acts set forth below.

The relevant provision of the RICO statute provides as follows:

**It shall be unlawful for any person employed by or
associated with any enterprise engaged in, or the activities of
which affect, interstate or foreign commerce, to conduct or
participate, directly or indirectly, in the conduct of such
enterprise's affairs through a pattern of racketeering
activity . . .**

16

To prove this crime, the government must prove five elements beyond a reasonable doubt.

<u>First</u>, an enterprise, as described in the indictment, existed on or about the time alleged in the indictment;

<u>Second</u>, the enterprise engaged in, or its activities affected, interstate or foreign commerce;

<u>Third</u>, the defendant was employed by or was associated with the enterprise;

<u>Fourth</u>, the defendant knowingly conducted or participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and

<u>Fifth</u>, the defendant knowingly participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the indictment; that is, through the commission of at least two of the charged racketeering acts, the last of which must have occurred within ten years after the commission of a prior racketeering act, or through causing or aiding and abetting the commission of two such racketeering acts.

I will now explain each of these elements in greater detail.

I.    <u>First Element: The Existence of the Enterprise</u>

The first element the government must prove beyond a reasonable doubt is that an enterprise existed.  The indictment alleges the existence of the following enterprise:

<div align="center"><u>The Enterprise</u></div>

1.    The defendant KEITH RANIERE, also known as "Vanguard," "Grandmaster" and "Master," was the founder of several pyramid-structured organizations ("the Pyramid Organizations"), including, but not limited to, (1) Nxivm;

<div align="center">17</div>

Executive Success Programs, Inc.; Jness, LLC; Society of
Protectors, LLC; Ultima and other related entities (collectively,
"Nxivm"); and (2) an organization referred to as "DOS," the
"Vow" and "the sorority" (collectively, "DOS").  In leading the
Pyramid Organizations, RANIERE relied on certain individuals,
sometimes referred to as his "inner circle," who were accorded
special positions of trust and privilege with RANIERE and who
carried out his directives.

2.      Members of RANIERE's inner circle also held
high positions, or had an ownership interest, in one or more of
the Pyramid Organizations, including serving as executives,
directors and officers of Nxivm.  Members of RANIERE's inner
circle also, at times, served as "first-line masters" in DOS
directly under RANIERE, meaning that they comprised the
second-highest level within the DOS "pyramid" and that, other
than RANIERE, they wielded the most power within DOS.

3.      RANIERE and his inner circle, and others known
and unknown, comprised an organized criminal enterprise
(referred to herein as the "Enterprise").

4.       The Enterprise, including its leadership,
membership and associates, constituted an "enterprise" as
defined in Title 18, United States Code, Section 1961(4), that is,
a group of individuals associated in fact that was engaged in,
and the activities of which affected, interstate and foreign
commerce.  The Enterprise constituted an ongoing organization
whose members functioned as a continuing unit for a common
purpose of achieving the objectives of the Enterprise.

<u>Purposes, Methods and Means of the Enterprise</u>

5.      The principal purpose of the Enterprise was to
promote the defendant KEITH RANIERE, also known as
"Vanguard," "Grandmaster" and "Master," and to recruit new
members into the Pyramid Organizations.  By promoting
RANIERE and recruiting others into the Pyramid Organizations,
the members of the Enterprise expected to receive financial
opportunities and personal benefits, including increased power
and status within the Enterprise.

18

6.      The Enterprise operated within the Eastern District of New York, the Northern District of New York and elsewhere, including overseas.

7.      Among the means and methods by which the defendant and his associates participated in the conduct of the affairs of the Enterprise were the following:

a.      Promoting, enhancing and protecting the Enterprise by committing, attempting and conspiring to commit crimes, including but not limited to visa fraud, identity theft, extortion, forced labor, sex trafficking, money laundering, wire fraud, tax evasion and obstruction of justice;

b.      Demanding absolute commitment to RANIERE, including by exalting RANIERE's teachings and ideology, and not tolerating dissent;

c.      Inducing shame and guilt in order to influence and control members and associates of the Enterprise;

d.      Obtaining sensitive information about members and associates of the Enterprise in order to maintain control over them;

e.      Recruiting and grooming sexual partners for RANIERE and obtaining nude photographs of women for RANIERE;

f.      Isolating associates and others from friends and family and making them dependent on the Enterprise for their financial well-being and legal status in the United States;

g.      Protecting and attempting to protect RANIERE and the Enterprise by, among other things, gaining political influence and evading regulatory agencies;

h.      Using harassment, coercion and abusive litigation to intimidate and attack perceived enemies and critics of RANIERE; and

19

i.      Encouraging associates and others to take expensive Nxivm courses, and incur debt to do so, as a means of exerting control over them and to obtain financial benefits for the members of the Enterprise.

The term "enterprise" as used in these instructions may include any group of people associated in fact, even though this association is not recognized as a legal entity. Thus, an enterprise need not be a formal business entity such as a corporation, but may be merely an informal association of individuals.  The term enterprise includes legitimate and illegitimate enterprises.[1]  An enterprise can be a vehicle used by a defendant to commit crimes.[2]

The "enterprise" does not have to have a particular name, or, for that matter, any name at all.  Nor must it be registered or licensed as an enterprise, or be a commonly recognized legal entity such as a corporation, a partnership, a business, or the like.  A group or association of people can be an "enterprise" if these individuals have "associated together for a common purpose of engaging in a course of conduct."[3]  Mere similarity of conduct or the fact that individuals may have assembled together and discussed common aims and interests does not necessarily establish proof of the existence of an enterprise, though you may consider such factors.   Such an association of persons may be established by evidence showing an ongoing organization, formal or informal, and by evidence that the people making up the association functioned as a continuing unit.

---

[1]      United  States v. Turkette, 452 U.S. 576, 585 (1981).
[2]      Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994).
[3]      Turkette, 452 U.S. at 583.

20

The government must prove an association-in-fact enterprise existed by evidence of an ongoing organization, formal or informal, and by evidence that the various associates functioned as a continuing unit.  The enterprise must have the three following structural features: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose.[4]

It is not necessary that the enterprise have any particular or formal structure, but it must have sufficient organization that its members functioned and operated in a coordinated manner in order to carry out the alleged common purpose or purposes of the enterprise.  Such a group need not have a hierarchical structure or a "chain of command"; decisions may be made on an *ad hoc* basis and by any number of methods – by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or initiation procedures.[5]

While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, you may nonetheless find that the enterprise element is satisfied by finding the existence of a group whose associates engage in spurts of activity punctuated by periods of inactivity.[6]

---

[4]     Boyle v. United States, 556 U.S. 938, 945-46 (2009).
[5]     See id. at 945-46.
        [6] Id. at 948.

Thus, an enterprise need not have role differentiation, a unique *modus operandi*, a chain of command, sophistication of organization, diversity and complexity of crimes, uncharged or additional crimes aside from the alleged racketeering activity, or an enterprise name.  Moreover, an enterprise is not required to be "business-like" in its form or function, and it may, but need not, have an economic or profit-seeking motive.  Indeed, RICO is not limited to groups whose crimes are sophisticated, diverse, complex, or unique.[7]

Such an association of individuals may retain its status as an "enterprise" even though the membership of the association changes over time by adding or losing individuals during the course of its existence.  The existence of the enterprise continues even if there is a gap or interruption of the enterprise's racketeering activities.[8]

Although whether an enterprise existed is a distinct element that must be proved by the government, common sense dictates that the existence of an enterprise is oftentimes more readily proven by what it does rather than by an abstract analysis of its structure.  Thus, the evidence used to prove the pattern of racketeering and the enterprise may coalesce.  Therefore, you may consider proof of the racketeering acts to determine whether the evidence establishes the existence of an enterprise, and further, you may infer the existence of an enterprise from evidence of the pattern of racketeering activity.[9]

---

[7]   Id.

[8]   United States v. Payne, 591 F.3d 46, 60 (2d Cir. 2010); see also United States v. Olson, 450 F.3d 655, 668 (7th Cir. 2006); United States v. Perholtz, 842 F.2d 343, 362-63 (D.C. Cir. 1988).

[9]   Boyle, 556 U.S. at 951; Turkette, 452 U.S. at 583.

The government is not required to prove each and every allegation about the enterprise or the manner in which the enterprise operated.  The enterprise proved, however, must be essentially the one alleged in the indictment.

II.     The Second Element: Effect on Interstate Commerce

The second element that the government must prove beyond a reasonable doubt is that the enterprise was engaged in or had an effect on interstate commerce, even if it was only a minimal effect.

Interstate commerce means trade or conducting business or travel between one state and another state or the District of Columbia; and foreign commerce means such trade, business or travel between the United States and another country.  Therefore, interstate and foreign commerce may include the movement of money, goods, services or persons from one state to another state or the District of Columbia or between the United States and another country.  This may include, among other matters, the purchase or sale of goods or supplies from outside the United States, the use of interstate or international mail or wire facilities, or the causing of any of those things.  The government need not prove that the acts of the defendant affected interstate commerce or that the defendant knew he was affecting interstate commerce.

Regarding that alternative method of satisfying this element, to establish the requisite effect on interstate or foreign commerce, the government is not required to prove a significant or substantial effect on interstate or foreign commerce.  This element, which simply ensures federal jurisdiction over the conduct, is satisfied if even a minimal effect on

23

interstate or foreign commerce is shown.  The effect need not be direct.  Any effect, even if it is postponed, indirect, or slight, is sufficient to satisfy the interstate commerce element.  It does not matter whether the effect is harmful or beneficial to interstate commerce. Moreover, it is not necessary for the government to prove that the defendant knew that the enterprise would affect interstate or foreign commerce, that the defendant intended to affect interstate or foreign commerce, or that the defendant engaged in, or his activities affected, interstate or foreign commerce.

I instruct you that it makes no difference whether the type of interstate commerce affected is legal or illegal.

It is not necessary for the government to prove that the individual racketeering acts themselves affected interstate or foreign commerce; rather, it is the enterprise and its activities considered in their entirety that must be shown to have had that effect.  On the other hand, this effect on interstate or foreign commerce may be established through the effect caused by the individual racketeering acts.

III.    <u>Third Element: Association with or Employment by the Enterprise</u>

The third element that the government must prove beyond a reasonable doubt is that the defendant was associated with or employed by the enterprise at some time during the period charged in the indictment.  "Associated with" should be given its plain meaning. "Associate" means "to join, often in a loose relationship as a partner, fellow worker, colleague, friend, companion or ally . . . to join or connect with one another."  Therefore, a person is "associated with" an enterprise when, for example, he joins with other members of

24

the enterprise and he knowingly aids or furthers the activities of the enterprise, or he conducts business with or through the enterprise. The defendant need not have been a member of or associated with the enterprise for the entire period of its existence, but the defendant must have been associated with the enterprise at the time he allegedly committed the crimes charged. That is, the government must prove that the defendant was connected to the enterprise in some meaningful way and that he knew of the existence of the enterprise and of the general nature of its activities. A person cannot be associated or employed by an enterprise if he does not know of the enterprise's existence or the nature of its activities.

IV.     Fourth Element: Participation in Enterprise through Pattern of Racketeering

The fourth element that the government must prove is that the defendant knowingly conducted or participated, either directly or indirectly, in the conduct of the affairs of the enterprise.

This means that the defendant must have played some part in the operation or management in the enterprise and that the defendant intentionally performed acts, functions or duties that are necessary to, or helpful in, the operation of the enterprise. Thus, if the defendant participated in the operation or management of the enterprise itself or he had some part in directing the enterprise's affairs, that would satisfy this element. In other words, all who participate in the conduct of the enterprise, whether they are generals or foot soldiers, are responsible for the affairs of the enterprise.

V.      Fifth Element: Pattern of Racketeering Activity

The fifth element the government must prove beyond a reasonable doubt is

that the defendant engaged in a pattern of racketeering activity.  The term "racketeering

activity" is defined to mean the commission of certain crimes.  A "pattern of racketeering

activity" generally means the following:

First, the defendant intentionally committed, or caused, or aided and abetted

the commission of, two or more of the racketeering acts alleged in the indictment, the last of

which must have occurred within ten years after the commission of a prior racketeering act.

Your verdict must be unanimous as to which specific racketeering acts you find that the

defendant committed, caused, or aided and abetted.  Shortly, I will instruct you on the

elements regarding each of the alleged racketeering acts.

Second, the racketeering acts must have a "nexus" to the enterprise and

the racketeering acts must be "related."  A racketeering act has a "nexus" to the enterprise if

it has a meaningful connection to the enterprise.  To be "related," the racketeering acts must

have the same or similar purposes, results, participants, victim, or methods of commission, or

be otherwise interrelated by distinguishing characteristics and not be merely isolated events.

Two racketeering acts may be "related" even though they are dissimilar or not directly

related to each other, provided that the racketeering acts are related to the same enterprise.

For example, for both "nexus" and "relatedness" purposes, the requisite relationship between

the RICO enterprise and a predicate racketeering act may be established by evidence that the

defendant was enabled to commit the racketeering act solely by virtue of his position in the

26

enterprise or involvement in or control over its affairs, or by evidence that the defendant's position in the enterprise facilitated his commission of the racketeering act, or by evidence that the racketeering act benefitted the enterprise, or by evidence that the racketeering act was authorized by the enterprise or by evidence the racketeering act promoted or furthered the purposes of the enterprise.

Third, the racketeering acts themselves either extended over a substantial period of time or posed a threat of continued criminal activity.  The government need not prove such a threat of continuity by any mathematical formula or by any particular method of proof, but rather may prove it in a variety of ways.  For example, the threat of continued unlawful activity may be established when the evidence shows that the racketeering acts are part of a long-term association that exists for criminal purposes or when the racketeering acts are shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the government has proven the threat of continued unlawful activity, you are not limited to consideration of the specific racketeering acts charged against the defendant; rather, in addition to considering such acts you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.

I will now explain the law governing the eleven racketeering acts that the government has alleged.  As a reminder, you must render separate verdicts of proven or not proven with regard to each of these alleged racketeering acts on the verdict sheet under Count Two.

Authority

Adapted from the charges in United States v. Herron, 10-CR-615 (NGG) (E.D.N.Y.); United States v. Napout, 15-CR-252 (PKC) (E.D.N.Y.); and United States v. Coppola, 08-CR-763 (JG) (E.D.N.Y.); Boyle v. United States, 556 U.S. 938, 945-46 (2009); Nat'l Org. for Women, Inc. v. Scheidler, 510 U.S. 249, 259 (1994); United  States v. Turkette, 452 U.S. 576, 585 (1981); see also United States v. Payne, 591 F.3d 46, 60 (2d Cir. 2010); see also United States v. Olson, 450 F.3d 655, 668 (7th Cir. 2006); United States v. Perholtz, 842 F.2d 343, 362-63 (D.C. Cir. 1988).

A.     Racketeering Act One: Conspiracy to Commit Identity Theft and/or
       Conspiracy to Unlawfully Possess Identification Document of Ashana Chenoa

Racketeering Act One alleges that the defendant committed two separate

crimes: conspiracy to commit identity theft and conspiracy to unlawfully possess an

identification document.  Thus, Racketeering Act One has two parts, and you will render

separate verdicts on each part.  If you find that the defendant committed either or both of

these two crimes, you must find that the government has proven Racketeering Act One.

1.     Racketeering Act 1A:  Conspiracy to Commit Identity Theft

The first part, which is referred to on the verdict sheet as Racketeering Act 1A,

alleges that the defendant committed conspiracy to commit identity theft.  With respect to

Racketeering Act 1A, the indictment reads as follows:

> In or about 2004, within the Northern District of New York and
> elsewhere, the defendant KEITH RANIERE, together with
> others, did knowingly and intentionally conspire to transfer,
> possess and use, without lawful authority and in and affecting
> interstate and foreign commerce, one or more means of
> identification of another person, to wit: Ashana Chenoa, with
> the intent to commit, and to aid and abet, and in connection
> with, unlawful activity that constituted one or more violations of
> federal law, to wit: bringing in, transporting and harboring an
> alien, in violation of Title 8, United States Code, Section
> 1324(a)(1)(A), contrary to Title 18, United States Code, Section
> 1028(a)(7), all in violation of Title 18, United States Code,
> Section 1028(f).

Racketeering Act 1A alleges that the defendant conspired to violate Title 18,

United States Code, Section 1028(a)(7).  There are two relevant statutory provisions in

Racketeering Act 1A.  First, Title 18, United States Code, Section 1028(a)(7) makes it a

federal crime for anyone knowingly to transfer, possess and use, without lawful authority, a

29

means of identification of another person with intent to commit, or to aid and abet, or in connection with, any unlawful activity that violates federal or state law.  Second, Title 18, United States Code, Section 1028(f), makes it a federal crime to conspire to commit the crime I just described.

The defendant is charged with conspiring, under Section 1028(f), to commit the crime defined in Section 1028(a)(7).  I have already instructed you on the general definition of conspiracy, which is an agreement among two or more people to commit a crime.  I remind you that the crime of conspiracy to violate a federal law is a separate offense from the underlying crime.  It is separate and distinct from an actual violation of identity theft, which is the object of the conspiracy and what we call the "substantive crime."  In order to find the defendant guilty of conspiracy to commit identity theft, you must find that two or more persons agreed to commit the crime of identity theft, and that the defendant knowingly and intentionally became a member of the conspiracy.

The elements of the crime of identity theft are as follows:

First, that the defendant or a co-conspirator knowingly transferred or possessed or used a means of identification of another person;

Second, the defendant or a co-conspirator knew that the means of identification belonged to another person;

Third, that the defendant or a co-conspirator acted without lawful authority;

Fourth, that the defendant or a co-conspirator acted with the intent to commit, or to aid and abet, or in connection with, an unlawful activity that violates federal law;

30

Fifth, that the transfer or possession or use of the means of identification

occurred in or affected interstate or foreign commerce, or the means of identification was

transported in the mail in the course of the transfer or possession or use.

As to the first element, the government must prove beyond a reasonable doubt

that the item described in the indictment is a means of identification of another person.   I

instruct you that the term "means of identification" means any name or number that may be

used, alone or in conjunction with any other information, to identify a specific individual,

including any name, social security number, date of birth, official State or government issued

driver's license or identification number, alien registration number, government passport

number, or employer or taxpayer identification number.   I instruct you that the means of

identification may belong to a living or deceased person.

I further instruct you that to "use" a means of identification is to present,

display, certify, or otherwise employ the document in any manner so that it would be

accepted as identification.   To "transfer" a means of identification means simply to turn over

possession or control of the means of identification.   To "possess" a means of identification

means to have it within a person's control.   This does not mean that the person must have

actual possession of it.   As long as the means of identification was within the person's

control, he possessed it.   If you find that the person either had actual possession of the means

of identification, or that he had the power and intention to exercise control over it, even

though it was not in his physical possession, you may find that the government has proven

possession.   I further instruct you that law also recognizes that possession may be sole or

joint.  If one person alone possesses something, that is sole possession.  However, it is possible that more than one person may have the power and intention to exercise control over a means of identification.  That is called joint possession.  If you find that the person had such power and intention, then he possessed the means of identification even if he possessed it jointly with another person.

As to the third element, I instruct you that the government must prove that the defendant or a co-conspirator was not authorized to use the means of identification.  The government must also prove that defendant or a co-conspirator used or transferred or possessed the means of identification knowingly, that is, he or she did so voluntarily and intentionally and not because of accident, mistake or some other innocent reason.

The fourth element that the government must prove beyond a reasonable doubt is that the defendant or a co-conspirator used or transferred or possessed the means of identification with the intent to commit, or to aid and abet, or in connection with, an unlawful activity that violates federal law.  In this case, the government has alleged the defendant acted with the intent to commit the bringing in, transporting and harboring of an alien — that is, a person who is not a citizen of the United States — in violation of Title 8, United States Code, Section 1324(a)(1)(A).  In relevant part, section 1324(a)(1)(A) prohibits two categories of criminal acts:  first, it prohibits a person from transporting or moving an alien within the United States, or attempting to do so, knowing or in reckless disregard of the fact that the alien is in the United States in violation of law, and in furtherance of the alien's

violation of the immigration laws;[10] and second, it prohibits a person from concealing, harboring, or shielding from detection an alien within the United States, or attempting to do so, knowing or in reckless disregard of the fact that the person is in the United States in violation of law, and to facilitate the alien's ability to remain in the United States, that is, to make the alien's remaining in the United States illegally substantially easier or less difficult.

To establish this element, the government does not need to prove that the defendant actually committed any of the crimes prohibited by 1324(a)(1)(A). This element is satisfied if you find that the government proved beyond a reasonable doubt that the defendant used or transferred or possessed the means of identification, or conspired to do so, with the intent to commit, aid and abet, or in connection with any of these offenses.

Finally, as to the fifth element, I instruct you that interstate commerce simply means the movement of goods, services, money and individuals between any two or more states. To satisfy this element, the government must prove that the defendant's conduct affected interstate commerce in any way, no matter how minimal.

<div align="center">Authority</div>

> Sand, Instructions 39A.08, 33A.01-03; Flores-Figueroa v. United States, 556 U.S. 646, 648, 657 (2009); United States v. Maciel-Alcala, 598 F.3d 1239, 1244 (9th Cir. 2010); see also United States v. Sutcliffe, 505 F.3d 944, 960 (9th Cir. 2007) ("[T]he

---

[10]    See United States v. Maldonado-Ochoa, 844 F.3d 534, 538 n.4 (5th Cir. 2016) ("See, e.g., Gloucester Ferry Co. v. Pennsylvania, 114 U.S. 196, 203 (1885) ('Transportation implies the taking up of persons or property at some point and putting them down at another.'); Black's Law Dictionary 1729 (10th ed. 2014) (defining 'transportation' as 'movement of goods or persons from one place to another by a carrier.'); 18 Oxford English Dictionary 423 (2d ed. 1989) (defining 'transport' as '[t]o carry, convey, or remove from one place or person to another; to convey across.')").

<div align="center">33</div>

government must only prove that the defendant committed the unlawful act with the requisite criminal intent, not that the defendant's crime actually caused another crime to be committed. . . . Moreover, because we conclude that a § 1028(a)(7) conviction requires no evidence of an underlying crime, we hold that the government need not prove even the existence of a principal [on an aiding and abetting theory]").

2.    Racketeering Act 1B:  Conspiracy to Unlawfully Possess Identification Document

The second part of Racketeering Act One, which is referred to on the verdict sheet as Racketeering Act 1B, charges the defendant with conspiracy to unlawfully possess an identification document.  With respect to Racketeering Act 1B, the indictment reads as follows:

> In or about December 2004, within the Northern District of New York and elsewhere, the defendant KEITH RANIERE, together with others, did knowingly and intentionally conspire to possess a false identification document, to wit: a sheriff's identification card with the last name and date of birth of Ashana Chenoa, with the intent that such document be used to defraud the United States, contrary to Title 18, United States Code, Section 1028(a)(4), in violation of Title 18, United States Code, Section 1028(f).

Racketeering Act 1B alleges that the defendant conspired to violate Title 8, United States Code, Section 1028(a)(4).  As with Racketeering Act 1A, there are two relevant statutory provisions in Racketeering Act 1B.  First, Title 18, United States Code, Section 1028(a)(4) makes it a federal crime for anyone knowingly to possess an identification document, authentication feature, or false identification document with the

34

intent that it be used to defraud the United States.  Second, Title 18, United States Code, Section 1028(f), makes it a federal crime to conspire to commit the crime I just described.

The defendant is charged with conspiring, under Section 1028(f), to commit the crime defined in Section 1028(a)(4).  I have already instructed you on the general definition of conspiracy.  You should apply that definition here.  I will now define for you the elements of unlawful possession of an identification document.

The elements of the crime of unlawful possession of an identification document are as follows:

First, the document described in the indictment, i.e., a sheriff's identification card with the last name and date of birth of Ashana Chenoa, is a false identification document;

Second, the defendant or a co-conspirator possessed that document;

Third, the defendant or a co-conspirator possessed that document knowingly and with the intent that such document would be used to defraud the United States.

With respect to the first element, I instruct you that "false identification document" means a document of a type intended or commonly accepted for the purposes of identification of individuals that was not issued by or under the authority of a governmental entity or was issued under the authority of a governmental entity but was subsequently altered for the purposes of deceit, and appears to be issued by or under the authority of the United States Government, a state or local government.

35

With respect to the second element, I have already instructed you on the meaning of the word "possess."  You should apply those instructions here.

Finally, with respect to the third element, I have instructed you on the definition of the word "knowingly" and you should apply those instructions here.  The phrase "intent that such document would be used to defraud the United States" means the intent to mislead or deceive an officer or employee of the United States government in carrying out that officer or employee's official duties.  However, it is not necessary that the prosecution prove that any government officer or employee was in fact misled or deceived.

<u>Authority</u>

Sand, Instructions 39A.05.

36

B.      Racketeering Act Two:  Sexual Exploitation of a Child – Camila

Racketeering Act Two alleges that the defendant sexually exploited a child,

specifically, Camila, on or about November 2, 2005.  The indictment reads as follows:

> On or about November 2, 2005, within the Northern District of
> New York, the defendant KEITH RANIERE did knowingly and
> intentionally employ, use, persuade, induce, entice and coerce a
> minor, to wit: Camila, to engage in sexually explicit conduct for
> the purpose of producing one or more visual depictions of such
> conduct, which visual depictions were produced and transmitted
> using materials that had been mailed, shipped and transported in
> and affecting interstate and foreign commerce by any means, in
> violation of Title 18, United States Code, Sections 2251(a) and
> 2251(e).

Racketeering Act Two charges the defendant with violating Title 18, United

States Code, Section 2251(a).  That section provides, in relevant part, that:

> **Any person who employs, uses, persuades, induces, entices,
> or coerces any minor to engage in, or who has a minor assist
> any other person to engage in, or who transports any minor
> in or affecting interstate or foreign commerce . . . with the
> intent that such minor engage in, any sexually explicit
> conduct for the purpose of producing any visual depiction of
> such conduct or for the purpose of transmitting a live visual
> depiction of such conduct, shall be punished . . . if that visual
> depiction was produced or transmitted using materials that
> have been mailed, shipped, or transported in or affecting
> interstate or foreign commerce by any means, including by
> computer[.]**

To prove the defendant committed this racketeering act, the government must

prove the following three elements beyond a reasonable doubt:

First, that Camila was under the age of 18 at the time of the acts alleged in the

indictment;

Second, that the defendant used, employed, persuaded, induced, or enticed Camila to take part in sexually explicit conduct for the purpose of using or transmitting a visual depiction of that conduct; and

Third, that the visual depiction was to be mailed or transported or transmitted in or affecting interstate or foreign commerce or using a facility of interstate and foreign commerce or produced using materials that had been mailed, shipped, or transported in and affecting interstate and foreign commerce.

As to the first element, the government must prove beyond a reasonable doubt that Camila was less than 18 years old at the time of the acts alleged in the indictment.  The government does not need to prove that the defendant knew that Camila was less than 18 years old.

As to the second element, I instruct you that the words "used," "employed," "persuaded," "induced," and "enticed" are words of common usage, and I instruct you to interpret these words by using your own common sense.  The words "persuade," "induce" and "entice" are, in effect, synonyms that convey the idea of leading or moving another person by persuasion as to some action, state of mind, etc., or to bring about, produce or cause.

A "visual depiction" includes any photograph, film, video or picture, including undeveloped film and videotape, data stored on computer disc or by electronic means which is capable of conversion into a visual image or data that is capable of conversion into a visual

image that has been transmitted by any means.  A visual depiction includes a digitally recorded photograph or video.

"Sexually explicit conduct" means, among other things, actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; masturbation; or lascivious exhibition of the genitals or pubic area of any person.

The term "lascivious exhibition" means a depiction that displays the genitals or pubic area of a child in order to excite lustfulness or sexual stimulation in the viewer.  Not every exposure of the genitals or pubic area constitutes lascivious exhibition.  In deciding whether a particular visual depiction constitutes a lascivious exhibition, you should consider the following questions:

- whether the focal point of the visual depiction is of the child's genitals or pubic area or whether there is some other focal area;

- whether the setting of the visual depictions makes it appear to be sexually suggestive, for example, in a place or pose generally associated with sexual activity;

- whether the child is displayed in an unnatural pose or in inappropriate attire, considering the age of the child;

- whether the child is fully or partially clothed or nude, although nudity is not in and of itself lascivious;

- whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;

- and whether the visual depiction was intended or designed to elicit a sexual response from the viewer.

It is not required that a particular visual depiction involve all of the factors that I have just listed for you.  The importance you give to any one factor is up to you to decide.

While the government must prove that the defendant acted with the purpose of producing a sexually explicit visual depiction, the government does not need to prove that a visual depiction of sexually explicit conduct was actually produced.  In deciding whether the government has proven that the defendant acted for the purpose of producing or transmitting a visual depiction of sexually explicit conduct, you may consider all of the evidence concerning the defendant's conduct.

Whether or not a minor consented to engage in sexually-explicit conduct is irrelevant, as the consent or voluntary participation of a minor is not a defense to the charge.

As to the third element of the underlying crime, I will further define what it means for a depiction to be transported or transmitted in or affecting interstate or foreign commerce or using a facility of interstate and foreign commerce or produced using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce.  If a visual depiction of sexually explicit conduct, as I have defined that term, is recorded or stored on a device that was made either outside the state of New York or in a foreign country, then that is sufficient to satisfy the interstate commerce element.  It is not necessary for the government to prove that the defendant knew that that the device had been made outside of the state of New York or in a foreign country.

<u>Authority</u>

Adapted from the charges in <u>United States v. Price</u>, 17-CR-301
(NGG) (E.D.N.Y.); <u>United States v. Pattee</u>, 820 F.3d 496, 511

40

(2d Cir. 2016) (holding that the interstate commerce nexus of § 2251(a) is met when the pornography is produced with equipment manufactured outside New York).

C.  <u>Racketeering Act Three:  Sexual Exploitation of a Child – Camila</u>

Racketeering Act Two alleges that the defendant sexually exploited a child, specifically, Camila, on or about November 24, 2005.  The indictment reads as follows:

> On or about November 24, 2005, within the Northern District of New York, the defendant KEITH RANIERE did knowingly and intentionally employ, use, persuade, induce, entice and coerce a minor, to wit: Camila, to engage in sexually explicit conduct for the purpose of producing one or more visual depictions of such conduct, which visual depictions were produced and transmitted using materials that had been mailed, shipped and transported in and affecting interstate and foreign commerce by any means, in violation of Title 18, United States Code, Sections 2251(a) and 2251(e).

I just instructed you regarding the crime of sexual exploitation of a child under Racketeering Act Two.  You should apply those instructions here.

D.  <u>Racketeering Act Four:  Possession of Child Pornography</u>

Racketeering Act Four alleges that the defendant possessed child pornography in or about and between November 2005 and March 2018.  The indictment reads as follows:

> In or about and between November 2005 and March 2018, both dates being approximate and inclusive, within the Northern District of New York, the defendant KEITH RANIERE did knowingly and intentionally possess matter containing one or more visual depictions, to wit: images contained in digital files stored on a Western Digital hard drive, which were produced using materials which had been mailed, and shipped and transported using a means and facility of interstate and foreign commerce and in and affecting interstate commerce, the production of such visual depictions having involved the use of a minor engaging in sexually explicit conduct, and such visual

41

depictions were of such conduct, in violation of Title 18, United States Code, Section 2252(a)(4)(B).

Racketeering Act Four alleges a violation of Title 18, United States Code, Section 2252(a)(4)(B).  That section provides, in relevant part, that:

> **Any person who . . . knowingly possesses, or knowingly accesses with intent to view, one or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction that has been mailed, or has been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer, if (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct . . . shall be punished.**

In order to prove the defendant guilty of possessing child pornography, the government must establish beyond a reasonable doubt:

First, that the defendant knowingly possessed a visual depiction;

Second, that the visual depiction was transported in or affecting interstate or foreign commerce or the visual depiction was produced using materials that had been transported in interstate or foreign commerce;

Third, that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrays that minor engaged in that conduct; and

Fourth, that the defendant knew that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and portrayed a minor engaged in that conduct.

42

The first element that the government must prove beyond a reasonable doubt is that the defendant knowingly and intentionally possessed a visual depiction. You have already been instructed on the meaning of the term "visual depiction." I have already explained the meaning of "knowingly" and "intentionally," and those instructions apply here. To "possess" something means to have it within a person's control. This does not necessarily mean that the person must hold it physically, that is, have actual physical possession of it. As long as the visual depiction is within a person's control, he possesses it. If you find that the defendant either had actual possession of the depiction, or that he had the power and intention to exercise control over it, even though it was not in his physical possession, you may find that the government has proven possession. The government must prove that the defendant received the depiction knowingly, as I have already defined that term.

As to the second element, the government must prove beyond a reasonable doubt that the visual depiction was to be mailed or transported or transmitted in or affecting interstate or foreign commerce or using a facility of interstate and foreign commerce or produced using materials that had been mailed, shipped, or transported in or affecting interstate or foreign commerce. Here, the government alleges that the images in question were produced using materials that had been mailed, shipped, or transportation in or affecting interstate or foreign commerce. I instruct you that, as a matter of law, if a visual depiction of sexually explicit conduct, as I have defined that term, is recorded or stored on a

43

device that was made either outside the state of New York or in a foreign country, then that is sufficient to satisfy this element.

The third element that the government must prove beyond a reasonable doubt is that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, as I have already explained that term to you, and portrays that minor engaged in that conduct.  The visual depiction must be of a real person under the age of eighteen engaging in sexually explicit conduct.  Although the government does not have to prove the identity of the minor or the exact age of the minor, the government alleges that the depictions at issue here are of Camila.  You may consider all of the evidence in determining whether the depiction portrayed an actual person under the age of eighteen engaging in sexually explicit conduct.

The fourth element that the government must prove beyond a reasonable doubt is that the defendant knew both that the production of the visual depiction involved the use of a minor engaging in sexually explicit conduct, and that it portrayed a minor engaged in that conduct.  As I stated before, an act is done knowingly when it is done voluntarily and intentionally and not because of accident, mistake or some other innocent reason. In this case, the term "knowingly" refers to an awareness of the sexually explicit nature of the material and to the knowledge that the visual depiction was in fact of an actual minor engaged in that sexually explicit conduct.

The government must show that the defendant had knowledge of the general nature of the contents of the material.  The defendant need not have specific knowledge as to

44

the identity or actual age of the minor depicted, but the defendant must have knowledge or an awareness that the material contained a visual depiction of a minor engaging in sexually explicit conduct.  Such knowledge may be shown by direct or circumstantial evidence, or both.  Eyewitness testimony of the defendant's viewing of the material is not necessary to prove his awareness of its contents; the circumstances may warrant an inference that he was aware of what the material depicts.  Furthermore, the defendant's belief as to the legality or illegality of the material is irrelevant.

<p style="text-align:center;">Authority</p>

Adapted from the charges in <u>United States v. Price</u>, 17-CR-301 (NGG) (E.D.N.Y.); <u>United States v. Pattee</u>, 820 F.3d 496, 511 (2d Cir. 2016).

E.     Racketeering Act Five:  Conspiracy to Commit Identity Theft

Racketeering Act Five alleges that the defendant committed three separate crimes:  conspiracy to commit identity theft, the identity theft of James Loperfido, and the identity theft of Edgar Bronfman.  Thus, Racketeering Act Five has three parts to it, and you will render separate verdicts on each part.  If you find that the defendant committed any of these three crimes, you must find that the government has proven Racketeering Act Five.

1.     Racketeering Act 5A: Conspiracy to Commit Identity Theft

The first part, which is referred to on the verdict sheet as Racketeering Act 5A, alleges that the defendant conspired to commit identity theft between November 2005 and November 2008.  The indictment reads as follows:

In or about and between August 2005 and November 2008, both dates being approximate and inclusive, within the Northern

<p style="text-align:center;">45</p>

District of New York and elsewhere, the defendant KEITH
RANIERE, together with others, did knowingly and
intentionally conspire to transfer, possess and use, without
lawful authority and in and affecting interstate and foreign
commerce, one or more means of identification of one or more
other persons, with the intent to commit, and to aid and abet,
and in connection with, unlawful activity that constituted one or
more violations of federal law, to wit: (1) intercepting wire and
electronic communications, in violation of Title 18, United
States Code, Section 2511; and (2) unlawfully accessing wire
and electronic communications, in violation of Title 18, United
States Code, Section 2701, contrary to Title 18, United States
Code, Section 1028(a)(7), all in violation of Title 18, United
States Code, Section 1028(f).

I have already instructed you on the general definition of conspiracy, which, as I said, is an

agreement among two or more people to commit a crime.  I remind you that the crime of

conspiracy to violate a federal law is a separate offense from the underlying crime.  It is

separate and distinct from an actual violation of identity theft, which is the object of the

conspiracy and what we call the "substantive crime."  In order to find the defendant guilty of

conspiracy to commit identity theft, you must find that two or more persons agreed to

commit the crime of identity theft, and that the defendant knowingly and intentionally

became a member of the conspiracy.

I previously instructed you regarding the law on the crime of identity theft

under Racketeering Act 1A.  However, because Racketeering Act 5A alleges that the

defendant or a co-conspirator acted with the intent to commit, or to aid and abet, or in

connection with, a different federal crime, the fourth element is different.  I will therefore

instruct you on the law that you should consider for Racketeering Act 5A.

The elements of the crime of identity theft are as follows:

46

First, that the defendant or a co-conspirator knowingly transferred or possessed or used a means of identification of another person;

Second, the defendant or a co-conspirator knew that the means of identification belonged to another person;

Third, that the defendant or a co-conspirator acted without lawful authority;

Fourth, that the defendant or a co-conspirator acted with the intent to commit, or to aid and abet, or in connection with, an unlawful activity that violates federal law;

Fifth, that the transfer or possession or use of the means of identification occurred in or affected interstate or foreign commerce, or the means of identification was transported in the mail in the course of the transfer or possession or use.

As to the first element, the government must prove beyond a reasonable doubt that the item described in the indictment is a means of identification of another person.   I have already defined the terms "means of identification," "use," "transfer" and "possess" and will not repeat them here.  I instruct you that usernames and passwords may constitute a "means of identification" of another person.

As to the third element, I instruct you that the government must prove that the defendant or a co-conspirator was not authorized to use the means of identification.  The government must also prove that defendant or a co-conspirator used or transferred or possessed the means of identification knowingly, that is, he or she did so voluntarily and intentionally and not because of accident, mistake or some other innocent reason.

47

As to the fourth element, the government must prove beyond a reasonable doubt that the defendant or a co-conspirator used or transferred or possessed the means of identification with the intent to commit, or to aid and abet, or in connection with either one of two federal crimes:  the crime of intercepting wire and electronic communications, in violation of Title 18, United States Code, Section 2511; or (2) the crime of unlawfully accessing wire and electronic communications, in violation of Title 18, United States Code, Section 2701.  In relevant part, the crime of intercepting wire and electronic communications in violation of Title 18, United States Code, Section 2511 prohibits accessing, without authorization, a system through which electronic communication service is provided and obtaining wire or electronic communications.  In relevant part, the crime of unlawfully accessing wire and electronic communications, in violation of Title 18, United States Code, Section 2701 prohibits intercepting electronic communications.

To establish this fourth element of identity theft, the government does not need to prove that the defendant of a co-conspirator actually committed either of these two crimes. This element is satisfied if you find that the government proved beyond a reasonable doubt that the defendant used or transferred or possessed the means of identification, or conspired to do so, with the intent to commit, aid and abet, or in connection with either of these offenses.

Finally, as to the fifth element, I instruct you that interstate commerce simply means the movement of goods, services, money and individuals between any two or more

48

states.  To satisfy this element, the government must prove that the defendant's conduct affected interstate commerce in any way, no matter how minimal.

If you find that the government proved, beyond a reasonable doubt, that the defendant knowingly and intentionally agreed with others to commit the crime of identity theft, then you should find the defendant guilty of Racketeering Act 5A.  As I already instructed you, a conspiracy is a crime even if it does not achieve its purpose.  The government does not have to prove that the defendant or his co-conspirators actually committed the crime of identity theft.  What the government must prove is that the defendant voluntarily entered into a conspiracy whose purpose was to commit identity theft.

<div align="center">Authority</div>

Sand, Instructions 39A.08, 65.01, 65.06; <u>Flores-Figueroa v. United States</u>, 556 U.S. 646, 648, 657 (2009); <u>United States v. Barrington</u>, 648 F.3d 1178, 1193 (11th Cir. 2011) (holding that "usernames and passwords, considered together" constituted a "means of identification").

2.      Racketeering Act 5B: Identity Theft of James Loperfido

The first part, which is referred to on the verdict sheet as Racketeering Act 5B, alleges that the defendant committed, or aided and abetted the commission of, the identity theft of James Loperfido.  The indictment reads as follows:

In or about and between January 2006 and November 2008, both dates being approximate and inclusive, within the Northern District of New York and elsewhere, the defendant KEITH RANIERE, together with others, did knowingly and intentionally transfer, possess and use, without lawful authority and in and affecting interstate commerce, one or more means of identification of another person, to wit: James Loperfido, with the intent to commit, and to aid and abet, and in connection

<div align="center">49</div>

with, unlawful activity that constituted one or more violations of federal law, to wit: (1) intercepting wire and electronic communications, in violation of Title 18, United States Code, Section 2511; and (2) unlawfully accessing wire and electronic communications, in violation of Title 18, United States Code, Section 2701, all in violation of Title 18, United States Code, Sections 1028(a)(7) and 2.

To prove this crime, the government must prove the following elements beyond a reasonable doubt:

First, that the defendant knowingly transferred or possessed or used a means of identification of James Loperfido;

Second, the defendant knew that the means of identification belonged to James Loperfido;

Third, that the defendant acted without lawful authority;

Fourth, that the defendant acted with the intent to commit, or to aid and abet, or in connection with, the crime of intercepting wire and electronic communications, in violation of Title 18, United States Code, Section 2511, or the crime of unlawfully accessing wire and electronic communications, in violation of Title 18, United States Code, Section 2701; and

Fifth, that the transfer or possession or use of the means of identification occurred in or affected interstate or foreign commerce, or the means of identification was transported in the mail in the course of the transfer or possession or use.

50

I have already instructed you regarding the elements of the crime of identity theft under

Racketeering Act 5A.  You should refer to those instructions when considering this count.

You may also find the defendant guilty of Racketeering 5B if the government

has proven beyond a reasonable doubt that he aided and abetted the identity theft of James

Loperfido.  In determining whether the defendant is guilty as an aider and abettor, you must

follow the general instructions on aiding and abetting under federal law that I have already

given you.

### 3.    Racketeering Act 5C:  Identity Theft of Edgar Bronfman

The first part, which is referred to on the verdict sheet as Racketeering Act 5C,

alleges that the defendant committed, or aided and abetted the commission of, the identity

theft of Edgar Bronfman.  The indictment reads as follows:

> In or about and between January 2006 and November 2008,
> both dates being approximate and inclusive, within the Northern
> District of New York and elsewhere, the defendant KEITH
> RANIERE, together with others, did knowingly and
> intentionally transfer, possess and use, without lawful authority
> and in and affecting interstate commerce, one or more means of
> identification of another person, to wit: John Doe 2, with the
> intent to commit, and to aid and abet, and in connection with,
> unlawful activity that constituted one or more violations of
> federal law, to wit: (1) intercepting wire and electronic
> communications, in violation of Title 18, United States Code,
> Section 2511; and (2) unlawfully accessing wire and electronic
> communications, in violation of Title 18, United States Code,
> Section 2701, all in violation of Title 18, United States Code,
> Sections 1028(a)(7) and 2.

51

I have just instructed you regarding the elements of this crime.  You should apply those instructions here.

You may also find the defendant guilty of Racketeering 5B if the government has proven beyond a reasonable doubt that he aided and abetted the identity theft of Edgar Bronfman.  In determining whether the defendant is guilty as an aider and abettor, you must follow the general instructions on aiding and abetting under federal law that I have already given you.

F.      Racketeering Act Six:  Conspiracy to Obstruct Justice

Racketeering Act Six alleges that the defendant conspired to obstruct justice in or about and between February 2008 and March 2018.  The indictment reads as follows:

> In or about and between February 2008 and March 2018, both dates being approximate and inclusive, within the District of New Jersey and elsewhere, the defendant KEITH RANIERE, together with others, did knowingly and intentionally conspire to corruptly alter, destroy, mutilate and conceal one or more records, documents and other objects, to wit: video recordings, with the intent to impair such objects' integrity and availability for use in an official proceeding, to wit: NXIVM Corp., et al. v. Ross Institute, et al., 06 CV 1051 (D.N.J.), contrary to Title 18, United States Code, Section 1512(c)(1), all in violation of Title 18, United States Code, Section 1512(k).

I have already instructed you on the general definition of conspiracy, which, as I said, is an agreement among two or more people to commit a crime.  In order to prove this racketeering act, the government must prove that two or more persons agreed to obstruct justice, and that the defendant knowingly and intentionally became a member of the

conspiracy.  Here, the alleged crime is obstruction of justice.  The relevant statute is Section

1512(c)(1) of Title 18, United States Code, which provides that:

> **Whoever corruptly alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding . . . . shall be [guilty of a crime.]**

The elements of the crime of obstruction of justice are as follows:

First, that the defendant or a co-conspirator knowingly and corruptly altered

(or destroyed or mutilated or concealed) any record, document or tangible object, as alleged

in the indictment;

Second, that the defendant acted with the intent of impairing the object's

integrity or availability use in an official proceeding; and

Third, that the defendant acted corruptly.

I will now explain each element in greater detail.

The first element the government must prove beyond a reasonable doubt is that

the defendant or a co-conspirator altered (or destroyed or mutilated or concealed) any record,

document or tangible object, as alleged in the indictment.

The second element the government must prove beyond a reasonable doubt is

that the defendant acted with the intent to impair the object's integrity or availability in an

official proceeding.  An official proceeding means a proceeding before a court, judge or

federal agency.  You are instructed that a civil court case in the United States District Court

for the District of New Jersey is an official proceeding.  The law does not require that the

federal proceeding be pending at the time of defendant's actions as long as the proceeding

53

was foreseeable such that defendant knew that his actions were likely to affect the proceeding.

The third element the government must prove beyond a reasonable doubt is that the defendant acted corruptly. To act "corruptly" means to act with an improper purpose and to engage in conduct knowingly and dishonestly and with the intent to obstruct, impede or influence the due administration of justice. A defendant does not need to know with certainty that his conduct would affect judicial proceedings. Indeed, the government does not need to prove that the defendant's conduct actually obstructed justice or that the altered records contained particularly material evidence pertaining to the official proceedings. Instead, the defendant's conduct must only have the natural and probable effect of interfering with the due administration of justice.

The "due administration of justice" refers to the fair, impartial, uncorrupted and unimpeded investigation, prosecution, or disposition of any matter, in the courts of the United States. It includes every step in a matter or proceeding in the federal courts to assure the just consideration and determination of the rights of parties, whether government or individual.

A defendant's knowledge is a matter of inference from the facts proved. Since we have no way of looking into a person's mind directly, the fact of knowledge or intent may be established by circumstantial evidence, just as any other fact in this case.

If you find that the government proved, beyond a reasonable doubt, that the defendant knowingly and intentionally agreed with others to commit the crime of obstruction

54

of justice, then you should find the defendant guilty of Racketeering Act Seven.  As I already instructed you, a conspiracy is a crime even if it does not achieve its purpose.  The government does not have to prove that the defendant or his co-conspirators actually committed the crime of obstruction of justice.  What the government must prove is that the defendant voluntarily entered into a conspiracy whose purpose was to commit obstruction of justice.

<div align="center">Authority</div>

> Adapted from Sand, Instructions 46-63 through 46-67;
> United States v. Sampson, 13-CR-269 (E.D.N.Y.) (DLI); Hon.
> Nicholas G. Garaufis, United States v. Pugh, 15-CR-116 (NGG)
> (E.D.N.Y.).

G.    Racketeering Act Seven:  Conspiracy to Commit Identity Theft as to Marianna

Racketeering Act Seven charges the defendant with conspiring to commit identity theft as to Marianna in or about November 2008.  The indictment reads as follows:

> In or about November 2008, within the Northern District of New York and elsewhere, the defendant KEITH RANIERE, together with others, did knowingly and intentionally conspire to transfer, possess and use, without lawful authority and in and affecting interstate commerce, one or more means of identification of another person, to wit: Marianna, with the intent to commit, and to aid and abet, and in connection with, unlawful activity that constituted one or more violations of federal law, to wit: (1) intercepting wire and electronic communications, in violation of Title 18, United States Code, Section 2511; and (2) unlawfully accessing wire and electronic communications, in violation of Title 18, United States Code, Section 2701, contrary to Title 18, United States Code, Section 1028(a)(7), all in violation of Title 18, United States Code, Section 1028(f).

<div align="center">55</div>

I previously instructed you on the elements of the crime of conspiracy to commit identity

theft under Racketeering 5A.  You should apply those instructions here.

      H.      <u>Racketeering Act Eight:  Trafficking of Daniela for Forced Labor</u>

      Racketeering Act Eight alleges that the defendant committed two separate

crimes: the trafficking of Daniela for labor and services, in violation of Title 18, United

States Code, Section 1590, and the document servitude of Daniela, in violation of Title 18,

United States Code, Section 1592.  Thus, Racketeering Act Eight has two parts to it, and you

will render separate verdicts on each part.  If you find that the defendant committed either of

these two crimes, you must find that the government has proven Racketeering Act Eight.

      1.      <u>Racketeering Act 8A: Trafficking of Daniela for Labor and Services</u>

      The first part, which is referred to on the verdict sheet as Racketeering Act 8A,

alleges that the defendant trafficked Daniela for labor and services.  The indictment reads as

follows:

> In or about and between March 2010 and April 2012, both dates
> being approximate and inclusive, within the Northern District of
> New York and elsewhere, the defendant KEITH RANIERE,
> together with others, did knowingly and intentionally recruit,
> harbor, transport, provide and obtain a person, to wit: Daniela,
> for labor and services in violation of Title 18, United States
> Code, Chapter 77, to wit: forced labor, in violation of Title 18,
> United States Code, Section 1589, in violation of Title 18,
> United States Code, Sections 1590 and 2.

      The statute relevant to this racketeering act is Section 1590.  It provides in

relevant part as follows:

<div align="center">56</div>

**Whoever knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter [commits a crime].**

In order to prove this racketeering act, the government must prove beyond a reasonable doubt each of the following three elements:

First, the defendant recruited, harbored, transported, provided, or obtained Daniela;

Second, the defendant did so for the purpose of providing or obtaining the labor or services of Daniela in violation of the forced labor statute, Section 1589.  That is, that the defendant "trafficked" Daniela as I have just described, with the purpose of providing or obtaining her labor or services by means of serious harm, or threats of serious harm, to Daniela or another person, or by means of any scheme, plan, or pattern intended to cause Daniela to believe that, if Daniela did not perform such labor or services, Daniela or another person would suffer serious harm [or physical restraint].  Labor or services that are provided or obtained by these unlawful means is called "forced labor"; and

Third, the defendant acted knowingly.

With respect to the first element, I further instruct you that the word "harbor" means simply to provide shelter to that person.   To "obtain" someone means to acquire, control, or possess that person, even if only for a short period.

With respect to the second element, the government must prove beyond a reasonable doubt that the defendant recruited, harbored, transported, provided, or obtained Daniela — that is, the defendant "trafficked" Daniela — for the purpose of providing or

57

obtaining Daniela's forced labor — that is, labor or services provided or obtained by one of the prohibited means I described a moment ago.  The crime prohibited by Section 1590 is "trafficking" a person for this unlawful purpose.  To establish this element, the government does not need to prove that the defendant actually obtained or attempted to obtain Daniela's forced labor, only that the defendant "trafficked" Daniela for the purpose of providing or obtaining it.

I will define for you some of the terms you will consider in determining whether the defendant had this unlawful purpose.  First, "labor" means the expenditure of physical or mental effort and "services" means conduct or performance that assists or benefits someone.

A "threat" is a serious statement expressing an intention to inflict harm, at once or in the future, which is different from idle or careless talk, exaggeration, or something said in a joking manner.  For a statement to be a threat, it must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm.  In addition, the statement must have been made with the intent that it be a threat, or with the knowledge that the statement would be viewed as a threat.

The term "serious harm" includes both physical and non-physical types of harm.  It can include psychological, financial, or reputational harm.  Therefore, a threat of serious harm need not involve any threat of physical violence.  However, the threats must be serious enough that, considering all the surrounding circumstances, a reasonable person of

58

the same background and in the same circumstances as the alleged victim would perform or continue performing labor that the victim would otherwise not have willingly performed, in order to avoid that harm.  In considering whether a threat of harm would be sufficient to compel or coerce an alleged victim's services, you may consider the totality of the defendant's conduct as well as the victim's age, background or circumstances that were known to the defendant and that would make the alleged victim especially vulnerable to pressure.  You may consider surrounding circumstances such as verbal abuse and insults, isolation, poor working and living conditions, denial of adequate rest, food and medical care, pay withholding or any combination of these conditions and any other techniques you find that the defendant used to intimidate Daniela and compel her to work.

You should give the words "scheme, plan and pattern" their ordinary meanings.  A "scheme" is a plan or program of action, especially a crafty or secret one.  A "plan" is a method for achieving an end or a detailed formulation of a program of action.  A "pattern" is a mode of behavior or series of acts that are recognizably consistent.

A few final things about this second element of forced labor:

If you find that the defendant trafficked Daniela for the unlawful purpose I have described, the fact that Daniela may have had an opportunity to escape is irrelevant if the defendant placed her in such fear or circumstances that the victim reasonably believed that she could not leave.  A victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape.

59

When considering whether the defendant had the unlawful purposes I described to you, you may also consider any condition that made Daniela vulnerable to pressure, so long as you believe the defendant also knew about it.  You may consider, for example, the background, physical and mental condition, experience, education, socioeconomic status and any inequalities between Daniela and the defendant, but only if these conditions were known to the defendant at the time.  Simply put, you may ask whether Daniela was vulnerable in some way known to the defendant so that the defendant's actions, or planed actions, even if not sufficient to compel another person to work, were enough to compel Daniela to work.

I previously instructed you as to the definition of "knowingly" and you should apply that definition to the third element here.

Racketeering Act 8A is also charged under an aiding and abetting theory — that is, that the defendant aided and abetted another in trafficking Daniela for the unlawful purpose I have described.  You may find Racketeering Act 8A proven as to the defendant if you find that he aided and abetted the trafficking of Daniela.  I have already instructed you on aiding and abetting under federal law.  When deliberating on Racketeering Act 8A, apply those instructions.

### 2.  Racketeering Act 8B: Document Servitude of Daniela

The second part of Racketeering Act Eight, which is referred to on the verdict sheet as Racketeering Act 8B, alleges that the defendant committed the crime of document servitude.   The indictment reads as follows:

In or about and between March 2010 and April 2012, both dates being approximate and inclusive, within the Northern District of New York and elsewhere, the defendant KEITH RANIERE, together with others, did knowingly and intentionally conceal, remove, confiscate and possess one or more immigration documents and actual government identification documents of a person, to wit: Daniela, in the course of, and with intent to commit, one or more violations of Title 18, United States Code, Sections 1589 and 1590, all in violation of Title 18, United States Code, Sections 1592 and 2.

The relevant statute is Section 1592 of Title 18, United States Code, which provides in relevant part that:

**Whoever knowingly destroys, conceals, removes, confiscates, or possesses any actual or purported passport or other immigration document, or any other actual or purported government identification document, of another person —**

**(1)    in the course of a violation of section . . . 1589 [the forced labor statute or] 1590 [the trafficking statute]; [or]**

**(2)    with intent to violate section . . . 1589 [the forced labor statute or] 1590 [the trafficking statute has committed a crime].**

In order to prove this racketeering act, the government must prove beyond a reasonable doubt each of the following three elements:

First, that the defendant concealed, removed, confiscated or possessed an actual or purported passport, visa, or other identification document of Daniela;

Second, that the defendant did so (l) in the course of violating the forced labor statute or trafficking statute; or (2) with intent to violate the forced labor statute or trafficking statute; or (3) to unlawfully prevent or restrict, or to attempt to prevent or restrict Daniela's

liberty to move or travel, in order to maintain the labor or services of Daniela, when she is or has been a victim of a severe form of trafficking in persons; and

Third, that defendant acted knowingly.

With respect to the first element, the word "conceal" means the act of refraining from disclosure or preventing the discovery of the document, or hiding the document. To "remove" means to take away or transfer from one place to another. To "confiscate" means to appropriate or seize the document. To "possess" means to hold and have actual control of the document.

With respect to the second element, the government must prove that the defendant engaged in the concealment, removal, confiscation, or possession of the document either (1) in the course of violating the forced labor statute, Section 1589, or the trafficking statute, Section 1590; or (2) with the intent to commit forced labor or trafficking. When considering whether the defendant concealed, removed, confiscated, or possessed the documents in the course of a forced labor or trafficking offense, you should consider the instructions that I previously gave you regarding forced labor and trafficking. When considering whether the defendant concealed, removed, confiscated, or possessed the documents with intent to violate the forced labor or trafficking statutes, I instruct you that the government need not prove an actual violation of the forced labor or trafficking statute to prove this element beyond a reasonable doubt. Even if the defendant did not succeed in committing forced labor or trafficking, this element will be satisfied in the defendant

concealed, removed, confiscated, or possessed the documents acted with the intent to violate

the forced labor or trafficking statutes.

       With respect to the third element, I have previously instructed you on the

definition of "knowingly" and you should apply that definition here.

<u>Authority</u>

Adapted from the jury charge in <u>United States v. Zhong</u>, 16-CR-614 (AMD) (E.D.N.Y.); Sand, Instruction 47A-02; <u>see, e.g.</u>, <u>United States v. Kaufman</u>, 546 F.3d 1242, 1260-61 (10th Cir. 2008) (upholding jury instructions defining "labor" as "the expenditure of physical or mental effort" and "services' as "conduct or performance that assists or benefits someone or something"); <u>United States v. Marcus</u>, 487 F. Supp. 2d 289, 300 (E.D.N.Y. 2007) (relying on the ordinary meaning of the terms "labor" and "services" and defining "labor" as "an expenditure of physical or mental effort especially when fatiguing, difficult, or compulsory" and "services" as "useful labor that does not produce a tangible commodity"), <u>aff'd</u> 628 F.3d 26 (2010).

I.       Racketeering Act Nine:  State Law Extortion

Racketeering Act Nine charges the defendant with extortion under New York

State law in or about and between September 2015 and June 2017.  The indictment reads as

follows:

> In or about and between September 2015 and June 2017, both
> dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendant  KEITH
> RANIERE, together with others, did knowingly and
> intentionally steal property by extortion, in that RANIERE and
> others obtained property, to wit: personal property and other
> things of value, by compelling and inducing one or more
> persons, to wit: lower-ranking DOS members, to deliver such
> property by instilling in them a fear that, if the property were not
> so delivered, RANIERE and others would (1) expose a secret
> and publicize an asserted fact, whether true or false, tending to
> subject one or more persons to hatred, contempt and ridicule;
> and (2) perform an act which would not in itself materially
> benefit RANIERE and others, but which was calculated to harm
> one or more persons materially with respect to their health,
> safety, business, calling, career, financial condition, reputation
> and personal relationships, in violation of New York Penal Law
> Sections 155.30(6), 155.05(2)(e)(v), 155.05(2)(e)(ix) and 20.00.

Racketeering Act Nine charges the defendant with committing fourth-degree

grand larceny under New York State law under Penal Law Section 155.30(6).  Under New

York State law, a defendant is guilty of grand larceny in the fourth degree if he obtains

property illegally, and that property, regardless of its nature and value, is obtained by

extortion.

A person obtains property illegally when, with intent to deprive another of

property or to appropriate the same to himself or to a third person, that person wrongfully

takes, obtains or withholds such property from an owner of the property.  A person obtains

64

property by extortion when that person compels or induces another person to deliver such

property to himself or to a third person by means of instilling in the victim a fear that, if the

property is not delivered, the defendant or another person will expose a secret or publicize an

asserted fact, whether true or false, tending to subject some person to hatred, contempt or

ridicule; or perform any other act which would not in itself materially benefit the defendant

or other person but which is calculated to harm another person materially with respect to his

health, safety, business, calling, career, financial condition, reputation or personal

relationships.

Racketeering Act Nine is also charged under an aiding and abetting theory --

that is, that the defendant aided and abetted the extortion of lower ranking DOS members.

You may find Racketeering Act Nine proven as to the defendant if you find that he aided and

abetted the extortion of lower ranking DOS members.  I have already instructed you on

aiding and abetting under New York State law. When deliberating on Racketeering Act Nine,

apply those instructions.

<div align="center">Authority</div>

Adapted from jury charge in United States v. Curanovic, 08 CR
240 (BMC) (E.D.N.Y.); United States v. Gioeli, 08-CR-240
(BMC) (E.D.N.Y);

J.      Racketeering Act Ten: Sex Trafficking and/or Forced Labor of Nicole

Racketeering Act Ten alleges that the defendant committed two separate

crimes: sex trafficking, as well as the forced labor, of Nicole.  Thus, Racketeering Act Ten

has two parts to it, and you will render separate verdicts on each part.  If you find that the

<div align="center">65</div>

defendant committed either of these two crimes, you must find that the government has

proven Racketeering Act Ten.

      1.     <u>Racketeering Act 10A:  Sex Trafficking of Nicole</u>

      The first part of Racketeering Act Ten, which is referred to on the verdict

sheet as Racketeering Act 10A, charges the defendant with sex trafficking by force, fraud, or

coercion as to Nicole between February 2016 and June 2017.  With respect to Racketeering

Act 10A, the indictment reads as follows:

> In or about and between February 2016 and June 2017, both
> dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendant KEITH
> RANIERE, together with others, did knowingly and
> intentionally recruit, entice, harbor, transport, provide, obtain,
> maintain, patronize and solicit a person, to wit: Nicole, in and
> affecting interstate and foreign commerce, and did benefit,
> financially and by receiving anything of value, from
> participation in a venture that engaged in such acts, knowing
> and in reckless disregard of the fact that means of force, threats
> of force, fraud and coercion, and a combination of such means,
> would be used to cause Nicole to engage in one or more
> commercial sex acts, in violation of Title 18, United States
> Code, Sections 1591(a)(1), 1591(a)(2) and 2.

> The relevant statute provides, in pertinent part:

> **Whoever knowingly –**

> **(1) in or affecting interstate or foreign commerce, . . .
> recruits, entices, harbors, transports, provides, or obtains by
> any means a person; or**
> **(2) benefits, financially or by receiving anything of value,
> from participation in a venture which has engaged in an act
> [just] described . . . , knowing that force, fraud, or coercion .
> . . will be used to cause the person to engage in a commercial
> sex act, shall be punished . . .**

<center>66</center>

To prove this crime, the government must prove beyond a reasonable doubt the following four elements:

First, (a) the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited a person by any means; or (b) that the defendant knowingly benefitted, financially or by receiving something of value, from participating in a venture that recruited, enticed, transported, provided or obtained a person;

Second, that the defendant knew or recklessly disregarded that force, fraud or coercion would be used with respect to such person;

Third, that the defendant knew that such person would be engaged in a commercial sex act; and

Fourth, that defendant's conduct was in or affecting interstate or foreign commerce.

I will now further define these elements.

The first element that the government must prove is that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited a person, or that the defendant knowingly benefitted financially or by receiving something of value from participating in a venture that did one of these things.

So, the statute sets forth two different ways that the government can prove this element. The first is by proving that the defendant himself engaged in at least one of a list of prohibited trafficking activities, and the second is by proving that the defendant took part in a

67

venture that engaged in at least one of those trafficking activities, and that the defendant benefitted financially or by receiving a thing of value from that venture.

The first way to satisfy the first element is by proving that the defendant himself knowingly recruited, enticed, harbored, transported, provided or obtained Nicole.  In considering whether the defendant did any of these things, I instruct you to use the ordinary, everyday definitions of these terms.  To "harbor" a person means to provide shelter for that person.  To "obtain" someone refers to acquiring, controlling or possessing that person for even a short period of time.  To "maintain" someone means to upkeep someone, or to put care or work into them.

I will now explain the second, alternative way to satisfy the first element. To satisfy this element the second way, the government need not prove that the defendant himself engaged in the trafficking activities of recruiting, enticing, harboring, transporting, providing or obtaining a person.  The government need only prove that there was a venture that engaged in one of these activities, that the defendant participated in some way in that venture, and that the defendant benefitted financially or by receiving a thing of value from that venture.  In considering whether the defendant participated in such a venture, I instruct you that a venture is defined as "any group of two or more individuals associated in fact, whether or not as a legal entity."  So, if two or more people associated with one another, you may find that those people formed a venture.

You may find that the defendant participated in the venture if the defendant in any way took part in that venture.  The defendant may be, but need not be, one of the people

68

who formed that venture. Likewise, the defendant need not be an organizer or a main participant in the venture, and need not have participated throughout the length of the venture. It is enough if the defendant took some part in or played some role in the venture for any period of time, while the venture was still ongoing. It is sufficient if the defendant played any role in the venture, even if that role was minor, and even if that role was not related to the actual recruiting, enticing, harboring, transporting, providing or obtaining of persons for commercial sex acts that the venture engaged in.

Now, as I have stated, the defendant must also benefit financially or by receiving a thing of value from the venture. You may find that this requirement is satisfied if the defendant received any form of profit, benefit, value or advantage, no matter how minor, from the venture. Of course, if you find that the defendant himself recruited, enticed, harbored, transported, provided or obtained, you need not consider whether the defendant benefitted from doing so. You need only consider whether the defendant benefitted if you find that the defendant's involvement in sex trafficking was through participating in the trafficking venture rather than the trafficking activity itself. The statute also requires the government to prove that the defendant acted knowingly. So the government must prove that the defendant acted knowingly in either engaging in the trafficking activity or joining in a venture that engaged in a trafficking activity. I have already instructed you regarding what it means to act knowingly. You should apply that instruction here.

The second element the government must prove beyond a reasonable doubt is that the defendant knew or was in reckless disregard of the fact that force, fraud or coercion

would be used with respect to Nicole.  Fraud, as I just used that term, means that the

defendant knowingly made a misstatement or omission of a material fact to entice the victim.

A material fact is one that a reasonable person would expect to rely on when making a

decision.

Coercion means (a) a threat of serious harm or physical restraint against a

person; (b) any scheme, plan or pattern intended to cause a person to believe that failure to

perform an act would result in serious harm to or physical restraint against a person; or (c)

the abuse or threatened abuse of law or legal process.  A threat is a serious statement

expressing an intention to inflict harm, at once or in the future, as distinguished from idle or

careless talk, exaggeration, or something said in a joking manner.  A statement is a threat if it

was made under such circumstances that a reasonable person hearing the statement would

understand it as a serious expression of intent to cause harm.

The term "serious harm" includes both physical and non-physical types of

harm, including psychological, financial, or reputational harm, that is sufficient under all of

the surrounding circumstances to compel a reasonable person of the same background and in

the same circumstances to perform or to continue performing commercial sexual activity in

order to avoid incurring that harm.  In determining whether the defendant made a threat of

serious harm, you should consider the victim's particular station in life, physical and mental

condition, age, education, training, experience, and intelligence.  A threat of serious harm

must be sufficient in kind or degree to completely overcome the will of an ordinary person

having the same general station in life as that of victim, causing a reasonable belief that there

70

was no reasonable choice except to engage in a commercial sex act as directed by the defendant.

Coercion can also mean that the defendant engaged in a course of behavior intended to cause the victim to believe that if she did not engage in a commercial sex act as directed by the defendant, any person—including the victim or someone close to her—would suffer serious harm.  Coercion can also mean to use threats of legal action, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed in order to coerce someone into working against that person's will.

To satisfy this element, the government must prove that force, fraud, or coercion, as I just defined those terms, was used, and also that the defendant knew or was in reckless disregard of the fact that it would be used, against Nicole.  Whether or not the defendant had this knowledge is a question of fact to be determined by you on the basis of all the evidence.  An act is done knowingly only if it is done purposely and deliberately, and not because of accident, mistake, negligence, or other innocent reason.  If you find that the evidence establishes, beyond a reasonable doubt, that the defendant actually knew that coercion would be used, then this element is satisfied.  Even if the evidence does not establish actual knowledge, this element is satisfied if you find that the government has proved, beyond a reasonable doubt, that the defendant acted with reckless disregard of the facts concerning the use of coercion.  The phrase "reckless disregard of the facts" means deliberate indifference to facts that, if considered and weighed in a reasonable manner,

71

indicate the highest probability that the victim was coerced to engage in a commercial sex act.

The third element that the government must prove is that the defendant knew that Nicole would be engaged in a commercial sexual act.  A commercial sexual act is any sex act of which anything of value is given to or received by any person because of such sex act.  It is not required that the victim actually performed a commercial sex act as long as the government has proved that the defendant recruited, enticed, harbored, transported, provided, obtained, maintained, patronized or solicited the victim for purposes of engaging in commercial sex acts.  A thing "of value" need not involve a monetary exchange and need not have any financial component.  The phrase "any sex act" should be given its plain meaning and may include any act performed with another for sexual gratification.

Lastly, the fourth element that the government must prove beyond a reasonable doubt is that the defendant's conduct was in or affecting interstate or foreign commerce.  This definition is the same as previously described.  Interstate or foreign commerce simply means the movement of goods, services, money and individuals between any two or more states or between one state and the District of Columbia or between a state and a U.S. Territory or possession or between the United States and a foreign country.  To satisfy this element, the government must prove that the defendant's conduct affected interstate commerce in any way, no matter how minimal.  You do not have to find that the defendant's conduct actually affected interstate commerce if you find that the defendant's conduct would have affected interstate commerce if the defendant had successfully and fully

completed his actions.  The government does not have to show that the defendant actually

knew his actions affected or would affect interstate commerce.

You may also find Racketeering Act 10A proven if the government has proven

beyond a reasonable doubt that the defendant aided and abetted sex trafficking.  In

determining whether the defendant is an aider and abettor, you must follow the general

instructions on aiding and abetting under federal law that I have already given you.

<div align="center">Authority</div>

Adapted from the charges in United States v. Rivera, 13-CR-149
(KAM) (E.D.N.Y.); United States v. Marcus, 05-CR-457 (ARR)
(E.D.N.Y.); Sand, Instructions 47A-19 to 47A-23; see Noble v.
Weinstein, 335 F. Supp. 3d 504, 521 (S.D.N.Y. 2018).

2.      Racketeering Act 10B: Forced Labor of Nicole

The second part, which is referred to on the verdict sheet as Racketeering Act

10B, alleges that the defendant obtained the forced labor of Nicole.  With respect to

Racketeering Act 10B, the indictment reads as follows:

In or about and between February 2016 and June 2017, both
dates being approximate and inclusive, within the Eastern
District of New York and elsewhere, the defendant KEITH
RANIERE, together with others, did knowingly and
intentionally provide and obtain the labor and services of a
person, to wit: Nicole, by means of (a) force, threats of force,
physical restraint and threats of physical restraint to her and one
or more other persons, (b) serious harm and threats of serious
harm to her and one or more other persons, and (c) one or more
schemes, plans and patterns intended to cause her to believe
that, if she did not perform such labor and services, she and one
or more other persons would suffer serious harm and physical
restraint, and a combination of such means, in violation of Title
18, United States Code, Sections 1589(a) and 2.

<div align="center">73</div>

The relevant statute reads as follows:

**Whoever knowingly obtains the labor or services of another person—**
**(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person**
**(2) by means of serious harm or threats of serious harm to that person or another person; [or]**
**(3) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint**
**[shall be guilty of a crime.]**

To prove that the defendant committed this racketeering act, the government must prove three elements beyond a reasonable doubt:

First, the defendant obtained the labor or services of Nicole;

Second, the defendant did so through one of the following prohibited means: (a) through threats of serious harm to, or physical restraint against, Nicole or any other person; or (b) through a scheme, plan or pattern intended to cause Nicole to believe that non-performance would result in serious harm to, or physical restraint against, Nicole or any other person; and

Third, the defendant acted knowingly.

The first element the government must prove is that the defendant obtained the labor or services of another person, in this case, Nicole. I have already instructed you on the meaning of "obtain" and you should apply that instruction here. "Labor" means the expenditure of physical or mental effort. "Services" means conduct or performance that assists or benefits someone. The government does not have to prove that Nicole performed

74

work for the defendant in the economic sense, although that would satisfy this element.  All the government must prove is that Nicole provided labor or services as I just defined them.

As to the second element, if you find that the defendant obtained the labor or services of Nicole, then you must determine whether the defendant did so through one of the two prohibited means, that is, either through threats of serious harm to, or physical restraint against, a person, or through a scheme, plan or pattern intended to cause the person to believe that serious harm would result if she did not perform the labor or services required of her.  In order to find that the second element has been satisfied, you must find beyond a reasonable doubt that at least one of the prohibited means I just mentioned was used to obtain Nicole's labor or services.

I now want to define for you some of the terms you will be considering in determining whether this second element of Racketeering Act 10B has been satisfied.  As I previously instructed, the term "serious harm" includes both physical and non-physical types of harm, including psychological, financial, or reputational harm.  A threat of serious harm, therefore, need not involve any threat of physical violence.  It includes improper threats of consequences, whether physical or nonphysical, that are sufficient, under all the surrounding circumstances, to compel or coerce a reasonable person in the same situation to provide, or to continue providing, labor or services, in order to avoid that harm.

The words "scheme," "plan," and "pattern" are to be given their ordinary meanings.  The scheme, plan or pattern need not involve actual threats of serious harm, but may involve any other means, including deception or psychological coercion, used to cause

75

the victim to reasonably believe that she, her family, or any other person would suffer serious harm if she refused to continue providing labor or services.

If you find that any of the two prohibited means I mentioned earlier was used, you must then determine whether such use was sufficient to cause Nicole reasonably to believe that she had no choice but to work or to remain working for the defendant.  In making that determination, you may consider the cumulative effect on Nicole of the defendant's conduct.

You may also consider Nicole's special vulnerabilities, if any.  In this regard, you may find that not all persons are of the same courage or firmness.  You may consider, for example, Nicole's background, physical and mental condition, experience, education, socioeconomic status and any inequalities between Nicole and the defendant with respect to these considerations, including their relative stations in life, among other things.  Simply put, you may ask whether Nicole was vulnerable in some way so that the actions of the defendant, even if not sufficient to compel another person to work, were enough to compel Nicole to work.

A few final things about this second element of the offense of forced labor: To prove forced labor, the government does not need to link each of the threats allegedly made or actions allegedly taken against Nicole to particular labor tasks performed by her.  If Nicole was threatened with or suffered certain consequences in connection with the services she rendered, either as punishment or as part of a climate of fear that overcame her will and

compelled her service, that is sufficient to establish the second element of the offense of forced labor.

The government also need not prove physical restraint, such as the use of chains, barbed wire or locked doors, in order to establish the offense of forced labor. The fact that Nicole may have had an opportunity to escape is irrelevant if a defendant placed Nicole in such fear or circumstances that she did not reasonably believe she could leave. A victim who has been placed in such fear or circumstances is under no affirmative duty to try to escape.

Finally, in considering whether service performed by someone was involuntary, you are instructed that it is not a defense to the crime of forced labor that the person may have initially agreed, voluntarily, to render the service or perform the work. If a person willingly begins work, but later desires to withdraw, and is then forced to remain and perform work against her will by threats of serious harm, or by a scheme, plan or pattern, intended to cause her to believe that non-performance will result in serious harm to her or another person, then her service becomes involuntary. Also, whether a person is paid a salary or a wage is not determinative of the question of whether that person has been held in forced labor. In other words, if a person is compelled to labor against her will by any one of the means prohibited by the forced labor statute, such service is involuntary even if she is paid or compensated for the work.

With regard to the third element, the government must prove that a defendant acted knowingly, a concept that I have already explained to you.

77

Authority

Adapted from the charges in United States v. Marcus, 05-CR-
457 (ARR) (E.D.N.Y.); Sand, Instruction 47A-02.

K.      Racketeering Act Eleven:  Conspiracy to Commit Identity Theft
        of Pamela Cafritz

Racketeering Act Eleven charges the defendant with conspiracy to commit

identity theft as to Pamela Cafritz between November 2016 and March 2018.  The indictment

reads as follows:

> In or about and between November 2016 and March 2018, both
> dates being approximate and inclusive, within the Northern
> District of New York and elsewhere, the defendant KEITH
> RANIERE, together with others, did knowingly and
> intentionally conspire to transfer, possess and use, without
> lawful authority and in and affecting interstate and foreign
> commerce, one or more means of identification of another
> person, to wit: Pamela Cafritz, with the intent to commit, and to
> aid and abet, and in connection with, unlawful activity that
> constituted one or more violations of federal law, to wit: tax
> evasion, in violation of Title 26, United States Code, Section
> 7201, contrary to Title 18, United States Code, Section
> 1028(a)(7), all in violation of Title 18, United States Code,
> Section 1028(f).

I previously instructed you regarding the elements of the crime of conspiracy to commit

identity theft under Racketeering Act 5A.  However, because Racketeering Act Eleven

alleges that the defendant or a co-conspirator acted with the intent to commit, or to aid and

abet, or in connection with, a different federal crime, the fourth element is different.  I will

therefore instruct you on the law that you should consider for Racketeering Act Eleven.

As a reminder, the elements of the crime of identity theft are as follows:

78

First, that the defendant or a co-conspirator knowingly transferred or possessed or used a means of identification of another person;

Second, the defendant or a co-conspirator knew that the means of identification belonged to another person;

Third, that the defendant or a co-conspirator acted without lawful authority;

Fourth, that the defendant or a co-conspirator acted with the intent to commit, or to aid and abet, or in connection with, an unlawful activity that violates federal law;

Fifth, that the transfer or possession or use of the means of identification occurred in or affected interstate or foreign commerce, or the means of identification was transported in the mail in the course of the transfer or possession or use.

As to the fourth element under Racketeering Act Eleven, the government must prove beyond a reasonable doubt that the defendant or a co-conspirator used or transferred or possessed the means of identification with the intent to commit, or to aid and abet, or in connection with, the crime of tax evasion, in violation of Title 26, United States Code, Section 7201. In relevant part, the crime of tax evasion prohibits the willful attempt to evade or defeat any tax imposed by the Internal Revenue Code. To establish this fourth element of identity theft, the government does not need to prove that the defendant of a co-conspirator actually committed tax evasion. This element is satisfied if you find that the government proved beyond a reasonable doubt that the defendant used or transferred or possessed the means of identification, or conspired to do so, with the intent to commit, aid and abet, or in connection with, the crime of tax evasion.

79

If you find that the government proved, beyond a reasonable doubt, that the defendant knowingly and intentionally agreed with others to commit the crime of identity theft, then you should find the defendant guilty of Racketeering Act Eleven.  As I already instructed you, a conspiracy is a crime even if it does not achieve its purpose.  The government does not have to prove that the defendant or his co-conspirators actually committed the crime of identity theft.  What the government must prove is that the defendant voluntarily entered into a conspiracy whose purpose was to commit identity theft.

<u>Authority</u>

Sand, Instructions 39A.08, 59.01.

*****

I have just finished charging you on the eleven racketeering acts alleged in Count Two of the indictment.   In sum, to find the defendant guilty of Count Two, you must find the following five elements proven beyond a reasonable doubt:

First, an enterprise, as described in the indictment, existed on or about the time alleged in the indictment;

Second, the enterprise engaged in, or its activities affected, interstate or foreign commerce;

Third, the defendant was employed by or was associated with the enterprise;

Fourth, the defendant knowingly conducted or participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and

Fifth, the defendant knowingly participated in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as described in the indictment; that is, through the commission of at least two of the charged racketeering acts, the last of which must have occurred within ten years after the commission of a prior racketeering act, or through causing or aiding and abetting the commission of two such racketeering acts.

REQUEST NO. 6

COUNT ONE: RACKETEERING CONSPIRACY

Count One of the indictment charges the defendant Keith Raniere with

conspiring to violate the RICO statute.  Count One reads as follows:

> In or about and between 2003 and March 2018, both dates being
> approximate and inclusive, within the Eastern District of New
> York and elsewhere, the defendant KEITH RANIERE, also
> known as "Vanguard," "Grandmaster" and "Master," together
> with others, being persons employed by and associated with the
> Enterprise, an enterprise that engaged in, and the activities of
> which affected, interstate and foreign commerce, did knowingly
> and intentionally conspire to violate Title 18, United States
> Code, Section 1962(c), that is, to conduct and participate,
> directly and indirectly, in the conduct of the affairs of such
> enterprise through a pattern of racketeering activity, as that term
> is defined in Title 18, United States Code, Sections 1961(1) and
> 1961(5).

> The pattern of racketeering activity through which the defendant
> KEITH RANIERE, together with others, agreed to conduct and
> participate, directly and indirectly, in the conduct of the affairs
> of the Enterprise consisted of multiple acts indictable under:

> Title 18, United States Code, Section 1028 (identification
> document fraud and identification document fraud conspiracy,
> and identity theft and identity theft conspiracy);

> Title 18, United States Code, Section 1343 (wire fraud);

> Title 18, United States Code, Section 1512 (obstruction of
> justice and obstruction of justice conspiracy);

> Title 18, United States Code, Section 1589 (forced labor);

> Title 18, United States Code, Section 1590 (trafficking in
> persons);

> Title 18, United States Code, Section 1591 (sex trafficking);

Title 18, United States Code, Section 1592 (document servitude);

Title 18, United States Code, Section 2251 (child exploitation); and

Title 18, United States Code, Section 2252 (possession of child pornography), and

multiple acts involving extortion, in violation of New York Penal Law Sections 155.30(6) and 20.00.  It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering in the conduct of the affairs of the Enterprise.

In order to convict the defendant on the RICO conspiracy offense charged in Count One, the government must prove the defendant knowingly agreed that the defendant and/or a conspirator would commit racketeering, in violation of § 1962(c) of the RICO statute, which again reads as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . .

Thus, in order to convict the defendant on the RICO conspiracy offense based on a conspiracy (or an agreement) to violate section 1962(c), the government must prove the following five elements beyond a reasonable doubt:

One:        The existence of an enterprise or that an enterprise would exist;

Two:        The enterprise was or would be engaged in, or its activities affected or would affect, interstate or foreign commerce;

83

Three:      The defendant was or would be employed by or associated with the
            enterprise;

Four:       The defendant did or would conduct or participate, either directly or
            indirectly, in the conduct of the affairs of the enterprise; and

Five:       The defendant knowingly agreed that he or a conspirator would
            participate in the conduct of the affairs of the enterprise through a
            pattern of racketeering activity, as described in the Indictment; that is,
            the defendant agreed that he or a conspirator would commit at least two
            acts of racketeering activity of the types alleged in the Indictment, and
            which I just listed.[11]

Thus, in order to convict the defendant of Count One, you must have determined that the

defendant knowingly and intentionally conspired with at least one other person that he and/or

a conspirator would be employed by or associate with an enterprise that affected interstate

commerce, as I have explained each of these elements to you in Count Two.

To establish a "pattern of racketeering activity," as alleged in Count One of the

Indictment, the government must prove three things beyond a reasonable doubt:

First:  The defendant agreed that he and/or another conspirator would commit

two or more of the racketeering acts of the type or types alleged in Count One of the

indictment in the conduct of the affairs of the enterprise.  The government is not required to

prove that the defendant personally committed two racketeering acts, or that he agreed to

personally commit two racketeering acts.  Rather, the government must prove that the

defendant agreed to participate in the enterprise with the knowledge and intent that at least

one member of the racketeering conspiracy (which could, but need not, be the defendant

---

[11]     United States v. Allen, 155 F.3d 35, 40 (2d. Cir. 1998).

himself) would commit at least two racketeering acts of the type or types alleged in the

Count One of the indictment in the conduct of the affairs of the enterprise.  These two acts

need not be agreed to at the same time; they may be agreed to throughout the course of the

conspiracy.

Your verdict must be unanimous as to which type or types of racketeering

activity you find that the defendant agreed was or would be committed, caused, or aided and

abetted.  I have already instructed you on the elements regarding each of the alleged types of

racketeering activity, with the exception of wire fraud, which I will instruct you on later.

Second:  The racketeering activity had or would have a "nexus" to the

enterprise and the racketeering activity was or would be "related," as I have defined those

concepts earlier.

Third:    The racketeering activity must have extended over a substantial

period of time, or the racketeering activity posed or would pose a threat of continued

criminal activity.  As I noted earlier, the government need not prove such a threat of

continuity by any mathematical formula or by any particular method of proof, but rather may

prove it in a variety of ways.  For example, the threat of continued unlawful activity may be

established when the evidence shows that the racketeering activity is part of a long-term

association that exists for criminal purposes, or when the racketeering activity is or would be

shown to be the regular way of conducting the affairs of the enterprise.

Moreover, in determining whether the government has proven the threat of

continued unlawful activity, you are not limited to consideration of the specific type or types

85

of racketeering activity alleged against the defendant; rather, in addition to considering such activity you also may consider the nature of the enterprise, and other unlawful activities of the enterprise and its members viewed in their entirety, including both charged and uncharged unlawful activities.[12]   In order to convict the defendant of the racketeering conspiracy offense, your verdict must be unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed[13]; for example, at least two acts involving identity theft, wire fraud, obstruction of justice, forced labor, human trafficking, sex trafficking, document servitude, child exploitation, child pornography, or any combination thereof.

<div align="center">Authority</div>

> Adapted from United States v. Basciano, 599 F.3d 184, 207 (2d Cir. 2010); United States v. Pizzonia, 577 F.3d 455, 465 (2d Cir. 2009); United States v. Eppolito, 543 F.3d 25, 49-50 (2d Cir. 2008); United States v. Daidone, 471 F.3d 371, 374-76 (2d Cir. 2006); United States v. Diaz, 176 F.3d 52, 93-94 (2d Cir. 1999); United States v. Wong, 40 F.3d 1347, 1375 (2d Cir. 1994); United States v. Tillem, 906 F.2d 814, 822 (2d Cir. 1990); United States v. Salerno, 868 F.2d 524, 533 (2d Cir. 1989);

---

[12]   See H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 299, 242-43 (1989); United States v. Alkins, 925 F.2d 541, 551-53 (2d Cir. 1991); United States v. Coiro, 922 F.2d 1008, 1017 (2d Cir. 1991); United States v. Kaplan, 886 F.2d 536, 543 (2d Cir. 1989); United States v. Indelicato, 865 F.2d 1370, 1383-84 (2d Cir. 1989) (en banc).

[13]   See, e.g., United States v. Applins, 637 F.3d 59, 81-83 (2d Cir. 2011) (approving rejection of special interrogatories, and approving instruction to the jury that "in order to convict the defendant of the RICO conspiracy offense, your verdict must be unanimous as to which type or types of predicate racketeering activity the defendant agreed would be committed" and holding that "the district court's instruction was sufficient in requiring unanimity as to the types of predicate racketeering acts that the defendants agreed to commit without requiring a finding of specific predicate acts"); United States v. Glecier, 923 F.2d 496, 499-500 (7th Cir. 1991).

<u>United States v. Indelicato</u>, 865 F.2d 1370, 1382-84 (2d Cir. 1989) (en banc); <u>United States v. Robilotto</u>, 828 F.2d 940, 947-48 (2d Cir. 1987); <u>United States v. Weisman</u>, 624 F.2d 1118, 1121-23 (2d Cir. 1980); Sand, Instruction 52-28.

REQUEST NO. 7

COUNT THREE: FORCED LABOR CONSPIRACY

Count Three of the indictment charges the defendant with conspiracy to commit forced labor of lower-ranking DOS members between September 2015 and June 2017.  The indictment reads as follows:

> In or about and between September 2015 and June 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEITH RANIERE, also known as "Vanguard," "Grandmaster" and "Master," together with others, did knowingly and intentionally conspire to provide and obtain the labor and services of one or more persons, to wit: lower-ranking DOS members, by means of (a) force, physical restraint and threats of physical restraint to them and one or more other persons, (b) serious harm and threats of serious harm to them and one or more other persons, and (c) one or more schemes, plans and patterns intended to cause them to believe that, if they did not perform such labor and services, they and one or more other persons would suffer serious harm, and a combination of such means, contrary to Title 18, United States Code, Section 1589(a).

I have already instructed you on the general definition of conspiracy, which, as I said, is an agreement among two or more people to commit a crime.  Here, the defendant is charged with conspiracy to commit the crime of forced labor.  I previously instructed you on the elements of this underlying crime under Racketeering Act 10B.  You should apply those instructions here.

I remind you that the crime of conspiracy—an agreement—to violate a law, as charged in this count of the indictment, is an independent offense.  It is separate and distinct from the actual violation of any specific law, such as the law prohibiting the crime of forced

labor.  Accordingly, you may find the defendant guilty of the offense charged in Count Three

even if you find that the crime of forced labor was never actually committed.

<div align="center">REQUEST NO. 8</div>

<div align="center">COUNT FOUR: WIRE FRAUD CONSPIRACY</div>

Count Four charges the defendant with participating in a conspiracy to commit

wire fraud between September 2015 and June 2017.

> In or about and between September 2015 and June 2017, both
> dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendant KEITH
> RANIERE, also known as "Vanguard," "Grandmaster" and
> "Master," together with others, did knowingly and intentionally
> conspire to devise a scheme and artifice to defraud one or more
> persons, to wit: lower-ranking DOS members, and to obtain
> money and property, including rights to assets, credit card
> authorizations and sexually explicit photographs and videos,
> from them by means of materially false and fraudulent
> pretenses, representations and promises, and for the purpose of
> executing such scheme and artifice, to transmit and cause to be
> transmitted by means of wire communication in interstate and
> foreign commerce writings, signs, signals, pictures and sounds,
> to wit: electronic messages, telephone text messages and
> Telegram messages, contrary to Title 18, United States Code,
> Section 1343.

I have already instructed you on the general definition of conspiracy, which, as

I said, is an agreement among two or more people to commit a crime.  I remind you that the

crime of conspiracy to violate a federal law is a separate offense from the underlying crime.

Conspiracy to commit wire fraud is separate and distinct from an actual violation of wire

fraud, which is the object of the conspiracy and what we call the "substantive crime."  In

order to find the defendant guilty of conspiracy to commit wire fraud, you must find that two

<div align="center">89</div>

or more persons agreed to commit the crime of wire fraud, and that the defendant knowingly and intentionally became a member of the conspiracy.

I will now instruct you on the elements of the crime of wire fraud.  The wire fraud statute provides, in relevant part:

> **Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be [guilty of a crime].**

The crime of wire fraud has three essential elements that the government must prove beyond a reasonable doubt:

First, that there was a scheme or artifice to defraud or to obtain money or property from lower-ranking DOS members by materially false and fraudulent pretenses, representations, or promises;

Second, that the defendant or a co-conspirator knowingly and willfully devised or participated in the scheme or artifice to defraud, with knowledge of its fraudulent nature and with specific intent to defraud; and

Third, that in the execution of that scheme the defendant or a co-conspirator used or caused the use of interstate or foreign wire communications.

The first element the government must prove beyond a reasonable doubt is the existence of a scheme or artifice to obtain money or property by means of false or fraudulent pretenses representations or promises.  A "scheme or artifice" is merely a plan for the

accomplishment of an object.  In this case, the term "defraud" means to deprive another of money, property, or any other thing of value by dishonest means.  Therefore a "scheme to defraud" here is simply any plan, device or course of action to obtain money or property from someone by trick, deceit, deception or swindle.

In this case, the scheme to defraud is alleged to have been carried out by making false and fraudulent statements, representations and claims.  A statement, representation or claim is false if it is untrue when made and was then known to be untrue by the person making it or causing it to be made.  A representation or statement is fraudulent if it was falsely made with the intention to deceive.  Deceitful statements or half-truths or the concealment of material facts may also constitute false or fraudulent statements under the statute.

The deception need not be premised upon spoken or written words alone.  The arrangement of the words or the circumstances in which they are used may convey the false and deceptive appearance.  If there is a deception, the manner in which it is accomplished is immaterial.

The false or fraudulent pretense, representation, promise or statement must relate to a material fact or matter.  A material fact is one that reasonably would be expected to be of concern to a reasonable and prudent person in relying upon the pretense, representation, promise or statement in making a decision.  This means if you find a particular statement of fact or representation to have been false, you must also determine whether that statement or representation was one that a reasonable person would have

considered important in making his or her decision.  The same principle applies to fraudulent

half-truths or omissions of material facts necessary to make the statements that were made

not materially misleading.  The government does not need to prove that anyone actually

relied on the false statement or representation.  Rather, it is sufficient if the misrepresentation

is one that is capable of influencing a reasonable person's decision and is intended to do so.

In addition to proving that a pretense, representation, promise or statement was

false or fraudulent and related to a material fact, in order to establish a scheme to defraud, the

government must prove that the alleged scheme contemplated depriving another of money or

property.  The government is not required, however, to prove that the scheme or artifice to

defraud actually succeeded—that is, the government is not required to prove that the

defendant or a co-conspirator realized any gain from the scheme, or that the intended victim

suffered any loss or harm.  The question for you to decide is whether the government has

proven that the defendant knowingly devised, or participated in, a scheme to defraud.

Whether or not the scheme actually succeeded is not a question you may consider in

determining whether such a scheme existed.

A scheme or artifice to defraud need not be shown by direct evidence, but may

be established by all the circumstances and facts in the case.

The second element of the wire fraud count that the government must establish

beyond a reasonable doubt is that the defendant devised or participated in the fraudulent

scheme knowingly, willfully, and with the specific intent to defraud.  To "devise" a scheme

to defraud is to concoct or plan it.  To "participate" in a scheme to defraud means to

associate oneself with it with a view and intent toward making it succeed.  I have previously

defined the terms "knowingly"  and "willfully," and you should follow those instructions

here as well.  "Intent to defraud" means engaging or participating in the fraudulent scheme

with some realization of its fraudulent or deceptive character and with an intention to be

involved in the scheme to defraud and to help it succeed with a purpose of obtaining money

or property from the victim.  Of course, the government does not need to prove that the

intended victim was actually harmed; only that the defendant intended to harm the victim by

obtaining money or property.

The question of whether a person acted knowingly, willfully, and with intent

to defraud is a question of fact for you to determine, like any other fact question.  This

question involves one's state of mind.  As I have previously mentioned, direct proof of

knowledge and fraudulent intent is often not available.  Indeed, it would be a rare case where

it could be shown that a person wrote or stated that as of a given time in the past he

committed an act with fraudulent intent.  Such direct proof, however, is not required.

Now, the third and final element that the government must establish as to the

wire fraud count is that interstate wire facilities were used in furtherance of the scheme to

defraud.  The "interstate" or "foreign" requirement means that the wire communication must

pass between two or more states as, for example, a telephone call, a wire transfer of funds

between banks in different states, or an email or electronic message that was transmitted over

interstate wires.

It is not necessary for the defendant to be directly or personally involved in any wire communication, as long as the communication is reasonably foreseeable in the execution of the alleged scheme to defraud in which the defendant is accused of participating. In this regard, it would be sufficient to establish this element of the crime if the government has proven that the defendant caused the wires to be used by others; and this does not mean that the defendant himself must have specifically authorized or directed others to execute a wire communication. When a person acts with knowledge that the use of wire facilities will follow in the ordinary course of business, or where the use of wire facilities can reasonably be foreseen, even though not actually intended, then he causes the wires to be used. Furthermore, the requirement that an interstate or foreign wire facility was used, is satisfied even if a wire facility was used by a person with no knowledge of the fraudulent scheme, including a victim of the alleged fraud, so long as the wire was in furtherance of the alleged scheme.

The use of a wire facility need not itself be fraudulent. Stated another way, the material sent by wire need not contain any fraudulent representation, or even any request for money. It is sufficient if a wire facility was used to further or assist in carrying out the scheme to defraud.

Only the use of a wire facility must be reasonably foreseeable, not its interstate or foreign component. Thus, if you find that the use of a wire facility was reasonably foreseeable, and an interstate or foreign wire facility was actually used, then this element is

94

satisfied even if it was not foreseeable that the wire communication would cross state or national boundaries.

I remind you that the crime of conspiracy—an agreement—to violate a law, as charged in this count of the indictment, is an independent offense.  It is separate and distinct from the actual violation of any specific law, such as the law prohibiting the crime of wire fraud  Accordingly, you may find the defendant guilty of the offense charged in Count Four even if you find that the crime of wire fraud was never actually committed.

<u>Authority</u>

Sand, Instructions 44.01.

REQUEST NO. 9

COUNT FIVE: SEX TRAFFICKING CONSPIRACY

Count Five of the indictment charges the defendant with conspiracy to engage in sex trafficking of lower-ranking DOS members.  The indictment reads as follows:

> In or about and between February 2016 and June 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant KEITH RANIERE, also known as "Vanguard," "Grandmaster" and "Master," together with others, did knowingly and intentionally conspire to recruit, entice, harbor, transport, provide, obtain, maintain, patronize and solicit one or more persons, to wit: one or more lower-ranking DOS members, in and affecting interstate and foreign commerce, and to benefit, financially and by receiving anything of value, from participation in a venture that engaged in such acts, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, and a combination of such means, would be used to cause such persons to engage in one or more commercial sex acts, which offense was effected by force, fraud, coercion and a combination of such means, contrary to Title 18, United States Code, Sections 1591(a)(1) and 1591(a)(2).

I have already instructed you on the general definition of conspiracy, which, as I said, is an agreement among two or more people to commit a crime.  Here, the defendant is charged with conspiracy to commit the crime of sex trafficking, which I will refer to as the underlying crime.  I previously instructed you on the elements of the crime of sex trafficking under Racketeering Act 10A.  You should apply those instructions here.

If you find that the government proved, beyond a reasonable doubt, that the defendant knowingly and intentionally agreed with others to commit sex trafficking of one or more lower-ranking DOS members, then you should find the defendant guilty of Count Five.

96

As I already instructed you, a conspiracy is a crime even if it does not achieve its purpose. The government does not have to prove that the defendant or his co-conspirators actually committed the crime of sex trafficking.  What the government must prove is that the defendant voluntarily entered into a conspiracy whose purpose was to commit sex trafficking.

<div align="center">REQUEST NO. 10</div>

<div align="center">COUNT SIX: SEX TRAFFICKING</div>

Count Six charges the defendant with committing sex trafficking as to Nicole between February 2016 and June 2017.  The indictment reads as follows:

> In or about and between February 2016 and June 2017, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant, together with others, did knowingly and intentionally recruit, entice, harbor, transport, provide, obtain, maintain, patronize and solicit a person, to wit: Nicole, in and affecting interstate and foreign commerce, and did benefit, financially and by receiving anything of value, from participation in a venture that engaged in such acts, knowing and in reckless disregard of the fact that means of force, threats of force, fraud and coercion, and a combination of such means, would be used to cause Nicole to engage in one or more commercial sex acts, which offense was effected by force, fraud, coercion and a combination of such means.

I instructed you regarding the elements of this crime under Racketeering Act 10A.  You should refer to those instructions when considering this count.

<div align="center">97</div>

REQUEST NO. 11

COUNT SEVEN: ATTEMPTED SEX TRAFFICKING OF J

Count Seven charges the defendant with attempted sex trafficking of J,

between February 2016 and June 2017.  The indictment reads as follows:

> In or about and between February 2016 and June 2017, both
> dates being approximate and inclusive, within the Eastern
> District of New York and elsewhere, the defendant KEITH
> RANIERE, also known as "Vanguard," "Grandmaster" and
> "Master," together with others, did knowingly and intentionally
> attempt to recruit, entice, harbor, transport, provide, obtain,
> maintain, patronize and solicit one or more persons, to wit: "J,"
> in and affecting interstate and foreign commerce, and to benefit,
> financially and by receiving anything of value, from
> participation in a venture that engaged in such acts, knowing
> and in reckless disregard of the fact that means of force, threats
> of force, fraud and coercion, and a combination of such means,
> would be used to cause such person to engage in one or more
> commercial sex acts, which offense was effected by force,
> fraud, coercion and a combination of such means, in violation of
> Title 18, United States Code, Sections 1591(a)(1) and
> 1591(a)(2).

To prove Count Seven, the government does not have prove that the defendant

actually committed sex trafficking with respect to J.  I have already instructed you regarding

the elements of the underlying crime of sex trafficking under Racketeering Act 10A, and you

should apply those instructions here.  Just remember that, with respect to Count Seven, you

are being asked to determine not whether the underlying crime was committed but only

whether the defendant attempted to commit that crime.

To prove that the defendant attempted to commit sex trafficking as to J, the

government must establish the following two elements beyond a reasonable doubt:

98

First, the defendant intended to commit the crime of sex trafficking of J; and

Second, the defendant did some act that was a substantial step in an effort to bring about or accomplish the crime.

The first element the government must prove beyond a reasonable doubt is that the defendant intended to commit the crime of sex trafficking. You should apply my previous instruction as to "intent" to this element.

The second element the government must prove is that the defendant took a "substantial step" toward his goal of committing the crime of sex trafficking of J. Mere intention to commit a specific crime does not amount to an attempt. To convict the defendant of an attempt, you must find beyond a reasonable doubt that the defendant intended to commit the crime charged, and that he took some action that was a substantial step toward the commission of that crime.

In determining whether the defendant's actions amounted to a substantial step toward the commission of the crime, it is necessary to distinguish between mere preparation on the one hand, and the actual doing of the criminal deed on the other. Mere preparation, which may consist of planning the offense, or of devising, obtaining or arranging a means for its commission, is not an attempt, although some preparations may amount to an attempt. The acts of a person who intends to commit a crime will constitute an attempt when the acts themselves clearly indicate an intent to commit the crime, and the acts are a substantial step in a course of conduct planned to culminate in the commission of the crime.

99

## REQUEST NO. 21

## ALL AVAILABLE EVIDENCE NEED NOT BE PRODUCED

The law does not require any party to call as witnesses all persons who may have been present at any time or place involved in the case, or who may appear to have some knowledge of the matter in issue at this trial.  Nor does the law require any party to produce as exhibits all papers and things mentioned during the course of the trial.

### Authority

E. Devitt & C. Blackmar, Federal Jury Practice and Instructions, § 72.11 (3d ed. 1977).

REQUEST NO. 31

PUBLICITY

Your verdict must be based solely on the evidence presented in this courtroom

in accordance with my instructions.  You must completely disregard any reports that you

have read in the press, seen on television, heard on the radio, or observed on internet media.

Authority:

Adapted from the charges in United States v. Price, 17-CR-301
(NGG) (E.D.N.Y.).

101

REQUEST NO. 22

PARTICULAR INVESTIGATIVE TECHNIQUES NOT REQUIRED

I instruct you that there is no legal requirement that the government use any specific investigative techniques to prove its case.  Law enforcement techniques are not your concern.  Your concern is to determine whether or not, based upon all of the evidence in this case, the government has proven that the defendant is guilty beyond a reasonable doubt as to each count charged against him.

Authority

Adapted from the charge in United States v. Herron, 10-CR-615 (NGG) (E.D.N.Y.); Sand, Instruction 4-4.

102

REQUEST NO. 23

INTERVIEWS OF WITNESSES

There was testimony at trial that the attorneys for the government interviewed witnesses when preparing for and during the course of the trial.  You should not draw any unfavorable inference from that testimony.  To the contrary, the attorneys for both sides were obliged to prepare this case as thoroughly as possible and might have been derelict in the performance of their duties if they failed to interview witnesses before this trial began and as necessary throughout the course of the trial.

Authority

Adapted from the charges in United States v. Herron, 10-CR-615 (NGG) (E.D.N.Y.).

## REQUEST NO. 24

## UNCALLED WITNESS EQUALLY AVAILABLE TO BOTH SIDES

Both the government and the defense have the same power to subpoena witnesses to testify on their behalf.  If a potential witness could have been called by the government or by the defendant and no one called the witness, then you may draw the conclusion that the testimony of the absent witness might have been unfavorable to the government or to the defendant or to both.

On the other hand, it is equally within your province to draw no inference at all from the failure of either side to call a witness.

You should remember that there is no duty on either side to call a witness whose testimony would be merely cumulative of testimony already in evidence, or who would merely provide additional testimony to facts already in evidence.

### Authority

Sand, Instruction 6-7; see generally United States v. Erb, 543 F.2d 438, 444-45 (2d Cir. 1976) (discussing propriety of missing witness charges).

104

REQUEST NO. 26

ACCOMPLICE TESTIMONY

You have heard the testimony of witnesses who testified that they were involved in planning and carrying out certain crimes with the defendant and others.  There has been a great deal said about these so-called "cooperating witness" in the summations of counsel and about whether or not you should believe them.

The government argues, as it is permitted to do, that it must take the witnesses as it finds them.  It argues that only people who themselves take part in criminal activity have the knowledge required to show criminal behavior by others.  For those very reasons, the law allows the use of accomplice and co-conspirator testimony.  Indeed, it is the law in federal courts that the testimony of one accomplice or co-conspirator may be enough in itself for conviction, if the jury finds that the testimony establishes guilt beyond a reasonable doubt.

However, it is also the case that cooperator testimony is of such a nature that it must be scrutinized with great care and viewed with particular caution when you decide how much of that testimony to believe.  I have given you some general considerations on credibility and I will not repeat them all here.  Nor will I repeat all of the arguments made on both sides.  However, let me say a few things that you may want to consider during your deliberations on the subject of accomplice and co-conspirator witnesses.

You should ask yourselves whether such witnesses would benefit more by lying or by telling the truth.  Was their testimony made up in any way because they believed or hoped that they would somehow receive favorable treatment by testifying falsely?  Or did

105

they believe that their interests would be best served by testifying truthfully?  If you believe that the witness was motivated by hopes of personal gain, was the motivation one that would cause him to lie, or was it one that would cause her to tell the truth?  Did this motivation color her testimony?

You have also heard testimony that witnesses in this case have been promised that if they provide substantial assistance to the government and testify truthfully, completely and fully, the government will present to the sentencing court what is called a 5K1.1 letter. The 5K1.1 letter sets forth the cooperating witness's criminal acts as well as the substantial assistance the witness has provided.  I instruct you that the 5K1.1 letter does not guarantee the cooperating witness a lower sentence.  This is because the sentencing court may, but is not required to, take the 5K1.1 letter into account when imposing sentence on the cooperating witness.  The Court has discretion, whether or not a 5K1.1 letter is written, to impose any reasonable sentence the Court deems appropriate up to the statutory maximum. The final determination as to the sentence to be imposed rests with the Court, not with the government.

In sum, you should look at all of the evidence in deciding what credence and what weight, if any, you will want to give to the cooperating witnesses.

<u>Authority</u>

Adapted from the charges in <u>United States v. Herron</u>, 10-CR-615 (NGG) (E.D.N.Y.).

REQUEST NO. 27

PUNISHMENT OF ACCOMPLICE WITNESSES

The question of punishment of the cooperating witnesses is a duty that rests exclusively upon the sentencing court.  You have heard testimony in this case about who has or will decide the sentence of the cooperating witness and whether or not the sentencing court has the authority to show leniency if the prosecutor does not recommend it.  I instruct you that the decision about punishment for the cooperating witnesses rests at all times with the sentencing court.  In particular, if the government refuses to recommend leniency for a witness and the sentencing court finds that there is no good faith basis for that refusal, the sentencing court may nevertheless show leniency to the witness.  On the other hand, if the government recommends leniency, but the sentencing court does not believe that to be appropriate, the sentencing court may impose as severe a sentence as it believes to be appropriate and as is otherwise consistent with the law.

Authority

Adapted from the charge in United States v. Boyle, 03-CR-970 (SJ) (E.D.N.Y.); see, e.g., Wade v. United States, 504 U.S. 181 (1992); United States v. Khan, 920 F.2d 1100 (2d Cir. 1990); United States v. Rexach, 896 F.2d 710 (2d Cir. 1990).

107

## REQUEST NO. 30

## EVIDENCE OF OTHER CRIMES

You have heard evidence that the defendant engaged in conduct, including crimes, other than the crimes charged in the indictment.  The defendant is not on trial for committing any acts not charged in the indictment.  Consequently, you may not consider evidence of those other acts as a substitute for proof that the defendant committed the crimes charged.  Nor may you consider evidence of these other acts as proof that the defendant has a criminal propensity, that is, that they likely committed the crimes charged in the indictment because they were predisposed to criminal conduct.

As I have charged you during the trial, the evidence of uncharged conduct by the defendant is admitted for limited purposes, and you may consider it only for these limited purposes.  The purposes for which such evidence is admitted are as follows:

1.      As evidence of the existence of the charged enterprise and as evidence that the enterprise engaged in racketeering activity.

2.      As evidence of the defendant's position or role within the enterprise.

3.      As evidence of the development of relationships of trust between the defendant and others with whom they are charged with carrying out the charged crimes.

4.      As evidence enabling you to understand the complete story of the charged crimes.

5.      As evidence of conduct that is inextricably tied with the charged crimes.

108

6.      As evidence corroborating the testimony of other government

witnesses.

Evidence of uncharged conduct by the defendant may not be considered by

you for any purpose other than the ones I have just listed.

<u>Authority</u>

Adapted from the charge in <u>United States v. Basciano</u>, 05-CR-
060 (NGG) (E.D.N.Y.).

109

REQUEST NO. 33

DISCREPANCIES IN TESTIMONY

You have heard evidence of discrepancies in the testimony of certain witnesses, and counsel have argued that such discrepancies are a reason for you to reject the testimony of those witnesses.

Evidence of discrepancies may be a basis to disbelieve a witness's testimony. On the other hand, discrepancies in a witness's testimony or between his or her testimony and that of others do not necessarily mean that the witness's entire testimony should be discredited.

People sometimes forget things and even a truthful witness may be nervous and contradict him- or herself.  It is also a fact that two people witnessing an event may see or hear it differently.  Whether a discrepancy pertains to a fact of importance or only to a trivial detail should be considered in weighing its significance.  A willful falsehood always is a matter of importance and should be considered seriously.

It is for you to decide, based on your total impression of a witness, how to weigh the discrepancies in his or her testimony.  You should, as always, use common sense and your own good judgment.

Authority

Adapted from the charge in United States v. Herron, 10-CR-615 (NGG) (E.D.N.Y.).

111

## REQUEST NO. 25

## OTHER PERSONS NOT ON TRIAL

You have heard evidence about the involvement of certain other people in the crimes charged in the indictment.  You may not draw any inference, favorable or unfavorable, towards the government or the defendant from the fact that certain persons are not on trial before you.  That these individuals are not on trial before you is not your concern.  You should neither speculate as to the reason these people are not on trial before you nor allow their absence as parties to influence in any way your deliberations in this case.  Nor should you draw any inference from the fact that any other person is not present at this trial.  Your concern is solely the defendant on trial before you.

### Authority

Sand, Instruction 3-4.

REQUEST NO. 36

TRANSCRIPTS

During the course of the trial you were given transcripts to assist you in

listening to and watching those audio and video recordings.  However, the transcripts are not

in and of themselves evidence.   If the transcripts appeared to you to vary from the recordings

in any respect, it is what you heard and saw that is controlling.  You are jury are the sole

judge of the facts.

Authority

Adapted from the charges in United States v. Ben-Shimon, 249
F.3d 98 (2d Cir. 2001); United States v. Bahadar, 954 F.2d 821
(2d Cir. 1992); United States v. Bonnano, 487 F.2d 654 (2d Cir.
1973); Sand, Instruction 5-9.

114

<u>CONCLUSION</u>

The government respectfully requests that the Court include the foregoing instructions in its instructions to the jury.  In addition, the government requests the opportunity to submit further instructions or amend those submitted as appropriate.

Dated:      Brooklyn, New York
            June 7, 2019

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        United States Attorney
                                        Eastern District of New York
                                        271 Cadman Plaza East
                                        Brooklyn, New York 11201

Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant U.S. Attorneys
   (Of Counsel)

115