

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| KDE:MKP/TH/MJL/KMT | *271 Cadman Plaza East* |
| F. #2017R01840 | *Brooklyn, New York 11201* |

June 28, 2019

<u>By ECF and E-Mail</u>

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: <u>United States v. Keith Raniere</u>
     <u>Criminal Docket No. 18-204 (S-2) (NGG)</u>

Dear Judge Garaufis:

  The government respectfully writes, pursuant to the Court's order, to provide its position regarding release of the jurors' names to the media. For the following reasons, the government opposes such release. The defendant takes no position. (Dkt. No. 743.)

  I. <u>Background</u>

  Prior to trial, the parties made a joint motion to conceal the names of jurors from the public during trial, which the Court granted at a pre-trial conference. (4/4/19 Tr. at 4-7.) The Court also directed that the jurors be semi-sequestered and indicated that the jurors' names would not be released after trial. (<u>Id</u>.) The Court noted that jurors should return to their normal lives without facing potentially unwanted interference by members of the press and that they could choose to speak to the press if they so desired. (<u>Id</u>.) Following that conference, the Court issued an order that the jury would be completely anonymous, <u>i.e.</u> that the names of the jurors would be withheld from the parties as well. (4/5/19 2:21 p.m. Docket Entry.)

  The defendant objected to complete anonymity. (Dkt. No. 503.) In response to the defendant's objection, the Court revised its order and held that there was no "substantial potential threat of corruption to the judicial process" warranting complete anonymity. (4/5/19 6:47 p.m. Docket Entry.) The Court therefore ordered that "the names of prospective and empaneled jurors [would] be withheld from the public until after the trial, but [would] be made available to the parties, their attorneys, and their attorneys' staffs and

consultants only, and [should] not be divulged to any third party until further order of the court." (Id.) There was no objection by the defendant or the press to this order.

On June 21, 2019, two days after the defendant's conviction, a group of press organizations filed a letter asking the Court to release the names of the jurors who served on the trial. (Dkt. No. 741.) In the letter, the press organizations rely primarily on United States v. Shkreli, 264 F. Supp. 3d 417 (E.D.N.Y. 2017), in which Judge Matsutomo granted a similar request on the ground that "the privacy interest of the jury in this case cannot prevail over the presumption of openness that attaches to all judicial proceedings." Id. at 421.

II.  Legal Standard

Although there is a "presumption of openness" for judicial proceedings, the "constitutional right of access is not absolute and must, in certain circumstances, give way to other rights or interests, such as . . . the privacy interests of . . . jurors." Press Enterprise Co. v. Superior Court, 464 U.S. 501, 510 (1984). The presumption of openness may be "overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Id. Neither the Second Circuit nor the Supreme Court has addressed whether a court must release juror names post-verdict when the names were not disclosed to the public during trial. See Shkreli, 264 F. Supp. 3d at 418.

In Shkreli, the court acknowledged that the majority of jurors contacted did not want their identities released to the press but held that "the privacy interests and preferences of the jury alone are generally insufficient to preclude disclosure of their names." Shkreli, 264 F. Supp. 3d at 419 (emphasis added). The court also concluded that "there [was] no evidence that the security of any juror would be placed at risk" by release of the names and that "the identities of the jury members may still be important to inform the public about the jury selection process, the conduct of the trial, or the criminal justice system in general." Id. In light of these findings, the court concluded that it did not have "a continuing basis to make particularized findings concerning . . . the risks to juror privacy that would warrant" withholding the jurors' names post-verdict. Id.

III.  Analysis

The government respectfully submits that the privacy and security interests of jurors' in this case is sufficient to overcome the presumption of openness that would require release of the jurors' names to the public. As an initial matter, this case is very different than Shkreli. Although in Shkreli the defendant's personal behavior generated press interest, the case itself concerned securities fraud, and the facts adduced at trial concerned financial information and misrepresentations about that information. Here, by contrast, the jurors respectfully considered highly sensitive evidence from sex-trafficking victims, witnesses and coconspirators, including child pornography, naked photographs, and graphic sexual testimony. Being publicly identified with this case is very different than being publicly associated with Shkreli.

2

As the Court is aware, this trial generated worldwide media coverage in publications ranging from major newspapers to tabloids to Internet blogs. While there were many thoughtful articles, there were also many that were salacious, contained errors or mischaracterizations, or focused on unrelated personal matters such as the physical appearances of the lawyers. Additionally, several Mexican media outlets published the last names of victims withheld by the Court to protect their privacy given the sensitive nature of their testimony. In light of this coverage, there is little doubt that, if the jurors' names are made public, their names, and possibly their photographs and other personal information, will be made public on media outlets that have, in some cases, reported on the matter in a way that appears intended to embarrass and harass.

Moreover, here, unlike in Shkreli, there is also a concern about jurors' security. First, the evidence at trial made clear the lengths to which Raniere's adherents will go to further the goals of the enterprise. As proven at trial, the enterprise operated in part by harassing those perceived to be critics or enemies of the defendant, including through the use of private investigators to obtain sensitive personal information. Indeed, as the Court is aware, the collateral of a potential witness who had publicly defected from Nxivm was released during trial and published by the Mexican media. Moreover, the defendant here was convicted of racketeering and racketeering conspiracy, including obstruction of an official proceeding as a predicate offense, among other crimes. The evidence at trial also made clear that enterprise continues to exist notwithstanding the defendant's incarceration, and there is therefore a significant risk that members of the enterprise could seek to harass or retaliate against jurors if their identities are made public.[1]

As to concerns about confidence in the jury system, there were significant measures taken during voir dire and at trial to ensure such confidence. First, the jurors were not anonymous to the parties. In addition, unlike in Shkreli, all prospective jurors filled out a forty-page questionnaire that was largely agreed to by all parties and a near-final version of the questionnaire was filed publicly. Voir dire was conducted in open court with a press representative at sidebar. And the diversity of the jurors was evident to anyone who attended trial. Finally, as the Court noted, jurors are free to contact the press if they wish to be interviewed. Indeed, there was more openness here than in many high-profile trials and the

---

[1] United States v. Guzman Loera ("El Chapo"), 09-CR-466 (BMC), 2018 WL 5624143 (E.D.N.Y. Oct. 30, 2018) is also instructive. In Guzman, the court had already held that the jury would be anonymous and sequestered, and the press moved for voir dire to be conducted in open court with a single pool reporter at sidebar. See id. at *1. In tailoring the voir dire procedures, the Guzman court considered that "the amount of public attention" had been "extraordinary" and that "there are not many cases whose allegations are dramatized in popular television productions and podcasts before the trial had even begun." Id. at *2. Notably, the same (including the television shows and podcasts) is true here. In Guzman, the court also stated that the press's analogies to the other cases including Shkreli went "too far," stating "this is not a case about a high-profile businessperson accused of financial fraud"—also true here. Id. at *3.

chilling effect on jurors' willingness to serve on high profile trials given the risks of improper media attention and the security risks here, is far more likely to undermine confidence in the jury process than withholding the names.

### IV. Conclusion

For the foregoing reasons, the government respectfully submits that, to the extent that the "presumption of openness" extends to the public release of jurors' names following trial, that presumption is overcome in this case. The government respectfully requests that the Court make particularized findings based on the facts set forth above and deny the media's request for disclosure.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:   /s/
Moira Kim Penza
Tanya Hajjar
Mark J. Lesko
Kevin Trowel
Assistant U.S. Attorneys
(718) 254-7000

cc:   Clerk of Court (NGG) (by ECF)
      Counsel of Record (by ECF)