UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

UNITED STATES OF AMERICA,

-against-

KEITH RANIERE,

Defendant.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**18-CR-204 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Several press organizations[1] (the "Press Organizations") have requested that the court order the public release of the names of the twelve jurors who rendered a verdict in Defendant Keith Raniere's trial. (Req.) Prior to the trial, the court ordered that:

> [T]he names of prospective and empaneled jurors would be withheld from the public until after the trial, but would be made available to the parties, their attorneys, and their attorneys' staffs and consultants only, and should not be divulged to any third party until further order of the court.

(Apr. 5, 2019 Order.) Now that the trial has concluded, the Press Organizations submit that the empaneled jurors' names should be released "in accordance with the strong First Amendment presumption of access that attaches to such information." (Req. at 1.) The Government opposes such release, arguing that the jurors' privacy and security interests are sufficient to overcome the First Amendment presumption. (Gov't Resp. in Opp'n to Release of Juror Names ("Opp'n") (Dkt. 744) at 2.) Raniere takes no position on this issue. (Raniere Resp. to Press Organizations' Req. ("Raniere Resp.") (Dkt. 743).)

---

[1] These press organizations include Daily News, L.P.; the New York Times Company; NYP Holdings, Inc.; and Newsday LLC. (Press Organizations Req. for Release of Juror Names ("Req.") (Dkt. 741).)

1

**I.     LEGAL STANDARD**

While there is a "presumption of openness" for judicial proceedings, the "constitutional right of access [] is not absolute and must, in certain circumstances, 'give way to other rights or interests,' such as . . . the privacy interests of [] jurors." ABC, Inc. v. Stewart, 360 F.3d 90, 98 (2d Cir. 2004) (quoting Waller v. Georgia, 467 U.S. 39, 45 (1984), then citing Press-Enter. Co. v. Superior Court of California, Riverside Cty., 464 U.S. 501, 510 (1984)). The presumption of openness may be "overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press-Enter. Co., 464 U.S. at 510. Neither the Supreme Court nor the Second Circuit has addressed whether, or in what situations, a court must release juror names post-verdict when the names were not disclosed to the public during trial. See United States v. Shkreli, 264 F. Supp. 3d 417, 418 (E.D.N.Y. 2017).

**II.    DISCUSSION**

The court agrees with the Government. This case is distinguishable from the cases cited by the Press Organizations in which courts have released jurors' names, such as Shkreli, 264 F. Supp. 3d at 418, for two reasons. First, jurors' privacy interests are heightened here, where the trial involved highly sensitive evidence (including child pornography, nude photographs, and graphic sexual testimony) and generated worldwide media coverage, some of which was salacious, contained errors or mischaracterizations, or appeared intended to embarrass or harass. (See Opp'n at 3.) Cf. United States v. Loera, 09-CR-466 (BMC), 2018 WL 5624143, at *2 (E.D.N.Y. Oct. 30, 2018) (considering, in tailoring voir dire procedures, that "the amount of public attention" had been "extraordinary" and that "there are not many cases whose allegations are dramatized in popular television productions and podcasts before the trial [had] even

begun"). For example, the Government indicates that several Mexican media outlets published the last names of victims that were specifically withheld by the court to protect their privacy. (Opp'n at 3.) Being a juror publicly identified with this case is a far greater burden than being publicly identified with a typical criminal trial. Unsurprisingly, several jurors privately asked the court not to release their names even after the trial concluded.

Second, the court is concerned for the jurors' security. As the Government notes (Opp'n at 3), evidence at trial suggested that Raniere's associates would go to great lengths to antagonize his perceived enemies, including through the use of private investigators to obtain sensitive personal information. Additionally, the Government has informed the court that a Nxivm defector's collateral was released during trial and published by the Mexican media, suggesting that Raniere's alleged criminal enterprise may continue to exist notwithstanding his incarceration. (Id.) Such concerns were not present in Shkreli.

Accordingly, the court finds that, taken together, the jurors' privacy and security are "overriding interest[s]" that overcome the presumption of openness that attaches to judicial proceedings. See Press-Enter. Co., 464 U.S. at 510. Further, withholding the jurors' names from the public is "narrowly tailored to serve that interest." See id. As the Government notes (Opp'n at 3-4), the court undertook various measures to ensure "fairness, the appearance of fairness and public confidence in [the jury system]." See In re Globe Newspaper Co., 920 F.2d 88, 94 (1st Cir. 1990) (explaining that the reason for disclosing jurors' names is to "allow[] the public to verify the impartiality of key participants in the administration of justice, and thereby ensure[] fairness, the appearance of fairness and public confidence in that system"); see also In re Baltimore Sun Co., 841 F.2d 74, 76 (4th Cir. 1988) (stating that an anonymous jury creates a "risk of loss of confidence of the public in the judicial process"). The jurors' identities were

3

disclosed to the parties before voir dire, allowing the parties to do ample research to ensure nothing about the jurors' backgrounds called into question their ability to be impartial. All 500 prospective jurors filled out a forty-page questionnaire that was largely agreed to by all parties and a near-final version of the questionnaire was filed publicly. Voir dire was conducted in open court with a press representative at sidebar. The court disqualified various jurors to which the parties objected. The racial, gender, and age diversity of the jurors was evident to anyone present in court. Indeed, Raniere has not raised fairness concerns about the jury selection process or asked the court to publicly release their names. (See Raniere Resp.) In light of these measures, the court finds that the value of any increased public confidence that might come from releasing the jurors' names is outweighed by the jurors' significant privacy and security interests in maintaining anonymity. Accordingly, the court DENIES the Press Organizations' (Dkt. 741) request that the court release the names of the twelve empaneled jurors in this case.

    SO ORDERED.

/s Nicholas G. Garaufis

Dated: Brooklyn, New York
       July __2__, 2019

NICHOLAS G. GARAUFIS
United States District Judge