5729

```
1    UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
2    ------------------------------x
                                          18-CR-204(NGG)
3    UNITED STATES OF AMERICA,
                                          United States Courthouse
4                                         Brooklyn, New York

5         -against-                       June 19, 2019
                                          9:00 a.m.
6    KEITH RANIERE,

7              Defendant.

8    ------------------------------x
               TRANSCRIPT OF CRIMINAL CAUSE FOR TRIAL
9         BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
             UNITED STATES SENIOR DISTRICT JUDGE
10                      BEFORE A JURY

11   APPEARANCES
     For the Government:        UNITED STATES ATTORNEY'S OFFICE
12                             Eastern District of New York
                               271 Cadman Plaza East
13                             Brooklyn, New York 11201
                               BY:  MOIRA KIM PENZA, ESQ.
14                                   TANYA HAJJAR, ESQ.
                                     MARK LESKO, ESQ.
15                             Assistant United States Attorneys

16   For the Defendant:        BRAFMAN & ASSOCIATES
                               767 Third Avenue
17                             New York, New York 10017
                               BY:  MARC AGNIFILO, ESQ.
18                                   TENY ROSE GERAGOS, ESQ.

19                             DEROHANNESIAN & DEROHANNESIAN
                               677 Broadway
20                             Albany, New York 12207
                               BY:  PAUL DerOHANNESIAN, II, ESQ.
21                                   DANIELLE R. SMITH, ESQ.

22
     Court Reporter:           Rivka Teich, CSR, RPR, RMR, FCRR
23                             Phone:  718-613-2268
                               Email:  RivkaTeich@gmail.com
24
     Proceedings recorded by mechanical stenography.  Transcript
25   produced by computer-aided transcription.
```

PROCEEDINGS

1           (In open court.)

2           MS. PENZA:  Moira Penza, Tanya Hajjar and Mark Lesko

3   for the United States.  Also at counsel table are Special

4   Agents Michael Lever and Michael Wenniger and Paralegal Teri

5   Carby.

6           MR. AGNIFILO:  Mark Agnifilo, Temy Geragos, Paul

7   DerOhannesian, Danielle Smith for Keith Raniere, who is here

8   with us this morning.

9           THE COURT:  Everyone may be seated.

10          You're working on putting together the evidence to

11  send back into the jury room?

12          MS. PENZA:  Yes, I think we're almost there.  We're

13  looking for one e-mail that we know attaches nude photos.  We

14  would also ask that Government's Exhibit, I believe 550, the

15  glossy photo of Camila of age with the scar be sent back with

16  the redaction tape.

17          THE COURT:  Any objection?

18          MR. AGNIFILO:  No objection.

19          MS. PENZA:  But all the other -- we have done our

20  best to try and remove all the naked photos.

21          THE COURT:  When everything is squared away and

22  ready to go I'll come back down and just have you all agree.

23          MS. PENZA:  Yes.  And so we can put the rest of the

24  things on the record when we do that, I think only a couple of

25  little things that we want to make sure on the record, or you

5731

PROCEEDINGS

1    want me to do it now?

2              THE COURT:  Might as well.

3              MS. PENZA:  So your Honor, as you may recall there

4    had been an objection over the admission of the box,

5    Government's Exhibit 204.  At sidebar we agreed to certain

6    redactions.  At this point we have conferred with defense

7    counsel and the only item they are seeking to have redacted is

8    the Albany Times Union article, which is titled "An Espian's

9    brief life, once a dynamic overachiever, a woman saw her world

10   deteriorate after she took classes offered by a halfmoon-based

11   group".

12             What we have proposed, and what defense counsel has

13   agreed to, is that we will redact the full text of the article

14   but leave the headline, the date, and that it was written by

15   Dennis Yusko, who is one of the people who is in the box.

16             So I think other than that, I think apart from their

17   original objection to the admission of the box in terms of

18   redactions of the box, we have reached agreement.

19             MR. AGNIFILO:  That is true.

20             THE COURT:  Good.

21             MS. PENZA:  I don't believe there is anything else.

22   We're just checking on a couple of the nude exhibits, but

23   other than that I think we're all in agreement.

24             THE COURT:  Okay.  Anything else?

25             MS. PENZA:  No, your Honor.

PROCEEDINGS

1            THE COURT:  I have a letter from the defense, did

2    you see the letter?

3            MS. PENZA:  We did, your Honor.

4            THE COURT:  Do you have any comments on the letter?

5            MS. PENZA:  We believe it should be denied, your

6    Honor.  We don't believe the cross-examination was cut short.

7    Mr. Agnifilio said that he was finished during Lauren

8    Salzman's cross, and we don't believe that Mr. Lesko's

9    comments during rebuttal created any problems.  And the

10   cooperation agreement, I would also say, is in evidence.

11           And as your Honor has instructed the jurors many

12   times, the arguments of the attorneys are not evidence.

13           MR. AGNIFILO:  Just in response to one thing -- I

14   stand on the letters that we submitted.

15           THE COURT:  Go ahead.

16           MR. AGNIFILO:  My cross-examination was not

17   finished.  When we broke I asked why your Honor cut off any

18   cross-examination.  I asked that because Ms. Penza said she

19   thought my cross-examination was finished; I was not finished,

20   I was ordered to finish and I followed the Court's order.

21           MS. PENZA:  I disagree.  I think he said, "I'm

22   done."  Then your Honor said, "I said you're done," but he had

23   already said he was done.

24           THE COURT:  The point is, if this were a letter

25   requesting to reopen cross-examination in a timely fashion, I

PROCEEDINGS

1   would have considered it.  But we've already charged the jury

2   and five weeks have gone by since that day and I didn't

3   receive a request in writing or orally to reopen

4   cross-examination of Lauren Salzman.  So it's too little too

5   late.  I would have considered it.  We could have discussed

6   it.

7         And whether or not you were done, or you wanted to

8   continue the next day, which you told me you were going to

9   finish by the end of the day, it was about ten to five at the

10  time I instructed you to sit down, because you were not

11  following my instructions about the questions you were asking,

12  and placing the witness in some peril of having a breakdown,

13  as I pointed out at the time.

14        You could have asked, but you didn't.  So the motion

15  is denied.  And you have your record.

16        MR. AGNIFILO:  Thank you, Judge.  Just so the record

17  is clear --

18        THE COURT:  There is more?

19        MR. AGNIFILO:  We filed a mistrial motion at the

20  time.

21        THE COURT:  No, no that's different.  You filed a

22  mistrial motion.  You didn't file a motion to reopen

23  cross-examination.  Those are two different things.

24        Here you're talking about all the things you were

25  planning to discuss between ten to five and 5:00 o'clock, all

PROCEEDINGS

1    right, and that was about something else.  That was about your

2    relationship with the jury being injured, allegedly.

3              All I can remember from the balance of this trial

4    for the last five weeks is that that jury listened attentively

5    to your questions and listened attentively to your closing

6    argument.

7              So let me make my record.  My record is that that

8    had no affect that I can discern on the part of that jury.

9    That jury listened very carefully to you, as they should have,

10   because you're very capable lawyer and you're doing a very

11   good job.  That's it.  Come back when you're ready.

12             (Judge exits courtroom.)

13             (Brief recess.)

14             THE COURT:  Please be seated.  How are we doing?

15             MS. PENZA:  We are good.  We're going to -- I think

16   ready to send back the exhibits.  We think the list is going

17   to take about an hour to finalized, but we agree that it

18   should go back now to the jury.

19             MR. AGNIFILO:  We agree.

20             THE COURT:  That's fine.  The charge and the verdict

21   sheet are going to back in a few minutes as well.

22             Anything else for now?

23             MS. PENZA:  I don't think so.  When the exhibit list

24   is ready should we --

25             THE COURT:  Just give it to Mr. Reccoppa, he'll send

5735

PROCEEDINGS

1   it back as long as you have agreed to it.

2           MR. AGNIFILO:  Were we able to make the changes?

3           THE COURT:  I believe so.  We made all the changes,

4   all the corrections, including the word common.  But I'll go

5   back and double check before we give it to the jury.  My clerk

6   was making changes as we delivered the charge.  The word

7   common that you wanted placed in there.

8           We have a note from the jury.  Here is the first

9   message from the jury:  "Needs paperwork."

10          So I suggest that we immediately respond by

11  delivering the paperwork.

12          I'll double check on that, but I'm pretty sure we're

13  all set.  I'll make sure both sides get a copy of what will go

14  into the jury.

15          MR. AGNIFILO:  That's great, thank you.

16          THE COURT:  Now as I said to the jury, between one

17  and two we're not going to be responding to them.  But if you

18  go somewhere, even if it's for a few minutes please leave your

19  cellphone number with Mr. Reccoppa, so we can reach out to you

20  in an emergency.  Thank you.

21          (Judge exits courtroom.)

22          (Brief recess.)

23          THE COURTROOM DEPUTY:  All Rise.

24          THE COURT:  Please be seated in the back.

25          COURTROOM DEPUTY:  Case on trial.

5736

PROCEEDINGS

1          THE COURT:  All right.  Court's Exhibit 5 is a note

2     from the jury:  "Does the use of the World Wide Web for any

3     purpose" -- underscoring purpose -- "fall under the umbrella

4     of affecting interstate or foreign commerce.  Do e-mail chat

5     communications within" -- underscore -- "stay qualify, does

6     research online e.g. Wikipedia qualify."

7          MR. AGNIFILO:  Your Honor, I don't know that we were

8     able to answer these questions as raised, except for the

9     second one.  I think we have a jury instruction as to the

10    question, Do e-mail chats and communications within a state

11    qualify.

12          I think the way that we answered that question, your

13    Honor, on page 124 of our instructions where we say, The

14    interstate or foreign -- the interstate or foreign requirement

15    means that the wire communications must pass between two or

16    more statements, as for example, a telephone call, a wire

17    transfer, of funds between banks in different states or e-mail

18    or electronic message that was transmitted over interstate

19    wires.

20          I think that's the only place in the instructions

21    where we addressed that issue.  We addressed it in the wire

22    fraud context, but I don't think we addressed the other two

23    questions, as I understand them, in our jury instructions.  I

24    don't know that there is any evidence in the record that

25    addresses those questions.  I don't know that we can answer

PROCEEDINGS

1    the other two questions.

2              MS. HAJJAR:  Your Honor, the part that Mr. Agnifilio

3    read relates to wire fraud, is unique to wire fraud.

4              Our read of this note, it is not clear, but our read

5    of this is that it relates to Racketeering Act 5, at best we

6    can tell, which is the interstate nexus portion of that

7    charge, which requires the transfer possession of use of means

8    of identification occurred in or affected interstate commerce,

9    or the means of identification, here the username or password,

10   was transported in the mail.  We could direct the jury to that

11   portion of the charge and add something additional if your

12   Honor thinks that is appropriate.

13             There is a little more in the Sand instruction, but

14   certainly if what they are referring to is Racketeering Act 5,

15   the identity theft portion of the charge, then any means of

16   identification that is transmitted via the web would qualify

17   and we can craft something to that effect, if that's what the

18   jury is requesting.

19             THE COURT:  What do you propose the response to be?

20             MS. HAJJAR:  We would want to think about it for a

21   moment, but we could propose language.  I think the language

22   could be something like, The fifth element --

23             THE COURT:  I don't want to -- let me tell you what

24   I don't want to do.  I don't want to direct their attention to

25   something.  I would rather ask them, In connection with which

PROCEEDINGS

1   charge or charges do you seek this information?

2              MS. HAJJAR:  That would be very helpful, your Honor.

3              MR. AGNIFILO:  That's right, your Honor, I don't

4   think we want to guess.  The prosecution might be right it's

5   Racketeering Act 5, but we don't know.

6              THE COURT:  Do you want to work out language between

7   you or I could do it.

8              MR. AGNIFILO:  I think what makes the most sense is

9   the interstate element that they are asking about is slightly

10  different for various of the charges.  We don't want to guess

11  and guess wrong.  So I think what makes the most sense is to

12  ask them something along the lines, if they are asking these

13  questions in connection with a particular charge, and if so,

14  which charge, something along those lines.

15             THE COURT:  Why don't I just ask them that question.

16             MS. HAJJAR:  Yes, that makes sense, your Honor.

17             THE COURT:  But you know, generally speaking, the

18  law of the Second Circuit is clear that any wire communication

19  is considered interstate commerce.

20             MS. HAJJAR:  Yes.

21             THE COURT:  I've got United States V. Le 902 F.3d

22  104.  I've got United States V. Konn 634 F. Appendix 818.

23             We just spent two minutes upstairs looking into it.

24  But it would be better if we could give them a more focused

25  answer than something like that.

PROCEEDINGS

1          MR. AGNIFILO:  That's fine.

2          THE COURT:  "We have your questions, please identify

3   which charge or charges in the Indictment."

4          MR. AGNIFILO:  "If any you're asking about."

5          THE COURT:  Obviously.

6          MR. AGNIFILO:  Right, but they could be asking --

7          THE COURT:  A general question?

8          MR. AGNIFILO:  No, they could be asking about the

9   enterprise within the RICO section.  The way, your Honor --

10          THE COURT:  "If any, raise these issues."

11          MR. AGNIFILO:  Fine.

12          MS. HAJJAR:  "To which charges are you referring to?

13   Which charges do you want more instruction," and then we can

14   respond to there.  They clearly are thinking of a charge.

15          THE COURT:  "To the jury, we have your questions

16   please advise the Court as to which charge or charges these

17   questions relate."

18          MS. PENZA:  That's fine, your Honor.

19          THE COURT:  It may be that we've already answered

20   their questions or some of them as to specific charges.

21          What I have, "To the jury, we have your questions.

22   Please advise the Court as to which charge or charges these

23   questions specifically relate."

24          MR. AGNIFILO:  Perfect.

25          THE COURT:  Is that okay?

PROCEEDINGS

1          MR. AGNIFILO:  Yes.

2          THE COURT:  We'll make copies for everybody.  We'll

3    wait to hear from them.

4          (Brief break.)

5          MS. PENZA:  Your Honor, we have some proposed

6    language.

7          THE COURT:  Yes.

8          MS. HAJJAR:  "I instruct you, that use of the

9    Internet is an activity that affects interstate commerce.  The

10   answer to your second and third questions is yes."

11         We have some case as well if your Honor wants.

12         THE COURT:  The use of the Internet is not --

13         MR. AGNIFILO:  I don't think that's the question

14   they are asking.  If we're talking about the fifth element,

15   which they say they are, then the fifth element we read to the

16   jury is that the transfer or possession or use of the means of

17   identification.  So what we're talking about is identity

18   theft, so we're talking about the means of identification

19   specifically, the transfer or possession or use of that has to

20   have occurred in or affecting interstate or foreign commerce,

21   or is the means identification was transported in the mail.

22   So we're not talking about -- I'm on page 73, Judge.  So we're

23   not talking in the fifth element of this Racketeering Act,

24   generally about Internet commerce in a general way, the way

25   that they put it in their first question in terms of any

PROCEEDINGS

1   purpose, which they underlined.  Because what the element is

2   confined to is specifically the means of identification and

3   whether the means of identification was transferred, possessed

4   or used and that occurred in interstate or foreign commerce.

5        I think there is a limiting clause that limits the

6   applicability of interstate commerce generally to specifically

7   the means of identification.  And then, your Honor -- when

8   you're done with that I'll go on.

9        THE COURT:  Go ahead.

10        MR. AGNIFILO:  On page 75, in that middle paragraph,

11   your Honor specifically charged them that as to the fifth

12   element, "I instruct that you interstate or foreign commerce

13   simply means the movement of goods, services, money and

14   individuals between any two or more states, and a state and a

15   foreign country."

16        So we charged them that it's more than two states.

17        MS. HAJJAR:  Your Honor, the sentence goes on to

18   say, "To satisfy this element the Government must prove the

19   defendant's conduct affected interstate or foreign commerce in

20   any way, no matter how minimal."

21        The case law is clear that using the Internet is one

22   of those ways.  And so the transfer or possession or use of

23   the means of identification is simply the other elements of

24   that crime.  It simply refers to the other two, the

25   defendant's conduct or a co-conspirator's conduct.

PROCEEDINGS

1          THE COURT:  Tell me what you had proposed again.

2          MS. HAJJAR:  "I instruct you that use of the

3    Internet is an activity that affects interstate commerce.

4    Then the answer to your second and third question is yes."

5          THE COURT:  "I instruct you that the use of the

6    Internet" --

7          MS. HAJJAR:  "Is an activity that affects interstate

8    commerce."

9          MR. AGNIFILO:  We object to that, Judge, because --

10         THE COURT:  Because it's legally incorrect?

11         MR. AGNIFILO:  Because it's not what they are

12   asking.  Because what they are asking is they underline any

13   purpose.

14         And it's not true, that use of the Internet affects

15   interstate -- it might be true that's interstate commerce, but

16   that's irrelevant in terms of the specific charge.

17         They were very particular that this is in regard to

18   a specific charge as a Racketeering Act.  And so it's not for

19   any purpose.

20         What we have is we have a language that I cited on

21   page 73 as the fifth element.  And the language that I cited

22   on page 75 where your Honor further explains the fifth

23   element.  And your Honor explained the fifth element as clear

24   as a bell, that it has to be more than two states.  That's

25   what we charged them.  And if you read that sentence and the

PROCEEDINGS

1    sentence after it, what you're left with is that it has to be

2    involving two or more states but the affect can be minimal.

3              It doesn't undo the two or more state language.  We

4    have the two or more state language in there as an affirmative

5    factual statement.  It wouldn't make sense to say that and

6    then to undue it in the next sentence.  The next sentence, I

7    submit, tells the jury that once we have interstate commerce

8    involving two or more states, the nature of that can be very

9    minimal, but it doesn't undue the two or more states part of

10   it.  And then here we charge them as to the fifth element on

11   page 73 has to relate specifically to the means of

12   identification.

13             And so I think we have to capture that in whatever

14   your Honor intends to tell the jury, because the jury has been

15   now specific that it's in regard to this particular

16   Racketeering Act that we've already given them language on.

17             MS. HAJJAR:  Your Honor, the jury is only asking

18   about the fifth element.  The other four elements of this

19   crime relate to the defendant's conduct and the means of

20   identification.  This is a legally correct instruction from

21   the Second Circuit case law.  We think it's appropriate to

22   instruct the jury that way.

23             MR. AGNIFILO:  And I think we're watering down what

24   we agreed upon as the appropriate charge on this element.

25             THE COURT:  "To the jury, I instruct you that the

PROCEEDINGS

1   use of the Internet is an activity that affects interstate

2   commerce.  The answer to your second and third questions is

3   yes.  Please apply this instruction to the instructions you

4   received in the jury charge."

5            So I'm not saying this is in place of it, this

6   augments it.  And that way they still have to go back and look

7   at the jury charge and follow the jury charge.  But the basic

8   law, and I don't want them coming back to me every time they

9   take a look at one of the charges and there is the use of the

10  wires or there is a use of the Internet, the fact is, the use

11  of the Internet is by definition an activity that affects

12  interstate commerce.  That's the law of the Circuit; that's

13  the law of the United States.

14           And the fact that we didn't include it shouldn't

15  create a problem for them, that's our problem.  We should have

16  caught it.  But now that they've asked the question, and the

17  question they asked, the initial question, does the use of the

18  World Wide Web for any purpose fall under the umbrella of

19  affecting interstate or foreign commerce.  And the answer

20  basically is yes.  And we have plenty of case law to that

21  affect.

22           You have your objection, obviously, but I'm here to

23  help the jury understand what the law is.  And to the fact

24  that we confused them, shame on us.  We have to fix it.

25           MR. AGNIFILO:  But I don't think -- I think that

*Rivka Teich CSR, RPR, RMR FCRR*
*Official Court Reporter*

VERDICT

1   they are trying to figure out by putting any purpose, it's

2   very possible that they are doing is someone might have used

3   the World Wide Web but not for something in regards to the

4   crime.  Why else would they put any purpose and underline it?

5                   THE COURT:  I don't know.  I'm not in the jury room.

6                   MR. AGNIFILO:  Of course not.  But without knowing

7   the answer to that question, I think we're ignoring their any

8   purpose underlining language and we're assuming something

9   about their note that I don't know that we know.  They are

10  obviously concerned about the any purpose language, that's why

11  they underlined it.  We're not addressing that.

12                  MS. HAJJAR:  Your Honor is not proposing to instruct

13  that their answer to all of their questions is yes.  The

14  instruction as your Honor just read it, is that use of the

15  Internet is an activity that affects interstate commerce.  And

16  they can apply that definition as they look at the fifth

17  element as instructed, which makes sense, they reflect each

18  other.  But they still have to go through each element.  We

19  think that's a perfectly appropriate instruction.

20                  THE COURT:  All right, you have your objection.  I'm

21  sure we'll hear from the jury soon.

22                  (Judge exits courtroom.)

23                  (Brief recess.)

24                  THE COURTROOM DEPUTY:  All Rise.  Case on trial

25  United States V. Keith Raniere.

VERDICT

1              Counsel state your appearances.

2              MS. PENZA:  Moira Penza, Tanya Hajjar and Mark Lesko

3    for the United States.  Also at counsel table are Special

4    Agents Michael Lever and Michael Wenniger and Paralegal Teri

5    Carby.

6              MR. AGNIFILO:  Mark Agnifilo, Temy Geragos, Paul

7    DerOhannesian, Danielle Smith for Keith Raniere, who is with

8    us this afternoon.

9              THE COURT:  Good afternoon.  Please be seated.  The

10   Court has received a note from the jury.  It reads:  "We have

11   concluded deliberations.  We have reached a verdict."

12             At this time please bring in the jury and the

13   alternates.

14             (Jury enters the courtroom.)

15             THE COURT:  The Foreperson should remain standing,

16   everyone else may be seated.

17             Has the jury reached a verdict, sir?

18             THE FOREPERSON:  We have.

19             THE COURT:  Hand the jury sheet to the clerk.  The

20   clerk may publish the verdict.

21             COURTROOM DEPUTY:  As to Count Two Racketeering, how

22   do you find the defendant, guilty or not guilty?

23             THE FOREPERSON:  Guilty.

24             COURTROOM DEPUTY:  Racketeering Act 1, 1A conspiracy

25   to commit identity theft, Ashana Chenoa, proved or not proved?

5747

VERDICT

1          THE FOREPERSON:  Proved.

2          COURTROOM DEPUTY:  1B, Conspiracy to unlawfully

3   possess identification document, proved or not proved?

4          THE FOREPERSON:  Proved.

5          COURTROOM DEPUTY:  Racketeering Act 2, sexual

6   exploitation of a child on November 2, 2005, Camila, proved or

7   not proved?

8          THE FOREPERSON:  Proved.

9          COURTROOM DEPUTY:  Racketeering Act 3, sexual

10   exploitation of a child on November 24, 2005, Camila, proved

11   or not proved?

12          THE FOREPERSON:  Proved.

13          COURTROOM DEPUTY:  Racketeering Act 4, possession of

14   child pornography, proved or not proved?

15          THE FOREPERSON:  Proved.

16          COURTROOM DEPUTY:  Racketeering Act 5, 5A,

17   conspiracy to commit identity theft, proved or not proved.

18          THE FOREPERSON:  Proved.

19          COURTROOM DEPUTY:  5B, identity theft, James

20   Loperfido, proved or not proved?

21          THE FOREPERSON:  Proved.

22          COURTROOM DEPUTY:  5C, identity theft, Edgar

23   Bronfman, proved or not proved?

24          THE FOREPERSON:  Proved.

25          COURTROOM DEPUTY:  Racketeering Act 6, conspiracy to

VERDICT

1    alter records for use in an official proceeding, proved or not

2    proved?

3                THE FOREPERSON:  Proved.

4                COURTROOM DEPUTY:  Racketeering Act 7, conspiracy to

5    commit identity theft, Marianna, proved or not proved?

6                THE FOREPERSON:  Proved.

7                COURTROOM DEPUTY:  Racketeering Act 8, 8A,

8    trafficking for labor and services, Daniela, proved or not

9    proved?

10               THE FOREPERSON:  Proved.

11               COURTROOM DEPUTY:  8B, document servitude, Daniela,

12   proved or not proved?

13               THE FOREPERSON:  Proved.

14               COURTROOM DEPUTY:  Racketeering Act 9, extortion,

15   proved or not proved?

16               THE FOREPERSON:  Proved.

17               COURTROOM DEPUTY:  Racketeering Act 10, 10A, sex

18   trafficking, Nicole, proved or not proved?

19               THE FOREPERSON:  Proved.

20               COURTROOM DEPUTY:  10B, forced labor, Nicole, proved

21   or not proved?

22               THE FOREPERSON:  Proved.

23               COURTROOM DEPUTY:  Racketeering Act 11, conspiracy

24   to commit identity theft, Pamela Cafritz, proved or not

25   proved?

VERDICT

```
 1                    THE FOREPERSON:  Proved.

 2                    COURTROOM DEPUTY:  As to Count One Racketeering Act

 3      Conspiracy, how do you find the defendant, guilty or not

 4      guilty?

 5                    THE FOREPERSON:  Guilty.

 6                    COURTROOM DEPUTY:  As to Count Three, Forced Labor

 7      Conspiracy, how do you find the defendant, guilty or not

 8      guilty?

 9                    THE FOREPERSON:  Guilty.

10                    COURTROOM DEPUTY:  As to Count Four, Wire Fraud

11      Conspiracy, how do you find the defendant, guilty or not

12      guilty?

13                    THE FOREPERSON:  Guilty.

14                    COURTROOM DEPUTY:  As to Count Five, Sex Trafficking

15      Conspiracy, how do you find the defendant guilty or not

16      guilty?

17                    THE FOREPERSON:  Guilty.

18                    COURTROOM DEPUTY:  As to Count Six, Sex Trafficking

19      of Nicole, how do you find the defendant, Guilty or not

20      guilty.

21                    THE FOREPERSON:  Guilty.

22                    COURTROOM DEPUTY:  Do you find that the defendant

23      knew means of force, fraud or coercion would be used to cause

24      one or more persons to engage in one or more commercial sex

25      acts, yes or no?
```

VERDICT

1              THE FOREPERSON:  Yes.

2              COURTROOM DEPUTY:  Count Seven, Attempted Sex

3    Trafficking of Jay, how do you find the defendant, guilty or

4    not guilty?

5              THE FOREPERSON:  Guilty.

6              THE COURT:  Please retrieve the verdict form.  You

7    may be seated.  The clerk will pole the jury.

8              COURTROOM DEPUTY:  Ladies and gentlemen, having

9    heard the verdict given by the Foreperson, Juror No.1, is that

10   your verdict?

11             JUROR NO. 1:  Yes.

12             THE COURTROOM DEPUTY:  Juror No.2?

13             JUROR NO. 2:  Yes.

14             THE COURTROOM DEPUTY:  Juror No. 3?

15             JUROR NO. 3:  Yes.

16             THE COURTROOM DEPUTY:  Juror No. 4?

17             JUROR NO. 4:  Yes.

18             THE COURTROOM DEPUTY:  Juror No. 5?

19             JUROR NO. 5:  Yes.

20             THE COURTROOM DEPUTY:  Juror No. 6?

21             JUROR NO. 6:  Yes.

22             THE COURTROOM DEPUTY:  Juror No. 7?

23             JUROR NO. 7:  Yes.

24             THE COURTROOM DEPUTY:  Juror No. 8?

25             JUROR NO. 8:  Yes.

PROCEEDINGS

1        THE COURTROOM DEPUTY:  Juror No. 9?

2        JUROR NO. 9:  Yes.

3        THE COURTROOM DEPUTY:  Juror No. 10?

4        JUROR NO. 10:  Yes.

5        THE COURTROOM DEPUTY:  Juror No. 11?

6        JUROR NO. 11:  Yes.

7        THE COURTROOM DEPUTY:  Juror No. 12?

8        JUROR NO. 12:  Yes.

9        THE COURTROOM DEPUTY:  Jury polled, Judge.

10        THE COURT:  Thank you very much.  Members of the

11   jury, this concludes your jury service.  On behalf of the

12   Court I would like to thank you for your professionalism and

13   your attention to this very, very difficult case.  You should

14   be very proud of the role you played.  You're excellent

15   citizens.  You've given a great deal of your time and your

16   energy to this pursuit.  And we are honored by your

17   participation in this trial.

18        At this time you are discharged.

19        All rise for the jury.

20        (Jury exits the courtroom.)

21        THE COURT:  Please be seated.

22        Sentencing is scheduled for Wednesday September 25

23   at 11:00 a.m.  Will there be post-trial motions?

24        MR. AGNIFILO:  Yes, Judge.

25        THE COURT:  July 10 for the motions and July 24 for

*Rivka Teich CSR, RPR, RMR FCRR*
*Official Court Reporter*

PROCEEDINGS

1    the response.

2            Is there anything else from the Government for

3    today?

4            MS. PENZA:  No.  Thank you very much, your Honor.

5            THE COURT:  Anything else from the defense?

6            MR. AGNIFILO:  No, thank you, your Honor.

7            THE COURT:  All right.  Thank you very much.  We're

8    adjourned.

9            (Proceedings concluded at 2:50 p.m.)

10                    *    *    *    *    *

11   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

12

13

     Rivka Teich, CSR RPR RMR FCRR
14   Official Court Reporter
     Eastern District of New York

15

16

17

18

19

20

21

22

23

24

25