

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

BDM:KKO
F. #2017R01840

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

October 4, 2019

By ECF

Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *United States v. Raniere, et al.*
              Criminal Docket No. 18-204 (NGG)

Dear Judge Garaufis:

      Per the Court's September 10, 2019 order, the government respectfully submits this letter in response to defendant Keith Raniere's petition in the above-referenced criminal proceeding. (Docket Entry ("DE") #794; the "Petition"). In the Petition, Raniere asserts a 10% ownership interest in First Principles, Inc., an asset which is listed in the Amended Consent Preliminary Order of Forfeiture entered as to co-defendant Nancy Salzman. (DE #760).[1] He seeks a determination of this interest by the Court in an ancillary proceeding and exclusion of the property from any final orders of forfeiture. For the reasons stated below, the government moves to dismiss the Petition for failure to state a claim to the property. In the alternative, the government moves to dismiss the Petition to the extent Raniere claims assets belonging to First Principles.

I.    <u>Statutory and Factual Basis for Forfeiting First Principles</u>

      Raniere's co-defendant Nancy Salzman pleaded guilty to Count One of the Superseding Indictment, charging her with racketeering conspiracy. (DE #474 (plea)). Raniere was later convicted at trial of racketeering and racketeering conspiracy, among other charges in the Second Superseding Indictment. (DE #735 (verdict)). As alleged in both

---

[1] First Principles is not included in the Amended Preliminary Orders of Forfeiture issued as to the other two co-defendants mentioned in the Petition, Lauren Salzman and Allison Mack. (DE #758 and 759, respectively).

superseding indictments, pursuant to 18 U.S.C. § 1963(a), any defendant convicted of racketeering or racketeering conspiracy must forfeit:

> (a) any interest the person acquired or maintained in violation of Title 18, United States Code, Section 1962; (b) any interest in, security of, claim against or property or contractual right of any kind affording a source of influence over any enterprise which the person has established, operated, controlled, conducted or participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and (c) any property constituting, or derived from, any proceeds which the person obtained, directly or indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.

(DE #50 at ¶ 41; DE #430 at ¶ 50).

As stated in the Amended Consent Preliminary Order of Forfeiture entered as to Nancy Salzman, she consented to forfeiture of "all right, title and interest" in ten assets, including "First Principles Inc., a Delaware corporation, and all assets rights [sic] thereof, including but not limited to bank accounts and intellectual property." (DE #760, at 1-2). Nancy Salzman further agreed that forfeiture was appropriate under the provisions of Section 1963(a) or as substitute assets pursuant to Section 1963(m). (*Id.*). The government notes that the Petition only asserts that Raniere has a partial interest in First Principles and does not assert an interest in or contest the forfeiture of any other asset listed on the amended preliminary orders of forfeiture issued as to Nancy Salzman or any other co-defendant.

First Principles is subject to forfeiture under Section 1963(a)(2) because it afforded a source of influence over the RICO enterprise. First Principles owned the Nxivm "tech" or ideology that permeated Nxivm and its affiliates' curricula and culminated in the creation of DOS.[2] The Nxivm education model and its associated "stripe-path" supported the RICO enterprise by isolating Nxivm community members from external support systems, "making them dependent on the [RICO] Enterprise for their financial well-being and legal status in the United States," and encouraging them to take expensive Nxivm courses. (Second Superseding Indictment, DE #430, at ¶¶ 6(f), (i)). Nxivm's philosophy included the mantra, "There are no ultimate victims; therefore I will not choose to be a victim," and the

---

[2] *See* Government Exhibit ("GX") 762 (Declaration of Keith Raniere in Support of Plaintiff's Opposed Emergency Motion for Stay of Fee Order Pending Appeal) and Tr. 6/11/19 at 4605 (Guerci) ("First Principles LLC [sic]. . . controls the intellectual property of Nxivm Corporation, the executive training company for which I [Raniere] was the conceptual founder."); Tr. 5/17/19 at 1532 (L. Salzman) (testifying that "the curriculum that [Raniere] created, we called it the technology"); Tr. 5/8/19 at 473 (Vicente) (testifying that First Principles owned "The Tech", *i.e.*, the "whole educational model," including curricula and coaching methodologies).

precept that women make excuses and claim victimhood to avoid commitments.[3]  This educational model made the victims in this case more vulnerable to control by the RICO enterprise and laid the philosophical groundwork for DOS.

Nxivm, its affiliates and individuals who received advice from Raniere paid him a 10% royalty.[4]  As indicated in Government Exhibit 1279, Raniere's royalties from one such entity were to be paid to First Principles.[5]  First Principles, in turn, filed patents generated by Raniere for his "Rational Inquiry" method (which was not ultimately approved for a U.S. patent), the sash system used by Nxivm and its affiliates, a patent to rehabilitate a "Luciferian," and other so-called inventions.[6]  The existence of these patents was cited to Nxivm community members as evidence that Raniere was a highly intelligent person.[7]  The promotion of Raniere was a principal purpose of the RICO enterprise and exalting his teachings and ideology were among the enterprise's means and methods.  (DE #50 at ¶¶ 4, 6(b); DE #430 at ¶¶ 4, 6(b)).

In sum, First Principles "further[ed] the affairs of the enterprise" by owning and licensing the "tech" that pervaded Nxivm's philosophy and made its victims more

---

[3]  *See* Tr. 5/8/19 at 112, 292 (Sylvie) (testifying that repetition of the victim mantra "hundreds and hundreds and hundreds of times" made it difficult to recognize that she was victimized and noting the Jness philosophy that women are victimizers who cry victim to avoid responsibility for their actions); Tr. 6/12/19 at 4715-16 (Ross) ("ESP appears to make victimhood seem . . . unnatural[.]").

[4]  *See* Tr. 6/14/19 at 5134-35 (Weniger) (testifying that the reference in GX 1383 to Raniere receiving ten percent of proceeds was consistent with other documents the agent reviewed); Tr. 5/21/19 at 1857 (L. Salzman) (testifying that Dawn Morrison gave Raniere cash royalties as "tribute for the idea of [her] business"); Tr. 5/9/19 at 585 (Vicente) (stating it was his "general understanding of how things worked" that Raniere received "10 percent of net").

[5]  As noted in the Petition, Raniere's counsel filed Government Exhibit 1279 under seal as it was not introduced at trial and is subject to a protective order.  (Petition, at 4 n.3).

[6]  *See* Tr. 5/9/19 at 593-602 (Vicente); Tr. 6/11/19 at 4495 (Valenziano) ("First Principles being . . . the licensee of the Rational Inquiry Method.  They actually owned the intellectual property and licensed it to Nxivm for use."); Tr. 5/31/19 at 3360 (Loperfido) ("First Principles held the Rational Inquiry license.").

[7]  *See* Tr. 5/9/19 at 601 (Vicente) (testifying that he promoted the Rational Inquiry method by saying it was "patented in the Patent Office under artificial intelligence because nobody knows what to do with it it's so advanced because that's what I was led to believe"); Tr. 6/11/19 at 4404 (Jay) (testifying to her understanding that Raniere "has thousands of patents and starts all these businesses").

vulnerable to abuse, and by obtaining patents that enhanced Raniere's reputation as a highly intelligent, business-savvy and ethical person. *United States v. Angiulo*, 897 F.2d 1169, 1214 (1st Cir. 1990) (finding sufficient evidence to support forfeiture of a coffee shop that afforded a source of influence over a RICO enterprise).

## II. Statutory Framework for Criminal Forfeiture Proceedings

In criminal cases, third-party challenges to an order of forfeiture are governed by Rule 32.2 of the Federal Rules of Criminal Procedure and the forfeiture statutes applicable to the crime of conviction. As discussed above, the government seeks forfeiture of First Principles pursuant to 18 U.S.C. § 1963(a). Therefore, the procedures governing petitions in 18 U.S.C. § 1963(*l*) apply to this proceeding.[8]

The purpose of the ancillary proceeding "is to determine whether any third party has a legal interest in the forfeited property." Fed. R. Crim. P. 32.2, Advisory Committee Notes (2000); *See United States v. Davenport*, 668 F.3d 1316, 1321 (11th Cir. 2012) (quoting the Advisory Committee's Notes for this proposition); *United States v. Egan*, No. 10 CR. 191 (JFK), 2015 WL 4772688, at *6 (S.D.N.Y. Aug. 13, 2015) (same), *aff'd*, 654 F. App'x 520 (2d Cir. 2016); *United States v. Bradley*, 882 F.3d 390, 393 (2d Cir. 2018) (noting that an ancillary proceeding "greatly resembles a quiet title action"). If the court determines that the property in question belongs to the third party, then the property must be stricken from the order of forfeiture; however, if the property does not belong to the third party, then the preliminary order of forfeiture becomes final and the United States becomes the exclusive titleholder to the property. 18 U.S.C. § 1963(*l*)(6)-(7); *United States v. Dupree*, 919 F. Supp. 2d 254, 262 (E.D.N.Y. 2013), *aff'd in part, vacated in part sub nom. United States v. Watts*, 786 F.3d 152 (2d Cir. 2015).

Courts generally require "strict compliance" with the rules and deadlines governing criminal forfeiture proceedings. *See United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 124 (E.D.N.Y. 2006)("'Strict compliance' with claim filing procedures is 'typically required,' though 'a court has discretion in appropriate circumstances to depart from the strict compliance standard.'"); *United States v. Swartz*, 391 F. Supp. 3d 199, 213 (N.D.N.Y. 2019) (granting motion to dismiss petition which did not comply with "strict pleading requirements" set forth in § 853(n)(3)). All grounds for recovery must be set forth within the petition, and a claimant may not later amend the petition to assert additional claims. *Dupree*, 919 F. Supp. 2d at 263 (citing cases); *but see United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018) (allowing non-defendant claimant to plead additional *facts*

---

[8] Section 1963(*l*) contains substantially identical language to 21 U.S.C. § 853(n). The government will therefore "refer to cases discussing the two statutes interchangeably." *United States v. Ribadeneira*, 105 F.3d 833, 835 & n.2 (2d Cir. 1997) (applying 21 U.S.C. § 853(n) and "follow[ing] the 9th Circuit's holding that the two provisions are so similar in legislative history and in plain language as to warrant similar interpretation").

where the government had not argued for dismissal of her claim on the basis of her petition's pleading deficiencies).

>Pursuant to Section 1963(*l*)(3), the petition:
>
>[1]   shall be signed by the petitioner under penalty of perjury and
>[2]   shall set forth
>>[a]   the nature and extent of the petitioner's right, title, or interest in the property,
>>[b]   the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property,
>>[c]   any additional facts supporting the petitioner's claim, and
>>[d]   the relief sought.

18 U.S.C. § 1963(*l*)(3) (numbering and structure added for clarity).

As a threshold matter, the petitioner must establish standing by pleading a legal interest in the property. 18 U.S.C. § 1963(n)(2)-(3); *United States v. Watts*, 786 F.3d at 161. The validity of petitioner's claimed property interest is determined in accordance with state law. *Id.; Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 242 (2d Cir. 2011) ("State law determines a petitioner's legal interest in the property at issue."). Only after a claimant makes a threshold showing of standing by pleading a legal interest pursuant to Section 1963(*l*)(3), may a court proceed to a hearing to determine whether the claimant falls within one of two narrow categories of property owners for whom the governing forfeiture statute affords relief. 18 U.S.C. § 1963(*l*)(6); *Watts*, 786 F.3d at 160; *Ribadeneira*, 105 F.3d at 837 (holding that petitioners did not have a legal interest in the forfeited property and therefore lacked "standing to petition to modify an Order of Forfeiture by virtue of either § 853(n)(6)(A) or (B)").

During an ancillary proceeding hearing, the petitioner bears the burden of proof by a preponderance of the evidence. 18 U.S.C. § 1963(*l*)(6). Specifically, the petitioner must prove that he falls within one of the following two categories:

>(A)   the petitioner has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section; or
>
>(B)   the petitioner is a bona fide purchaser for value of the right, title, or interest in the property and was at the time of

5

>purchase reasonably without cause to believe that the property
>was subject to forfeiture under this section[.]

18 U.S.C. § 1963(*l*)(6)(A)-(B).  With respect to the timing of the claimed legal interest, Section 1963(*l*)(6)(A) applies to an interest that arose before the pertinent crime was committed, and Section 1963(*l*)(6)(B) applies to an interest acquired after the commission of the crime.

According to Rule 32.2(c)(1)(A), after a petition is filed, the government may move to "dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason."  Fed. R. Crim. P. 32.2(c)(1)(A).  After the Court rules on any such motions, the Court may permit discovery that "is necessary or desirable to resolve factual issues."  Fed. R. Crim. P. 32.2(c)(1)(B).  Discovery may be followed by summary judgment motions and eventually an evidentiary hearing.  *Id.*  Any motion practice and discovery authorized by the Court is conducted pursuant to the Federal Rules of Civil Procedure.  *Id.*; *Pacheco v. Serendensky,* 393 F.3d 348, 352 (2d Cir. 2004) (noting that an ancillary proceeding under the revised Rule 32.2 "closely resembles a civil action").

Section 1963 further provides that the Court, "to the extent practicable and consistent with the interests of justice," may schedule a hearing within 30 days of the filing of the petition.  18 U.S.C. § 1963(*l*)(4).  However, construed alongside Rule 32.2, a hearing may be delayed beyond 30 days to allow time for motion practice and discovery.  *See, e.g.*, *United States v. Odom*, No. 5:03CR24(01)-DCB, 2008 WL 2037669, at *1 (S.D. Miss. May 7, 2008) (finding that delayed hearing on petition was appropriate and did not violate petitioner's rights in light of "need for discovery to resolve important factual issues," scheduling constraints and the filing of petitions by multiple claimants).

III. The Petition Should Be Dismissed For Failure to Sufficiently Plead an Interest in First Principles

A. The Petition's Factual Allegations

Part VI.C. of the Petition alleges the following material facts[9]: "First Principles, Inc. is a Delaware Corporation in which Mr. Raniere has by agreement a 10%

---

[9] The Petition before the Court is not a simple statement of Raniere's interest in First Principles, but rather combines elements of a petition and a legal motion.  On the final page of the submission, Raniere's signature appears following a statement "affirm[ing] under penalty of perjury that the *material facts* contained herein are true and correct." (Petition, at 6; emphasis added).  Within the submission, Part VI.C. is titled "*Material Facts* Related to Keith Raniere's Proceeds and Assets in First Principles, Inc." (*Id.* at 4; emphasis added).  In light of the statutory requirement that a petition be signed under penalty of perjury, and the limitation placed on Raniere's signature, the government respectfully submits that the Court should only consider the facts contained in Part VI.C. in connection with the government's motion to dismiss.

6

interest in the assets, proceeds and property of First Principles, Inc." (*Id.*). In a footnote following this assertion, Raniere cites to Government Exhibit 1279. According to Raniere, the exhibit "references Mr. Raniere's royalties from First Principles, Inc." (*Id.* at n.3). In actuality, the plain language of the exhibit describes the division of the proceeds of an entirely different entity, and indicates that Raniere's 10% royalty from that entity would be sent to First Principles. The remaining language in Part VI.C. consists of a recitation of the First Principles assets in which Raniere claims an interest (*e.g.*, proceeds, patents, and ethical and psychological tests).

      B.      The Petition Does Not Adequately Plead Raniere's Alleged Ownership Interest

To survive a motion to dismiss, a petition "is evaluated on the same standard as a civil complaint on a motion under Rule 12(b)(6)." *United States v. Daugerdas*, 892 F.3d 545, 552 (2d Cir. 2018). The Court must accept all factual allegations as true, but "need not do the same for legal conclusions." *Id*. The facts available for the Court's consideration include those alleged in the Petition, "documents attached to [it] as exhibits, and documents incorporated by reference." *DiFolco v. MSNBC Cable L.L.C*., 622 F.3d 104, 111 (2d Cir. 2010) (stating the rule with respect to a motion to dismiss a civil complaint). As a general rule, courts do not "look beyond the complaint and attached documents in deciding a motion to dismiss." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011). However, the Court may also consider external information, including documents "integral to the Complaint, relied on in framing the Complaint, public disclosure documents, or facts of which the Court may take judicial notice." *Matter of Schnittger*, No. 2:18-CV-04343(ADS)(SIL), 2019 WL 3780094, at *3 (E.D.N.Y. Aug. 12, 2019).

The Petition should be dismissed because the material facts alleged therein are insufficient to meet the pleading standard under Section 1963(*l*)(3). First, the Petition fails to adequately allege "the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property," as required by Section 1963(*l*)(3). Second, the "additional facts" proffered in support of the petitioner's claim actually undermine it.

Raniere alleges a 10% ownership interest in First Principles "by agreement." The Petition does not state when this agreement was entered into or became effective. Indeed, elsewhere in the Petition, Raniere's counsel assert as legal conclusions that he can show that his ownership interest was both pre-existing and acquired after the criminal conduct for which he was convicted. (Parts VI.A., VI.B. and VII., referring to 18 U.S.C. § 1963(*l*)(6)(A) and (B)). Thus, the timing of Raniere's alleged acquisition of an interest in First Principles cannot be ascertained from the four corners of the petition. This alone is fatal under Section 1963(*l*)(3).

Raniere also does not provide "additional facts" that support his claimed ownership of 10% of First Principles Inc. He fails to identify any other parties to the "agreement" granting him partial ownership of the corporation or allege how those parties had the authority to enter into such an agreement. Further, the Petition contains no other details about the existence of this agreement that could be used to determine its validity—for

example, whether the agreement was oral or written, whether it was authorized by a corporate resolution or recorded in a corporate ledger, or whether it resulted in the issuance of 10% of the corporation's shares to Raniere in his own name. *See United States v. Patel*, No. 16-CR-00584-02(DRH), 2019 WL 3216654, at *4 (E.D.N.Y. July 17, 2019) (making "[s]hort shrift" of a petition that made conclusory assertions of ownership "devoid of any effort to satisfy—or, indeed, even address—the pleading requirements" including "the need to set forth 'the time and circumstances of [claimants'] acquisition of the . . . interest in the property'"); *United States v. BCCI Holdings (Luxembourg), S.A.*, 916 F. Supp. 1286, 1289 (D.D.C. 1996) (granting motion to dismiss petition where petitioner "offered no facts or evidence to support his assertion" that he was the "sole beneficiary" of an investment account); *United States v. Ken Int'l Co.*, 184 B.R. 102, 107-08 (D. Nev. 1995) (dismissing petition for failure to allege "any facts and offer any evidentiary support regarding" claimant's interest in multiple assets or regarding claimant's acquisition of the assets).

Finally, the exhibit Raniere cites in support of his ownership claim serves, instead, to undermine it. Exhibit 1279 states, consistent with the trial evidence discussed above, that Raniere received 10% royalties from an entity other than First Principles. (*See supra*, at 3 & n.4). To the extent this exhibit reflects any agreement, it suggests only an agreement that the other entity would pay 10% in royalties to Raniere or First Principles. This payment of 10% of another business's proceeds cannot in any way corroborate Raniere's assertion that he had a 10% stake in First Principles. Because the Petition's characterization of Government Exhibit 1279 "conflicts with the actual document[]," the Court should rely on the exhibit itself. *Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 (NGG) (RML), 2014 WL 4773991, at *6 (E.D.N.Y. Sept. 24, 2014) (Garaufis, J.). Crediting the exhibit's plain language rather than the Petition's characterization of the import of "10%," the Petition does not adequately allege Raniere's 10% interest in First Principles.

### C. Alternatively, the Petition Should be Partially Dismissed with Respect to Raniere's Claim to Corporate Assets

In the alternative, the Petition should be dismissed insofar as Raniere claims an interest in the assets of First Principles because he has not made a threshold showing of standing by pleading a legal interest. Raniere's asserted ownership of 10% of "the assets, proceeds and property of First Principles Inc." does not constitute a valid legal interest because a shareholder of a corporation has no personal interest in the corporation's assets. *See Texaco Ref. & Mktg., Inc. v. Delaware River Basin Comm'n*, 824 F. Supp. 500, 506 (D. Del. 1993), *aff'd,* 30 F.3d 1488 (3d Cir. 1994) ("[S]ettled principles of corporate law . . . establish that the corporation, not the stockholders of the corporation, owns the property, rights, and privileges of the corporation."); *United States v. 479 Tamarind Drive, Hallendale, Fla.*, No. 98 CIV. 2279 DLC, 2011 WL 1045095, at *2 (S.D.N.Y. Mar. 11, 2011) ("[A] shareholder has no standing to contest the forfeiture of an asset of a corporation because shareholders do not have an ownership interest in any specific property owned by that corporation."). As Raniere cannot establish standing with respect to claiming the assets of First Principles, the Petition should be dismissed as to these assets.

IV.     Conclusion

For the reasons set forth above, the Petition should be dismissed in its entirety for failure to adequately plead an ownership interest in First Principles.  In the alternative, to the extent Raniere asserts an interest in the corporate assets of First Principles, that portion of the Petition should be dismissed for lack of standing.  Thank you for Your Honor's consideration of this submission.

        Respectfully submitted,

        RICHARD P. DONOGHUE
        United States Attorney

By:   /s/ Karin Orenstein
      Karin Orenstein
      Assistant U.S. Attorney
      (718) 254-6188

Cc:     Counsel of Record (by ECF)