26

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2
     - - - - - - - - - - - - - X
 3   UNITED STATES OF AMERICA,     : 18-CR-0204(NGG)
                                   :
 4            Plaintiff,           :
                                   :
 5         -against-              : United States Courthouse
                                   : Brooklyn, New York
 6   KEITH RANIERE,                :
                                   :
 7            Defendant.           : Monday, April 22, 2019
                                   : 9:30 a.m.
 8
     - - - - - - - - - - - - - X
 9
          TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
10        BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
             UNITED STATES SENIOR DISTRICT JUDGE
11
                    A P P E A R A N C E S:
12
     For the Government: RICHARD P. DONOGHUE, ESQ.
13                       United States Attorney
                         Eastern District of New York
14                        271 Cadman Plaza East
                          Brooklyn, New York 11201
15                       BY:  MOIRA KIM PENZA, ESQ.
                              TANYA HAJJAR, ESQ.
16                            MARK LESKO, ESQ.
                              Assistant United States Attorney
17
     For the Defendant:  BRAFMAN & ASSOCIATES
18                        767 Third Avenue
                          New York, NY 10017
19                       BY:   MARC A. AGNIFILO, ESQ.
                               TENY ROSE GERAGOS, ESQ
20
                         DEROHANNESIAN & DEROHANNESIAN
21                        677 Broadway, Suite 707
                          Albany, NY 12207
22                       BY:   PAUL DEROHANNESIAN, ESQ.
                               DANIELLE SMITH, ESQ.
23
     Court Reporter:     SOPHIE NOLAN
24                       225 Cadman Plaza East/Brooklyn, NY 11201
                         NolanEDNY@aol.com
25   Proceedings recorded by mechanical stenography, transcript
     produced by Computer-Aided Transcription
```

SN    OCR    RPR

Jury selection                           27

1                        (In open court.)

2                 (The Hon. Nicholas G. Garaufis, presiding.)

3                        (Defendant present.)

4      (The following occurs outside the presence of the potential

5                               jurors.)

6              THE COURTROOM DEPUTY:  Case on trial.

7              THE COURT:  You may be seated in the back.

8      Appearances please.

9              MS. PENZA:  Moira Kim Penza, Tanya Hajjar, Michael

10     Lesko and Special Agent Michael Weniger of the FBI at

11     counsel's table for the United States.

12             MR. AGNIFILO:  Mark Agnifilo, Paul Derohannesian,

13     Danielle Smith, Teny Geragos and Keith Raniere is present with

14     us here in court this morning.

15             THE COURT:  The FBI agent is who?

16             MS. PENZA:  Michael Weniger, W-E-N-I-G-E-R.

17             THE COURT:  Please be seated.  I believe all of the

18     20 prospective jurors have arrived so we will get started with

19     this in a moment.  The Court received a motion from the

20     defense to suppress certain images.  Have you seen that?

21             MS. PENZA:  Your Honor we received it only a few

22     moments before coming over here.  We have asked someone to

23     bring copies over.  On first glance it seems like a desperate

24     attempt at this late hour given the fact that they have known

25     about 8 Hale, which is the location where the images were

1   found.

2            THE COURT:  The building, you mean?

3            MS. PENZA:  Yes, Your Honor.  So, from the beginning

4   of this case, defendant Raniere has stated that he did not

5   intend to assert any privacy interest over any of the devices

6   recovered from 8 Hale.  That being said, the motion, I

7   understand, also relies on a false premise which is that we

8   did not seek an additional warrant for the child pornography.

9   We did indeed seek such an additional warrant.  It was just

10  not disclosed to defense counsel because they had said they

11  were ere not asserting a privacy interest in 8 Hale.

12           THE COURT:  Having said all of that, when can you

13  have something in writing back to the Court?  You do not know

14  because you have not seen it?

15           MS. PENZA:  Correct, Your Honor.

16           THE COURT:  Well, let me know once you have seen it

17  how fast you can get that back to the Court.

18           MS. PENZA:  We will, Your Honor.

19           THE COURT:  Thank you.

20           What we are going to do is I am going to bring in

21  all 20 jurors and I am going to give a brief statement to them

22  to remind them not to discuss or read about the case and what

23  I am planning to say is that since last time they were here

24  there were three defendants and now there is one going to

25  trial.  I am going to say that Keith Raniere is the only

1  defendant who will stand trial before this jury.  Please do

2  not speculate as to why this is the case.  Is that acceptable

3  to everybody?

4           MR. AGNIFILO:  It is.

5           MS. PENZA:  Yes, Your Honor.

6           THE COURT:  When I ask the questions of the jurors

7  and we are bringing them in one at a time, at some point if

8  you want a sidebar that is to ask -- have me ask a follow-up

9  question just say, Sidebar, please.  I will look around the

10  room.  If there is nothing more to be said, I will send the

11  juror out.  The juror will leave the building.  They're not

12  going back in the jury room after they are questioned.  If

13  there are objections, I will note before each juror comes in

14  whether there's an objection to that juror.  I don't think any

15  of the jurors that we see this morning were objected to by the

16  Government, but there are some who were objected to by the

17  defense, right?

18           MR. AGNIFILO:  Yes, Judge.

19           THE COURT:  Question?

20           MR. MOYNIHAN:  My name is Colin Moynihan.  I'm a

21  reporter from The New York Times.  If you're planning to

22  question the jurors at sidebar, I would like to ask that at

23  least one reporter be present for that and be able to share

24  notes with the others.

25           THE COURT:  Do the parties have a view about this?

1      My belief, going in, the only reason we would do

2  that is if there was some privacy issue that the juror would

3  not like to discuss, for example, in discussing the abortion

4  question, a juror might not want to talk in public or anywhere

5  else about the fact that she was -- she claims she was raped

6  and she had a fetus as a result of the rape and that she

7  was -- it necessitated an abortion.  I have to take into

8  account privacy interests.  So that would be the only reason

9  we would question a juror at sidebar.  It would be at the

10 request of the juror for the sensitivity of what the juror

11 wanted to tell the Court.

12      I am just wondering how that would violate a First

13 Amendment right of the press.  There are limitations on that,

14 too.  I am not going to do a whole research project on it, but

15 what is the view of the parties?

16      MR. AGNIFILO:  This is -- we had this situation,

17 exactly this situation, in the Shkreli case.

18      THE COURT:  Was abortion an issue in the Shkreli

19 case?

20      MR. AGNIFILO:  No, no.  There were different issues,

21 but not that.  What we did was -- there was a two-part

22 situation.  If the juror signaled to Your Honor that the juror

23 had something confidential or private that the juror wanted to

24 convey to the Court, the single reporter who was permitted to

25 go to the sidebar was not permitted to go to the sidebar for

1   that part.  So it seems like if Your Honor's question to the

2   jurors is if you have something that you wish to remain

3   confidential, we can do that at sidebar, my view would be that

4   would bring us into the situation, if we use Shkreli, as a

5   model where the reporter would not come but the reporter or

6   reporters would be privy to everything other than that.

7          MS. PENZA:  Your Honor, the Government defers to the

8   Court.  Obviously there are very sensitive topics here and if

9   Your Honor doesn't feel they're appropriately shared with the

10  press, the Government defers to that.

11         THE COURT:  Let me say this:  If there is a subject

12  that is raised by a juror who claims that it's sensitive and

13  private and the juror comes to the sidebar but it is not

14  really of the type that I just described to you, the juror

15  will just go back to the seat and be questioned publicly about

16  it and that will have to suffice.  I think I have to honor the

17  basic desire of a juror not to be embarrassed in public about

18  something that is highly emotional.  And I still need the

19  answers to these questions to avoid sitting a juror who is --

20  who does not qualify.  This never came up in all the other

21  cases where I have done this particular way of selecting a

22  jury so I am going to leave it at that.

23         Yes.

24         MS. SAUL:  Emily Saul with the New York Post.  As a

25  reporter who participated in the sidebars for Shkreli and

1   Mr. Agnifilo can correct me if I'm wrong, what we did was we

2   had a reporter who was ready to move up to the sidebar as they

3   were convened and when the potential juror was told there's a

4   reporter present.  If there was an issue, the reporter would

5   step back and there wasn't having to go to the jury box and

6   all of this sort of back and forth that might complicate

7   things.  I don't know if you would be interested in using that

8   model.  I thought I would put that out there because it seemed

9   to work.

10          THE COURT:  Have you designated someone?

11          MS. SAUL:  I will do it.  I will give any colleagues

12  who are interested the notes.

13          THE COURT:  I will let you know.

14          MS. SAUL:  Thank you, Your Honor.  I appreciate

15  that.

16          THE COURT:  Anything else?

17          MR. AGNIFILO:  Nothing from us, Judge.

18          MS. PENZA:  No, Your Honor.

19          (Pause in proceedings.)

20          THE COURT:  Now, if I have asked a number of

21  questions and it appears to the Court that the objection

22  should be granted, I may say, Are there any other questions,

23  and you will have a pretty good idea based on what the juror

24  has said and if you think we should continue for an

25  objected-to juror, just say can we have a sidebar.  We can go

1    to sidebar and you can tell me what other questions you want

2    me to ask.

3              MR. AGNIFILO:  Thank you, Judge.

4              MS. PENZA:  Thank you, Your Honor.

5              (Pause in proceedings.)

6              (Prospective jurors enter.)

7              THE COURT:  Please be seated, everyone.

8              Good morning.  I am Judge Garaufis.  We met at the

9    time that you filled out your questionnaires in the ceremonial

10   courtroom.  First of all, I want to thank all of you for your

11   attentiveness to the process of filling out the

12   questionnaires.  Today what we are going to do is we are going

13   to ask some follow-up questions based on the answers that you

14   gave on your questionnaires.  We have reviewed the

15   questionnaires very carefully and there are a few questions

16   that we will have for each one of you.

17             The way it will work is that we will interview each

18   of you, but only one person at a time, so that we can give you

19   full attention and we will try to be as efficient about it as

20   possible.  Now, you will recall from your last time here that

21   this is a criminal case.  I am going to introduce the lawyers

22   in the case.

23             For the Government, they are Moira Penza, Tanya

24   Hajjar, and Mark Lesko seated at that table.  They are joined

25   by Michael Weniger, who is the FBI case agent on the case.

1   The defendant at the defense table is Keith Raniere.  He is

2   joined by his attorneys Mark Agnifilo, Teny Geragos, Paul

3   Derohannesian, and Danielle Smith.

4          Mr. Raniere is the only defendant who will stand

5   trial before this jury.  Please do not speculate as to why

6   this is the case.  I am going to indicate that when you are

7   finished with being questioned, you can leave for the day but

8   you have to keep calling in.  So let me just remind you that

9   it is extremely important that you follow my instruction that

10  you not discuss this case with anyone; not your family,

11  friends, your business associates and not the other jurors.

12         So when you are in the jury room waiting to be

13  interviewed, you can talk about anything you want.  You can

14  talk about the Yankees, the Mets, the spring, other things,

15  but please do not discuss anything about this case with each

16  other.

17         In addition, you must not read, listen to, watch any

18  accounts of this case on any form of media:  Newspapers, TV,

19  radio, pod casts or the internet, no research or seek outside

20  information about any aspect of the case.  Please do not

21  communicate with anyone about the case on your phone, whether

22  through e-mail, text messaging or any other means; through any

23  blog or website or by way of any social media including

24  Facebook, Twitter, YouTube and other similar sites.  You must

25  not consider anything you may have read or heard about the

1   case outside this courtroom whether you read it before or

2   during voir dire.  Voir dire is this process of selecting the

3   jury.  Do not attempt any independent research or

4   investigation about the case and do not visit any of the

5   locations identified in the questionnaire or discussed during

6   the course of the jury selection process.  As I said, do not

7   discuss the case in the jury room while waiting to be

8   interviewed.

9            Now, let me go over some of the timing.  The trial

10  will begun on Tuesday, May 7th and last up to six weeks.  The

11  Court will provide a schedule of trial dates before the trial

12  starts.  Please continue to call in for jury information on

13  the phone line that you were instructed to call when you were

14  here last.  So what we are going to do now is I am going to

15  ask all of you except Juror No. 5 --

16           Where is Juror No. 5?  You will stay put and

17  everyone else will retire to the jury room.

18           We will call you out one at a time.  Thank you for

19  your attention.

20           Please rise for the jurors.

21           (Prospective jurors exit.)

22           THE COURT:  Please be seated everyone.

23           Good morning, sir.  You are Juror No. 5?

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  And you indicated that you have a

Prospective Juror No. 5                                36

1    hardship in connection with serving on this jury.  Can you

2    explain what the hardship is?

3              PROSPECTIVE JUROR:  Because my wife just had an

4    abortion and she currently have low blood pressure and she

5    keeps fainting so I have to take care of her and my two little

6    children, four and one.  My wife had an abortion on Tuesday

7    and she keep constantly having low blood pressure right now

8    and I have to help her taking care of my two children, four

9    and one.

10             THE COURT:  Now, are you working, sir?

11             PROSPECTIVE JUROR:  Yes, that's why I changed to

12   part-time now to just take care of them.

13             THE COURT:  Are there any other questions for this

14   juror?

15             MS. PENZA:  Nothing from us.

16             MR. AGNIFILO:  No, Your Honor.

17             THE COURT:  Thank you very much.  Have a nice day,

18   you will continue to call in.

19             PROSPECTIVE JUROR:  Thank you.

20             THE COURT:  Good luck to you.

21             (Prospective juror exits.)

22             THE COURT:  Is there a motion?

23             MR. AGNIFILO:  We ask that the juror be excused.

24             THE COURT:  Any objection?

25             MS. PENZA:  No, Your Honor.

1          THE COURT:  All right.  Juror No. 5 is excused for

2    cause.

3          MR. AGNIFILO:  Yes, Judge.

4          (Prospective juror excused.)

5          (Prospective juror enters.)

6          THE COURT:  You are Juror No. 10; is that right?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Now, you indicated that you are employed

9    full-time?

10         PROSPECTIVE JUROR:  I am.

11         THE COURT:  And you also indicated that it would not

12   be a hardship for you to be a juror.  Is that your view?

13         PROSPECTIVE JUROR:  No, because I work per diem so

14   missing work, you know, would be a pretty big hardship for me.

15         THE COURT:  How is that?

16         PROSPECTIVE JUROR:  I have a lot of student loans

17   and bills to pay so if I miss work I don't get paid by my

18   employer to be here.

19         THE COURT:  So a six-week trial would be a problem?

20         PROSPECTIVE JUROR:  Yeah.

21         THE COURT:  Why do you think you indicated that it

22   wouldn't be a problem is my only question?

23         PROSPECTIVE JUROR:  I think I wrote later in the

24   questionnaire that, you know, at first I was thinking it

25   probably wouldn't be a big deal.  I double checked with my

1    employers and I don't get paid so it's a bigger deal than I

2    thought it was going to be at first.

3                 THE COURT:  Do you rent or --

4                 PROSPECTIVE JUROR:  Yeah, I rent.

5                 THE COURT:  Are there other questions?

6                 MR. AGNIFILO:  Nothing from us, Judge.

7                 MS. PENZA:  No, Your Honor.

8                 THE COURT:  Okay, well thank you very much.  Thanks

9    for coming in.

10                (Prospective juror exits.)

11                THE COURT:  Is there a motion?

12                MR. AGNIFILO:  Yes, excused for cause.

13                MS. PENZA:  No objection.

14                THE COURT:  Juror No. 10 is excused for hardship.

15                (Prospective juror excused.)

16                THE COURT:  Next will be Juror No. 11.

17                (Prospective juror enters.)

18                THE COURT:  Please be seated, sir.  Good morning.

19                PROSPECTIVE JUROR:  Good morning.  How are you?

20                THE COURT:  Very well.  Now, in your questionnaire

21   you indicated that in answer to this question, "Have you ever

22   known anyone you believe was falsely accused of sexual abuse

23   or sexual assault of a minor or an adult?"  You said, "Yes."

24   Then you said, "Former student was falsely accused."  Then the

25   next question was, "Do you worry about you or someone close to

Prospective Juror No. 11                                    39

1   you being falsely accused of sexual abuse or sexual assault"

2   and you said, "Yes, I work in a high school."

3             PROSPECTIVE JUROR:  Yes.

4             THE COURT:  Would this experience have any effect on

5   your ability to fairly and impartially judge the evidence in

6   this case?

7             PROSPECTIVE JUROR:  No.

8             THE COURT:  You also indicated that you saw

9   something about the case on Fox News.  Do you remember what

10  you saw?

11            PROSPECTIVE JUROR:  Just it was on the news, just

12  kind of what you said he's being indicted of and kind of

13  passing by on the way to the shower I saw it on the news.

14            THE COURT:  Whatever that was, to the extent that

15  there was any factual information in the story that you recall

16  could you put it aside and not consider it and only consider

17  the evidence that's presented here in court in deciding

18  whether the defendant is guilty or not of the crimes of which

19  he is accused.

20            PROSPECTIVE JUROR:  Absolutely.

21            THE COURT:  Now, you indicated that -- well, there

22  is a question here, "The charges in this case involve

23  allegations of, among other things, sex trafficking, forced

24  labor, child pornography and child exploitation.  Is there

25  anything about the nature of these allegations that would make

Prospective Juror No. 11                          40

1   it difficult for you to be fair and impartial?"  You answered,

2   "Yes, as a teacher I may have an issue dealing with stories of

3   children."  Are you saying that you feel you could not fairly

4   consider these allegations?

5          PROSPECTIVE JUROR:  I don't know how I would react

6   to stories of children being abused.

7          THE COURT:  Do you think you are able to fairly

8   consider and evaluate the testimony, witnesses and other

9   evidence that is presented to you in order to decide whether

10  the defendant is guilty beyond a reasonable doubt?

11         PROSPECTIVE JUROR:  Yes.

12         THE COURT:  Well, let me ask you the reasonable

13  doubt question.  "The Government has the burden of proof to

14  prove these allegations beyond a reasonable doubt.  Are you

15  willing to accept and comply with this legal requirement in a

16  case involving allegations of child pornography and child

17  sexual exploitation?"  Here you said "No" and then you said "I

18  don't know."  Well, today, do you know or don't you know?

19         PROSPECTIVE JUROR:  I believe I would be able to be

20  impartial.

21         THE COURT:  So, I had one follow-up question.

22  Considering what you said in the questionnaire and I now have

23  your follow-up answers, if you were accused of a serious

24  crime, would you be willing to be judged by someone with your

25  concerns and your comments that you previously provided to the

Prospective Juror No. 11                              41

1    Court?

2              PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Anything else?

4              MR. AGNIFILO:  Nothing from us, Judge.

5              MS. PENZA:  No, Your Honor.

6              THE COURT:  Thank you very much, sir.  Have a nice

7    day.

8              (Prospective juror exits.)

9              THE COURT:  Is there a motion?

10             MR. AGNIFILO:  One second, Judge, I'm sorry.

11             (Pause in the proceedings.)

12             MR. AGNIFILO:  Your Honor, I don't think we have a

13   basis for a cause challenge based on the answers to Your

14   Honor's questions.

15             THE COURT:  All right.  Juror No. 11 is qualified.

16

17             (Continued on the following page.)

18

19

20

21

22

23

24

25

```
                        Jury Selection                      42
```

1   (Continuing.)

2          THE COURT:  Next we're going to have Juror No. 12.

3          (Prospective juror enters.)

4          THE COURT:  Please be seated, ma'am.  Good morning.

5          THE PROSPECTIVE JUROR:  Good morning.

6          THE COURT:  You're Juror No. 12.

7          THE PROSPECTIVE JUROR:  Correct.

8          THE COURT:  Just keep your voice up, if you can.

9          I just have a couple of questions for you.  You

10  answered the following question.  The question was:  Have you

11  or any member of your family or close friends worked for or

12  applied for a position in the U.S. Attorney's Office, the

13  District Attorney's office, the Federal Bureau of

14  Investigation, the Immigration and Naturalization Service, the

15  Department of Homeland Security, the Internal Revenue Service,

16  U.S. Immigration and Customs Enforcement, New York State

17  Police, New York City Police Department, or any other federal,

18  state, or local law enforcement agency?

19          You answered, Yes.

20          And you indicated that you work for a government

21  agency; is that right?

22          THE PROSPECTIVE JUROR:  Correct.

23          THE COURT:  And that you had a cousin apply to work

24  for another government agency?

25          THE PROSPECTIVE JUROR:  Yes, I had one cousin apply

                        LAM     OCR     RPR

1   to work for the Department of Homeland Security and another

2   one that's going through the New Jersey police department

3   academy training.  I have another one that's going through the

4   New York PD recruiting process.

5                   THE COURT:  So, you have relatives who are

6   interested in working for government law enforcement agencies.

7                   THE PROSPECTIVE JUROR:  Correct.

8                   THE COURT:  Now, my question is, does the fact that

9   you have relatives who are seeking to work in law enforcement

10  and you're working for a government agency, would that impact

11  on your ability to be fair and impartial in a case where there

12  will be law enforcement officers who testify?

13                  THE PROSPECTIVE JUROR:  No.

14                  THE COURT:  Anything else?

15                  MR. AGNIFILO:  Nothing from us.

16                  THE COURT:  Anything else from the Government?

17                  MS. PENZA:  No, Your Honor.

18                  THE COURT:  Thank you very much.  Have a nice day.

19                  (Prospective juror exits.)

20                  THE COURT:  Is there a motion from anybody?

21                  MR. AGNIFILO:  We do not have a basis for cause,

22  Judge.

23                  THE COURT:  Okay.  Juror No. 12 is approved.

24                  Who is Rick Ross?

25                  MS. PENZA:  Your Honor, he is the -- was one of the

Jury Selection                                                  44

1    litigants who Mr. Raniere and other people involved in Nxivm

2    had sued at one point in time, and a lawsuit involving him is

3    the basis for one of the predicate acts that has been charged.

4             THE COURT:  I'll ask how this individual knows a

5    Rick Ross.  It may not be the same Rick Ross.

6             MS. PENZA:  It may not be.

7             (Prospective juror enters.)

8             THE COURT:  Please be seated.  Good morning.

9             THE PROSPECTIVE JUROR:  Good morning.

10            THE COURT:  You are Juror No. 13?

11            THE PROSPECTIVE JUROR:  Yes.

12            THE COURT:  Welcome.  I just have a few follow-up

13   questions for you.

14            Now, you indicated that you're employed full-time --

15            THE PROSPECTIVE JUROR:  Yes.

16            THE COURT:  -- by a private organization.

17            THE PROSPECTIVE JUROR:  Yes.

18            THE COURT:  Do you know what their policy is about

19   paying you for jury duty?

20            THE PROSPECTIVE JUROR:  Yes.  They cover ten days.

21            THE COURT:  They cover ten days.

22            This trial is expected to take six weeks, as I said

23   earlier.

24            THE PROSPECTIVE JUROR:  Yes.

25            THE COURT:  Would the fact that you only two weeks

LAM      OCR      RPR

1   of pay affect your ability to meet your financial obligations?

2            THE PROSPECTIVE JUROR:  Yes.  I live alone, so if I

3   don't get paid for about a month or month and a half, it will

4   be a definite hardship for me.

5            THE COURT:  It's a hardship?

6            THE PROSPECTIVE JUROR:  Yeah.  I live alone, like I

7   said.

8            THE COURT:  Any other questions?

9            MR. AGNIFILO:  Nothing from us.

10           MS. PENZA:  No, Your Honor.

11           THE COURT:  Okay.  Thank you very much.  Have a nice

12   day.

13           THE PROSPECTIVE JUROR:  Thank you.

14           (Prospective juror exits.)

15           MR. AGNIFILO:  We ask that she be excused as a

16   hardship, Judge.

17           MS. PENZA:  No objection, Your Honor.

18           THE COURT:  Yes, motion is granted.

19           (Prospective juror enters.)

20           THE COURT:  Please be seated, sir.  Good morning.

21           THE PROSPECTIVE JUROR:  Good morning, sir.

22           THE COURT:  You're Juror No. 16, correct?

23           THE PROSPECTIVE JUROR:  That's correct.

24           THE COURT:  I just have a few follow-up questions

25   for you.

Jury Selection                                    46

1            That visit from the State, that's happening at the

2     end of this month?

3            THE PROSPECTIVE JUROR:  Yes, it will take place at

4     my school that I work at.

5            THE COURT:  It's on April 30?

6            THE PROSPECTIVE JUROR:  Tuesday, April 30.

7            THE COURT:  So, it wouldn't interfere with this

8     case.

9            THE PROSPECTIVE JUROR:  Yeah, it wouldn't -- I would

10    say yes.

11           THE COURT:  Thank you.

12           There are some questions here, one of which was,

13    There may be evidence in this case that includes sexually

14    explicit images and language.  Would hearing about that type

15    of evidence affect your ability to serve as a fair and

16    impartial juror in this case?

17           You answered, Yes, it would make me feel

18    uncomfortable.

19           And then the next question was:  Would you be able

20    to listen and discuss matters of sexual nature with fellow

21    jurors?

22           You said:  Not really because they are total

23    strangers.

24           My question is, while it might be uncomfortable to

25    listen to evidence about issues of a sexual nature, would you

Jury Selection                                          47

1  be able to listen to witnesses and view evidence and fairly

2  and impartially consider the evidence that's presented to you

3  before reaching any conclusions about whether the Defendant is

4  guilty or not guilty of the crimes charged?

5         THE PROSPECTIVE JUROR:  I would try my best, but,

6  again -- I think I also wrote down on the questionnaire that I

7  did know a little bit about the case prior to arriving.

8         THE COURT:  Where did you learn about the case?

9         THE PROSPECTIVE JUROR:  Probably, like, a month or

10 so prior, there was some writings that I saw about -- I think

11 it was an actress that was involved, or at least alleged at

12 that time.

13        THE COURT:  The actress isn't going to be on trial.

14        THE PROSPECTIVE JUROR:  No, I understand, but I read

15 things of the particular nature that that was involved.

16        And then prior to that -- I think it was the next

17 day the paper had some information about the case or at least

18 what happened to that individual pertaining maybe to this

19 case.  The Daily News, or whatever it was.

20        THE COURT:  Was this before you filled out the

21 questionnaire?

22        THE PROSPECTIVE JUROR:  No, that was -- what I had

23 read prior was, but then the next day, if memory serves me

24 correctly, we came on a Monday, the following day, which that

25 explained why the cameras were outside of the building,

1   because that verdict was issued and you put the pieces

2   together.  And, like I said, that was on the headlines.

3          THE COURT:  I see.

4          Is the fact that this case might get media attention

5   something that would affect your ability to be fair and

6   impartial in considering the evidence?

7          THE PROSPECTIVE JUROR:  To be fair to the Defendant,

8   if I already wrote down that I already knew some information,

9   I don't think that would be fair.

10          THE COURT:  Well, if the Court instructs you that

11   you're only to consider the evidence that is presented in

12   court and nothing else -- you can't help that you saw

13   something in the paper a while back.  But whether or not

14   that's accurate or complete or even relevant to this case is

15   something that is really for the Court to decide.  And it's

16   for you to decide the case based on the evidence in the trial

17   and nothing else.

18          THE PROSPECTIVE JUROR:  I said I would do my best.

19          THE COURT:  Good.

20          THE PROSPECTIVE JUROR:  But I am, as I mentioned

21   earlier, already made aware of things.  So, it's not like I'm

22   in the dark.  I have some ideas about the case.

23          THE COURT:  I'm glad you told us.  Thank you very

24   much.

25          Now, would you be able to follow the Court's

1    instruction that from this point forward you not read or watch

2    or access any information about the case and the only thing

3    you will hear and see that you'll consider is here in court?

4             THE PROSPECTIVE JUROR:  That I can't guarantee

5    because people at work were already speculating what case I

6    could be working on when they heard that I was called down for

7    jury duty.  So, I could do my part but I can't say that the

8    people around me won't add things or say things to give me

9    some ideas.

10            THE COURT:  You work in an educational institution

11   where everybody has a bachelor's degree at least.

12            THE PROSPECTIVE JUROR:  Yes.

13            THE COURT:  And I've worked in a school.  If someone

14   were to approach you and want to talk about it, all you need

15   to do is say, The judge says I can't talk about it and you

16   can't talk to me about it.

17            THE PROSPECTIVE JUROR:  That's true, sure.

18            THE COURT:  So, that's the answer.

19            And anyone who will be on this jury -- it's a jury

20   for six weeks -- people are going to put two and two together.

21   You know, I'm not saying it's easy to do --

22            THE PROSPECTIVE JUROR:  Right.

23            THE COURT:  -- if you're with colleagues, but it's

24   something that we all have to do to maintain the -- our effort

25   to be fair and impartial and only consider issues that are

1   raised in court.

2          Are there other questions?

3          MR. AGNIFILO:  I have none, Judge.

4          MS. PENZA:  No, Your Honor.

5          THE COURT:  Thank very much, sir.  You have a nice

6   day.

7          THE PROSPECTIVE JUROR:  Thank you.

8          (Prospective juror exits.)

9          MR. AGNIFILO:  I'm going to ask that we excuse him

10  for cause, Judge.  He came back to his theme, which is while

11  Your Honor said he had to follow instructions, he said, It

12  would only be fair to the Defendant if I let you know I have

13  heard about certain things.

14         And he certainly vacillated on his ability to keep

15  this external content out of the trial.

16         The other thing that he's talking about, he knows

17  something about other proceedings in this case which might end

18  up being relevant if those people testify.  And I think that

19  person might.  So, this is someone that he seems to have some

20  ideas about because he read about it, he expressed concern

21  about his knowledge about it.

22         So, in total, I think it's a close call, but in our

23  view it goes on the for cause side of the ledger.

24         MS. PENZA:  Your Honor, the Government doesn't

25  object because the Court made very clear that at the time that

1  the questionnaires were filled out, that none of the jurors

2  were to the read anything further about the case, and he

3  obviously did choose to read the next day.

4          So, given his choice not to follow your instructions

5  already, the Government consents.

6          THE COURT:  All right.  Motion is granted.

7  Juror No. 16 is struck for cause.

8          (Prospective juror enters.)

9          THE COURT:  Please be seated, everyone.

10         Good morning, sir.  You're Juror No. 17, are you

11 not?

12         THE PROSPECTIVE JUROR:  Yes, sir.

13         THE COURT:  I just have a few follow-up questions

14 for you.

15         You work full-time, right?

16         THE PROSPECTIVE JUROR:  Yes.

17         THE COURT:  What kind of work do you do?

18         THE PROSPECTIVE JUROR:  Security.

19         THE COURT:  Do you know if you'll be paid by your

20 employer for the full period of your jury service?

21         THE PROSPECTIVE JUROR:  No, I won't.

22         THE COURT:  You won't be paid?

23         THE PROSPECTIVE JUROR:  No.

24         THE COURT:  For what part of it will you be paid?

25         THE PROSPECTIVE JUROR:  They won't pay me.

Jury Selection                                      52

1           THE COURT:  I'm sorry?

2           THE PROSPECTIVE JUROR:  My company, my employer,

3     won't pay me.

4           THE COURT:  Have you checked?

5           THE PROSPECTIVE JUROR:  Yes.

6           THE COURT:  Would that be a hardship for six weeks?

7           THE PROSPECTIVE JUROR:  I don't think so.

8           THE COURT:  You don't think so?

9           THE PROSPECTIVE JUROR:  I don't think it's going to

10    be hard.

11          THE COURT:  Now, you answered this question.  The

12    question was:  Other than friends and relatives, please list

13    the three people you least admire and why.

14          And you said your brother, your father, and your

15    uncle.  Those are the people you least admire?

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Why is that?

18          THE PROSPECTIVE JUROR:  Don't have a good

19    relationship with them.

20          THE COURT:  And how long has that been?

21          THE PROSPECTIVE JUROR:  Couple years.

22          THE COURT:  You don't speak to them?

23          THE PROSPECTIVE JUROR:  I speak to my uncle.  Not my

24    brother.

25          THE COURT:  Any special reason why?

Jury Selection                                              53

1        THE PROSPECTIVE JUROR:  Long story.

2        THE COURT:  Oh, okay, well...

3        Now, there's a question here:  There may be evidence

4    in this case about people engaging in relationships with

5    multiple sexual partners.  Would hearing about that type of

6    evidence affect your ability to serve as a fair and impartial

7    juror in this case?

8        You checked off yes, and you said:  I have a big

9    problem with child abuse.  My first cousin was abused.

10       THE PROSPECTIVE JUROR:  Yes.

11       THE COURT:  Let me just ask you this:  There will be

12   evidence presented in this case of that nature, and a question

13   will be whether the Government, in the end, whether the

14   Government has proven that the Defendant committed certain

15   specific crimes that have some relation to this or a relation

16   to this beyond a reasonable doubt.

17       Do you think that given the type of crimes that are

18   being -- of which the Defendant is accused that you could

19   fairly and impartially consider whether the Government has met

20   its burden of proof of guilt beyond a reasonable doubt?

21       THE PROSPECTIVE JUROR:  I think I could do it.

22       THE COURT:  Have you ever been a juror before?

23       THE PROSPECTIVE JUROR:  Never.

24       THE COURT:  Then there's another question:  There

25   may be evidence in this case that includes sexually explicit

Jury Selection                                                      54

1   images and language.  Would hearing about that type of

2   evidence affect your ability to serve as a fair and impartial

3   juror in this case?

4            You checked off yes and you said:  I'm going to be

5   honest, yes, it may.

6            And why is that?

7            THE PROSPECTIVE JUROR:  I had a cousin that was, you

8   know, abused before, and it was a real tough time for our

9   family.  So, I think it might, you know -- it might affect me

10  somewhat.

11           THE COURT:  Let me ask you this:  Given your

12  answers, both on the questionnaire and here in court, if you

13  were accused of any of these crimes, would you want a person

14  in your state of mind to be a juror in your case?

15           THE PROSPECTIVE JUROR:  No.

16           THE COURT:  Any other questions?

17           MR. AGNIFILO:  Nothing from us.

18           MS. PENZA:  No, Your Honor.

19           THE COURT:  Thank you very much.  Have a nice day,

20  sir.

21           THE PROSPECTIVE JUROR:  Thank you.

22           (Prospective juror exits.)

23           THE COURT:  Is there a motion?

24           MR. AGNIFILO:  We would ask that he be excused for

25  cause, Your Honor.

Jury Selection                                                                55

1          MS. PENZA:  No objection.

2          THE COURT:  All right.  Juror No. 17 is excused for

3    cause.

4          (Prospective juror enters.)

5          THE COURT:  Please be seated, sir.  Good morning.

6          THE PROSPECTIVE JUROR:  Good morning.

7          THE COURT:  You're Juror No. 18.

8          THE PROSPECTIVE JUROR:  Yes, sir.

9          THE COURT:  You indicated that you're very busy.

10         THE PROSPECTIVE JUROR:  So is everybody.

11         THE COURT:  That's true.  But you also indicated

12   that you had some hearing issues; is that right?

13         THE PROSPECTIVE JUROR:  I do.

14         THE COURT:  Could you just explain how that what the

15   issue is and how it might affect your ability to concentrate

16   here in court?

17         THE PROSPECTIVE JUROR:  I have what's called

18   "tinnitus," which is a damage to the inner ears.  I have a

19   constant ringing in my ears and there's no cure for it, it

20   never stops.  And it actually from time to time can change

21   octaves; it gets a higher pitch, a lower pitch.

22         It really can be difficult at times for hearing and

23   for concentration.

24         THE COURT:  So, in your work, how do you adjust --

25         THE PROSPECTIVE JUROR:  Well, I've had the condition

LAM       OCR       RPR

Jury Selection                                           56

1   for almost 30 years now and it depends a lot on the

2   environment that I'm in.  I can't explain how or why it

3   changes sounds.

4           I've been to doctors before, and it is a common

5   disease that just causes me a lot of difficulty sometimes.

6           THE COURT:  You're an employee of your company?

7           THE PROSPECTIVE JUROR:  Yes.

8           THE COURT:  And you only get paid for two weeks?

9           THE PROSPECTIVE JUROR:  Company policy is only two

10  weeks.

11          THE COURT:  I see.  And would that create a hardship

12  for you?

13          THE PROSPECTIVE JUROR:  Absolutely.

14          THE COURT:  Why is that?

15          THE PROSPECTIVE JUROR:  Well, as we all do, we all

16  have incomes that we need to pay our bills.  And for me to

17  lose 15 or 20 thousand dollars in the course of six or eight

18  weeks Could be very difficult for me to overcome.

19          THE COURT:  Are there other questions?

20          MR. AGNIFILO:  Nothing from us.

21          THE COURT:  Is there a number of a question that you

22  want me to follow up about?

23          MS. PENZA:  Not a number, no, Your Honor.

24          THE COURT:  Anything else?

25          MS. PENZA:  No, Your Honor.

1    THE COURT:  Thank you for coming in, sir.  Have a

2 nice day.

3    (Prospective juror exits.)

4    THE COURT:  Let me just say that in reviewing this

5 questionnaire, I got the sense that the juror was mentioning a

6 number of things that might prevent him from being a juror on

7 this case.  I don't know that his medical condition was in and

8 of itself that significant.  He's very successful in business,

9 so, obviously, he's overcome the problem in order to make

10 $20,000 a month.

11    Is there a motion?

12    MR. AGNIFILO:  We would ask that he be excused for

13 cause based on he said it would be a hardship.  And he doesn't

14 seem like he wants to be on the case, and that combined with

15 hardship I think is enough.

16    MS. PENZA:  Your Honor, the Government objects to

17 him being stricken for cause.  We don't believe that's a

18 hardship, given what he said regarding his income, his answer

19 about his income here and on the questionnaire, that it

20 actually is a substantial hardship --

21    THE COURT:  It's not.

22    MS. PENZA:  Thank you, Your Honor.

23    THE COURT:  What about the other issue about the

24 hearing?

25    MS. PENZA:  Your Honor, he had no difficulty hearing

1    and understanding the Court's questions.  Given his success in

2    business -- obviously, if there are needs to take breaks, he

3    could use the microphone, the earpiece, if necessary, but it

4    doesn't seem that it actually is something that would impede

5    his ability to participate in the trial.

6              THE COURT:  You want me to bring him back and finish

7    asking him questions?

8              MS. PENZA:  If Your Honor wishes to and whether

9    there are any accommodations that could be made.

10             But given the way he was responding to you, given

11   what it appears to be his line of work is as a general

12   manager, it would seem that those would require the same types

13   of skills and abilities to listen to and interact with people

14   that would be necessary to serve as a juror.

15             THE COURT:  Anything else from you?

16             MR. AGNIFILO:  Yes.  I would ask that Your Honor

17   bring him back.

18             THE COURT:  I'll bring him back.

19             MR. AGNIFILO:  Also, there's another question,

20   Question 37 in the questionnaire.

21             THE COURT:  Yes, I should have asked him that.

22             MR. AGNIFILO:  And Question 52 as well, I'm told.

23             THE COURT:  All right.  We'll bring him back.

24             MR. AGNIFILO:  Thank you, Judge.

25             Judge, just 37, not 52.

Jury Selection                                              59

1           THE COURT:  Thirty-seven.  All right.

2           Juror No. 19.

3           (Prospective juror enters.)

4           THE COURT:  Please be seated, ma'am.  Good morning.

5           THE PROSPECTIVE JUROR:  Good morning.

6           THE COURT:  Keep your voice up, okay?

7           THE PROSPECTIVE JUROR:  Okay.

8           THE COURT:  Thank you.

9           Now, how much pay do you receive for jury duty?

10          THE PROSPECTIVE JUROR:  How much I paid?

11          THE COURT:  No.

12          How much pay do you receive from your employer?  How

13 many days?

14          THE PROSPECTIVE JUROR:  Three days, up to three

15 days.

16          THE COURT:  You checked?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Would that create a hardship for you if

19 you had to be a juror for six weeks?

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Why is that?

22          THE PROSPECTIVE JUROR:  I have to pay the mortgage

23 and stuff.

24          THE COURT:  Do you work for a private company or for

25 a government?

```
                       Jury Selection                    60

1              THE PROSPECTIVE JUROR:  Private company.

2              THE COURT:  I see.

3              Any questions?

4              MR. AGNIFILO:  Nothing from us.

5              MS. PENZA:  No, Your Honor.

6              THE COURT:  All right.  Thank you for coming in.

7    Have a nice day.

8              THE PROSPECTIVE JUROR:  Thank you.

9              (Prospective juror exits.)

10             THE COURT:  Is there a motion?

11             MR. AGNIFILO:  Yes.  We ask that she be excused for

12   cause as a hardship.

13             MS. PENZA:  No objection, Your Honor.

14             THE COURT:  Okay.  Motion is granted.

15             (Prospective juror enters.)

16             THE PROSPECTIVE JUROR:  Good morning.

17             THE COURT:  Please be seated, sir.  Good morning.  I

18   just have a few follow-up questions for you.

19             You indicated that you're having physical therapy

20   for chronic back pain?

21             THE PROSPECTIVE JUROR:  Yes.

22             THE COURT:  How long have you had this condition?

23             THE PROSPECTIVE JUROR:  It's been for a while, but

24   doctor prescribed me for physical therapy.

25             THE COURT:  I'm sorry, try to speak into the
```

```
                       Jury Selection                      61
```

1   microphone.

2          THE PROSPECTIVE JUROR:  It's been for a while, but

3   doctor prescribed me for physical therapy.

4          THE COURT:  How long have you been having physical

5   therapy?

6          THE PROSPECTIVE JUROR:  Already four, five sessions

7   done and still several remaining.

8          THE COURT:  Is this a problem that you had before?

9          THE PROSPECTIVE JUROR:  It's been a while.  Like

10  I've been feeling like a year ago, year and a half.

11         THE COURT:  You're employed, correct?

12         THE PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Do you work for a private company or do

14  you work for the government?

15         THE PROSPECTIVE JUROR:  Private company.  In a

16  hotel.  Hotel industry.

17         THE COURT:  I see.

18         And do you know what their policy is regarding

19  paying you for jury service?

20         THE PROSPECTIVE JUROR:  They pay, yeah.

21         THE COURT:  They pay?

22         THE PROSPECTIVE JUROR:  Yeah.

23         THE COURT:  All right.  Now, there was a question

24  here, the question was:  How important is your faith, if any,

25  to you?

Jury Selection                                      62

1          And you said:  Extremely important, and I make major

2     life decisions based on my faith.

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Would that fact have any effect on your

5     ability to be a fair and impartial juror and follow the

6     instructions of the Court in this case?

7          THE PROSPECTIVE JUROR:  No.

8          THE COURT:  There was a question here:  Other than

9     friends and relatives, who are the three people living or dead

10    that you most admire and why?

11         You just put an asterisk there.  You didn't answer

12    it otherwise.

13         Is there some reason why you didn't answer that

14    question?

15         THE PROSPECTIVE JUROR:  Actually, I didn't perceive

16    that internally.  It's not quite understanding from my

17    perception.

18         THE COURT:  Other than relatives and friends, are

19    there people that you admire in the public world?

20         THE PROSPECTIVE JUROR:  Well, there's a lot of

21    people for admiring, like a sportsman.

22         THE COURT:  Did you say postman?

23         THE PROSPECTIVE JUROR:  Sportsmen.

24         THE COURT:  I see.  There are specific sports

25    figures that you admire.

1              THE PROSPECTIVE JUROR:  Basketball, I like

2    Mr. Michael Jordan.

3              THE COURT:  All right.  That's a start.

4              Are there any people you least admire?

5              THE PROSPECTIVE JUROR:  Not really.

6              THE COURT:  All right.  Thank you.

7              Any other questions for this juror?

8              MR. AGNIFILO:  I do not, Judge.

9              MS. PENZA:  Your Honor, if you could follow up on

10   No. 60.

11             THE COURT:  Sure.

12             There's a question here:  Have you heard of the Me

13   Too movement.

14             You said:  Yes.

15             And then the follow-up is what is your opinion of

16   the Me Too movement.

17             THE PROSPECTIVE JUROR:  Did I say yes?

18             I can't remember, I can't recall.

19             THE COURT:  You checked yes.

20             Are you aware of the Me Too movement.

21             THE PROSPECTIVE JUROR:  Yes, I know about that.

22             THE COURT:  Do you have any opinion about the Me Too

23   movement?

24             THE PROSPECTIVE JUROR:  A lot of people come up with

25   these issues, but -- what I can say?

Jury Selection                                              64

1           THE COURT:  Well, whatever you think.

2           THE PROSPECTIVE JUROR:  Which is right?  I mean, if

3    they come up with some accusation or problem, they should be

4    just properly...

5           THE COURT:  Properly what?

6           THE PROSPECTIVE JUROR:  Like, if somebody come up

7    with -- say, I have problem with someone, and...

8           I don't know, this is -- I really messed up.

9           THE COURT:  Well, no, it's important for us to know

10   what, if any, views you have about how those accusations

11   should be handled.

12          How should an accusation of sexual harassment be

13   handled, in your opinion?

14          THE PROSPECTIVE JUROR:  Properly.  Step-by-step.

15          THE COURT:  And what?

16          THE PROSPECTIVE JUROR:  Step-by-step properly.

17          THE COURT:  Well, should it be investigated?

18          THE PROSPECTIVE JUROR:  Yes.

19          THE COURT:  And if it's found to be validated,

20   should steps be taken beyond that?

21          THE PROSPECTIVE JUROR:  Yes.

22          THE COURT:  Other questions?

23          MS. PENZA:  No, Your Honor.

24          MR. AGNIFILO:  Nothing from us.

25          THE COURT:  Okay.  Thank you for coming in.  You

Case 1:18-cr-00204-NGG-VMS   Document 833   Filed 01/09/20   Page 40 of 156 PageID #: 12825

1   have a nice day.

2              (Prospective juror exits.)

3              THE COURT:  Is there a motion?

4              MR. AGNIFILO:  Not from us.

5              MS. PENZA:  No, Your Honor.

6              THE COURT:  All right.  Juror No. 20 is approved.

7

8              (Continued on the following page.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Prospective Juror No. 22                                    66

1          THE COURT:  We are up to Juror Number 22.

2          (Prospective Juror No. 22 enters the courtroom.)

3          THE COURT:  Please be seated, ma'am.

4          Good morning.

5          THE PROSPECTIVE JUROR:  Good morning.

6          THE COURT:  You're Juror No. 22.

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Okay.  Welcome.  I just have a few

9   follow up questions for you.

10          Your employed full time?

11          THE PROSPECTIVE JUROR:  Yes.

12          THE COURT:  Is it a government agency that you work

13   for?

14          THE PROSPECTIVE JUROR:  I work in a school.

15          THE COURT:  In a school?  Okay.  And you indicated

16   that you had an injury from an automobile accident?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  And what were the consequences of that?

19   You indicated something about your ability to retain

20   information.

21          THE PROSPECTIVE JUROR:  Correct.  I was -- I was

22   T-boned.  I had -- I was knocked unconscious, I had 13

23   fractured ribs was and I had, I have short-term memory loss so

24   I, I find -- I don't know if it's because of age or because of

25   the accident.

CMH      OCR      RMR      CRR      FCRR

Prospective Juror No. 22                    67

1          THE COURT:  It's not age.  You're fine.  You're

2     young.

3          THE PROSPECTIVE JUROR:  I have trouble sometimes

4     processing and retaining information.

5          THE COURT:  Can you give me an example?

6          THE PROSPECTIVE JUROR:  Give an example?

7          THE COURT:  In your work, for instance, at the

8     school.

9          THE PROSPECTIVE JUROR:  Oh, let's say the principal

10    asks me to do something.  I always repeat it to make sure I

11    completely understand it and am able to process.

12         THE COURT:  Is this only since the accident?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Now, obviously, this is going to be a

15    six-week trial.

16         THE PROSPECTIVE JUROR:  Right.

17         THE COURT:  And there will be witnesses who will

18    testify and there will be documentary evidence that is

19    provided to the jury as well.  Do you think that it would be a

20    problem for you to absorb and retain information you get

21    during the trial?

22         THE PROSPECTIVE JUROR:  Yes, unless -- I would have

23    to take notes.

24         THE COURT:  Well, you can take notes.

25         THE PROSPECTIVE JUROR:  Right, but sometimes the

Prospective Juror No. 22                                        68

1   process -- like, I go back and forth a lot.  Like, if I should

2   tell a story, like, repeating, like, conversation, I'll go

3   back and forth so it's hard for the person listening to really

4   follow the story because I'll remember parts that I omitted

5   prior to, you know, to finishing the story, and I have to go

6   back and forth so the person listening sometimes can't process

7   what I'm trying to say because, Well, he said it, oh, let me

8   go back.  So it's hard for me to convey sometimes.

9           THE COURT:  Well, let me ask you this then.  If you

10  were on trial for a crime, would you want someone with your

11  issue to be serving as a juror?

12          THE PROSPECTIVE JUROR:  I would say no.

13          THE COURT:  And why?

14          THE PROSPECTIVE JUROR:  Because the person who's

15  listening isn't getting the facts all straight.  The sequence

16  of events may not be in the right order.

17          THE COURT:  Okay.  Any other questions?

18          MS. PENZA:  No, Your Honor.

19          MR. AGNIFILO:  Nothing.

20          THE COURT:  Okay.  Thank you very much for coming

21  in.  Have a nice day.

22          THE PROSPECTIVE JUROR:  Thank you.

23          (Prospective Juror No. 22 exits the courtroom.)

24          THE COURT:  Any motions?

25          MR. AGNIFILO:  We ask the that she be excused for

Prospective Juror No. 22                                    69

1    cause, Judge.

2             MS. PENZA:  No objection, Your Honor.  If I may ask

3    one question?

4             THE COURT:  You can ask as many as you want.

5             MS. PENZA:  Thank you.  Did Your Honor say the

6    jurors can or cannot take notes during the trial?

7             THE COURT:  They can.

8             MS. PENZA:  They can?  I'm not sure -- if that is

9    the case, then I withdraw my consent at this point because I

10   think she heard you say can't, it was my understanding.  I'm

11   not sure.

12            THE COURT:  Well, the problem is I was more

13   concerned -- I am going to grant the motion because I was more

14   concerned that she, she misses things and then has to go back

15   and replay them.  You know, I am not sure, unless she's a

16   stenographer, that she is going to be able to take down what

17   she needs to have if she feels she needs to have it in her

18   notes.  I am just concerned about it.

19            She seemed like she could be a wonderful juror but

20   for this, this disability if you want to call it that as a

21   result of her automobile accident and she was knocked

22   unconscious in a T-bone accident.  So I mean that is a very

23   traumatic experience and, obviously, you know, she broke a

24   whole bunch of ribs was so it was a high impact accident.  She

25   is lucky to be here or anybody.

Prospective Juror No. 23                                70

1           So I am going to grant the motion.

2           MS. PENZA:  Thank you, Your Honor.

3           (Prospective Juror No. 22 excused.)

4           THE COURT:  Number 23.

5           (Prospective Juror No. 23 enters the courtroom.)

6           THE COURT:  Please be seated, sir.

7           Good morning.

8           THE PROSPECTIVE JUROR:  Good morning.

9           THE COURT:  You are Juror No. 23?

10          THE PROSPECTIVE JUROR:  Yes.

11          THE COURT:  I just have a couple of questions.

12          Now, you indicated that you worked freelance, in

13   other words, you work for yourself.

14          THE PROSPECTIVE JUROR:  Yes, pretty much.

15          THE COURT:  Okay.  And this is going to be a

16   six-week trial.  Would a six-week trial be a financial

17   hardship for you?

18          THE PROSPECTIVE JUROR:  No.  My schedule is

19   flexible.  I can work on weekends and stuff like that.

20          THE COURT:  I see.  Okay.

21          Any other questions?

22          MR. AGNIFILO:  Nothing from us.

23          MS. PENZA:  No, Your Honor.

24          THE COURT:  Okay.  Thanks for coming in.  Have a

25   good day.

1              THE PROSPECTIVE JUROR:  Thank you.

2              (Prospective Juror No. 23 exits the courtroom.)

3              THE COURT:  All right.

4              MR. AGNIFILO:  Nothing from us.

5              THE COURT:  Nothing?  Okay.

6              MS. PENZA:  Nothing from the government.

7              THE COURT:  Okay.  23 is approved.

8              Juror 34.

9              (Prospective Juror No. 34 enters the courtroom.)

10             THE COURT:  Please be seated, sir.

11             Good morning.

12             THE PROSPECTIVE JUROR:  Good morning.

13             THE COURT:  You are Juror No. 24?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  All right.  We just have a few

16     additional questions for you, sir.

17             Are you retired?

18             THE PROSPECTIVE JUROR:  Yes, I am.

19             THE COURT:  Okay.  You indicated that -- there was a

20     question:  There may be evidence in this case about abortions.

21     Would hearing about that type of evidence affect your ability

22     to serve as a fair and impartial juror in this case?  You

23     answered yes.  You say:  I do not believe in abortion.

24             THE PROSPECTIVE JUROR:  That is correct.

25             THE COURT:  Okay.  Now, but, of course, abortion,

Prospective Juror No. 24                                72

1    certain types of abortions are legal under Supreme Court

2    precedent.  Do you think you could, in determining whether the

3    defendant is guilty or not guilty of specific crimes, that you

4    could be fair and impartial in considering evidence having to

5    do with abortions having been undertaken?

6              THE PROSPECTIVE JUROR:  I still have my own personal

7    beliefs and I will, you know, make my own judgments based upon

8    my own personal beliefs.

9              THE COURT:  So, well, if the Court instructs you as

10   to the law regarding what must be proven in order to convict

11   the defendant beyond a reasonable doubt, would you follow

12   those instructions and consider the specific evidence fairly

13   and impartially?

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  Now, there is this question:  You may

16   hear allegations involving immigration and propriety.  What

17   are your beliefs and opinions on the subject of immigration?

18   Would those opinions impact your ability to be fair and

19   impartial?  Please explain.  You answered yes and you said:

20   Against illegal immigration of any kind.

21             THE PROSPECTIVE JUROR:  Uh-huh.

22             THE COURT:  So you are against illegal immigration?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  And if evidence were presented about

25   illegal immigration, would you be able to assess the validity

Prospective Juror No. 24                                    73

1   of that evidence fairly and impartially?

2             THE PROSPECTIVE JUROR:  I believe so.

3             THE COURT:  Okay.  Oh, I like this one.  I got to

4   the one I like.

5             THE PROSPECTIVE JUROR:  I think I know.

6             THE COURT:  The judge presiding over this case is

7   the Honorable Nicholas G. Garaufis.  Do you or does any

8   relative or friend know or have any connection with

9   Judge Garaufis?  And you said:  Yes, Judge Garaufis did legal

10  work for my father.

11            THE PROSPECTIVE JUROR:  Uh-huh, many years ago.

12            THE COURT:  Many years ago?  It had to be.

13            THE PROSPECTIVE JUROR:  Early 80s maybe.

14            THE COURT:  Early 80s?  That's when it was.  That's

15  when I was in private practice.

16            THE PROSPECTIVE JUROR:  Yes.

17            THE COURT:  Do you think that would affect your

18  ability to be fair and impartial that I once did legal work

19  for your father?

20            THE PROSPECTIVE JUROR:  No.

21            THE COURT:  I won't ask you what he said about me.

22  Do you think it would create any kind of problem?

23            THE PROSPECTIVE JUROR:  No.

24            THE COURT:  But you remember?

25            THE PROSPECTIVE JUROR:  A little bit of it, yes.

Prospective Juror No. 24                               74

1                    THE COURT:  Was it civil?

2                    THE PROSPECTIVE JUROR:  It was civil, yes.

3                    THE COURT:  Okay.  Now, you also indicated that you

4       had read about this case in the newspaper, in the New York

5       Post.

6                    THE PROSPECTIVE JUROR:  Yes.

7                    THE COURT:  Was that before we, the original --

8                    THE PROSPECTIVE JUROR:  Before.

9                    THE COURT:  When you filled out the questionnaire?

10                   THE PROSPECTIVE JUROR:  Yes, before.  I read quite a

11      bit.

12                   THE COURT:  What's that?

13                   THE PROSPECTIVE JUROR:  I read quite a bit, a number

14      of articles about this case.

15                   THE COURT:  So that's a newspaper that you read?

16                   THE PROSPECTIVE JUROR:  New York Post.

17                   THE COURT:  Yes.

18                   THE PROSPECTIVE JUROR:  Daily News.

19                   THE COURT:  Oh, you read both?

20                   THE PROSPECTIVE JUROR:  Uh-huh.

21                   THE COURT:  So my question is would you be able to

22      put aside what was in the newspaper and just consider evidence

23      that is presented here in court in considering whether the

24      defendant is guilty or not guilty of the crimes that are

25      charged?

Prospective Juror No. 24                                    75

1          THE PROSPECTIVE JUROR:  I believe I could.

2          THE COURT:  What kind of, not specifically, but what

3    kind of newspaper accounts do you recall?

4          THE PROSPECTIVE JUROR:  The accounts about the -- of

5    a cult, about the rather rich Bronfman family funding the

6    cult.

7          THE COURT:  Okay.

8          Were there other questions?

9          MR. AGNIFILO:  Your Honor, I propose follow-up to

10   question 38.

11         THE COURT:  Okay.  Well, let me ask you in terms of

12   the issue, the issue of abortion, if evidence is presented

13   strictly about an individual having a legal abortion without

14   any, where the individual did it of her own volition, would

15   that cause you to have a bias against the defendant?

16         THE PROSPECTIVE JUROR:  It may, yes.  Yes.

17         THE COURT:  And why would that be the case?

18         THE PROSPECTIVE JUROR:  I don't think laws should be

19   taken as far as abortions are concerned.  It should just be

20   just strictly for medical reasons.

21         THE COURT:  I'll take it one step further.  Let's

22   say someone has a consensual relationship with a woman and the

23   woman becomes pregnant and through their discussions, on the

24   recommendation -- this is hypothetical because I don't know

25   the exact facts that would be adduced in this case -- and the

CMH      OCR      RMR      CRR      FCRR

Sidebar                                          76

1   woman and the man have a conversation and the man says, Well,

2   you know, I think you ought to have an abortion, and the woman

3   says, I think so too, and then obtains a legal abortion, in

4   terms of the charges in this case, if man is accused of a

5   crime where, not having to do specifically with any kind of

6   forced activity, that this was all consensual, would you hold

7   it against or be biased the against the man for recommending

8   that the woman have an abortion?

9           THE PROSPECTIVE JUROR:  Concerning other charges?

10          THE COURT:  Concerning other charges.

11          THE PROSPECTIVE JUROR:  No.  No.

12          MR. AGNIFILO:  Can we approach for a second?

13          THE COURT:  Sure.

14          (The following occurred at sidebar.)

15          MR. AGNIFILO:  The press can come up, right?

16          THE COURT:  Okay.  Yes, she can come up.

17          Okay.  Yes.

18          MR. AGNIFILO:  I think, I think a fair read of what

19   the government's evidence is going to be is that --

20          THE COURT:  That would be nice to know.

21          MR. AGNIFILO:  Is that Raniere compelled, forced,

22   suggested -- no?

23          MS. PENZA:  No.

24          MR. AGNIFILO:  Well, there are a lot of abortions in

25   the case.  It's not just one.  There's dozens.  I mean,

Prospective Juror No. 24                                    77

1    there's over --

2            THE COURT:  Okay.  I hear you.  Do you have an

3    objection to excusing this juror?

4            MS. PENZA:  We do.

5            THE COURT:  You have an objection?

6            MS. PENZA:  We do not believe he should be excused

7    for cause.

8            THE COURT:  So why should he be excused?

9            MR. AGNIFILO:  Because I think the view is going to

10   be is that Raniere, as part and parcel of his desire to have

11   lots of sex with lots of women, used abortions at a minimum

12   cavalierly and maybe even worse than that.  So it's not as

13   passive --

14           THE COURT:  Well, the "worse than that" is the

15   problem.

16           MS. PENZA:  This is not a case about abortion, Your

17   Honor.  We have -- we have witnesses who have had abortions.

18   It is of concern to us too to make sure that people can set

19   aside their views on abortion but we believe that he said that

20   he can.

21           THE COURT:  Okay.  I hear all of you.  Thank you.

22           (In open court; sidebar ends.)

23           THE COURT:  Let me ask this question.  If a witness

24   were to testify and indicate that she had an abortion, would

25   you be less likely to believe her testimony or to credit her

Prospective Juror No. 24                                    78

1   on other issues because she had an abortion?

2            THE PROSPECTIVE JUROR:  No.

3            THE COURT:  Anything else?

4            MR. AGNIFILO:  Judge, I think the number --

5            THE COURT:  All right.

6            Well, there may be a discussion in this case of a

7   number of abortions that were had by individuals and the

8   circumstances, I don't know, that might come out in the trial,

9   but the mere fact that a number of woman had abortions after

10  having sexual relations with the defendant, would that mere

11  fact create a bias on your part against the defendant?

12           THE PROSPECTIVE JUROR:  Yes.

13           THE COURT:  By the mere fact that these women had

14  abortions?

15           THE PROSPECTIVE JUROR:  Yes.

16           THE COURT:  That would create a problem?

17           THE PROSPECTIVE JUROR:  It would.

18           THE COURT:  Okay.  Thank you very much.  You have a

19  nice day, sir.

20           THE PROSPECTIVE JUROR:  Thank you.

21           (Prospective Juror No. 24 exits the courtroom.)

22           THE COURT:  I will hear the motion.

23           MR. AGNIFILO:  We ask that he be excused for cause.

24           THE COURT:  For?  For?  For?

25           MR. AGNIFILO:  Because he said in response to

1  Your Honor's last question that he would have a bias against

2  the defendant if there were multiple women who had abortions

3  following having sex with the defendant which is exactly what

4  the trial evidence is going to be.

5          MS. PENZA:  Your Honor, the government believes that

6  the defendant said repeatedly that he could be fair and

7  impartial -- excuse me -- that the juror said he could be fair

8  and impartial, that he could set aside the evidence.  That

9  question at the end was not followed up with could you set

10  aside that bias.  Obviously, jurors come in with biases of all

11  sorts.  He said he had a bias but the question is could he set

12  it aside and follow Your Honor's instructions.

13         THE COURT:  Thank you.

14         I think the difference with this juror is that

15  throughout his voir dire, it was clear that this was a

16  subject, abortion, that was extremely important to him and

17  that I believe it might overwhelm his efforts to be fair and

18  impartial.  So, you know, there are people who come in who

19  oppose abortion who will be perfectly fine for this case, but

20  I think he does not qualify in that category.

21         The motion is granted.

22         MR. AGNIFILO:  Thank you.

23         (Prospective Juror No. 24 excused.)

24

25

Prospective Juror No. 26                              80

1          THE COURT:  Juror 26.

2

3          (Prospective Juror No. 26 enters the courtroom.)

4          THE COURT:  Please be seated, sir.

5     Good morning.

6          THE PROSPECTIVE JUROR:  Good morning.

7          THE COURT:  You are Juror No. 26?

8          THE PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Okay.  Welcome.  I just have a follow-up

10    question.

11         You were asked other than friends and relatives,

12    please list three people you least admire and why.  So you

13    said family, brother, sister, nieces, because they were too

14    much problems and drama.  So what did you mean by problems and

15    drama?

16         THE PROSPECTIVE JUROR:  It's like a situation that,

17    you know -- it all started between, with me and my sister and

18    basically, you know, with what they've been putting me

19    through, you know, after, like, my mother passed away --

20         THE COURT:  I'm sorry.

21         THE PROSPECTIVE JUROR:  -- a few years ago.  So it's

22    like -- it was something I got from my mother when she passed

23    away which is, like, being a beneficiary and be eligible for

24    the pension.  So she got, like, jealous and everything and

25    then, you know, then, you know -- I live on my own.  I took

Prospective Juror No. 29                                          81

1   over the apartment and she was begging me for her daughter who

2   is my niece to stay in the apartment.  So, you know --

3            THE COURT:  I see.  Okay.

4            THE PROSPECTIVE JUROR:  I dealt with that for, you

5   know --

6            THE COURT:  That's taken care of?

7            THE PROSPECTIVE JUROR:  Yes.  I'm back living on my

8   own right now so they're no longer there.

9            THE COURT:  Okay.  Thank you.

10           Anything else?

11           MR. AGNIFILO:  Nothing from us.

12           MS. PENZA:  No, Your Honor.

13           THE COURT:  All right.  Thank you very much.  Have a

14   nice day, sir.

15           THE PROSPECTIVE JUROR:  You too, Your Honor.

16   Everybody, the same thing.

17           THE COURT:  Thank you.

18           (Prospective Juror No. 26 exits the courtroom.)

19           THE COURT:  Any motions?

20           MR. AGNIFILO:  Nothing from us, Your Honor.

21           MS. PENZA:  No, Your Honor.

22           THE COURT:  Okay.  26 is approved.

23           Juror No. 29.

24           (Prospective Juror No. 29 enters the courtroom.)

25           THE COURT:  Please be seated, sir.

Prospective Juror No. 29                              82

1              Good morning.

2              THE PROSPECTIVE JUROR:  Good morning.

3              THE COURT:  You are Juror No. 29.

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Please keep your voice up, okay?

6              THE PROSPECTIVE JUROR:  Okay.

7              THE COURT:  Thank you.  I just have a follow-up

8    question here.

9              There was a question.  I'm going to read it to you.

10   Do you have any opinions or beliefs concerning law enforcement

11   in general including the FBI, the Internal Revenue Service,

12   the New York City Police Department, the Department of

13   Homeland Security, the New York State Police and the

14   Department of Justice that would make it difficult for you to

15   evaluate evidence fairly and impartially in accordance with

16   the Court's instructions?  Your answer was yes and then you

17   put in an explanation:  Profiling.

18             Can you be more expansive about what your issue is

19   regarding profiling?

20             THE PROSPECTIVE JUROR:  I, I think I've been subject

21   to that many times.

22             THE COURT:  I see.

23             THE PROSPECTIVE JUROR:  And it's difficult for me to

24   understand how people pick their case of who to prosecute.

25             THE COURT:  Just speak up more into the microphone.

Prospective Juror No. 29                                    83

1    That would help.

2              THE PROSPECTIVE JUROR:  Yes.

3              THE COURT:  Thank you.

4              THE PROSPECTIVE JUROR:  I said for having been a

5    victim of that many times and it's always difficult for me to

6    understand how people, how they pick who to go after, who to

7    prosecute for probably the same reason.

8              THE COURT:  All right.  Well, the reason that that

9    question is there is because there will be some law

10   enforcement officials who testify at this trial and let me ask

11   you this.  Do you think you would be able to fairly and

12   impartially evaluate the testimony of law enforcement

13   officials along with everybody else who testifies in order to

14   decide whether or how much to believe one of those law

15   enforcement officials?

16             THE PROSPECTIVE JUROR:  Honestly, I'm not sure.

17             THE COURT:  Okay.  And why is that?

18             THE PROSPECTIVE JUROR:  Because I have it in me to

19   be reserve, to have doubt and reservation.

20             THE COURT:  About?  Reservations about what?

21             THE PROSPECTIVE JUROR:  About their reason to do

22   anything.

23             THE COURT:  How many times have you been stopped?

24             THE PROSPECTIVE JUROR:  At least five times.

25             THE COURT:  Without good reason, in your opinion?

Prospective Juror No. 29                                84

1          THE PROSPECTIVE JUROR:  Well, the reasons are

2    usually a little -- I'm going to give you a quick example.

3          THE COURT:  Sure, do so.

4          THE PROSPECTIVE JUROR:  I take the subway every day

5    to work and not too long ago, same station, same thing, every

6    time, for at least 15 years, same route, and a lot of people

7    standing on the platform waiting.  Then I was a little bit --

8    it was cold that winter and I'm a little bit anxious to go

9    home and, you know, I'm looking forward to see if the train is

10   coming.

11         THE COURT:  Bad habit.

12         THE PROSPECTIVE JUROR:  And I stepped forward when

13   there's a yellow line but almost everybody is doing it.  I put

14   a foot in front of the yellow line to look for, to see if the

15   train is coming.  Before I know it, there were two guys coming

16   to me and they chose that to call me aside, questioning me for

17   one hour just looking for things, like maybe they would find

18   drugs on me, if I ever been arrested, and they wouldn't even

19   be, give me a chance to go to the restroom because the reason

20   I was looking, because it's cold, I want to go home, you now,

21   it's after a long day of work, and they took everything that I

22   had in my backpack on --

23         THE COURT:  On the ground?

24         THE PROSPECTIVE JUROR:  -- on the table.  It was

25   kind of a bench table on a subway and looking.  And this guy

Prospective Juror No. 31                    85

1   was telling me that, well, like, he's surprised that, that I'm

2   lying to him he was going to arrest me because I said that

3   I've never been arrested.  He said it's impossible that a

4   black man living in New York City for that long have never

5   been arrested.

6               THE COURT:  Okay.  Thank you.

7               Any other questions for the juror?

8               MR. AGNIFILO:  No.

9               MS. PENZA:  No, Your Honor.

10              THE COURT:  Thank you very much for coming in, sir,

11  and doing your civic duty.  I appreciate it.

12              (Prospective Juror No. 29 exits the courtroom.)

13              MS. PENZA:  The government moves to strike Juror

14  No. 29 for cause given his statements that he would be biased

15  against law enforcement witnesses.

16              MR. AGNIFILO:  We agree.

17              THE COURT:  Yes.  Well, that's a terrible story.

18  He's a technician for Verizon.

19              (Prospective Juror No. 29 excused.)

20              THE COURT:  We are up to 31.

21              (Prospective Juror No. 31 enters the courtroom.)

22              THE COURT:  Please be seated.  Welcome.

23              THE PROSPECTIVE JUROR:  Thank you.

24              THE COURT:  You are Juror No. 31?

25              THE PROSPECTIVE JUROR:  Correct.

Prospective Juror No. 31                    86

1          THE COURT:  Okay.  First, let me ask you, you are

2    employed full time, are you not?

3          THE PROSPECTIVE JUROR:  Correct.

4          THE COURT:  And will your employer be paying you for

5    your entire service?

6          THE PROSPECTIVE JUROR:  They will.

7          THE COURT:  Okay.  Thank you.

8          Now, you indicated that -- there's this question:

9    Have you or anyone close to you ever participated in any

10   self-help programs or read any self-help books?  You answered

11   yes and you indicated the programs:  The books, the secret,

12   the happiness project.

13         THE PROSPECTIVE JUROR:  Uh-huh.

14         THE COURT:  You have to answer "yes" or "no."

15         THE PROSPECTIVE JUROR:  Yes.  Sorry.

16         THE COURT:  Okay.  Thank you.

17         Okay.  And if yes as to you, what did you hope to

18   get out of the experience?  And you said:  Self-improvement,

19   increase happiness, increase productivity.

20         And was it successful?

21         THE PROSPECTIVE JUROR:  Yes.  I think it, you know,

22   just makes you think a little bit more about yourself.

23         (Continued on next page.)

24

25

Prospective Juror No. 31                                          87

(Continuing.)

THE COURT:  There is a question, "Would you be able to listen and discuss matters of a sexual nature with your fellow jurors?"  And you said, "Yes, I think.  It's something that I never discussed with strangers so I can't be sure."  Is that your view on it?

PROSPECTIVE JUROR:  I think that's accurate.  I'm not sure being in a situation with strangers and having those conversation since I've never done it, so --

THE COURT:  But for many jurors --

PROSPECTIVE JUROR:  So -- but we'll all be in the same boat.

THE COURT:  You will be in the same boat.  There may be evidence in this case about fraternities, sororities, secret societies, rituals or cults.  Would hearing about that type of evidence affect your ability to serve as a fair and impartial juror in this case?

PROSPECTIVE JUROR:  No.

THE COURT:  "Under the law, emotions such as sympathy, bias and prejudice must not enter into the deliberations of the jurors as to whether the guilt of the defendant has been proven beyond a reasonable doubt.  Would you have difficulty following this rule?"  You said "Yes" and explained, "I can be an emotional and/or sympathetic person."

PROSPECTIVE JUROR:  I think that's a fair assessment

Prospective Juror No. 31                    88

1   of myself, yes.

2           THE COURT:  Well, if there is testimony that you

3   must consider from witnesses and also evidence, documentary

4   evidence that you must consider, do you think that you would

5   be able to narrowly and reasonably and thoughtfully deal with

6   that evidence in this case, even though you are sometimes

7   emotional --

8           PROSPECTIVE JUROR:  Yes.

9           THE COURT:  --- and you can be sympathetic to

10  people's conditions or problems?

11          PROSPECTIVE JUROR:  Yes, but I think I could still

12  be impartial as it came to, you know, the purpose of the case.

13          THE COURT:  So you think you could do that?

14          PROSPECTIVE JUROR:  Correct.

15          THE COURT:  Have you ever been a juror before?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  I am sorry, was that in a civil or

18  criminal case?  Don't tell me what it was about, just was it

19  civil or criminal.

20          PROSPECTIVE JUROR:  It was a criminal.

21          THE COURT:  Did the jury reach a verdict?  Don't

22  tell me what the verdict was.

23          PROSPECTIVE JUROR:  Yes, we did reach a verdict.

24          THE COURT:  Any questions?

25          MR. AGNIFILO:  Follow up on question 51, Your Honor?

Prospective Juror No. 31                                        89

1          THE COURT:  Sure.  The question was, "Have you or

2    anyone close to you been the victim of incest, child

3    molestation or child abuse?"  And you answered, "Yes."  You

4    said, "Both my mother and grandmother maternal were both

5    victims of child molestation; is that right?

6          PROSPECTIVE JUROR:  Yes.

7          THE COURT:  How did you learn of this?

8          PROSPECTIVE JUROR:  As I got older it was something

9    at first I found out about my grandmother because it was a

10   family incident.  As I got older, just sort of having

11   conversations, it was something that sort of came up.

12         THE COURT:  And was this a family member who engaged

13   in the abuse?

14         PROSPECTIVE JUROR:  With my grandmother, yes.

15         THE COURT:  Now, the fact that you learned of this,

16   would that have any influence on whether you would be able to

17   be fair and impartial in considering evidence in this case

18   which will include evidence of or it is it's alleged that

19   there will be evidence of child molestation in this case?

20         PROSPECTIVE JUROR:  I think that might be difficult

21   for me.

22         THE COURT:  Do you think you could put aside the

23   emotional aspects of this and simply consider the evidence

24   knowing that and do so fairly and impartially, knowing that

25   the evidence that you are considering could be used for the

Prospective Juror No. 31                    90

1   purpose of deciding whether someone is guilty or not guilty of

2   a crime?

3            PROSPECTIVE JUROR:  I think I could stay impartial

4   to that.  I mean, I think just sort of thinking about it, it

5   automatically makes me emotional thinking about my family, but

6   I think listening to evidence for both sides you take into

7   consideration what is presented and make an assessment on

8   that.

9            THE COURT:  Other questions?

10           MR. AGNIFILO:  I have nothing else.

11           MS. PENZA:  No, Your Honor.

12           THE COURT:  Thank you very much for coming in, have

13   a nice day.

14           PROSPECTIVE JUROR:  Thank you.

15           (Prospective juror exits.)

16           THE COURT:  Any motions?

17           MR. AGNIFILO:  No.  I think she's going to try to be

18   fair.

19           MS. PENZA:  No, Judge.

20           THE COURT:  All right.  Juror No. 31 is approved.

21           (Prospective juror enters.)

22           THE COURT:  Mr. Reccoppa tells me you have a

23   vacation planned?

24           PROSPECTIVE JUROR:  Yes.

25           THE COURT:  When is your vacation planned?

Prospective Juror No. 31                              91

1          PROSPECTIVE JUROR:  We depart the 25th of June.

2          THE COURT:  We expect to be done by then.

3          PROSPECTIVE JUROR:  Okay, I thought I would mention

4    it.

5          THE COURT:  No, it is very important that you do but

6    we expect it to be a six-week trial ending in the middle of

7    June?

8          PROSPECTIVE JUROR:  I wanted to put that out there.

9          THE COURT:  Thank you very much, appreciate it.

10         (Prospective juror exits.)

11         THE COURT:  All right.  Juror No. 31 is qualified.

12         MS. PENZA:  Your Honor, I'm sorry, I know we were

13   asked how long we estimated the case to be.  We do estimate

14   six weeks and we have had conversations where we think it is

15   an accurate estimate, but if the defense puts on a longer case

16   than we are anticipating, it could go longer than that.

17         THE COURT:  It could go less long depending on how

18   quickly we move.

19         MS. PENZA:  And the Government has tried very hard

20   to streamline the case so this is our best expectation.

21         MR. AGNIFILO:  We're going to try to streamline the

22   case, too, on both sides.

23         THE COURT:  Well, let's see how we do.  We're going

24   to have 12 jurors and six alternate jurors.  So, we are

25   building in some protection here for the trial.  I know

SN          OCR          RPR

Prospective Juror No. 32                                92

1  everyone will try hard.  All of these -- the 20 people who

2  were here this morning were here right on time if that's any

3  indication, we will have plenty of cooperation from the jury

4  getting started in the morning.  Thank you for letting me

5  know.

6           Okay.  We are up to 32.

7           (Prospective juror enters.)

8           THE COURT:  Please be seated, ma'am.  You are Juror

9  No. 32.  Welcome?

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  I just have a few questions to follow on

12 to your answers.  There's a question here, "Have you or anyone

13 close to you ever participated in a Landmark forum, EST or

14 anything you view as similar?"  You answered, "Yes."  And then

15 you said, "I believe a friend participated in Landmark.  I

16 think her experience was good."  Right?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Now, do you know anything about

19 Landmark?

20          PROSPECTIVE JUROR:  I was confused so I am thinking

21 that it was a self-help type of experience.

22          THE COURT:  And she had a good experience?

23          PROSPECTIVE JUROR:  From what she told me.

24          THE COURT:  Did you discuss it a great deal or just

25 in passing?

Prospective Juror No. 32                                93

1          PROSPECTIVE JUROR:  No, a great deal.

2          THE COURT:  And what was your understanding of what

3     it was that she experienced?

4          PROSPECTIVE JUROR:  You go through different

5     experiences, different workshops.  You talk about self.  I

6     went through something similar too.

7          THE COURT:  You did?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  What was that?

10         PROSPECTIVE JUROR:  I went through something that's

11    called Momentum and there was something I went through before

12    and I don't think it was Landmark but it was something

13    similar.

14         THE COURT:  I see.  Was it a good experience?

15         PROSPECTIVE JUROR:  It was okay.

16         THE COURT:  It was okay?

17         PROSPECTIVE JUROR:  Yeah.

18         THE COURT:  How long ago was that?

19         PROSPECTIVE JUROR:  About two years ago.

20         THE COURT:  Okay.  You indicated that you were a

21    juror in two state criminal trials for robbery and that the

22    jury reached a verdict, just yes or no; is that right?

23         PROSPECTIVE JUROR:  Yes.

24         THE COURT:  And is there anything about your

25    experience serving on a jury in prior trials that concerned

SN        OCR        RPR

Prospective Juror No. 32                                    94

1   you, that was negative?

2          PROSPECTIVE JUROR:  Well I am always anxious about

3   it, but there was one case that I was -- I wasn't actually on

4   the jury, I was an alternate, and from what I remember I

5   believe it was a murder.

6          THE COURT:  A murder?

7          PROSPECTIVE JUROR:  I believe so.

8          THE COURT:  All right.

9          PROSPECTIVE JUROR:  What was crazy about it, I

10  wasn't there any longer --

11         THE COURT:  What was crazy about it?

12         PROSPECTIVE JUROR:  I attend church in Brooklyn and

13  there were members of -- I don't remember if it was the victim

14  or the defendant that was in the church that I saw one Sunday.

15  I don't know if they were a member at the time, but because

16  they were in the court I was able to recognize them in the

17  church, so the next time I went to court I informed them and

18  so they dismissed me.

19         THE COURT:  I see.

20         Any other questions?

21         MR. AGNIFILO:  Nothing.

22         MS. PENZA:  No, Your Honor.

23         THE COURT:  Okay, thank you for coming in.

24         PROSPECTIVE JUROR:  I have to mention something.

25         THE COURT:  Of course?

Prospective Juror No. 32                                95

1           PROSPECTIVE JUROR:  I may have to go to a funeral
2     this week.  The arrangements have not been finalized so I
3     don't know what time.
4           THE COURT:  Well, this trial will begin on May 7th.
5           MS. PENZA:  I did want to ask a follow-up on 67 if
6     that's okay.
7           THE COURT:  So we have one more question.
8           PROSPECTIVE JUROR:  Okay.
9           THE COURT:  There is a question, "Have you or has a
10    family member or close friend ever been involved in or been
11    the target of a criminal investigation?"  And you answered,
12    "Yes."  And you said, "I don't know the circumstances and the
13    person was my godson."  You also said that your godson was
14    accused of drug crimes, there was no allegation of sex-related
15    offense; is that right?
16          PROSPECTIVE JUROR:  Yes.
17          THE COURT:  Was he convicted of any of these crimes?
18          PROSPECTIVE JUROR:  Yes.
19          THE COURT:  After a trial?
20          PROSPECTIVE JUROR:  I don't know.
21          THE COURT:  Do you think he was treated fairly by
22    law enforcement?
23          PROSPECTIVE JUROR:  I wasn't there so I don't know.
24          THE COURT:  Okay.  Thank you very much.  Have a nice
25    day.

Prospective Juror No. 65                                    96

1            (Prospective juror exits.)

2            THE COURT:  Is there a motion?

3            MR. AGNIFILO:  Not from us.

4            MS. PENZA:  No, Your Honor.

5            THE COURT:  All right.  Juror No. 32 is approved.

6            (Prospective juror exits.)

7            THE COURT:  Juror No. 65.

8            (Prospective juror enters.)

9            THE COURT:  Please be seated, sir.  Good morning.

10           PROSPECTIVE JUROR:  Good morning.

11           THE COURT:  How are you?  You are Juror No. 65?

12           PROSPECTIVE JUROR:  I am.

13           THE COURT:  You indicated that you have had several

14   surgeries.  And do you think that you would have difficulty

15   with jury service based upon your current condition?

16           PROSPECTIVE JUROR:  What I indicated on the

17   questionnaire was depending on how long I have to sit without

18   access to a restroom.

19           THE COURT:  Well, let me explain the basic rule.  We

20   start at around 9:30.  We take a break midway through the

21   morning and then we have a lunch break and a mid-afternoon

22   break, but if someone needs to use the restroom we stop and

23   the person can use the restroom.  The rest of us can just sit

24   here.

25           PROSPECTIVE JUROR:  Then that wouldn't be a problem

1   for me.

2         THE COURT:  All right.  There is a question, "The

3   Government has the burden of proof to prove those allegations

4   beyond a reasonable doubt.  Are you willing to accept and

5   comply with this legal requirement in a case involving

6   allegations of child pornography and child sexual

7   exploitation?"  And you answered, "Not sure.  Feel very strong

8   about the vileness of this and the legal requirement sometimes

9   falls short of guilty."

10        What did you mean by that?

11        PROSPECTIVE JUROR:  I'm trying to recall my answer.

12        THE COURT:  Do you want me to read it again?

13        PROSPECTIVE JUROR:  Yes.

14        THE COURT:  Of course.  "Not sure.  Feel very strong

15  about the vileness of this and the legal requirement sometimes

16  falls short of guilty."

17        PROSPECTIVE JUROR:  What I meant is that sometimes

18  it seem from my perspective the law, it's not -- there's

19  shades of gray, sometimes, of what happens in life.  So what I

20  was trying to articulate there was that it's not always

21  clear-cut and it can be challenging to see through to the

22  truth.

23        THE COURT:  And, so -- and, so would you follow the

24  court's instructions regarding the evaluation of evidence in

25  order to determine whether the defendant has been found guilty

Prospective Juror No. 65                    98

1    of a crime beyond a reasonable doubt?

2              PROSPECTIVE JUROR:  Yes, absolutely.

3              THE COURT:  Now, there's another question here,

4    "Would you be inclined to believe a witness is more or less

5    truthful solely because that witness is a law enforcement

6    officer?"  And you say, "I initially would probably be

7    inclined to believe an officer of law unless there was other

8    factors to support not to."

9              If the Court advises you that law enforcement

10   officers are to be evaluated the same way you would evaluate

11   any other witness in determining whether you believe them, how

12   much you believe them and so forth, would you follow the

13   Court's instructions to consider all witnesses based on their

14   testimony here in the same manner?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  And then there's another question,

17   "Under the law, emotions such as sympathy, bias and prejudice

18   must not enter into the deliberations of the jurors as to

19   whether the guilt of the defendant has been proven beyond a

20   reasonable doubt.  Would you have any difficulty following

21   this rule?  You checked off "yes" and "no" and then you said,

22   "Again, hard to say."

23             PROSPECTIVE JUROR:  What I meant by that was, I

24   mean, you have to follow the facts but in real life a lot of

25   decisions that are made come from their emotions but

Prospective Juror No. 69                                    99

1   understanding that -- so that's where the conflict could

2   occur, I guess.  We are drawing between on your left and right

3   brain thinking and so that is what I meant by sometimes that's

4   a difficult process for a person to go through.

5           THE COURT:  Would you try to follow the Court's

6   instruction that you rationally, thoughtfully consider the

7   testimony that's before you when determining the outcome of

8   your deliberations?

9           PROSPECTIVE JUROR:  Yes.

10          THE COURT:  Other questions?

11          MR. AGNIFILO:  Nothing from us.

12          MS. PENZA:  No, Your Honor.

13          THE COURT:  I want to thank you for coming in, sir.

14  Have a nice day.

15          MR. AGNIFILO:  Thank you.

16          (Prospective juror exits.)

17          THE COURT:  Is there a motion?

18          MR. AGNIFILO:  Nothing from us.

19          MS. PENZA:  No, Your Honor.

20          THE COURT:  All right.  Juror 65 is approved.

21          69.

22          (Prospective juror enters.)

23          THE COURT:  Please be seated, sir.  Good afternoon,

24  sir.

25          PROSPECTIVE JUROR:  Good afternoon.

Prospective Juror No. 69                                      100

1          THE COURT:  You are Juror No. 69; correct?

2          PROSPECTIVE JUROR:  Correct.

3          THE COURT:  So you are employed full-time?

4          PROSPECTIVE JUROR:  Correct.

5          THE COURT:  And you work evenings, is that right?

6          PROSPECTIVE JUROR:  The schedule changes, Your

7    Honor, day and evening.

8          THE COURT:  Now this trial is only taking place

9    during the day.

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Would you be able to adjust your

12   schedule so that you would be able to be here for the six

13   weeks of the trial?

14         PROSPECTIVE JUROR:  The evening schedule starts

15   around 4:30 in midtown Manhattan.  I have to talk to my

16   employer about that if they allow lateness.

17         THE COURT:  Okay.  There will be a schedule for the

18   trial and you will get it in advance so you know what days we

19   have trial.  The trial will last six weeks, mainly four days a

20   week.  Do you work weekends in your job?

21         PROSPECTIVE JUROR:  Yes.

22         THE COURT:  We don't work weekends.  I do not work

23   weekends.  They work weekends.  So let me ask you some

24   follow-up questions about your responses.  There's a question

25   that reads, "There may be evidence in this case about people

1   engaging in relationships with multiple sexual partners.

2   Would hearing about that type of evidence affect your ability

3   to serve as a fair and impartial juror in this case?"  You

4   answered, "Yes" and then you said, "I don't believe in

5   polygamy."

6              Polygamy, the definition of it is, I think, that you

7   are married to more than one person.  This is sexual partners.

8   This isn't about being married to anybody.  This is about

9   having various sexual partners.  What is your view on people

10  having numerous sexual partners at the same time through the

11  same period of your life?

12             PROSPECTIVE JUROR:  I disagree with it.  I don't --

13  like, the way, I guess I'm not -- like I grew up in Asia where

14  it's kind of, like, taboo to have, you know, like when you

15  have -- before you're married you have multiple girlfriends at

16  the same time, people kind of like -- it's taboo, people look

17  down at them.

18             THE COURT:  Have sex with them?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Do you think that if there is evidence

21  that the defendant had multiple sexual partners that you would

22  be -- that that would create a problem for you in being fair

23  and impartial?

24             PROSPECTIVE JUROR:  No.  I mean having been exposed

25  to American culture I guess it's kind of like -- almost like

Prospective Juror No. 69                                   102

1   normal, like.  I don't think it would cloud my judgment.

2            THE COURT:  Okay.  There is another question here,

3   "There may be evidence in this case about abortions.  Would

4   hearing about that type of evidence affect your ability to

5   serves as a fair and impartial juror in this case?  You said,

6   "Yes.  Abortions are wrong.  There are so many people in the

7   world who like to have a child, but are unable to.  I am sure

8   if you don't want to have your baby, somebody else would like

9   to adopt.  Abortions are the same as killing."  Is that your

10  view?

11           PROSPECTIVE JUROR:  Yes.

12           THE COURT:  If there is evidence about legal

13  abortions, let's say this, that people testify about legal

14  abortions that were had by the sexual partners of the

15  defendant, would you have difficulty in being fair and

16  impartial in considering the evidence against the defendant

17  based on that?

18           PROSPECTIVE JUROR:  Yes.

19           THE COURT:  Why?

20           PROSPECTIVE JUROR:  Because even though it's legal

21  like I feel it's like a law by human, but it's still wrong to

22  have, like, a baby aborted.

23           THE COURT:  The charges in this case involve

24  allegations of, among other things, sex trafficking, forced

25  labor, child pornography and child exploitation.  Is there

SN        OCR        RPR

1  anything about the nature of these allegations that would make

2  it difficult for you to be fair and impartial?  You answered

3  "Yes" and explained, "I have a four-year old daughter.  I

4  can't imagine what I would do if someone tries to exploit

5  her."

6           So if you are provided evidence of sexual

7  exploitation of a child, would that make it difficult for you

8  to consider whether the defendant is actually guilty beyond a

9  reasonable doubt of that charge?

10          PROSPECTIVE JUROR:  Can you repeat the question?

11          THE COURT:  Let me put it to you this way:  Would

12  you be fair and impartial in considering the actual evidence

13  regarding sexual exploitation of a child before reaching any

14  conclusion as to whether the defendant is actually guilty of

15  that charge?

16          PROSPECTIVE JUROR:  Yes, I can put my personal

17  feelings aside and just base on the evidence.

18          THE COURT:  Other questions?

19          MR. AGNIFILO:  No, Your Honor.

20          MS. PENZA:  No, Your Honor.

21          THE COURT:  Okay.  Thank you for coming in, sir.

22  Have a nice day.

23          PROSPECTIVE JUROR:  Thank you.

24          (Prospective juror exits.)

25          THE COURT:  Is there a motion?

1          MR. AGNIFILO:  There is from us, Judge.

2          THE COURT:  What is the motion?

3          MR. AGNIFILO:  Related to the abortions question,

4    Your Honor asked the potential juror squarely if the Court

5    were to give instructions on certain subjects and the law

6    allowed these to be legal abortions, and the juror gave his

7    honest view, which is it's just a law made by man suggesting

8    he's going to abide by a different set of principles, which is

9    his right, but I don't know that it makes him appropriate for

10   this case.

11         MS. PENZA:  Your Honor, the Government objection to

12   the juror be stricken for cause.  I think that he had said he

13   will follow instructions and be fair and impartial.  This is

14   not a case about abortion so the question is not was this

15   abortion legal or not.  And so I think that given all of his

16   other answers and his repeated statements that he will be fair

17   and impartial that he should not be stricken for cause.

18         MR. AGNIFILO:  Just to put a point on that he said

19   he could be fair and impartial with regard to the charges.  My

20   concern is that the abortion evidence and the reason it's in

21   the questionnaire is it's a very incendiary topic and it's

22   going -- if the Government's motion is granted, it will be

23   part of the trial evidence and it's not going to be one or

24   two.  It's going to be multiple abortions in the context of a

25   sex trafficking conspiracy.  So the abortions are linked into

1    the charge otherwise the Government wouldn't seek to admit

2    them and my concern is that he gave a very honest answer.  He

3    said certain things in his culture are taboo.  He's bringing

4    his culture -- which he should, but I don't think it makes him

5    the right juror for this case given some of the evidence that

6    the Government was to elicit.

7              MS. PENZA:  Your Honor, the defendant said he lives

8    in America.  He's been exposed to American culture and he said

9    repeatedly he will be fair to the charges that were presented

10   here.

11             THE COURT:  He didn't sound enthusiastic about it,

12   but I don't know enthusiasm is what we're dealing with here.

13   This is a very unusual case.  I am going to grant the motion

14   because I believe that in his earnest responses, he was

15   struggling with this issue about abortion and whether he could

16   actually put aside strongly held cultural views about the

17   issue.  And I think it would be inappropriate to put him in

18   the situation where he would have to struggle over it.  So the

19   motion is granted.

20             All right, Juror No. 71.

21             (Prospective juror enters.)

22             THE COURT:  Please be seated.  Welcome.

23             PROSPECTIVE JUROR:  Thank you.

24             THE COURT:  You are Juror No. 71.

25             PROSPECTIVE JUROR:  Yes.

1          THE COURT:  Okay.  Were you able to check to see if

2     you would be paid by your employer during the period of your

3     service?

4          PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And?

6          PROSPECTIVE JUROR:  I am.

7          THE COURT:  You are?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  Okay.  We expect that the trial will be

10    over by the time you take your vacation so that should not

11    create a problem.  Have you seen any stories or heard anything

12    about the trial since you filled out the questionnaire?

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  Any questions?

15         MR. AGNIFILO:  Nothing from us.

16         MS. PENZA:  No, Your Honor.

17         THE COURT:  Thank you very much for coming and have

18    a nice day.  Sorry for the delay.

19         (Prospective juror exits.)

20         THE COURT:  Is there a motion?

21         MR. AGNIFILO:  Not from us.

22         MS. PENZA:  No, Your Honor.

23         THE COURT:  Okay.  I think we have five who are

24    approved and one we have to call back.  Let's take a break and

25    reconvene at 2:00.  (Luncheon recess.)

1                A F T E R N O O N   S E S S I O N

2                          2:00 p.m.

3           THE COURT:  Couple of things.  The Government has

4     now indicated that it wishes to strike Jurors 46, 47, and 53.

5           Is that right?

6           MS. PENZA:  Yes, Your Honor.  Those are defense

7     strikes and we are consenting.

8           THE COURT:  Well, yes, but both sides concur on

9     that.

10          MR. AGNIFILO:  Correct.

11          THE COURT:  Those three individuals are struck on

12    consent for cause.

13          MR. AGNIFILO:  Yes.

14          THE COURT:  Then we have two jurors who have not

15    arrived yet who are on their way, Jurors 38 and 63.  So, we'll

16    take them out of turn, if necessary.  In fact, we'll take them

17    last so that I can give them the instructions that I need to

18    give them.

19          The other thing is that on the questions that you

20    have -- I understand that you're running a little late with

21    the questions -- I really need the questions the day before,

22    because what I do is I review all of the questionnaires with

23    your questions the day before or the night before.  And if you

24    send me the questions at 11:00 p.m. the night before, I

25    apologize, but I don't hang out in chambers 'til midnight in

1    order to review your questions.

2            So, they need to come in by -- I know you're here,

3    but around 4:00 o'clock the day before, so that after we're

4    done here I can go back and do some more work.  So, please

5    cooperate with me because we're going to be doing this for at

6    least a week, it would seem to me, maybe longer, depending on

7    how it goes with the strikes.  So, whatever you can do to

8    accommodate the Court, I would appreciate.

9            Are there other issues that we need to discuss

10   before we receive the jurors?

11           MR. AGNIFILO:  Nothing from us.

12           MS. PENZA:  No, Your Honor.

13           THE COURT:  Okay.  Let's bring in the group.  Thank

14   you.

15           Let me ask the gallery, I don't see the reporter

16   from The New York Post -- oh, there she is.

17           You moved.

18           MS. SAUL:  Yes, I did, Your Honor.

19           THE COURT:  You're still the designated observer.

20           MS. SAUL:  Yes.

21           THE COURT:  What is your name again?

22           MS. SAUL:  Emily Saul, S-A-U-L.

23           THE COURT:  Oh, yes, that's right.  I've seen your

24   byline.  Thank you.

25           (Prospective jurors enter.)

1    THE COURT:  Please be seated, everyone.

2    Good afternoon, ladies and gentlemen.  Thank you for

3  being here.  This afternoon, we're going to follow up with

4  some questions from your questionnaires.  And we'll be doing

5  that one juror at a time; in other words, you'll be sitting

6  there in the first chair in the first row by the microphone,

7  and we'll ask the follow-up questions based on what you said

8  in your questionnaires.

9    I'm going to remind you that I'm Judge Garaufis.

10  I'll be presiding at the trial.

11    The lawyers for the Government are Moira Penza,

12  Tanya Hajjar, Mark Lesko, and they are joined at counsel's

13  table by Michael Wenniger, the FBI case agent on this case.

14    The Defendant is Keith Raniere, who is sitting at

15  the defense table wearing the sweater.  His attorneys are Marc

16  Agnifilo, Teny Geragos, Paul DerOhannesian, and Danielle

17  Smith.

18    And I'd just like to go over a few things with you.

19  I'd like to advise you that Keith Raniere is the only

20  defendant who will stand trial before this jury that's being

21  selected.  Please do not speculate as to why this is the case.

22    And I'd also like to mention that the way we're

23  going to handle this is that all of you will, when we complete

24  this initial statement --

25    Where's Juror 33?  Okay.

Jury Selection                                    110

1    Everyone else will go back to the jury deliberation

2    room and wait to be called, and I thank you in advance for

3    your patience.  We move as swiftly as we can, but we are going

4    to question you all one at a time.  Juror No. 33 will just

5    take the first seat in the first row when the others go back

6    in the jury room.

7        I'd like to remind you that it's extremely important

8    that you follow my instruction that you not discuss this case

9    with anyone; not your family, your friends, your business

10   associates, and not other jurors.  So, for instance, when you

11   go back to the jury deliberation room, you can discuss the

12   weather, you can discuss the Mets, you can discuss the

13   Yankees, you can talk about the theater, you can talk about

14   movies you like, Netflix, Amazon Prime, whatever it is you

15   want to talk about, just don't talk about anything to do with

16   this case.

17       In addition you must not read, listen to, watch, or

18   access any accounts on this case on any form of media, such as

19   newspaper, TV, radio, podcasts, and the internet, nor research

20   or seek outside information about any aspect of this case.

21       Do not communicate with anyone about the case on

22   your phone, whether through e-mail, text messaging, or any

23   other means, through any blog or website, or by way of any

24   social media, including Facebook, Twitter, Instagram, YouTube,

25   or other similar sites.

Jury Selection                                        111

1           You may not consider anything you may have read or

2    heard about this case outside of this courtroom whether before

3    or during the voir dire.  Do not attempt any independent

4    research or investigation about the case.  Do not visit any of

5    the locations identified on the questionnaire or discussed

6    during the course of the jury selection process.  And as I

7    said, do not discuss the case in the jury room while you are

8    waiting to be interviewed.

9           Now, the trial will begin on Tuesday, May 7, and

10   will last up to six weeks, until mid-June.  The Court will

11   provide a schedule of trial days before the trial starts.

12   Please continue to call in to the jury information phone line

13   as instructed by the jury clerk.

14          And these rules about not discussing the case

15   continue for you until you are dismissed from jury service.

16   In other words, you'll be interviewed today and you may not

17   come back for a week and a half.  During that time, you're a

18   juror.  So, until you are excused from jury service, you

19   cannot and should not discuss the case with anyone.

20          With that having been said, I'm going to ask

21   everyone except Juror No. 33 to retire to the jury

22   deliberation room.

23          All rise for the jurors.

24          (Prospective jurors exit.)

25          THE COURT:  Good afternoon.

                    LAM       OCR       RPR

Jury Selection                                            112

1          THE PROSPECTIVE JUROR:  Hello.

2          THE COURT:  You're Juror No. 33, yes?

3          THE PROSPECTIVE JUROR:  I am.

4          THE COURT:  So, according to your questionnaire,

5     you're employed full-time at two jobs.

6          THE PROSPECTIVE JUROR:  I am.  I actually have two

7     full-time jobs.

8          THE COURT:  Well, will you be paid during your jury

9     service?

10          THE PROSPECTIVE JUROR:  Yes.

11          One I'll continue to do because I do it in the

12     evenings remotely.

13          THE COURT:  I see.

14          THE PROSPECTIVE JUROR:  And my daytime job, I'm

15     salaried.

16          THE COURT:  So, they will pay your salary during

17     your service?

18          THE PROSPECTIVE JUROR:  Yes, but they're keeping the

19     50 bucks per day.

20          THE COURT:  Oh, is it 50 now?

21          THE PROSPECTIVE JUROR:  It is.

22          THE COURT:  You indicated in your questionnaire to

23     this question:  Have you or anyone close to you everybody the

24     victim of sexual assault, including date rape?

25          You answered:  Yes.

LAM      OCR      RPR

1          You said, My niece -- and you put down the name of

2    your niece, but I'm not going to mention it here -- was a

3    victim of date rape.

4          THE PROSPECTIVE JUROR:  Yeah.

5          THE COURT:  How long ago was that?

6          THE PROSPECTIVE JUROR:  Maybe about five years ago.

7          THE COURT:  I see.  And was that reported?

8          THE PROSPECTIVE JUROR:  No.

9          It was something she talked about on social media

10   with the whole Me Too movement.  She disclosed that to her

11   social media world, which I'm a part of, as a way of

12   explaining that these sorts of things had happened to her too.

13         THE COURT:  I see.

14         And then you answered:  Do you have any personal

15   experience where you were victimized that would make it

16   difficult for you to be a fair and impartial juror in this

17   case?

18         And you said:  No.

19         THE PROSPECTIVE JUROR:  Unfortunately, I think many

20   people are sexually abused and it's, unfortunately, very

21   commonplace.

22         I don't think it would keep me from being able to be

23   serving as a juror.

24         THE COURT:  Do you think if you heard testimony of

25   that kind you could maintain your ability to be fair and

Jury Selection                                          114

1   impartial in considering whether to give credence to such

2   testimony?

3               In other words, there are witnesses who will come

4   here and say certain things and you have to evaluate their

5   veracity in the course of your jury service and your

6   deliberations.

7               Do you think you could be fair and impartial in

8   doing so?

9               THE PROSPECTIVE JUROR:  I think that the sexual

10  nature is not something that would affect me.

11              But, honestly, I've spent about 14 years really

12  deeply researching the topic of slavery.  I'm a historian, a

13  historical researcher.

14              THE COURT:  Right.

15              THE PROSPECTIVE JUROR:  And that is a topic that I'm

16  so deeply involved in, I've come to understand the harms of

17  slavery more than the average person because I've researched

18  it so deeply and for so long.

19              THE COURT:  If you have a certain nuance

20  understanding of something like that, do you think that would

21  assist you or hinder you in fairly and impartially considering

22  the issues that you would need to resolve in this case?

23              THE PROSPECTIVE JUROR:  You know, I would always try

24  to be fair, but I think that my knowledge of the harms of

25  enslaving another person are such that it would -- it would

Jury Selection                                             115

1  definitely be more impactful in my mind than on a person's

2  mind who had not done that level of research.  I would be

3  thinking about it a lot just because of my understanding of

4  it.

5           THE COURT:  And the research that you did was

6  slavery in what context, in American history or some other

7  subarea?

8           THE PROSPECTIVE JUROR:  I work for a history museum

9  in Oyster Bay, New York.  And about 14 years ago, we bought at

10 auction a very unique document, and I did a year long exhibit

11 on it, a Bible, that listed slaves of the household.  Then it

12 went a little further and I stumbled upon a story that I

13 really think is going to change African-American history.

14          I'm working on a book about a particular woman of

15 New York in the Revolutionary War and the years after.  It's

16 just an incredible untold story, and it's become, you know, a

17 little obsessive for me to get this published.  I've been

18 working on it for about 14 years.

19          THE COURT:  As a member of the jury, if you're

20 selected, will you limit your consideration of the facts to

21 the facts that are brought forward in this trial rather than

22 facts having to do with extraneous, though important to you,

23 issues that you have researched?

24          THE PROSPECTIVE JUROR:  I'll try to be fair.  I

25 think on the topic of enslaving others, it's going to impact

Jury Selection                                116

1  my judgment.  I just think that -- I'll try to be fair, but

2  it's going to definitely weigh on my mind because of my

3  exposure to that topic.

4          THE COURT:  All right.  Fair enough.

5          Now, you were asked this question:  Have you ever

6  known anyone who you believe was falsely accused of sexual

7  abuse or sexual assault of a minor or an adult?

8          You said:  Yes.  In my Connecticut job, my

9  co-worker's son was falsely accused of having a sexual

10 relationship with a minor.  He was a high school teacher and

11 lost his job.

12         So, you're also aware that sometimes people are

13 falsely accused of doing things that cause harm to them --

14         THE PROSPECTIVE JUROR:  And it's hard to say that

15 he's falsely accused.  I mean, he lost his job.  He was

16 cleared of any misconduct.  I mean, I can't know whether he

17 really had a relationship with a student or not.

18         THE COURT:  Well, you weren't his judge.

19         THE PROSPECTIVE JUROR:  Right.

20         THE COURT:  You weren't his jury.

21         THE PROSPECTIVE JUROR:  Right.

22         And it didn't go to court.  It was looked at by

23 Social Services and he lost his job.

24         THE COURT:  I see.

25         THE PROSPECTIVE JUROR:  And he's unable to work in

1   that field now.

2               THE COURT:  I see.

3               Any other questions?

4               Hearing none, thank you very much for coming in.

5   Have a nice day.

6               THE PROSPECTIVE JUROR:  You too.

7               (Prospective juror exits.)

8               THE COURT:  Any motions?

9               MR. AGNIFILO:  One second, Judge.

10              THE COURT:  Sure.

11              (Pause in proceedings.)

12              MR. AGNIFILO:  Your Honor, we're going to move to

13  strike the juror for cause over the slavery-related questions.

14              Part of the trial evidence in connection with the

15  DOS allegations is that there was sort of trappings of

16  slavery, including that the DOS slaves were called slaves and

17  these were slaves in the context of a life commitment, meaning

18  that they would be slaves to their masters forever.  And my

19  concern is this juror, obviously, is very passionate about the

20  subject and working on a book.

21              THE COURT:  For 14 years.

22              MR. AGNIFILO:  For 14 years.

23              And we can't get away from the fact that the whole

24  DOS idiom is really crafted around slavery and the use of the

25  term "slave," And it's built into the sex trafficking charge

Jury Selection                                        118

1   in that regard.

2          So, my concern is -- and I was thinking very hard is

3   there a question that I could think of to sort of tease this

4   out of her, and I don't know that there is without getting

5   into the evidence too, too much.  I think what she said is

6   it's going to be very impactful, it's going to weigh on her

7   mind, the whole enslavement of another person.

8          And I'm just concerned that she won't be able to put

9   sort of her life's work aside and her admitted strong feelings

10  about slavery because of her own hands-on research and look

11  the at the evidence objectively.

12         Thank you.

13         MS. PENZA:  Your Honor, the Government consents to

14  her being stricken for cause.

15         THE COURT:  I have a concern.  My concern is should

16  I be asking everybody questions about whether they feel

17  strongly about people being enslaved?

18         There may be people who have studied American

19  history, like myself, who have very strong views on this

20  subject.  There may be African-Americans whose ancestors were

21  slaves.  We could take this to the nth degree here in New

22  York, and I'm sure we'll find a lot of people who are among

23  the 500 who have very strong views on this.  They may not be

24  studying it or have studied it, but they may feel very

25  strongly about it.  And any time you use the term "slave," it

LAM        OCR        RPR

1    raises the specter that people will have strong feelings about

2    it.

3              So, I'm going to grant the motion, but we can take

4    this to an extreme.  This juror is talking about racial

5    slavery having to do with the America that brought on the

6    Civil War.  That's the slavery she's talking about.  She's not

7    talking about people being, quote, enslaved for sexual

8    reasons, allegedly.

9              So I'm just concerned that if we start striking

10   people over the slavery question, then we have a whole new set

11   of questions that we might have to add, and I don't want to

12   move in that direction.  This isn't slavery in the classic

13   racial slavery case.  So, I just raise this issue with you.

14   And if this is what you want, we'll go back to the drawing

15   board and start talking about slavery and all its

16   permutations.

17             Not knowing all the facts of this case -- which I

18   don't -- I don't know how close this comes to the kind of

19   slavery that this juror is addressing in her book, which she

20   has not yet finished in 14 years.  So, I just raise that with

21   you.

22             Juror 33 is struck.

23             (Prospective juror enters.)

24             THE COURT:  Please be seated, sir.  Good afternoon.

25             THE PROSPECTIVE JUROR:  Good afternoon.

Jury Selection                                    120

1        THE COURT:  You're Juror No. 36, correct?

2        THE PROSPECTIVE JUROR:  Yes, sir.

3        THE COURT:  Now, sir, you're employed full-time?

4        THE PROSPECTIVE JUROR:  Yes, sir.

5        THE COURT:  And will you be paid for your entire

6   jury service by your employer?

7        THE PROSPECTIVE JUROR:  Yes.

8        THE COURT:  You answered the following question:

9   Have you or anyone close to you ever been the victim of sexual

10  assault, including date rape?

11       And the answer was, Yes.

12       And then you said, Someone close to me had a similar

13  situation as a teenager of rape.

14       Is that right?

15       THE PROSPECTIVE JUROR:  Yes.

16       THE COURT:  And how old was this person?

17       THE PROSPECTIVE JUROR:  I want to say maybe in

18  middle school, so maybe 12, 13.

19       THE COURT:  And was this reported to the

20  authorities?

21       THE PROSPECTIVE JUROR:  No.

22       THE COURT:  And what was this person's relationship

23  with you?

24       THE PROSPECTIVE JUROR:  Really, like, a friend of a

25  friend.

Jury Selection                                      121

1          THE COURT:  How old were you at the time?

2          THE PROSPECTIVE JUROR:  I probably was about 15, 16.

3          THE COURT:  I see.  But you don't know what

4    happened, meaning the follow-up to the accusation of the

5    claim.

6          THE PROSPECTIVE JUROR:  No.

7          THE COURT:  Well, based on knowledge of this, would

8    that affect your ability to be fair and impartial in

9    considering the allegations in this case?

10         THE PROSPECTIVE JUROR:  Wouldn't affect me at all.

11         THE COURT:  Any other questions?

12         MR. AGNIFILO:  Nothing from us, Your Honor.

13         MS. PENZA:  No, Your Honor.

14         THE COURT:  Okay.  I want to thank you for coming

15   in.  You have a nice day, sir.

16         THE PROSPECTIVE JUROR:  You too.

17         (Prospective juror exits.)

18         THE COURT:  Is there a motion?

19         MR. AGNIFILO:  Not from us, Judge.

20         MS. PENZA:  No, Your Honor.

21         THE COURT:  All right.  Juror No. 36 is approved.

22         No. 37.

23         (Prospective juror enters.)

24         THE COURT:  Please be seated, sir.  Good afternoon.

25         Let's take a sidebar.

                    LAM     OCR     RPR

```
                     Sidebar                          122
```

1            (The following occurred at sidebar.)

2            THE COURT:  I received a letter from a psychologist

3    at a facility in Staten Island regarding this individual.

4    I'll just show it to counsel and then I'll ask a question.

5            (Pause in proceedings.)

6            THE COURT:  Is there any objection to my excusing

7    him for cause?

8            MS. PENZA:  No objection.

9            MR. AGNIFILO:  Not from us, no.

10           THE COURT:  Thank you.

11           (Sidebar ends; in open court.)

12           THE COURT:  Juror 37, thank you.  Good afternoon.

13           You work part-time?

14           THE PROSPECTIVE JUROR:  I work two part-time jobs.

15           THE COURT:  Teaching.  You teach?

16           THE PROSPECTIVE JUROR:  I am a part-time substitute

17   teacher and a part-time retail associate at Ikea Brooklyn.

18           THE COURT:  I have this letter.  This is a letter --

19           THE PROSPECTIVE JUROR:  My doctor, yes.

20           THE COURT:  Your doctor.

21           I want to thank you very much.  You have a nice day.

22   We appreciate you're coming in.  You're excused.

23           THE PROSPECTIVE JUROR:  Thank you very much.

24           (Prospective juror exits.)

25           THE COURT:  On consent of the parties, Juror 37 is

Jury Selection                                    123

1    excused.

2              MR. AGNIFILO:  Yes, on consent.

3              THE COURT:  We're going to do Juror No. 40 next.

4              (Prospective juror enters.)

5              THE COURT:  Please be seated, sir.

6              THE PROSPECTIVE JUROR:  Hi.

7              THE COURT:  You're Juror No. 40?

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  Welcome.  I have a few follow-up

10   questions for you.

11             Do you know whether you will be paid by your

12   employer for your jury service?

13             THE PROSPECTIVE JUROR:  Yeah, I think so, because

14   some of my co-worker, when they go to jury they get paid.

15             THE COURT:  Will you be paid for the entire period

16   of your jury service?

17             THE PROSPECTIVE JUROR:  I'm not sure about that.

18             THE COURT:  Well, it's something I'd like you to

19   check with your employer.

20             If you were not paid for the entire six weeks, would

21   that be a hardship for you?

22             THE PROSPECTIVE JUROR:  Yeah.  I have a mortgage to

23   pay, you know.

24             THE COURT:  Do you work weekends?

25             THE PROSPECTIVE JUROR:  Yeah, every other weekend.

LAM      OCR      RPR

Jury Selection                                                    124

1          THE COURT:  Every other weekend.  Well, you can keep
2    doing that, obviously.
3          Now, you answered this question:  There may be
4    evidence in this case about abortions.  Would hearing about
5    that type of evidence affect your ability to serve as a fair
6    and impartial juror in this case?
7          You answered:  Yes.
8          You said:  I don't believe in abortion.  For me, it
9    is a mortal sin.
10         THE PROSPECTIVE JUROR:  Yeah.
11         THE COURT:  And if there's evidence that there were
12   legal abortions of certain people, would that affect your
13   ability to be fair and impartial in this case?
14         THE PROSPECTIVE JUROR:  I think so because that's my
15   belief, that abortion is a sin.
16         THE COURT:  You indicated that when you were a
17   child, nine years old, one of your teachers tried to
18   impermissibly touch you; is that right?
19         THE PROSPECTIVE JUROR:  Yes, but it was, like, I
20   don't think nine is correct.  Like, 12 years old.
21         THE COURT:  You said nine.
22         THE PROSPECTIVE JUROR:  I think I was, like, fourth
23   grade, something like that.
24         THE COURT:  I see.
25         Would that affect your ability to serve as a fair

1   and impartial juror in a case involving issues of sexual

2   behavior?

3                   THE PROSPECTIVE JUROR:  Yeah, I think so, because

4   I'm a victim of that sexual abuse, something like that.

5                   THE COURT:  Have you ever been a juror before?

6                   THE PROSPECTIVE JUROR:  No.

7                   THE COURT:  And you say that you believe that this

8   would affect your ability to serve as a fair and impartial

9   juror because it changed your life:  I became a quiet person

10  and I don't like to talk about it.

11                  THE PROSPECTIVE JUROR:  Yeah, that's true.

12                  THE COURT:  So, you think you would be able to put

13  aside your personal views about abortion and to consider the

14  facts of this case, which may have a number of abortions that

15  took place which may or may not have been legal abortions?

16                  Let's take legal abortions first.

17                  THE PROSPECTIVE JUROR:  For me, the only legal

18  abortion is if the mother's life is in jeopardy.  That's the

19  only thing I can think that's going to be legal because

20  killing babies is really not my belief.

21                  THE COURT:  Any other questions?

22                  MR. AGNIFILO:  Nothing from us, Judge.

23                  MS. PENZA:  No, Your Honor.

24                  THE COURT:  I want to thank you for coming in.  You

25  have a nice day, sir.

1          THE PROSPECTIVE JUROR:  Thank you.

2          THE COURT:  You're welcome.

3          (Prospective juror exits.)

4          MR. AGNIFILO:  We move to excuse this potential

5   juror for cause on the abortion issue and on his personal

6   issue from when he was a child, which he seems to be

7   understandably traumatized by.  He doesn't want to talk about

8   it, he perceives it changed him as a person, made him quiet.

9   I think certainly in combination he should be excused for

10  cause.

11         MS. PENZA:  Your Honor, the Government consents

12  regarding his own personal experience of childhood sexual

13  abuse, but the Government does wish to state that we don't

14  consent to a cause strike on abortion given his statements so

15  far.

16         It can't be everyone who is pro life can't serve on

17  this jury.  That's not what this case is about and it's

18  cutting off a huge number of potential jurors.

19         THE COURT:  Motion is granted.

20         (Prospective juror enters.)

21         THE COURT:  Please be seated, sir.  Good afternoon.

22  You are Juror No. 42, correct?

23         THE PROSPECTIVE JUROR:  That is correct.

24         THE COURT:  With respect to your employment, are you

25  employed full-time?

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  And you do geographic field data

3     collection, right?

4          THE PROSPECTIVE JUROR:  That's correct.

5          THE COURT:  And did you check with your employer as

6     to whether they pay for your jury service.

7          THE PROSPECTIVE JUROR:  Yes, they do.

8          However, the nature of the service to date so far,

9     that kind of constant standby, interferes extremely with my

10    ability to get any work down.  My job is 100 percent travel,

11    basically.  The whole call in to show up the next day really

12    makes any sort of getting any anything done and interferes

13    with my ability to collect hours.

14         They will pay me for jury service.  They won't pay

15    me for not jury service, when I'm calling in and so forth,

16    which is a frustration.

17         THE COURT:  They will pay you for the days they want

18    you but you can't serve; is that what you're saying?

19         THE PROSPECTIVE JUROR:  Correct.  If I have to call

20    and see if I'm wanted, I can't travel to where I actually get

21    work done.  So, if I need to be home and on standby but I'm

22    not actually coming into court, I'm not paid and I can't make

23    hours for work because work is in Plattsburgh or whatever.

24         THE COURT:  You will know what days you have to be

25    in court.  And those are the days you're not available to

Jury Selection                                             128

1   work, right?

2            THE PROSPECTIVE JUROR:  That has not been the case

3   so far.  The whole call-in-and-we'll-see-if-we-need-you-on-

4   this-particular-day has been a frustration.

5            THE COURT:  I'm sure it is, but if you were selected

6   to be on the jury you will receive a schedule of the days that

7   you will be sitting as a juror.

8            THE PROSPECTIVE JUROR:  Okay.

9            THE COURT:  We don't just tell you tomorrow don't

10  bother coming in.  You need to know because you, and many

11  other people, can arrange their work schedule in such a way

12  that they can maximize their availability for work and still

13  serve on the jury.

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  So, that's how it will work.

16           THE PROSPECTIVE JUROR:  Okay.

17           THE COURT:  I just wanted to let you know.  It's not

18  like this, where every day we're interviewing a certain number

19  of people and you just happen to be on Monday.  We're not

20  going to call you back on Wednesday once we've interviewed you

21  on Monday and the trial doesn't start until May 7.

22           THE PROSPECTIVE JUROR:  Okay.

23           THE COURT:  Any questions?

24           MR. AGNIFILO:  Not from us, Judge.

25           THE COURT:  Okay.  Thank you very much for coming

LAM        OCR        RPR

1   in.  Have a nice day.

2           (Prospective juror exits.)

3           THE COURT:  Is there a motion?

4           MR. AGNIFILO:  Not from us.

5           MS. PENZA:  No, Your Honor.

6           I'm still a little confused as to his hardship, but

7   it sounds like he would be paid for the period of trial, in

8   which case we have no motion.

9           THE COURT:  He says he'll be paid for his jury

10  service.

11          MS. PENZA:  That's fine, Your Honor.

12          THE COURT:  Juror 42 is approved.

13

14          (Continued on the following page.)

15

16

17

18

19

20

21

22

23

24

25

Prospective Juror No. 44                               130

1          THE COURT:  Let's find out when in June she's going

2     away.  Juror No. 44.

3               (Prospective Juror No. 44 enters the courtroom.)

4          THE COURT:  Come on in.  Have a seat, ma'am.

5          THE PROSPECTIVE JUROR:  Hi there.

6          THE COURT:  Please be seated, everyone.

7          You are Juror No. 44, correct?

8          THE PROSPECTIVE JUROR:  That's correct.

9          THE COURT:  Okay.  Welcome.

10          You indicated in your questionnaire that you would

11     be traveling in June.  When in June are you going to travel?

12          THE PROSPECTIVE JUROR:  It's -- I believe it's the

13     second or third weekend.  I'm not sure.  We're going to

14     Nashville, my daughter and her girlfriend, to see Ariana

15     Grande at a concert.  I would need to get the specific dates.

16          THE COURT:  You don't know what days you are going

17     to be away?

18          THE PROSPECTIVE JUROR:  It's going to be Thursday

19     through a Sunday.

20          THE COURT:  You don't know which weekend?

21          THE PROSPECTIVE JUROR:  If I had a calendar, I could

22     probably tell.

23          THE COURT:  Here's a calendar.

24          THE PROSPECTIVE JUROR:  I believe it's the 6th, 7th,

25     8th and the 9th.

1          THE COURT:  Thank you.

2          Are there any questions?

3          MR. AGNIFILO:  I don't, Judge.

4          MS. PENZA:  No, Your Honor.

5          THE COURT:  Okay.  Enjoy the concert.

6          THE PROSPECTIVE JUROR:  Thank you.

7          THE COURT:  Feel better.

8          THE PROSPECTIVE JUROR:  Thank you.

9          (Prospective Juror No. 44 exits the courtroom.)

10          MR. AGNIFILO:  For cause, Judge.

11          MS. PENZA:  We object, Your Honor.  She's only --

12    the concert, I believe, is the 7th.  We're not sitting on

13    Fridays anyway and so we believe that we could, accommodations

14    could be made.  Perhaps we can end early on the Thursday but

15    it's not a cause basis in a six-week trial --

16          MR. AGNIFILO:  I withdraw it.

17          THE COURT:  Well --

18          MR. AGNIFILO:  Maybe we need more information.  I

19    don't know.

20          THE COURT:  Well, then we need more information.

21          Would you see if you can get that juror back?

22    Because we have some other questions then.

23          (Prospective Juror No. 44 enters the courtroom.)

24          THE COURT:  We just have a couple more questions.

25    Sorry about that.

Prospective Juror No. 44                    132

1          THE PROSPECTIVE JUROR:  That's okay.

2          THE COURT:  So what time are you leaving on

3   Thursday?  Do you have tickets on an airplane?

4          THE PROSPECTIVE JUROR:  Not yet.  It's going to be

5   an evening flight with my daughter.

6          THE COURT:  Oh.  Okay.  We're not -- we don't work

7   on Fridays.  We don't have -- we don't have, expect to have a

8   trial on this Friday.

9          THE PROSPECTIVE JUROR:  Okay.

10         THE COURT:  All right.  So if you left on Thursday

11  evening and came back on Sunday, you would not miss any day of

12  trial is what I'm saying.

13         THE PROSPECTIVE JUROR:  Right.

14         THE COURT:  I have another question because you

15  raised the issue about your health.

16         You indicated sometimes you need to walk around.

17  The way it works at the trial is we go from 9:30 to 11:15, we

18  take a break, then we have lunch at 1:00.  Then at 2:00, we

19  start again and at about midway through the afternoon, we take

20  another break and we finish by 5:00, but if someone needs to

21  leave the room, they did leave the room and we wait so it's

22  not, it happens all the time.  It doesn't single one person

23  out.  There may be three people on the jury who at some point

24  need to leave the room when we're trying the case and we just

25  wait, but we also have those designated periods.

Prospective Juror No. 48                                      133

1          Do you think you would have any trouble serving on a
2    jury with those --
3          THE PROSPECTIVE JUROR:  No, because I do that at
4    work where I sit for quite some time and then I get up and I
5    need to walk around a little bit.  Otherwise, I start to grow
6    roots.
7          THE COURT:  Okay.  Well, I just wanted to explain to
8    you how it works.  I didn't expect that you would know how we
9    try cases here but that is how I try cases.  All right?
10         Any other questions?
11         MR. AGNIFILO:  Nothing from us, gum.
12         MS. PENZA:  No, Your Honor.
13         THE COURT:  Okay.  Let's do this again.  Have a nice
14   day.
15         THE PROSPECTIVE JUROR:  Thank you.
16         (Prospective Juror No. 44 exits the courtroom.)
17         THE COURT:  Is there a motion?
18         MR. AGNIFILO:  Not from us.
19         MS. PENZA:  No, Your Honor.
20         THE COURT:  All right.  Juror No. 44 is approved.
21         Now we will go to 48.
22         (Prospective Juror No. 48 enters the courtroom.)
23         THE COURT:  Please be seated, sir.  Welcome.
24         THE PROSPECTIVE JUROR:  Thank you.
25         THE COURT:  You are Juror No. 48?

Prospective Juror No. 48                    134

1              THE PROSPECTIVE JUROR:  Yes.

2              THE COURT:  Okay.  And you are a government

3    employee?

4              THE PROSPECTIVE JUROR:  Correct.

5              THE COURT:  Okay.  Would the fact that you are a

6    government employee have any effect on your ability to be fair

7    and impartial in considering a case where government employees

8    will be testifying and the case was brought by the government

9    against a defendant?

10             THE PROSPECTIVE JUROR:  No, that would not be a

11   problem.

12             THE COURT:  Okay.  Now, you also indicated that you

13   have heard something about the NXIVM case, is that right?

14             THE PROSPECTIVE JUROR:  That's correct.

15             THE COURT:  Where did you hear about it?

16             THE PROSPECTIVE JUROR:  I think it was in the New

17   York Post or something like that.

18             THE COURT:  The New York Post?  Okay.  And so what

19   did you learn, if you remember?

20             THE PROSPECTIVE JUROR:  I just learned that there

21   was a star from a show that I used to watch, "Smallville."

22             THE COURT:  Right.

23             THE PROSPECTIVE JUROR:  That she was part of this

24   case.

25             THE COURT:  I see.

Prospective Juror No. 48                    135

1              THE PROSPECTIVE JUROR:  But --

2              THE COURT:  Assume for the sake of argument that

3    this person has some relationship with the case.  Do you think

4    that would affect your ability to be fair and impartial in

5    considering the facts of this case here in court?

6              THE PROSPECTIVE JUROR:  No, I don't think so.

7              THE COURT:  Okay.  That show was on a long time ago.

8              THE PROSPECTIVE JUROR:  Yes.

9              THE COURT:  You used to watch it?

10             THE PROSPECTIVE JUROR:  I used to watch it all the

11   time, yes, because I'm a big Superman fan.

12             THE COURT:  You too?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Okay.  Are there any other questions?

15             MS. PENZA:  No, Your Honor.

16             MR. AGNIFILO:  No.

17             THE COURT:  Okay.  I want to thank you for coming

18   in.  You have a nice day.

19             THE PROSPECTIVE JUROR:  Thank you.  You too:

20             (Prospective Juror No. 48 exits the courtroom.)

21             THE COURT:  Is there a motion?

22             MR. AGNIFILO:  Not from us.

23             MS. PENZA:  No, Your Honor.

24             THE COURT:  All right.  Juror No. 48 is approved.

25             Juror No. 50.

Prospective Juror No. 50                              136

1                    (Prospective Juror No. 50 enters the courtroom.)

2              THE COURT:  Please be seated, sir.  Welcome.

3              You are Juror No. 50, correct?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  Okay.  And you work part time at this

6     time or full time?

7              THE PROSPECTIVE JUROR:  I work part time.

8              THE COURT:  Okay.  And you work at a hospital,

9     correct?

10             THE PROSPECTIVE JUROR:  Yes.

11             THE COURT:  And you will be paid for your jury

12    service, is that right?

13             THE PROSPECTIVE JUROR:  Yes.

14             THE COURT:  Okay.  Have you read anything about this

15    case?

16             THE PROSPECTIVE JUROR:  It did not occur to me on

17    April 8th when I did the questionnaire but later in the day, I

18    realized this was a story that broke last year.  So I had read

19    last year about this case, yes.

20             THE COURT:  Whatever you read, would you be able to

21    separate that out and only consider the evidence that is

22    presented here in the court in considering what the jury's

23    decision will be?

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  Okay.  Any other questions?

1           MR. AGNIFILO:  Nothing from us, Judge.

2           MS. PENZA:  No, Your Honor.

3           THE COURT:  Okay.  Thanks very much.  Have a nice

4      day.

5           (Prospective Juror No. 50 exits the courtroom.)

6           THE CLERK:  52?

7           THE COURT:  Yes.

8           (Prospective Juror No. 52 enters the courtroom.)

9           THE COURT:  Please be seated, sir.

10          THE PROSPECTIVE JUROR:  Thank you.

11          THE COURT:  Good afternoon.

12          THE PROSPECTIVE JUROR:  Good afternoon.

13          THE COURT:  You are Juror No. 52, is that correct?

14          THE PROSPECTIVE JUROR:  Yes.

15          THE COURT:  And let me just ask you about your

16     employment.  You indicate that you are employed full time.  Do

17     you work for a government agency or a private entity?

18          THE PROSPECTIVE JUROR:  I work for a private bank.

19          THE COURT:  You work for a bank?  And the bank will

20     pay you for your jury service?

21          THE PROSPECTIVE JUROR:  Up to my understanding, yes.

22     They did not mention any time limit so, yes.

23          THE COURT:  Is it a large bank or a small bank?

24          THE PROSPECTIVE JUROR:  It's one of the biggest

25     banks.

Prospective Juror No. 52                    138

1          THE COURT:  Okay.  You have answered my question.
2    Thank you.
3          Now, you indicated that you are a Muslim and you
4    attempt to pray five times a day and you fast in, it will be,
5    I guess, next month, Ramadan?
6          THE PROSPECTIVE JUROR:  May 6th.
7          THE COURT:  That lasts a month?
8          THE PROSPECTIVE JUROR:  Thirty days, yes.
9          THE COURT:  Well, let me just tell you about the
10   schedule for jury service.  Every day of the trial, we start
11   at 9:30, we take a mid-morning break, we take a lunch break,
12   then we take a mid-afternoon break and then we break for the
13   day at 5:00.  Do you think you could deal with that?
14         THE PROSPECTIVE JUROR:  Schedule-wise, it's not a
15   problem.  It's -- the only thing that concerns me is the
16   content of the case as, you know, religious beliefs, some of
17   that stuff is prohibited for me to go through.  So that's the
18   only reason I would be a fear about that.  Other than that,
19   the schedule, I would be at work during that time anyway so
20   that doesn't matter, being here or being at work.
21         THE COURT:  So the religious impediment, can you
22   identify what that is?
23         THE PROSPECTIVE JUROR:  So, part of the
24   questionnaire had mentioned that some of the, you know,
25   related evidence has nude or sexual, you know, contents.

Sidebar                                          139

1  That's part of my concern.  Other than that, being here until

2  5:00 or 5:30, that is not a problem.

3         THE COURT:  Well, there will be, I believe, evidence

4  presented, either, you know, visual, documentary or witness

5  testimony having to do with some of those issues, having to do

6  with sexual activity and so on.

7         Are you saying that because you are a Muslim, it is

8  something that you are forbidden from hearing?

9         THE PROSPECTIVE JUROR:  Not necessarily hearing but

10  if it's something in terms of the visuals, then I'm not

11  supposed to see it while at least I'm fasting.

12         THE COURT:  Oh, I see.

13         THE PROSPECTIVE JUROR:  So that's the only, you

14  know, nude pictures or anything in that, in that content.

15  Hearing it, of course, you're hearing the facts so that

16  shouldn't be a problem.

17         THE COURT:  Are there other questions?

18         MR. AGNIFILO:  Can we have a quick sidebar, Judge?

19         THE COURT:  Sure.

20         (The following occurred at sidebar.)

21         THE COURT:  Yes.

22         MR. AGNIFILO:  My concern is he literally can't look

23  at naked women which is going to be part, a lot of the

24  government's evidence.  I think he literally can't look at it.

25         MS. PENZA:  Certainly there is going to be, there is

CMH     OCR     RMR     CRR     FCRR

Prospective Juror No. 52                    140

1   going to be explicit sexual images.  I'm wondering if we can

2   do something to accommodate his concerns.  Like, for him,

3   perhaps there can be, like, blurring or redacting of

4   genitalia, things like that, if that would be enough to

5   alleviate his concerns.  We're not looking to obviously hurt

6   his religious rights, but we also don't believe it should be a

7   reason for him not to be allowed to serve as a juror.

8            THE COURT:  All right.  Let me ask.  Thank you,

9   everybody.

10           (In open court; sidebar ends.)

11           THE COURT:  So let me put a finer point on this for

12  you.

13           THE PROSPECTIVE JUROR:  Sure.

14           THE COURT:  If during this period there are

15  photographs, let's say, of women who are naked but the, the

16  photos are let's say Photoshopped to avoid showing women's

17  genitalia and so on, that would be all right?

18           THE PROSPECTIVE JUROR:  As long as, yes, the private

19  parts and, you know, things are covered, yes, that's fine.

20           THE COURT:  Well, covered but it would not -- they

21  would not be covered.  They would be disguised.  There's a

22  difference between -- in other words, they are not going to

23  put a dress on a woman.  They are going to do what is done on

24  late night television, you know, where they make it so you

25  can't tell what it is but you know the person was not dressed.

Prospective Juror No. 52                                    141

1   I am not quite sure how that would be done but that is not my

2   problem.

3           THE PROSPECTIVE JUROR:  Yes, I'm not sure either.

4   That really, you know, depends on, you know, the material.

5           Part of me, you know, really wants to serve as a

6   citizen but the timing is really critical so I'll let it --

7   I'll let you decide what's the best scenario in that,

8   considering the, you know, the sensitivity of the issue and

9   I'll leave it up to you.

10          THE COURT:  Well, but I want to know, you know,

11  how --

12          THE PROSPECTIVE JUROR:  If you want me to say that

13  if I will be comfortable, the answer would be no, but the, you

14  know, again, it's -- you know, as I said, as a citizen, my

15  duty is to serve and I am not trying to run away from that,

16  but I'm just letting you know what's important to me as a

17  human and that will not be comfortable but if that's something

18  is required, I will be here.

19          THE COURT:  All right.  Well, I appreciate your

20  willingness to attempt to accommodate our efforts to seat a

21  jury so we thank you for that and I am sensitive to your

22  religious --

23          THE PROSPECTIVE JUROR:  Thank you.

24          THE COURT:  -- principles.

25          Any other questions?

1           MR. AGNIFILO:  Nothing from us.

2           MS. PENZA:  No, Your Honor.

3           THE COURT:  All right.  Thank you for coming in.

4    You have a nice day, sir.

5           THE PROSPECTIVE JUROR:  You too.  Thank you.

6           (Prospective Juror No. 52 exits the courtroom.)

7           MS. PENZA:  Your Honor, may the government have a

8    minute to confer?

9           THE COURT:  You may have a minute.

10          MS. PENZA:  Thank you.

11          (Pause.)

12          THE COURT:  Yes?

13          MS. PENZA:  Yes, Your Honor.  So we, we checked and

14   it appears as if Ramadan ends on June 4th.  So what the

15   government proposes, we were obviously going to take great

16   concerns about how these images are displayed anyway within

17   the course of the trial and so we're wondering if there's a

18   way that the, that this juror could just not review those

19   images which we were only going to seek to publish to the jury

20   until after Ramadan.  So by the time we're in deliberations,

21   Ramadan will have ended and so we believe he could be

22   accommodated that way.

23          THE COURT:  Well, I'm not sure that this is only for

24   Ramadan that he's speaking about.  Did you get that sense?

25          MS. PENZA:  Yes, I did.  I got the sense that, like,

Prospective Juror No. 52                              143

1   during Ramadan, during that period, it's a specific level of

2   concern.

3           THE COURT:  I see.

4           MR. AGNIFILO:  So my concern is two-fold.  One, I

5   think, I agree with Ms. Penza, it is a heightened sort of --

6           THE COURT:  Right.

7           MR. AGNIFILO:  -- but, and I don't know how the

8   government is going to handle this.  If the government's

9   intent regardless of this juror is to show naked pictures, I

10  wouldn't want one juror seeing different evidence than all the

11  other jurors.

12          THE COURT:  I don't think -- was that what you

13  planned?

14          MS. PENZA:  No, I think, I think we're proposing

15  that for actual naked images, we were going to, don't hold me

16  to the exact format of publication, Your Honor, but I think we

17  were going to have individualized binders for the jurors so

18  that it can be done in a discreet manner and so given that, I

19  think that this juror could choose not to look at them at the

20  time while they're being described and choose to look at them

21  after Ramadan ends.

22          MR. AGNIFILO:  I have concerns with one juror doing

23  something different than the other eleven jurors in terms of a

24  piece of evidence.

25          I love this young man.  I would love this young man

CMH      OCR      RMR      CRR      FCRR

Prospective Juror No. 52                                    144

1  to be a juror in this case.  He's honest, he has great

2  civic-mindedness, he's every good thing, however, this is a

3  case that focuses on naked women.  Not every case in this

4  courthouse does.  He can get on a nice securities fraud case

5  and not have this problem.

6         THE COURT:  Okay.  I understand that.

7         MR. AGNIFILO:  So I have to object to him only

8  because of the fact that he has to look at the evidence I

9  think when it comes in with the other jurors.  He shouldn't

10  have to play catch-up after Ramadan ends.  He's a great young

11  man.  I would love to have him as a juror in my trial but I

12  just don't think it's workable.

13         MS. PENZA:  Your Honor, the government believes that

14  his religious needs could be accommodated here.

15         THE COURT:  Well, all the jurors could be shown the

16  same picture with the, in the way that I described sort of

17  artlessly to the juror and then later on, you could publish it

18  without the adjustments.

19         MS. PENZA:  Yes, Your Honor, and there are only a

20  few specific pieces of evidence where we would need to do

21  that.

22         THE COURT:  But I agree with Mr. Agnifilo that I

23  wouldn't want to say, Well, you know, 17 of you are going to

24  see the full monty here and one of you is just going to see an

25  adjustment, you know.

Prospective Juror No. 52                              145

1        MS. PENZA:  Well, Your Honor, we would be willing to

2    do that and then pick up again --

3        THE COURT:  Why don't we take that up.  If he is a

4    juror and we have this issue, we can discuss it at the time,

5    but understanding that all the jurors have to see the same

6    thing at the same time and if you want, if you are willing to

7    accommodate the religious requirements of this juror during

8    Ramadan, I will certainly cooperate with you, but all jurors

9    have to see the same thing at the same time.

10       MS. PENZA:  Fair enough, Your Honor.  Thank you.

11       MR. AGNIFILO:  Thank you, Judge.

12       THE COURT:  Are you objecting now?  You can object.

13   It is up to you.

14       MR. AGNIFILO:  I'm happy with the Court's proposal.

15   I mean, I want to work with him.

16       THE COURT:  I know you like him.

17       MR. AGNIFILO:  I do.

18       THE COURT:  Okay.  All right.  There is no

19   objection.  He is approved.

20       MR. AGNIFILO:  Your Honor, before we get to the next

21   one, if Your Honor said it, I missed it.  I don't know if Your

22   Honor actually gave the go-ahead to No. 50, the one before 52.

23   We didn't object and the government didn't object.

24       THE COURT:  50 is approved.

25       MR. AGNIFILO:  Okay.  Thank you.

Prospective Juror No. 57                          146

1           THE COURT:  Thank you.  So 52 is approved.

2           We are doing 57 next.

3           (Prospective Juror No. 57 enters the courtroom.)

4           THE COURT:  Be seated, sir.  Good afternoon.

5           THE PROSPECTIVE JUROR:  Your Honor, good afternoon.

6           THE COURT:  You are Juror No. 57, are you not?

7           THE PROSPECTIVE JUROR:  Yes, I am.

8           THE COURT:  Now, you are currently employed full

9    time?

10          THE PROSPECTIVE JUROR:  No, I am unemployed at this

11   point.

12          THE COURT:  Okay.  Are you looking for work?

13          THE PROSPECTIVE JUROR:  Yes, I am.

14          THE COURT:  Okay.  Are you close to finding a new

15   job?

16          THE PROSPECTIVE JUROR:  At this point, no.  I've

17   been applying for jobs.  No snags.  I'm still applying.  At

18   this point, I'm, like, totally free.

19          THE COURT:  Okay.  And so you are available for a

20   six-week trial is what you are saying?

21          THE PROSPECTIVE JUROR:  Yes.  Yes, I am.

22          THE COURT:  And what was the last job that you had?

23   Was that as a switchboard operator at an adult-assisted living

24   facility?

25          THE PROSPECTIVE JUROR:  Yes, Your Honor.  It was

CMH        OCR        RMR        CRR        FCRR

Prospective Juror No. 57                    147

1   Sanford Home for Adults, front desk person.

2            THE COURT:  Okay.  All right.  How long were you

3   there?

4            THE PROSPECTIVE JUROR:  The last time was for about

5   nine months but I've been going back to that employment over

6   the course of, I would say, six, seven years.

7            THE COURT:  So you work there from time to time when

8   they need you, is that it?

9            THE PROSPECTIVE JUROR:  Well, it's not when they

10  need me but -- actually, yes, it's when they need me.  When

11  they really need me, they put me on full time but this past

12  time, they haven't called me back.

13           THE COURT:  I see.

14           Now, you answered this question:  Have you ever

15  known anyone who you believe was falsely accused of sexual

16  abuse or sexual assault of a minor or adult.  You checked yes

17  and said:  My father before I was born but he was able to

18  prove his innocence.  I don't have contact with my father.

19           THE PROSPECTIVE JUROR:  No, I don't.

20           THE COURT:  So how did you know about this incident?

21           THE PROSPECTIVE JUROR:  Because it was a story that

22  my mom told me from when I was younger.

23           THE COURT:  I see.  So it was based on what your mom

24  said?

25           THE PROSPECTIVE JUROR:  Yes.  This happened way

1   before I was born.

2          THE COURT:  I see.  And do you think that knowing

3   about this allegation, we'll call it an allegation here, would

4   affect your ability to be fair and impartial in considering

5   the evidence in this case?

6          THE PROSPECTIVE JUROR:  Absolutely not.

7          THE COURT:  Okay.  Have you ever been on a jury

8   before?

9          THE PROSPECTIVE JUROR:  No, I have not.

10          THE COURT:  And so do you live with members of your

11   family?

12          THE PROSPECTIVE JUROR:  Yes, I do.

13          THE COURT:  Which members?

14          THE PROSPECTIVE JUROR:  I live with my mother and my

15   two brothers.

16          THE COURT:  I see.  In Flushing?

17          THE PROSPECTIVE JUROR:  East Elmhurst to be exact.

18          THE COURT:  East Elmhurst.  Close enough.

19          All right.  Do we have other questions?

20          MR. AGNIFILO:  Nothing from us.

21          MS. PENZA:  No, Your Honor.

22          THE COURT:  Okay.  Well, thank you very much for

23   coming in.  You have a nice day, sir.

24          THE PROSPECTIVE JUROR:  You too, Your Honor.

25          (Prospective Juror No. 57 exits the courtroom.)

Prospective Juror No. 60                          149

1           THE COURT:  Is there a motion?

2           MR. AGNIFILO:  Nothing from us.

3           MS. PENZA:  No, Your Honor.

4           THE COURT:  All right.  57 is approved.

5           Juror 60.

6           Is there an issue in this case about whether this

7    was in the newspaper?

8           MS. PENZA:  There is, Your Honor.

9           (Prospective Juror No. 60 enters the courtroom.)

10          THE COURT:  Please be seated, sir.

11          THE PROSPECTIVE JUROR:  Good afternoon.

12          THE COURT:  You are Juror No. 60?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Welcome.  I have just a few questions

15   for you.

16          You are not employed currently?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  Are you a student?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  I see.  Are you in college?

21          THE PROSPECTIVE JUROR:  Oh, I'm not currently in

22   this semester, but --

23          THE COURT:  Okay.  So you are available to be a

24   juror?

25          THE PROSPECTIVE JUROR:  Yes.

Prospective Juror No. 60                              150

1       THE COURT:  Do you have a part-time job?

2       THE PROSPECTIVE JUROR:  Seeking it.

3       THE COURT:  You are seeking it?  Okay.

4       THE PROSPECTIVE JUROR:  Yes.

5       THE COURT:  Okay.  All right.  Now, there is a

6   question that you answered as follows.

7           There may be evidence in this case about

8   fraternities, sororities, secret societies, rituals or cults.

9   Would hearing about this type of evidence affect your ability

10  to serve as a fair and impartial juror in this case?  You

11  answered yes and you explained:  More so cults and rituals.

12  Many in history have had tragic endings and show how --

13  "inept"?  -- infallible or inevitable humans are to resisting

14  people.

15          What do you mean?

16          THE PROSPECTIVE JUROR:  I guess you could say with

17  cults, like, not necessarily, like, the leaders themselves but

18  the followers.

19          THE COURT:  What about them?

20          THE PROSPECTIVE JUROR:  They're easy to manipulate.

21          THE COURT:  I see.  Okay.  Have you studied cults?

22          THE PROSPECTIVE JUROR:  Oh, no.  I've just heard a

23  few stories.

24          THE COURT:  Stories.  Okay.  Now, the stories, you

25  have heard stories, but can you put aside whatever you heard

CMH      OCR      RMR      CRR      FCRR

1   about cults in general and consider the evidence in this case

2   solely on the basis of what you see and hear in court and be

3   fair and impartial in considering that evidence when you have

4   to decide on a verdict?

5            THE PROSPECTIVE JUROR:  Yes.

6            THE COURT:  The charges in this case involve

7   allegations of, among other things, sex trafficking, forced

8   labor, child pornography and child exploitation.  Is there

9   anything about the nature of these allegations that would make

10  it difficult for you to be fair and impartial?

11           You checked "yes" and you said:  "All allegations

12  make me uneasy living with" certain "brothers" -- I can't tell

13  what that word is -- "and having a niece."

14           What do you mean?

15           THE PROSPECTIVE JUROR:  Well, there's always going

16  to be, you know, like, sex crimes, but particularly with

17  children, it just makes me feel a little uncomfortable.

18           THE COURT:  Well, if evidence is presented involving

19  allegations of a crime of a sexual nature with someone who is

20  underage, do you believe that you could be fair and impartial

21  in considering the validity of that allegation and that

22  evidence and reach a verdict in consultation with your

23  co-jurors that would be fair and impartial?

24           THE PROSPECTIVE JUROR:  I'm not sure.

25           THE COURT:  Why not?

Prospective Juror No. 60                          152

1       THE PROSPECTIVE JUROR:  Like I said, the nature of

2   it involving underage just makes me uncomfortable.

3       THE COURT:  Do you have any religious,

4   philosophical, moral or other belief that might make you

5   unable to render a not guilty verdict?  You said:  Yes, using

6   money, power to manipulate others into doing whatever you

7   want, moral.

8       So what do you mean by that?

9       THE PROSPECTIVE JUROR:  I find that when people have

10  a lot of money, it's very easy to convince others to do many

11  things, commit crimes, a lot of personal relatives to get

12  something out of them, it could be insurance, it could be

13  convincing them to give you their Social Security.  There are

14  so many examples but I believe money is power.

15      THE COURT:  Any other questions?

16      MR. AGNIFILO:  No questions, Your Honor.

17      MS. PENZA:  No, Your Honor.

18      THE COURT:  Okay.  Thank you for coming in.  Have a

19  nice day.

20      THE PROSPECTIVE JUROR:  You too.

21      (Prospective Juror No. 60 exits the courtroom.)

22      THE COURT:  Is there a motion?

23      MR. AGNIFILO:  Yes.  We would move to excuse him for

24  cause, Judge.  I -- he hasn't shown --

25      THE COURT:  Why?

1          MR. AGNIFILO:  Well, because Your Honor asked him if

2     he could follow the law in this case and he said that the

3     nature of the charges with underage, you know, children make

4     him uncomfortable, and I think on a larger -- Your Honor's

5     probably done as much of this as anybody.  I think some people

6     present as someone who can follow the Court's instruction

7     clearly.  I think some people present maybe not as much so.  I

8     think this young man presents not as much so and he said as

9     much.  So I just -- our motion is to excuse him for cause.

10          MS. PENZA:  Your Honor, the government objects.  The

11     juror said that he was uncomfortable and, obviously, the

12     charges in this case, I think, would make anybody

13     uncomfortable and so that isn't the standard for a cause

14     strike here.  And, again, even the other question Your Honor

15     asked, it's not really what this case is about so I don't

16     think there is anything about his answers to your question,

17     Your Honor, that indicate that he could not actually follow

18     Your Honor's instructions.

19          THE COURT:  One of the problems with a juror, and I

20     appreciate everything everyone has said, is who is not

21     terribly mature, which he is not, is that coming to grips with

22     this kind of a situation, with this kind of factual pattern,

23     is very difficult for anyone but I think it can be

24     particularly difficult for someone of his age and experience

25     and so what I have to grapple with is whether, you know, the

Prospective Juror No. 60                                           154

1   fact that he has discomfort, discomfort to the point of being

2   disqualified where he can't do the job.

3           I think, Mr. Agnifilo, that is basically what you

4   are saying, that he probably can't do the job.

5           MR. AGNIFILO:  Yes.

6           THE COURT:  And I think it is difficult to reach

7   that conclusion one way or another.  Did you want to say more?

8           MR. AGNIFILO:  I think at one point, he actually

9   even said he didn't think he could be fair.  And so I think

10  he's, he's basically saying that there are certain things in

11  his experience or his conception of himself that not only

12  makes him uncomfortable because of the nature of the

13  allegations, but I think is casting some doubt on his ability

14  to be fair and I think taken together -- I mean, there are

15  certain jurors who, you know, they struggle with certain

16  things and it's okay because they're going to listen to the

17  Court.  I'm not -- I don't feel as comfortable with this juror

18  as some others.

19          I think on balance, I make the motion to challenge

20  him for cause.

21          (Continued on next page.)

22

23

24

25

Prospective Juror No. 61                                    155

1   (continuing.)

2           MS. PENZA:  The Government continues to object

3   despite Mr. Agnifilo's discomfort with him.

4           THE COURT:  It's only his discomfort that I am

5   concerned about.

6           MS. PENZA:  Yes.  The Government --

7           THE COURT:  Meaning the juror's.

8           MS. PENZA:  The Government believes there is no

9   basis for him to be stricken for cause.

10          THE COURT:  I will let you know.

11          MS. PENZA:  Thank you, Your Honor.

12          THE COURT:  Okay.  Here we go.  61.

13          (Prospective juror enters.)

14          THE COURT:  Please be seated, sir.  Good afternoon.

15  You are Juror No. 61?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  You indicated that you had been laid off

18  and you are back at work; right?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  Do you work for a private entity?

21          PROSPECTIVE JUROR:  Yes.

22          THE COURT:  And do you know what their position is

23  about paying you for jury service?

24          PROSPECTIVE JUROR:  They will not pay.

25          THE COURT:  And would jury service be a hardship for

1   you?

2            PROSPECTIVE JUROR:  Yes, it would.

3            THE COURT:  Why is that?

4            PROSPECTIVE JUROR:  I just bought my house last year

5   and the bills are getting tight because I spent my money while

6   I was laid off so that's the reason I would have a hardship.

7            THE COURT:  What kind of work do you do?

8            PROSPECTIVE JUROR:  I'm a surveyor, a construction

9   surveyor.

10            THE COURT:  What and what does a construction

11   surveyor do?

12            PROSPECTIVE JUROR:  We lay out lines, access lines,

13   and elevations for whatever they're building.

14            THE COURT:  So that it's straight?

15            PROSPECTIVE JUROR:  Yes.  And so it hopefully won't

16   fall down.

17            THE COURT:  Do you get these jobs through your

18   union?

19            PROSPECTIVE JUROR:  My company is private so they

20   have to bid on each job and it's been tough lately for them

21   getting jobs.  There's a lot of nonunion companies getting

22   these jobs so they were slow.  So that's why I was laid off

23   for four and a half months.  The winter is usually when it

24   happens so I just started working again.

25            THE COURT:  Any questions for the juror?

1          MR. AGNIFILO:  No, Your Honor.

2          MS. PENZA:  No, Your Honor.

3          THE COURT:  I want to thank you for coming in, sir.

4   You have a good day.

5          PROSPECTIVE JUROR:  Thank you.

6          (Prospective juror exits.)

7          THE COURT:  Any motion?

8          MR. AGNIFILO:  We move to strike the juror based on

9   a hardship.

10          MS. PENZA:  No objection.

11          THE COURT:  Juror No. 61 is struck for cause.

12          (Prospective juror enters.)

13          THE COURT:  All right, 62.  Please be seated, sir.

14   You are Prospective Juror No. 62; correct?

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Now, you work full-time; correct?

17          PROSPECTIVE JUROR:  Yes.

18          THE COURT:  And you work for a private company?

19          PROSPECTIVE JUROR:  Yes.

20          THE COURT:  And you weren't sure whether you would

21   be paid for your jury service.  Did you check?

22          PROSPECTIVE JUROR:  Yes, for two weeks of it.

23          THE COURT:  Well, if you are not paid for the other

24   four weeks, would that constitute a hardship for you?

25          PROSPECTIVE JUROR:  I suppose I could say it would.

Prospective Juror No. 62                                    158

1   It would be a decent amount of wages that I would be losing.

2           THE COURT:  Well --

3           PROSPECTIVE JUROR:  I have a mortgage, and --

4           THE COURT:  You feel the pressure would be on you,

5   is that a financial kind of hardship?

6           PROSPECTIVE JUROR:  I carry a mortgage by myself.

7           THE COURT:  So it is just you?

8           PROSPECTIVE JUROR:  Yeah.

9           THE COURT:  Any questions?

10          MR. AGNIFILO:  No.

11          MS. PENZA:  No, Judge.

12          THE COURT:  Okay.  Thanks very much for coming in.

13          (Prospective juror exits.)

14          THE COURT:  Is there a motion?

15          MR. AGNIFILO:  We move to excuse the juror for cause

16  based on a hardship.

17          MS. PENZA:  Your Honor, the juror has a relatively

18  high salary and his fiancée also works.  So the Government --

19  it is not clear -- and he was also equivocal as to whether it

20  would actually be a hardship so the Government doesn't believe

21  there is actually a hardship here.

22          THE COURT:  The problem the Court has is that if in

23  the middle of the trial a juror comes back and says I have a

24  hardship and I am not able to pay the mortgage, I don't want

25  to stop the trial or excuse a juror in the middle.

Prospective Juror No. 62                                159

1          MS. PENZA:  Neither do we, Your Honor.  But that

2    does not appear to be the case.  As Your Honor has stated,

3    there will be six alternates and hopefully none would need to

4    be used and that's why we're empaneling six alternates, if

5    there is a situation.

6          THE COURT:  He was equivocal about whether it was an

7    actual hardship.  He did not come on strong about it, but I

8    have a concern when somebody says they might have difficulty

9    paying the mortgage.

10          MS. PENZA:  Perhaps Your Honor would inquire

11    concerning his fiancée.

12          THE COURT:  He basically said he was doing it alone.

13          MS. PENZA:  But it didn't seem necessarily

14    consistent that he has a fiancée who is working full-time.

15    I'm not sure what his exact situation is.

16          THE COURT:  I see.

17          Anything else?

18          MR. AGNIFILO:  My concern is the Court's concern in

19    that in week four when he hasn't been paid in two weeks and he

20    has bills due, he's going to become distracted or a problem

21    and we have to replace him with an alternate and while it's

22    nice to have six alternates, I'd hate to put someone in that

23    is not going to be paid for a month.  I think it's a stressful

24    situation.

25          THE COURT:  Because he was equivocal about it, I am

1    going to overrule the objection and I find him qualified.

2                MS. PENZA:  Thank you, Your Honor.

3                THE COURT:  And that is number 62.  Okay.  Number

4    64.

5                (Prospective juror enters.)

6                THE COURT:  Please be seated, sir.  You are Juror

7    No. 64; correct?

8                PROSPECTIVE JUROR:  Yes, 64.

9                THE COURT:  And you're employed full-time?

10               PROSPECTIVE JUROR:  Yes.

11               THE COURT:  And will you be paid for your jury

12   service by your employer?

13               PROSPECTIVE JUROR:  They didn't tell me yet, but I

14   can take some vacation off.  I have so many vacation.

15               THE COURT:  I see, so you have no problem serving

16   for the six weeks?

17               PROSPECTIVE JUROR:  Yeah, no, I don't have.

18               THE COURT:  Okay.  "How important is your faith to

19   you?"  And you said, "Extremely important and I make major

20   life decisions based on faith."  Do you remember that

21   question?

22               PROSPECTIVE JUROR:  I don't remember it because last

23   time I was quite nervous I was trying to answer as --

24               THE COURT:  Well, I will read you the question again

25   and you can tell me what your answer is.

1              PROSPECTIVE JUROR:  Okay.

2              THE COURT:  "How important is your faith, if any, to

3    you; extremely important, and I make major life decisions

4    based on my faith; important, but I consider other issues; not

5    very important?"  So which one is it?

6              PROSPECTIVE JUROR:  Important.

7              THE COURT:  So it is important?

8              PROSPECTIVE JUROR:  Yeah.

9              THE COURT:  All right.  Do you think your faith

10   would affect in any way how you view evidence and judge a

11   case?

12             PROSPECTIVE JUROR:  In what way?

13             THE COURT:  Would it affect your ability to judge

14   the facts of a case in court?

15             PROSPECTIVE JUROR:  I think so.

16             THE COURT:  Well, in what way would it affect your

17   ability to be fair and impartial at all?

18             PROSPECTIVE JUROR:  It depends.  It depends on the

19   situation, I think.

20             THE COURT:  Well, witnesses will come to court and

21   we will hear them testify; right?

22             PROSPECTIVE JUROR:  Right.

23             THE COURT:  And then you will have to make a

24   decision based on the evidence that you believe is probable,

25   whether the defendant has committed the crimes which he is

Prospective Juror No. 64                                    162

1  accused of; right?

2            PROSPECTIVE JUROR:  Yeah.

3            THE COURT:  And you will have to decide with the

4  other jurors whether the defendant is guilty beyond a

5  reasonable doubt for the crimes he is accused of, you

6  understand that?

7            PROSPECTIVE JUROR:  Yes.

8            THE COURT:  And, so, would your faith affect or

9  interfere with how you would consider that evidence?

10            PROSPECTIVE JUROR:  It depends how -- it's, like,

11  both sides submit all documents where I had to see and

12  understand how the situation and then I would know if he's

13  guilty.  If he's guilty, if he's bad or good or something.

14            THE COURT:  It's the question of the evidence that

15  is submitted to you, the jury, and what you believe and

16  whether you believe that the evidence that you find correct or

17  credible is enough to find the defendant guilty.  Can you do

18  that?

19            PROSPECTIVE JUROR:  Yes.

20            THE COURT:  There's a question here, "Would you be

21  able to listen to and discuss matters of a sexual nature with

22  fellow jurors?"

23            PROSPECTIVE JUROR:  Yes, I would.

24            THE COURT:  You would?  Here you said you didn't

25  know but you think you would?

1           PROSPECTIVE JUROR:  I would because before I was --

2    I never hear this kind of a case before for any kind of -- in

3    my life, but last time I was thinking I choose yes.

4           THE COURT:  Okay.  There is another question, "You

5    may hear allegations involving immigration impropriety.  What

6    are your beliefs and opinions on the subject of immigration.

7    Would those opinions impact your ability to be fair and

8    impartial?  Explain."  And you say, "Yes," and you say, "A lot

9    of immigrants are good people, they work, pay taxes for this

10   country."  Is that your view?

11          PROSPECTIVE JUROR:  Yes, because a lot of immigrants

12   are good because for me, I'm immigration too.  I follow the

13   law.  We pay tax.  We are good peoples.

14          THE COURT:  Okay.  Well, thank you.

15          You're welcome.

16          THE COURT:  Any other questions here?

17          MR. AGNIFILO:  Nothing from us.

18          MS. PENZA:  No, Your Honor.

19          THE COURT:  Okay.  Thank you for coming in.  Have a

20   nice day, sir.

21          PROSPECTIVE JUROR:  Thank you, sir.

22          (Prospective juror exits.)

23          THE COURT:  Does anyone have a motion?  Hearing

24   none --

25          MR. AGNIFILO:  No, no motion.

1          THE COURT:  64 is approved.  73 is next.

2          (Prospective juror enters.)

3          THE COURT:  Please be seated.

4          PROSPECTIVE JUROR:  Good afternoon.

5          THE COURT:  You are Juror No. 73?

6          PROSPECTIVE JUROR:  I am.

7          THE COURT:  I just have a few questions.  Your

8   employer pays for your jury service entirely?

9          PROSPECTIVE JUROR:  Yes.

10         THE COURT:  There's a question, "Do you believe that

11  people under 17 should be able to consent with sex with

12  adults?"  And you say, "Yes.  Plenty of my friends at 17, 16

13  years old had adult relationships."

14         PROSPECTIVE JUROR:  Yes.  I want to elaborate on

15  that because that's the question that has been eating at me

16  since I have a 16-year-old daughter.  I would certainly not

17  have the same answer from that perspective.  Being a

18  17-year-old and your friends -- it seems okay.  Being an adult

19  and having a daughter, not so much.

20         THE COURT:  Well, let me ask you this, if the Court

21  instructs you that under the law, sex with a 15 year old is

22  illegal and you are considering whether there is evidence that

23  the individual committed an illegal act with a 15 year old,

24  having sex with a 15 year old who is below the age of consent,

25  would you is accept the law as the Court gives it to you and

Prospective Juror No. 73                                    165

1  apply that law in considering the facts of the case as you

2  find them?

3                PROSPECTIVE JUROR:  Yes.

4                THE COURT:  Okay.  So, next.  You indicated that you

5  had heard or read something about the case before you filled

6  out the questionnaire.  Did you read something or see it on TV

7  or on the internet?  Do you remember where you saw this?

8                PROSPECTIVE JUROR:  Well, the night before jury

9  selection I heard on the news that there was going to be jury

10  selection for this case and, you know, I've heard tidbits

11  about it.  I couldn't even tell you how long ago when this

12  first came up, but I certainly heard a few things when it was

13  in the news and really nothing subsequent to that.

14                THE COURT:  Whatever you heard, do you think you

15  could brush that aside and consider the facts in this case;

16  only consider the facts that are presented here in court in

17  considering your verdict?

18                PROSPECTIVE JUROR:  Yes.

19                THE COURT:  Other questions?

20                MR. AGNIFILO:  No, nothing.

21                MS. PENZA:  No, Your Honor.

22                THE COURT:  Thank you for coming in.  You have a

23  nice day?

24                PROSPECTIVE JUROR:  You too.

25                (Prospective juror exits.)

1          THE COURT:  Any motion.

2          MR. AGNIFILO:  None.

3          MS. PENZA:  No, Your Honor.

4          THE COURT:  All right.  Juror No. 73 is approved.

5          There are two more jurors who are here, 38 and 63.

6    We're going to take a five-minute break, but before we do

7    that, when will I have the response to today's suppression

8    motion?

9          MS. PENZA:  Your Honor, if the Government could

10   update the Court later this evening we would appreciate it.

11   We have not had time to --

12         THE COURT:  I understand that.  Why don't you let me

13   know first thing in the morning after you send me your

14   questions for the next set of jurors.

15         MS. PENZA:  Yes, Your Honor.

16         THE COURT:  You too.

17         MR. AGNIFILO:  Yes, Your Honor.

18         THE COURT:  Let's take a five-minute break.

19         (Recess taken.)

20

21         (Continued on the following page.)

22

23

24

25

Jury Selection                                    167

1   (Continuing.)

2          THE COURT:  Let's bring in the two jurors.

3          MR. AGNIFILO:  They're bringing Mr. Raniere out

4   right now.

5          THE COURT:  All right, let's wait.  You can be

6   seated, everyone.

7          (Prospective jurors enter.)

8          THE COURT:  Please be seated.  You can just take any

9   chair.

10         Good afternoon.  I'm Judge Garaufis.  You both

11  filled out a questionnaire back on the 8th or so of April, and

12  I will be trying this case beginning May 7.  It's a Tuesday.

13         Before I ask you questions, I'm going to have to do

14  it one at a time and starting with Juror No. 38.

15         Who is 38?  You, sir.

16         And you are 63?

17         THE PROSPECTIVE JUROR:  Yes.

18         THE COURT:  Juror 63 can wait in the jury

19  deliberation room while I question 38.

20         THE PROSPECTIVE JUROR:  Okay.

21         THE COURT:  But not yet.  Don't go yet.

22         THE PROSPECTIVE JUROR:  Okay.

23         THE COURT:  At the Government table are Assistant

24  U.S. Attorneys Moira Penza, Tanya Hajjar, and Mark Lesko, and

25  they're joined by Michael Wenniger of the FBI, the case agent

LAM      OCR      RPR

1  for this case.

2          The Defendant, Mr. Raniere, Keith Raniere, is at the

3  defense table and is represented by Marc Agnifilo, Teny

4  Geragos, Paul DerOhannesian, and Danielle Smith.

5          Now, Keith Raniere, the Defendant, is the only

6  Defendant who will stand trial before this jury that's being

7  assembled.  So, please do not speculate as to why this is the

8  case.

9          I'm going to tell you a little bit about how we're

10  going to handle jury selection.  Today you will be asked some

11  follow-up questions based on your questionnaires.  The trial

12  will begin on or about Tuesday, May 7, and last up to six

13  weeks.  The Court will provide a schedule of trial days before

14  the trial starts; in other words, you'll know what days you'll

15  be on trial.  At the very beginning of the trial, you'll get a

16  schedule.  So, please continue to call in to the jury

17  information phone line as instructed by the jury clerk.

18          I'm going to remind you that it's very important

19  that you follow my instruction that you do not discuss this

20  case with anyone, not your family or, your business

21  associates, and not with other jurors.  In addition, you must

22  not read, listen to, watch, or access any accounts of this

23  case on any form of media, such as newspapers, TV, radio,

24  podcasts, or the internet, nor research or seek outside

25  information about any aspect of this case.

Jury Selection                                          169

1          Please do not communicate with anyone about the case

2    on your phone, whether through e-mail, text messaging, or any

3    other means; through any blog or website; or by way of any

4    social media, including Facebook, Twitter, Instagram, YouTube,

5    or other similar sites.

6          You must not consider anything you may have read or

7    heard about the case outside of this courtroom whether you

8    read it before or during the voir dire.  Voir dire is jury

9    selection.

10         Do not attempt any independent research or

11   investigation about this case and do not visit any of the

12   locations identified in the questionnaire or discussed during

13   the course of the jury selection process.

14         So, that's very important in order that the only

15   evidence that you will consider is the evidence that you

16   receive from the witnesses and documentary evidence, pieces of

17   evidence, that you read or look at here in court.  And this is

18   all very important so that the Defendant receives a fair

19   trial, which is everyone's objective in this court, both

20   sides.

21         So, with that, I'm going to ask Juror No. 63 to go

22   to the jury deliberation room, and we'll be with you

23   momentarily.  Thank you very much.

24         (Prospective juror exits.)

25         THE COURT:  You're Juror No. 38, correct?

LAM       OCR       RPR

```
                    Jury Selection                      170
```

 1            THE PROSPECTIVE JUROR:  I am, yes.

 2            THE COURT:  Welcome.

 3            You indicated that you're employed full-time; is

 4   that right?

 5            THE PROSPECTIVE JUROR:  Yes, full-time.

 6            THE COURT:  As a doorman.

 7            THE PROSPECTIVE JUROR:  Yes.

 8            THE COURT:  And, so, you're employed by a private

 9   employer, which is a residence, an apartment building.

10            THE PROSPECTIVE JUROR:  Apartment building, yes.

11            THE COURT:  Do you know whether you'll be paid for

12   your jury service?

13            THE PROSPECTIVE JUROR:  I told the company.

14            THE COURT:  And what did the company say?

15            THE PROSPECTIVE JUROR:  They said how much you want

16   to pay first to me and they will pay the rest.

17            THE COURT:  Did you tell them that it was a trial

18   that would last six weeks?

19            THE PROSPECTIVE JUROR:  No, I didn't tell them.

20            THE COURT:  So, you don't know whether they would

21   pay you for the full six weeks?

22            THE PROSPECTIVE JUROR:  I don't know.

23            THE COURT:  I'm sorry?

24            THE PROSPECTIVE JUROR:  I don't know, they pay me.

25   They pay me six weeks.

1          THE COURT:  Could you please ask them whether

2   they're going to pay you for the full time you're on trial;

3   will you ask them that question, please?

4          THE PROSPECTIVE JUROR:  They say they're going to

5   pay me.

6          THE COURT:  They said they're going to pay you?

7          THE PROSPECTIVE JUROR:  Yes.

8          THE COURT:  You can double-check on that.

9          THE PROSPECTIVE JUROR:  Okay.

10          THE COURT:  And then contact Mr. Reccoppa.  He'll

11   give you his phone number so that we can be sure, all right?

12          THE PROSPECTIVE JUROR:  Okay.

13          THE COURT:  Now, I have a few questions.

14          Are you married?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  And what does your spouse do for a

17   living?

18          THE PROSPECTIVE JUROR:  Excuse me?

19          THE COURT:  What does she do for a living?

20          THE PROSPECTIVE JUROR:  My wife is a housekeeper.

21          THE COURT:  Does she work for a company or does she

22   work for herself?

23          THE PROSPECTIVE JUROR:  For herself.

24          THE COURT:  Does she work full-time or part-time?

25          THE PROSPECTIVE JUROR:  Part-time.

Jury Selection                                                172

1        THE COURT:  Now, there's a question that you

2   overlooked.  I'm going to read it to you, so listen:  Some

3   government witnesses may testify that they participated in

4   serious crimes themselves, including forced labor and identity

5   theft.  These witnesses, who may be referred to during the

6   trial as "cooperating witnesses," may have pleaded guilty to

7   crimes and may be testifying pursuant to agreements with the

8   Government in hopes that their own sentences would be reduced.

9        Do you have any opinions or beliefs or feelings

10  about a witness seeking a reduced sentence by cooperating that

11  would make it difficult for you to fairly and impartially

12  consider that testimony or render a guilty verdict based upon

13  the testimony of that cooperating witness?

14        Do you understand the question?

15        THE PROSPECTIVE JUROR:  No, I'm sorry.

16        THE COURT:  Some people who are going to testify at

17  the trial have entered into plea agreements with the

18  Government and they have agreed to cooperate with the

19  Government and to testify against the Defendant.

20        THE PROSPECTIVE JUROR:  Uh-huh.

21        THE COURT:  And the question is, do you have any

22  feelings that would make it difficult for you to fairly and

23  impartially consider the testimony of a cooperating witness?

24        THE PROSPECTIVE JUROR:  It would be difficult.

25        THE COURT:  It would be difficult?

Jury Selection                               173

1              THE PROSPECTIVE JUROR:  Yeah.

2              THE COURT:  Why is that?

3              THE PROSPECTIVE JUROR:  Because that's testimony.

4              THE COURT:  You have to speak up.  I can't hear you.

5              THE PROSPECTIVE JUROR:  It's difficult.

6              THE COURT:  Because?

7              THE PROSPECTIVE JUROR:  Because that's testimony.

8              THE COURT:  What about the testimony would you have

9     a problem with?

10             THE PROSPECTIVE JUROR:  I don't know what kind of

11    testimony is done.

12             THE COURT:  Are there other questions?

13             MS. PENZA:  No, Your Honor.

14             MR. AGNIFILO:  No, thank you, Judge.

15             THE COURT:  Thank you very much for coming in.  You

16    have a nice day, sir.

17             THE PROSPECTIVE JUROR:  Thank you.

18             (Prospective juror exits.)

19             MR. AGNIFILO:  I am concerned that he wasn't

20    understanding your Honor's questions and I was concerned he

21    wasn't able to articulate certain things that maybe he wanted

22    to say.

23             It's a complicated case with racketeering charges,

24    so I think on balance we'd move to strike him for cause.

25             THE COURT:  Do you agree?

1            MS. PENZA:  Yes, Your Honor.

2            THE COURT:  I agree as well.

3            I think that there are certain limits that appear to

4   be in his understanding in English.  If I spoke Spanish, I

5   think I might be able to communicate more completely with him.

6   But since this trial is going to be in English, I wouldn't

7   want him to have a misunderstanding of any of the testimony

8   because that would not be in the interest of justice.

9            So, your motion is granted.  Juror No. 38 is struck

10  for cause.

11           Okay.  Juror 63 is next.

12           (Prospective juror enters.)

13           THE COURT:  You're Juror No. 63, are you not?

14           THE PROSPECTIVE JUROR:  Yes.

15           THE COURT:  I'm going to ask you a few follow-up

16  questions.

17           You're working full-time; is that right?

18           THE PROSPECTIVE JUROR:  Yes, sir.

19           THE COURT:  What kind of work do you do?

20           THE PROSPECTIVE JUROR:  I'm a nurse technician.

21           THE COURT:  Do you work at a hospital?

22           THE PROSPECTIVE JUROR:  Yes, sir.

23           THE COURT:  Will you be paid for your jury service?

24           THE PROSPECTIVE JUROR:  I believe so.

25           THE COURT:  Speak up, please.

1            THE PROSPECTIVE JUROR:  Yes, sir.

2            THE COURT:  Is it a large hospital or a small

3    hospital?

4            THE PROSPECTIVE JUROR:  Very large.

5            THE COURT:  Very large.  All right.

6            Now, there's a question here.  The question is:  How

7    important is your faith, if any, to you?

8            And you said:  Extremely important and I make major

9    life decisions based on my faith.

10           Is that right?

11           THE PROSPECTIVE JUROR:  Yes, sir.

12           THE COURT:  Now, would you have any difficulty

13   considering the facts in this case, which involves many

14   issues, such as abortion?

15           Well, let's put it this way:  Abortions will be

16   discussed.  It's not a case about abortion specifically, but

17   the issue of abortions having been experienced by certain

18   people is one issue, and then the question of sexual

19   exploitation of children is going to be an issue in the case,

20   and there are other controversial issues.

21           Would you have any difficulty deciding this case

22   based on the facts that are developed during the course of

23   testimony in the case; in other words, could you be fair and

24   impartial in considering all of the evidence and following the

25   law as I give it to you?

1          THE PROSPECTIVE JUROR:  Yes, sir.

2          THE COURT:  You would have no problem with that?

3          THE PROSPECTIVE JUROR:  Yes, sir.

4          THE COURT:  Would your faith impact how you would

5    consider these things?

6          THE PROSPECTIVE JUROR:  Well, we don't accept

7    abortion.

8          THE COURT:  I see.

9          THE PROSPECTIVE JUROR:  It's not acceptable because

10   it's a life, you're dealing with a life.

11         THE COURT:  But would you be able to decide the case

12   based on the law as I give it to you?

13         For instance, if there's evidence of abortions,

14   would you be prejudiced against someone who authorized an

15   abortion just by virtue of having authorized the abortion?

16         THE PROSPECTIVE JUROR:  In some way.

17         THE COURT:  In what way?

18         THE PROSPECTIVE JUROR:  Like I said, abortion is

19   taking a life.  So, it's, to me, my faith, we don't accept

20   that.

21         THE COURT:  All right.  That's fine.

22         If I instruct you that if an abortion or abortions

23   took place, that is not a basis for you to find that the

24   Defendant engaged in certain illegal activities, would you

25   follow the law?

Jury Selection                                                177

1          THE PROSPECTIVE JUROR:  Yes, sir.

2          THE COURT:  Would you be able to listen to and

3    discuss matters of a sexual nature with your fellow jurors

4    when you're deliberating?

5          THE PROSPECTIVE JUROR:  If I would discuss it with

6    them?

7          THE COURT:  Well, if there were issues in the case

8    of a sexual nature, would you be able to discuss those in

9    private with the other jurors in consideration of your

10   decision?

11         THE PROSPECTIVE JUROR:  Yes, sir.

12         THE COURT:  There may be evidence in this case about

13   people who do not pay taxes.

14         Do you have any opinions regarding people who do not

15   pay taxes that would affect your ability to serve as a fair

16   and impartial juror in this case?

17         THE PROSPECTIVE JUROR:  No, sir.

18         THE COURT:  Let me ask you this:  An indictment is

19   not itself evidence, it merely describes the charges made

20   against the Defendant.  It's an accusation.  An indictment is

21   an accusation.  Mr. Raniere has been charged in an indictment

22   of certain things, but it's only an accusation.  The

23   indictment may not be considered by you as any evidence of the

24   Defendant's guilt.

25         Are you able to follow this rule of law?

LAM      OCR      RPR

Jury Selection                                    178

1           THE PROSPECTIVE JUROR:  Yes, sir.

2           THE COURT:  Any other questions?

3           MR. AGNIFILO:  No, Judge.

4           THE COURT:  Any questions?

5           MS. PENZA:  No, Your Honor.

6           THE COURT:  Okay.  Thank you for coming in.  You

7    have a nice day.

8           THE PROSPECTIVE JUROR:  Thank you, sir.

9           THE COURT:  You're welcome.

10          (Prospective juror exits.)

11          MR. AGNIFILO:  No motion.

12          MS. PENZA:  No, Your Honor.

13          THE COURT:  Okay.  Juror 63 is approved.  I think

14   that's it for today.

15          Does either side have anything else for today?

16          MR. AGNIFILO:  The only issue, it would be very

17   helpful at the earliest opportunity, now that we have one

18   Defendant and we know what the trial is going to look like, is

19   to try to have a witness list as soon as possible.  I imagine

20   the Government knows who they are going to call.  We'll keep

21   it under wraps, it would be subject to the protective order.

22          But we have 3500 from I don't know how many

23   witnesses, but way more witnesses than can be called in a

24   six-week trial.  Way more.  So, I'm imagining that the

25   Government is going to call maybe a tenth of the people that

                    LAM      OCR      RPR

1  we have 3500 on.  So, the witness list would just be very

2  helpful.

3         THE COURT:  I see.

4         MS. AGNIFILO:  We're all talking about streamlining

5  the trial.  That would be one of the ways.

6         MS. PENZA:  The Government objects to providing a

7  witness list.  We don't understand that to be common practice.

8  And what we have said that we will do is we will notify the

9  Defendant within 48 hours of the witnesses that we intend to

10  call, and we think that is highly appropriate.

11         And obviously, Your Honor, we produced significant

12  3500 based on requests made by Mr. Agnifilo about wanting

13  certain material, so that, obviously, should not go into the

14  calculus as to why we should have to produce a witness list.

15         THE COURT:  All right, I hear you, but I'm not going

16  to ask the Government to produce the witness list that far in

17  advance; 48 hours might not be enough, but I'll think about

18  it.

19         So, we finished early, which means you can all rush

20  back to your offices and send me your questions for tomorrow.

21         MS. PENZA:  Yes, Your Honor.

22         THE COURT:  So, there's a prize.  There's a prize

23  for the first side that sends in --

24         Stop.

25         MR. AGNIFILO:  We won.  We already won, Judge.

LAM        OCR        RPR

Jury Selection                                    180

1   We're done.

2           THE COURT:  You're done?

3           MS. PENZA:  They multitasked.

4           THE COURT:  There's also a second prize.

5           MR. AGNIFILO:  The silver medal.

6           THE COURT:  The silver.

7           But I also need to know about when you can respond

8   to the motion to suppress.

9           MS. PENZA:  Yes, Your Honor, do you want that --

10  sorry, earlier I think you said we could let you know in the

11  morning.

12          THE PROSPECTIVE JUROR:  That's fine in the morning,

13  but I'd like to have the questions as early this evening as

14  possible.

15          MS. PENZA:  Absolutely, Your Honor.

16          THE COURT:  All right.  Thank you everybody.

17          MS. PENZA:  I'm sorry, Your Honor, may I ask one

18  additional question?

19          I believe -- this was a question both defense

20  counsel and the Government had, if Your Honor has an

21  understanding right now of how many qualified jurors we

22  actually --

23          THE COURT:  I'm shooting for 60.

24          Well, let's talk about the schedule of doing the

25  final peremptories.  I think what we may want to do is have

LAM        OCR        RPR

1   the peremptories as close to the start date as possible

2   because we may have some falloff.  There may be a couple

3   people who discover that they have tickets for a trip to

4   Europe that they forgot about or some other such thing.

5            So, my hope is that we can have the final challenges

6   and seat the jury on the 6th of May and start with opening

7   statements on the 7th.  The jurors will be given their

8   instructions, the marshals will have the opportunity to work

9   out the transportation issues, and then we can start the trial

10  on the 7th.

11           Does that seem to work?

12           MS. PENZA:  Yes, it does, Your Honor.

13           MR. AGNIFILO:  That's fine, Judge, thank you.

14           THE COURT:  So, I would think that since we need 40

15  jurors to seat the 12-member jury and we need 12 to pick the 6

16  alternate jurors, that's how we're going to do it.

17           Any other questions for today?

18           MR. AGNIFILO:  Nothing from us.

19           MS. PENZA:  No, Your Honor.

20           THE COURT:  Thank you very much.

21

22           (Matter adjourned until Tuesday, April 23, 2019, at

23  9:30 a.m.)

24

25