182

1               UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - X
3  UNITED STATES OF AMERICA,      : 18-CR-0204(NGG)
                                  :
4          Plaintiff,             :
                                  :
5          -against-              : United States Courthouse
                                  : Brooklyn, New York
6  KEITH RANIERE,                 :
                                  :
7          Defendant.             : Tuesday, April 23, 2019
                                  : 9:30 a.m.
8
   - - - - - - - - - - - - - X
9
        TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
10       BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
            UNITED STATES SENIOR DISTRICT JUDGE
11
                    A P P E A R A N C E S :
12
   For the Government: RICHARD P. DONOGHUE, ESQ.
13                     United States Attorney
                       Eastern District of New York
14                        271 Cadman Plaza East
                          Brooklyn, New York 11201
15                     BY:  MOIRA KIM PENZA, ESQ.
                          TANYA HAJJAR, ESQ.
16                        MARK LESKO, ESQ.
                          Assistant United States Attorney
17
   For the Defendant:  BRAFMAN & ASSOCIATES
18                        767 Third Avenue
                          New York, NY 10017
19                     BY:  MARC A. AGNIFILO, ESQ.
                          TENY ROSE GERAGOS, ESQ
20
                       DEROHANNESIAN & DEROHANNESIAN
21                        677 Broadway, Suite 707
                          Albany, NY 12207
22                     BY:  PAUL DEROHANNESIAN, ESQ.
                          DANIELLE SMITH, ESQ.
23
Court Reporter:      SOPHIE NOLAN
24                     225 Cadman Plaza East/Brooklyn, NY 11201
                       NolanEDNY@aol.com
25 Proceedings recorded by mechanical stenography, transcript
   produced by Computer-Aided Transcription

1                         (In open court.)

2              (The Hon. Nicholas G. Garaufis, presiding.)

3                       (Defendant present.)

4      (The following occurs outside the presence of the potential

5                              jurors.)

6              THE COURTROOM DEPUTY:  Case on trial.

7              THE COURT:  You may be seated in the back.

8         Appearances please.

9              MS. PENZA:  Moira Kim Penza, Tanya Hajjar, Michael

10     Lesko and Special Agent Michael Weniger of the FBI at

11     counsel's table for the United States.

12             MR. AGNIFILO:  Mark Agnifilo, Paul DerOhannesian,

13     Danielle Smith, Teny Geragos.  And Keith Raniere is present

14     with us here in court this morning.

15             THE COURT:  Good morning.  Please be seated.

16             Ms. Penza, do you have an answer for me on my

17     question of yesterday?

18             THE COURT:  Good morning.  Please be seated.

19             Ms. Penza, do you have an answer for me on my

20     question of yesterday?

21             MS. PENZA:  I do.  The Government respectfully

22     requests a response by Friday.

23             THE COURT:  Friday?

24             MS. PENZA:  Yes, Your Honor.

25             THE COURT:  All right.  Friday at 5 o'clock.

1          MS. PENZA:  Absolutely.  We'll try to get it in

2    early.

3          THE COURT:  Do your best.

4          MS. PENZA:  Thank you.

5          THE COURT:  Okay.  Juror 60, we are going to call

6    back in.

7          MR. AGNIFILO:  16?

8          THE COURT:  60.  He was the one who answered

9    ambiguously about whether he could be fair as to some issue so

10   I thought it might be useful.  He's a young fellow, about 24

11   years old.  So we are going to bring him back.

12         MR. AGNIFILO:  Sounds good.

13         THE COURT:  We may not bring him back.  If we get to

14   60, I will ask you do you still want to bring him back.  If

15   you do, we will.  Okay?

16         MR. AGNIFILO:  Thank you.

17         THE COURT:  I think everyone is here for this

18   morning.  There are one juror, Mr. Reccoppa mentioned to me,

19   who between the time -- I think it is "she" -- filled out the

20   questionnaire and today, broke her hip.  So she is not

21   available.

22         MR. AGNIFILO:  Judge, it's also Ms. Geragos'

23   birthday today.

24         THE COURT:  Well, happy birthday to you.  What a

25   great way to spend a birthday.

Jury selection                                185

1              MS. PENZA:  Happy birthday.

2              MS. GERAGOS:  Thank you.

3              (Pause in proceedings.)

4              THE COURT:   Number 74 is in the hospital, is

5      injured.  That is the person who had the hip jury?

6              THE COURTROOM DEPUTY:  Yes, Judge.

7              THE COURT:   Number 96 has not arrived yet and will

8      be here in about an hour.  Number 107, the employer is

9      refusing to allow the juror to come to court and the jury

10     clerk is trying to work it out, short of sending the U.S.

11     marshal service to extricate the juror from his or her

12     employment.  I just do not know what to say about that.  We do

13     not know what the juror does for a living.  It is a female.

14     We will see what happens.  Maybe we should invite the employer

15     to come with the assistance of the Marshal Service as well.

16              Let's call in the jurors and we will meet them.

17              (Prospective jury enters.)

18              THE COURT:  Please be seated, everyone.  Good

19     morning ladies and gentlemen.  Welcome.  Today we are going to

20     have individual follow-up questions for all of you based on

21     the answers that you gave to your questionnaires back in early

22     April.  I am Judge Garaufis and let me again introduce you to

23     the attorneys and to the defendant.  The Government is

24     represented by Moira Penza, Tanya Hajjar and Mark Lesko at the

25     table closest to you and at the far table, defendant Keith

1   Raniere who is wearing a sweater and an open shirt is

2   represented by Mark Agnifilo, Teny Geragos, Paul DerOhannesian

3   and Danielle Smith.  Now, Keith Raniere is the only defendant

4   who will stand trial before this jury.  Please do not

5   speculate as to why this is the case.

6           Let me tell you what we are going to do today.  As I

7   said, we will ask everybody except Juror No. 77 --

8           Raise your hand, please.  When the other jurors are

9   asked to go and wait in the jury deliberation room, you will

10  take that first chair where the microphone is and you will be

11  the first person who will be questioned.  Each person will be

12  questioned in turn.  We will make every effort to move the

13  process as quickly as possible.  We value your time.  What I

14  would like to simply remind you about is what I said, I think

15  twice, on the day when you filled out the questionnaires.

16          Before I do that, let me just say thank you very

17  much for filling out the questionnaires.  It's very helpful.

18  It means we do not have to ask as many questions when you come

19  back to fill in the blanks, so to speak, so thank you for

20  that.  Let me remind you that it is extremely important that

21  you follow my instruction, that you not discuss the case with

22  anyone; not your family, your friends, your business

23  associates and not other jurors.

24          Now, when you go back in the jury deliberation room,

25  if you want to talk about, I don't know, the weather, the Mets

Case 1:18-cr-00204-NGG-VMS   Document 834   Filed 01/09/20   Page 6 of 212 PageID #: 12947

1   and the Yankees, the latest Avenger movie, whatever you want

2   to talk about, but not anything about the case, please.  In

3   addition, you must not read, listen to, watch or access any

4   account of this case on any form of media, such as newspapers,

5   TV, radio, podcasts or the internet; nor should you research

6   or seek outside information about any aspect of the case.

7          Please do not communicate with anyone about the case

8   on your phone, whether through e-mail, text messaging or any

9   other means; through any blog or website or by way of any

10  social media including Facebook, Twitter, Instagram, YouTube

11  or other similar sites.  You must not consider anything you

12  may have read or heard about the case outside of this

13  courtroom, whether you read it before or during the voir dire.

14  Voir dire is the selection process for the jury.

15         Do not attempt any independent research or

16  investigation about the case and do not visit any of the

17  locations identified on the questionnaire or discussed during

18  the course of the jury selection process.

19         As I said, do not discuss the case in the jury room

20  while waiting to be interviewed.  The trial will begin on

21  Tuesday, May 7th and will last up to six weeks.  The Court

22  will provide you a schedule of trial days before the trial

23  starts, so you will know what days the trial is happening and

24  what weekdays you have available for your other regular

25  responsibilities.  Please continue to call in to the jury

1   information phone line as instructed by the jury clerk.

2          As to all of this, on behalf of the parties I want

3   to thank you for adhering to all of these rules.  It will make

4   the process go more smoothly and efficiently and we do

5   appreciate that you are taking the time to do your civic duty

6   so I send my special thanks to you as well.  So, at this point

7   I am going to ask the jurors except for Juror No. 77 to return

8   to the jury deliberation room.

9          All rise for the jurors.

10          (Prospective jurors exit.)

11          THE COURT:  Please be seated.  Good morning.

12          PROSPECTIVE JUROR:  Good morning.

13          THE COURT:  You are Juror No. 77?

14          PROSPECTIVE JUROR:  I am.

15          THE COURT:  Okay.  Now, on your questionnaire, you

16   indicated that you were not sure whether you would be paid by

17   your employer during your jury service.  Did you check?

18          PROSPECTIVE JUROR:  I did.

19          THE COURT:  And what did your employer said?

20          PROSPECTIVE JUROR:  My employer -- our policy is ten

21   days for regular court, four weeks for grand jury.  I work in

22   HR so she is my boss.  That's why we have a grand jury clause

23   she was on grand jury.  She changed the policy so she would be

24   paid, but that is an aside.  I said it could be longer than

25   that and, to be quite honest, she said we'll work with you.

1          THE COURT:  So you do not have any problem about the

2    length of the service based on what the HR director who you

3    spoke to across the room about?

4          PROSPECTIVE JUROR:  Right.  I have to trust her on

5    that.

6          THE COURT:  All right.  Thank you.  Now, you

7    indicated in response to the question, "Have you or anyone

8    close to you ever been the victim of sexual assault including

9    date rape?"  "Yes, female friends were raped."

10         Now, you indicated to the follow-up question that

11   you answered yes to that question, "Do you believe that that

12   would affect your ability to serve as a fair and impartial

13   juror?"  And you said, "Yes, perhaps."  I know how much the

14   victims suffered and continue to suffer."

15         PROSPECTIVE JUROR:  Right.

16         THE COURT:  Now, the job of the jurors is to listen

17   to the evidence and to decide whether the defendant is guilty

18   of certain specific crimes that are charged by the Government,

19   and there is the presumption of innocence.  The jury's job is

20   to listen to the evidence and decide whether there is

21   sufficient, credible evidence in your minds that the defendant

22   should be found guilty beyond a reasonable doubt.  Some of

23   these charges are very disturbing, obviously.  So, the

24   question is could you listen to the evidence and be able to

25   fairly and impartially consider the evidence in this case,

1   notwithstanding the fact that, you know, you have a friend who

2   suffered that terrible, terrible situation?

3         PROSPECTIVE JUROR:  So, I would like to believe I

4   could be completely fair and honest and I think could

5   intellectually understand evidence and not evidence.  To me,

6   the only tricky part, perhaps would be a matter of degree.

7   So, like, the Me Too movement there is people talking all over

8   America about what is right, what's wrong, where is the line.

9   So the definition even of rape, you know, it could be a

10  discussion was somebody raped, and in somebody's mind it could

11  be rape or not be rape.

12        I don't know what's happening here or what's

13  expected of me specifically, but I do know I would listen to

14  the evidence and if somebody could say this is the line beyond

15  when it's a bad thing, I think I could judge that.

16        THE COURT:  The Court, meaning me, will tell you

17  what the law is and you have to listen to the evidence and

18  then apply the law as I give it to you to the facts as you

19  find them.  So, the defendant has pleaded not guilty and so

20  there will be witnesses who give testimony and it will be up

21  to you when considering what the legal standards are to decide

22  whether that testimony and other evidence has convinced you

23  that the defendant has violated a law or laws beyond a

24  reasonable doubt.

25        Beyond a reasonable doubt does not mean beyond all

1   doubt, but it's not subject to a standard of sort of surmise

2   and guess work so -- but that's -- you have to make an

3   individual decision as a juror.  The other thing is that you

4   may feel that one way and another juror may feel another way

5   and it's a give-and-take in a discussion about whether as to

6   whether to a specific crime that is alleged, the Government

7   has burden of proving guilt beyond a reasonable doubt.  The

8   defendant has no obligation to testify, he has no obligation

9   to put on a defense.  The burden is always on the Government.

10          So really what you are being asked to do as a juror,

11  a citizen, is to listen to the evidence and come to the best

12  outcome based on the law and what you hear in court from the

13  witnesses and that's really your job.  It can be a difficult

14  job, but that's the job.  Would you have any problem doing the

15  job?

16          PROSPECTIVE JUROR:  I like my other job, my day job,

17  but I think I could do the job.

18          THE COURT:  I wish I had a tape recorder so I could

19  play the last statement I made to everybody.  We understand

20  that it is hard job to do.  That is why we give it to

21  citizens, to jurors, to do it.  You indicate that you had read

22  an article in the Times awhile ago about the case.  Was that

23  before you filled out the questionnaire?

24          PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Now, could you just put that aside,

1  whatever you remember of it, and just base your consideration

2  of the evidence based only on what you hear and see in court?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Okay.  You also answered this question,

5  "The charges in this case involve allegations, of, among other

6  things, sex trafficking, forced labor, child pornography,

7  child exploitation.  Is there anything about the nature of

8  these allegations that would make it difficult for you to be

9  fair and impartial?"  You said, "Yes.  If true, they are

10  horrible crimes."

11          PROSPECTIVE JUROR:  But again it's the evidence that

12  has to be proved.  So yes, it's a terrible thing, but it has

13  to be proved.

14          THE COURT:  "With regard to law enforcement officers

15  do you hold any beliefs or opinions that would prevent you

16  from evaluating the testimony fairly of the law enforcement

17  officer fairly and justly and impartially?"  You said, "No."

18  "Would you be inclined to believe a witness is more or less

19  truthful solely because that witness is a law enforcement

20  officer?  Please explain."  "I would like to believe that but

21  I know it isn't true."  So, what do you mean by "I know it

22  isn't true"?

23          PROSPECTIVE JUROR:  Well, I was raised a long time.

24  I'm 57.  Back then if you had trouble you went to police and

25  they would help you.  I was raised to believe that the police

Prospective Juror No. 77                                       193

1    are there to help you and are honest and helpful.  I watch the

2    news and read the paper and sometimes there are bad police

3    officers and bad people in every career.  I just know that

4    every officer is not always what I would want them to be.

5              THE COURT:  All right.  Well, I will instruct the

6    jury that law enforcement officers who testify should be

7    considered just like every other witness in terms of

8    determining whether and how much to believe what they say.

9    They are entitled to no more and entitled to no less

10   consideration.  Can you follow that rule?

11             PROSPECTIVE JUROR:  Yes.

12             THE COURT:  Okay.  So you also indicated that you

13   have a prepaid vacation from 5/24 to 5/28 which is Memorial

14   Day weekend.  Are you coming back on the Tuesday, is that it?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  All right.  I mean, that may be a

17   problem for a number of people who are going to be away and we

18   may not -- you know, after consulting with the lawyers we may

19   not have trial on that Tuesday after Memorial Day, but there

20   are many people who take a long weekend.  Are you going far?

21             PROSPECTIVE JUROR:  Cape Cod.

22             THE COURT:  That is not that far.  What is that,

23   about four hours?

24             PROSPECTIVE JUROR:  It is a world away from New

25   York.

Prospective Juror No. 78                    194

1           THE COURT:  I will keep that in mind.

2           Any other questions?

3           MR. AGNIFILO:  No, Your Honor.

4           MS. PENZA:  No, Your Honor.

5           THE COURT:  Thank you for coming and have a nice

6   day.

7           PROSPECTIVE JUROR:  I may leave.

8           THE COURT:  Yes, you may leave.  Thank you.

9           (Prospective juror exits.)

10          MR. AGNIFILO:  No motion from us.

11          MS. PENZA:  Not from the Government.

12          THE COURT:  All right.  Juror No. 77 is approved.

13          Next is 78 who is self-employed as a taxi driver.

14          (Prospective juror enters.)

15          THE COURT:  Please be seated, sir.

16          PROSPECTIVE JUROR:  Thank you.

17          THE COURT:  You are Juror No. 78, are you not?

18          PROSPECTIVE JUROR:  Yes, I am.

19          THE COURT:  Welcome.  Now, we are just following up

20  on a few of your answers.  You are self-employed as a taxi

21  driver; is that right?

22          PROSPECTIVE JUROR:  Yes.

23          THE COURT:  And if you serve on the jury for six

24  weeks, would that create a financial hardship for you?

25          PROSPECTIVE JUROR:  It's going to be a little bit

1  hardship because I work in the daytime mostly.  If I'm chosen

2  I could pick the night shift.

3          THE COURT:  I don't want you sleeping during the day

4  here.

5          PROSPECTIVE JUROR:  There's no other source of

6  income that I have so the only thing I can do for myself is

7  just drive.

8          THE COURT:  So you can work an evening shift?

9          PROSPECTIVE JUROR:  Usually I work in the morning.

10  I could get the night shift.

11          THE COURT:  But you could work -- do you use a cab?

12          PROSPECTIVE JUROR:  I use -- I'm an Uber driver.  I

13  use my own car to drive.

14          THE COURT:  You use your own car.

15          PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Okay.  Let me ask you a few more

17  questions.  Now, you indicated that you are Muslim and that

18  you pray five times a day; right?

19          PROSPECTIVE JUROR:  Yes, I do.

20          THE COURT:  Well, let me just explain the schedule

21  that we do.  We start at 9:30 then we take a break at, like,

22  11:30 for ten or fifteen minutes.  Then we have lunch at 1.

23  And then we have another break at 3:00 or 3:30 and we finish

24  by 5.

25          PROSPECTIVE JUROR:  It's not a problem.

Prospective Juror No. 78                    196

1      THE COURT:  It's not a problem.

2      PROSPECTIVE JUROR:  No.

3      THE COURT:  Is there anyone else in your family who

4  works?

5      PROSPECTIVE JUROR:  No.

6      THE COURT:  You have two children?

7      PROSPECTIVE JUROR:  Two children.

8      THE COURT:  Now, you answered this question, "Would

9  you be able to listen to and discuss matters of a sexual

10 nature with fellow jurors?"  You explained, "I am open

11 minded."  What did you mean by that?

12     PROSPECTIVE JUROR:  Could you read the question

13 again?

14     THE COURT:  Of course.  "Would you be able to listen

15 to and discuss matters of a sexual nature with your fellow

16 jurors when you are deliberating?"

17     PROSPECTIVE JUROR:  I can talk openly about what's

18 going on or whatever.

19     THE COURT:  Well, the sexual issues?

20     PROSPECTIVE JUROR:  Like, yeah.

21     THE COURT:  That are described by witnesses?

22     PROSPECTIVE JUROR:  Yes.

23     THE COURT:  And you said, "I am open minded."  It's

24 like -- it's not open minded.  That means I can openly talk

25 about this.  Like, I don't have a restriction.  I can keep to

SN        OCR        RPR

Case 1:18-cr-00204-NGG-VMS  Document 834  Filed 01/09/20  Page 16 of 212 PageID #: 12957

1   facts, like, when talk about things of a sexual nature.

2           MR. AGNIFILO:  Does Your Honor want to explore the

3   issue with the images in light of --

4           THE COURT:  There are certain images that will be,

5   like pictures, that will be shown to the jury.  Do you have

6   any problem in looking at these images --

7           PROSPECTIVE JUROR:  Not at all.

8           THE COURT:  -- of a sexual nature?

9           PROSPECTIVE JUROR:  Not at all.

10          THE COURT:  Okay.  Anything else?

11          MR. AGNIFILO:  No, Your Honor.

12          MS. PENZA:  No, Your Honor.  Thank you.

13          THE COURT:  Thank you very much for coming in.  Have

14  a nice day.

15          PROSPECTIVE JUROR:  Thank you.

16          (Prospective juror exits.)

17          MR. AGNIFILO:  No motion.

18          MS. PENZA:  No motion from the Government though the

19  Government does note that we don't believe it's appropriate to

20  ask that question of every person who says that they're a

21  Muslim.  I think people can have different levels of

22  observance.

23          THE COURT:  I will keep that in mind but the

24  question came up in the context of the answer that he gave

25  about being open minded and I think it would be appropriate

Prospective Juror No. 80                                    198

1    under those circumstances so that we know that being open

2    minded includes that.

3              MS. PENZA:  Fair enough, Your Honor.

4              MR. AGNIFILO:  I think, just to round out the

5    discussion, I mean, there's no religious component to our

6    objection.  The fact is that a juror pointed out that Ramadan

7    is coming and one particular juror expressed a concern about

8    looking at images of nude women during Ramadan.  So it has

9    nothing to do with the religious issues in a general sense,

10   but it is a specific concern that a specific juror raised in

11   the context of that juror's religion so -- and Your Honor

12   followed up with the question that Your Honor followed up on.

13             So it makes sense to round out the inquiry so if the

14   Government is suggesting that there's some religious component

15   to our objection, there is none, but I want to make sure that

16   the jurors can evaluate the evidence fairly without any

17   hesitation.

18             THE COURT:  And fully.

19             MR. AGNIFILO:  And fully, yes.

20             THE COURT:  I understand.

21             MS. PENZA:  It's fine, Your Honor.  There is no

22   reason to go further.

23             THE COURT:  You are right about that.

24             MS. PENZA:  Thank you.

25             THE COURT:  All right.  80.  80 is a government

1    employee who will be paid.

2           (Prospective juror enters.)

3           THE COURT:  Please be seated, sir.

4           PROSPECTIVE JUROR:  Thank you.

5           THE COURT:  You're welcome.  You are Juror No. 80?

6           PROSPECTIVE JUROR:  Yes.

7           THE COURT:  I just have a few questions.  You are a

8    city employee; is that correct?

9           PROSPECTIVE JUROR:  That's correct.

10          THE COURT:  So you will be paid for your jury duty.

11   Now, I just have a few follow-up questions for you.  You

12   indicated in answering this question, "Have you or anyone

13   close to you ever participated in Landmark, Forum, ES, EST or

14   anything you view as similar," and you checked off that you,

15   yourself, had done so.  You said, "I took a class based on a

16   recommendation of a friend.  I thought it was a waste of my

17   time and money.  I had zero interest."

18          PROSPECTIVE JUROR:  That's correct.  I had no

19   interest in the topic but just because my friend pressured me

20   to go and attend this class, I did.  I can't recall -- it was

21   maybe over a decade ago and it was about -- I'm guessing,

22   about three days and as I said I had zero interest but to -- a

23   friend pressured me into attending the session.

24          THE COURT:  But that having been said, would you be

25   biased against someone by virtue of taking a course or

Prospective Juror No. 80                                    200

1    offering a course like that?

2          PROSPECTIVE JUROR:  Absolutely not.  My job is an

3    analyst and I go on facts alone so it's just a personal case

4    here where I had no interest in the subject matter.

5          THE COURT:  Okay.  You indicated that you have heard

6    of the Me Too movement?

7          PROSPECTIVE JUROR:  Yes.

8          THE COURT:  Do you have an opinion about the Me Too

9    movement?

10         PROSPECTIVE JUROR:  I don't.  I'm on neither side of

11   it.  I have no opinion.

12         THE COURT:  Now, there is this question, "Some

13   government witnesses may testify that they participated in

14   serious crimes themselves including forced labor and identity

15   theft.  These witnesses, who may be referred to during the

16   trial as cooperating witnesses, may have pleaded guilty to

17   crimes and may be testifying pursuant to agreements with the

18   Government in hopes that their own sentences will be reduced.

19   Do you have any opinions or beliefs or feelings about a

20   witness seeking a reduced sentence by cooperating that would

21   make it difficult for you to fairly and impartially consider

22   that testimony or render a guilty verdict based upon the

23   testimony of such witnesses?"  And you answered with an

24   asterisk, "I have to evaluate the totality of the situation to

25   ascertain if the witness is trying to, quote, get off the hook

Prospective Juror No. 80                              201

1   or whether he is telling the truth (with a lighter sentence

2   just part of telling the truth)."

3              PROSPECTIVE JUROR:  Let me explain that.

4              THE COURT:  Is there anything else you can do to

5   explain further your views?

6              PROSPECTIVE JUROR:  I understand -- my understanding

7   of the U.S. court system is that certain defendants can plead

8   guilty in exchange for a lighter sentence.  So, you know, my

9   point being I understand that's how the system works but I

10  don't see how that would play in any way of evaluating the

11  facts because a case is decided based on the facts so I don't

12  see how that can play into it.

13             THE COURT:  Well, let me put a final point on it.

14  It could be that someone who has pleaded guilty and is

15  cooperating might have a motive to lie or that the person is

16  hoping to get a lower sentence has a motive to tell the truth

17  but if he or she lies, he or she may not get the benefit of

18  having cooperated.  So that is something that comes later, but

19  it is your job as a juror to figure out looking at the

20  testimony and the whole person and with your life experience

21  in dealing with people, whether you believe that that person

22  should be believed or not believed based upon what's said

23  taking into account that this person has agreed to cooperate.

24  Do you think you could do that assessment?

25             PROSPECTIVE JUROR:  Yes, I think so.  That's

Prospective Juror No. 82                          202

1   precisely why I said looking at the totality of the situation,

2   I think that's what I was trying to say.

3                THE COURT:  Any other questions?

4                MR. AGNIFILO:  Nothing from us.

5                MS. PENZA:  Nothing, Your Honor.

6                THE COURT:  I want to thank you for coming in.  You

7   have a nice day, sir.

8                PROSPECTIVE JUROR:  Thank you.

9                (Prospective juror exits.)

10               THE COURT:  Is there a motion?

11               MR. AGNIFILO:  Not from us.

12               MS. PENZA:  No, Your Honor.

13               THE COURT:  Juror 80 is approved.  82.

14               (Prospective juror enters.)

15               THE COURT:  Please be seated.  Welcome.

16               PROSPECTIVE JUROR:  Hi.

17               THE COURT:  You are Juror No. 82?

18               PROSPECTIVE JUROR:  Yes.

19               THE COURT:  Now, you indicated that with regard to

20  your employer that your employer pays you for ten days of jury

21  service; is that right?

22               PROSPECTIVE JUROR:  That's all.

23               THE COURT:  You checked that?

24               PROSPECTIVE JUROR:  Yeah.

25               THE COURT:  Now, would that create a hardship for

Prospective Juror No. 89                    203

1   you not to be paid for most of the trial?

2          PROSPECTIVE JUROR:  Very much.

3          THE COURT:  Why?

4          PROSPECTIVE JUROR:  I have a high mortgage.  Like

5   $3,000 a month and I only make a little over $3,000 a month.

6   I'm scraping by.

7          THE COURT:  Are there any questions?

8          MR. AGNIFILO:  No, Your Honor.

9          MS. PENZA:  No, Your Honor.

10         THE COURT:  All right.  Thanks for coming in.

11         (Prospective juror exits.)

12         THE COURT:  Is there a motion?

13         MR. AGNIFILO:  Yes, that he be excused for a

14  hardship.

15         MS. PENZA:  No objection.

16         THE COURT:  All right.  82 is excused.  89.

17         (Prospective juror enters.)

18         THE COURT:  Please be seated, sir.

19         PROSPECTIVE JUROR:  Good morning.

20         THE COURT:  Good morning.  You are Juror No. 89?

21         PROSPECTIVE JUROR:  Yes, sir.

22         THE COURT:  And you indicated that you have travel

23  plans.  What are the trans plans?

24         PROSPECTIVE JUROR:  I'm going to Krakow, Poland May

25  1st and returning May 7th.

Prospective Juror No. 89                                  204

1          THE COURT:  You bought the tickets already?

2          PROSPECTIVE JUROR:  The tickets are bought and the

3    hotel is booked.

4          THE COURT:  What airline are you on?

5          PROSPECTIVE JUROR:  My wife booked it.  I don't know

6    offhand.

7          THE COURT:  And your employer -- did you check on

8    how many days you get off?

9          PROSPECTIVE JUROR:  The first week, one week, one

10   week they pay and the second week is $35 a day and after that

11   nothing.

12         THE COURT:  Any questions?

13         MR. AGNIFILO:  Not from us.

14         MS. PENZA:  No, Your Honor.

15         THE COURT:  Okay.  Thanks for coming in.  Have a

16   nice day.

17         (Prospective juror exits.)

18         MR. AGNIFILO:  We ask that he be excused as a

19   hardship, Judge.

20         MS. PENZA:  No objection, Your Honor.

21         THE COURT:  Motion granted.  Struck based on

22   hardship, number 89.  90.

23

24         (Continued on the following page.)

25

Prospective Juror Number 90                                205

1    (Continuing.)

2              (Prospective Juror Number 90 entered the courtroom.)

3              THE COURT:  Please be seated.

4              You are Juror No. 90?

5              PROSPECTIVE JUROR NO. 90:  Correct.

6              THE COURT:  Okay.

7              And you're a teacher?

8              PROSPECTIVE JUROR NO. 90:  Yes.

9              THE COURT:  You indicated that you had an auto

10   accident back in 2017 and you have a back condition --

11             PROSPECTIVE JUROR NO. 90:  I do.

12             THE COURT:  -- as a result of that?

13             PROSPECTIVE JUROR NO. 90:  Yes.

14             THE COURT:  How does that affect you?

15             PROSPECTIVE JUROR NO. 90:  I don't really sit or

16   stand too long.  About an hour, hour-and-a-half in it starts

17   to get very uncomfortable.  It's painful, so. . .

18             THE COURT:  So if it gets uncomfortable, you stand

19   up?

20             PROSPECTIVE JUROR NO. 90:  I stand up.  And if I'm

21   standing too long, I have to sit down.  I switch it up.

22             THE COURT:  Got it.

23             Well, what I say to jurors in short or long trials

24   is if you have discomfort sitting, you can always stand --

25             PROSPECTIVE JUROR NO. 90:  Okay.

SAM     OCR     RMR     CRR     RPR

Prospective Juror Number 90                    206

1          THE COURT:  -- for a while.  I sometimes stand up,

2     it has nothing to do with what is happening or what is said.

3     I have a bad back, so I will stand for a while and then I will

4     sit down.  I understand the problem.  I empathize.

5          So let me get on to some of these other questions.

6          There may be evidence in this case that includes

7     sexually explicit images and language.  Would hearing about

8     that type of evidence affect your ability to serve as a fair

9     and impartial juror in this case?  You answered:  Yes, if

10    involving children, being a father I may not be impartial.

11         I understand that it is difficult to address or

12    consider these issues, but the defendant has pleaded not

13    guilty and while there may be evidence presented about sexual

14    issues or sexual misconduct, the job of the jury is to

15    evaluate the evidence and decide whether this defendant is

16    guilty beyond a reasonable doubt of the conduct.

17         Could you be fair and impartial in considering only

18    the evidence that is presented?

19         PROSPECTIVE JUROR NO. 90:  I could try, but like I

20    said, three young kids, sometimes it's a little hard to

21    discern from the evidence that's there.

22         THE COURT:  Well, I mean the fact of the matter is

23    most people have children.

24         PROSPECTIVE JUROR NO. 90:  Yes.

25         THE COURT:  And it is difficult, there is no

Prospective Juror Number 90                    207

1  question, but it is an obligation.  Do you think you're a good

2  listener?

3           PROSPECTIVE JUROR NO. 90:  Teachers are the worst

4  listeners, but I try.  Yes, I do.

5           THE COURT:  I was once a teacher, I am not going to

6  comment on that.

7           What do you teach?

8           PROSPECTIVE JUROR NO. 90:  Social studies.

9           THE COURT:  Oh, I taught social studies before I

10  went to law school.

11           Okay, are there other questions?

12           MR. AGNIFILO:  Follow-up on Question Number 1.

13           THE COURT:  One.

14           When does summer school start?

15           PROSPECTIVE JUROR NO. 90:  Summer school starts

16  July 1st, but I also do have regents scoring coming up.  I am

17  a single-income household, so that's like my overtime for the

18  year.

19           THE COURT:  Okay, anything else?

20           MS. PENZA:  No, Your Honor.

21           MR. AGNIFILO:  Nothing else.

22           THE COURT:  Okay, thanks for coming in.

23           PROSPECTIVE JUROR NO. 90:  Okay.

24           MR. AGNIFILO:  I'm sorry, I'm sorry, I jumped the

25  gun.

Prospective Juror Number 92                               208

1          (Pause.)

2          MR. AGNIFILO:  Nothing else; thank you, Judge.

3          THE COURT:  All right, thank you.

4          PROSPECTIVE JUROR NO. 90:  Thank you.

5          THE COURT:  Have a nice day.

6          PROSPECTIVE JUROR NO. 90:  You, too; thanks.

7          (Prospective Juror 90 exited the courtroom.)

8          THE COURT:  Is there a motion?

9          MR. AGNIFILO:  Nothing from us.

10          MS. PENZA:  No, Your Honor.

11          THE COURT:  Number 90 is approved.

12          Okay, next.

13          (Prospective Juror Number 92 entered the courtroom.)

14          THE COURT:  92.

15          MS. PENZA:  Your Honor, if I may, before she comes

16  out.  Her hardship question, if we could inquire as to what

17  the other people in her household do for work.

18          (Prospective Juror Number 92 entered the courtroom.)

19          THE COURT:  Please be seated.  Good morning.

20          PROSPECTIVE JUROR NO. 92:  Hello, sir.

21          THE COURT:  You are Juror No. 92?

22          PROSPECTIVE JUROR NO. 92:  I am.

23          THE COURT:  Have you won the lottery yet?

24          PROSPECTIVE JUROR NO. 92:  No, but I'm playing.

25          THE COURT:  The company you work for, what kind of

Prospective Juror Number 92                            209

1   work does that company do?

2          PROSPECTIVE JUROR NO. 92:  It's an international

3   market research firm.  We have about 18,000 employees.

4          THE COURT:  And what is their policy about paying

5   for jury duty?

6          PROSPECTIVE JUROR NO. 92:  They pay for two weeks

7   and two weeks only.

8          THE COURT:  And if you were not paid for four weeks?

9          PROSPECTIVE JUROR NO. 92:  My car is 12 years old.

10  My son is graduating from college this year.  Really, that is

11  the truth.

12         THE COURT:  No more obligations.

13         PROSPECTIVE JUROR NO. 92:  Well, he is still living

14  at home, thank you.  But yeah, no, that's the general hardship

15  story, but it's the fact.

16         THE COURT:  I see.  So this would create a hardship

17  for you?

18         PROSPECTIVE JUROR NO. 92:  I have to say it truly

19  would.  It would put me into debt.  I just got a tax check to

20  pay for my son's little graduation party and, yeah, uh-hum, it

21  would put me right behind that eight ball.

22         THE COURT:  Okay.

23         PROSPECTIVE JUROR NO. 92:  I would love to help and

24  I would be happy to do it in the future, but at this

25  particular time, give me four-and-a-half years and I'm yours.

SAM      OCR      RMR      CRR      RPR

Prospective Juror Number 94                                210

1      THE COURT:  What happens in four-and-a-half years?

2      PROSPECTIVE JUROR NO. 92:  I can retire.

3      THE COURT:  Oh, I see, all right.

4      Are there any questions?

5      MR. AGNIFILO:  Nothing from us, Judge.

6      THE COURT:  Anything from you?

7      MS. PENZA:  No, Your Honor.

8      THE COURT:  Okay.

9      Thank you very much for coming in.

10     PROSPECTIVE JUROR NO. 92:  Thank you both.

11     THE COURT:  You have a nice day --

12     PROSPECTIVE JUROR NO. 92:  Thanks, appreciate it.

13     THE COURT:  And congratulations to your son.

14     (Prospective Juror Number 92 exited the courtroom.)

15     THE COURT:  Motion?

16     MR. AGNIFILO:  We ask that she be excused as a

17  hardship.

18     MS. PENZA:  No objection.

19     THE COURT:  Okay, Number 92 is struck for hardship.

20     94 is next.

21     (Pause.)

22     (Prospective Juror Number 94 entered the courtroom.)

23     THE COURT:  Please be seated.

24     Good morning.

25     PROSPECTIVE JUROR NO. 94:  Good morning.

SAM      OCR      RMR      CRR      RPR

1            THE COURT:  You are Juror No. 94?

2            PROSPECTIVE JUROR NO. 94:  Yes.

3            THE COURT:  Very good.  I just have a few questions

4    for you.

5            PROSPECTIVE JUROR NO. 94:  Sure.

6            THE COURT:  You work for an airline?

7            PROSPECTIVE JUROR NO. 94:  Yes, I do.

8            THE COURT:  You do.  You work at Kennedy?

9            PROSPECTIVE JUROR NO. 94:  I used to, but now I work

10   in the city in our headquarters.

11           THE COURT:  In the headquarters, okay.

12           And do you know what the policy is of your employer

13   for jury duty pay?

14           PROSPECTIVE JUROR NO. 94:  I'm sorry, say that

15   again.

16           THE COURT:  Do you know what your employer's policy

17   is in paying for your jury duty?

18           PROSPECTIVE JUROR NO. 94:  They won't pay for jury

19   duty.

20           THE COURT:  I see.

21           Now, you indicated -- there was a question here

22   there may be evidence in this case that includes sexually

23   explicit images and language.  Would hearing about that type

24   of evidence affect your ability to serve as a fair and

25   impartial juror in this case?  And you checked off yes, you

said if this involves children molestation.

So, your job as a juror would be to hear the evidence and decide whether that evidence proves beyond a reasonable doubt that the defendant committed specific crimes; in other words, he is considered innocent and he is innocent until proven guilty, and he has pleaded not guilty.

Would you be able to look at the specific evidence that is provided on these issues and make a determination as to whether the defendant is guilty beyond a reasonable doubt?

PROSPECTIVE JUROR NO. 94: That would be hard, if it's -- like I said, if it involved children. As a mother, I mean.

THE COURT: Well, everyone is either a mother or a father.

PROSPECTIVE JUROR NO. 94: I know, I am just maybe emotional about these things.

THE COURT: All right. The Court will give you instructions on how you are to do your job and the instructions will, basically, tell you that these are the charges and these are the elements of the crime, whatever they would be, and then you have to see if the Government has proven that the defendant committed a specific crime by virtue of the evidence that is presented by the witnesses and documentary evidence.

It really requires you to do an analysis, and not to

Prospective Juror Number 94                        213

1   do it alone, but to do it with your colleagues on the jury.

2   You are not alone here.  You are alone now, but you are going

3   to be with eleven other people deciding this case and everyone

4   is in the same circumstance, basically.  It is not a pleasant

5   project to deal with these things, but it is an obligation

6   that people take on because it is their civic duty.

7           And I am just wondering whether you can overcome

8   your discomfort long enough to do this job?

9           PROSPECTIVE JUROR NO. 94:  Probably not.

10          THE COURT:  Probably not why?

11          PROSPECTIVE JUROR NO. 94:  Because just by hearing,

12  and I know that he's innocent until proven guilty, I'm just

13  kind of a person that just by him being in court it means that

14  he's done something because he's already here.  People don't

15  just take accusations out of the thin air.  So it's just my

16  personality, so. . .

17          THE COURT:  Are there other questions?

18          PROSPECTIVE JUROR NO. 94:  It might be difficult.

19          MR. AGNIFILO:  Nothing from us.

20          MS. PENZA:  No, Your Honor.

21          THE COURT:  Okay, well, I thank you for your candor.

22          PROSPECTIVE JUROR NO. 94:  Thank you.

23          THE COURT:  You have a lovely day.

24          PROSPECTIVE JUROR NO. 94:  Thank you.

25          (Prospective Juror Number 94 exited the courtroom.)

1          MR. AGNIFILO:  We ask that she be excused for cause.

2   She very candidly said she probably could not overcome her

3   discomfort to do her job as a juror.

4          MS. PENZA:  No objection.

5          THE COURT:  All right, Juror No. 94 is struck for

6   cause.

7          Okay, we are up to 95.

8          (Pause.)

9          (Prospective Juror Number 95 entered the courtroom.)

10         THE COURT:  Please be seated.

11         You are Juror No. 95, are you not?

12         PROSPECTIVE JUROR NO. 95:  I am.

13         THE COURT:  Welcome.

14         PROSPECTIVE JUROR NO. 95:  Thank you.

15         THE COURT:  I have a few questions.

16         PROSPECTIVE JUROR NO. 95:  Sure.

17         THE COURT:  Now, you indicated that jury duty would

18  have an unusual financial hardship on somebody, but not you,

19  because you would be paid during your jury duty; is that

20  right?

21         PROSPECTIVE JUROR NO. 95:  Well, I work for a music

22  licensing company, which is a third-party licensing company.

23  So basically, we have an entire catalogue of music that I am

24  responsible to monetize.  So music supervisors write me and

25  ask me to pitch music, and I am the person who is pitching

Prospective Juror Number 95                                215

1    music all day long.

2           THE COURT:  You are pitching music to users?

3           PROSPECTIVE JUROR NO. 95:  No, to

4    music supervisor -- so, let's say, a music supervisor of a

5    television show, like Big Little Lies writes me and says, Hey,

6    Jen, I'm filling this scene right now.  I'm looking for a

7    female folk singer.  I have $5,000.  Can you pitch me any of

8    the stuff in your catalogue?

9           So I would then come up with ten songs that I think

10   are appropriate for that to try to monetize to make money for

11   the artist, for us.  We're commission-based solely.

12          So, without me it is devastating to the bands, to my

13   company, who depends on this to make money for us.  Which also

14   is a tiny bit of a conflict that I should bring up, that being

15   in the position that I am, as hard as I would want to not see

16   things that happen outside, I do know that this case was

17   brought by HBO for a docuseries and it came across my desk

18   immediately, which would only mean music supervisors -- the

19   music supervisor working on the project would write me to ask

20   me for music for it.

21          I just have to -- you know, I want to be honest that

22   it is unavoidable.

23          THE COURT:  No, no, I didn't understand what it is

24   you do, so --

25          PROSPECTIVE JUROR NO. 95:  So, a music --

1        THE COURT:  You don't have to tell me again.

2        PROSPECTIVE JUROR NO. 95:  Okay.

3        THE COURT:  I get it.

4        PROSPECTIVE JUROR NO. 95:  Right.

5        THE COURT:  Let's have a sidebar.

6        MS. PENZA:  Thank you, Your Honor.

7        (Sidebar held outside the hearing of the Prospective

8   Juror Number 95.)

9        THE COURT:  Now, I didn't ask her whether there was

10  anyone else who could do what she does at her company, but she

11  said in here, in the questionnaire, that there wasn't.

12       So what is your view on the situation?

13       MR. AGNIFILO:  She seems sort of agitated about the

14  thought of being here.  I am inclined to ask -- think she

15  should go.

16       MS. PENZA:  I am inclined not to, but I think that

17  the -- I think that what we don't know is whether this is a

18  job that has to be done during court hours, because it doesn't

19  sound to me like -- I don't know about the music business, but

20  it sounds like if it's primarily like an e-mail correspondence

21  type thing that it's possible she could adjust her hours,

22  given the Court's schedule, and do it that way.

23       THE COURT:  Well, let me ask.

24       MR. AGNIFILO:  Okay.

25       THE COURT:  But I do know that HBO is doing

Prospective Juror Number 95                    217

1   something on this.  In fact, they are outside the building

2   videotaping people.  I am just saying.

3          MS. PENZA:  Unfortunately, yes, but that is the one

4   thing that I think she could probably set aside.  It doesn't

5   sound like she's had any involvement in that yet.  I think a

6   lot of people --

7          THE COURT:  Unless it is something where she is

8   making money off it.

9          MR. DerOHANNESIAN:  She is.

10          MR. AGNIFILO:  She would be, if she is selling the

11   music to it.

12          THE COURT:  Yes, of course.  Well, somebody else

13   could do that.  She is not the only person that works at this

14   concern, obviously.

15          All right, I will ask some more questions.

16          MS. PENZA:  Thank you, Your Honor.

17          (Sidebar concluded.)

18          (In open court - Prospective Juror No. 95 present.)

19          THE COURT:  So let's put a finer point on this work

20   that you do.

21          You get like e-mails from these different companies?

22          PROSPECTIVE JUROR NO. 95:  Correct.

23          THE COURT:  Because they need a certain type of

24   music to fill in as part of their programming?

25          PROSPECTIVE JUROR NO. 95:  Right, all different,

1    films, commercials, video games, anything.  So any time they

2    are working on any specific film or series, I am the person

3    that they write.  So I'll read scene descriptions, I'll

4    read -- you know, sometimes I'm get actual scenes where I'm

5    watching the actual scene to temp the music into it to find

6    things that work for it.

7         THE COURT:  But you do not have to do this, or do

8    you, you can do this in the evenings, late afternoon?  It

9    doesn't have to happen immediately?

10        PROSPECTIVE JUROR NO. 95:  It has to happen

11   immediately.  TV is on an incredibly strict schedule, so

12   sometimes they give me a two-hour deadline.  So that search

13   will come in and sometimes I have the next two hours to get

14   something in.  If I don't, the opportunity is gone.  And it

15   works pretty much that quickly on a regular basis.

16        So without that happening, my company would greatly

17   suffer.

18        THE COURT:  I see.  And you have four people who

19   work for you?

20        PROSPECTIVE JUROR NO. 95:  Well, the creative team

21   each has a defined role.  So we have somebody who is,

22   basically, uploading, organizing the music.  They're not a

23   pitcher.  We have another person who's A-and-R, who is signing

24   actual bands.  We have another person who is in the LA office

25   who is taking meetings with music supervisors.  And then there

1    is myself, who is dealing directly with the music supervisors

2    to pitch the catalogue.

3              THE COURT:  Okay.  Now, you indicated, there is a

4    question here:  There may be evidence in this case about

5    abortions.  Would hearing about that type of evidence affect

6    your ability to serve as a fair and impartial juror in this

7    case, and you answered yes.  And you said:  I have a very

8    difficult time with people having abortions.  I could never do

9    it.

10             Do you think you would have a problem listening to

11   evidence about abortions having occurred, even legal

12   abortions?

13             PROSPECTIVE JUROR NO. 95:  I mean, it's not

14   something I ever want to hear about.  It really bothers me.  I

15   could never do it.  I feel like every baby deserves to be

16   born, and it's a hard thing for me to realize that someone

17   would want to kill a baby.

18             THE COURT:  Then there is this question:  There may

19   be evidence in this case that includes sexually explicit

20   images and language.  Would hearing about that type of

21   evidence affect your ability serve as a fair and impartial

22   juror in this case?  You answered:  Yes, if the sexual acts

23   were with children, I would have issues.

24             But doesn't everybody have issues about proven

25   sexual activities with children?  I mean I could never

1  assemble a jury here if anyone who would find that offensive

2  were unable to hear that evidence and sit on a jury where that

3  is an accusation.  It has not been proven.  It could be

4  proven.  It might not be proven.

5           PROSPECTIVE JUROR NO. 95:  Right.

6           THE COURT:  Are you set --

7           PROSPECTIVE JUROR NO. 95:  I mean it just feels very

8  difficult for me to sit in a courtroom for six weeks to hear

9  about things happening to children.  It's just a sensitive

10 topic for me.

11          THE COURT:  Do you have any children?

12          PROSPECTIVE JUROR NO. 95:  I do not.  I have not --

13 that's like another --

14          THE COURT:  It's just a yes or no question.

15          PROSPECTIVE JUROR NO. 95:  No.

16          THE COURT:  I don't need an explanation.

17          You have never served on a jury?

18          PROSPECTIVE JUROR NO. 95:  I have not, but I've been

19 called in for jury duty before, but I have not been picked.

20          THE COURT:  I see.  And you have been the victim of

21 identity theft?

22          PROSPECTIVE JUROR NO. 95:  I have.

23          THE COURT:  How recently was that?

24          PROSPECTIVE JUROR NO. 95:  Well, multiple times.

25 The worst one was someone duplicated my bank card number and

Prospective Juror Number 95                                221

1   stole over a thousand dollars out of my checking account.

2          THE COURT:  Did you report it?

3          PROSPECTIVE JUROR NO. 95:  I did report it, and I

4   reported it in Williamsburg.  I was living there at the time.

5   And they were very nice to me.  We were actually able to see

6   the person using my card at an ATM.  I did not know the

7   person.

8          And then recently I just had another fraud, and I

9   think almost $600 was stolen out of my bank account.

10         THE COURT:  You indicated that you would be more

11  inclined to believe a law enforcement officer's testimony.

12         I will instruct the jury that a law enforcement

13  officer's testimony should be considered like the testimony of

14  any other individual who testifies.  The job of the jury is to

15  make an assessment about the voracity of the law enforcement

16  officer or any other witness and consider that testimony on

17  its own merits.

18         Do you think you could do that?

19         PROSPECTIVE JUROR NO. 95:  I mean I would hope that

20  anyone who is sworn in under oath would be able to be honest

21  in anything.  I mean it's probably an old school thought of

22  mine that I would be very inclined to believe the law officer

23  who is supposed to protect us, and I guess that was where my

24  mindset was.

25         THE COURT:  Could you follow the Court's

Prospective Juror Number 95                    222

1    instruction?

2           PROSPECTIVE JUROR NO. 95:  Sure.

3           THE COURT:  Anything else?

4           MR. AGNIFILO:  Follow-up on 91, Judge.

5           THE COURT:  91, okay.

6           There is a question here:  Is there anything about

7    the nature of the charges in this case or the people accused

8    that would affect your ability to fairly evaluate the evidence

9    to determine whether or not the prosecution has proven the

10   guilt of the defendants beyond a reasonable doubt?  And you

11   said:  Yes.  I have serious issues with children being

12   involved, and identity theft and any sexual assault.

13          PROSPECTIVE JUROR NO. 95:  That is correct, I do

14   have issues with all of those.

15          THE COURT:  And if you found beyond a reasonable

16   doubt that the defendant committed specific crimes based on

17   the evidence in the case, would you vote to convict the

18   defendant?

19          PROSPECTIVE JUROR NO. 95:  If he -- if it was

20   found --

21          THE COURT:  It would relieve you of some issues.

22          PROSPECTIVE JUROR NO. 95:  Sure, I guess.

23          THE COURT:  And if you found after listening to all

24   the evidence that the Government had failed to prove beyond a

25   reasonable doubt that he had been involved in the molestation

1   of children or sexual assault or child pornography, would you

2   vote to acquit the defendant?

3                PROSPECTIVE JUROR NO. 95:  Yeah, I guess.

4                THE COURT:  Anything else?

5                MS. PENZA:  No, Your Honor.

6                THE COURT:  Thanks for coming in.

7                PROSPECTIVE JUROR NO. 95:  Thank you.

8                (Prospective Juror Number 95 exited the courtroom.)

9                MR. AGNIFILO:  We are going to move to strike her

10  for cause on two grounds, Judge.  First --

11               THE COURT:  She doesn't want to be a juror, let's

12  start with that one.

13               MR. AGNIFILO:  Yes, she doesn't want to be a juror.

14               THE COURT:  So all of her answers are colored by the

15  fact that this is an inconvenience for her.

16               Go on.

17               MR. AGNIFILO:  My concern is if it's an

18  inconvenience for her, it might end up being an inconvenience

19  for all of us if she -- my experience with long trials is, my

20  personal experience, it's not worth it in the end.  And if

21  someone doesn't want to be here, they shouldn't be rewarded by

22  not having to do their civic duty, but things end up getting

23  worse, not better.  And so she doesn't want to be here.

24               THE COURT:  I hear you.

25               MR. AGNIFILO:  She says it's a hardship, and that's

1    the first basis.

2            The second is, Your Honor asked the two appropriate

3    questions:  If there's proof beyond a reasonable doubt, would

4    you convict?  Yes.  If there's not proof beyond a reasonable

5    doubt, would you acquit?  Yes.

6            I submit, most humbly, that is not really getting to

7    the heart of the issue.  She has said that she has concerns,

8    personal concerns with abortions and with cases involving

9    children.  She said she was especially sensitive -- it's an

10   especially sensitive topic for her, and I think this is

11   precisely why we have challenges for cause.

12           So I think on balance, our application is that we

13   challenge her for cause.

14           THE COURT:  Okay, thank you.

15           Yes, let me hear from the Government.

16           MS. PENZA:  Yes, Your Honor, the Government objects

17   to her being excused for cause.  We believe that her answers,

18   especially to the Judge's last questions, indicated that she

19   would be able to follow the law.

20           And, obviously, there are lots of people that have

21   issues with abortion, and I would say everybody should have an

22   issue with any allegation regarding sexual abuse of children.

23           THE COURT:  Putting the best face on what she said

24   today, she's busy.  She has a job.  It is very demanding.  It

25   requires her to act promptly.  She has four people who work

1   with her.  If she was run over by a streetcar tomorrow, one of

2   them would take over that work and there is just no question

3   about it.  The place is not going to suffer because she is not

4   there.  There are plenty of people who can jump in.  She makes

5   up to $150,000 a year.  She has never been on a jury.  She

6   does not have a family.  And she just wants to do her job.

7   That is what I see.  And when pushed as to whether if the

8   evidence didn't measure up to convict someone, she said she

9   would vote to acquit.  But she did it in a way that sort of

10  told me, not that she would not do it, but she is reluctant to

11  say it to me because she might qualify to be a juror.

12          And I have picked a lot of juries, including three

13  death penalty juries, and those answers tell me that this is

14  someone who is qualified, just does not want to do it.  And I

15  understand that she is reluctant to do it because she is

16  consumed by her business life, which she really likes,

17  obviously.  It is very interesting.  If I knew anything about

18  music, maybe I might do that too.  But the fact is she

19  qualifies.

20          The objection is overruled.  She is approved over

21  objection.

22          MR. AGNIFILO:  Could we have a quick sidebar on

23  another issue?

24          THE COURT:  All right, sidebar.

25          (Sidebar held.)

Proceedings                                                226

1          MS. GERAGOS:  I was just alerted by another attorney

2    who is in this case that the redacted filing we put on the

3    docket last night of the motion to suppress, you can

4    apparently look through the redactions.

5          I have serious concerns, because a lot of those are

6    witness statements, that that needs to be sealed immediately

7    and my office has not accomplished that task yet.  And I am

8    wondering if there is any way we could call the clerk.

9          THE COURT:  Do you know what number it is?

10         MS. GERAGOS:  575.

11         THE COURT:  Let's take a five-minute break and we

12   will take care of it.

13         MS. PENZA:  Thank you.

14         MS. GERAGOS:  Thank you.

15         MR. AGNIFILO:  Thank you.

16         (Sidebar concluded.)

17         (In open court.)

18         THE COURT:  All right, we will take a five-minute

19   break.

20         (Defendant exited the courtroom.)

21         (Recess taken.)

22         THE COURT:  Who is next?

23         THE COURTROOM DEPUTY:  96.

24         (Defendant entered the courtroom.)

25         THE COURT:  Mr. Agnifilo?

SAM      OCR      RMR      CRR      RPR

```
                        Sidebar                        227
```

1           MS. PENZA:  They are outside.  Would you like us to

2    go get them?

3           THE COURT:  We are going to continue, yes.  Thank

4    you.

5           (Pause.)

6           MR. AGNIFILO:  One second, Judge?  I just want to

7    talk to the Government about something.

8           THE COURT:  Of course.

9           MR. AGNIFILO:  Thank you, Judge.

10          (Pause.)

11          MR. AGNIFILO:  Judge, can I have one more second?

12          THE COURT:  Yes, of course.

13          MR. AGNIFILO:  Thank you.

14          (Pause.)

15          MR. AGNIFILO:  Judge, can we have a sidebar for a

16   second?

17          (Sidebar held.)

18          THE COURT:  Yes, sir.

19          MR. AGNIFILO:  Thank you, Judge.

20          So through some aspect of the technology that I

21   don't understand, this filing 575, one the reporters allowed

22   me to look at her phone and if you hold her phone without

23   scrolling, it's properly redacted.  I scrolled her phone and

24   if you're able to read while the text is moving, it

25   automatically becomes unredacted.  I don't understand how

Sidebar                                                    228

1   that's possible.

2           THE COURT:  Well, it has been lifted, but it is

3   already -- the reporter already downloaded it to her phone, I

4   take it --

5           MS. GERAGOS:  Yes.

6           MR. AGNIFILO:  Yes, yes.

7           THE COURT:  -- before we took it off the docket?

8           MS. GERAGOS:  Yes.

9           MR. AGNIFILO:  Right.  So I told the reporters that

10  what I would like to do is to make an application to Your

11  Honor, I think the Government will certainly join in, we are

12  just concerned about the names of people, people who might be

13  witnesses, people who might be victims of one form or another,

14  and any identifying information related to those people, so

15  that the viewing public won't be able to figure out who they

16  are.  And that would be the application.

17          I don't want to put the Court in a tricky First

18  Amendment position.

19          THE COURT:  Well, that is a First Amendment

20  situation.

21          MS. PENZA:  We do have a situation where one of the

22  people is a victim and there is specific references to her

23  having engaged in sexual conduct with the defendant, and her

24  full name has never been publicized in relation to sexual

25  conduct with Keith Raniere.

Sidebar                                    229

1        And as Your Honor knows, we have a motion before the

2   Court to conceal the names of people who are in DOS.  So it is

3   a real concern for us if her name were to become public in

4   that way.  And this was provided pursuant to a protective

5   order.

6        MR. AGNIFILO:  So my understanding is that the press

7   is not going to report the victims of crimes, I think as a

8   matter of their individual journalistic ethics.

9        MS. PENZA:  Let me confirm.  Sorry.

10        This one person is not listed as a Jane Doe.  So her

11   full name is there.  So to the extent they're saying they

12   won't report on people who have been listed as Jane Does

13   previously, this woman would not qualify in that.  So it is

14   just listed her as her full name, first and last, and she has

15   a very unique name.

16        THE COURT:  So what is your solution that doesn't

17   run afoul of the First Amendment --

18        MR. AGNIFILO:  So I think the solution --

19        THE COURT:  -- regarding prior restraint?

20        MR. AGNIFILO:  Well, I mean everything -- everything

21   that has since been redacted is all pursuant to the protective

22   order.  I mean there is a protective order that the Court has

23   every right to put in place that binds everyone, including --

24   I mean the press hasn't signed onto it, but it's --

25        THE COURT:  Well, no.

SAM      OCR      RMR      CRR      RPR

Sidebar                                                      230

 1          MR. AGNIFILO:  -- obviously, an issue of overriding

 2  concern to all the parties that the protective order be

 3  maintained.  Through whatever happened --

 4          THE COURT:  Which reporter is this now?

 5          MR. AGNIFILO:  Well, so the reporters have all been

 6  very, very cooperative, but I mean Emily Saul was nice enough

 7  to let me look at her phone.

 8          THE COURT:  Okay.

 9          MR. AGNIFILO:  And so --

10          THE COURT:  Well, I mean I don't know what to tell

11  you about this.  I don't think --

12          MS. PENZA:  Then I think we need to go do something.

13  I mean there is an overriding interest in this person's

14  privacy.  She is -- we do view her as a sex-trafficking

15  victim.  We haven't charged crimes related to her, but that's

16  how the Government views her.  And so to have her name out

17  there as -- and regardless, an extortion victim, a wire fraud

18  victim, related to very highly sensitive graphic stuff that

19  was taken from her, she was --

20          THE COURT:  All right, I understand the gravity of

21  the situation.  I got it.

22          The question is --

23          MS. PENZA:  I am not an expert on First Amendment

24  law.

25          THE COURT:  Well, there are limits to what the Court

Sidebar                                          231

1    can do, and I am not sure that I can engage in a prior

2    restraint if, let's say, whoever it is has this material and

3    scrolls down and sees the name.  It was on the docket.  It was

4    on the public docket.  It was not properly sealed on the

5    public docket, for whatever reason, or it was sealed.

6              Was it sealed on the public docket?

7              MS. GERAGOS:  It was redacted, but apparently

8    someone can move the redactions.

9              I don't understand how any -- I've never had this

10   issue.  I've only heard of this in connection with the Paul

11   Manafort case to be honest, Your Honor.  I wasn't able to do

12   that.  I wasn't able to move it once I downloaded it, but

13   somebody else was able to do that.  And then when

14   Mr. Agnifilo --

15             THE COURT:  Is it their intention to publish the

16   name of this person?

17             MR. AGNIFILO:  They said it's not.  I mean the

18   reporters I spoke to say they would not print the name.

19             MS. PENZA:  As to the individual who is not a Jane

20   Doe?  Because that's my --

21             THE COURT:  Well, I think you need to clarify that

22   with whoever this is you have spoken to --

23             MR. AGNIFILO:  Okay.

24             THE COURT:  -- that they are not going to.  This is

25   as to the Jane Does and the one individual whose name came up,

Sidebar                                          232

1    but whose identity was intended to be kept unpublished.  I

2    mean if you can work that out with them, I will give you time

3    to work it out.

4              MR. AGNIFILO:  Let's do that.

5              THE COURT:  All right, and the jurors can wait.

6              MR. AGNIFILO:  All right.

7              THE COURT:  All right, because this is such a major

8    situation.

9              MR. AGNIFILO:  Okay.

10             THE COURT:  Because I really do not want to put this

11   individual in harm's way.  Nobody wants to do that.

12             And is this person's name going to come up during

13   the trial?

14             MS. PENZA:  Well, first of all, we have moved to not

15   have any personal identifiers for DOS victims.  Your Honor

16   hasn't ruled on that.

17             THE COURT:  Well, we well get there.

18             MS. PENZA:  No, of course, Your Honor, but the

19   Government's intention is for her name not to come up during

20   trial.

21             THE COURT:  Ever?

22             MS. PENZA:  Right.

23             THE COURT:  Well, I think both sides should talk to

24   the journalists and have this discussion about how important

25   this is.  We are not ruining someone's life.  There is plenty

Sidebar                                               233

1    for them to write about here, and this was a technical

2    oversight.

3              We can just say it was a technical glitch that

4    occurred that was never anticipated, but that they have the

5    information.

6              I mean we could do research on it, but I don't feel

7    that I have the power to restrain them from publishing

8    something that is technically now in the public domain.

9              I mean did anyone see the movie The Post about the

10   Pentagon papers?  I mean --

11             MR. AGNIFILO:  Right.

12             THE COURT:  -- I think the Supreme Court precedent

13   is pretty clear on this.  I do not think it is a stretch, but

14   why don't you talk to them if you want.  We don't have time to

15   do research here.

16             MR. AGNIFILO:  We'll go talk to them.  I think they

17   are looking to be reasonable.

18             THE COURT:  All right, and see if you can get that

19   kind of assurance because --

20             MR. AGNIFILO:  Okay, all right.

21             THE COURT:  -- otherwise we are just going to be

22   driven to a halt here.

23             MR. AGNIFILO:  No, no, let's go do that.

24             THE COURT:  Why don't you try.

25             Let's take another few minutes, okay?

Sidebar                                                    234

1          MS. PENZA:  Thank you, Your Honor.

2          MR. AGNIFILO:  Thank you.

3          (Sidebar concluded.)

4          (In open court.)

5

6          (Continued on the following page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Prospective Juror No. 97                              235

1   (continuing.)

2           THE COURT:  Juror No. 97.

3           (Prospective juror enters.)

4           THE COURT:  Please be seated.  You are Juror No. 97,

5   are you not?

6           PROSPECTIVE JUROR:  Yes.

7           THE COURT:  And you indicated that your employer

8   does not pay you during your jury service?

9           PROSPECTIVE JUROR:  No.  I'm not sure for a fact,

10  but he didn't say anything like that.

11          THE COURT:  Well, what is it that you do for a

12  living?

13          PROSPECTIVE JUROR:  Telemarketing.

14          THE COURT:  And do you do it full-time?

15          PROSPECTIVE JUROR:  No, part-time.

16          THE COURT:  I would like you to check with your

17  employer about -- about how many hours a week do you work?

18          PROSPECTIVE JUROR:  24.

19          THE COURT:  And is this during the day on weekdays

20  or on weekends or what is it?

21          PROSPECTIVE JUROR:  Afternoons.  On weekdays and one

22  day, Saturday.

23          THE COURT:  Mr. Reccoppa will give you his phone

24  number and he will let you know what your employer policy is

25  on paying you jury duty.  You indicated, "Other than friends

Prospective Juror No. 97                                236

1   and relatives who are the three people, living or dead, who

2   you admire most," and you said, "I don't admire anyone"?

3                PROSPECTIVE JUROR:  Yeah, that's true.

4                THE COURT:  How far did you go in school?

5                PROSPECTIVE JUROR:  High school.

6                THE COURT:  You were asked this, "Have you or anyone

7   else been the victim of sexual assault including date rape?"

8   You answered, "Yes, all of the above.  Too many people I know

9   it happened to."  How many people?

10               PROSPECTIVE JUROR:  I can't count, but a lot in my

11  family and growing up, so --

12               THE COURT:  What was the nature of what happened to

13  them?  I mean --

14               PROSPECTIVE JUROR:  Mostly, like, child molestation.

15               THE COURT:  These are relatives of yours?

16               PROSPECTIVE JUROR:  Yeah.

17               THE COURT:  Brothers, sisters, cousins?

18               PROSPECTIVE JUROR:  Mom.

19               THE COURT:  What is that?

20               PROSPECTIVE JUROR:  Mother.

21               THE COURT:  Any other questions?

22               MR. AGNIFILO:  Nothing from us.

23               THE COURT:  Anything from the Government?

24               MS. PENZA:  No, Your Honor.

25               THE COURT:  Thank you for coming in.  Have a nice

Prospective Juror No. 100                    237

1    day.

2              (Prospective juror exits.)

3              MR. AGNIFILO:  I don't have a motion.

4              MS. PENZA:  No motion, Your Honor.

5              THE COURT:  I am going to approve her.  There is no

6    motion to strike her and I would also add that she did not

7    indicate the nature of any real kind of hardship on her part.

8              100.

9              (Prospective juror enters.)

10             THE COURT:  Please be seated, sir.  You are Juror

11   No. 100?

12             PROSPECTIVE JUROR:  Excuse me.

13             THE COURT:  You are Juror No. 100?

14             PROSPECTIVE JUROR:  Yes, sir.

15             THE COURT:  Okay.  And what kind of work do you do?

16             PROSPECTIVE JUROR:  I'm a supervisor for the Transit

17   Authority.

18             THE COURT:  Okay.  And you indicated that you were a

19   juror back in July of last year; is that right?

20             PROSPECTIVE JUROR:  Yes.

21             THE COURT:  July 6th through July 9th.  And did you

22   serve on the jury?

23             PROSPECTIVE JUROR:  No.

24             THE COURT:  You were excused?  You didn't actually

25   serve on the jury?

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  But you were questioned?

3          PROSPECTIVE JUROR:  Yes.

4          THE COURT:  Now, you didn't answer some questions.

5   I am just going to ask you the questions.  Will you listen

6   carefully?  Listen carefully to the questions.

7          PROSPECTIVE JUROR:  Okay.

8          THE COURT:  All right.  "Should a defendant decide

9   to testify, that does not shift the burden of proof to the

10  defendant or diminish the obligation of the Government to

11  prove the defendant's guilt beyond a reasonable doubt.  The

12  Government always carries this burden of proof in a criminal

13  trial.  Will you have any difficulty following this rule of

14  law, yes or no?"

15         PROSPECTIVE JUROR:  No, I have no difficulty

16  following the rule of law.

17         THE COURT:  "Certain witnesses in this case may be

18  law enforcement officers.  Do you hold any beliefs or opinions

19  that would prevent you from evaluating the testimony of law

20  enforcement officers fairly and impartially, yes or no?

21         PROSPECTIVE JUROR:  Could you please repeat the

22  question?

23         THE COURT:  Sure.  Do you have any beliefs or

24  opinions that would prevent you from evaluating the testimony

25  of law enforcement officers fairly and impartially?

1          PROSPECTIVE JUROR:  No.

2          THE COURT:  And would you be -- would you be -- I'm

3     sorry.  "Would you be inclined to believe a witness is more

4     truthful or less truthful solely because the witness is a law

5     enforcement officer?"

6          PROSPECTIVE JUROR:  No.

7          THE COURT:  "You may hear that law enforcement

8     officers conducted surveillance and searched individuals and

9     residences during the investigation of this case.  These

10    investigative techniques are lawful.  Do you have any feelings

11    about the use of these techniques that might affect your

12    ability to consider such evidence fairly, yes or no?"

13         PROSPECTIVE JUROR:  No.

14         THE COURT:  Anything else?

15         MR. AGNIFILO:  Nothing from us.

16         THE COURT:  Thank you.

17         MS. PENZA:  I'm sorry, Your Honor, we do have a

18    question for follow-up.

19         THE COURT:  Have a seat, sir.  Do you have a number?

20         MS. PENZA:  Yes, 16.

21         THE COURT:  I thought I asked that question.

22         MS. PENZA:  I'm sorry, Your Honor.

23         THE COURT:  I thought I asked it.  What kind of work

24    do you do, you work at the MTA?

25         PROSPECTIVE JUROR:  Yes, sir.

Prospective Juror No. 100                                          240

1          MS. PENZA:  I'm very sorry, Your Honor.

2          THE COURT:  You answered the question at the

3    beginning.  Thank you very much.  Have a nice day.

4          (Prospective juror exits.)

5          MR. AGNIFILO:  No motion from us.

6          THE COURT:  No motion.

7          MS. PENZA:  Not from us.

8          THE COURT:  Juror No. 100 is approved.

9

10         (Continued on the following page.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SN        OCR        RPR

Prospective Juror No. 102                          241

1              THE COURT:  102.

2              (Prospective Juror No. 102 enters courtroom.)

3              THE COURT:  Please be seated.  You are Juror No.

4     102; correct?

5              THE PROSPECTIVE JUROR:  Yes.

6              THE COURT:  You indicated on your questionnaire that

7     you have travel plans.

8              THE PROSPECTIVE JUROR:  My son plays travel

9     baseball.  He is fifteen.  So we have travel in May.  We leave

10    on the 14th or the 15th through the weekend and then again in

11    June, now, I found out, around the Father Day's weekend.

12             THE COURT:  When is it?

13             THE PROSPECTIVE JUROR:  I think it is like June 14th

14    or 15th.  I have one in May and one in June.

15             THE COURT:  I see.  What is your role in this?

16             THE PROSPECTIVE JUROR:  In what?

17             THE COURT:  In traveling.

18             THE PROSPECTIVE JUROR:  I am a single mom and I

19    drive my son, so we're going to Pennsylvania.

20             THE COURT:  Oh, I see.

21             THE PROSPECTIVE JUROR:  So I'm his ride there and

22    caregiver.

23             THE COURT:  Are there any other questions?

24             MR. AGNIFILO:  No, Judge.

25             MS. PENZA:  I'm sorry, Your Honor, I just want to

Prospective Juror No. 102                    242

1  clarify the actual dates, whether it was on the weekend or

2  not.

3          THE PROSPECTIVE JUROR:  So I go on Fridays, Thursday

4  night or Friday, and then back on Monday.  It depends; one

5  weekend I come back on a Monday, one weekend is on a Sunday.

6          MS. PENZA:  So I think that is different from the

7  dates.

8          THE COURT:  It is a little different from the dates

9  that you gave.

10          MS. PENZA:  I don't have my phone, so if you want to

11  give me a calendar, I can show you.

12          THE COURT:  Well, actually, that would be helpful.

13  Let's look at the dates in May.  This isn't for school?  This

14  is separate from your son's school?

15          THE PROSPECTIVE JUROR:  Yes.

16          THE COURT:  Let's look at the May date, primarily.

17          THE PROSPECTIVE JUROR:  Okay, so in May, we leave on

18  Friday, the 17th, and I come back on the 20th.  And then in

19  June -- June, I leave on the 14th and we come back on the

20  16th.

21          THE COURT:  Thank you.  Let me ask you a few other

22  questions.  When you say you come back on the 20th, do you do

23  that in the morning or the afternoon?

24          THE PROSPECTIVE JUROR:  It would depend on when the

25  games is going until.  So on tournament baseball, it just

Prospective Juror No. 102                    243

1   depends when they are done playing the game.

2              THE COURT:  So if they win --

3              THE PROSPECTIVE JUROR:  If they stink, we come home

4   early; if they are winning, we come home later.

5              THE COURT:  Okay, got it.

6              There may be evidence in this case that includes

7   explicit -- sexually explicit images and language.  Would

8   hearing about this type of evidence affect your ability to

9   serve as a fair and impartial juror in this case; you answered

10  that question as yes.  You said if there are images regarding

11  sexual exploitation of children, I would have a difficult time

12  being partial or even looking at that.  I guess you meant

13  being impartial.

14             THE PROSPECTIVE JUROR:  Right.

15             THE COURT:  Or looking at that.  Well, I can

16  understand why it would not be easy.  Let's start with that

17  because it is not easy for anybody.

18             MS. PENZA:  And I have a personal experience as

19  regards to my son.

20             THE COURT:  What is that?

21             THE PROSPECTIVE JUROR:  It's so uncomfortable for

22  me.

23             THE COURT:  Do you want to talk to me at sidebar?

24             THE PROSPECTIVE JUROR:  I would.

25             (Sidebar.)

1          (The following occurred at sidebar with prospective

2    juror No. 102.)

3          THE COURT:  Briefly.

4          THE PROSPECTIVE JUROR:  Briefly, my son was four

5    years old.  He was inappropriately touched and we had an issue

6    with an older family member and I have tremendous amount of

7    issues, it is not just about children.  It's just about

8    someone doing something that they -- taking advantage of their

9    position, power, and I'm not comfortable.

10         THE COURT:  Okay.  Thank you for telling us.

11         THE PROSPECTIVE JUROR:  Sorry, it is just awkward.

12         THE COURT:  I understand it is very difficult for

13   you.  How is your son doing now?

14         THE PROSPECTIVE JUROR:  He's good.

15         THE COURT:  Glad to hear it.

16         (Prospective juror No. 102 leaves sidebar.)

17         THE COURT:  Don't go.

18         Any objection to striking this witness?

19         MR. AGNIFILO:  I would ask that we strike the

20   witness.

21         MS. PENZA:  No objection.

22         THE COURT:  The witness is struck.

23         (Sidebar concluded.)

24         (In open court.)

25         THE COURT:  Thank you for coming in.  You have a

1   nice day.

2           THE PROSPECTIVE JUROR:  Thank you, Judge.

3           (Prospective Juror No. 102 exits courtroom.)

4           THE COURT:  On consent of the parties, this juror is

5   struck for cause.

6           MR. AGNIFILO:  Yes.

7           THE COURT:  That is 102.

8           Okay, then we are going to do 104 next.

9           (Prospective Juror No. 104 present at sidebar.)

10          THE COURT:  Please be seated.

11          You are Juror No. 104; correct?

12          THE PROSPECTIVE JUROR:  Correct.

13          THE COURT:  Okay.  Welcome.  Sorry for the delay.

14          THE PROSPECTIVE JUROR:  I made a lot of new friends.

15          THE COURT:  Sounds good.

16          You indicated that you had a medical condition.

17          THE PROSPECTIVE JUROR:  Uh-hum.

18          THE COURT:  Could you just tell us why it would be

19  difficult for you to sit as a juror?

20          THE PROSPECTIVE JUROR:  Well, what was just

21  happening in the other room and has been happening for about

22  an hour and a half now is I had my second hip replacement done

23  November 12, 2018.  Months have gone by, but I am still not

24  capable of sitting for extended periods of time.  What happens

25  is pain starts shooting down my leg to my knee and it is

Prospective Juror No. 104                          246

1   painful and I get distracted.  I can't focus because I'm just

2   dealing with the pain at that point.

3           THE COURT:  So that has continued since you have

4   recovered from the surgery?

5           THE PROSPECTIVE JUROR:  If I am standing or sitting

6   for long periods of time.  Like, I cannot at this point yet

7   take a two or three hour car ride; I have to pull over to the

8   road, walk around for 15, 20 minutes, get back in the car.

9           THE COURT:  Got it.

10          THE PROSPECTIVE JUROR:  I just can't do either of

11  those for extended periods of time.

12          THE COURT:  Now you said this is the second hip

13  replacement?

14          THE PROSPECTIVE JUROR:  I had the first one done in

15  March of 2017.

16          THE COURT:  And that one didn't have this outcome?

17          THE PROSPECTIVE JUROR:  The same thing.  It takes

18  about a year for it, you know, to get back to where things are

19  at a normal comfort level.

20          THE COURT:  Do you work?

21          THE PROSPECTIVE JUROR:  I'm a substitute teacher.  I

22  just retired in June, but I am subbing three days a week.

23          THE COURT:  And it doesn't affect your --

24          THE PROSPECTIVE JUROR:  No, because I have the

25  capability -- I teach fourth grade, or down to first grade; I

1   can stand when I need to, I can sit when I need to.  I do have

2   a cane with me when I go to work, so if I need that to help

3   me, I can lean against a chalkboard, I can lean against the

4   windowsill, so there's different ways of coping with it at

5   that point.

6            THE COURT:  You can move around?

7            THE PROSPECTIVE JUROR:  I can move around.  I'm just

8   -- like in that other room, where we were just sitting, I was

9   walking circles around the table and I was doing leg stretches

10  and things of that sort.

11           THE COURT:  I hear you.  Okay, thank you.

12           Are there other questions?

13           MR. AGNIFILO:  Not from us.

14           THE COURT:  Okay, thank you very much.  I hope you

15  are feeling better soon.

16           THE PROSPECTIVE JUROR:  Thank you.

17           (Prospective Juror No. 104 exits courtroom.)

18           THE COURT:  Is there a motion?

19           MR. AGNIFILO:  Yes, Judge.  We ask that the witness

20  be excused.  It sounds like she is going to have a medical

21  hardship for sitting for long periods of time.  It sounds like

22  standing alone won't solve the problem; she needs to walk

23  around, which I think is hard to accommodate.

24           MS. PENZA:  No objection.

25           THE COURT:  The motion is granted.  Juror No. 104 is

1    struck for cause, medical hardship.

2              THE COURT:  Juror No. 105.

3              (Prospective juror No. 105 present at sidebar.)

4              THE COURT:  Please be seated, ma'am.

5              You are Juror No. 105?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Welcome.  I just have a few questions

8    for you.  How long have you had your current position?

9              THE PROSPECTIVE JUROR:  Nine years.

10             THE COURT:  You indicated who the people you admired

11   most were, but you -- with regard to those people who you

12   least admire, are there any people who you least admire?

13             THE PROSPECTIVE JUROR:  Do you mean made?

14             THE COURT:  No, are there any people that you don't

15   like?  I mean, public figures --

16             THE PROSPECTIVE JUROR:  No.

17             THE COURT:  There is a question here:  Some people

18   believe rich people can buy their way out of anything.  What

19   is your opinion on that topic?  And you said why not, they can

20   buy if they can.  What do you mean by that?

21             THE PROSPECTIVE JUROR:  If the people would like to

22   buy, they can buy.

23             I mean, I may have misunderstand something with that

24   question, but from my understanding, the question is asking if

25   the people would like to buy, B-U-Y, buy, right?  So the

Prospective Juror No. 105                    249

1    people free to buy if they would like to buy.

2         THE COURT:  So you have no problem with wealthy

3    people solving their problems by paying to get out of trouble,

4    is that what you mean?  I am just wondering what it means.

5         THE PROSPECTIVE JUROR:  No, probably it is

6    misunderstanding for me, because actually English is a second

7    language for me and I can speak, but I believe I don't

8    understand exactly everything correctly.  This is might be --

9    that's why it's misunderstanding.

10        THE COURT:  Well, do you have problems at work

11   understanding what people say to you?

12        THE PROSPECTIVE JUROR:  No, I don't have problems at

13   work because I'm working in the office and there's no clients,

14   no problem with the coworkers, no problem with my supervisor.

15   But to be on jury duty, I believe it's not fair for me to be

16   there because my English not good enough to understand.

17        THE COURT:  Well, I'll --

18        MS. PENZA:  And to judge -- I mean, to choose

19   decision like as a jury duty because of the termination --

20   terminology could not be understanding for me directly.

21        THE COURT:  I see.  Well, you are an eligibility

22   specialist for the Human Resources Administration --

23        THE PROSPECTIVE JUROR:  Yes, and I have --

24        THE COURT:  I'm not done.  When I am finished, you

25   get to speak.  Okay?

Prospective Juror No. 105                    250

1      THE PROSPECTIVE JUROR:  I'm sorry.

2      THE COURT:  So you make eligibility recommendations

3  or decisions regarding individuals -- whether people qualify

4  for benefits, is that it?

5      THE PROSPECTIVE JUROR:  Yes, food stamps.

6      THE COURT:  What's that?

7      THE PROSPECTIVE JUROR:  Food stamps.  Supplemental

8  Nutrition Assistance Program now.

9      THE COURT:  I see, okay.  Let me just ask you, you

10  indicated in answer to this:  Have you or anyone close to you

11  ever been questioned or subpoenaed in any manner by the Police

12  Department, any law enforcement agency, the Justice

13  Department, the Department of Homeland Security, the Internal

14  Revenue Service or the Bureau of Alcohol, Tobacco and

15  Firearms, and you said yes, and you explained:  Has been

16  arrested but case was sealed.

17      THE PROSPECTIVE JUROR:  Yes.

18      THE COURT:  Was this a relative or a friend?

19      THE PROSPECTIVE JUROR:  No, it's about me.

20      THE COURT:  I see.  You were arrested?

21      THE PROSPECTIVE JUROR:  I have been arrested, which

22  was not fair because I was a victim of the situation.  The

23  other person abused me on the face, and when the police came,

24  they arrested me and him because the guy said that I abused

25  him.  He scratched his neck, but he said this is what I did.

1   So they arrested me and him, but I was a victim and it was a

2   lot of witnesses around.  It happens outside in Manhattan.  So

3   after that, it was no -- I have been arrested, like I said,

4   but the case has been sealed.

5              THE COURT:  Now, did you go to court?

6              THE PROSPECTIVE JUROR:  No, I had a lawyer.  He went

7   for me for the Court.

8              THE COURT:  I see.  Did you pay this lawyer?  Was

9   this a lawyer that you paid or was it Legal Aid or --

10             THE PROSPECTIVE JUROR:  The first time it was Legal

11  Aid, but after I took -- maybe they made a mistake, because I

12  paid for that lawyer, but the other side, the other guy, he --

13  it was not even a court.  Nobody come to court.

14             They -- the first time when I came, they changed the

15  date because -- it was not even a probation, it was two days.

16  I mean, from the -- with the break, I mean, one time, and in

17  two or three more months was another date and after it was

18  sealed.

19             THE COURT:  It was sealed?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  So what happened to the other person who

22  you said --

23             THE PROSPECTIVE JUROR:  For him, it was the same,

24  sealed.  It was because my lawyer spoke with his lawyer, which

25  was Legal Aid, and this is what he said.

1      THE COURT:  So did you have to go to the police
2  station?
3      THE PROSPECTIVE JUROR:  After court or --
4      THE COURT:  No, when you had the altercation, when
5  this happened?
6      THE PROSPECTIVE JUROR:  No, they arrested me and I
7  was in the police station.  I have been sitting inside of the
8  police station.
9      THE COURT:  I see.  So it was sealed and nothing was
10  done other than the lawyers met with the prosecutors and that
11  was the end of the case?
12      THE PROSPECTIVE JUROR:  Yes, that's it.
13      THE COURT:  Now, did that experience have any effect
14  on your ability to be fair in considering the testimony of
15  police officers if they had testified?
16      THE PROSPECTIVE JUROR:  This is the experience that
17  police officer is not always right for me.
18      THE COURT:  I see.  But even --
19      THE PROSPECTIVE JUROR:  And not even -- I'm sorry.
20  They are not even listening, they are doing whatever they're
21  thinking to do, and that's it.  And so, if you are right, you
22  have to fight for this, to prove that I'm right.  But this is
23  my experience of them.
24      THE COURT:  Okay.  Now, there will be police
25  officers who testify, along with other witnesses, there will

Prospective Juror No. 105                                253

1  be many witnesses, and I will instruct the jury that all

2  witnesses who testify need to be evaluated based on their

3  testimony as to whether they're telling the truth, how much to

4  believe and how important it is to you what they say, if you

5  believe them.  Do you think you could be fair and impartial in

6  evaluating a law enforcement officer's testimony?

7              THE PROSPECTIVE JUROR:  I don't know.  I don't know

8  what to say.  Just, you know, I just understood that it was my

9  experience to -- you cannot -- it is not about fight, but you

10 cannot argue with the police officer because whatever you said

11 it is against me, I mean, it's against the person.

12             THE COURT:  I see.

13             Are there other questions?

14             MS. PENZA:  No, Your Honor.

15             MR. AGNIFILO:  No, thank you.

16             THE COURT:  Well, thank you for coming in.  Have a

17 nice day, ma'am.

18             THE PROSPECTIVE JUROR:  Thank you.

19             THE COURT:  You're welcome.

20             (Prospective Juror No. 105 exits courtroom.)

21             THE COURT:  Is there a motion?

22             MR. AGNIFILO:  I think I am going to ask to strike

23 her for cause.  It strikes me -- she seems to take things in

24 English very literally.  And so when she said, question 44,

25 can rich people buy their way out of anything, I think she was

MDL       RPR       CRR       CSR

1   thinking about them actually buying things.  I mean, that was

2   the question she answered.  And then for a while, quite

3   frankly, I thought she was having a dialogue with Your Honor

4   where I really thought she followed things pretty well, but

5   then the last question, where I think it's a very clear

6   question to us, but it is a question that has a more complex

7   sort of concepts that, you know, can you evaluate a police

8   officer, you know, objectively, she kind of went back to her

9   experience.  So my concern is, you know, we have very involved

10  jury instructions, it's a complicated case.  I think she wants

11  to be fair.  I think she can be fair.  My concern is whether

12  she can really grasp all of the subtleties, especially the

13  language in the racketeering case with the RICO instructions,

14  as they are.  So, on balance, I think it's a close call, but I

15  was going to ask Your Honor to strike her for cause.

16           MS. PENZA:  The Government moves to strike her for

17  cause based on her law enforcement bias, and Your Honor asked

18  a follow-up question and she was not able to articulate that

19  she could be fair and impartial to law enforcement.

20           THE COURT:  All right.  Two different reasons,

21  motions are granted.  Juror No. 105 is struck for cause.

22           We are up to 106.

23           (Prospective juror No. 106 present at sidebar.)

24           THE COURT:  Please be seated.

25           You are Juror No. 106; correct?

Prospective Juror No. 106                    255

1          THE PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Good afternoon.

3          THE PROSPECTIVE JUROR:  Hi.

4          THE COURT:  I just have a few questions for you.

5   Now, in terms of being paid for jury service, do you know

6   whether you are paid for your jury service by your employer?

7          THE PROSPECTIVE JUROR:  Yes, I am.

8          THE COURT:  For the entire period?

9          THE PROSPECTIVE JUROR:  Well, I do the payroll, so

10  yeah.

11         THE COURT:  Okay.  But is it their policy to pay for

12  jury service, I think that's really the question.  Just

13  because you write the checks doesn't mean you are authorized

14  to write this check, and I just want to make sure that what

15  you're saying is that it is their policy that you should be

16  paid and then you get paid.

17         THE PROSPECTIVE JUROR:  I don't know if they have a

18  written policy on it or not, but when we were called for the

19  other day on the 8th, I was paid for that.

20         THE COURT:  I see.

21         THE PROSPECTIVE JUROR:  I'm going to be paid for

22  today.  I don't know what they'd do for six weeks.  I doubt

23  that.

24         THE COURT:  You doubt it?

25         THE PROSPECTIVE JUROR:  Yeah.

Prospective Juror No. 106                          256

1    THE COURT:  This is a union office?

2    THE PROSPECTIVE JUROR:  Yes, it's the union office.

3    THE COURT:  I'd like to find out whether they would

4  pay you for your entire jury service and advise Mr. Reccoppa,

5  who will give his phone number.  It is very important for us

6  to know.  I wouldn't want you to find out in week three that

7  they are not going to pay you and you are sitting on the jury

8  and you can't get out of jury service at that point.  It is in

9  your interest and everyone's interest.

10    THE PROSPECTIVE JUROR:  Right.

11    THE COURT:  Okay.  So, there is a question here:

12  There may be evidence in this case about abortions.  Would

13  hearing about that type of evidence affect your ability to

14  serve as a fair and impartial juror in this case; you answered

15  yes, and you said I have a hard time with abortion issues.

16    Apart from the fact that it is a difficult issue to

17  hear about and think about, do you understand that while there

18  may be a discussion about abortion issues, it is the job of

19  the jury to consider the evidence that is presented and to

20  apply the law, as I give it to you, to determine whether the

21  defendant is guilty beyond a reasonable doubt of specific

22  crimes.  Do you think you could deal with abortion issues in

23  that context?

24    THE PROSPECTIVE JUROR:  I'd like to say I'd be fair

25  and impartial about it, but I don't know.  To me, that's a

Prospective Juror No. 106                                    257

 1   life, you know.  Conception is life.  So if there's abortion

 2   issues, I really don't know, honestly, if I could not consider

 3   that murder.

 4           THE COURT:  Well, this -- murder is not an issue

 5   here.  This is not about murder.

 6           THE PROSPECTIVE JUROR:  Yeah, but you are asking me

 7   if I can be impartial when you are discussing issues about

 8   abortions.  I don't think I can.

 9           THE COURT:  Are there other questions?

10           MR. AGNIFILO:  Nothing from us, Judge.

11           MS. PENZA:  No, Your Honor.

12           THE COURT:  All right.  Thank you for coming in.

13   Have a nice day.

14           THE PROSPECTIVE JUROR:  Thank you.

15           (Prospective Juror No. 106 exits courtroom.)

16           MR. AGNIFILO:  We move to strike the juror for

17   cause.  She said she couldn't be impartial.  She brought up

18   murder, as in her mind, which is the only thing we care --

19   well, we know what the law is, that's not what this process

20   is.  It's to try to figure out what her view of these things

21   are.  She has very strong views and she said flat out she

22   couldn't be impartial, so we ask to strike her for cause.

23           MS. PENZA:  No objection, Your Honor.

24           THE COURT:  What is that?

25           MS. PENZA:  We don't object.

Prospective Juror No. 108                    258

1              THE COURT:  Okay.  Juror No. 106 is struck for

2    cause.

3              108.

4              (Prospective juror No. 108 present at sidebar.)

5              THE COURT:  Please be seated, ma'am.  You are Juror

6    No. 108?

7              THE PROSPECTIVE JUROR:  108.

8              THE COURT:  Now, you say you are a home health aide.

9    Are you paid by the day or by the hour?

10             THE PROSPECTIVE JUROR:  I get paid every two weeks,

11   but by hour.  Yeah, every hour.

12             THE COURT:  You are an hourly worker, in other

13   words?

14             THE PROSPECTIVE JUROR:  Yeah, yeah.

15             THE COURT:  Do you know if your employer pays you

16   when you are on jury duty?

17             THE PROSPECTIVE JUROR:  No, I haven't discussed it

18   yet.  I haven't spoke to them.

19             THE COURT:  I see.  You indicated you have back

20   problems.  What are those?

21             THE PROSPECTIVE JUROR:  You know, like long periods

22   of time my back hurts, sitting down, yeah.

23             THE COURT:  Well, I'd like you to check with your

24   employer.  You work full-time?

25             THE PROSPECTIVE JUROR:  Yes, I do.

1          THE COURT:  I'd like you to check with your employer

2   as to whether your employer pays for your jury duty, while you

3   are on jury duty.

4          THE PROSPECTIVE JUROR:  Okay.

5          THE COURT:  Mr. Reccoppa will give you his phone

6   number and you should give him a call after you have spoken to

7   your employer.  Try to do it right away.

8          THE PROSPECTIVE JUROR:  All right, okay.

9          THE COURT:  Let me just ask you a few other

10  questions.

11         Now, you indicated that you are -- you said your

12  faith is Al Islam?

13         THE PROSPECTIVE JUROR:  Yeah, Al Islam.  I'm a

14  Muslim.

15         THE COURT:  You are a Muslim?

16         THE PROSPECTIVE JUROR:  Yes.  Yes, I am.

17         THE COURT:  And you pray daily, right?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  And you have had said that your faith is

20  extremely important to you?

21         THE PROSPECTIVE JUROR:  Yes.  Yes, it is.

22         THE COURT:  Have you, or anyone close to you, ever

23  participated in a landmark forum, EST or anything that you

24  view as similar?

25         THE PROSPECTIVE JUROR:  No.

Prospective Juror No. 108                    260

1        THE COURT:  Now, you answered this:  Did you have or

2   have you ever had a close friend or family member in prison;

3   and you said, for hitting someone.

4        THE PROSPECTIVE JUROR:  Yeah, my friend's son hit

5   someone and that's why.

6        THE COURT:  So they sent him to jail?

7        THE PROSPECTIVE JUROR:  Yeah.

8        THE COURT:  How long was he in jail for hitting

9   someone?

10       THE PROSPECTIVE JUROR:  I don't know.  I don't know.

11  It's just what my friend told me, you know.

12       THE COURT:  I see.  Do you know whether he was

13  treated appropriately by law enforcement?

14       THE PROSPECTIVE JUROR:  I just know she told me he

15  went to jail, that's why.

16       THE COURT:  Okay.  Any other questions?

17       MR. AGNIFILO:  Nothing from us.

18       MS. PENZA:  No, Your Honor.

19       THE COURT:  Okay.  It is important to know whether

20  you are being paid for your jury service by your employer.

21       THE PROSPECTIVE JUROR:  Okay.

22       THE COURT:  So please get that information promptly,

23  okay?

24       THE PROSPECTIVE JUROR:  All right.

25       THE COURT:  Thank you very much for coming in.  Have

1    a nice day.

2              THE PROSPECTIVE JUROR:  You, too.

3              (Prospective Juror No. 108 exits courtroom.)

4              MR. AGNIFILO:  No motion.

5              MS. PENZA:  None, Your Honor.

6              THE COURT:  All right, 108 is approved subject to

7    hearing about whether she is paid for her jury service.  I

8    would tend to think probably not, but she is approved subject

9    to further information.

10             Juror No. 109.

11             (Prospective juror No. 109 present at sidebar.)

12             THE COURT:  Please be seated, sir.  Good afternoon.

13             THE PROSPECTIVE JUROR:  Good afternoon.

14             THE COURT:  You are Juror No. 109?

15             THE PROSPECTIVE JUROR:  Yes, sir.

16             THE COURT:  Okay.  You work part-time?

17             THE PROSPECTIVE JUROR:  Part-time.

18             THE COURT:  Do you know whether your employer pays

19   for jury duty?

20             THE PROSPECTIVE JUROR:  I gave him the slip, what

21   they gave me, the proof of jury duty.

22             THE COURT:  But my question is does your employer

23   pay for the duration of jury duty if you were to be a juror on

24   this case?

25             THE PROSPECTIVE JUROR:  No, I just gave him the

Prospective Juror No. 109                    262

1   slip.  I don't know.  I guess they do.  I don't know.  I'm not

2   sure.

3            THE COURT:  I don't want to guess about it because I

4   think it is important for you to find out from your employer,

5   from the person.

6            THE PROSPECTIVE JUROR:  Obviously, I guess I'm

7   getting paid for it because, you know, I'm gave him the slip

8   for it, so he knows.

9            THE COURT:  Well, if you are selected as a juror in

10  this case and you are sitting for six weeks as a juror, you

11  will want to know whether you are going to be paid for the

12  whole six weeks, won't you?

13           MS. PENZA:  Yeah, sure.

14           THE COURT:  So what you will need to do is check

15  with the personnel office over there at Kennedy, or wherever

16  the office is, to find out what their policy is at this

17  company about your jury service.  It is a quick question, they

18  can answer it.  This is a giant corporation.

19           THE PROSPECTIVE JUROR:  Yeah.

20           THE COURT:  They are an international corporation

21  and they definitely have a policy, I can assure you.

22           THE PROSPECTIVE JUROR:  Yeah, I just gave it to my

23  boss.  My boss is out, he's on vacation.

24           THE COURT:  Well --

25           THE PROSPECTIVE JUROR:  I will have to find out with

Prospective Juror No. 109                    263

1   one of -- if one of the other managers are out there.

2         THE COURT:  They will tell you and then you will

3   call Mr. Reccoppa, and he'll give you his phone number, and

4   that way we will know.

5         Now, there may be evidence in this case about

6   abortions, but will hearing about that type of evidence affect

7   your ability to serve as a fair and impartial juror in this

8   case?  You answered yes, and you said:  I don't believe in

9   abortions, it is not right.  Baby has right to live.

10        Is that your view?

11        THE PROSPECTIVE JUROR:  Yeah, the baby has a life.

12  She's -- he or she is still -- you know, even though it hasn't

13  been born yet, I guess it still has a right to live.  I'm a

14  Catholic, so, you know....

15        THE COURT:  Well, there may be evidence about

16  abortions, and abortions, certain abortions are legal in this

17  country, and you may hear evidence about abortions having been

18  -- individuals having abortions.  Would you be able to listen

19  to the evidence, and I will give you instructions on the law

20  as to what the elements of the crimes are that are charged and

21  to consider all of the evidence?  There is a lot of evidence

22  of other types -- I don't know if a lot.  There will be

23  evidence of other types of activities that may or may not be

24  attributable to this defendant.  He is presumed innocent; he

25  has pleaded not guilty to all of the charges against him.

Prospective Juror No. 109                                264

1  Would you be able to consider the evidence, whatever it may

2  be, and then decide if he is guilty of the specific crimes

3  that are alleged against him?

4          THE PROSPECTIVE JUROR:  I -- I'm going to be honest,

5  I don't know.  I mean, it's just -- if something was

6  presented, you know, in a way, you know... I'm not -- one, I'm

7  not crazy about seeing gory things or abortions or anything

8  like that, or seeing, you know, things that were depicted in

9  the booklet there, whatever, pornography, kids, you know,

10  doing the awful acts, it is uncomfortable.  I feel very

11  uncomfortable with that.

12          THE COURT:  You have never been on a jury before?

13          THE PROSPECTIVE JUROR:  No, I have done ones in

14  Brooklyn, but they were close to my block and I was excused.

15  We're talking 2013, I believe.

16          THE COURT:  How long have you been doing the job you

17  currently hold?

18          THE PROSPECTIVE JUROR:  Right now, I just made 11

19  years February.

20          THE COURT:  Before that, what did you do?

21          THE PROSPECTIVE JUROR:  I was in school.  Well, I

22  worked Celebrity Apprentice.

23          THE COURT:  You worked as what?

24          THE PROSPECTIVE JUROR:  Celebrity Apprentice, the

25  Donald Trump show.

Prospective Juror No. 109                     265

1          THE COURT:  What about it?

2          THE PROSPECTIVE JUROR:  I was part-time, I worked on

3     that program.

4          THE COURT:  You worked on that program?

5          THE PROSPECTIVE JUROR:  It was seasonal.  It was the

6     first two seasons.

7          THE COURT:  Where was it produced?

8          THE PROSPECTIVE JUROR:  In the City, Manhattan.  In

9     Manhattan, but all over, traveled all over, so.

10         THE COURT:  Any questions?

11         MR. AGNIFILO:  No, Your Honor.

12         MS. PENZA:  No, Your Honor.

13         THE COURT:  Okay, thank you for coming in.  Have a

14    nice day, sir.

15         THE PROSPECTIVE JUROR:  Thank you.

16         THE COURT:  You're welcome.

17         THE PROSPECTIVE JUROR:  Have a good day.

18         (Prospective Juror No. 109 exits courtroom.)

19         MR. AGNIFILO:  I am going to ask Your Honor to

20    excuse him for cause.  Your Honor asked him if he could put

21    his views aside and he said he couldn't put his views aside,

22    he was uncomfortable.  He said, you know, I have to be honest,

23    I'm uncomfortable, and he couldn't give the Court an assurance

24    that he could follow the Court's instructions.

25         MS. PENZA:  The Government objects.  The juror did

MDL      RPR      CRR      CSR

1    not indicate that he could not be fair.  What he indicated was

2    his discomfort, which I think is what we are hearing from a

3    lot of jurors, that these topics make them extremely

4    uncomfortable, as many of them should.

5              MR. AGNIFILO:  If I could, the issue isn't -- yes,

6    it makes many people uncomfortable.  The key question, and

7    Your Honor asked him, as clear as a bell, can you put it aside

8    and can you follow my instructions, and he never gave the

9    Court that assurance.  He actually said that he didn't think

10   he could and that to me is an unqualified juror for this case.

11             MS. PENZA:  Your Honor, I don't think he said he

12   didn't think he could.  I think he said, you know, to be

13   honest, it made him uncomfortable.  That's what I think he

14   said.

15             THE COURT:  I will review the transcript on this

16   one, this is 109, and then I will rule.

17             (Continued on next page.)

18

19

20

21

22

23

24

25

Jury selection                                          267

1    (Continuing.)

2              THE COURT:  We have time to do two before lunch.

3    Just bring them right to the courtroom.  While we are waiting,

4    I think we have about 33 people for tomorrow, but we need the

5    next group of people so that we can call them for Thursday

6    and, perhaps, you know we will be done on Thursday if we have

7    60 or so qualified jurors.  So I am just asking that you get

8    that information to us as quickly as possible.

9              MR. LESKO:  Your Honor, while we are waiting could I

10   ask a question.

11             THE COURT:  Go ahead.  You have not spoken yet.

12             MR. LESKO:  I am no longer the potted plant.  Just a

13   question the math in terms of the total pool of seated jurors.

14   Your Honor has mentioned 60.

15             THE COURT:  I only need 40.

16             MR. LESKO:  So we have a 20-juror buffer basically.

17             THE COURT:  Well, because we have two weeks between

18   the actual final selection, between here and the final

19   selection.

20             (Prospective Jurors enter.)

21             THE COURT:  Please be seated.  You are juror 96?

22             PROSPECTIVE JUROR NO. 96:  Yes.

23             THE COURT:  And you are 107?

24             PROSPECTIVE JUROR NO. 107, yes.

25             THE COURT:  Let me go over a few things with you.

Jury selection                                    268

1          At the near table to the jury box are the attorneys

2   for the Government, Moira Penza, Tanya Hajjar and Mark Lesko.

3   They're assistant United States attorneys.  At the far table

4   is defendant, Keith Raniere, his lawyers, Mark Agnifilo, Teny

5   Geragos, Paul DerOhannesian and Danielle Smith and I am Judge

6   Garaufis.  Let me just say that Keith Raniere is the only

7   defendant who will stand trial before the jury that is being

8   selected here.  Please do not speculate as to why this is the

9   case.

10          And I just want to remind you that it is extremely

11  important that you follow my instruction that you not discuss

12  the case with anyone; not your family, friends or business

13  associates and not other jurors.  In addition, you must not

14  read, listen to, watch or access any accounts of this case in

15  any form of media; newspapers, TV, radio, podcasts or the

16  internet nor should you research or seek outside information

17  about any aspect of the case.  Please do not communicate with

18  anyone about the case on your phone, whether through e-mail,

19  text messaging or any other means, through any blog or website

20  or by way of any social media, including Facebook, Twitter,

21  Instagram, YouTube or other similar sites.

22          You must not consider anything you may have read or

23  heard about the case outside of this courtroom whether you

24  read it before or during jury selection.  Do not attempt any

25  independent research or investigation about the case and do

1    not visit any of the locations identified on the questionnaire

2    or discussed during the course of jury selection.

3              So that is the admonition that I will give over and

4    over again during the trial and I gave it twice at the time

5    you filled out the questionnaire.

6              The trial is going to begin on Tuesday May 7th and

7    it will last up to six weeks.  The Court will provide a

8    schedule of trial days before the trial starts and please

9    continue to call in to the jury information phone line as

10   instructed by the jury clerk.  So all of that having been

11   said, what we are going to do now and I wanted to get you in

12   before lunch because you got here in the morning and I didn't

13   want to keep you until after lunch.

14             So what we will do, Juror No. 107 will be escorted

15   to the jury deliberation room while I ask some follow-up

16   questions to Juror No. 96 and when I'm done questioning Juror

17   96 with a few questions then I will call Juror No. 107 in and

18   we're hoping to get this done by lunchtime.  Thank you very

19   much.

20             (Prospective juror exits.)

21             THE COURT:  So, welcome.  You are Juror No. 96?

22             PROSPECTIVE JUROR:  Yes.

23             THE COURT:  And you indicated that you will be paid

24   for your jury service by your employer?

25             PROSPECTIVE JUROR:  Yes.  Can I just say, I have

Prospective Juror No. 96                    270

1   plans to travel between May 1st and May 11th.  I don't know if

2   you saw that.

3           THE COURT:  Yes, I did.  I wanted to ask you about

4   that.  Is that something that can be adjusted by you?

5           PROSPECTIVE JUROR:  Yes.

6           THE COURT:  You can?

7           PROSPECTIVE JUROR:  Yes.

8           THE COURT:  If the trial starts on May 6th or 7th,

9   could you move your travel to sooner or after the trial?

10          PROSPECTIVE JUROR:  At a cost, I am sure I could,

11  yeah.

12          THE COURT:  You bought the ticket already?

13          PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Well, there is a penalty for most of

15  these tickets just like on the railroad?

16          PROSPECTIVE JUROR:  I don't pay for my railroad.

17          THE COURT:  Yes, I know.  But would that be a

18  hardship for you if you had to pay to change your travel

19  ticket.

20          PROSPECTIVE JUROR:  Just like anybody else, you

21  know, just change the ticket at whatever cost, yeah.

22          THE COURT:  All right.  Are there any questions for

23  this juror?

24          MR. AGNIFILO:  I have none.

25          THE COURT:  Okay.  Well, if you are selected --

Prospective Juror No. 96                              271

1   let's put it this way, assuming there is no objection to your

2   being considered for final selection, you would have to be

3   here on either May 6th or 7th for the trial, but we won't know

4   until then so that's the only problem.  Could you just go

5   outside for a second and I will check with the parties?

6               (Prospective juror exits.)

7               THE COURT:  Is there any objection to this juror?

8               MR. AGNIFILO:  We have no objection.

9               MS. PENZA:  No, Your Honor.

10              THE COURT:  I am planning to tell him that he has

11   been approved to be considered for final selection and he will

12   have to be here on May 6th for the final selection process.  I

13   don't know whether he will be selected in the end, but he

14   needs to be here on May 6th.  Any objection?

15              MR. AGNIFILO:  No.

16              MS. PENZA:  No, Your Honor.

17              THE COURT:  Okay.  Let's ask him to come back.

18              (Prospective juror enters.)

19              THE COURT:  Thank you for waiting.  You are approved

20   for final selection on May 6th so if you could adjust your

21   plans so you could be here on May 6th and be available for the

22   period following, if you are selected for the final jury, the

23   Court would appreciate it.

24              PROSPECTIVE JUROR:  Okay.  I'm sorry, to clarify, at

25   my own cost?

Prospective Juror No. 107                    272

1          THE COURT:  Yes.  Tell me if you've got a big

2     problem with that.

3          PROSPECTIVE JUROR:  Is it reasonable to ask at

4     whatever cost to the Court to cover that?

5          THE COURT:  Only if you can get an appropriation

6     through Congress.

7          PROSPECTIVE JUROR:  I thought it was reasonable to

8     ask.

9          THE COURT:  It is reasonable to ask, but we cannot

10    pay for an adjustment in your airline ticket is the answer.

11    Okay?

12         PROSPECTIVE JUROR:  Okay.

13         THE COURT:  Thank you very much.

14         PROSPECTIVE JUROR:  It might have been a Boeing

15    flight anyways.

16         THE COURT:  I fly Boeing all the time.  I am hoping

17    to be here on May 6th with you.  Thank you very much.

18         PROSPECTIVE JUROR:  Thank you.

19         (Prospective juror exits.)

20         THE COURT:  There being no objection, Juror No. 96

21    is approved.  107, please.

22         (Prospective juror enters.)

23         THE COURT:  Be seated, ma'am.  Good afternoon.

24         PROSPECTIVE JUROR:  Good afternoon.

25         THE COURT:  You are Juror No. 107; correct?

Prospective Juror No. 107                    273

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  Let me just ask you a few follow-up

3    questions.  What -- where do you work and what type of work do

4    you do?

5          PROSPECTIVE JUROR:  I'm a medical secretary at Weil

6    Cornell.

7          THE COURT:  At Weil Cornell?

8          PROSPECTIVE JUROR:  Yes.

9          THE COURT:  And they pay for your jury duty, I take

10   it?

11         PROSPECTIVE JUROR:  Yes, they do.

12         THE COURT:  Okay.  You indicated that you applied to

13   work for government offices, Social Security Administration,

14   New York City School Safety?

15         PROSPECTIVE JUROR:  Yes.

16         THE COURT:  And you took the Court Officer exam, but

17   you have never been hired for any of those positions?

18         PROSPECTIVE JUROR:  No.

19         THE COURT:  Are you on a list?

20         PROSPECTIVE JUROR:  Yeah, for each position I am.

21         THE COURT:  But you haven't been called?

22         PROSPECTIVE JUROR:  School safety I was.  I went

23   through the process and didn't get called back.

24         THE COURT:  All right.  You answered this question,

25   "Have you or anyone close to you ever been the victim of

                    SN        OCR        RPR

Prospective Juror No. 107                                274

1   incest, child molestation or child abuse?"  You said, "Yes.  I

2   was a witness to my sister's sexual abuse that expanded (sic)

3   many years."  It was over many years?

4          PROSPECTIVE JUROR:  Yeah, it started in fourth grade

5   until she was 14.

6          THE COURT:  Until she was 14?

7          PROSPECTIVE JUROR:  Yeah.

8          THE COURT:  Do you think that would create any

9   problem for you in listening to and evaluation testimony about

10  alleged sexual abuse during this trial?

11         PROSPECTIVE JUROR:  Yes, it would.

12         THE COURT:  Do you think you could put that aside

13  and just consider the facts of the case and decide on the

14  specific charges in the case fairly and impartially?

15         PROSPECTIVE JUROR:  Probably not.

16         THE COURT:  Why is that?

17         PROSPECTIVE JUROR:  I have a daughter.  I watch her

18  rather closely.  So it is one of those things that I am not

19  over, honestly speaking.

20         THE COURT:  This abuse that took place over ten

21  years, was that a member of your family?

22         PROSPECTIVE JUROR:  It was an older cousin that was

23  abusing her.

24         THE COURT:  If it happened over a long period of

25  time, were you and others aware of this happening?

Prospective Juror No. 107                           275

1        PROSPECTIVE JUROR:  Yes.

2        THE COURT:  Why did it go on so long?  Was it not

3   disclosed to law enforcement or Child Protective Services?

4        PROSPECTIVE JUROR:  Yes, it was disclosed to other

5   adults, Child Protective Services and other individuals and it

6   ended around 14 and we were placed in the City's care.

7        THE COURT:  And this was your sister?

8        PROSPECTIVE JUROR:  My older sister, yeah.

9        THE COURT:  And she's grown up now?

10       PROSPECTIVE JUROR:  Yeah.  She's a very functional

11   adult.  There were some issues stemming from that and she is

12   an adult.  She just turned 40.

13       THE COURT:  It has affected your life as well, I

14   take it?

15       PROSPECTIVE JUROR:  Yeah, definitely in manners of

16   dealing my own children and dealing with other children.

17       THE COURT:  Any other questions?

18       MR. AGNIFILO:  Not from us, Your Honor.

19       MS. PENZA:  No, Your Honor.

20       THE COURT:  I want to thank you for coming in.  Have

21   a nice day.

22       PROSPECTIVE JUROR:  Thank you.

23       (Prospective juror exits.)

24       MR. AGNIFILO:  We ask that she be excused for cause.

25   Your Honor asked her if she could put this experience aside

SN      OCR      RPR

Prospective Juror No. 107                      276

1    and listen to the evidence in this case with these specific

2    allegations and her answer was, probably not.

3              MS. PENZA:  The Government consents.

4              THE COURT:  Juror No. 107 is struck for cause on

5    consent of the parties.  Okay.  We will take an hour for

6    lunch.  Thank you, everybody.

7              MS. PENZA:  Thank you, Your Honor.

8              MR. AGNIFILO:  Thank you, Your Honor.

9

10             (Luncheon recess taken.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Jury selection                                      277

1           A F T E R N O O N   S E S S I O N

2           (In open court.)

3           MS. GERAGOS:  I'm going to file a new copy of 575.

4    Everyone has checked the redactions and apparently it's okay.

5    Our office is going to do that.

6           THE COURT:  Okay, thank you.  Juror No. 96 we saw at

7    the end of the session had misgivings about giving up his $236

8    roundtrip, coast-to-coast ticket on Alaska Airlines and he

9    gave me a copy of his receipt and he bought this ticket at the

10   beginning of February with a plan to go to San Francisco.  So

11   it would seem to me that, you know, he qualifies on the same

12   basis as other people who have travel plans.  I would not want

13   to treat him differently if he is reticent to give up a very

14   good ticket.  That is a very inexpensive ticket to California.

15   There's probably, like, a $200 change fee on a $236 ticket.

16   So does anyone have a motion?

17          MR. AGNIFILO:  We would move to excuse him, in light

18   of his prearranged plans and the paid vacation.

19          MS. PENZA:  No objection, Your Honor.

20          THE COURT:  The motion is granted.  He is excused

21   for cause due to his travel plans that have been verified by

22   receipt and in this case since I told him to be here on the

23   6th of May, I will tell him he is excused through the Jury

24   Department.

25          MR. AGNIFILO:  Thank you.

```
                          Sidebar                    278
```

1            MS. PENZA:  Thank you.

2            THE COURT:  We are just waiting for the jurors to be

3    brought up.  Could we have a sidebar for a minute?

4            (The following sidebar took place outside the

5    hearing of the courtroom.)

6            THE COURT:  So, in connection with this morning's

7    situation with the filing, is that resolved in an adequate

8    way?

9            MR. AGNIFILO:  I think -- it's resolved in that the

10   press outlets that we have spoken to are not going to be

11   publishing anybody's name and that was the main concern of the

12   parties.

13           THE COURT:  We have no idea of other entities that's

14   out there that's been publishing a lot of the information.

15   There is nothing we can do about that.

16           MR. AGNIFILO:  We don't.  We are surmising that he

17   may not have seen the filing which was put up late last night

18   and pulled down this morning, but we're not sure.

19           THE COURT:  Every effort has been made and to the

20   extent you could do something, you have done something.

21           MR. AGNIFILO:  Yes.  And the press has been very

22   accommodating.

23           THE COURT:  That is good.  Thank you for dealing

24   with the crisis.

25           MS. PENZA:  Thank you.

Jury selection                                      279

1          MR. AGNIFILO:  Thank you, Your Honor.

2          (Sidebar ends.)

3   (Continuing.)

4          THE COURT:  The following jurors are en route but

5   not here yet, Juror No. 131 and 140.  And 132 is traveling

6   back to New York today and 132 will be here tomorrow afternoon

7   to be questioned.

8          (Pause in proceedings.)

9          THE COURT:  Are we ready?

10          MR. AGNIFILO:  We are ready, Judge.

11          THE COURT:  All right.  Let's call all the jurors

12   in.

13          (Prospective jurors enter.)

14          THE COURT:  Please be seated, everyone.  Good

15   afternoon, ladies and gentlemen.  I am Judge Garaufis.  You

16   are here to follow up on the answers to your juror

17   questionnaires.  We have reviewed all the questionnaires and

18   we have a few follow-up questions for each one of you and let

19   me reintroduce you to the parties to the case.  The Government

20   is represented by assistant U.S. attorneys Moira Penza, Tanya

21   Hajjar and Mark Lesko.  And Keith Raniere, the defendant who

22   is wearing the sweater and the open white shirt is represented

23   by attorneys Mark Agnifilo, Teny Geragos, Paul DerOhannesian

24   and Danielle Smith.  Now, let me just say that Keith Raniere,

25   the defendant, is the only defendant who will stand trial

1    before the jury that is being picked and please do not

2    speculate as to why this is the case.  I will tell you a

3    little bit about how we are going to proceed today.

4         Juror No. 110, where are you.  You are first.  When

5    the other jurors retire to the jury deliberation room, which

6    is behind the courtroom here, you will take the first seat

7    where the microphone is in the first row and you will be

8    questioned first and then we will continue with the jurors in

9    numerical order until we are done.

10        I would like to just mention that the schedule that

11   we have is that the trial will begin on Tuesday, May 7th and

12   it will last up to six weeks.  The Court will provide a

13   schedule of trial days before the trial starts and you are

14   directed to continue to call into the jury information line,

15   the phone line, as you were originally instructed by the jury

16   clerk.  Now, let me remind you what I said I think twice at

17   the time you filed out the questionnaires, that it's extremely

18   important that you follow my instructions, that you not

19   discuss this case with anyone; not your family or friends or

20   business associates and not with other jurors.  And what that

21   means is not only should you not talk about it to your family

22   or people you work with about it, if anyone tries to discuss

23   it with you, all you need to say is, the Court has instructed

24   me that I can't talk to you about it.  Blame me, all right?

25   That is the best way to do it.  I would also say that when you

Jury selection                                      281

1    are back in the jury deliberation room waiting, feel free to

2    discuss whatever you want.  You can talk about how well the

3    Yankees are doing, how the Mets are not doing as well as they

4    were a few weeks ago.  You can talk about, you know, Game of

5    Thrones.  I really do not care.  You can even talk about how

6    the latest Avenger movie is going to turn out, but don't talk

7    about the case, please.  We really do appreciate, all of us,

8    that you follow that instruction.

9            Now, in addition, you must not read, listen to,

10   watch or access any accounts of this case in any form of media

11   such as newspapers, TV, radio, podcasts and the internet and

12   you shouldn't research or seek outside information about any

13   aspect of the case.  No Google searches is what I am saying.

14   Please do not communicate with anyone about this case on your

15   phone, whether through e-mail or text messaging or any other

16   means through any blog or website or by way of any social

17   media including Facebook, Twitter, Instagram, YouTube or other

18   similar sites.  You must not consider anything you may have

19   read or heard about the case outside of this courtroom whether

20   you read it before or during the jury selection process.

21           Do not attempt any independent research or

22   investigation about the case and do not visit any of the

23   locations identified on the questionnaire or discussed during

24   the course of jury selection.  So, what we are going to do now

25   is I am going to ask everyone except Juror 110 to leave, but

SN        OCR        RPR

Prospective Juror No. 110                          282

1    before you get up, let's move the microphone out of the way of

2    the people in the first row so nobody trips.

3                   (Prospective jurors exit.)

4                   (Prospective juror enters.)

5                   THE COURT:  Please be seated.  Would you lift up the

6    microphone towards you and bring it closer?  Thank you very

7    much.

8                   PROSPECTIVE JUROR:  You're welcome.

9                   THE COURT:  You are Juror No. 110; is that right?

10                  PROSPECTIVE JUROR:  Yes.

11                  THE COURT:  Now, you indicated on your questionnaire

12   that you had had back surgery.  How long ago was that?

13                  PROSPECTIVE JUROR:  Ten years ago.

14                  THE COURT:  And you still have some effects of that?

15                  PROSPECTIVE JUROR:  Yes, I have spinal stenosis.

16                  THE COURT:  And how does that affect your

17   activities?

18                  PROSPECTIVE JUROR:  I can't sit long periods of

19   time.  I have to get up and move around.  I get numbness in

20   the legs.  It affects my bladder where I frequently go to the

21   restroom.

22                  THE COURT:  And, so, what do you do to alleviate the

23   problem?

24                  PROSPECTIVE JUROR:  To be honest with you I went

25   yesterday to the orthopedic doctor.  He is sending me for

Prospective Juror No. 110                          283

1   another CAT scan and he just put me on Prednisone.

2            THE COURT:  Oh, he has?

3            PROSPECTIVE JUROR:  Yes.

4            THE COURT:  Have you been on that before?

5            PROSPECTIVE JUROR:  Yes, I'm on and off of it.

6            THE COURT:  Does that affect you -- is that a drug

7   that can affect you in lots of different ways?

8            PROSPECTIVE JUROR:  Yes, it can.

9            THE COURT:  How does it affect you?

10           PROSPECTIVE JUROR:  Moods.

11           THE COURT:  Sorry?

12           PROSPECTIVE JUROR:  I get mood swings, you know.

13           THE COURT:  Does it cause stomach trouble too?

14           PROSPECTIVE JUROR:  Yes.  It does, yes.  I did ruin

15  the lining of my stomach taking various things, Advil, and

16  that together -- so.

17           THE COURT:  Does anybody have any questions?

18           MR. AGNIFILO:  I don't, Judge.

19           MS. PENZA:  No, Your Honor.

20           THE COURT:  Okay.  Well, thank you for coming in.

21           PROSPECTIVE JUROR:  You're welcome.

22           (Prospective juror exits.)

23           MR. AGNIFILO:  We ask that she be excused.  Judge,

24  it sounds like she may have a hard time given her combined

25  medical situation.

SN      OCR      RPR

Prospective Juror No. 111                    284

1          MS. PENZA:  Your Honor, it sounds like the medical

2    situation may have recently been exacerbated and so in that

3    case the Government consents, but given that she currently

4    works full-time as a personal banker, the Government didn't

5    see a hardship.

6          THE COURT:  I know, but she indicated -- the reason

7    I thought that she was a candidate to be struck was that she

8    has been put back on Prednisone and that comes with many

9    potential side effects and not just mood swings, but it causes

10   ulcers, it causes stomach problems.  It's not a very -- it's a

11   medicine that is not very kind to the body and she indicated

12   she had urinary -- bladder difficulties.  I mean, it's a host

13   of different things.  It just seemed like it was more of a

14   problem than it is for others.

15         MS. PENZA:  Understood, Your Honor.

16         THE COURT:  All right.  So do you consent?

17         MS. PENZA:  Yes, Your Honor.

18         THE COURT:  All right.  Juror No. 110 is struck on

19   consent of the parties.

20         Okay.  The next person is 111.

21         (Prospective juror enters.)

22         THE COURT:  Please be seated, sir.  You are Juror

23   No. 111?

24         PROSPECTIVE JUROR:  That's right.

25         THE COURT:  Welcome.  We just have a few questions

1   for you to follow up on your questionnaire.  Are you still

2   employed in the same location you worked a month ago?

3                   PROSPECTIVE JUROR:  Yes, the same.

4                   THE COURT:  There is a question here, "There may be

5   evidence in this case about fraternities, sororities, secret

6   societies, rituals or cults.  Would hearing about that type of

7   evidence affect your ability to serve as a fair and impartial

8   juror in this case?"  You answered, "Yes."  You said, "I do

9   not want to know about these organizations."

10                  PROSPECTIVE JUROR:  I'm a strong Christian faith

11  believer, so I don't want to study or learn or involve

12  anything of the matter that hurt my belief or contradict my

13  belief.  That's the reason.

14                  THE COURT:  Well, you're not being asked to be a

15  member of any of these organizations.

16                  PROSPECTIVE JUROR:  I'm not a member.

17                  THE COURT:  No, but you are being asked -- there may

18  be some discussion about these organizations and you are being

19  asked to consider the evidence in the case as a juror and to

20  decide whether the defendant is guilty of any of the crimes

21  he's accused beyond a reasonable doubt.  Would you have any

22  trouble listening to the evidence in this case?

23                  PROSPECTIVE JUROR:  My conscience says that I should

24  not learn or involve in these matters.  That's my faith.

25                  THE COURT:  Your faith is that you shouldn't learn

Prospective Juror No. 111                    286

1   about --

2            PROSPECTIVE JUROR:  Based on faith.  I'm a strong

3   believer in Christian so I don't want to -- my conscious says

4   I don't want to listen about the cult or any other, cult

5   organizations or something like that.

6            THE COURT:  You mean, you want to be ignorant about

7   it?

8            PROSPECTIVE JUROR:  I want to be ignorant about it.

9            THE COURT:  Well, you don't get that choice.  You

10  are a citizen and you have obligations here.  You can't shut

11  the door on reality or on evidence.  You have an obligation to

12  do jury duty?

13           PROSPECTIVE JUROR:  Yeah, I know that, but as I

14  said --

15           THE COURT:  Where in Christianity, frankly, does it

16  say that you shouldn't know about other entities or other

17  pursuits?  Is that part of Christianity that you should be

18  ignorant of the world around you?

19           PROSPECTIVE JUROR:  It is not -- that is my personal

20  thing.

21           THE COURT:  You just have your personal view?

22           PROSPECTIVE JUROR:  My personal view.

23           THE COURT:  I don't know.  I mean --

24           PROSPECTIVE JUROR:  It's in my personal --

25           THE COURT:  I mean, I'm not an expert on the bible,

Prospective Juror No. 111                    287

1   but I don't know that the bible says you should bury --

2             PROSPECTIVE JUROR:  It's my personal --

3             THE COURT:  Let me finish.

4             PROSPECTIVE JUROR:  Okay.

5             THE COURT:  -- that you should bury your head in the

6   sand and not know about something that you might have an

7   obligation to learn about because you have a civic duty to be

8   a juror.

9             PROSPECTIVE JUROR:  Okay.

10            THE COURT:  Have you ever been a juror before?

11            PROSPECTIVE JUROR:  No.

12            THE COURT:  Well, I am telling you that there are a

13  lot of things that you need to do as a juror that require you

14  to keep your eyes open and listen and make decisions.

15            PROSPECTIVE JUROR:  Right.

16            THE COURT:  Citizenship comes with obligations,

17  okay?

18            PROSPECTIVE JUROR:  Okay.

19            THE COURT:  When did you take the oath of

20  citizenship?

21            PROSPECTIVE JUROR:  2006, I think.

22            THE COURT:  Yeah.  And when you raised your hand --

23  do you want me to read you the oath?

24            PROSPECTIVE JUROR:  No.

25            THE COURT:  You have to do your duty.

Prospective Juror No. 111                                288

1           PROSPECTIVE JUROR:  Okay.

2           THE COURT:  You don't want to be a juror?

3           PROSPECTIVE JUROR:  I have no problem.

4           THE COURT:  You have no problem with what?

5           PROSPECTIVE JUROR:  To being a juror.

6           THE COURT:  Well, not if you are not willing to

7    listen to the evidence because you don't like the kind of

8    evidence it is.  You know, this is -- I am not forcing you to

9    be a juror.  I just want you to be honest with me about what

10   the problem is about your being a juror.

11          PROSPECTIVE JUROR:  I don't have a problem.

12          THE COURT:  You have a good job.  It's a full-time

13   job?

14          PROSPECTIVE JUROR:  Yes.

15          THE COURT:  It's a union job?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  You obviously are good at your job;

18   right?

19          PROSPECTIVE JUROR:  Yeah.

20          THE COURT:  But you also have an obligation as a

21   citizen and if you tell me that sincerely you would be unable

22   to listen to evidence about cults or clubs or about

23   fraternities, then just tell me that so I know it.  If you

24   sincerely feel that way, I am not telling you not to believe

25   what you believe.  I am just trying to understand how you feel

SN          OCR          RPR

Prospective Juror No. 111                    289

1   and that you are sincere about your feelings and your

2   concerns.  So tell me, what are your concerns?

3            PROSPECTIVE JUROR:  If I listen all of those things,

4   it may interrupt or -- my belief or something like that.

5   That's only my concern.  I really have no concern about it.

6   That's the only one.

7            THE COURT:  Does anyone have any questions?

8            MR. AGNIFILO:  I don't, Judge.

9            MS. PENZA:  No, Your Honor.

10           THE COURT:  No?

11           MS. PENZA:  No.

12           THE COURT:  All right.  Thank you, have a nice day.

13           (Prospective juror exits.)

14           MR. AGNIFILO:  We're going to ask that he be excused

15   for cause, Judge.  I don't really understand --

16           THE COURT:  First he said it was because he was a

17   Christian and then it was because he felt that way.  He didn't

18   articulate a rational basis for the way I view it.  But

19   notwithstanding that, I am not going to force someone to be a

20   juror who doesn't want to be a juror and is trying to figure

21   out a way how to avoid it.  Do you have anything for me?

22           MS. PENZA:  No, Your Honor.  We consent.

23           THE COURT:  111 is excused for cause, some cause, on

24   consent.  112 is next.

25           (Prospective juror enters.)

SN        OCR        RPR

Prospective Juror No. 112                          290

1          THE COURT:  Please be seated.  You are Juror No.

2    112, are you not?

3          PROSPECTIVE JUROR:  Yes, I am.

4          THE COURT:  Welcome.

5          PROSPECTIVE JUROR:  Thank you.

6          THE COURT:  You are a microbiologist?

7          PROSPECTIVE JUROR:  Yes, I am.

8          THE COURT:  Okay.  And you work full-time?

9          PROSPECTIVE JUROR:  I do work full-time, yes.

10          THE COURT:  And your spouse is an Assistant U.S.

11    Attorney in the Southern District of New York?

12          PROSPECTIVE JUROR:  He was.

13          THE COURT:  He was?

14          PROSPECTIVE JUROR:  He was, yes.

15          THE COURT:  And what does he do now?

16          PROSPECTIVE JUROR:  Now he works for a private law

17    firm called Seeger, Weiss and he's a junior partner.

18          THE COURT:  I'm sure he doesn't feel junior.  I'm

19    sure he's a full partner.

20          PROSPECTIVE JUROR:  But he's been working there for

21    quite a few years now.

22          THE COURT:  All right.  In the past when he was an

23    assistant U.S. Attorney, did you discuss his work with him?

24          PROSPECTIVE JUROR:  He really didn't like to take

25    his work home with him.  I didn't ask, you know, any specific

Prospective Juror No. 112                                    291

1   questions.  Sometimes he just said a couple of things, but

2   nothing specific.

3            THE COURT:  Was he in the civil division or the

4   criminal division?

5            PROSPECTIVE JUROR:  He was in the civil division.

6            THE COURT:  All right.

7            PROSPECTIVE JUROR:  He's still doing litigation.

8            THE COURT:  Now, there may be evidence in this case

9   about abortions.  Would hearing that type of evidence affect

10  your ability to serve as a fair and impartial juror in this

11  case?

12           PROSPECTIVE JUROR:  Okay.

13           THE COURT:  It will be -- there may be evidence

14  about the subject of abortions, that there were abortions.  I

15  don't know what the exact testimony will be.

16           PROSPECTIVE JUROR:  Yes.

17           THE COURT:  But it's a part, but not -- I don't want

18  to characterize it.  It would be a part of the testimony, but

19  there's a wide range of testimony in this case.  Would you be

20  to listen to it and to the extent you think it's relevant and

21  persuasive, decide the case taking that in mind?

22           PROSPECTIVE JUROR:  Well, I am prepared to listen to

23  all the evidence unbiased and just to see just exactly what

24  all the evidence so as far as abortions are concerned, I have

25  my own personal opinions about abortions, but of course there

Prospective Juror No. 112                          292

1    are extenuating circumstances also in every situation so I

2    keep that in mind.

3             THE COURT:  All right, thank you.  You indicate in

4    answer to the question, "Have you or anyone close to you ever

5    been the victim of sexual assault including date rape?  You

6    said, "Yes.  In October 1985 someone tried to force themselves

7    on me."

8             PROSPECTIVE JUROR:  Yes, that's correct.

9             THE COURT:  Do you think that that would affect your

10   ability to be fair and impartial in considering evidence of

11   alleged sexual assault or improper sexual conduct in this

12   case?

13            PROSPECTIVE JUROR:  Well, like I said, again, the

14   evidence has a lot to do with bearing on my opinion, but at

15   that time when that happened to me, it was a very, very trying

16   time and it still is with me and I think it will be with me

17   forever almost.  So I still feel that, you know, I feel the

18   hurt that happened to me.

19            THE COURT:  But would you keep an open mind about

20   the evidence in this case?

21            PROSPECTIVE JUROR:  Yeah, I can keep an open mind.

22   I will not go back to my case, per se, but that is always in

23   the back of my mind, Your Honor.  I'm sorry I have to be

24   honest about that.

25            THE COURT:  That's fine.

Prospective Juror No. 112                    293

1        PROSPECTIVE JUROR:  Even though it happened back in

2   1985, it was a very very difficult time.

3        THE COURT:  Where were you living at the time

4   generally?

5        PROSPECTIVE JUROR:  In New York.  In Queens.  Yeah,

6   it was -- I don't know if you want me to share or how much you

7   want me to share, but --

8        THE COURT:  No, I just wanted to know where.

9        PROSPECTIVE JUROR:  It was just a family friend that

10  tried to do that, yeah.

11       THE COURT:  Now the Government has the burden of

12  proof to prove the allegations in this case beyond a

13  reasonable doubt; correct?

14       PROSPECTIVE JUROR:  Yes.

15       THE COURT:  Are you willing to accept and comply

16  with this legal requirement in a case involving allegations of

17  child pornography and child sexual exploitation?

18       PROSPECTIVE JUROR:  Okay.  I will be as honest as I

19  can here.  I have a very, very soft spot in my heart for

20  children.  I always have.  I love children but, again, the

21  evidence has a lot to do with it.  Just hearing those things.

22  I'm against them.  I love children and babies.  I love

23  children in general but, again, I have to hear the evidence.

24       THE COURT:  But would you apply the law as I gave it

25  to you, that in order to find the defendant guilty of such

Prospective Juror No. 112                               294

1    acts, you would have to reach that conclusion beyond a

2    reasonable doubt?

3              PROSPECTIVE JUROR:  Oh, of course, of course, of

4    courses.  Definitely, absolutely.

5              THE COURT:  Now, an indictment is itself not

6    evidence.  It merely describes the charges made against the

7    defendant.  It is an accusation.  It may not be considered by

8    you as any evidence of the defendant's guilt.  Are you able to

9    follow this rule of law?

10             PROSPECTIVE JUROR:  Yes, I am.  I am, yes, I am.

11             THE COURT:  Because you checked no but I think you

12   were confused at the time.

13             PROSPECTIVE JUROR:  I was confused with the

14   question.  I'm sorry, I apologize.

15             THE COURT:  Any other questions for this juror?

16             MR. AGNIFILO:  Nothing from us.

17             MS. PENZA:  No, Your Honor.  I'm sorry, Your Honor

18   may I have a moment?

19             (Pause in proceedings.)

20             MS. PENZA:  We're okay Your Honor.  Thank you.

21             THE COURT:  Okay.  Kala *pascha*.

22             PROSPECTIVE JUROR:  Thank you.  You too.

23             THE COURT:  That is Greek Easter.

24             (Prospective juror exits.)

25             THE COURT:  Is there any motion?

1          MR. AGNIFILO:  Happy to have the Greek
2  microbiologist.

3          MS. PENZA:  As are we.

4          THE COURT:  All right.  Juror No. 112 is approved.

5          (Pause in proceedings.)

6          THE COURT:  113 is next.

7          (Prospective juror enters.)

8          THE COURT:  Please be seated, sir.  You are Juror
9  No. 113?

10         PROSPECTIVE JUROR:  Yes.

11         THE COURT:  Okay.  And you work full-time?

12         PROSPECTIVE JUROR:  Yes.

13         THE COURT:  Do you know your employer's policy on
14 paying for jury duty?

15         PROSPECTIVE JUROR:  I tried to get information on
16 it.  On the policy it looks like they would pay for a week or
17 two weeks, but it looks for the full length of whatever the
18 trial would be I don't think I would get paid potentially.  I
19 don't know that 100 percent but I did not see that based on
20 the policy.  My boss is trying to get more information on it
21 but I wasn't able to know in time.

22         THE COURT:  Let us know.  Mr. Reccoppa will give you
23 his phone number.  Call in when you get that information just
24 to square that away, just indicate your juror number and what
25 your employer's policy is, all right?  As soon as possible.

Prospective Juror No. 113                                296

1              PROSPECTIVE JUROR:  Okay.

2              THE COURT:  Now, if you only got a week or two of

3    pay, would that create a hardship for you?

4              PROSPECTIVE JUROR:  Yeah, I mean --

5              THE COURT:  Why is that.

6              PROSPECTIVE JUROR:  Because I pay my parents for

7    rent right now, so it would be a bit of an issue because

8    they're kind of pressed for money as it is.

9              THE COURT:  Okay.  So how long have you done work as

10   a senior network engineer?

11             PROSPECTIVE JUROR:  I recently got promoted.  I was

12   a network engineer for a couple of years and I recently got

13   promoted in the last month or so.

14             THE COURT:  Congratulations.

15             PROSPECTIVE JUROR:  Thank you.

16             THE COURT:  This is with the same company?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  What does this company do?

19             PROSPECTIVE JUROR:  It's basically a co-working

20   space globally.

21             THE COURT:  Co-working space?

22             PROSPECTIVE JUROR:  There will be buildings where

23   different companies will work in close proximity to one other.

24   And we do business offerings for -- sometimes it's one company

25   of a while floor in the building.  It started as a co-working

1    space.

2              THE COURT:  I see.  There's a question here, "The

3    charges in this case involve allegations of, among other

4    things, sex trafficking, forced labor, child pornography and

5    child exploitation.  Is there anything about the nature of

6    these allegations that would make it difficult for you to be

7    fair and impartial?"  You answered, "Yes," and you said,

8    "Potential crimes involving children are very sensitive to me

9    so if someone is being accused of crimes like that it may be

10   difficult for me."

11             PROSPECTIVE JUROR:  Correct.

12             THE COURT:  And is that the case?  Could you say a

13   little more about that?

14             PROSPECTIVE JUROR:  Just I worked with kids both,

15   like, growing up I've worked camps and been around kids a lot

16   and sort of like the innocence.  It's more of a personal thing

17   than anything.  It's difficult for me to go in and admittedly

18   assume innocence.  You should in those cases, but -- if

19   someone -- I'm not saying it's right to have that opinion

20   going in, but that's how I feel.  I want to make it known.

21             THE COURT:  So you think you might not be able to

22   be -- I don't want to put words in your mouth, but is it that

23   you would not be able to presume the defendant is not guilty?

24             PROSPECTIVE JUROR:  I would love to say to give the

25   benefit of the doubt --

Prospective Juror No. 113                    298

1        THE COURT:  Let me finish, please.

2        PROSPECTIVE JUROR:  Sure.

3        THE COURT:  If the defendant is accused of a crime

4   involving exploitation of a child, for instance, you would

5   assume otherwise, is that it?

6        PROSPECTIVE JUROR:  By nature I would be suspicious.

7        THE COURT:  You would be suspicious.

8        PROSPECTIVE JUROR:  Someone being accused of that,

9   it would be difficult for me to assume innocence.

10       THE COURT:  Well, would you be willing to listen to

11  the evidence --

12       PROSPECTIVE JUROR:  Absolutely, yeah.

13       THE COURT:  -- the evidence provided by witnesses

14  and documentary evidence, and to base your decision of guilt

15  or non-guilt on the evidence instead of, you know, something

16  else?

17       PROSPECTIVE JUROR:  I mean, I would certainly take

18  that into account.  I wouldn't go and not be able to change my

19  mind but it would be difficult for me going in assuming

20  innocence is what I meant by that.

21       THE COURT:  Well, if you were accused wrongly of

22  being involved with one of those crimes, would you want

23  someone with your -- in your frame of mind to be a juror on

24  your case?

25       PROSPECTIVE JUROR:  No.

SN        OCR        RPR

Prospective Juror No. 113                    299

 1          THE COURT:  So I ask a philosophical question:  How

 2   would we find an intelligent, articulate, knowledgeable person

 3   like you to be on a jury like this if all the jurors

 4   understandably shared your abhorrence to sexual exploitation

 5   of children?

 6          PROSPECTIVE JUROR:  It's a fair question.  I'm sure

 7   there are people who would be able to go in with more of an

 8   open mind and be able to see things in a way that I can't

 9   exactly match that.  I'm sure not everyone is to my degree.  I

10   wouldn't know that.  But I would assume that there would be

11   people out there that would be able to be more level-headed.

12          THE COURT:  Have you ever known anyone who was the

13   victim of one of these crimes?

14          PROSPECTIVE JUROR:  Not personally but you read

15   articles and see stories and documentaries.

16          THE COURT:  Any other questions for this juror?

17          MS. PENZA:  No, Your Honor.

18          MR. AGNIFILO:  No, Judge.

19          THE COURT:  Okay.  Thank you for coming in.  Have a

20   nice day.

21          (Prospective juror exits.)

22          MR. AGNIFILO:  We move that he be struck based on

23   cause.  He resolutely pretty much said he could not afford the

24   defendant, given these charges, the presumption of innocence.

25   Your Honor asked the question if you were wrongly accused of

1    these crimes would you want you as a juror and he looked you

2    dead in the eye and said "No" so I think he's not qualified

3    for these particular charges.

4             MS. PENZA:  The Government consents.

5             THE COURT:  Juror No. 113 is struck by consent of

6    the parties.  Juror No. 114.

7

8             (Continued on the following page.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SN        OCR        RPR

1    (Continuing.)

2              THE COURT:  Juror 114.

3              (PROSPECTIVE JUROR NO. 114 entered the courtroom.)

4              THE COURT:  Please be seated.

5              Good afternoon.

6              PROSPECTIVE JUROR NO. 114:  Good afternoon.

7              THE COURT:  Just keep your voice up, okay?

8              PROSPECTIVE JUROR NO. 114:  Okay.

9              THE COURT:  You are Juror Number 114?

10             PROSPECTIVE JUROR NO. 114:  Yes.

11             THE COURT:  Okay.  I just have a few questions for

12   you.

13             Now, you work full-time?

14             PROSPECTIVE JUROR NO. 114:  Yeah.

15             THE COURT:  And you are an office assistant,

16   correct?

17             PROSPECTIVE JUROR NO. 114:  Yes.

18             THE COURT:  And what kind of an office is this?

19             PROSPECTIVE JUROR NO. 114:  It's a HVAC company.

20             THE COURT:  It's a what?

21             PROSPECTIVE JUROR NO. 114:  HVAC repairing company.

22             THE COURT:  Oh, I see.

23             Do you know what the company's policy is on paying

24   you for jury duty?

25             PROSPECTIVE JUROR NO. 114:  I'm not so sure.

Prospective Juror Number 114                    302

1          THE COURT:  Well, this trial will go on for six

2     weeks.  If your company's policy is to pay you for two weeks

3     and not pay you for the other four weeks, would that be a

4     hardship for you?

5          PROSPECTIVE JUROR NO. 114:  Yes, because I'm the

6     only one who is working in my family.

7          THE COURT:  I see.  And do you live with other

8     members of your family?

9          PROSPECTIVE JUROR NO. 114:  My parents.

10          THE COURT:  I see.

11          Do you live in a house or an apartment?

12          PROSPECTIVE JUROR NO. 114:  A house.

13          THE COURT:  Do your parents own the house?

14          PROSPECTIVE JUROR NO. 114:  Yes.

15          THE COURT:  Do your parents work?

16          PROSPECTIVE JUROR NO. 114:  My mother works

17     part-time, but my father, because he's very sick, he has heart

18     problem, so he cannot work.

19          THE COURT:  I see.  There is a question, I am going

20     to read the question to you:

21          Would you be able to listen to and discuss matters

22     of a sexual nature with fellow jurors?

23          You said:  I am not sure what's sexual nature.

24          PROSPECTIVE JUROR NO. 114:  Yes, I'm not sure what

25     is the meaning of that.

Prospective Juror Number 114                         303

1          THE COURT:  Well, in the questionnaire you are asked

2    questions about charges of sexual exploitation of a child,

3    rape, and so forth; child pornography, visual images of

4    children which are illegal.  Those are matters of a sexual

5    nature.

6          And you are being asked whether you would have any

7    difficulty discussing evidence of that kind with fellow jurors

8    when you are deliberating.

9          PROSPECTIVE JUROR NO. 114:  Nope.

10         THE COURT:  No?

11         PROSPECTIVE JUROR NO. 114:  No.

12         THE COURT:  You would not have a problem?

13         PROSPECTIVE JUROR NO. 114:  I think, yes, I think

14   it's okay.

15         THE COURT:  There is another question:  The charges

16   in this case involve allegations of, among other things, sex

17   trafficking, forced labor, child pornography and child

18   exploitation.  Is there anything about the nature of these

19   allegations that would make it difficult for you to be fair

20   and impartial?

21         And you answered:  Yes, I feel so sad for the child

22   pornography and child exploitation.  I am not sure if I can be

23   fair to the defendant.

24         PROSPECTIVE JUROR NO. 114:  Yes.

25         THE COURT:  Now, you understand that I will instruct

SAM      OCR      RMR      CRR      RPR

1    the jury, and I have instructed the jury, that the accusations

2    against the defendant in the Indictment are only an accusation

3    and that the defendant has pleaded not guilty to all of these

4    charges.  So I will tell you when I give you the charge on the

5    law that you must presume that the defendant is not guilty.

6              Do you understand that?

7              PROSPECTIVE JUROR NO. 114:  I understand that, but,

8    like, mentally maybe I cannot be very fair about this.

9              THE COURT:  Very what?

10             PROSPECTIVE JUROR NO. 114:  Very fair.  I understand

11   about these situation, but like mentally for feeling, maybe I

12   cannot be very fair to the defendant.

13             THE COURT:  Are there any other questions?

14             MR. AGNIFILO:  Nothing from us.

15             MS. PENZA:  No, Your Honor.

16             THE COURT:  All right, thank you for coming in.

17   Have a nice day.

18             PROSPECTIVE JUROR NO. 114:  Thank you.

19             THE COURT:  You're welcome.

20             (PROSPECTIVE JUROR NO. 114 exited the courtroom.)

21             THE COURT:  A motion?

22             MR. AGNIFILO:  Yes, Judge, we ask that she be

23   excused for cause.  She said that she mentally couldn't be

24   very fair in light of the charges, and we think that is a

25   sufficient basis.

1          MS. PENZA:  I'm sorry, Your Honor, I was just

2    reviewing this.

3          THE COURT:  Her questionnaire will not help you.

4          MS. PENZA:  We consent, Your Honor.

5          THE COURT:  All right, Juror 114 is struck for cause

6    on consent.

7          THE COURTROOM DEPUTY:  116.

8          THE COURT:  116 is next.

9          (Pause.)

10          (PROSPECTIVE JUROR NO. 116 entered the courtroom.)

11          THE COURT:  Please be seated.

12          Good afternoon.

13          PROSPECTIVE JUROR NO. 116:  Good afternoon.

14          THE COURT:  You are Juror Number 116, yes?

15          PROSPECTIVE JUROR NO. 116:  Yes.

16          THE COURT:  Okay, I just have a few follow-up

17    questions for you.

18          And there is a question here that I think you have

19    answered, but let me run it by you:

20          Have you ever known anyone who you believe was

21    falsely accused of sexual abuse or sexual assault of a minor

22    or an adult?

23          PROSPECTIVE JUROR NO. 116:  Falsely accused?  No.

24          THE COURT:  Falsely accused.

25          PROSPECTIVE JUROR NO. 116:  No, sir.

1           THE COURT:  Do you worry about you or someone else

2     close to you being falsely accused of sexual abuse or sexual

3     assault?

4           You said:  Yes, there are lots of cases where people

5     have been falsely accused.

6           PROSPECTIVE JUROR NO. 116:  Yes.

7           THE COURT:  But you have never been falsely accused?

8           PROSPECTIVE JUROR NO. 116:  Of sexual, no, sir.

9           THE COURT:  And nobody you know has ever been?

10          PROSPECTIVE JUROR NO. 116:  No, sir.

11          THE COURT:  All right.  And then this question:

12          Do you believe that it would affect your ability to

13    serve, your answer to the last question would affect your

14    ability to serve as a fair and impartial juror if you are of

15    the view that many people have been falsely accused of such a

16    crime?

17          In other words, if there were so many people who

18    were accused falsely of such a crime, would you have

19    difficulty being a juror in a case where someone has been

20    accused of such a crime?

21          PROSPECTIVE JUROR NO. 116:  If I believe the person

22    was falsely accused?

23          THE COURT:  Right.

24          PROSPECTIVE JUROR NO. 116:  If I don't believe the

25    person is falsely accused, no, I won't have a hard time.

1          THE COURT:  Right.  And the only way to learn --

2          PROSPECTIVE JUROR NO. 116:  Is if I actually serve,

3     if I learn.

4          THE COURT:  Right, if you learn.

5          Could you have an open mind about hearing the

6     evidence in the case and reaching your own conclusions?

7          PROSPECTIVE JUROR NO. 116:  Yes.

8          THE COURT:  Okay, that is what I wanted to know.

9          Now, you say you've heard about the Me Too movement.

10         PROSPECTIVE JUROR NO. 116:  Yes.

11         THE COURT:  And you say:  I think some people are

12    making a mockery of it.

13         What do you mean by that?  It was late in the

14    questionnaire, so you made this comment.

15         PROSPECTIVE JUROR NO. 116:  Yes, I did because --

16         THE COURT:  You are smiling.

17         PROSPECTIVE JUROR NO. 116:  I guess it goes back to

18    --

19         THE COURT:  I wanted to say you were smiling, so I

20    wanted to know what --

21         PROSPECTIVE JUROR NO. 116:  Well, I guess it goes

22    back to one of the previous questions that was asked.

23         THE COURT:  Yes.

24         PROSPECTIVE JUROR NO. 116:  Because some people do

25    get falsely accused of sexual abuse.  And so now at this time

1    the Me Too movement has come out, you can't tell if some of

2    these women are actually coming out speaking of actual claims

3    of sexual abuse or if they're just coming out just want to get

4    somebody in trouble.  So I do think some people are making a

5    mockery of it.

6              THE COURT:  Okay.

7              There is this long question, so try to follow it,

8    okay?

9              PROSPECTIVE JUROR NO. 116:  Okay.

10             THE COURT:  Some Government witnesses may testify

11   that they participated in serious crimes themselves, including

12   forced labor and identity theft.  These witnesses may be

13   referred to during the trial as cooperating witnesses.  They

14   may have pleaded guilty to crimes and may be testifying

15   pursuant to agreements with the Government in the hopes that

16   their own sentences will be reduced.

17             Do you have any opinions or beliefs or feelings

18   about a witness seeking a reduced sentence by cooperating that

19   would make it difficult for you to fairly and impartially

20   consider that testimony or render a guilty verdict based on

21   the testimony of such a witness?

22             PROSPECTIVE JUROR NO. 116:  I believe I put no.

23             THE COURT:  You did put no.  That is your opinion?

24             PROSPECTIVE JUROR NO. 116:  Yes.

25             THE COURT:  Okay.  All right, anything else?

Prospective Juror Number 116                    309

1          MR. AGNIFILO:  Just on --

2          THE COURT:  Just a number.

3          MR. AGNIFILO:  The response to Question 3.

4          THE COURT:  3, all right.

5          MR. AGNIFILO:  It's on page 7, and it has to do with

6    a travel plan.

7          THE COURT:  Now, you already went away on the 11th

8    and 12th of April?

9          PROSPECTIVE JUROR NO. 116:  Yes.  Yes, sir.

10          THE COURT:  But you also have a work training

11    program?

12          PROSPECTIVE JUROR NO. 116:  At the end of May.

13          THE COURT:  In May?

14          PROSPECTIVE JUROR NO. 116:  Yes, sir.

15          THE COURT:  If you are on this jury you will not be

16    able to do that?

17          PROSPECTIVE JUROR NO. 116:  No, sir, I won't be able

18    to do it.

19          THE COURT:  But you could do it at another time?

20          PROSPECTIVE JUROR NO. 116:  It would be in a whole

21    'nother year.  I would have to wait a whole 'nother year to do

22    it.

23          And I forgot to add something else, and that's in

24    June.  That's another travel plan.

25          THE COURT:  What is that?

SAM      OCR      RMR      CRR      RPR

1          PROSPECTIVE JUROR NO. 116:  It's just a personal

2    vacation that I was putting in.

3          THE COURT:  What?

4          PROSPECTIVE JUROR NO. 116:  From June, I want to

5    say, 20th to July 1st, because I wasn't sure if it was going

6    to last all the way into June.

7          THE COURT:  Right, June 20th?

8          PROSPECTIVE JUROR NO. 116:  Yes, sir.

9          THE COURT:  All right.  Okay, well thank you very

10   much.

11         PROSPECTIVE JUROR NO. 116:  Thank you.

12         THE COURT:  Anything else from anybody?

13         MR. AGNIFILO:  Nothing from us.

14         MS. PENZA:  No, Your Honor.

15         THE COURT:  Okay, have a nice day.

16         PROSPECTIVE JUROR NO. 116:  You, too.  Thank you,

17   guys.

18         (PROSPECTIVE JUROR NO. 116 exited the courtroom.)

19         MR. AGNIFILO:  No motion from us.

20         MS. PENZA:  The Government moves to strike her on

21   the basis of hardship, given the pre-planned travel and I

22   don't think we have enough information regarding her work

23   training and what the difficulty would be in terms of her job

24   if she misses a training that she can't take for a whole

25   additional year.

1          But given the practice that we have been doing for

2    people with pre-planned vacations, I think June 20th is

3    cutting it close.

4          MR. AGNIFILO:  If Your Honor wanted to have her back

5    to see what the work thing would do to her, if it would cause

6    her stress or hardship somehow, I leave that to the Court.

7          THE COURT:  So let me just say this for the future:

8    If there is something that she has discussed here that you

9    want more information about, let me know before she leaves so

10   then I can ask her that question so I do not have to bring her

11   back.

12         I mean I do not want to interfere with her career,

13   but I have this case, this trial, that can put this defendant

14   in jail for the rest of his life.  So I am less concerned

15   about her career than I am about his rights.  And she works

16   for the Government and they can make other plans for her.  It

17   is a big agency.  She works at the Food and Drug

18   Administration.

19         So I am going to overrule the objection and she will

20   have to just make due.  And I hope we can have this trial over

21   by the 20th of June.  And the other thing is, you never know

22   when they are going to schedule anything in the Government.

23         117.

24         (Pause.)

25         (PROSPECTIVE JUROR NO. 117 entered the courtroom.)

1        THE COURT:  Please be seated, sir.

2        PROSPECTIVE JUROR NO. 117:  Sure, Judge.

3        THE COURT:  You are Juror Number 117?

4        PROSPECTIVE JUROR NO. 117:  I am.

5        THE COURT:  Okay.

6        Welcome.

7        PROSPECTIVE JUROR NO. 117:  Thank you.

8        THE COURT:  And you are an attorney?

9        PROSPECTIVE JUROR NO. 117:  I am.

10        THE COURT:  And you work for the state?

11        PROSPECTIVE JUROR NO. 117:  I do.

12        THE COURT:  And you have been doing this, you have

13   been working for the state for 24 years?

14        PROSPECTIVE JUROR NO. 117:  Yeah.  It will be 25

15   in -- the 8th of May.

16        THE COURT:  Okay.  Now you indicate that your wife

17   was an assistant state's attorney in Illinois in the late

18   '80s, early '90s?

19        PROSPECTIVE JUROR NO. 117:  Correct.

20        THE COURT:  And is a state's attorney an attorney

21   who handles criminal cases?

22        PROSPECTIVE JUROR NO. 117:  Yeah, in Illinois

23   they're not assistant DA's, they're assistant state's

24   attorneys.

25        THE COURT:  That's what I thought.

1         PROSPECTIVE JUROR NO. 117:  Yeah.

2         THE COURT:  Did you ever discuss her work with her?

3         PROSPECTIVE JUROR NO. 117:  Yeah, I mean she -- you

4    know, she'd come home.  We'd talk about something that she had

5    going on.  So she did.  At one point she had a death penalty

6    case.

7         THE COURT:  Oh.

8         PROSPECTIVE JUROR NO. 117:  So that was a topic of

9    conversation.

10         THE COURT:  I'm sure it was.

11         Now, you also indicated that you were a probation

12    officer?

13         PROSPECTIVE JUROR NO. 117:  In Family Court.

14         THE COURT:  In Family Court.  And that you dealt

15    with PINS intake --

16         PROSPECTIVE JUROR NO. 117:  Correct.

17         THE COURT:  -- and sentencing reports, and you were

18    a court liaison officer.  So you dealt with criminal law

19    issues?

20         PROSPECTIVE JUROR NO. 117:  I did, juveniles.

21         THE COURT:  Juvenile criminal issues?

22         PROSPECTIVE JUROR NO. 117:  I didn't supervise

23    anybody, but I did everything else.

24         THE COURT:  Okay.

25         And my question of you is would the fact that you

Prospective Juror Number 117                    314

1   had this experience have any impact on your obligation to be

2   fair and impartial in considering charges of, for instance,

3   sexual exploitation of a child and so forth?

4           PROSPECTIVE JUROR NO. 117:  Yes and no.  The no

5   would be, obviously, you know, you go where the road takes

6   you.  So people are innocent until proven guilty.

7           When I was in Family Court it was the tail end of

8   the crack epidemic, so we had pregnant 15-year-olds, pregnant

9   14-year-olds, you know, and I remember the question on the

10  questionnaire.  And, you know, I mean I would look at it

11  differently, I suppose, if you're 17 and you're sleeping with

12  an 18-year-old, it's a little different than if you're 14 or

13  15 and sleeping with a 25-year-old in terms of how -- how I

14  would look at it.  But that's me.

15          THE COURT:  Well, do you think you could put aside

16  your experience and just decide this case on the evidence that

17  is presented in order to decide whether the defendant has been

18  proven guilty of specific crimes beyond a reasonable doubt?

19          PROSPECTIVE JUROR NO. 117:  Yeah.  I mean, you know,

20  as I said, you know, you go where the road takes you.  If the

21  evidence leads to somebody, you know, at least my perception

22  that somebody is guilty, then I would perceive them to be

23  guilty.  But, you know, if the evidence leads to somebody not

24  being guilty, if the case hasn't been made, then the case

25  hasn't been made.

1           THE COURT:  Now, there is a question here:  Do you

2    worry about you or someone close to you being falsely accused

3    of sexual abuse or sexual assault?

4           And you said:  Yes, I coach youth basketball.  It is

5    a concern for me and other coaches.

6           PROSPECTIVE JUROR NO. 117:  It is.  I mean we've --

7    at the start of every season we usually have every coach --

8    and I coach -- I coach in my parish.  At the start of every

9    season we have a coach's meeting and there is usually a

10   conversation in terms of not finding yourself alone with a

11   child because it just seems like things can go sideways.  If

12   the accusation is made in the current climate, I think it is

13   hard to disapprove it.

14          THE COURT:  Is this more of a problem today than it

15   was five years ago because of the attention and sensitivity to

16   these kinds of accusations?

17          PROSPECTIVE JUROR NO. 117:  Yeah.  I'm probably

18   dating myself here, Judge.  I mean I go back, I remember the

19   Murray case which is what, maybe 30 years ago, maybe more.

20   And, you know, so it seems like -- you know, maybe it is less

21   now than it was five years ago, but it just seems that, as I

22   said, if the accusation is made I think people jump to the

23   conclusion that there has to be truth to it.

24          THE COURT:  Now, there is this question and I just

25   wanted to get it clarified.  The question was:  Have you or

1   has a family member or close friend ever been a witness to or

2   a victim of a crime?  You said:  Yes, has something broken

3   into -- oh, had --

4           PROSPECTIVE JUROR NO. 117:  I had a car broken into.

5           THE COURT:  Car broken into, that's an R.

6           PROSPECTIVE JUROR NO. 117:  I'm sorry, that's my

7   handwriting.

8           THE COURT:  Are you sure you're not a doctor?

9           Had car broken into and witnessed false arrest.

10          PROSPECTIVE JUROR NO. 117:  Yes.  Back when I was a

11  teenager, I spent my summers in Belfast.

12          THE COURT:  Where?

13          PROSPECTIVE JUROR NO. 117:  In Belfast, northern

14  Ireland.

15          THE COURT:  Oh.

16          PROSPECTIVE JUROR NO. 117:  And I had a friend of

17  mine who was accused of being part of a riot and he wasn't --

18  he hadn't been part of it.  So I ended up testifying in --

19  back in those days they were called Diplock courts.  There was

20  no faith in the jury system in the north of Ireland in the

21  '80s and the late '70s, so I testified.  It was, you know,

22  what you would call a bench trial.  So I testified that he

23  hadn't been there and that he was being falsely accused of

24  having engaged in a riot.  Didn't do him any good.

25          THE COURT:  When your car was broken into, you

Prospective Juror Number 117                    317

1   reported it?

2           PROSPECTIVE JUROR NO. 117:  I did.

3           THE COURT:  Did you have --

4           PROSPECTIVE JUROR NO. 117:  No, I mean the trunk got

5   popped.

6           THE COURT:  Oh, okay.

7           And you indicated that your mother was subpoenaed

8   before a federal grand jury in New York in the early 1980's

9   and it involved a gun running by the IRA and your mother was

10  called as a witness?

11          PROSPECTIVE JUROR NO. 117:  She was.

12          THE COURT:  Did she testify?

13          PROSPECTIVE JUROR NO. 117:  In the grand jury, she

14  wasn't actually called at the trial.

15          THE COURT:  But she testified at the grand jury?

16          PROSPECTIVE JUROR NO. 117:  She did.  In fact, one

17  of your colleagues was the AUSA at the time, Carol Amon.

18          THE COURT:  Oh.

19          PROSPECTIVE JUROR NO. 117:  Judge Sifton was the

20  judge on the case.

21          THE COURT:  Oh.  When he retired, I was nominated to

22  take his position.

23          PROSPECTIVE JUROR NO. 117:  Small world.

24          THE COURT:  He didn't actually retire, he took

25  senior status.  It made a position available and I jumped

Prospective Juror Number 117                      318

1    right in.

2           PROSPECTIVE JUROR NO. 117:  My -- we -- my family

3    owned a bar, and in addition my mother owned part owner of a

4    travel agency, so she had --

5           THE COURT:  Where was the bar?

6           PROSPECTIVE JUROR NO. 117:  In Queens.

7           THE COURT:  I know that.  Where in Queens?

8           PROSPECTIVE JUROR NO. 117:  Jackson Heights.  A

9    place called Liffey Bar.  L-I-F-F-E-Y, it's a river in Dublin.

10   We were the second largest seller of Guinness in the country

11   at the time.

12          THE COURT:  Second largest?

13          PROSPECTIVE JUROR NO. 117:  Largest seller of

14   Guinness.

15          THE COURT:  Were you?

16          PROSPECTIVE JUROR NO. 117:  We were, yeah.  There

17   was a bar in New Orleans that sold more Guinness than we did.

18          THE COURT:  Okay.

19          How did you end up reading an article in the <u>Albany</u>

20   <u>Times Union</u> about this case?  This was before you filled out

21   the questionnaire, obviously.

22          PROSPECTIVE JUROR NO. 117:  Yeah.  I think it was

23   back in 2017, maybe.  I work for the state, obviously.  I

24   spent about 12 years on my union's executive board, the Public

25   Employee Federation, so we're based out of Albany.

1          I'm in Albany maybe every six weeks for a union

2    meeting.

3          THE COURT:  I see.

4          PROSPECTIVE JUROR NO. 117:  And so I follow Times

5    Union online because if you want to read about what's going on

6    in state government --

7          THE COURT:  You should read that?

8          PROSPECTIVE JUROR NO. 117:  Better than reading the

9    New York Post or The Times or the Daily News, though.  And I

10   mean, you know, there was some -- you know, obviously, you

11   went on the Times Union back in the day there was some piece

12   on it, but I didn't pay a whole lot of attention to it.

13         THE COURT:  Okay.  Anything else?

14         MR. AGNIFILO:  Nothing from us, Judge.

15         MS. PENZA:  No, Your Honor.

16         THE COURT:  Well, thank you for coming in.  You have

17   a nice day, Judge.

18         PROSPECTIVE JUROR NO. 117:  Thanks, Judge.

19         (PROSPECTIVE JUROR NO. 117 exited the courtroom.)

20         THE COURT:  Any motion?

21         MR. AGNIFILO:  Nothing from us.

22         MS. PENZA:  Not from us.

23         THE COURT:  All right, Juror 117 is approved.

24         Next one is Juror 120.

25         (Pause.)

Prospective Juror Number 120                    320

1              (Prospective Juror Number 120 entered the

2      courtroom.)

3              THE COURT:  Please be seated, sir.

4              Good afternoon.

5              PROSPECTIVE JUROR NO. 120:  Good afternoon.

6              THE COURT:  You are Juror Number 120?

7              PROSPECTIVE JUROR NO. 120:  Yes, I am.

8              THE COURT:  Okay, I just have a few questions for

9      you.

10             Now, do you teach?

11             PROSPECTIVE JUROR NO. 120:  I'm an occupational

12     therapist.

13             THE COURT:  I see.

14             PROSPECTIVE JUROR NO. 120:  In the City of New York.

15             THE COURT:  But you work for the Department of

16     Education?

17             PROSPECTIVE JUROR NO. 120:  I work for the

18     Department of Education.

19             THE COURT:  Now, you have a degree in criminal

20     justice from the John Jay College.  Is that right?

21             PROSPECTIVE JUROR NO. 120:  That's correct.

22             THE COURT:  Did you study any particular aspect of

23     criminal justice with a greater concentration than another or

24     is that a general program?

25             PROSPECTIVE JUROR NO. 120:  It was a BA, just a

1   general BA.

2           THE COURT:  Have you ever been a juror before?

3           PROSPECTIVE JUROR NO. 120:  No.

4           THE COURT:  There is a question here:  Would you be

5   able to listen to and discuss matters of a sexual nature with

6   fellow jurors?  And you said:  As facts of a case, yes.

7           PROSPECTIVE JUROR NO. 120:  Yes.

8           THE COURT:  So you would be able to hear evidence

9   and then discuss the evidence that you found to be credible

10  with the other jurors?

11          PROSPECTIVE JUROR NO. 120:  That's correct.

12          THE COURT:  Are there other questions?

13          MR. AGNIFILO:  Nothing from us, Judge.

14          MS. PENZA:  No, Your Honor.

15          THE COURT:  Okay, thanks for coming in.  Have a nice

16  day, sir.

17          PROSPECTIVE JUROR NO. 120:  You, too.

18          (Prospective Juror Number 120 exited the courtroom.)

19          THE COURT:  Anybody have a motion?

20          MR. AGNIFILO:  We do not.

21          MS. PENZA:  No, Your Honor.

22          THE COURT:  Okay, Juror Number 120 is approved.

23          All right, Juror Number 122 will be next.

24          (Pause.)

25          ///

Prospective Juror Number 122                              322

1              (Prospective Juror Number 122 entered the

2      courtroom.)

3              THE COURT:  Please be seated.

4              Good afternoon.  Just speak up, okay.

5              PROSPECTIVE JUROR NO. 122:  Okay.

6              THE COURT:  You are Juror Number 122?

7              PROSPECTIVE JUROR NO. 122:  Yes.

8              THE COURT:  And are you employed?

9              PROSPECTIVE JUROR NO. 122:  Currently, not right

10     now.

11             THE COURT:  Not right now.  When you are employed,

12     what kind of work do you do?

13             PROSPECTIVE JUROR NO. 122:  I was a substance abuse

14     counselor, and now I am a licensed mental health counselor

15     working to build up my private practice.

16             THE COURT:  You're a mental health?

17             PROSPECTIVE JUROR NO. 122:  Counselor.

18             THE COURT:  Counselor.

19             PROSPECTIVE JUROR NO. 122:  Yes.

20             THE COURT:  I see.

21             And so you work, basically, for yourself?

22             PROSPECTIVE JUROR NO. 122:  Yes, well, as --

23             THE COURT:  Well, you help others, but you are

24     self-employed?

25             PROSPECTIVE JUROR NO. 122:  Exactly, yes.

SAM      OCR      RMR      CRR      RPR

Prospective Juror Number 122                                    323

1          THE COURT:  Would you have any hardship serving as a
2    juror for six weeks?
3          PROSPECTIVE JUROR NO. 122:  Employment-wise, no.
4          THE COURT:  Well, financially is what I mean.
5          PROSPECTIVE JUROR NO. 122:  No, no, I'll be fine.
6          THE COURT:  Have you ever served as a juror?
7          PROSPECTIVE JUROR NO. 122:  No.
8          THE COURT:  Have you ever been called for jury duty?
9          PROSPECTIVE JUROR NO. 122:  I've been called for
10   jury duty, but the last time I guess they had already selected
11   all the jurors before --
12         THE COURT:  Before they got to you?
13         PROSPECTIVE JUROR NO. 122:  -- they got to me.
14         THE COURT:  Where was that, what county?
15         PROSPECTIVE JUROR NO. 122:  It was in Queens.
16         THE COURT:  It was in Queens?
17         PROSPECTIVE JUROR NO. 122:  Yes.
18         THE COURT:  And you live in Fresh Meadows?
19         PROSPECTIVE JUROR NO. 122:  Yes.
20         THE COURT:  Do you live with anyone else?
21         PROSPECTIVE JUROR NO. 122:  My wife and my newborn.
22         THE COURT:  Oh, well, congratulations.
23         PROSPECTIVE JUROR NO. 122:  Last month.
24         THE COURT:  Does your wife work?
25         PROSPECTIVE JUROR NO. 122:  Yes, but she's a public

1  school teacher, so she had maternity leave until September.

2         THE COURT:  I see, good for her.

3         Okay, other questions?

4         MR. AGNIFILO:  Nothing from us.

5         THE COURT:  Questions?

6         MS. PENZA:  Not from the Government.

7         THE COURT:  Okay, well, thank you for coming in,

8  sir.  You have a nice day.

9         PROSPECTIVE JUROR NO. 122:  Thank you so much.

10        (Prospective Juror Number 122 exited the courtroom.)

11        THE COURT:  Is there a motion from anybody?

12        MR. AGNIFILO:  No.

13        THE COURT:  All right, 122 is approved.

14        Did I jump the gun?

15        MS. PENZA:  No, Your Honor, we consent.

16        (Pause.)

17        THE COURT:  124?

18        THE COURTROOM DEPUTY 124.

19        (Pause.)

20        (Prospective Juror Number 124 entered the

21  courtroom.)

22        THE COURT:  Please be seated.

23        Could you sit in the first row, please, where the

24  microphone is?

25        PROSPECTIVE JUROR NO. 124:  Sure.

1          THE COURT:  Thank you.  Appreciate it.

2          Welcome.

3          PROSPECTIVE JUROR NO. 124:  Thank you.

4          THE COURT:  You are Juror Number 124?

5          PROSPECTIVE JUROR NO. 124:  Yes.

6          THE COURT:  Okay.  Now, you indicated that you are a

7    single parent?

8          PROSPECTIVE JUROR NO. 124:  Yes, I am.

9          THE COURT:  And that you have two small children.

10   How old are they?

11         PROSPECTIVE JUROR NO. 124:  15 and 17.

12         THE COURT:  15 and 17, they're not so small.

13         PROSPECTIVE JUROR NO. 124:  They're small, yeah,

14   they go to school.

15         THE COURT:  So tell me, you work for a healthcare

16   plan, is that right?

17         PROSPECTIVE JUROR NO. 124:  Yes.

18         THE COURT:  As a facilitated enroller?

19         PROSPECTIVE JUROR NO. 124:  Yes.

20         THE COURT:  What does that title do?

21         PROSPECTIVE JUROR NO. 124:  What I do is like

22   marketing.  I provide health insurance for people, for

23   uninsured New Yorkers.  This is what I do.

24         THE COURT:  For uninsured New Yorkers?

25         PROSPECTIVE JUROR NO. 124:  For uninsured, yes.

1          THE COURT:  Does this have some connection --

2          PROSPECTIVE JUROR NO. 124:  The Marketplace, yes.

3          THE COURT:  The Marketplace under the Affordable

4    Care Act?

5          PROSPECTIVE JUROR NO. 124:  Yes.

6          THE COURT:  I see.

7          And do you know what your employer's policy is for

8    paying for doing jury service?

9          PROSPECTIVE JUROR NO. 124:  They pay for it.

10          THE COURT:  They do?

11          PROSPECTIVE JUROR NO. 124:  Yes.

12          THE COURT:  And they would pay for it for six weeks?

13          PROSPECTIVE JUROR NO. 124:  I don't -- I don't think

14   so because they asked me for papers.  I had to work today.  I

15   worked today half day.

16          THE COURT:  I see.  Well, could you check with them

17   on how much they pay for and Mr. Reccoppa will give you his

18   phone number.  You can call in and tell him, give him your

19   juror number, 124, and when you call in if he is not at his

20   desk, you can leave a message for him?

21          PROSPECTIVE JUROR NO. 124:  Yes, I will.

22          THE COURT:  Okay, thank you.

23          PROSPECTIVE JUROR NO. 124:  All right, you're

24   welcome.

25          THE COURT:  We're not done.  Sorry.

Prospective Juror Number 124                    327

1          PROSPECTIVE JUROR NO. 124:  It's okay.

2          THE COURT:  I just have a few more questions for

3    you.

4          PROSPECTIVE JUROR NO. 124:  Uh-hum.

5          THE COURT:  There may be evidence in this case about

6    people engaging in relationships with multiple sexual

7    partners.  Would hearing that type of evidence affect your

8    ability to serve as a fair and impartial juror in this case?

9          You said:  Yes, because I have youngest children and

10   I hate seeing people abusing children.

11         Is that right?

12         PROSPECTIVE JUROR NO. 124:  Yes.

13         THE COURT:  Now, as you know under our system of law

14   someone who is accused of a crime is considered innocent until

15   proven guilty beyond a reasonable doubt.

16         Would you be able to listen to evidence from the

17   witness stand and documentary evidence, like photographs and

18   so forth, with an open mind and then make a judgment at the

19   end as to whether you feel that the evidence proves that the

20   defendant is actually guilty beyond a reasonable doubt?  Could

21   you do that?

22         PROSPECTIVE JUROR NO. 124:  I don't know.  I have to

23   listen the case.

24         THE COURT:  What's that?

25         PROSPECTIVE JUROR NO. 124:  I have to go -- I have

Prospective Juror Number 124                    328

1    to listen to evidence.  I got to see witness.

2              THE COURT:  Can you listen to it and evaluate it?

3              PROSPECTIVE JUROR NO. 124:  I may.

4              THE COURT:  Well --

5              PROSPECTIVE JUROR NO. 124:  I may.

6              THE COURT:  Well, as a juror it is your obligation

7    to do that.  My question is are you able to do it?

8              PROSPECTIVE JUROR NO. 124:  I guess so, yes.

9              THE COURT:  That is a yes, but it is a yes, sort of

10   a shrugging yes.  What kind of a yes is that?

11             Do you think you can do it?

12             PROSPECTIVE JUROR NO. 124:  I don't think that I can

13   do it.

14             THE COURT:  You don't think you can do it?

15             PROSPECTIVE JUROR NO. 124:  No, I don't think so.

16             THE COURT:  Why?

17             PROSPECTIVE JUROR NO. 124:  It's like, you know,

18   once I see -- because I not -- I not, you know, I not a judge.

19   I not God to judge people because people sometimes -- I don't

20   know the reason why they do, you know, bad stuff.  I don't

21   know, sometime money, maybe the environment influence, I don't

22   know the reason why they do, you know, such bad things.

23             THE COURT:  Well, the defendant has pleaded not

24   guilty to these charges.  So he is presumed to be innocent,

25   and I will tell the jury that they have to presume he is

1  innocent and the Government has to prove beyond a reasonable

2  doubt that he is guilty.  He does not have to prove that he is

3  innocent.  They have to prove that he is guilty.

4          Do you think that you could listen to the evidence

5  and then analyze the evidence in your mind and decide whether

6  you think that the defendant has actually committed these

7  crimes or not?

8          PROSPECTIVE JUROR NO. 124:  Definitely.

9          THE COURT:  You can do that?

10          PROSPECTIVE JUROR NO. 124:  Yes.

11          THE COURT:  Okay.  So there is another question here

12  I am going to ask you:

13          There may be evidence in this case about

14  fraternities, sororities, secret societies, rituals or cults.

15  Would hearing about that type of evidence affect your ability

16  to serve as a fair and impartial juror in this case?

17          And you said:  Yes, because I'm afraid of rituals

18  and bad spirits.

19          So tell me about what kind of bad spirits you are

20  afraid of.

21          PROSPECTIVE JUROR NO. 124:  I know, when my children

22  now, you see like this generation, they like to watch those

23  like scary movies, and so I don't -- I don't like to see it.

24          THE COURT:  They like what kind of movies?

25          PROSPECTIVE JUROR NO. 124:  Those -- those bad

1   movies.

2            THE COURT:  Movies about spirits?

3            PROSPECTIVE JUROR NO. 124:  Yeah, spirits, yes.

4            THE COURT:  But that's --

5            PROSPECTIVE JUROR NO. 124:  Like voodoos, you know,

6   how they kill people.  It's like, you know, I not used to it,

7   but they used to it.  They just laugh.  But I say, listen, you

8   know, I wasn't raised that way.  You see when I see bad

9   things, I don't like even see it, even to see, but --

10           THE COURT:  Well, there may be evidence about

11  rituals or whatever.  No one is asking you to accept this kind

12  of activity for yourself, it is only that it may be described,

13  may be described by witnesses and that you have to evaluate

14  it.

15           PROSPECTIVE JUROR NO. 124:  Yeah, we got to be

16  open-minded.  Open-minded, just listen.

17           THE COURT:  Yes, well, that is what you are being

18  asked to do.  You can do that?

19           PROSPECTIVE JUROR NO. 124:  I guess so, yes.  Yes.

20           THE COURT:  Okay.

21           PROSPECTIVE JUROR NO. 124:  Yes.

22           You know, besides that, I think that I'm not ready.

23  I'm not ready because, you know, there's a little thing

24  involved that I don't know if I'm gonna -- I'm gonna perform

25  well.

1          THE COURT:  You don't know whether you are what?

2          PROSPECTIVE JUROR NO. 124:  If I'm gonna do it well.

3     If I'm gonna -- you know, because I don't know if I want -- if

4     I'm gonna be fair.

5          THE COURT:  Well, I mean you have raised two

6     children, you must be fair in dealing with your own children,

7     aren't you?

8          PROSPECTIVE JUROR NO. 124:  Of course, yes.

9          THE COURT:  Well, there you go.  So you have proven

10    that you can be fair, just have to apply those skills to the

11    work as a juror.  I think you can do it based on what you've

12    told me.

13         PROSPECTIVE JUROR NO. 124:  I don't know.  I don't

14    know.  I don't --

15         THE COURT:  You don't think so?

16         PROSPECTIVE JUROR NO. 124:  I don't think so.

17         THE COURT:  Why not?

18         PROSPECTIVE JUROR NO. 124:  No.

19         THE COURT:  It is hard work, I know, but it is part

20    of being a citizen.

21         PROSPECTIVE JUROR NO. 124:  I understand, I

22    understand.

23         THE COURT:  It is an important thing.

24         PROSPECTIVE JUROR NO. 124:  Yeah, but the father is

25    like, you know -- I may, you know, but it's like, you know,

1    the commute, my family.

2              THE COURT:  Yes.

3              PROSPECTIVE JUROR NO. 124:  Because my children,

4    they -- you know, they go to school and then they go to

5    programs because they play basketball.  So I got to cook for

6    them.  You know, there's a lot of things that I have to do at

7    home.

8              THE COURT:  So it is an inconvenience?

9              PROSPECTIVE JUROR NO. 124:  It's inconvenient, yes,

10   you know.

11             THE COURT:  I see.

12             PROSPECTIVE JUROR NO. 124:  It's inconvenient.

13             THE COURT:  That's good to know.

14             PROSPECTIVE JUROR NO. 124:  Yeah.

15             THE COURT:  Any other questions?

16             MR. AGNIFILO:  No.

17             MS. PENZA:  No, Your Honor.

18             THE COURT:  Okay.

19             Well, thank you for coming in.  You have a lovely

20   day.

21             PROSPECTIVE JUROR NO. 124:  Okay, you too.

22             THE COURT:  Nice meeting you.

23             PROSPECTIVE JUROR NO. 124:  Okay.

24             (Prospective Juror Number 124 exited the courtroom.)

25             THE COURT:  I want to hear you, yes.

1           MR. AGNIFILO:  Your Honor might have gotten to the

2    crux of it at the end certainly, and the Court's examination

3    was very skillful and --

4           THE COURT:  Don't try to bribe it.

5           MR. AGNIFILO:  -- but we're sitting with a juror

6    who, and she was so much better when she was answering direct

7    questions, but then she would go off on her own and say:  Oh,

8    I don't think I can do it, I don't think I can be fair.  I

9    don't think I can be fair, you know, given the charges and I'm

10   worried about my children.

11          And Your Honor would bring her back to the

12   reservation, you know, but at the end of the day she can't

13   spend her time as a juror answering the Court's questions.

14   She's going to go off on her own, and what she's shown is when

15   she goes off on her own it's not really moored to the

16   principles that we need our jurors to have.

17          And whether it is really a matter of inconvenience

18   or whether she's really worried about spirits, we'll never

19   really know, but what we do know is on the record she said a

20   few times, she doesn't think she can be fair.  I don't know if

21   I can do it.  And I have concerns about her ability.  I am

22   taking her at her word.

23          MS. PENZA:  The Government objects to striking this

24   juror for cause.  She said repeatedly to Your Honor when asked

25   direct questions that, of course, she could follow your

1    instructions.  And I think it is clear from the questions Your

2    Honor asked that her reservations are more about it being an

3    inconvenience than her inability to be fair.

4              THE COURT:  She was very sweet in how she addressed

5    the issues, but it is understandable that she has two teenage

6    children and she really wants to parent these children.  And

7    that is totally understandable, but my sense from asking her

8    these questions is that she is very thoughtful, that she

9    listens.  She listened to all the questions.  She addressed

10   the questions when I asked them.  She was uncertain, I think,

11   because she really does not know whether she wants to do this,

12   make this commitment.

13             And I imagine that she is very successful as a

14   facilitated enroller because she has a very nice demeanor and

15   she appears to like to help people or she wouldn't be doing

16   that job.

17             The only question I have is whether she is going to

18   get paid, and she is going to let us know.  So I am going to

19   overrule the objection and she is approved subject to not

20   having a financial hardship.  And you have your exception.

21             THE COURT:  Let's take a five-minute break.

22             (Recess taken.)

23

24             (Continued on the following page.)

25

SAM       OCR       RMR       CRR       RPR

Prospective Juror No. 125                    335

1    (Continuing.)

2              THE COURT:  All right.  125.

3              (Prospective juror enters.)

4              THE COURT:  Please be seated?

5              PROSPECTIVE JUROR:  Thank you.

6              THE COURT:  Good afternoon.  You are Juror No. 125?

7              PROSPECTIVE JUROR:  Correct.

8              THE COURT:  Now, you indicated that you have travel

9    plans?

10             PROSPECTIVE JUROR:  Yes.

11             THE COURT:  Where are you going?

12             PROSPECTIVE JUROR:  I'm going to Spain, Barcelona.

13             THE COURT:  When are you doing that?

14             PROSPECTIVE JUROR:  On Sunday.

15             THE COURT:  This Sunday.  How long are you going to

16   be away?

17             PROSPECTIVE JUROR:  Until May 15th.

18             THE COURT:  You have a ticket?

19             PROSPECTIVE JUROR:  Yes.

20             THE COURT:  Is this a vacation?

21             PROSPECTIVE JUROR:  I do work and I'm in an

22   exhibition and it's going to be in Barcelona and my work is

23   going to be shown there.  That's the reason I'm going there.

24             THE COURT:  What kind of work?

25             PROSPECTIVE JUROR:  I do photography and print

SN        OCR        RPR

Prospective Juror No. 125                    336

1   making and painting.

2           THE COURT:  And you have other travel plans this

3   summer?

4           PROSPECTIVE JUROR:  I'm going to be in New Jersey.

5   My daughter is getting married.

6           THE COURT:  When is that?

7           PROSPECTIVE JUROR:  June 29th, so I may be away from

8   New York then.

9           THE COURT:  Now, you said you have a son with

10  disabilities.  Does that person live with you?

11          PROSPECTIVE JUROR:  Yes.

12          THE COURT:  And what type of disabilities does he

13  have?

14          PROSPECTIVE JUROR:  He has cerebral palsy.  He was

15  premature, 24 weeks at birth.

16          THE COURT:  How old is he now?

17          PROSPECTIVE JUROR:  23 -- 24.

18          THE COURT:  And does he work?

19          PROSPECTIVE JUROR:  No, no.  He goes to school.

20          THE COURT:  Any questions for the juror?

21          MR. AGNIFILO:  No, Judge.

22          MS. PENZA:  No, Your Honor.

23          THE COURT:  Okay.  Well I want to thank you for

24  coming in and you have a good trip to Barcelona.

25          PROSPECTIVE JUROR:  Thank you very much.

Prospective Juror No. 126                           337

1          (Prospective juror exits.)

2          THE COURT:  Motion?

3          MR. AGNIFILO:  Move to excuse her only because of

4    her travel plans.

5          MS. PENZA:  Agreed, Your Honor.

6          THE COURT:  All right.  The motion is granted.  The

7    juror is struck for cause on consent.

8          Next is 126.

9          (Prospective juror enters.)

10         THE COURT:  Please be seated, sir.  Good afternoon,

11   sir.

12         PROSPECTIVE JUROR:  Good afternoon.

13         THE COURT:  And you are Juror No. 126?

14         PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Okay.  I just have a few questions for

16   you.  You work at Flight Safety International?

17         PROSPECTIVE JUROR:  Yes, sir.

18         THE COURT:  And what is Flight Safety International?

19         PROSPECTIVE JUROR:  It is aviation simulation

20   training.

21         THE COURT:  So they basically have simulators?

22         PROSPECTIVE JUROR:  Yes, simulators.

23         THE COURT:  Different type of class of aircraft?

24         PROSPECTIVE JUROR:  Many types.

25         THE COURT:  Where are you located?

Prospective Juror No. 126                          338

 1             PROSPECTIVE JUROR:  The corporate office at
 2    LaGuardia.
 3             THE COURT:  So you are over by the Marine Air
 4    Terminal?
 5             PROSPECTIVE JUROR:  Yes, exactly.
 6             THE COURT:  Now, you indicated you weren't sure how
 7    much time you get paid for jury duty.  Did you figure that
 8    out?
 9             PROSPECTIVE JUROR:  Yeah, the duration.
10             THE COURT:  I'm sorry?
11             PROSPECTIVE JUROR:  The duration.
12             THE COURT:  Okay, all right.  So there was this
13    question, "There may be evidence in this case about
14    fraternities, sororities, secret societies rituals or cults.
15    Would hearing about that type of evidence impact your ability
16    to serve as a fair and impartial juror?"  You checked "Yes."
17    And you say, "The Jim Jones tragedy, impartial to cults."
18    What did you mean?
19             PROSPECTIVE JUROR:  Well, I read about the Jim
20    Jones situation when I was here in the states but I saw on the
21    TV.  This guy was so cruel.
22             THE COURT:  Right, right.
23             PROSPECTIVE JUROR:  But then if you look at the
24    other hand, were the people who followed -- I don't know.  I
25    figured that situation, I drew the conclusion he brainwashed

Prospective Juror No. 126                                339

1    these people and that's why they took the Kool Aid.

2              THE COURT:  The what?

3              PROSPECTIVE JUROR:  The Kool Aid.

4              THE COURT:  Oh yes, yes, drink the Kool Aid.  Well,

5    there may be evidence presented in this case regarding

6    allegations of the existence of a consult, but it will be up

7    to the jury to decide whether this evidence proves that the

8    defendant has committed a specific set of crimes.  In other

9    words, he is considered to be by the law innocent until proven

10   guilty.  He has pleaded not guilty to all of the allegations,

11   to all of the crimes that he has been accused of and it's the

12   jury's job to hear the evidence and then deliberate to decide

13   whether he is indeed guilty or not guilty and defendant has no

14   obligation to testify or to present any evidence.  That's the

15   job of the Government.  They have to prove their allegations.

16   Do you understand?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  So your job as a juror is to listen to

19   the evidence, be fair and impartial and make judgments about

20   whether this evidence that is presented proves that he's

21   guilty beyond a reasonable doubt.  That is it -- as to the

22   specific charges, and I am not even sure what the evidence

23   will be because I do not know what the evidence is either.  Do

24   you think you can do that?

25             PROSPECTIVE JUROR:  Yeah.

Prospective Juror No. 126                 340

1      THE COURT:  Okay.  And you you've been a juror in

2  one case involving gun possession; right?

3      PROSPECTIVE JUROR:  Yes.

4      THE COURT:  I don't want to know what the verdict

5  was, but were you on the jury that reached a verdict?

6      PROSPECTIVE JUROR:  Yes.

7      THE COURT:  No other juror service?

8      PROSPECTIVE JUROR:  No, that's the only one.

9      THE COURT:  Okay.  Now, you indicated that someone

10  in your family or close friend was charged with a crime and it

11  was in Guyana?

12      PROSPECTIVE JUROR:  Yeah.  Well, my father's brother

13  before I was born -- because the question is asking me that

14  and I knew that he was in the lockup for a murder charge.

15      THE COURT:  For what?

16      PROSPECTIVE JUROR:  Murder.  My father's brother --

17      THE COURT:  Yes.

18      PROSPECTIVE JUROR:  But that was prior to me -- to

19  my birth but it's related as family.  And I was in Guyana,

20  South America.

21      THE COURT:  What was the out come?

22      PROSPECTIVE JUROR:  He was in prison.  As far as

23  what the case= -- how he got -- they never talked about it but

24  I know he was charged and he was imprisoned before I was born.

25      THE COURT:  I see.  Did your parents talk about this

1    case when you were growing up?

2             PROSPECTIVE JUROR:  Not really.  I think they just

3    wanted to forget about it.

4             THE COURT:  "The charges in this case involve

5    allegations of, among other things, sex trafficking, forced

6    labor, child pornography and child exploitation.  Is there

7    anything about these allegations that would make it difficult

8    for you to be fair and impartial?"  You checked off "Yes" and

9    you say, "I may be sympathetic to exploitation of children if

10   it occurred."  What do you mean by that?

11            PROSPECTIVE JUROR:  Well, you speak about

12   evidence --

13            THE COURT:  Right.

14            PROSPECTIVE JUROR:  If the evidence tells me that

15   these kids were, in fact, exploited, my decision would be

16   based on that, that they were exploited.  That's what I'm

17   trying to say.

18            THE COURT:  Do you have an open mind to listening to

19   the evidence and reaching a judgment that's fair and

20   impartial?

21            PROSPECTIVE JUROR:  Right.  That's why I say of I

22   don't know if that is the case.  I don't know if it occurs,

23   but then if it is, of course then --

24            THE COURT:  Okay.  There's also a question, "Would

25   you be inclined to believe a witness is more or less truthful

1   solely because that witness is a law enforcement officer?"

2   And you say, "I may tend to believe the officer is honest."

3   Right?

4            PROSPECTIVE JUROR:  Yes.

5            THE COURT:  If I instruct you as a juror on the law

6   and I tell you, which I will, that the testimony of law

7   enforcement officers is to be judged by the same standards as

8   the testimony of any other witness and that you are to

9   consider it the same as you would any other witness, meaning

10  that you have to examine the testimony, you have to decide

11  whether the testimony is credible and that you have to have an

12  open mind as to whether it is credible or not, can you follow

13  my instruction?

14           PROSPECTIVE JUROR:  Yes, I would.

15           THE COURT:  Other questions?

16           MR. AGNIFILO:  Nothing from us.

17           MS. PENZA:  No, Your Honor.

18           THE COURT:  Thank you for coming in.  Have a nice

19  day, sir.

20           (Prospective juror exits.)

21           THE COURT:  Is there a motion on 126?

22           MR. AGNIFILO:  No.

23           MS. PENZA:  No, Your Honor.

24           THE COURT:  126 is approved.  We are up to 131.

25  Okay, 131 is downstairs.  132 is coming tomorrow.  So it is

1   133.

2             (Prospective juror enters.)

3             THE COURT:  Please be seated, ma'am.  You are Juror

4   No. 133, are you not?

5             PROSPECTIVE JUROR:  Yes, I am.

6             THE COURT:  I just have a couple of questions here.

7   You are employed full-time?

8             PROSPECTIVE JUROR:  Yes, I am.

9             THE COURT:  Okay.  And what kind of work do you do?

10            PROSPECTIVE JUROR:  I do accounting.

11            THE COURT:  And how long have you been doing that?

12            PROSPECTIVE JUROR:  I've been doing accounting for

13   30-plus years.

14            THE COURT:  I see.  And currently you work for an

15   enterprise.  What is Winters Brothers.

16            PROSPECTIVE JUROR:  Winters Brothers does waste and

17   recycling.

18            THE COURT:  Out on Long Island?

19            PROSPECTIVE JUROR:  On Long Island.

20            THE COURT:  I see.  And do you know what their

21   policy is for paying for jury duty?

22            PROSPECTIVE JUROR:  I believe they only pay for a

23   few days.

24            THE COURT:  Now, would that, the fact that -- you

25   didn't check?

1           PROSPECTIVE JUROR:  It's very hard to get
2      information there.
3           THE COURT:  Really?
4           PROSPECTIVE JUROR:  It's like we think we pay for a
5      few days, we're not sure, but I know they won't pay me the
6      entire time.
7           THE COURT:  I see.  And would this create a
8      financial hardship for you if you only got paid for a week?
9           PROSPECTIVE JUROR:  Yes.
10          THE COURT:  Why is that?
11          PROSPECTIVE JUROR:  Because I live on Long Island
12     and I have a house and I have bills that I have to pay and my
13     husband works -- he works 24-hour shifts.
14          THE COURT:  He's a firefighter?
15          PROSPECTIVE JUROR:  Yes.
16          THE COURT:  Up in Connecticut?
17          PROSPECTIVE JUROR:  Yes.
18          THE COURT:  So he schleps to Connecticut?
19          PROSPECTIVE JUROR:  Twice a week he has to go to
20     Connecticut for 24 hours and then -- my children are all
21     grown.  They're in college and we have animals at home so we
22     try to kind of work it out that somebody is home.
23          THE COURT:  They're in college but on Long Island?
24          PROSPECTIVE JUROR:  No, I have one in Rhode Island
25     and one in Manhattan.

```
                        Sidebar                          345
```

1            THE COURT:  You know about the Me Too movement?

2            PROSPECTIVE JUROR:  No.

3            THE COURT:  The Me Too movement?

4            PROSPECTIVE JUROR:  Me too?

5            THE COURT:  You don't know about it?

6            PROSPECTIVE JUROR:  No.

7            THE COURT:  Anybody have any questions?

8            MR. AGNIFILO:  Not from us.

9            MS. PENZA:  Your Honor, can we have a sidebar,

10   please?

11           THE COURT:  Sure.

12           (Sidebar held outside of the hearing of the

13   courtroom.)

14           MS. PENZA:  Your Honor, we were wondering if you

15   could inquire further on the hardship because she does say she

16   makes over $150,000.  She does have a husband who works.  She

17   has a house that she owns.  So it's not clear to me --

18           THE COURT:  Yes, okay.  That's fine.

19           (Sidebar ends.)

20           THE COURT:  So, let me inquire a little further

21   about the nature of the financial hardship.  So, you own a

22   house.

23           PROSPECTIVE JUROR:  Yes.

24           THE COURT:  Do you have a mortgage?

25           PROSPECTIVE JUROR:  Yes.

Prospective Juror No. 133                          346

1          THE COURT:  I see.  How long have you owned this
2     house?
3          PROSPECTIVE JUROR:  This house we've owned for eight
4     or nine years.
5          THE COURT:  And I think you indicated, I'm looking
6     at your salary range -- did you put down your salary range for
7     you and your husband together or just you?
8          PROSPECTIVE JUROR:  If you tell me --
9          THE COURT:  Over $150,000.
10         PROSPECTIVE JUROR:  That's together.
11         THE COURT:  How long has your husband been a
12    firefighter?
13         PROSPECTIVE JUROR:  He's been in Stamford for 15
14    years.
15         THE COURT:  Is he a firefighter or is he an officer?
16         PROSPECTIVE JUROR:  He's a firefighter.
17         THE COURT:  So, you are saying that you wouldn't be
18    able to -- well, you don't know because you haven't asked.
19    What I would like you to do is check with your employer and
20    find out how much jury service they would pay for because
21    that's really important to know.  And, frankly, with a spouse
22    who works where your aggregate income is $150,000 a year, I am
23    not sure that -- while it's a hardship, I would imagine, I'm
24    not sure it is a sufficient hardship that we can excuse you
25    based on that.  So I am just telling you that you may not --

Prospective Juror No. 133                     347

1   it may not disqualify you from serving on this jury and I want

2   to be absolutely forward with you.  It would appear that you

3   are a very well qualified juror and that the Court and the

4   parties may want to consider you for being on the jury despite

5   the fact that you may not be paid for a good portion that you

6   will be a juror, but out of respect to you I wanted to mention

7   that to you because there are no issues here about your

8   qualifications to serve, as far as I can tell, apart from that

9   question, okay.

10          PROSPECTIVE JUROR:  Yes.

11          THE COURT:  So you will call Mr. Reccoppa about the

12  information and tell your employer the judge wants to know.  I

13  don't how many people work in your office.

14          PROSPECTIVE JUROR:  In the accounting department?

15          THE COURT:  Yes.

16          PROSPECTIVE JUROR:  There is -- my particular job,

17  it's really me and I have another person that knows a lot of

18  what I do, not everything, but can get by with what has to

19  happen and then my immediate boss knows the rest of my job.

20  It's not a large accounting department.  So it's -- we're

21  scarce on who does what.

22          THE COURT:  I see.  You basically cover for each

23  other?

24          PROSPECTIVE JUROR:  Yes.

25          THE COURT:  Okay.  Well thank you very much.  Have a

SN        OCR        RPR

Prospective Juror No. 137                    348

1   nice day.

2           PROSPECTIVE JUROR:  Thank you very much.

3           (Prospective juror exits.)

4           THE COURT:  Does anybody have a motion?

5           MR. AGNIFILO:  No.

6           MS. PENZA:  No, Your Honor.

7           THE COURT:  All right.  Number 133 is approved and

8   we will wait to hear about the issue of pay during jury duty.

9           The next one is, I think, 137.

10          (Prospective juror enters.)

11          THE COURT:  Please be seated, sir.

12          PROSPECTIVE JUROR:  Thank you.

13          THE COURT:  Good afternoon.

14          PROSPECTIVE JUROR:  Good afternoon.

15          THE COURT:  You are Juror No. 137; correct?

16          PROSPECTIVE JUROR:  Yes.

17          THE COURT:  What do you do for a living, sir?

18          PROSPECTIVE JUROR:  A living?

19          THE COURT:  What do you do to make a living.

20          PROSPECTIVE JUROR:  I sell luggage.

21          THE COURT:  You sell luggage?

22          PROSPECTIVE JUROR:  Yeah.

23          THE COURT:  Okay.  Do you have any children?

24          PROSPECTIVE JUROR:  Yeah, one.

25          THE COURT:  How old is your child?  How old?

1      PROSPECTIVE JUROR:  29.

2      THE COURT:  Now, there is a question here, "Every

3  defendant is presumed innocent and cannot be convicted unless

4  the jury unanimously and based solely on the evidence in this

5  case decides that his guilt has been proven beyond a

6  reasonable doubt.  The burden of proving guilt rests entirely

7  with the Government and never shifts to the defendant at any

8  time.  The defendant has no burden of proof at all.  Would you

9  have any difficulty following these rules?

10      PROSPECTIVE JUROR:  See, I don't understand.

11      THE COURT:  I see.  Okay.

12      Are there any other questions?

13      MS. PENZA:  No, Your Honor.

14      MR. AGNIFILO:  Nothing.

15      THE COURT:  Okay, well thank you for coming in.  You

16  have a nice day, sir.

17      (Prospective juror exits.)

18      THE COURT:  Is there a motion?

19      MR. AGNIFILO:  Yes, Judge.  We move to strike this

20  potential juror for cause.  He doesn't seem to -- he expressed

21  he didn't understand that very straightforward, clear

22  principle of law and if he can't understand that as a

23  standalone principle, I have concerns he won't be able to

24  understand other aspects of things he will have to consider

25  like the jury instructions and other instructions that Your

1    Honor will be giving.

2            MS. PENZA:  No objection.

3            THE COURT:  I would point out in answer to that

4    question on the questionnaire he said "No good English."  So,

5    he didn't understand the question when he read it and he

6    didn't understand the question when I read it to him.  So I

7    think it is pretty clear that his understanding of concepts in

8    English is somewhat limited.  So Juror No. 137 is struck on

9    consent.  We are up to 138.

10           (Prospective juror enters.)

11           THE COURT:  Please be seated, ma'am.

12           PROSPECTIVE JUROR:  Thank you.

13           THE COURT:  Good afternoon.

14           PROSPECTIVE JUROR:  Good afternoon.

15

16           (Continued on the following page.)

17

18

19

20

21

22

23

24

25

SN        OCR        RPR

Prospective Juror Number 138                              351

1   (Continuing.)

2            (Prospective Juror Number 138 entered the

3   courtroom.)

4            THE COURT:  Please be seated, ma'am.  Good

5   afternoon.

6            PROSPECTIVE JUROR NO. 138:  Good afternoon.

7            THE COURT:  And you are a school crossing guard?

8            PROSPECTIVE JUROR NO. 138:  Yes, sir.

9            THE COURT:  How long have you been doing that?

10           PROSPECTIVE JUROR NO. 138:  Four years.

11           THE COURT:  How do you find it?

12           PROSPECTIVE JUROR NO. 138:  Well, I went online --

13           THE COURT:  No, no, I mean how do you like it?

14           PROSPECTIVE JUROR NO. 138:  Oh, how I like it.

15           It's really good.  I love working with kids and I

16   love work with publicity -- with people, helping them to cross

17   and all that.

18           THE COURT:  Do you have any children of your own?

19           PROSPECTIVE JUROR NO. 138:  Yes, I have one.

20           THE COURT:  How old?

21           PROSPECTIVE JUROR NO. 138:  He's 22.

22           THE COURT:  22?

23           PROSPECTIVE JUROR NO. 138:  Yes.

24           THE COURT:  Well, he doesn't need a school crossing

25   guard.

1          PROSPECTIVE JUROR NO. 138:  No, no.  Well, my

2    granddaughter in the future she's gonna need it.

3          THE COURT:  Okay, very good.  And let me ask you a

4    few questions.

5          Would you be able to listen to and discuss matters

6    of a sexual nature with your fellow jurors when you are in the

7    jury room?

8          And your answer was:  Yes and no, because maybe

9    can't affect my ideas and be unclear with the jurors.

10          Are you worried?  What are you worried about in

11    having those discussions?  What is your concern?

12          PROSPECTIVE JUROR NO. 138:  Oh, I'm sorry.

13          THE COURT:  In speaking with your fellow jurors when

14    you are deliberating in the jury room at the end of the trial,

15    you have heard all the evidence and now you are going to talk

16    to your fellow jurors about it, do you have any concerns about

17    having conversations with your fellow jurors?

18          PROSPECTIVE JUROR NO. 138:  To be honest with you, I

19    do it so fast that I didn't pay attention too much what I

20    wrote and --

21          THE COURT:  Well, tell me what you think.

22          Do you think you could discuss these issues, some of

23    which are about sexual behavior?  Do you think you would have

24    any trouble discussing those issues with other jurors when you

25    have to deliberate?

Prospective Juror Number 138                    353

1        PROSPECTIVE JUROR NO. 138:  I mean, I think depend,
2   like what is about it.  Like, how I'm gonna say to you?  If --
3   if -- if -- I'm sorry, I'm kind of nervous.
4        THE COURT:  Don't be nervous, we're just having a
5   conversation and I am trying to learn from you how you would
6   feel about being a juror and working with other jurors.  That
7   is what I would like to know.
8        PROSPECTIVE JUROR NO. 138:  Well, we -- I been
9   discussing what is about the case and talk about --
10        THE COURT:  What do you mean discussing?
11        PROSPECTIVE JUROR NO. 138:  Like whatever is the
12   case about it.
13        THE COURT:  You were talking about it?
14        PROSPECTIVE JUROR NO. 138:  No, no, no, we are -- we
15   could discuss with the judge, with the jurors.
16        THE COURT:  Yes.  Well, you would be discussing it
17   after the trial --
18        PROSPECTIVE JUROR NO. 138:  After the trial.
19        THE COURT:  -- to decide whether the defendant is
20   guilty or not guilty.
21        So I want to know are you able to have that
22   discussion with other people or jurors?
23        PROSPECTIVE JUROR NO. 138:  Yeah.
24        THE COURT:  Would you have any trouble discussing
25   these kinds of things with your fellow jurors?

SAM      OCR      RMR      CRR      RPR

1          PROSPECTIVE JUROR NO. 138:  Like depending the case,
2    like -- my brain goes --
3          THE COURT:  It's all right.  Let me ask this:
4          Will you be inclined to believe a witness is more or
5    less truthful solely because the witness is a police officer?
6          In other words, are you more likely to believe if a
7    police officer gets on the witness stand, are you more likely
8    to believe the witness because he is a police officer?
9          PROSPECTIVE JUROR NO. 138:  No.  No, because
10   maybe -- maybe the police officer could be guilty or -- or he
11   could lie.
12         THE COURT:  So would you consider every witness
13   based on what he or she says and whether you believe them?
14         PROSPECTIVE JUROR NO. 138:  I could be doubting
15   between, half and half.
16         THE COURT:  What's half and half?
17         PROSPECTIVE JUROR NO. 138:  Like, I could believe
18   some of the things that he's saying it, but it does also mean
19   that it could be true.
20         THE COURT:  Well, he might be saying some things
21   that are true and some things that you do not believe, is that
22   right?
23         PROSPECTIVE JUROR NO. 138:  Uh-hum, uh-hum.
24         THE COURT:  Yes or no?
25         PROSPECTIVE JUROR NO. 138:  Yes.

1          THE COURT:  Are there other questions of this juror?

2          MR. AGNIFILO:  Yes, Judge.

3          THE COURT:  Just give me a number.

4          MR. AGNIFILO:  Number 44.

5          THE COURT:  Okay.

6          Now, some people believe that rich people can buy

7   their way out of anything.  What is your opinion on the topic?

8          And you say:  I believe it's true because with money

9   they buy everything even they are guilty, but they have the

10  money.  The only thing is they send then to behave to cover

11  the things they are doing and they don't care the person who's

12  killed and family is suffering.

13         What did you mean by that?

14         PROSPECTIVE JUROR NO. 138:  Well, when I answered

15  that, they're saying that, like with money they could buy a

16  lot of things.  Yes, I say that.  And I say that they could

17  cover -- let's say -- let's say if I'm guilty and because I

18  have the money I could buy the judges, I could buy -- well,

19  that's my point of view -- the lawyers.  They could do all

20  this.

21         And the only ways, like, they're saying, that, oh,

22  okay, because he's rich or he got the money, oh, we gonna just

23  send him to rehab to get better and then he's gonna come out

24  again and keep doing the same things.

25         THE COURT:  I see.

Prospective Juror Number 138                          356

1          Any other questions?

2          MR. AGNIFILO:  No, Judge.

3          MS. PENZA:  No, Your Honor.

4          THE COURT:  Well, I want to thank you for coming in.

5          PROSPECTIVE JUROR NO. 138:  Thank you.

6          THE COURT:  And you take care and keep the children

7   safe.

8          PROSPECTIVE JUROR NO. 138:  Okay, thank you.

9          (Prospective Juror Number 138 exited the courtroom.)

10         THE COURT:  Motion?

11         MR. AGNIFILO:  Your Honor, we are going to move to

12  strike the potential juror for cause.  I think there were

13  certain basic things she didn't understand.  I mean she told

14  Your Honor that she rushed through the questionnaire and she

15  didn't pay that much attention to it.

16         She does say in the questionnaire response to

17  Question 5 that a lot of the words were difficult.  You know,

18  and that although she doesn't have difficulty reading or

19  understanding English, she says:  I understand and read, but

20  not too much because there are difficult words.

21         And I think she tried to answer Your Honor's

22  questions.  I don't think she's one of these people that are

23  trying to get out of jury service, but I do think there is a

24  disconnect at times between what Your Honor was asking her and

25  what she was endeavoring to answer.  And so I'm just

                SAM      OCR      RMR      CRR      RPR

Prospective Juror Number 138                    357

1   concerned, you know, with the nature of the charges and the

2   complexity of the case and the jury instructions that she is

3   just not going to be able to keep up.

4           MS. PENZA:  The Government objects to her being

5   stricken for cause.  I think it was clear that the juror was

6   nervous answering questions in a public forum, but that is not

7   how she would be discussing matters with jurors.

8           And I think she did say that she could discuss with

9   jurors.  I think it's also clear that she did have pretty full

10  answers to questions on the questionnaire and to Your Honor.

11          So the Government objects to her being stricken for

12  cause.

13          THE COURT:  I think she was nervous, we will start

14  with that, and she obviously is capable of working a job which

15  carries a lot of responsibility for taking care of children.

16          I would say that she is not particularly artful in

17  her answers to questions, so I am not sure based on her

18  nervousness that was the reason why she had difficulty with

19  that first question.  But I think that her written answers

20  were relatively -- she knows how to use Facebook and she has

21  hobbies:  Cooking, drawing, exercise, dance, reading.  She has

22  got more hobbies than any other five people, so I am going to

23  overrule the objection.  You have your exception.  And Number

24  138 is approved.

25          THE COURTROOM DEPUTY:  141.

SAM     OCR     RMR     CRR     RPR

Prospective Juror Number 138                    358

```
 1          THE COURT:  Can I ask a question before we bring in
 2   141?
 3          The question you want me to ask, the defense wants
 4   me to ask:  Did you follow the trials of Mr. Ed Mangano and
 5   Mr. John Venditto?
 6          That is not a trial you were in?
 7          MR. AGNIFILO:  That was the one I represented
 8   Mr. Venditto, who was acquitted.  Twenty-seven counts, Judge.
 9          THE COURT:  I fell right into the trap, didn't I?
10          So why are we asking that?  Would you like me to ask
11   that question?
12          MR. AGNIFILO:  No, I don't think so.
13          THE COURT:  It is very specific and I am wondering
14   why.  The person, obviously, lives out on the island.
15          MR. AGNIFILO:  The concern is --
16          THE COURT:  Try to do it in 25 words or less because
17   the clock is running.
18          MR. AGNIFILO:  I think there is a view from people
19   who are very tuned into Oyster Bay, that that was a very
20   fortunate verdict for Mr. Venditto.  And I don't know if he
21   has any strong feelings about the result.  I think it was the
22   appropriate verdict, but people in Oyster Bay think it was a
23   favorable verdict.
24          THE COURT:  I am much more concerned about the fact
25   that the medications he's taking include oxycodone.  No, that
```

Prospective Juror Number 138                    359

1    is not him, that is 140.  Where is 140, downstairs?

2             THE COURTROOM DEPUTY:  Downstairs.

3             THE COURT:  Sorry, I got the wrong one.

4             MS. PENZA:  I'm sorry, what juror are we --

5             THE COURT:  Juror 141, I think.

6             MR. AGNIFILO:  Yes, it's an answer to 33(b).

7             THE COURT:  Hold on.

8             MR. AGNIFILO:  One of the people he least admires is

9    Ed Mangano.

10            THE COURT:  Well, the jury out there must have

11   agreed with him because they found Mangano guilty.

12            MR. AGNIFILO:  They did; not in my trial, but yes,

13   yes.

14            THE COURT:  Well, later on.

15            MR. AGNIFILO:  I don't want to raise an issue if

16   it's not an issue.  He hasn't mentioned Venditto.

17            THE COURT:  I would ask him why he feels that way

18   about Ed Mangano, that should be enough.

19            MR. AGNIFILO:  That's fine.

20            THE COURT:  All right?

21            MR. AGNIFILO:  That's perfect.

22            THE COURT:  And then you can make your appraisal

23   based on that.

24            MR. AGNIFILO:  Very good, fair enough.

25            THE COURT:  Okay.

Prospective Juror Number 141                    360

1          (Pause.)

2          (Prospective Juror Number 141 entered the

3    courtroom.)

4          THE COURT:  Please be seated.

5          Good afternoon, sir.

6          PROSPECTIVE JUROR NO. 141:  Ma'am.

7          THE COURT:  Ma'am, I'm sorry.  It's late in the day.

8          PROSPECTIVE JUROR NO. 141:  Okay.

9          THE COURT:  And you work at Chase?

10         PROSPECTIVE JUROR NO. 141:  Yep.

11         THE COURT:  Okay.  Did you check as to whether you

12    would be paid for your jury service?

13         PROSPECTIVE JUROR NO. 141:  I believe so.

14         THE COURT:  I think you are, but you can doublecheck

15    and let us know if it is not true.

16         PROSPECTIVE JUROR NO. 141:  Okay, I think so though.

17         THE COURT:  I just do not want you to -- that is my

18    belief anyway, based on prior experience.

19         PROSPECTIVE JUROR NO. 141:  Yep.

20         THE COURT:  So let me ask you a few questions.

21         You said that one of the people you least admire is

22    Ed Mangano.  Why did you put Mr. Mangano down?

23         PROSPECTIVE JUROR NO. 141:  I think that he is being

24    charged with or already has been -- I mean it's been a while

25    since I read about it, but I believe he's quite corrupt.

SAM      OCR      RMR      CRR      RPR

Prospective Juror Number 141                    361

1          THE COURT:  Do you live out there, that way?

2          PROSPECTIVE JUROR NO. 141:  Yeah.

3          THE COURT:  So you pay attention.

4          Where do you read about those cases?  Do you have a

5     newspaper?

6          PROSPECTIVE JUROR NO. 141:  I think it's more on the

7     news.

8          THE COURT:  The news, okay.

9          There may be evidence in this case that includes

10    sexually explicit images and language.  Would hearing about

11    that type of evidence affect your ability to serve as a fair

12    and impartial juror in this case?  You checked yes, and you

13    said possibly if children involved.

14          There might be some evidence presented, but let me

15    say this:  Obviously, the Court keeps to a minimum the amount

16    of that kind of material, and the parties do too, because it

17    is very sensitive, but some may be necessary to be provided to

18    the jury.

19          Would you be able to consider such evidence and take

20    it into account in deciding whether the defendant has

21    committed the relevant crimes in this Indictment?

22          PROSPECTIVE JUROR NO. 141:  I would think that I

23    would be -- you know, I would certainly try, although you have

24    to kind of admit that it is only natural, right, to have those

25    types of reactions.

1           THE COURT:  Absolutely.

2           PROSPECTIVE JUROR NO. 141:  Just natural.

3           THE COURT:  And that is why we would be so sensitive

4   to minimizing that, but if there are charges which require the

5   Government, which has the burden of proof here, to provide

6   some amount of information that can be relied on by the jury,

7   if you believe it, in connection with whether the defendant is

8   guilty beyond a reasonable doubt, it has got to be presented

9   to a jury because you are the triers of the facts.

10          So, it is impossible to eliminate it entirely, even

11  though we understand that it is very sensitive and it can be

12  offensive to jurors.

13          So the question is:  Would you be able to deal with

14  that in such a way that you could listen to the evidence, see

15  the evidence, and then deliberate with your fellow jurors

16  about the question of guilt or non-guilt?

17          PROSPECTIVE JUROR NO. 141:  I'm really not sure.  I

18  have to be honest, I'm really not sure.

19          THE COURT:  There is a question here:  Have you or

20  has a family member or close friend ever been a witness to or

21  a victim of a crime?

22          You said:  Yes, my brother was beaten up and robbed.

23  My nephew was beaten up and robbed.  Both incidents were on

24  the streets walking.

25          In other words, they were mugged on the street?

1          PROSPECTIVE JUROR NO. 141:  Right.

2          THE COURT:  I see.

3          And were the police informed?

4          PROSPECTIVE JUROR NO. 141:  Yep.

5          THE COURT:  And were you satisfied with the

6    assistance that law enforcement provided or were they?

7          PROSPECTIVE JUROR NO. 141:  I guess so.  I mean a

8    report was filed, but I don't think they ever -- you know, I

9    don't think anybody was ever found or charged.

10         THE COURT:  There is a question here:  The charges

11   in this case involve allegations, among other things, of sex

12   trafficking, forced labor, child pornography and child

13   exploitation.  Is there anything about the nature of these

14   allegations that would make the difficult for you to be fair

15   and impartial?

16         You said:  Yes, and then you said child pornography

17   and exploitation are tough to listen to and stay impartial.

18         Is that right?

19         PROSPECTIVE JUROR NO. 141:  (Nodding.)

20         THE COURT:  So this is in tandem with your other

21   answer, and the question is:  Where these are the types of

22   charges, as difficult as they are, could you try to listen and

23   be fair and examine the evidence with your fellow jurors to

24   reach a verdict, either an acquittal or guilty beyond a

25   reasonable doubt?  Is that possible?

1      PROSPECTIVE JUROR NO. 141:  I suppose it's possible.

2      THE COURT:  Well, there will be twelve of you, you

3  will not be alone.  You are sitting here alone answering the

4  question about, it's basically hypothetical, although it's

5  real.  Meaning, I don't know what the evidence is in the case,

6  I do know that the twelve jurors will have to grapple with

7  that.  And that is really the issue here, whether you can, in

8  good faith, address those kinds of questions as a member of a

9  twelve-member jury?

10     PROSPECTIVE JUROR NO. 141:  I think I can try.  But

11 like I said earlier, I think it's -- it's -- those particular

12 areas, I think, are very tough to --

13     THE COURT:  They are very tough.

14     PROSPECTIVE JUROR NO. 141:  They're very tough to,

15 you know, kind of, I guess, be -- be -- be impartial.  I don't

16 know if that's the right word.

17     THE COURT:  Well, there is a question of being

18 impartial and there is another question, and it is the

19 question of being able to deal with personally having to see

20 these things and hear about them.  All right?  Those are two

21 separate issues.

22     Let's take the issue of being able to sit in court

23 and receive this kind of evidence.  Is that the problem?

24     PROSPECTIVE JUROR NO. 141:  I don't think so.  I

25 don't think that's the problem.

1          THE COURT:  So, let's say you hear the evidence and

2     you conclude that while you've heard this and seen this

3     evidence, which is offensive, basically, all right, that the

4     Government has not proven that this defendant is responsible

5     for doing what was claimed by in the Indictment.  In other

6     words, it may be terrible, but it is not him.

7          Could you fairly and impartially consider whether

8     this defendant is the one who did it under those

9     circumstances, or would you be so overwhelmed by the evidence

10    that you would just want to find somebody and he is the only

11    one available?

12         PROSPECTIVE JUROR NO. 141:  Yeah, I think it's more

13    about, well, you know, for any defendant they are on trial

14    after an Indictment, right, so there is some evidence already

15    that enabled the trial to -- to move forward.  So I just think

16    that the natural reaction, and I'm being honest, right, the

17    natural reaction is that this person, you know, is associated

18    with it in --

19         THE COURT:  Well, there is a different standard for

20    an indictment than there is for a conviction.  For a

21    conviction the evidence has to establish guilt beyond a

22    reasonable doubt --

23         PROSPECTIVE JUROR NO. 141:  Right.

24         THE COURT:  -- which is a very heavy burden for the

25    Government to reach --

1          PROSPECTIVE JUROR NO. 141:  Uh-hum.

2          THE COURT:   -- or to be applied to the Government's

3    evidence.  So, it is really different.

4          The standard for an indictment is probable cause.

5    There is evidence that could lead a jury, that might lead a

6    jury to find someone guilty, but it is not established.  And

7    certainly, there is no defense in the room when this evidence

8    is presented to a grand jury.  So it is a far lesser standard.

9    All it does is permit the case to go forward to the next step

10   and it is not sufficient evidence, generally, to reach the

11   conclusion of guilt beyond a reasonable doubt.

12         But, you are right, there is some evidence that

13   would establish probable cause, that is true.  But if people

14   were jailed, convicted on probable cause, we would have to

15   build hundreds of new jails because probable cause is a much

16   lesser standard.

17         So I am just wondering how we get jurors like you to

18   address the question of guilt beyond a reasonable doubt in

19   difficult cases, unpleasant cases like this, and that's why

20   I'm asking the question.  I wouldn't spend this time unless I

21   felt that you were thoughtful and trying to grapple with what

22   we are trying to grapple with as well.

23         Any thoughts?

24         PROSPECTIVE JUROR NO. 141:  I guess I can always

25   try.

1          THE COURT:  Okay.

2          PROSPECTIVE JUROR NO. 141:  There is a bias, though,

3     there.

4          THE COURT:  Okay.  Any other questions?

5          MR. AGNIFILO:  No, thank you.

6          THE COURT:  All right, thank you very much.  Have a

7     nice day.

8          PROSPECTIVE JUROR NO. 141:  Thank you.

9          (Prospective Juror Number 141 exited the courtroom.)

10         THE COURT:  Motion?

11         MR. AGNIFILO:  Move to strike the juror for cause.

12    The last thing the juror said, Your Honor was very clear on

13    the obligations of the jury.  I think Your Honor spent a lot

14    of time trying to work with this juror.  The last thing she

15    did is she looked right in our direction and she said, "There

16    is a bias, though."  That was the last thing she said.  And

17    this is a juror who said she would try.  She said it was

18    possible, but she never gave the Court the assurance that the

19    Court needs and her closing remarks was:  "There is a bias."

20         MS. PENZA:  Your Honor, the Government objects to

21    her being stricken for cause.  She did repeatedly say that she

22    would try to be fair.  I think this is the case where a lot of

23    people have a natural bias towards the charges.  Additionally,

24    some of her answers are belied by her questionnaire.

25         So I think there are some instances where she is

Prospective Juror Number 141                 368

1   just trying not to serve on this jury.  And so, for example,

2   she raised the indictment point with Your Honor, but we

3   actually have a question about that, Question Number 81.  And

4   she specifically said she could follow the rule of law, that

5   an indictment may not be considered by you as evidence.  And

6   said, I've been on a grand jury before.  So I understand the

7   indictment process.

8           So I think given the totality of your questioning,

9   there isn't a basis to strike her for cause.

10          THE COURT:  Well, what about her statement at the

11  very end, you know, admitting that there is some sort of a

12  bias?  I mean how do you grapple with that?

13          MS. PENZA:  I think that a lot of jurors have

14  biases.  I think all of us have biases, and so I think that

15  when she says she'll try to be fair, that is what we expect of

16  jurors.

17          MR. AGNIFILO:  If I could.  The jurors that have

18  made the cut have said at one point or another, I'll put all

19  that aside and I'll listen to the evidence and I'll make a

20  decision based on the evidence.  This juror has never said

21  that.

22          MS. PENZA:  She has on her questionnaire, Your

23  Honor.

24          THE COURT:  I will look over the transcript.

25          142?

SAM      OCR      RMR      CRR      RPR

Prospective Juror Number 141                    369

1          THE COURTROOM DEPUTY 142.  That is the last one.

2          (Pause.)

3          (Prospective Juror Number 142 entered the

4    courtroom.)

5          THE COURT:  Please be seated, sir.  Good afternoon.

6          PROSPECTIVE JUROR NO. 142:  Good afternoon.

7          THE COURT:  You are Juror Number 142?

8          PROSPECTIVE JUROR NO. 142:  Yes.

9          THE COURT:  Okay.  And you work full-time?

10         PROSPECTIVE JUROR NO. 142:  Yes.

11         THE COURT:  And you're a student?

12         PROSPECTIVE JUROR NO. 142:  Yes, I'm doing grad

13   school online.

14         THE COURT:  Online, okay.

15         PROSPECTIVE JUROR NO. 142:  Yes.

16         THE COURT:  And you work for a company.  Do you know

17   what their policy is about paying for jury duty?

18         PROSPECTIVE JUROR NO. 142:  They pay for it.

19         THE COURT:  All of it?

20         PROSPECTIVE JUROR NO. 142:  Yes.

21         THE COURT:  You indicated that you have friends or

22   relatives who work for the Government, someone with DHS,

23   someone with NYPD, another person -- your uncle is retired

24   from NYPD, right?

25         PROSPECTIVE JUROR NO. 142:  Yes.

Prospective Juror Number 141                   370

1           THE COURT:  Would that have any effect on your

2    ability to consider the testimony law enforcement agents, give

3    them any extra consideration?

4           PROSPECTIVE JUROR NO. 142:  No.

5           THE COURT:  There may be evidence in this case about

6    people engaged in relationships with multiple sexual partners.

7           Would hearing about that type of evidence affect

8    your ability to serve as a fair and impartial juror in this

9    case?

10          PROSPECTIVE JUROR NO. 142:  No.

11          THE COURT:  Well, you said yes on the questionnaire.

12   Let me just tell you what you said.

13          Engaging in multiple sexual partners goes against

14   what I believe in and/or biased to a -- I am more -- I believe

15   in -- I am more biased toward a monogamous relationship.

16          PROSPECTIVE JUROR NO. 142:  Uh-hum, yeah.

17          THE COURT:  That is your personal view?

18          PROSPECTIVE JUROR NO. 142:  Yeah, that's the

19   personal view; yes.

20          THE COURT:  And would you be able to be fair and

21   impartial in listening to evidence of a different type,

22   meaning, you know, a person who has more than one sexual

23   partner?

24          PROSPECTIVE JUROR NO. 142:  I don't have any issues

25   with that, with listening, no.

Prospective Juror Number 141                    371

1          THE COURT:  Well, it means considering evidence that

2     is presented and weighing that evidence and determining

3     whether any of that evidence is relevant to your job in fact-

4     finding as a juror?  Can you do that?

5          PROSPECTIVE JUROR NO. 142:  I have no issues with

6     that.

7          THE COURT:  Pardon?

8          PROSPECTIVE JUROR NO. 142:  No issues.

9          THE COURT:  Any questions?

10         MR. AGNIFILO:  Nothing, Judge.

11         THE COURT:  Any questions?

12         MS. PENZA:  No, Your Honor.

13         THE COURT:  Okay, thank you very much.  Thanks for

14    coming in.

15         PROSPECTIVE JUROR NO. 142:  Thank you.

16         THE COURT:  Sorry it's so late.

17         PROSPECTIVE JUROR NO. 142:  Thank you.

18         THE COURT:  Have a good day.

19         PROSPECTIVE JUROR NO. 142:  You, too.

20         (Prospective Juror Number 142 exited the courtroom.)

21         MR. AGNIFILO:  No motion from us.

22         THE COURT:  No motion.

23    So 142 any motion?

24         MS. PENZA:  No, Your Honor.

25         THE COURT:  All right, 142 is approved.  (Continued.)

SAM      OCR      RMR      CRR      RPR

Jury selection                                    372

1   (Continuing.)

2           THE COURT:  What are the numbers of those other two

3   people?

4           THE COURTROOM DEPUTY:  131 and 140.

5           THE COURT:  Now, can I just ask about Juror No. 74.

6   I think we struck Juror No. 74.  Let's double check.  What was

7   that one?

8           MS. PENZA:  She has the hip injury, Your Honor.

9           THE COURT:  I think so.  Let's just check our files.

10          MR. AGNIFILO:  Our records show that we struck that

11  juror because of the hip.

12          THE COURT:  Yes, okay.

13          (Pause in proceedings.)

14          THE COURT:  Please be seated.  I'm Judge Garaufis.

15  Welcome.  We are following up with questions based on your

16  questionnaires and we will try to be efficient at this late

17  hour.  And you are here with, at the near table, the assistant

18  U.S. attorneys trying this case, Moira Penza, Tanya Hajjar and

19  Mark Lesko and at the far table, the defendant, Keith Raniere

20  and his attorneys Mark Agnifilo, Teny Geragos, Paul

21  DerOhannesian and Danielle Smith.  And I just want you to know

22  that Mr. Keith Raniere is the only defendant who will stand

23  trial before this jury that is being selected.  Please do not

24  speculate as to why this is the case.  And I remind you that

25  it is very important that you follow my instruction not to

Jury selection                                          373

1   discuss the case with anyone, not your family or friends or

2   business associates and not your fellow jurors.  Also you must

3   not read, listen to, watch or access any accounts of this case

4   on any form of media; newspapers, TV, radio, podcasts or the

5   internet.  Don't research or seek outside information about

6   any aspect of the case.

7          Please do not communicate with anyone about the case

8   on your phone whether through e-mail, text messaging or any

9   other means, through any blog or website or by way of any

10  social media including Facebook, Twitter, Instagram, YouTube

11  or other similar sites.  You must not consider anything you

12  may have read or heard about the case outside of this

13  courtroom, whether you read it before or during the voir dire,

14  meaning the jury selection process.  Do not attempt any

15  independent research or investigation about the case.  Do not

16  visit any of the locations identified in the questionnaire or

17  discussed during the course of jury selection.  When you're in

18  the jury room, while waiting to be interviewed in the future,

19  if that happens, do not discuss the case then.

20         So I want to give you some ideas of the schedule.

21  The schedule is that the trial is expected to begin on

22  Tuesday, May 7th and it will last up to six weeks.  The Court

23  will provide a schedule of trial days before the trial starts

24  so you know what days you are on trial and what days you are

25  off.  I would like you to continue to call in to the jury

Prospective Juror No. 131                        374

1    information phone line as you were instructed by the jury

2    clerk to do.  So we thank you for your attention.

3              So, now, Juror No. 131, I want you to remain in the

4    room and you will sit at that first chair with the microphone

5    and Juror No. 140, as soon as we're done asking questions of

6    Juror No. 131, we will call you in and ask you questions as

7    well.

8              (Prospective Juror No. 140 exits.)

9              THE COURT:  So you are Juror No. 131?

10             PROSPECTIVE JUROR:  Yes, Your Honor.

11             THE COURT:  So, tell me, you indicated that you have

12   two children; right?

13             PROSPECTIVE JUROR:  Yes.

14             THE COURT:  17 and 15?

15             PROSPECTIVE JUROR:  Yes.

16             THE COURT:  And they go to school?

17             PROSPECTIVE JUROR:  Yes.

18             THE COURT:  High school?

19             PROSPECTIVE JUROR:  They go to Arch Bishop Molloy

20   High School.

21             THE COURT:  That's wonderful.

22             PROSPECTIVE JUROR:  Thank you.

23             THE COURT:  Very fine school?

24             PROSPECTIVE JUROR:  Thank you.

25             THE COURT:  In Queens?

1          PROSPECTIVE JUROR:  Yes.

2          THE COURT:  And you indicated that you suffer from

3    anxiety?

4          PROSPECTIVE JUROR:  I do.

5          THE COURT:  How does that condition present, as they

6    say in the medical business?

7          PROSPECTIVE JUROR:  For instance, I was having it in

8    the room sitting waiting there to come in because I've been

9    here since, like, 2:15.

10         THE COURT:  Yes.

11         PROSPECTIVE JUROR:  And from time to time I would

12   take a Xanax or if I want I can go on Lexapro, but I choose

13   not to so I take as needed.

14         THE COURT:  I see.  My question is, obviously, you

15   know, serving as a juror is a big responsibility and I am

16   just -- let me ask this -- you are -- you are employed

17   full-time for a bank.  Do you know what their policy is about

18   paying you for your jury duty?

19         PROSPECTIVE JUROR:  I asked and I was told that they

20   will pay for it.

21         THE COURT:  Okay.  Do you a concern about serving on

22   a jury?

23         PROSPECTIVE JUROR:  I do --

24         THE COURT:  Based on your anxiety?

25         PROSPECTIVE JUROR:  Yes.  I do have a concern based

```
                          Sidebar                          376
```

1   on my anxiety is one because sometimes I feel like I can pass

2   out and also because I'm a single parent and I have both

3   children full custody.  So that would be -- I don't know if I

4   would be able to stay away from them for that full length of

5   time.

6            THE COURT:  And what are your hours at the bank?

7            PROSPECTIVE JUROR:  It's 7:30 to 4:30.

8            THE COURT:  And you live in Queens?

9            PROSPECTIVE JUROR:  I live in Queens and I'm, like,

10   five minutes away from work.

11            THE COURT:  Are there other questions?

12            MR. AGNIFILO:  Nothing from us.

13            MS. PENZA:  Your Honor, may we have a brief sidebar?

14            THE COURT:  Yes.  Let's have a sidebar

15            (Sidebar held outside of the hearing of the

16   courtroom.)

17            THE COURT:  Yes, ma'am.

18            MS. PENZA:  Yes, Your Honor.  So I don't believe

19   that her concerns regarding her children are a hardship given

20   their ages and it's not that significant given the length of

21   the day.

22            THE COURT:  They walk to school probably.

23            MS. PENZA:  That's what it sounds like, Your Honor.

24   I think her anxiety is a concern, but again it seems like it's

25   something she has managed.  She has a full-time job.  She has

Sidebar                                                    377

1   medication that she takes so it's not clear to the Government

2   that that's not something that could be managed during the

3   course of the trial, if there could be accommodations made if

4   she needs but if it's just a matter of taking her medication

5   or something else but it doesn't feel particularly tied to

6   this case.

7              THE COURT:  Do you think I should get a doctor's

8   note?  I'm serious.  I'm not being flippant about it.

9              MS. PENZA:  Perhaps she would like to have a sidebar

10  with you to kind of explore it more but right now I don't feel

11  we have a real feel of how the anxiety --

12             THE COURT:  Let me have a sidebar with her and try

13  to get a measure of the level and depth of her anxiety.

14  Anyone who has had anxiety knows that medicine is one thing

15  but having a deep anxiety and the pressure that may be -- it

16  may be one thing to be a customer service representative at

17  Valley National Bank and another thing to be here in the

18  pressure cooker.

19             MS. PENZA:  That may very well be.  But I just don't

20  think the record is there right now.

21             (Counsel leaves sidebar.)

22             THE COURT:  Well, you sit down and I will ask her to

23  come up.  Ma'am?

24             (Sealed sidebar held outside of the hearing of the

25  courtroom.) (Continued on next page.)

Sidebar - sealed                    378

SN          OCR          RPR

se



Sidebar - sealed                                           380



20    (Sidebar ends.)

21    (Continued on next page.)

SN        OCR        RPR

Prospective Juror No. 131                    381

1              THE COURT:  Do we have questions on any other
2      subject?
3              MR. AGNIFILO:  Nothing.
4              MS. PENZA:  No, Your Honor.
5              THE COURT:  Okay.  Thank you very much for coming
6      in.  Have a nice afternoon.
7              PROSPECTIVE JUROR:  Thank you so much, thank you.
8              (Prospective juror exits.)
9              THE COURT:  The juror's anxiety extends beyond just
10     her own situation in a given location.  She had anxiety
11     sitting in an empty room.  If she's sitting in that jury room
12     with 17 other people, my guess is that it's going to be
13     elevated to a level that is unbearable.  Plus, she has a
14     daughter who is -- she drives the children to school because
15     she doesn't want them taking public transportation to get to
16     Molloy and her daughter -- she's helping her daughter study
17     for the SATs and she's anxious about that and she's a single
18     parent.  I think that she would be -- she would have problems
19     serving as a juror.  She didn't really understand how it
20     works.  How would it work?  Would I be at home?  That was her
21     question, would she be at home.  I said, no, you will be here.
22     Well, she wasn't too enthusiastic facing being in a small room
23     and this jury will be having lunch together in a small room.
24     So I can just imagine how she would be able to handle that.
25     So does anyone have a motion?

Prospective Juror No. 131                382

1          MR. AGNIFILO:  We would move to strike her for cause

2    for all of those reasons.

3          MS. PENZA:  No objection, Your Honor.

4          THE COURT:  Juror No. 131 is stricken for cause.

5

6          (Continued on the following page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

SN        OCR        RPR

1    (Continuing.)

2             THE COURT:  The last person is 140.

3             (Prospective Juror Number 140 entered the

4    courtroom.)

5             THE COURT:  Please be seated, ma'am.

6             You are Juror Number 140, are you not?

7             PROSPECTIVE JUROR NO. 140:  Yes.

8             THE COURT:  Okay.  You indicated that you have back

9    problems, is that right?

10            PROSPECTIVE JUROR NO. 140:  Yes.

11            THE COURT:  Tell us what kind of back problems you

12   have.

13            PROSPECTIVE JUROR NO. 140:  I can't be sitting for

14   long period of time.  My doctor gave me a prescription stating

15   my problems.

16            THE COURT:  You have it with you?

17            PROSPECTIVE JUROR NO. 140:  Yes.

18            THE COURT:  Can you provide it to me, please?

19            THE COURTROOM DEPUTY:  Thank you.

20            THE COURT:  It would be nice if doctors would write

21   a prescription that judges could read.

22            PROSPECTIVE JUROR NO. 140:  He has a sloppy

23   handwriting.

24            THE COURT:  But if he wants me to consider it, then

25   he has to write it in English and prove that he actually took

Prospective Juror Number 140                    384

1   penmanship in the third grade.  I don't know what this says.

2   I really do not.  This is unacceptable to me.

3           PROSPECTIVE JUROR NO. 140:  Okay.

4           THE COURT:  You wasted your time going to this

5   doctor to get a prescription.  He says you have upper back

6   pain.  You told me that.  That much I know from you.

7           This doctor is on Central Park South?

8           PROSPECTIVE JUROR NO. 140:  Yes.

9           THE COURT:  Is this your regular doctor?

10          PROSPECTIVE JUROR NO. 140:  Yes, I go every month

11  for him.

12          THE COURT:  What kind of a doctor is he, apart from

13  a sloppy writer?

14          PROSPECTIVE JUROR NO. 140:  He's a pain management

15  doctor.

16          THE COURT:  Pain management?

17          PROSPECTIVE JUROR NO. 140:  Uh-hum.

18          THE COURT:  How long have you been going to this

19  doctor?

20          PROSPECTIVE JUROR NO. 140:  About two years already.

21          THE COURT:  I see.  Have you had surgery for your

22  back?

23          PROSPECTIVE JUROR NO. 140:  No.

24          THE COURT:  Do you do exercises?

25          PROSPECTIVE JUROR NO. 140:  No, I go for physical

Prospective Juror Number 140                385

1   therapy.

2           THE COURT:  Physical therapy.  Well, don't they give

3   you exercises at physical therapy?

4           PROSPECTIVE JUROR NO. 140:  Yes.

5           THE COURT:  Do you use them?

6           PROSPECTIVE JUROR NO. 140:  Yeah.  I walk, but I

7   can't sit for a long period of time because my back starts

8   hurting me.

9           THE COURT:  That is not my question.

10          The physical therapist gave you exercises to do for

11  your back.

12          PROSPECTIVE JUROR NO. 140:  They do massages.  They

13  do acupuncture.

14          THE COURT:  But they don't give you exercises to do

15  every day?

16          PROSPECTIVE JUROR NO. 140:  No.

17          THE COURT:  Get a new doctor.

18          First of all, this is sloppy work.  There is no

19  excuse for this.  Did you tell him you had to give this to a

20  judge?

21          PROSPECTIVE JUROR NO. 140:  Yes, I did.

22          THE COURT:  It is unprofessional.  I am not even

23  going to mention his name.

24          And you take oxycodone?

25          PROSPECTIVE JUROR NO. 140:  Yes.

1          THE COURT:  How long have you been taking that?

2          PROSPECTIVE JUROR NO. 140:  About two years.

3          THE COURT:  Did this doctor give you oxycodone?

4          PROSPECTIVE JUROR NO. 140:  Yes.

5          THE COURT:  You have three children?

6          PROSPECTIVE JUROR NO. 140:  Yes.

7          THE COURT:  I am sorry you have this back pain,

8    believe me.  As someone who has experienced acute back pain, I

9    empathize with you.

10          But you are a paraprofessional, what does that mean?

11          PROSPECTIVE JUROR NO. 140:  That means I work for

12   the Board of Ed. in the school and I work with kids with

13   disabilities.

14          THE COURT:  Well, good for you.

15          PROSPECTIVE JUROR NO. 140:  Thank you.

16          THE COURT:  And do you have to take days off because

17   of your back?

18          PROSPECTIVE JUROR NO. 140:  Yes, sometimes I do.

19   Sometimes there's days I can't get out from my bed because of

20   the pain.

21          THE COURT:  Any questions from anyone?

22          MR. AGNIFILO:  Could we have a very quick sidebar,

23   Judge?

24          THE COURT:  Yes.

25          (Sidebar held outside the hearing of Prospective

SAM      OCR      RMR      CRR      RPR

1    Juror No. 140.)

2          THE COURT:  Look at this, I am not kidding.  This

3    part says she has upper back pain, and then what's this?

4    (Indicating.)  This is a doctor who is prescribing oxycodone

5    for two years.  He is obviously part of the problem.  He's on

6    Central Park South.

7          MR. LESKO:  Low blood pressure and can't sit or

8    stand more than 45 minutes without changing position.  And

9    then I'm done.

10          THE COURT:  That was the test.  He passed the test,

11    so he got the job.

12          MR. AGNIFILO:  He reads sloppy doctor.  It is a

13    dialect.

14          THE COURT:  Nice work.

15          MR. LESKO:  Thank you.

16          MR. AGNIFILO:  You might not speak, but you really

17    come in handy.

18          MR. LESKO:  I spoke today.

19          THE COURT:  So I think she actually has a

20    disability.

21          MR. AGNIFILO:  Yes.

22          THE COURT:  I am looking for guidance here from

23    counsel.

24          MR. AGNIFILO:  I mean if the Court is inclined to

25    ask her the direct question, I mean this is what you would

1  have to do:  You would have to be here at 9:30.  You would

2  have to sit until 11:30.  You know, can you do that?

3          MS. PENZA:  If I may, Your Honor.

4          I think you've asked -- you've given the other

5  jurors who have expressed similar pain, back pain, like that

6  they would be allowed to stand and things like that and see

7  how she responds.

8          THE COURT:  I will ask.

9          MS. PENZA:  Thank you, Your Honor.

10          THE COURT:  Are there other questions for this

11  juror?

12          MR. AGNIFILO:  No, that's it.

13          MS. PENZA:  I don't think so.

14          THE COURT:  All right, thank you.  Thank you.

15          (Sidebar concluded.)

16          (In open court - Prospective Juror No. 140 present.)

17          THE COURT:  So let me just explain to you how a

18  trial works so you understand this.

19          PROSPECTIVE JUROR NO. 140:  Okay.

20          THE COURT:  The trial will begin around 9:30 each

21  day.  At about 11:15 we take a break, like a 15-minute break;

22  and then at 1:00 there is an hour for lunch.  Then we start

23  again at 2:00.  And then at 3:30 or so or 3:15, 3:30 we take

24  another 10, 15-minute break; and then we end around 4:30,

25  between 4:30 and 5:00.

1           You would be able to get up and stand.  You do not

2   have to sit all the time.  In fact, we could arrange for you

3   to sit in the last row so that when you got up, you wouldn't

4   be in anybody's way.  So you could stretch, and if you needed

5   to leave the room, even if we were having testimony, we would

6   stop.  You could leave the room and stretch and come back and

7   we would wait for you.

8           PROSPECTIVE JUROR NO. 140:  Okay.

9           THE COURT:  So do you think that that would work?

10          PROSPECTIVE JUROR NO. 140:  Yes.  I thought I had to

11  sit for long periods of time.  That could work.

12          THE COURT:  Well, I don't sit that long.  I get up,

13  I stand.  In fact, I tell the jurors at the beginning of the

14  trial I am going to get up from time to time, that's because

15  of my back, but I don't tell them that, but I will tell you

16  that.

17          PROSPECTIVE JUROR NO. 140:  Okay.

18          THE COURT:  I get up and I say if I get up, don't

19  read anything into that except I got up.  It is not about what

20  anyone is saying or doing or whatever, it's just that I get up

21  and I sit down.  I get up and I sit down.  Because sometimes I

22  have to stretch my back out.

23          PROSPECTIVE JUROR NO. 140:  Okay.

24          THE COURT:  So would you be able to do that?

25          PROSPECTIVE JUROR NO. 140:  Yes.

1           THE COURT:  Okay.

2           Other questions for this juror?

3           Okay.  Have a nice day.

4           PROSPECTIVE JUROR NO. 140:  Okay, so what I do next?

5    I'm sorry.

6           THE COURT:  Just call on the phone as you've been

7    doing.

8           PROSPECTIVE JUROR NO. 140:  Every day or do I call

9    on Thursday?

10          THE COURT:  Check with Mr. Reccoppa, I don't know

11   the details.

12          PROSPECTIVE JUROR NO. 140:  Okay.

13          THE COURT:  Okay, thank you.  Have a lovely day.

14          PROSPECTIVE JUROR NO. 140:  Okay.

15          (Prospective Juror Number 140 exited the courtroom.)

16          THE COURT:  Is there any motion?

17          MR. AGNIFILO:  No, Judge.

18          THE COURT:  All right, the juror is approved.

19          Have we received the information for tomorrow?

20          The defense has provided tomorrow's information.

21          MR. AGNIFILO:  I believe we have, yes.

22          MS. PENZA:  And we will follow up as soon as we get

23   that.

24          THE COURT:  You were very good last evening.

25          MS. PENZA:  Very good, Your Honor, so I think we

Proceedings                                                      391

1   will be able to follow the same schedule tonight.

2           THE COURT:  Okay.

3           MS. PENZA:  Around the same timeframe, just look at

4   the back.

5           THE COURT:  Okay.  Is there anything else for this

6   afternoon?

7           We are only going to have about 33 tomorrow, I

8   think.

9           MR. AGNIFILO:  Does the Court have a record of how

10  many approved jurors we have?

11          THE COURT:  Altogether?

12          MR. AGNIFILO:  Yes, for both days.

13          THE COURT:  I am not sure.

14          MS. PENZA:  Your Honor, if I may, I believe we have

15  39, and then there is -- and there are four that are coming

16  back with whether their employers are going to pay.

17          THE COURT:  Yes.

18          MS. PENZA:  So I am not sure if defense counsel is

19  willing to join in the motion, we talked about it earlier, but

20  the Government is wondering if rather than planning for

21  Thursday this week, whether we could plan for just tomorrow,

22  hope that we will reach a number of jurors where the Court is

23  satisfied that we have enough of a buffer over the 40; and

24  then if we don't reach that, maybe come back on Monday and do

25  another set, if necessary.

Proceedings                                               392

1        THE COURT:  Would you like to do that?

2        MR. AGNIFILO:  I'm open to it.  I mean whatever is

3   easier for the Court.

4        I mean I think our hope, and I don't know that we're

5   going to get there, is that we would get so close to 60 by

6   Wednesday that we wouldn't have to come back Thursday, but I

7   don't know that that is going to happen.

8        THE COURT:  Let me look at the numbers back in

9   chambers and we will talk in the morning.

10       MS. PENZA:  Okay; thank you, Your Honor.

11       MR. AGNIFILO:  We are open to anything that

12  accommodates the Court, and we are happy to accommodate the

13  Government as well.

14       MS. PENZA:  Well, it is just a matter of if we don't

15  have that happening on Thursday, I know Your Honor doesn't

16  like receiving the requests super late and what questions are

17  being followed up on and those sort of things.  And so given

18  that there are a number of other things on the schedule, if we

19  think that we are going to be very close tomorrow, the

20  Government is just asking that rather than planning Thursday

21  as a backup, we plan for next week as a backup.

22       THE COURT:  All right , let me look at the numbers.

23  We do have a number of jurors who are supposed to get back to

24  us, and my guess is that most of them will tell us that they

25  are only going to get paid for a week or two.  So we may not

SAM     OCR     RMR     CRR     RPR

Proceedings                                      393

1    be as far along.  I mean this afternoon we had, including the

2    ones -- I have twelve here.  A few of them have to get back to

3    us with whether their employers pay them for the entire jury

4    period, the entire trial.

5               So I wouldn't count on that number as being rock

6    solid.

7               MS. PENZA:  Of course, Your Honor.

8               THE COURT:  Okay.

9               MS. PENZA:  Thank you.

10              THE COURT:  All right, thank you everybody.

11              MR. AGNIFILO:  Thank you, Your Honor.

12

13     (Matter adjourned to Wednesday, April 24, 2019 at 9:30 a.m.)

14

15

16                              ooo0ooo

17

18

19

20

21

22

23

24

25

SAM        OCR        RMR        CRR        RPR