394

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X
UNITED STATES OF AMERICA,     : 18-CR-0204(NGG)
                              :
          Plaintiff,          :
                              :
     -against-                : United States Courthouse
                              : Brooklyn, New York
KEITH RANIERE,                :
                              :
          Defendant.          : Wednesday, April 24, 2019
                              : 9:30 a.m.

- - - - - - - - - - - - - X

     TRANSCRIPT OF CRIMINAL CAUSE FOR JURY SELECTION
     BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
          UNITED STATES SENIOR DISTRICT JUDGE

               A P P E A R A N C E S :

For the Government: RICHARD P. DONOGHUE, ESQ.
                    United States Attorney
                    Eastern District of New York
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
               BY:  MOIRA KIM PENZA, ESQ.
                    TANYA HAJJAR, ESQ.
                    MARK LESKO, ESQ.
                    Assistant United States Attorney

For the Defendant:  BRAFMAN & ASSOCIATES
                    767 Third Avenue
                    New York, NY 10017
               BY:  MARC A. AGNIFILO, ESQ.
                    TENY ROSE GERAGOS, ESQ

                    DEROHANNESIAN & DEROHANNESIAN
                    677 Broadway, Suite 707
                    Albany, NY 12207
               BY:  PAUL DEROHANNESIAN, ESQ.
                    DANIELLE SMITH, ESQ.

Court Reporter:     SOPHIE NOLAN
                    225 Cadman Plaza East/Brooklyn, NY 11201
                    NolanEDNY@aol.com
Proceedings recorded by mechanical stenography, transcript
produced by Computer-Aided Transcription

SN     OCR     RPR

395

1          (In open court; prospective jurors not present.)

2          THE COURT:  All right.  Appearances, please.

3          MS. PENZA:  Moira Penza, Tanya Hajjar, Mark Lesko

4     for the United States.  Good morning, Your Honor.

5          THE COURT:  Good morning.

6          MR. AGNIFILO:  Good morning, Your Honor.  Marc

7     Agnifilo, Teny Geragos, Paul DerOhannesian and Danielle Smith

8     for Keith Raniere who is now with us in court.

9          THE DEFENDANT:  Good morning, Judge.

10         THE COURT:  Good morning.  Good morning, everybody.

11    Good morning to the deputies.  Good morning.

12         You may be seated.  I just have a question.

13         Have you worked out the issue regarding the

14    individuals who are not in the United States who may be called

15    as witnesses for the defense?

16         MR. AGNIFILO:  We -- I do not see at this point us

17    trying to do Rule 15 depositions or --

18         THE COURT:  Video.

19         MR. AGNIFILO:  -- or video, yes.  The one thing -- I

20    don't see that right now, I don't.  The one thing --

21         THE COURT:  Don't jump me with it like on the last

22    day of your case.

23         MR. AGNIFILO:  I know.  I know.

24         THE COURT:  We need to be prepared and details have

25    to be worked out if they can be worked out and so forth.

1           MR. AGNIFILO:  Right.  I know that.  I know.  It's a

2    complicated -- no, I do, and I don't say this lightly that I

3    don't see doing it right now.  I mean, the one thing that I

4    don't want to have to sign on to unless the Court makes me at

5    this point is, you know, I don't know who their witnesses are

6    and they don't have to tell me and that's all fine, but I

7    don't want to necessarily -- and I would try to get these

8    people here.  I mean, that would be my first choice.  I don't

9    want to have a video.  I don't like video statements because I

10   think the jury thinks it's gimmicky.  If the government puts

11   their witnesses on the witness stand, I want to put my

12   witnesses on the witness stand.

13          So what's more likely, Judge, is if something were

14   to happen, I would try to reach an accommodation with the

15   government where they would let this person travel, but I

16   don't see doing a video statement and I certainly don't see

17   doing Rule 15 depositions.

18          MS. PENZA:  Your Honor, that can't be done during

19   trial.  This idea of they don't know who our witnesses are

20   going to be, they have a general sense of what our case is

21   going to be and what the witnesses are.  We've given all the

22   3500.  I don't think there's a big mystery here that would

23   result in, at the end of day, Mr. Agnifilo needing to say, All

24   of the sudden, we need, we're planning on bringing this

25   person.

1           So that's where we are.  I just don't think that's

2  true, given the back and forth that there's been about this

3  case and about the government's theory about this case.

4  There's more laid out than I think is typical pre trial.

5           THE COURT:  Well, let me just say this.  At this

6  point, the defense doesn't plan to apply for this kind of

7  accommodation.  If you change your mind, do it soon.  That's

8  all I can say, because I do not want to do anything here at

9  the last minute.  This case is complicated enough as it is.

10           Furthermore, I don't know how long the government's

11  case is really going to last.  I don't know if you are going

12  to have a case, if you have a case, how long yours is going to

13  last, and then I have jurors who, you know, are planning to

14  take vacations at the end of June and I am not going to

15  exclude them because we should be able to finish up with one

16  defendant by mid-June and that's my target.

17           MR. AGNIFILO:  I think we should.  And we were

18  talking this morning about, you know, stipulating to

19  custodians.  We don't -- we haven't gotten that evidence yet,

20  but when we do, I'm sure that's something we can work through.

21  I don't think I'm going to make them call records custodians

22  and things like that.

23           THE COURT:  Well, that might shave, you know, three

24  hours off the case.

25           MR. AGNIFILO:  Three hours here, and three hours --

398

1           THE COURT:  I would appreciate that kind of

2    streamlining, don't get me wrong, but it's not a giant time

3    saver I've learned over the last 19 years.

4           MR. AGNIFILO:  No, I agree.

5           THE COURT:  All right?  Okay.  Anything else before

6    we start --

7           MS. PENZA:  No, Your Honor.

8           MR. AGNIFILO:  Nothing from us, Judge.

9           THE COURT:  -- with the jurors?

10           Okay.  Mr. Reccoppa is bringing up the jurors now.

11           MS. PENZA:  Thank you.

12           (Pause.)

13           THE COURT:  Juror 60 and Juror 143 are on their way

14    but they're not here yet and the jury clerk hasn't been able

15    to reach Juror 157 and is still trying.  So we have 14 jurors

16    for this morning thus far and we'll have another two as soon

17    as they arrive.

18           MR. AGNIFILO:  Very good, Judge.

19           (Prospective jurors enter.)

20           THE COURT:  Please be seated, everyone.

21           Good morning, ladies and gentlemen.  I am

22    Judge Garaufis and today we are going to follow up on your

23    answers on your questionnaires.  The parties and the Court

24    have reviewed your questionnaires and we have a few follow-up

25    questions for each one of you.

1              At the time you filled out the questionnaires, you

2    were introduced to the lawyers for the government, Assistant

3    United States Attorneys Moira Penza, Tanya Hajjar and Mark

4    Lesko who are at the near table, and at the far table, the

5    defendant Keith Raniere and his attorneys Marc Agnifilo, Teny

6    Geragos, Paul DerOhannesian and Daniel Smith.

7              I want to advise you that Keith Raniere who is

8    seated at the far table in the sweater and with the

9    open-collared shirt is the only defendant who will stand trial

10   before this jury that's being selected this week.  Please do

11   not speculate as to why this is the case.

12             Let me go over what we are going to do today in a

13   little more detail.  After I have spoken to you as a group, I

14   am going to ask Juror No. 45, all right, you will be

15   questioned first and.  When the other jurors leave, you will

16   sit in that very first seat with the microphone in the first

17   row closest to the Court.  Okay?  And then the other jurors

18   will wait in the jury room that is behind this courtroom.

19             When you go to the jury room -- I am going to talk

20   to you about your responsibility not to discuss the case with

21   anyone -- you are not to discuss the case with anyone else in

22   that room.  In other words, you can talk about anything you

23   want while you are waiting.  You can talk about the Yankees,

24   the Mets, movies you have seen and loved, movies you have seen

25   and hated, the weather, and so on, but do not talk about the

1    case at all.  I appreciate that and so do the parties.

2              So let me remind you that it is extremely important

3    that you follow my instruction that you not discuss the case

4    with anyone, not your family, your friends or business

5    associates and not with each other as jurors and that you

6    refrain from doing this until you have been dismissed from

7    jury service.

8              Now, some of you will be, will have to come back for

9    final decision on the composition of the jury and some of you

10   in the end, when we complete that process, will be dismissed

11   from jury service on this jury, but between now and when your

12   jury service ends, you are not to discuss the case with

13   anyone.  If someone at your office says, Gee, you've been to

14   the courthouse twice, you know, is this about such and such

15   case, I think the answer is, The judge said that we can't

16   discuss any of the details with anyone.  So blame it on me.

17   You're not being rude.  You're just following the Judge's

18   instructions.

19             So that's the way to handle it.  Sometimes that's

20   hard because these are people you work with or they're members

21   of your family or your close friends, but it really is

22   important.  Once you start discussing anything about it, that

23   begets more discussion or questions.  So, please, be very

24   careful about that.

25             In addition, you must not read, listen to, watch or

1    access any accounts of this case on any form of media, whether

2    it's newspaper or TV or radio, podcasts or on the internet.

3    You should not research or seek outside information about any

4    aspect of the case.  Please do not communicate with anyone

5    about the case on your phone, whether through e-mail, text

6    messaging or any other means, through any blog or website or

7    by way of any social media including Facebook, Twitter,

8    Instagram, YouTube or other similar sites.  You must not

9    consider anything you may have read or heard about the case

10   outside of this courtroom, whether you read it before or

11   during the jury selection process.

12          Do not attempt any independent research or

13   investigation about the case.  Do not visit any of the

14   locations identified on the questionnaire or discussed during

15   the course of jury selection.  And as I said, do not discuss

16   the case in the jury room while you are waiting to be

17   interviewed.

18          So now, let me tell you what the schedule is thus

19   far.  The trial would begin on or about Tuesday, May 7th, and

20   will last up to six weeks.  The Court will provide the jurors

21   with a schedule of the trial dates before the trial starts.

22   In other words, the jurors will not have to wonder what days

23   they have to come in and what days they do not have to come

24   in.  It will all be on a chart and each juror will get a copy

25   of that chart at the very beginning of the trial.

Prospective Juror 45                                  402

1           So please continue to call in to the jury

2    information phone line as you have been instructed to do so by

3    the jury clerk.

4           So now, at this point, I am going to ask everyone

5    except Juror No. 45 to retire to the jury deliberation room.

6           All rise for the jurors.

7           (Prospective jurors except Juror No. 45 exit.)

8           THE COURT:  All right.  Thank you.  Everyone may be

9    seated.

10          Well, good morning.

11          THE PROSPECTIVE JUROR:  Good morning.

12          THE COURT:  You are Juror No. 45, are you not?

13          THE PROSPECTIVE JUROR:  I am.

14          THE COURT:  Okay.  So you do a lot of traveling in

15   your job?

16          THE PROSPECTIVE JUROR:  I do.  Yes, I work in PR.

17          THE COURT:  Where?

18          THE PROSPECTIVE JUROR:  In public relations.

19          THE COURT:  Yes.  So tell me about your planned trip

20   for the Memorial Day weekend.

21          THE PROSPECTIVE JUROR:  I'm going to New Orleans for

22   a vacation.

23          THE COURT:  Oh, that's very nice.  What day are you

24   leaving?

25          THE PROSPECTIVE JUROR:  I leave on the 23rd,

Prospective Juror 45                                       403

1    May 23rd.

2            THE COURT:  What day of the week is that?  Is that

3    Thursday?

4            THE PROSPECTIVE JUROR:  I think Thursday.

5            THE COURT:  What time do you leave?

6            THE PROSPECTIVE JUROR:  I printed out my flight.

7            THE COURT:  Okay.

8            THE PROSPECTIVE JUROR:  It's a 2:21 flight.

9            THE COURT:  All right.  Well, I have a few

10   questions.

11           Do you know what your company's policy is about

12   paying you for your jury service?

13           THE PROSPECTIVE JUROR:  I'm not 100 percent sure.

14           THE COURT:  Okay.  Well, I am going to ask you to

15   find out and inform Mr. Reccoppa.  I will give you his phone

16   number.  You can call and if he is not at his desk, you can

17   leave your juror number and advise him what your company's

18   policy is.

19           So if you only receive pay for a week or two and

20   this is a six-week trial, would that create a financial

21   hardship for you?

22           THE PROSPECTIVE JUROR:  No, but being out of work

23   for six weeks would be professionally a hardship for me.

24           THE COURT:  I see.  Okay.

25           THE PROSPECTIVE JUROR:  And I also believe that I

Prospective Juror 45                    404

1  have a professional conflict with the case.  My PR agency is

2  an entertainment agency and we represent Allison Mack so I'm

3  colleagues with her personal publicist.

4            THE COURT:  So have you done any work directly for

5  her?

6            THE PROSPECTIVE JUROR:  I haven't done work directly

7  for her, but the entire agency, we always cover clients for

8  each other and we always work with each other's clients.

9            THE COURT:  Okay.  Well, between now and the time

10  you are excused from jury service, just decline to do any work

11  with her representative or her as long as you haven't been

12  doing work with her directly up to this point.  It is better

13  that you, until we know whether you are going to be on this

14  jury, that you not have any direct contact with her.  In other

15  words, I'm building a firewall for you.  So if anyone in your

16  agency says, We want to you do some work with Allison Mack who

17  is a defendant in the overall case, just indicate the judge

18  said that you shouldn't do that.  Okay?  Leave it at that.

19            THE PROSPECTIVE JUROR:  Okay.

20            THE COURT:  Thank you.

21            Let me ask a few more questions.

22            So you have tickets already for Memorial Day weekend

23  to fly to --

24            THE PROSPECTIVE JUROR:  New Orleans.

25            THE COURT:  New Orleans?

Prospective Juror 45                                        405

 1              THE PROSPECTIVE JUROR:  Yes.

 2              THE COURT:  What airline?

 3              THE PROSPECTIVE JUROR:  JetBlue and I have it

 4   printed out if you wanted to see.

 5              THE COURT:  No, it's all right.

 6              THE PROSPECTIVE JUROR:  I come prepared.

 7              THE COURT:  Now, you indicated that you have someone

 8   close to you who has participated in a self-help program and

 9   that you were asked to, it was a three-day seminar and the

10   people who ran the seminar had her invite you as a friend for

11   the closing ceremony where they promoted their program with

12   you.

13              THE PROSPECTIVE JUROR:  Right.  It was Landmark

14   Forum.

15              THE COURT:  Landmark Forum.  And you declined?

16              THE PROSPECTIVE JUROR:  Well, no.  I went -- I

17   didn't know what it was.

18              THE COURT:  You declined to join the program?

19              THE PROSPECTIVE JUROR:  Yes, for sure.

20              THE COURT:  It wasn't to your liking?

21              THE PROSPECTIVE JUROR:  Not at all.  I, I thought --

22   I thought it was dumb.

23              THE COURT:  I was going to ask you how would you

24   describe it and I got my answer.

25              Question:  Have you or anyone else close to you ever

CMH      OCR      RMR      CRR      FCRR

Prospective Juror 45                                    406

1   been the victim of sexual assault including date rape?  You

2   answered yes and you said:  Sexually assaulted in a bar

3   bathroom.

4              You or someone you know?

5              THE PROSPECTIVE JUROR:  Me.

6              THE COURT:  Okay.  And did you report it?

7              THE PROSPECTIVE JUROR:  No, I didn't.

8              THE COURT:  How long ago was this?

9              THE PROSPECTIVE JUROR:  Over ten years ago.  I was

10  in my 20s.

11             THE COURT:  Here in New York?

12             THE PROSPECTIVE JUROR:  Yes.

13             THE COURT:  Well, you answered this question:  Are

14  you someone who generally makes up their mind right away or do

15  you like to wait and hear the entire story?  You answered:

16  I'd like to say that I wait but can be impulsive.

17             THE PROSPECTIVE JUROR:  Yes.  I mean, I work in an

18  industry that moves very quickly so making quick decisions is

19  what I'm doing on a daily basis.

20             THE COURT:  Well, if you are a juror, the Court will

21  ask you not to make up your mind until you have heard all the

22  evidence.  Do you think you can follow the Court's

23  instruction?

24             THE PROSPECTIVE JUROR:  I can try.

25             THE COURT:  Now, you say you have read newspaper

```
                          Sidebar                        407
```

1    articles about Allison Mack in connection with this case?

2              THE PROSPECTIVE JUROR:  I have.

3              THE COURT:  Now, Ms. Mack isn't going to be on trial

4    in this particular trial but would you be able, if information

5    is developed regarding Ms. Mack during the trial in connection

6    with Mr. Raniere, would you be able to set aside anything you

7    have heard or read and just consider the evidence as presented

8    here in court and use that for making your decision as a

9    juror?

10             THE PROSPECTIVE JUROR:  I mean, I'd like to say so

11   but, again, as I mentioned, she's a client of our agency and,

12   you know, working with talent, that's, our first instinct is

13   to protect our talent and to -- I don't know.  Honestly, I'm

14   not sure.

15             THE COURT:  Let's have a side bar.

16             (The following occurred at sidebar.)

17             THE COURT:  Yes?

18             MR. AGNIFILO:  I don't want a juror who's going to

19   professionally protect someone who may be a government

20   cooperator.  That's not an appropriate juror for this case.

21             MS. PENZA:  I don't think -- I don't know what she

22   actually means by that.  She seems to have had absolutely no

23   contact with Ms. Mack and there is no, like, professional

24   protection of her in her role as a juror in a case against

25   only Keith Raniere.

```
                        Sidebar                        408
```

1           THE COURT:  I want to cut to the chase.

2           MS. PENZA:  The question is whether she's going to

3   be biased.

4           THE COURT:  I don't know that this is about bias,

5   frankly.  I think this is about she doesn't want to be a juror

6   on this case and so, you know, she said the words that, you

7   know, she's protecting Ms. Mack.  Why is she protecting

8   someone who isn't her client?

9           MS. PENZA:  We don't -- exactly, Your Honor.

10  Someone that doesn't believe --

11          THE COURT:  I think the issue is whether the mere

12  fact that she would be in the jury room with other people and

13  be in a position to talk about Ms. Mack, should Ms. Mack be a

14  cooperator or should she be forced to, you know, if she is

15  subpoenaed to testify, whatever it happens to be, that it is a

16  risk that we take having her in the jury room at all because

17  she is a loose cannon in that situation and we don't control

18  what goes on in the jury room, you know, and she seems

19  reticent to follow the rules.  I asked her whether she can be

20  put it aside and she basically said, you know, I can't promise

21  you anything, Judge, I can't promise that I'll follow the

22  instructions.  That's the problem here.

23          MS. PENZA:  She said she would try which is what

24  other jurors have said as well.

25          THE COURT:  I know, but they're not working for an

Prospective Juror 45                                      409

1    agency that represents this talent is what I'm saying.

2              MR. AGNIFILO:  Her answer to Your Honor's question

3    is that she protects her talent and when you said can you

4    follow the rules, she said, Well, we protect our talent.

5              THE COURT:  Yes, I know.

6              Anything else now that you have helped me so much

7    with this?

8              MS. PENZA:  No, Your Honor.

9              THE COURT:  Thank you.

10             (In open court; side bar ends.)

11             THE COURT:  Now, this case is likely to receive

12   ongoing media attention and the Court wants to make sure that

13   the case is decided solely on the evidence presented in the

14   courtroom and not based on influences outside the courtroom.

15             The Court will be advising you daily that you avoid

16   reading about the case on the internet, newspaper, or

17   listening to any radio or TV reports about the case.  The

18   Court will further advise you not to discuss the case with

19   family or friends during the trial or with your fellow jurors

20   until it is time to deliberate.  Would these restrictions pose

21   any difficulty for you?  You said:  Yes, I work in PR, part of

22   my job is to be up to date on pop culture and news.

23             THE PROSPECTIVE JUROR:  Yes.  I mean, I read the

24   newspaper every day.  It's part of my job.  It's to be in the

25   know what's going on in the world.

THE COURT: Well, if you're a juror, you will certainly know what's going on in this case without reading the newspaper because you'll be in the courtroom every day. Do you have enough self control to, if you see a headline in the New York Post or the Daily News or Variety or whatever you read to just go past it and read the next story?

THE PROSPECTIVE JUROR: I'd like to say so.

THE COURT: Well, I don't want you to like to do anything, ma'am. I want to know whether you will follow the Court's instructions. It's a very simple question.

THE PROSPECTIVE JUROR: I mean I, I believe so.

THE COURT: What's the problem?

THE PROSPECTIVE JUROR: I believe so.

THE COURT: You believe so or you will do so? You see, there's a difference. Look, we're not at a dinner party here. All right? We're not at a bar. We are in a courtroom. This man is accused of serious crimes and I need every juror to follow the rules.

Have you been a juror before?

THE PROSPECTIVE JUROR: I have.

THE COURT: Yes, what was the context of that?

THE PROSPECTIVE JUROR: It was a car accident. It was a very small case.

THE COURT: Okay. But every case is important to the people who are parties to the case --

Prospective Juror 45                    411

1        THE PROSPECTIVE JUROR:  Yes.

2        THE COURT:  -- as you are well aware.  So don't tell

3    me what the verdict was, but were you on a jury that reached a

4    verdict?

5        THE PROSPECTIVE JUROR:  Yes.

6        THE COURT:  Okay.  So you know how it works.

7        THE PROSPECTIVE JUROR:  Yes, of course.

8        THE COURT:  You're not new to this.  So I'm being

9    specific in asking you will you follow the Court's

10   instructions as to that particular issue and everything else I

11   would add, but will you follow the Court's instructions?

12       THE PROSPECTIVE JUROR:  Yes.  I mean, there's an

13   element of human nature and curiosity but yes.

14       THE COURT:  Well, you see, you know, you say "yes"

15   and then you back off.  Saying yes and backing off, that

16   doesn't cut it.  Well, let me say this.  If you are picked as

17   a juror, we will provide you with a calendar of the days you

18   need to be here and you will have to be here on those days.

19       So now, you answered this question:  You may hear

20   testimony from certain individuals that the government alleges

21   are victims.  A victim's testimony is not to be given any more

22   or less credence than any other witness' testimony.  Would you

23   be able to follow the Court's instructions in this regard?

24   And you said no.

25       Why wouldn't you be able to follow the Court's

Prospective Juror 45                                    412

1  instruction?

2          THE PROSPECTIVE JUROR:  I'm sorry.  Can you repeat

3  what the question is?

4          THE COURT:  Let me read it again.

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  You may hear testimony from certain

7  individuals that the government alleges are victims.  The

8  victims' testimony is not to be given any more or less

9  credence than any other witness' testimony.  Would you be able

10  to follow the Court's instructions in this regard?

11          THE PROSPECTIVE JUROR:  Maybe I misunderstood the

12  question.

13          THE COURT:  Yes.

14          THE PROSPECTIVE JUROR:  Yes.  The answer is yes.

15          THE COURT:  That sometimes happens.

16          THE PROSPECTIVE JUROR:  Yes.

17          THE COURT:  Because it's a negative, it's a

18  positive.

19          THE PROSPECTIVE JUROR:  Right.

20          THE COURT:  So that's why I asked the question again

21  because I thought that might be the case.

22          Okay.  Any other questions.

23          MR. AGNIFILO:  Nothing from us, Your Honor.

24          THE COURT:  Any other questions?

25          MS. PENZA:  No, Your Honor.

Prospective Juror 45                           413

1          THE COURT:  Okay.  Thanks for coming in.  Have a

2     nice day.

3          THE PROSPECTIVE JUROR:  Thank you.

4          (Prospective Juror 45 exits the courtroom.)

5          THE COURT:  Motion?

6          MR. AGNIFILO:  Yes, Judge.  We move to excuse the

7     juror for cause.  Your Honor tried to focus her on how

8     important it is to view the evidence objectively and she

9     brought up in response to Your Honor's question a second time

10    that she feels the need to protect our talent, referring to

11    Ms. Mack.

12         I think that in conjunction with Your Honor's other

13    questions where you're trying to get, I think the Court was

14    trying to gauge whether this is someone who can be trusted to

15    stay on point, to follow the Court's instructions on the law,

16    she never really gave the Court, I think, any vote of

17    confidence that she could do that and, combined with a

18    professional relationship that cannot change, whether she

19    works on Ms. Mack's matters or not, you know, her professional

20    employment is linked to Ms. Mack and she feels a proprietary

21    possessory interest towards Ms. Mack by saying, We protect our

22    talent.

23         She's just not the right juror for this case and we

24    think that she should be excused.

25         THE COURT:  Government?

Prospective Juror 45                                414

1          MS. PENZA:  Your Honor, the juror did say, "I

2    believe so" when Your Honor did ask her the pointed question

3    about following your instructions.

4          Also, the outcome of this case has nothing to do

5    with Allison Mack and I don't think she actually has any

6    professional connection to Allison Mack.  The type of

7    relationship, I think, is something where she's trying to not

8    serve on the jury versus it being something that is actually a

9    conflict.  So the government does not believe that there's a

10   basis for striking her.

11         THE COURT:  I understand all that but my concern

12   more than this professional obligation she articulated which

13   the Court does not give any real credence to since she doesn't

14   even know the person and she hasn't done any work for the

15   person, but the Court's concern is that sort of cavalier

16   approach to following the Court's instructions just generally

17   that, you know, maybe I can do it, yes, I can do it but then

18   again, I'm not so sure I can do it.  That sort of, you know,

19   sort of flip answer to a direct question about, This will be

20   the Court's instructions, will you follow it?  Yes or no.  And

21   the answer was, Well, yes, but then there's this other thing.

22   That is what I'm concerned about with this individual and I

23   think that was intentional on her part.

24         She wanted to convey -- I would think, in my mind,

25   that she wanted to convey the impression that she really

Prospective Juror 45                                        415

1    couldn't follow, she wouldn't follow the Court's instructions

2    unless she felt like it and that's --

3           You didn't get that sense from her?

4           MS. PENZA:  I got the sense that she will follow

5    your instruction.  She's been on a jury before.  I think her

6    personality is reflected in her questionnaires.  She answers

7    things "Duh" and stuff like that on her questionnaire, so I

8    think she does have an improperly -- I think she was having an

9    improperly casual dialogue with Your Honor which you

10   recognized and raised with her and I think by the end, she did

11   say, "I believe so."

12          So the government just notes its, that it does not

13   consent but we understand what the Court --

14          THE COURT:  Okay.  I'm going to grant the motion --

15   thank you.

16          I am going to grant the motion to strike the juror

17   for cause in an abundance of caution for the reasons or on the

18   grounds that I just articulated, so 45 is struck.

19          (Prospective Juror 45 excused.)

20          (Continued on next page.)

21

22

23

24

25

CMH        OCR        RMR        CRR        FCRR

Prospective Juror No. 144                          416

1    (Continuing.)

2              THE COURT:  144.

3              MS. OTTAWAY:  Your Honor?  Very briefly --

4              THE COURT:  From where?

5              MS. OTTAWAY:  Amanda Ottaway with Courthouse News.

6              THE COURT:  Yes?

7              MS. OTTAWAY:  Ms. Saul had to step out.  Is it okay

8    if I am the pool reporter at the sidebar until she comes back?

9              THE COURT:  Sure.  If that's agreed by the First

10   Amendment team.

11             MS. OTTAWAY:  I just wanted to make sure it was okay

12   with Your Honor.

13             THE COURT:  Thank you.  Nice to meet you.

14             MS. OTTAWAY:  Nice to meet you.

15             MR. AGNIFILO:  Your Honor, could I have one second

16   to speak to the Government?

17             THE COURT:  You can have two seconds.

18             (Pause in proceedings.)

19             (Prospective juror enters.)

20             THE COURT:  Please be seated.  Good morning, ma'am.

21             PROSPECTIVE JUROR No. 144:  Good morning.

22             THE COURT:  You are Juror No. 144?

23             PROSPECTIVE JUROR NO. 144:  Yes, I am.

24             THE COURT:  And you are retired?

25             PROSPECTIVE JUROR NO. 144:  Yes.

Prospective Juror No. 144                    417

1      THE COURT:  Did you have something for me there?

2  You had some paper.  That is not for me?

3      PROSPECTIVE JUROR NO. 144:  No, not for you.

4      THE COURT:  That is fine.  I just have a few

5  follow-up questions for you.

6      PROSPECTIVE JUROR NO. 144:  Okay.

7      THE COURT:  You indicated that your stepson is an

8  attorney working for Broome County?

9      PROSPECTIVE JUROR NO. 144:  Yes.

10      THE COURT:  And he had previously at some point not

11  that long ago clerked for a federal judge in New Jersey?

12      PROSPECTIVE JUROR NO. 144:  Yes.

13      THE COURT:  Okay.  Did you ever discuss his work

14  with him as a law clerk?

15      PROSPECTIVE JUROR NO. 144:  No.

16      THE COURT:  And before he worked for Broome County,

17  what kind of -- did he go from being a clerk to Broome County

18  or was there something in between?

19      PROSPECTIVE JUROR NO. 144:  No, he only clerked for

20  a summer season, like an intern while he was in law school.

21      THE COURT:  I see.

22      PROSPECTIVE JUROR NO. 144:  Before that he was a

23  case worker for Child Protective Services in Broome County.

24      THE COURT:  I see.  You mean before he went to law

25  school?

Prospective Juror No. 144                     418

1          PROSPECTIVE JUROR NO. 144:  Yes, before he went to

2    law school.

3          THE COURT:  Did he ever talk to you about that job?

4          PROSPECTIVE JUROR NO. 144:  Very little.

5          THE COURT:  And, so, you have four children?

6          PROSPECTIVE JUROR NO. 144:  Yes.

7          THE COURT:  And your stepson is how old?

8          PROSPECTIVE JUROR NO. 144:  37.

9          THE COURT:  And then you have a 39-year-old son?

10         PROSPECTIVE JUROR NO. 144:  That's my stepson also.

11         THE COURT:  What does he do?

12         PROSPECTIVE JUROR NO. 144:  He's a financial

13   adviser.

14         THE COURT:  And the 38-year-old is the person we

15   just spoke about?

16         PROSPECTIVE JUROR NO. 144:  Yes.

17         THE COURT:  Okay.  Now, there's a question here,

18   "Have you or anyone close to you ever participated in any

19   self-help programs or read any several help books?  You said

20   "Yes," yourself.  "I used many self-help books while raising a

21   developmentally disabled child, mostly positive experience."

22   Is that right --

23         PROSPECTIVE JUROR NO. 144:  Yes.

24         THE COURT:  -- can you remember what kind of

25   self-help book it was?

Prospective Juror No. 144                          419

1          PROSPECTIVE JUROR NO. 144:  How to raise a difficult

2    child, different types and techniques on how to -- she would

3    have overwhelming -- things with, like, walking into a big

4    room or a grocery store or a movie theater.

5          THE COURT:  You indicated that you were physically

6    and emotionally abused by your mother?

7          PROSPECTIVE JUROR NO. 144:  Yes.

8          THE COURT:  When you say you were physically abused,

9    can you be more specific?  Was it just being hit?

10          PROSPECTIVE JUROR NO. 144:  No, being beaten with a

11   belt.  Hit with the buckle end, hit with shoes, coat hangers.

12          THE COURT:  And how old were you at the time?

13          PROSPECTIVE JUROR NO. 144:  From as far back as I

14   can, remember, probably until I was ten or twelve.

15          THE COURT:  Any other questions?

16          MR. AGNIFILO:  Nothing from us.

17          MS. PENZA:  No, Your Honor.

18          THE COURT:  Thank you very much for coming in.  Have

19   a nice day, ma'am.

20          (Prospective juror exits.)

21          THE COURT:  Is there any motion from anyone?

22          MR. AGNIFILO:  No, none.

23          MS. PENZA:  No.

24          THE COURT:  Juror No. 144 is approved.  We are up to

25   145.

Prospective Juror No. 145                              420

1              (Prospective juror enters.)

2              THE COURT:  Good morning.

3              PROSPECTIVE JUROR NO. 145:  Good morning.

4              THE COURT:  You are Juror No. 145?

5              PROSPECTIVE JUROR NO. 145:  Yes, sir.

6              THE COURT:  Welcome.  I just have a few follow-up

7  questions for you.  Now, are you in construction?

8              PROSPECTIVE JUROR NO. 145:  Sheet metal.

9              THE COURT:  Sheet metal?

10             PROSPECTIVE JUROR NO. 145:  Yes.

11             THE COURT:  And do you work full-time?

12             PROSPECTIVE JUROR NO. 145:  Yes, sir.

13             THE COURT:  Do you work for one company or --

14             PROSPECTIVE JUROR NO. 145:  Yes, one company.

15             THE COURT:  All right.  And do you know what their

16  policy is on paying for jury duty?

17             PROSPECTIVE JUROR NO. 145:  They don't pay.

18             THE COURT:  They don't pay?

19             PROSPECTIVE JUROR NO. 145:  Yes, they don't pay,

20  sir.

21             THE COURT:  Okay.  Now, would that create a hardship

22  for you financially?

23             PROSPECTIVE JUROR NO. 145:  Yes.

24             THE COURT:  To be on jury duty?

25             PROSPECTIVE JUROR NO. 145:  Yes, sir, I'm the only

Prospective Juror No. 145                    421

1    one in my family that works.

2              THE COURT:  And you have a 13-year-old and a

3    17-year-old?

4              PROSPECTIVE JUROR NO. 145:  Yes, two kids, boy and

5    girl.

6              THE COURT:  Okay.  Do you own your own home?

7              PROSPECTIVE JUROR NO. 145:  Yes, I own my own home.

8              THE COURT:  Do you have a mortgage?

9              PROSPECTIVE JUROR NO. 145:  I have a mortgage.

10             THE COURT:  And do you basically live from

11   month-to-month based on your pay?

12             PROSPECTIVE JUROR NO. 145:  Yes, my wife is a

13   stay-at-home mom right now.

14             THE COURT:  How long have you been with this

15   company?

16             PROSPECTIVE JUROR NO. 145:  Like, over 20 years.

17             THE COURT:  20 years?

18             PROSPECTIVE JUROR NO. 145:  Yes.

19             THE COURT:  And they don't pay for jury duty at all?

20             PROSPECTIVE JUROR NO. 145:  No.  They say they don't

21   pay for jury duty at all.

22             THE COURT:  Are there other questions?

23             MR. AGNIFILO:  Nothing from us.

24             MS. PENZA:  No, Your Honor.

25             THE COURT:  Okay.  I want to thank you for coming

Prospective Juror No. 147                              422

1    in.  You have a nice day, sir.

2              PROSPECTIVE JUROR NO. 145:  Thank you.

3              THE COURT:  You're welcome.

4              (Prospective juror exits.)

5              MR. AGNIFILO:  We ask that he be excused as a

6    hardship.

7              MS. PENZA:  Consent.

8              THE COURT:  145 is struck on consent.

9              147.

10             (Prospective juror enters.)

11             THE COURT:  Please be seated, sir.  Good morning.

12             PROSPECTIVE JUROR NO. 147:  Good morning.

13             THE COURT:  You are Juror No. 147?

14             PROSPECTIVE JUROR NO. 147:  Yes.

15             THE COURT:  Okay.  And I just have a few follow-up

16   questions for you.  Are you employed full-time?

17             PROSPECTIVE JUROR NO. 147:  Yes.

18             THE COURT:  Do you work for a company or the

19   Government?

20             PROSPECTIVE JUROR NO. 147:  I work for a company.

21             THE COURT:  I see.  And what kind of a company is

22   it?

23             PROSPECTIVE JUROR NO. 147:  It's a maintenance

24   company.

25             THE COURT:  I see.  And how long have you worked

Prospective Juror No. 147                    423

1   with them?

2          PROSPECTIVE JUROR NO. 147:  About 18 years.

3          THE COURT:  18 years.  And what type of work do you

4   do?

5          PROSPECTIVE JUROR NO. 147:  I'm a window cleaner.

6          THE COURT:  I see.  So you clean windows in

7   various -- for various buildings that this company has

8   contracts with, is that it?

9          PROSPECTIVE JUROR NO. 147:  Yes.

10          THE COURT:  I see.  And do you know what your

11   employer's policy is about paying you for your jury service?

12          PROSPECTIVE JUROR NO. 147:  It's three days.

13          THE COURT:  That's it?

14          PROSPECTIVE JUROR NO. 147:  Yes.

15          THE COURT:  You checked?

16          PROSPECTIVE JUROR NO. 147:  Yes.  I had to do jury

17   duty before.

18          THE COURT:  I see.  And would this cause you a

19   financial hardship to be on a trial for six weeks.

20          PROSPECTIVE JUROR 147:  Probably.

21          THE COURT:  Well, you smiled when you said that.

22   Why would it?  I mean, that's the question.

23          PROSPECTIVE JUROR NO. 147:  I mean, I'm the primary

24   breadwinner in the family.

25          THE COURT:  Do you have a spouse or a partner?

Sidebar                                                424

1          PROSPECTIVE JUROR NO. 147:  Yes.

2          THE COURT:  And does this person work for a living?

3          PROSPECTIVE JUROR NO. 147:  Yes.

4          THE COURT:  As a social worker?

5          PROSPECTIVE JUROR NO. 147:  Yes.

6          THE COURT:  And this person is a salaried employee

7    somewhere?

8          PROSPECTIVE JUROR NO. 147:  She really does per diem

9    normally.

10         THE COURT:  Per diem work?

11         PROSPECTIVE JUROR NO. 147:  Yes.

12         THE COURT:  Okay.

13         THE COURT:  Are there other questions?

14         MR. AGNIFILO:  No, judge.

15         MS. PENZA:  Yes, Your Honor.  May we have a sidebar?

16         THE COURT:  Sure.

17         (The following sidebar took place outside the

18    hearing of the courtroom.)

19         THE COURT:  Yes?

20         MS. PENZA:  Thank you, Your Honor.  So just to be

21    consistent with the other jurors that we've seen here, he does

22    indicate that he makes over $150,000 a year, owns his home.

23    His child is 20 years old.  I don't know whether his wife

24    could work more given that she is per diem if he is serving.

25    I'm not sure if there is a financial hardship.

SN        OCR       RPR

1          THE COURT:  Let me ask him how much money he makes

2     as a full-time window washer.

3          MS. PENZA:  And I don't remember if Your Honor asked

4     if he still has a mortgage on his house.

5          MR. AGNIFILO:  If Your Honor is inclined to excuse

6     him because of the hardship would you mind following up on

7     question 40.

8          THE COURT:  I can remember from the point I leave

9     here to the point I made it to my chair.

10          MR. AGNIFILO:  That's why I only gave you one.

11          (Sidebar ends.)

12          THE COURT:  So, not to put too fine a point on it,

13     how much do you make in salary a year?  You put down that you

14     made between 100 and $150,000 a year; between the two of you I

15     guess that is?

16          PROSPECTIVE JUROR NO. 147:  Yes.

17          THE COURT:  How much do you make a year?

18          PROSPECTIVE JUROR NO. 147:  About 100 of that.

19          THE COURT:  Really?

20          PROSPECTIVE JUROR NO. 147:  Yes.

21          THE COURT:  And you said you own your own home.  Do

22     you have a mortgage?  Did I ask you that?

23          PROSPECTIVE JUROR NO. 147:  Yes.

24          THE COURT:  You do?

25          PROSPECTIVE JUROR NO. 147:  Yes.

Prospective Juror No. 147                    426

1      THE COURT:  As a window washer for your company,

2   does it involve apartment houses?  What is the nature of your

3   work?

4      PROSPECTIVE JUROR NO. 147:  Where I work is a

5   commercial property, a sky-rise building on Park Avenue, and

6   usually it's me and another guy and we do the scaffolding

7   twice a year on the outside and then twice a year on the

8   interiors but I've done work in residential and all sorts of

9   different types of buildings.

10      THE COURT:  And you've been doing this 20 years?

11      PROSPECTIVE JUROR NO. 147:  I've been with this

12   company for 18 but I've been cleaning windows for 21 years

13   with the union.

14      THE COURT:  I see.  You answered this question,

15   "Would you be able to listen to and discuss matters of a

16   sexual nature with your fellow jurors," and you said "No. I

17   just didn't feel I should be talking with them about something

18   like that."

19      PROSPECTIVE JUROR NO. 147:  I felt it was

20   inappropriate to be talking about things like that with people

21   I didn't know.

22      THE COURT:  Well, the charges in this case involve

23   that, so it's a definite that there will be testimony on that

24   subject matter; and that when you go into the jury room you

25   will have to have a certain amount of discussion about the

Prospective Juror No. 147                          427

1   charges and whether the Government has proven the charges

2   beyond a reasonable doubt.

3           So if the Court instructs you that that is something

4   you must consider, would you consider it?

5           PROSPECTIVE JUROR NO. 147:  I would have to.

6           THE COURT:  And discuss it with your fellow jurors

7   discretely if you must, but you would have to have some

8   discussion about it?

9           PROSPECTIVE JUROR NO. 147:  Yes, I would.

10          MR. AGNIFILO:  Could you follow up on question 52,

11  Judge?

12          THE COURT:  Sure.

13          "Have you or anyone else close to you been the

14  victim of a sexual assault or date rape?"  And the answer was

15  "Yes" and then the explanation was "rather not talk about it."

16  Was it you or someone else?

17          PROSPECTIVE JUROR NO. 147:  Someone else.

18          THE COURT:  Was this person related to you?

19          PROSPECTIVE JUROR NO. 147:  It was multiple people.

20          THE COURT:  And they told you about this?

21          PROSPECTIVE JUROR NO. 147:  Yes.

22          THE COURT:  And as far as you know did they ever

23  report it to law enforcement?

24          PROSPECTIVE JUROR NO. 147:  No.

25          THE COURT:  How old were you when this happened?

1      PROSPECTIVE JUROR NO. 147:  It's occurred over, you

2  know, over my lifetime with certain people.

3      THE COURT:  So that being said, would that have any

4  effect on your ability to be fair and impartial in considering

5  charges of, for instance, child molestation and so forth in

6  this case?

7      PROSPECTIVE JUROR NO. 147:  It's possible.

8      THE COURT:  Were any of them children?

9      PROSPECTIVE JUROR NO. 147:  One.

10      THE COURT:  How old?

11      PROSPECTIVE JUROR NO. 147:  I think about 12.

12      THE COURT:  Was this a relative?

13      PROSPECTIVE JUROR NO. 147:  No.

14      THE COURT:  Questions?

15      MR. AGNIFILO:  Nothing, Judge.

16      MS. PENZA:  No, Your Honor.

17      THE COURT:  I want to thank you for coming in.  You

18  have a nice day.

19      PROSPECTIVE JUROR NO. 147:  Thank you.  You do the

20  same.

21      (Prospective juror exits.)

22      MR. AGNIFILO:  I move that he be stricken on two

23  grounds.  I think the hardship seems substantial enough if

24  he's making $100,000 of that overall salary he gets paid for

25  three days that leaves him for five and a half weeks without a

1  salary and he has a mortgage on his house.  That's the first

2  basis.

3          The second is I think he was answering the court's

4  questions honestly but his facial expression to me conveyed

5  some measure of pain or discomfort about the subject matter

6  which is why he didn't walk to talk about it and the Court is

7  certainly appropriate in not pushing too far because he said

8  he didn't walk to talk about it, but as a result there may

9  be -- you know, I don't think we have as full a record because

10 I think Your Honor was careful with the juror and I didn't ask

11 for any more questions for that reason.  But I do have some

12 concerns that he has some deep-seated things that he doesn't

13 want to talk about but he could bring with him in the jury

14 room.

15         MS. PENZA:  Your Honor, the Government objects to

16 this juror being stricken for cause.  The financial hardship,

17 he indicated on his questionnaire that he makes $150,000 a

18 year.  In light of comparison with other jurors, it's not

19 clear to the Government that this is actually a hardship that

20 would bar him from serving on this jury.  As for cause, Your

21 Honor, he stated that he can be impartial and the measures of

22 discomfort don't -- outweigh the fact that he did say he could

23 be impartial.

24         THE COURT:  I am going to strike this juror based on

25 hardship.  And the reason is, I am trying to be consistent.

Prospective Juror No. 151                              430

1   The fact that he makes $100,000 a year doesn't mean that he

2   doesn't live from month to month to pay his mortgage and he

3   has an employer who only gives him three days of jury service.

4   He's already used two.  So basically for six weeks he would be

5   without pay and I think that that is more of a burden than we

6   should place on someone who has these obligations, is meeting

7   his obligations.  If he got three weeks it would be a closer

8   call, but if it's six weeks, which is what it ends up being, I

9   think a month and a half is too great a burden to place on

10  someone, even someone who makes, you know, a decent living.

11  Everyone knows that people in that category of income tend to

12  live at their -- up to the limit of their income and sometimes

13  beyond.  So -- and he has a mortgage.

14            Obviously he's hard working.  He's had the same job

15  for 18 years and he's doing the job and it's a job which has

16  its risks.  So I'm going to grant the motion.  Juror No. 147

17  is struck for cause over objection.

18            Okay, we are up to 151.  Now, this individual had an

19  incomplete questionnaire.

20            (Prospective juror enters.)

21            THE COURT:  Please be seated, sir.  Good morning.

22            PROSPECTIVE JUROR NO. 151:  Good morning.

23            THE COURT:  You are Juror No. 151; correct?

24            PROSPECTIVE JUROR NO. 151:  Yes.

25            THE COURT:  Okay.  I just have a few follow-up

Prospective Juror No. 151                                              431

1    questions for you.  What kind of work do you do?

2              PROSPECTIVE JUROR NO. 151:  Plumber helper.

3              THE COURT:  You're a plumber's helper?

4              PROSPECTIVE JUROR NO. 151:  Yes.

5              THE COURT:  Do you work for one company or do you

6    work for various companies?

7              PROSPECTIVE JUROR NO. 151:  One company.

8              THE COURT:  How long have you worked for this

9    company?

10             PROSPECTIVE JUROR NO. 151:  About one and a half

11   year.

12             THE COURT:  I see.  And do you know what the

13   company's policy is about paying you for your jury service?

14             PROSPECTIVE JUROR NO. 151:  I'm -- I'm not sure yet.

15             THE COURT:  Well, I would like you to contact the

16   company's personnel office -- how big is the company?

17             PROSPECTIVE JUROR NO. 151:  I'm not sure about it

18   because I just work at the job site and just -- I go to the

19   company for once, so the office for once, sir.

20             THE COURT:  Do you have a supervisor?

21             PROSPECTIVE JUROR NO. 151:  Yes.

22             THE COURT:  Please check with your supervisor and he

23   or she can give you a phone number to call for the company and

24   you can check with the company personnel office.  How many

25   people work for the company?

                    SN      OCR      RPR

Prospective Juror No. 151                          432

1        PROSPECTIVE JUROR NO. 151:  I'm not sure, but it's
2   more people, so.  .  .
3   Q    I see.  And where do you work, what neighborhoods?
4        PROSPECTIVE JUROR NO. 151:  For now it's at Delancy,
5   at the -- I finished Kent Street; Brooklyn, Kent Street.
6        THE COURT:  Well, Mr. Reccoppa, my deputy here, will
7   give you his phone number.  When you find out, call and give
8   him your juror number or put it on his answering machine and
9   tell him how many days of jury duty you are paid for.
10        PROSPECTIVE JUROR NO. 151:  Sorry, could you repeat
11   again?
12        THE COURT:  Sure.  When you find out how many days
13   you get paid during jury duty, call Mr. Reccoppa and let him
14   know.
15        PROSPECTIVE JUROR NO. 151:  Okay.
16        THE COURT:  There's a question here, "Some people
17   believe that rich people can buy their way out of anything."
18   What is your opinion?
19        PROSPECTIVE JUROR NO. 151:  I think money -- it
20   can't buy anything.
21        THE COURT:  And what is your opinion?
22        PROSPECTIVE JUROR NO. 151:  Sorry, I don't
23   understand "opinion" means.
24        THE COURT:  Some people believe that rich people can
25   buy their way out of anything.  What is your opinion on that

Prospective Juror No. 151                                  433

1   subject; that people with money can buy their way out of

2   trouble by spending money?

3           PROSPECTIVE JUROR NO. 151:  No.

4           THE COURT:  What is your opinion?

5           PROSPECTIVE JUROR NO. 151:  I think that money can't

6   buy everything.

7           THE COURT:  Would you be able to listen to and

8   discuss matters of a sexual nature with your fellow jurors?

9           PROSPECTIVE JUROR NO. 151:  Sorry about it because I

10  can't catch all the words.

11          THE COURT:  Let me just ask you one more time.

12  Would you be able to listen to and discuss matters of a sexual

13  nature with your fellow jurors?

14          PROSPECTIVE JUROR NO. 151:  Sorry?

15          THE COURT:  Are there any other questions?

16          MS. PENZA:  No, Your Honor.

17          MR. AGNIFILO:  No, Judge.

18          THE COURT:  Thank you very much for coming in.

19  Mr. Reccoppa will give you his phone number.

20          (Prospective juror exits.)

21          THE COURT:  Is there a motion?

22          MR. AGNIFILO:  Your Honor, we're going to move to

23  strike the juror.  I think Your Honor made the questions very,

24  very short and concise and clear and I think he had a hard

25  time understanding.  My interpretation I think he said he

Prospective Juror No. 153                434

1   didn't know what the word "opinion" meant.

2            THE COURT:  I was not sure what he was saying.

3            MR. AGNIFILO:  But I think he was not understanding

4   what the court was telling him.

5            MS. PENZA:  The Government consents.

6            THE COURT:  Juror No. 151 is stricken for cause

7   based on English language difficulties.

8            All right.  We are up to 153.

9            (Prospective juror enters.)

10           THE COURT:  Please be seated.  Good morning.

11           PROSPECTIVE JUROR NO. 153:  Good morning.

12           THE COURT:  You are Juror No. 153; correct?

13           PROSPECTIVE JUROR NO. 153:  Correct.

14           THE COURT:  I just have a few follow-up questions

15   for you.  Now, you have worked at your current employment for

16   the last nine years; correct?

17           PROSPECTIVE JUROR NO. 153:  Yes.

18           THE COURT:  And you indicated you didn't know

19   whether your employer pays you during your jury service.  Did

20   you check on that?

21           PROSPECTIVE JUROR NO. 153:  No, I didn't.  Because I

22   didn't know if I was going to get called back.

23           THE COURT:  But you did.

24           PROSPECTIVE JUROR NO. 153:  But I called after 7

25   yesterday.  But he did put it in as my sheet as jury duty,

Prospective Juror No. 153                          435

1    paid.

2          THE COURT:  Well, it would be useful for you to find

3    out and let us know whether you're paid for your entire period

4    of jury service.

5          PROSPECTIVE JUROR NO. 153:  Sure, I will.

6          THE COURT:  It's a major law firm that you work for?

7          PROSPECTIVE JUROR NO. 153:  Yes.

8          THE COURT:  Okay.  And you have a daughter who works

9    as a customer service rep for Social Security?

10         PROSPECTIVE JUROR NO. 153:  Correct.

11         THE COURT:  Do any of your children work in law

12   enforcement?

13         PROSPECTIVE JUROR NO. 153:  No.

14         THE COURT:  There was this question:  "There may be

15   evidence in this case about people engaging in relationships

16   with multiple sexual partners.  Would hearing about that

17   evidence affect your ability to serve as a fair and impartial

18   juror in this case?"  You checked "Yes."  You said, "I believe

19   in one sex partner."

20         PROSPECTIVE JUROR NO. 153:  Yes.  Yeah, I do.

21         THE COURT:  Well, the fact that there may be

22   testimony of people engaging in sex with more than one sex

23   partner, would you be able to set aside your personal views on

24   it and simply follow the law as I give it to you as to whether

25   anything that is testified to constitutes a crime?

Prospective Juror No. 153                              436

1      PROSPECTIVE JUROR NO. 153:  Yes.

2      THE COURT:  "There will be evidence in this case

3   that includes sexually explicit images and language.  Would

4   hearing about this type of evidence affect your ability to

5   serve as a fair and impartial juror in this case?"  You said,

6   "Yes, I don't watch sex movie or films."

7      PROSPECTIVE JUROR NO. 153:  I don't.

8      THE COURT:  Okay.  But, again, although there will

9   be a limited amount of information provided in terms of your

10   fact-seeking responsibility, you may have to and you will have

11   to look at or observe some materials of that nature.  Would

12   you be able to consider and deal with such materials in your

13   fact-finding role?

14      PROSPECTIVE JUROR NO. 153:  I don't understand.

15      THE COURT:  Well, there's going to be evidence

16   presented, some of which will be photographic images, I

17   believe --

18      PROSPECTIVE JUROR NO. 153:  Okay.

19      THE COURT:  -- of people who are unclothed or

20   engaged in sexual behavior.  Since I haven't seen these

21   images, I can't describe them to you --

22      PROSPECTIVE JUROR NO. 153:  Okay.

23      THE COURT:  But the fact is there will be a limited

24   amount of that but there will be some.  So I wanted you to

25   know about that and the purpose of showing them to you is that

Prospective Juror No. 153                    437

1    the defendant is accused of certain crimes and the evidence is

2    being presented to you as part of the Government's obligation

3    to prove his guilt of certain crimes beyond a reasonable

4    doubt.  That is the only reason these materials are being

5    shown.

6            PROSPECTIVE JUROR NO. 153:  Okay.

7            THE COURT:  Could you view them and consider them

8    for that purpose?

9            PROSPECTIVE JUROR NO. 153:  Yes.

10           THE COURT:  You didn't answer this question.  That's

11   okay.  I'm going to read it to you:  "Some people believe rich

12   people can buy their way out of anything.  What is your

13   opinion on that subject?"

14           PROSPECTIVE JUROR NO. 153:  I really -- I really

15   don't know.

16           THE COURT:  Is that why you didn't answer it?

17           PROSPECTIVE JUROR NO. 153:  Yes.

18           THE COURT:  Okay.  "An indictment itself is not

19   evidence.  The defendant was indicted for several crimes by a

20   grand jury.  It merely describes the charges against the

21   defendant.  It is an accusation.  It may not be considered by

22   you as any evidence of a defendant's guilt.  Are you able to

23   follow this rule of law?"

24           PROSPECTIVE JUROR NO. 153:  Yes.

25           THE COURT:  And then you were asked a question about

SN        OCR        RPR

Prospective Juror No. 153                        438

1   law enforcement officers.  "Do you hold any beliefs or

2   opinions that would prevent you from evaluating the testimony

3   of law enforcement officers fairly and impartially?"  You said

4   "No."  And then there was a second part to the question which

5   you didn't answer and I will read it to you:  "Would you be

6   inclined to believe a witness is more or less truthful solely

7   because that witness is a law enforcement officer?"

8           PROSPECTIVE JUROR NO. 153:  Yes, I would.

9           THE COURT:  And which is it; would you be more

10  inclined to consider that person's testimony to be truthful

11  because he's a law enforcement officer or would you say that

12  you would be less likely to consider it truthful?

13          PROSPECTIVE JUROR NO. 153:  More likely.

14          THE COURT:  If I instruct you that under the law,

15  the testimony of law enforcement officers should be judged on

16  the same standards as any other witness who comes in here and

17  you have to decide for each witness whether you find that

18  witness credible or not credible, whether you rely on that

19  witness' testimony in your deliberations, would you be follow

20  my instruction to consider all witnesses using the same

21  standard?

22          PROSPECTIVE JUROR NO. 153:  Yes.

23          THE COURT:  Anything else?

24          MR. AGNIFILO:  No.

25          THE COURT:  Anything else from the Government?

Prospective Juror No. 153                          439

1          MS. PENZA:  Yes, just question 59, please.

2          THE COURT:  Surely.

3          "Do you believe that people under 17 should be able

4     to consent to section with adults?"

5          PROSPECTIVE JUROR NO. 153:  No, I don't think so.

6          THE COURT:  Anything else?

7          MS. PENZA:  No nothing, Your Honor.

8          MR. AGNIFILO:  Nothing from us.

9          THE COURT:  Well, I want to thank you for coming in.

10    Have a nice day.

11         PROSPECTIVE JUROR NO. 153:  Thank you very much.

12         THE COURT:  You are very welcome.

13         (Prospective juror exits.)

14         MR. AGNIFILO:  No motion from us.

15         MS. PENZA:  No, Your Honor.

16         THE COURT:  All right.  Juror No. 153 is approved.

17         We are up to 154?

18         MR. AGNIFILO:  154.

19         THE COURT:  My expectation is that the law firm will

20    pay for jury duty.

21         MR. AGNIFILO:  Yes, I believe so.

22         THE COURT:  154.

23         (Prospective juror enters.)

24         MR. AGNIFILO:  Judge, just one second, I'm sorry.

25         (Pause in proceedings.)

Prospective Juror No. 154                    440

1    THE COURT:  Please be seated, sir.  Good morning?

2    PROSPECTIVE JUROR NO. 154:  Good morning.

3    THE COURT:  You are Juror No. 154?

4    PROSPECTIVE JUROR NO. 154:  Yes, sir.

5    THE COURT:  I have a few follow-up questions for you

6  based on your questionnaire.  Did you find out whether your

7  employer pays for you to be on jury duty?

8    PROSPECTIVE JUROR NO. 154:  Yeah.

9    THE COURT:  Do they?

10    PROSPECTIVE JUROR NO. 154:  Yes.

11    THE COURT:  For the whole time?

12    PROSPECTIVE JUROR NO. 154:  Yes.

13    THE COURT:  That's what I thought.

14    PROSPECTIVE JUROR NO. 154:  Yes.

15    THE COURT:  It's a utility.

16    PROSPECTIVE JUROR NO. 154:  Yeah.

17    THE COURT:  Thanks for checking that out.  So, you

18  said you were familiar with the name Rick Ross.  Who is the

19  Rick Ross that you are familiar with?

20    PROSPECTIVE JUROR NO. 154:  I'm not sure if you

21  meant the rapper.

22    THE COURT:  The rapper?

23    MS. PENZA:  It is not the rapper.

24    THE COURT:  I wish I could say I knew Rick Ross the

25  rapper, but I don't know him.

1    PROSPECTIVE JUROR NO. 154:  You're not missing out
2  on anything.
3    THE COURT:  All right.  "Have you or anyone close to
4  you ever participated in any self-help programs or read any
5  self-help books?"  You said "Yes."  Occasionally you will
6  Google this topic.  Do you Google it to find out about it?
7    PROSPECTIVE JUROR NO. 154:  Occasionally, yes, it's
8  helpful.
9    THE COURT:  And when you Google it, are you provided
10  with information that's helpful just by Googling?
11    PROSPECTIVE JUROR NO. 154:  Usually.  You have to
12  weed out the bad information, but usually there is some good
13  information out there.
14    THE COURT:  And you indicated that what you hoped to
15  get out of it is "a better me."  So does it help?
16    PROSPECTIVE JUROR NO. 154:  Yeah.
17    THE COURT:  Good to know.  "Some people believe that
18  rich people can buy their way out of anything.  What is your
19  opinion on that topic?"  And you wrote, "It is true."  That's
20  your view?
21    PROSPECTIVE JUROR NO. 154:  Yes.
22    THE COURT:  And just let me follow on to that.  In
23  what context is it true in your opinion?  I mean, what
24  evidence do you have that it is true?
25    PROSPECTIVE JUROR NO. 154:  I just believe, I mean,

Prospective Juror No. 156                              442

1   money is power, so --

2          THE COURT:  Okay.

3          PROSPECTIVE JUROR NO. 154:  You can buy your way

4   through things if you've got enough of it.

5          THE COURT:  Thank you.  Any other questions?

6          MR. AGNIFILO:  No, Your Honor.

7          MS. PENZA:  No, Your Honor.

8          THE COURT:  What do you actually do for the utility?

9          PROSPECTIVE JUROR NO. 154:  Automotive equipment

10  technician.

11         THE COURT:  Okay.  Have a nice day.

12         (Prospective juror exits.)

13         THE COURT:  Any motion?

14         MS. PENZA:  No, Your Honor.

15         THE COURT:  Juror No. 154 is approved.  Next is 156.

16  Another Rick Ross person.

17         (Prospective juror enters.)

18         THE COURT:  Please be seated, sir.  Welcome.

19         PROSPECTIVE JUROR NO. 156:  Thank you.

20         THE COURT:  You are Juror No. 156; correct?

21         PROSPECTIVE JUROR NO. 156:  Yes, correct.

22         THE COURT:  And now, you have -- I am trying to --

23  you have more than one job or one job?

24         PROSPECTIVE JUROR NO. 156:  It's more than one job.

25  Sometimes it's just part-time.  It could be once every three

Prospective Juror No. 156                                    443

1   months or every six months.  It's intermittently.

2          THE COURT:  Do you have a full-time job?

3          PROSPECTIVE JUROR NO. 156:  I do, yes.

4          THE COURT:  Is that the one at the wholesale place?

5          PROSPECTIVE JUROR NO. 156:  Yes.

6          THE COURT:  And did you check to see if they pay for

7   your jury duty?

8          PROSPECTIVE JUROR NO. 156:  They do, but I'm not

9   going to be getting my overtime that I normally get at this

10  time of year.

11         THE COURT:  But they will pay the basic --

12         PROSPECTIVE JUROR NO. 156:  The 40 hours.

13         THE COURT:  For as long as you're on jury duty?

14         PROSPECTIVE JUROR NO. 156:  Yes, but I get -- I get

15  25 hours a week now at this time of the year that I'm not

16  going to be getting.

17         THE COURT:  All right.  You indicated that your

18  brother -- is it your brother who is a states attorney in

19  Delaware?

20         PROSPECTIVE JUROR NO. 156:  A district attorney,

21  yes.

22         THE COURT:  A DA.  And how long has he done that?

23         PROSPECTIVE JUROR NO. 156:  Pretty much at least 25

24  or 30 years or so.

25         THE COURT:  I see.  And do you ever discuss his

Prospective Juror No. 156                    444

1   cases with him?

2            PROSPECTIVE JUROR NO. 156:  No, no.

3            THE COURT:  You indicated this answer, "There may be

4   evidence in this case about abortions.  Would hearing about

5   that type of evidence affect your ability to serve as a fair

6   and impartial juror in this case?"  And you said, "No."

7            PROSPECTIVE JUROR NO. 156:  Well, I have never been

8   confronted with that situation so it could be a difficult

9   situation when confronted.  I wouldn't know it right now, I

10  would have to be --

11           THE COURT:  Let me put it this way:  Would you be

12  uneasy about confronting that kind of --

13           PROSPECTIVE JUROR NO. 156:  It's a possibility, I

14  would think so, yes.

15           THE COURT:  But would you attempt to consider the

16  evidence that's presented of that nature in the context of

17  analyzing whether the defendant is guilty beyond a reasonable

18  doubt for the crimes he's charged with?

19           PROSPECTIVE JUROR NO. 156:  I would have to be, yes.

20           THE COURT:  Have you been a juror before?

21           PROSPECTIVE JUROR NO. 156:  It never went to trial.

22  It was out of court.

23           THE COURT:  I see.

24           PROSPECTIVE JUROR NO. 156:  It was settled.

25           THE COURT:  Okay.  And then there's a question,

Prospective Juror No. 156                               445

1    "Would you be able to listen to and discuss matters of a

2    sexual nature with fellow jurors?"  You said, "No, I don't

3    talk about that subject."

4              PROSPECTIVE JUROR NO. 156:  There's no reason to.

5              THE COURT:  Well, except when the jury is

6    deliberating.

7              PROSPECTIVE JUROR NO. 156:  Well, yeah.

8              THE COURT:  Under those circumstances in effect you

9    are compelled to talk about it, but only in terms of whether

10   the evidence presented proves beyond a reasonable doubt that

11   the defendant committed certain crimes.  Could you do that in

12   that context?

13             PROSPECTIVE JUROR NO. 156:  In that context, yes,

14   yes.

15             THE COURT:  Now, you indicated that in answer to the

16   question have you or anyone close to you ever been the victim

17   of section assault including date rape.  You said, yes, a

18   former girlfriend.

19             PROSPECTIVE JUROR NO. 156:  Yes, that's correct.

20             THE COURT:  And so did your former girlfriend tell

21   you about this?

22             PROSPECTIVE JUROR NO. 156:  Yes.

23             THE COURT:  And that was before you met her?

24             PROSPECTIVE JUROR NO. 156:  No, it was during while

25   I was with her.

Prospective Juror No. 156                                446

1       THE COURT:  And so someone did what to her?

2       PROSPECTIVE JUROR NO. 156:  Three men raped her.

3       THE COURT:  Did she -- did she report this?

4       PROSPECTIVE JUROR NO. 156:  She didn't report it,

5   no.  It went unreported.

6       THE COURT:  How long ago was this?

7       PROSPECTIVE JUROR NO. 156:  This is -- I was 21

8   years old at the time.  We're going back some time.  Also I

9   have never been confronted with that situation since then.  It

10  would be difficult to discuss that or hear about it or

11  whatever it would be even though I said no.

12      THE COURT:  So what do you think about the Me Too

13  movement?

14      PROSPECTIVE JUROR NO. 156:  I don't really know

15  anything about it.  I don't really pay any attention to it.

16      THE COURT:  Did you give her any advice?

17      PROSPECTIVE JUROR NO. 156:  I didn't know what to

18  say at the time.  Her mother was taking control of the

19  situation.  I stepped away from it.  I did what I could.

20      THE COURT:  There has been a lot of discussion about

21  that particular type of issue recently, in recent years and

22  months, do you think that if something like that happened at

23  the age you were at but in the present environment that it

24  would have been dealt with differently?

25      PROSPECTIVE JUROR NO. 156:  Absolutely, yes.

Prospective Juror No. 156                    447

1          THE COURT:  Is that better or worse?

2          PROSPECTIVE JUROR NO. 156:  I think it's better.  It

3     would be taken care of.

4          THE COURT:  I'm just wondering what your views were

5     on that.

6          PROSPECTIVE JUROR NO. 156:  Okay.

7          THE COURT:  "An indictment is not evidence.  It

8     merely describes the charges made against the defendant.  It

9     is an accusation.  It may not be considered by you as any

10    evidence of the defendant's guilt.  Are you able to follow

11    that rule of law?"

12         PROSPECTIVE JUROR NO. 156:  Yes.

13         THE COURT:  And "You may hear testimony from certain

14    individuals that the Government alleges are victims.  A

15    victim's testimony is not to be given any more or less

16    credence than any other witness' testimony.  Would you be able

17    to follow the Court's instructions in that regard?"

18         PROSPECTIVE JUROR NO. 156:  Yes.

19         THE COURT:  Any other questions?

20         MR. AGNIFILO:  Nothing.

21         MS. PENZA:  No, Your Honor.

22         THE COURT:  Okay.  Thanks very much for coming in.

23    Have a nice day.

24         PROSPECTIVE JUROR NO. 156:  Thank you.  Exits.

25         THE COURT:  Does anybody have a motion?

Prospective Juror No. 158                                              448

1              MR. AGNIFILO:  We do not.

2              MS. PENZA:  No, Your Honor.

3              THE COURT:  Okay.  Juror No. 156 is approved.  Let's

4    do one more and then take a break.

5              MR. AGNIFILO:  Very good.

6              THE COURT:  We're going to do 157.

7              MR. AGNIFILO:  I think it's 158.

8              THE COURT:  Hold on.  We can't reach 157.  That is

9    right.  All right.  158.  Thank you.

10             (Prospective juror enters.)

11             THE COURT:  Good morning.

12             PROSPECTIVE JUROR NO. 158:  Good morning.

13             THE COURT:  You are Juror No. 158, are you not?

14             PROSPECTIVE JUROR NO. 158:  I am.

15             THE COURT:  Okay.  Now, have you checked with your

16   employer as to whether they pay for your jury duty?

17             PROSPECTIVE JUROR NO. 158:  They do.

18             THE COURT:  For the entire period?

19             PROSPECTIVE JUROR NO. 158:  Yes.

20             THE COURT:  I was going to make a joke about they

21   need to try harder.

22             PROSPECTIVE JUROR NO. 158:  That was a good one.

23             THE COURT:  But it didn't work because they pay?

24             PROSPECTIVE JUROR NO. 158:  Yes.

25             THE COURT:  You work for Avis?

Case 1:18-cr-00204-NGG-VMS   Document 835   Filed 01/09/20   Page 56 of 205 PageID #: 13209

1        PROSPECTIVE JUROR NO. 158:  I do.

2        THE COURT:  Okay.  So, let me just ask a few

3   follow-up questions.  You indicated that you applied to be a

4   911 operator and went through the process a few years ago.

5   Did you ever hear from them one way or the other?

6        PROSPECTIVE JUROR NO. 158:  Yeah, we basically

7   stopped because they kept making me go back and forth and back

8   and forth with the process and stuff and then they moved to

9   the Bronx and that would be too far for me to commute anyway.

10        THE COURT:  I see.  And what town do you live in?

11        PROSPECTIVE JUROR NO. 158:  I live in Staten Island,

12   in Richmond.

13        THE COURT:  That's a town.

14        PROSPECTIVE JUROR NO. 158:  Yeah.  The forgotten

15   borough, as they say.

16        THE COURT:  There's a question, "Have you or has a

17   family member or a close friend ever been charged with a

18   crime?"  You said, "Yes.  A few friends were charged with drug

19   charges."  What kind of drug charges were they charged with.

20        PROSPECTIVE JUROR NO. 158:  It was cocaine and weed,

21   but that was years ago when I was a teenager.

22        THE COURT:  And were they treated appropriately by

23   law enforcement?

24        PROSPECTIVE JUROR NO. 158:  Yeah.  They didn't have

25   no issues except getting caught.

Prospective Juror No. 163                                450

1           THE COURT:  Are there other questions?

2           MR. AGNIFILO:  Nothing from us.

3           MS. PENZA:  No, Your Honor.

4           THE COURT:  Okay.  Thank you for come in.  You have

5    a nice day?

6           PROSPECTIVE JUROR NO. 158:  Thank you, you too.

7           (Prospective juror exits.)

8           THE COURT:  Is there a motion?

9           MR. AGNIFILO:  No motion from us.

10          MS. PENZA:  No, Your Honor.

11          THE COURT:  All right.  Juror No. 158 is approved.

12   We will take a five-minute break.

13          (Recess taken.)

14          THE COURT:  163 is next.  We will wait for the

15   defendant.

16          (Defendant present.)

17          (Prospective juror enters.)

18          THE COURT:  Good morning.  You are Juror No. 163?

19          PROSPECTIVE JUROR NO. 163:  Correct.

20          THE COURT:  Just a couple of follow-up questions for

21   you.  You are currently not employed; is that right?

22          PROSPECTIVE JUROR NO. 163:  Correct.

23          THE COURT:  And you are looking work?

24          PROSPECTIVE JUROR NO. 163:  Correct.  Not only that,

25   but I'm supporting -- my mother had a double heart valve

Prospective Juror No. 163                        451

1   replacement recently so she is home as well.

2              THE COURT:  I see, okay.  It is just the two of you

3   at home?

4              PROSPECTIVE JUROR NO. 163:  Correct.

5              THE COURT:  And when you were working, what kind of

6   work do you do?

7              PROSPECTIVE JUROR NO. 163:  Sales.

8              THE COURT:  What kind of sales?

9              PROSPECTIVE JUROR NO. 163:  Software.

10             THE COURT:  How far did you go in school?

11             PROSPECTIVE JUROR NO. 163:  Bachelor's.

12             THE COURT:  Where did you go?

13             PROSPECTIVE JUROR NO. 163:  St. Francis.

14             THE COURT:  Right over here?

15             PROSPECTIVE JUROR NO. 163:  Yup.

16             THE COURT:  Are there other questions?

17             MR. AGNIFILO:  No, Judge.

18             THE COURT:  You are actively looking for work you

19   said in your questionnaire?

20             PROSPECTIVE JUROR NO. 163:  Correct.

21             THE COURT:  And that continues to be the case;

22   correct?

23             PROSPECTIVE JUROR NO. 163:  Correct.

24             THE COURT:  That's it, thank you very much.  Have a

25   nice day.

Prospective Juror No. 167                                452

1          PROSPECTIVE JUROR NO. 163:  Thank you.

2          (Prospective juror exits.)

3          MR. AGNIFILO:  Your Honor, we are going to ask that

4   the juror be excused as a hardship.  He's looking for work.

5   The way he expressed in his juror questionnaire this would

6   make these difficult for him.  He says he has a situation with

7   his mother.

8          MS. PENZA:  The Government consents.

9          THE COURT:  Okay.  Juror No. 163 is struck.

10          167.

11          (Prospective juror enters.)

12          THE COURT:  Be seated, sir.  You are Juror No. 167;

13   correct?

14          PROSPECTIVE JUROR NO. 167:  That's correct.

15          THE COURT:  Thank you.  You are currently teaching

16   for a living?

17          PROSPECTIVE JUROR NO. 167:  Yes, that's correct.

18          THE COURT:  At what grade level are you teaching?

19          PROSPECTIVE JUROR NO. 167:  I'm teaching fifth grade

20   ELA.

21          THE COURT:  What is that?

22          PROSPECTIVE JUROR NO. 167:  It's departmental at my

23   school -- I have two groups that come in and I teach reading

24   and writing predominantly, a little science and social

25   studies.  And they go to another teacher for math.

Prospective Juror No. 167                             453

1     THE COURT:  And how long have you been doing this as
2  a teacher?
3     PROSPECTIVE JUROR NO. 167:  21 years.  It will be 21
4  in June.
5     THE COURT:  I see.  And you indicated that you would
6  consider it a hardship to have to serve on a jury for six
7  weeks in May and June; is that right?
8     PROSPECTIVE JUROR NO. 167:  Yes.
9     THE COURT:  So why don't you explain why it is you
10 feel that way?
11    PROSPECTIVE JUROR NO. 167:  All right.  They're
12 fifth grade and they're graduating.  So there's a lot of
13 graduation activities which they expect the teachers to be at.
14 There's the graduation ceremony.  There's the awards day.
15 There's the dance.  There's different trips.  We have a
16 statewide math test after the break.  We're on spring break
17 now.
18    THE COURT:  Right.
19    PROSPECTIVE JUROR NO. 167:  There is also -- I have
20 two groups and one of the groups especially has -- the
21 children have -- some of the students have some behavior
22 problems.  So, you know, having a lot of substitutes may not
23 be the best for them.  That's basically --
24    THE COURT:  I taught school between college and law
25 school.  I understand what you are saying.  Let me ask you

Prospective Juror No. 167                    454

1    about your career which is interesting because you went to law

2    school.

3                    PROSPECTIVE JUROR NO. 167:  Yes.

4                    THE COURT:  And you also were admitted to practice

5    law?

6                    PROSPECTIVE JUROR NO. 167:  Yes.  And I practiced a

7    few years.

8                    THE COURT:  And you gave it up?

9                    PROSPECTIVE JUROR NO. 167:  Yes.

10                   THE COURT:  What kind of law did you practice?

11                   PROSPECTIVE JUROR NO. 167:  Personal injury.

12                   THE COURT:  Personal injury?

13                   PROSPECTIVE JUROR NO. 167:  For a few years and then

14   I tried immigration.

15                   THE COURT:  And you decided not to pursue your legal

16   career?

17                   PROSPECTIVE JUROR NO. 167:  Right, well, when I did

18   personal injury, the firm laid people off.  So at that point I

19   had to make a decision, am I going to continue.  So I tried

20   immigration per diem and I was subbing at the same time and I

21   realized at that point that I preferred the subbing in the

22   elementary school.

23                   THE COURT:  It's a different kind of challenge,

24   isn't it?

25                   PROSPECTIVE JUROR NO. 167:  Right.  But it's

Prospective Juror No. 167                    455

1    people-related.  So that's when I made my decision.

2              THE COURT:  I see.  Okay.  Let's have a sidebar.

3         (The following sidebar took place outside the hearing of

4    the courtroom.)

5              THE COURT:  Now, there are many other questions that

6    I could ask this juror, but I am concerned that he appears to

7    be an extremely dedicated teacher for children who are not

8    regular fifth graders and it's a critical time of the year.

9    And we just finished letting someone out who was unemployed

10   and claims he was taking care of his mother and this gentleman

11   appears to be an extremely driven, dedicated teacher and it

12   would have a detrimental effect on these children so I am

13   inclined to let him out for cause but convince me that I am

14   wrong.

15             MS. PENZA:  No objection, Your Honor.

16             THE COURT:  No.

17             MR. AGNIFILO:  I think you're right.

18             THE COURT:  Okay.  I got this one right.

19             (Sidebar ends.)

20             THE COURT:  Let me say for myself and I am sure the

21   others agree that the work you do is very important for the

22   community and you appear to be extremely dedicated to what you

23   do and I think we can very proud of what you are doing, so we

24   thank you.

25             PROSPECTIVE JUROR NO. 167:  Thank you.

Prospective Juror No. 170                    456

1           THE COURT:  And we have no other questions.  Have a
2    nice day.
3           PROSPECTIVE JUROR NO. 167:  So does that mean that I
4    am dismissed?
5           THE COURT:  Just follow the instructions.
6           PROSPECTIVE JUROR NO. 167:  Okay.
7           THE COURT:  There will be instructions.  Just follow
8    the instructions.
9           PROSPECTIVE JUROR NO. 167:  Thank you.
10          (Prospective juror exits.)
11          MR. AGNIFILO:  We ask that he be excused for the
12   reason that we discussed at sidebar.
13          THE COURT:  And you agree?
14          MS. PENZA:  Yes, yes.
15          THE COURT:  Juror No. 167 is struck on consent.
16          I think we are up to 170.  Why are you interested in
17   47?  You want more information about the case?
18          MS. PENZA:  The gun possession case he served as a
19   juror?
20          (Prospective juror enters.)
21          THE COURT:  Please be seated, ma'am.  Good morning.
22          PROSPECTIVE JUROR NO. 170:  Good morning.
23          THE COURT:  You are Juror No. 170?
24          PROSPECTIVE JUROR NO. 170:  Correct.
25          THE COURT:  You work for New York City; right?

Prospective Juror No. 170                    457

1          PROSPECTIVE JUROR NO. 170:  Yes.

2          THE COURT:  Is that a full-time job?

3          PROSPECTIVE JUROR NO. 170:  Yes.

4          THE COURT:  And which agency do you work for?

5          PROSPECTIVE JUROR NO. 170:  Right now it's FISA-OPA.

6     It's under the mayor's office, Mayor de Blasio.

7          THE COURT:  But what part of his office do you work

8     in?

9          PROSPECTIVE JUROR NO. 170:  You mean the name of the

10    agency?

11         THE COURT:  Yes.

12         PROSPECTIVE JUROR NO. 170:  I used to work for

13    Financial Services Agency, but now I'm with OPA, Office of

14    Payroll Agency, Administration, so now -- now it's merged into

15    one agency.  It's in the process of merging ing into one

16    agency.  They put FISA-OPA together.

17         THE COURT:  And so this is not inside DCAS?  This is

18    within the mayor's office?

19         PROSPECTIVE JUROR NO. 170:  It's under the mayor's

20    office.  We handle the payroll system, the financial reports.

21         THE COURT:  The financial reports for --

22         PROSPECTIVE JUROR NO. 170:  For the City.

23         THE COURT:  So these are financial reports for

24    people who make a certain amount of money or more?

25         PROSPECTIVE JUROR NO. 170:  Employees and the

1  financial statements for the City.  It was created under Mayor

2  Beam, when the City didn't have money so they created FISA,

3  Financial Information Services Agency.

4            THE COURT:  And what do you do for the agency?

5            PROSPECTIVE JUROR NO. 170:  I'm a computer

6  programmer.

7            THE COURT:  All right.  I just have a few follow-up

8  questions for you.  Now, you indicated in your questionnaire

9  that back in 1995 you were on a criminal jury in a gun

10  possession case and that the jury reached a verdict.

11            PROSPECTIVE JUROR NO. 170:  Yes.

12            THE COURT:  Without telling me what the verdict was,

13  were you one of the 12 jurors who deliberated to that verdict?

14            PROSPECTIVE JUROR NO. 170:  Yes.

15            THE COURT:  Okay.  You had no other jury service,

16  that's the only time?

17            PROSPECTIVE JUROR NO. 170:  I was never selected.

18            THE COURT:  You went to jury duty but then you

19  weren't selected on other occasions?

20            PROSPECTIVE JUROR NO. 170:  Right.

21            THE COURT:  Thank you.  And you indicated that you

22  did read, before you filled out the questionnaire, you did

23  read in the newspaper and heard news on the radio, I guess,

24  about this case; is that right?

25            PROSPECTIVE JUROR NO. 170:  Yes.

Prospective Juror No. 170                              459

1          THE COURT:  But would this affect your ability to be

2    fair and impartial in this case?

3          PROSPECTIVE JUROR NO. 170:  Yes.

4          THE COURT:  Why?

5          PROSPECTIVE JUROR NO. 170:  Well, about 40 years ago

6    someone -- this guy forced himself on me and I said no, and he

7    doesn't understand when a woman says no, it's no.

8          THE COURT:  So what was the result?

9          PROSPECTIVE JUROR NO. 170:  He got his way.

10         THE COURT:  And did you report it?

11         PROSPECTIVE JUROR NO. 170:  No, because at that time

12   40 years ago -- first of all, I was over 20 at that time and

13   people wouldn't believe it.  It's different now.

14         THE COURT:  I see.

15         PROSPECTIVE JUROR NO. 170:  Compared to 40 years

16   ago.

17         THE COURT:  I see.  I am sure that was extremely

18   traumatic.  Bearing that in mind, do you think you could

19   listen to the testimony in this case and fairly and

20   impartially consider the testimony of people who come to court

21   and tell their stories, witnesses, and look at the evidence

22   and decide whether the charges, specific charges in this case

23   have been proven beyond a reasonable doubt?

24         PROSPECTIVE JUROR NO. 170:  I don't know.

25         THE COURT:  Why is that?

```
                        Sidebar                      460
```

1          PROSPECTIVE JUROR NO. 170:  Because I lived through

2    it.  I still remember, even though it was 40 years ago.

3          THE COURT:  Any other questions?

4          MR. AGNIFILO:  Nothing from us.

5          MS. PENZA:  Your Honor, can we have a brief sidebar?

6          THE COURT:  Sure.

7          (The following sidebar took place outside the

8    hearing of the courtroom.)

9          THE COURT:  Your Honor, she didn't raise that issue

10   in her questionnaire and, so, I think it -- we would just want

11   clarity as to --

12         THE COURT:  I would say, because there's nothing in

13   there.

14         MS. PENZA:  I think it would be helpful to have

15   clarity as to that.  And she also answered the same question

16   that asked that had her respond that way.  It was a question

17   about seen articles and she had written that she set that

18   aside.  It was confusing.

19         THE COURT:  She answered a question I didn't ask.  I

20   noticed that.  I will follow up.

21         MS. PENZA:  Thank you, Your Honor.

22         (Sidebar ends.)

23         PROSPECTIVE JUROR NO. 170:  So, this assault that

24   you described 40 years ago, you didn't mention that on your

25   questionnaire.

1           PROSPECTIVE JUROR NO. 170:  Those were questions

2    that -- that had me fill it out.

3           THE COURT:  There wasn't what --

4           PROSPECTIVE JUROR NO. 170:  I answered the question,

5    but there wasn't a place.

6           THE COURT:  There wasn't a place?  Well, there is a

7    question and you answered "No."  "Do you have any personal

8    experience where you were victimized where it would make it

9    difficult for you to be a fair and impartial juror?"  And you

10   said "No."

11          PROSPECTIVE JUROR NO. 170:  At that time I didn't

12   remember, but now I hear in the news it brings back because

13   this happened 40 years ago.  I didn't remember -- I don't

14   think about it until now.  I hear about it in the news.  It

15   brings back memories now.  I never told anybody; my close

16   friends, my family.  I just -- I didn't want to talk about it.

17   No one knows about it.

18          THE COURT:  Are there any other questions?

19          MR. AGNIFILO:  Nothing.

20          MS. PENZA:  No, Your Honor.

21          THE COURT:  Well, thank you for coming in.  You have

22   a nice day.

23          PROSPECTIVE JUROR NO. 170:  I appreciate it.

24          (Prospective juror exits.)

25          THE COURT:  Is there a motion?

Prospective Juror No. 170                              462

1          MR. AGNIFILO:  Yes, Judge.  We're going to move to

2     excuse the juror.  Your Honor is right, the questionnaire

3     asked questions directly.

4          THE COURT:  There were other questions.  That's the

5     first one I found.

6          MR. AGNIFILO:  There's 52 and 53 with zero writing

7     on that precise issue.  She didn't indicate yes.  My concern

8     really is I'm not sure if she sees this as her ticket to get

9     out of jury service, I don't know.  If she wanted to, she

10    would have put yes in the question.  I don't know what's

11    happening here.

12         THE COURT:  Right, but to follow up when she said I

13    didn't tell anyone about it, I don't talk about it, that would

14    say to me, that, you know that this is something she has

15    buried in her past.  I'm not a psychologist or a psychiatrist,

16    but it is something she does not want to talk about.  She

17    doesn't want to put it down.  She doesn't want to think about

18    it and it's -- it's very hurtful to her to talk about it,

19    which is totally understandable and whether it's everything

20    that she said or the way she described it, if it was the way

21    she described it or not, she feels, my sense is that this is

22    something that was very hurtful to her and too difficult to

23    even mention, but she mentioned it and she mentioned it and

24    wasn't asked about it before she mentioned it.  She was asked

25    a completely different question.  So we have to take her at

Prospective Juror No. 171                                    463

1   face value, I think, on something as personal and harmful as

2   this.

3               MR. AGNIFILO:  I agree.  That's why we ask that she

4   be excused.

5               THE COURT:  Any objection?

6               MS. PENZA:  No, Your Honor.

7               THE COURT:  All right.  Juror 170 is struck for

8   cause on consent.

9               So we have two more and then we have two who have

10  arrived since I gave the initial talk to the morning's jurors.

11  So we are going to start with 171.

12              (Prospective juror enters.)

13              THE COURT:  Please be seated.  You are Juror No.

14  171; correct?

15              PROSPECTIVE JUROR NO. 171:  Yes, I am.

16              THE COURT:  Welcome.

17              PROSPECTIVE JUROR NO. 171:  Thank you.

18              THE COURT:  And you currently work as an

19  administrative manager for Northwell Health?

20              PROSPECTIVE JUROR NO. 171:  I do, yes.

21              THE COURT:  How long have you done that?

22              PROSPECTIVE JUROR NO. 171:  I've been with Northwell

23  for almost two years now.

24              THE COURT:  And before that?

25              PROSPECTIVE JUROR NO. 171:  I worked for BlackRock

Prospective Juror No. 171                    464

1   asset management for almost nine years.

2            THE COURT:  What did you do for them?

3            PROSPECTIVE JUROR NO. 171:  I was a senior executive

4   assistant.

5            THE COURT:  Okay.  And do you work out in Lake

6   Success?

7            PROSPECTIVE JUROR NO. 171:  My building is in

8   Manhasset, yes.

9            THE COURT:  In Manhasset?

10           PROSPECTIVE JUROR NO. 171:  Yes.  It's five minutes

11  away.

12           THE COURT:  It's the North Shore piece of the

13  Northwell puzzle, so to speak?

14           PROSPECTIVE JUROR NO. 171:  Yes, exactly.

15           THE COURT:  Now, I have a few follow-up questions.

16  Do you know Northwell's policy about paying for jury duty?

17           PROSPECTIVE JUROR NO. 171:  I do.

18           THE COURT:  What is that?

19           PROSPECTIVE JUROR NO. 171:  They do pay for jury

20  duty.

21           THE COURT:  All of it?

22           PROSPECTIVE JUROR NO. 171:  Yes, they do.

23           THE COURT:  Thank you.  I have a few other questions

24  for you.  Now, you have been a juror in a criminal case

25  involving fraud; is that right?

Prospective Juror No. 171                                      465

1              PROSPECTIVE JUROR NO. 171:  That's correct.

2              THE COURT:  And this was ten years ago?

3              PROSPECTIVE JUROR NO. 171:  I would say at least ten

4     years ago.

5              THE COURT:  What county was that in?

6              PROSPECTIVE JUROR NO. 171:  In Queens.

7              THE COURT:  Queens?

8              PROSPECTIVE JUROR NO. 171:  Yes.

9              THE COURT:  And without telling me what the verdict

10    was, the jury reached a verdict; is that right?

11             PROSPECTIVE JUROR NO. 171:  Correct.

12             THE COURT:  And you deliberated with the jury to

13    reach that verdict?

14             PROSPECTIVE JUROR NO. 171:  I did, yes.

15             THE COURT:  Okay.  You indicated to this question,

16    "Have you or anyone close to you ever been the victim of

17    sexual assault including date rape?"  And you said, "Yes" and

18    you said your mother was when she was young?

19             PROSPECTIVE JUROR NO. 171:  She was, yes.

20             THE COURT:  She told you about this.  This was

21    before you were born?

22             PROSPECTIVE JUROR NO. 171:  Correct.

23             THE COURT:  I see.  And you also indicated that

24    knowing that would not make it difficult for you to be a fair

25    and impartial juror; is that correct?

Prospective Juror No. 171                                    466

1      PROSPECTIVE JUROR NO. 171:  Correct.

2      THE COURT:  You answered this question and then

3  there's a follow-up question.  "Do you hold any beliefs or

4  opinions that would prevent you from evaluating the testimony

5  of a law enforcement officer fairly and impartially?"  And you

6  said "No."  And then the second half of that was, would you be

7  inclined to believe a witness is more or less truthful solely

8  because that witness is a law enforcement officer?"

9      PROSPECTIVE JUROR NO. 171:  Can you repeat that,

10 please.

11     THE COURT:  It's a hard one.  I think we're going to

12 write it differently the next time because many people have a

13 problem with it.  I just want to tell you you are not the only

14 person who has trouble understanding this question.

15     Would you be inclined to believe a witness is more

16 or less truthful solely because that witness is a law

17 enforcement officer.

18     PROSPECTIVE JUROR NO. 171:  No.

19     THE COURT:  Any other questions?

20     MR. AGNIFILO:  No, Your Honor.

21     MS. PENZA:  No, Your Honor.

22     THE COURT:  Thank you for coming in.  Have a nice

23 day?

24     PROSPECTIVE JUROR NO. 171:  Thank you, you too.

25     (Prospective juror exits.)

Prospective Juror No. 172                    467

1          THE COURT:  Is there a motion?

2          MR. AGNIFILO:  No.

3          MS. PENZA:  No, Your Honor.

4          THE COURT:  All right.  Juror No. 171 is approved.

5          172.

6          (Prospective juror enters.)

7          THE COURT:  Please be seated.  Good morning.

8          PROSPECTIVE JUROR NO. 172:  Good morning.

9          THE COURT:  You are Juror No. 172?

10         PROSPECTIVE JUROR NO. 172:  Yes.

11         THE COURT:  Okay.  Welcome.

12         PROSPECTIVE JUROR NO. 172:  Thank you.

13         THE COURT:  You're a teacher?

14         PROSPECTIVE JUROR NO. 172:  Yes.

15         THE COURT:  All right.  And what level do you teach?

16         PROSPECTIVE JUROR NO. 172:  I teach fourth grade

17    special ed.

18         THE COURT:  In New York City?

19         PROSPECTIVE JUROR NO. 172:  Yes.

20         THE COURT:  The public schools?

21         PROSPECTIVE JUROR NO. 172:  Yes.

22         THE COURT:  I have a few follow-up questions for

23    you.  There's a question, "How important is your faith, if

24    any, to you."  You said, "Extremely important and I make major

25    life decisions based on my faith."  Is that right?

Prospective Juror No. 172                                      468

1          PROSPECTIVE JUROR NO. 172:  Yes.

2          THE COURT:  And you interned in the District

3    Attorney's office 15 years ago.  Was that in Staten Island?

4          PROSPECTIVE JUROR NO. 172:  Yes, it was.

5          THE COURT:  And your father is a retired NYPD

6    detective?

7          PROSPECTIVE JUROR NO. 172:  Yes, he is.

8          THE COURT:  And your mother was an NYPD sergeant?

9          PROSPECTIVE JUROR NO. 172:  Yes.

10         THE COURT:  But she is deceased?

11         PROSPECTIVE JUROR NO. 172:  Yes.

12         THE COURT:  Did they meet on the job as they say?

13         PROSPECTIVE JUROR NO. 172:  No, they met in church.

14         THE COURT:  They met in church.  All right.

15         PROSPECTIVE JUROR NO. 172:  Yes.

16         THE COURT:  And then you have an uncle who's a

17   retired corrections officer and a cousin who's a corrections

18   officer.  So you have a family with a number of people who

19   were in law enforcement.

20         PROSPECTIVE JUROR NO. 172:  Yes.

21         THE COURT:  There will be some law enforcement

22   officers who testify.  Do you feel you can be fair and

23   impartial in considering their testimony and not be biased one

24   way or another because they're law enforcement officers?

25         PROSPECTIVE JUROR NO. 172:  I feel I do.  The way I

1   feel is we're all people.  We're all human and from my

2   perspective I can see kind of, like, both sides of the law.

3   So because I am Hispanic and my parents were law enforcement.

4   So I can see it in a fair way.

5              THE COURT:  So, the Court will instruct you that all

6   the witnesses should be assessed the same way.  In other

7   words, that you should consider their testimony on its merits

8   and decide whether to believe them or not believe them based

9   on what they say here in court and not give any special

10  consideration one way or another to people who are law

11  enforcement officers as opposed to people who are civilians,

12  let's say.  Can you follow that basic rule?

13             PROSPECTIVE JUROR NO. 172:  Absolutely.

14             THE COURT:  Now, you have a five-year old?

15             PROSPECTIVE JUROR NO. 172:  Yes.

16             THE COURT:  This is a six-week trial.

17             PROSPECTIVE JUROR NO. 172:  Yes.

18             THE COURT:  So would there be any difficulty for

19  your five-year old getting to school and so forth?

20             PROSPECTIVE JUROR NO. 172:  My father and his wife

21  help me to take her and pick her up for me because I'm a

22  teacher.  So it kind of would be the same schedule for me.

23             THE COURT:  I just wanted to make sure.

24             PROSPECTIVE JUROR NO. 172:  Thank you.  Sometimes

25  people don't think about it when they come in and when they're

Prospective Juror No. 172                                    470

1   faced with being a juror they say, how am I going to take care

2   of getting my child to school.  That is why I ask.

3            PROSPECTIVE JUROR NO. 172:  Thank you.

4            THE COURT:  I had two boys.  And you have read

5   something about this case?

6            PROSPECTIVE JUROR NO. 172:  Yes.

7            THE COURT:  Whatever you read before you filled out

8   this questionnaire, can you put that aside and disregard it

9   and just base your consideration of the facts on the evidence

10  that's presented here in court during the trial if you are

11  selected?

12           PROSPECTIVE JUROR NO. 172:  Absolutely.

13           THE COURT:  Any questions?

14           MR. AGNIFILO:  No, Your Honor.

15           MS. PENZA:  No, Your Honor.

16           THE COURT:  Thank you for coming in.

17           PROSPECTIVE JUROR NO. 172:  You too.

18           (Prospective juror exits.)

19           THE COURT:  Is there a motion?

20           MR. AGNIFILO:  Not from us.

21           MS. PENZA:  No, Your Honor.

22           THE COURT:  Juror No. 172 is approved.  Then we have

23  two additional jurors coming, 60 and 143.

24           (Recess taken.)

25           (Continued on the following page.)

SN        OCR        RPR

471

1          (Prospective Jurors enter the courtroom.)

2          THE COURT:  Ma'am, you can sit in the front row.

3          Welcome.  I'm Judge Garaufis and I think we met when

4    you filled out your questionnaires.  Let me just reintroduce

5    you to the parties to this case.

6          At the table closest to you are the government

7    lawyers, Assistant U.S. Attorneys Moira Penza, Tanya Hajjar

8    and Mark Lesko.  And then at the far table is the defendant

9    Keith Raniere who is wearing a sweater and an open-collared

10   shirt and he is represented by lawyers Marc Agnifilo, Teny

11   Geragos, Paul DerOhannesian and Danielle Smith.

12         So, I'm going to advise you both that Mr. Raniere,

13   Keith Raniere is the only defendant who will be standing trial

14   before the jury that we are picking now and please do not

15   speculate as to why this is the case.  So, Mr. Raniere is the

16   only defendant who will be tried in this trial.

17         Now, what we are going to do is, who is Juror

18   No. 60?

19         THE PROSPECTIVE JUROR:  Right here.

20         THE COURT:  So you will go first and then Juror No.

21   143 will wait in the jury deliberation room behind the

22   courtroom, Mr. Reccoppa will show you, while we interview

23   Juror No. 60 and then we will interview Juror No. 143.  We

24   interview jurors one at a time.

25         I am going to just mention a couple of things.

CMH      OCR      RMR      CRR      FCRR

472

1          The trial is going to begin on Tuesday, May 7th, and

2    it will last up to six weeks.  The Court will provide a

3    schedule of the trial days before the trial starts.  Please

4    continue to call in to the jury information phone line as

5    instructed by the jury clerk, but I'm going to remind you

6    about certain other things that are very important as well.

7          It is extremely important that you follow my

8    instruction that you not discuss the case with anyone, not

9    your family, your friends or business associates, and not with

10   the other jurors.

11         In addition, you must not read, listen to, watch or

12   access any accounts of this case on any form of media,

13   newspaper, TV, radio, podcasts or the internet, nor research

14   or seek outside information about any aspect of the case.

15   Please do not communicate with anyone about the case on your

16   phone, whether through e-mail, text messaging or any other

17   means, through any blog or website or by way of any social

18   media including Facebook, Twitter, Instagram, YouTube or other

19   similar sites.  You must not consider anything you may have

20   read or heard about the case outside of this courtroom,

21   whether you read it before or during jury selection purposes.

22         Do not attempt any independent research or

23   investigation about the case.  Do not visit any of the

24   locations identified in the questionnaire or discussed during

25   the course of jury selection.

```
                    Sidebar                    473
```

1          So, at this point, I am going to ask Juror No. 143

2   to retire to the jury deliberation room and we will be with

3   you in just a few minutes.

4          THE PROSPECTIVE JUROR:  Okay.

5          THE COURT:  Okay?  Thank you.

6          And Juror No. 60, would you take that seat by the

7   microphone?

8          THE PROSPECTIVE JUROR:  Sure.

9          THE COURT:  So we can hear what you have to say.

10          (Prospective Juror 143 exits the courtroom.)

11          MR. AGNIFILO:  May we have a quick sidebar?  It will

12   just take two seconds.

13          THE COURT:  Of course.

14          (The following occurred at sidebar.)

15          THE COURT:  I thought there was something --

16          MR. AGNIFILO:  No.  I think we had 60.

17          MS. PENZA:  Judge Garaufis brought him back.

18          THE COURT:  I'm sorry?

19          MS. GERAGOS:  You're bringing him back because he

20   said he was not sure he could be fair so Mr. Agnifilo made a

21   cause challenge.  They objected to it.  You were bringing him

22   back to see if he could be fair.  Secondly --

23          THE COURT:  I remember, because of the way he wrote

24   what he wrote and what he wrote, yes.  Thanks for reminding

25   me.  That's right.

Prospective Juror 60                                474

1            (In open court; sidebar ends.)

2            THE COURT:  So you've been here before.

3            THE PROSPECTIVE JUROR:  Yes.

4            THE COURT:  Right?  And I just wanted to follow up

5    with you on your remarks the last time.

6            You were asked:  On the question of evidence being

7    presented involving allegations of a sexual nature with

8    someone who is underage, do you believe you could be fair and

9    impartial?  You said you weren't sure.  Why is it that you're

10   not sure?

11           THE PROSPECTIVE JUROR:  The nature of it.

12           THE COURT:  The nature of it?

13           THE PROSPECTIVE JUROR:  In terms of -- you said that

14   there might be a possibility that they could be underage.

15           THE COURT:  They might be underage.  Well, there may

16   be evidence presented that some of the sexual encounters that

17   the government will try to prove specifically involved girls

18   who are underage and who could not consent and the question

19   will be whether, when you hear that and learn about it,

20   whether you will be able to consider that evidence along with

21   all the other evidence in deciding whether the defendant is

22   guilty of the crimes for which he is charged.

23           So it's basically a situation where you have to

24   listen to some evidence and consider the evidence in

25   connection with the law as I give it to you in deciding

Prospective Juror 60                                    475

1   whether the defendant is guilty or not guilty.

2              THE PROSPECTIVE JUROR:  I think I understand now.

3              THE COURT:  You think you can do that?

4              THE PROSPECTIVE JUROR:  Yes.

5              THE COURT:  I'm sorry?

6              THE PROSPECTIVE JUROR:  Yes.

7              THE COURT:  Now, let me just go back to what you're

8   doing.  You're in school now?

9              THE PROSPECTIVE JUROR:  Oh, no, not currently.  Not

10  this semester.

11             THE COURT:  Not this semester.  When do you go back

12  to school?

13             THE PROSPECTIVE JUROR:  Around, like, the end of

14  August.

15             THE COURT:  The end of August.  So sitting on the

16  jury would not interfere with going back to school?

17             THE PROSPECTIVE JUROR:  No.

18             THE COURT:  Okay.  You have a summer job?

19             THE PROSPECTIVE JUROR:  I'm seeking.

20             THE COURT:  What's that?

21             THE PROSPECTIVE JUROR:  I'm looking for.

22             THE COURT:  "Seeking," you said?

23             THE PROSPECTIVE JUROR:  Yes.

24             THE COURT:  Okay.  How long were you a cashier at

25  the Salvation Army?

476

1           THE PROSPECTIVE JUROR:  For about, I think three
2    months, from July until September.
3           THE COURT:  Last year?
4           THE PROSPECTIVE JUROR:  Yes.
5           THE COURT:  Anything else?
6           MR. AGNIFILO:  No, no, Judge.  Thank you.
7           MS. PENZA:  No, Your Honor.
8           THE COURT:  All right.  Thank you very much for
9    coming in.  Have a nice day and thanks for coming back.  We
10   appreciate it.
11          THE PROSPECTIVE JUROR:  You're welcome.
12          (Prospective Juror 60 exits the courtroom.)
13          MR. AGNIFILO:  We withdraw the motion in light of
14   the juror's answer to Your Honor that he can follow.
15          THE COURT:  I think it just wasn't clear to him.
16          MR. AGNIFILO:  I think that's right.
17          THE COURT:  Anything?
18          MS. PENZA:  No, Your Honor.  Nothing.
19          THE COURT:  Okay.  Without objection, Juror No. 60
20   is approved.
21          Okay.  143 who we have not seen before is next but
22   thanks for the catch.
23          MS. GERAGOS:  You're welcome.
24          MR. AGNIFILO:  It's all Ms. Geragos.
25          THE COURT:  Well, I pointed to Ms. Geragos.

Prospective Juror 143                                    477

1              (Prospective Juror 143 enters the courtroom.)

2              THE COURT:  Please be seated, ma'am.

3              THE PROSPECTIVE JUROR:  Okay.

4              THE COURT:  Good afternoon.

5              THE PROSPECTIVE JUROR:  Good afternoon, sir.

6              THE COURT:  And welcome.  I just have a few

7    follow-up questions for you.

8              Did you have any difficulty filling out the

9    questionnaire?

10             THE PROSPECTIVE JUROR:  Yes, because I don't speak

11   English that very well.

12             THE COURT:  Okay.  Now, the medicines that you take,

13   what are they?

14             THE PROSPECTIVE JUROR:  Metformin.  That's because

15   I'm diabetic.

16             THE COURT:  And --

17             THE PROSPECTIVE JUROR:  And the other one, I had

18   cancer, so I'm taking that cancer medication.

19             THE COURT:  I see.  And do these medications affect

20   your ability to think or reason?

21             THE PROSPECTIVE JUROR:  I think so, yes.  Specially

22   the Metformin.  I think it does.

23             THE COURT:  You don't take insulin though?

24             THE PROSPECTIVE JUROR:  No, thank God.

25             THE COURT:  Okay.  Good.

Prospective Juror 143                                478

1          THE PROSPECTIVE JUROR:  Thank goodness for that one.

2          THE COURT:  Very good.  And you're retired, is that

3    right?

4          THE PROSPECTIVE JUROR:  Yes, sir.

5          THE COURT:  And before you retired, what did you do

6    for a living?

7          THE PROSPECTIVE JUROR:  I was a nurse's aid.  I was

8    working in the nursing home taking care of the elderly.

9          THE COURT:  I see.

10          You answered this question:  Do you worry about you

11    or someone else close to you being falsely accused of sexual

12    abuse or sexual assault?

13          THE PROSPECTIVE JUROR:  No, I don't know anybody

14    have that.

15          THE COURT:  Would you be concerned about someone

16    being falsely accused?

17          THE PROSPECTIVE JUROR:  Oh, yes, I think I would,

18    yes.

19          THE COURT:  Now, the government has the burden of

20    proof to prove these allegations against Mr. Raniere beyond a

21    reasonable doubt, all right, based on the evidence at the

22    trial.  Do you understand that?

23          THE PROSPECTIVE JUROR:  Not really.

24          THE COURT:  Well, there is a standard of proof that

25    would have to be used by the jury to decide whether the

CMH     OCR     RMR     CRR     FCRR

Prospective Juror 143                                        479

1  defendant is guilty and that standard is proof beyond a

2  reasonable doubt.  Do you understand that?

3          THE PROSPECTIVE JUROR:  Yeah.

4          THE COURT:  Okay.  Are you willing to accept that

5  standard of proof as a juror and use it in considering the

6  evidence in the case?

7          THE PROSPECTIVE JUROR:  I think so.

8          THE COURT:  Okay.  Under the law, you must consider

9  each defendant and each alleged crime separately.  We only

10 have one defendant here.  You must find a defendant not guilty

11 of the alleged crime you are considering unless the evidence

12 that has been presented in court proves him guilty beyond, of

13 the crime beyond a reasonable doubt.

14         Are you willing to follow that standard of beyond a

15 reasonable doubt?

16         THE PROSPECTIVE JUROR:  I think I could follow.

17         THE COURT:  You could what?

18         THE PROSPECTIVE JUROR:  I think I could follow.

19         THE COURT:  You could?

20         THE PROSPECTIVE JUROR:  Follow.

21         THE COURT:  That rule?

22         THE PROSPECTIVE JUROR:  That rule.  If I understand

23 some of it, you know.

24         THE COURT:  Well, I mean, it's a basic rule of

25 criminal law in this country that you have to be rather sure

Sidebar                                                      480

1  based on the evidence that the person is guilty and the

2  standard, it doesn't mean that the government has to prove

3  that the defendant is guilty beyond all doubt, but the

4  government has to prove that the defendant is guilty beyond a

5  reasonable doubt and I will discuss that with you, the jury,

6  at the end of the trial and tell you what that rule means in

7  more detail.  Do you understand that?

8         THE PROSPECTIVE JUROR:  Okay, yes.

9         THE COURT:  Okay.  Any other questions?

10         MR. AGNIFILO:  No, Judge.

11         MS. PENZA:  No, Your Honor.

12         THE COURT:  All right.  Thank you for coming in.

13         THE PROSPECTIVE JUROR:  Thank you.

14         THE COURT:  And Mr. Reccoppa will tell you what to

15  do next.

16         MR. AGNIFILO:  Thank you.

17         THE PROSPECTIVE JUROR:  Have a nice day.

18         MR. AGNIFILO:  A quick sidebar?  Literally

19  30 seconds.

20         THE COURT:  Just one moment.

21         THE PROSPECTIVE JUROR:  Okay.

22         (The following occurred at sidebar.)

23         MR. AGNIFILO:  There's some question -- I just want

24  to make sure she really understands.  She's incredibly

25  respectful.  She's paying rapt attention to everything Your

Prospective Juror 143                    481

1   Honor is saying.  I just have a little concern about her

2   ability to understand.  She seems like a lovely person.  I

3   don't know if Your Honor wants to ask her, Have you been able

4   to understand everything that I've said, is this all clear to

5   you, or something relevant if the Court wants to do it.

6              THE COURT:  I'll ask her an open-ended question.

7   I'm not going to ask her if she understands.

8              MR. AGNIFILO:  That's fine.  Very good.

9              (In open court; sidebar ends.)

10              THE COURT:  Let me just ask you, do you have any

11   questions for me about this process?

12              THE PROSPECTIVE JUROR:  No.  I just want to say I'm

13   sorry I was late.

14              THE COURT:  You're sorry you were late?

15              THE PROSPECTIVE JUROR:  Yes, because I didn't have

16   with me my number when I called last night.  That's why I

17   didn't get ready.  So the guy called me this morning.  I says,

18   oh, my Lord, I'm not even ready yet, I didn't even shower,

19   because I was supposed -- I've been taking care of this

20   elderly woman.  She was my patient before.  So I've been

21   helping her so she asked me if I could go in today since I

22   didn't have to come over.

23              THE COURT:  And so --

24              THE PROSPECTIVE JUROR:  So I called her this

25   morning.

482

1          THE COURT:  So, from time to time, you help out --

2          THE PROSPECTIVE JUROR:  Yes.

3          THE COURT:  -- even though you retired?

4          THE PROSPECTIVE JUROR:  Yes.

5          THE COURT:  And do you like doing that?

6          THE PROSPECTIVE JUROR:  Yes.  She needs me.  She has

7     no one.

8          THE COURT:  That's very nice of you to do that.

9          THE PROSPECTIVE JUROR:  Thank you.

10         THE COURT:  All right.  Well, you have a lovely day.

11         THE PROSPECTIVE JUROR:  Thank you so much.

12         Okay.  Have a good day, everyone.

13         (Prospective Juror 143 exits the courtroom.)

14         MR. AGNIFILO:  We have no motion.

15         MS. PENZA:  No, Your Honor.

16         THE COURT:  Okay.  Juror No. 143 is approved.

17         So what we will do for this afternoon is we have

18    another, I don't know, 15 or 16 jurors to interview, and then

19    we will see where we are in terms of the numbers.

20         We are not going to have jury selection tomorrow in

21    any event at the request of both sides.  And then we will see

22    if we need to do a day of it next week but an alternative, and

23    I want to discuss this with you, you can discuss it at

24    lunchtime among yourselves, is that on the 6th of May, we

25    bring in everyone who's been approved for final peremptory

483

1    challenges, but we also bring in 20 or 30 additional people in

2    case we have a substantial call-off in the number of jurors

3    for whatever reasons they have, health, changed circumstances,

4    they left town because they knew we were making the final

5    selections, whatever it happens to be, and so that we can

6    interview more jurors before we do the final peremptory

7    challenges.  Then we will do the peremptories on the 6th and

8    we will have opening statements on the 7th.  So that's a

9    concept that sometimes works since we do have a week to play

10   with here.

11              MR. AGNIFILO:  It does.  It sounds good to us.

12   We'll talk about it, but it sounds perfect for us.

13              MS. PENZA:  It sounds fine for the government but we

14   can talk about it.

15              THE COURT:  Talk about it and we will know better

16   after the completion of interviews today exactly how many, you

17   now, whether we have enough to cushion, if you will, to avoid

18   bringing in more jurors next week.

19              MR. AGNIFILO:  Right.

20              THE COURT:  Okay?  All right.  We will take a lunch

21   break until 2:00.

22              MS. PENZA:  Thank you, Your Honor.

23              MR. AGNIFILO:  Thank you very much.

24              (Luncheon recess .)

25

484

1                      AFTERNOON SESSION

2              (In open court; prospective jurors not present.)

3              THE COURT:  Everyone is here for the afternoon

4     session except Juror 173 is not yet here.  He's traveling in

5     from Brooklyn.

6              MR. AGNIFILO:  From Brooklyn?  Hopefully he or she

7     has a passport.

8              THE COURT:  Okay.  Please be seated.

9              All right.  We are going to start, we will have them

10    all come in and then we will start with 132.

11             (Prospective jurors enter the courtroom.)

12             THE COURT:  Okay.  Please be seated, everybody.

13             Good afternoon, ladies and gentlemen.  I'm

14    Judge Garaufis and we have all reviewed your questionnaire

15    results and we will ask you a few extra questions when you are

16    called out here one at a time.

17             Juror 132?  All right.  You will go first when

18    everyone else goes back to the jury deliberation room later.

19    We're not ready yet.  You will take that first seat in the

20    first row with the microphone over there.  There is a

21    microphone.  You don't have to do it now.  Not now.  You can

22    do it when we finish.  Okay?  And we will interview you one at

23    a time.

24             I'd like to reintroduce you to the parties to this

25    case.  The U.S. Government is represented by the following

485

 1    Assistant United States Attorneys.  They are seated at the

 2    first table here.  Moira Penza, Tanya Hajjar and Mark Lesko.

 3    And seated at the far table is defendant Keith Raniere who is

 4    wearing a sweater, and his attorneys Marc Agnifilo and Teny

 5    Geragos and Paul DerOhannesian and attorney Danielle Smith.

 6              Now, I just want to point out that Keith Raniere is

 7    the only defendant who will stand trial before the jury that's

 8    being selected this week.  Please do not speculate as to why

 9    this is the case.

10              Now, I would also like to let you know that when we

11    complete jury selection, the trial will begin on or about

12    Tuesday, May 7th, and it will last up to six weeks.  The Court

13    will provide a schedule of trial days before the trial starts

14    and you should continue to call in to the jury information

15    phone line as instructed by the jury clerk.

16              I would like to remind you that it is extremely

17    important that you follow my instructions that you not discuss

18    this case with anyone not your family, your friends or

19    business associates, and not your fellow jurors.  So when you

20    go back into the jury deliberation room while you are waiting,

21    feel free to discuss many different things.  You can talk

22    about the Mets, the Yankees, the weather, movies you like,

23    what it's going to be like to see the Avengers this weekend if

24    that's what you are going to do, but please do not discuss

25    anything about the case.

486

1          In addition, you must not read, listen to, watch or

2    access any accounts of this case on any form of media,

3    newspaper, TV, radio, podcasts or the internet, nor research

4    or seek outside information about any aspect of the case.

5    Please do not communicate with anyone about the case on your

6    phone whether through e-mail, text messaging or any other

7    means, through any blog or website or by way of any social

8    media including Facebook, Twitter, Instagram, YouTube and

9    other similar sites.

10          You must not consider anything you may have read or

11   heard about the case outside this courtroom, whether you read

12   it before or during the jury selection process.  Do not

13   attempt any independent research or investigation about this

14   case and do not visit any of the locations identified on the

15   questionnaire or discussed during the course of the jury

16   selection process.

17          So, on behalf of the parties to the case, I would

18   like to thank you for your efforts to be as complete as

19   possible in answering the questions on the questionnaire and

20   we would just ask you each a few follow-up questions to

21   clarify certain points that we think might need some

22   clarification.

23          So at this point, everyone except Juror 132 should

24   proceed to the jury deliberation room.

25          All rise for the jurors, please.

Prospective Juror 132                                487

```
 1            (Prospective jurors except Juror No. 132 exit.)
 2            THE COURT:  Take that first seat in the first row.
 3  Thank you.
 4            Okay.  Everyone may be seated.
 5            So you are Juror No. 132, correct?
 6            THE PROSPECTIVE JUROR:  Sorry.  I can't hear too
 7  good.
 8            THE COURT:  Could you lower the microphone?
 9            THE PROSPECTIVE JUROR:  I couldn't hear you.  I'm
10  sorry.
11            THE COURT:  You are Juror No. 132.
12            THE PROSPECTIVE JUROR:  Yes.  Yes.
13            THE COURT:  Welcome.  I have just a few questions
14  for you.
15            Now, do you take any medicine for your blood
16  pressure?
17            THE PROSPECTIVE JUROR:  Yes.
18            THE COURT:  What do you take?
19            THE PROSPECTIVE JUROR:  I forgot the name.
20            THE COURT:  One or two pills?
21            THE PROSPECTIVE JUROR:  I take one, 50 milligram.
22            THE COURT:  Okay.
23            THE PROSPECTIVE JUROR:  "Amo" something, A-M-O.  I
24  don't remember the name.
25            THE COURT:  Okay.  And does it affect your ability
```

Prospective Juror 132                                    488

1    to think?

2                  THE PROSPECTIVE JUROR:  No.

3                  THE COURT:  Okay.  And you're retired, I take it?

4                  THE PROSPECTIVE JUROR:  Yes.

5                  THE COURT:  Okay.  And so what kind of work did you

6    do when you were working?

7                  THE PROSPECTIVE JUROR:  Secretarial and data entry.

8                  THE COURT:  I see.  How long did you work?

9                  THE PROSPECTIVE JUROR:  I've been retired for about

10   22 years taking care of the grandchildren.

11                 THE COURT:  Oh, how nice.  How old are the

12   grandchildren?

13                 THE PROSPECTIVE JUROR:  They're 22 -- there are six

14   of them, 22 and the youngest is 5.

15                 THE COURT:  I see.  And how much time do you spend

16   taking care of the grandchildren?

17                 THE PROSPECTIVE JUROR:  Most of my time.  Well, four

18   of them are in Toronto, Canada and two are in Florida.

19                 THE COURT:  Oh, I see.

20                 THE PROSPECTIVE JUROR:  So we travel a lot.

21                 THE COURT:  I see.

22                 THE PROSPECTIVE JUROR:  I just got back there for

23   Easter.  I spent a week with them.

24                 THE COURT:  Oh, how nice.

25                 THE PROSPECTIVE JUROR:  Easter and next month, I'm

CMH       OCR       RMR       CRR       FCRR

Prospective Juror 132                              489

1  going to Florida.  Michaela, the 17-year old, is graduating

2  from high school.

3              THE COURT:  And when is that?

4              THE PROSPECTIVE JUROR:  She's going to college.

5              THE COURT:  When is that?

6              THE PROSPECTIVE JUROR:  So we travel a lot just to

7  see them.

8              THE COURT:  When is that travel?

9              THE PROSPECTIVE JUROR:  The graduation?  The

10  itinerary was on my cellphone.  It's, May 25th is the

11  graduation but I think we're going on the 21st, 21st to the

12  25th.

13             THE COURT:  You have tickets for this trip?

14             THE PROSPECTIVE JUROR:  Yes.  It's in my cellphone

15  but they took it downstairs.

16             THE COURT:  I'm sure.

17             Any questions for the juror?

18             MR. AGNIFILO:  Not from us, Judge.

19             MS. COOLEY:  No, Your Honor.

20             THE COURT:  Okay.  Well, thank you for coming in.

21             THE PROSPECTIVE JUROR:  Thank you.

22             THE COURT:  Nice to meet you.

23             (Prospective Juror 132 exits the courtroom.)

24             THE COURT:  Is there a motion?

25             MR. AGNIFILO:  Yes, Judge.  We're going to move to

1   strike the juror.  Her prepaid trip is going to be actually

2   the 21st, Wednesday, the 22nd, Thursday, the 23rd, and then

3   through the weekend.

4              THE COURT:  That's three --

5              MR. AGNIFILO:  Three trial days.

6              MS. PENZA:  We agree, Your Honor.

7              THE COURT:  Okay.  Juror No. 132 is struck for cause

8   on consent.

9              (Prospective Juror 132 excused.)

10             THE COURT:  Next is 177 because 173 is traveling

11  from Brooklyn.  177.

12             (Prospective Juror 177 enters the courtroom.)

13             THE COURT:  Please be seated, sir.

14             THE PROSPECTIVE JUROR:  Yes.

15             THE COURT:  You're Juror 177?

16             THE PROSPECTIVE JUROR:  Indeed it is.

17             THE COURT:  Welcome.  So you work for the Town of

18  Islip?

19             THE PROSPECTIVE JUROR:  Yes, I do.

20             THE COURT:  How long have you been doing that?

21             THE PROSPECTIVE JUROR:  I've been doing that part

22  time for the past two years now going to and from school and I

23  started full time about eight months ago in August.

24             THE COURT:  I see.  You finished school and started

25  there?

Prospective Juror 177                                    491

1          THE PROSPECTIVE JUROR:  Yes.  Bachelor's degree in

2    network administration from Alfred State College.

3          THE COURT:  Very good.

4          THE PROSPECTIVE JUROR:  Thank you.

5          THE COURT:  So did you check to see if you would be

6    paid for your jury duty?

7          THE PROSPECTIVE JUROR:  I didn't check but I was

8    told ahead of time saying that I had jury duty at some point.

9          THE COURT:  And they said you would be paid for all

10   of your jury duty?

11         THE PROSPECTIVE JUROR:  Yes, that is what my

12   co-workers told me but people could be wrong.  I didn't check

13   with personnel.

14         THE COURT:  Just double check.

15         THE PROSPECTIVE JUROR:  Yes.

16         THE COURT:  But most governments pay for the

17   entirety of jury duty.

18         THE PROSPECTIVE JUROR:  And then I'm supposed to

19   give the $50 to them or something like that.

20         THE COURT:  They want your $50, that's right.

21   You're not surprised, are you?

22         THE PROSPECTIVE JUROR:  No.

23         THE COURT:  Good.  So I have a few questions

24   following on to your answers on the questionnaire.

25         THE PROSPECTIVE JUROR:  Okay.

Case 1:18-cr-00204-NGG-VMS  Document 835  Filed 01/09/20  Page 99 of 205 PageID #: 13252

Prospective Juror 177                          492

1           THE COURT:  You indicated you have a couple of

2   friends who are aspiring law enforcement officers.

3           THE PROSPECTIVE JUROR:  Uh-huh.

4           THE COURT:  And have they yet gotten these jobs?

5           THE PROSPECTIVE JUROR:  No.  So, my one friend who

6   is, who has been an aspiring law officer for a while has been

7   working as a nurse in, gosh, I don't remember, some hospital

8   in Smithtown.  Sorry.  The names escape me.  And my other

9   friend is going to St. John's or John Jay, I'm sorry.

10          THE COURT:  John Jay in Manhattan?

11          THE PROSPECTIVE JUROR:  My apologies.

12          THE COURT:  In Manhattan?

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  Okay.  Now, these are friends from the

15  neighborhood or from school?

16          THE PROSPECTIVE JUROR:  Yes.  So my one friend who

17  is a nurse, I have been going to the same school district with

18  him.  I've known him since fourth grade.  And my other friend

19  who is going to John Jay, I've known him since ninth grade.

20          THE COURT:  I see.

21          THE PROSPECTIVE JUROR:  But he's in Deer Park so

22  he's a little further away.

23          THE COURT:  These are social friends?

24          THE PROSPECTIVE JUROR:  Yes, those are my two

25  closest friends.

CMH        OCR        RMR        CRR        FCRR

Prospective Juror 177                                    493

1          THE COURT:  I see.

2          Do you ever post comments on any internet forums or

3    websites?  You said yes, you sometimes interact on social

4    media like Reddit and Twitter.  Is that right?

5          THE PROSPECTIVE JUROR:  Yes.

6          THE COURT:  Okay.  You know not to discuss this

7    case --

8          THE PROSPECTIVE JUROR:  Yeah, no.

9          THE COURT:  -- on any of those websites?

10          THE PROSPECTIVE JUROR:  Uh-huh.

11          THE COURT:  Okay.  And what's the last movie you

12   saw?

13          THE PROSPECTIVE JUROR:  Gosh, I don't watch movies

14   very often.  The last one I can remember is Silver Linings

15   Playbook.

16          THE COURT:  Oh, yes, loved that movie, with Bradley

17   Cooper.

18          THE PROSPECTIVE JUROR:  Yes.  Great duo, him and,

19   what's her face?  I don't remember.  I'm so bad with

20   celebrities.  Jennifer Aniston?  I don't know who it is.

21          THE COURT:  Okay.

22          THE PROSPECTIVE JUROR:  No, I don't remember.  I

23   don't remember now.

24          THE COURT:  That's fine.

25          MR. AGNIFILO:  Jennifer Lawrence.

Prospective Juror 177                          494

1           THE PROSPECTIVE JUROR:  Lawrence.  Lawrence.
2    Aniston.  Completely separate people.
3           THE COURT:  Thank you very much.  I appreciate the
4    assistance.
5           THE PROSPECTIVE JUROR:  You can tell I don't watch
6    "Friends" very much.
7           THE COURT:  You also stated that you've looked at
8    life coach and self help video.
9           THE PROSPECTIVE JUROR:  Yes.
10          THE COURT:  What is that?
11          THE PROSPECTIVE JUROR:  Well --
12          THE COURT:  It's too late for me but what's in it
13   for you?
14          THE PROSPECTIVE JUROR:  I just kind of, within the
15   past year, have been sort of obsessed with just self-help life
16   coach stuff, just sort of maximizing your life and not being a
17   dreary, you know, sad individual who just lulls through life.
18   So, yes, that's the long and short of it.
19          THE COURT:  How is it going so far?
20          THE PROSPECTIVE JUROR:  It's going well.
21          THE COURT:  Okay.
22          THE PROSPECTIVE JUROR:  Absolutely.
23          THE COURT:  Let's move on from there.  Good.
24          All right.  And you said, dash:  Watching spike ball
25   technology.  These are different things?

Prospective Juror 177                          495

1         THE PROSPECTIVE JUROR:  Yes.  I must have not put

2    the proper punctuation or something like that.  Spike ball is

3    a sort of lesser known sport that I play.

4         THE COURT:  And you found Tony Robbins' stuff to be

5    helpful?

6         THE PROSPECTIVE JUROR:  Yes.  He's one of the more,

7    he's kind of like a role model, I guess you can say.  I like

8    his work most among the other life coach people.

9         THE COURT:  How did you find out about him?

10        THE PROSPECTIVE JUROR:  YouTube's algorithm.  I

11   watched one video, gosh, I don't even know what it was,

12   something pertaining to, like, life coaching and, you know,

13   building charisma and all that, and YouTube thought that I

14   might like Tony Robbins so that led me down the rabbit hole.

15        THE COURT:  Now, you answered this question:  Have

16   you or anyone close to you ever been the victim of sexual

17   assault including date rape?  And you said no but then you

18   said:  I had a girlfriend in the past I believe was a

19   pathological lying sociopath that claimed she was date raped

20   by someone after our relationship but I am doubtful that was

21   true.

22        THE PROSPECTIVE JUROR:  Yes.  I figured that would

23   be --

24        THE COURT:  It caught my attention.

25        So the question, my question is do you think you're

Prospective Juror 177                    496

1   a good judge of these things?

2          THE PROSPECTIVE JUROR:  Yes.  I mean, I don't like

3   to, you know, treat someone as if, you know, they've done

4   something that I don't know for sure.  I know that sounds very

5   pander-y but, like, I don't parade around saying that my

6   ex-girlfriend was a complete psychopath who was doing all

7   these terrible things, but there was a lot of stories that

8   didn't, like, line up over time and that was my assumption, so

9   I decided to cut all ties and make sure that she can't access,

10  you know, my life in any way.

11         THE COURT:  So my question, I suppose my question

12  then is do you think that you can listen to the testimony

13  about issues like rape or allegations of child exploitation

14  and so forth objectively, dispassionately, and be fair and

15  impartial in considering the evidence as to whether the

16  defendant has committed any of the crimes that he is accused

17  of?  Do you think you can do that?

18         THE PROSPECTIVE JUROR:  Yes, absolutely.

19         THE COURT:  And do you understand that your

20  responsibility is to assess the testimony and the other

21  evidence and determine whether the defendant has been proven

22  guilty beyond a reasonable doubt of any or all of the charges

23  against him?

24         THE PROSPECTIVE JUROR:  Absolutely, yes.

25         MR. AGNIFILO:  Nothing from us, Judge.

```
                        Sidebar                      497

1          THE COURT:  Anything from the government?

2          MS. PENZA:  Yes.  May we have a sidebar?

3          THE COURT:  Yes, sure.

4          (The following occurred at sidebar.)

5          THE COURT:  Welcome back.

6          MS. SAUL:  Thank you.

7          THE COURT:  Yes?

8          MS. PENZA:  Thank you.  So we are hoping that you

9     would follow up on whether he's ever been exposed to any of

10    the teachings of NXIVM or ESP or Keith Raniere specifically.

11         MR. LESKO:  Also, if the Court is so inclined, if

12    you can follow up with the issue of self-help programs and

13    personal growth programs are going to be centrally featured in

14    this trial and ask whether or not he would have a bias in

15    connection with --

16         THE COURT:  I hear you.

17         MS. PENZA:  Sorry.  One more, Your Honor.

18         THE COURT:  I would have brought my notes.

19         MS. SAUL:  Do you want mine?

20         THE COURT:  That's okay.  You can help me later.

21         MS. PENZA:  In light of his experience given his

22    girlfriend, whether he would be able to follow the Court's

23    instruction that he could find guilt based on the testimony of

24    victims alone.

25         THE COURT:  Okay.  I understand that question.
```

Prospective Juror 177                                498

1          MR. AGNIFILO:  That's fine.

2          (In open court; sidebar ends.)

3          THE COURT:  So, there will be testimony by people

4    who claim to be victims of the defendant.  Could you, if you

5    believed the victims of the defendant, decide whether he had

6    committed the crimes alleged beyond a reasonable doubt based

7    on the testimony of victims in the case?

8              In other words, you said what you said about your

9    former girlfriend but does that mean that you would be unable

10   to trust and believe the victims even if you thought that they

11   were telling the truth?

12         THE PROSPECTIVE JUROR:  I mean, I don't know.  It's

13   hard to say and determine whether or not someone's, like,

14   trustworthy just based on nothing other than their testimony.

15   I don't know.  My apologies for not maybe totally

16   understanding the question.

17         THE COURT:  Well, I --

18         THE PROSPECTIVE JUROR:  If they provided testimony

19   that is, I don't know, convincing and follows the story

20   accurately and has maybe some sort of backing of evidence,

21   then, yes, I would tend to believe them.

22         THE COURT:  Well, backing of evidence is, the

23   evidence is what --

24         THE PROSPECTIVE JUROR:  Is what they're saying?

25         THE COURT:  Is their testimony.  And then there's

Prospective Juror 177                          499

1    testimony and then there's cross-examination, so they would

2    be, their testimony on direct would be tested by

3    cross-examination.  So you would look at the entire picture,

4    not just the direct examination, but also the

5    cross-examination and then you would make your assessment.

6              So, you know, the situation with your former

7    girlfriend, you have the experience of having known her and

8    her behavior so that puts you in a sort of a special

9    relationship and circumstance with her.  She was your former

10   girlfriend.  So you already had made certain determinations

11   about your girlfriend.  Did you break up with her?

12             THE PROSPECTIVE JUROR:  No, actually, but I stayed

13   broken up with her.  That's the key.

14             THE COURT:  You stayed broken up.  Okay.  So you

15   didn't get back to together?

16             THE PROSPECTIVE JUROR:  Gosh, no.

17             THE COURT:  Okay.  I've got the picture.

18             THE PROSPECTIVE JUROR:  I don't make too many

19   mistakes sequentially to that degree.

20             THE COURT:  So now what about have you ever, have

21   you had any experience with any of the entities in this case

22   like NXIVM or --

23             MR. AGNIFILO:  ESP.

24             THE COURT:  ESP?

25             THE PROSPECTIVE JUROR:  Never even heard of them.

Sidebar                                              500

1          MR. AGNIFILO:  Or DOS?

2          THE PROSPECTIVE JUROR:  No, never even heard them.

3          THE COURT:  What was the third one?  Something else.

4          MR. AGNIFILO:  I think a general, like, self help --

5          THE COURT:  Yes.

6          I mean you have had a positive experience with

7    self-help programs like Tony Robbins, is it?

8          THE PROSPECTIVE JUROR:  Uh-huh.

9          THE COURT:  Would you be able to objectively look at

10   other alleged self-help entities and judge them separately,

11   you know, based on what you learned here and not based on

12   other self-help programs that have been successful?

13         THE PROSPECTIVE JUROR:  Yes, absolutely.

14         THE COURT:  Other questions?

15         MR. AGNIFILO:  Nothing from us, Judge.

16         THE COURT:  Anything?

17         MS. PENZA:  No, Your Honor.

18         THE COURT:  You can.  We can go to side bar.

19         MS. PENZA:  I'm sorry, yes, let's go to side bar.

20         THE COURT:  You seemed reluctant to say yes.  It's

21   early in the afternoon.

22         (The following occurred at sidebar.)

23         THE COURT:  Did I miss something?

24         MS. PENZA:  No.  I'm sorry to belabor it.  It seemed

25   like you followed up, he said he would need backup evidence

Prospective Juror 177                                    501

1  and then you explained the concept of direct and

2  cross-examination, but I don't think there was an actual

3  question after that.  And so --

4           THE COURT:  Okay.  Okay.

5           MS. PENZA:  But my concern is that I think he does

6  have a bias against victims and people who are, and women, and

7  so I think if there's a question that is pointed towards are

8  you inclined to disbelieve somebody --

9           THE COURT:  I'll try to do it a little more artfully

10  than that.

11          MS. PENZA:  I'm sure.  Thank you, Your Honor.

12          (In open court; sidebar ends.)

13          THE COURT:  So let me just cut to the chase and I

14  was sort of getting there but I didn't actually pose the

15  question as the lawyers made clear to me so I apologize.

16          You know, you had an unpleasant experience with this

17  young lady who you described in the way you've described it

18  which is a rather chilling indictment on her behavior and

19  personality.  Wouldn't you say that?

20          THE PROSPECTIVE JUROR:  Yes, I agree.

21          THE COURT:  I mean, was that aberrational?  I mean,

22  was that the first time you ever had that kind of an

23  experience?

24          THE PROSPECTIVE JUROR:  Yeah.  Yeah.  I -- aside

25  from some minor past relationship of, you know, lighter lies,

CMH      OCR      RMR      CRR      FCRR

Prospective Juror 177                                          502

1    like, I don't know, being someplace where they said they

2    weren't or with whoever, but the past relationship --

3              THE COURT:  You mean being dishonest about what they

4    were doing when they weren't with you?

5              THE PROSPECTIVE JUROR:  Yeah.  So, I mean, the only

6    thing that ever really stuck out was just one girlfriend in

7    the past, like, being at a party with someone, like, I didn't

8    realize and there was canoodling going on.

9              THE COURT:  But she was your girlfriend at the time?

10             THE PROSPECTIVE JUROR:  Yes, she was.  The past

11   relationship that I was in with the person that I described so

12   colorfully, that kind of just stuck out to me because, you

13   know, obviously it was recent and it was a two-ish year

14   relationship.

15             THE COURT:  It was what, two-ish?

16             THE PROSPECTIVE JUROR:  Sorry.  About two-year

17   relationship.

18             THE COURT:  That's what you were saying.  So you

19   were going out with her for a long time?

20             THE PROSPECTIVE JUROR:  Yes.

21             THE COURT:  How old are you now?

22             THE PROSPECTIVE JUROR:  I'm 23.

23             THE COURT:  That's a long time for a 23-year old.

24             THE PROSPECTIVE JUROR:  Yes.

25             THE COURT:  And was it serious at the time?

Prospective Juror 177                          503

1           THE PROSPECTIVE JUROR:  Yeah.  Yeah.  You know, I

2    thought that I would end up with her at some point, you know,

3    like, I thought I had found someone that I really, for once,

4    felt right for and, you know, it turns out that, you know, she

5    wasn't entirely the person that I had thought she was.

6           THE COURT:  I see.

7           THE PROSPECTIVE JUROR:  She was very convincing.

8           THE COURT:  So are you dating somebody else now?

9           THE PROSPECTIVE JUROR:  No.

10          THE COURT:  So do you think that you would have

11   difficulty believing women who make these kinds of allegations

12   against men?

13          THE PROSPECTIVE JUROR:  No, because I'd, you know --

14   I have heard multiple stories that -- you know, the magnitude

15   at which the whole -- I know you mentioned "Me-Too" in that

16   packet.  I personally find it hard to believe that it isn't a

17   more, you know, widespread issue just based on the fact that

18   so many people, you know, have their own stories or at least

19   claim to so --

20          THE COURT:  So you --

21          THE PROSPECTIVE JUROR:  I'm not --

22          THE COURT:  You don't take issue with the

23   development of the "Me-Too" movement in raising these issues?

24          THE PROSPECTIVE JUROR:  No.

25          THE COURT:  And you would tend to believe many of

Prospective Juror 177                                      504

1  them?

2              THE PROSPECTIVE JUROR:  Yeah.  So, for me, like,

3  personally, when I handled a situation, like, someone coming

4  to me or whomever, coming out to the social media saying that

5  something had happened to them, it's, like, whether or not

6  it's true doesn't necessarily matter to me as long as, you

7  know, they're getting the support and the help that they need

8  and, you know, the person that they're claiming to be the

9  perpetrator is at least, like, properly looked at and

10  investigated.  You know what I'm saying?  Like, don't burn

11  them at the stake but, you know, at least take a gander, for

12  lack of a better term.

13             THE COURT:  So the difference is between social

14  media and this in court is that when someone testifies as to

15  an allegation of experiencing some sexual crime alleged with

16  the defendant, that it's not just, you know, they're going to

17  go get some counseling.  It's that if it's true and the jury

18  believes its true, it may result in the defendant being found

19  guilty of a serious crime.

20             So do you think that you could make those judgments

21  as fairly and appropriately and dispassionately after you

22  review all the evidence?  Could you make those judgments as a

23  juror?

24             THE PROSPECTIVE JUROR:  Yes, I do believe so.

25             THE COURT:  Okay.  Other questions?

CMH      OCR      RMR      CRR      FCRR

Prospective Juror 177                          505

1          MS. PENZA:  No, Your Honor.  Thank you.

2          MR. AGNIFILO:  Nothing from us, Judge.

3          THE COURT:  Okay.  Well, thanks for coming in.  Have

4    a good day.

5          THE PROSPECTIVE JUROR:  Thank you so much.  You too.

6          (Prospective Juror 177 exits the courtroom.)

7          THE COURT:  Does anyone have a motion?

8          MR. AGNIFILO:  We do not.  We don't have a motion.

9          THE COURT:  Do you have a motion?

10         MS. PENZA:  Your Honor, yes.  The government moves

11   to strike for cause.  There was inconsistency in what the

12   juror said.  At first, the juror stated that he would need

13   backup evidence beyond just a victim's testimony.

14         THE COURT:  Right.

15         MS. PENZA:  And then I believe by the time Your

16   Honor was questioning him regarding "Me-Too," he knew where

17   Your Honor was going.  Previously, when asked about women who

18   bring those sorts of allegations, he made the opposite comment

19   and he said that he did not think that they should be believed

20   right away.

21         So the government moves to strike him for cause

22   based on his bias against victims.

23         THE COURT:  All right.  Yes?

24         MR. AGNIFILO:  We oppose the government moving to

25   strike him for cause.  I mean, I think at the end of the day,

CMH      OCR      RMR      CRR      FCRR

1   he said what his feeling is which is that he can follow

2   Your Honor's instructions, he can follow the law.

3          I think what he was expressing to the court in

4   regard to the testimony of a single person is that if it

5   followed logically, he would find it more convincing, is the

6   word he used, and I think what he was also suggesting is it's

7   hard to do this in a vacuum.  He seems very open to listening

8   to testimony.  There's nothing about what he said that seems

9   to indicate he won't listen with an open mind to the testimony

10  and there's nothing about what he said that seems to indicate

11  he can't follow the Court's instruction.

12         So he seems like an appropriate juror to us.

13         THE COURT:  Anything else?

14         MS. PENZA:  Nothing further, Your Honor.

15         THE COURT:  Well, you know, one of my concerns is

16  the -- let me just get it here -- nomenclature that he used in

17  describing his girlfriend of two years.  He went out with this

18  girl for two years and then he said, you know, he wasn't with

19  her for, like, two minutes, he was with her for two years and

20  he was considering spending his life with her.

21         Then he says:  I had a girlfriend in the past I

22  believe was a pathological lying sociopath --

23         She's not even in public office.  How would he know?

24         -- that claimed she was date raped by someone after

25  our relationship but I am doubtful that it was true.

Prospective Juror 177                         507

1        Why would someone say this about someone he had gone
2   out with for two years who he was serious about having a
3   lifetime relationship with just in a way that sort of was
4   dismissive?  It was dismissive.  That is a real problem for me
5   that he made this judgment.  It may have been because she
6   dumped him.  All right, that could be bad, but the anger
7   that's reflected in this statement about a woman who claimed
8   she was raped is very troubling to me and makes him not
9   qualified in my opinion to be judging the statements of women
10  who make such claims.

11       He has a tremendous bias based upon, I don't know
12  what, and he is not in a relationship now.  Now, I won't hold
13  it against him that he hasn't found a girlfriend, but he had a
14  girlfriend for two years, he was thinking of marrying her and
15  then he comes up with this incredibly derogatory statement
16  based on the fact that she claims she was date raped.  I think
17  this is really someone who needs help and I don't want to be
18  here to, you know, parse out how to deal with that so I'm
19  going to grant the motion.

20            MS. PENZA:  Thank you, Your Honor.
21            THE COURT:  And you have your exception.
22            (Prospective Juror 177 excused.)
23            THE COURT:  178.
24            (Prospective Juror 177 enters the courtroom.)
25            THE COURT:  Please be seated, ma'am.  Good

Prospective Juror 177                    508

1    afternoon.

2            THE PROSPECTIVE JUROR:  Hi.

3            THE COURT:  You're Juror No. 178, correct?

4            THE PROSPECTIVE JUROR:  Yes.

5            THE COURT:  Welcome.

6            THE PROSPECTIVE JUROR:  Thanks.

7            THE COURT:  You're retired?

8            THE PROSPECTIVE JUROR:  Yes.

9            THE COURT:  From what?  What did you do before you

10   retired?

11           THE PROSPECTIVE JUROR:  I worked for a living,

12   customer service, sales.

13           THE COURT:  I see.  And how long were you in that,

14   in customer service and sales?

15           THE PROSPECTIVE JUROR:  Nine years.  Maybe eight.

16           THE COURT:  I'm sorry?

17           THE PROSPECTIVE JUROR:  Maybe eight.

18           THE COURT:  Maybe eight?  Okay.  And you live in

19   Nassau County?

20           THE PROSPECTIVE JUROR:  No, Suffolk.

21           THE COURT:  Suffolk County.  You indicated that your

22   daughter-in-law is an attorney?

23           THE PROSPECTIVE JUROR:  Correct.

24           THE COURT:  Do you know what kind of law she

25   practices?

Prospective Juror 177                                    509

1          THE PROSPECTIVE JUROR:  Corporate.

2          THE COURT:  Corporate.  And you have two sons?

3          THE PROSPECTIVE JUROR:  Yes.

4          THE COURT:  What do they do for a living generally?

5          THE PROSPECTIVE JUROR:  One is in advertising on the

6    internet and one is a high fashion photographer and an

7    entrepreneur making men's pins.

8          THE COURT:  Men's?

9          THE PROSPECTIVE JUROR:  Lapel pins.

10         THE COURT:  There were a few blanks so I'm just

11   going to go over them.

12         You answered one person who you least admire, but

13   you didn't mention anyone other than friends and relatives who

14   you most admire.  Is there any public figure that you most

15   admire, living or dead?

16         THE PROSPECTIVE JUROR:  Not really.

17         THE COURT:  Okay.  You may hear allegations

18   involving immigration and propriety in this case.  What are

19   your beliefs and opinions on the subject of immigration and

20   would those opinions impact your ability to be fair and

21   impartial?  Yes or no.

22         THE PROSPECTIVE JUROR:  I don't think it's so black

23   and white.

24         THE COURT:  Meaning?

25         THE PROSPECTIVE JUROR:  Meaning that after you've

Prospective Juror 177                              510

1   seen the children separated from their parents and unable to

2   get the children back to the parents, there's definitely a

3   flaw with that.

4           THE COURT:  There's a --

5           THE PROSPECTIVE JUROR:  A flaw, a problem.

6           THE COURT:  A flaw.

7           THE PROSPECTIVE JUROR:  But, how's this.  In regard

8   to immigration, there's so many ways to come into the country

9   legally that, you know, you should.

10          THE COURT:  Okay.  Now, you indicated that you've

11  lived through two armed robberies and were you handcuffed and

12  gagged in both.

13          THE PROSPECTIVE JUROR:  Yes.

14          THE COURT:  I take it these were reported to the

15  police.

16          THE PROSPECTIVE JUROR:  Oh, yes.

17          THE COURT:  Were you satisfied with the assistance

18  that you received from law enforcement in these cases?

19          THE PROSPECTIVE JUROR:  Yes.

20          THE COURT:  You also indicated that you've heard

21  about this case from the news and a friend before you filled

22  out the questionnaire.

23          Could you put aside anything you may have heard

24  along the way from others or from the media and only consider

25  the evidence that is provided from witnesses here in court and

Prospective Juror 177                          511

1   documentary evidence in deciding the guilt or non-guilt of the

2   defendant if you become a juror?

3             THE PROSPECTIVE JUROR:  I could weigh it but, you

4   know, I have opinions already, some, but I know the media

5   isn't always honest, so ...

6             THE COURT:  I think the better word is -- I might

7   put words in your mouth -- it isn't always accurate.

8             THE PROSPECTIVE JUROR:  That's a better word.

9             THE COURT:  And fulsome.  And that's the reason why

10  we ask jurors, like I did earlier when you were all here

11  together, not to access anything in the media or on the

12  internet.  You know, if you look at an internet site like

13  Wikipedia, Wikipedia has many citations in it that are

14  inaccurate and it may not be intentional.  It may just be they

15  picked up something off of a news site and they put it in but

16  whatever that was was not accurate.

17            So it would not be fair to the defendant and it

18  would not be in the interest of justice to take into

19  consideration by the jury anything that is basically hearsay

20  in the newspapers or on a website or that you heard from your

21  friend when you played bridge.  All right?  So or whatever

22  you, social activities you have.  So what we ask is that you

23  put say side anything like that and that you start fresh as a

24  juror and only consider the evidence which is appropriate to

25  be heard in the courtroom.  Can you do that?

1              THE PROSPECTIVE JUROR:  I'm not sure.

2              THE COURT:  Why is that?

3              THE PROSPECTIVE JUROR:  Because I form opinions.

4      I'm human.  I make my decisions based on facts given.

5              THE COURT:  On what?

6              THE PROSPECTIVE JUROR:  On facts that I hear that

7      are given, that I read, that I see.

8              THE COURT:  Where did you hear these facts?  I'm

9      just curious.

10             THE PROSPECTIVE JUROR:  On the news.

11             THE COURT:  What news?

12             THE PROSPECTIVE JUROR:  Channel Four, NBC.

13             THE COURT:  You mean you would reach a conclusion

14     about whether someone has committed crimes that could cause

15     him to go to jail for many years based on a 30 second or one

16     minute news story on Channel Four?  Does that sound rational?

17             THE PROSPECTIVE JUROR:  The way you put it,

18     absolutely not.

19             THE COURT:  Well, how long were these stories?

20             THE PROSPECTIVE JUROR:  I saw -- you watch the news.

21     It's on many times and, you know, I formed my own opinion and

22     take into account what I've seen and figure somewhere in the

23     middle is a big gray area.

24             THE COURT:  Anything else?

25             MR. AGNIFILO:  Nothing else.

1          MS. PENZA:  No, Your Honor.

2          THE COURT:  All right.  Thank you for coming in.

3          THE PROSPECTIVE JUROR:  Okay.

4          (Prospective Juror 177 exits the courtroom.)

5          MR. AGNIFILO:  Your Honor, we ask that the juror be

6    stricken for cause.  She made very clear that she's formed her

7    opinion about this case, the results of this case based on

8    watching NBC and things on the news and Your Honor tried to

9    focus her on the evidence to see if she can follow the rules

10   of evidence and listen to the evidence and she said she is not

11   sure she can follow the evidence because she's already

12   rendered an opinion.

13         THE COURT:  I think her body language tells me that

14   she doesn't want to be a juror in this case and that she's

15   going to say whatever she needs to get out of jury duty.

16   That's what this tells me.  I don't think she cares one wit

17   about what NBC says.  She just has this attitude that she

18   knows her way out of jury service and that's it.  She's not

19   dumb.  She understood what I was saying to her.  She's raised

20   two sons, I think.  And no one would reach a conclusion based

21   on, you know, a one minute story on News Four New York if they

22   knew that someone's life hung in the balance.  I think it's

23   really a sad commentary.

24         Do you have an opinion?

25         MS. PENZA:  Yes, Your Honor.  The government objects

1    to her exclusion for cause.  I think she said that there was a

2    gray area and that she has an opinion that would be difficult

3    to set aside, but that is what -- a lot of people have

4    opinions that are difficult to set aside, but I do believe

5    that if Your Honor gave the instruction, she would be able to

6    follow it.

7              MR. AGNIFILO:  Can I follow because I agree with

8    Your Honor wholeheartedly on your observations.

9              THE COURT:  Well, of course you do, because they

10   agree with what you want to happen.

11             MR. AGNIFILO:  Not necessarily.  My concern is this

12   is a very serious case as you tried to impress on every juror

13   where this issue has come up and there are plenty of jurors

14   who come in here and say that they will absolutely listen to

15   Your Honor's instructions and those are the right jurors for

16   this case.  To have a juror, either because she has these

17   strong opinions or she's playing games with the Court, either

18   way she's not the right juror for this case.

19             (Continued on next page.)

20

21

22

23

24

25

Prospective Juror No. 179                          515

1    (Continuing.)

2           THE COURT:  Well, I think based on this juror's

3    performance here that I'm going to grant the motion to strike.

4    Juror No. 178 is struck.

5           (Prospective juror enters.)

6           THE COURT:  Please be seated.  Good afternoon.

7           PROSPECTIVE JUROR NO. 179:  Good afternoon.

8           THE COURT:  You are Juror No. 179, are you not?

9           PROSPECTIVE JUROR NO. 179:  Yes, I am.

10          THE COURT:  Welcome.  Now, you live on Long Island

11   in Suffolk County?

12          PROSPECTIVE JUROR NO. 179:  Yes, sir.

13          THE COURT:  And you work in an elementary school?

14          PROSPECTIVE JUROR NO. 179:  Yes, sir.

15          THE COURT:  And you have a daughter?

16          PROSPECTIVE JUROR NO. 179:  Yes, sir.

17          THE COURT:  How old is she?

18          PROSPECTIVE JUROR NO. 179:  She's 15.  I made a

19   mistake.  I wrote eight years old because that was a question

20   that I answered before about a situation that happened to me

21   when I was eight.

22          THE COURT:  But she is 15?

23          PROSPECTIVE JUROR NO. 179:  Yes, sir.  And I have a

24   son, 22 years old.

25          THE COURT:  Does he live at home?

1          PROSPECTIVE JUROR NO. 179:  Yes, sir, he's going to

2    college and working at my school also.

3          THE COURT:  Does he work in the summer?

4          PROSPECTIVE JUROR NO. 179:  My son, yes.  We do

5    summer school.

6          THE COURT:  I see.  Now, does your school pay for

7    your jury service?

8          PROSPECTIVE JUROR NO. 179:  Yes until -- until

9    summer school.  After June, the last day of school, if I want

10   to get paid, I have to do summer school -- I have to work

11   during the summer for five weeks.

12         THE COURT:  And they would not pay you for that?

13         PROSPECTIVE JUROR NO. 179:  If I don't work -- if

14   I'm in jury duty -- if I don't work, no.

15         THE COURT:  So that would be in June?

16         PROSPECTIVE JUROR NO. 179:  The last day of school

17   would be June 24th.

18         THE COURT:  Well, we don't anticipate this case will

19   go beyond June 24th.

20         PROSPECTIVE JUROR NO. 179:  Okay.

21         THE COURT:  You said something about putting your

22   daughter on the bus?

23         PROSPECTIVE JUROR NO. 179:  I put my neighbor's

24   daughter on the bus because she works in the factory.  She

25   needs to leave early and the little girl comes to me early and

Prospective Juror No. 179                    517

1    I put her on the bus.

2          THE COURT:  She may have to make other arrangements

3    if you become a juror.

4          PROSPECTIVE JUROR NO. 179:  Okay.

5          THE COURT:  So, let me ask you a few additional

6    questions, if I might.  You indicated that your faith is

7    extremely important to you and you make major life decisions

8    based on your faith; is that right?

9          PROSPECTIVE JUROR NO. 179:  Yes.

10         THE COURT:  Are you Catholic?

11         PROSPECTIVE JUROR NO. 179:  Yes, I am.

12         THE COURT:  And you also indicated that in answer to

13   this question:  "There may be evidence in this case about

14   abortions.  Would hearing about that type of evidence affect

15   your ability to serve as a fair and impartial juror?"  And you

16   said, "Yes."  You said, "I think only God can take the life of

17   a person."

18         PROSPECTIVE JUROR NO. 179:  I totally agree with

19   that, yes.

20         THE COURT:  Okay.  Now, there will be some testimony

21   here about allegations that abortions took place and that will

22   be relevant to some degree having to do with certain charges

23   against the defendant.  Will you be able to listen to the

24   evidence and apply your judgment to that evidence if you

25   decide that the defendant has engaged in an activity having to

                    SN      OCR      RPR

1  do with abortions, some of which may have been legal; some of

2  which may have been illegal, I don't know?  Would you be able

3  to make judgments about that in connection with whether the

4  defendant is guilty or not guilty?

5          PROSPECTIVE JUROR NO. 179:  I think I would.

6          THE COURT:  Now, you said this, the question was,

7  "Do you worry about you or someone close to you being falsely

8  accused of sexual abuse or sexual assault?"  And you said

9  "Yes.  I have a daughter and a son.  I always will be

10 worried."

11         PROSPECTIVE JUROR NO. 179:  Always, also a mother,

12 you never know what goes out.  I know -- I believe in my kids.

13 I know I have great kids.  I know they wouldn't do anything.

14 These days you never know.  Someone can come out and say,

15 hey -- accuse my family or kids from doing something like

16 that.

17         THE COURT:  So you would be concerned about that?

18         PROSPECTIVE JUROR NO. 179:  Yes.

19         THE COURT:  So how do you counsel your children --

20 you have a son who is how old?

21         PROSPECTIVE JUROR NO. 179:  22.

22         THE COURT:  How do you counsel your son or your

23 daughter when she becomes older as to how to deal with that

24 possibility?

25         PROSPECTIVE JUROR NO. 179:  I have an extremely --

Prospective Juror No. 179                              519

1   and like I said, I am very lucky.  I have a very good

2   relationship with my kids.  I am able to talk to my kids about

3   sex, AIDS, diseases, about everything.  I always told my kids

4   that you need to respect everyone the way you want to be

5   respected.  Don't be -- you know, if you date a girl, don't

6   say, oh, you're the only one and I'm not sleeping with anyone.

7   Just be open and I just told them that they have to take care

8   of themselves.  They have to just be careful.  I know all my

9   kids' friends.

10           Every day I have friends over in my house.  I always

11  tell them if you go out, if you are drinking, don't take

12  the -- take the drink with you or don't drink it after you go

13  to the bathroom or something.  I have a very good relationship

14  with my kids.  I talk to my kids for hours.

15           THE COURT:  Okay.  Good for you.  There is this

16  question:  "An indictment is not evidence.  It merely

17  describes the charges made against the defendant.  It is an

18  accusation.  It may not be considered by you as evidence of

19  the defendant's guilt.  Are you able to follow this rule of

20  law, yes or no?"

21           PROSPECTIVE JUROR NO. 179:  Yes.

22           THE COURT:  Okay.  You may hear evidence, you may

23  hear testimony from certain individuals that the Government

24  alleges are victims.  The victims' testimony is not to be

25  given anymore or less credence than any other witness'

Prospective Juror No. 179                           520

1    testimony.  Would you be able to follow the Court's

2    instruction in this regard?

3                PROSPECTIVE JUROR NO. 179:  Yes.

4                THE COURT:  There's this question:  "Is there any

5    matter not covered by this questionnaire that you think is

6    important to bring to the attention of the court?"  You

7    checked off "Yes."  Is there something else you want the Court

8    to know?

9                PROSPECTIVE JUROR NO. 179:  No, I'm sorry.  I was so

10   tired and --

11               THE COURT:  You mean after answering 94 other

12   questions you got tired?

13               PROSPECTIVE JUROR NO. 179:  I was tired.

14               THE COURT:  That was to be sarcastic.

15               There is nothing else though.

16               PROSPECTIVE JUROR NO. 179:  No, and there was

17   questions there that affect me also.

18               THE COURT:  All right.  Anything else from anyone.

19               MR. AGNIFILO:  Not from us, Judge.

20               MS. PENZA:  Question 59, Your Honor.

21               THE COURT:  Okay.  59.  Oh, yes.  "Do you believe

22   that people under 17 should be able to consent to sex with

23   adults?"  And you said, "Yes."  And then you said, "I think

24   these days a 17-year-old knows what is right or wrong."

25               What did you mean by that?

Sidebar                                              521

1        PROSPECTIVE JUROR NO. 179:  Well, I think if a

2   17-year-old girl or boy are having sex, they know what they

3   are doing.  It is not like -- if it is not a rape, like

4   someone is raping them, like, if they are in a relationship

5   and they are having sex, yeah, I think they -- you know, I

6   think they are -- they can do it.  It's a consent.  It's not

7   like a 12-year-old doesn't know what sex is, so -- they know

8   if they're in a relationship.  I agree in a relationship, I

9   think they know.  They are mature enough, I don't know, to

10  have sex.

11       THE COURT:  Anything else?

12       MS. PENZA:  Yes, Your Honor.  May we have a sidebar,

13  please?

14       THE COURT:  Sure.

15       (The following sidebar took place outside the

16  hearing of the jury.)

17       THE COURT:  Yes?

18       MS. PENZA:  She answered the question regarding

19  someone under 17, but here the issue is someone 15.  If you

20  could ask that specifically and also ask if she could follow

21  the Court's instruction.

22       THE COURT:  As to the law.  All right.

23       (Sidebar ends.)

24       THE COURT:  So, just to follow on to that a bit, the

25  Court will instruct you about what the law is about the age of

SN        OCR        RPR

Prospective Juror No. 180                522

1    consent.  So, if the Court instructs you that it is -- that a

2    person cannot give consent legally at a certain age, which is

3    below 17 I assure you, will you follow the law in considering

4    the testimony of witnesses?

5              PROSPECTIVE JUROR NO. 179:  Yes, definitely.

6              THE COURT:  And I think that will do it.

7              Anything else?

8              MR. AGNIFILO:  Nothing from us.

9              MS. PENZA:  Thank you.

10             THE COURT:  Thank you.  Mr. Reccoppa will tell you

11   what to do.

12             (Prospective juror exits.)

13             MR. AGNIFILO:  No motion from us.

14             MS. PENZA:  No, Your Honor.

15             THE COURT:  All right.  Juror No. 179 is approved.

16             180.

17             (Prospective juror enters.)

18             THE COURT:  Please be seated:  You are Juror No.

19   180; correct?

20             PROSPECTIVE JUROR NO. 180:  Yes.

21             THE COURT:  Welcome.  I just have a few follow-up

22   questions for you.  Now, you indicated that you work as a

23   business manager at a publishing firm; is that right?

24             PROSPECTIVE JUROR NO. 180:  Yes.

25             THE COURT:  And you've been doing this for eight

SN      OCR      RPR

Prospective Juror No. 180                           523

1   years?

2            PROSPECTIVE JUROR NO. 180:  I have been a business

3   manager for five years.  I've been with the company for eight

4   years.

5            THE COURT:  And you are employed full-time?

6            PROSPECTIVE JUROR NO. 180:  Yes.

7            THE COURT:  And do you know whether your firm pays

8   you for your entire jury duty?

9            PROSPECTIVE JUROR NO. 180:  They only pay me for 30

10  days.  After 30 days, they don't pay me.

11           THE COURT:  So, if you were not to be paid for a

12  week and a half, would that be a hardship?

13           PROSPECTIVE JUROR NO. 180:  It would be a big thing.

14  I'm a single woman and I have a mortgage to pay.

15           THE COURT:  You have a mortgage?

16           PROSPECTIVE JUROR NO. 180:  Yeah.

17           THE COURT:  You have a cousin who is in the fire

18  department?

19           PROSPECTIVE JUROR NO. 180:  A cousin and a

20  brother-in-law.

21           THE COURT:  I see.  And what do they do in the fire

22  department?  Are they firefighters?

23           PROSPECTIVE JUROR NO. 180:  They're firefighters,

24  yes.

25           THE COURT:  Thank you.  You didn't list anyone who

Prospective Juror No. 180                          524

1   you least admire.  "Is there anyone in history, living or

2   dead, a public figure, that you least admire?"

3          PROSPECTIVE JUROR NO. 180:  No.

4          THE COURT:  You said in answer to this:  "There may

5   be evidence in this case about people engaging in

6   relationships with multiple sex partners.  Would hearing about

7   that type of evidence affect your ability to serve as a fair

8   and impartial juror?"  You said, "Yes" and you explained "It's

9   gross"?

10         PROSPECTIVE JUROR NO. 180:  Yeah.

11         THE COURT:  So, could you expound a little on that

12  answer.  "It's gross" doesn't really tell me much.

13         PROSPECTIVE JUROR NO. 180:  Well, it's wrong.  It's

14  disgusting.  I mean, it's just exactly what it is.  I don't

15  agree with it is what I'm saying.

16         THE COURT:  Well, if you're a juror in this case,

17  you will have to examine the evidence and reach a

18  determination as to whether the evidence is to be believed,

19  number one; and whether it's sufficient to find the defendant

20  guilty beyond a reasonable doubt to a set of charges.

21         Do you think you can set aside your personal dislike

22  for certain behavior and decide the case based on the law as I

23  give it to you and the evidence as you find it in the case?

24         PROSPECTIVE JUROR NO. 180:  That's difficult to say

25  because I've never been in a situation like this so I can't

Prospective Juror No. 180                              525

1   say that it would or wouldn't, to be honest with you.  Just

2   like everything else you hear on the media, you make your own

3   decisions and assumptions and the same would apply here.  I

4   wouldn't know.

5            THE COURT:  So you can't be sure?

6            PROSPECTIVE JUROR NO. 180:  Correct.

7            THE COURT:  Are there other questions?

8            MR. AGNIFILO:  One second, Judge.

9            Follow up on 39, Judge.

10           MS. PENZA:  Yes.

11           THE COURT:  "There may be evidence in this case of a

12   sexually explicit nature and language.  Would hearing about

13   that type of evidence affect your ability to serve as a fair

14   and impartial juror?"  And you said "Yes" and explaining,

15   "It's gross.  I don't want to see anyone's naked pic that are

16   presented."

17           PROSPECTIVE JUROR NO. 180:  Right.  It's just like

18   everything else.  If you don't want to hear something.  You

19   just turn it off.  The same would apply there.

20           THE COURT:  Well if you are a juror you can't turn

21   it off, can you?  Right.

22           PROSPECTIVE JUROR NO. 180:  No.

23           THE COURT:  It is an obligation of citizenship.  You

24   said you served as a juror in a state case.  Was it a civil

25   case or a criminal case?

1          PROSPECTIVE JUROR NO. 180:  It was a civil case.

2          THE COURT:  And without telling me what the outcome

3     was, what the verdict was, did you deliberate to a verdict?

4          PROSPECTIVE JUROR NO. 180:  No, they just -- they

5     settled.

6          THE COURT:  They settled?

7          PROSPECTIVE JUROR NO. 180:  Yeah, they settled.

8          THE COURT:  Okay.

9          Any other questions for this juror?

10         MR. AGNIFILO:  75.

11         THE COURT:  75, yes.

12         "The charges in this case involve allegations of,

13    among other things, sex trafficking, forced labor, child

14    pornography and child exploitation.  Is there anything about

15    the nature of these allegations that would make it difficult

16    for you to be fair and impartial?"  You said "Yes" and then

17    you explained, "Poor kids."  What did you mean by that?

18         PROSPECTIVE JUROR NO. 180:  Well, I have nieces and

19    nephews and if something like that was to happen, that's

20    disturbing.  They're young.  They can't make their decisions.

21    Someone is doing this to them so it's actually disturbing.

22         THE COURT:  And you understand, of course, that

23    these are allegations that have to be proven to your

24    satisfaction beyond a reasonable doubt in order to find the

25    defendant guilty of specific charges that are being brought by

1   the Government.  So there's a presumption of innocence.  The

2   fact that people -- people are accused of crimes all the time

3   by prosecutors around the country and jurors return, from time

4   to time, many times, return verdicts of not guilty.  So that

5   is why we have juries.  The jurors have to hear the evidence,

6   assess the evidence and then make a reasoned decision whether

7   the defendant is guilty beyond a reasonable doubt.  Without

8   the jurors we wouldn't have a system of criminal justice.  Do

9   you understand that?

10          PROSPECTIVE JUROR NO. 180:  Yes, I understand you.

11          THE COURT:  So, would you be able to fulfill that

12  responsibility as a juror and make that call after hearing the

13  evidence in this case?

14          PROSPECTIVE JUROR NO. 180:  It's like I said

15  earlier, I've never been in a situation like this so it's hard

16  to determine how you would actually weigh, weigh both sides.

17  I don't know how to answer that.  It's just as I stated

18  before, I don't know how I'm going to feel.  I've never been

19  in a case like this.  I know how I treat news and I make my

20  decisions that way, but I guess the same would apply.

21          THE COURT:  What would apply is I would tell you

22  what the law is and you will decide what the facts are and

23  then it will be your job to apply the law as I give it to you

24  to the facts.  Will you follow the law as the judge gives you

25  the law?

Prospective Juror No. 180                              528

1          PROSPECTIVE JUROR NO. 180:  Yeah, yes.

2          THE COURT:  Okay.  And then you will decide the

3    facts.  The judge doesn't decide them.  That would be your

4    responsibility.  Do you think you are able to listen and

5    consider the evidence and decide the facts?

6          PROSPECTIVE JUROR NO. 180:  Yes.

7          THE COURT:  Okay.  Anything else?

8          MR. AGNIFILO:  I didn't hear the last answer.

9          PROSPECTIVE JUROR NO. 180:  Yes.

10         THE COURT:  Yes.

11         MS. PENZA:  Nothing from the Government.

12         THE COURT:  Anything from the defense?

13         MR. AGNIFILO:  No, Your Honor.

14         THE COURT:  Thank you for coming.  Have a nice day.

15         (Prospective juror exits.)

16         THE COURT:  Is there a motion?

17         MR. AGNIFILO:  Yeah, Judge.  I know that she ended

18   up saying she could follow the law, but she started out saying

19   "It's gross."

20         THE COURT:  Well, she's talking in a vernacular.

21   Many people say things are gross.

22         MR. AGNIFILO:  I'm not sure people come back from

23   gross.  Once you think something is gross, you tend to always

24   think it's gross.

25         THE COURT:  I do not know.

Prospective Juror No. 180                          529

1           MR. AGNIFILO:  I think she's a very dutiful person

2    and she shows respect for Your Honor as well, but she thinks

3    this is gross and that troubles me.

4           THE COURT:  So you are making a notion?

5           MR. AGNIFILO:  Yes.

6           THE COURT:  I wanted to be sure this was in the

7    context of a motion and not just cathartic for you.

8           MR. AGNIFILO:  I'm not trying to wax eloquent on the

9    word "gross."

10          MS. PENZA:  The Government objects.  The juror

11   stated she could be fair and follow the law as it is given

12   and, as we discussed several times, I think it is the very

13   rare person who's not going to find child pornography gross.

14          THE COURT:  My guess is this juror is in her heart

15   sincerely unhappy about having to confront this type of

16   evidence.  I think that is a fair conclusion based on what she

17   said in her questionnaire and how difficult it was for her to

18   answer my questions, but I think in the end she answered that

19   she would follow the law and she would consider all the

20   evidence that's presented and she would make a judgment.  And

21   she seems intelligent, articulate.  We could do without the

22   word "gross," I agree.

23          So, the motion is denied and you have your

24   exception.  She is qualified.  180 is qualified.  181 is next.

25          (Prospective juror enters.)

SN        OCR        RPR

1        THE COURT:  Please be seated, sir.

2        PROSPECTIVE JUROR NO. 181:  Thank you.

3        THE COURT:  Good afternoon.

4        PROSPECTIVE JUROR NO. 181:  Hello.

5        THE COURT:  And you are Juror No. 181; correct?

6        PROSPECTIVE JUROR NO. 181:  Correct.

7        THE COURT:  Okay.  Now, I have a few questions to

8   follow up with you.  You indicated that you have lumbar back

9   problems; is that right?

10       PROSPECTIVE JUROR NO. 181:  Yes, sir.

11       THE COURT:  And when did that start happening?

12       PROSPECTIVE JUROR NO. 181:  I fell through a roof

13  when I was, I'm going to say, 20 years old.  I'm 59 years old

14  now.  I fractured the first and second lumbar vertebrae and

15  worked for 40 years in construction after that.

16       THE COURT:  After that?

17       PROSPECTIVE JUROR NO. 181:  Yeah, my parents died

18  when I was very young, so I was on my own at 17 out of high

19  school.  I worked with that.  I made it 40 years and I started

20  seeing a specialist.  After retirement, 55 early retirement,

21  your back is, I won't use the word, but your back is messed

22  up.  And you need hip replacement.  I have a hip replacement

23  also.

24       THE COURT:  Did you have a hip replacement?

25       PROSPECTIVE JUROR NO. 181:  Yes, I did.

Prospective Juror No. 181                               531

1          THE COURT:  When was that?

2          PROSPECTIVE JUROR NO. 181:  2016, October 9th.

3          THE COURT:  And your back, how do you deal with the

4    back situation?

5          PROSPECTIVE JUROR NO. 181:  I know I put it in

6    there.  I can't sit for a long time.

7          THE COURT:  How long is long?

8          PROSPECTIVE JUROR NO. 181:  I stood up in there a

9    few times.  A couple of hours and then I have to either lie

10   down or stand up.

11         THE COURT:  Well, let me just tell you that if you

12   were to become a juror in this case, we take breaks.

13         PROSPECTIVE JUROR NO. 181:  Okay.

14         THE COURT:  We go from 9:30 to 11, 11:15.  We stop

15   for ten minutes.  You get to walk around and then we have a

16   lunch at 1 and then we have a mid-afternoon break and so on.

17   So we never go more than, like, an hour, 45 minutes, but,

18   also, if you are on the jury, I can seat you in the back and

19   you can get up whenever you want and I know -- I get up.  I

20   have a bad back as well.  So I empathize with you about the

21   back situation.  So, I just want to let you know, that is how

22   I run the courtroom and you should know that.

23         PROSPECTIVE JUROR NO. 181:  All right.  And not to

24   interrupt you.  I just answered the question.  I wasn't

25   looking to get out of jury duty.

Prospective Juror No. 181                           532

1      THE COURT:  I did not think you were.  When you

2  mentioned back, I am very sensitive about that issue so that

3  you understand that I get it and, you know, and how we work

4  with people who have that kind of a manageable medical

5  problem.

6      PROSPECTIVE JUROR NO. 181:  Understood.

7      THE COURT:  Let me move on.  And you're retired?

8      PROSPECTIVE JUROR NO. 181:  Yes.

9      THE COURT:  What do your children do for a living?

10     PROSPECTIVE JUROR NO. 181:  My son is a digital

11  advertising manager with Garnier (phonetic), I think it's

12  called.  They do Field & Stream and my daughter is in HR.  And

13  I don't remember the name of the company.  Digital

14  advertising, That's what my son does.

15     THE COURT:  What does he do?

16     PROSPECTIVE JUROR NO. 181:  Digital advertising.

17     THE COURT:  I see.  You say you've heard of the Me

18  Too movement and you say you have mixed feelings.  Some

19  actresses who make that accusation dress like prostitutes at

20  award shows."

21     PROSPECTIVE JUROR NO. 181:  Correct.

22     THE COURT:  So, do you question -- what, if

23  anything, do you question specifically about the Me Too

24  movement?

25     PROSPECTIVE JUROR NO. 181:  I wouldn't question

SN       OCR       RPR

1   anything that anybody was abused by no means or sexually

2   mistreated by any means.  It's just when certain actresses or

3   just people in general have that kind of comment and then they

4   come out in the Golden Globes or at an award show and dress

5   like tramps -- and my girlfriend says it too.  Nobody in

6   particular.  I totally empathize with the women 1,000 percent.

7   I don't agree with that kind of thing, but it irks me when

8   some of these same women will come out with something and

9   dress like that.

10          THE COURT:  Anything else?

11          MR. AGNIFILO:  None from us.

12          THE COURT:  From the Government.

13          MS. PENZA:  If you could follow up with question 42

14   and 75, please.

15          THE COURT:  You may hear allegations involving

16   immigration impropriety in this case.  What are your beliefs

17   and opinions on the subject of immigration?  Would those

18   opinions impact your ability to be fair and impartial?"  And

19   you said, "Yes."  You said, "Build the wall, drug trafficking,

20   human trafficking and child endangerment makes me sick to my

21   stomach."  So, how is that it related to immigration?

22          PROSPECTIVE JUROR NO. 181:  Because everything that

23   I have read previously and to date that children, women,

24   people in general are being trafficked across the border or

25   any border to be prostituted against their will, it's -- I

Prospective Juror No. 181                    534

1  hate to bring it up, but the most recent thing with Robert

2  Kraft from the Patriots and the parlor that he went to.

3  Obviously there's no fault of his, but that's the one that is

4  popping out in my mind.  People held against their will, taken

5  from their countries against their will by truck or maybe

6  their families are threatened.  It's not new, but it's in the

7  front with Trump and the wall.  And people forget and it hurts

8  me, to say the least.  It's disgusting.  There's a way to come

9  into the country and you --

10             I have a daughter.  I made her watch the movie Taken

11 with Liam Neeson.  I found later on it wasn't really based on

12 a true story.  It's not across-the-border type of thing.  She

13 was drugged and prostituted and since I have a daughter, now

14 she's 29.  I made her watch it as 17 when she was going away

15 on spring break.  It's just disgusting.

16             THE COURT:  Do you have any objection to legal

17 immigration?

18             PROSPECTIVE JUROR NO. 181:  Legal immigration?

19 Absolutely not.  My grand parents and all -- they're deceased,

20 but no, absolutely not.

21             THE COURT:  Any other questions?

22             MR. AGNIFILO:  Not from us.

23             MS. PENZA:  Just one quick sidebar, Your Honor.

24             THE COURT:  Sure.

25             (The following sidebar took place outside the

Prospective Juror No. 181                            535

1   hearing of the courtroom.)

2        MS. PENZA:  Your Honor, so the question regarding

3   when he refers to the women at the awards shows, if you're

4   going to ask whether he believes that the fact that they dress

5   that way makes the allegations that they are making -- if he

6   is less inclined to believe their allegations.  It wasn't

7   clear whether --

8        THE COURT:  If it's clear that he doesn't make the

9   way they appear -- or whether that that it encourages people

10  to engage in that activity, I'm not sure.

11       MS. PENZA:  I'm concerned that there is -- all of

12  our rape shield laws and things which prohibit making

13  statements based on the way a woman dress et cetera, would he

14  be less inclined to believe that a woman had been sexually

15  assaulted because of the way she dresses or behaves sexually

16  prior to that?

17       MR. AGNIFILO:  There was an indication that he

18  thought they were not proper spokespeople for the movement.

19       MS. PENZA:  That may be true.

20       THE COURT:  Let me try to define the nuances.

21       MS. PENZA:  Thank you.

22       (Sidebar ends.)

23       THE COURT:  So, let me try to delve a little more

24  into your comments about the women who go down the red carpet

25  at these events and are wearing, let's put it this way,

1   suggestive garments.  What is your objection about these women

2   in connection with their involvement with the Me Too movement?

3          PROSPECTIVE JUROR NO. 181:  Well, let me make sure

4   that I -- I hate to say at this late point that I'm not Me Too

5   movement.  The Me Too is actresses and/or actors that were

6   physically or sexually manipulated to get their careers going.

7          THE COURT:  No, the Me Too movement as I understand

8   it, and the lawyers can correct me if I'm wrong, is the effort

9   to bring to public consciousness the fact that women have been

10  abused and that there is now an effort to make it well-known

11  about the abuse, and to deal with the abuse of women when in

12  the past women were afraid to come forward.  They didn't come

13  forward and they suffered in silence.

14         But now the Me Too movement is encouraging women who

15  are the victims of sexual attacks and so on, and

16  discrimination of that nature, to come forward and tell their

17  stories and to have the matters dealt with by the appropriate

18  law enforcement and so forth.  So, it is double-pronged.  It's

19  both getting the word out as to when women are abused, and

20  also encouraging people to come forward so that these

21  situations can be dealt with by law enforcement.  I mean, I am

22  sure there is more to it than that, but I think that's a large

23  part of it.

24         Would you like to add anything to it.

25         MR. AGNIFILO:  That's fine, Your Honor.

Prospective Juror No. 181                    537

1          MS. PENZA:  That's fine, Your Honor.

2          THE COURT:  That is the Me Too movement?  It's not a

3    Hollywood thing.  It's a widespread movement.

4          PROSPECTIVE JUROR NO. 180:  Then I misunderstood,

5    Your Honor.  I certainly misunderstood it.

6          THE COURT:  That's okay because it is not like

7    someone passed a law this is the Me Too movement.  It's a

8    grassroots kind of thing that has developed and not everybody

9    has a, you know, a detailed knowledge of it.  So my question,

10   going back to my question --

11         PROSPECTIVE JUROR NO. 181:  Okay.

12         THE COURT:  What is it about these Hollywood

13   personalities dressed the way they sometimes dress that

14   concerns you?  It's not the Me Too movement, I take it?

15         PROSPECTIVE JUROR NO. 181:  Well, since I didn't --

16   if the Me Too movement is about abuse and, like, physical

17   abuse and, I don't know how else to put it, but I took it as

18   flirtation by a director or another actor or flirtation.

19         THE COURT:  Flirtation.

20         PROSPECTIVE JUROR NO. 181:  Or an inappropriate

21   statement or something like that.  I thought these people were

22   coming out of the woodwork also saying that, me too, me too.

23   He said he wanted to take me to bed, I'm part of this too.

24   No, if they were sexually abused, there is no place or that.

25   There's no place for any of it.  I don't know why it's in my

                    SN      OCR      RPR

1  head and my girlfriend said the same and a couple of other

2  people, not that you care about that.  Some of these people,

3  and I can't name names, they go down the red carpet dressed

4  and they're dressed provocatively and you don't expect

5  somebody to make a comment.  A comment is what i'm saying.

6          THE COURT:  I understand.  So there is a dividing

7  line somewhere in there and one could debate about where it is

8  between a flirtatious comment and sexual harassment.

9          PROSPECTIVE JUROR NO. 181:  Definitely.

10          THE COURT:  So there is a line to be drawn there and

11  I think the Me Too movement is raising the specter that we

12  have to be, that's society, that we have to be sensitive of

13  where to draw that line so what might be an innocent comment

14  like, that dress is lovely, turns into a constant office

15  situation where someone keeps coming back and coming back and

16  making suggestive comments and making the other person feel

17  uncomfortable with the outcome that the person who feels

18  uncomfortable has difficulty because the person who's making

19  the statements appears to be doing more than just making a

20  compliment but wants something out of the relationship in the

21  office.  That's just one of many scenarios.  That's the Me Too

22  movement in part.

23          PROSPECTIVE JUROR NO. 181:  Okay, understood.  And I

24  100 percent agree with what you're saying.  I guess that is

25  what the Me Too movement is, but the line is the line and,

Prospective Juror No. 181                    539

1    again, I'm going to go back to my daughter.  She's 29 now, but
2    back in the day, if she went out dressed a certain way, if you
3    don't expect this boy to do this, that and the other, you
4    don't dress like that.  And I told her to make sure the boy or
5    man or whatever knows that no is no.  And I totally agree with
6    it.  I don't know how I'm coming off here.  I do care, but I
7    answered the question pretty pointblank.
8              THE COURT:  I'm just -- we are having a
9    conversation.
10             PROSPECTIVE JUROR NO. 181:  The line is the line.  I
11   got that.
12             THE COURT:  Okay.
13             PROSPECTIVE JUROR NO. 181:  And especially having a
14   daughter and me personally, not that everybody cares when I
15   was younger, I never went over the line.  When somebody wanted
16   to go home, I took them home.  I wouldn't want anyone talking
17   to my daughter like that or my ex-wife or my girlfriend.
18             THE COURT:  Let me cut to the chase then.  There
19   will be witnesses that are going to testify here, I assume,
20   about sexual acts, alleged acts, of sexual exploitation.  Will
21   you be able to fairly and impartially consider their testimony
22   and make your judgment as to whether whatever they allege, if
23   you believe it, is sufficient to result in your finding the
24   defendant guilty beyond a reasonable doubt, if you find them
25   to be credible?

1           PROSPECTIVE JUROR NO. 180:  Oh, yeah, if there's

2    proof that -- yeah, I would say, yes, yeah.  If that's the

3    question.

4           THE COURT:  Anything else?

5           MS. PENZA:  No, Your Honor.

6           MR. AGNIFILO:  Nothing else.

7           THE COURT:  Thank I very much for coming in.

8           PROSPECTIVE JUROR NO. 181:  Thank you.  Could I add

9    one or two things?  I did put in the comment list you

10   mentioned that this starts, the case is going to start May 7th

11   I believe you said?

12          THE COURT:  Yes.

13          PROSPECTIVE JUROR NO. 181:  Two things, one is not

14   that important.  I finally got approved for a variance hearing

15   on May 15th.  Maybe I can send somebody in my stead.

16          THE COURT:  For what?

17          PROSPECTIVE JUROR NO. 181:  A variance hearing.  The

18   guy next to me after Sandy built an eight-foot concrete

19   structure that I've been looking at since Sandy.

20          THE COURT:  You mean it's a fence case?

21          PROSPECTIVE JUROR NO. 181:  Yeah, I can probably

22   send somebody in my place, bu the hearing is May 15th.

23          THE COURT:  What day of the week is that?

24          PROSPECTIVE JUROR NO. 181:  May 15th at 7:30 at

25   night.  That isn't important.

Prospective Juror No. 181                    541

1       THE COURT:  Oh, it's at night.  What's the other

2  one?

3       PROSPECTIVE JUROR NO. 181:  My son is getting

4  married July 13th upstate.

5       THE COURT:  July 13th.

6       PROSPECTIVE JUROR NO. 181:  He's getting married on

7  a ranch Upstate and I am delegated to help the week before.  I

8  don't know how long the case is going to go.

9       THE COURT:  We are hoping it will be over by

10  mid-June?

11       PROSPECTIVE JUROR NO. 181:  Well, hoping.

12       THE COURT:  Here is my promise to you.  It is not

13  going into July.

14       PROSPECTIVE JUROR NO. 181:  Okay, that's fair

15  enough.  I had to put that out because that one I can't miss.

16       THE COURT:  It's not really for you to hear.  It's

17  for them to hear.  It's for the lawyers.  I want the lawyers

18  to know.

19       PROSPECTIVE JUROR NO. 181:  Understood.

20       THE COURT:  Six weeks beginning May 7th?

21       PROSPECTIVE JUROR NO. 181:  Okay.

22       THE COURT:  Thank you so much.

23       PROSPECTIVE JUROR NO. 181:  Thank you.

24       THE COURT:  Have a nice day.

25       PROSPECTIVE JUROR NO. 181:  You too.

1          (Prospective juror exits.)

2          MR. AGNIFILO:  No motion from us.

3          MS. PENZA:  No, Your Honor.

4          THE COURT:  All right.  Juror 181 is approved.

5

6          (Continued on the following page.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Prospective Juror 183                    543

1          THE COURT:  Next is 183.

2          (Prospective Juror 183 enters the courtroom.)

3          THE COURT:  Please be seated sir.  Good afternoon.

4          THE PROSPECTIVE JUROR:  Yes.  Good afternoon.

5          THE COURT:  You're Juror No. 183, correct?

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  You indicated that you will be paid for

8  your jury duty?

9          THE PROSPECTIVE JUROR:  Yes.

10         THE COURT:  The entire time?

11         THE PROSPECTIVE JUROR:  Yes, the company pay for it.

12         THE COURT:  Okay.  Very good.

13         Let me just go over a few questions with you.  Sorry

14  to keep you waiting.

15         You indicated in answer to this question:  You may

16  hear allegations involving immigration and propriety.  What

17  are your beliefs and opinions on the subject of immigration.

18  Do those opinions impact your ability to be fair and

19  impartial?  You checked off "yes" and you explained, Because

20  I'm an immigrant.

21         So what are your views on immigration?  I mean,

22  obviously you don't oppose it.

23         THE PROSPECTIVE JUROR:  I'm not opposed to it but,

24  you know, society has been creating so many negative things

25  about the immigrant so I think that's my opinions.

Prospective Juror 183                                    544

1          THE COURT:  Do you think that's unfortunate?

2          THE PROSPECTIVE JUROR:  Unfortunate, yes.

3          THE COURT:  Okay.  Are you someone who generally

4   makes up their mind right away or do you wait and hear the

5   entire story?

6          THE PROSPECTIVE JUROR:  Well, I think it would be

7   fair we listening to the entire story.  Right?

8          THE COURT:  Okay.  The government has the burden of

9   proof to prove the allegations in this case beyond a

10  reasonable doubt.  Are you willing to accept and comply with

11  this legal requirement in a case involving allegations of

12  child pornography and sexual exploitation?

13         THE PROSPECTIVE JUROR:  Yes.

14         THE COURT:  Are there other questions?

15         MR. AGNIFILO:  Nothing from us.

16         MS. PENZA:  No, Your Honor.

17         THE COURT:  Okay.  Thank you very much for coming

18  in.

19         THE PROSPECTIVE JUROR:  Thank you.

20         THE COURT:  Have a nice day.

21         THE PROSPECTIVE JUROR:  Thank you.

22         (Prospective Juror 183 exits the courtroom.)

23         THE COURT:  Does anyone have a motion?

24         MR. AGNIFILO:  We do not.

25         MS. PENZA:  No, Your Honor.

Prospective Juror 185                              545

1          THE COURT:  All right.  Juror No. 183 is approved.

2          Next is 185.

3          (Prospective Juror 185 enters the courtroom.)

4          THE COURT:  Please be seated.  Welcome.

5          THE PROSPECTIVE JUROR:  Thank you.

6          THE COURT:  You are Juror No. 185.  Correct?

7          THE PROSPECTIVE JUROR:  Correct.

8          THE COURT:  Okay.  I just have a few follow-up

9  questions.

10          Do you know how long your employer pays for jury

11  duty?

12          THE PROSPECTIVE JUROR:  I followed up with my

13  employer and they said -- I mean, I, it's an annual salary so

14  they said that it will be fine.  If it's over ten days, I have

15  to speak to my principal about it.

16          THE COURT:  Good idea.  You should do that.

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  But when does school end?

19          THE PROSPECTIVE JUROR:  I'm in private school so we

20  end June 7th or so.

21          THE COURT:  Okay.  Well, you should do that --

22          THE PROSPECTIVE JUROR:  Okay.

23          THE COURT:  -- because, generally, educational

24  institutions pay their employees for jury duty, but this is a

25  private school.

CMH      OCR      RMR      CRR      FCRR

Prospective Juror 185                              546

1           THE PROSPECTIVE JUROR:  Right.

2           THE COURT:  So they may have a separate set of rules

3     but we really need to know that.

4           THE PROSPECTIVE JUROR:  Okay.

5           THE COURT:  If you were not paid for most of your

6     jury duty, would that be a hardship?

7           THE PROSPECTIVE JUROR:  Not, not that bad of a

8     hardship.  I'll be okay.

9           THE COURT:  You have another income?

10          THE PROSPECTIVE JUROR:  No, I don't, but my husband

11    does.

12          THE COURT:  No, that's what I meant.

13          THE PROSPECTIVE JUROR:  Okay.

14          THE COURT:  Is there another income in the family.

15          THE PROSPECTIVE JUROR:  Yes, my husband is making

16    money.

17          THE COURT:  What does he do?

18          THE PROSPECTIVE JUROR:  He's a physician.

19          THE COURT:  Oh, he's a physician.  How nice.

20          THE PROSPECTIVE JUROR:  Yes.

21          THE COURT:  Okay.  Thank you.

22          Well, I have a few additional questions.  Let me

23    just raise them with you.

24          THE PROSPECTIVE JUROR:  Okay.

25          THE COURT:  Oh, there's this question:  Would you be

Prospective Juror 185                               547

1    inclined to believe a witness is more or less truthful solely

2    because that witness is a law enforcement officer?  And you

3    said:  No.  I believe every witness is truthful regardless of

4    being a law enforcement officer.

5               THE PROSPECTIVE JUROR:  Yes.  I, I would take

6    everyone's, what everyone says as the truth regardless of what

7    their occupation is because --

8               THE COURT:  Well -- go ahead.

9               THE PROSPECTIVE JUROR:  Because what I -- I mean, I

10   would think that they would swear an oath and be truthful.

11              THE COURT:  Well, your job as a juror will be to

12   assess the testimony of witnesses.  A witness will give direct

13   evidence when called and then there will be cross-examination

14   and you will be able to test the truthfulness of the witness

15   based on the evidence, many factors, a witness' demeanor,

16   everything that you would do in talking to someone in your

17   work or socially, you will have the opportunity to assess

18   witnesses here in the courtroom.

19              THE PROSPECTIVE JUROR:  I see.

20              THE COURT:  Well, so you have the right as a juror

21   to completely discount what a witness says because you don't

22   believe it or believe some of what a witness says or believe

23   all of what a witness says.

24              THE PROSPECTIVE JUROR:  Okay.

25              THE COURT:  And to the extent you believe what a

Prospective Juror 185                                      548

1    witness says, to apply that in your effort to decide whether

2    the defendant is guilty beyond a reasonable doubt of a

3    particular crime.

4              So, the question, this question really asks you

5    whether you would treat law enforcement, some witnesses like

6    law enforcement witnesses differently from other witnesses

7    when you do that assessment or would you treat everybody the

8    same?

9              THE PROSPECTIVE JUROR:  I think based on what you

10   said, I would, you know, I would, of course, look at the

11   individual and hear what they're saying.

12             THE COURT:  Let me help you for a minute.

13             THE PROSPECTIVE JUROR:  Okay.

14             THE COURT:  I will direct the jury that they are to

15   treat law enforcement witnesses the way they treat all other

16   witnesses and to consider their testimony based on what you

17   hear in the courtroom and every witness should be assessed in

18   the same, with the same approach.  Can you do that?

19             THE PROSPECTIVE JUROR:  I agree, yes, I agree with

20   that.

21             THE COURT:  Okay.  Other questions?

22             MR. AGNIFILO:  No, Judge.

23             MS. PENZA:  No, Your Honor.

24             THE COURT:  Okay.  Well, thank you for coming in.

25   You have a lovely afternoon.

Prospective Juror 187                                              549

1          THE PROSPECTIVE JUROR:  Thank you so much.

2          (Prospective Juror 185 exits the courtroom.)

3          THE COURT:  Is there a motion?

4          MR. AGNIFILO:  Not from us.

5          MS. PENZA:  No, Your Honor.

6          THE COURT:  All right.  Juror No. 185 is approved.

7          187 is next.

8          (Prospective Juror 187 enters the courtroom.)

9          THE COURT:  Please be seated.

10         THE PROSPECTIVE JUROR:  Thank you.

11         THE COURT:  Good afternoon.

12         THE PROSPECTIVE JUROR:  Good afternoon.

13         THE COURT:  You're Juror 187?

14         THE PROSPECTIVE JUROR:  Yes.

15         THE COURT:  Okay.  I'm going to review with you some

16 of your answers and follow up on some of them.

17         You're retired?

18         THE PROSPECTIVE JUROR:  Yes.

19         THE COURT:  What did you do when you worked?

20         THE PROSPECTIVE JUROR:  I taught college.  I

21 actually taught at City Tech right across the street.

22         THE COURT:  Oh, what did you teach?

23         THE PROSPECTIVE JUROR:  Engineering technology.

24 That was -- I mean, I -- that was before my gender change.

25         THE COURT:  I see.  And how long did you teach

Prospective Juror 187                         550

1    there?

2                THE PROSPECTIVE JUROR:  Twenty-seven years.

3                THE COURT:  Wow.  Okay.  Well, they've been

4    rebuilding that place.  It's very impressive.

5                So now, first of all, this jury is not going to be

6    sequestered.

7                THE PROSPECTIVE JUROR:  Okay.

8                THE COURT:  Meaning there are no overnights.  That's

9    not done anymore.

10               THE PROSPECTIVE JUROR:  Okay.

11               THE COURT:  I don't even know if it was ever done in

12   the federal court.  It's in the state court that they did

13   that.

14               THE PROSPECTIVE JUROR:  Okay.  Good.

15               THE COURT:  This jury, you'll be accompanied to the

16   courthouse every day, you'll have lunch in the jury room and

17   then you'll be accompanied away from the courthouse by

18   marshals every day.  It's just --

19               THE PROSPECTIVE JUROR:  From where?  All the way

20   from home?

21               THE COURT:  Well, you'll work that out with the

22   Marshals Service.  I don't get involved in that.

23               THE PROSPECTIVE JUROR:  Okay.

24               THE COURT:  But if you are selected as a juror, you

25   will meet with the marshals and they will work it all out with

Prospective Juror 187                              551

1    you.

2              THE PROSPECTIVE JUROR:  Okay.

3              THE COURT:  Where do you live?

4              THE PROSPECTIVE JUROR:  Staten Island.

5              THE COURT:  Staten Island.  Okay.  Let's see.  And

6    the way the trial is run, we start at about 9:30, we take a

7    mid-morning break, we take lunch at 1 and start again at 2, we

8    take a mid-afternoon break and we finish by 5 o'clock.

9              THE PROSPECTIVE JUROR:  Okay.

10             THE COURT:  And if anyone, you know, needs to use

11   the lavatory when we are not in a break or at lunch, the way

12   it's pretty clear.  The person can leave the room and come

13   back.

14             THE PROSPECTIVE JUROR:  Oh, all right.

15             THE COURT:  And we suspend while the person is out

16   of the room because every juror has to be here for the

17   testimony.

18             THE PROSPECTIVE JUROR:  Okay.

19             THE COURT:  Does that work?

20             THE PROSPECTIVE JUROR:  Yes, it does.

21             THE COURT:  Okay.  Good.

22             THE PROSPECTIVE JUROR:  Can I ask you a question,

23   Your Honor?

24             THE COURT:  Sure.

25             THE PROSPECTIVE JUROR:  When we met for the

Prospective Juror 187                            552

1  orientation, there were multiple defendants and a whole long

2  list of charges.  Now there's only one defendant.  Can I know

3  what the charges are that we would be considering?

4          THE COURT:  There are only charges against the one

5  defendant that will be tried before --

6          THE PROSPECTIVE JUROR:  Okay.

7          THE COURT:  -- this court.  So it's a range of

8  charges and I don't have the list of charges with me.

9          MS. PENZA:  Your Honor, the charges are the same as

10 the juror heard while we were --

11         THE PROSPECTIVE JUROR:  All right.

12         THE COURT:  They're the same charges --

13         THE PROSPECTIVE JUROR:  Okay.

14         THE COURT:  -- as before.

15         THE PROSPECTIVE JUROR:  Okay.  Thank you.

16         THE COURT:  Thank you.

17         So there's this question:  How important is your

18 faith, if any, to you?  And you said:  Extremely important.  I

19 make major life decisions based on my faith.

20         Is that right?

21         THE PROSPECTIVE JUROR:  Yes.  As it would affect a

22 court case, I -- well, I would have -- any verdict that I

23 would render would have to be something that my conscience

24 personally would back me up on.  You know, I'm kind of old.  I

25 might have to answer for what I've done in this life before

CMH        OCR        RMR        CRR        FCRR

Prospective Juror 187                                    553

1  too long and I would have to believe in whatever verdict I

2  give.

3           THE COURT:  Well, let me ask this.  That having been

4  said, the Court will charge you as to the law.  Will you

5  follow the law that I give you with the facts that you find

6  from the testimony and the other evidence?

7           THE PROSPECTIVE JUROR:  I would hope that there

8  would be no conflict.

9           THE COURT:  With what?

10          THE PROSPECTIVE JUROR:  Between my conscience and

11 the law.  I think, generally, things that -- like, basically

12 right is right, wrong is wrong, no matter where you are, but

13 basically --

14          THE COURT:  So you are going to follow your

15 conscience no matter what?

16          THE PROSPECTIVE JUROR:  If there's -- well, there's

17 so many possible situations, it would be impossible to predict

18 what but say, just say I have to believe in the verdict that I

19 render, that I couldn't say give a verdict that I felt was the

20 opposite of what it should be.

21          THE COURT:  Okay.  Now, you indicated to this

22 question:  Have you or anyone close to you ever participated

23 in a Landmark Forum, S or anything you view as similar and you

24 said:  Yes, my late wife's sister did ask for a while decades

25 ago.  We humored her.

Prospective Juror 187                                    554

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  So what did you mean by that?

3           THE PROSPECTIVE JUROR:  Well, we, I think we went to

4    a meeting with her.  They were big on people supporting one

5    another so, of course, we said we supported her and -- we

6    weren't close.  It wasn't something that impacted our daily

7    life and before too long, she dropped out of it, but, yes, we

8    went along.  We didn't think that it was as big a deal as she

9    did but it was important to her.

10          THE COURT:  So this question:  Would you be able to

11   listen to and discuss matters of a sexual nature with your

12   fellow jurors when you deliberate?  And you answered:  Listen

13   to, yes.  Discuss, probably not.  So --

14          THE PROSPECTIVE JUROR:  I don't know.

15          THE COURT:  Well, there will be definitely issues

16   having to do with sexual exploitation of a minor, for

17   instance, that would be the subject of testimony in this case

18   and the jury will have to grapple with that testimony in

19   deciding the verdict in this case.  So will you be able to

20   engage in that discussion, among others, having to do with a

21   sensitive subject related to sexuality?

22          THE PROSPECTIVE JUROR:  That's a tough one.  It's --

23   I mean, all I can say is that's a tough question.  I would do

24   my best but I, I guess that's about all I can say, is that if

25   I'm selected, I would do, do my best.

CMH        OCR        RMR        CRR        FCRR

1          THE COURT:  All right.  Thank you.

2          Have you or anyone close to you ever been the victim

3  of sexual assault including date rape?  You said:  Yes, some

4  of the women who perform at the same open mics that I do have

5  been assaulted.

6          THE PROSPECTIVE JUROR:  Yes.

7          THE COURT:  And how do you know this?

8          THE PROSPECTIVE JUROR:  They've said so publicly.

9          THE COURT:  An open mic is like at a comedy club?

10         THE PROSPECTIVE JUROR:  For me, it's usually

11  musical.  I play saxophone.  So they, they're singers, you

12  know, singer/songwriters, guitar players, performers of

13  various kinds and I've become Facebook friends with many of

14  them and they've shared their experiences.

15         THE COURT:  Do you think that your knowledge of

16  these experiences would affect your ability to serve as a fair

17  and impartial juror in a case where there are issues involving

18  sexuality?

19         THE PROSPECTIVE JUROR:  It would have an impact.

20         THE COURT:  Then there's this other question:  The

21  charges in this case involve allegations, among other things,

22  of sex trafficking, forced labor, child pornography and child

23  exploitation.  Is there anything about the nature of these

24  allegations that would make it difficult for you to be fair

25  and impartial?  And you were asked to say "yes" or "no" but

Sidebar                                                     556

1    you said -- you didn't check off either.  You said:  I'm not

2    sure I can give you an honest answer right now.

3              Can you give me an answer?

4              THE PROSPECTIVE JUROR:  Well --

5              THE COURT:  What's that?

6              THE PROSPECTIVE JUROR:  The best I can say is that

7    hearing about those things would influence my conscience and

8    that, in turn, would make it harder for me to be impartial.

9              THE COURT:  Okay.

10             THE PROSPECTIVE JUROR:  Very much harder.

11             THE COURT:  Okay.  Thank you.  Thank you.

12             Anything else?

13             MR. AGNIFILO:  Nothing else.

14             THE COURT:  Anything else?

15             MS. PENZA:  Brief sidebar, Your Honor?

16             THE COURT:  Sure.

17             (The following occurred at sidebar.)

18             MS. PENZA:  Your Honor, I think if Your Honor could

19   just ask the direct question of whether it came down to the

20   facts and the law leading to one decision and her conscience

21   telling her something else, whether she would follow the facts

22   of the law or she would follow her conscience.

23             THE COURT:  That's a good question.

24             MR. AGNIFILO:  That's fine.  Does Your Honor at this

25   point have a feeling as to whether the juror would be excused?

Prospective Juror 187                          557

 1          THE COURT:  I think the juror seems tortured by this
 2   situation, frankly, and I feel a certain sympathy for her.
 3          MS. PENZA:  Agreed, Your Honor, but I think --
 4          THE COURT:  But I will ask the question.  That's my
 5   current assessment.
 6          MR. AGNIFILO:  Yes, me too.
 7          THE COURT:  Okay.  All right.
 8          (In open court; sidebar ends.)
 9          THE COURT:  So I just have one other question.
10          After hearing the evidence and hearing my giving you
11   the charge on the law, and you came down with your 11
12   colleagues on the jury to deciding the case and you found that
13   the law, based on the facts that you found, would have you
14   find one verdict but your conscience as opposed to the law
15   would result in the other verdict, in your mind, which way
16   would you go, follow the law or follow your conscience which
17   you feel so strongly about?  From the very beginning of this
18   interview, it was very clear you had a strong sense of right
19   and wrong and conscience.
20          THE PROSPECTIVE JUROR:  Maybe that's part of why
21   I -- I was brought up Catholic, I was an Episcopalian for
22   awhile and I've been a Lutheran I'm going to say for about
23   15 years and I like this church because Martin Luther was so
24   big on conscience and, well, you've got my age there.  I'm 68.
25   I don't know how much longer before I'll have to give an

1   account of my actions up there.  I would hope that there

2   wouldn't be a serious conflict.

3              THE COURT:  By the way, there's no right or wrong

4   answer here.  There's only your answer.

5              THE PROSPECTIVE JUROR:  Okay.

6              THE COURT:  All right.  So I'm not looking for an

7   answer.  I'm looking to know how you think and feel about it.

8              THE PROSPECTIVE JUROR:  Okay.  Well, it would boil

9   down to whether there was something that, I guess if I can

10  use, it's probably a bad word in a courtroom, is a

11  technicality.  If it was a matter of a technicality, I would

12  -- well, I probably could not either convict or acquit based

13  on one.  It would have -- it would have to be a fundamental

14  finding that, based on the evidence, you know, definitely not

15  on anything else, that the defendant is either guilty or not

16  guilty and as I see it and subject to your explaining the

17  letter of the law, I would hope that I could give that verdict

18  but I would hope that it doesn't boil down to something where

19  there would be a significant difference between what the law

20  says and what my conscience says.

21             I think our legal system has been around long enough

22  and that it really, it really shouldn't be a conflict but as

23  to what would actually happen, it would really depend on the

24  specifics of the situation.  I couldn't really give a general

25  answer that would apply in all cases.

Prospective Juror 187                                    559

1        THE COURT:  Well, let me talk about your faith for a

2    minute.  As a Christian --

3        THE PROSPECTIVE JUROR:  Yes.

4        THE COURT:  -- there is a great deal said in the

5    Bible, and this is the week to talk about it, I suppose, about

6    the importance of faith, the importance of mercy, the

7    importance of sympathy for people and it may be that as a

8    moral matter, based on the church's teachings, that you would

9    feel obligated to follow a certain path in making a decision

10   but the law would have you follow a different path and where

11   those paths converge, separate as opposed to converging, where

12   they separate based on the facts, you could either reach one

13   conclusion based strictly on the law and possibly another

14   outcome based on your faith and morality and your belief

15   structure.  And that's really, that's the question.

16        The Court requires that the jurors decide the case

17   based on the law as I give it to you and the facts of the case

18   as you find them and that's why I'm asking the question.

19   It's --

20        THE PROSPECTIVE JUROR:  I understand.

21        THE COURT:  It's not about a technicality.  It's

22   about a fundamental distinction.  Now, those two may merge in

23   most cases and you hope that they do.  I think that's your

24   view, but where they diverge, that's where the problem exists

25   and that's why I asked the question because you are obligated,

CMH       OCR       RMR       CRR       FCRR

Prospective Juror 187                    560

1    I mean, you take an oath as a juror which is made under God

2    that you will follow the law as I give it to you.  So that is

3    the quandary and that's why I ask question.

4              Do you have anything else to say about that?

5              THE PROSPECTIVE JUROR:  Well, this would not -- I

6    think that a verdict does have to be in accordance with the

7    law.  I could not give a verdict that was based on the

8    evidence.  That would just totally destroy the whole judicial

9    system if anybody did that.  It would probably boil down to

10   fine points like, say, a large percentage of the evidence

11   pointed in one direction but there was some consideration that

12   might point in the other direction and possibly having to

13   balance those two, I'd say I could promise you that any

14   verdict that I would render would be in accordance with the

15   law, but if there are conflicting parts of the evidence, then

16   the law probably, what -- I don't know.  I'm trying to -- I

17   can't really imagine.  Oh, let's see.

18             I don't know if I can imagine a situation where

19   there would be a real conflict.  The only thing that I would

20   say is that if -- well, I would have to find in accordance

21   with the law.  Just sometimes the law is not unambiguous, that

22   there might be more -- it might be possible to go either way

23   with a verdict based on the same body of evidence.

24             THE COURT:  Okay.

25             THE PROSPECTIVE JUROR:  And in that case, my

Prospective Juror 187                                    561

1    conscience would tell me which way to go.

2           THE COURT:  Okay.  Thank you.  Thank you.

3           Anything else?

4           MR. AGNIFILO:  No, Judge.

5           MS. PENZA:  No, Your Honor.

6           THE COURT:  Thank you very much for coming in.  Have

7    a nice day.

8           THE PROSPECTIVE JUROR:  You're welcome.  Thank you.

9           (Prospective Juror 187 exits the courtroom.)

10          THE COURT:  Is there a motion?

11          MR. AGNIFILO:  Yes, Judge.  We're going to ask that

12   Your Honor strike the juror for cause.  I mean, to the extent

13   that I followed it, there's a strong, there's a strong sort of

14   alternative element, sort of intellectual element that this

15   juror would call upon in rendering a verdict and whether the

16   legal instructions and our system would be in accordance with

17   this juror's conception of the juror's own conscience, the

18   juror's conscience is kind of a wild card and seems

19   influential enough that we can't say with confidence that the

20   law and Your Honor's instructions would be the only guiding

21   principles.

22          MS. PENZA:  Your Honor, the government objects to

23   her being stricken for cause.  She stated as clearly as, as

24   clear as crystal:  I promise any verdict will be in accordance

25   with the law.  I think this process can be difficult, to be

Prospective Juror 188                                      562

1   here and being questioned, but I think what it's shown is that

2   she will be a thoughtful and diligent juror.

3             THE COURT:  Well, I think we have here is an

4   intelligent and articulate person who's grappling with the

5   concepts that we have.  I think she can understand the Court's

6   instructions on the law and will apply the instructions and

7   she appears to be a person of conscience and at the end, it

8   was clear that she would make following the Court's

9   instructions her objective, but she also said that without

10  some concrete issue before her, it would appear that she felt

11  it was impossible to give an ironclad answer as to how all of

12  this would come together but I think that her intent is to

13  follow the law.

14            So the motion is denied and you have your exception.

15  Juror No. 187 is qualified.

16            I also think, I just make note that I thought that

17  the juror had what was, at first, I thought it was

18  nervousness, but I think it's just a nervous tremor in one of

19  her hands.

20            MR. AGNIFILO:  I think -- I agree.

21            THE COURT:  All right.

22            So next is Juror No. 188.

23            (Prospective Juror 188 enters the courtroom.)

24            THE COURT:  Please be seated, sir.

25            Good afternoon.

Prospective Juror 188                              563

1           THE PROSPECTIVE JUROR:  Afternoon.

2           THE COURT:  You are Juror 188, correct?

3           THE PROSPECTIVE JUROR:  Correct.

4           THE COURT:  And you work full time, correct?

5           THE PROSPECTIVE JUROR:  Yes, sir.

6           THE COURT:  And you work at a hospital?

7           THE PROSPECTIVE JUROR:  Correct.

8           THE COURT:  Now, and that's full time?

9           THE PROSPECTIVE JUROR:  Correct.

10          THE COURT:  And I notice that you take a number of

11   medicines, is that right?

12          THE PROSPECTIVE JUROR:  Yes, sir.

13          THE COURT:  And did they affect your ability to

14   think or reason?

15          THE PROSPECTIVE JUROR:  I have high glucose level.

16          THE COURT:  You have a high glucose level?

17          THE PROSPECTIVE JUROR:  Yes.

18          THE COURT:  Yes.

19          THE PROSPECTIVE JUROR:  I have a monitor with me.  I

20   have a continued glucose monitor machine on me.

21          THE COURT:  A what?

22          THE PROSPECTIVE JUROR:  A continued glucose monitor

23   on me so my blood sugar goes up and down.

24          THE COURT:  Glucose?

25          THE PROSPECTIVE JUROR:  Yes, I'm diabetic.

Prospective Juror 188                          564

1        THE COURT:  Does that affect your ability to do your

2   job?

3        THE PROSPECTIVE JUROR:  I get moody sometimes when

4   my blood sugar is high.  When my sugar is low, I get sluggish

5   and when my blood sugar is high, I take a little breather,

6   water, walk around a little bit and it goes down and I take my

7   insulin.

8        THE COURT:  Now, let me just describe jury duty to

9   you.  The way it works is we begin the day at 9:30.  We take a

10  break in the middle of the morning.  Then we have a lunch

11  break for an hour at 1.  Then we have a mid-afternoon break

12  and we finish the day by 5.

13       Do you think, with that schedule, you would be able

14  to deal with whatever the medical issues you have on an

15  ongoing basis?

16       THE PROSPECTIVE JUROR:  No.

17       THE COURT:  Why not?

18       THE PROSPECTIVE JUROR:  Because I have to constantly

19  check my glucose level, try to continue controlling it.  If I

20  don't, I could collapse.  I could have high sugar level where

21  it could affect me, like, visually and I can be irritable.

22       THE COURT:  Are there other questions?

23       MR. AGNIFILO:  No, Judge.

24       MS. PENZA:  No, Your Honor.

25       THE COURT:  Okay.  Thanks very much for coming in.

CMH      OCR      RMR      CRR      FCRR

1    Have a nice day.

2              THE PROSPECTIVE JUROR:  Thank you.

3              (Prospective Juror 188 exits the courtroom.)

4              THE COURT:  All right.

5              MR. AGNIFILO:  We're going to ask that he be

6    excused.  He's expressing a medical hardship.  He seems to be

7    very concerned about his glucose level maintenance and I'm

8    certainly not in a position to second guess him.

9              THE COURT:  Yes.

10             MS. PENZA:  Agreed, Your Honor.

11             THE COURT:  Well, you know, when I read his

12   questionnaire, I saw that he was on at least ten medications

13   and he's 34 years old so, I mean, he has serious issues

14   obviously.

15             MS. PENZA:  Absolutely, Your Honor.  The government

16   didn't know -- again, I'm not a doctor.  I don't know the

17   difference between sitting at jury duty and his current job

18   and what accommodations he's able to get.

19             THE COURT:  But that's why I asked the question and

20   explained how it worked in jury duty.

21             MS. PENZA:  Agreed.

22             THE COURT:  All right.  On consent, Juror No. 188 is

23   struck.

24             (Prospective Juror 199 is excused.)

25             (Continued on next page.)

Prospective Juror No. 189                              566

1   (Continuing.)

2           THE COURT:  Please be seated.  Good afternoon.

3           PROSPECTIVE JUROR NO. 189:  Good afternoon.

4           THE COURT:  You are Juror No. 189; correct?

5           PROSPECTIVE JUROR NO. 189:  Yes.

6           THE COURT:  Okay.  I am going to follow up on your

7   questionnaire, ma'am.  What kind of work do you do?

8           PROSPECTIVE JUROR NO. 189:  I'm a lunch helper.

9           THE COURT:  Okay.  And do you work at a school?

10          PROSPECTIVE JUROR NO. 189:  Yes.

11          THE COURT:  Okay.  So you work part-time, is that

12  it?

13          PROSPECTIVE JUROR NO. 189:  Yes.

14          THE COURT:  And do you know whether your employer

15  would pay for your jury duty?

16          PROSPECTIVE JUROR NO. 189:  The City, yes.  I work

17  for the Department of Education.

18          THE COURT:  Do you work in the summer?

19          PROSPECTIVE JUROR NO. 189:  Most of the time, yes.

20          THE COURT:  Okay.  Well, this case will be over by

21  that time, okay?

22          PROSPECTIVE JUROR NO. 189:  Okay.

23          THE COURT:  So have you ever been a juror before?

24          PROSPECTIVE JUROR NO. 189:  No.

25          THE COURT:  And you have one son who is 20 years

1  old?

2          PROSPECTIVE JUROR NO. 189:  Yes.

3          THE COURT:  Let me ask you this:  Now, the defendant

4  has been indicted for certain crimes by a grand jury.  Do you

5  understand that?

6          PROSPECTIVE JUROR NO. 189:  Yes.

7          THE COURT:  An indictment itself is not evidence.

8  It merely describes the charges made against the defendant.

9  It is an accusation.  It may not be considered by you as any

10 evidence of the defendants' guilt.  Are you able to follow

11 this rule of law?

12         PROSPECTIVE JUROR NO. 189:  In some ways, like the

13 legal -- the legal -- the legal way when they ask the question

14 it's like, I don't understand too much, but if, like, when you

15 say it's not an accusation yet if because they don't have no

16 proof, that's the way that I understand.

17         THE COURT:  Well, the indictment tells the defendant

18 what he accused of.

19         PROSPECTIVE JUROR NO. 189:  Okay.

20         THE COURT:  But it is not evidence that can be used

21 by the jury to determine whether the defendant is guilty or

22 not guilty.  The only evidence that can be used is the

23 witnesses who come to court and documents, pictures and other

24 items that the jury can use if it believes them, all right.

25 But that is up to the jury to do.  So, can you accept that an

Prospective Juror No. 189                    568

1   indictment cannot be used as evidence?

2             PROSPECTIVE JUROR NO. 189:  I'm not sure.

3             THE COURT:  Let me ask you one other question.  You

4   may hear testimony at the trial from certain individuals that

5   the Government alleges are victims of the defendant.  A

6   victim's testimony is not to be given any more or less

7   credence or belief than any other witness' testimony.  Would

8   you be able to follow the Court's instructions?

9             PROSPECTIVE JUROR NO. 189:  If I have to follow the

10  Court's instruction, I have to be able.

11            THE COURT:  I'm asking you about specific

12  instructions, an instruction that the testimony of a victim or

13  somebody that claims to be a victim, rather, is not to be

14  given any more or less believability than any other witness

15  who testifies just because the witness is a victim.  Do you

16  understand that?

17            PROSPECTIVE JUROR NO. 189:  Yes, just because he's a

18  victim just if we hear something about it, have to -- do we

19  agree and to follow the rules that you send me to follow.

20            THE COURT:  Well, there will be many witnesses and

21  some will be law enforcement witnesses.  Some will be people

22  who claim that they are victims and then there will be other

23  witnesses.  There may be witnesses who worked with the

24  defendant and know the defendant and will testify about the

25  work that they did with the defendant.

```
                           Sidebar                        569
```

1          So there will be many witnesses but I will tell you

2     that all the witnesses need to be examined by you, the jury

3     and considered as to whether they are telling the truth.  Can

4     you do that?

5               PROSPECTIVE JUROR NO. 189:  I think so.

6               THE COURT:  Are there other questions?

7               MR. AGNIFILO:  Could we have a sidebar, Judge?

8               THE COURT:  Yeah, sure.

9               (The following sidebar took place outside the

10    hearing of the court.)

11              MR. AGNIFILO:  My sense is that she's not

12    comprehending everything that the Court is saying and I think

13    that there's a comprehension issue.  I don't think she has

14    issues of presumption of innocence or anything of a

15    substantive matter.

16              THE COURT:  That's why I'm asking the questions to

17    see if she comprehends, if she follows what I'm saying so that

18    she can say what do you mean by this or what do you mean by

19    that.  I don't know how much more I can do.

20              MR. AGNIFILO:  I think Your Honor is being very

21    clear.  I think there is something about her personality, I

22    think she is either embarrassed that she doesn't understand or

23    she's trying hard to understand or she's not admitting that

24    she's not understanding but I think she's missing the crux of

25    the principles.

Prospective Juror No. 189                              570

1          MS. PENZA:  I think it's difficult to tell.  I think
2     some of these questions were inartfully worded by us.
3          THE COURT:  Yes, and I didn't edit them.
4          MS. PENZA:  And when they're being asked especially
5     to people who don't have perfect English skills it can be
6     difficult.
7          THE COURT:  Is there anything that you suggest that
8     I do to --
9          MS. PENZA:  Perhaps you can ask whether her comfort
10    level with the questions that have been -- that are being
11    asked.
12         THE COURT:  I will try to do something.
13         MS. PENZA:  When she reads, perhaps.
14         THE COURT:  It is a challenge.
15         (Sidebar ends.)
16         THE COURT:  So let me tell you a little bit more
17    about the law that you have to apply.  So you are on the jury
18    and a witness testifies or witnesses testify and then the jury
19    has to decide whether will the defendant based on the evidence
20    and the law that I give you, whether the defendant is guilty
21    beyond a reasonable doubt.  The Court tells you that you have
22    to follow certain rules and reasonable doubt is not doubt
23    beyond any doubt, but it's -- reasonable doubt is a high level
24    of certainty that the person committed the crime.
25         Do you think you can follow the Court's instructions

Prospective Juror No. 189                                    571

1   on the law when I give you those instructions on reasonable

2   doubt, for instance?

3           PROSPECTIVE JUROR NO. 189:  Yes, I think so.  If you

4   give me all the instructions.

5           THE COURT:  And have you ever been on a jury?

6           PROSPECTIVE JUROR NO. 189:  Never.

7           THE COURT:  So this will be the first time?

8           PROSPECTIVE JUROR NO. 189:  Yes.

9           THE COURT:  And some will be about matters having to

10  do with sexuality and alleged misconducts, alleged.  Do you

11  know what alleged means?  Alleged means the defendant has been

12  accused of it but it hasn't been proven to have done it until

13  a jury and unless a jury decides he did it.  So until the

14  jury -- until the jury finds him guilty, it's alleged.

15          PROSPECTIVE JUROR NO. 189:  Okay.

16          THE COURT:  All right?  So do you have any question

17  whether a person with your background and understanding will

18  be able to fairly and impartially decide the case?

19          PROSPECTIVE JUROR NO. 189:  First of all, I'm going

20  to feel like a little bit -- in some ways because it's with

21  it's sexual things including sexual things that's when I --

22  because -- that's when I feel like I maybe -- I'm going to

23  feel nervous and afraid or something and maybe I'm not going

24  to think from what my from what my heart say, because right

25  away whenever I see, then am I going to say, then I agree or

SN        OCR        RPR

Prospective Juror No. 189                               572

1  not agree.  I don't know if I can explain myself well.

2          THE COURT:  Based on your morals or based on your

3  convictions?

4          PROSPECTIVE JUROR NO. 189:  My morals, my vision.

5          THE COURT:  Are you a religious person?

6          PROSPECTIVE JUROR NO. 189:  Yes.

7          THE COURT:  Well, are you uncomfortable discussing

8  issues about possible sexual crimes?

9          PROSPECTIVE JUROR NO. 189:  I'm telling you the

10 truth, it's not like I feel uncomfortable.  The afraid that I

11 have it's, like, I can't understand you 100 percent or maybe

12 explain what I think or what I feel.  That's what made me,

13 sometimes, not express myself.

14         THE COURT:  Well, are you afraid you won't

15 understand or are you afraid you might make a mistake or are

16 you afraid that you don't know what questions to ask?

17         PROSPECTIVE JUROR NO. 189:  I'm afraid to make a

18 mistake.

19         THE COURT:  And why would that be bad?

20         PROSPECTIVE JUROR NO. 189:  Because I know for

21 whatever they showing, they show, the show of all the proof of

22 whatever they have, but I don't know if some kind of word in

23 there I don't understand or some terms I don't understand and

24 that's why I have to feel afraid when you have to make a

25 decision.

Prospective Juror No. 189                          573

1      THE COURT:  Okay, thank you.  I appreciate it and I

2  appreciate you telling me about it.  It's very important for

3  me to know how you feel and what your concerns are.  Because

4  for this defendant or for any defendant, the decision that the

5  jury makes matters tremendously; right?

6      PROSPECTIVE JUROR NO. 189:  Yes.

7      THE COURT:  If you were in the defendant's shoes,

8  would you be concerned about someone with your state of mind

9  would be making a decision about you?  In other words, if you

10 were the defendant, would you be comfortable with someone with

11 your -- if someone in your situation was on the jury?

12     PROSPECTIVE JUROR NO. 189:  Yeah, because maybe I

13 not 100 percent if that person understands where the case are

14 or how this thing is going.

15     THE COURT:  Are there any other questions?

16     MS. PENZA:  No, Your Honor.

17     MR. AGNIFILO:  Nothing from us.

18     THE COURT:  I want to thank you for coming in and

19 thank you for your candor and your sensitivity?

20     PROSPECTIVE JUROR NO. 189:  You're welcome.

21     THE COURT:  You have a nice day.

22     PROSPECTIVE JUROR NO. 189:  Thank you.

23     (Prospective juror exits.)

24     MR. AGNIFILO:  Your Honor, move to strike the juror

25 for cause.  She said she's afraid she's going to make a

SN        OCR        RPR

Prospective Juror No. 191                             574

1   mistake because she doesn't understand.  It's a very honest

2   thing she said and we're afraid that she might make a mistake

3   because she doesn't understand.

4             MS. PENZA:  The Government consents.

5             THE COURT:  Juror No. 189 is struck for cause by

6   consent.

7             We are up to Juror No. 191.

8             (Prospective juror enters.)

9             THE COURT:  You are Juror No. 191?

10            PROSPECTIVE JUROR NO. 191:  Yes.  Hello.

11            THE COURT:  Welcome.  Now, you are a full-time

12   student?

13            PROSPECTIVE JUROR NO. 191:  Yes, I attend NYU.  I'm

14   a graduate student.

15            THE COURT:  And what school are you with?

16            PROSPECTIVE JUROR NO. 191:  I'm in Steinhardt.

17            THE COURT:  Which is?

18            PROSPECTIVE JUROR NO. 191:  At NYU, New York

19   University.

20            THE COURT:  No, Steinhardt is what?

21            PROSPECTIVE JUROR NO. 191:  The School of Education.

22            THE COURT:  Okay.  And when is your term over?

23            PROSPECTIVE JUROR NO. 191:  It's over in two weeks.

24   I have finals coming up.

25            THE COURT:  When are finals?

Prospective Juror No. 193                          575

1          PROSPECTIVE JUROR NO. 191:  Finals start May 8th to
2     about the 20th.
3          THE COURT:  Do you have any finals?
4          PROSPECTIVE JUROR NO. 191:  I do.  I have several
5     finals and final papers.
6          THE COURT:  Are there any questions?
7          The trial starts on May 7th.  Would that create an
8     untenable situation for you?
9          PROSPECTIVE JUROR NO. 191:  Yes, especially because
10    I am full-time and I have a lot of coursework that needs to
11    get done.
12         THE COURT:  Any questions?
13         MR. AGNIFILO:  We have no questions.
14         MS. PENZA:  No questions, Your Honor.
15         PROSPECTIVE JUROR NO. 191:  Thank you.  Bye.
16         (Prospective juror exits.)
17         MR. AGNIFILO:  It seems like the potential juror has
18    a hardship due to her finals schedule and being a full-time
19    student.
20         MS. PENZA:  We agree, Your Honor.
21         THE COURT:  Juror No. 191 is struck for cause by
22    consent of both parties.
23         Next is 193.
24         (Prospective juror enters.)
25         THE COURT:  Please be seated, sir.  Good afternoon.

Prospective Juror No. 193                               576

1   You are Juror No. 193?

2            PROSPECTIVE JUROR NO. 193:  Yeah.

3            THE COURT:  Welcome.  Now, you indicated that you

4   have a back condition?

5            PROSPECTIVE JUROR NO. 193:  Just sitting still for a

6   long time is rough.  I'm used to being on my feet.  I'm on my

7   feet all day at work.

8            THE COURT:  Well, the way the trial works is that we

9   start at 9:30.  There's a mid-morning break.  There's an hour

10  for lunch at 1.  There's a mid-afternoon break and then we end

11  by 5 and if you need to stand up, you get to stand up.  If

12  necessary, if you need to stand up a lot I will put you in the

13  back row so everyone can still see.

14           PROSPECTIVE JUROR NO. 193:  That's fine.

15           THE COURT:  And if you need to leave the room to

16  stretch, we can wait for you.  So many people have back

17  problems sitting on juries or on the bench.

18           PROSPECTIVE JUROR NO. 193:  I can imagine.

19           THE COURT:  So let me ask you a few questions.  Did

20  you check with your employer as to whether you get paid for

21  jury duty?

22           PROSPECTIVE JUROR NO. 193:  We are on spring break

23  right now so I didn't get an answer from them before we left.

24           THE COURT:  Generally school districts pay for jury

25  service the entire service, but we would like to know for

SN        OCR        RPR

Prospective Juror No. 193                                577

1   sure.  So contact Mr. Reccoppa just to confirm that and he

2   will give you his information.

3          PROSPECTIVE JUROR NO. 193:  All right.

4          THE COURT:  Let me ask you a few questions based on

5   your answers in the questionnaire.  "There may be evidence in

6   this case about engaging in relationships with multiple sexual

7   partners.  Would hearing about that type of evidence affect

8   your ability to serve as a fair and impartial juror in the

9   case?"  And you answered, "Yes.  I feel that such behavior is

10  morally wrong especially if minors are exposed to it."  Is

11  that your view?

12         PROSPECTIVE JUROR NO. 193:  Yeah.

13         THE COURT:  Okay.  Now, there will be evidence in

14  this case regarding certain alleged sexual misbehavior and I

15  will instruct you on the law on it.  You will hear evidence on

16  it from witnesses.  You will be able to assess the

17  truthfulness of the witnesses, the demeanor of the witnesses,

18  whether you believe it is true or not true, the extent to

19  which it is true and then apply the law to the facts as you

20  and the jury find them and decide whether a particular charge

21  requires a verdict of not guilty beyond a reasonable doubt.

22         I know it's a sensitive area.  I know nobody likes

23  to deal with this type of evidence, but it is the evidence in

24  this case.  There are charges in this case having to do with

25  that type of evidence.  Would you be able to put aside your

1   discomfort with it and deal with the evidence?

2            PROSPECTIVE JUROR NO. 193:  I mean, I suppose I

3   could try, but, you know I have strong beliefs about it so

4   that would be part of my decision-making process.  So I don't

5   know that it would be completely objective.  It would be based

6   on my own life experiences, right?  So --

7            THE COURT:  No.

8            PROSPECTIVE JUROR NO. 193:  I understand you're

9   going to give directions, but -- I mean, I would do my best.

10  That's, you know --

11           THE COURT:  Well, the way I look at this, and it is

12  not easy for you or anybody else who comes here, the Court is

13  trying to put together with the parties a jury of people who

14  will, to the greatest extent that they can, put aside any

15  moral indignation that they have about certain actions and

16  decide the case based on the law and the facts of the case.

17           And, so, that is not easy, but it is necessary to do

18  it in order to do justice.  You're a professional in your

19  career.  My sense is that as a professional you understand

20  that there are certain steps that need to be taken in doing

21  certain jobs that may not be pleasant.  You may not like it,

22  but that it is a job that needs to be done and that is really

23  what you are being asked to do here, the job that needs to be

24  done.  I am just wondering whether --

25           PROSPECTIVE JUROR NO. 193:  I suppose, but I don't

Prospective Juror No. 193                                    579

1  know that setting aside my own morals is a fair thing for

2  anybody to ask.  Just, I mean -- do you understand what I am

3  saying?  Like, if I have a moral objection to something that

4  doesn't fit within the law's code, I'm not sure that it's fair

5  for me to be asked to set aside my morals.

6              THE COURT:  I'm not asking you to set them aside.  I

7  am asking you to follow the law and assess the facts of the

8  case as to whether you -- whether you believe the witnesses or

9  you don't believe the witnesses or you believe some of what

10 they say and then apply the law to what you believe is true.

11 You know, we are not discussing the morality of something

12 here.  We are discussing -- Congress has established certain

13 laws that make certain acts illegal and we are applying those

14 laws to the facts of this case.  That is really what we are

15 doing.  So this is really about what Congress has done to

16 establish certain legal requirements or legal prohibitions.

17              So I don't view this as having to do with morals.

18 The morals were dealt with by Congress in establishing these

19 laws.  All we are being asked to do is to apply Congress's

20 decision to the facts of this case.  That's the way I view it

21 and if you are not able to follow the law, then you just won't

22 be a juror.  So just tell me if you can follow the law or

23 whether we are going to have a debate over the morality of

24 anything that anybody did; because I am not in church or

25 temple.

SN       OCR       RPR

1          I am in a courtroom and this person's life depends

2    on jurors following the law.  So, you have got to tell me

3    straight up whether you can follow the law.  That is all.  If

4    you can't, you just tell me.  I don't want to talk about

5    morality because I have my morality and do I want to try a

6    case involving in these issues?  There's nobody in this

7    courthouse, no judge in this courthouse wants to do that, but

8    that is the job.  That is why I ask the question.  I'm not

9    questioning your right to have your moral views and to live by

10   a certain --

11         PROSPECTIVE JUROR NO. 193:  I'm questioning more

12   whether I can set them aside to do what you are asking.

13         THE COURT:  Yeah.

14         PROSPECTIVE JUROR NO. 193:  Honestly, I don't know

15   that I can.

16         THE COURT:  Okay.  Any other questions?

17         MR. AGNIFILO:  Not from us, Judge.

18         MS. PENZA:  You not from us.

19         THE COURT:  Thank you very much.  Have a nice day.

20         PROSPECTIVE JUROR NO. 193:  Sorry I couldn't help.

21         THE COURT:  It helps that you tell me your honest

22   answer.  It's not a criticism of you at all.  I just need to

23   know because to have you on a jury if you are wrestling with

24   this and saying I don't know if I can follow the law, that

25   would not be fair to the defendant and we can't have that,

Prospective Juror No. 195                                       581

1    right?

2              PROSPECTIVE JUROR NO. 193:  I understand.

3              THE COURT:  Thank you.

4              PROSPECTIVE JUROR NO. 193:  Thank you.

5              (Prospective juror exits.)

6              MR. AGNIFILO:  We ask that the juror be excused for

7    cause because he told the Court very frankly he did not think

8    he could set aside his own morality and follow the Court's

9    instructions.

10             MS. PENZA:  We consent, Your Honor.

11             THE COURT:  All right.  Juror No. 193 is struck for

12   cause on consent.  Next?

13             THE COURTROOM DEPUTY:  197.

14             THE COURT:  197?  What happened to 195?

15             MS. PENZA:  We consented to 197 last night.

16             THE COURT:  195 or 197?

17             MS. PENZA:  197, Your Honor.

18             THE COURT:  Who is here?  We just did 193.  We have

19   195.  And 173 is downstairs, I guess.

20             (Prospective juror enters.)

21             THE COURT:  Please be seated.  You are Juror No.

22   195, sir.

23             PROSPECTIVE JUROR NO. 195:  Yes.

24             THE COURT:  Good afternoon.

25             PROSPECTIVE JUROR NO. 195:  Good afternoon.

SN     OCR     RPR

Prospective Juror No. 195                          582

1          THE COURT:  Thank you for your patience.

2          PROSPECTIVE JUROR NO. 195:  Okay.

3          THE COURT:  Now, you work at the Pierre Hotel?

4          PROSPECTIVE JUROR NO. 195:  Yes.

5          THE COURT:  And you are an IT tech?

6          PROSPECTIVE JUROR NO. 195:  Yes.

7          THE COURT:  And what does an IT tech do?

8          PROSPECTIVE JUROR NO. 195:  I tend to corporate

9    events.

10          THE COURT:  Like in the ballroom?

11          PROSPECTIVE JUROR NO. 195:  Yes.

12          THE COURT:  You set up the events with screens and

13   music?

14          PROSPECTIVE JUROR NO. 195:  Webcasting.  Whatever

15   they need, printers.

16          THE COURT:  All right.  And do you know how many

17   days of jury duty you are paid for by your employer?

18          PROSPECTIVE JUROR NO. 195:  Right now, as far as I

19   understand, it's five days.

20          THE COURT:  Did you check with anybody?

21          PROSPECTIVE JUROR NO. 195:  I sent a letter to

22   corporate which is in India.

23          THE COURT:  You mean the Taj people?

24          PROSPECTIVE JUROR NO. 195:  Yeah.

25          THE COURT:  The Taj people have not responded to you

Prospective Juror No. 195                      583

1    from India?

2              PROSPECTIVE JUROR NO. 195:  No, no, no.

3              THE COURT:  Well, I wish they would.

4              PROSPECTIVE JUROR NO. 195:  When I talked to HR here

5    they said the last time someone got jury duty they got paid

6    for eight days.  So I don't know what exceeds after that.

7              THE COURT:  It's important for us to know.

8              PROSPECTIVE JUROR NO. 195:  It's really important

9    for me.

10             THE COURT:  If you were not paid for your jury duty

11   beyond five days would that be a hardship?

12             PROSPECTIVE JUROR NO. 195:  That would be

13   devastating.

14             THE COURT:  And why is that?

15             PROSPECTIVE JUROR NO. 195:  Paying my bills, paying

16   my mortgage.  Paying my car payment.  I've got a lot of pills.

17             THE COURT:  So basically you're a middle class

18   person who lives from month-to-month?

19             PROSPECTIVE JUROR NO. 195:  Yeah, I mean, yeah.

20             THE COURT:  It's like everybody.

21             PROSPECTIVE JUROR NO. 195:  Yeah.

22             THE COURT:  You are not operating on a trust fund is

23   what I'm saying.

24             PROSPECTIVE JUROR NO. 195:  Not at all.

25             THE COURT:  Okay.  Let me see if I have other

Prospective Juror No. 195                        584

1   questions for you.  "The charges in this case involve

2   allegations of, among other things, sex trafficking, forced

3   labor, child pornography and child exploitation.  Is there

4   anything about the nature of these allegations that would make

5   it difficult for you to be fair and impartial?"  You said

6   "Yes.  Anything with underage kids, this would make it hard to

7   be fair."

8              PROSPECTIVE JUROR NO. 195:  Correct.

9              THE COURT:  And you understand that the defendant

10  has pleaded not guilty to all of these charges and we have a

11  Constitutional requirement that a defendant is innocent until

12  proven guilty.  So he is presumed to be innocent.  Do you

13  understand that?

14             PROSPECTIVE JUROR NO. 195:  Yeah, I understand that,

15  but someone close to me was raped as a child, so it is -- I'm

16  a little biased about it even though the charges are not true

17  yet until proven.

18             THE COURT:  Well --

19             PROSPECTIVE JUROR NO. 195:  I mean, I can have an

20  open mind, but it's going to be tough, to be honest about it.

21  It's a tough thing when it comes to kids, children, any

22  children, you know what I'm sag.  Any kid that gets hurt.

23  It's a tough thing to have an open mind about it.

24             THE COURT:  Well, I understand that.  That is why

25  this case is so difficult, that any case of this nature is so

Prospective Juror No. 195                          585

1    difficult.

2              PROSPECTIVE JUROR NO. 195:  It's tough, yes.

3              THE COURT:  But the way it works at a trial is that

4    you will hear evidence from people and you will assess the

5    evidence.  You might not believe what you hear from a witness

6    or you might believe it or believe a part of it and then I

7    will give you -- tell you the law that you have to apply to

8    the facts and then the jury gets to discuss and decide whether

9    the evidence proves beyond a reasonable doubt that the

10   defendant committed a certain crime.  Do you think you are

11   capable of doing that in a case involving these types of

12   charges?

13             PROSPECTIVE JUROR NO. 195:  I can say yes to you,

14   but I don't know.

15             THE COURT:  Why is that?

16             PROSPECTIVE JUROR NO. 195:  I can say yes, I can

17   listen to the facts and hear the facts and try to judge on

18   facts only, but once I hear the charges and the details of the

19   charges and picture or whatever else may come out, it may be a

20   different story.

21             THE COURT:  You mean as to whether the defendant did

22   what is claimed that he did?

23             PROSPECTIVE JUROR NO. 195:  Correct.

24             THE COURT:  Are there other questions?

25             MR. AGNIFILO:  A quick sidebar?

1          THE COURT:  Sure.

2          (The following sidebar took place outside the

3    hearing of the courtroom.)

4          MR. AGNIFILO:  So I'm trying to figure out his

5    problem because if -- do you think it might be useful for Your

6    Honor to ask whether if evidence proves beyond a reasonable

7    doubt guilty or if it doesn't prove beyond a reasonable doubt

8    not guilty and keep it to that and see what he says and

9    then --

10         MS. PENZA:  The Government agrees with that.

11         THE COURT:  Okay.  All right.

12         (Sidebar ends.)

13         THE COURT:  So let's say hypothetically that there's

14   evidence and after hearing the evidence, meaning after hearing

15   the direct testimony and the cross-examination you conclude on

16   a specific charge that, you know, I think the defendant did it

17   but I don't think the Government proved it beyond a reasonable

18   doubt to my satisfaction, in that situation, would you vote to

19   acquit someone?

20         PROSPECTIVE JUROR NO. 195:  No.

21         THE COURT:  Why not?

22         PROSPECTIVE JUROR NO. 195:  I would go with my gut

23   feeling.

24         THE COURT:  In other words, you would not address

25   the question of reasonable doubt?

1              PROSPECTIVE JUROR NO. 195:  If you proved to me 100

2    percent that he's innocent of these charges, he's not guilty.

3    If I have an idea or I see something that even the attorneys

4    doesn't see and I feel that he's guilty, I'm going to make

5    sure he's guilty.  I'm going to feel he's guilty and

6    especially when it comes to child pornography.

7              THE COURT:  Any other questions?

8              MR. AGNIFILO:  No knowledge.

9              MS. PENZA:  No, Your Honor.

10             THE COURT:  Thank you very much for coming in.  Have

11   a nice day.

12             PROSPECTIVE JUROR NO. 195:  You too.

13             THE COURT:  See you at the Pierre.

14             PROSPECTIVE JUROR NO. 195:  No problem.

15             (Prospective juror exits.)

16             MR. AGNIFILO:  Your Honor, we're going to ask that

17   the juror be excused.  I thought Your Honor's question was

18   very clear.  It cleaned up the issue perfectly and he seems to

19   have an issue with the burden of proof and what he basically

20   said was regardless of proof beyond a reasonable doubt --

21             THE COURT:  He has saying you have to prove to him

22   that the defendant is innocent is what he's saying.

23             MR. AGNIFILO:  That's --

24             THE COURT:  I mean, that was the sum and substance.

25             MR. AGNIFILO:  So we ask that he be excused based on

Prospective Juror No. 195                          588

1    that.

2              MS. PENZA:  The Government consents.

3              THE COURT:  Juror No. 195 is struck for cause on

4    consent.

5              Before the last person comes in.  We have a total.

6    Our count is 54 jurors.

7              MS. PENZA:  We have that number as well.

8              THE COURT:  Some of whom we are waiting to hear

9    about whether they are getting paid by their employer for

10   their entire jury service.  So maybe there is about four of

11   those.  I don't know exactly how many and that means if

12   everyone shows up we have more than enough approved jurors to

13   make the final peremptory strikes.  Some people may not come.

14   They may have intervening problems between the day that they

15   were here and the day that we do the final selection.

16             So what I think we should do is what I sketched out

17   earlier in the day; that we will make the final peremptory

18   strikes on May 6th starting at 9:30.  If not enough jurors

19   come in, we will also bring in another maybe 20 to 30 people

20   on the list.

21             Have you sent me your questions for the next group?

22             MS. PENZA:  We haven't sent questions, Your Honor,

23   no.

24             THE COURT:  Why don't you do that by next Wednesday.

25             MS. PENZA:  Up to 30, Your Honor?

SN        OCR        RPR

Prospective Juror No. 173                                        589

1          THE COURT:  Up to 30.

2          MR. AGNIFILO:  Yes.

3          THE COURT:  So we will be prepared to call in these

4   additional jurors just to wait in the jury assembly area until

5   we know we have enough jurors, qualified jurors.  We need 40

6   to do all of the peremptory strikes of the jury and the

7   alternates.  Then we can complete that process on Monday the

8   6th and arrangements can be made.

9          (Prospective juror enters.)

10          THE COURT:  Good afternoon, ma'am.  Please be

11  seated.  You are Juror No. 173?

12          PROSPECTIVE JUROR NO. 173:  Yes, I am.

13          THE COURT:  Welcome.  Let me just mention, before I

14  ask you some questions, that you met the lawyers and the

15  defendant before, but let me reintroduce them to you.

16          PROSPECTIVE JUROR NO. 173:  Okay.

17          THE COURT:  At the near table to you are the

18  attorneys for the United States, the Government; Assistant

19  U.S. Attorneys Moira Penza, Tanya Hajjar and Mark Lesko.  At

20  the far table is the defendant, Keith Raniere.  He is wearing

21  a sweater an open-collared shirt.  He is represented by

22  attorneys Mark Agnifilo, Teny Geragos, Paul DerOhannesian and

23  Danielle Smith.  I want to tell you that Mr. Raniere is the

24  only defendant who will be standing trial before the jury that

25  is being selected.  So there is only one defendant who will

SN        OCR        RPR

Prospective Juror No. 173                           590

1   actually be standing trial in this trial.  So, please don't

2   speculate as to why this is the case, but I just wanted to let

3   you know there is only one defendant who will be standing

4   trial in this trial.  Okay?

5              PROSPECTIVE JUROR NO. 173:  Okay.

6              THE COURT:  And I am going to remind you that it is

7   very important that you follow my instruction that you do not

8   discuss this case with anyone; not your family, friends or

9   business associates or other jurors.  In addition, you must

10  not read, listen to or access any accounts of this case in any

11  form of media such as newspapers, TV, radio, podcasts or the

12  internet nor research or seek outside information about any

13  aspect of the case.

14             Please do not communicate with anyone about the case

15  on your phone, whether through e-mail, text messaging or any

16  other means; through any blog or website or by way of any

17  social media; including Facebook, Twitter, Instagram, YouTube

18  or other similar sites.  You must not consider anything you

19  may have heard or read about the case outside of this

20  courtroom, whether you read it before or during jury

21  selection.  Do not attempt any independent research or

22  investigation about the case.  Do not visit any of the

23  locations identified on the questionnaire or discussed during

24  the course of the jury selection process.

25             And I just wanted to let you know about the

SN        OCR        RPR

1   schedule.  The trial will begin on or about Tuesday, May 7th

2   and will last up to six weeks.  The Court will provide a

3   schedule of trial days before the trial starts.  So, you

4   should continue to call in to the jury information phone line

5   as instructed by the jury clerk.  Do you understand all of

6   that?

7             PROSPECTIVE JUROR NO. 173:  Yes, I do.

8             THE COURT:  Okay, thank you.  So I just wanted to go

9   over your questionnaire with you.  We have a few follow-ups.

10  At present, you are not employed?

11            PROSPECTIVE JUROR NO. 173:  No, I'm retired.

12            THE COURT:  Oh, congratulations.

13            PROSPECTIVE JUROR NO. 173:  Thank you.

14            THE COURT:  What did you do before you retired?

15            PROSPECTIVE JUROR NO. 173:  I worked at New York

16  Life as a supervisor.

17            THE COURT:  New York Life Insurance?

18            PROSPECTIVE JUROR NO. 173:  Yes.

19

20            (Continued on the following page.)

21

22

23

24

25

Prospective Juror 173                          592

1        THE COURT:  And how long did you work there?

2        THE PROSPECTIVE JUROR:  Forty-seven years.

3        THE COURT:  Forty-seven years?

4        THE PROSPECTIVE JUROR:  Yes.

5        THE COURT:  Congratulations.

6        THE PROSPECTIVE JUROR:  Thank you.

7        THE COURT:  And let me ask you some follow-ups.

8        There may be evidence in this case about abortions.

9   Will hearing about that type of evidence affect your ability

10  to serve as a fair and impartial juror in this case?

11       You said:  I don't believe in killing a human being.

12  Is that right?

13       THE PROSPECTIVE JUROR:  Yes.

14       THE COURT:  Now, there will be evidence about

15  abortions in this case and will you be able to -- I will give

16  you instructions on the law.  You will hear witnesses

17  testifying.  You will be as a juror asked to evaluate their

18  testimony and to decide whether to believe what they say, the

19  extent to believe it and also whether what they say would lead

20  you to conclude that the defendant committed certain specific

21  crimes beyond a reasonable doubt.

22       I know that discussions of abortion or instances of

23  abortion would be difficult for you to deal with, but would

24  you be able to listen to the evidence and follow the law as I

25  give it to you even on a subject as sensitive as that?

Prospective Juror 173                              593

1           THE PROSPECTIVE JUROR:  Yes.

2           THE COURT:  Oh, you didn't answer this question but

3  you just overlooked it:  Would you be able to listen to and

4  discuss matters of a sexual nature with fellow jurors to the

5  extent you had to do so to reach your conclusions as a juror?

6           THE PROSPECTIVE JUROR:  Yes, I will.

7           THE COURT:  There may be evidence in this case about

8  fraternities, sororities, secret societies, rituals or cults.

9  Would hearing about that type of evidence affect your ability

10 to serve as a fair and impartial juror in this case?

11          THE PROSPECTIVE JUROR:  No.

12          THE COURT:  Now, certain witnesses in this case may

13 be law enforcement officers like police, FBI agents and so

14 forth.  Do you hold any beliefs or opinions that would prevent

15 you from evaluating the testimony of law enforcement officers

16 fairly and impartially?

17          THE PROSPECTIVE JUROR:  No.

18          THE COURT:  If I instruct you, as I will, that a law

19 enforcement officer's testimony should be considered and

20 evaluated using the same standards as the standards you would

21 use for any other witness, would you follow the Court's

22 instructions?

23          THE PROSPECTIVE JUROR:  Yes.

24          THE COURT:  Any other questions?

25          MR. AGNIFILO:  Nothing from us.

594

1           MS. PENZA:  No, Your Honor.

2           THE COURT:  Well, thank you very much for coming in.

3    Sorry it's so late in the date.  You have a good evening.

4           THE PROSPECTIVE JUROR:  You too.

5           (Prospective Juror 173 exits the courtroom.)

6           THE COURT:  Does anybody have a motion?

7           MR. AGNIFILO:  No, no, Judge.

8           MS. PENZA:  No, Your Honor.

9           THE COURT:  All right.  Juror No. 173 is approved.

10           So, as I was saying, we have 55 approved jurors.  We

11   need 40.  I think we have enough of a cushion so that we

12   probably won't need to question anyone else but I do want to

13   use belts and suspenders in this situation so we will bring in

14   additional jurors on Monday, May 6th.  All right.

15           MR. AGNIFILO:  Very good, Your Honor.

16           THE COURT:  Now, next, do we need to have an

17   additional pretrial conference next week in the view of either

18   side?  I mean, I'm deciding motions.  The motions will be

19   decided in the near future.  Of course, I won't have your

20   papers on the latest motion to suppress until Friday though,

21   before 5:00 p.m.

22           MS. PENZA:  Yes, Your Honor.

23           THE COURT:  But my question is is there anything

24   that you need to discuss, you think you'll need to discuss

25   with the Court before Monday the 6th?

595

1          MR. AGNIFILO:  My sense is yes but if you ask me

2     what that was, I wouldn't necessarily have an answer right

3     now.

4          THE COURT:  Well, why don't we put, do this.  When

5     you figure out what it is, speak to the other side.  If you

6     don't resolve whatever it is that you need to resolve and you

7     need me, contact Mr. Reccoppa.  I'm here all next week except

8     for Friday.

9          MR. AGNIFILO:  Okay.

10          THE COURT:  All right?  So any time Monday to

11     Thursday, I will make myself available to you for a pretrial

12     conference.  All right?

13          MR. AGNIFILO:  Perfect.

14          THE COURT:  Okay.  And apart from that, is anyone

15     planning to use IT equipment for this trial?

16          MS. PENZA:  Yes, Your Honor.

17          THE COURT:  And are you going to have someone from

18     your organization come in and set it up for you?

19          MS. PENZA:  Yes.  We're in the process of figuring

20     that out but, yes, we will communicate with chambers about it

21     if that's helpful.

22          THE COURT:  All right.  And will you need to come in

23     and sort of test it out?

24          MS. PENZA:  Yes, Your Honor.

25          THE COURT:  Are you going to need any IT equipment.

596

1          MR. AGNIFILO:  We'll coordinate so when they test

2     out the IT equipment, we'll make sure that we can use it and,

3     you know, so we don't fumble too much.

4          THE COURT:  Well, that's the whole idea.  I don't

5     think it looks good to a jury if a lawyer who's trying to use

6     the equipment says, you know, I'm not too good at this.  In

7     this day and age, it's necessary to at least make it look as

8     if you know what you're doing.

9          MR. AGNIFILO:  Right.

10         THE COURT:  With IT equipment.

11         MS. PENZA:  We agree, Your Honor.

12         THE COURT:  With IT equipment.  That goes for

13    everybody.  I'm including myself.

14         MR. AGNIFILO:  Right.  Now the Court has an ELMO?

15         THE COURT:  That ELMO is there and it is available.

16         MR. AGNIFILO:  So we can hook that into the overall

17    system?

18         THE COURT:  Well, no, no.  If you're using a laptop,

19    you'll hook it in over here probably at counsel's table and

20    I'll just make the switch on the master console.

21         MR. AGNIFILO:  Got it.  Perfect.

22         THE COURT:  So I handle that but you have to tell me

23    are you using the ELMO, are you using the laptop and so forth.

24         MR. AGNIFILO:  Perfect.  Thank you.

25         THE COURT:  All right?

597

1          MS. PENZA:  Thank Your Honor.  Just to the extent we

2   do not meet next week, if Your Honor would go over, are we

3   going -- how exactly you envision us exercising our

4   peremptories?  Will the jurors come in --

5          THE COURT:  We'll bring in 278 individuals.  The

6   first 28 in numerical order, as soon as we figure out the

7   numbers beginning with one, all right, and my sense is we will

8   seat the first 18 in the box and then we will seat the others

9   at the first, in the first bench inside.  All right?  And so

10  you'll see everybody.  Then we'll go through -- you have the

11  chart that I use so you know how we exercise, we deal with

12  exercising the peremptories and we'll just do it.  And what

13  we'll also do is --

14         Are you getting real-time?

15         MR. AGNIFILO:  We're not.  We're getting daily.

16         THE COURT:  Okay.  In between rounds, you will have

17  an opportunity to go back to counsel's table and consult with

18  your client.  All right.  So that, you know, your client is

19  involved in every, in every round before you make your

20  strikes.

21         MR. AGNIFILO:  That's great.  Thank you.

22         THE COURT:  So that way, that way, you know,

23  everybody is going to know what's going on.

24         MS. PENZA:  Thank you, Your Honor.

25         THE COURT:  And then once we have the 12, we'll

CMH      OCR      RMR      CRR      FCRR

598

1    bring in the next 12 individuals and we'll choose the

2    alternate jurors from the 12.  Each side will get three

3    strikes and you have the order of the strikes.

4            Any other questions about the process.

5            MR. AGNIFILO:  No.  I think we're clear, Judge.

6            MS. PENZA:  No, Your Honor.

7            THE COURT:  Okay.  Anything else for today?

8            MR. AGNIFILO:  Nothing from us.

9            MS. PENZA:  No, Your Honor.

10           THE COURT:  All right.  Thanks, everybody.

11           MR. AGNIFILO:  Thank you, Judge.

12           MS. PENZA:  Thank you.

13

14           (Matter adjourned until May 6, 2019.)

15

16

17                          ooo0ooo

18

19

20

21

22

23

24

25