NS:KMT/TH
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                              Docket No. 18-CR-204 (NGG)

KEITH RANIERE,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
KEITH RANIERE'S MOTION FOR A NEW TRIAL PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 33

                                    RICHARD P. DONOGHUE
                                    UNITED STATES ATTORNEY
                                    Eastern District of New York
                                    271 Cadman Plaza East
                                    Brooklyn, New York 11201

Tanya Hajjar
Mark Lesko
Kevin Trowel
Assistant U.S. Attorneys
    (Of Counsel)

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ..............................................................................................1

ARGUMENT..............................................................................................................................2

    I.         Relevant Facts................................................................................................. 2

    II.        Applicable Law ............................................................................................... 4

    III.       Discussion ....................................................................................................... 5

        A.      Daniela and Nicole Did Not Testify Falsely............................................... 5

        B.      Raniere's Assertions About the Government Suborning Perjury Are Frivolous ...................................................................................................... 9

        C.      The Purported Perjured Testimony Is Not Material ................................. 11

CONCLUSION..........................................................................................................................14

## TABLE OF AUTHORITIES

PAGE

### CASES

Delaware v. Van Arsdall,
   475 U.S. 673 (1986)..................................................................................................... 13

Shotwell Mfg. Co. v. United States,
   371 U.S. 341 (1963)..................................................................................................... 11

United States v. Anderson,
   689 F. App'x 53 (2d Cir. 2017) ..................................................................................... 12

United States v. Bourke,
   No. 05-CR-510, 2011 WL 6376711 (S.D.N.Y. Dec. 15, 2011) ......................................... 10

United States v. Bourke,
   488 F. App'x 528 (2d Cir. 2012) ..................................................................................... 6

United States v. Bout,
   144 F. Supp. 3d 477 (S.D.N.Y. 2015) .......................................................................... 10

United States v. Canova,
   412 F.3d 331 (2d Cir. 2005) ........................................................................................... 4

United States v. Diaz,
   176 F.3d 52 (2d Cir.1999) ............................................................................................ 11

United States v. Ferguson,
   246 F.3d 129 (2d Cir. 2001) ........................................................................................... 4

United States v. James,
   712 F.3d 79 (2d Cir. 2013) ............................................................................................. 4

United States v. McCourty,
   562 F.3d 458 (2d Cir. 2009) ....................................................................................... 6, 9

United States v. Middlemiss,
   217 F.3d 112 (2d Cir. 2000) ........................................................................................... 5

United States v. Milikowsky,
   896 F. Supp. 1285 (D. Conn. 1994)............................................................................... 9

United States v. Monteleone,
   257 F.3d 210 (2d Cir. 2001) .................................................................................. 5, 6, 7

United States v. Petrillo,
  237 F.3d 119 (2d Cir. 2000) .................................................................................. 6

United States v. Rosner,
  516 F.2d 269 (2d Cir. 1975) ................................................................................ 12

United States v. Sanchez,
  969 F.2d 1409 (2d Cir. 1992) ................................................................................ 4

United States v. Spencer,
  4 F.3d 115 (2d Cir. 1993) .................................................................................... 11

United States v. Stewart,
  433 F.3d 273 (2d Cir. 2006) .................................................................................. 5

United States v. Stofsky,
  527 F.2d 237 (2d Cir. 1975) .................................................................................. 5

United States v. Wallach,
  935 F.2d 445 (2d Cir. 1991) .................................................................................. 5

United States v. Walters,
  910 F.3d 11 (2d Cir. 2018) .............................................................................. 5, 11

United States v. White,
  972 F.2d 16 (2d Cir. 1992) .................................................................................... 5

## STATUTES

18 U.S.C. § 3500 ............................................................................................................ 9

## RULES

Fed. R. Crim. P. 33 ............................................................................................... 4, 5, 9

Fed. R. Crim. P. 33(a) .................................................................................................... 4

Fed. R. Crim. P. 33(b) .................................................................................................... 4

Fed. R. Crim. P. 33(b)(1) ......................................................................................... 4, 10

PRELIMINARY STATEMENT

This Court should reject defendant Keith Raniere's motion pursuant to Federal Rule of Criminal Procedure 33, in which he asserts that he is entitled to a new trial because two of his victims — Daniela and Nicole — perjured themselves when they testified at Raniere's trial that, at that time, they had no intention of suing Raniere. As an initial matter, Raniere has failed to establish that either Daniela or Nicole testified falsely about their intentions to sue Raniere, and his allegations defy common sense in light of Daniela's and Nicole's testimony at trial. Moreover, Raniere's assertion that the government knew or should have known that, in fact, Daniela and Nicole secretly harbored an intention to sue Raniere is frivolous, belied by the record, and impermissibly based on facts that the government disclosed to Raniere before trial, i.e., that Daniela and Nicole were represented by attorney Neil Glazer during pretrial proffer sessions with the government. Finally, in light of the government's overwhelming evidence of Raniere's guilt, it is inconceivable that Raniere would have been acquitted had Daniela and Nicole testified that they were planning to sue Raniere. Indeed, Raniere must concede that such testimony was irrelevant in light of his decision at trial not to cross-examine Mark Vicente about his testimony that he was planning to sue Raniere, and Raniere's failure to ask even a single question about this subject during his cross-examination of government witness Jay. For each of these reasons, Raniere's motion should be denied.

ARGUMENT

I.   Relevant Facts

Raniere asserts that government witnesses Daniela and Nicole "committed perjury at the trial by knowingly lying about their intention, plan and role in bringing a civil lawsuit against Raniere and others for monetary damages." (Mot. 1).[1] Raniere alleges that the following excerpt from Daniela's testimony was false:

> AGNIFILO:  You have a lawyer named Neil Glazer, correct?
>
> DANIELA:  Yes.
>
> AGNIFILO:  Because you are going to bring a civil lawsuit, aren't you?
>
> DANIELA:  No.
>
> AGNIFILO:  You have no intention of bringing a civil lawsuit against Keith Raniere or NXIVM or anyone else?
>
> DANIELA:  That's not something that I have done or decided, no.
>
> AGNIFILO:  I know you haven't done it but you plan on doing it, don't you?
>
> DANIELA:  No.
>
> \*   \*   \*
>
> AGNIFILO:  So as you sit here today, you have no intention of bringing a civil lawsuit?
>
> DANIELA:  That's right.

---

[1]   "Mot.," "Tr.," and "DE" refer to Raniere's memorandum of law in support of his Rule 33 motion, the transcript of Raniere's trial and CM/ECF docket entries on this Court's docket, respectively.

2

(See Mot. 9–11 (citing Tr. 3275–76)). Raniere also alleges that the following excerpt from Nicole's testimony was false:

> AGNIFILO: And your lawyer, Mr. Glazer is here today, right? He is the gentleman, my colleague here to my left, right?
>
> NICOLE: Yes.
>
> AGNIFILO: Are you intending to bring a civil suit?
>
> NICOLE: No.
>
> AGNIFILO: No?
>
> NICOLE: No.
>
> AGNIFILO: You have no intentions of bringing a civil suit?
>
> NICOLE: Like me, personally?
>
> AGNIFILO: You and other people.
>
> NICOLE: Not me, personally.
>
> AGNIFILO: Do you intend to be part of a class-action lawsuit?
>
> NICOLE: No.
>
> AGNIFILO: I'm not -- I am going to ask you the question, I'm not asking you for anything that you and Mr. Glazer discussed, okay, so when I ask you this question, it is not conversations between you and Mr. Glazer, okay?
>
> NICOLE: Okay.
>
> AGNIFILO: Have you discussed with anybody else the prospect of bringing a class-action lawsuit against NXIVM?
>
> NICOLE: No.
>
> AGNIFILO: You haven't discussed with Jay, for instance?

3

        NICOLE:    No. No.

(See Mot. 13 (citing Tr. 4276–77)).

II.    Applicable Law

        Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). The Rule further provides that a motion for a new trial must be filed "within 14 days after the verdict or finding of guilty" unless it is "grounded on newly discovered evidence." Fed. R. Crim. P. 33(b). Where a motion is based on "newly discovered evidence," it must be filed within three years of the verdict. Fed. R. Crim. P. 33(b)(1).

        In light of the deference owed to a jury's verdict, the Second Circuit has cautioned that district courts should exercise their Rule 33 authority only "'sparingly' and in 'the most extraordinary circumstances.'" United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)). "For a trial judge to grant a Rule 33 motion, he must harbor a real concern that an innocent person may have been convicted." United States v. James, 712 F.3d 79, 107 (2d Cir. 2013) (internal quotation marks omitted) (affirming district court's denial of Rule 33 motion in light of "newly discovered evidence").

        Where, as here, a defendant's Rule 33 motion is premised on purportedly perjured testimony by a government witness, the reviewing court "may appropriately consider whether (1) counsel could have 'discovered the evidence with due diligence before or during trial; (2) the evidence demonstrates that a witness in fact committed perjury; (3) the new evidence is material; and (4) the new evidence is not cumulative.'" United States v. Canova, 412 F.3d 331, 349 (2d Cir. 2005) (quoting United States v. Middlemiss, 217 F.3d 112, 122 (2d

4

Case 1:18-cr-00204-NGG-VMS   Document 866   Filed 04/06/20   Page 9 of 18 PageID #: 13689

Cir. 2000); accord United States v. White, 972 F.2d 16, 20-21 (2d Cir. 1992)). But "[p]erjury in and of itself is insufficient to justify relief under Rule 33." United States v. Stewart, 433 F.3d 273, 297 (2d Cir. 2006) (citing White, 972 F.2d at 22 ("the mere fact that [the witness] lied on the witness stand does not automatically entitle [defendant] to a new trial")). "Rather, when a trial has been tainted by false testimony" the district court is "'called upon to strike a fair balance between the need for both integrity and finality in criminal prosecutions' by determining whether false testimony was prejudicial in the sense that it affected the outcome of the trial." Stewart, 433 F.3d at 297 (quoting United States v. Stofsky, 527 F.2d 237, 239 (2d Cir. 1975)).

The Second Circuit has explained that, "[i]f the prosecution knew or should have known of the perjury prior to the conclusion of the trial, the conviction must be set aside where there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." Stewart, 433 F.3d at 297 (internal quotation marks omitted). But "[w]here the Government was not aware of the perjury, the conviction must be set aside 'only if the testimony was material and the court is left with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted.'" United States v. Walters, 910 F.3d 11, 29 (2d Cir. 2018), cert. denied 140 S. Ct. 117 (2019) (quoting United States v. Wallach, 935 F.2d 445, 456 (2d Cir. 1991)).

III.  Discussion

    A.  Daniela and Nicole Did Not Testify Falsely

First, Raniere's assertion that Daniela and Nicole testified falsely is frivolous and this Court should deny the motion for Raniere's failure to make the necessary "threshold demonstration of perjury." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001).

5

The only "newly discovered evidence" Raniere identifies in his motion is the filing of a civil suit in January 2020. (See Edmondson, et al. v. Raniere, et al., 20-CV-485 (E.D.N.Y.) (EK)[2] (the "Civil Suit"); Mot. 1 ("[T]he recently filed civil lawsuit is material new evidence, within the meaning of Rule 33.")). The government has no knowledge of or involvement in the Civil Suit, and does not know whether Daniela, Nicole or any other government witnesses is a plaintiff, a putative class member, or is otherwise involved in it. But even assuming that Daniela and/or Nicole are involved in the Civil Suit, that fact "does not conclusively demonstrate anything about [their] beliefs at the time of [their] testimony at trial," Monteleone, 257 F.3d at 220 (rejecting argument that government witness committed perjury), much less prove that their testimony was "demonstrably false" at the time it was offered, United States v. Petrillo, 237 F.3d 119, 124 (2d Cir. 2000), abrogated on other grounds by Crawford v. Washington, 541 U.S. 36 (2004), or that it was "patently incredible or defie[d] physical realities," United States v. McCourty, 562 F.3d 458, 476 (2d Cir. 2009). Daniela's and Nicole's alleged involvement in the Civil Suit at most demonstrates that they changed their mind at some point between answering his counsel's questions on cross-examination and the filing of the complaint in January 2020. That does not entitle Raniere to a new trial.[3]

---

[2] This is the caption reflected on the district court's docket. Raniere nevertheless refers to the Civil Suit as Mark Vicente, et al. v. Keith Raniere, et al. (Mot. 1).

[3] See also United States v. Bourke, 488 F. App'x 528, 530 (2d Cir. 2012) (holding that district court did not err in denying Rule 33 motion in absence of "conclusive evidence" that witness committed perjury); Monteleone, 257 F.3d at 219 ("A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory.").

Moreover, Raniere's assertion that Daniela and Nicole lied about their intentions to sue Raniere defies common sense. Raniere urges this Court to conclude that, although Daniela and Nicole testified at length and in great detail about the most intimate details of their lives, the often embarrassing circumstances of their relationship with Raniere, and the anger they felt as a result, they were nevertheless unwilling to acknowledge that they intended to sue Raniere civilly — an admission that the jury would hardly have found surprising if it had been true. Indeed, as Raniere acknowledges in his motion, another government witness, Mark Vicente, testified that he had retained Glazer in connection with "potential civil matters" (Mot. 7 (citing Tr. 740–41)), and, unsurprisingly, that concession was of no consequence in the trial. Raniere's counsel did not ask Vicente any questions on the subject, and Raniere's counsel said nothing about Vicente's plans in summation.[4] (Id.; Tr. 5421–521 (defense summation)).

Raniere's argument makes even less sense when measured against Daniela's and Nicole's obviously truthful answers to questions on cross-examination intended to establish their potential bias against Raniere. Daniela volunteered, for example, that Raniere's sexual relationship with her older sister, Marianna (including occasions on which Raniere performed sexual acts on Marianna in front of Daniela), made her "upset." (Tr. 3086–94, 3117–19). She discussed Raniere's extreme reaction to learning she had feelings for Ben Myers (Tr. 3166–79), and she explained that Raniere's criticism of her in connection with

---

[4] Similarly, as described below, although Raniere's counsel was aware that government witness Jay was also represented by Glazer at the time of trial, counsel did not ask Jay a single question on cross-examination about whether she intended to join a civil suit against Raniere.

7

those feelings left her feeling "increasingly confused and beaten up, both by [Raniere's] communications and the isolation and the coaching that [Daniela] was receiving [from him]" (Tr. 3177). Daniela further testified that, while she was restrained in a room for purported "ethical breaches," she felt "isolated, "confused" and "very angry," as she was "getting drilled from all sides about what I should be doing, what I have done, how bad I am." (Tr. 3201). And she testified about

> [a]ll of the garbage, all of the abuse, all of the manipulation [that] was still inside me. All of the words [Raniere] had said, all of the expectations I had of myself, that I thought others had of me traveled with me to my new destination [in Mexico]. . . . I have just been through years of intense abuse.

(Tr. 3233). Daniela, in other words, made no effort to conceal her anger towards Raniere during her testimony, and Raniere's assertion that she nevertheless felt the need to conceal her purported plan to sue Raniere is therefore absurd.

Similarly, Nicole's testimony substantially undermines Raniere's claims. After Raniere's counsel asked Nicole about an email she had written to Raniere, for example, she acknowledged that it

> makes me really angry because it's like there's so much manipulation going on from Allison [Mack] telling me to trust [Raniere] and then you're on my mind as much as you usually are. That was another tactic that they used. Like, constantly Allison would tell me to reach out to Keith, blah, blah, and you could never get him off your mind because it was supposed to be like The Vow and all these things, like, you're thinking about him all the time with readiness. It just makes me angry now because it's so much manipulation.

(Tr. 4209). Nicole further testified on cross-examination that, when she left DOS, she deleted her "Telegram" account because she "didn't ever want to see, blugh, messages with him [Raniere] again, or Allison, I was just skeeved out by the whole thing." (Tr. 4219). She

8

explained that Raniere "definitely made me feel bad about myself sometimes" (Tr. 4253) and, on redirect examination, she made clear that she only had a sexual relationship with Raniere in the extortionate context of DOS (Tr. 4284). Nicole, like Daniela, was forthright about her anger towards Raniere, and it therefore makes no sense to assert, as Raniere does, that Nicole would have felt the need to conceal an intention to sue Raniere civilly, if she had had such plans at the time of her testimony.

Raniere has, in short, offered "no reason to believe that [Daniela's and Nicole's] testimony was knowingly false, or, more importantly, that [they] testified inaccurately as to [their] state[s] of mind." United States v. Milikowsky, 896 F. Supp. 1285, 1298 (D. Conn. 1994), aff'd, 65 F.3d 4 (2d Cir. 1995). Where, as here, "the resolution of the Rule 33 motion depend[s] on assessment of the credibility of the witnesses, it is proper for the court to refrain from setting aside the verdict and granting a new trial." McCourty, 562 F.3d at 476 (quotation marks omitted). Accordingly, Raniere's motion should be denied at this threshold question.

B.  Raniere's Assertions About the Government Suborning Perjury Are Frivolous

The Court should also reject Raniere's equally frivolous assertion that the government knew or should have known at the time of his trial that Daniela and Nicole intended to join a civil suit against him. In pre-trial proffer sessions, the government did not ask Daniela or Nicole (or any other government witness) to describe their privileged conversations with their counsel about potential civil claims. Nor did the government inquire about the scope of Daniela's and Nicole's (or any other government witness's) representation by Neil Glazer, beyond the information the government disclosed to Raniere pursuant to the Jencks Act, 18 U.S.C. § 3500. It would have been improper for the government to have done otherwise. Accordingly, at the time of Daniela's and Nicole's trial testimony, the government

9

had precisely the same information Raniere and his counsel had, i.e., Daniela's and Nicole's testimony under oath that they did not, at that time, intend to file suit against Raniere. The government had at the time of trial, and has now, no reason to doubt the veracity of that sworn testimony.

Raniere's "evidence" to support his assertion to the contrary — that, at the time of his trial, Daniela, Nicole and other victims and witnesses to Raniere's crimes were represented by Glazer (Mot. 2) — provides no support for his motion. First, as Raniere acknowledges, he was aware of this information prior to trial, because the government disclosed it to him in connection with its Jencks Act obligations. (Mot. 5–6). On this basis alone, the Court should reject Raniere's assertions about the government's purported knowledge, because "Rule 33 does not allow for a new trial based on evidence that could have been discovered before trial, let alone evidence that was part of the trial record."[5] United States v. Bout, 144 F. Supp. 3d 477, 487 (S.D.N.Y. 2015), aff'd, 666 F. App'x 34 (2d Cir. 2016).

Raniere's reasoning is, in any event, flawed. Contrary to Raniere's repeated assertions, Glazer's representation of Daniela and Nicole provides no insight into their

---

[5] Raniere's additional assertion that "the prosecution obstructed the defense line of questioning to develop collusion among the witnesses" is specious. (Mot. 2). First, his "complaints about the prosecutors' alleged misconduct is not evidence, newly discovered or otherwise," and this argument should be rejected for that reason alone. United States v. Bourke, No. 05-CR-510, 2011 WL 6376711, at *10 (S.D.N.Y. Dec. 15, 2011), aff'd, 488 F. App'x 528 (2d Cir. 2012). In any event, Raniere's dispute is, in fact, with this Court's evidentiary rulings, which correctly prevented Raniere from inquiring about privileged communications between the witnesses and their counsel. These complaints, which are not premised on "newly discovered evidence," are meritless, untimely and beyond the scope of Raniere's motion, and they should be rejected for those additional reasons. See Fed. R. Crim. P. 33(b)(1), (2) (motions based on alleged defects other than "newly discovered evidence" must be brought within 14 days of the verdict).

intentions at the time of their testimony. Indeed, Raniere was forced to acknowledge as much after he filed his Rule 33 motion, when he learned that several witnesses who were also represented by Glazer during their pretrial meetings with the government — Crystal, Rebecca, Kristin and James — have at this time not joined the Civil Suit against Raniere. (DE 854 (cover letter[6])). As Raniere (and his counsel) are well aware, defendants, subjects, targets, witnesses and victims retain attorneys for any number of reasons, and there is no legal or factual conclusion that can be drawn from that decision.[7]

        C.      The Purported Perjured Testimony Is Not Material

Finally, it is inconceivable that Raniere "would most likely not have been convicted" if Daniela or Nicole had testified that they were planning to sue Raniere civilly. Walters, 910 F.3d at 29. First, "[t]his is not a case . . . where a conviction may be regarded or is conceded to have rested on perjured testimony," Shotwell Mfg. Co. v. United States, 371 U.S. 341, 357 (1963), and Daniela's and Nicole's purported perjury on this topic is not "relevant to the merits of the case," United States v. Diaz, 176 F.3d 52, 106 (2d Cir.1999). As the Second Circuit has explained, under such circumstances, "[t]he discovery of new evidence which merely discredits a government witness and does not directly contradict the

---

[6] Raniere's letter to the Court explains that "Neil Glazer, attorney for the Plaintiffs in the civil action, has informed [Raniere's] counsel that four people who he represented in dealings with the government are not Plaintiffs in the action. Accordingly, we withdraw footnote 7 on page 6, where counsel states 'there is every reason to believe they may be plaintiffs.' Glazer confirmed that they are not Plaintiffs and therefore, we remove that statement from our filing." (DE 854 (citation omitted)).

[7] Raniere's argument is premised in large part on his observation that Glazer's website does not indicate that he represents individuals in criminal matters. (Mot. 4). But it is beyond serious dispute that attorneys regularly agree to represent clients whose legal issues extend beyond the areas of expertise listed on the attorney's website.

government's case ordinarily does not justify the grant of a new trial." United States v. Spencer, 4 F.3d 115, 119 (2d Cir. 1993) (internal quotation marks omitted).[8]

At trial, Raniere essentially conceded that testimony on this point was irrelevant to his defense. Raniere's motion acknowledges that the government's Jencks Act disclosures reflected Glazer's representation of some of the witnesses interviewed by the government. (Mot. 5). But although Raniere was in possession of this material and was aware that Jay was represented by Glazer during pre-trial proffers with the government, Raniere's counsel did not ask Jay a single question about Glazer's representation or about whether Jay intended to sue Raniere civilly (Tr. 4457–87). Raniere, in other words, knew full well that the point was all but irrelevant, and would have had no effect on the jury or on its verdict. Any doubt on this point is erased by Raniere's counsel's reaction — silence — to Vicente's testimony that he had also retained Glazer and he was, in fact, planning to sue Raniere. (Tr. 741, 1039–1305 (defense cross and re-cross of Vicente)).

Raniere's assertion that he did not cross-examine Jay about her intention to pursue a civil suit because, "[b]y this point [in the trial], it was apparent that the Court would not permit the defendant to explore whether Jay found Glazer from one of the other witnesses

---

[8] See also, e.g., Shotwell Mfg. Co., 371 U.S. at 357 (rejecting argument that that a defendant is entitled to a new trial merely because of some purported "inaccuracy in the testimony of an important trial witness, which might have affected his credibility in the eyes of the jury"); United States v. Anderson, 689 F. App'x 53, 57 (2d Cir. 2017) ("That stray pieces of testimony over the course of a six-week trial may have been false does not show how [defendant] would likely have been acquitted in the absence of such testimony."); United States v. Rosner, 516 F.2d 269, 280 (2d Cir. 1975) (denying request for new trial where government witness's perjury concerned "past unrevealed criminal misconduct" and did not "involve new evidence vital to an issue directly involving appellant's guilt or innocence").

12

or ask probing questions tending to unearth the clear collusion among the witnesses or their intention to bring a civil suit" is also frivolous. (Mot. 14). After all, the Court had permitted Raniere's counsel to ask Vicente, Daniela and Nicole whether they had retained Glazer in order to sue Raniere, and Vicente freely acknowledged on cross-examination that he had done so.[9] Raniere, in other words, had every reason to ask the same question of Jay if he believed that his defense would benefit from a concession that she, too, was considering a civil suit against Raniere. Raniere's failure to pursue that line of questioning makes clear that not even he viewed that point as relevant, much less material to the verdict — a concession that is fatal to his current motion.[10]

---

[9] Raniere's argument concerning materiality focuses largely on the Court's determination not to permit his counsel to ask certain questions. (See Mot. 23 ("Therefore, counsel 'was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" (quoting Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986)))). As noted above, his motion on this ground is untimely under Rule 33 and, in any event, meritless, and it should be rejected. The remainder of his analysis consists of conclusory assertions, with no attempt to explain how or why the jury would have rejected Daniela's and Nicole's testimony had they been informed that, like Vicente, those witnesses intended to sue Raniere civilly for the harms he inflicted on them.

[10] Finally, Raniere includes two footnotes apparently intended to insinuate that the government did not satisfy its Brady obligations. (See Mot. 5 n.4, 5). Raniere's assertions are unsupported by any evidence and are, again, belied by the record. As he (and his counsel) are well aware, the government disclosed Jencks Act materials for more than 130 witnesses well in advance of trial. The government discharged its obligations under Brady and its progeny and this Court should reject Raniere's baseless assertions to the contrary.

13

CONCLUSION

For the reasons set forth above, the government respectfully submits that the Court should deny Raniere's motion for a new trial pursuant to Federal Rule of Criminal Procedure 33.

Dated: Brooklyn, New York
April 6, 2020

        Respectfully submitted,

        RICHARD P. DONOGHUE
        UNITED STATES ATTORNEY
        Eastern District of New York
        Attorney for Plaintiff
        271 Cadman Plaza East
        Brooklyn, New York 11201

By:   /s/ Tanya Hajjar
       Tanya Hajjar
       Mark Lesko
       Kevin Trowel
       Assistant United States Attorneys
       (718) 254-7000