UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -against-

KEITH RANIERE,

      Defendant.

**MEMORANDUM & ORDER**
18-CR-204-1 (NGG) (VMS)

NICHOLAS G. GARAUFIS, United States District Judge.

Following a six-week jury trial, Defendant Keith Raniere was convicted of racketeering, racketeering conspiracy, wire fraud conspiracy, forced labor conspiracy, sex trafficking conspiracy, and two counts of sex trafficking. Now before the court is Defendant's motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure. (*See* Mot. for New Trial (Dkt. 851); Corrected Mem. in Supp. of Mot. for New Trial ("Mem.") (Dkt. 854-1); Mem. in Opp. to Mot. for New Trial ("Opp.") (Dkt 866).) Defendant contends he is entitled to a new trial based on newly discovered evidence, to wit, a lawsuit to which some of the Government's trial witnesses appear to be parties, which was filed more than seven months after his criminal trial concluded. Defendant asserts that the fact of this lawsuit is proof that these witnesses perjured themselves when they testified that they did not then intend to bring a civil suit against him and, further, that the Government knew or should have known that this testimony was false. The court disagrees. Defendant's motion is therefore DENIED. Further, because Defendant has not demonstrated that any testimony given at trial was actually false,

1

his request for an evidentiary hearing is likewise DENIED and his request for oral argument is DENIED AS MOOT.[1]

## I. BACKGROUND

The court assumes familiarity with the relevant facts and procedural history of this case and summarizes them only to the extent they are relevant to this motion.

Daniela and Nicole,[2] both victims of the conduct for which Defendant was convicted, testified for the Government at trial. Present for their testimony was Neil Glazer, an attorney whom they had individually retained and who had accompanied them to at least some of their interviews with the Government prior to trial. (*See* Mem. at 5-6 & n.8 (listing 3,500 materials reflecting Glazer's presence at interviews). Mark Vicente, another Government witness, testified on direct examination that he had also retained Glazer to assist in "potential civil matters" (Trial Transcript ("Tr.") at 740-41), although Glazer was not present for his testimony. On cross-examination, defense counsel did not ask Vicente about his retention of Glazer or whether he intended to file a lawsuit against Defendant.

On cross-examination of Daniela and Nicole, defense counsel asked each whether they had retained Glazer and whether they planned to bring a civil suit against Defendant in the future. Daniela acknowledged that she had retained Glazer, at first to handle "the precarious situation with [her] little sister" and then "to interact with officials from the government" but repeatedly denied that she, at that point, had any intent to bring a civil suit against

---

[1] The court has redacted certain information relating to documents that are not part of the trial record from this Memorandum & Order. Concurrently herewith, the court has filed a Sealed Memorandum & Order with this information in unredacted form.

[2] In accordance with this court's order of May 4, 2019, the court refers to all DOS members by their first names only.

Defendant or NXIVM. (Tr. at 3275-76.) Defense counsel also asked Daniela how she came to hire Glazer, whether she had gotten his name from Vicente, and whether she had discussed the possibility of bringing a civil suit against Defendant with anyone else; however, the Government objected to these questions and the court sustained those objections. (*Id.*) Nicole testified that she hired Glazer because she wanted to "protect [her]self," disclaimed any intent at that time to bring a civil suit or to participate in a class-action lawsuit, and twice testified that she had not discussed the prospect of doing so with anyone else. (*Id.* at 4269, 4276-77.)[3]

Jay, a third victim who testified for the Government, testified on direct examination that she had also retained Glazer. (Tr. at 4452.) Defense counsel did not probe further on this topic on cross examination, which counsel now asserts was because "it was apparent that the court would not permit the defendant to … ask probing questions tending to unearth the clear collusion among the witnesses or their intention to bring a civil suit." (Mem. at 14.)

On January 28, 2020, over seven months after the jury returned its verdict (and nearly eight months after Daniela testified), Glazer filed a civil lawsuit on behalf of more than 80 individuals, including Vicente, against, *inter alia*, Defendant and NXIVM (the "Civil Suit"). *See* Compl., *Edmonson v. Raniere*, No. 20-cv-485 (EK). While most plaintiffs in the Civil Suit are proceeding under pseudonyms, Defendant contends that allegations attributed to

---

[3] In response to her first denial of having spoken to anyone else about the prospect of filing a civil suit, defense counsel asked Nicole whether she had told the FBI that Frank Parlato was pressuring her to do so. (Tr. at 4269-70). ▮▮▮▮▮ Nicole reiterated that she had no recollection of telling the FBI that Parlato had pressured her to join a civil suit. (Tr. at 4275.)

certain Jane Doe plaintiffs indicate that Daniela, Nicole, and Jay are plaintiffs in the Civil Suit. (*See* Mem. at 14-17.)[4]

## II. LEGAL STANDARD

Although Rule 33 endows district courts with the authority to order a new trial "if the interest of justice so requires," Fed. R. Crim. Pro. 33, this authority is to be used sparingly and only where the court harbors "a real concern that an innocent person may have been convicted," *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005).[5] *See also, e.g., United States v. Snyder*, 740 F. App'x 727, 728 (2d Cir. 2018) (summary order) ("A district court ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."). A motion for a new trial "based on allegations of perjured testimony should be granted only with great caution and in the most extraordinary circumstances." *United States v. McCarthy*, 271 F.3d 387, 399 (2d Cir. 2001), *abrogated on other grounds by Eberhart v. United States*, 546 U.S. 12, 126 (2005). "To prevail, a defendant must show [that](i) the witness actually committed perjury; (ii) the alleged perjury was material; (iii) the government knew or should have known of the

---

[4] Defendant initially contended in his motion that, although he had not identified them through any of the complaint's allegations, he nonetheless had "every reason to believe" that four more individuals whom Glazer represented in interviews with the Government were also participating as Plaintiffs. (Mem. in Supp. of Mot. (Dkt. 853) at 6 n.7.) Defendant, however, was forced to retract this assertion after Glazer advised his counsel that these four individuals were not, in fact, plaintiffs. (Letter Submitting Corrected Mem. (Dkt. 854).)

[5] When quoting case law, except as otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

alleged perjury at the time of trial, and (iv) the perjured testimony remained undisclosed during trial." *Id.*[6] Although failure to show that the prosecution knew or should have known of the perjurious nature of the testimony in question does not preclude the grant of a new trial, under such circumstances "a defendant can obtain a new trial only where the false testimony leads to a firm belief that but for the perjured testimony, the defendant would most likely have not been convicted." *United States v. Stewart*, 433 F.3d 273, 297 (2d Cir. 2006). If, however, the defendant demonstrates that the prosecution knew or should have

---

[6] Where, as here, a defendant supports his motion with "newly discovered" evidence of perjury, the court must also consider whether such evidence is, in fact, "newly discovered" within the meaning of Rule 33, *i.e.*, that it could not have been discovered with the exercise of reasonable diligence before or during trial. *See, e.g., Canova*, 412 F.3d at 349. In this case, however, there is no question that Defendant could not have discovered the existence of the Civil Suit before or during trial. as it was not filed until several months after the trial concluded.

The court notes separately, however, that Defendant proffers the fact that Mr. Glazer represented a large number of witnesses in interviews with the Government, as well as certain of the Government's evidentiary objections (sustained by this court), as proof that the Government knew or should have known about the alleged perjury that forms the basis of his motion. Glazer's representation of certain witnesses is not "newly discovered," as Defendant concedes that he was aware of the representation before and during trial. Meanwhile, the fact that the Government made certain objections, which the court sustained, is not "evidence" of anything, newly discovered or otherwise, and Defendant's reliance on these episodes appears to be little more than a clumsy attempt to launder untimely objections to the court's evidentiary rulings into a timely motion based on new evidence. (*See, e.g.*, Mem. at 22-23 (arguing that interposition of objections denied Defendant his right to confront witnesses against him).) That argument is, in any event, belied by the record; having cured the defects in similar questions posed to Daniela, counsel was permitted to ask Nicole, for example, whether she had discussed the possibility of bringing a civil suit with anyone else, including with Jay (whom counsel specifically named). Counsel's failure to ask Jay similar questions cannot be explained by his conclusion that the court would not permit him to do so—an argument that is, in any event, unpreserved and untimely.

5

known about the perjury, "the conviction will be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *United States v. Torres*, 128 F.3d 38, 49 (2d. Cir. 1997).

In deciding whether to grant a motion for a new trial, "a district court may itself weigh the evidence and the credibility of witnesses, but in doing so, it must be careful not to usurp the role of the jury." *United States v. Nordlicht*, No. 16-cr-640, 2019 WL 4736957, at *16 (E.D.N.Y. Sept. 27, 2019). Further, although the court may hold an evidentiary hearing, it is not obligated to do so. *See United States v. Ghavami*, 23 F. Supp. 3d 148, 157 (S.D.N.Y. 2014) ("Whether to hold an evidentiary hearing before deciding a motion for a new trial rests within the district court's discretion."); *see also United States v. Helmsley*, 985 F.2d 1202, 1209-10 (2d Cir. 1993) (district court may properly decline to hold hearing where "[t]he moving papers themselves disclosed the inadequacies of the defendant['s] case"). In particular, where, as here, the evidence submitted relates to allegations of perjury, courts need not consider whether to hold a hearing unless the defendant meets his threshold burden of demonstrating that false testimony was offered. *See United States v. Aquart*, 912 F.3d 1, 22 (2d Cir. 2018) ("[U]ntil actual falsity is shown, there is no concern for the integrity of the process requiring judicial hearings.").

### III. DISCUSSION

The Civil Suit cannot carry the weight that Defendant asks it to bear. For Defendant to meet his threshold burden to demonstrate that Daniela and/or Nicole committed perjury, he must introduce evidence that either or both of them gave "false testimony concerning a material matter with the willful intent to provide false testimony." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001). Assuming for present purposes that Daniela and Nicole are, in fact, among the Jane Doe plaintiffs in that action

6

(which appears to be the case), this hardly proves that either of them had determined to join that action when they testified at trial more than six months before it was filed. In fact, the complaint, insofar as it is evidence, says nothing about their state of mind at the time they testified, which is the *sine qua non* of any charge of perjury.

Moreover, the court cannot discern any basis to believe that either of them had any reason to lie about whether they intended to sue Defendant. Both Daniela and Nicole sat for lengthy cross-examination during which, as the Government notes, they answered forthrightly questions that appeared to have been intended to elicit evidence of their respective biases against Defendant and admitted that they were angry with him without any equivocation. (*See, e.g.*, Tr. at 3089-94, 3166-79, 4209.) Further, given the content of their testimony (which included, for example, Daniela testifying at length about how she had been confined to a room for roughly two years after admitting to Defendant that she had feelings for another man), it would have been utterly unremarkable had either Daniela or Nicole confessed an intent to sue Defendant (an intent which, the court notes again, another witness freely admitted). As such, the fact that they affirmatively disclaimed a present intent to sue Defendant months before joining a suit against him is, on its face, persuasive evidence of little more than the fact that they changed their minds at some point between testifying at trial and filing the complaint in the Civil Action. Moreover, because Defendant has failed to meet his initial burden to prove the falsity of any testimony offered at his trial, the court sees no need to hold an evidentiary hearing on this issue.

Even if the court were to conclude otherwise, Defendant's contention that the Government knew or should have known of the "perjury" is facially absurd. As previously noted, the key facts on which these accusations rest—namely that several witnesses had

retained Glazer to represent them—are not "newly discovered" evidence by any definition. To the contrary, Defendant was fully aware of these facts prior to and during the trial and cross-examined witnesses on these very topics. *See United States v. Bout*, 144 F. Supp. 3d 477, 487 (S.D.N.Y. 2015) ("Rule 33 does not allow for a new trial based on evidence that could have been discovered before trial, let alone evidence that was part of the trial record."). Even assuming, however, that this evidence were cognizable on this posture, it would not support the conclusion that the Government played any role in suborning the "false" testimony. Defendant effectively asks this court to infer that, because the Government knew that the witnesses had retained Glazer, and Glazer ultimately represented some of them in the Civil Suit,[7] the Government must have known about the Civil Suit, and Daniela and Nicole's putative intent to participate in it, during the trial. The infirmity of this argument is self-evident, and the court declines to address it further.

As such, even if Defendant had demonstrated that either Daniela or Nicole had perjured herself, he would be entitled to a new trial only if the court believed that but for the perjured testimony, Defendant would not have been convicted. *See Stewart*, 433 F.3d at 296-97. The court is not so convinced. As an initial matter, "[t]he discovery of new evidence which merely discredits a government witness and does not directly contradict the government's case ordinarily does not justify the grant of a new trial." *United States v. Jones*, __ F.3d __, 2020 WL 3956257, at *11 (2d Cir. 2020). That is especially true here where, as previously noted, it would not have been remotely unusual for Daniela or Nicole to have admitted an intent to sue Defendant, and there is simply no reason to believe that the jury would not have credited their testimony had either or both of them admitted as much over the

---

[7] Although, as previously noted, some of the witnesses Glazer represented have, in fact, not joined the Civil Suit.

course of the lengthy cross-examination to which they were subject. Moreover, it is apparent that Defendant himself did not consider the potential for civil litigation to be especially significant; despite the fact that Vicente *admitted* that he was considering a suit against Defendant, his counsel did not ask a single question on this topic during his lengthy cross-examination of Vicente. And despite Defendant's assertion in his motion that the jury would have acquitted him had they only known that Daniela, Nicole, and Jay all intended to sue him at some point in the future, he evidently did not feel it necessary to even ask Jay whether she intended to sue him when he had the opportunity to do so. In any case, having observed both Daniela and Nicole's testimony, the court sees no reason to disturb the jury's determination that they were anything but credible witnesses who offered powerful evidence of Defendant's guilt.

### IV. CONCLUSION

For the foregoing reasons, Defendant's (Dkt. 851) Motion for a New Trial is DENIED, his request for an evidentiary hearing is likewise DENIED, and his request for oral argument is DENIED AS MOOT.

SO ORDERED.

Dated:   Brooklyn, New York
         July 16, 2020

        /s/ Nicholas G. Garaufis
        NICHOLAS G. GARAUFIS
        United States District Judge

9