UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>- v. -<br><br>KEITH RANIERE,<br><br>                Defendant. | No. 18-cr-204 (NGG) (S-2)<br><br>**AFFIDAVIT OF<br>NICOLE CLYNE** |

NICOLE CLYNE, duly swears and affirms as follows:

      1.      I am 37 years old. I grew up in Vancouver, Canada and I currently live in Kings County, New York. As of April 2018, after Mr. Raniere's arrest, I was represented by counsel, specifically Edward Sapone, Esq., and I affirm that this affidavit is the truth, the whole truth and nothing but the truth.

      2.      I was introduced to Executive Success Programs (ESP) by Sarah (last name not being included) and I took a five-day training in November of 2005 in Albany, NY. I completed a 16-day training in August of 2006, and went on to become a coach and participate in other trainings. The curriculum and the community impressed me so much that I eventually decided to move to Albany. During my time there, I developed close personal relationships with many people in the community, including Keith Raniere.

      3.      I was present in Mexico during Mr. Raniere's arrest and traveled back to the United States after the complaint against Mr. Raniere was made public. The arrest came as a shock and I was eager to cooperate with the investigation. When special agents Michael Lever and Michael Weniger showed up to arrest Allison Mack (an arrest for which I was also present), I told them I

was interested in coming in and speaking with them because I believed I could offer exculpatory information. I gave them the name of my lawyer with the intention of making myself available to provide the Government with any and all information they might desire.

4. After Ms. Mack's arrest, the prosecution reached out to my attorney, Mr. Sapone, saying they wanted to speak with me. Mr. Sapone offered that I would speak with the prosecution if they offered some sort of protection from prosecution, such as statutory or letter immunity or a non-prosecution agreement. He also offered to first engage in an attorney proffer so that the prosecutors could determine whether they wanted to bring me in for a proffer interview. Mr. Sapone informed me that the prosecution's response was that they were not interested in an attorney proffer, and declined to offer any sort of protection. He also informed me that when he asked the prosecutors to provide him with a summary of any evidence against me so we could make an informed decision about how to proceed, the prosecutors declined. Under these circumstances, Mr. Sapone and I chose to not speak with the Government. I intended to provide my testimony, and everything I knew, to the defense, with the hope that my exculpatory testimony could be heard at trial.

5. On April 7, 2019, after accompanying my lawyer to the Brooklyn Courthouse to observe an unrelated case, I happened to pass Mr. Raniere's prosecutors in the hallway. Although we had never met, lead prosecutor Moira Kim Penza appeared to recognize me. Two days later, and with less than a month until Mr. Raniere's trial, I received a Grand Jury subpoena. Jury selection had already begun, so my attorney and I reasonably assumed the investigation for his trial had concluded. According to Mr. Sapone, when he called Ms. Penza regarding the subpoena immediately after receiving it, she made the following chilling statement: "First, we are going to cut the head of the snake off and then we're coming for the body. This is not going away for her."

At this point, although I desired to testify, due to what I perceived as a retaliatory threat, coupled with their Grand Jury subpoena, my lawyer advised me not to testify and I complied.

6. It is my belief that the Government knew I would testify in a manner wholly inconsistent with their core premise that DOS was created and existed for the purpose of sex trafficking and forced labor. More specifically, I would have testified that women chose to participate in DOS voluntarily and benefitted greatly from its practices. When I observed women want to and inevitably leave DOS, I never witnessed any threats or negatives consequences enacted upon them by Mr. Raniere or other women in DOS; and I am most certainly not aware of anyone's collateral being released. I would have testified that DOS had a notable and worthy purpose that many sincere, law-abiding women, such as myself, were participating in. I would have testified that I represented DOS accurately and consistently when I invited someone, most particularly relating to Mr. Raniere's involvement or lack of involvement. Additionally, I would have testified that I was never asked by Mr. Raniere to commit criminal acts, nor did I witness any crimes such as sex trafficking, forced labor, or others.

7. Had I given testimony, I would have provided the jury and the Court with an entirely different perspective about NXIVM, DOS and Keith Raniere than what was presented by the prosecution and its witnesses, namely Nicole, Jay, Sylvie, Lauren Salzman and Mark Vicente. Having known, and had close friendships with, the latter three witnesses for over ten years, I would have offered my own personal experience and thoughts on the matters discussed at trial. This experience would have contradicted much of the testimony heard at trial and the subsequent conclusions made about important events, people and practices. Also, having been involved in DOS for longer than any of the witnesses, my testimony would have brought to light many inconsistencies and inaccuracies presented at trial about the organization.

8. I was present for a number of the events described by Ms. Salzman at trial, including a 2015 trip to Fiji, a 2016 trip to Woodstock, Ms. Salzman's branding ceremony, Mr. Raniere's arrest and I would have provided my own personal experience of these events. Although these events did not relate directly to Mr. Raniere's charges, they did serve to support a specific view of Mr. Raniere that my testimony would have countered.

9. I have deep sympathy for Ms. Salzman and the dilemma she faced before entering into a cooperation agreement with the Government. Once she did, I imagine she felt tremendous pressure to offer beneficial testimony that would secure the prosecution's recommendation for leniency in her sentence. I also imagine she learned a number of difficult, personal things from the Government during the time leading up to the trial that left her distraught, and may have contributed to the dramatic difference in her testimony to how I perceived her the last fifteen years.

10. In addition to offering an entirely different point of view to that of Ms. Salzman, I would have countered testimony brought forth by the prosecution's witness, Nicole, specifically relating to her claims of being a victim of sex trafficking and forced labor. Just one example being that when a woman failed to complete an assignment in DOS, her collateral was not released. I certainly never threatened anyone nor attempted to coerce anyone in any way. I supported women in the direction of their stated goals and have not received any direct statements to contradict this. I am adamantly opposed to any organization that threatens women, or men, in any way.

11. In sum, if I had been able to testify, I would have shared my personal experience, and offered additional supporting evidence in my testimony. I believe I would have given the Court and the jury a vastly different perspective on DOS and the complex and nuanced relationships that were the focus of Mr. Raniere's trial. The salacious media attention surrounding the NXIVM community, fueled by the Frank Report, created an environment conducive to an atmosphere of

false perception, and much of this was echoed by the Government's claims. These perceptions wholly contradicted my own direct experience and the knowledge I have about Mr. Raniere, NXVIM and DOS over the last decade. Had I not been frightened by the threat of retaliatory action by the Government, I would have chosen to testify.

12. I have made this Affidavit knowingly, intentionally and of my own free will.

Dated:   October 19, 2020          Respectfully,
         New York, NY

                                   _____
                                   NICOLE CLYNE

STATE OF  New York    )
COUNTY OF   Kings     )

I, __Allison Thompson__, a Notary Public, do hereby certify that on this _19_ day of __October__, 2020 personally appeared before me __Nicole Clyne__, known to me to be the person whose name is subscribed to the foregoing instrument, and swore and acknowledged to me that she executed the same for the purpose and in the capacity therein expressed and that the statements contained herein are true and correct.

_____
NOTARY PUBLIC

ALLISON THOMPSON
Notary Public - State of New York
No. 01TH6099607
Qualified in Kings County
My Commission
Expires Sept. 29, 20 23

5