UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-against-

KEITH RANIERE,

                Defendant.

MEMORANDUM & ORDER
18-CR-204 (S-1) (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Following a six-week jury trial, Defendant Keith Raniere was convicted of racketeering, racketeering conspiracy, wire fraud conspiracy, forced labor conspiracy, sex trafficking conspiracy, and two counts of sex trafficking. The jury returned its verdict on June 19, 2019. (Jury Verdict (Dkt. 735).) Now before the court is Mr. Raniere's Second Motion for a New Trial,[1] pursuant to Fed. R. Crim. P. 33, which Mr. Raniere filed on October 19, 2020, eight days prior to his sentencing date. (Second Mot. for New Trial ("Mot.") (Dkt. 956).) Mr. Raniere argues that recently obtained affidavits from two former DOS members establish that "the Government engaged in a widespread, systemic effort to threaten potential defense witnesses and to prevent them from testifying" and constitute newly discovered evidence that requires a new trial in the interest of justice. (Mem. in Supp. of Second Mot. for New Trial ("Mem.") (Dkt. 956-1) at 1-2.) For the reasons explained below, Mr. Raniere's motion is DENIED.

---

[1] Mr. Raniere previously moved this court for a new trial on March 9, 2020, on the grounds that a civil lawsuit in which some of the Government's trial witnesses appeared to be parties constituted newly discovered evidence. (Mot. for New Trial (Dkt. 851); Mem. in Support of Mot. for New Trial (Dkt. 853) at 1-3.) On July 17, 2020, the court denied the motion. (*See* (Dkt. 902) at 1.)

## I. BACKGROUND

The court assumes familiarity with the relevant facts and procedural history of this case and summarizes them only to the extent they are relevant to this motion.

On May 22, 2018 and June 4, 2018, the Government interviewed Michelle Hatchette, a former member of DOS, pursuant to a proffer agreement. (Mem. in Opp. to Second Mot. for New Trial ("Opp.") (Dkt. 961) at 3.) Ms. Hatchette was represented by counsel at both interviews. (Aff. of Michelle Hatchette ("Hatchette Aff.") (Dkt. 956-2) ¶¶ 32, 38.) According to Ms. Hatchette, she indicated to the Government in these interviews that her participation in DOS was voluntary, and her Government interviewers reacted to her account of that participation with skepticism and resistance. (Hatchette Aff. ¶¶ 32-38.) Shortly before Mr. Raniere's trial, the Government contacted Ms. Hatchette's attorney to arrange a third interview. (*Id*. ¶ 39.) The Government allegedly informed Ms. Hatchette's attorney that it intended to call Ms. Hatchette as a trial witness and would compel her testimony by subpoena if necessary, and advised her attorney that it "would be likely to charge [Ms. Hatchette] with perjury" if she declined to participate in the interview. (*Id*. ¶ 40.) Ms. Hatchette did not participate in the interview, and she did not testify at Mr. Raniere's trial. (*Id*. ¶¶ 39, 45.)

Separately, in preparing for trial, the Government learned that Nicole Clyne, a former member of DOS, was in control of hard drives containing the only known copies of DOS-related materials, including former members' so-called "collateral." (Opp. at 3-4.) The Government had previously corresponded with Ms. Clyne's attorney about interviewing Ms. Clyne in connection with its investigation, but Ms. Clyne had refused to speak with the Government unless it offered protection from prosecution, and the Government had not agreed to such a term. (Aff. of Nicole Clyne ("Clyne Aff.") (Dkt. 956-3) ¶ 4.)

On April 9, 2019, the Government served Ms. Clyne, through counsel, with a grand jury subpoena seeking DOS-related records in her possession. (Opp. at 4.) Ms. Clyne's counsel told the Government that Ms. Clyne would invoke her Fifth Amendment right against self-incrimination if called to testify. (*Id*.) On April 10, 2019, the Government provided Ms. Clyne's attorney with a letter granting act-of-production immunity in connection with production of the requested materials. (*Id*. at 4-5.) Ms. Clyne's attorney indicated that Ms. Clyne was asserting privilege with respect to the materials. (*Id*. at 5.) The Government ultimately did not seek an order of statutory act-of-production immunity from the court and did not obtain the materials it sought. (*Id*. at 5-6.)

At some point during the Government's correspondence with Ms. Clyne's attorney, the Government's lead prosecutor allegedly stated, "[f]irst we are going to cut the head of the snake off and then we're coming for the body. This is not going away for her." (Clyne Aff. ¶ 5.) Ms. Clyne did not testify at Mr. Raniere's trial. (*Id*.)

On October 19, 2020, Mr. Raniere's counsel submitted affidavits by Ms. Hatchette and Ms. Clyne in support of Mr. Raniere's Second Motion for a New Trial. (*See* Mot.; Hatchette Aff.; Clyne Aff.) According to their affidavits, Ms. Hatchette and Ms. Clyne would both have liked to testify for the defense at Mr. Raniere's trial, but they chose not to do so out of a concern that the Government would retaliate against them by initiating prosecutions. (Hatchette Aff. ¶¶ 41-43; Clyne Aff. ¶ 5.)

II. **LEGAL STANDARD**

Federal Rule of Criminal Procedure 33 provides that the court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A motion for a new trial "grounded on newly discovered evidence must be filed within 3 years after the verdict or the finding of guilty," Fed. R. Crim. P. 33(b)(1), while a motion for a new trial based on any other ground "must be filed within 14 days after the verdict or finding of guilty," Fed. R. Crim. P. 33(b)(2).

Although a district court's discretion to grant a new trial is broad, that authority is to be used sparingly and only when the court harbors "a real concern that an innocent person may have been convicted." *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005);[2] *see also, e.g.*, *United States v. Snyder*, 740 F. App'x 727, 728 (2d Cir. 2018) ("A district court ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.").

Where a new trial motion is premised on newly discovered evidence, it may be granted "only upon a showing that the evidence could not with due diligence have been discovered before or during trial, that the evidence is material, not cumulative, and that the admission of the evidence would probably lead to an acquittal." *United States v. Owen*, 500 F.3d 83, 87 (2d Cir. 2007). Evidence "that was known by the defendant prior to trial, but became newly available after trial" is not newly discovered evidence for purposes of a Rule 33 motion. *Id*. at 89. "[I]f the reason that testimonial evidence was unavailable at trial was the defendant's failure to call a witness that he knew could provide exculpatory testimony, a new trial on the basis of newly discovered evidence would not be warranted." *United States v. Forbes*, 790 F.3d 403, 409 (2d Cir. 2015). Moreover, when a defendant's coconspirator refuses to testify on the basis of her Fifth Amendment privilege and then, following trial, indicates a willingness to testify, such testimony is not "newly discovered" regardless of "how the impediment of the privilege was removed." *Id*. at 409-10.

### III. DISCUSSION

The evidence that forms the basis of Mr. Raniere's motion for a new trial, as described in the affidavits of Ms. Hatchette and Ms. Clyne, is not newly discovered. There is no question that Mr. Raniere has known Ms. Hatchette and Ms. Clyne personally since before his arrest.

---

[2] When quoting case law, except as otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

Ms. Clyne was a "first-line" DOS master who reported directly to Mr. Raniere, and in a letter to the court she describes herself as "a partner of [his] for over a decade." (Presentence Investigation Report ("PSR") ¶ 312; Nicole Clyne Letter ("Clyne Letter") (Dkt. 950) at ECF p. 49.) Ms. Hatchette had sexual contact with Mr. Raniere in connection with an "assignment" given to her by Allison Mack, her DOS "master." (Opp. at 11; PSR ¶ 119.) Mr. Raniere knew both of these individuals and was aware of their involvement in DOS. The fact that Ms. Hatchette and Ms. Clyne did not offer to testify at Mr. Raniere's trial pertains only to the *availability* of their testimony, and does not suggest in any way that they were *unknown* to him. *See Forbes*, 790 F.3d at 409.

The substance of the testimony that Ms. Hatchette and Ms. Clyne allege that they would have given is also not new; indeed, far from containing some sort of evidentiary revelation, the hypothetical testimony described in their affidavits covers ground that is well tread in this case. They allege principally that they would have countered the testimony of various witnesses for the prosecution who described elements of DOS, including the use of collateral, assigned labor, and certain members' sexual contact with Mr. Raniere, as products of coercion and psychological manipulation. Ms. Hatchette alleges that her testimony would have established that her participation in DOS, and her performance of tasks and assignments attendant on that participation, was voluntary, and that she perceived certain Government witnesses who testified to feeling coerced as being similarly enthusiastic about their membership in the organization. (Hatchette Aff. ¶¶ 20-30.) Ms. Clyne alleges that she would have testified that, in her view, "DOS had a notable and worthy purpose," "women chose to participate in DOS voluntarily and benefitted greatly from its practices," and she "never witnessed any threats or negative[] consequences enacted upon" women who wished to leave the group. (Clyne Aff. ¶ 6.)

Mr. Raniere, however, was well aware at the time of trial that certain DOS members considered their participation to be voluntary, that even the Government's witnesses had sometimes participated in a

5

manner that could be construed as enthusiastic, and that the threat of women's collateral being released had not been realized. Indeed, these were all premises that were central to his counsel's theory of the case.[3] Thus, the substance of the testimony that Ms. Hatchette and Ms. Clyne claim they would have offered was not unknown to Mr. Raniere, and certainly was not outside the realm of evidence that he could have discovered through due diligence.[4] *See Owen*, 500 F.3d at 89.

Mr. Raniere argues that the testimony of Ms. Hatchette and Ms. Clyne qualifies as "newly discovered" evidence "because these witnesses were threatened and intimidated into silence by the purposeful actions of the prosecution." (Mem. at 7.) While the court takes seriously allegations of prosecutorial misconduct, the allegations in these affidavits provide scant and highly questionable evidence that the Government improperly threatened or intimidated these two individuals, let alone that it engaged in a widespread intimidation campaign, as Mr. Raniere suggests. More to the point, the allegations in this case merely provide context for why Ms. Hatchette and Ms. Clyne chose not to testify.[5] The reasons for their alleged unavailability, like the fact

---

[3] In fact, in his opening statement to the jury, Mr. Raniere's counsel explained, "[O]ne of the things I think is important, none of the collateral was ever released . . . I'm saying never, it was never released . . . what that means is they never had any intention of releasing it." (Ranire Trial Tr. ("Tr.") at 70-71; *see also id.* ("But one of the things I want you to look for, see if anyone seems forced, see if the women seem forced, or they're doing it because they want to do it because, in their own words, they want to [be] bad ass, their words.").)

[4] In fact, Mr. Raniere was aware, as part of the Government's pre-trial production, of statements made by both Ms. Hatchette and Ms. Clyne to the Government regarding their involvement in DOS. (Mem. at 5.) In addition, Mr. Raniere's counsel was aware that the Government had served a grand jury subpoena on Ms. Clyne in April 2019, and counsel for Mr. Raniere, Ms. Hatchette, and Ms. Clyne were all paid out of an irrevocable trust established by co-defendant Claire Bronfman. (Opp. at 6-7.)

[5] It is worth noting that Mr. Raniere fails to establish that either of these individuals would have actually testified for the defense but for the Government's

of their unavailability, is irrelevant to the task of establishing that their testimony qualifies as new evidence.

Tellingly, Mr. Raniere's memorandum in support of his second new trial motion does not point to a single case in which a court has recognized the kind of evidence he cites as the basis for his motion as "newly discovered evidence" under Rule 33. As the Second Circuit has repeatedly made clear, evidence that was knowable but unavailable to the defendant, including testimony by witnesses whom the defendant failed to call—regardless of the reason for that failure—does not warrant a new trial under Fed. R. Crim. P. 33(b)(1). Accordingly, Mr. Raniere's motion is properly construed as a motion for a new trial on a ground *other* than newly discovered evidence under Rule 33(b)(2). That provision of the Federal Rules of Criminal Procedure requires that such a motion be brought within fourteen days of the verdict or finding of guilty.[6] The motion is therefore untimely.[7]

---

alleged threats. There is no evidence that Mr. Raniere's counsel made any effort to arrange for either Ms. Hatchette or Ms. Clyne to testify at trial, or even so much as an inquiry to that effect. (*See* Opp. at 9-10.) Thus, Mr. Raniere's claim that the Government's conduct caused the witnesses to be unavailable relies on a dubious notion of cause and effect. A potential witness whose testimony is not sought fails to testify primarily for that reason, regardless of whether she would have agreed or declined to testify in the counterfactual scenario in which her testimony *was* sought.

[6] In this case, the court extended the deadline for post-trial motions to July 10, 2019.

[7] Because the court finds that Mr. Raniere's motion was not timely filed, it declines to analyze the merits of the motion. The court notes, however, that even if Mr. Raniere's motion were timely, it would fail on other grounds, including the fact that the evidence contained in Ms. Hatchette's and Ms. Clyne's affidavits is neither material nor exculpatory. The fact that these two individuals may have perceived their and others' participation in DOS, sexual contact with Mr. Raniere, or uncompensated work for Mr. Raniere's organizations to be voluntary or even beneficial does not undermine the credibility of other witnesses who testified to vastly different experiences and perceptions. Mr. Raniere was not convicted of crimes committed against Ms. Hatchette or Ms. Clyne, and the fact

## IV. CONCLUSION

For the reasons stated above, Mr. Raniere's (Dkt. 956) Second Motion for a New Trial is DENIED.

SO ORDERED.

Dated:   Brooklyn, New York
         October 23, 2020

                                                /s/ Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge

---

that they do not perceive themselves as his victims is therefore of minimal relevance. *See United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990) ("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."). Even assuming, without deciding, that all of the information alleged in Ms. Hatchette and Ms. Clyne's affidavits is true, the court is far from convinced "that the jury has reached a seriously erroneous result" or that justice was not served by the verdict in Mr. Raniere's case. *Snyder*, 740 F. App'x at 728.