5246

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2
      - - - - - - - - - - - - - X
3
   UNITED STATES OF AMERICA,    :   18-CR-00204(NGG)
4
              Plaintiff ,       :
5                                   United States Courthouse
         -against-              :   Brooklyn, New York
6
   KEITH RANIERE, et al.,       :
7                                   June 15, 2019, Saturday
              Defendant.        :   11:00  a.m.
8
      - - - - - - - - - - - - X
9
                   TRANSCRIPT OF CHARGE CONFERENCE
10          BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
             UNITED STATES DISTRICT JUDGE, and a jury
11
   APPEARANCES:
12
   For the Government:        RICHARD P. DONOGHUE
13                            United States Attorney
                              BY: TANYA HAJJAR, ESQ.
14                                KEVIN TROWEL, ESQ.
                                  MARK LESKO, ESQ.
15                            Assistant United States Attorneys
                              271 Cadman Plaza East
16                            Brooklyn, New York 11201

17 For the Defendant:        BRAFMAN & ASSOCIATES, P.C.
                             767 Third Avenue
18                           New York, New York 10017
                             BY: MARC A. AGNIFILO, ESQ.
19                               TENY ROSE GERAGOS, ESQ.

20                           DEROHANNESIAN & DEROHANNESIAN
                             677 Broadway
21                           Albany, New York 12207
                             BY:  PAUL DerOHANNESIAN, II, ESQ.
22                               DANIELLE R. SMITH, ESQ.

23
   Court Reporter:  Stacy A. Mace, RMR, CRR, RPR, CCR
24                  Official Court Reporter
                    E-mail:  SMaceRPR@gmail.com
25 Proceedings recorded by computerized stenography.  Transcript
   produced by Computer-aided Transcription.

                SAM     OCR     RMR     CRR     RPR

Charge Conference                           5247

1              (In open court - jury not present.)

2               (Defendant entered the courtroom.)

3        (Judge NICHOLAS G. GARAUFIS entered the courtroom.)

4        THE COURTROOM DEPUTY:  Criminal cause for a charge

5   conference.

6              Counsel, just state your appearances, please.

7        MS. HAJJAR:  Good morning, Your Honor.

8        Tanya Hajjar, Kevin Trowel and Mark Lesko for the

9   Government.  5246 - 5

10       THE COURT:  Good morning.

11       MR. AGNIFILO:  Good morning, Your Honor.

12       Mark Agnifilo, Teny Geragos, Paul der Ohannesian and

13  Danielle Smith for Keith Raniere, who is with us in court.

14            Good morning, Your Honor.

15       THE COURT:  Good morning.  Please be seated.

16       I have a letter from the Government about the good

17  faith exception in response to your letter.

18       MR. AGNIFILO:  Yes, Judge.

19       THE COURT:  Mr. Agnifilo, have you seen the letter?

20       MR. AGNIFILO:  I have.

21       THE COURT:  And what is your position?

22       MR. AGNIFILO:  I think -- I think the good faith

23  charge would apply to wire fraud and it would apply to the tax

24  offense, the intended tax offense that's part of, I believe,

25  it's Act 11; and so I would request the charge because I think

1   it applies to -- certainly to those two charges.

2          MS. HAJJAR:  Your Honor, we're offering a proposed

3   language with respect to those two charges.  We don't agree to

4   a generalized good faith charge, but if the language we

5   proposed is acceptable to the defendant, we propose that.

6          MR. AGNIFILO:  We want the wire fraud language that

7   we had in the Shkreli case, which I think we provided to the

8   Court.

9          THE COURT:  I'll look at it.

10         MR. AGNIFILO:  That's fine, Judge.

11         THE COURT:  I'll look at it.  As to those two

12  counts, or those two issues, we will have a good faith -- we

13  will have good faith language.

14         MR. AGNIFILO:  Very good.

15         THE COURT:  Whether it's language in Shkreli or the

16  language that's proposed by the Government, let me work that

17  through.

18         MR. AGNIFILO:  That's good.

19         THE COURT:  So that's pretty much resolved.

20         Okay, shall we just go through the document?

21         MR. AGNIFILO:  Yes, sir.

22         THE COURT:  And see where we have areas of

23  disagreement and then talk about them briefly.

24         I want to thank everyone for being here at

25  11:00 a.m. for this charge conference.

1          All right, Page 1.

2          Page 2.

3          MR. AGNIFILO:  What we can do, Judge, because we

4   actually sat down for two hours this morning, so we have

5   pretty targeted it.

6          THE COURT:  Well, can we do them in page order?

7          MR. AGNIFILO:  Yes, Judge, absolutely.

8          THE COURT:  Well, where would you like to start?

9          MR. AGNIFILO:  So I think --

10         MS. HAJJAR:  The first small thing is on page 10,

11  Your Honor, just --

12         THE COURT:  That's fine, I appreciate that you have

13  done that.

14         MR. AGNIFILO:  That's fine, Judge.

15         THE COURT:  All right, on page 10.

16         MS. HAJJAR:  Just the third paragraph starting:  "It

17  would also be improper for you to draw any conclusions about

18  the defendant's guilt or innocence," rather than

19  Mr. Raniere's, in order to be consistent with the remainder of

20  the charge.

21         And I think -- I think the defense agrees with that.

22         THE COURT:  I'm sorry, say that again.

23         MS. HAJJAR:  The Court's proposed charge on page 10,

24  there is one reference to Mr. Raniere, it's like right in the

25  middle of the page.

1          THE COURT:  Yes.

2          MS. HAJJAR:  We would just ask that it be changed to

3     the defendant to be consistent with the remainder of the

4     charge.

5          THE COURT:  All right.

6          Now, I am reading from the version of 6/14/19, which

7     was the second draft in effect, which added that one

8     provision.  I just want to make sure everyone is reading from

9     the same script.

10          MS. HAJJAR:  We have that as well.

11          MR. AGNIFILO:  We have that too, Judge.

12          THE COURT:  All right, that's page 10.

13          Next.

14          MR. AGNIFILO:  The next one we have -- I'm not sure

15     if the Government has one before this -- is on page 13.

16          MS. HAJJAR:  We don't have one before that.

17          THE COURT:  13.

18          MR. AGNIFILO:  Yeah, on page 13 under Deciding What

19     to Believe, we would propose something along the lines of --

20     in addition to the list that Your Honor has there of A through

21     H:  "Did the witness have a bias, hostility or some other

22     attitude that you conclude shows that the witness is not

23     objective or favored one side or the other."

24          I would go with -- I don't know if Your Honor --

25          THE COURT:  I don't have any problem with that,

Charge Conference                    5251

1   frankly, especially in a case like this, but do you have

2   specific language?

3               MR. AGNIFILO:  I do, I can give specific language or

4   I am also happy to use whatever Your Honor has, but I can use

5   specific language.

6               THE COURT:  All right, I just want it to be agreed

7   to, whatever it is.

8               MS. HAJJAR:  We think it's subsumed in A and B:

9   "Did the witness seem to be honest?  Did the witness have any

10  particular reason not to tell the truth?"

11              And Mr. Agnifilo proposed to the Government earlier

12  today:  "Did the witness have a bias, hostility or some other

13  attitude that affected the truthfulness of the witness?"  But

14  I just think that's confusing; I don't even know what that

15  means.  To the extent what Mr. Agnifilo is getting at is

16  demeanor, I think the question "did the witness seem to be

17  honest" is covering that.

18              THE COURT:  Well, if you have something specific,

19  just provide it to me.

20              MR. AGNIFILO:  All right, Judge, I will.

21              THE COURT:  This is an unusual case, so there may be

22  something -- something like what you suggested might be

23  appropriate.  Let me look at it.

24              MR. AGNIFILO:  Okay, I'll submit something.

25              THE COURT:  So I am going to put that down for...

Charge Conference                    5252

1              Go ahead.  That is 13.

2              MR. AGNIFILO:  Yes, Judge.

3              THE COURT:  Next.

4              MS. HAJJAR:  We have a proposed change on Page 16

5    that we've discussed with the defense.

6              THE COURT:  And what is that?

7              MS. HAJJAR:  In "Interest in Outcome."

8              THE COURT:  Right.

9              MS. HAJJAR:  The second paragraph:  "This is not to

10   suggest that a witness who has an interest in the outcome of a

11   case will testify falsely.  It is for you to decide to what

12   extent, if at all, a witness's interest is."

13             So just to change those articles.

14             MR. AGNIFILO:  That's agreeable to us.

15             THE COURT:  That's fine.  Next.

16             MS. HAJJAR:  We have a proposed change on Page 19,

17   as well.

18             THE COURT:  Go ahead.

19             MS. HAJJAR:  Just the second from the bottom, second

20   line from the bottom.  Her decision -- this is under Guilty

21   Pleas of Other Individuals.

22             THE COURT:  I'm sorry.

23             We are on 19 under expert witnesses?

24             MS. HAJJAR:  No, under the prior section, Your

25   Honor, Guilty Pleas of Other Individuals.

SAM      OCR      RMR      CRR      RPR

Charge Conference                              5253

1          THE COURT:  Okay.  So what is the suggestion?

2          MS. HAJJAR:  "Her decision to plead guilty was a

3    personal decision about her own guilt."  It's just on --

4          THE COURT:  Oh, yeah, it is personal.

5          MS. HAJJAR:  Yep.

6          MR. AGNIFILO:  Agreed.

7          THE COURT:  All right, so that is 19.  Next.

8          MS. HAJJAR:  On page 23, Your Honor.

9          THE COURT:  Yes.

10         MS. HAJJAR:  It's just where:  "that the Defendant

11   had a criminal propensity, that is, that he likely committed

12   the crimes charged in the indictment because he was

13   predisposed."

14         THE COURT:  Yes.  Because he...

15         MS. HAJJAR:  Was predisposed.

16         THE COURT:  Was predisposed.

17         MR. AGNIFILO:  Also, Judge, I think in the previous

18   sentence, it just says "fendant" and it should be "Defendant."

19         MS. HAJJAR:  Yes.

20         THE COURT:  Oh, yeah.  Okay, that's 23.

21         MS. HAJJAR:  On Page 26 and -- 26, Your Honor.

22         THE COURT:  Yes.

23         MS. HAJJAR:  Under Venue, the second sentence:  "The

24   Indictment alleges that the crime charged;" it should be

25   "crimes charged."  Just plural.

1           THE COURT:  Yes.  That's it, it's crimes charged.

2           MS. HAJJAR:  And then on page 28, "Interviews of

3    Witnesses."

4           THE COURT:  Yes.

5           MS. HAJJAR:  We would just ask that "Not Required"

6    be removed from the header.

7           MR. AGNIFILO:  We agree.

8           THE COURT:  All right.

9           MS. HAJJAR:  And then the instruction that follows,

10   at paragraph 32, we believe Your Honor incorporated that

11   transcript instruction in a different part of the

12   instructions.

13          THE COURT:  I'm sorry, which part are you?

14          MS. HAJJAR:  This is --

15          THE COURT:  The transcript instruction?

16          MS. HAJJAR:  Yes, you have it twice, Your Honor, I

17   believe.

18          THE COURT:  Well, you know, sometimes there is

19   redundancies.  I don't want to read a redundancy, so we will

20   just take that 32 out?

21          MS. HAJJAR:  I think that would be right, Your

22   Honor.  We've agreed to that.

23          THE COURT:  Ms. Geragos just --

24          MR. AGNIFILO:  If she agrees, I agree.

25          THE COURT:  -- gave a thumbs up about that one.

Charge Conference                              5255

1              MR. AGNIFILO:  You captured on that on page 9 of the

2     instructions.

3              THE COURT:  Okay.  I mean, any time there is

4     something like that, because these instructions are an amalgam

5     of different instructions, it does happen.  And there are

6     times when I'm reading through the instructions to the jury

7     saying I know I just said this, but I say it again anyway just

8     in case.

9              All right, so 32, paragraph 32 is out.

10             We are now on to the indictment.

11             MS. HAJJAR:  The next change we have is on page 32,

12    Your Honor.

13             THE COURT:  Yes.

14             MS. HAJJAR:  This was the subject of the letter we

15    filed yesterday, but I think we're -- I understand the defense

16    may be in agreement about this, we would ask that in the last

17    paragraph on page 32:  "To act willfully means to act

18    knowingly and purposely with an intent to do something the law

19    forbids," we would just ask that the sentence ends there with

20    a period, rather than the remainder of the sentence, which we

21    don't think is necessary.

22             THE COURT:  Is that agreeable?

23             MR. AGNIFILO:  It is, Judge.

24             When we get deeper into the instructions, I am going

25    to want a Cheek's instruction on the tax part of the charge,

Charge Conference                                5256

1    so we don't need this here because this seems to be kind of a

2    reference to a Cheek's tax-type instruction.

3              So we are going to capture it later, so we can take

4    it out here.

5              THE COURT:  Okay.  All right, that is agreed to

6    then, 32.

7              Next.

8              MS. HAJJAR:  So, Your Honor, the next one we have is

9    on page 41.  Just for clarity's sake, and I know this was in

10   the Government's proposed charge, but as we were going through

11   it again, we would ask that for the fifth element on that --

12             THE COURT:  Just let me, are you talking about on

13   Racketeering Elements of the Enterprise?

14             MS. HAJJAR:  For the RICO statute, so it's page 41.

15             THE COURT:  Yes, I see it.

16             MS. HAJJAR:  Right before the first element there is

17   just a summary of the fifth element.

18             THE COURT:  Yeah, what about it?

19             MS. HAJJAR:  So the second -- the second part of

20   that sentence reads:  "the last of which must have occurred

21   within ten years after commission of a prior racketeering

22   act."

23             We would just ask, and I think it's with the

24   defense's consent, that we just say:  "which must have

25   occurred within ten years of each other."  Because that

1   language is confusing because what the last -- I know it's in

2   the statute, but "the last of which must have occurred within

3   ten years" is not clear which one is the last one; whether

4   it's the most recent or the furthest in time.  So just to

5   simplify things, we are going to ask that it just read "which

6   must have occurred within ten years of each other."

7               MR. AGNIFILO:  We agree.  We discussed this at

8   length this morning.

9               THE COURT:  Period, and take out "after the

10  commission of a prior racketeering act;" is that what you're

11  saying?

12              MS. HAJJAR:  Yes.  Yes, so just that clause.

13              THE COURT:  "Or through causing or aiding and

14  abetting in the commission of two such racketeering acts,"

15  stays in.

16              MS. HAJJAR:  We are fine with that.

17              MR. AGNIFILO:  Well, that's one thing we didn't

18  agree on and I was going to ask that you take that part out

19  because you capture the concept of aiding and abetting as a

20  part of a liability already.  So I don't know that there is

21  the need to say again that someone can be -- because you

22  explain already you can be guilty as aider and abetter, you

23  know, before we get to this point.  So I don't know that we

24  need to repeat it because I think you've already established

25  that as a grounds for liability.

Charge Conference                                    5258

1          MS. HAJJAR:  We'd like the language in.  Aiding and

2    abetting is a confusing concept, but we want the jury to be

3    clear that that is a way in which the racketeering acts can be

4    committed.

5          THE COURT:  I am going to leave it in.

6          You have your exception.  In fact, any time I don't

7    give you what you want you have your exception.

8          MR. AGNIFILO:  Very good, Judge.  Thank you.

9          THE COURT:  All right, that's 41.

10         Shall we move on?

11         MS. HAJJAR:  I think so, Your Honor.

12         THE COURT:  Next.

13         MR. AGNIFILO:  The next thing -- and actually, we

14   didn't bring this up this morning and it's probably my fault,

15   on page 43, under Purposes, Methods and Means of the

16   Enterprise, 7A, one of the things that's listed is "money

17   laundering" and I don't think money laundering is charged

18   anywhere in the balance of the indictment and I don't think

19   that there is going to be a jury instruction on money

20   laundering, so we ask to take money laundering out.

21         MS. HAJJAR:  We're fine removing it.

22         THE COURT:  "Money laundering" is out on page 43,

23   7A.

24         Okay, next?

25         MR. AGNIFILO:  The next one we have is page 45,

Charge Conference                                    5259

1    Judge.  Now we're into the Definition of Enterprise.

2              THE COURT:  Yes.

3              MR. AGNIFILO:  And on, Page 45, that second-to-last

4    paragraph, the Government -- it says, the second sentence:

5    "The enterprise must have the three following structural

6    features," and the Government lists three, and we have

7    objections to each of the three.

8              And I'll go in order when the Court is ready.

9              THE COURT:  Go ahead.

10             MR. AGNIFILO:  Okay.

11             The first is, instead of being "a purpose," we want

12   it to be "a common purpose."  So we are asking that common be

13   inserted before purpose.

14             THE COURT:  Is there a problem with that?

15             MS. HAJJAR:  No, we've taken this -- I'll just note

16   that we've taken this language from *Boyle* and it makes sense

17   following the prior sentence.  I think what Mr. Agnifilo was

18   about to say is to change 2 and 3 to, essentially, contain the

19   same information as the preceding sentence.

20             We like the language the way it is, we think it

21   makes sense, and so I don't know if we are going to agree to

22   all of the changes that Mr. Agnifilo --

23             THE COURT:  Well, let me hear about all the of the

24   changes then.

25             MR. AGNIFILO:  All right, so that's the first one.

SAM      OCR      RMR      CRR      RPR

Charge Conference                              5260

1          The second is we propose the language "an ongoing

2     formal or informal organization," and I am taking this

3     directly from the Sand instruction with no changes whatsoever.

4          And then, third, we're requesting "personnel who

5     function as a continuing unit."  And I believe the

6     Government's charge is derived from the Supreme Court's *Boyle*

7     decision, which is obviously the Supreme Court of the United

8     States, but my reading of the *Boyle* decision is not that this

9     is the mandated racketeering instruction.  I think *Boyle* is

10    very clear that there can be flexibility and the Sand

11    instruction is what the Sand instruction is regardless of the

12    *Boyle* decision.

13         So we essentially want the Sand instruction, which

14    is what I'm conveying to the Court, and I don't think the

15    Supreme Court in *Boyle* said this is the definitive instruction

16    on enterprise.  I think what the Supreme Court said is that

17    the instruction that was given is not error.  But we'd like

18    the Sand instruction.

19              THE COURT:  All right, thank you.

20              Yes?

21              MS. HAJJAR:  We are fine with "the common purpose,"

22    Your Honor, but the preceding sentence is exactly what

23    Mr. Agnifilo just read:  "existed by evidence of an ongoing

24    organization, formal or informal, and by evidence that the

25    various associates functioned as a continuing unit."  That's

Charge Conference                    5261

1  precisely the same thing; I don't think there's any need for a

2  change here.

3              THE COURT:  Could you just submit to me the Sand

4  instruction?

5              MR. AGNIFILO:  Yes, Judge.

6              THE COURT:  And let me look at it?

7              MR. AGNIFILO:  Sure.

8              THE COURT:  I think this is okay, but if I think the

9  Sand instruction is better, I'll use it.

10             MR. AGNIFILO:  Okay, very good, Judge.

11             THE COURT:  All right.  That's 45.

12             Next.

13             MS. HAJJAR:  So on page 51, Your Honor, it's the

14  same -- it's the same issue as the one we previously

15  identified for Your Honor, which we are in agreement with:

16  "The defendant intentionally committed or caused --

17             THE COURT:  You have to tell me what paragraph.

18             MS. HAJJAR:  So, page 51, the second full paragraph.

19             THE COURT:  Yes, and?

20             MS. HAJJAR:  The last part of the first sentence:

21  "the last of which must have occurred within ten years after

22  the commission of a prior racketeering act."  The same change,

23  we just ask that it be "at least two of which must have

24  occurred within ten years of each other."

25             THE COURT:  Do you have that, Andrew?

1          THE LAW CLERK:  Yes.

2          THE COURT:  All right.

3          MR. AGNIFILO:  And then we had one in the next

4    paragraph, Judge.  The paragraph that starts:  "Second, the

5    racketeering acts must have a 'nexus' to the enterprise and

6    the racketeering acts must be 'related'."  And then we add "to

7    each other."

8          MS. HAJJAR:  We don't want that, Your Honor.  This

9    is a standard charge.  We've seen it charged this way in prior

10   charges of Your Honor and elsewhere.

11         THE COURT:  I am just going to leave it.

12         Next.

13         MR. AGNIFILO:  Further in that same paragraph,

14   Judge, it's the last full sentence on the page and it says:

15   "Two racketeering acts may be 'related' even though they are

16   dissimilar or not directly related to each other, provided

17   that the racketeering acts are related to the same

18   enterprise."

19         And we believe, Judge, that in this case that's not

20   an accurate statement of the law and I am citing the case

21   *Reich* versus *Lopez*, a Second Circuit case from 2017 at 858,

22   F.3d 55, and I think the *Reich* case makes a distinction

23   between enterprises on the one hand that are wholly criminal,

24   like organized crime families, gangs, things like that, and

25   then, enterprises that are something other than wholly

Charge Conference                              5263

1    criminal.  And my interpretation of the *Reich* decision is it

2    makes a distinction about how racketeering acts can be related

3    to each other in the following way:

4           The pattern that the Supreme Court developed, you

5    know, years ago when going over the racketeering statutes, is

6    that the racketeering acts have to be related to each other.

7    During the course of the jurisprudence in RICO, that

8    relationship has been able to be established, in some cases,

9    by each of the racketeering acts being related to the

10   underlying enterprise.

11          What I understand the *Reich* decision to be saying is

12   that that's an appropriate way of making the connection; the

13   distinction between horizontal relatedness on the one hand

14   with the racketeering acts being related to each other, and

15   vertical relatedness with the racketeering acts being related

16   to the enterprise, but it's only appropriate in certain types

17   of cases where the enterprise at issue is wholly criminal,

18   like a mafia family, La Cosa Nostra, whatever the case may be.

19          And I think *Reich* says that it's not an appropriate

20   way to make a connection between the racketeering acts in a

21   case other than those.

22          So that all boils down to us wanting that one

23   sentence taken out.

24          MS. HAJJAR:  This issue arose before Your Honor for

25   the motions to dismiss and all that associated litigation.

1    This is -- the enterprise we've alleged is a wholly criminal

2    enterprise, and so the charge is appropriate and an LCN or

3    other gang-type charge is the one we are asking for.

4            What *Reich* deals with, and what it is talking about

5    is -- I'm looking at the case -- "when dealing with an

6    enterprise that is primarily a legitimate business, and

7    elsewhere a large ramified corporation."  And it's a civil

8    RICO case, in a motion to dismiss, where the enterprise is

9    nothing like the enterprise as the Government has alleged.  We

10   would like the standard charge on this and we don't think

11   any -- any modification is appropriate.

12           THE COURT:  I will take a look at it.

13           Next.

14           MS. HAJJAR:  On page 58.

15           THE COURT:  Yes.

16           MS. HAJJAR:  The Government neglected to add a

17   foreign commerce instruction.  If it's -- I don't think the

18   defense objects, we just ask to propose some language to the

19   Court on that.  We've only -- we've only proposed instructions

20   on interstate commerce, but not foreign commerce with respect

21   to this count, which is --

22           THE COURT:  You want "interstate or foreign

23   commerce"?

24           MS. HAJJAR:  Yes.

25           MR. AGNIFILO:  That's fine.

```
                    Charge Conference                    5265
```

1        THE COURT:  All right.  That's 58.

2        Next.

3        THE LAW CLERK:  I'm sorry, what would the

4   instruction say, how would that change?

5        THE COURT:  "To satisfy this element the Government

6   must prove that the defendant's conduct affected interstate or

7   foreign commerce in any way."

8        THE LAW CLERK:  Okay.

9        THE COURT:  At the bottom of the last full

10  paragraph.

11        THE LAW CLERK:  Right.

12        THE COURT:  On page 58.

13        THE LAW CLERK:  And then also we would have to

14  change the preceding sentence, right, to add "or foreign."

15        MS. HAJJAR:  Between a state, not just between two

16  or more states.

17        THE LAW CLERK:  Between any two other more states or

18  a state and a foreign country?

19        MS. HAJJAR:  Yes.

20        THE COURT:  Okay.

21        MS. HAJJAR:  The next request we have is on page 74,

22  near the bottom of the page, the paragraph addressing the

23  fourth element.  At the -- near the bottom, the instruction

24  says:  "Provided and obtaining wire and electronic

25  communications."

Charge Conference                                    5266

1            THE COURT:  I'm sorry, where?

2            MS. HAJJAR:  It's the second-to-last.

3            THE COURT:  Yes, I see, "in relevant part"?

4            MS. HAJJAR:  Yes, right before that, Your Honor.  We

5     would just ask that -- we would ask that you add the sentence:

6     "I instruct you that an e-mail is a wire or electronic

7     communication."

8            And I don't believe the defense objects to that.

9            THE COURT:  That an e-mail is a...

10           MS. HAJJAR:  A wire or electronic communication.

11           MR. AGNIFILO:  Can I have one second, Judge?

12           THE COURT:  Yes.

13           (Pause.)

14           MR. AGNIFILO:  What we're debating, Judge, is

15    whether -- we're not quarreling with that as a statement of

16    law.  What I'm wondering is whether we're taking an element

17    away from the jury, in a sense, and whether it's better to say

18    you can consider or you may consider, you know, rather than

19    for the Court to say that, in a sense, a certain element has

20    been satisfied.  But we are just trying to think through it; I

21    mean, I don't think it's that tricky, but --

22

23           (Continued on the following page.)

24

25

Charge Conference                          5267

1        MS. HAJJAR:  (Continuing.)  Our view, Your Honor, it

2   is a definition of what that word is.  It's not an element of

3   the crime.  It doesn't take away an element.  It explains to

4   the jury, one, wire or electronic communication is an e-mail

5   and that's throughout Your Honor's instructions.

6        THE COURT:  What else would an e-mail be than a wire

7   or electronic communication?  It couldn't be anything else.

8        MR. AGNIFILO:  I agree with that.

9        THE COURT:  I don't think that eliminates an

10  element.  It just defines what an e-mail is.

11       MR. AGNIFILO:  Right.  I know.  I'm not trying to be

12  too theoretical.  I want to make sure that the jury decides

13  all the elements on its own.

14       I think the Government's has convinced me.  It's not

15  an element of the crime.

16       THE COURT:  I just don't see that as depriving the

17  jury of the responsibility to find the elements is what I'm

18  saying.

19       MR. AGNIFILO:  Got it.  I think I agree.

20       THE COURT:  The Government.

21       MS. HAJJAR:  Your Honor, with respect to the

22  interstate or foreign commerce element, there are a number of

23  places where we neglected to have that, including on page 75.

24  If it's easier for Your Honor, we can send a Word document

25  with that proposed language throughout.

MDL      RPR      CRR      CSR

Charge Conference                                        5268

1          THE COURT:  Identify where you think it ought to go

2     in.

3          MS. HAJJAR:  Yes.

4          THE COURT:  With certain materials we went back and

5     looked.  But on that subject, we I didn't.

6          MS. HAJJAR:  We neglected to include it.  We will

7     add it for each of the identity theft racketeering acts, for

8     which there are a few.

9          THE COURT:  Next.

10          MR. AGNIFILO:  Your Honor, on page 79, Racketeering

11     Act Six.

12          THE COURT:  Yes.

13          MR. AGNIFILO:  The name of the statute really is

14     conspiracy to obstruct an official proceeding rather than

15     obstruct justice.

16          MS. HAJJAR:  Your Honor, Mr. Agnifilo raised this

17     issue to us this morning.  We don't -- the name of the statute

18     isn't conspiracy to obstruct an official proceeding, but Mr.

19     Agnifilo did point that the indictment says conspiracy to

20     alter records for use in official proceeding.  We are fine --

21     if it's significant, we are fine with reverting to the

22     language from the indictment in terms of the title of that

23     section.

24          MR. AGNIFILO:  That's fine with us.

25          THE COURT:  I'm sorry, just tell me where I'm

Charge Conference                           5269

1   putting this in.

2         MS. HAJJAR:  It is page 79 in the title of

3   Racketeering Act Six, rather than conspiracy to obstruct

4   justice, read the language from the indictment, conspiracy to

5   alter records for use in official proceeding.

6         MR. AGNIFILO:  That's agreeable to us.

7         MS. HAJJAR:  There are two additional areas.

8         THE LAW CLERK:  So would the following sentence stay

9   the same, the first sentence after title?

10        MS. HAJJAR:  In the following paragraph, the two

11  references to obstruct justice should be changed then to

12  agreed to alter records for use in official proceeding and the

13  first sentence.  You're right.

14        THE COURT:  We are on F, right?

15        MS. HAJJAR:  Yes.

16        THE COURT:  Which starts on 78?

17        MS. HAJJAR:  79 by my count.

18        THE COURT:  I don't know why I have a different

19  pagination.  Don't worry about it.  Let's fix it.

20        Go through that with me now.  That's why I was

21  confused.  The title is going to be "Conspiracy --

22        MS. HAJJAR:  It would be --

23        MS. GERAGOS:  "Conspiracy to alter records for use

24  in an official proceeding."

25        THE COURT:  Okay.

Charge Conference                    5270

1           MS. HAJJAR:  Throughout that paragraph where the

2    charge refers to obstructing justice or obstruction of

3    justice, we would just swap out that phrase.

4           THE COURT:  Okay.

5           MR. AGNIFILO:  It appears a few different times.

6           THE COURT:  We will change it every time.

7           MR. AGNIFILO:  Very good.

8           THE COURT:  We will take care of that.

9           Next.

10          MS. HAJJAR:  We don't have one until 90.

11          MR. AGNIFILO:  That's right.  That's the next one we

12   have too.

13          MS. HAJJAR:  On page 90, at the top of the page,

14   Your Honor, there are three subparts to section -- to the

15   second element.  We would just ask to strike the third as we

16   are not proceeding on it and the defense consents.

17          MR. AGNIFILO:  We do consent.

18          THE COURT:  My pagination is a little different.

19   Why don't you give me a more specific understanding.  This is

20   on Racketeering 8B?

21          MS. HAJJAR:  8B yes, Your Honor.

22          THE COURT:  And then "Whoever knowingly destroys,

23   conceals," et cetera language, and then "In order to prove

24   this racketeering act, the Government must prove."

25          MS. HAJJAR:  And then the second bullet point, which

Charge Conference                    5271

1   begins "Second, that the defendant did so."

2          THE COURT:  Yes.

3          MS. HAJJAR:  There are three subparts.  We would ask

4   to strike the third, which begins "Or three, to unlawfully

5   prevent or restrict" and to the end of that semicolon.

6          THE COURT:  How would second read?

7          MS. HAJJAR:  "Second, that the defendant did so,

8   one, in the course of violating the force labor statute or

9   trafficking statute; or, two, with intent to violate the force

10  labor statute or trafficking statute," semicolon and third.

11         THE COURT:  Agreed?

12         MR. AGNIFILO:  We do agree.

13         THE COURT:  Next.

14         MR. AGNIFILO:  Our next one is on page 101, Judge.

15  I know that we have different pagination.

16         THE COURT:  I will find it.  If you just --

17         MR. AGNIFILO:  The paragraph starts "The third

18  element that the Government must prove."

19         THE COURT:  I got it.

20         MR. AGNIFILO:  It is the last two sentences of that

21  paragraph.  It starts with --

22         THE COURT:  "A thing of value"?

23         MR. AGNIFILO:  "A thing of value," going to the end

24  of the paragraph, that is not part of the Sand charge.  So we

25  oppose it.  We want the Sand charge as it is in the original

1   jury instruction.

2         MS. HAJJAR:  Your Honor, we adapted those languages

3   from Your Honor's memorandum and order denying the motion to

4   dismiss.  We think it is important to define a thing of value

5   and the phrase any sex act.  That was from the Court's

6   memorandum and opinion.  It is an accurate explanation of the

7   law and there is none in Sand.  So we do think it's

8   appropriate.  We think it's important.

9         MR. AGNIFILO:  Judge, I mean, obviously Your Honor

10  was deciding motions in front of us, so I don't quarrel with

11  the legal propriety of the language, but I don't know that it

12  should be part of the jury instruction.  I think the Sand jury

13  instruction is a little more time tested.  I would want to

14  stick with the original Sand instruction.  This instruction,

15  as the Government adapted it, hasn't been approved.  It is

16  something that the Government has cobbled together.  I

17  understand why they did.  But we want to stick with the Sand

18  instruction as a sound instruction.

19        MS. HAJJAR:  Your Honor, every trafficking case we

20  found in this district, for which there have been not many,

21  have put something in there.  *Marcus* is another case in which

22  there was some discussion of what a thing of value is.  Here,

23  we think it is important for the jury to understand that a

24  thing of value need not be financial in nature, need not be a

25  cash exchange.  That is what the law says.  That's what Your

Charge Conference                              5273

1    Honor ruled and we think it's appropriate for the jury to know

2    what that is.

3           THE COURT:  I am going to leave it in.  If you have

4    other language that could be used, I'd like to see it.

5           MR. AGNIFILO:  I think part of the problem, Judge,

6    is earlier in the Sand instruction, the Sand instruction

7    specifically says, and I am looking about seven lines up, a

8    commercial sexual act is any act of which anything of value is

9    given to or received by any person because of such sex act.  I

10   think the reason that the Sand instruction -- the Sand

11   instruction captures that concept.  And I think what's

12   happening is the Government is trying to sort of double-back

13   and do it again and I think it's giving undue emphasis to

14   something that the Government frankly wants to emphasize, but

15   I think the Sand instruction, as it is written in Sand, is

16   balanced and appropriate and is the instruction that we're

17   requesting.

18          MS. HAJJAR:  The Court includes the Sand

19   instruction.  It's at the top of that page.  It's just very

20   bare-bones.  There is no added explanation of what any of

21   those things are.  So we think it is important and we do want

22   the Court to keep those two lines in.

23          THE COURT:  Well, judge Sand isn't around to consult

24   with at this point and I don't know it was ever contemplated

25   that there would be an instruction in a case quite like this.

Charge Conference                         5274

1   I am going to leave it.  If necessary, later on, there will be

2   clarification by somebody else.

3           You have your exception.

4           Next.

5           MR. AGNIFILO:  The next one we have -- I'm not sure

6   if there is one before -- is on page 109 and that relates to

7   the tax charge.

8           THE COURT:  109?

9           MR. AGNIFILO:  Yes, Judge.

10          THE COURT:  Hold on.

11          MR. AGNIFILO:  Where I'm looking, Judge, the

12  paragraph starts "As to the fourth element under racketeering

13  Act 11."  I am going about seven lines down.

14          THE COURT:  Fourth, "that the defendant or a

15  co-conspirator"?

16          MR. AGNIFILO:  No, Judge.

17          THE COURT:  I'm sorry.

18          MR. AGNIFILO:  That's all right.  Below that.  I'm

19  not in the bullet point anymore.

20          THE COURT:  As to the fourth element, I see it.  Go

21  ahead.

22          MR. AGNIFILO:  So about five lines down, after the

23  reference to the Internal Revenue code, it says, "In relevant

24  part, the crime of tax evasion prohibits the willful attempt

25  to evade or defeat any tax imposed by the Internal Revenue

Charge Conference                                    5275

1   code.  What we're requesting is the standard *Cheek* instruction

2   from the Supreme Court's decision in *Cheek versus United*

3   *States*, which defines willfulness specifically for a tax crime

4   or intended tax crime.  And what the Supreme Court says, and I

5   will read it verbatim, "Willfulness requires the Government to

6   prove that the law imposed a duty on the defendant, that the

7   defendant knew of this duty and that he voluntarily and

8   intentionally violated that duty."  That's the Supreme Court's

9   instruction in *Cheek* that's unique to tax offenses.  AND even

10  though this is only an intended tax offense, it applies in

11  completed tax offenses and intended tax offenses.

12           MS. HAJJAR:  We are fine with that, Your Honor.

13           THE COURT:  How do you want me to revise this

14  section as a result?

15           MR. AGNIFILO:  I would say since you talk in the

16  previous sentence with willful attempt to evade, just say

17  something along the lines of in this context.

18           MS. HAJJAR:  To act willfully?

19           MR. AGNIFILO:  Yes, to act willfully and then go

20  right into the Sand -- I'm sorry, into the *Cheek's*

21  instruction.  I will read it again just so it's clear.

22           THE COURT:  So after the sentence "in relevant

23  part"?

24           MR. AGNIFILO:  That's right.

25           THE COURT:  You want me to put in --

Charge Conference                              5276

1          MR. AGNIFILO:  "To act willfully here," and this is

2     the quote, "requires the Government to prove that the law

3     imposed a duty on the defendant, that the defendant knew of

4     this duty, and that he voluntarily and intentionally violated

5     that duty."

6          THE COURT:  And then we go on to establish this

7     fourth element?

8          MR. AGNIFILO:  Yes.  That's fine.

9          THE COURT:  We are basically adding that sentence.

10         MR. AGNIFILO:  That's right.

11         THE LAW CLERK:  And the sentence would start "In

12    this context, to act willfully requires"?

13         MS. HAJJAR:  We would like that, yes.

14         MR. AGNIFILO:  That's fine.

15         THE COURT:  What's next?

16         MS. HAJJAR:  We don't have anything further, Your

17    Honor.

18         MR. AGNIFILO:  I'm not sure we do either.  Let me

19    just double check.

20         One issue on page 12, Judge.

21         THE COURT:  I'm sorry, racketeering conspiracy?

22         MR. AGNIFILO:  Yes.  The listing of crimes for

23    racketeering conspiracy, in the middle of that page, there is

24    a reference to Title 18, United States Code, Section 1590,

25    trafficking in persons.  I don't know that that's something

Charge Conference                                          5277

1   that Your Honor is giving a jury instruction on.

2           MS. HAJJAR:  Could I have a moment to confer with

3   Mr. Agnifilo?

4           THE COURT:  Sure.

5           MR. AGNIFILO:  I stand corrected.  I didn't see that

6   1590 was charged in conjunction with one of the other

7   racketeering acts.  As long as Your Honor is giving a charge,

8   I'm fine.

9           THE COURT:  We only have that one item we have under

10  advisement and the other item where you are going to give us

11  some language.

12          MR. AGNIFILO:  Right.  Let me just make sure.

13          So, yes.  So what we owe Your Honor is we owe Your

14  Honor some proposed language in regards to the bias issues and

15  credibility of witnesses.  That's on page 13.  We owe Your

16  Honor a Sand instruction on page 45 as part of the definition

17  of enterprise under the racketeering statute.

18          THE COURT:  Right.  How fast can you get that to me?

19          MR. AGNIFILO:  We can do it within an hour of when

20  we leave here.

21          THE COURT:  Because what I would like to do is take

22  a look at everything.  Some of the changes we have already put

23  in while we have been here.  What I would like to do is by the

24  end of the afternoon is provide you with a new draft to look

25  at to see if we have the changes that were agreed to correct

Charge Conference                          5278

1   and we can see what other changes I decided to make, if any.

2           MR. AGNIFILO:  One other thing that I would like to

3   have an opportunity to take a look at within the hour is that

4   some of the other Eastern District cases in sex trafficking

5   that talks about commercial sex act and things of value, only

6   because I think that's an important issue.  I know the

7   Government's has added to the Sand instruction.

8           THE COURT:  Well, go ahead.

9           MR. AGNIFILO:  Thank you, Judge.

10          THE COURT:  Have you looked at the verdict sheet?

11          MS. HAJJAR:  Your Honor, I'm not sure we received --

12          THE LAW CLERK:  He is talking about the one you

13  submitted to the Court.

14          MS. HAJJAR:  The one we submitted, yes.

15          THE COURT:  The one you submitted and the one we

16  received.

17          MS. HAJJAR:  Yes.

18          MS. GERAGOS:  The only proposed change we would

19  make, Your Honor, is to change the language of the conspiracy

20  to alter records for use in an official proceeding instead of

21  conspiracy to obstruct justice.  I don't have it in front of

22  me.  I just remember that that's -- give me one moment.  That

23  is our only issue for Racketeering Act Six.

24          THE COURT:  The racketeering act?

25          MS. GERAGOS:  Yes.

Charge Conference                              5279

1           THE COURT:  Is that the one conspiracy to obstruct

2   justice?

3           MS. HAJJAR:  I think that's what Ms. Geragos.

4           THE COURT:  That's Racketeering Act Six.

5           MS. GERAGOS:  Racketeering Act Six.

6           THE COURT:  We will change that to reflect the

7   changes in the charge.

8           MR. AGNIFILO:  One other thing, I'm not proposing a

9   change, I just want to put an issue on the Court's radar.  We

10  discussed it this morning.  Racketeering Act 5A is conspiracy

11  to commit identity theft and Racketeering Act 7 is conspiracy

12  to commit identity theft.  It seems those two racketeering

13  acts, at least the sub-predicated 5A and the 7, seem to

14  capture the same conduct.  This would only be a problem if

15  those were the only two racketeering acts that Mr. Raniere was

16  convicted of.  So, we don't have that problem yet, but it's a

17  problem that we have kind of recognized and discussed.  There

18  is nothing I am asking Your Honor to do with it at this point

19  other than to say we have discussed it and we will see what

20  happens.

21          MS. HAJJAR:  We have discussed it, Your Honor.  If

22  the defendant is convicted of subsection A and acquitted of B

23  and C and convicted of the other conspiracy to commit identity

24  theft, there may be an argument on appeal, but there is

25  nothing at this point to be done about that.

Charge Conference                    5280

1          MR. AGNIFILO:  And the issue would be whether it is

2    a pattern.

3          THE COURT:  Whether it is what?

4          MR. AGNIFILO:  A pattern, because it would

5    essentially be -- because 5-A and 7 are essentially the same

6    conduct, so it wouldn't be two acts.

7          THE COURT:  I see.

8          MR. AGNIFILO:  We don't have a verdict yet.  We are

9    just raising it as an issue.

10         THE COURT:  It is good to know.

11         MS. HAJJAR:  We're not conceding that issue, Your

12    Honor.  We just want to be clear.

13         THE COURT:  I understand that.  It is nothing for

14    the Court to do at this point about it, just to hear about it.

15    It's on the record.

16         MR. AGNIFILO:  There it is.

17         THE COURT:  That's fine.

18         Ms. Penza is not here.  I can't ask her how long her

19    closing argument is going to be.  Any change?

20         MS. HAJJAR:  I don't think so.  She is working hard

21    on it right now, Your Honor.

22         THE COURT:  Mr. Trowel, do you have anything to say

23    today?  This is an appearance, so I thought you might have

24    something to say.

25         MR. TROWEL:  Thank you, Your Honor, no.

Charge Conference                              5281

1          THE COURT:  Mr. Lesko?

2          MR. LESKO:  I'm just observing today.

3          MS. GERAGOS:  If you can give us one moment, I want

4     to talk to Mr. Agnifilo about something before we break.

5          THE COURT:  That's fine.

6          MR. AGNIFILO:  There might be a very minor -- we are

7     looking for something in regard to an instruction that Your

8     Honor gave the jury during the testimony of the expert witness

9     Hughes.  I don't know that we are going to have a request.  If

10    it is, it will be a minor thing and we will include it in the

11    letter we will give to the Court within the hour of us

12    leaving.

13         THE COURT:  Anything else from the Government?

14         MS. HAJJAR:  Not from the Government.

15         MR. AGNIFILO:  Not from us.

16         THE COURT:  Thank you very much for your

17    cooperation.  We will see you Monday morning at 9:00 a.m. for

18    closing.  Thank you.

19         And whatever you can do to carefully structure them

20    so we can get through all of this and the jury can get the

21    case by Wednesday morning, I would appreciate it.

22         MR. AGNIFILO:  Very good, Judge.

23         MR. LESKO:  Your Honor, a quick schedule question.

24    It is probably a silly question.  Are we starting summations

25    at 9:00 or should we be here at 9:00 and expect to start

Charge Conference                                        5282

1   sometime afterwards?

2          THE COURT:  I would like to start soon after 9

3   o'clock if the jury is here.  Are you planning to use the ELMO

4   or any other form of electronic equipment?

5          People should show up before 9:00 to put that

6   together and test it.  I have asked the IT department to

7   provide someone to sit here for the entire closings, the

8   period of closings just in case there is a problem and we

9   don't have to stop and start again.  I am anticipating that

10  the equipment has its eccentricities and I just want to make

11  sure that anything we can do to be prepared at the beginning

12  of the day, so we can get a smooth start, you can be ready for

13  it.

14         MS. HAJJAR:  Thank you, Your Honor.  There will be a

15  PowerPoint, so we will be here then.

16         THE COURT:  Thank you.

17         MR. AGNIFILO:  Thank you, Your Honor.

18         THE COURT:  Thank you, deputies.  Appreciate it.

19         (Matter adjourned to June 17, 2019 at 9:00 a.m.)

20

21                          ooo0ooo

22

23

24

25