UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        -against-

KEITH RANIERE,

                Defendant.

SUPPLEMENTAL SENTENCING
STATEMENT & ORDER
18-CR-204 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Today's sentencing modification hearing for defendant Keith Raniere concerns the issue of mandatory restitution to the victims of his offenses.

Approximately 100 individuals submitted claims for restitution against Mr. Raniere, seeking a total of over $33 million. The Government initially recommended that the court award over $6 million to a total of 25 victims. Today, the court is going to award just under $3.5 million to a total of 21 victims. In other words, the court has considerably narrowed the scope of these orders, even relative to the Government's initial recommendation, in order to adhere to a conservative interpretation of the relevant statutes. The court's May 21, 2021 decision provides a full explanation of why the court is not awarding restitution for approximately 90% of the claimed losses.

The court is awarding restitution under two statutes: the Trafficking Victims Protection Act of 2000 ("TVPA") and the Mandatory Victim Restitution Act of 1996 ("MVRA"). I begin with the TVPA.

### TVPA

Four of the offenses of conviction are covered offenses under the TVPA: two counts of sex trafficking, one count of sex trafficking conspiracy, and one count of forced labor conspiracy. The court finds that any lower-ranking DOS member, or "slave," whose

commitment to DOS was secured by collateral and who engaged in a sexual act at the behest of a DOS "master" is a victim of the sex trafficking conspiracy offense. The court finds that any lower-ranking DOS "slave" whose commitment to DOS was secured by collateral and who performed uncompensated labor or services at the behest of a DOS "master" is a victim of the forced labor conspiracy offense.

The court finds that 17 of the individuals who submitted claims qualify as "victims" under the TVPA. Three of these individuals – Nicole, Jay, and Sylvie – testified at Mr. Raniere's trial and were subject to cross-examination. At least four more individuals – Jane Doe 6, India, Sarah, and Amanda – clearly qualify as victims on the basis of the trial record alone.

The other ten victims have submitted sworn affidavits describing their involvement with DOS. While the content of those affidavits has not been subject to cross-examination, they describe experiences in DOS that are consistent with those that were described at trial. The trial record establishes that all or virtually all lower-ranking DOS slaves were victims of a conspiracy to obtain forced labor, and that many of them were also victims of a sex trafficking conspiracy. Accordingly, the court credits these ten individuals' unrebutted sworn testimony that they were lower-ranking members of DOS and, as such, performed unpaid work, and in some cases sexual acts, at the direction of higher-ranking members.

The court concludes that these 17 victims under the TVPA are entitled to restitution for the following types of actual losses, so long as the Government has proved them by a preponderance of the evidence and has reasonably approximated their value. *See United States v. Gushlak*, 728 F.3d 184, 195 (2d Cir. 2013):

First, the court awards restitution for **medical expenses** proximately caused by victims' membership in DOS, including up to

2

$2,500 for past or future surgery to remove the DOS brand and reimbursement for additional costs related to such surgery.

The court awards restitution for **past and future mental health care** proximately caused by victims' membership in DOS. As it explained in its May 21 decision, the court finds that the victims' membership in DOS proximately caused the full extent of their mental health care needs, even where prior psychological injuries arguably existed, because Mr. Raniere and his co-conspirators exploited, reopened, and exacerbated latent preexisting injuries. For that reason, the court finds that Mr. Raniere is responsible for causing the full extent of DOS victims' mental health care needs. Contrary to the Defendant's argument, this is consistent with the Supreme Court's decision in *Paroline v. United States*, 572 U.S. 434 (2014), which requires that restitution be ordered in "an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses." 572 U.S. at 458-59. Here, the court finds that Mr. Raniere held a principal role in the causal process, as the predominant inflicter of psychological injury.

The court awards restitution for future mental health care only where a qualified mental health professional has estimated the cost of necessary care arising from a victim's involvement with DOS. Where a qualified mental health professional has given a range for the estimated cost of future mental health care, the court uses the midpoint of the range.

The court awards restitution for **Nxivm-related expenses**, including tuition and travel costs, but only insofar as the victim's participation in the relevant Nxivm programing was proximately caused by her membership in DOS because, for example, her DOS "master" required her to attend a specific course.

The court awards restitution for **legal fees** incurred in connection with the investigation and prosecution of this case, insofar as claims for legal fees are supported by submissions from the

victims' counsel attesting to the work performed, hours billed, and relevant rates.

The court awards restitution for **uncompensated work and services** performed in connection with a victim's membership in DOS. The court finds that the Government's proposed methodology for calculating the value to the defendant of the victim's uncompensated labor, whereby the court looks to the nature of the work or service performed and then uses the mean hourly wage for the most analogous job classification from New York State's Bureau of Labor Statistics, is sound and reasonable. Unless otherwise noted, the court finds that the job classifications and corresponding wages specified in the victims' worksheets are reasonable, and it calculates the value of the victims' uncompensated work based on those wages.

This includes the using the mean hourly wage for the job classification "personal care and service worker," which is approximately $13, to calculate the value of DOS slaves' around-the-clock commitment to be responsive to the demands of their masters. The court finds that the defendant benefited from the expectation of DOS slaves' constant availability, enforced through so-called "readiness drills." It is clear from the record that the requirement that DOS slaves be perpetually available to their masters, and in some cases to Mr. Raniere, facilitated the sex trafficking and forced labor conspiracies by instilling in the victims a sense of subservience and a lack of agency that permeated every aspect and hour of their lives. It is also clear from the record that Mr. Raniere required DOS slaves to meet him for sexual encounters at all hours of the day and night – again, facilitated by the expectation of their constant availability. For these reasons, the court finds that it is appropriate to compensate DOS victims for the 24-hour nature of their obligation, and it

considers the "personal care and service worker" job classification to be a reasonable approximation of the value that the defendant derived from their service.

\*\*

Bearing all of that in mind, I order restitution under the TVPA as follows:

**Jane Doe 5/Nicole:** I find that Nicole was a victim of a covered sex trafficking offense, and that she was also a victim of covered sex trafficking conspiracy and forced labor conspiracy offenses in connection with her membership in DOS. I find that she is entitled to $2,500 for the cost of brand removal, $57,250 for past mental health care, $149,400 for future mental health care, $6,250 for Nxivm tuition expenses incurred as a result of her enslavement in DOS, and $9,697.30 for legal fees and costs. I also find that she performed uncompensated work with a total value of $187,681.88.[1]

In total, I order that the defendant pay $412,779.18 in restitution to Nicole.

**Jane Doe 8/Jay:** I find that Jay was a victim of a covered sex trafficking offense, and that she was also a victim of covered sex

---

[1] This includes 610 hours as a teacher and mentor, to be compensated at the mean hourly wage for art, drama, and music teachers ($53.27 for calendar year 2015; $56.28 for calendar year 2016; $54.67 for calendar year 2017); 160 hours of rehearsal and performance, to be compensated at the mean hourly wage for actors ($39.84 for calendar year 2016); 200 hours of editing, to be compensated at the mean hourly wage for editors ($32.80 for calendar year 2017); 17 hours of transcription, to be compensated at the mean hourly wage for word processors and typists ($19.22 for calendar year 2016; $19.74 for calendar year 2017); 16 hours of event coordination, to be compensated at the mean hourly wage for event planners ($25.30 for calendar year 2017); and 10,956 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.20 for calendar year 2016; $13.35 for calendar year 2017).

trafficking conspiracy and forced labor conspiracy offenses in connection with her membership in DOS. I find that she is entitled to $15,000 for past mental health care, $19,350 for future mental health care, and $10,380.80 for legal fees and costs. I also find that she performed uncompensated work with a total value of $71,837.20.[2]

In total, I order that the defendant pay $116,568.00 in restitution to Jay.

**Jane Doe 6:** I find that Jane Doe 6 was a victim of a covered forced labor conspiracy offense in connection with her membership in DOS. I find that she is entitled to $3,171.21 for the cost of brand removal and related expenses, $800 for past mental health care, $86,625 for future mental health care, and $14,035.30 for legal fees and costs. I also find that she performed uncompensated work with a total value of $37,386.45.[3]

In total, I order the defendant pay $142,017.96 in restitution to Jane Doe 6.

**Sylvie:** I find that Sylvie was a victim of covered sex trafficking conspiracy and forced labor conspiracy offenses in connection with her membership in DOS. I find that she is entitled to $13,404.49 for past mental health care and $12,405.29 in legal fees and costs.

---

[2] This includes 20 hours of transcription work, to be compensated at the mean hourly wage for word processors and typists ($19.22 for calendar year 2016); and 5,368 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.20 for calendar year 2016; $13.35 for calendar year 2017).

[3] This includes 25 hours of DOS assignment administration, to be compensated at the mean hourly wage for executive administrative assistants ($28.56 for calendar year 2017); and 2,747 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.35 for calendar year 2017).

In total, I order that the defendant pay $25,809.78 in restitution to Sylvie.

**Additional Jane Doe 7/India:** I find that India was a victim of covered sex trafficking conspiracy and forced labor conspiracy offenses in connection with her membership in DOS. I find that she is entitled to $123,600 for future mental health care, $2,711.21 for travel and boarding expenses for Nxivm courses incurred after being recruited into DOS, and $25,137.30 in legal fees and costs. I also find that she performed uncompensated work with a total value of $147,028.14.[4]

In total, I order that the defendant pay $298,476.65 in restitution to India.

**Additional Jane Doe 13/Sarah:** I find that Sarah was a victim of a covered forced labor conspiracy offense in connection with her membership in DOS. I find that she is entitled to $1,896.90 for past medical expenses; $1,764.12 for past mental health care; $11,609.03 for future mental health care; and $12,138.30 in legal fees and costs.

In total, I order that the defendant pay $27,408.35 in restitution to Sarah.

**Amanda:** I find that Amanda was a victim of a covered forced labor conspiracy offense in connection with her membership in DOS. I find that she is entitled to $168,437.50 for future mental health care and $4,255.80 in attorneys' fees. I also find that she

---

[4] This includes 20 hours of organizing work, to be compensated at the mean hourly wage for event planners ($25.01 for calendar year 2016); 10 hours of transcription work, to be compensated at the mean hourly wage for word processors and typists ($19.22 for calendar year 2016); and 10,934 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.20 for calendar year 2016; $13.35 for calendar year 2017; $13.59 for calendar year 2018).

performed uncompensated work with a total value of $84,924.21.[5]

In total, I order that the defendant pay $257,617.51 in restitution to Amanda.

**Additional Jane Doe 34:** I find that Additional Jane Doe 34 was a victim of covered forced labor conspiracy and sex trafficking conspiracy offenses in connection with her membership in DOS. I find that she is entitled to $17,200 for past mental health care, and $12,281.30 in legal fees and costs. I also find that she performed uncompensated work with a total value of $215,198.73.[6]

---

[5] This includes 84 hours of coaching, to be compensated at the mean hourly wage for counselors ($22.89 for calendar year 2017); 20 hours of recruiting, to be compensated at the mean hourly wage for professional recruiters ($19.32 for calendar year 2017); 30 hours of legal work, to be compensated at the mean hourly wage of lawyers ($68.22 for calendar year 2017); 60 hours creating DOS infrastructure, to be compensated at the mean hourly wage for instructional coordinators ($32.06 for calendear year 2017); and 5,891 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.35 for calendar year 2017).

[6] This includes 1,180 hours of committee work and media management, to be compensated at the mean hourly wage for media and communication workers ($24.45 for calendar year 2016; $25.56 for calendar year 2017); 390 hours of writing and editing, to be compensated at the mean hourly wage for writers and authors ($34.58 for calendar year 2016); 340 hours of event planning, to be compensated at the mean hourly wage for event planners ($25.01 for calendar year 2016; $25.30 for calendar year 2017); 60 hours of mobile app development, to be compensated at the mean hourly wage for software developers ($51.30 for calendar year 2017); 370 hours of graphic design, to be compensated at mean hourly wage for graphic designers ($25.14 for calendar year 2016; $25.62 for calendar year 2017); 660 hours in enrollment work, to be compensated at the mean hourly wage for sales workers ($20.83 for calendar year 2016; $19.23 for calendar year 2017); 258 hours of video and documentary production, to be compensated per the retention agreement with The Source ($75.00 for calendar year 2016; $75 for calendar year 2017; $29.58 for intro video

8

In total, I order the defendant pay $244,680.03 in restitution to Additional Jane Doe 34.

**Additional Jane Doe 36:** I find that Additional Jane Doe 36 was a victim of a covered forced labor conspiracy offense in connection with her membership in DOS. I find that she is entitled to $3,350 for past mental health care, $168,437.50 for future mental health care, $776 for Nxivm course tuition and travel related costs related to DOS, and $11,150.30 in legal fees and costs. I also find that she performed uncompensated work with a total value of $57,533.70.[7]

In total, I order the defendant pay $241,247.50 in restitution to Additional Jane Doe 36.

---

production for calendar year 2017); 220 hours of photography and editing, to be compensated at the mean hourly wage for photographers ($20.50 for calendar year 2016; $20.17 for calendar year 2017); 20 hours of blog development, to be compensated at the mean hourly wage for web development ($35.63 for calendar year 2017); 58 hours of business administration, to be compensated at the mean hourly wage for office clerks ($15.87 for calendar year 2016; $16.30 for calendar year 2017); 118 hours of asset management, to be compensated at the mean hourly wage for public relations specialists ($31.99 for calendar year 2016. $32.69 for calendar year 2017); 448 hours of intensive coaching, to be compensated at the mean hourly wage for self-enrichment education teachers ($20.75 for calendar year 2016); 132 hours of coaching, to be compensated at the mean hourly wage for counselors ($22.90 for calendar year 2016. $22.89 for calendar year 2017); 30 hours of video production, to be compensated per an agreement with Clare Bronfman ($2,380.00 for video); 60 hours of performing, to be compensated at the mean hourly wage for actors ($39.84 for calendar year 2016); $700 for work-related travel; and 6,798 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.20 for calendar year 2016. $13.35 for calendar year 2017).

[7] This includes 4,318 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.20 for calendar year 2016. $13.35 for calendar year 2017).

**Additional Jane Doe 8:** I find that Additional Jane Doe 8 was a victim of a covered forced labor conspiracy offense in connection with her membership in DOS. I find that she is entitled to $1,325.64 for past medical services, $255.89 for past mental health care, $19,260.30 for future mental health care, and $21,248.30 in attorneys' fees. I also find that she performed uncompensated work with a total value of $130,264.05.[8]

In total, I order that the defendant pay $172,354.18 in restitution to Additional Jane Doe 8.

**Additional Jane Doe 14:** I find that Additional Jane Doe 14 was a victim of a covered forced labor conspiracy offense. I find that she is entitled to $3,747.49 for past medical services, $11,100 for past mental health care, and $26,700 for future mental health care. I also find that she performed uncompensated work with a total value of $11,739.20.[9]

In total, I order that the defendant pay $53,286.69 in restitution to Additional Jane Doe 14.

**Additional Jane Doe 15:** I find that Additional Jane Doe 15 was a victim of a covered forced labor conspiracy offense. I find that she is entitled to $3,442.05 for past mental health care and $11,235.30 for attorneys' fees. I also find she performed uncompensated work with a total value of $45,042.90.[10]

---

[8] This includes 9,805 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.20 for calendar year 2016; $13.35 for calendar year 2017).

[9] This includes 948 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers. ($11.99 for calendar year 2015; $13.20 for calendar year 2016).

[10] This includes 3,374 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.35 for calendar year 2017).

In total, I order that the defendant pay $59,720.25 in restitution to Additional Jane Doe 15.

**Additional Jane Doe 25:** I find that Additional Jane Doe 25 was a victim of a covered forced labor conspiracy offense. I find that she is entitled to $8,543.80 in attorneys' fees. I also find that she performed uncompensated work with a total value of $44,215.20.[11]

In total, I order the defendant pay $52,759 in restitution to Additional Jane Doe 25.

**Additional Jane Doe 30:** I find that Additional Jane Doe 30 was a victim of a covered forced labor conspiracy offense. I find that she is entitled to $6,719.80 for attorneys' fees. I also find that she performed uncompensated work with a total value of $64,600.65.[12]

In total, I order the defendant pay $71,320.45 in restitution to Additional Jane Doe 30.

**Additional Jane Doe 35:** I find that Additional Jane Doe 35 was a victim of a covered forced labor conspiracy offense. I find that she is entitled to $45,000 for future mental health care and $15,252.30 for attorneys' fees. I also find that she performed uncompensated work with a total value of $67,252.68.[13]

---

[11] This includes 3,312 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.35 for calendar year 2017).

[12] This includes 4,839 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.35 for calendar year 2017).

[13] . This includes 5,051.4 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.35 for calendar year 2017).

In total, I order the defendant pay $127,504.98 in restitution to Additional Jane Doe 35.

**Kristin:** I find that Kristin was a victim of a covered forced labor conspiracy offense. I find that she is entitled to $1,020 for past mental health care, $54,375 for future mental health care, and $12,226.80 for attorneys' fees. I also find that she performed uncompensated work with a total value of $26,593.20.[14]

In total, I order the defendant pay $94,215 in restitution to Kristin.

**Rachel:** I find that Rachel was a victim of a covered forced labor conspiracy offense. I find that she is entitled to $12,261.30 for attorneys' fees. I also find that she performed uncompensated work with a total value of $37,486.80.[15]

In total, I order the defendant pay $49,748.10 in restitution to Rachel.

### MVRA

I turn now to restitution pursuant to the Mandatory Victims Restitution Act, or MVRA. Mr. Raniere's convictions for racketeering, racketeering conspiracy, and wire fraud conspiracy are qualifying offenses under the MVRA.

**DOS Victims:** The court finds that all lower-ranking members of DOS are victims of the wire fraud conspiracy in which the Defendant participated. Based on the evidence and testimony presented at trial, victim impact statements, and victims' sworn affidavits, the court finds by a preponderance of the evidence

---

[14] This includes 1,992 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.35 for calendar year 2017).

[15] This includes 2,808 hours of time dedicated to her servitude in DOS, to be compensated at the mean hourly wage for personal care and service workers ($13.35 for calendar year 2017).

that, as a rule, lower-ranking DOS members were fraudulently induced to furnish property as "collateral," including but not limited to sexually explicit photographs or videos, as a condition of their membership in DOS.

Under the MVRA, victims of offenses that "result[] in damage to or loss or destruction of property" are entitled to receive the return of the property. 18 U.S.C. § 3663A(b)(1). Accordingly, the court finds that all lower-ranking DOS members are statutorily entitled to the return of their collateral, and it orders Mr. Raniere to effectuate that return to the fullest extent practicable.

Mr. Raniere's counsel raises the concern that requiring Mr. Raniere to locate and disgorge the victims' collateral may violate his Fifth Amendment right against self-incrimination in the event that he prevails in his appeal and gains a retrial. The Second Circuit has previously rejected the argument that an order directing a defendant to return ill-gotten property to victims, as required under the MVRA, violates the defendant's Fifth Amendment rights. *See United States v. Bryser*, 954 F.2d 79, 89 (2d Cir. 1992). Even so, in abundance of caution, the court stays Mr. Raniere's obligation to effectuate the return of the victims' collateral until the exhaustion of his appellate rights on direct appeal. Within sixty days of the exhaustion of such rights, he must effectuate the return of all original and duplicate copies of DOS victims' collateral or, to whatever extent such collateral has not yet been returned, file a letter with this court establishing that he has made all reasonable efforts to effectuate the return of the collateral and setting forth a detailed plan and timeline for returning all outstanding collateral to the fullest extent practicable.

**Jane Doe 2/Camila:** The court finds that Camila is a victim, within the meaning of the MVRA, of Mr. Raniere's racketeering and racketeering conspiracy offenses, because she is the victim of the predicate racketeering acts relating to child pornography.

Camila's sworn affidavit describes how, when she was an underage girl, the Defendant induced her to submit to pornographic photography sessions by initiating and maintaining an extended sexual relationship with her. Her account corroborates evidence that was presented at trial, which made clear that Mr. Raniere's commission of child pornography offenses occurred in the context of a sexual relationship that began when Camila was 15 years old. Her affidavit describes the physical pain, and subsequent bleeding, that she experienced during one of their initial sexual encounters. In light of the fact that she was a minor, the court finds that her experience of physical pain occasioned by unlawful sexual intercourse constitutes a "bodily injury" within the meaning of the MVRA. Accordingly, Camila is statutorily entitled to recover the cost of past and future mental health care proximately caused by the Defendant's conduct.

Camila also seeks nearly $100,000 in restitution for uncompensated work that she performed for organizations and events related to Nxivm, over a period spanning 2011 to 2017. In its May 21 decision, the court found as a general matter that uncompensated labor that was not directly related to a victim's membership in DOS was beyond the scope of compensable losses under the MVRA. However, the court finds that in the case of Camila, there is a clear causal link between the offense of conviction and the victim's performance of unpaid work. Camila's sworn affidavit powerfully describes how Mr. Raniere's sexual exploitation of her, from the time she was 15 years old, made her completely dependent on him, submissive to his whims and directions, and unable to form the independent judgment necessary to take ownership over her choices and time. The court therefore finds by a preponderance of the evidence that the offense of conviction was a proximate cause of Camila's performance of unpaid work as a young adult in a continuing relationship with the predator who had abused her since her childhood.

Accordingly, I find that Camila is entitled to $405,000 for future mental health care, $2,500 for removal of the DOS brand, $98,777.90 in compensation for unpaid work,[16] and $1,719.55 in expenses incurred in connection with her participation in the proceedings in this case. In total, I order that the Defendant pay $507,997.45 in restitution to Camila.

**Jane Doe 4/Daniela:** The court finds that Daniela is a victim, within the meaning of the MVRA, of Mr. Raniere's racketeering and racketeering conspiracy offenses, because she is the victim of the predicate racketeering act relating to document servitude and trafficking for labor and services.

While the Defendant kept Daniela confined to a room for almost two years, she repeatedly requested medical care for a toothache.

---

[16] This includes 5,380 hours as a childcare worker, to be compensated at the mean hourly wage for childcare workers ($11.70 for calendar year 2011; $11.91 for calendar year 2012; $11.94 for calendar year 2013; $12.37 for calendar year 2014; $12.64 for calendar year 2015; $13.26 for calendar year 2016; $13.15 for calendar year 2017); 400 hours as a recreation worker, to be compensated at the mean hourly wage for recreation workers ($13.73 for calendar year 2011; $13.73 for calendar year 2012; $13.88 for calendar year 2013; $13.49 for calendar year 2014); 495 hours as a personal service work supervisor, to be compensated at the mean hourly wage for first-line supervisors $19.99 for calendar year 2015; $20.33 for calendar year 2016; $21.26 for calendar year 2017); and 1,200 hours as a personal care and service worker, to be compensated at the mean hourly wage for personal care and service workers ($12.46 for calendar year 2013; $13.68 for calendar year 2014; $14.55 for calendar year 2015; $15.44 for calendar year 2016; $15.23 for calendar year 2017).

The Defendant denied her requests for six weeks, and relented only after part of her tooth eventually broke off. (Trial Tr. at 1958-59; 2939-42; 2955.) On that basis, court finds that Mr. Raniere's neglect and deprivation of medical care, which was one component of his document servitude of Daniela, caused her bodily injury within the meaning of the MVRA. Accordingly, Daniela is statutorily entitled to recover the cost of past and future mental health care proximately caused by the Defendant's conduct.

Daniela is also entitled to recover for unpaid work that she performed in connection with the defendant's trafficking of her for labor and services. Like lower-ranking members of DOS, she was expected to be "on call" around the clock and to immediately perform any work assignments that were given to her. Accordingly, the Government reasonably approximates the value of her labor at $26.51 per hour, the mean hourly wage of an executive administrative assistant. The prosecution estimates that she performed 80 weekly hours of unpaid labor during the period of her confinement. On that basis, they estimate the value of her labor at $121,650. The court finds this figure to be a reasonable approximation of the Daniela's losses for uncompensated labor.

Accordingly, I find that Daniela is entitled to $121,650 for uncompensated labor and services. I also find that she is entitled to $127,600 for future mental health care. In total, I order that the Defendant pay $249,200.00 in restitution to Daniela.

**James Loperfido:** The court finds that James Loperfido is a victim, within the meaning of the MVRA, of Mr. Raniere's racketeering and racketeering conspiracy offenses, because he is the victim of a predicate racketeering act relating to identity theft. Accordingly, I find that Mr. Loperfido is entitled to $5,625, to compensate him for the costs associated with his participation with the Government's investigation and as a trial witness. I order that the Defendant pay $5,625 in restitution to Mr. Loperfido.

**Sutton Family:** The court finds that Stephanie Franco and the estates of Morris and Rochelle Sutton, referred to here as the Sutton Family, are victims, within the meaning of the MVRA, of Mr. Raniere's racketeering and racketeering conspiracy offenses, because they are victims of the predicate racketeering act relating to a conspiracy to alter records for use in an official proceeding.

The Sutton Family seeks over $2.8 million in restitution for the legal expenses they incurred fighting litigation brought by Mr. Raniere over the course of fifteen years: litigation in which Nxivm, at Mr. Raniere's direction, fraudulently altered evidence. The Government recommends that the court award them $250,000 for losses directly attributable to the unlawful alteration of evidence. This encompasses legal fees that the Sutton Family paid for their lawyers to review the altered videotapes, as well as legal fees for their lawyers' preparation and filing of three summary judgment motions that concerned factual disputes that the unaltered videotapes would have resolved, according to the Sutton Family's counsel.

The court finds this to be a reasonable approximation of the losses caused to the Sutton Family by Raniere's alteration of evidence. Accordingly, I order that the Defendant pay $250,000 in restitution to the Sutton Family.

### Conclusion

In total, I direct Mr. Raniere to pay restitution under the TVPA in the amount of $2,447,513.61, and to pay restitution under the MVRA in the amount of $1,012,822.45. In addition to this monetary restitution of approximately $3.46 million, I order Mr. Raniere under the MVRA to return to former DOS members all original and duplicate copies of their collateral – and, while such obligation is stayed, to preserve any original or duplicate copies of collateral that are within his dominion or control. I find that this is the mandatory restitution that Mr. Raniere owes under the relevant statutes.

The only remaining issue is to determine the schedule of payments. This is the sole matter relating to restitution over which the court has discretion. *See United States v. Nucci*, 364 F.3d 419, 422 (2d Cir. 2004). I direct that Mr. Raniere pay immediately the full amount of restitution owed to the 17 victims under the TVPA, as well as the restitution owed under the MVRA to Camila and Daniela.

Mr. Raniere's restitution obligations to Mr. Loperfido and the Sutton Family must be fulfilled subsequently, but within no less than twelve months from the date of this order. As noted previously, Mr. Raniere's obligation to return collateral to DOS victims is stayed until the exhaustion of his appellate rights on direct appeal.

Finally, I direct the Government to provide to the court within 30 days a proposed order of restitution that is consistent with the decisions set forth at the proceeding. The judgment of conviction will be amended to include this order of restitution. The Defendant has a right to appeal this modification of his sentence.

SO ORDERED.

Dated:   Brooklyn, New York
         July 20, 2021

                                          /s/ Nicholas G. Garaufis
                                          NICHOLAS G. GARAUFIS
                                          United States District Judge