UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 1:18-cr-00204-NGG-VMS |
| - v. – | **ORAL ARGUMENT REQUESTED** |
| KEITH RANIERE, | Submitted on May 5, 2022 |
| Defendant. | |

# MEMORANDUM OF LAW IN SUPPORT OF
# KEITH RANIERE'S MOTION FOR JUDGE NICHOLAS G. GARAUFIS
# TO DISQUALIFY HIMSELF PURSUANT TO 28 U.S.C. § 445

Dated:      May 5, 2022

Joseph M. Tully, Esq.
CA SBN 201187
Tully & Weiss Attorneys at Law
713 Main Street
Martinez, CA  94553
Phone: (925) 229-9700
Fax: (925) 231-7754

*Attorneys for Defendant Keith Raniere*

i

TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. ii

TABLE OF AUTHORITIES ..................................................................................................... iii

PRELIMINARY STATEMENT ................................................................................................. 1

FACTUAL BASIS FOR THE MOTION .................................................................................... 2

    A.    THE JURY TRIAL ........................................................................................... 2

    B.    THE RESTITUTION HEARING ................................................................... 7

    C.    THE SENTENCING HEARING ................................................................. 17

LEGAL AUTHORITY FOR THE MOTION .......................................................................... 18

ARGUMENT ............................................................................................................................ 21

I.    THE JUDICIAL DISQUALIFICATION OF JUDGE GARAUFIS IS MANDATED
BEFORE THE HEARING OF MR. RANIERE'S MOTION TO VACATE JUDGMENT AND
GRANT A NEW TRIAL PURSUANT TO RULE 33 IN ORDER TO ENSURE THE
ADHERENCE TO MR. RANIERE'S CONSTITUTIONAL RIGHT TO A TRIAL BEFORE AN
UNBIASED JUDGE AS GUARANTEED BY THE FIFTH AND FOURTEENTH
AMENDMENTS OF THE UNITED STATES CONSTITUTION ............................................ 21

    A.    THE JURY TRIAL ......................................................................................... 22

    B.    THE RESTITUTION HEARING ................................................................. 24

    C.    SENTENCING HEARING ............................................................................ 26

II.    MR. RANIERE HAS NOT WAIVED HIS CLAIM FOR DISQUALIFICATION OF
JUDGE GARAUFIS AS SUCH A WAIVER IS IMPERMISSIBLE UNDER THE
CIRCUMSTANCES, AND MR. RANIERE'S CLAIM IS TIMELY ......................................... 26

CONCLUSION ........................................................................................................................ 28

# TABLE OF AUTHORITIES

## CASES

*Berger v. United States*, 255 U.S. 22, 41 S. Ct. 230, 65 L. Ed. 481 (1921)............................ 22, 23

*Bracy v. Gramley*, 520 U.S. 899 (1997) ................................................................ 19

*Caperton v. A.T. Massey Coal Co., Inc.*, 556 U. S. 868 (2009)........................................... 29

*Daye v. Attorney General of New York* 696 F.2d 186 (2d Cir. 1982)..................................... 1, 18

*Gayle v. Scully*, 779 F.2d 802 (2d Cir. 1985). ......................................................... 1, 18

*In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307 (2d Cir. 1988). ...................................... 21, 26

*In re International Business Machines Corp.*, 618 F.2d 923 (2d Cir. 1980). ............................. 27

*In re Murchison*, 349 U.S. 133 (1955). ................................................................ 1, 19

*Ligon v. City of N.Y.*, 736 F.3d 118 (2d Cir. 2013). ................................................... 20, 21

*Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988)................................... 19, 20

*Mayberry v. Pennsylvania*, 400 U.S. 455 (1971). ....................................................... 1, 18

*Microsoft Corp. v. United States*, 530 U.S. 1301 (2000)................................................ 21, 26

*Mitchell v. Maynard*, 80 F.3d 1433 (10th Cir. 1996). .................................................. 25

*Polizzi v. U.S.*, 926 F.2d 1311 (2d Cir. 1991). ....................................................... 27

*Proctor v. Warden*, 435 U.S. 559 (1978). ............................................................. 19

*Rochin v. California*, 342 U.S. 165 (1952). ........................................................... 1, 18

*Sentis Group v. Shell Oil* 559 F.3d 888 (8th Cir. 2009)................................................ 25

*Taylor v. Hayes*, 418 U.S. 488 (1974). ............................................................... 1, 18

*Taylor v. United States*, 179 F.2d 640 (9th Cir. 1950)................................................. 27

*Tumey v. Ohio*, 273 U.S. 510 (1927). ................................................................. 1, 18

*United States v. Amico*, 486 F.3d 764 (2d Cir. 2007). ................................................. 19, 20

*United States v. Edwardo-Franco*, 885 F.2d 1002 (2d Cir. 1989)........................................ 19

*United States v. Grinnell Corp.* 384 U.S. 563. ....................................................... 20

*United States v. Holland*, 519 F.3d 909 (9th Cir. 2008). .............................................. 21

*United States v. Sciarra*, 851 F.2d 621 (3d Cir. 1988). ............................................... 27

*United States v. Sypolt*, 346 F.3d 838 (8th Cir. 2003) ............................................... 19

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003). ................................................. 1

*Ward v. Village of Monroeville*, 409 U.S. 57 (1972). .................................................. 1, 18

*Williams v Pennsylvania*, 579 US 1 (2016). ........................................................... 28

## STATUTES

28 U.S.C. § 455(a). .................................................................................... 19

28 U.S.C. § 455........................................................................................ 27

## OTHER AUTHORITIES

Bassett, Judicial Disqualification in the Federal Appellate Courts, 87 Iowa L. Rev. 1213 (May
  2002). ............................................................................................... 21

Guide to Judiciary Policy, Vol. 2A, Ch. 2 (March 12, 2019). ...................................... 11, 16, 23, 24

## TRANSCRIPTS

Restitution Hearing Transcript.................................................................... passim

Trial Transcript ................................................................................. 2, 4, 7, 16

iii

## PRELIMINARY STATEMENT

"[T]o perform its high function in the best way 'justice must satisfy the appearance of justice.'" *In re Murchison*, 349 U.S. 133, 136 (1955). Mr. Keith Raniere moves this Court to disqualify itself from all further proceedings in Case Number 1:18-cr-00204-NGG-VMS because the Court's statements, rulings, and conduct during past proceedings from the outset of the case, through trial and sentencing, did not meet the Supreme Court's standard of impartiality and deprived Mr. Raniere of the fair trial by an impartial tribunal to which he was entitled as a matter of Due Process. *See id* at 135.

"Pursuant to the Fifth and Fourteenth Amendments, it is axiomatic that all criminal trials must be conducted within the bounds of fundamental fairness. *Gayle v. Scully*, 779 F.2d 802, 805 (2d Cir. 1985) (Citing *Taylor v. Hayes*, 418 U.S. 488, 501-02 (1974); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971); *Rochin v. California*, 342 U.S. 165, 173 (1952); *Tumey v. Ohio*, 273 U.S. 510 (1927).) Under the Due Process Clause, there is a well-developed right, established in a long line of cases, to a trial before an unbiased judge." *Daye v. Attorney General of New York* 696 F.2d 186, 196 (2d Cir. 1982). The Court's disqualification is particularly important now because newly discovered evidence —the details of which are outlined in a motion filed contemporaneously herewith pursuant to Rule 33 of the Federal Rule of Criminal Procedure — challenges the validity of Mr. Raniere's conviction and necessitates a new trial as a result of newly discovered evidence of governmental malfeasance in the form of criminal acts, including tampering with evidence and committing perjury. *See* Dkt. 1168 and 1169. Given this Court's conduct in past proceedings, a "reasonable person, knowing all the facts contained within the record of Case Number 1:18-cr-00204-NGG-VMS, would question Judge Garaufis' impartiality" *United States v. Yousef*, 327

F.3d 56, 169 (2d Cir. 2003), and his ability to fairly and accurately evaluate the import of the newly discovered evidence on the validity of Mr. Raniere's conviction.

Disqualification is required because only disqualification of Judge Garaufis and evaluation of Mr. Raniere's Rule 33 motion by a truly unbiased judge, both in fact and in appearance, can ensure that Mr. Raniere's guarantees under the Fifth and Fourteenth Amendments, to a trial before an impartial judge, are upheld in this case.

## FACTUAL BASIS FOR THE MOTION

This Court presided over Mr. Raniere's trial and sentencing and is aware of the facts underlying the case. This Motion does not seek to re-litigate the facts of Mr. Raniere's conduct or the validity of his conviction. Instead, in highlighting portions of the proceedings before the Court during the trial, at a post-trial hearing, and at sentencing, Mr. Raniere demonstrates that the Court displayed, to an ordinary observer, a lack of judicial temperament and expressed its personal distaste for Mr. Raniere and his counsel such that the Court's conduct neither satisfies justice nor any appearance of justice.

### A.  THE JURY TRIAL

During the cross-examination of the government's main cooperating witness, Lauren Salzman, by Mr. Raniere's trial counsel, Marc Agnifilo, Judge Garaufis cut off Ms. Salzman's answer, stopped any further cross-examination by Defense counsel, and then solicited further direct from the government. Trial Tr. at 2265: 16. This action by Judge Garaufis was critical as Ms. Salzman was a material witness to both sides. While she testified on behalf of the government, she also could have provided favorable testimony for the Defense, specifically exculpatory information, including her insight and personal experience around the intentions of

DOS and Mr. Raniere at the relevant times. The following exchange indicates that her testimony would have provided such evidence:

| | |
|---|---|
| Mr. Agnifilo: | What was your intention when you were in DOS? |
| The Court: | You may answer. |
| Ms. Salzman): | My intention was to prove to Keith that I was not so far below the ethical standard that he holds that I was -- I don't even know how far below I am. I was trying to prove my self-worth, and salvage this string of a hope of what I thought my relationship might someday be, and I put it above everything else; I put it above my friends, and I put it above other people, helping them in their best interest. That's what I did when I was in DOS. |
| The Court: | Okay, that's it. We are done. |
| Mr. Agnifilo: | Okay, Judge. Thank you. |
| The Court: | You are done. |
| Mr. Agnifilo: | I know. I am done. |
| The Court: | No, I said you're done. |
| Mr. Agnifilo: | I know. I am. |
| The Court: | So you can sit down. Redirect? |
| Ms. Hajjar: | No, Your Honor. |
| The Court: | Nothing? |
| Ms. Hajjar: | No. |
| The Court: | All right, the witness is excused. You may stand down. |
| | (Witness steps down.) |

3

The Court:          All right, we are close to five o'clock, members of the jury. We are

going to recess for tonight. …

Trial Tr. at 2265:7-2266:8.

Here, Mr. Agnifilo was seeking to introduce exculpatory evidence regarding a lack of the

required intent on the part of Mr. Raniere through Ms. Salzman. However, as Ms. Salzman was

describing her intentions within DOS, which would refute the government's theory of the alleged

racketeering elements of the case as well as the government's contentions about Mr. Raniere's

nefarious mens rea, Judge Garaufis abruptly ended not just Mr. Agnifilo's line of questioning,

but the rest of his cross-examination entirely. When Mr. Agnifilo replied by thanking him,

respectfully acknowledging that the Court was calling a break in testimony, apparently to let the

witness collect herself emotionally, Judge Garaufis continued to chastise him in front of the jury

with, "You are done." Trial Tr. at 2265:9-19.

Further, when Mr. Agnifilo acquiesced by stating, "I know. I am done," Judge Garaufis

continued to bully, "No. I said you're done," and then ordered Mr. Agnifilo to sit down. All of

this was done in full view of the jury. Shockingly, the Court then invited the prosecution to

attempt to rehabilitate their witness before she was dismissed. Thus, there can be no excuse that

Judge Garaufis, by cutting off Mr. Agnifilo, was merely trying to spare the witness or have her

collect herself emotionally. Instead, Judge Garaufis immediately solicited further questioning by

the government, asking not once but twice if the government wanted to question Ms. Salzman on

redirect. *Id*. at 2265:7-2266:8. The contrast in treatment by the Court that the jury observed

towards Mr. Agnifilo, clearly demeaning him versus respectfully assisting the prosecution,

shows impermissible favoritism and would prompt any reasonable person to question the Court's

bias or prejudice towards the Defense.

4

Moreover, after the jury recessed for the evening, Mr. Agnifilo inquired why Judge Garaufis had cut off his cross-examination.

| | |
|---|---|
| The Court: | Anything else from the Defense? |
| Mr. Agnifilo: | Yes, Your Honor. |
| The Court: | Go ahead. |
| Mr. Agnifilo: | I don't know why Your Honor cut off my cross-examination. |
| The Court: | If you want to know, you went way over the line as far as I'm concerned with regard to this witness. You could have asked your questions and moved on to the next question, but you kept coming back, and I am not going to have someone have a nervous breakdown on the witness stand in front of -- excuse me, this is not DOS. This is not the allegations. This is a broken person, as far as I can tell. And whether she's telling the truth, whether the jury believes her, I think it's absolutely necessary that there be a certain level of consideration for someone's condition. And that's really what this was. You had plenty of -- if you had other things to say, you could have gone on and said them. But what I had here was, I had a crisis here. And not in my courtroom. So, you have your record, and if there is a conviction, you can appeal my decision to the Second Circuit, okay? |
| Mr. Agnifilo: | Your Honor, most respectfully – and I am not going to belabor the point -- I think it is an important -- she talked about the change in perspective, she did, and I'm trying to explore that change. I -- |

5

The Court:     You did, in many different ways. Sir, I have a right and an obligation to control the extent to which something like this is put to a witness, and you had that opportunity. You made your points. It's all there; it's on the record. And if I made a mistake, then you will have your opportunity if you should not be successful in gaining your client's acquittal, and I'm just going to leave it at that. But I'm telling you, I was watching this witness.

Mr. Agnifilo:  I'm more concerned, quite frankly, about, I thought I took great pains to be appropriate and even-keeled.

The Court:     Well

Mr. Agnifilo:  I never raised my voice.

The Court:     Look, I am not saying you are not a man you are not a lawyer who maintains his composure. I am not talking about that. I am worried about her composure in this case. I have to sentence this defendant and what you did was, basically, ask her to make legal judgments about whether what she did in pleading guilty was farcical that she took somebody else's advice, some lawyer, so she could get out from under a trial. I thought that really went pretty far beyond the pale, frankly.

Mr. Agnifilo:  Your Honor, I --

The Court:     I took her guilty plea, sir. All right?

Mr. Agnifilo:  I am not trying to argue with you. I am not trying to argue with you.

6

| The Court: | Then don't argue with me. |
|---|---|
| Mr. Agnifilo: | No -- |
| The Court: | You can take your appeal if you should not be successful. I don't want to talk about it anymore. I thought it was extremely excruciating. When I tried to cut off the line of questioning, you just went right back to the line of questioning. You could have gone on to something else. You could have. ***I may not get everything right up here, but I will tell you, as a human being, it was the right decision. Alright? And before I'm a judge, I'm a human being.*** And that goes for everybody in this room, and it includes you and the government. And I am not going to allow someone to be placed in this circumstance and then let it continue. I am the one who is disappointed. I'm done. 9:30. |
| | Trial Tr. 2267:16 - 2270:11 (emphasis added). |

(Judge NICHOLAS G. GARAUFIS exited The Courtroom.)

## B. THE RESTITUTION HEARING

On July 20, 2021, a restitution hearing was held in this case. It was the first appearance for counsel Jeffrey Lichtman and Mark Fernich, appearing on behalf of Mr. Raniere. At the restitution hearing, it was established that co-defendant Clare Bronfman was paying for Mr. Raniere's attorney's fees, that Mr. Lichtman and Mr. Fernich were new to the case, and that they had spoken to Mr. Raniere on the phone once, for about one hour to briefly summarize the government's stance on restitution but had been unable to see him before the hearing or go over

the government's submissions. Judge Garaufis afforded Mr. Lichtman and Mr. Fernich a brief recess of five to ten minutes to speak with Mr. Raniere, who appeared via video conference.

After that recess, Attorney Fernich indicated the possibility that, after the hearing, he may want to reconvene with Mr. Raniere, perhaps in person, "[M]aybe we better get out there if it depends on factual things that are beyond my grasp that maybe Mr. Raniere can elucidate." Restitution Hearing Tr. 18: 21-24.

This statement resulted in the below exchange.

| | |
|---|---|
| The Court: | Mr. Fernich, I'm not conducting a maybe possibly it's okay, but maybe it's not okay for the judge to issue a decision. That's not how judges work, sir. And this judge certainly doesn't work that way. |
| | You took this on. You're being paid by Ms. Bronfman. |
| Mr. Fernich: | Unfortunately, Judge -- |
| The Court: | Let me finish. And I don't want to be interrupted by any lawyer in this courtroom. When you took on this retainer, you knew what your job was, and you could have gone and seen the client and talked to the client, and reviewed the submission of the government's with the client. And I'm not going to waste my time waiting for you to decide whether what I'm doing is adequate to meet your obligations. It ain't gonna happen. |
| Mr. Fernich: | May I respond? |
| The Court: | No. I'm not finished. |
| Mr. Fernich: | Okay. |

| The Court: | No one has ever asked me to issue – to say, "If you issue a decision, I'm going to stop you and tell you I want something else. I want to go see my client." That's not how it works. You know it's not how it works. What is your answer to that? |
|---|---|
| Mr. Fernich: | Well, my answer, your Honor, is twofold: It's not like going to the MDC or the MCC. We did, of course, attempt to get cleared for visiting in the designation facility, and we were not able to accomplish that with the facility within a week's time. |

Restitution Hearing Tr. 19:21 - 20:25.

Then Judge Garaufis asked Mr. Fernich where on the docket was a request for an adjournment to visit Raniere. Mr. Fernich did not have the docket but stated he wrote a letter requesting a week's adjournment because the Defense could not be "reasonably prepared." The Court granted two days and quibbled that the Defense did not specifically ask for time to visit Raniere, leading to the below exchange.

| The Court: | It's cute by half. |
|---|---|
| Mr. Fernich: | No, sir. |
| The Court: | I have nothing more to say to you on the subject. We're done. |
| Mr. Fernich: | That's fine, your Honor. |

Restitution Hearing Tr. 22:3 - 13.

Here, the matter should have been concluded. Judge Garaufis ended further discussion, and Mr. Fernich acquiesced. However, Judge Garaufis' animus and antagonism could not be contained, and he immediately goaded Mr. Fernich into further conflict:

| The Court: | Is there anything else you want to answer me back about -- |
|---|---|

| | |
|---|---|
| Mr. Fernich: | Excuse me? |
| The Court: | Every time I say something, you've got something else to say on that subject. |
| Mr. Fernich: | I'm sorry, I'm not following The Court. |
| The Court: | The request was for extra time to make the submission, not to adjourn the proceeding. And you didn't request for time to go see your client in Arizona. That's not what you requested. |
| Mr. Fernich: | Not specifically, sir. |
| The Court: | You're misleading, trying to mislead. |
| Mr. Fernich: | Sir - -. |

Restitution Hearing Tr. 22:9 - 23:2.

At this point, Judge Garaufis had brought up multiple times that Mr. Fernich had not requested more time for the hearing even though neither Mr. Fernich, Mr. Lichtman, nor Mr. Raniere were objecting to the court moving forward with the restitution hearing. Judge Garaufis then continued.

| | |
|---|---|
| The Court: | There's nothing else we're going to say about that. You're the same individual who told me you had to go to a funeral today for someone who was not a member of your family, when the funeral was at 11:45 and you could have been here at 2 o'clock, which you were. I'm tired of this. We're not getting off to a good start, Mr. Fernich. |
| Mr. Fernich: | Your Honor -- |
| The Court: | Are you going to sit here, counsel, while he does this? |

| Mr. Lichtman: | Judge, I think that we can move past this. You've made the decision, we respect it, and we're ready to hear the decision. |
| The Court: | Does your client have anything else he wants to say before I sentence him with regard to restitution? |
| Mr. Lichtman: | No, your Honor. |
| The Court: | Thank you. |

Restitution Hearing Tr. 23:3 - 19.

This exchange demonstrates that Judge Garaufis entered the proceedings only concerned with completing the hearing, a disdain for Ms. Bronfman paying for Mr. Raniere's legal fees, pettily creating conflict with Mr. Raniere's new counsel where none existed, and was personally attacking Mr. Fernich. This is impermissible antagonism that shows personal bias and prejudice.[1, 2]

Judge Garaufis did move on to issuing decisions on restitution. However, after issuing orders regarding restitution amounts, Judge Garaufis again sought conflict and resorted to personal attacks and low blows against Mr. Raniere's Defense team.

| The Court: | Is there anything else from the government for today? |
| Ms. Hajjar: | Not from the Government. Thank you, your Honor. |
| The Court: | Anything else from the Defense for today? |
| Mr. Fernich: | No, sir. |

---

[1] "A judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff." Guide to Judiciary Policy, Vol. 2A, Ch. 2, Judicial Canon 3(B)(4) (March 12, 2019).

[2] The duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias. *Id*. at Commentary for Canon 3A(3).

11

|  | Just so the record is clear, nothing that the Court has said undermines my advice to Mr. Raniere – |
|---|---|
| The Court: | Excuse me, excuse me. |
| Mr. Fernich: | Yeah. |
| The Court: | No speeches. Not in my courtroom. |
|  | If there's nothing else - - |

Restitution Hearing Tr. 43:8 - 20.

Here, neither Mr. Fernich nor Mr. Lichtman had objected to moving forward with the restitution hearing. However, Mr. Fernich had also made a record that 1.) he had only spoken with his client, Mr. Raniere, in a privileged capacity once, for one hour, 2.) his client had not seen "any of the submissions" or exhibits that the government had filed," 3.) he had only been able to tell Mr. Raniere "the gist of what's in the government's latest submission," though not any previous submissions, 4.) he had only related "a very cursory overview or summary" of the exhibits, and 5.) that he, himself, was not "fully familiar with the prior batch of exhibits that were submitted." Mr. Fernich was professional and kindly, stating, for the record, that nothing in the court's decision affected the professional advice that he had given to Mr. Raniere prior to the hearing. Mr. Fernich was being thorough in protecting the record. However, Judge Garaufis took Mr. Fernich's being thorough in his position as Mr. Raniere's counsel as an opportunity to attack Mr. Fernich.

| Mr. Fernich: | There's absolutely nothing -- |
|---|---|
| The Court: | -- as to the judgment of the Court -- |
| Mr. Fernich: | There is absolutely nothing dilatory about my request - |
| The Court: | Excuse me. |

12

Mr. Fernich:          -- to go to a close --

The Court:          Excuse me.

Mr. Fernich:          -- colleague's and friend's funeral --

The Court:          Excuse me.

Mr. Fernich:          -- who passed --

The Court:          Excuse me.

Mr. Fernich:          -- over the weekend.

The Court:          Excuse me.

Mr. Fernich:          Nothing dilatory about that.

The Court:          Excuse me.

Mr. Fernich:          And I resent the insinuation.

The Court:          ***Sir, you can resent anything you want.***

Mr. Fernich:          I do resent it.

The Court:          ***You're well compensated for your work by your client -***

Mr. Fernich:          That is absolutely immaterial to the humanity of going to a funeral of an esteemed member of the bar of this court who passed in the middle of the night Sunday, sir. That is human decency and professional courtesy, and you did not afford me it. And I resent it. And you've compounded it by telling me --

The Court:          Excuse me.

Mr. Fernich:          -- I was trying to delay this proceeding?

The Court:          You wanted the day off, sir. You wanted--

13

| | |
|---|---|
| Mr. Fernich: | I wanted the day off to go to Joel Winograd's funeral, who died of pancreatic cancer on Sunday morning? |
| The Court: | ***Give him this to go cry on. He's not a member of your family, sir.*** |
| Mr. Fernich: | This demeans you more than -- |
| The Court: | You have an obligation to this Court -- |
| Mr. Fernich: | And I'm here. |
| The Court: | ***Be seated or I'll have you arrested.*** |
| Mr. Fernich: | You have me arrested. |
| The Court: | Be seated. |
| Mr. Fernich: | This demeans you more than me. |
| The Court: | Be seated. |
| Mr. Fernich: | It's a disgrace. It's a disgrace. It's a lack of human decency. |
| Mr. Lichtman: | Stop. |
| Mr. Fernich: | And it's disgraceful. You can stare at me all you want, your Honor. |
| Mr. Lichtman: | Stop. |
| Mr. Fernich: | All you want. |
| The Court: | One final thing I'd like to say. I'm from Queens. And the attorney asked to go to a funeral at 11:45 this morning in Fresh Meadows. He could have gone to the funeral, attended the funeral of his friend, and then come to court at two. |
| Mr. Fernich: | And interment and then -- |
| The Court: | Excuse me. |
| Mr. Fernich: | -- Shiva afterwards. |

14

| | |
|---|---|
| The Court: | Excuse me. |
| Mr. Fernich: | It is false. Anyone who knows the traffic around here -- |
| The Court: | ***Will you keep quiet?*** |
| Mr. Fernich: | No, sir, I will not. |
| Mr. Lichtman: | Stop, stop. Enough. |
| Mr. Fernich: | Not if you slander me in public that way. |
| The Court: | The attorney could have gone to the funeral and come here to court at 2 o'clock. But it would have required me to adjourn this proceeding if I had allowed him to go to the cemetery, which I did not. |
| Mr. Fernich: | I asked for one hour. A one-hour delay is what I asked for. And you know it. And it's a matter of public record. |
| Mr. Lichtman: | Stop. |
| The Court: | I've never seen anything like this. |
| Mr. Fernich: | Nor have I, sir. |
| The Court: | ***I'm not asking you for your comments.*** |
| Mr. Fernich: | I know you're not. |
| Mr. Lichtman: | Stop it. |
| (Pause in proceedings.) | |
| Mr. Lichtman: | Judge, may I approach? |
| The Court: | No. |
| Mr. Lichtman: | Okay. |
| (Pause in proceedings.) | |

Mr. Fernich:           Can we speak privately?

The Court:            This is a criminal matter. Everything is on the record.

Mr. Fernich:           Okay.

(Pause in proceedings.)

Restitution Hearing Tr. 43:21 - 47:10, emphasis added. [3, 4]

Here, the pause in proceedings was a bizarre approximate thirty minutes of Fernich and Judge Garaufis staring at each other.[5] Despite Judge Garaufis' claimed excuse for failing to adhere to Mr. Raniere's Sixth Amendment right to confront the government's main cooperating witness, Lauren Salzman, during jury trial - that he was a "human being" "before [he was] a "judge" Trial Tr. 2267:16 - 2270:11, it is fair to say that Judge Garaufis' humanity certainly did not prevail over his judicial role in denying Mr. Fernich a one-hour delay in the proceedings so Mr. Fernich could attend a friend and colleague's funeral and shiva. Judge Garaufis even justified his personal attacks against Mr. Fernich because Mr. Fernich was "well compensated" for his work. It is also notable that the Court denied Mr. Fernich's request for a one-hour delay to attend the funeral of a good friend. However, the Court was willing to waste thirty minutes sitting there, on the record, ***doing nothing***.[6] Thus, there can be no excuse that the Court's denial of Mr. Fernich's request had anything to do with a concern for time.

---

[3] "A judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff." Guide to Judiciary Policy, Vol. 2A, Ch. 2, Judicial Canon 3(B)(4) (March 12, 2019).

[4] The duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias. *Id*. at Commentary for Canon 3A(3).

[5] *See* Dan Adler, NXIVM Leader Keith Raniere Ordered to Pay More than $3.4 Million to 21 Victims, Vanity Fair, https://www.vanityfair.com/style/2021/07/nxivm-keith-raniere-restitution-order (July 21, 2021).

[6] *See Id.*

16

## C.  THE SENTENCING HEARING

Ms. Clare Bronfman's sentencing by Judge Garaufis further shows the extent of his personal bias and inability to be fair in this case. The Court imposed a sentence of 81 months, which was three times the maximum sentencing range provided by the United States Sentencing Guidelines for Ms. Bronfman. This sentence was nearly two years longer than even the prosecution had requested and was contradictory to the factual findings made by Judge Garaufis at the hearing. This sentence was imposed on a theory of willful ignorance or willful blindness regarding DOS and Mr. Raniere specifically.

Of specific note was the Courts' focus on how "Ms. Bronfman's allegiance to Raniere shines through again and again. She has paid his legal fees and, to this day, maintains that he 'greatly changed her life for the better.'" SPA. [7] 125:14-17. The Court imposed its improperly excessive sentence, not based on any alleged crimes Ms. Bronfman was convicted of but based on her personal connection to Mr. Raniere. This is even though the Court had found that Ms. Bronfman did not knowingly support any crimes that Mr. Raniere was convicted of and indeed did not even necessarily share in the aims of her co-defendants. Thus, it is not criminal culpability that Judge Garaufis used to sentence Ms. Bronfman, but rather his personal hatred of Mr. Raniere to justify the heightened punishment of Ms. Bronfman.

None of Ms. Bronfman's co-defendants received a prison sentence above the guidelines' range. Ms. Bronfman pled guilty to white-collar crimes. In contrast, Ms. Mack and Ms. Salzman pled to far more serious offenses, including racketeering and racketeering conspiracy, and were found to be central figures in DOS. However, only Ms. Bronfman, who maintained a personal connection to Mr. Raniere, was unfairly treated. The Court admitted as much when it stated that

---

[7] Citations to "SPA" refer to the Special Appendix submitted by Ms. Bronfman in her Principal Appellate Brief identified Dkt. 69.

17

one of the factors that led the Court to show leniency to Ms. Mack and Ms. Salzman was that, unlike an "***other individual who have remained deferential to Mr. Raniere***," both had turned the page on the part of their lives during which they were devoted to him. SBA[8] 75:2 -76:1 (emphasis added). This is not about cooperating with the prosecution but just the renouncement of Mr. Raniere. This can be seen as Ms. Russell was similarly gently treated for renouncing Mr. Raniere, even though she had not cooperated with the prosecution. SBA[9] 75–77, 117–18.

As evident from the preceding, Judge Garaufis took his extrajudicial views of bias, prejudice, and partiality against Mr. Raniere and applied each as a multiplier to Ms. Bronfman's sentence to give her "three times the high end of the Guidelines range." SPA 131. This is unmistakable evidence of his bias against Mr. Raniere, which necessitates Judge Garaufis' disqualification in this case.

## <u>LEGAL AUTHORITY FOR THE MOTION</u>

Pursuant to the Fifth and Fourteenth Amendments, it is axiomatic that all criminal trials must be conducted within the bounds of fundamental fairness. *Gayle v. Scully*, 779 F.2d 802, 805 (2d Cir. 1985) (Citing *Taylor v. Hayes*, 418 U.S. 488, 501-02 (1974); *Ward v. Village of Monroeville*, 409 U.S. 57 (1972); *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971); *Rochin v. California*, 342 U.S. 165, 173 (1952); *Tumey v. Ohio*, 273 U.S. 510 (1927).) Under the Due Process Clause, there is a well-developed right, established in a long line of cases, to a trial before an unbiased judge." *Daye v. Attorney General of New York* (2d Cir. 1982) 696 F.2d 186, 196.

Further, The Due Process Clause "requires a fair trial in a fair tribunal before a judge

---

[8] Citations to "SBA" refer to the Supplemental Appendix submitted by Ms. Bronfman in her Principle Appellate Brief identified as Dkt. 139.

with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997). As the United States Supreme Court has opined, "A fair trial in a fair tribunal is a basic requirement of due process. ***[F]airness, of course, requires an absence of actual bias in the trial of cases.***" *In re Murchison*, 349 U.S. 133, 136 (1955) (emphasis added). The High court has further opined that "[T]o perform its high function in the best way 'justice must satisfy the appearance of justice.'" *Proctor v. Warden*, 435 U.S. 559, 560 (1978) (internal citations omitted). As noted by the Court of Appeals for the Second Circuit, "The Supreme Court and Courts of Appeals, including this Court, have emphasized repeatedly ***that not only must justice be done, it also must appear to be done***." *United States v. Edwardo-Franco*, 885 F.2d 1002, 1005 (2d Cir. 1989) (emphasis added).

Moreover, the judicial disqualification statute codified under 28 U.S. Code, section 455, "is concerned largely with ensuring that the federal judiciary appears to be impartial, in addition to actually being impartial." *United States v. Sypolt*, 346 F.3d 838, 840 (8th Cir. 2003) (internal citations omitted). To that end, Section 455, subsection (a) provides in relevant part that a Justice "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). "[T]his test deals exclusively with appearances. Its purpose is the protection of the public's confidence in the impartiality of the judiciary." *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007). In applying this test, as noted by the Second Circuit, the central focus is on whether the allegations of bias "when coupled with the judge's rulings on and conduct regarding them, would lead the public reasonably to believe that these problems affected the manner in which he presided … in other words, "[w]ould a reasonable person, knowing all the facts, conclude that the trial judge's impartiality could reasonably be questioned? Or, phrased differently, would an objective, disinterested observer fully informed of the

underlying facts, entertain significant doubt that justice would be done absent disqualification?" *United States v. Amico*, 486 F.3d 764, 775 (2d Cir. 2007) (internal citations omitted).

Disqualification under Sections 455, subsections (a) and (b)(1) are subject to the *extrajudicial source factor*, or the standard that "personal bias or prejudice" must come from an "extrajudicial source" rather than from judicial rulings alone. *Liteky v. United States*, 510 U.S. 540, 541 (1994) (citing *United States v. Grinnell Corp.* 384 U.S. 563, 583). It is essential to clarify that "the presence of such a source does not necessarily establish bias, and its absence does not necessarily preclude bias." *Id.* at 541. While a ruling alone seldom constitutes a valid basis for bias or partiality disqualification motions, such rulings require disqualification when they evidence such deep-seated favoritism or antagonism as would make fair judgment impossible. *Id*. Further, opinions formed by the judge on the basis of facts introduced or events occurring during current or prior proceedings can provide grounds for a disqualification motion if they also display favoritism or antagonism that would make fair judgment impossible. *Id.* Nonetheless, as the Nation's High Court has opined, "what matters is not the reality of bias or prejudice, but its appearance. [Q]uite simply and quite universally, disqualification is required whenever "impartiality might reasonably be questioned." *Id*. at 548. As noted by the Second Circuit, "[T]he goal of section 455(a) is to avoid not only partiality but also the appearance of partiality. [T]he section does so by establishing an "objective standard 'designed to promote public confidence in the impartiality of the judicial process.'" The rule functions as a critical internal check to ensure the just operation of the judiciary." *Ligon v. City of N.Y.,* 736 F.3d 118, 123 (2d Cir. 2013), vacated in part by *Ligon v. City of N.Y.,* 743 F.3d 362 (2d Cir. 2014). The inquiry is an objective one, made from the perspective of a reasonable observer who is informed of all the surrounding facts and circumstances." *Microsoft Corp. v. United States*, 530 U.S. 1301,

1302 (2000) (referencing *Liteky*, 510 U.S. at 548; citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988)).[10]

Further, disqualification under § 455(a) is "necessarily fact-driven," and the analysis thereof is guided "not by comparison to similar situations addressed by prior jurisprudence, but rather by an independent examination of the unique facts and circumstances of the particular claim at issue." *United States v. Holland*, 519 F.3d 909, 913 (9th Cir. 2008).

Additionally, "[I]f the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of disqualification." *Ligon*, 736 F.3d at 124 (internal citations omitted)).

**ARGUMENT**

I.  **THE JUDICIAL DISQUALIFICATION OF JUDGE GARAUFIS IS MANDATED BEFORE THE HEARING OF MR. RANIERE'S MOTION TO VACATE JUDGMENT AND GRANT A NEW TRIAL PURSUANT TO RULE 33 IN ORDER TO ENSURE THE ADHERENCE TO MR. RANIERE'S CONSTITUTIONAL RIGHT TO A TRIAL BEFORE AN UNBIASED JUDGE AS GUARANTEED BY THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION**

At all times during the course of the proceedings, and especially in the instances described with particularity herein, the Court's comments and personal opinions expressed about Mr. Raniere, his Defense team, and his co-defendants, displayed a deep-seated, unequivocal hostility and personal bias against Mr. Raniere and his Defense team, making disqualification for all future proceedings, in this case, warranted and, indeed, mandatory. While many exhibitions of this bias and prejudice were expressed during rulings, the surrounding comments and accompanying opinions clearly show evidence of deep-seated judicial favoritism for the

---

[10] *See also* Bassett, Judicial Disqualification in the Federal Appellate Courts, 87 Iowa L. Rev. 1213, 1230 (May 2002)  (discussing the advisory Code of Conduct for United States judges including Canon 2A ["A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."] and Commentary to Canon 2A ["An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired."]).

government and its witnesses and judicial antagonism towards Mr. Raniere and his Defense team, thus necessitating the disqualification of Judge Garaufis. *See Liteky v. United States,* 510 U.S. 540, 541 (1994).

## A. **THE JURY TRIAL**

During the trial, the Court's discussion with defense counsel as to why the Court had halted the cross-examination of Ms. Salzman was both antagonistic to the Defense and dishonest. When Mr. Agnifilo asked the question that prompted Judge Garaufis to halt all further cross-examination by the Defense of Ms. Salzman, Judge Garaufis had clearly ruled on the legal validity of Mr. Agnifilo's question by telling the witness, "You may answer." To then, minutes later, claim that the reason he halted not only the line of questioning, but the entirety of the rest of the cross-examination, was because Mr. Agnifilo had allegedly repeatedly entered into legally improper territory is nothing other than a blatant misstatement, gaslighting, a lie, or all three.

The truth of the matter, as revealed through the transcripts, is that the Court made personal conclusions about the veracity of Ms. Salzman, the government's main cooperating witness, about DOS, a women's secret society related to NXIVM at issue in the case, and about Mr. Raniere's culpability in regard. These personal views prevailed over a neutral application of the law, precluding the full and fair examination of the witness and the confrontation to which Mr. Raniere was entitled under the Sixth Amendment of the United States Constitution.

The Court's behavior here is analogous to the judge in *Berger v. United States*, 255 U.S. 22, 41 S. Ct. 230, 65 L. Ed. 481 (1921), whom the Supreme Court found to have been impermissibly biased. *Id*. at 28. In *Berger*, a World War I espionage case involving German American defendants, the judge stated, "One must have a very judicial mind, indeed, not to be prejudiced against the German Americans in this country. Their hearts are reeking with

22

disloyalty." *Id*. at 28. He followed with, "This defendant is the kind of a man that spreads this kind of propaganda, and it has been spread until it has affected practically all the Germans in this country." *Id*. at 28-29. He also said, "If anybody has said anything worse about the Germans than I have, I would like to know it so I can use it," and "I know a safe blower, he is a friend of mine, who is making a good soldier in France. He was a bank robber for nine years . . . and as between him and this defendant, I prefer the safe blower," *Id*. at 28 and 29. The judge said all of this before trial began. *Id*. at 27.

Judge Garaufis' statement, "I am not going to have someone have a nervous breakdown on the witness stand in front of – excuse me, this is not DOS," demonstrated that the Court's biased belief that DOS was harmful was as clear and indisputable as the *Berger* court's biased beliefs against German Americans.

Judge Garaufis' final remarks on this issue, "I may not get everything right up here, but I will tell you, as a human being, it was the right decision. Alright? And before I'm a judge, I'm a human being," again showed that he applied and believed in his personal views instead of the law.[11] In that statement, the Court admitted to letting extrajudicial emotions, biases, and prejudices come before the rules of evidence or the United States Constitution, the sacrosanct law of our land. In letting extrajudicial emotions, biases, and prejudices come before the rules of evidence or the United States Constitution, the Court violated Mr. Raniere's Fifth and Fourteenth Amendment rights to a fair trial before an unbiased tribunal and his Sixth Amendment right to confront Ms. Salzman. This is precisely the comment and accompanying opinion that relies on extrajudicial sources and shows evidence of deep-seated favoritism for the government's witness

---

[11] "A judge should respect and comply with the law and should act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Guide to Judiciary Policy, Vol. 2A, Ch. 2, Judicial Canon 2(A) (March 12, 2019).

and antagonism towards Mr. Raniere and his counsel, thus, making fair judgment impossible and necessitating the disqualification of Judge Garaufis. See *Liteky v. United States,* 510 U.S. 540, 541 (1994).

Less extreme measures would have been possible. The Court could have called a break in the proceedings to permit the witness to compose herself or held a sidebar to inquire about the Defense's line of inquiry and its appropriateness. However, the Court instead ended the examination in its entirety, dismissing the witness from the stand, precluding the possibility of any further questioning, and demeaning defense counsel in front of the jury — for asking a question it had permitted. [12, 13]

While a ruling alone would not be sufficient in a motion to disqualify, the fact that Judge Garaufis here declared his reasoning *behind* his ruling to be based on sympathy for a witness which affected him as a human shows that Judge Garaufis will prioritize his humanity, ignore the law, and abandon his judicial ethics, obligations. Accordingly, such conduct necessitates his disqualification in this case.

**B.   THE RESTITUTION HEARING**

During the restitution hearing, the Judge Garaufis displayed an unacceptable bias toward Mr. Raniere's Defense team by letting his frustration with the Defense's request for a delay— essentially because new counsel had not yet been able to adequately meet with Mr. Raniere to go over the materials to be discussed at the hearing, which had been made more difficult due to the COVID-19 pandemic, and because of the unforeseeable and tragic death and funeral of a

---

[12] "A judge should practice civility, by being patient, dignified, respectful, and courteous, in dealings with court personnel, including chambers staff." Guide to Judiciary Policy, Vol. 2A, Ch. 2, Judicial Canon 3(B)(4) (March 12, 2019).

[13] The duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias. *Id.* at Commentary for Canon 3A(3).

member of the bar of this Court who was a close friend of defense counsel — boil into a personal rant against the Defense's attorneys and an unwarranted, personal attack on their professionalism.

Despite Judge Garaufis' claimed excuses for denying Mr. Raniere his Sixth Amendment right to confront the government's main cooperating witness during the jury trial — that he was a "human being" "before [he was] a "judge"" — Judge Garaufis' humanity certainly did not prevail over his judicial role in denying Mr. Fernich a one-hour delay in the proceedings so Mr. Fernich could attend a friend and colleague's funeral. On the contrary, Judge Garaufis justified his personal attacks against Mr. Fernich on the unsubstantiated supposition that Mr. Fernich was "well compensated" for his work, and further implied that counsel could give the decedent "this to go cry on," meaning the exchange between counsel and the court, because the decedent was not a member of Mr. Fernich's family.

Federal courts agree that to prevent any probability of unfairness or appearance of impropriety, the interests of justice would be best served by directing a new judge to hear new claims when the history of the case, combined with evidence of the Judge's expressions of his disapproval toward a party and his attorney may cause a reasonable person to question whether justice was being done. See *Mitchell v. Maynard*, 80 F.3d 1433, 1450 (10th Cir. 1996); *See also Sentis Group v. Shell Oil* 559 F.3d 888, 905 (8th Cir. 2009) (where the district court directed profanities at plaintiffs or plaintiffs' counsel over fifteen times, denied plaintiffs a meaningful opportunity to respond following defendants' lengthy presentation, and cut off plaintiffs counsel's in a sanction hearing and moved for dismissal, the appellate court noted "the reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality").

Here, the record, in this case, is evidence that there can be no question that Judge Garaufis failed to display the mandatory judicial temperament that was essential to the equitable adjudication of Mr. Raniere's case. Judge Garaufis' attitude, demeanor, and tenor towards Mr. Raniere and his counsel, as specified herein, indicate that to prevent any probability of unfairness or appearance of impropriety, the interests of justice would be best served by directing a new judge to hear Mr. Raniere's Motion to Vacate his Judgment and Grant a New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure.

### C.  SENTENCING HEARING

Judge Garaufis' bias towards Mr. Raniere is further demonstrated by his tripling the sentence of Ms. Bronfman, a first-time offender because she refused to "renounce" Mr. Raniere and the NXIVM organization. Despite the court's legal findings that Ms. Bronfman did not knowingly support any of the alleged crimes, Judge Garaufis used his judicial position to punish Ms. Bronfman because of her personal connection to Mr. Raniere. This clearly demonstrates that Judge Garaufis' antagonism toward Mr. Raniere will make fair judgment impossible. *Liteky v. United States,* 510 U.S. 540, 541 (1994). There can be no question here that a reasonable observer, objectively viewing all the facts and circumstances of this case, would question Judge Garaufis' impartiality and would entertain significant doubt that justice would be done. *Microsoft Corp. v. United States*, 530 U.S. 1301, 1302 (2000) (referencing *Liteky*, 510 U.S. at 548; citing *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1309 (2d Cir. 1988)).

### II.  MR. RANIERE HAS NOT WAIVED HIS CLAIM FOR DISQUALIFICATION OF JUDGE GARAUFIS AS SUCH A WAIVER IS IMPERMISSIBLE UNDER THE CIRCUMSTANCES, AND MR. RANIERE'S CLAIM IS TIMELY.

In relevant part, Section 455 provides that "[N]o justice, judge, or magistrate judge shall accept from the parties to the proceeding a waiver of any ground for disqualification enumerated

in subsection (b). Where the ground for disqualification arises only under subsection (a), waiver may be accepted provided it is preceded by a full disclosure on the record of the basis for disqualification." 28 U.S.C. § 455.

Here, the grounds for disqualification of Judge Garaufis arise both under subsection (a) and (b) of Section 455. As such, a waiver of the disqualification of Judge Garaufis is impermissible under the circumstances.

As to the timeliness of Mr. Renerie's claim for disqualification, the Second Circuit has opined that "a party must raise its claim of a district court's disqualification at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim" *Polizzi v. U.S.*, 926 F.2d 1311, 1321 (2d Cir. 1991). As the case law demonstrates, this timeliness requirement hinges on preventing inefficiency and judge shopping. "[A] defendant cannot take his chances with a judge and then, if he thinks the sentence is too severe, secure a disqualification and a hearing before another judge. *Taylor v. United States*, 179 F.2d 640, 642 (9th Cir. 1950). However, without a "pending action before" a judge or a situation where "petitioners' rights are at issue," a party lacks standing to request disqualification of a judge. *United States v. Sciarra*, 851 F.2d 621, 636 (3d Cir. 1988). Additionally, although a "timeliness" requirement is not found within the text of Section 455, the Second Circuit has, without explication, previously assumed that timeliness is also requisite under Section 455, referencing 28 U.S.C § 144, which in relevant part requires that the affidavit be timely and sufficient and be "filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time" *See In re International Business Machines Corp.,* 618 F.2d 923, 932 fn. 12 (2d Cir. 1980); 28 U.S.C. § 144.

Here, Mr. Renerie's claim to disqualify Judge Garaufis is not made to challenge the previous jury trial. An appeal of the trial is already pending before the appellate court. Instead, this request seeks to have Judge Garaufis disqualified from presiding over any further proceedings in this case. Thus, there can be no assertion made that the timing of this disqualification claim allows Mr. Raniere to see "if the proceedings went his way before using the information to seek disqualification." *Sine v. Local No. 992 Int'l Bhd. Of Teamsters*, 882 F.2d 913, 916 (4th Cir. 1989). Moreover, the first filing to be heard before Judge Garaufis since the behavior outlined in this motion showing personal bias and prejudice has only just been filed. Dkt. 1168 and 1169. As such, this is the first opportunity to disqualify Judge Garaufis from further proceedings. Accordingly, Mr. Renerie's claim to disqualify Judge Garaufis is timely.

## CONCLUSION

Here, under both 28 U.S.C. § 455, subsections (a) and (b)(1), disqualification of Judge Garaufis is required. The record, in this case, is replete with instances in which a reasonable individual would undoubtedly question the Court's impartiality and entertain a significant doubt that justice had been done. More importantly, a reasonable individual would also undoubtedly question the Courts' ability to disinterestedly and appropriately evaluate the evidence that the Defense has uncovered and petitioned for a new trial under Rule 33 of the Federal Rules of Criminal Procedure, as discussed in the accompanying motion.

"Bias is easy to attribute to others and difficult to discern in oneself. To establish an enforceable and workable framework, the court's precedents apply an objective standard that, in the usual case, avoids having to determine whether actual bias is present." *Williams v Pennsylvania*, 579 US 1, 8-9 (2016). The Court need not ask whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the average judge in his position is

'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U. S. 868, 881 (2009).

By Judge Garaufis' voicing of his personal feelings about the participants in this case — his animus toward Mr. Raniere, his sympathy for Ms. Salzman as a "broken" individual, (though she was not considered a victim by the government and even pleaded guilty to being a racketeering co-conspirator) his anger at Mr. Raniere's defense counsel, and his contempt for Ms. Bronfman due to her refusal to "renounce" Mr. Raniere — showed such clear evidence of personal bias that there can be no question that the proceedings were colored by injustice and that if this Court continues to preside over the case, Mr. Raniere will be denied a fair hearing and the objective tribunal that the Fifth and Fourteenth Amendments guarantee as fundamental rights.

In this case, disqualification and reassignment are the only way to preserve Mr. Raniere's rights, the rule of law, and justice — let alone the appearance of justice. The Court's history of biased comments and rulings, in this case, establishes that Judge Garaufis cannot engage neutrally and impartially moving forward. Only a new judge can fairly adjudicate any further issues in this case without these pre-existing biases and prejudices. Without disqualification, there is no chance that Mr. Raniere will receive a fair hearing on his Rule 33 claim. The undeniable bias and prejudice toward Mr. Raniere and his Defense team were shown, in this case, is evidence that the pending Rule 33 motion cannot proceed justly in front of Judge Garaufis.

Anyone who had entered the courtroom and witnessed Judge Garaufis' outrageous comments during trial, at the restitution hearing, or at sentencing, would have concluded that the judge was biased against Mr. Raniere and his counsel, and that the tribunal before which Mr.

Raniere was tried had neither just nor did it present the appearance of justice. As a result of, Judge Garaufis' expression of bias, prejudice, and partiality against Mr. Raniere has clear extrajudicial motivations. Consequently, his disqualification is necessary and appropriate.

Thus, Mr. Raniere respectfully moves this Court to disqualify itself from any further proceedings in this case.

Dated: May 5, 2022,                 Respectfully submitted,

                                    TULLY & WEISS ATTORNEYS AT LAW
                                    /s/ Joseph M. Tully
                                    JOSEPH M. TULLY
                                    Attorney for KEITH RANIERE