UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. –

KEITH RANIERE,

            Defendant.

Case No. 1:18-CR-00204-NGG-VMS

EVIDENTIARY HEARING REQUESTED

ORAL ARGUMENT REQUESTED

# MEMORANDUM OF LAW IN SUPPORT OF

# DEFENDANT KEITH RANIERE'S MOTION FOR RULE 33 RELIEF

Dated:   June 17, 2022,
          Martinez, CA

Joseph M. Tully, Esq.
CA SBN 201187
Tully & Weiss Attorneys at Law
713 Main Street
Martinez, CA 94553
Phone: (925) 229-9700
Fax: (925) 231-7754

*Attorneys for Defendant Keith Raniere*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ 2

SUPPLEMENTAL ARGUMENT ....................................................................................... 3

    LEGAL STANDARD ..................................................................................................... 3

    I.    THE GOVERNMENT PREVENTED DISCOVERY OF THE NEW EVIDENCE, DESPITE DEFENSE COUNSEL'S DUE DILLIGENCE, THROUGH VIOLATIONS OF *BRADY* AND *TROMBETTA*. ...................................................................................... 4

        A.    THE GOVERNMENT VIOLATED ITS *BRADY* DUTIES. ....................................... 5

            1.    The Government Suppressed the Material Exculpatory Evidence of the CF Card and WD HDD. ...................................................................................................................... 5

            2.    The Government Suppressed the Material Exculpatory Evidence of Numerous FBI Violations of Protocol. ........................................................................................... 6

        B.    THE GOVERNMENT VIOLATED *TROMBETTA* WHEN THEY DESTROYED EVIDENCE ON THE CF CARD BY IMPROPERLY ACCESSING IT AND BY PLANTING FALSE EVIDENCE IN BAD FAITH. ........................................................ 9

    II.    THE GOVERNMENT VIOLATED MR. RANIERE'S RIGHT TO EFFECTIVE ASSISTANCE BY INTERFERING WITH TRIAL COUNSEL'S ABILITY TO INVESTIGATE. ............................................................................................................... 11

CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Pool* (E.D.N.Y. April 10, 2003, 00-CV-5214 (ARR)). ....................................................... 3

*Brady v. Maryland*, 272 U.S. 83 (1963). ...................................................................................... 3, 8

*Brooks* v. *Tennessee*, 406 U.S. 605 (1972). ....................................................................................... 4

*California v. Trombetta*, 467 U.S. 479 (1984). ................................................................................. 9

*Ferguson* v. *Georgia*, 365 U.S. 570 (1961). ....................................................................................... 4

*Geders* v. *United States*, 425 U.S. 80 (1976). .................................................................................... 4

*Herring* v. *New York*, 422 U.S. 853 (1975). ...................................................................................... 4

*Kyles v. Whitley*, 514 U.S. 419 (1995). ............................................................................................ 3

*Leka v. Portuondo,* 257 F.3d 89 (2d Cir. 2001). .......................................................................... 4, 6

*Skinner v. Switzer*, 562 U.S. 521 (2011). .......................................................................................... 3

S*trickland v. Washington*, 466 U.S. 668 (1984). .......................................................................... 4, 11

*Strickler v. Greene*, 527 U.S. 263 (1999). ......................................................................................... 3

*Su v. Filion*, 335 F.3d 119 (2d Cir. 2003). ........................................................................................ 7

*United States v. Coppa*, 267 F.3d 132 (2d Cir. 2001). .................................................................. 3, 6

*United States v. Mangano* (E.D.N.Y., Jan. 6, 2022, 16-CR-540 (JMA)). ........................................ 8

*United States v. Robinson* (E.D.N.Y., Nov. 8, 2019, 16-CR-545 (S-4)(ADS)). ......................... 4, 10

*United States v. Sainfil* (E.D.N.Y., Oct. 2, 2019, 16-CR-652 (DRH)). ......................................... 12

*United States v. Soriano*, 401 F. Supp. 3d 396 (E.D.N.Y. 2019). ................................................. 10

*United States v. Stofsky*, 527 F. 2d 237 (2d Cir. 1975). .................................................................... 7

*Wearry v. Cain*, 577 U.S. 385 (2016). ............................................................................................... 3

*Wiggins v. Smith*, 539 U.S. 510 (2003). .......................................................................................... 11

**Transcripts**

Status Conference Transcript (February 11, 2019.) ........................................................................ 9

Status Conference Transcript (January 9, 2019.) ............................................................................ 8

Status Conference Transcript (March 18, 2019.) ............................................................................ 6

Status Conference Transcript (September 13, 2018.) ..................................................................... 8

Trial Transcript. ...................................................................................................................... 7, 8, 9

## SUPPLEMENTAL ARGUMENT

The following argument serves to supplement the previously filed Motion for Rule 33 Relief, and, as such, adopts the statement of relevant facts and exhibits as marked and filed.

## LEGAL STANDARD

In *Brady v. Maryland*, the United States Supreme Court established that, "[T]he suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of the prosecution." *Brady v. Maryland*, 272 U.S. 83 (1963). This requires a showing that the evidence was favorable, "either because it is exculpatory, or because it is impeaching;" that the evidence was suppressed by the state, and that prejudice ensued. *Skinner v. Switzer*, 562 U.S. 521, 536 (2011); *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999).

"Evidence qualifies as material when there is any reasonable likelihood it could have affected the judgement of the jury." *Wearry v. Cain*, 577 U.S. 385, 392 (2016). It need only be "sufficient to 'undermine confidence' in the verdict." *Id*. The question is whether in the evidence's absence, the accused "received a fair trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). While the "force of undisclosed evidence is evaluated item by item, its cumulative effect for purposes of materiality must be considered collectively." *Id*. at 436-437, fn. 10.

The prosecution suppresses material exculpatory evidence in violation of *Brady* when it has possession or knowledge of such evidence but fails to disclose it to the defense. *Bell v. Pool* (E.D.N.Y. April 10, 2003, 00-CV-5214 (ARR)). The prosecution is deemed to have constructive knowledge of evidence "known only to the police investigators and not to the prosecutor." *Strickler v. Greene*, 527 U.S. 263, 280-281 (1999). "*Brady* material must be disclosed in time for its effective use at trial." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001). *Brady* material that is not "disclos[ed] in sufficient time to afford the defense an opportunity for use" may be deemed suppressed within the meaning of the *Brady* doctrine. *Leka v. Portuondo,* 257

F.3d 89, 103 (2d Cir. 2001).

Under *Trombetta* and its progeny, a defendant is entitled to dismissal based on spoliation of evidence if: (1) the evidence possessed "exculpatory value that was apparent before it was destroyed," (2) the defendant would be "unable to obtain comparable evidence by other reasonably available means," and (3) the government acted in bad faith. *United States v. Robinson* (E.D.N.Y., Nov. 8, 2019, 16-CR-545 (S-4)(ADS)) [pp. 15].

It is recognized that the Sixth Amendment "right to counsel is the right to the effective assistance of counsel." S*trickland v. Washington*, 466 U.S. 668, 686 (1984). The government violates the right to effective assistance when it interferes with the ability of counsel to make independent decisions about how to conduct the defense. *Id*. at 668; citing *Geders v. United States*, 425 U.S. 80 (1976); *Herring v. New York*, 422 U.S. 853 (1975); *Brooks v. Tennessee*, 406 U.S. 605 (1972); *Ferguson v. Georgia*, 365 U.S. 570 (1961).

I. **THE GOVERNMENT PREVENTED DISCOVERY OF THE NEW EVIDENCE, DESPITE DEFENSE COUNSEL'S DUE DILLIGENCE, THROUGH VIOLATIONS OF *BRADY* AND *TROMBETTA*.**

Trial counsel fought for the right and opportunity to access the compact flash card, hereafter CF card, and Western Digital hard disc drive, hereafter WD HDD, to obtain an expert examination of the devices. However, despite ongoing attempts, including bringing lack of access to the attention of the Court, trial counsel was continually denied access to this material exculpatory evidence. This access was necessary to discover the FBI's tampering discussed in this motion. This inability to adequately investigate the only evidence of the RICO allegations regarding child pornography and child exploitation was caused by the government suppressing and destroying evidence prior to trial counsel having an opportunity to review it.

These violations not only stymied pretrial discovery but also constituted separate violations of due process that mandate dismissal as a sanction.

### A. THE GOVERNMENT VIOLATED ITS *BRADY* DUTIES.
#### 1. The Government Suppressed the Material Exculpatory Evidence of the CF Card and WD HDD.

Here, the RICO allegations regarding child pornography and child exploitation were supported entirely by the digital evidence from the CF card and the WD HDD. Despite the clear material nature of the CF card, trial counsel was never provided with a forensic copy, any opportunity to view it, nor to have it examined by an expert.

Instead, on April 24, 2019, trial counsel received the April 11, 2019, FTK report on the CF card by FE Flatley. On June 11, 2019, during trial, counsel received a *vastly* different report, which had been run by SFE Booth the same day it was provided. These reports were contradictory despite the reports being produced by the *same* version of the *same* software on the *same* item. Ex. D at Bates 035-036. The second report included the sudden appearance of thirty-seven pictures, circumstantially bolstering the claim that the camera containing the CF card produced the alleged contraband photographs.

Access to the WD HDD was also unavailable for adequate investigation. On February 21, 2019, all Defense copies were ordered returned. After that, the government controlled Defense's access to the material exculpatory evidence and improperly suppressed it.

Because information obtained from the CF card and WD HDD constituted the entirety of the evidence against Mr. Raniere for the RICO acts regarding child pornography and child exploitation, they were clearly material evidence as to guilt or innocence. Even though the evidence disclosure has thus far been incomplete, expert review nonetheless allowed Dr. Kiper to find unmistakable evidence of tampering which, if revealed to the jury, would have disproven the government's allegations; impeaching not only its witnesses, but its credibility at large.

The prosecution had possession and knowledge of the CF card and multiple forensic copies. Despite this, no copies were ever provided to trial counsel. Moreover, there was no way

for trial counsel to obtain copies of the CF card except from the government. The provision of a significantly different second FTK report the day before SFE Booth's testimony did not allow for an investigation into the legitimacy of the new findings or new report, and thus did not allow for effective use at trial. *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001). Thus, the government suppressed the CF card and its contents.

The WD HDD was controlled by the government after return of Defense copies on February 21, 2019. On March 15, 2019, trial counsel was able to review a forensic copy of the WD HDD and, upon determining that expert review would be necessary, immediately reached out to an expert who averred that there was not enough time prior to trial for him to responsibly prepare a forensic analysis. Status Conference Tr. at 8:24 – 9:2 (March 18, 2019); Dkt. 436. On April 22, 2019, only two weeks before trial, trial counsel informed the Court via affidavit of the government's repeated failure to provide the WD HDD reports. Dkt. 577 at ¶ 4.

The prejudice of this suppression is obvious. Ex. D. With access to forensic copies of the CF card and the WD HDD, trial counsel would have been able to have a forensic expert adequately investigate the items which would have revealed that the government planted and manipulated key evidence in support of its child pornography and exploitation RICO allegations.

Such proof of tampering would "affect the judgement of the jury" and "undermine confidence in the verdict," therefore the suppression of this material exculpatory evidence was improper, interfered with trial counsel's ability to make independent decisions about how to conduct Mr. Raniere's defense, and independently mandate dismissal.

2. **The Government Suppressed the Material Exculpatory Evidence of Numerous FBI Violations of Protocol.**

Convictions in cases in which false testimony by a government witness is uncovered after trial, "must be reversed unless the evidence was so overwhelming that there is no 'reasonable

likelihood that the false testimony could have affected the judgment of the jury.'" *Su v. Filion*, 335 F.3d 119, 129 (2d Cir. 2003). "The very fact of the witness' untruthfulness is itself relevant to an analysis of prejudice." *Id*. at 128. With perjured testimony, "a witness' credibility could very well [be] a factor of central importance to the jury, indeed every bit as important as the factual elements of the crime itself." *United States v. Stofsky*, 527 F. 2d 237, 246 (2d Cir. 1975).

Here, the impeachment evidence withheld from the Defense consists of the numerous violations of protocol perpetrated by the FBI's handling of the CF card and WD HDD. Had the appropriate discovery been disclosed, impeaching cross-examination would have been possible rather than prevented by the lying and obfuscation of the government. Moreover, each violation involved prejudice beyond inability to cross-examine.

First, improper review of the Canon camera and CF card occurred prior to the required initial processing. Ex. D at Bates 034. There was no disclosure that SA Rees and SA Lever were not authorized to access the evidence items prior to processing by the Computer Analysis and Response Team, hereafter CART, examiner. The second time the CF card was accessed by an unauthorized individual, namely SA Lever, the card was improperly examined, and this violation of FBI "critical procedure" resulted in destruction of evidence as the "date accessed" information was overwritten. *Id*. at 006 – 007. Further, this information of authorized access would have impeached Agent Mills as AUSA Hajjar elicited false testimony that appropriate protocol had been followed. Trial Tr. at 4207: 15-18.

Second, the Canon camera and CF card had broken chains of custody and SFE Booth lied about the significance. *Id*. at 4886:15 – 4889:22. The broken chains of custody were known to SFE Booth as information regarding these breaks were in his notes. These notes had been requested by the Defense and were not provided to allow for appropriate review and use in cross-

7

examination and objection to admissibility of the evidence. Trial Tr. at 4890:17-4892:24.

Finally, SFE Booth's re-examination of the CF card was undisclosed as a violation of FBI policy. Ex. D at Bates 037-038. As a Senior Forensic Examiner, SFE Booth knew that his re-processing of the CF card was a violation of FBI protocol but instead of disclosing this, he lied about it. *Id*.

Evidence of broken chains of custody and improper reexamination goes directly to the admissibility of the electronic evidence and the credibility of the FBI witnesses. It was known to the prosecution, but not disclosed. Such impeachment of protocol would have undermined the confidence of the jury and affected the verdict.

### 3. These *Brady* Violations Were Done in Bad Faith.

*Brady* violations are found irrespective of good or bad faith of the prosecution. *Brady v. Maryland*, 272 U.S. 83 (1963). However, dismissal is an appropriate sanction where the prosecution engages in "egregious and deliberate" misconduct or acts flagrantly, willfully, and in bad faith. *United States v. Mangano* (E.D.N.Y., Jan. 6, 2022, 16-CR-540 (JMA)). Here, withholding this material exculpatory evidence was egregious and deliberate misconduct *and* done flagrantly, willfully, and in bad faith to deny the Defense the ability to investigate.

Bad faith is shown in the suppression of the CF card and WD HDD. First, on September 13, 2018, the prosecution refused to "engage" in a discussion about setting a timetable for discovery because the government was "not willing to disclose everything based on … charges that have not been brought." Status Conference Tr. at 13:16-14:8 (Sept. 13, 2018). The prosecution knew this would constitute material evidence to charges they had already planned for but were delaying for strategic advantage to undermine the Defense's ability to effectively assist Mr. Raniere; on January 9, 2019, the prosecution stated that the government expected to supersede the present information. Status Conference Tr. at 4:14-5:2 (Jan. 9, 2019.) Troublingly,

8

six weeks later, FBI agents "accidentally" discovered the alleged contraband photos, the inclusion of which was the only difference in the second superseding indictment. "Accidents" cannot be premeditated. Additionally, on February 11, 2019, the government misrepresented its evidence disclosure to the Defense in stating that all defendants "have everything from 8 Hale." Status Conference Tr. at 34:14-19 (Feb. 11, 2019.) Yet, a forensic copy of the CF card had not been provided and still has not.

The FBI protocol violations were done in bad faith as was its evidence tampering. Such behavior is quintessential bad faith as it is improper action taken specifically to dishonestly benefit and improperly strengthen the government's case. Moreover, the protocol violations were covered up with perjurious testimony. Agent Mills lied that protocol had been followed. Trial Tr. at 4207: 6-18. SFE Booth lied that the breaks in the chains of custody and his ignorance of who held the evidence before he ran his unnecessary FTK report were not important or outside of protocol. SFE Booth also lied about the reliability of the tampered EXIF data. Ex. D at Bates 036-037.

Thus, dismissal is both warranted and the most appropriate remedy here.

## B. THE GOVERNMENT VIOLATED *TROMBETTA* WHEN THEY DESTROYED EVIDENCE ON THE CF CARD BY IMPROPERLY ACCESSING IT AND BY PLANTING FALSE EVIDENCE IN BAD FAITH.

The government has a constitutional duty to preserve evidence that possesses an exculpatory value that was apparent before destruction, and when comparable evidence cannot be obtained by other reasonably available means. *California v. Trombetta*, 467 U.S. 479 (1984). Material evidence means "evidence that might be expected to play a significant role in the suspect's defense." *Id.* at 488. A defendant is entitled to dismissal based on spoliation of evidence if: (1) the evidence possessed "exculpatory value that was apparent before it was destroyed," (2) the defendant would be "unable to obtain comparable evidence by other

reasonably available means," and (3) the government acted in bad faith. *United States v. Robinson* (E.D.N.Y., Nov. 8, 2019, 16-CR-545 (S-4)(ADS)) [pp. 15]. The "government's failure to retain potentially exculpatory evidence is done in bad faith when the circumstances under which the evidence is discarded negate any innocent explanation for the government's conduct." *United States v. Soriano*, 401 F. Supp. 3d 396, 401 (E.D.N.Y. 2019).

First, the prosecution was aware of the exculpatory value of the "empty" portions of the CF card prior to its destruction by their planting of data on it. Most obviously, the "empty" space showed that these photographs were not actually present on the CF card. The government knew that this "empty" space contained no such images because the FTK report from April 11, 2019, did not contain the thirty-seven new images that the June 11, 2019, FTK report alleged. This dishonest use of otherwise "empty" space constitutes a bad faith destruction of evidence that was apparently exculpatory before its destruction.

Second, there is no "innocent explanation for the government's conduct" here as three top experts, including a former FBI agent, have found no legitimate innocent explanation. The destruction was caused by the intentional insertion of false data onto the CF card, which constitutes a planting of evidence, which is not only bad faith, but also a violation of the law. Criminally tampering with evidence to gain a dishonest advantage at trial is the definition of bad faith.

Finally, the evidence here of "empty" space and what it held was only able to be found on the CF card. Only the government held this card after seizure pursuant to the warrant on March 27, 2018. While an allegedly complete copy of the WD HDD was provided to the Defense on October 5, 2018, it was ordered to be returned as soon as it was revealed to contain relevant and

material evidence. No copy of the CF card was ever provided. The two FTK reports contradict one another and thus cannot constitute reliable alternative sources.

In addition to the destruction of the "empty" portions of the CF card, the government also improperly accessed the CF card on September 19, 2018, without a write blocker, thereby altering and destroying at least the file system dates. Ex. D at Bates 006. This destruction was done prior to any Defense review, was committed via an undisclosed violation of FBI "critical protocol," and destroyed the competency of the only copy.

Thus, the destroyed evidence of both the CF card "empty" space and the overwritten file system data violated *Trombetta* and due process. Ergo, dismissal is both warranted and the most appropriate remedy here.

## II. THE GOVERNMENT VIOLATED MR. RANIERE'S RIGHT TO EFFECTIVE ASSISTANCE BY INTERFERING WITH TRIAL COUNSEL'S ABILITY TO INVESTIGATE.

If the Court finds that the new evidence of tampering could have been discovered previously, then such theoretical ability must also be found to have been practically estopped by the government's violations of Mr. Raniere's due process rights, as well as his right to effective assistance of counsel.

Despite deference to professional judgement, attorneys have a clearly established duty to investigate. *Wiggins v. Smith*, 539 U.S. 510, 522 (2003). In evaluating ineffective assistance, the primary question is not what counsel should have done "but whether the investigation supporting their decision … was itself reasonable." *Id.* Here, government action is directly responsible for trial counsel's failure to properly investigate. In an ineffective assistance of counsel paradigm, when the government's acts are directly responsible for counsel's deficiency, no special showing of prejudice need be made. *Strickland v. Washington*, 466 U.S. 668, 682 (1984). Thus, such circumstances are and should be treated differently.

The record shows that the government interfered with Mr. Raniere's right to effective assistance of counsel by preventing his trial counsel from investigating. The government withheld *Brady* evidence, lied about providing it, destroyed evidence in violation of *Trombetta*, and elicited perjured testimony around the evidence that they refused to provide.

The impact of the government's interference only became known with the newly discovered evidence of tampering. Had Mr. Raniere brought an ineffective assistance of counsel argument directly after trial, the Court would have stated that there was no proof that representation had fallen below an objective standard of reasonableness, nor any reasonable probability that the result of the proceeding would have been different. *United States v. Sainfil* (E.D.N.Y., Oct. 2, 2019, 16-CR-652 (DRH)) [pp. 18]. This hypothetical ruling of denial would have been based on the false impression that the CF card and WD HDD only held inculpatory evidence, which was the only impression available until the tampering was uncovered.

However, now with the newly discovered evidence of tampering, it is clear that the government's acts of violating their discovery duties under *Brady* and *Trombetta* lead to a lack of investigation of material evidence that was unreasonable.

## CONCLUSION

For the foregoing reasons, Mr. Raniere is entitled to a dismissal, a new trial, or a hearing to further explore these allegations. Supplemental briefings may also be needed to address transactions, occurrences, or events which have not yet happened or been asserted.

Dated: June 17, 2022,   Respectfully submitted,

TULLY & WEISS ATTORNEYS AT LAW

/s/ Joseph M. Tully
JOSEPH M. TULLY
Attorney for KEITH RANIERE