KCB:TH
F. #2017R01840

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

      - against -                     Docket No. <u>18-CR-204 (S-2) (NGG)</u>

KEITH RANIERE,

           Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - -X


<u>MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
KEITH RANIERE'S THIRD MOTION FOR A NEW TRIAL PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 33</u>

BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Tanya Hajjar
Assistant U.S. Attorney
     (Of Counsel)

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in opposition

to the defendant Keith Raniere's third motion for a new trial pursuant to Federal Rule of

Criminal Procedure 33, filed on May 3, 2022, and his motion for post-conviction discovery,

filed on April 14, 2023.[1]  ECF Docket Nos. 1168-1169, 1176, 1192.  On June 21, 2022,

Raniere filed a fourth motion for a new trial <u>pro</u> <u>se</u> (the "Pro Se Motion").[2]

Raniere claims that he is entitled to a new trial because "newly discovered

evidence" demonstrates that "the government manufactured child pornography and planted it

on a computer hard drive to tie it to him" and that the government "falsified, fabricated, and

manipulated all the key evidence it used" to convict Raniere of the child exploitation and

child pornography predicate offenses.  Rule 33 Mot., ECF Docket No. 1169, at 3.  This

motion is Raniere's third attempt to obtain a new trial based on alleged witness or

government malfeasance, and, like the first two, the motion is entirely without merit.  As

proved at trial, in 2005, Raniere produced and possessed child pornography images of

Camila, a child he was sexually abusing.  Child pornography images of Camila were

---

[1]     The defendant previously filed two other motions for a new trial pursuant to
Rule 33.  On March 9, 2020, the defendant filed a motion based on "newly discovered
evidence" relating to alleged perjury committed by two of Raniere's victims, Daniela and
Nicole.  The Court denied the motion on July 17, 2020.  On October 19, 2020, the defendant
filed a second motion based on "newly discovered evidence" relating to the government's
alleged intimidation of Michele Hatchette and Nicole Clyne.  The Court denied the motion
on October 23, 2020.

[2]     The Pro Se Motion reiterates meritless claims that were raised in Raniere's
first two motions for a new trial, including purported "newly discovered evidence of
government intimidation of potential defense witnesses."  Pro Se Motion, ECF Docket No.
1178, at 17.  Because the Pro Se Motion was filed more than three years after the jury's
guilty verdict on June 19, 2019, it is untimely and the Court lacks jurisdiction to grant the
motion.  <u>See</u> <u>United States v. Lussier</u>, 219 F.3d 217, 220 (2d Cir. 2000).

recovered by law enforcement on a Western Digital hard drive ("the Western Digital Hard Drive") that was seized in 2018 from a residence in Halfmoon, New York, that was used by Raniere. The photographs depicted Camila, then 15 years old, lying naked on a bed. Several photographs depicted close-ups of her genitals. The photographs were located in a folder containing nude photographs of eleven other women with whom Raniere had a sexual relationship at that time. At trial, Daniela testified that a sanitized (i.e., cropped) version of one of the child pornography images depicted her sister. Overwhelming evidence introduced at trial confirmed that Raniere and Camila began a sexual relationship when Camila was 15 years old and that Raniere took and maintained the child pornography photographs of Camila introduced at trial. Moreover, Camila has submitted a sworn declaration, attached hereto as Exhibit A, confirming that Government Exhibits 518-A through 518-U are photographs taken of her by Raniere in 2005, when Camila was 15 years old.

The Court should deny Raniere's third Rule 33 motion as untimely, unfounded, legally unsupported, and contrary to the evidence adduced at trial. As set forth below, the alleged "findings" of the retired FBI agent who, after Raniere's conviction, reviewed trial evidence at Raniere's request cannot constitute "newly discovered evidence" under Rule 33. The "findings," which are misleading and erroneous, misattribute characteristics of the electronic evidence that existed at the time the Western Digital Hard Drive was seized to law enforcement tampering. At trial, Raniere elected not to call a defense forensic expert—even though he had retained such an expert and the expert had been given access to all the electronic discovery Raniere requested, including contraband materials, at the office of the FBI's Computer Analysis Response Team ("CART"). And to the extent that Raniere wished to cross-examine the government's witnesses or present

evidence regarding the seizure or analysis of the forensic evidence in this case, he had the opportunity to do so at the time of trial. Raniere's trial counsel did, in fact, cross-examine the CART forensic examiner at length regarding the digital evidence recovered in this case, but made no argument in summation or otherwise that the child pornography evidence had been fabricated, and Raniere makes no claim that his lawyers' decision was anything other than a strategic choice.

Raniere's third Rule 33 motion, like his first two, is both untimely and meritless and any further evidentiary hearing is unnecessary. Raniere was entitled to a fair trial and he received one. Raniere's victims, including Camila, should now have the opportunity to obtain some measure of closure from the finality of Raniere's conviction and sentence.

<u>FACTS RELEVANT TO RANIERE'S MOTION</u>

I.   <u>Search of 8 Hale Drive and Initial Production of Electronic Discovery</u>

On March 27, 2018, law enforcement agents conducted judicially-authorized searches of the residence of Nancy Salzman (the "Salzman Residence") and 8 Hale Drive, another residence in Halfmoon, New York, that was used by Raniere as his "Executive Library." During the course of the searches, law enforcement officers seized over 70 electronic devices. Among the devices seized from 8 Hale Drive was the Western Digital Hard Drive and a Canon EOS 20D camera.

Shortly after the defendants' arraignment on the superseding indictment on July 23, 2018, the government began producing electronic discovery, including copies of the contents of the seized electronic devices, to the defendants. <u>See</u> ECF Docket No. 129 (reflecting that the government had seized 10 to 12 terabytes of electronic data from the

Salzman Residence and 8 Hale Drive).  The government's discovery letters to the defendants, including Raniere, notified the defendants that electronic devices were obtained through the execution of a search warrant at 8 Hale Drive and stated that the defendants could contact the government to "examine the physical evidence discoverable under Rule 16."  See, e.g., ECF Docket No. 593-1 (Aug. 3, 2018 Discovery Letter).  The Court thereafter directed the parties to litigate certain discovery issues before Magistrate Judge Scanlon.  ECF Docket No. 137.  At subsequent hearings held before Judge Scanlon on September 13, 2018 and September 18, 2018, Judge Scanlon directed the government to expedite the production of electronic discovery to counsel for the defendants, to prioritize the discovery requested by counsel, and to report the status of production as to each device in its possession.  See ECF Docket Nos. 139, 143, 145, 154.

On September 25, 2018 and October 5, 2018, the government provided the defendants, including Raniere, with copies of the Western Digital Hard Drive and the photographs recovered from the Canon EOS 20D camera.  At the time the government provided the defendants with a copy of the Western Digital Hard Drive, law enforcement was not aware that it contained child pornography; as a result, a full forensic copy of the drive was provided to all defendants.

II.    Discovery of Child Pornography on the Western Digital Hard Drive

In February 2019, in the course of its search of electronic materials seized from 8 Hale Drive, the government discovered that the Western Digital Hard Drive contained images of child pornography.  The government immediately notified counsel and requested the return or deletion of the copies of the Western Digital Hard Drive.  See Letter, ECF Docket Entry No. 362.

One of the folders on the Western Digital Hard Drive contained 13 photographs of Camila taken on November 2, 2005, at least nine of which were child pornography. Several of the photographs depict Camila lying on a bed fully nude and at least five photographs depict close-ups of Camila's genitals.[3]

On March 13, 2019, a grand jury in the Eastern District of New York returned a second superseding indictment against defendants Keith Raniere, Clare Bronfman, Allison Mack, Kathy Russell and Lauren Salzman, which, among other things, added four additional predicate racketeering acts, including three alleging production and possession of child pornography.

III.     Pretrial Proceedings

On March 1, 2019, counsel for Raniere contacted the government by email and requested to inspect the material on the Western Digital Hard Drive that the government had identified as child pornography. As Raniere acknowledges, Rule 33 Mot. at 8, defense counsel inspected the Western Digital Hard Drive at the FBI. On March 21, 2019, counsel for Raniere requested to have a defense computer expert conduct a forensic examination of the child pornography, and shortly thereafter, on March 25, 2019, defense counsel and the expert inspected the evidence at the FBI.

In the months before trial, the government repeatedly advised that it would consent to a brief adjournment of trial in order to allow Raniere additional time to conduct

_____

[3]     The government attempted to create a "scrubbed" version of the Western Digital Hard Drive without the folder containing child pornography and provided it to Raniere's counsel. Raniere's trial counsel thereafter alerted the government that based on counsel's own review, the drive still contained carved (i.e., deleted but forensically recovered) images of the child pornography and returned the drive to the government to be re-produced a second time. See 04/04/2019 Status Conference Transcript, Exhibit B-003.

any further forensic review of the child pornography images, offers that Raniere rebuffed. See, e.g., ECF Docket Entry No. 456 ("We are ready [for trial] . . . . This continues to be true, even though the government has superseded the indictment. . . .")); Docket Entry No. 485 ("[W]e look forward to abiding by the Court's trial date.").  On March 29, 2019, the government filed an opposition to Raniere's motions to sever or dismiss the child exploitation racketeering acts and specifically requested that the Court inquire about Raniere's preparedness for trial.  See ECF Docket Entry No. 485 ("The Court should reject Raniere's attempt to use his right to a speedy trial as a sword and his fundamental right to prepare a defense as shield to defeat the public's interest in holding him accountable for the serious crimes of which he has been accused.").

At a status conference held on April 4, 2019, counsel for Raniere indicated that the defense forensic expert had conducted a review of the evidence at FBI and represented that Raniere expected to be fully ready by the trial date:

> [W]e do have an expert.  The expert's been down to the FBI.
> The Government was very responsive when I asked for dates.
> They accommodated our dates.  Our expert went down.  I expect
> they'll accommodate our other dates.  So as long as we're
> continuing to be productive as we've been—and I think that will
> continue—I fully expect to be ready for those charges and all
> the charges on the trial date.

See Status Conference Tr., Exhibit B-005.  At the government's request, the Court asked counsel for Raniere to confirm that Raniere would be ready for trial, to which Raniere's counsel answered in the affirmative.   Exhibit B-008.

APPLICABLE LAW

Rule 33 provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P.

33(a). The Rule further provides that a motion for a new trial must be filed "within 14 days after the verdict or finding of guilty" unless it is "grounded on newly discovered evidence." Fed. R. Crim. P. 33(b). Where a motion is based on "newly discovered evidence," it must be filed within three years of the verdict. Fed. R. Crim. P. 33(b)(1).

For a court to grant a motion for a new trial based on newly-discovered evidence, the defendant must demonstrate that "(1) the evidence be newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." United States v. Owen, 500 F.3d 83, 88 (2d Cir. 2007); see also United States v. Persico, 645 F.3d 85, 109 (2d Cir. 2011). Evidence "that was known by the defendant prior to trial, but became newly available after trial," does not qualify as new evidence that may provide the basis for a Rule 33 motion. Owen, 500 F.3d at 89.

As relevant here, courts in this Circuit have held that post-trial expert reports cannot constitute "newly discovered evidence" when such reports were based on materials "available to the defense before and during the trial." Pri-har v. United States, 83 F. Supp. 2d 393, 401 (S.D.N.Y. 2000) (concluding that "[e]xpert reports . . . based upon evidence available to the defense at trial, do not constitute new evidence" under Rule 33), aff'd, 10 F. App'x 4 (2d Cir. 2001); see Massaro v. United States, No. 97 CIV. 2971 (MGC), 1998 WL 241625, at *2 (S.D.N.Y. May 12, 1998) (denying as untimely motion for new trial on the ground that post-trial tests conducted by newly-retained experts purportedly showed that a bullet was "planted" to corroborate the prosecution's case).

In light of the deference owed to a jury's verdict, the Second Circuit has cautioned that district courts should exercise their Rule 33 authority only "'sparingly' and in 'the most extraordinary circumstances.'" United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992)). "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33," United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009), and the crucial question for the court is whether "it would be a manifest injustice to let the guilty verdict stand." Sanchez, 969 F.2d at 1414. A "manifest injustice" occurs where a trial court cannot be satisfied that "competent, satisfactory and sufficient evidence" supports the jury's finding of guilt beyond a reasonable doubt, and where a "real concern" exists "that an innocent person may have been convicted." Id.

A motion for a new trial is committed to the discretion of the district court, and its decision will be reversed only for an abuse of discretion. See United States v. Wong, 78 F.3d 73, 78 (2d Cir. 1996); United States v. Gambino, 59 F.3d 353, 364 (2d Cir. 1995) (the district court's discretion is "broad" because "having presided over the trial, it is in a better position to decide what effect the newly discovered materials might have had on the jury") (citations omitted).

## ARGUMENT

Raniere's motions are untimely, meritless and should be summarily denied. As a preliminary matter, Raniere has failed to identify any "newly discovered evidence" within the meaning of Rule 33. Raniere contends that a report authored by J. Richard Kiper, dated April 25, 2022 (the "Kiper Report") and other purported expert reports constitute newly discovered evidence because they establish that the government "manufactured child

pornography and planted it on a computer hard drive." Rule 33 Mot. at 3. This claim is not only meritless, but demonstrably false.

First, the Kiper Report and the reports of other purported experts cannot constitute "newly discovered" evidence under Rule 33 because all the information and material relied upon in these reports were provided and known to Raniere at the time of trial. As courts in this Circuit have held, post-verdict expert reports based upon evidence available to the defense before or at trial cannot constitute "new evidence" under Rule 33. Second, as set forth in the declaration of Federal Bureau of Investigation Senior Computer Scientist David Loveall II, appended hereto as Exhibit C, the so-called "findings" contained in the Kiper Report are inaccurate and misleading. Third, Raniere cannot establish that the jury's verdict represents a "manifest injustice" in light of the overwhelming evidence of his guilt. For these reasons, Raniere's motion for post-verdict discovery should also be denied.[4]

Put simply, Raniere's motions find no support in the law; they contain false and misleading factual claims and conspiratorial accusations; and they are wholly without merit. They should be summarily denied.

---

[4] Before and during trial, all electronic discovery in the government's possession, including contraband materials, was made available for Raniere's inspection at FBI CART. Nevertheless, Raniere's motion for post-verdict discovery seeks forensic copies of the camera card of the Canon EOS 20D camera, a file listing for the images of the Western Digital Hard Drive, and the notes of CART Examiner Flatley. Def. Mot., ECF Docket Nos. 1192. Raniere had the opportunity to request and/or inspect these items before and during trial. Indeed, Raniere's motion fails to mention that Raniere made a request for Examiner Flatley's notes during trial, and the government provided them to counsel. Tr. 4952 (confirming counsel's receipt of the notes).

I.    Raniere's Motion Identifies No "Newly Discovered" Evidence

Raniere's motion for a new trial fails because he has failed to identify any "newly discovered evidence." The purported expert reports cannot constitute "newly discovered" evidence under Rule 33 because all the information and material relied upon in these reports were provided to Raniere or known to Raniere at the time of trial.

Raniere lists five "key findings" that he claims constitutes "newly discovered" evidence. Rule 33 Mot. at 4-5. The first is that "[d]uring the execution of the search warrant at 8 Hale Drive, Halfmoon, New York, on March 27, 2018, FBI agents initially ignored several areas with evidentiary items in the downstairs of the residence, went upstairs, ignored several more areas, and then went straight to the study area, where the very first two evidentiary items they collected just happened to be the Canon digital camera . . . and the Western Digital hard disc drive[.]" Rule 33 Mot. at 4. This so-called "finding," which is little more than insinuation, obviously cannot constitute "newly discovered evidence." At trial, Special Agent Christopher Mills testified regarding the execution of the search warrant at 8 Hale Drive and the seizure of the Western Digital Hard Drive and Canon camera, and was cross-examined. Trial Tr. ("Tr.") 4289-4314.

Another "key finding," according to Raniere, is that the folder on the Western Digital Hard Drive in which the child pornography images were discovered has "all the hallmarks of fraud" because certain claimed anomalies in the metadata for those files suggest that they were not created as part of a "legitimate automated backup." Rule 33 Mot. at 4-5. The Kiper Report concludes that because certain files on the Western Digital Hard Drive reflected a "created" date of 2003 but a "last modified" date of October 2005 or later, the files must have been copied manually. As set forth in the declaration submitted by Senior

10

Computer Scientist Loveall II, this conclusion is faulty. Exhibit C, Loveall Decl. ¶¶ 17-18. But in any event, the digital evidence underlying this purported "finding" was known to Raniere at the time of trial. Indeed, it was undisputed at trial that the metadata associated with at least some of the files had various anomalies, including a "creation date" in 2003, a "modified" date in 2005, and an "accessed" date in 2010, and Raniere's counsel cross-examined FBI CART Senior Forensic Examiner Booth at length regarding these and other characteristics of the electronic data.[5] See, e.g., Exhibit B-012-019.

Raniere was also aware at the time of trial that law enforcement agents had accessed the camera card of the Canon EOS 20D camera without a write blocker on September 19, 2018, and Raniere's trial counsel cross-examined Senior Forensic Examiner Booth regarding that access.[6] See Exhibit B-020-021 (testimony acknowledging that the camera card had been accessed while in the custody of the FBI on September 19, 2018). Examiner Booth testified, on cross-examination, that the camera card had been accessed "while it was in the possession of the FBI." Exhibit B-020. Raniere's trial counsel, however, did not raise the issue with the Court or the government and made no attempt to question any law enforcement agents regarding the access, including the case agent who

---

[5]     The child pornography images on the Western Digital Hard Drive were recovered by law enforcement over a decade after they were created, and were discovered on a computer drive onto which a Dell computer had apparently been backed up. The government put forth no evidence at trial regarding the way in which the images had been copied onto the Western Digital Hard Drive.

[6]     This access was not the result of law enforcement "tampering," as Raniere's motion claims. Rather, having no reason to believe that the metadata of the contents of the Canon EOS 20D camera card had any evidentiary value, law enforcement agents directed that a photograph technician copy the photographs from the camera card in order to provide the photographs more expeditiously to defense counsel. Shortly thereafter, on September 25, 2018, the government provided Raniere with copies of the photographs from the camera.

testified after Examiner Booth. Nor did Raniere's trial counsel make any argument, in summation or otherwise, that the child pornography evidence had been fabricated or planted by law enforcement. Given the weight of the evidence against Raniere, it is not surprising that trial counsel made the strategic decision not to present such arguments to the jury. Rather, in summation, Raniere's trial counsel commented that "the FBI CART examiner . . . was very good at what he does, he's very smart, he's very experienced," but argued that there was "no testimony that these [photographs] were ever sent anywhere." Tr. 5516.

The remaining "key finding" highlighted in Raniere's motion is a complaint about purportedly improper handling of evidence. Rule 33 Mot. at 5. But again, the facts underlying this complaint were obviously known to trial counsel at the time of trial; indeed, as support for this "finding," Raniere cites to the trial transcript and a defense trial exhibit. Rule 33 Mot. at 5 (citing Tr. 4906-07, DX 945).

That the information and material relied upon in these so-called expert reports were provided and known to Raniere at the time of trial is fatal to Raniere's motion for a new trial. Courts in this Circuit have held that post-trial expert reports cannot constitute "newly discovered evidence" when such reports were based on materials "available to the defense before and during the trial." Pri-har v. United States, 83 F. Supp. 2d 393, 401 (S.D.N.Y. 2000), aff'd, 10 F. App'x 4 (2d Cir. 2001); see also United States v. Bout, 144 F. Supp. 3d 477, 487 (S.D.N.Y. 2015) ("Rule 33 does not allow for a new trial based on evidence that could have been discovered before trial, let alone evidence that was part of the trial record."), aff'd, 666 F. App'x 34 (2d Cir. 2016).

The district court's decision denying a motion for a new trial in <u>Massaro v.</u> <u>United States</u> is particularly instructive. No. 97-CV-2971 (MGC), 1998 WL 241625, at *1 (S.D.N.Y. May 12, 1998). In <u>Massaro</u>, the defendant filed a motion for a new trial under Rule 33 several years after his trial conviction, based in part on several post-trial expert reports. <u>Id.</u> Massaro was charged with, among other crimes, the murder of Lucchese associate Joseph Fiorito. On the day before opening statements in Massaro's trial, law enforcement recovered a bullet in Fiorito's car, where his body had been discovered three years earlier. Although Massaro's trial counsel was offered a continuance in order to perform tests on the bullet, Massaro declined. After trial, Massaro had the bullet subjected to expert tests that "purportedly show[ed] that the bullet was 'planted' to corroborate the prosecution's case." <u>Id.</u>; <u>see</u> Massaro Motion, No. 97-CV-2971, Docket Entry No. 2 (S.D.N.Y. 1997). The district court denied the motion, holding that the evidence was not "newly discovered" within the meaning of Rule 33. As the Honorable Miriam Cedarbaum explained:

> The bullet was revealed before the close of the trial . . . and Massaro was offered a continuance in order to have tests performed on this evidence. Having learned of the bullet during trial, and having declined the opportunity to test the bullet during trial, Massaro cannot now contend that the post-trial tests conducted by his newly-retained experts qualify as newly discovered evidence permitting him to move for a new trial at this late date. Thus, to the extent that the motion for a new trial is based on evidence relating to the bullet found in Joseph Fiorito's car, it is untimely.
>
> Second, Massaro claims more generally that new expert tests on the government's forensic evidence, conducted after the trial, cast doubt on the reliability of the government's evidence. There is no claim, however, that these tests are based upon evidence that was not available during trial. Rather, the only thing that is "new" about this evidence is the team of experts reviewing it. Such

evidence is not "newly discovered" within the meaning of Rule 33. To the extent that the motion for a new trial is based on this evidence, it is untimely.

1998 WL 241625, at *3.

Raniere concedes that the expert reports are based on information that was available to Raniere at the time of trial, Rule 33 Mot. at 23, but argues that he had insufficient time to conduct a review of the digital evidence in the case. But as in <u>Massaro</u>, Raniere was offered numerous opportunities to adjourn trial in order to allow Raniere additional time to conduct a forensic review of the child pornography evidence, offers that Raniere repeatedly refused. Indeed, on March 29, 2019, defendant Allison Mack submitted a letter requesting, with the government's consent, a 30-day adjournment of the trial date in order to conclude plea negotiations. ECF Docket Entry No. 481. The same day, Raniere filed a letter objecting to the adjournment and thanking the Court for "setting the firm trial date that has existed for months now." ECF Docket Entry No. 483. The Court thereafter sought assurances from Raniere's trial counsel that Raniere was prepared to proceed to trial, which Raniere's counsel provided. Exhibit B-010 ("I have Mr. Agnifilo's clear declaration that he and his client will be ready to go to trial."). Having repeatedly declined the opportunity for any further adjournment of trial for additional time to conduct a forensic review of the child pornography evidence, Raniere cannot now claim that he had insufficient time to review the evidence prior to trial.

Raniere's claim of "newly discovered" evidence is particularly disingenuous because even prior to Raniere's sentencing by this Court three years ago, Raniere apparently sought to make a motion that the evidence in his case had been fabricated, a motion that

Raniere's counsel at that time chose not to file.  For instance, in an April 6, 2020 call with

one of his supporters, Raniere referred to a "draft" of such a motion:

> RANIERE: . . . We have to get more granular.  This report isn't granular enough.  There are so many things that can't be seen, and there are pictures on that, that backup that [was] never . . . backed up. . . . Uh, it's, this seems so outlandish, so tampered with this disk, this, uh, drive, you know?
>
> CHAKRAVORTY: Yeah, absolutely.
>
> RANIERE: I would also like to know from Marc [Agnifilo] how, how long until that new motion is ready to go, even if he doesn't file it, I want to know when it's ready.  I would love to see it if I could and then, of course, there's the jurisdictional motion and uh, a motion for new evidence[.]

Exhibit D-006.  That Raniere apparently contemplated making a motion based on an

allegedly "tampered . . . drive" over three years ago only underscores the fact that nothing in

Raniere's motion is "newly discovered" within the meaning of Rule 33.

The Court should reject Raniere's attempt to circumvent the requirements of

Rule 33.  Forbes, 790 F.3d at 408 (observing that the Supreme Court has recognized that the

"privilege" accorded to a defendant in permitting "more time in which to file a motion for a

new trial based on newly discovered evidence" might "lend itself for use as a method of

delaying enforcement of just sentences") (quoting United States v. Johnson, 327 U.S. 106,

112 (1946)).  The government's timely objection to the filing of this Rule 33 motion

"assure[s]" the government of the relief it seeks, that is, denial of the defendant's Rule 33

motion.  United States v. Abad, No. 01-CR-831 (GBD), 2005 WL 3358480, at *1 (S.D.N.Y.

Dec. 7, 2005) ("Where the government properly objects to an untimely Rule 33 motion, it is

assured of relief.  Because the government did so object in this case, the motion must be

dismissed.") (internal citations and quotation marks omitted), aff'd, 514 F.3d 271 (2d Cir. 2008); see also United States v. Casiano, No. 05-CR-195 (MRK), 2008 WL 1766576, at *1 (D. Conn. Apr. 11, 2008) ("[W]hile the Government may waive a timeliness objection by failing to raise the issue, the Court is obligated to grant relief to the Government provided it properly raises such an objection.").  The purported expert reports are not "newly discovered evidence," and Raniere's Rule 33 motion should be denied as untimely.

II.     Raniere's Motion and the Kiper Report Are Inaccurate and Misleading

Even if Raniere were able to meet the requirements of newly discovered evidence, which he cannot, his motion would not provide the basis for relief because Raniere's accusations are baseless and the conclusions contained in the purported expert reports on which he relies are wrong.

The central premise of the Kiper Report is that because the metadata associated with some of the electronic evidence on the Western Digital Hard Drive had various anomalies, and because those anomalies "happen to align with the government's narrative . . . any reasonable person would conclude that evidence tampering had taken place."  Kiper Report, ECF Docket Entry No. 1169-1 at 195.  But, as indicated in the declaration of FBI Senior Computer Scientist David Loveall II, many of the findings in the Kiper Report are "misleading or erroneous," and the Kiper Report "repeatedly ignores plausible explanations for observed phenomena in favor of allegations of tampering."  Exhibit C, Loveall Decl. ¶ 4.  Raniere's claim, for example, that the camera card was "undoubtedly tampered with, as the thumbnails of a brunette impossibly became thumbnails of a blonde," Rule 33 Mot. at 5, is incorrect, because the use of digital forensic tools to recover deleted files can "routinely produce results like those observed here."  Exhibit C,

Loveall Decl. ¶ 5.  Similarly, Raniere's claim that "files were added to the CF Card, apparently between 4/11/19 and 6/11/19," Rule 33 Mot. at 15, is misleading because the two reports of the camera card were created on those dates, using different configurations and setting options.  Exhibit C, Loveall Decl. ¶ 9.  Raniere's remaining arguments, based on the Kiper Report, that certain other characteristics of the electronic evidence is attributable to manual alteration by law enforcement, Rule 33 Mot. at 16, are similarly faulty.  Exhibit C, Loveall Decl. ¶¶ 11-18.

 Many of the so-called expert "findings" are simply arguments regarding the evidence or testimony adduced at trial that should have been raised, or were in fact raised, during cross-examination at trial.  As one example, Raniere claims that the government "elicit[ed] false testimony from [Senior Forensic Examiner] Booth, specifically that EXIF data, once embedded in a picture is very hard to remove no matter how many times it is moved between devices, that commercial software will not touch EXIF software, and that EXIF data was purposefully designed to make it more difficult to alter . . . ."  Rule 33 Mot. at 14.  The Kiper Report characterizes Examiner Booth's testimony, on direct examination, that EXIF data is more difficult to alter than other types of metadata, see, e.g., Tr. at 4820, as a "miscarriage of justice" and accuses the government of misleading and lying to the jury. Kiper Report, ECF Docket Entry No. 1169-1 at 240.  But even if these complaints about the content of Examiner Booth's testimony could be proper grounds for a motion for a new trial, which they are not, Raniere fails to mention that Raniere's trial counsel cross-examined Examiner Booth regarding the reliability of EXIF data.  Counsel elicited testimony from Examiner Booth that EXIF data, like other metadata, could be changed and altered:

| COUNSEL: | You agree that any metadata, whether it's EXIF data or other data can be changed and altered; correct? |
|---|---|
| SFE BOOTH: | Yes, EXIF data can be altered. |
| COUNSEL: | And there's a variety of different way that that can happen; correct? |
| SFE BOOTH: | Yes, it can. |
| COUNSEL: | Companies can remove—if you send a photo to Facebook, do they take off that data? |
| SFE BOOTH: | Yes, they actually strip off the data. |

Tr. 4987-88.  Similarly, Raniere's various complaints regarding the chain of custody and evidence handling procedures are "not evidence, newly discovered or otherwise," and must be rejected.  United States v. Bourke, No. 05-CR-510 (SAS), 2011 WL 6376711, at *10 (S.D.N.Y. Dec. 15, 2011), aff'd, 488 F. App'x 528 (2d Cir. 2012).

III.     <u>The Evidence that Raniere Created and Possessed Child Pornography Images of Camila Is Overwhelming</u>

Lastly, Raniere does not and cannot assert any grounds upon which to conclude that "it would be a manifest injustice to let the guilty verdict stand," because there is no concern that "an innocent person may have been convicted."  Sanchez, 969 F.2d at 1414.  Raniere was convicted of all seven counts and all eleven racketeering acts submitted to the jury.  Raniere's motion does not contend that Raniere is innocent of the child exploitation racketeering acts or that he did not take photographs of Camila constituting child pornography.  Raniere does not appear to dispute that he was in a sexual relationship with Camila or that she was 15 when his sexual abuse began.  Indeed—even without consideration of any digital forensic evidence contested by Raniere—the evidence adduced

at trial that Raniere created and possessed child pornography images of Camila in 2005 was overwhelming, including the following:

- Substantial evidence that Raniere began sexually abusing Camila in September 2005, two months before he took child pornography photographs of her, including messages referencing the beginning of their sexual relationship as September 2005. See GX 301-R-679 (Camila referring to herself as an "inexperienced 15 year old"); GX 301-R-17; Tr. at 3462-65.

- Communications reflecting that Raniere took sexually explicit photographs of Camila when she was 15 years old, including Raniere's statement to Camila that he "guard[ed] the other pictures" of her from "way back[.]" GX 302-R-44.

- The child pornography photographs themselves, which indicate a contemporaneous sexual relationship with Camila.[7]

- Daniela's testimony that she had a conversation with Raniere about his sexual relationship with Camila, and that the conversation took place at some point prior to the Fall of 2006. (Tr. 2472–74 ("I asked him if he was having sex with my sister [Camila]. He asked me if I minded.")).

- The "Studies" folder in which the child pornography was recovered contained nude photographs of eleven other women with whom Raniere had a sexual relationship in 2005, including Lauren Salzman and Daniela.[8]

- Lauren Salzman's testimony that in approximately 2005, Raniere took what she described as "up-close crotch shot" photographs of her at 8 Hale Drive. Tr. 1534-36.

- Daniela's testimony that in 2005, Raniere approached her with a Canon camera and insisted on taking a naked photograph of her. Tr. 2422-2424.

---

[7] The photographs depict Camila lying naked on a bed, and several photographs depict close-ups of Camila's genitals. Camila's photographs do not show an appendectomy scar, and other evidence admitted at trial reflected that Camila had a scar from appendix surgery in 2007.

[8] Each subfolder was titled with the initials of the woman (or her nickname) and a date. The collection of images were similar in content. Each folder contained images of a nude woman on a bed and close-up photographs of the woman's public hair and vaginal area. Raniere does not appear to dispute that he had a sexual relationship in 2005 with each of the women depicted in the "Studies" folder.

Raniere told Daniela to spread her legs and gave Daniela instructions as to how to position herself.

- Camila's gynecological records, which reflected that in 2011, Camila reported to medical professionals that she had been with the same sexual partner for "five years." GX539-18; Tr. 3312-13.

- Daniela's testimony confirming that a sanitized version of one of the child pornography images depicted her sister. Tr. 2477 ("That's my sister [Camila]."); GX 929.

After Raniere filed the instant motion for a new trial, Camila reviewed the images of child pornography that were recovered from the Western Digital Hard Drive and admitted at trial as Government Exhibits 518A-U. Exhibit A ¶¶ 4-5. She has submitted a sworn declaration stating that after "reviewing the exhibits, I can state with certainty that I am the subject in each photograph, which were taken in 2005 by Keith Raniere, in the loft at Raniere's so-called 'Executive Library,' which was located at 8 Hale Drive in Clifton Park, New York." Id. Camila's declaration states that she "vividly recall[s]" being photographed by Raniere in 2005 and that it was an "unforgettably humiliating and degrading experience." Exhibit A ¶ 8. Camila's declaration further states that "[e]ach exhibit, GX 518-A to GX 518-U, is a photograph of me. I recognize my body, and I recall one of the poses he placed me in and where he was with the camera in relation to my body. I recognize the surroundings, and I remember the feelings of shame and confusion, not understanding why he was doing that to me." Exhibit A ¶ 9.

In light of the overwhelming evidence of Raniere's guilt, Raniere cannot show that "it would be a manifest injustice to let the guilty verdict stand," as required under the law, and his motion for a new trial must be denied.

<u>CONCLUSION</u>

For the reasons set forth above, the government respectfully submits that the

Court should deny Raniere's third motion for a new trial pursuant to Federal Rule of

Criminal Procedure 33 and his motion for post-conviction discovery.

Dated:    Brooklyn, New York
        July 21, 2023

                  Respectfully submitted,

                  BREON PEACE
                  UNITED STATES ATTORNEY
                  Eastern District of New York
                  271 Cadman Plaza East
                  Brooklyn, New York 11201

By:   <u>/s/ Tanya Hajjar</u>
       Tanya Hajjar
       Assistant United States Attorney
       (718) 254-7000

cc:    Clerk of Court (NGG) (by ECF)
      Defense Counsel (by ECF)