LAW OFFICES OF
# Aidala, Bertuna & Kamins, P.C.

ARTHUR L. AIDALA
MARIANNE E BERTUNA
HON BARRY KAMINS (RET)
HON. JOHN M LEVENTHAL (RET)
JOHN S. ESPOSITO
MICHAEL T JACCARINO
IMRAN H ANSARI
DIANA FABI SAMSON
ANDREA M ARRIGO
MICHAEL DIBENEDETTO
LINO DE MASI

546 FIFTH AVENUE
NEW YORK, NY 10036
TELEPHONE (212) 486-0011
FACSIMILE: (212) 750-8297
WWW AIDALALAW COM

8118 - 13TH AVENUE
BROOKLYN, NEW YORK 11228
TEL (718) 238-9898
FAX (718) 921-3292

OF COUNSEL
JOSEPH A. BARATTA
ANTOINETTE LANTERI
WILLIAM R. SANTO
PETER S THOMAS
LAWRENCE SPASOJEVICH

SENIOR COUNSEL
LOUIS R AIDALA
JOSEPH P BARATTA

November 20, 2023

By ECF
The Honorable Nicholas G. Garaufis
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Keith Raniere, et al.
              Criminal Docket No. 18-204 (S-2) (NGG) (VMS)

The Defense respectfully moves for the Court to reconsider its denial of our Motion to Compel (Doc. 1224), acknowledging that the legal standard required for the Court to grant a reconsideration is a stringent one.

I.    Legal Standard for Reconsideration

"[A] motion for reconsideration under Local Rule 6.3 will generally be denied unless "the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *U.S. v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (cleaned up).

A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' and we in no way depart from that basic principle." *Sequa Corp. v. GBJ Corp.* (2d Cir. 1998) 156 F.3d 136, 144.

Although neither the Federal Rules of Criminal Procedure, nor the Local Criminal Rules, expressly contemplate motions for reconsideration in criminal cases, courts in the Second Circuit have traditionally permitted the filing of such motions. *See United States v. Yannotti*, 457 F. Supp. 2d 385, 388 (S.D.N.Y. 2006) (*internal citations removed*) In ruling upon these motions, courts apply the standard set forth in Local Civil Rule 6.3. *See, e.g., Yannotti*, at 388-89; *U.S. v. DiPietro* (02 Cr. 1237 (SWK)).

II.    Arguments for Reconsideration

The Court's decision overlooked two critical pieces of data: (1) the government's use of 'secret evidence' in current proceedings, which the Court relied on to deny fair access to such evidence, and (2) the conclusions from the government's expert, Loveall, are incorrect and unsubstantiated and the government's representations regarding so-called corroborating trial

evidence are insignificant and unsubstantial. Therefore, we seek the disclosure of forensic copies of the Booth forensic copy of the camera card ("Booth camera card copy" as identified as NYC024299_1B15a.E01) and the Flatley copy of the camera card ("Flatley camera card copy," identified as NYC024299.001).

### *1. The Government's Inequitable Use of the Requested Evidence as 'Secret Evidence' Violates Procedural Due Process*

A. Applicable Law

The practice of the government utilizing undisclosed evidence is a violation of due process. *U.S. v. Abuhamra* (2d Cir. 2004) 389 F.3d 309, 322 ("Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other.").

B. Analysis

The government granting Loveall access to both the Booth and Flatley camera card copies, while denying the Defense the same opportunity is an inequitable use of secret evidence by the government. (Loveall Decl., Doc. 1213-3 at ¶ 3, 9). Loveall's unsupported assertion that the copies are "identical," cannot be verified by the Defense due to the government's withholding of these copies. (*Id.* at ¶ 9).

Without the requested disclosure, the Defense cannot mount a complete defense to Loveall's claims. *See e.g.* Crane v. Kentucky, 476 U.S. 683, 690 (1986) The only way the Defense can verify or refute this claim is with access to the copies. Neither the Defense nor the Court should be forced to take Loveall at face value.

Loveall's report is central to the government's argument in its oppositions to the *Brady* and Rule 33 motions. Loveall was given access to the requested items and used them to counter the Defense's tampering claims. The Court, citing Loveall's findings, has denied the Defense access to this evidence, finding Loveall's explanations to be "far more plausible and convincing." (Memo at 4, 7, 9, 10; see Memo at 10).

The *Abuhamra* ruling underscores the need for due process in this case with a 120-year sentence in the balance and no valid reason for nondisclosure. There is no prejudice to the government as it can easily provide the evidence, as it only requires duplicating existing materials already shared with Loveall. The Court's use of the Loveall report, based on evidence the Defense has not seen, violates fundamental fairness.

We respectfully request that the Court correct this by ordering the disclosure of the secret evidence prior to the Defense submitting its Rule 33 reply.

## 2. *The Conclusions from the Government's Expert, Loveall, Are Incorrect and Unsubstantiated and the Government's Representations Regarding So-Called Corroborating Trial Evidence Are Insignificant and Unsubstantial*

A. Applicable Law

It violates fundamental fairness to be denied evidence, which through testing, would raise a "reasonable probability that Mr. Raniere did not commit the offense." See *Osborne*, 557 U.S. at 63, 70.

B. Analysis

The Court's ruling, based upon the government's misrepresentation, equated the Flatley and Booth camera card copies to be identical. However, the PDF from the Booth camera card copy revealed 37 more files than Flatley's. The Defense experts have proven that at least 28 of these 37 new files were demonstrably staged and tampered. (Exhibit A). This strongly indicates the two copies are different.

Moreover, the Booth camera card copy was created only in the trial's final three days, after Mr. Raniere's trial counsel had asked for, and been denied, a severance to examine the digital evidence relevant to Racketeering Acts two, three, and four. Thus, the Court's statement that, "Prior to Mr. Raniere's trial, the photographic evidence and the metadata relating to the photographic evidence was available to the Defendant," is incorrect. (Memo at 2).

The Defense received only PDF summary reports of these items, not the full data. These PDF reports, created with forensic software, provide a narrow snapshot— similar to a table of contents rather than a full book — omitting much of the device's available information and subject to the FBI examiner's discretion.

We request the Court to consider Exhibit A, a joint declaration from seven forensic experts, including four ex-FBI CART analysts, in reevaluating the tampering allegations and the reliability of Loveall's report. The joint declaration disproves Loveall's rebuttals, identifies significant defects in his process, and includes further evidence of tampering. The seven experts have unanimously determined extensive tampering took place with the camera card and hard drive, including the staging of photos across both devices, the manipulation of hundreds of timestamps, and the planting of the photos, including the alleged illegal photos, on the hard drive. (Exhibit A).

*These findings are material because they raise a reasonable probability that Mr. Raniere* did not commit the offense; there would be no need to commit such extensive tampering of these devices if Mr. Raniere truly did take illegal photos of Camila. These findings also render these two devices, which were necessary to introduce and support Racketeering Acts 2, 3, and 4, as false and incompetent. Moreover, the government's claimed "overwhelming" corroborating evidence is flawed and fails to independently substantiate the charges. (Exhibit C).[1]

---

[1] The Court's denial also relied on a post-trial declaration from Camila, which is untested. It is also contrary to the weight of evidence detailed in Exhibits B and C.

III. Conclusion

We respectfully request that the Court order the government to disclose the requested items, and in accordance with the process outlined by Dr. Kiper (See Doc. 1223).

IV. Additional Request for Extension of Time to File Defense its Rule 33 Reply

Pursuant to the Court's November 6, 2023 Order, Defense respectfully submits that we will file a reply to the Government's opposition to the Rule 33 Motion for New Trial, independent of any ruling on the discovery issues. However, Mr. Raniere has been denied access to his attorneys for an extended period of time. On or about November 1, 2023, Mr. Raniere was involuntarily placed in a Special Housing Unit. It was determined by the Warden that there were credible threats to his safety and well-being and therefore he was placed in a solitary housing unit pending further investigation. It is our understanding that the investigation will take 30 days (plus or minus) after which it is our hope that Mr. Raniere will immediately be returned to general population and his prior living quarters.

As a result, from November 1, 2023, until November 16, 2023, Mr. Raniere did not have access to any attorney or individual outside of USP Tucson. We can provide the court pages of email correspondence with Mr. Raniere's authorized BOP representative and USP Tucson, BOP Attorneys, and BOP Central Office, asking for access to his legal counsel and updates on his safety and wellbeing. It took eight (8) days to receive any credible information and updates and finally, on November 16, 2023, Mr. Raniere was finally granted a brief legal call with counsel and on Friday, November 17, 2023, Mr. Raniere was granted a second legal call. Requests for legal documents to be delivered to Mr. Raniere have been denied during these past 21 days. Mr. Raniere has not been able to see or review any drafts of proposed filings nor make comments or discuss with counsel. Requests for additional legal calls and legal visits this week and beyond and pending and have not yet been approved.

We are diligently working with the BOP and staff at USP Tucson to arrange for Mr. Raniere to have access to an appropriate amount of time with his legal team and proper physical access to his counsel and documents. His placement in a Solitary Housing unit has complicated this process and will potentially continue to complicate this process further. We are working vigorously to have him placed back in general population, however, until such time that this happens, and we are assured of regular legal calls and visits it is almost impossible for us to determine how much time we will need to properly respond.

Dated: November 20, 2023

Respectfully submitted,

/s/ Arthur L. Aidala
/s/ Michael Jaccarino
Aidala, Bertuna & Kamins, P.C.
546 5th Avenue, 6th Floor
New York, New York 10036
*Attorneys for Keith Raniere*

/s/ Joseph M. Tully
Tully & Weiss Attorneys at Law
713 Main Street
Martinez, California 94553
*Attorney for Keith Raniere*