# Exhibit C

Appendix 1

I. **Analysis of the Government's So-Called Corroborating Evidence**

The Court described the government's corroborating evidence as "substantial" and "significant," (Memo at 4, 7, 9) and noted the Defense did not address it in our Reply. (Memo at 4). The Court asserted that this evidence showed Mr. Raniere took inappropriate photos of Camila when she was fifteen (*Id*.). However, a detailed examination of the cited evidence disproves this conclusion.

Below are the nine items listed, from the government's opposition (Doc. 1213, 19-20), which the Court relies upon, with analysis following each item:

1. Substantial evidence that Raniere began sexually abusing Camila in September 2005, two months before he took child pornography photographs of her, including messages referencing the beginning of their sexual relationship as September 2005. See GX 301-R-679 (Camila referring to herself as an "inexperienced 15 year old"); GX 301-R-17; Tr. at 3462-65.

The alleged messages referenced above do not substantiate and are not dispositive to the taking or possessing of photographs at issue.

2. Communications reflecting that Raniere took sexually explicit photographs of Camila when she was 15 years old, including Raniere's statement to Camila that he "guard[ed] the other pictures" of her from "way back[.]" GX 302-R- 44.

The cited alleged text change is below and does not substantiate the government's claim. The conversation occurred **when Camila was 24**, and gives no specifics on the content or timing of the "pics" mentioned:

> 8:02pm, Feb 1 - Camila: Guard these pics, ok?
> 8:05pm, Feb 1 - Unknown Caller: Yes of course. You have copies? You know I guard the other pictures right?
> 8:06pm, Feb 1 - Camila: I have copies..... and the original
> 8:07pm, Feb 1 - Unknown Caller: They are off my phone... You know I have the others yes?
> 8:08pm, Feb 1 - Camila: From way back when..?
> 8:08pm, Feb 1 - Unknown Caller: I wanted the original forever. I thought it was truly mine.
> 8:09pm, Feb 1 - Unknown Caller: Yes, from way back…
> (Government Exhibit 302-R-44)

The alleged messages referenced above do not substantiate and are not dispositive to the taking or possessing of photographs at issue.

3. The child pornography photographs themselves, which indicate a contemporaneous sexual relationship with Camila.

These photographs depict Camila. However, they do not establish if she is fifteen in the photographs. The seven experts invalidate the photo metadata and folder names on the hard drive and establish that all the 168 photographs, including the alleged photos of Camila, were planted and staged on the hard drive. (Exhibit A)

4. Daniela's testimony that she had a conversation with Raniere about his sexual relationship with Camila, and that the conversation took place at some point prior to the Fall of 2006. (Tr. 2472–74 ("I asked him if he was having sex with my sister [Camila]. He asked me if I minded.")).

Alleged sexual conduct is not at issue here. The issue is the alleged production and possession of photographs taken at fifteen.

5. The "Studies" folder in which the child pornography was recovered contained nude photographs of eleven other women with whom Raniere had a sexual relationship in 2005, including Lauren Salzman and Daniela.

While the photos are genuine depictions, the dates of the folders and photos, and their presence on the hard drive are the result of tampering and staging, as proven in the experts' Finding 7. (Exhibit A).

6. Lauren Salzman's testimony that in approximately 2005, Raniere took what she described as "up-close crotch shot" photographs of her at 8 Hale Drive. Tr. 1534-36.

Ms. Salzman being photographed by Mr. Raniere as an adult in 2005 does not establish that Mr. Raniere took nude photographs of Camila in 2005 when she would have been fifteen.

7. Daniela's testimony that in 2005, Raniere approached her with a Canon camera and insisted on taking a naked photograph of her. Tr. 2422-2424. Raniere told Daniela to spread her legs and gave Daniela instructions as to how to position herself.

Similarly, Daniela being photographed by Mr. Raniere as an adult in 2005 does not establish that Mr. Raniere took nude photographs of Camila in 2005, when she would have been fifteen.

2

8. Camila's gynecological records, which reflected that in 2011, Camila reported to medical professionals that she had been with the same sexual partner for "five years." GX539-18; Tr. 3312-13.

As above, alleged sexual conduct is not at issue here.

9. Daniela's testimony confirming that a sanitized version of one of the child pornography images depicted her sister. Tr. 2477 ("That's my sister [Camila]."); GX 929.

This only establishes the identity of Camila in a nude photo, but not when the photograph was taken, which is the crux of the issue; these photos are <u>not</u> obviously child pornography, which is why the government needed to rely on the dating to argue the subject's age as fifteen.

In conclusion, the government's so-called corroborating evidence cannot be deemed "significant" or "substantial," in support of the charges, nor should the Court rely upon them as such.

## II. Issues with the Post-Trial Camila Declaration

First, Camila's post-trial declaration does not negate the evidence of tampering and staging. The Court asserts that Camila, in her post-trial declaration, "confirm[ed] the authenticity of the photos."(Memo at 4) Nonetheless, the planting and staging of evidence on the hard drive and camera card render them incompetent, irrespective of her claims.

Second, inconsistencies with Camila's declaration require cross-examination. She claims there was only <u>one single photo session</u> in 2005, "no more than 2-3 months after September 18, 2005." (Camila Post-Trial Decl., Doc. 1213-1 at ¶ 8.) She claimed certainty of the timing because "it was the only time he took photographs of me like that." (*Id*. at ¶ 10) Yet, her sentencing statement contradicts this, as she alleged <u>multiple photo sessions</u> at age 15. (Sentencing Hearing Transcript (October 27, 2020) at 21:7-13). The hard drive shows photos allegedly taken in <u>two sessions</u>, November 2 and 24, 2005, further contradicting her post-trial declaration.

Additionally, an email from Daniela on November 2, 2005, notes construction being done at 8 Hale, "They are doing some work at Hale and have everything covered in plastic for a couple of days now" (Government Exhibit 609.) This contradicts the photo metadata on the hard drive, which indicates photos were taken that day at 8 Hale. It contradicts the name of the folder containing these photos, "2005-11-02-0440-20", which suggests the photos were downloaded to a Dell computer, which allegedly existed and was located at 8 Hale, on the same day. (Kiper Report, Doc. 1178-2 at Bates 008-009; Trial Transcript at 2569:19-2571:24) This supports that those alleged contraband photos' timestamps and folder names were fabricated.

3

In pre-trial letters to Mr. Raniere, a 28-year-old Camila expresses her belief in Mr. Raniere's innocence, and admits she was "struggling emotionally and financially." (See Exhibit B) Note that on July 20, 2021, Camila was awarded restitution in the amount of $507,997.45 following Mr. Raniere's conviction. (Restitution Hearing Transcript (July 20, 2021) at 38:24-25.)

Finally, the government's inclusion of this new evidence of Camila's post-trial declaration underscores the need for an evidentiary hearing. It is elementary that guilt cannot be determined by declaration. (U.S. Const. amend. VI.) When the government brings up new evidence, the Defense has the absolute right to challenge it.

### III. Miscellaneous Errors

#### A. Misinterpretation of the Government's Stance on Metadata

The Court wrote, "Booth acknowledged in this testimony that the metadata was not reliable as to when the photos were taken." (Tr. 4940:13-15.) However, the Court here mistakes one kind of metadata, file creation dates, with the timestamps located inside a photo's EXIF metadata. Examiner Booth testified the <u>file creation dates</u> are not reliable. Booth clarified that the EXIF metadata is more reliable and the "best evidence of when the photos were taken. (*Id.* at 4829:25-4830:11; 4978:13 - 4979:15)) Neither the government nor Booth conceded that the EXIF metadata, which the government used to date the alleged illegal photos to 2005, were unreliable. In fact, the government argued the opposite at closing, that "Booth testified that the most reliable metadata the FBI could obtain from the images … said that they were taken exactly when the folders stated they were taken." (*Id.* at 5371:16-24)

#### B. Misstatement Regarding the Judgment

The Court wrote in its ruling that Mr. Raniere was convicted of "two counts of sex trafficking" (Memo, Doc. 1224 at 1) While it is not crucial to the legal issue at hand, the Defense respectfully corrects that record that Mr. Raniere was convicted of only one count of sex trafficking. (See Doc. 969)