UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
UNITED STATES OF AMERICA,            Case No. 1:18-cr-00204-NGG-VMS

         v.                                SEPARATE NON-STATUTORY MOTION
                                          TO COMPEL POST-JUDGMENT
                                          MATERIAL & EXCULPATORY
KEITH RANIERE,                       DISCOVERY REGARDING NEWLY
                            Defendant.   DISCLOSED PHOTOGRAPH
---------------------------------------------------x TECHNICIAN

## INTRODUCTION

At the outset, for clarity, this motion is a separate motion to compel discovery and is not intended to serve as a reply regarding the motion for reconsideration that is currently pending before Your Honor. (Doc. 1225) Here, the Defense respectfully writes to ask the Court to compel disclosure of all information pertaining to the unknown photograph technician who, prior to trial, and without authorization,[1] changed[2] and forensically manipulated an unpreserved[3], essential piece of evidence – the camera card. The government concealed this information until recently disclosing it in its consolidated opposition to the Defense motions, four years after trial, necessitating this request. (Gov. Resp., Doc. 1213 at 11, n.6.) Pre-trial statements by AUSA's to the Court and government agents' trial testimony appear crafted to cover up this malfeasance. The Court must compel disclosure of all information relating to this photograph technician, as outlined in Exhibit A. This disclosure is separate from that requested in the pending Motion to Reconsider (Doc. 1225) and is also necessary for a fair and competent reply to the Rule 33.

---

[1] Only CART is authorized to process original digital evidence. (Doc. 1169 at 5, n.4.)
[2] AUSA Hajjar and government expert Loveall conceded that the camera card changed on September 19, 2018, in FBI custody. (Gov. Resp. at 11, n.6; Loveall Decl., Doc. 1213-3 at ¶ 10.)
[3] The camera card, and its camera, were only delivered to CART on February 22, 2019, five months after this unauthorized access by the photograph technician. (Chain of Custody, DX 945 at 3.)

## STATEMENT OF RELEVANT FACTS

### A. Recent Disclosure of the Photograph Technician

On July 21, 2023, AUSA Hajjar disclosed for the first time that prior to forensic preservation by the Computer Analysis Response Team (CART), "law enforcement agents" directed a previously undisclosed photograph technician to access the 8 Hale camera's memory card. (Gov. Resp., *supra*.) This was not documented in the chain of custody or in any other information previously disclosed to the Defense. The government now attributes <u>permanent alteration of the original evidence</u>, recently conceded to by government expert Loveall<u>, as being the result of this incident.</u> (Gov. Resp., *supra.*, Loveall Decl. *supra*.) This was five months before the alleged accidental discovery of the card's significance, as the purported source of alleged child pornography. (Second Lever Aff., Doc. 594-2 at ¶ 11.)

### B. Timeline of Events

On March 27, 2018, FBI agents seized a Canon camera, containing a memory card, from 8 Hale pursuant to a warrant. (Trial T. at 4290:4-4307:5.)

Once digital evidence is collected, FBI protocol dictates it must be processed and preserved by CART before any case agent reviews it. (Doc. 1169 at 5, n.4.)

However, on July 10, 2018, SA Maegan Rees checked out the camera and memory card for "evidence review," before it was sent to CART, violating FBI protocol. (Chain of Custody at 2-3.) She held these items for seventeen days. (*Id.*) All other 8 Hale devices remained in Evidence Control. This occurred seven months prior to the 'accidental discovery' of the child pornography.

On August 3, 2018, in a letter enclosing discovery, AUSA Penza asserted that the government is in possession of devices, including "[e]lectronic devices ... [from] 8 Hale Drive," and that "***full discovery copies*** of these materials [from 8 Hale and other sources] will be produced to all defendants in the coming weeks or as soon as practicable." (Letter Enclosing Discovery (August 3, 2018) at 5.) (emphasis added.)

On August 8, 2018, the 8 Hale devices were delivered to CART *for the first time*, for processing, by SA Lever – except for the 8 Hale camera and card, which remained in Evidence Control. (DX 961 at 1; Chain of Custody at 2.)

However, on September 11, 2018, AUSA's Penza and Hajjar asserted to this Court that CART began processing all seized devices from 8 Hale "<u>Within days</u>" of the seizure." (Doc. 129, page 2, ¶ 1.)

During the same hearing, they asserted that, "[T]he government intends to make available ***full discovery copies of devices*** seized from the Library [located at 8 Hale] to all defendants." (*Id.* at 2 ¶ 2.) (emphasis added.)

On September 13, 2018, AUSA Penza asserted to this Court that the government would produce discovery <u>with metadata</u>, explaining, "[We] initially produced ... material ... that did not have metadata... [W]e received objections to that... [N]ow we are doing it the way that that we believe is proper and right and ... the way that the defendants want it." (9/13/18 Pre-Trial T. (E.D.N.Y.)(Scanlon, J.) at 10:12-20.)

On September 14, 2018, AUSA Penza asserted to this Court that the government's plan was to provide "metadata" per the Defense's request by providing "***full discovery copies*** to defendants of all the material in our possession." (9/14/18 Pre Trial T. (E.D.N.Y.)(Garaufis, J.) at 5:19-6:21.) (emphasis added.)

On September 18, 2018, AUSA Hajjar asserted to this Court, "We expect to make those electronic devices [from 8 Hale] available in *full -- discovery copies* available for early access to all the defendants by the end of next week." (9/18/18 Pre-Trial T. (E.D.N.Y.)(Scanlon, J.) at 5:19-23.) (emphasis added.)

On September 19, 2018, "law enforcement agents" "directed" an unauthorized "photograph technician," <u>outside of CART</u>, to access the camera card. This unauthorized access left the evidence forever altered, with some crucial metadata, including last accessed dates, forever destroyed. These are all facts *conceded* by the government. (Gov. Resp. *supra*; Loveall Decl., *supra*.) Seven days later, SA Lever returned the items to Evidence Control. (Chain of Custody at 2.) At this point, neither the camera nor the card had been delivered to CART.

On September 25, 2018, purportedly because "law enforcement agents" did not believe the metadata to have "evidentiary value," the government intentionally disclosed only a PDF document of photos from the camera's card, **without metadata**, instead of a **"full discovery copy"** of the device, which they produced for the other seized devices. (Gov. Resp., *supra*.; Carby PDF, VDM_NXIVM00005028 – VDM_NXIVM00005130.)

However, on September 27, 2018, AUSA Penza asserted to this Court that the government had made available "***full discovery copies*** of all the electronic data in its possession to defendants," except for "a few outstanding items" from 3 Oregon. (9/27/18 Pre-Trial T. (E.D.N.Y.)(Scanlon, J.) at 4:6-15.) (emphasis added.) Later during that same hearing, AUSA Hajjar asserted to this Court, "[A]ll the 8 Hale Drive materials have either been provided to all the defendants now or will be provided by October 5th," and that the Defense "will ***have full access the same way the government*** has by October 5th … to everything at 8 Hale." (*Id*. at 32:23-25, 33:9-12.) (emphasis added.) Full access includes access to a full discovery copy,

which was not provided for the camera card. Despite having disclosed a PDF document instead of a full discovery copy of the 8 Hale camera's card, AUSA Hajjar asserted to this Court that for "an 8 Hale camera… We just pulled out the pictures out ***and gave them everything***. That search is done." (*Id.* at 35:5-9.) (emphasis added.)

On December 18, 2018, in a motion, AUSAs Penza and Hajjar asserted to this Court, "[T]he government recognizes and takes seriously its obligations under *Brady*, *Giglio* … and its progeny, and will continue to comply with those obligations. Indeed, the government has already surpassed its disclosure obligations in this case." (Doc. 248 at Bates 65.)

On February 11, 2019, AUSA Penza asserted to this Court twice that the defendants "have everything from 8 Hale." (Pre-Trial T. 2/11/19 at 34:14-19.)

On February 21, 2019, the Canon camera was identified by agents as the purported source of alleged child pornography, which was 'accidentally discovered' inside of a computer backup folder on a hard drive from 8 Hale Drive. (Second Lever Aff. at ¶ 11-12.) This led to three Racketeering Acts for the alleged production and possession of child pornography. (Doc. 430.) On March 18, 2019, AUSA Penza emphasized the importance of these charges, stating they were "at the heart of our racketeering conspiracy." (Pre-Trial T. 3/18/19 at 19:14-16.)

On February 22, 2019, SA Lever delivered the camera and card to CART, specifically to SFE Flatley, for preservation and processing. (Chain of Custody at 3.) At this point, the card had already been permanently altered during the photograph technician's access, and had been accessed for "evidence review," without authorization, outside of CART, by both SA Lever and SA Rees, for a total of 24 days. (Chain of Custody.)

On April 4, 2019, the Defense sought all reports related to the child pornography evidence. In response, AUSA Penza asserted to this Court, "We're going to produce everything,"

and emphasized that, "[T]here's very little evidence in this case that does not relate" to "the alleged victim of the child pornography charges." (Pre-trial T. at 4/4/19 at 12:12-13:13, 13:7-11.)

On April 24, 2019, two days into jury selection, the government disclosed SFE Flatley's PDF report based on CART's forensic copy of the card. (Rule 16 Discovery Letter (April 24, 2019).) They did not disclose this forensic copy, nor did they disclose any information regarding the access by a photograph technician prior to Flatley's receipt of the card.

On April 29, 2019, this Court concluded, in denying Defense's pre-trial motion to compel, that it "accepts the Government's representation that it is aware of its *Brady* obligations and that it will continue to comply with those obligations." (Doc. 600 at Bates 61.)

On June 10, 2019, during trial, AUSA Hajjar elicited testimony from SA Mills that the camera, which contained the card, was reviewed **only with CART**, in accordance with FBI protocol. (Trial T. at 4307:6-18.) However, it had been reviewed by SA Lever, SA Rees, and the photograph technician, all outside of CART.

On June 11, 2019, in violation of protocol, SFE Booth returned to the original camera card and created a second forensic copy from it. (DX 961 at Bates 29-30; Kiper Report at Bates 037-038.) The report of this copy contains 37 additional photo files, when compared with the report from SFE Flatley's copy.[4] (Kiper Report at Bates 005.) The government did not disclose this copy.

On June 12, 2019, during trial, AUSA Hajjar elicited testimony from SFE Brian Booth that CART follows rigorous processes to ensure original evidence is never altered. He testified,

---

[4] The Defense experts concluded that at least 28 out of the 37 files on the camera card, which only appear on the report of Booth's undisclosed copy – Photos 42, 81-100 and 193-199 – were deliberately tampered with. (Joint Expert Resp. at ¶ 14.) The government claims that these files are present on both the Booth and Flatley copies but have not substantiated their claim with evidence or allowed the Defense to independently verify it. (Loveall Decl. at ¶ 9.)

"[W]e forensically handle it very carefully to make sure we don't modify anything that's on that device." (Trial T. at 4780:6-7.) He detailed that after making the first forensic copy of evidence, they "put it back into the evidence vault the same way that we got it. We don't touch it after that." (*Id.* at 4783:15-17.)

On June 13, 2019, in the final few days of the trial, SFE Booth admitted during cross-examination that the card was accessed by an unknown person on September 19, 2018, and the last accessed dates were overwritten. (Trial Transcript at 4968:5-4973:9.) This overwriting occurred before SA Lever delivered the card to SFE Flatley at CART. (Chain of Custody at 3.)

On June 17 and 18, 2019, in closing arguments, the government relied on photo metadata as the crux of their argument that the photos were taken in 2005, when the subject would have been fifteen, and therefore illegal. AUSA Penza stated, "[T]he photographs were taken in 2005 because that's what the data shows. The forensic examiner, Brian Booth, testified that the most reliable metadata that the FBI could obtain from the images on the Western digital hard drive, said that they were taken exactly when the folders stated they were taken. (Trial T. at 5371:16-24.)

On March 16, 2022, post-trial, the Defense requested the identity of the unknown person who altered the card on September 19, 2018. (Defense Informal Discovery Request, Doc. 1169-1, Exhibits H1-H3.) AUSA Hajjar refused, claiming full compliance with discovery obligations. (*Id.*)

On May 3, 2022, the Defense filed a Rule 33 motion alleging intentional tampering with the camera card and hard drive, supported by affidavits from three independent forensic experts, including retired FBI Special Agent (SA) Dr. Kiper. (Doc. 1169.)

On April 14, 2023, further affidavits from four additional experts, including three former FBI CART examiners, were filed, confirming intentional tampering on the hard drive and camera card, in addition to the uncontested alteration of the unpreserved camera card while in SA Michael Lever's custody on September 19, 2018. (Doc. 1192.)

On July 21, 2023, in its opposition, the government and its expert Loveall conceded that the camera card was altered while in FBI custody, **outside of CART** and prior to CART preservation. (Gov. Resp., *supra*; Loveall Decl., *supra*.) However, the government claimed this was accidental – not intentional "law enforcement 'tampering'" – and done by a previously undisclosed "photograph technician" as "directed" by further undisclosed "law enforcement agents." Notably, the government omitted any supporting evidence for its claim such as identifying information for the "photograph technician," "law enforcement agents," or communications from the "law enforcement agents" to the "photograph technician" which "directed" the "photograph technician" to access the camera card outside the chain of custody, which resulted in the permanent destruction of crucial metadata on the card. However, the government asserts that these "law enforcement agents" were assisting government prosecutors with discovery production, in an effort to "provide the photographs more expeditiously to defense counsel." (Gov. Resp. *supra*.)

On November 20, 2023, the joint declaration from the now seven independent Defense forensic experts confirmed that the alleged child pornography was added to the hard drive by a tamperer. (Joint Expert. Resp., at ¶ 8.) They also uncovered additional tampering on the camera card, designed to work in tandem with the manipulations on the hard drive. (*Id.* at ¶ 2, 3, 14.) They found that the tamperer(s) used a computer to add photos to the card and then edited the dates on these photos. (*Id.*) These manipulations were done apparently "to simulate a 2005

timeframe," which is what the government used to present the photos as illegal. (*Id.* at ¶ 2.) Moreover, the same files that the "photograph technician" changed (Photos 224-243) and forensically manipulated (Photos 21-41) <u>on the camera card</u> were also found to be deliberately tampered with and staged. (*Id.* at ¶ 14; Eldridge Report, Doc. 1192 (Bates 20-27) at 7; Trial Transcript at 4968:5-4973:9.) Importantly, without Defense access to the previously requested Flatley and Booth copies of the camera card, it cannot be determined when the tampering happened or by whom.

## ARGUMENT

I. **The Withholding of the Photograph Technician Information Violates Due Process**

The practice of the government utilizing undisclosed evidence is a violation of due process. *U.S. v. Abuhamra* 389 F.3d 309, 322. (2d Cir. 2004) ("Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other.")

"Due process is not confined in its scope to the particular forms in which rights have heretofore been found to have been curtailed for want of procedural fairness. Due process is perhaps the most majestic concept in our whole constitutional system. While it contains the garnered wisdom of the past in assuring fundamental justice, it is also a living principle not confined to past instances." *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 173-74 (1951.)

Analysis

The government omits the identities of the alleged "photograph technician," "law enforcement agents," and any evidence to substantiate their claim, such as the alleged communication from the law enforcement agents who "directed" the photograph technician to access the card. Without this evidence, e.g. the identities of the parties, all records documenting their actions, and their communications, the Defense cannot contest or verify this assertion, which goes to the heart of the current Rule 33 proceedings, as it is the government's purported proof that they did not intentionally tamper with the camera card when it was admittedly altered in FBI custody, on September 19, 2018. Non-disclosure of this evidence prevents the Defense from having an opportunity to fairly and competently reply to the government's opposition to the Rule 33.

The Defense and the Court should not be forced to take the government's assertion at face value, especially given the admitted government evidentiary misconduct and its subsequent, four-year concealment. All information relating to the "photograph technician" and the "law enforcement agents" who "directed" this procedure must be disclosed. (*Abuhamra, supra*; Exhibit A.) There is no prejudice to the government as it can easily provide the evidence, since it relied upon this information in its opposition.

The *Abuhamra* ruling underscores the need for due process in this case with a 120-year sentence in the balance, proven tampering, uncontested government misconduct[5], and no valid

---

[5] In its opposition (Doc. 1213), the government did not contest the following misconduct centered around the alleged child pornography evidence: the mishandling of the camera card by SA Rees and SA Lever (Doc. 1169 at 5); the involvement of USAO Paralegal Teri Carby in the unauthorized access of the camera card (Eldridge Report at 7); the perjury by SA Mills (Doc. 1176 at 9) and SFE Booth, (Kiper Report at Bates 036-038); the breaking of the camera and camera card's chain of custody by SA Mills (Kiper Report at Bates 033); the subsequent unauthorized creation of a different copy of the original camera card by SFE Booth, improperly facilitated by SA Lever and SSA Trenton Schmatz. (Kiper Report at Bates 037-038.)

reason for nondisclosure. Therefore, the Defense respectfully requests the Court to order the government to disclose the requested items.

II. **"Elemental Fairness" Requires Disclosure of the Photograph Technician Information**

"In considering what would constitute elemental fairness in this context, the court finds that at least two minimum requirements must be met: (1) Mr. Raniere must raise a reasonable probability that the production of evidence would demonstrate that he did not commit the relevant offenses; and (2) the evidence must provide support for his Rule 33 motion, the success of which is Mr. Raniere's ultimate goal." (Memo & Order, Doc. 1224 (Garaufis, J.) at 8.)

Analysis

A. Reasonable Probability of Innocence

There is a reasonable probability that the production of the requested evidence would demonstrate that Mr. Raniere did not commit the relevant offenses. The camera card and hard drive were the key evidence needed to introduce and support the central racketeering acts of possession and production of child pornography, as discussed in Defense's Motion for Reconsideration. (Doc. 1225.)

Production of the requested evidence will allow the Defense experts to further cement their findings of the tampering done to the camera card and hard drive and, as such, render both items to be incompetent evidence. This request is not a 'fishing expedition' based on 'blanket assertions. Rather, this request is based on well-supported assertions, as seven independent experts, including four former FBI CART examiners, have proven extensive tampering done to the camera card and hard drive. (Joint Expert Resp.). In addition, the government hid the purported incident of law enforcement agents directing the photograph technician for four years

and, even now, omits any proof, raising doubts about the veracity of the government's explanation. As previously discussed, the same files changed and forensically manipulated by the photograph technician were also independently found to have been deliberately tampered with and planted. The government claims that all the photograph technician did was "copy the photographs." However, the technician actually forensically manipulated the contents of the card, printing deleted photos which are unavailable unless made accessible through the use of specialized forensic software. (Eldridge Report at 7.) The government also claims this was done by a "photograph technician." However, they provide no name, credentials, or records to substantiate that.

Rendering the two evidentiary items relied on by the government for racketeering acts two, three, and four to be incompetent as a result of tampering, as well as providing further proof of government complicity in the evidence fabrication would, *at a minimum,* raise a reasonable probability that Mr. Raniere did not commit the relevant offenses. Thus, the first prong of elemental fairness is met here.

B. Support for the Rule 33

The requested evidence here was inaccessible to the Defense because the government suppressed it – despite Defense's efforts to obtain all evidence linked to the alleged child pornography. It remains only partially disclosed, save for the scant and vague information in the government's footnote. As such, it could not have been discovered "with due diligence before or during trial." *United States v. Forbes,* 790 F.3d 403, 408-09 (2d Cir. 2015.) Axiomatically, when disclosed, the requested evidence will be "newly discovered." This will support Defense's Rule 33 motion by either establishing *by itself* newly discovered evidence sufficient to prevail in a Rule 33 motion or by establishing that the evidence of tampering could not, with due diligence,

have been discovered before or during the trial. *See*, *United States v. Bout*, 144 F. Supp. 3d 477 (S.D.N.Y. 2015.) Thus, the second prong of elemental fairness is also met.

With both prongs met, under the doctrine of elemental fairness, all evidence regarding this alleged photograph technician, the involved law enforcement agents, all records documenting their actions, and their communications must be disclosed. (Exhibit A.)

## CONCLUSION

The Defense respectfully requests that the Court compel the disclosure of the requested, withheld, information regarding the alleged photograph technician, the individual's actions and details regarding the forensic examination of the camera card, the involved law enforcement agents, all records documenting their actions, and all communications, as per Exhibit A.

Dated: December 21, 2023

Respectfully submitted,

/s/ Arthur L. Aidala\
/s/ Michael Jaccarino\
Aidala, Bertuna & Kamins, P.C.\
546 5th Avenue, 6th Floor\
New York, New York 10036\
*Attorneys for Keith Raniere*

/s/ Joseph M. Tully\
Tully & Weiss Attorneys at Law\
713 Main Street\
Martinez, California  94553\
*Attorney for Keith Raniere*
