February 14, 2024

By ECF
The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201



Re: United States v. Keith Raniere, et al.
Criminal Docket No. 18-204 (S-2) (NGG) (VMS)

Mr. Raniere respectfully requests that the Court consider this letter a supplement to the Defense's reply regarding the alleged photograph technician. (Doc. 1233.) Due to over 40 days of lockdown at USP Tucson, starting on January 1, 2024, and sporadic and limited legal communication – including **no legal visits allowed in over 4.5 months** – Mr. Raniere was only able to convey meaningful input on the government's response last week, and identified important additional points he believes are crucial for the Court's consideration.

SUPPLEMENTAL ARGUMENT

**The government introduced critical new evidence in their latest response.** (Gov. Opp., Doc. 1231.)[1] For the first time, they mentioned that the recently disclosed, unidentified "photograph technician" is a "Federal Bureau of Investigation photograph technician." (Gov. Opp. at 1.) (emphasis added.) Although the disclosure of the alleged photograph technician's FBI affiliation may seem minor, it gives rise to significant implications.

This new disclosure by AUSA Tanya Hajjar to the Court, if true, now demonstrates that **at least three FBI employees** – SA Lever, the unidentified FBI "photograph technician" and at least one unidentified "law enforcement agent" – were involved in the unauthorized operation on Item 1B15, the Canon camera and its unpreserved memory card, on September 19, 2018, which permanently altered the original card (Loveall Decl., Doc. 1213-3 at ¶ 10.), and which the government kept secret until 4+ years post-trial (Gov. Rule 33 Opp., Doc. 1213 at 11, n.6.).[2]

---

[1] As a separate point, this response by the government contains critical misrepresentations, which inaccurately minimize structural evidentiary misconduct, and which are addressed in Exhibit B.
[2] This operation only came to light due to an apparent error by the secret FBI "photograph technician," leaving altered dates on the camera card. Without this mistake and the Defense's subsequent challenge under Rule 33, the government might have never disclosed this deliberate mishandling of critical evidence.

1

Significantly, the FBI employees involved in this secret operation **knowingly violated critical FBI evidentiary procedures**. Such actions, if discovered, "could result in an agent's termination." (Exhibit A, Joint Former FBI Decl. at ¶ 9, 11.) These conclusions are supported by a joint analysis from four former FBI CART examiners, who served the FBI for a combined 55 years and are experts in FBI evidentiary procedure. (*Id.* at ¶ 1-3.) Note that because original digital evidence is volatile and especially easy to alter or destroy, the FBI uses CART specialists to ensure the preservation and integrity of such evidence.

All FBI personnel are trained and required to sign the chain of custody form when they handle evidence, ensuring that the evidence's handling is properly recorded. (*Id.* at ¶ 5.) However, in this case, the FBI "photograph technician" accessed the evidence without signing the chain of custody, and despite the fact that original digital evidence is the sole purview of CART. (Chain of Custody, DX 945; Joint Former FBI Decl. at ¶ 4.) SA Lever, who facilitated the operation and gave them the evidence, knowingly allowed this critical breach of protocol. (DX 945.) The FBI "photograph technician" then used unknown forensic software on the original memory card, without a write-blocker, and caused the evidence to be permanently changed. (Joint Former FBI Decl. at ¶ 10, 17.)

Since preserving evidence is a fundamental pillar of FBI evidence handling, SA Lever, the FBI "photograph technician" who was not a CART member, and any other agents involved, clearly knew they were violating critical protocols. (*Id.* at ¶ 11.) Finally, the FBI "photograph technician" returned the evidence to SA Lever, again not signing the chain of custody, and SA Lever allowed this. (Chain of Custody.) This improper operation was "directed" by **multiple**, unnamed "law enforcement agents," meaning that in the least, SA Lever and another, currently unidentified agent directed it and were involved. (Gov. Rule 33 Opp., *supra*.)

Remarkably, of over 60 produced devices in this case, **only Item 1B15, the Canon camera and its memory card, was mishandled in this way**. This occurred in one of the most significant cases in the Eastern District of New York at the time, raising the question: Why would this group of at least three FBI employees knowingly risk their careers and the integrity of the evidence, and secretly mishandle only this particular evidence item? The only plausible reason is an intent to tamper with the camera card.

Further evidence strengthens the conclusion that the camera card was deliberately tampered with during this operation: Its contents were permanently changed, and the specific files that the FBI "photograph technician" used the unknown forensic software on overlap with the specific files that the seven independent Defense experts determined were **deliberately tampered with**. (Loveall Decl., *supra*; Def. Mot, Doc. 1230 at 9, 12.)

This discovery of **intentional** evidentiary misconduct by the FBI "photograph technician" – knowingly facilitated by SA Lever – casts a shadow over the unauthorized copying of the same camera card by SFE Booth, as that was also facilitated by SA Lever. (DX 961 at 29.) This increases the likelihood that the camera card was tampered with before Booth's copying and analysis, explaining why 37 additional photo files appeared only in Booth's report, with at least 28 of these files being demonstrably and deliberately tampered with, according to the seven independent Defense experts. (Def. Mot, Doc. 1230 at 6; Doc. 1225 at 3.) The government could easily disprove this explanation, if it were untrue, by disclosing the withheld two camera card copies, yet they refuse to do so, merely repeating government expert Loveall's unsupported assertion that additional files in the Booth report are due to "different settings," though Loveall does not provide a single detail or proof. (Loveall Decl. at ¶ 9; Doc. 1229 at 2.)

This intentional evidentiary malfeasance involving SA Lever, the unidentified FBI "photograph technician," and at least one other unidentified "law enforcement agent" carries serious implications beyond Mr. Raniere's case. **It calls into question the integrity of these FBI employees' conduct in other cases – past, present, and future**. Full disclosure of their currently concealed identities and the full extent of their actions must be compelled.

The only other possibility is that AUSA Tanya Hajjar is intentionally misleading the Court regarding the circumstances of this secret operation on the camera and card, and the existence of an FBI "photograph technician." Supporting this, there appears to be no "photograph technician" role officially recognized by the FBI, based on our experts' 55 combined years of experience in the FBI and no description or job postings for such a role on the FBI job website. (Joint Former FBI Decl. at ¶ 12-13.; FBI Jobs, (https://www.fbijobs.gov/, February 13, 2024).) Additionally, no one with this title appears in the evidence's chain of custody, and no FD-302 forms, which document investigative activities, have been disclosed which would prove their existence and involvement. (Joint Former FBI Decl. at ¶ 13.) This is despite the government's promise to "produce everything" related to the alleged child pornography evidence before the trial. (Pre-Trial T., 4/4/19 at 13:6-13.) Intentionally misleading the Court about this improper operation would likely aim to conceal something more serious.

Finally, the government's late and unsubstantiated disclosure about the FBI affiliation of the alleged photograph technician is a further use of secret evidence. This exacerbates existing due process concerns and further obstructs Mr. Raniere's ability to challenge the evidence against him. *U.S. v. Abuhamra* 389 F.3d 309, 322. (2d Cir. 2004) Moreover, the secrecy of the withheld evidence in this case surpasses that of *ex parte* proceedings like that in *Abuhamra*. Here, the government alone has access to the withheld evidence, forcing the Court to accept or reject the government's assertions without independent verification. This level of secrecy impedes the

Court's ability to function as an impartial arbiter and poses a threat to the fundamental fairness of the judicial process.

In conclusion, disclosure of the withheld evidence is imperative. Moreover, AUSA Hajjar has consumed far more time, including the Court's time, opposing disclosure than it would take to simply disclose the evidence, which <u>the government promised to the Court and Defense it would before trial, and after trial misrepresented to the Defense that it had.</u> (*Id.*; Doc. 1169, Exhibits H1-H3, Defense Informal Discovery Request.) The withheld evidence is essential not just for fairness in Mr. Raniere's case but also for its potential to affect the integrity of other cases involving SA Lever or the unidentified FBI employees discussed above, which may be ongoing. Therefore, the Court's ruling will either aid in the exposure and curbing of government malfeasance or contribute to its concealment.

Dated: 2/14/2024

Respectfully submitted,

*Keith Raniere*
Keith Alan Raniere