# Exhibit A

# Joint Expert Declaration by Four Former FBI CART Forensic Examiners Regarding the Alleged FBI "Photograph Technician"

Re: <u>United States of America v. Keith Raniere et. al.</u>
Case No. 1:18-cr-00204-NGG-VMS

We, the undersigned, each declare under penalty of perjury, pursuant to 28 U.S.C. 1746, that the following is true and correct:

## I. Introduction

1. We are former FBI Computer Analysis Response Team (CART) examiners.
2. We have a combined 55 years of experience in the FBI.
3. We are trained in FBI procedures and have trained other FBI personnel in them.

## II. FBI Digital Evidence-Handling Procedures

4. An FBI photograph technician is not a CART member. Therefore, they are not authorized to review original digital evidence, let alone unpreserved original digital evidence, as this is the sole purview of CART. (See Digital Evidence Policy Guide (DEPG), Section 3.3.4.5.)
5. All FBI personnel are trained to sign the chain of custody when taking custody of, and relinquishing, evidence, which is required by FBI protocol. (See DEPG, Section 3.3.9.1.1.2. "Chain of Custody.".)
6. Any FBI employee authorized to conduct forensic examinations is trained to use a write-blocker when reviewing original digital evidence, to avoid making alterations. (See CART SOPs Section 4.3.)
7. A forensic copy of the device must first be created before the contents can be reviewed, except in certain circumstances, such as exigent circumstances and approved previews. (CART SOPs, Section 4.5.) No such circumstances were established here.
8. Any FBI employee authorized to conduct forensic examinations is trained to stop their work if they come across files that are not in scope and notify the Case Agent, who would then apply for an additional search warrant for these files.
9. An FBI employee who deliberately accesses original evidence without authorization, deliberately violates the chain of custody, or knowingly allows another FBI employee to

1

DocuSign Envelope ID: CBEEB6C0-D70A-4576-9193-619070476AA8

do so, could receive disciplinary consequences such as a written reprimand, an Office of Professional Responsibility (OPR) investigation, or termination.

### III. Violations of FBI Procedure by the Alleged FBI Photograph Technician

10. The alleged FBI photograph technician violated the aforementioned protocols:
    a. They reviewed original, unpreserved digital evidence: the camera card.
    b. They did not sign the chain of custody. (DX 945.)
    c. They did not create a forensic copy of the camera card.
    d. They did not use a write-blocker, thereby **permanently altering the original, unpreserved evidence**.
    e. They completed their work, even though the files on the camera card were all dated to 2007 or before. (GX 521A - Replacement.) At the time of the review, on September 19, 2018, these dates were outside of the search warrant's scope, which was for the timeframe of 2015 onwards. They should have stopped their work when they saw the file dates and notified their Case Agent, who should have applied for an additional search warrant for these files.

11. Signing the chain of custody and preserving original evidence are fundamental pillars of FBI evidence handling procedures. Therefore, based on the above, we conclude that the alleged FBI photograph technician, SA Lever, and any other FBI personnel involved in the September 19, 2018 mishandling of 1B15, the Canon camera and camera card, **knowingly violated FBI protocols. Such willful actions could result in an agent's termination.**

### IV. Non-Existent Role of FBI "Photograph Technician"

12. We are unaware of the job title "FBI Photograph Technician." There is a Job Series code, 1386, Photographic Technology. However in our 55 years of combined experience, it has never been used in FBI Field Offices. There are either "FBI Division Photographers," who are **prohibited** from handling original evidence, or there are examiners in CART or in the Forensic Audio, Video and Image Analysis Unit (FAVIAU). FAVIAU only exists at Quantico in Virginia.

2

13. FBI Division Photographers are typically tasked with downloading photos from FBI-owned media (e.g., search photos), <u>never</u> original evidence, like the camera card. They are generally from the Federal Job Series Code 1060, Photographer. They are trained to document investigative activity through the FD-302, the form for reporting information that may become testimony. If this FBI personnel conducted a review of the camera card, an FD-302 should exist. However, **no FD-302 for the supposed examination of the camera card by the alleged FBI "photograph technician" has been disclosed.**

14. We can think of no legitimate reason to give the unpreserved camera card to an alleged FBI "photograph technician," in violation of FBI protocol, rather than directly to CART.

15. Expediting discovery production is not a valid exception to the FBI protocol. Moreover, circumventing CART with the alleged photograph technician was much slower and more personnel-intensive than simply having a CART examiner create a forensic copy of a small electronic device such as this 2 GB camera card.

16. This mishandling of the Canon camera and camera card was exceptional, considering all other 60+ devices produced in discovery were properly processed by CART, as required by FBI protocol.

## V. Improper Technical Actions of the Alleged FBI Photograph Technician

17. The alleged FBI photograph technician did not simply copy files from the camera card. They also used an unknown forensic tool on the camera card to recover deleted files. This is clear from the fact that the visual depictions of Photos 21-41, Photos 180-183, and Photo 242, identified as deleted files in the FBI forensic reports, also appear in the September 25, 2018 PDF reports. (VDM_NXIVM00005028 - VDM_NXIVM00005130.) Deleted files are not, by default, available for copying. Additional steps must first be taken to forensically recover the deleted files. These steps constituted an unauthorized forensic examination.

18. The diagram below shows the proper way to extract photos, without altering evidence.

## Diagram 1: Proper Protocol



19. The diagram below shows what the FBI photograph technician did instead.

## Diagram 2: The Actions of the Alleged FBI Photograph Technician



DocuSign Envelope ID: CBEEB6C0-D70A-4576-9193-619070476AA8

20. Since CART had not yet preserved the card prior to the alleged FBI photograph technician's alterations, there is no way to determine its original contents.
21. We have <u>never</u> in our careers at the FBI observed that a non-CART personnel, such as the unidentified alleged FBI photograph technician in this case, had (1) accessed original evidence, (2) **altered** the original evidence prior to preservation, and (3) failed to sign the chain of custody.

Signature: *[DocuSigned]*     Date: 2/13/2024

Name: **Dr. James Richard Kiper, Ph.D.**
Background: Retired FBI Special Agent, Computer Forensic Examiner, and Unit Chief at the FBI Academy, 20 years' service to the FBI

Signature: *[DocuSigned – Stacy R Eldridge]*     Date: 2/13/2024

Name: **Stacy Eldridge**
Background: Former FBI Senior Forensic Examiner, 10 years' service to the FBI

Signature: *[DocuSigned – Mark Bowling]*     Date: 2/13/2024

Name: **Mark Daniel Bowling**
Background: Former FBI Forensic Examiner, Cyber Program Manager, FBI Inspector in Place, and FBI Assistant Special Agent in Charge, 20 years' service to the FBI

Signature: *[DocuSigned – William Odom]*     Date: 2/13/2024

Name: **William Odom**
Background: Former FBI Special Agent and Forensic Examiner, Manager of FBI Forensics Lab in Houston, 5 years' service to the FBI, 25+ years' experience in the field.

# Exhibit B

# APPENDIX: Corrections to the Government's Misrepresentations in Doc. 1231

The government's response contains several misrepresentations that distort the truth. These are corrected below. Going forward, the Defense may need to attach an appendix to each of its filings, to correct such inaccuracies and prevent them from becoming further solidified.

1. The government repeats that the photograph technician merely "copied photographs." (Gov. Opp., Doc. 1231 at 1.) However, this is inaccurate. As previously established, they did far more than copying photographs, such as using unknown forensic software. (Def. Mot., Doc. 1230 at 12 ¶ 1.)

2. The government presents "cop[ying] photographs... [to expedite] discovery" as a valid reason to circumvent CART, using the alleged FBI "photograph technician" to access the unpreserved original camera card. However it <u>does not</u>, as such conduct violates critical FBI protocol. (Gov. Opp. at 1; Exhibit A, Joint Former FBI Decl. at ¶ 15).

3. Contrary to the government's assertion, the Defense did <u>not</u> know at trial that <u>multiple</u> "law enforcement agents had accessed the camera card of the Canon EOS 20D camera without a write blocker." (Gov. Opp. at 2.) The Defense was only aware that *an* access without a write blocker had occurred, not who was responsible. If the government is using plural "agents" literally, then this is newly disclosed information.

4. The government blames trial counsel for not "attempt[ing] to question any law enforcement agents regarding the access." (*Id.*) However, this overlooks the critical fact that <u>the government concealed this pre-CART operation</u>, and SA Mills falsely testified that the camera, which contained the card, was handled correctly, only by CART:

   > AUSA Hajjar: What happens when you recover a piece of digital evidence like Government Exhibit 520 [the camera] and 524 [the camera card]?

   > SA Mills: So, when we receive -- when we recover digital evidence, we have a process in which we bring the digital evidence back to our office and *if we want the evidence to be reviewed, we would submit a request to our CART team.* And the CART is the Computer Analysis Response Team and they is have specialists who are computer evidence examiners who would review that evidence for us or assisted us in reviewing the evidence with us.

   > AUSA Hajjar: And is that what happened in this case with Government Exhibit 520 [the camera]?[1]

---

[1] Note that AUSA Hajjar omits specific mention of GX 524, the camera card, in her second question.

SA Mills: *Yes*. (Trial T. at 4307:6-18.) (emphasis added)

5. The government's reference to their offer on August 3, 2018 (Gov. Opp. at 1, n.1.), for a physical inspection of evidence is misleading. A physical inspection would merely allow examining the <u>exteriors</u> of a device. The relevant evidence would have been the digital content <u>within</u> the devices, which was impossible to review at the time since none of the 8 Hale devices had yet been delivered or processed by CART. (Gov. Opp. at 1, n.1.; DX 945, DX 961, Doc. 1169 at 5, n.4.) In that sense, a physical examination would have been irrelevant and useless. Moreover, the withheld evidence at issue in this motion is the documentation of the secret operation involving the alleged FBI photograph technician, which occurred 6 weeks later, on September 19, 2018, rendering the August 3, 2018 offer further disconnected from the matter at hand.

6. The government's characterization of the photographs on the camera card exaggerates the content, describing them as "sexually explicit photographs of Raniere ***and other women***." (Gov. Opp. at 1, n.1.) (emphasis added.). Of the 42 photo files with viewable images, only 5 (Photos 34-38) can be classified as sexually explicit. These images depict male genitalia but involve only one woman, not multiple "other women." (*Id.*) ( (VDM_NXIVM00005044-5130; GX 521A (Flatley Report).) Furthermore, the government refers to Mr. Raniere's identification in these photos as a fact, though this was never established. It is crucial to address these characterizations not to nitpick but to correct inaccuracies that, if unchallenged, might be accepted as truth. More critically, this scrutiny aims to highlight the inappropriateness and irrelevance of the government's description of the photographs, where the issue is undisclosed evidence that was concealed by the government. This appears to be an attempt to bias the discussion by eliciting moral judgment and prejudice, rather than focusing on the issue.

7. The government inaccurately claims that the Defense's motion "seeks disclosure… regarding the Federal Bureau of Investigation photograph technician" (Gov. Opp. at 1), implying the Defense was already aware that the "photograph technician" belonged to the FBI. This implication is false and misleading, as their response marks the first instance they have disclosed the alleged photograph technician's FBI affiliation.

8. The government repeats their assertion that the FBI "photograph technician" was involved to "facilitate production of those photographs to defense counsel in discovery." (Gov. Opp. at 1; Doc. 1213 at 11, n.6.) This explanation appears disingenuous, as directly copying the camera card through CART would have been quicker (Joint Former FBI Decl. at ¶ 15.) and the government's delay in processing discovery, despite promises to

the Court and Defense and looming trial dates, underscores a lack of urgency. The following timeline provides additional details:

### Timeline of Discovery Delays vs. Government Representations

On March 27, 2018, FBI agents searched 8 Hale, looking for evidence of suspected sex trafficking. Among the items seized was 1B15, a Canon camera, containing a memory card. (Trial T. at 4305:14-24; DX 945.)

On April 19, 2019, Mr. Raniere was indicted on sex trafficking, sex trafficking conspiracy, and conspiracy to commit forced labor. (Doc. 14.)

On May 4, 2018, Mr. Raniere requested a mid-July trial date. (Pre-Trial T. 5/4/18 at 14:3.) However the government pushed for more time, stating it "would certainly move for exclusion of time given the nature of discovery." (*Id.* at 13:2-7.) She had explained to the Court that "an enormous amount of electronic device[s]" were seized at 3 Oregon and 8 Hale, and "[t]he FBI is in the process of processing those." (*Id.* at 4:17-25.) However, at this time, 39 days after seizure, <u>none</u> of the 8 Hale devices had been sent to CART, which is responsible for processing electronic devices (DX 961 at 1.) **The Court set a trial date of October 1, 2018.** (Pre-Trial T. 5/4/18 at 16:7-9.)

On July 10, 2018, SA Rees checked out 1B15, the Canon camera and memory card from Evidence Control. (DX 945 at 2.) None of the 8 Hale devices had yet been sent to CART for preservation, a required step before case agent review. (DX 961, *supra.*; Doc. 1169 at 5, n.4.) As such, her access was a violation of FBI protocol. She held this evidentiary item for **17 days**. (DX 945, *supra.*) Notably, the camera was inoperable due to a dead, uncharge-able battery. (Trial T. at 4918:3-17.) No reports, or FD-302s of SA Rees' unauthorized review were ever disclosed, the chain of custody leading to its discovery was only disclosed <u>after SA Rees</u> had testified.

On July 23, 2018, a superseding indictment was filed, adding 4 co-defendants and other charges, including racketeering conspiracy (Doc. 50.) Still, 119 days after seizure, none of the 8 Hale devices had been sent to CART for processing. (DX 961, *supra.*)

On July 25, 2018, Mr. Raniere requested that the Court maintain the October 1, 2018 trial date. However, AUSA Penza said this was not feasible, in part given the "additional discovery that will be involved." (Pre-Trial T. 7/25/18 at 8:1-9.) Moreover, she disagreed with the Defense's "characterization that our production of discovery has been slow," and that they did not produce certain portions earlier because they were "relevant to the superseding indictment." (*Id.* at 10:13-20.) However, none of the 8 Hale devices had yet been delivered to CART for processing, so their contents could not have been reviewed, let alone their relevance determined. **The Court moved the trial date to January 7, 2019.** (*Id.* at 16:22-17:2.)

3

On August 3, 2018, AUSA Penza informed the Defense that they would produce *"full discovery copies"* of the seized electronics. (Letter Enclosing Discovery (August 3, 2018) at 5.) (emphasis added.) However, <u>130 days after seizure</u>, still none of the 8 Hale devices had even been delivered to CART. (DX 961.)

On August 8, 2018, less than two months before the original trial date and 135 days after seizure, the devices from 8 Hale, *except for the Canon camera and card*, were finally delivered to CART for processing, by SA Michael Lever. (DX 961 at 1.)

On September 11, 2018, the government wrote to the Court that CART had begun processing the 8 Hale and 3 Oregon devices "[w]ithin days of the execution of the warrants." (Doc. 129 at 2 ¶ 1.) However, not a single item from 8 Hale had even been delivered to CART until <u>135 days after</u> the execution of the warrant. That same day, the government promised to disclose *"full discovery copies"* of the seized materials and requested a "complex" case designation, which would permit further exclusion of time, under the Speedy Trial Act. (*Id* at 2-3.) (emphasis added.)

On September 14, 2018, AUSA Penza informed the Court that the government was going to provide *"full discovery copies* to defendants of all the material in our possession." (Pre Trial T. 9/14/18 at 5:19-6:21.) (emphasis added.)

On September 18, 2018, AUSA Hajjar repeated to the Court this inaccurate statement of CART processing beginning "within days" of the search. (Pre-Trial T. 9/18/18 at 36:25-37:12).

On September 19, 2018, SA Lever, who had previously delivered the other 8 Hale devices to CART, now checked out 1B15, the camera and card, also in violation of FBI protocol. (DX 945 at 2.) Instead of delivering this item to CART, like he did for the other devices, he facilitated the unauthorized access and alteration by the secret FBI photograph technician, <u>outside of CART</u>. (DX 945, *supra*; Doc. 1213 at 11, n.6.; Gov. Opp. at 1.)

On September 27, 2018, AUSA Hajjar informed the Court that "We just pulled out the pictures out [sic] and gave them everything" from the 8 Hale camera. (Pre-Trial T. 9/27/18 at 35:6-9.) However, she omitted that this was done outside of CART and outside the chain of custody, and that they only gave two PDF documents, without the metadata, or any reports or FD-302s that indicated there was a FBI photograph technician, and did not disclose *not the full discovery copy* of the device that they had promised the Court they would. (Def. Mot, Doc. 1230 at 3-4.)

On October 3, 2018, the government moved to delay the trial to March 18, 2019. (Doc. 157.) Still the Canon camera and memory card had not been delivered to CART for processing.

4

On October 15, 2018, **the Court approved the trial adjournment to March 18, 2019.** (E.D.N.Y. October 15, 2018 (Garaufis, J.).)

On January 9, 2019, AUSA Penza informed the Court that the government expected a superseding indictment, but were weighing "timing considerations." (Pre-Trial T. 1/9/19 at 4:14-5:2.) Still, the Canon camera and memory card had not been delivered to CART. (DX 945.)

On January 11, 2019, the government moved to delay the trial. (Doc. 279.) 291 days after seizure, still the Canon camera and memory card had not been delivered to CART. (DX 945.)

On January 15, 2018, **the Court rescheduled the trial date to April 29, 2019.** (E.D.N.Y. January 15, 2019 (Garaufis, J.).)

On February 21, 2019, six weeks after AUSA Penza's announcement, FBI agents 'accidentally' discovered alleged contraband on the hard drive purportedly taken by the mishandled and unprocessed Canon camera. (Second Lever Aff. at ¶ 11, 14.) That day, SA Lever checked out the Canon camera and card for a second time. (DX 945 at 3.)

On February 22, 2019, **<u>333 days after seizure</u>** and after facilitating its secret mishandling, SA Lever delivered the Canon camera and memory card to CART for processing. (*Id.*)