REC'D IN PRO SE OFFICE
MAR 21 '24 PM4:35

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------x
UNITED STATES OF AMERICA,     Case No. 1:18-cr-00204-NGG-VMS

v.     MOTION TO CERTIFY ORDER
    FOR INTERLOCUTORY APPEAL &
KEITH ALAN RANIERE,     STAY OF RULE 33 PROCEEDINGS

Defendant.
----------------------------------------------------x

## INTRODUCTION

The Court's Memorandum and Orders (Docs. 1238 and 1224) denied the Defense a critical right, the right to challenge new evidence introduced by the Government in its post-conviction Opposition to the Defense's Rule 33 that is at the heart of the proceeding. Mr. Raniere respectfully submits this *Pro Se* motion requesting that the Court certify its Order for interlocutory appeal and a stay of the Rule 33 proceedings.

The issue needing immediate appeal is Mr. Raniere's right to challenge the Loveall Report (Doc. 1213-3.), which the government relies on to dispute Mr. Raniere's Rule 33 claims of evidence tampering of a Canon camera's memory card and a hard drive. Mr. Raniere's claims are supported by seven independent experts, including four former FBI examiners. (Doc. 1169-1, Doc. 1192.) Moreover, **the government hads admitted the memory card was altered in FBI custody.**[1]

---

[1] Government expert Loveall concluded in his report, "[T]he camera card was accessed on September 19, 2018. This is consistent with accessing the contents of the card without a write-blocker." (Loveall Report, Doc. 1213-3 at ¶ 10.) A write-blocker is a device that prevents writing to (altering) the contents of a device. In his statement, Loveall concedes that the access dates of the camera's memory card were overwritten to September 19, 2018, proving to a certainty that the original evidence changed in FBI custody.

1

The Loveall Report is a report from "a senior computer scientist with the FBI who was not involved in Mr. Raniere's prosecution." (Doc. 1224 at 4.). It was created post-conviction for and by the government for the sole purpose of opposing the Defense's Rule 33.

The Loveall Report analyzes two FBI forensic copies (exact replica) of a Canon camera's memory card: the Flatley and Booth Forensic Copies. He asserts that the memory card was not tampered with in between the creation of these copies. (Loveall Report at ¶ 9.) The Booth Forensic Copy was created during the sixth (6th) week of trial, and the Flatley Copy created prior to trial. The government **never** provided, and continues to refuse to provide, copies of these two items to the Defense, despite the fact that they contain no alleged contraband and the government is currently using them in their opposition motion.

The Defense was given only PDF forensic reports from the 2 forensic memory cards (GX 521A; GX 521A - Replacement; DX 961). These reports summarize the contents but do not contain the device's full data and other key analysis, and do not allow the Defense to challenge Loveall's claim about the two copies.

This is a clear-cut issue of fairness within the Rule 33 proceeding. To this end, it appears as if there was a fundamental misunderstanding by this Court about one of the key issues in the Defense's reply regarding the motion-to-compel and the motion for reconsideration (Doc. 1223, 1225.): Mr. Raniere's right to challenge the secret evidence being used against him, through the Loveall Report.

The issue warranting interlocutory appeal is **not** whether Mr. Raniere has a post-conviction right to materials suppressed at the trial level, or whether actions at the trial level violated Mr. Raniere's due process. Mr. Raniere acknowledges a defendant's liberty interests are reduced after a conviction. **The issue is Mr. Raniere's due process right to a fair Rule 33**

**proceeding, to challenge the evidence being used against him. This is an issue that stands separate from guilt or innocence, or the merits of the Rule 33.**

## LEGAL STANDARD

The Second Circuit has held that the standard that a "non-final" order in a criminal case must meet in order to qualify for interlocutory appeal is governed by the "collateral order doctrine." *U.S. v. Culbertson* (2d Cir. 2010) 598 F.3d 40. This doctrine has three requirements, as set forth by the Supreme Court in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978), specifying that the order must:

(1) "conclusively determine the disputed question."
(2) "resolve an important issue completely separate from the merits of the action."
(3) "be effectively unreviewable on appeal from a final judgment."

Further, "[i] is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer. *Zahrey v. Coffey*, 221 F.3d 342, 355 (2d Cir. 2000).

## ARGUMENT

This Order meets all three requirements of the "collateral order doctrine":

**(1) The Order conclusively determined the disputed question.**

A ruling conclusively determines an issue when it is "made with the expectation that [it] will be the final word on the subject." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 12 n.14 (1983). This is so with this Order, as the Court denied Mr. Raniere's access to the withheld forensic copies of the Canon camera's memory card for his reply to the Rule 33, and further set a final deadline for the Rule 33 reply of April 22, 2024.

**(2) The Order resolved an important issue completely separate from the merits of the action.**

The Defense cannot effectively counter or examine to dispute and debunk Loveall's report or his key claims without full and unfettered access to the withheld forensic copies that Loveall himself relies on and makes a key claim about. Disproving this claim would simply require comparing the two forensic copies of the memory card and could definitely prove intentional tampering with Item 1B15, the Canon camera and its memory card, while in FBI custody.

<u>(2A) This issue is completely separate from the merits of the action.</u>

For an issue to be separate, it must be "anterior to the merits not enmeshed in the factual and legal issues comprising" the underlying action. *Mercantile Nat. Bank v. Langdeau* (1963) 371 U.S. 555, 558.

This is so here, as Mr. Raniere's right to challenge the <u>new</u> evidence that the government is <u>currently</u> using against him in the Rule 33 proceeding – the Loveall Report – is independent from the factual merits and legal issues of the Rule 33 claim. The Loveall Report is a **<u>new</u>** report by a government expert who was not involved in the case until after conviction, and which the government commissioned for the sole purpose of responding to the Rule 33.

Critically, Loveall was given access to the two withheld forensic copies of the Canon camera's memory card, one by Flatley (who did not testify) and one by Booth (who did testify). (Loveall Report at ¶ 3, 9.) **<u>The Defense was never given these two forensic copies provided to Loveall,</u>** the government has refused to provide them post-conviction, and so the Defense does not have them. There is no legitimate justification for withholding this evidence, as the memory card lacks any alleged contraband.

4

The Defense was given only PDF forensic reports derived from these forensic copies. (GX 521A; GX 521A - Replacement; DX 961.) These reports are documents which summarize select aspects of the contents that are extracted by forensic software. **The reports do not contain the device's full data** and therefore are far more superficial compared to the forensic copies and do not allow the Defense to analyze the underlying data.

Note that it is contrary to FBI protocol to have two forensic copies made from the original evidence, as it risks altering the original or having conflicting versions of the evidence, as per the trial testimony of the government expert Booth. (Booth, Trial T. at 4782:12-4784:1.) However, in this case, six weeks into trial, Booth himself created a second forensic copy of the original memory card. (DX 961.) This was despite the fact that there was already a first forensic copy, created by Examiner Flatley[2] before trial. (GX 521A.)

Without the two forensic copies – the Booth copy and the Flatley copy – that Loveall was permitted to examine, Mr. Raniere cannot contest key counter-claims by Loveall.

Specifically, the Defense experts discovered that Booth's PDF report of his copy listed **37 more photo files** as being on the card, in the folders that the camera supposedly used, when compared to Flatley's report of his copy, which listed the files of those same folders. (Doc. 1169-1, Kiper Report.)

---

[2] Examiner Flatley was sent to Ghana in the sixth week of trial and did not testify, and so was not subject to cross-examination. (Booth, Trial T. at 4987:9-13.)

5

*Diagram 1: The Booth Report Listed 37 More Photo Files than the Flatley Report*



This discrepancy of 37 files between reports raised the question: *Did someone add these 37 newly appearing to the memory card after Flatley created his copy, and while the memory card was in FBI custody?*

In his report, Loveall denies that such tampering occurred, and asserts that the newly appearing photos were simply due to different settings used in the forensic software, not because of tampering. Crucially, he claimed to have examined both forensic copies and determined them to be identical:

> "Although both reports used the same processing tool—AccessData Forensic Toolkit 6.3.1.26—there are numerous configurations and setting options for this tool, which can result in the generation of different reports. The fact that additional files appeared in one report is a result of the use of different settings. I have examined the disk images

[forensic copies][3] created of 1B15 and 1B15a and determined that they are identical." (Loveall Report at ¶ 9.)

However, **Loveall did not provide evidence for this critical claim**. He did not specify any possible different settings to demonstrate his hypothesis that different settings caused the 37 photo files to appear. He also did not provide the standard proof that is required to confirm that two copies are the byte-for-byte identical, called "hash values." (Booth, Trial T. at 4784:4-4785:4.) A hash value is a long number that represents the digital fingerprint of a device. As Booth testified at trial, at the FBI, they "constantly we use MD5 [digital fingerprint] to verify that files haven't been changed from me burning it onto a disk for you to then later look at, to going back to the original evidence and making sure that what we have as a copy hasn't changed." (*Id.*) He explained, if even a character in a text file is changed, the digital fingerprint will be different. (*Id.*) However, Loveall, a top FBI computer scientist, did not provide these required and basic digital fingerprints, which would have been definitive proof of his pivotal assertion.

**The Order prevents the Defense is from challenging Loveall's critical claim** because in order to check if the contents of the two forensic copies are identical, and whether the 37 photo files are in Flatley's forensic copy or not, the Defense needs access to the two forensic copies. If given access to the forensic copies, to challenge this claim by Loveall, the Defense would merely need to inspect the contents of the three folders listed in Diagram 1, and check the digital fingerprints of each forensic copy.

---

[3] In this critical assertion, Loveall used incorrect evidence identifiers. If his statement were to be taken literally, he asserts that the forensic copy of the camera (1B15) is identical to the forensic copy of the memory card (1B15a). This is impossible since a camera and a memory card are distinct devices. Also, forensic copies, a replica of the data, cannot be made of cameras, just of storage devices like memory cards and hard drives. From the context, Loveall is trying to refer to the forensic copies of Booth and Flatley, as they are the source of the reports being discussed.

7

**If Loveall's critical claim is proven false**, it would prove that key evidence, the camera's memory card, was **deliberately tampered with and augmented in FBI custody**. It would also prove that Loveall, and the government through Loveall, is deliberately misleading the Court.

(2B) This issue is important.

This issue is important because it impacts a critical right: Mr. Raniere's ability to challenge new evidence in the Rule 33 proceeding, thus violating his due process rights to a fair process. Central to the Rule 33 is the Loveall Report. The Court has already utilized this report to initially dismiss the Defense's government tampering claims and deny the Defense access to the two forensic copies needed to fully and competently challenge the Loveall Report in the first place. (Doc 1224, 1238.)

Crucially, debunking the Loveall Report, especially its claims regarding the 37 photo files, is pivotal to the Rule 33 proceeding. A revelation that the files were added while under FBI control would not only prove deliberate evidence tampering but would lead to the exclusion of critical evidence — the camera, with its memory card. This, in turn, would lead to the dismissal of the child pornography charges, since this item was the government's source of the federal jurisdiction for these charges, and their key method of linking Mr. Raniere to the alleged contraband photos. (Trial T. at 5372:14-23; 5372:17-5373:1.) This would be the result, regardless of the government's assertions regarding its other so-called trial evidence and the post-trial affidavit from Camila,thereby rendering them irrelevant to the core legal issue. Given the government said these child pornography charges were "at the heart" of their case, their dismissal could necessitate a complete dismissal of the indictment or a new trial. (Pre-Trial T. 3/18/19 at 19:14-16.) Additionally, a finding of deliberate government tampering of key evidence

could warrant a dismissal of the indictment due to "egregious and deliberate" government misconduct, as per the standard set in *United States v. Mangano* (E.D.N.Y., Jan. 6, 2022, 16-CR-540 (JMA)) [pp. 4.].

**(3) The Order is effectively unreviewable after final judgment.**

The purpose of the "finality rule" is "to combine in one review all stages of the proceeding that effectively may be reviewed and corrected if and when final judgment results." *Cohen v. Beneficial Loan Corp.* (1949) 337 U.S. 541, 546.

However, if the Court's Order is reversed only after the Rule 33's final judgment, if it is denied, Mr. Raniere will already have missed the opportunity to use crucial evidence to dispute the government's claims. By then, the time period for both Rule 33s and a habeas petition under 28 U.S.C. 2255 will have passed. Thus, any error cannot be adequately rectified post-final judgment.

Moreover, an order is effectively unreviewable on final judgment, and therefore qualifies for collateral review, if leaving the review for later "would imperil a substantial public interest." *Coopers Lybrand*, 437 U. S., at 468 (internal quotation marks omitted). This Order risks significant public interest:

First, it erodes public trust by permitting the government to use two secret, undisclosed forensic copies of the memory card against Mr. Raniere in the form of a newly created expert analysis of those items by Loveall, in a proceeding about credible allegations of government malfeasance, where the memory card is one of the allegedly tampered items and **the government admitted it was altered in FBI custody.** Transparency and fairness are vital to maintaining confidence in judicial integrity, especially in proceedings like this Rule 33.

First, it erodes public trust by permitting the government to use two secret, undisclosed forensic copies of the memory card against Mr. Raniere in the form of a newly created expert analysis of those items by Loveall, in a proceeding about credible allegations of government malfeasance, where the memory card is one of the allegedly tampered items and **the government admitted it was altered in FBI custody.** Transparency and fairness are vital to maintaining confidence in judicial integrity, especially in proceedings like this Rule 33.

*Denying access to this necessary evidence on the basis of no previously articulated federal standard* sets a dangerous precedent that threatens to undermine the core principles of fairness and transparency that underpin our legal system. *See also Zahrey, 221 F.3d at 355.*

As stated by the Supreme Court in *Joint Anti-Fascist Committee v. McGrath* (1951) 341 U.S. 123, 17, "[D]emocracy implies respect for the elementary rights of men, however suspect or unworthy; a democratic government must therefore practice fairness; and fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights."

Third, it could hinder judicial efficiency. If later on, access to the two forensic copies is granted and Loveall's claim about the 37 photo files is proven false, and the memory card is definitively proven to have been deliberately changed in FBI custody, any current and future cases the implicated government personnel are involved in could require judicial reevaluation, significantly straining judicial resources. However, permitting this interlocutory review could reveal the implicated government personnel sooner, thereby curbing the problem.

Finally, Courts have "consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral." *Cunningham v. Hamilton County*, 527 U.S. 198, 206, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999) "In other words, instead of making these decisions on a case-by-case basis, we make them on a type-of-order-by-type-of-order basis." *Henry v. Lake*

*Charles American Press* (5th Cir. 2009) 566 F.3d 164, 173. While the class of pre-trial discovery orders is not typically eligible for interlocutory appeal, this Order is distinct in several ways. It is regarding a post-conviction motion-to-compel evidence, which the government is newly using in a newly created government expert report they chose to use in this Rule 33 proceeding. As such, permitting interlocutory appeal here should not create a precedent which opens the floodgates to many more collateral appeals, adding undue administrative burden on the judiciary.

## CONCLUSION

The Defense respectfully requests that the Court consider these critical issues and the fundamental rights at stake and certify its Order for interlocutory appeal on the issue discussed in this motion, and stay the Rule 33 proceedings pending appeal accordingly.

If the Court's permission is not necessary to immediately appeal this Order, the Defense requests that the Court consider this a notice of appeal for the Order.

Respectfully submitted,

/s/ Keith Alan Raniere
———————————————
Keith Alan Raniere

Dated: 3/15/24