# MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT
## SENTENCE BY A PERSON IN FEDERAL CUSTODY

| United States District Court | District |
| --- | --- |

| Name *(under which you were convicted)*: <br> Keith Alan Raniere | Docket or Case No.: <br> 1:24-CV- |
| --- | --- |

| Place of Confinement: <br> USP Tucson | Prisoner No.: <br> 57005-177 |
| --- | --- |

| UNITED STATES OF AMERICA | Movant *(include name under which convicted)* |
| --- | --- |
| V. | Keith Alan Raniere |

## MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   U.S. District Court, Eastern District of New York
   225 Cadman Plaza East
   Brooklyn, NY 11201

   (b) Criminal docket or case number (if you know): 1:18-CR-000204

2. (a) Date of the judgment of conviction (if you know): 10/30/2020

   (b) Date of sentencing: 10/27/2020

3. Length of sentence: 120 YEARS

4. Nature of crime (all counts):
   Racketeering Conspiracy (18 U.S.C. § 1961); Racketeering (18 U.S.C. § 1961); Sexual Exploitation of a Child (18 U.S.C. § 2251); Possession of Child Pornography (18 U.S.C. § 2252(a)); Forced Labor Conspiracy (18 U.S.C. § 1594); Wire Fraud Conspiracy (18 U.S.C. § 1349); Sex Trafficking Conspiracy (18 U.S.C. § 1591); Sex Trafficking (18 U.S.C. § 1591); Attempted Sex Trafficking (18 U.S.C. § 1591); Conspiracy to Commit Identity Theft (18 U.S.C. § 1028(f)).

5. (a) What was your plea? (Check one)
   (1) Not guilty ☑    (2) Guilty ☐    (3) Nolo contendere (no contest) ☐

6. (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, what did you plead guilty to and what did you plead not guilty to?



6. If you went to trial, what kind of trial did you have? (Check one)    Jury ☑    Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?    Yes ☐    No ☑

REC'D IN PRO SE OFFICE
APR 17 '24 PM 2:11

8. Did you appeal from the judgment of conviction?  Yes [✔]  No [ ]

9. If you did appeal, answer the following:
   (a) Name of court: U.S. COURT OF APPEALS FOR THE SECOND CIRCUIT _____
   (b) Docket or case number (if you know): 20-3789 _____
   (c) Result: AFFIRMED _____
   (d) Date of result (if you know): 12/8/2022 _____
   (e) Citation to the case (if you know): United States v. Raniere, 55 F. 4th 354 (2d. Cir 2022) _____
   (f) Grounds raised:
   Issues of legal insufficient, constitutional issues, and the definition of a "commerical sex act" requires the exhange of something of monetary value.

   (g) Did you file a petition for certiorari in the United States Supreme Court?  Yes [✔]  No [ ]
   If "Yes," answer the following:
   (1) Docket or case number (if you know): 22-855 _____
   (2) Result: Cert denied _____

   (3) Date of result (if you know): 4/17/23 _____
   (4) Citation to the case (if you know): Raniere v. United States, 143 S. Ct. 1756 (2023) _____
   (5) Grounds raised:
   Sixth Amendment Issue Relating to Termination of Cross-Examination of Key Government Witness

10. Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
    Yes [✔]  No [ ]

11. If your answer to Question 10 was "Yes," give the following information:
    (a) (1) Name of court: Eastern District of New York _____
        (2) Docket or case number (if you know): 1172 (18-CR-204) _____
        (3) Date of filing (if you know): 5/6/2022 _____

(4) Nature of the proceeding: MOTION FOR RECUSAL

(5) Grounds raised:

JUDICIAL BIAS DURING THE TRIAL

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐   No ☑

(7) Result: DENIED

(8) Date of result (if you know): 4/26/23

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: EASTERN DISTRICT OF NEW YORK

(2) Docket of case number (if you know): 18-CR_204 (Docs. 853, 956, 1169, 1178)

(3) Date of filing (if you know): 6/21/22

(4) Nature of the proceeding: Rule 33 motions

(5) Grounds raised:

Witness perjury, prosecutorial witness intimidation , government tampering

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐   No ☑

(7) Result: 853, 956 denied, 1169 and 1178 pending

(8) Date of result (if you know):

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:   Yes ☐   No ☑

(2) Second petition:   Yes ☐   No ☑

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

Pending motions not yet denied

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground. Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE LACK OF SUBJECT MATTER JURISDICTION DUE TO ILLEGAL EXTRADITION

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
SEE MEMORANDUM IN SUPPORT FOR DETAILS

(b) **Direct Appeal of Ground One:**

(1) If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐  No ☑

(2) If you did not raise this issue in your direct appeal, explain why:
INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A § 2255 MOTION.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐  No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?
Yes ☐  No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐     No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐     No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWO:** COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE LACK OF SUBJECT MATTER JURISDICTION FOR SEVERAL COUNTS

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):

SEE MEMORANDUM IN SUPPORT FOR DETAILS

(b) **Direct Appeal of Ground Two:**

(1) If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐     No ✔

(2) If you did not raise this issue in your direct appeal, explain why:
INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A § 2255 MOTION.

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐    No ☑

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:** COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO CHALLENGE THE
ILLEGAL SEARCH AND SEIZURE OF EVIDENCE

(a) Supporting facts (Do not argue or cite law. Just state the specific facts that support your claim.):
SEE MEMORANDUM IN SUPPORT FOR DETAILS

(b) **Direct Appeal of Ground Three:**

    (1) If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☑

    (2) If you did not raise this issue in your direct appeal, explain why:
INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A § 2255 MOTION.

(c) **Post-Conviction Proceedings:**

    (1) Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☑

    (2) If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition: _____

    Name and location of the court where the motion or petition was filed:

    _____

    Docket or case number (if you know): _____

    Date of the court's decision: _____

    Result (attach a copy of the court's opinion or order, if available):

    _____

    (3) Did you receive a hearing on your motion, petition, or application?

        Yes ☐   No ☐

    (4) Did you appeal from the denial of your motion, petition, or application?

        Yes ☐   No ☐

    (5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐   No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this
issue:

**GROUND FOUR:** COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO PRESENT
~~EXCULPATORY EVIDENCE~~

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

SEE MEMORANDUM IN SUPPORT FOR DETAILS

(b) **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐      No ☑

(2)   If you did not raise this issue in your direct appeal, explain why:

INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A § 2255 MOTION.

(c) **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐      No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition: _____

Name and location of the court where the motion or petition was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐    No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐    No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐    No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

ALL GROUNDS WERE NOT RAISED EARLIER BECAUSE INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255 MOTION.

_____

Please see attachment for description of additional grounds

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?   Yes ☑   No ☐

    If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.
    SECOND CIRCUIT:
    APPEAL OF A RESTITUTION ORDER THAT WAS REMANDED WITH JURISDICTION RETAINED BY THE SECOND CIRCUIT (21-1795)
    APPEAL OF DENIAL OF DISCOVERY ORDER

    EDNY: Rule 33 motions (1169, 1176, 1178)

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment you are challenging:

    (a) At the preliminary hearing:
    JACOB KAPLAN

    (b) At the arraignment and plea:
    JACOB KAPLAN

    (c) At the trial:
    MARC AGNIFILO

    (d) At sentencing:
    MARC AGNIFILO

    (e) On appeal:
    JOSEPH TULLY

    (f) In any post-conviction proceeding:

    (g) On appeal from any ruling against you in a post-conviction proceeding:

16. Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?   Yes ☐   No ☑

17. Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?   Yes ☐   No ☑

    (a) If so, give name and location of court that imposed the other sentence you will serve in the future:

    (b) Give the date the other sentence was imposed:

    (c) Give the length of the other sentence:

    (d) Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?   Yes ☐   No ☐

18.   TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

THE CRIMINAL JUDGMENT BECAME FINAL ON APRIL 17, 2023. THIS MOTION IS TIMELY IF FILED ON OR BEFORE APRIL 17, 2024.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:
VACATE THE CRIMINAL JUDGMENT

or any other relief to which movant may be entitled.

_____
Signature of Attorney (if any)

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Motion under 28 U.S.C. § 2255 was placed in the prison mailing system on _____4/17/24_____ .
hand delivered                              (month, date, year)

Executed (signed) on ___4/8/24_____          (date)

_____
Signature of Movant

If the person signing is not movant, state relationship to movant and explain why movant is not signing this motion.

<u>**Additional Grounds for Habeas Petition, under 28 USC 2255, for Keith Alan Raniere, Reg # 57005-177**</u>

**GROUND FIVE:** COUNSEL WAS INEFFECTIVE FOR FAILING TO SEEK JUDICIAL RECUSAL

(a) **Supporting Facts**: See Memorandum In Support for Details

(b) **Direct Appeal of Ground Five:**

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No **[X]**

(2) If you did not raise this issue in your direct appeal, explain why:

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255**

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? Yes [ ] No **[X]**

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application? Yes [ ] No [ ]

(4) Did you appeal from the denial of your motion, petition, or application? Yes [ ] No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? Yes [ ] No []

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND SIX:** COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO CHALLENGE THE SENTENCING DECISION

(a) **Supporting Facts**: See Memorandum In Support for Details

(b) **Direct Appeal of Ground Six:**

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No **[X]**

(2) If you did not raise this issue in your direct appeal, explain why:

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255**

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? Yes [ ] No **[X]**

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application? Yes [ ] No [ ]

(4) Did you appeal from the denial of your motion, petition, or application? Yes [ ] No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? Yes [ ] No []

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND SEVEN:** COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN CONNECTION WITH RESTITUTION PROCEEDINGS

(a) **Supporting Facts**: See Memorandum In Support for Details

(b) **Direct Appeal of Ground Seven:**

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No **[X]**

(2) If you did not raise this issue in your direct appeal, explain why:

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255**

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? Yes [ ] No **[X]**

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application? Yes [ ] No [ ]

(4) Did you appeal from the denial of your motion, petition, or application? Yes [ ] No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? Yes [ ] No []

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND EIGHT:** COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO INVESTIGATE AND REFUTE KEY EVIDENCE IN THE CASE

(a) **Supporting Facts**: See Memorandum In Support for Details

(b) **Direct Appeal of Ground Eight:**

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No **[X]**

(2) If you did not raise this issue in your direct appeal, explain why:

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255**

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?  Yes [ ] No **[X]**

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application? Yes [ ] No [ ]

(4) Did you appeal from the denial of your motion, petition, or application? Yes [ ] No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? Yes [ ] No []

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND NINE:** COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO ADEQUATELY CHALLENGE THE CONSTITUTIONALITY OF THE RICO DEFINITION AT PRE-TRIAL, TRIAL, AND APPELLATE STAGES

(a) **Supporting Facts**: See Memorandum In Support for Details

(b) **Direct Appeal of Ground Nine:**

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No **[X]**

(2) If you did not raise this issue in your direct appeal, explain why:

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255**

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? Yes [ ] No **[X]**

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application? Yes [ ] No [ ]

(4) Did you appeal from the denial of your motion, petition, or application? Yes [ ] No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? Yes [ ] No []

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TEN:** COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE DUE TO UNCONSTITUTIONAL INTERFERENCE WITH ATTORNEY-CLIENT COMMUNICATIONS BY THE BUREAU OF PRISONS

(a) **Supporting Facts**: See Memorandum In Support for Details

(b) **Direct Appeal of Ground Ten:**

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No **[X]**

(2) If you did not raise this issue in your direct appeal, explain why:

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255**

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? Yes [ ] No **[X]**

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application? Yes [ ] No [ ]

(4) Did you appeal from the denial of your motion, petition, or application? Yes [ ] No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? Yes [ ] No []

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND ELEVEN:** COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO ADEQUATELY ADDRESS ISSUES ON APPEAL

(a) **Supporting Facts**: See Memorandum In Support for Details

(b) **Direct Appeal of Ground Eleven:**

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No **[X]**

(2) If you did not raise this issue in your direct appeal, explain why:

INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application?  Yes [ ] No **[X]**

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application? Yes [ ] No [ ]

(4) Did you appeal from the denial of your motion, petition, or application? Yes [ ] No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? Yes [ ] No []

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND TWELVE:** CUMULATIVE IMPACT OF TRIAL COUNSEL ERRORS ADDRESSED HEREIN REQUIRE AN EVIDENTIARY HEARING

(a) **Supporting Facts**: See Memorandum In Support for Details

(b) **Direct Appeal of Ground Twelve:**

(1) If you appealed from the judgment of conviction, did you raise this issue? Yes [ ] No **[X]**

(2) If you did not raise this issue in your direct appeal, explain why:

**INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS ARE BEST RAISED IN A 2255**

(c) **Post-Conviction Proceedings:**

(1) Did you raise this issue in any post-conviction motion, petition, or application? Yes [ ] No **[X]**

(2) If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application? Yes [ ] No [ ]

(4) Did you appeal from the denial of your motion, petition, or application? Yes [ ] No [ ]

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal? Yes [ ] No []

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):
Date of the court's decision:
Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK
# (BROOKLYN)

KEITH ALAN RANIERE,
    Movant,

v.

    UNITED STATES OF AMERICA,
    Respondent.

Civil No. 1:24-CV-_____
(Criminal No. 1:18-CR-00204-1)

## MOVANT'S MOTION FOR LEAVE TO FILE OVERSIZED MEMORANDUM IN SUPPORT OF MOTION TO VACATE UNDER 28 U.S.C. § 2255

COMES NOW, Movant Keith Alan Raniere with this request for leave of court to file an oversized memorandum pursuant to L.R. III (D)(1), and provides as follows:

1. Mr. Raniere has filed a 28 U.S.C. § 2255 petition alleging ineffective assistance of counsel contemporaneously with this request.

2. The issues raised in the request address several aspects of trial counsel's ineffectiveness.

3. Since Mr. Raniere's case is complex as it addresses a criminal case that spanned a jury trial of six weeks, he cannot raise all his allegations within the 25-page limitation without sacrificing the arguments raised.

4. Based on the complex nature of his case, Mr. Raniere is requesting leave of court to file an oversized brief.

5. The government will not be prejudiced by this request.

6. This request is made in good faith and is not made to delay nor frustrate these proceedings.

WHEREFORE, Mr. Raniere respectfully prays that this Court will enter an order permitting an oversized memorandum of law in support of his Title 28 U.S.C. § 2255 petition.

## CERTIFICATE OF COMPLIANCE

This motion complies with the typeface requirements of LR III (D)(2) – Page Limitations and Formatting – having been prepared with an approved font Century School Book in 14pt.

Dated: 4/17/24

Respectfully submitted,

Keith Alan Raniere

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK
### (BROOKLYN)

| | |
|---|---|
| KEITH ALAN RANIERE,<br>        Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>        Respondent. | Civil No. 1:24-CV-_____<br>(Criminal No. 1:18-CR-00204-1) |

## MOVANT'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX IN SUPPORT OF MOTION TO CORRECT VACATE, AND/OR SET ASIDE SENTENCE AND CONVICTION PURSUANT TO TITLE 28 U.S.C. § 2255

COMES NOW Keith Alan Raniere with this Memorandum of Law in support of his Motion to Correct and/or Set Aside Conviction and/or Sentence pursuant to Title 28 U.S.C. Section 2255. In support thereof, Mr. Raniere provides the following facts that show he is entitled to relief or, at a minimum, an evidentiary hearing to properly develop his claims.

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................ 2

TABLE OF AUTHORITIES ........................................................................................ 4

JURISDICTION ........................................................................................................... 7

STATEMENT AS TO WAIVER, CAUSE AND PREJUDICE ..................................... 7

TIMELINESS ............................................................................................................... 8

SUMMARY OF THE PROCEDURAL HISTORY ........................................................ 9

    A.       The Charges. ............................................................................................ 9

    B.       The Trial and Sentencing. ...................................................................... 10

    C.       Direct Appeal ........................................................................................ 10

    ARGUMENT ..................................................................................................... 11

I.  The Conviction And Sentence Of Mr. Raniere Are Violative Of His Sixth Amendment Right To Effective Assistance Of Counsel .................................................... 11

    A.     The Performance of Counsel for Mr. Raniere Fell Below an Objective Standard of Reasonableness. ......................................................................................... 11

II. Counsel Was Ineffective for Failing to Challenge the Lack of Subject Matter Jurisdiction Due To Illegal Extradition and Misuse of the US-Mexico Extradition Treaty ......................................................................................................... 13

III. Counsel Was Ineffective for Failing to Challenge the Lack of Subject Matter Jurisdiction for Several Counts ..................................................................... 21

    A.     The Lack of Interstate Commerce Nexus for the Alleged Sex Trafficking of Nicole 21

    B.     The Lack of Interstate Commerce Nexus for the Alleged Attempted Sex Trafficking of Jay ............................................................................................ 24

IV. Counsel Was Constitutionally Ineffective For Failing To Challenge The Illegal Search And Seizure Of Evidence ........................................................................... 27

A. The Illegal Search and Seizure of the 8 Hale Drive Property. .......................... 27

C. Illegal Search of the Hard Drive. ......................................................... 37

D. The Illegal Searches of the Camera and Memory Card .................................... 39

V. Counsel was Ineffective for Failing to Present Exculpatory Evidence .......................... 42

A. Membership in DOS was Voluntary, Not Forced. ............................................. 42

B. Undermining the Date of Alleged Contraband .................................................. 46

VI. Counsel Was Ineffective For Failing to Seek Judicial Recusal ...................................... 48

VII. ......... Counsel Was Constitutionally Ineffective for Failing to Adequately Challenge the Sentencing Decision ........................................................................................... 52

VIII. . Counsel was Constitutionally Ineffective in Connection with Restitution Proceedings ........................................................................................................................ 52

IX. Counsel Was Constitutionally Ineffective in Failing to Investigate and Refute Key Evidence in the Case ........................................................................................... 54

X. Counsel Was Constitutionally Ineffective in Failing to Adequately Challenge the Unconstitutionality of the RICO Definition at Pre-Trial, Trial, and Appellate Stages .. 56

XI. Counsel Was Constitutionally Ineffective Due to Unconstitutional Interference with Attorney-Client Communications by the Bureau of Prisons ......................................... 57

XII. .... Counsel Was Constitutionally Ineffective in Failing to Adequately Address Issues on Appeal ................................................................................................................ 59

XIII. .......... The Cumulative Impact Of Trial Counsels Errors Addressed Herein Require An Evidentiary Hearing ........................................................................................... 61

A. Systematic Government Misconduct ................................................................. 62

B. Actual Innocence and Legal Insufficiency Due to Ineffective Assistance of Counsel .............................................................................................................. 66

C. Additional Trial Errors by Counsel, Rendering Them Ineffective .................... 71

XIV. An Evidentiary Hearing is Necessary and Would Be Useful to The Court ...... 73

CONCLUSION ............................................................................................... 75

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Arizona v. Evans,*
514 U.S. 1 (1995) ............................................................ 27

*Banks v. Reynolds,*
54 F.3d 1508 (10thCir. 1995) .................................. 13

*Brady v. Maryland,*
373 U.S. 83 (1963) ......................................................... 52

*Cook v. United States,*
288 U.S. 102 (1933) ..................................................... 15

*Elkins v. United States,*
364 U.S. 206 (1960) ..................................................... 28

*Gardner v. United States,*
2023 U.S. Dist. LEXIS 57290 (E.D. Mich. Mar. 31, 2023) ............... 39

*INS v. Lopez-Mendoza,*
468 U.S. 1032 (1984) ................................................... 27

*Mapp v. Ohio,*
367 U.S. 643 (1961) ..................................................... 28

*Massaro v. United States,*
538 U.S. 500 (2003) ........................................................ 7

*Nichols v. United States,*
75 F.3d 1137, I ............................................................ 55

*Raniere v. United States,*
143 S. Ct. 1756 (2023) .................................................. 8

*Shaw v. United States,*
24 F.3d 1040 (8th Cir 1994) ....................................... 55

*Spicer v. United States,*
217 F. Supp. 44 (D. Kan. 1963) ................................. 53

*Stoia v. United States,*
22 F.3d 766 (7th Cir. 1994) ........................................ 55

*Stone v. Powell,*
428 U.S. 465 (1976) ............................................ *passim*

*Strickland v. Washington,*
466 U.S. 668 (1984) ................................................ 11, 12

*United States v Hands,*
184 F.3d 1322 (11th Cir. 1999) ................................. 47

4

*United States v. Blaylock,*
  20 F.3d 1458 (9th Cir. 1994) ............................................. 55

*United States v. Calandra,*
  414 U.S. 338 (1974) ........................................................ 27

*United States v. Fernandez,*
  145 F.3d 59 (1st Cir. 1998) ............................................. 47

*United States v. Jimenez Recio,*
  371 F.3d 1093 (9th Cir. 2004) ...................................... 49-50

*United States v. Leon,*
  468 U.S. 897 (1984) ........................................................ 27

*United States v. Munoz,*
  150 F.3d 401 (5th Cir. 1998) ........................................... 47

*United States v. Purcell,*
  967 F.3d 159 (2d Cir. 2020) ............................................ 19

*United States v. Raniere,*
  55 F.4th 354 (2d Cir. 2022) ............................................ 10

*United States v. Rauscher,*
  119 U.S. 407 (1886) ........................................................ 16

*United States v. Witherspoon,*
  231 F.3d 923 (7th Cir. 2000) ........................................... 56

*Virgin Islands v. Weatherwax,*
  20 F.3d 572 (3rd Cir. 1994) ............................................ 55

*Weeks v. United States,*
  232 U.S. 383 (1914) ........................................................ 28

*Williams v. Taylor,*
  120 S. Ct. 1495 (2000) ............................................... 11, 12

**Statutes**

18 U.S.C. § 1028 ............................................................. 10

18 U.S.C. § 1349 ............................................................... 9

18 U.S.C. § 1589 ........................................................... 9, 21

18 U.S.C. § 1591 ....................................................... 9, 20, 24

18 U.S.C. § 1594 ............................................................... 9

18 U.S.C. § 1961 ............................................................... 9

18 U.S.C. § 2251 ............................................................... 9

28 U.S.C. § 2255 ................................................................. 1, 7

**Other**

Fourth Amendment of the United States Constitution ......................... 25

Rule 4 ................................................................................ 57

*Ward v. United States,*
 995 F.2d 1317 (6th Cir. 1993) ............................................... 8

## JURISDICTION

This Court has jurisdiction to hear this motion, pursuant to 28 U.S.C. § 2255(a), which states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

This Court sentenced Mr. Raniere and therefore has jurisdiction to hear his § 2255 motion and to grant the relief requested.[1]

## STATEMENT AS TO WAIVER, CAUSE AND PREJUDICE

Mr. Raniere did not raise the claims asserted on direct appeal because the facts set forth in his § 2255 motion were and are material to the claim of ineffective assistance of counsel but were not part of the record for direct appeal. "Cause" is therefore established for his failure to raise the claim prior to this motion. *Massaro v. United States*, 538 U.S. 500 (2003). Mr. Raniere has properly pleaded "prejudice" by

---

[1] Judgment was entered by this court on October 30, 2020.

pleading the "fundamental defect" in his sentence, as set forth herein. *Ward v. United States*, 995 F.2d I 3 I 7, 1321 (6th Cir. 1993). "Prejudice" to Mr. Raniere is established by the fact that absent relief by this Court, his sentence violates the Constitution and laws of the United States. *Id*.

Based on the foregoing, and the absence of any knowing and intelligent waiver by Mr. Raniere of his right to bring this motion, this Court is not precluded by the "cause and prejudice" principle from entertaining, ruling on the merits, and granting the relief requested.

## TIMELINESS

This motion is timely filed under § 2255(f)(1), which provides that a motion filed under § 2255 within one year of a criminal judgment becoming final is timely filed. Mr. Raniere's judgment became "final" when petition for a writ of certiorari to the Eleventh Circuit in the Supreme Court expired on April 17, 2023.[2] The one-year statute of limitations under § 2255(f)(1) therefore expires April 17, 2024, and this motion is timely if filed on or prior to that date.

---

[2] *Raniere v. United States*, 143 S. Ct. 1756 (2023).

## SUMMARY OF THE PROCEDURAL HISTORY

### A. The Charges.

On Valentine's Day, February 14, 2018, a sealed Complaint was filed in the U.S. District Court for the Eastern District of New York (EDNY), accusing Keith Raniere of Forced Labor and Sex Trafficking (18 U.S.C. §§ 1589, 1591). (ECF No. 1). Ultimately Mr. Raniere and five co-defendants would be charged in a Second Superseding Indictment on March 13, 2019, with the following:

- Racketeering Conspiracy (18 U.S.C. § 1961) (Count 1); and
- Racketeering (18 U.S.C. § 1961) (Count 2), constituting the followings acts: Four acts of Conspiracy to Commit Identity Theft; Two acts of Sexual Exploitation of a Child; One act of Possession of Child Pornography; One act of Conspiracy to Alter Records for Use in an Official Proceeding; One act of Money Laundering; Four acts of extortion and forced labor; One act of sex trafficking; and One act of Visa Fraud.
- Sexual Exploitation of a Child (18 U.S.C. § 2251) (Counts 3 and 4);
- Possession of Child Pornography (18U.S.C. § 2252(a) (Count 5);
- Forced Labor Conspiracy (18 U.S.C. § 1594 (Count 6);
- Wire Fraud Conspiracy (18 U.S.C. § 1349) (Count 7);
- Sex Trafficking Conspiracy (18 U.S.C. § 1591) (Count 8);
- Sex Trafficking (18 U.S.C. § 1591) (Count 9);
- Attempted Sex Trafficking (18 U.S.C. § 1591) (Count 10); and

- Conspiracy to Commit Identity Theft (18 U.S.C. § 1028(f)) (Count 11).

(ECF No. 430).

## B. The Trial and Sentencing.

Following the Second Superseding Indictment, each of Raniere's co-defendants entered guilty pleas to a range of offenses. This series of guilty pleas set the stage for Raniere's trial, which unfolded over six weeks, culminating in Raniere's conviction on multiple counts. He was found guilty of racketeering conspiracy and racketeering (Counts 1 and 2); forced labor conspiracy (Count 3); wire fraud conspiracy (Count 4); sex trafficking conspiracy (Count 5), sex trafficking (Count 6); and attempted sex trafficking (Count 7). The District Court's sentenced Mr. Raniere to 120 years' imprisonment, accompanied by a $250,000.00 fine.

## C. Direct Appeal

Mr. Raniere's direct appeal focused on several issues of legal insufficiency, constitutional challenges, and whether the statutory definition of "a commercial sex act" required an exchange of money or financial benefits. *United States v. Raniere*, 55 F.4th 354, 360 (2d Cir. 2022). The Second Circuit held that for sexual exploitation to be

actionable under Section 1591, it need not have been conducted—as Raniere argues it must—for profit." *Id.* at 362.

No petition for rehearing was filed in the Second Circuit, and a petition for *writ of certiorari* in the Supreme Court was denied on April 17, 2023. *Raniere v. United States*, 143 S. Ct. 1756 (2023).

## ARGUMENT

### I. THE CONVICTION AND SENTENCE OF MR. RANIERE ARE VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

#### A. The Performance of Counsel for Mr. Raniere Fell Below an Objective Standard of Reasonableness.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the

proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams v. Taylor*, 120 S. Ct. 1495, 1512-16 (2000).

To establish deficient performance, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* 466 U.S. at 695. "The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Strickland* 466 U.S. at 694.

A court hearing an ineffectiveness claim should consider the totality of the factors that guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors. "Taking the unaffected [factors] as a given and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the defendant

has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

The *Strickland* test for "prejudice," a difference in the outcome of the proceeding, applies only to the outcome of the particular proceeding affected by counsel's deficient performance. *See Banks v. Reynolds*, 54 F.3d 1508 (10thCir. 1995) ("prejudice" in this type of case is limited to the "outcome" of the direct appeal. It does not require the defendant to demonstrate that he would be "successful on remand"; only that there is a reasonable probability that he would have had his conviction and/or sentence vacated and/or remanded to the lower court).

Mr. Raniere has made specific, sworn, factual allegations, in his § 2255 petition that he was prejudiced by the objectively unreasonable performance of counsel in the pre-trial, trial sentencing, and appellate phases of his case. Based on the foregoing facts and law, Mr. Raniere has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland.*

## II. COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE LACK OF SUBJECT MATTER

## JURISDICTION DUE TO ILLEGAL EXTRADITION AND MISUSE OF THE US-MEXICO EXTRADITION TREATY

The U.S. judiciary's involvement in Mr. Keith Raniere's forcible transfer from Mexico under the guise of a domestic deportation constitutes an illegal extradition, breaching the Bilateral US-Mexico Extradition Treaty. This operation, lacking formal extradition procedures and judicial oversight, led to subsequent violations of the treaty's Rule of Specialty through the addition of racketeering charges post-extradition, warranting the dismissal of these charges.

- Upon issuing a sealed arrest warrant for Mr. Raniere on February 14, 2018, U.S. prosecutors collaborated with Mexican law enforcement to locate him, indicating U.S. judicial authority's direct involvement.

- The operation during the afternoon on March 25, 2018, presented as a visa check, involved armed personnel who utilized the sealed EDNY arrest warrant, evidencing a pretext for extradition. The absence of any independent judicial action by Mexican authorities against Mr. Raniere in preceding five weeks since the US sealed arrest complaint indicates that this operation was **not** prompted by suspected violation of Mexican law but rather a maneuver coordinated for the purposes of U.S. extradition. Note that the Mexican authorities had on file that day Mr. Raniere's valid visa number, indicating his legal status in Mexico.

- That same day, U.S. authorities funded Mr. Raniere's immediate transportation back to the U.S. the next day, further implicating their involvement in the extradition process. (See Exhibit A, containing a travel itinerary purchased by the FBI/DOJ)

- Despite Mr. Raniere's legal visa status in Mexico, both U.S. and Mexican governments misrepresented the event as a deportation, concealing the extradition's true nature.

- The acquisition of a search warrant for 8 Hale Dr. on March 26, 2018, included racketeering among the charges, underscoring the pre-existing intent to levy such charges post-extradition, in violation of the extradition treaty.

### 1. Illegal Extradition Without Due Process

The transfer operation, devoid of formal extradition proceedings and treaty adherence, constituted an illegal extradition. This operation starkly violated international law and Mr. Raniere's due process rights, as evidenced by:

- The operation's reliance on a U.S. judicially issued sealed arrest warrant, to instigate international cooperation for US prosecution, a mechanism that is provided by the Extradition Treaty.

- The pretextual nature of the Mexican visa check, facilitated by U.S. coordination and the presentation of the sealed warrant, intended for extradition purposes.

- The absence of any criminal charges in Mexico against Mr. Raniere, who possessed a valid visa. (See Exhibit A)

- The U.S.'s financing of Mr. Raniere's immediate return, further indicating extradition intentions.

There are two factors requiring the Court to divest jurisdiction of this case due to this illegal government conduct. At a first level, the US government violated the Extradition Treaty. As per *Cook v. United States*, 288 U.S. 102 (1933) and Related Case Law, the United States cannot acquire jurisdiction through the violation of a treaty**. Applied here, the Court must divested of jurisdiction because of the US government's violation of terms of the US-Mexico Extradition Treaty, which provide U.S. citizens formalized guarantees of Due Process. (emphasis added.)**

At a second and more problematic level, the US government deceptively used the international procedural mechanisms provided by the Extradition Treaty to obtain Mr. Raniere in violation of the treaty. This is clear from the mobilization of Mexican government cooperation using a sealed EDNY arrest complaint, which the abducting Mexican authorities brandished during their apprehension of Mr. Raniere, and then *both* governments misrepresenting it as a Mexican deportation after the fact. This conduct constitutes a breach of the good faith

16

required in upholding international treaties, as per the Vienna Convention and the principle of *pacta sunt servanda*. This situation is distinguished from Kerr-Frisbie cases, such as US v. Alvarez-Machain, as those cases did not involve a deceptive abuse of treaty, using the pretense of proper legal procedure. If the Court were **not** to divest itself of jurisdiction because of these abrogations, it would undermine the integrity of the treaty and the US government's disposition towards international law. The "clean hands" doctrine applies. Further, the US government and a part of the Mexican government both knowingly and in bad faith misused the mechanisms provided by the Extradition Treaty to achieve an illegal extradition while misrepresenting their actions as lawful. This constitutes fraudulent inducement with respect to the extradition treaty, also requiring the divestiture of jurisdiction.

### 2. Violation of the Rule of Specialty

The post-extradition introduction of racketeering charges contravenes the Rule of Specialty, which restricts trial offenses to those explicitly stated in the extradition request or those closely related. The expansion of charges post-extradition, circumventing formal extradition protocols, infringes upon Mr. Raniere's due process rights *See United*

*States v. Rauscher*, 119 U.S. 407 (1886) (holding that a defendant brought back to the United States via an extradition treaty could only face the charges cited in the extradition order, and later charges had to be dismissed); Extradition Treaty Between the United States of America and the United Mexican States, art. 17 ("A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted nor be extradited by that Party to a third State," absent certain exceptions).[3]

### 3. Mr. Raniere's Standing to Challenge

Mr. Raniere had standing to contest the extradition and subsequent charges, given the prosecutorial misrepresentations and treaty violations. The prosecution's misuse of treaty mechanisms, deliberate misclassification of the operation, and the concealment of treaty breaches provided Mr. Raniere with grounds to challenge the

---

[3] https://treaties.un.org/doc/Publication/UNTS/Volume%201207/volume-1207-I-19462-English.pdf?fbclid=IwAR2c-jNtr2daMm2MpKJuuGxUWyqyhuC9Oof2%5C_GK2z4-SSoUeAFCzUFkmQS4. (last visited April 9, 2024).

legality of the extradition process and the subsequent application of the Rule of Specialty.

Mr. Raniere's transfer from Mexico, orchestrated by U.S. authorities and misrepresented as a deportation, constituted an illegal extradition in violation of international treaties. The subsequent addition of racketeering charges, in defiance of the Rule of Specialty, mandates the dismissal of these charges, if not the total divestiture of jurisdiction, upholding the principles of due process and international legal obligations.

Relevant Case Law supports the stringent application of the Rule of Specialty in extradition cases, emphasizing the necessity of adhering to the stipulated offenses and the principle of *pacta sunt servanda*, underscoring the binding nature of treaties and the obligation to perform them in good faith. *Rauscher, supra;* Vienna Convention on the Law of Treaties, art. 26.[4]

---

[4] https://legal.un.org/ilc/texts/instruments/english/conventions/1_1_1969.pdf. (last visited April 9, 2024).

### 4. Newly discovered evidence shows Mr. Raniere was not merely deported from Mexico.

In November 2022, Mr. Raniere's Defense team acquired his immigration file through official channels from the Mexican government. (Exhibit A.) Unaware of its significance until after his trial, Mr. Raniere began investigating evidence of misconduct in his case, revealing its relevance. The government had claimed during pre-trial that the Mexican government had deported Mr. Raniere, implying this information was irrelevant to his criminal prosecution. However, the discovery of the Mexican immigration records, after a lengthy, multi-month investigation as detailed in the affidavit of a Mexican attorney, and the government's active misrepresentation of the deportation, classify this as newly discovered evidence, unattainable through due diligence before or during the trial.

Moreover, Moira Kim Penza, the lead prosecutor, falsely claimed in a post-trial lecture at SUNY Binghamton, her alma mater, that "Raniere was deported," further evidencing a cover-up. (Moira Kim Penza, Bonzano Memorial Law Lecture (Nov. 1, 2022) (excerpt from Zoom recording)).

Thus, Mr. Raniere's claim of improper, illegal extradition, which led to a violation of the Rule of Specialty, stands as newly discovered evidence and as an instance of Ineffective Assistance of Counsel.

### III. COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE THE LACK OF SUBJECT MATTER JURISDICTION FOR SEVERAL COUNTS

#### A. The Lack of Interstate Commerce Nexus for the Alleged Sex Trafficking of Nicole

Counsel failed to argue that the government could not have proved the interstate-commerce nexus necessary for the sex-trafficking offense, reflected in Racketeering Act 10A (Sex Trafficking), and standalone Count 6 (Sex Trafficking Conspiracy), using the numbering of counts as per the jury instructions (ECF No. 728.) "Venue is proper only where the acts constituting the offense - the crime's 'essential conduct elements' - took place." *United States v. Purcell*, 967 F.3d 159, 186 (2d Cir. 2020). In *Purcell*, the court concluded that since the alleged unlawful sexual offense had not occurred in the Southern District of New York, and indeed the alleged victim had not been transported to that jurisdiction by the defendant, venue (and thus jurisdiction) was not proper in that court. The court overturned the convictions.

1. **The alleged victim Nicole was already in the Northern District of New York, where the allegations of sex trafficking occurred.**

The government charged Mr. Raniere in the Eastern District of New York with sex trafficking of Nicole, despite the alleged incident—a singular act of oral sex between two women with no financial transaction—occurring in Albany, within the Northern District of New York's jurisdiction. The government's justification for the Eastern District's jurisdiction over the sex trafficking charge surfaced only during their closing argument at trial, stating, "Nicole took either Amtrak or Greyhound to and from Albany the day of that assignment -- Amtrak or a bus, a commercial bus. The use of these modes of transportation affect interstate commerce." (Trial Transcript at 5416). This late-stage rationale raises significant concerns regarding the establishment of federal jurisdiction based on the elements of Interstate Commerce and Commercial Sex required for a sex trafficking charge under 18 USC § 1591.

The government's assertion hinges on the claim that Nicole's use of commercial transportation (Amtrak or Greyhound) to travel to and from Albany on the day of the alleged act implicates interstate

commerce. However, Nicole's testimony reveals she was already in Albany, at Allison's residence, at least a day prior to the incident, contradicting the government's timeline. (Id. at 3921). Moreover, the lack of foreknowledge about the act by Nicole or Allison, who orchestrated Nicole's trips to Albany, disconnects the travel from the alleged sex act. (Id. at 3923-3934). Nicole's frequent travels to Albany, encompassing various modes of transportation, further undermine the government's argument, especially considering the absence of direct evidence specifying the mode of transportation used for this particular trip. (Id. at 4053-4054). Additionally, the *intra*-state nature of travel from Brooklyn to Albany challenges the assertion that such movement impacts interstate commerce at all.

The prosecution's argument for commercial sex pivots on the notion that Allison Mack derived value from providing Nicole for the sex act, purportedly making Mr. Raniere "happy" and securing economic benefits within DOS's hierarchical structure. (Id. at 5414). However, the lack of concrete evidence linking Mack's position in DOS to this specific act, combined with the timing of Mack's discussions with the government post-indictment, undermines the credibility of this claim.

The reliance on Mack's state of mind during the trial constitutes a constructive amendment to the indictment, straying from the charges as originally presented.

After an extensive 18-month investigation and multiple indictments, the government's failure to substantiate the elements of commercial sex and interstate commerce exposes a critical jurisdictional flaw. This deficiency underlines the government's lack of legal standing to initiate the sex trafficking case against Keith Raniere, eroding the legitimacy of the charges and the appropriateness of the Eastern District of New York's jurisdiction in this matter.

## B. The Lack of Interstate Commerce Nexus for the Alleged Attempted Sex Trafficking of Jay

Counsel failed to argue that the government could not have proved the interstate-commerce nexus necessary for the attempted sex-trafficking offense, reflected in standalone Count 7 (Attempted Sex Trafficking of Jay) (ECF No. 728.)

**1. Travel of the alleged victim Jay was work-related and unrelated to the attempted sex trafficking charge.**

The foundational premise of the alleged attempted sex trafficking charge against Mr. Raniere lies in his purported leadership within DOS, where he allegedly directed a hierarchical structure that led to a "seduction assignment" for Jay. This task, given by Jay's "master" within DOS, India, was not to engage in sexual contact but rather to have Mr. Raniere take a nude photograph of Jay, which she was then to forward to India as a demonstration of her commitment to her vow of membership in the organization.

- Jay's initiation into DOS occurred in November 2016, as per the trial transcripts. (Trial Transcript at 4323-4325).
- She moved to Albany on January 11, 2017. (Trial Transcript at 4342:25-4343:3).
- The controversial "seduction assignment" was given to Jay in March or April 2017. (Trial Transcript at 4432:17-23).
- Despite her involvement in DOS, Jay's travels between Albany and LA, primarily through JFK airport, were, by her own admission, for employment purposes, not related to DOS activities. (Trial Transcript at 4343:22-4345:2).

The prosecution attempted to tie the requisite interstate commerce element to Jay's flights for employment, suggesting that this

travel satisfied the interstate commerce requirement under 18 U.S.C. § 1591. (Trial Transcript at 5419).

The government's assertion that Jay's employment-related travel constitutes a nexus to interstate commerce, thereby fulfilling the jurisdictional prerequisites of 18 U.S.C. § 1591, is fundamentally flawed. This interpretation stretches the concept of interstate commerce beyond its reasonable bounds, lacking any direct or meaningful connection to the "seduction assignment." The critical element for federal jurisdiction under 18 U.S.C. § 1591 demands a substantial link to interstate commerce, which is absent in this scenario. The employment-related travel of Jay bears no relation to the DOS-related assignment, rendering the government's jurisdictional claim invalid.

Given the evident disconnect between Jay's travel for work and the DOS assignment, the charge levied against Mr. Raniere does not satisfy the stringent jurisdictional criteria essential for a federal sex trafficking prosecution under 18 U.S.C. § 1591. The absence of a concrete and substantial connection to interstate commerce necessitates the vacating of the conviction on Count Seven, due to the failure to

establish the requisite subject matter jurisdiction for a viable federal charge.

## IV. COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO CHALLENGE THE ILLEGAL SEARCH AND SEIZURE OF EVIDENCE

Defense counsel was constitutionally ineffective for failing to challenge the illegal search and seizure of evidence from Mr. Raniere's property, items of which Mr. Raniere had an interest and an expectation of privacy under the Fourth Amendment. Among the numerous ways the government illegally obtained, manipulated, and staged evidence in this case, the following are specific challenges that counsel entirely failed to raise.

### A. The Illegal Search and Seizure of the 8 Hale Drive Property.

This appeal concerns the fundamental rights enshrined in the Fourth Amendment of the United States Constitution, rights that were egregiously violated during the search of 8 Hale Dr in Halfmoon, NY, by FBI agents that led to the criminal charges against Mr. Raniere. The actions taken during this search not only defy the principles of lawful investigation but also undermine the integrity of our justice system.

Because counsel failed to properly challenge these egregious actions by the government in the search and seizure, Mr. Raniere's § 2255 motion is due to be granted.

The government's photos of the evidence, which were used as trial evidence, discussed below, unequivocally demonstrate that FBI agents engaged in illegal conduct by staging evidence, falsifying search photos, and planting evidence. Such actions are not only unethical but patently illegal, violating the very essence of the Fourth Amendment's protection against unreasonable searches and seizures.

The ramifications of these violations are profound. Under the well-established exclusionary rule, evidence obtained through illegal means should have been deemed inadmissible in court — if counsel had raised such a challenge. This principle is not merely procedural but a cornerstone of our legal system's commitment to justice and the rule of law. Any defense lawyer who ignores this cornerstone provides ineffective assistance of counsel.

The Supreme Court has firmly established that the primary purpose of the exclusionary rule is to deter future unlawful police

conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures. *United States v. Calandra*, 414 U.S. 338, 347 (1974). This foundational principle underscores that the rule serves as a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect. *United States v. Leon*, 468 U.S. 897, 906 (1984).

The Court has clarified that the exclusionary rule is designed for instances where its remedial objectives are most efficaciously served, and where the deterrent value outweighs the costs, including the loss of probative evidence. *Arizona v. Evans*, 514 U.S. 1, 11 (1995); *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1041 (1984). This nuanced approach is essential for maintaining the balance between deterring unlawful police conduct and ensuring the integrity and efficiency of judicial proceedings – which ultimately protects a person's Fourth Amendment rights.

In the realm of criminal trials, the Court has consistently found the exclusionary rule to be efficacious in deterring improper police conduct and protecting Fourth Amendment rights, as evidenced by landmark cases such as *Elkins v. United States*, 364 U.S. 206 (1960);

*Mapp v. Ohio*, 367 U.S. 643 (1961); and *Weeks v. United States*, 232 U.S. 383 (1914). This established deterrent effect in criminal proceedings forms a baseline for evaluating the potential incremental deterrence that could be achieved by extending the rule to other types of cases.

However, the Court has also recognized that the additional deterrent value of applying the rule in contexts such as civil tax proceedings, habeas corpus proceedings, and grand jury proceedings may be marginal and outweighed by the incremental costs involved. For instance, in *Stone v. Powell*, 428 U.S. 465 (1976), the Court questioned the assumption that extending the exclusionary rule to habeas proceedings would significantly deter Fourth Amendment violations, given the collateral nature of such proceedings. However, the Court has held that an ineffective-assistance-of-counsel claim raising counsel's failure to challenge a Fourth Amendment violation was not barred by *Stone's* rule excluding Fourth Amendment claims in a habeas proceeding, since such a claim fell under the Sixth Amendment's right to counsel.

In the context of the instant case, these principles suggest that the exclusionary rule's primary aim to deter unlawful police conduct must be synthesized with the potential impact on Mr. Raniere's constitutional rights being violated. The Supreme Court's jurisprudence indicates a pragmatic approach that balances the rule's deterrent objectives against the Fourth Amendment protections without unduly hampering the administration of justice.

In this case, the illegally obtained evidence includes items (designated as 1B15 and 1B16) — a Canon camera and memory card, and a Western Digital hard drive, respectively. These items were at the heart of the prosecution's case, purportedly substantiating Racketeering Acts 2-4. However, given the tainted manner in which this evidence was procured, it, and all evidence seized, must be excluded. According to a report by a former FBI expert who evaluated the evidence in this case, it was obvious that evidence in the search had been illegally staged, planted, manipulated, and the search was "not legitimate." (*See* Exhibit B, Expert Report).

The report was authored by Kenneth DeNardo, a former FBI Evidence Specialist, who served the FBI for 23 years, after reviewing photos and documents regarding the evidence used against Mr. Raniere. Here are just some of the findings by the expert:

- "The bookshelf where a particular hard drive was purportedly collected was initially photographed showing three devices …. Later in the search, the same shelf shows different contents: two of the devices are gone, the remaining device was moved, and new items have been added."
- "This new setting was used twice, to re-photograph two electronic devices, previously on the bookshelf, now re-labeled as Items 36 and 37."
- "This means that the following occurred:
  1. Agents changed the bookshelf's contents and added back the device previously labeled as Item 2, now relabeled as Item 36.
  2. SA Mills photographed that item.
  3. TFO Hochron collected that item.
  4. An Agent added back another device, labeling it as Item 37.
  5. SA Mills photographed that item.
  6. TFO Hochron collected that item."
- Therefore, we can conclude:
- Items 36 and 37 were staged.
- They were photographed to present as genuine.
- This constitutes evidence tampering and fabrication.

32

- SA Mills and TFO Hochron are directly implicated in this conduct."

The expert further reported that "[e]vidence is meant to be photographed in place," to document where it was found. SA Mills testified to this in the trial, when he claimed that the camera (Item 1) was photographed "in place," including an excerpt from the trial transcript. (Appendix A at 14).

In staging evidence photos, these agents used items of unknown origin, including two books on sex trafficking – the central focus of the search. Given that these books were **not** collected, despite their relevance to the search warrant, and a less relevant book on the "History of Torture" was collected (See 8 Hale Inventory and GX 502A), and that they were not photographed "in place" the expert in his professional opinion, concluded, "The most plausible explanation for these actions not being taken, as well as these items being used to stage evidence photographs, is that they were not found at the scene but rather were brought there by one or more agents." (Id. at 16).

As for the government having a pretextual purpose for the search, the expert pointed to the order in which the camera and hard drive were collected, and other devices in between were skipped over, and fact that only one of two cameras had been seized, when the search warrant had expressly authorized seizure of all media devices and sought digital photos termed 'collateral': "Prioritizing that particular camera and hard drive for collection, and intentionally not collecting another camera demonstrates that an agent had prior knowledge of these two items specifically, and their precise locations.

This prioritization is consistent with a post-trial email from civil attorney Neil Glazer[5], whose clients were the basis of this search warrant, and who months prior indicated collaboration with the EDNY in an email, stating they were "learning precise locations of evidence" for search warrants. (Doc. 1178.) This revelation contradicts the FBI's claim that they believed these two items had no particular significance

---

[5] This email from Mr. Glazer indicating involvement in search impropriety casts a different light on the witness perjury allegations levied against his clients and major government witnesses Nicole and Daniela, further substantiated by his emails, provided in Doc. 1178 (*Pro Se* Rule 33.).

until an 'accidental discovery' almost a year later, on February 21, 2019." (Id. at 23).

The expert's Conclusion in the report is very damning to the government:

- "Multiple evidence items were staged, planted in specific locations to appear genuinely there, and then photographed. These photographs were then used at trial. This constitutes evidence tampering and fabrication, in which SA Mills and TFO Hochron are directly implicated.

- The camera and hard drive were targeted, showing foreknowledge of their significance, contradicting the FBI's later 'accidental discovery' narrative.

- Numerous irregularities, including agents' attempting to create an impression through the staging of evidence, corroborate that the search was pre-textual and, therefore not legitimate, and appears focused on the camera and hard drive.

- In my 23 years of service to the FBI and having photographed hundreds of searches, I have never seen intentional manipulation and staging of evidence in a search, which clearly occurred in the FBI search of 8 Hale."

(Id. at 24).[6]

---

[6] The expert's report was signed under the penalty of perjury on December 15, 2023. (Id. at 25).

The exclusion of these pivotal items necessitates a re-evaluation of the charges at hand. Specifically, the absence of the Canon camera, a foreign-manufactured item, eliminates the government's basis for federal jurisdiction over the child pornography charges, as the government's assertion of interstate commerce hinges on this piece of evidence. Moreover, without the contents of the hard drive, there is a glaring lack of concrete evidence of the alleged criminal activities, effectively dismantling the foundation for the charge of possession.

It is, therefore, imperative for this Court to recognize the gravity of the Fourth Amendment violations that have occurred and uphold the principles of justice and fairness by excluding the tainted evidence. By doing so, this Court will not only rectify the injustices experienced by the petitioner but also reaffirm the sanctity of constitutional rights and the paramount importance of conducting law enforcement activities within the bounds of the law.

We respectfully urge the Court to consider the undeniable implications of the illegal conduct exhibited by law enforcement in this case and to exclude all evidence obtained as a result, leading to, in the

least, the dismissal of Racketeering Acts 2-4 for lack of sufficient evidence.

## C. Illegal Search of the Hard Drive.

The agents' alleged "discovery" of photos on item 1B16, the hard drive, on February 21, 2019, clearly transgressed the plain view doctrine's requirements, rendering the search unauthorized and in direct violation of the Fourth Amendment. The initial warrant issued for the 8 Hale Dr. search sanctioned the examination of evidence pertaining to activities from 2015 forward. Contrarily, the agents encountered files and folders on the hard drive exclusively dated to 2012 or earlier, immediately signaling that these contents fell outside the authorized temporal scope of the warrant. The deliberate navigation through the device to locate the specific photos in question illustrates a conscious disregard for the warrant's temporal limitations:

1. Agents accessed the "BACKUPS" folder, last opened in 2012, placing it three years beyond the warrant's temporal boundary.

2. Within "BACKUPS," they encountered three folders, ostensibly computer backups, each labeled with 2009 dates and created in 2009, thereby indicating that their contents predated the warrant's scope by six years or more.

3. They proceeded into the Dell Dimension backup, housing files last accessed in 2010, five years prior to the warrant's threshold.

4. They explored the "Studies" folder, comprising eleven folders named after dates in 2005, such as "V110205," situating them ten years outside the warrant's purview.

5. They delved into "V110205," unveiling two subfolders named after specific dates in 2005, with last modifications and access dates in 2005 and 2010, respectively.

6. They entered the subfolder "2005-11-02-0440-20," last modified a decade beyond the search warrant's scope.

7. Within this subfolder, Photos 150-163 resided. The agents' examination of Photos 155 and 156 suggests either a random selection from this batch or a review of other photos within the subfolder, all dated to 2005—ten years outside the warrant's specified timeframe.

This sequence of actions indicates the agents knowingly accessed files well beyond the sanctioned search parameters, undermining any claim to inadvertent, plain view discovery. This is further accentuated by Assistant U.S. Attorney Penza's remarks both before and after the trial. Six weeks prior to the "accidental discovery," Penza anticipated a superseding indictment, hinting at the subsequent "discovery." Following the trial, Penza admitted on an HBO episode to being aware of the photos' existence, stating it was merely a question of locating them. Both the anticipatory statement before the trial and the post-trial

admission reveals a premeditated awareness of the photos' existence and whereabouts, challenging the purported accidental nature of their discovery as presented to the Court.

Consequently, the search conducted on February 21, 2019, was not plain-view and therefore blatantly violated and intentionally the search warrant's defined scope, constituting an illegal act in contravention of the Fourth Amendment. As such, the evidence gleaned from this search, particularly the hard drive, warrants exclusion. The omission of this evidence critically undermines the allegations in Racketeering Acts 2-4, reliant on the contested photographs, thereby necessitating their dismissal.

## D. The Illegal Searches of the Camera and Memory Card.

FBI agents took possession of items 1B15, a Canon camera with a memory card, and 1B16, a Western Digital hard drive, on March 27, 2018, executing a search warrant for suspected involvement in sex trafficking, forced labor, and racketeering activities that have been ongoing since 2015.

Subsequently, on February 21, 2019, upon examining Item 1B16, the hard drive, FBI agents, led by SA Lever, identified what they suspected to be contraband. The evidence suggested that the seized Canon camera had captured this content, as detailed in an affidavit by SA Lever. This discovery prompted the acquisition of a second search warrant on February 22, 2019, specifically targeting the hard drive to further investigate the suspected contraband. Notably, this second warrant did not extend to the camera and memory card. Despite the absence of a warrant for the camera and memory card, SA Lever initiated a forensic analysis of the camera and its memory card, contained within, by sending it to CART's Flatley on the very same day, ostensibly to probe its connection to the contraband found on hard drive. This is clear from the fact that Flatley was initially slated to testify about this item, in relation to the child pornography charges. This action signifies an unauthorized search of the camera and memory card, as it lacked a separate warrant that would cover any suspected contraband dating back to 2005.

The situation escalated on June 7, 2019, when SA Lever, citing the unavailability of Flatley to testify, instructed CART examiner Booth

to conduct an analysis of the camera and memory card. Booth's examination, aimed exclusively at addressing the alleged contraband charges at trial, similarly lacked the necessary legal warrant.

The investigations conducted by Flatley and Booth into the camera and memory card cannot be justified under the plain view doctrine. Their examinations were not incidental discoveries but were targeted inquiries based on the purportedly accidental findings from the hard drive. Moreover, the alleged incriminating nature of camera and memory card was not immediately apparent, particularly since the camera could not be powered on due to a non-functional battery; additionally, a forensic examination to access the data on the memory card was necessary. These facts underscore the illegal nature of the searches conducted on the camera and memory card.

In light of the exclusionary rule, discussed in § IV A, which mandates the suppression of evidence obtained through illegal searches, the information derived from camera and memory card, including the Canon camera and its memory card, must be excluded from the contraband-related charges. They must *both* be excluded, not only

because they are bundled as one item, with a single chain of custody, but the examination of the camera was done in tandem with that of the memory card. Given the pivotal role of the camera, and its memory card, in linking Mr. Raniere to the photographs in question and in establishing federal jurisdiction, the exclusion of this evidence undermines the foundation of Racketeering Acts 2-4, necessitating their dismissal.

## V. COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT EXCULPATORY EVIDENCE

Counsel's failure to present exculpatory evidence was ineffective assistance of counsel. *See, e.g., Gardner v. United States*, 2023 U.S. Dist. LEXIS 57290, at *18 (E.D. Mich. Mar. 31, 2023) (finding counsel was ineffective for failing to introduce evidence that would have raised doubt with the jury, and finding counsel's lack of action was not a "strategy" immune from *Strickland* review).

### A. Membership in DOS was Voluntary, Not Forced.

Nicole's engagement in various activities as a DOS member, including reviewing approximately 55 essays, transcribing several hours of videos, performing "acts of care," and taking nude photos as

part of the practices of DOS, was characterized by the prosecution as coerced, a claim predicated on the threat of releasing DOS "collateral." This assertion fundamentally misinterprets the voluntary nature of her DOS membership, warranting a reevaluation of the "forced labor" charge under legal scrutiny.

The entry into DOS was marked by a voluntary, two-step process emphasizing informed consent, allowing potential members to opt out at any time before committing. Initially, the provision of "collateral" acted as a gatekeeper, ensuring only genuinely interested individuals, and those who would honor the requisite secrecy of the sorority, proceeded, with the understanding that this step was entirely voluntary. The detailed briefing on DOS membership conditions, as testified to by government cooperating witness Lauren Salzman, including the significance of the brand, the wearing of a piece of jewelry, and the adoption of master/slave terminology, further reinforced the depth of commitment expected. Prospective members were then presented with the choice to provide additional collateral to back their lifetime vow, a decision made with full awareness of the implications.

To completely prove the process's voluntary let us address potential concerns about undisclosed aspects, such as Mr. Raniere's involvement or the specifics of the brand. The principle of lifetime and "total obedience" inherent in DOS membership meant that members consented to a broad range of directives from their "masters," encompassing any unforeseen assignments, or unknown aspects, including the incorporation of Mr. Raniere's initials in the brand, his involvement, or the involvement of additional collateral. As a litmus test, if a condition could be imposed after membership initiation while remaining consistent with the membership vow, then it would not compromise the informed consent originally granted This wide-ranging consent was integral to the membership vow, indicating a comprehensive understanding and acceptance of the terms. Any retrospective claims that not knowing Mr. Raniere's involvement, or any other details upfront, undermines informed consent are invalid, as the commitment to total, lifetime obedience inherently encompassed such possible eventualities.

Nicole's decision to join DOS, following a period of contemplation and discussion with Allison, was a conscious, voluntary act driven by a

belief in the group's potential benefits. Her involvement in assigned tasks, within the framework of total obedience pledged to her "master," aligns with the commitments she willingly accepted upon joining DOS. These actions, therefore, cannot be accurately described as coerced or constituting forced labor under the legal definition.

The portrayal of DOS membership and the associated activities as forced labor not only misconstrues the voluntary nature of the commitment made by adult members like Nicole but also **challenges the fundamental right of adults to enter into contracts.** The societal discomfort stemming from the government's portrayal of the nature of and practices within DOS, and the fact of a sorority with a male founder and "grandmaster" reveals broader biases rather than reflecting the legality of the group's structure and agreements.

Furthermore, supplemental evidence, including Nicole's positive reflections on her DOS activities, such as positive and enthusiastic reviews of the essays she was assigned to read as a part of DOS – in possession of the government and which trial counsel failed to present – and her expressions of care and affection in communications not

presented at trial, challenges the narrative of coercion and fear. This failure by trial counsel to present an accurate view of Nicole's experience within DOS calls into question the fairness of the proceedings and the portrayal of her membership as forced labor.

In light of these considerations, the charge against Nicole, premised on her DOS activities as "forced labor," fails to hold under legal and factual scrutiny, necessitating a reevaluation of the case and the dismissal of the charge based on the lack of substantial evidence of coercion or involuntary servitude. In fact, this leads to **all** the charges relating to DOS, which relied on the government's assertion of coercion through DOS collateral, as being invalid, including Racketeering Act 9 and 10 and Counts 3-7, as per the numbering of counts in the jury instructions. (Doc. 728).

## B. Undermining the Date of Alleged Contraband

The alleged contraband in Racketeering Acts 2-4 were purportedly taken at 8 Hale on two exact dates: November 2, 2005, and November 24, 2005. Further, they belonged to folder names "2005-11-02-0440-20" and "2005-11-24-0814-46", referring to an exact time in on those two

November dates 2005. These appeared to corroborate that someone downloaded the photos from the camera at those exact times.

However, there was an email from Daniela, Government Exhibit 609, dated November 2, 2005, noting construction being done at 8 Hale, in which she states, "They are doing some work at Hale and have everything covered in plastic for a couple of days now." This contradicts the timestamp metadata that indicates the photos were taken at 8 Hale that day. It also contradicts the name of the folder containing these photos, which suggests the photos were downloaded to a Dell computer, which allegedly existed and was located at 8 Hale, on the same day. (Kiper Report, Doc. 1178-2 at Bates 008-009; Trial Transcript at Page 2569 Line 19, Page 2571, Line 24. This email supports the Defense's claim, supported by seven independent digital forensics experts, including four former FBI examiners, that the timestamps and folder names were doctored, or in the least false and unreliable. (Doc. 1225-1.)

Trial counsel failed to use this exculpatory evidence to debunk the government's narrative of these core charges, which were contingent upon the timestamps being accurate and reliable.

## VI.   COUNSEL WAS INEFFECTIVE FOR FAILING TO SEEK JUDICIAL RECUSAL

In Mr. Raniere's trial, the Court's bias became evident during the cross-examination of witness Lauren Salzman, the government's only cooperator, whose testimony touched on virtually every element of every crime with which Mr. Raniere was charged, with the greatest value to the Government being her testimony that she and Mr. Raniere intended to harm, extort, and coerce others in DOS. Ms. Salzman had pleaded guilty to extortion, within DOS, which requires *mens rea*, and this Court had accepted her plea. Immediately following an answer from Ms. Salzman that contradicted this *mens rea*, the Court abruptly terminated cross-examination:

> Defense: When you were in DOS, before anybody was arrested, were you doing things intentionally to break the law?
>
> Government: Objection.
>
> The Court: That requires a legal conclusion.
>
> Defense: Was your intention to hurt people or was it to help people?
>
> Government: Objection.
>
> Defense: What was your intention when you were in DOS?
>
> The Court: *You may answer.*

Salzman: My intention was to prove to Keith that I was not so far below the ethical standard that he holds that I was -- I don't even know how far below I am. I was trying to prove my self-worth, and salve this string of a hope of what I thought my relationship might some day be, and I put above everything else; I put it above my friends and I put it above other people, helping them in their best interest. That's what I did when I was in DOS.

The Court: Okay, that's it. We are done.

(Trial Transcript at 2264:25 -2266:4)(emphasis added.)

Initially, the Court justified its decision with concerns over the witness potentially having a "nervous breakdown," with the termination of cross-examination ostensibly done to protect her from the defense's line of questioning. However, the Court's rationale soon shifted away from criticizing the propriety of the defense's behavior, acknowledging that it was proper, to simply a concern the witness's composure, a justification contradicted by the judge immediately asking the government *twice* if it wished to conduct a redirect, evidencing it thought the witness was composed enough to continue.

The Court's rationale again shifted to criticizing the legal propriety of the final question trial counsel asked, despite explicitly allowing the Defense's question and only terminating the cross-

examination *after* the witness had answered, evidencing that the problem was with the content of the answer, not the question.

This courtroom discussion culminated in the Court's declaration, "I may not get everything right up here, but I will tell you, ***as a human being, it was the right decision. Alright? And before I'm a judge, I'm a human being.***" (Trial Transcript at 2270:4-10.) (emphasis added.) This was a clear admission by the Court that it had made a decision that befits a human being, but that would be improper for a judge, who is required to set aside personal feelings and uphold judicial impartiality – in other words a decision based on personal, human bias. There is almost no logically clearer self-certification of bias. Moreover, this incident was not a mere fleeting moment but included a courtroom discussion and the subsequent denial of a motion for mistrial the following day. Despite this dispositive indicator of bias towards accepting the government's narrative and against Mr. Raniere, counsel failed to move for judicial recusal during the trial, significantly compromising Mr. Raniere's defense and prejudicing his right to a fair trial. There are additional instances that demonstrate this lack of self-restraint and departure from the required judicial impartiality,

50

including actions that indicate a general psychological composition that may inhibit judicial impartiality. An instance, though not at trial level, that clearly demonstrates this occurred at Mr. Raniere's restitution hearing, telling an esteemed attorney whose respected mentor and a member of the bar had passed away due to pancreatic cancer, "Give him this to go cry on. He's not a member of your family, sir," motioning to a tissue box. (See Restitution Hearing.) Such a statement should not be entertained in the inner thoughts of a regular adult, let alone the publicly spoken in a matter of import by an authority figure such as a senior judge. This was so striking that a reporter for the NY Daily News, Noah Goldberg, who attended the proceeding, tweeted:

"Keith Raniere's lawyer asked for the judge in the case to recuse himself for being biased, citing one of the most bizarre moments in court I've ever seen in which a lawyer was told by the judge to go cry about a funeral for a colleague who had just died of pancreatic cancer"[7]

Finally, based on its overall rulings and disposition, the Court appears, in the best case, compliant with an egregious level of

---

[7] https://twitter.com/Noah_Goldberg/status/1522580665899925509

inappropriate government action, which belies the "appearance of justice."

## VII. COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO ADEQUATELY CHALLENGE THE SENTENCING DECISION

Mr. Raniere's counsel failed to adequately challenge or appeal the sentencing decision. Specifically, the defense counsel neglected to contest the severity of the sentencing guidelines applied or the appropriateness of enhancements that may have been improperly calculated. Furthermore, counsel made improper and untrue statements during sentencing, wrongly implying Mr. Raniere's guilt concerning Racketeering Acts 2-4. These statements were not only prejudicial but also uncorrected, directly impacting Mr. Raniere's rights to a fair sentencing process. Additional specifics and evidentiary support will be included at a later stage, or in an amended brief.

## VIII. COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN CONNECTION WITH RESTITUTION PROCEEDINGS

Mr. Raniere's counsel significantly failed in their duties regarding the restitution hearing, which directly prejudiced his rights. Key failures include:

- **Lack of Information**: Counsel did not inform Mr. Raniere about the identities of the alleged restitution victims. This omission deprived Mr. Raniere of the opportunity to understand the basis of the restitution claims fully and to effectively challenge the legitimacy or the extent of the claims made against him.

- **Misrepresentation of the Proceedings**: Counsel misrepresented the nature of the restitution proceedings by advising Mr. Raniere that it was not "really a hearing," which was misleading and untrue. This mischaracterization led to a lack of preparation and advocacy that a formal hearing warranted.

- **Failure to Challenge or Present Evidence**: During the restitution proceedings, counsel failed to call witnesses, challenge the government's position, or present any contrary evidence that could contest the assertions made by the prosecution. This inaction was a clear dereliction of the duty to vigorously defend Mr. Raniere's interests during these critical proceedings.

- **Impact on Mr. Raniere**: This series of failures prejudiced Mr. Raniere by ensuring that the restitution amount was determined without a proper contestation of the claims or consideration of

mitigating factors. The uncritical acceptance of the prosecution's assertions likely resulted in a higher restitution order than might have been warranted had the defense been properly mounted.

- **Inadequate Appeal**: Furthermore, counsel failed to adequately appeal the restitution decision, neglecting to address substantial and potentially reversible errors made during the restitution hearing. This failure to appeal deprived Mr. Raniere of a critical avenue for relief from an unjust restitution order.

These combined failures by counsel to properly inform, prepare, and advocate for Mr. Raniere regarding the restitution hearing and subsequent appeal processes constitute ineffective assistance of counsel, significantly impacting Mr. Raniere's financial obligations and his rights under the law.

### IX. COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO INVESTIGATE AND REFUTE KEY EVIDENCE IN THE CASE

Defense counsel has actively pursued pending Rule 33 motions (Doc. 1169, 1176, 1178) addressing severe government misconduct, specifically targeting the tampering of key evidence in the case: the

alleged contraband evidence. The defense contends that the information relating to this misconduct is newly discovered. Several reasons support this contention, detailed extensively in the pertinent briefs. Notably, during the trial, the Court barred the defense from presenting any issues related to government misconduct, ordering the following:

> "Raniere is prohibited from presenting evidence or arguments concerning the government's alleged motive for this prosecution... [or] alleged government misconduct in the course of this prosecution" (Doc. 622 at 40.)

This significantly constrained the Defense's ability to contest the integrity of the evidence at that time, even if trial counsel had discovered these issues.

However, should the Court find that this evidence of tampering and government misconduct was not newly discovered and could have been identified through due diligence by the defense, Mr. Raniere asserts these claims of government misconduct and evidence tampering as a claim of ineffective assistance of trial counsel. This assertion is based on multiple failures by trial counsel, including their failure to seek necessary discovery, obtain adjournments or continuances, challenge government witnesses effectively, challenge the admissibility

of evidence, and present exculpatory evidence. These oversights collectively resulted in a failure to adequately investigate, challenge, and uncover the tampered evidence, thereby compromising Mr. Raniere's constitutional right to a fair trial.

### X. COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO ADEQUATELY CHALLENGE THE UNCONSTITUTIONALITY OF THE RICO DEFINITION AT PRE-TRIAL, TRIAL, AND APPELLATE STAGES

Defense counsel's failures across multiple stages of the legal process significantly prejudiced Mr. Raniere's defense by inadequately challenging the overly broad and impermissibly vague RICO definition applied in his case:

1. **Pre-Trial**: Counsel failed to adequately argue that the RICO definition used — describing the enterprise as an "inner circle" with a common purpose to "promote Keith Raniere" — was impermissibly vague. (Doc. 430.) This lack of adequate challenge at the pre-trial stage allowed the prosecution to broadly categorize a wide range of associates as part of the criminal enterprise, effectively tainting potential defense witnesses and deterring their participation.

2.     **Trial:** During the trial, counsel did not sufficiently contest the application of this vague RICO definition before the jury, failing to clarify that this definition did not meet statutory requirements.

3.     **Appellate:** On appeal, counsel failed to adequately challenge the constitutionality of the RICO application and its implications for Mr. Raniere's trial. Specifically, they did not argue how the definition is impermissibly vague and constricts witness availability, with the threat of guilt by association, leading to an unfair trial and hindering Mr. Raniere's ability to defend himself. This appellate oversight ensured that the trial's errors went uncorrected and that the constitutional issues raised remained unaddressed in higher courts.

Each of these failures severely compromised Mr. Raniere's constitutional right to a fair trial. The cumulative effect of these unchallenged issues at each stage of the legal process underscores the ineffective assistance provided, warranting relief for Mr. Raniere, a hearing to fully address these matters.

XI.     COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE DUE TO UNCONSTITUTIONAL INTERFERENCE WITH ATTORNEY-CLIENT COMMUNICATIONS BY THE BUREAU OF PRISONS

Mr. Raniere contends that his counsel was constitutionally ineffective due to the Bureau of Prisons' (BOP) substantial interference with attorney-client communications. This interference, through severely limiting communication opportunities and the wrongful monitoring of legal interactions, critically undermined counsel's ability to perform adequately. During pivotal stages, such as pre-trial MDC Blackout, the petitioner's access to review and discuss key motions were drastically restricted, evidenced by trial counsel's statements and/or motions raising these limitations with the Court. This interference has been ongoing even post-conviction, further exemplified by the fact that, in over seven months, the petitioner has had no more than three legal visits, with major litigation active. Additionally, the BOP's inappropriate handling of confidential legal mail—in one documented case in 2021, specifically, opening and forwarding it to the prosecution prior to the restitution hearing—further evidences the systemic obstacles imposed on counsel's effectiveness. These actions not breached the petitioner's Sixth Amendment rights, rendering counsel's assistance ineffective.

## XII. COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE IN FAILING TO ADEQUATELY ADDRESS ISSUES ON APPEAL

### A. Counsel Failed to Appeal the First and Second Rule 33 Motions

Appellate counsel was ineffective in failing to appeal the denials of

Rule 33 motions concerning perjury of major government witnesses

Nicole and Daniela as to their financial motive to testify (Doc. 853), and

prosecutorial intimidation of potential defense witnesses (Doc. 956),

significantly prejudicing Mr. Raniere. Nicole and Daniela's testimonies

were central to the prosecution's case and exclusively underpinned

some of the more serious charges. Moreover, new evidence (Doc. 1169,

1176, 1178, 1225, 1230, 1233, 1235) that has emerged substantiates

earlier claims of witness perjury and prosecutorial misconduct. This

evidence also reveals a connection between civil attorney Neil Glazer

and the claims of witness perjury and prosecutorial misconduct,

highlighting the seriousness of these issues and the missed opportunity

for appellate scrutiny. (See Parlato-Glazer emails in Doc. 1178.) This

failure underscores a clear lapse in the duty of effective legal

representation, crucial to the fairness and outcome of Mr. Raniere's

trial.

## B. Counsel Failed to Adequately Address the Errant Jury Instruction on Commercial Sex

Appellate counsel was ineffective due to their failure to articulate the fundamental error in the court's jury instruction regarding what constitutes a "commercial sex act." The instruction defined this act as any sex act "of which anything of value is given to or received by any person because of such sex act," and crucially emphasized that "a thing 'of value' need not involve a monetary exchange and need not have any financial component." This instruction permitted the jury to incorrectly accept the government's argument that Allison Mack received a commercial benefit simply from "keeping the defendant happy" (Trial T. at 5414).

This interpretation resulted in a dangerous and untenable conflation of the distinct legal terms "anything" and "anything of value," where a subjective state of contentment was equated with objective "value." Such an interpretation sets a precedent that any act resulting in personal satisfaction could be construed as commercial, significantly expanding the scope of what could be considered a "commercial sex act."

Appellate counsel failed to effectively challenge this by not clarifying that "anything of value" must have an objective boundary that distinguishes it from "anything." As a matter of legal and logical necessity, "anything of value" is a subset of "anything," and not all that satisfies one's personal desires or emotional needs can be deemed of commercial value. The instruction thus eroded the crucial objectivity required in defining "value," improperly transforming subjective personal feelings into assessable commercial commodities. This oversight underscores the need for a reassessment of the verdict or the provision of a specific legal remedy to address this significant misapplication of the law.

### XIII.  THE CUMULATIVE IMPACT OF TRIAL COUNSELS ERRORS ADDRESSED HEREIN REQUIRE AN EVIDENTIARY HEARING

Mr. Raniere contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his sentence. However, should the court disagree, then the cumulative effect of these errors deprived Mr. Raniere of fair and just assistance of counsel. "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process."

*United States v. Fernandez*, 145 F.3d 59, 66 (1st Cir. 1998) *See, e.g.,*

*United States v Hands*, 184 F.3d 1322, 1334 (11th Cir. 1999); *United*

*States v. Munoz*, 150 F.3d 401, 418 (5th Cir. 1998), *cert.* denied, 525

U.S. 1112 (1999). The errors here were many, they were all

interrelated and their cumulative impact was devastating to Mr.

Raniere's right to due process and a clear violation of his Sixth

Amendment right to effective assistance of counsel.

## A. Systematic Government Misconduct

At the heart of a campaign of government misconduct is the

manipulation of critical evidence—a Canon camera's memory card and

a hard drive. This was not a simple mishandling but a deliberate act to

deceive, presenting doctored evidence as an 'accidental' find to the

Court, a mere nine weeks before trial, despite its seizure eleven months

prior. This act alone casts a dark shadow on the integrity of the

proceedings, further corroborated by seven independent forensic

experts, including four former FBI examiners, who unanimously

concluded that these items were tampered with to falsely suggest a

2005 timeframe for photos, and as a result falsely implicating the

photos in a crime. (ECF No. 1225-1).

There was also targeting and staging of evidence by FBI agents, notably involving SA Mills and TFO Hochron at 8 Hale, where the Canon camera and hard drive were collected (*See* Exhibit B.). This also constituted fabrication of evidence, as the evidence photos were used at trial and presented as authentic. This FBI misconduct was further compounded by the mishandling and alteration of the camera and camera's memory card by unauthorized FBI personnel, including SA Rees and SA Lever, and an unknown FBI "photo tech" using unknown forensic software and irreparably altering the original data of the card and concealing their actions from the official chain of custody, revealed only 4+ years post-trial. (ECF Nos. 1213, 1230, 1231, 1233, 1235, 1235-1).

The prosecution's narrative of an "accidental discovery" of photos was fabricated, contradicted by the lead prosecutor's own admission of foreknowledge and intentional search for these photos, labeling them as "game-changing evidence." (HBO *The Vow*, Season 2, Episode 6).[8] This so-called accidental find led to new charges, fundamentally altering the

---

[8] https://www.hbo.com/the-vow-2020/season-2/6-crime-and-punishment (last visited April 10, 2024).

nature of the case, from one involving disputed conduct of adults to now centering around alleged child pornography, where the subject, then 29, did not testify.

Moreover, the government's failure to disclose the memory card, the witness tampering involving swapping Flatley and Examiner Booth, and the cover-up of staging and mishandling of evidence in trial by SA Mills at AUSA Hajjar's behest, not to mention the introduction of a secret second version of the memory card created by Examiner Booth – with substantial tampering indicated – in the final days of trial, all point to a deliberate attempt to undermine the defense, deceive the Court, and manipulate the trial's outcome. They also evidence numerous, severe *Brady* violations, such as the secret FBI "photo tech" operation that targeted the camera and its memory, revealed to exist 4+ years post-trial, and the late disclosure of the chain of custody log, which revealed serious evidentiary misconduct by SA Maegan Rees, almost a week after SA Rees testified, two days prior the end of trial evidence.

The circumstances created by this government misconduct undoubtedly rendered Mr. Raniere's assistance of counsel ineffective. This misconduct uncovered thus far included but was not limited to intentionally withholding and delaying disclosure of key evidence, improperly delaying trial, intentionally misrepresenting the truth and nature of the illegal extradition during and after trial, intentionally misrepresenting Mr. Raniere as a flight risk, systematically intimidating potential Defense witnesses (see Doc. 956, 1178) and orchestrating trial perjury of multiple major government witnesses (in the least Nicole, Daniela, Mark Vicente, SFE Booth, SA Mills); further details and evidentiary support for these serious violations will be provided at a later stage. These violations undermined the fairness of Mr. Raniere's trial and abrogated his due process rights. Trial counsel was ineffective in adequately challenging and exposing this government misconduct and also was rendered ineffective by this misconduct. The government has been on notice as to these issues since Mr. Raniere submitted a petition and affidavit prior to sentencing for the prosecution to affirm that they did not engage in specific instances of misconduct ("The Affidavit") (Doc. 931.)

This pervasive government misconduct has not only attacked the machinery of justice but resulted in a structural error and a "fraud on the court." It's a clear case where evidence fabrication and prosecutorial complicity in the use of doctored evidence have been laid bare. *See United States v. Jimenez Recio*, 371 F.3d 1093, 1101 (9th Cir. 2004) (defining structural error as an error that "permeates the entire conduct of the trial from beginning to end, or affects the framework within which the trial proceeds").

Before the trial, the Defense was led into a deceptive agreement, solidified by the Court's order on May 6, 2019, not to question the government's motives or alleged misconduct, an order we now see in a different light given the extent of government deception and manipulation. (ECF No. 622). Trial counsel's compliance with the government and incorrectly assuming government honesty in this case, also rendered them constitutionally ineffective.

### B. Actual Innocence and Legal Insufficiency Due to Ineffective Assistance of Counsel

Counsel failed to address the government's case count by count, starting with Count 2, the heart of their argument, Racketeering. With

eleven predicate acts, only five of these extend beyond the crucial date of July 23, 2013, crucial because of the 5-year statute of limitations for RICO charges. (See Doc. 728.)

Starting with Act 4, the Possession of child pornography, this charge should have been dismissed outright. The evidence, crucial to federal jurisdiction, was obtained through illegal searches and tainted by extensive doctoring. The foundational illegality of the search at 8 Hale Dr. and the subsequent manipulation of the hard drive and memory card renders this act invalid.

Act 6, Video Alteration, the government's case was further weakened but counsel missed it. This act should have been confined to the year 2008, as no actions were alleged beyond this point. The absence of any government witness or evidence to substantiate the claim of video editing exposed the baseless nature of this accusation.

Act 9, State Law Extortion, falls flat as it revolves around the voluntary exchange of collateral within DOS. Far from criminal, this was a matter of consent, not coercion. The government's attempt to

paint this as extortion was not only misguided but factually incorrect. Counsel never addressed this glaring error.

Act 10A, concerning Sex Trafficking, is equally unfounded. Lacking jurisdiction, the essential element of coercion, and any semblance of criminality or commerciality, this charge cannot stand. The government withheld exculpatory evidence and improperly disclosed *Brady* material as 3500 material, which trial failed to adequately address. This government conduct was a clear violation of *Brady v. Maryland*, 373 U.S. 83 (1963), which counsel effectively ignored. Moreover, counsel failed to present exculpatory evidence that would have debunked the alleged victim Nicole's narrative of being terrified into compliance on May 31, 2016, for the oral sex act performed by another woman, Camila, purportedly at Mr. Raniere's direction, including:

- Emails between Nicole and Mr. Raniere after the alleged sex trafficking act; and related text and other communications with her DOS sorority sisters

- Videos Nicole sent to Mr. Raniere following the alleged sex trafficking act, which we intend to request permission from the Court to submit on a thumb drive.

In Act 10B, Forced Labor, the alleged conduct falls squarely within the DOS membership agreement, which is legally *consent* and no coercion. The enthusiastic participation in the so-called forced labor review of essays, as evidenced by Nicole's own comments and ratings, unequivocally refutes the notion of coercion.

Lastly, Act 11, Identity Theft, is devoid of any criminal intent. Mr. Raniere's continued use of joint accounts posthumously, a practice well-documented and acknowledged by financial institutions, demonstrates a lack of deceit. *See Spicer v. United States*, 217 F. Supp. 44 (D. Kan. 1963) (recognizing long-standing practice of "survivorship" that allows partner to use deceased partner's financial accounts as prior to partner's death). Moreover, trial counsel failed to adequately investigate and demonstrate how this charge had no connection to the alleged "heart" of RICO – the evidence for Racketeering Acts 2-4 – or present exculpatory evidence in the form of the tax professionals who were in engaged in this matter, who in their terms of engagement disclosed that if they found a problem, they could report Mr. Raniere to the IRS and did not find any problems. This would have clearly

demonstrated lack of intent to evade taxes, even setting aside the issue that these transactions were not taxable money.

With the dismissal of these pivotal acts, Count 2 unravels, pulling down the remaining counts tied to the statute of limitations. Acts 1, 2, 3, 5, 6, 7, and 8 share similar flaws—lack of evidence, jurisdictional issues, and an absence of criminal intent, further debunking the government's case. For Act 7, trial counsel was ineffective in obtaining witness testimony from Marianna that would have proven no unauthorized access by Mr. Raniere of her accounts, and no criminal intent, but rather authorized access within the scope of their personal relationship. Furthermore, the following Counts fail as a matter of law, which counsel never addressed:

Count 1, Racketeering Conspiracy, is invalidated without the foundation of Count 2. Count 3, Forced Labor Conspiracy, mirrors the arguments against Racketeering Act 10B. Count 4, Wire Fraud Conspiracy, and Count 5, Sex Trafficking Conspiracy, are equally baseless, resting on the flawed premises of Act 9 and 10A respectively.

Count 6, Sex Trafficking of Nicole, is merely a duplicate of Act 10A, and Count 7, Attempted Sex Trafficking of Jay, fails to meet the coercion element, echoing the deficiencies of the DOS-related charges.

In essence, the government's case was a house of cards, built on misconduct, illegal searches, unsubstantiated claims, and a blatant disregard for exculpatory evidence. It was counsel's duty to see through this facade and ensure justice was served based on facts, not fallacies. Counsel did not fulfill this duty.

### C. Additional Trial Errors by Counsel, Rendering Them Ineffective

Trial counsel was constitutionally ineffective during and prior to the trial in the following areas:

- Failure to present element-by-element rebuttals for the charges, which would have clearly illustrated that the government's case did not meet the elements. This includes not adequately articulating that the alleged conduct did not meet the definition of "commercial sex," (a required element for key charges) and that "anything of value" must be different from merely "anything."

71

- Failure to obtain client's consent prior to waiving a defense; though Mr. Raniere consented not to testify, he did not consent to not put on a defense, yet trial counsel waived this right. Afterward, trial counsel justified this decision by rhetorically asking who Mr. Raniere would even have for witnesses; it appears that when the funding ran out, as brought up in court proceedings, not only was one of the defense attorneys dropped but trial counsel failed to perform its duties effectively. The Defense could have put on experts, as well as witnesses to challenge the government's narrative of DOS (e.g. Michele Hatchette, as her post-trial affidavits indicate, which could have undermined their narrative of coercion and credibility of key alleged victims such as Nicole who was in the same DOS 'circle' as Ms. Hatchette) and members of the NXIVM community, who were willing to testify, and would have provided a different account of events, challenging the core narrative of government witnesses such as Mark Vicente. Mr. Raniere was denied the ability to present a Defense, through this failure of trial counsel.

- Trial counsel failed to adequately challenge the government's use of witness anonymity, undermining Mr. Raniere's presumption of innocence. In this prosecution, where it was crucial to determine if the alleged conduct constituted a crime, the presentation of anonymous witnesses implied the existence of victims and thus suggested criminal activity. This subtly shifted the burden of proof, eroding the presumption of innocence. Alternative methods, such as using pseudonymous full first and last names for witnesses, were not pursued. This oversight by defense counsel significantly compromised the defense strategy.

## XIV. AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT

Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United

States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of la\v with respect thereto."

§ 2255(b).

In the instant case, Mr. Raniere has pleaded, presented evidence, and argued the applicable law to demonstrate that his sentence and conviction are violative of his Sixth Amendment right to effective assistance of counsel. While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records." These allegations require an evidentiary hearing under well-settled law. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994) (evidentiary hearing required unless§ 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994) (petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75

F.3d 1137, I 145-46 (7th Cir. 1996) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on the foregoing facts that are not refuted by the record, Mr. Raniere respectfully requests this Court to order an evidentiary hearing where he can prove his case.

## CONCLUSION[9]

Because counsel failed in the above manners, including in challenging the lack of jurisdiction for the criminal charges, the illegal additional charges after extradition, and the illegal searches conducted by the government, systematic government misconduct, and legal insufficiency, and demonstrating actual innocence, Mr. Raniere's motion is due to be granted.

---

[9] Complying with Rule 4 of the Rules Governing Section 2255 Proceedings, the motion and memorandum in support are not being served on the Respondent. Instead, the court is required to review the filings and then orders the Respondent to respond. Rule 4(b) ("If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order").

Dated: 4/17/24

Respectfully submitted,

Keith Alan Raniere

# Exhibit A

DocuSign Envelope ID: 522C72EA-39B1-4B09-9E22-5632D21293AE

## Declaration of Jorge Alberto de le Garza

1. My name is Jorge Alberto de la Garza.

2. I am an attorney at law with a legal practice in the United Mexican States ("Mexico").

3. I have over 30-thirty years' experience practicing law in Mexico. I have managed US-based law firms in Monterrey, Mexico, for over fifteen years.

4. I represent Mr. Keith Alan Raniere. In this capacity, in November 2022, I successfully procured Mr. Raniere's Mexican immigration records, with the original version and translated version attached, as Appendices A and B. This process, which took several months, required detailed knowledge and effective management of the complexities inherent in the Mexican administrative system.

5. I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct, and of my own personal knowledge, except as to those matters stated upon information and belief. As to those matters, I believe them to be true.

Executed on 4/16/2024

DocuSigned by:

*[signature]*

C3DA20C3C0034F1...

Jorge Alberto de la Garza

# ANEXO

# COPIAS

# CERTIFICADAS





**SEGOB** |

OFICIO No. INM/DFN/SCVM/0371/2018

Asunto: Se pone a disposición persona extranjera.

Nuevo Vallarta, Bahía de Banderas, Nayarit,
a 25 de marzo de 2018

LCP. URIEL JIMÉNEZ MARTÍNEZ
SUBDIRECTOR DE CONTROL Y VERIFICACIÓN MIGRATORIA
DEL INSTITUTO NACIONAL DE MIGRACIÓN EN NAYARIT
P R E S E N T E.

Por conducto y derivado del oficio de comisión No. INM/DFN/DCM/0368/2018, de fecha 25 de marzo del 2018, que adjunto al presente, mediante el cual, se nos comisiono a los suscritos Ing. Felipe de Jesús López Lizárraga, y Lic. Francisco José Antonio Gonzalez Arzate, con fundamento en los artículos 92, 95, 96 y 100 de la ley de Migración, nos permitimos poner a su disposición al extranjero que a continuación se relaciona, toda vez que derivado de una visita de verificación en el domicilio de Casa Chocolate, domicilio conocido (AC-12-12) Chacala, municipio de Compostela, Nayarit, se encontró a un (1) extranjero que no pudo acreditar su legal estancia en el país, pues no contaba con identificación, ni documento migratorio; por lo que el personal comisionado procedió a trasladar al extranjero a las instalaciones de la Delegacion Federal de Nayarit, a fin de que en atribución a sus facultades se resuelva su situación migratoria.

HOMBRES

| No. | NOMBRE | SEXO | FECHA DE NACIMIENTO | EDAD | LUGAR DE NACIMIENTO | NACIONALIDAD |
|-----|--------|------|---------------------|------|---------------------|--------------|
| 1 | KEITH ALAN RANIERE | HOMBRE | 26/08/1960 | 57 | BROOKLYN, NUEVA YORK | ESTADOUNIDENSE |

Lo anterior para los efectos legales a que haya lugar.

A T E N T A M E N T E
EL PERSONAL COMISIONADO

Lic. FRANCISCO JOSÉ ANTONIO
GONZÁLEZ ARZATE
AGENTE FEDERAL DE MIGRACIÓN "B"

Ing. FELIPE DE JESÚS LÓPEZ LIZÁRRAGA
COORDINADOR DE UNIDAD EN ÁREAS DE SERVICIOS
MIGRATORIOS

26 MAR 18 S

MÉXICO

001

SEGOB

**INM** SUBDIRECCION DE CONTROL Y VERIFICACION MIGRATORIA
OFICIO: INM /DFN/SCVM/0368/2018

**Asunto: Se informa presentación de**
**Nacional estadounidense**
**Nuevo Vallarta, Bahía de Banderas, Nayarit, a 25 de Marzo del 2018**

REPRESENTANTE DEL CONSULADO
DE LOS ESTADOS UNIDOS DE AMERICA, EN NUEVO VALLARTA
PRESENTE

Sea este el conducto para enviarle un cordial saludo, y a su vez me permito notificarle que con fundamento a lo dispuesto en el artículo 69 fracción IV de la ley de migración, artículo 1, 11, 19 fracción XV del acuerdo por el que se delegan facultades para autorizar trámites migratorios y ejercer diversas atribuciones publicado en el Diario Oficial de la Federación con fecha 13 de Noviembre del 2012; me permito hacer la Notificación Consular, en virtud a que ha sido presentada ante este Instituto Nacional de Migración, una persona que ha manifestado ser de nacionalidad Estadounidense, al cual se le iniciara un procedimiento administrativo en virtud de violentar la Ley de Migración.

Adultos:

HOMBRE:

| No. | NOMBRE | SEXO | FECHA DE NACIMIENTO | EDAD | LUGAR DE NACIMIENTO | NACIONALIDAD |
|-----|--------|------|---------------------|------|---------------------|--------------|
| 1 | KEITH ALAN RANIERE | MASCULINO | 26 de Agosto de 1960 | 57 | BROOKLYN NEW YORK | Estadounidense |

Asimismo se hace conocimiento que la persona extranjera será trasladada a su lugar de origen se proporcionara atención médica, enseres básicos y alimentos en tanto se resuelva si situación migratoria.

Sin otro particular aprovecho la oportunidad para enviarle un cordial saludo.

ATENTAMENTE

Lcp. URIEL JIMENEZ MARTÍNEZ
SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA

1

092



**H. AYUNTAMIENTO CONSTITUCIONAL**
**DE PUERTO VALLARTA JALISCO.**
**Juzgado Municipal**


VALLARTA

Folio

Nº   2127

Parte Médico de lesiones relativo a _Keith Alan Raniere_

Ingreso

Sexo  F ○  M Ⓧ  Edad _57_  Edo. Civil _Soltero_  Ocupación _Capacitor_

Domicilio _Sin Domicilio en puerto vallarta_

Ebriedad _No_

Hospitalización _NO_

Egreso _25/03/18_  _23:04 hr_
Hora/Día/Mes/Año

Parte Médico Rendido _25/03/18_  _23:04 hrs_
Hora/Día/Mes/Año

Enviado al _____

## PRESENTA

Descripción detallada de las lesiones sin omitir: Características, localización, tamaño, tiempo de evolución, objeto probable que las produjo, si pone o no en peligro la vida, tiempo de curación mayor o menor a quince días, secuelas probables

_No presenta huellas violencia física, en este momento se ignora secuelas_

26 MAR 18 S

Dr. José de Jesús Cruz Pérez
Médico General
DGP 5441980

Blanco:              Canario:              Verde:

003

 

| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | DELEGACIÓN FEDERAL NAYARIT |
| Fecha de Clasificación | 26 DE MARZO DE 2018 |
| Fundamento Legal | art 78 de la Ley de Migración, art 113 frac. V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | SUBDIRECCION DE CONTROL Y VERIFICACIÓN MIGRATORIA |

### ACUERDO DE INICIO

En la ciudad de Nuevo Vallarta, Bahía de Banderas, Nayarit, siendo las 18:30 horas, del día 25 de marzo del año dos mil dieciocho, El Subdirector de Control y Verificación Migratoria, de la Delegación Federal del Instituto Nacional de Migración en el Estado de Nayarit, Lcp. Uriel Jiménez Martínez, quien actúa legalmente ante la presencia de dos testigos que al final firman y dan fe. ----------------

----------------------------------------- H A C E   C O N S T A R ------------------------------------------

Que con fecha 25 de marzo de 2018, se recibió el oficio de puesta a disposición número INM/DFN/SCVM/0371/2018, signado por los Agentes Federales Felipe de Jesús López Lizárraga, y Francisco José Antonio González Arzate, comisionados a la Visita de Verificación en el domicilio de Casa Chocolate, domicilio conocido (AC-12-12) Chacala; municipio de Compostela, Nayarit, mediante el cual presentan ante el Lcp. Uriel Jiménez Martínez, Subdirector de Control y Verificación Migratoria, a la persona que dijo llamarse Keith Alan Raniere de nacionalidad estadounidense, en virtud de no acreditar su regular estancia en territorio nacional. --------------------------------------------------------------------------------------------------------

----------------------------------------- C O N S T E ------------------------------------------

CON FUNDAMENTO EN LOS ARTÍCULOS 1, 11, 14 Y 16 DE LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS; 26 Y 27 FRACCIÓN XXXIII DE LA LEY ORGÁNICA DE LA ADMINISTRACIÓN PÚBLICA FEDERAL; 2, LETRA C, FRACCIÓN III, 69, 70, 77, FRACCIÓN II, INCISO C. 92, FRACCION II DEL REGLAMENTO INTERIOR DE LA SECRETARÍA DE GOBERNACIÓN; 1, 2, 5, 7, 11, 12, 13 fracciones I y III, 16, 19, 20, fracciones III y VII, 66, 67, 68, 70, 77, 79, 80, 99, 100 Y 111 DE LA LEY DE MIGRACIÓN; 1, 2, 55, 194, 222, 232 Y 233 DE SU REGLAMENTO; 1, 3, 9, 12, 13, 16 FRACCIONES I, III, IV,, V, VI, IX Y X, 18, 19, 28, 29, 30, 32, 33, 35, FRACCIÓN I, 36, 38, 39, 44 Y 49 DE LA LEY FEDERAL DEL PROCEDIMIENTO ADMINISTRATIVO; 1, 9, 11, 19 fracción XVII DEL ACUERDO POR EL QUE SE DELEGAN ATRIBUCIONES PARA AUTORIZAR TRÁMITES MIGRATORIOS Y EJERCER DIVERSAS ATRIBUCIONES PREVISTAS EN LA LEY DE MIGRACIÓN Y SU REGLAMENTO A LOS SERVIDORES PÚBLICOS ADSCRITOS A LAS DELEGACIONES FEDERALES PUBLICADO EN EL DIARIO OFICIAL DE LA FEDERACIÓN EL DIA 13 DE NOVIEMBRE DE 2012; 18 DEL ACUERDO POR EL QUE SE DETERMINA LA SEDE Y CIRCUNSCRIPCIÓN TERRITORIAL DE LAS DELEGACIONES Y SUBDELEGACIONES FEDERALES, DELEGACIONES Y SUBDELEGACIONES LOCALES DEL INSTITUTO NACIONAL DE MIGRACIÓN, PUBLICADO EN EL DIARIO OFICIAL DE LA FEDERACIÓN EL DÍA 4 DE ABRIL DE 2013, Y 14 FRACCIÓN II DEL ACUERDO POR EL QUE SE EMITEN LAS NORMAS PARA EL FUNCIONAMIENTO DE LAS ESTACIONES MIGRATORIAS Y ESTANCIAS PROVISIONALES DEL INSTITUTO NACIONAL DE MIGRACIÓN, PUBLICADA EN EL DIARIO OFICIAL DE LA FEDERACIÓN EL DÍA 8 DE NOVIEMBRE DE 2012. --------

----------------------------------------- A C U E R D A ------------------------------------------

PRIMERO.- Regístrese el presente asunto en el Libro de Gobierno bajo el número de expediente E.A./1s.9/NAY/NAY/005/KEITH ALAN RANIERE/25-03-2018, e iníciese el Procedimiento Administrativo Migratorio correspondiente, a efecto de resolver la situación migratoria al (a) extranjero (a) de referencia. --------------------------------------------------------------------------------

SEGUNDO.- Realícense todas aquellas diligencias que sean necesarias para la debida integración del Procedimiento Administrativo Migratorio en que se actúa. ------------------------------------------------------------------------------------

TERCERO.- Notifíquese personalmente en términos de los artículos 35 fracción I y 36 de la Ley Federal de Procedimiento Administrativo del (a) extranjero (a) la presente actuación, habilitándose traductor práctico en caso de ser necesario, lo anterior para los efectos legales a los que haya lugar.---------------------------------------------------------------------------------

----------------------------------------- C Ú M P L A S E ------------------------------------------

Así lo acordó y firma, Subdirector de Control y Verificación Migratoria, de la Delegación Federal del Instituto Nacional de Migración en el Estado de Nayarit, Lcp. Uriel Jiménez Martínez, quien actúa legalmente asistido de los testigos que al final firman para constancia del presente acto. ------------------------------------------------------------------------------------

**AUTORIDAD MIGRATORIA**                    **EL DECLARANTE**

_____                    _____
Lcp. Uriel Jiménez Martínez                 Keith Alan Raniere

**TESTIGO DE ASISTENCIA**        2 6 MAR 18 S        **TESTIGO DE ASISTENCIA**

_____                    _____
C. Felipe de Jesús López Lizárraga          C. Francisco José Antonio González Arzate

**004**

 

SECRETARÍA DE GOBERNACIÓN

**INM**
INSTITUTO NACIONAL DE MIGRACIÓN

| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | DELEGACIÓN FEDERAL NAYARIT |
| Fecha de Clasificación | 25 DE MARZO DE 2018 |
| Fundamento Legal | art 78 de la Ley de Migración, art 113 fracc. V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | SUBDIRECCIÓN DE CONTROL Y VERIFICACIÓN MIGRATORIA |

## PRESENTACIÓN

En la Ciudad de Nuevo Vallarta, Bahía de Banderas, Nayarit; siendo las 18:30 horas del día 25 de marzo de 2018 (dos mil dieciocho), el Subdirector de Control y Verificación Migratoria, de la Delegación Federal del Instituto Nacional de Migración en el Estado de Nayarit, Lcp. Uriel Jiménez Martínez; quien actúa legalmente ante la presencia de dos testigos que al final firman y dan fe.---------------------------------------------------------------------------------------------------------------------------

-------------------------------------------------------------CONSTE--------------------------------------------------------------

Que con fundamento en lo dispuesto en los artículos 1, 11, 14 y 16 de la Constitución Política de los Estados Unidos Mexicanos, 1, 2, 3 fracción XX, 7, 12, 13, 20 fracciones VII, y X, 66, 67, 68, 69, 70, 77, 79, 99, 101, 106, 107, 108, 109, 111, 121 y 144 de la Ley de Migración; 1, 2, 55, 58, 194, 222, 223, 226, 233, 234 y 235 del Reglamento de la Ley de Migración publicado en el Diario Oficial de la Federación en fecha 28 de septiembre de 2012 vigente a partir del 09 de noviembre de 2012; 1, 3, 9, 12, 13, 16 fracciones I, III, IV, V, VI, IX y X, 18, 19, 28, 29, 30, 32, 33, 35, 36, 38, 39, 44, 49, 50, 51y 59 de la Ley Federal del Procedimiento Administrativo; 1° y 2° inciso c) fracción III, 77 último párrafo, 84, 132 aplicables del Reglamento Interior de la Secretaría de Gobernación; artículos 1, 9. 11, 19 fracción XIX del acuerdo por el que se delegan atribuciones para autorizar trámites migratorios y ejercer diversas atribuciones previstas en la ley de migración y su reglamento a los servidores públicos adscritos a las delegaciones federales del instituto nacional de migración, publicado en el Diario Oficial de la Federación el 13 de Noviembre de 2012; esta autoridad:- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

-------------------------------------------HACE CONSTAR----------------------------------------------------

Que del contenido de las documentales que integran el expediente administrativo en que se actúa, se advierte que la persona de nombre KEITH ALAN RANIERE de nacionalidad estadounidense, con su conducta de acción; por sus antecedentes en México o en el extranjero pudiera comprometer la seguridad nacional o la seguridad pública, actualizó los supuestos del artículo 144 fracción IV de la Ley de Migración, esta autoridad administrativa:-------------------------------------------------------------------------------------------

----------------------------------------------------ACUERDA------------------------------------------------------------

PRIMERO.- Alójese temporalmente al extranjero de nombre KEITH ALAN RANIERE de nacionalidad estadounidense, en la estancia provisional adecuada en la Delegación Federal con el carácter de presentado, en virtud de haber encuadrado su conducta en lo establecido en el numeral 68, 79, 98, 99, 100 y 144 fracción IV, de la Ley de Migración, por sus antecedentes en México o en el extranjero pudiera comprometer la seguridad nacional o la seguridad pública, por lo que en todo momento se le proporcionara manutención, servicios médicos y sanidad, respetándosele sus derechos humanos, hasta en tanto esta autoridad resuelva su situación migratoria en territorio mexicano.--------------------------------------------------------------------------------------------

SEGUNDO.- Déjese constancia que al extranjero de referencia se le ha proporcionado acceso a comunicación telefónica.--------

TERCERO.- Notifíquese personalmente al extranjero KEITH ALAN RANIERE de nacionalidad estadounidense, la presente actuación para que surta todos los efectos a los que haya lugar.---------------------------------------------------------------------

----------------------------------------------------CÚMPLASE------------------------------------------------------------

Así lo acordó y firma, el Subdirector de Control y Verificación Migratoria, adscrito a la Delegación Federal del Instituto Nacional de Migración en el Estado de Nayarit, Uriel Jiménez Martínez, quien actúa legalmente asistido de los testigos que al final firman para constancia del presente acto.----------------------------------------------------------------------------------------------

**AUTORIDAD MIGRATORIA**

Lcp. Uriel Jiménez Martínez

**EL DECLARANTE**

Keith Alan Raniere

**TESTIGO DE ASISTENCIA**

2 6 MAR 18 S

C. Felipe de Jesús López Lizárraga

**TESTIGO DE ASISTENCIA**

C. Francisco José Antonio González Arzate

005

 
| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art. 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | DELEGACIÓN FEDERAL NAYARIT |
| Fecha de Clasificación | 25 DE MARZO DE 2019 |
| Fundamento Legal | art 78 de la Ley de Migración art 113 fracc. V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | SUBDIRECCIÓN DE CONTROL Y VERIFICACIÓN MIGRATORIA |

## DERECHOS DE LOS ALOJADOS EN LAS ESTACIONES MIGRATORIAS

En términos de los artículos 107, 108, 109, 110 y 111 de la Ley de Migración; 226, 227, 228, 229, 230, 232, 233, 234, 235, 236, 237 y 238 de su Reglamento y 9, 12, 18, 20, 22, 24 y 25 del Acuerdo por el que se emiten las Normas para el Funcionamiento de las Estaciones Migratorias y Estancias Provisionales del Instituto Nacional de Migración, publicada en el Diario Oficial de la Federación el día 8 de noviembre de 2012, las personas extranjeras alojadas en Estaciones Migratorias y Estancias Provisionales del Instituto Nacional de Migración, por no acreditar su legal estancia en el país tienen los siguientes:

## DERECHOS:

1. Recibir de los Servidores Públicos que laboran en esta estación migratoria del Instituto Nacional de Migración, un trato digno y de respeto a sus derechos humanos.

2. Conocer su situación migratoria y el motivo de su presentación;

3. Recibir por escrito sus derechos y obligaciones, así como las instancias donde puede presentar sus denuncias y quejas;

4. Recibir atención médica, psicológica, así como asesoría legal, al ingreso y durante su presentación y alojamiento;

5. Ser informado del procedimiento migratorio; de su derecho a solicitar el reconocimiento de la condición de refugiado o la determinación de apátrida; del derecho a regularizar su estancia en términos de la Ley de Migración y su Reglamento, en su caso, de la posibilidad de solicitar voluntariamente el retorno asistido a su país de origen; así como del derecho de interponer un recurso efectivo contra las resoluciones del Instituto;

6. Que se notifique a su representación consular de su presentación, si opta por ello. En caso de que desee recibir la protección de su representación consular, se le facilitarán los medios para comunicarse con ésta lo antes posible;

7. Que el procedimiento sea sustanciado por autoridad competente y que tenga el derecho a recibir asesoría legal, ofrecer pruebas y alegar lo que a su derecho convenga, así como tener acceso a las constancias del expediente administrativo migratorio;

8. Que el acta administrativa que levante la autoridad migratoria sobre los hechos que se le imputan se realice en presencia de dos testigos y que en ella se señale su derecho a ofrecer pruebas, a alegar lo que a su derecho convenga, así como a ser asistido por su representante o persona de su confianza y, en su caso, el derecho a que se habilite un traductor o intérprete para el desahogo de la diligencia;

9. Contar con un traductor o intérprete para facilitar la comunicación, en caso de que no hable o no entienda el idioma español;

10. Comunicarse vía telefónica con la persona que solicite en el momento de su puesta a disposición de la autoridad migratoria. Las comunicaciones subsecuentes se realizarán conforme a los horarios establecidos para ello por la Estación Migratoria;

11. Conocer la ubicación de la estación migratoria en la que se encuentra presentado y alojado, de las reglas aplicables y los servicios a los que tendrá acceso;

12. Que se realice un inventario de las pertenencias que traiga consigo, así como a su depósito y resguardo en el área establecida para ello, y que le sean devueltas a su salida de la estación migratoria;

13. No ser discriminado por las autoridades a causa de su origen étnico o nacional, sexo, género, edad, discapacidad, condición social o; económica, estado de salud, embarazo, lengua, religión, opiniones, preferencias sexuales, estado civil o cualquier otra circunstancia que tenga por objeto impedir o anular el reconocimiento o el ejercicio de los derechos y la igualdad real de oportunidades de las personas;

14. Denunciar ante la autoridad competente si durante su permanencia o tránsito por territorio nacional ha sido víctima o testigo de algún delito, para lo cual se le brindará las facilidades que correspondan;

15. Recibir durante su estancia un espacio digno, tres alimentos al día y enseres básicos de aseo personal;

16. Ser visitado por su cónyuge o concubino, familiares, representante legal, Representante Consular, autoridades competentes, representantes de organismos no gubernamentales, y ministros de culto acreditados en los términos de la Ley de Migración y demás disposiciones relacionadas, siempre que lo autorice expresamente;




| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art. 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | DELEGACIÓN FEDERAL NAYARIT |
| Fecha de Clasificación | 25 DE MARZO DE 2018 |
| Fundamento Legal | art 28 de la Ley de Migración, art 113 fracc. V VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | SUBDIRECCIÓN DE CONTROL Y VERIFICACIÓN MIGRATORIA |

17. Participar en actividades recreativas, educativas y culturales que se organicen dentro de las instalaciones;

18. Que las Estaciones Migratorias cuenten con áreas de estancia separadas para mujeres y hombres, con la garantía del derecho a la preservación de la unidad familiar en todo momento, excepto en los casos en los que la separación sea considerada en razón del interés superior de la niña, niño o adolescente;

19. Que las Estaciones Migratorias y las Estancias Provisionales cuenten con áreas separadas para niñas, niños y adolescentes migrantes no acompañados para su alojamiento en tanto son canalizados a instituciones en donde se les brinde una atención adecuada;

20. Depositar sus quejas o sugerencias en buzones que sean accesibles, visibles, que cuenten con bolígrafos y con los formatos correspondientes y;

21. Solicitar a la autoridad migratoria lo que a su derecho convenga.

Recibí y comprendí la información.

_____

**Keith Alan Raniere**

Nuevo Vallarta. Bahía de Banderas. Nayarit, a 25 de marzo de 2018.

2 6 MAR 18 S

MÉXICO

| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art. 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | DELEGACION FEDERAL NAYARIT |
| Fecha de Clasificación | 25 DE MARZO DE 2018 |
| Fundamento Legal | art 78 de la Ley de Vigencia art 113 fracc. VI, VI y XII de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | SUBDIRECCION DE CONTROL Y VERIFICACION MIGRATORIA |



### INSTITUTO NACIONAL DE MIGRACION
### DELEGACION FEDERAL DE NAYARIT
### ESTANCIA ROVICIONAL

### INVENTARIO DE PERTENENCIAS O VALORES

### DATOS GENERALES

FECHA: 25/03/2017          FOLIO: 005

NOMBRE DEL EXTRANJERO (A): KEITH ALAN RANIERE

NACIONALIDAD: ESTADOUNIDENSE     SEXO: (M) (F)     EDAD: 57

| EQUIPAJE | CANTIDAD | COLOR | OBSERVACIONES |
|---|---|---|---|
| Maleta | — | — | — |
| Mochila | — | — | — |
| Bolsa de mano | — | — | — |
| Bolsa plástico | — | — | — |

| APARATOS ELECTRONICOS | | MARCA | NUM. DE SERIE |
|---|---|---|---|
| Tel. Celular | — | — | — |
| Reproductor MP3/Radio | — | | |

EFECTIVO

Importe: _____      Tipo de moneda: _____

ALHAJAS:

Metal:
Descripción:

DOCUMENTACION Y/O OTROS OBJETOS:
Descripción:

LCP. URIEL JIMENEZ MARTINEZ          KEITH ALAN RANIERE

2 6 MAR 18 S

008

 
| CLASIFICACIÓN: | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art. 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | DELEGACIÓN FEDERAL NAYARIT |
| Fecha de Clasificación | 23 DE MARZO DE 2018 |
| Fundamento Legal | art 78 de la Ley de Migración, art 113 fracc. V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | SUBDIRECCIÓN DE CONTROL Y VERIFICACIÓN MIGRATORIA |

## FILIACIÓN

| | |
|---|---|
| Nombre y apellido: KEITH ALAN RANIERE | |
| Nacionalidad que informa: ESTADOUNIDENSE | |
| Sexo: MASCULINO | |
| Fecha de nacimiento: 26/08/1960 | |
| Edad: 57 | |
| Lugar de nacimiento: BROOKLYN, NEW YORK | |
| Residencia: ESTADOS UNIDOS | |
| Estado civil: SOLTERO | |
| Ocupación: CAPACITADOR | |
| Padre: JAMES RANIERE | Grados de estudios: UNIVERSIDAD |
| | Madre: VERA OSCHYPKO |

| Estatura: | 1.67 | Tipo de cabello: | ONDULADO CON CANAS | Frente: | AMPLIA |
|---|---|---|---|---|---|
| Cejas: | POBLADAS | Bigote: | SI CON CANAS | Color de Ojos: | AZULES |
| Nariz: | GRANDE | Complexión: | REGULAR | Boca: | MEDIANA |
| Labios: | DELGADOS | Señas particulares: | NINGUNA | | |

De considerar que el regreso a su país podría ocasionar algún riesgo a su persona, se le brindará mayor información sobre el trámite para solicitar refugio. A partir del día de hoy o de que tenga conocimiento de algún riesgo, tiene 30 días para iniciar el trámite correspondiente.

Tiene igualmente derecho a establecer comunicación con su representación consular acreditada en México, misma que se establecerá por las vías ordinarias.

Observaciones:

Huellas dactilares:

### Mano derecha

| | | | | |
|---|---|---|---|---|
| Pulgar | Índice | Medio | Anular | Meñique |

### Mano izquierda

| | | | | |
|---|---|---|---|---|
| Meñique | Anular | Medio | Índice | Pulgar |

**KEITH ALAN RANIERE**

2 6 MAR 18 S

009

 

DIRECCIÓN GENERAL DE CONTROL Y VERIFICACIÓN
MIGRATORIA
DIRECCIÓN DE ESTACIONES MIGRATORIAS
DELEGACIÓN FEDERAL EN NAYARIT
Número de evento: 0000000030641

## INVENTARIO DE PERTENENCIAS O VALORES

| FICHA DE INGRESO DEL EXTRANJERO(A) | | | |
|---|---|---|---|
| **Datos generales** | | | |

| Nombre | | | |
|---|---|---|---|
| KEITH ALAN RANIERE | | | |
| Nacionalidad | | Número de extranjero | |
| Estados Unidos de América | | 0000000033801 | |
| Sexo | | Fecha de entrada | |
| Hombre | | 25/03/2018 | |
| Fecha de nacimiento | Edad | | Documento de identidad |
| 26/08/1960 | 57 años | | Acta de nacimiento |

### Relación de pertenencias

| Equipaje | Cantidad | Color | Observaciones |
|---|---|---|---|
| Maleta | | | |
| Mochila | | | |
| Bolsa de mano | | | |
| Bolsa de plástico | | | |

| Aparatos Electrónicos | Cantidad | Marca | Número de serie |
|---|---|---|---|
| Teléfono celular | | | |
| Reproductor MP3/Radio | | | |

| Efectivo | | | |
|---|---|---|---|
| Importe: | | Tipo de moneda: | |

| Alhajas | | | |
|---|---|---|---|
| Metal: | | Descripción: | |

| Documentación y/u otros objetos |
|---|
| |
| |
| |
| |

_____
Nombre y firma de la autoridad
migratoria que recibe

_____
Nombre y firma del extranjero(a)

**DERECHOS DE LOS ALOJADOS EN LAS ESTACIONES MIGRATORIAS**

En términos de los artículos 107, 108, 109, 110 y 111 de la Ley de Migración; 226, 227, 228, 229, 230, 232, 233, 234, 235, 236, 237 y 238 de su Reglamento y 9, 12, 18, 20, 22, 24 y 25 del Acuerdo por el que se emiten las Normas para el Funcionamiento de las Estaciones Migratorias y Estancias Provisionales del Instituto Nacional de Migración, publicada en el Diario Oficial de la Federación el día 8 de noviembre de 2012, las personas extranjeras alojadas en Estaciones Migratorias y Estancias Provisionales del Instituto Nacional de Migración, por no acreditar su legal estancia en el país tienen los siguientes DERECHOS:

1.- Recibir de los Servidores Públicos que laboran en esta estación migratoria del Instituto Nacional de Migración, un trato digno y de respeto a sus derechos humanos.

2.- Conocer su situación migratoria y el motivo de su presentación;

3.- Recibir por escrito sus derechos y obligaciones, así como las instancias donde puede presentar sus denuncias y quejas;

4.- Recibir atención médica, psicológica, así como asesoría legal, al ingreso y durante su presentación y alojamiento;

5.- Ser informado del procedimiento migratorio; de su derecho a solicitar el reconocimiento de la condición de refugiado o la determinación de apátrida; del derecho a regularizar su estancia en términos de la Ley de Migración y su Reglamento, en su caso, de la posibilidad de solicitar voluntariamente el retorno asistido a su país de origen; así como del derecho de interponer un recurso efectivo contra las resoluciones del Instituto;

6.- Que se notifique a su representación consular de su presentación, si opta por ello. En caso de que desee recibir la protección de su representación consular, se le facilitarán los medios para comunicarse con ésta lo antes posible;

7.- Que el procedimiento sea sustanciado por autoridad competente y que tenga el derecho a recibir asesoría legal, ofrecer pruebas y alegar lo que a su derecho convenga, así como tener acceso a las constancias del expediente administrativo migratorio;

8.- Que el acta administrativa que levante la autoridad migratoria sobre los hechos que se le imputan se realice en presencia de dos testigos y que en ella se señale su derecho a ofrecer pruebas, a alegar lo que a su derecho convenga, así como a ser asistido por su representante o persona de su confianza y, en su caso, el derecho a que se habilite un traductor o interprete para el desahogo de la diligencia;

9.- Contar con un traductor o intérprete para facilitar la comunicación, en caso de que no hable o no entienda el idioma español;

10.- Comunicarse vía telefónica con la persona que solicite en el momento de su puesta a disposición de la autoridad migratoria. Las comunicaciones subsecuentes se realizaran conforme a los horarios establecidos para ello por la Estación Migratoria;

11.- Conocer la ubicación de la estación migratoria en la que se encuentra presentado y alojado, de las reglas aplicables y los servicios a los que tendrá acceso;

12.- Que se realice un inventario de las pertenencias que traiga consigo, así como a su depósito y resguardo en el área establecida para ello, y que le sean devueltas a su salida de la estación migratoria;

13.- No ser discriminado por las autoridades a causa de su origen étnico o nacional, sexo, género, edad, discapacidad, condición social o económica, estado de salud, embarazo, lengua, religión, opiniones, preferencias sexuales, estado civil o cualquier otra circunstancia que tenga por objeto impedir o anular el reconocimiento o el ejercicio de los derechos y la igualdad real de oportunidades de las personas;

14.- Denunciar ante la autoridad competente si durante su permanencia o tránsito por territorio nacional ha sido víctima o testigo de algún delito, para lo cual se le brindará las facilidades que correspondan;

15.- Recibir durante su estancia un espacio digno, tres alimentos al día y enseres básicos de aseo personal;

26 MAR 18 S

011

16.- Ser visitado por su cónyuge o concubino, familiares, representante legal, Representante Consular, autoridades competentes, representantes de organismos no gubernamentales, y ministros de culto acreditados en los términos de la Ley de Migración y demás disposiciones relacionadas, siempre que lo autorice expresamente;

17.- Participar en actividades recreativas, educativas y culturales que se organicen dentro de las instalaciones;

18.- Que las Estaciones Migratorias cuenten con áreas de estancia separadas para mujeres y hombres, con la garantía del derecho a la preservación de la unidad familiar en todo momento, excepto en los casos en los que la separación sea considerada en razón del interés superior de la niña, niño o adolescente;

19.- Que las Estaciones Migratorias y las Estancias Provisionales cuenten con áreas separadas para niñas, niños y adolescentes migrantes no acompañados para su alojamiento en tanto son canalizados a instituciones en donde se les brinde una atención adecuada;

20.- Depositar sus quejas o sugerencias en buzones que sean accesibles, visibles, que cuenten con bolígrafos y con los formatos correspondientes y;

21.- Solicitar a la autoridad migratoria lo que a su derecho convenga.

_____

**Nombre y firma del interesado de haber recibido y comprendido la información**

_____

**Fecha**

26 MAR 18 S



| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | DELEGACIÓN FEDERAL NAYARIT |
| Fecha de Clasificación | 25 DE MARZO DE 2018 |
| Fundamento Legal | art 78 de la Ley de Migración art 113 fracc V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | SUBDIRECCIÓN DE CONTROL Y VERIFICACIÓN MIGRATORIA |

### COMPARECENCIA

En la ciudad de Nuevo Vallarta, Bahía de Banderas, Nayarit, siendo las 18:40 horas del día 25 de marzo del año dos mil dieciocho, El Subdirector de Control y Verificación Migratoria, de la Delegación Federal del Instituto Nacional de Migración en el Estado de Nayarit, Lcp. Uriel Jiménez Martínez. quien actúa legalmente ante la presencia de dos testigos que al final firman y dan fe ----------------------

CON FUNDAMENTO EN LOS ARTÍCULOS 1, 11, 14 Y 16 DE LA CONSTITUCIÓN POLÍTICA DE LOS ESTADOS UNIDOS MEXICANOS; 26 Y 27 FRACCIÓN XXXIII DE LA LEY ORGÁNICA DE LA ADMINISTRACIÓN PÚBLICA FEDERAL; 2, LETRA C, FRACCIÓN III, 69, 70, 77, FRACCIÓN II, INCISO C, 92, FRACCIÓN II DEL REGLAMENTO INTERIOR DE LA SECRETARÍA DE GOBERNACIÓN; 1, 2, 5, 7, 11, 12, 13 fracciones I y III, 14, 16, 19, 20, fracciones III y VII, 66, 67, 68, 70, 77, 79, 80, 99, 100 Y 111 DE LA LEY DE MIGRACIÓN; 1, 2, 55, 194, 222, 232 Y 233 DE SU REGLAMENTO; 1, 3, 9, 12, 13, 16 FRACCIONES I, III, IV,, V VI, IX Y X, 18, 19, 28, 29, 30, 32, 33, 35, FRACCIÓN I, 36, 38, 39, 44 Y 49 DE LA LEY FEDERAL DEL PROCEDIMIENTO ADMINISTRATIVO; 1 y 19 Fracc. XVI Y XVII DEL ACUERDO POR EL QUE SE DELEGAN ATRIBUCIONES PARA AUTORIZAR TRÁMITES MIGRATORIOS Y EJERCER DIVERSAS ATRIBUCIONES PREVISTAS EN LA LEY DE MIGRACIÓN Y SU REGLAMENTO A LOS SERVIDORES PÚBLICOS ADSCRITOS A LAS DELEGACIONES FEDERALES PUBLICADO EN EL DIARIO OFICIAL DE LA FEDERACIÓN EL DIA 13 DE NOVIEMBRE DE 2012; Art. 3, Inciso 18 DEL ACUERDO POR EL QUE SE DETERMINA LA SEDE Y CIRCUNSCRIPCIÓN TERRITORIAL DE LAS DELEGACIONES Y SUBDELEGACIONES FEDERALES, DELEGACIONES Y SUBDELEGACIONES LOCALES DEL INSTITUTO NACIONAL DE MIGRACIÓN, PUBLICADO EN EL DIARIO OFICIAL DE LA FEDERACIÓN EL DÍA 4 DE ABRIL DE 2013, Y 14 FRACCIÓN V DEL ACUERDO POR EL QUE SE EMITEN LAS NORMAS PARA EL FUNCIONAMIENTO DE LAS ESTACIONES MIGRATORIAS Y ESTANCIAS PROVISIONALES DEL INSTITUTO NACIONAL DE MIGRACIÓN, PUBLICADA EN EL DIARIO OFICIAL DE LA FEDERACIÓN EL DÍA 8 DE NOVIEMBRE DE 2012. -------------------

------------------- HACE CONSTAR -------------------

Que a la hora antes citada del día de la fecha, se tiene por presentada por no comprobar su regular estancia en el país ante esta autoridad migratoria, la persona que responde al nombre de KEITH ALAN RANIERE, de nacionalidad estadounidense, a efecto de rendir su comparecencia administrativa; por lo que se procede a protestarlo en términos del artículo 247 fracción I del Código Penal Federal, para que se conduzca con verdad en la presente diligencia en que va a intervenir y advertido de las penas en que incurren los falsos declarantes y enterado del contenido del artículo en comento, la persona extranjera de referencia, manifiesta protestar y conducirse con verdad en la presente comparecencia, que por sus generales manifestó llamarse KEITH ALAN RANIERE, ser de nacionalidad estadounidense, tener 57 años de edad, con fecha de nacimiento 26 de agosto de 1980, de estado civil soltero, con instrucción escolar universitaria, de ocupación capacitador, originario de Brooklyn Nueva York; desconociendo los domicilios en los cuales habito, siendo uno de estos en Guadalajara, Jalisco; y el otro en Chacala, Compostela, Nayarit, hija (o) del señor James Raniere de nacionalidad estadounidense y de la señora Vera Oschypko, de nacionalidad estadounidense, a quien con fundamento en el artículo 36 fracción I inciso b) de la Convención de Viena sobre Relaciones Consulares de 1983 y en relación con los artículos 13, 69, 70, 106 y 109 de la Ley de Migración, 222 y 226 de su Reglamento; y 15, 17, 18 y 24 del Acuerdo por el que se emiten las normas para el funcionamiento de las estaciones migratorias y estancias provisionales del Instituto Nacional de Migración, publicada en el diario oficial de la federación el día 8 de noviembre de 2012, se hace del conocimiento que tiene derecho a comunicarse con su representación consular y ser asistido o representado legalmente por la persona que designe, por lo que en este acto manifiesta su deseo o no de ser asistido o representado por persona de su confianza; asimismo se le notifica que tiene derecho a solicitar el reconocimiento de la condición de refugiado o la determinación de apátrida; del derecho a regularizar su estancia en términos de los artículos 132, 133 y 134 de la Ley de Migración, solicitar el retorno asistido a su país de origen, interponer recurso en contra de las resoluciones que emita este Instituto, ofrecer las pruebas y alegar lo que a su derecho convenga, a lo que manifiesta que No es su deseo presentar pruebas y alegatos; se hace mención que el extranjero no entiende y habla el idioma castellano, por lo que si se requiere que se le designe un traductor práctico para que lo asista durante la presente diligencia, en consecuencia la persona extranjera: -------------------

------------------- MANIFIESTA -------------------

Que mi nombre es Keith Alan Rainere, ingresé a México aproximadamente el 10 de noviembre del 2017 vía aérea, y creo que fué a través de American Airlines, a Monterrey; Nuevo León, donde permanecí durante un par de meses; con la C. Mariana Fernández Aguilar, que es la madre de mi hijo; no recuerdo el nombre del domicilio en esta ciudad, posteriormente me traslade al sur, y he estado vacacionando en Guadalajara; Jalisco y en Chacala, en Compostela; Nayarit, cambiando de un lugar al otro intermitentemente, sin embargo me rehúso a proporcionar información referente

**013**



| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años art 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | DELEGACIÓN FEDERAL NAYARIT |
| Fecha de Clasificación | 25 DE MARZO DE 2018 |
| Fundamento Legal | art 78 de la Ley de Ubicación; art 113 fracc. V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | SUBDIRECCIÓN DE CONTROL Y VERIFICACIÓN MIGRATORIA |

a los domicilios específicos. Tengo conocimiento de que en Estados Unidos me acusan de algunos delitos, y temo que al cooperar con la autoridad migratoria mexicana pueda tener problemas; y a partir de este momento me niego a cooperar de manera alguna. No cuento al momento con documento de identidad, documento migratorio alguno; ni teléfono celular, pues estos se encuentran en mi casa, la cual no recuerdo tampoco la dirección. No deseo recibir los alimentos que en este lugar se me han ofrecido, y me niego a someterme al reconocimiento médico, firmas, responder preguntas, o cooperar de ninguna manera. Así mismo quiero declarar que en todo momento esta autoridad migratoria me ha respetado mis derechos humanos y garantías individuales y que no se sido objeto de malos tratos físicos o verbales. Que es todo lo que deseo manifestar. --------------------------------------------------------------------------------------------------------

En razón de lo anterior se acuerda lo siguiente: ----------------------------------------------------------------------------------------

PRIMERO.- Téngase por formuladas las manifestaciones del extranjero de nombre KEITH ALAN RANIERE, mismas que serán tomas en cuenta al momento de resolver el presente procedimiento administrativo migratorio instruido en su contra.- - - - - - - - - - - - - - - - - - - -

SEGUNDO.- En términos del artículo 109 fracción V de la Ley de Migración y 32 de la Ley Federal de Procedimiento Administrativo, se concede al extranjero de nombre KEITH ALAN RANIERE, un término de hasta diez días hábiles para presentar pruebas a su favor. ----

TERCERO.- Continúese con el desahogo del procedimiento administrativo migratorio instruido en contra del extranjero de nombre KEITH ALAN RANIERE.

No habiendo más que hacer constar se cierra la presente comparecencia siendo las 20:07 horas del día de su inicio, firmando al calce y al margen los que intervinieron en ella. --------------------------------------------------------------------------------------------------------

AUTORIDAD MIGRATORIA

_____
Lcp. Uriel Jiménez Martínez

EL DECLARANTE

_____
Keith Alan Raniere

TESTIGO DE ASISTENCIA

_____
C. Felipe de Jesús López Lizárraga

TESTIGO DE ASISTENCIA

_____
C. Juan Carlos Ruiz Bernal

26 MAR 2018



| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art. 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | Delegación Federal Nayarit |
| Fecha de Clasificación | 25 de marzo de 2018 |
| Fundamento Legal | art 78 de la Ley de Migración, art 113 fracc. V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | Subdirección de Control y Verificación Migratoria |

## RESOLUCIÓN DE DEPORTACION

En la ciudad de Nuevo Vallarta, Bahía de Banderas, Nayarit, siendo el día 25 de marzo de 2018, vistas las constancias para resolver la situación migratoria del extranjero (a) KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, se procede a dictar la resolución de acuerdo a los siguientes.

_____ R E S U L T A N D O _____

1.- Que con fecha 25 DE MARZO DE 2018, se recibió el oficio de puesta a disposición con número INM/DFN/SCVM/0371/2018, signado por LOS C. FELIPE DE JESUS LOPEZ LIZARRAGA Y FRANCISCO JOSE ANTONIO GONZALEZ ARZATE, en virtud de no contar con documento migratorio que acredite su estancia legal en el país a quien dijo llamarse KEITH ALAN RANIERE de nacionalidad ESTADOUNIDENSE,

2.- Con misma fecha, esta autoridad migratoria dictó Acuerdo de Inicio, aperturando el Procedimiento Administrativo Migratorio con el número E.A/1s.9/NAY/NAY/005/KEITH ALAN RANIERE/25-03-2018, tal como lo señalan los lineamientos en los que se instruye a los Servidores Públicos del Instituto Nacional de Migración en materia de procedimiento administrativo migratorio, mismo que corre agregado a las presentes actuaciones.

3.- Con misma fecha, el extranjero(a) de nombre KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, en ejercicio de su garantía de audiencia, realizó su comparecencia administrativa, ante esta autoridad migratoria del Instituto Nacional de Migración en Nayarit, la cual corre agregada a los presentes autos.

4.- Con esta misma fecha, esta autoridad migratoria, decretó el Acuerdo de Presentación al extranjero (a) KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, quedando alojado provisionalmente en la sección del Área de Control y Verificación en la oficina del Instituto Nacional de Migración en la ciudad de Tepic, Nayarit, misma que se encuentra regulada por el Acuerdo por el que se Emiten las Normas para el Funcionamiento de las Estaciones Migratorias y Estancias Provisionales del Instituto Nacional de Migración, publicado en el Diario Oficial de la Federación el día 08 de noviembre de 2012, hasta en tanto se resuelva su Procedimiento Administrativo Migratorio, en territorio mexicano.

5.- Con fecha 25 DE MARZO DE 2018, mediante oficio INM/DFN/SCVM/0368/2018 se notificó a la Representación Diplomática del H. Consulado de ESTADOS UNIDOS DE AMERICA, la presentación y alojamiento en la Delegación Federal Nayarit, de la persona extranjera KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, documental que corre agregado a los presentes autos.

6.- Con fecha 25 DE MARZO DE 2018, se tiene por recibido el certificado No. 156-60-336171, mediante el cual acredita su Nacionalidad e identidad como nacional ESTADOUNIDENSE el extranjero (a) KEITH ALAN RANIERE, documental que corre agregado a los presentes autos.

7.- Con fecha 25 DE MARZO DEL 2018, el extranjero (a) de nombre KEITH ALAN RANIERE de nacionalidad ESTADOUNIDENSE manifestó que no es su deseo hacer el uso del término de los días otorgados para presentar pruebas y alegatos, dentro del Procedimiento Administrativo Migratorio que se le instruye para resolver su situación migratoria en el país, documental que corre agregada a los presentes autos.

_____ C O N S I D E R A N D O _____

I.- Que con fundamento en lo dispuesto en los artículos 1, 11, 14 y 16 de la Constitución Política de los Estados Unidos Mexicanos; artículo 26 y 27 fracción XXXIII de la Ley Orgánica de la Administración Pública Federal; 1, 2 inciso C fracción III, 77 fracción II, inciso C, 92 y 132 del Reglamento Interior de la Secretaría de Gobernación; 1, 2, 3 fracción XVII, 7, 12, 14, 16, 20, 66, 67, 70, 77, y 109, fracción V, 111, 115, 118, 119, 121, 122, 123, 143 y 144 fracción I y IV, de la Ley de Migración; 1, 2, 55, 58, 193, 194, 205, , 242, 243, y 244 del Reglamento de la Ley de Migración, Publicado en el Diario Oficial de la Federación en fecha 28 de septiembre de 2012, vigente a partir del día 09 de noviembre de 2012; 1, 3, 9, 12, 13, 16 fracciones 1, 111, IV, V, VI, IX y X, 18, 19, 28, 29, 30, 32, 33, 35, 36, 38, 39, 49, 53 y 54 de la Ley Federal del Procedimiento Administrativo; 1 y 2 inciso C) fracción 111, 69, 70, 77, 84, 92, y demás aplicables del Reglamento Interior de la Secretaría de Gobernación, publicado en Diario Oficial de la Federación el día martes 02 de abril de 2013; artículo 1,2 y 3 APARTADO 18 por el Acuerdo por el que se Emiten las Normas para el Funcionamiento de las Estaciones Migratorias y Estancias Provisionales del Instituto Nacional de Migración, publicado en el Diario Oficial de la Federación el día 08 de noviembre de 2012; artículo 1, 11, y 19 fracción XVII, del ACUERDO por el que se delegan atribuciones para autorizar trámites migratorios y ejercer diversas atribuciones previstas en la Ley de Migración y su Reglamento, a los servidores públicos adscritos a las Delegaciones Federales del Instituto Nacional de Migración, publicado en el Diario Oficial de la Federación el martes 13 de noviembre de 2012, esta Autoridad.



| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | Delegación Federal Nayarit |
| Fecha de Clasificación | 25 de marzo de 2018 |
| Fundamento Legal | art 78 de la Ley de Migración, art 113 fracc V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | Subdirección de Control y Verificación Migratoria |

II.- Que la nacionalidad e identidad del extranjero (a) **KEITH ALAN RANIERE**; quedó debidamente acreditada mediante certificado No. **156-60-336171** mediante el cual acredita su Nacionalidad e identidad como nacional **ESTADOUNIDENSE.**

III.- Que del análisis de las constancias que integran el expediente en que se actúa se desprende que el extranjero **KEITH ALAN RANIERE** de nacionalidad **ESTADOUNIDENSE**, adecuó su conducta a lo establecido por la fracción IV del artículo 144 de la Ley de Migración, que a la letra dice:

*"Artículo 144 de la Ley de Migración.- Será deportado del territorio nacional el extranjero presentado que:*

*IV.- Estar sujeto a proceso penal o haber sido condenado por delito grave conforme a las leyes nacionales en materia penal o las disposiciones contenidas en los tratados y convenios internacionales de los cuales sea parte el Estado mexicano, o que por sus antecedentes en México o en el extranjero pudiera comprometer la seguridad nacional o la seguridad pública.*

Lo anterior queda debidamente acreditado mediante comparecencia rendida por el extranjero, ante el **SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA DEL INM EN NAYARIT, L.C.P. Uriel Jiménez Martínez,** donde una vez protestado (a) en términos del artículo 247 fracción I del Código Penal Federal, en la parte que interesa **MANIFESTÓ:** *"Que mi nombre es Keith Alan Rainere, ingresé a México aproximadamente el 10 de noviembre del 2017 vía aérea, y creo que fué a través de American Airlines, a Monterrey; Nuevo León, donde permanecí durante un par de meses; con la C. Mariana Fernández Aguilar, quien es la madre de mi hijo; no recuerdo el nombre del domicilio en esta ciudad, posteriormente me trasladé al sur, y he estado vacacionando en Guadalajara; Jalisco y en Chacala, en Compostela; Nayarit, cambiando de un lugar al otro intermitentemente, sin embargo me rehusó a proporcionar información referente a los domicilios específicos. Tengo conocimiento de que en Estados Unidos me acusan de algunos delitos, y temo que al cooperar con la autoridad migratoria mexicana pueda tener problemas; y a partir de este momento me niego a cooperar de manera alguna. No cuento al momento con documento de identidad, documento migratorio alguno; ni teléfono celular, pues estos se encuentran en mi casa, la cual no recuerdo tampoco la dirección. No deseo recibir los alimentos que en este lugar se me han ofrecido, y me niego a someterme al reconocimiento médico, firmas, responder preguntas, o cooperar de ninguna manera." (sic). Manifestación a la que se le da valor probatorio suficiente en términos de los artículos 199 y 200 del Código Federal de Procedimientos Civiles de aplicación supletoria en materia migratoria, por concurrir en ella circunstancias especiales establecidas en el artículo 199 del ordenamiento legal en comento, el cual dispone:*

*"Artículo 199.- La confesión expresa hará prueba plena cuando concurran en ellas las circunstancias siguientes:*

*I.- Que sea hecha por persona capacitada para obligarse;*

*II.- Que sea hecha con pleno conocimiento, y sin coacción ni violencia, y*

*III.- Que sea de hecho propio o, en su caso, del representado o del cedente, y concerniente al negocio."*

Conducta que de conformidad con la ley de la materia se encuentra sancionada con la deportación de territorio nacional, así como restricción para ingresar al mismo, de conformidad con el penúltimo párrafo del artículo 144 de la Ley de Migración y 244 de su Reglamento. ------------------------------------------------------------------------------------------

IV.- No es óbice señalar que esta autoridad apegada al principio de legalidad y debido proceso contenido en la Constitución Política de los Estados Unidos, la cual se sustenta en el respeto irrestricto de los derechos humanos de los migrantes sea cual fuere su origen, nacionalidad, género, etnia y situación migratoria, el extranjero (a) **KEITH ALAN RANIERE,** de nacionalidad **ESTADOUNIDENSE,** durante su permanencia en la Delegación Federal Nayarit, le fue proporcionado un lugar digno para su estancia, así como, manutención y servicios médicos, salvaguardando en todo momento sus Derechos Humanos.

V.- Por lo anterior y con fundamento en el artículo 1, 11 y 19 fracción XVII y XXII, del ACUERDO, que se delegan atribuciones para autorizar trámites migratorios y ejercer diversas atribuciones previstas en la Ley de Migración y su Reglamento, a los servidores públicos adscritos a las Delegaciones Federales del Instituto Nacional de Migración, publicado en el Diario Oficial de la Federación el martes 13 de noviembre de 2012, esta Autoridad, es de resolverse. y.

| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años. art. 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | Delegación Federal Nayarit |
| Fecha de Clasificación | 25 de marzo de 2010 |
| Fundamento Legal | art 78 de la Ley de Migración, art 113 fracc V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rubrica | Subdirección de Control y Verificación Migratoria |

------------ --- ---------- ---------- -------- ----- **SE RESUELVE** -------------------------

**PRIMERO.-** Se determina la deportación de la persona KEITH ALAN RANIERE de nacionalidad ESTADOUNIDENSE, por adecuar su conducta a la hipótesis contemplada en el artículo 144 fracción IV de la Ley de Migración y artículo 244 fracción IV del Reglamento de la Ley de Migración.

**SEGUNDO .-** Apercíbase a la persona de la prohibición que tiene para internarse nuevamente a Territorio Nacional, con fundamento en lo previsto en el artículo 144 fracción IV y último párrafo de la Ley de Migración y el artículo 244 fracción IV de su Reglamento, para lo cual se le fija la *Deportación definitiva* contado a partir de la notificación de la presente resolución, a menos que solicite acuerdo de readmisión en términos del artículo 18 fracción VII del mismo ordenamiento legal.

**TERCERO. -** Entréguese valores al extranjero (a) KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, en caso de que hubiere, previa toma de razón que por su recibo obre en este expediente.

**CUARTO.-** Notifíquese al encargado de turno de la Delegación Federal Nayarit, lugar donde permanezca alojado, de la presente determinación, para la ejecución de la Deportación a su país de origen, del extranjero (a) KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, dejando sin efecto, el acuerdo de presentación determinado por esta autoridad migratoria.

**QUINTO.-** De conformidad con lo señalado en el numeral 2, inciso B) de la circular INM/CCVM/01180/2008, notifíquese al Centro Nacional de Alertas, para que por su conducto se emita el registro de control migratorio correspondiente, a nombre del extranjero de mérito, señalando el contenido del resolutivo SEGUNDO de la presente resolución.

**SEXTO.-** Notifíquese al extranjero (a) la presente determinación para que surta todos los efectos legales y dígasele contra la presente resolución procede el recurso de revisión previsto en la Ley Federal de Procedimiento Administrativo, mismo que podrá interponer ante la autoridad competente en un plazo de quince días a partir del día siguiente aquél en que hubiere surtido efectos la notificación de la presente resolución, de conformidad a lo señalado en el artículo 83 y 85 de la Ley Federal de Procedimiento Administrativo

**SEPTIMO.-** Envíese el presente expediente al archivo para su guarda y custodia._____

_____ **C U M P L A S E** _____

Así lo resolvió y firma, El SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA DEL INM EN NAYARIT, adscrito a la Delegación Federal del Instituto Nacional de Migración en el Estado de Nayarit, L.C.P. Uriel Jiménez Martínez, quien actúa legalmente ante la presencia de dos testigos que al final firman de conformidad.

_____ **C O N S T E** _____

**AUTORIDAD MIGRATORIA**

_____
L.C.P. Uriel Jiménez Martínez

**EXTRANJERO**

_____
KEITH ALAN RANIERE

**TESTIGO DE ASISTENCIA**

Ing. Felipe de Jesús López Lizárraga

**TESTIGO DE ASISTENCIA**

Lic. Francisco José Antonio González Arzate

2 6 MAR 10 S

**017**


| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | Delegación Federal Nayarit |
| Fecha de Clasificación | 25 de marzo de 2018 |
| Fundamento Legal | art 70 de la Ley de Migración, art 113 fracc V VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Rúbrica | Subdirección de Control y Verificación Migratoria |

## NOTIFICACIÓN DE RESOLUCIÓN

En la ciudad de Nuevo Vallarta, Bahía de Banderas, Nayarit, siendo las **20:38** horas del día **25 de marzo del 2018**, el SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA DEL INM EN NAYARIT, quien habiéndose identificado plenamente ante el extranjero (a) KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, procede a dar cumplimiento al punto CUARTO, de la resolución de esta propia fecha, dictada por el SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA DEL INM EN NAYARIT, adscrito a la Delegación Federal del Instituto Nacional de Migración en el Estado de Nayarit, L.C.P. Uriel Jiménez Martínez.

Por lo que me permito notificar a usted, la resolución de mérito, misma que en sus puntos resolutivos se lee:

"**PRIMERO.-** Sujétese al extranjero (a) **KEITH ALAN RANIERE**, de nacionalidad **ESTADOUNIDENSE**, a la Deportación, en términos del artículo 144 fracción IV de la Ley de Migración, artículo 244 fracción IV del Reglamento de la Ley de Migración.

**SEGUNDO.-** Entréguese valores al extranjero (a) **KEITH ALAN RANIERE**, de nacionalidad **ESTADOUNIDENSE**, en caso de que hubiere, previa toma de razón que por su recibo obre en este expediente.

**TERCERO.-** Notifíquese al encargado de turno de la Delegación Federal Nayarit, lugar donde permanezca alojado, la presente determinación, para la ejecución de la Deportación a su país de origen, del extranjero (a) **KEITH ALAN RANIERE**, de nacionalidad **ESTADOUNIDENSE**, dejando sin efecto, el acuerdo de presentación determinado por esta autoridad migratoria.

**CUARTO.-** Notifíquese a el extranjero la presente determinación para que surta todos los efectos legales y dígasele contra la presente resolución procede el recurso de revisión previsto en la Ley Federal de Procedimiento Administrativo, mismo que podrá interponer ante la autoridad competente en un plazo de quince días a partir del día siguiente aquél en que hubiere surtido efectos la notificación de la presente resolución, recurso que será resuelto en un plazo no mayor a tres meses contados a partir de la fecha en que se interpuso el recurso, de conformidad a lo señalado en el artículo 83 de la Ley Federal de Procedimiento Administrativo.
**QUINTO.-** Envíese el presente expediente al archivo para su guarda y custodia."

Lo anterior, para su conocimiento y efectos legales conducentes.

Enterado el extranjero que fue del contenido de la resolución de referencia, firma de conformidad al final de la presente

AUTORIDAD MIGRATORIA                                    NOTIFICADO

L.C.P. Uriel Jiménez Martínez                           KEITH ALAN RANIERE

2 6 MAR 18 S



| CLASIFICACIÓN | Reservada |
|---|---|
| Tiempo de Reserva | 5 años, art 101 Ley General de Transparencia y Acceso a la Información Pública |
| Unidad Administrativa | Delegación Federal Nayarit |
| Fecha de Clasificación | 25 de marzo de 2018 |
| Fundamento Legal | art 78 de la Ley de Migración art 113 fracc V, VI y XI de la Ley General de Transparencia y Acceso a la Información Pública |
| Titular de la Unidad Administrativa y Pública | Subdirección de Control y Verificación Migratoria |

## CONSTANCIA DE HECHOS

En la ciudad de Nuevo Vallarta, Bahía de Banderas, Nayarit, siendo las 20:38 horas del día **25 de marzo del 2018**, el SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA DEL INM EN NAYARIT, quien habiéndose identificado   plenamente ante el extranjero (a) KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, procede a dar cumplimiento al punto CUARTO, de la resolución de esta propia fecha, dictada por el SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA DEL INM EN NAYARIT, adscrito a la  Delegación Federal del Instituto Nacional de Migración en el Estado de Nayarit,  L.C.P. Uriel Jiménez Martínez.

Con fecha 25 de marzo del 2018, esta autoridad migratoria dictó Acuerdo de Inicio, aperturando el Procedimiento Administrativo Migratorio con el número E.A/1s.9/NAY/NAY/005/KEITH ALAN RANIERE/25-03-2018, tal como lo señalan los lineamientos por los que se instruye a los Servidores Públicos del Instituto Nacional de Migración en materia de procedimiento administrativo migratorio.

Con misma fecha, el extranjero(a) de nombre KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE, en ejercicio de su garantía de audiencia, realizó su comparecencia administrativa, ante esta autoridad migratoria del Instituto Nacional de Migración en Nayarit, la cual corre agregada a los presentes autos.

Misma en la que dejó de manifiesto su negativa a cooperar con la información, así como con las firmas por un temor de acuerdo a su historial en Estado Unidos de América.

Se le notificó su presentación en las oficinas de la Delegación Federal Nayarit para desahogar su procedimiento administrativo migratorio, en la que se le hizo de conocimiento de los derechos como alojado.

Se le notificó la resolución de Deportación por comprometer a la seguridad nacional por sus antecedentes en el extranjero, sin embargo se rehusó a firmar las actuaciones correspondientes a su procedimiento administrativo migratorio.

Por lo cual se hace constar que el extranjero KEITH ALAN RANIERE, de nacionalidad ESTADOUNIDENSE se le dio asistencia médica, entrega de alimentos, llamada telefónica e información precisa de la situación migratoria que presenta, sin embargo rechazó firmar las actuaciones correspondientes.

Hago constar y firma. El SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA DEL INM EN NAYARIT, adscrito a la Delegación Federal del Instituto Nacional de Migración  en el Estado de Nayarit, L.C.P. Uriel Jiménez Martínez, quien actúa legalmente ante la presencia de dos testigos que al final firman de conformidad.

AUTORIDAD MIGRATORIA

L.C.P. Uriel Jiménez Martínez

TESTIGO DE ASISTENCIA

Ing. Felipe de Jesús López Lizárraga

TESTIGO DE ASISTENCIA

Lic.. Francisco José Antonio González Arzate

2 6 MAR 18 S

**019**

## ¿Quién puede ser un Refugiado?

La Ley sobre Refugiados y Protección Complementaria establece en su artículo 13 que la condición de refugiado se reconocerá a todo extranjero que se encuentre en territorio nacional, bajo alguno de los siguientes supuestos:

I. Que debido a fundados temores de ser perseguido por motivos de raza, religión, nacionalidad, género, pertenencia a determinado grupo social u opiniones políticas, se encuentre fuera del país de su nacionalidad y no pueda o, a causa de dichos temores, no quiera acogerse a la protección de tal país; o que, careciendo de nacionalidad y hallándose, a consecuencia de tales acontecimientos, fuera del país donde antes tuviera residencia habitual, no pueda o, a causa de dichos temores, no quiera regresar a él;

II. Que ha huido de su país de origen, porque su vida, seguridad o libertad han sido amenazadas por violencia generalizada, agresión extranjera, conflictos internos, violación masiva de los derechos humanos u otras circunstancias que hayan perturbado gravemente el orden público, y

III. Que debido a circunstancias que hayan surgido en su país de origen o como resultado de actividades realizadas, durante su estancia en territorio nacional, tenga fundados temores de ser perseguido por motivos de raza, religión, nacionalidad, género, pertenencia a determinado grupo social u opiniones políticas, o su vida, seguridad o libertad pudieran ser amenazadas por violencia generalizada, agresión extranjera, conflictos internos, violación masiva de los derechos humanos u otras circunstancias que hayan perturbado gravemente el orden público.

### Contacto COMAR:

Dinamarca 84 Piso 4, Col. Juárez, Del. Cuauhtémoc

C. P. 06600, México, D. F. - Tel. (55) 5209-8800 Ext. 30133 y 30147

2 6 MAR 18 S

020

## FICHA DE INGRESO DE EXTRANJERO (A)

### Datos Generales

Nombre: Keith Alan Raniere

| Nacionalidad: | Procedencia: | |
|---|---|---|
| Estadounidense | Brooklyn. New York | |
| Sexo: | Fecha de Ingreso: | Hora: |
| Masculino | 25-03-2018 | 18:30 |
| Fecha de nacimiento: | Edad: | Documentos de identidad: |
| 26/08/1960 | 57 | Acta de Nacimiento |

### Relación de Pertenencias

| Cantidad: | Descripción: | Observaciones: |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

### Relación de Valores

| Cantidad: | Descripción: | Observaciones: |
|---|---|---|
| | | |
| | | |
| | | |

Nombre y Firma de la autoridad que recibe

Nombre y Firma del extranjero (a)

**OBLIGACIONES:**

1.- Observar y respetar las indicaciones de los servidores públicos de la estación migratoria.

2.- Brindar un trato digno y respetuoso a los servidores públicos que laboran en esta estación migratoria.

3.- Responder con veracidad las preguntas que se le formulen para la integración de su expediente.

4.- Respetar a las personas que se encuentren en su misma condición de alojados sin importar su origen étnico o nacional, sexo, edad, discapacidad, condición social o económica, estado de salud, lengua, religión, preferencias sexuales, estado civil o cualquier otra condición.

5.- Cumplir con los horarios establecidos por la autoridad para realizar las siguientes actividades:

♦ Aseo de cama y dormitorio

♦ Aseo personal

♦ Desayuno

♦ Servicio médico, recibir visitas, realizar llamadas, participar en las actividades deportivas, recreativas, educativas y culturales

♦ Comida

♦ Cena

♦ Ingreso al espacio asignado para dormir

6.- Cumplir con las normas mínimas de higiene y salubridad establecidas por la autoridad.

7.- Depositar su equipaje y demás valores en el área asignada al ingresar a esta estación.

8.- Acatar las indicaciones de la autoridad durante su traslado o conducciones.

9.- Cuidar las instalaciones, mobiliario y equipo de la estación migratoria, absteniéndose de maltratarlos y de no ocasionar ningún disturbio, comportarse con respeto y orden a efecto de salvaguardar la seguridad de las instalaciones y de quienes se encuentran en la misma ante cualquier intento de fuga. Así como de cualquier acto que ponga en riesgo la seguridad, en cuyo caso será acreedor a las sanciones administrativas o penales a que haya lugar, para la autoridad competente.

10.- Abstenerse de la introducción de bebidas alcohólicas, estupefacientes, drogas, enervantes, psicotrópicos, sustancias toxicas, medicamentos no autorizados, utensilios ilícitos o punzo cortantes y explosivos. Asimismo, abstenerse de realizar actos de comercio, posesión y uso de telefonía o radio comunicación no permitidos en la estación migratoria.

*Art. 26 del Acuerdo por el cue se Emiten las Normas para el Funcionamiento de las Estaciones Migratorias y Estancias Provisionales del INM.*

He leído y comprendo los derechos y obligaciones que debo observar durante mi permanencia en esta estación migratoria.

Nombre y Firma del extranjero (a)

Durante el tiempo que usted permanezca alojado en esta Estación Migratoria, tiene los siguientes derechos y obligaciones:

**DERECHOS:**

1.- Recibir de los servidores públicos que laboran en esta estación migratoria un trato digno y de respeto a sus derechos humanos.

2.- Ser informado oportunamente sobre su situación migratoria.

3.- Recibir atención médica, asistencia y representación legal, al ingreso mediante su permanencia.

4.- A declarar mediante acta administrativa en presencia de dos testigos, en que se le hagan saber los hechos que se le imputan y su derecho a ofrecer pruebas, y alegar lo que a su derecho convenga, así como a estar asistido por su representante o persona de su confianza y en su caso, a que se habilite un traductor o intérprete para el desahogo de la diligencia.

5.- Al inventario de las pertenencias que traiga consigo, así como a su depósito y resguardo en el área establecida para ello.

6.- A que esta autoridad notifique a su representación consular de su aseguramiento y si usted lo desea, a solicitar a dicha representación la asistencia que le pudiere otorgar.

Los niños, niñas y adolescentes que por alguna razón sean alojados en una estación migratoria, tendrán el derecho de permanecer a lado de su familia o reintegrarse a ella; contar con actividades de propicien la sana convivencia y estancia con otros niños, niñas y adolescentes; y que se privilegia su estancia en instituciones adecuadas para su sano desarrollo físico y emocional, salvaguardando en todo momento el interés superior del niño.

7.- A solicitar a que la autoridad migratoria resuelva su situación jurídica.

8.- Solicitar al jefe de la estación migratoria, de manera pacífica y respetuosa, las audiencias que sean necesarias.

9.- Recibir tres alimentos al día, espacio para dormir, cobija o cobertor y enseres básicos de aseo personal.

10.- Comunicarse vía t      ica o por cualquier medio, con la persona que usted solicite, dentro del horario establecido para ellos.

11.- A ser visitado por sus familiares, amistades, cónyuge o concubino, autoridades, representantes consulares y organismos no gubernamentales, representante legal y ministros de culto religioso acreditados, en los horarios determinados para tal efecto previa autorización.

12.- A que le sean devueltas, en su oportunidad, sus pertenencias inventariadas y resguardadas por la autoridad con excepción de la documentación falsa que, en su caso, haya presentado.

13.- A solicitar información para obtener la condición de refugiado, debido a un temor de persecución fundado por motivos de raza, religión, nacionalidad, pertenecer a un determinado grupo social, o una opinión política, se encuentra fuera del país de su nacionalidad y no pueda o, a causa de dichos temores, no quiera acogerse a la protección del país, o en su caso, si considera que su seguridad está en riesgo en su país de origen.

14.- A informar al responsable de la estación migratoria si durante su permanencia o tránsito por este país se han violado sus derechos y sea canalizada si queja ante la instancia que corresponda.

15.- A denunciar ante la autoridad competente si durante su permanencia o tránsito por este país ha sido víctima o testigo de algún delito, para lo cual el responsable de esta estación migratoria brindara las facilidades que estime necesarias. Asimismo, podrá ser considerado para regularizar su situación migratoria en el país.

16.- A depositar sus quejas y/o sugerencias en el buzón respectivo el cual se encuentra tanto en el interior como en el exterior de la estación migratoria.

17.- A no ser discriminado por las autoridades y alojado a causa de su origen étnico o nacional, sexo, edad, discapacidad, condición social o económica, estado de salud, embarazo, lengua, religión, opiniones, preferencias sexuales, estado civil o cualquier otra.

*Art. 109 de la Ley de Migración.*
*Art. 24 del Acuer... or el que se Emiten las Normas para el Funcionamiento de las Estaciones Migratorias y Est... cias Provisionales del INM.*

DIVISION OF RECORDS
DEPARTMENT OF HEALTH
BOROUGH OF BROOKLYN

FILED

1960 AUG 30 AM 11:00

# Certificate of Birth

156~60~336171

Certificate No. _____

1. Full name of child (PRINT) __ **Keith** _____ **Alan** _____ **Reniere** __
   First name / Middle name / Last name

2. Sex **Male**

4. Number of children born of this pregnancy ... **1**
   If more than one, number of this child in order of birth

5. Date of child's birth **August 26, 1960**  (Month) (Day) (Year)

5a. Hour **4:40** A.M.

6. PLACE OF BIRTH
   (a) NEW YORK CITY: (b) Borough **Brooklyn**
   (c) Name of Hospital or Institution **Maimonides Hospital of Brooklyn**
   (d) If not in hospital, street address No. _____ Ave. St.

7. USUAL RESIDENCE OF MOTHER:
   (a) State **New York**
   (b) Co. **Kings**  (c) City or Town **Brooklyn**
   (d) No. **225 Ave., T**  Ave. St.

8. Full name **James Reniere** (FATHER)

9. Color or race **White**

10. Age at time of this birth **28** (years)

11. Birthplace (city or place and State, or country) **U.S.A.**

12a. Usual Occupation **Artist**

12b. Kind of business or industry in which work was done **Advertising Agency**

11. Full maiden name **Vera Oschypko** (MOTHER)

14. Color or race **White**

15. Age at time of this birth **29** (years)

16. Birthplace (city or place and State, or country) **U.S.A.**

17a. Total number of children BORN ALIVE PREVIOUS to this pregnancy **0**

17b. Number of children born PREVIOUS to this pregnancy and NOW LIVING **0**

I hereby certify that this child was born alive at the hour and on the date stated above, and that all the facts stated in this certificate and report of birth are true to the best of my knowledge, information and belief.

Date of Report _____, 19___

(Signed) _Alex Mintzer_ M.D.

Name of Signer **ALEX MINTZER M.D.** (Print or typewrite)

Address **2020 CORTELYOU RD**

Given name added from a supplemental report. _____ (Date of) _____
Borough Registrar

Print here the mailing address of mother. ➡→
Copy of this certificate will be mailed to her when it is filed with the Department of Health.

Name **Mrs. Vera Reniere**
Address **225 Ave., T** Apt. ___
City **Brooklyn** Post Office Zone ___ State **N.Y.**

BUREAU OF RECORDS AND STATISTICS     DEPARTMENT OF HEALTH     THE CITY OF NEW YORK

The Ability of New York

_Steven P. Edwards_
Steven P. Schwartz, Ph.D., City Registrar

February 12, 2018

R003890798

022

# UNITED STATES DISTRICT COURT

### for the

### Eastern District of New York

| | |
|---|---|
| United States of America<br>v.<br>**KEITH RANIERE, aka "The Vanguard."**<br><br>*Defendant* | ) Case No.<br>)<br>) 1 _____<br>)<br>) |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    **KEITH RANIERE**
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Sex trafficking  conspiracy to commit sex trafficking and forced labor

Date    02/14/2018

*Issuing officer's signature*

Lois Bloom  USMJ
*Printed name and title*

City and state:    Brooklyn  New York

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____<br>at *(city and state)* _____ |
| Date: _____<br><br>_____<br>*Arresting officer's signature*<br><br>_____<br>*Printed name and title* |

2 6 MAR 18 S

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:

Known aliases:

Last known residence:

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:

Social Security number:

Height:                                      Weight:

Sex:                                         Race:

Hair:                                        Eyes:

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone numbers)*:

FBI number:

Complete description of auto:

Investigative agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*:

2 6 MAR 18 S

024





U.S. Customs and Border Protection
U.S. Department of Homeland Security
US Passport (P)

02/05/2018 12 11 EST

Generated By  KAREN MAZARIEGOS

Page 1 of 1

| Passenger Information | | | |
|---|---|---|---|

| Last Name | First Name | DOB | Gender |
|---|---|---|---|
| RANIERE | KEITH ALAN | 08/26/1960 | M - Male |

| US Passport Information | | |
|---|---|---|

| Passport # | Passport Status | Document Type |
|---|---|---|
| 467574523 | I - ISSUED | P - PASSPORT |
| Issue Country | Issue Date | Expiration Date |
| USA - UNITED STATES | 09/01/2011 | 08 31/2021 |

| Personal Information | | |
|---|---|---|

| Last Name | First Name | DOB |
|---|---|---|
| RANIERE | KEITH ALAN | 08/26/1960 |
| Gender | Place of Birth | Nationality |
| M - Male | USA - UNITED STATES | |

2 6 MAR 10 S

**For Official Use Only / Law Enforcement Sensitive**

025



BERNACIO
DE MIGRA
SENTACI
AT·

2 6 MAR 10 S

KEITH A. RANIERE

DOB 8/26/1960

HEIGHT: 5'6"

EYE COLOR: BLUE

PASSPORT # 487874523





026

RANIERE traveled to Monterrey, Mexico from the United States on 11/10/2017. RANIERE is believed to be living with MARIANNA FERNANDEZ AGUILAR, the mother of RANIERE's child.



MARIANNA FERNANDEZ AGUILAR
DOB 11/15/1983
PASSPORT # G13453515

SUSPECTED RESIDENCE:
612 La Jolla 66225 San Pedro Garza Garcia, N.L. Mexico
RANIERE is known to walk several miles each day at odd times (generally in the late evening or early morning hours). Below is a photograph allegedly taken inside this gated community in December 2017. RANIERE and FERNANDEZ appear in the photograph.



26 MAR

## SUSPECTED RESIDENCE:
### 612 La Jolla 66225 San Pedro Garza Garcia, N.L. Mexico
Residence is in a gated community.





S MEXICANOS 84

GOBERNACI.
.L.DE ~IG:
RESENTA ...
ARIT



2 6 MAR 16 S

## PLACE OF WORK:

### Executive Success Programs Center in Monterrey – Vía Savotino 105, Fuentes del Valle, 66220 San Pedro Garza García, N.L., Mexico

RANIERE is not believed to frequent this location regularly. Still, the individuals at this location would likely know RANIERE's whereabouts.





OBERNAC·
. DE MIC·
ESENTA
RIT·



26 MAR 18 S

## ALSO KNOWN TO FREQUENT:

### RESTAURANT

Taller Veganico, Plutarco Elias Calles 420, Barrio Tampiquito, Tampiquito, 66240 San Pedro Garza García, N.L., Mexico.

029

SEGOB



Gestión Mig
domingo 25 de ma

## Búsqueda de personas

Apellidos: RANIERE          Nombre(s) KEITH ALAN

Cambiar a búsqueda avanzada

## Resultados

Datos personales

Apellidos: RANIERE
Nombre(s): KEITH ALAN
Nacionalidad (País) Estados Unidos de América
Sexo Hombre
Fecha de nacimiento 26/08/1960

Entradas

| Fecha y hora | Tipo flujo | Viaje | Documento identificación | Forma | Situación migratoria | Documento autorización | |
|---|---|---|---|---|---|---|---|
| 15/10/2017 01:40 | Terrestre | Autobus De Pasajeros | Tipo: Pasaporte Número: 487874523 País de expedición: Estados Unidos de América | Tipo: FMM Número: 01112098535 | Calidad: Visitante Característica: No aplica Modalidad: Sin permiso para realizar actividades remuneradas | No aplica | Usu FRA COI Filt Áre Inte Chi |
| 16/11/2017 12:12 | Aéreo | Delta Airlines 147 | Tipo: Pasaporte Número: 487874523 País de expedición: Estados Unidos de América | Tipo: FMM Número: 01116026002 | Calidad: Visitante Característica: No aplica Modalidad: Sin permiso para realizar actividades remuneradas | No aplica | Usu HU GO Filt TEF Áre Inte Mor |

2 6 MAR 18 S

2

030

 

none**DIRECCIÓN GENERAL DE CONTROL Y
VERIFICACIÓN MIGRATORIA
DIRECCIÓN DE ESTACIONES MIGRATORIAS
Número de evento: 0000000030641**

## RESOLUCIÓN DEL EXTRANJERO
DELEGACIÓN FEDERAL EN NAYARIT

### DATOS GENERALES
Fecha de entrada: 25/03/2018
Número de extranjero: 0000000033801
Nacionalidad: Estados Unidos de América
Nombre del extranjero: KEITH ALAN RANIERE
Fecha de nacimiento: 26/08/1960
Edad: 57 años
Sexo: Hombre

### PROCEDIMIENTO
Fecha de acuerdo de inicio: 25/03/2018

### COMPARECENCIA
Fecha de comparecencia: 25/03/2018

### RESOLUCIÓN
Fecha de resolución: 26/03/2018
Motivo de salida: Deportación



_____
**Firma de la autoridad migratoria que aprueba**

031

 

**SEGOB**

SECRETARIA DE GOBERNACION
INSTITUTO NACIONAL DE MIGRACIÓN
DELEGACIÓN FEDERAL NAYARIT
SUBDIRECCIÓN DE CONTROL Y VERIFICACIÓN

Oficio: INM/DFN/SCVM/0374/2018

**Asunto:** Oficio de comisión para traslado internacional de extranjero(s).

Bahía de Banderas, Nayarit; a 26 de Marzo del 2018.

C. FRANCISCO JOSE ANTONIO GONZALEZ ARZATE
AGENTE FEDERAL DE MIGRACION "B"
C. JUAN CARLOS RUIZ BERNAL
OFICIAL DE SERVICIOS MIGRATORIOS
PERSONAL DEL INM EN EL ESTADO DE NAYARIT
P R E S E N T E.

Se comisiona al personal de migración citado al rubro, adscrito a la Delegación Federal del Instituto Nacional de Migración, en el Estado de Nayarit, los días 26 de marzo del presente año, a efecto de trasladar a un (01) extranjeros, KEITH ALAN RANIERE DE NACIONALIDAD ESTADOUNIDENSE, quien deberá ser entregado a las autoridades migratorias de su país de origen (E.U.A) a fin de dar cumplimiento a la resolución de deportación, por la cual sustenta en el respecto por haber antecedentes en México que pueda comprometer la seguridad pública, Con fundamento en el artículo 144 de la Ley de Migración fracción; IV.

En cumplimiento de la comisión conferida, deberá hacerse con estricto apego a derecho y con absoluto respeto a los derechos humanos. El itinerario a seguir será el siguiente:

Puerto Vta – Dallas Texas; lunes 26 de marzo del 2018, American Airlines número de vuelo 398

Dallas Texas – Puerto Vta; lunes 26 de marzo del 2018, American Airlines número de vuelo 1467

Las autoridades que por Ley tengan a su mando Fuerzas Públicas Federales, Locales o Municipales, en atención a lo previsto en el artículo 96 de la Ley de Migración, prestarán su colaboración a solicitud de los portadores del presente oficio, para el cumplimiento de la presente comisión.

A T E N T A M E N T E

URIEL JIMENEZ MARTINEZ
SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA
DEL INSTITUTO NACIONAL DE MIGRACION
EN EL ESTADO DE NAYARIT

2 6 MAR 18 S

032

**Your Itinerary**

## Trip on Mar 26, 2018

Locator: **WMOBFG**   Date: **Mar 25, 2018**

| Traveler | |
|---|---|
| | **KEITH A RANIERE** |
| | DOJE2 |
| | FBI |
| | THIS IS YOUR OFFICIAL RECEIPT FOR TRAVEL PLEASE RETAIN FOR VOUCHERING OR REIMBURSEMENT PURPOSES. |
| Customer Number | 643SR7F |
| Agent | 13 |

NOTE-A TMC FEE OF 34.41 WAS BILLED TO YOUR AGENCY.
DO NOT CLAIM THIS AMOUNT ON YOUR TRAVEL
VOUCHER. CLAIM ONLY THE TICKET COST TO YOUR
INDIVIDUAL TRAVEL CARD AS INDICATED BY THE
LAST FOUR DIGITS OF YOUR CREDIT CARD NUMBER.
.............................................
FEES TOTALING 34.41PP CHARGED IN ADDITION TO TKT PRICE
FEE-USD34.41PP-AIR AGENT INITIATED INTL

### Monday, March 26, 2018

Confirmation  **WMOBFG**


### Flight AMERICAN AIRLINES 396

| DEPARTURE | ARRIVAL |
|---|---|
| **PTO VALLARTA** | **DALLAS/F.WORTH,TX** |
| **7:06 AM, Mar 26, 2018** | **10:44 AM, Mar 26, 2018** |

| | |
|---|---|
| Status | Confirmed |
| Class | Coach Class - Y |
| Duration | 02:38 (Non-stop) |
| Equipment | Boeing 737-800 |
| Meal Service | Food For Purchase |
| Notes | ARR-TERMINAL D |
| | ONEWORLD |

| Name | Invoice / Ticket / Date | Base | Tax 1 | Tax 2 | Tax 3 | Total |
|---|---|---|---|---|---|---|
| RANIERE KEITH A | 283255/0017060842051/25MAR18 | USD 1,082.00 | 18.30US | 5.65YC | 87.23XT | 1,193.18 |
| RANIERE K | 228325S/000SFCTRF/25MAR18 | 34.41 | | | | 34.41 |
| | | | | **Total Amount** | | **1,227.59** |

Form of Payment: CAXXXXXXXXXXXXX3237

### GENERAL INFORMATION
.........................................................
*******TO BOOK RESERVATIONS ONLINE PLEASE VISIT*******
****************CWTSATOTRAVEL.COM*******************

INTERNATIONAL RESERVATIONS REQUIRE CHECK-IN AT LEAST
2 HOURS PRIOR TO DEPARTURE AND RE-CONFIRMATION WITH
THE AIRLINES AT LEAST 72 HOURS BEFORE YOUR SCHEDULED
RETURN.
...............................
VISAS / PASSPORTS MAY BE REQUIRED FOR INTERNATIONAL
TRAVEL. IF YOU DO NOT HAVE ALL NECESSARY DOCUMENTS
THE AIRLINES CAN AND WILL DENY YOUR BOARDING.
FOR DESTINATION VISA/PASSPORT INFORMATION SEE
*** TRAVEL.STATE.GOV/TRAVEL ****
.......................................
NON-CONTRACT/NON-GOVERNMENT FARES ARE NOT GUARANTEED

UNTIL PURCHASED AND ARE SUBJECT TO CANCELLATION BY
THE AIRLINE WITHOUT NOTIFICATION.
EARLY TICKETING IS RECOMMENDED.
......................... .................................
BAGGAGE RESTRICTIONS VARY BY CARRIER AND FLIGHT.
.................................................
SOME COUNTRIES REQUIRE THE AIRLINES TO COLLECT AIRPORT
DEPARTURE TAX THAT MUST BE PAID IN LOCAL CURRENCY.
.................................................
CAR RENTALS IN FOREIGN COUNTRIES, INCLUDING CANADA,
DO NOT INCLUDE GOVERNMENT CDW INSURANCE. YOU MUST
PURCHASE THE ADDITIONAL DAMAGE COVERAGE.
.................................................
.................................................
FOR INFORMATION ON THE TSA SECURE FLIGHT PROGRAM
PLEASE GO TO WWW.TSA.GOV
.................................................
****** FLY AMERICA ACT JUSTIFICATION STATEMENT ******
THE FLY AMERICA ACT REQUIRES FEDERAL EMPLOYEES AND
OTHERS PERFORMING U.S. GOVERNMENT FINANCED TRAVEL TO
USE U.S. FLAG CARRIERS UNLESS U.S. CARRIERS ARE
UNAVAILABLE. A VALID JUSTIFICATION STATEMENT MUST
BE ATTACHED TO THE TRAVEL ORDER WHEN FOREIGN CARRIERS
ARE USED.
.................................................
...... DON'T FORGET TO CALL THE VACATION CENTER ......
.... AT 1-877-698-2554 TO BOOK YOUR NEXT VACATION....
.......... GO TO SATOVACATIONS.COM TODAY ........
...... AND SIGN UP FOR THE VACATION NEWSLETTER......
.................................................
U.S.CITIZENS AND LAWFUL PERMANENT RESIDENTS WHO TRAVEL
DIRECTLY BETWEEN PARTS OF THE UNITED STATES, WHICH
INCLUDES GUAM, PUERTO RICO, U.S. VIRGIN ISLANDS,
AMERICAN SAMOA, SWAINS ISLAND AND THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS-CNMI, WITHOUT
TOUCHING AT A FOREIGN PORT OR PLACE, ARE NOT REQUIRED
TO PRESENT A VALID U.S. PASSPORT OR U.S. GREEN CARD.
HOWEVER, IT IS RECOMMENDED THAT TRAVELERS BRING A
GOVERNMENT ISSUED PHOTO ID AND COPY OF BIRTH
CERTIFICATE.
........ THANK YOU FOR USING CWTSATOTRAVEL .......
......YOUR REFERENCE CODE IS *** SABRE OV4C ......
*****************************************************
PLEASE CALL LOCAL OFFICE DURING NORMAL BUSINESS HOURS
TOLL FREE NUMBER 800-696-7286 MON-FRI 600A-900P CST
FOR AFTER HOURS EMERGENCY SERVICE IF TRAVEL IS WITHIN
24 HOURS CALL 1-800-696-7286 AND PRESS OPTION 1
.................................................
****IF INTERNATIONAL 800 NUMBER DOES NOT WORK PLEASE***
****** CALL COLLECT TO 210-877-3362 *************

***DID YOU KNOW WE CAN ALSO BOOK YOUR HOTELS AND RENTAL CARS**

  

**SEGOB** | SECRETARIA DE GOBERNACIÓN
INSTITUTO NACIONAL DE MIGRACIÓN

FECHA DE CLASIFICACIÓN: 26 DE MARZO 2018
UNIDAD ADMINISTRATIVA: SUB. DE CONTROL Y VERIFICACIÓN
RESERVADA:
PERIODO DE RESERVA:
CONFIDENCIAL TODO
FUNDAMENTO LEGAL: ARTS. 78 DE LA LIÍL 3
FRACCIÓN II, 18 FRACCIÓN II, 20, 21, y 24 DE
LA LFTAISPG; LINEAMIENTOS 12°, 30°, 32°,
34°, 35°, 38° y 40° DE LOS LGCOIDEAPS.
RÚBRICA DEL TITULAR DE LA UNIDAD
ADMINISTRATIVA:
FECHA DE DESCLASIFICACIÓN: INDEFINIDA.
RUBRICA Y CARGO DEL SERVIDOR PÚBLICO

SECRETARIA DE GOBERNACIÓN
INSTITUTO NACIONAL DE MIGRACIÓN
DELEGACIÓN FEDERAL EN NAYARIT
SUBDIRECCION DE CONTROL Y VERIFICACION
MIGRATORIA

**OFICIO: INM/DFN/SCVM/0375/2018**

**Asunto:** Se pone a disposición persona de nacionalidad estadounidense.

Bahía de Banderas, Nayarit 26 de Marzo 2018..

**AUTORIDAD MIGRATORIA DE ESTADOS UNIDOS
DE AMERICA
P R E S E N T E:**

Por medio del presente reciba un cordial saludo, en atención a la deportación que se encuentra realizando este Instituto Nacional de Migración, con sede de la Delegación Federal en Nayarit, pone a disposición de la autoridad migratoria de Estados Unidos de América, a la extranjera que se relaciona en la lista posterior, toda vez que permaneció en tránsito en México de manera irregular.

Adulto:

| No. | NOMBRE | SEXO | FECHA DE NACIMIENTO | EDAD | LUGAR DE NACIMIENTO | NACIONALIDAD |
|-----|--------|------|---------------------|------|---------------------|--------------|
| 1 | KEITH ALAN RANIERE | MASCULINO | 26 DE AGOSTO DE 1960 | 57 | BROOKLYN NEW YORK | Estadounidense |

Por tal razón se solicita a las autoridades que por Ley tengan a su mando fuerzas Públicas Federales, Locales o Municipales, prestar su colaboración a los portadores del presente en caso de ser necesario, de conformidad con el Artículo 4 de la Ley de Migración y 239 de su Reglamento.

**ATENTAMENTE
SUBDIRECTOR DE CONTROL Y VERIFICACION MIGRATORIA DEL INSTITUTO NACIONAL DE
MIGRACIÓN
EN NAYARIT**

**Lcp. URIEL JIMENEZ MARTINEZ**

C.c.p. Ministerio
C.c.p. Expediente

**035**

GOBERNACIÓN 

C E R T I F I C A C I Ó N:

DE CONFORMIDAD CON EL ARTICULO 12, APARTADO C, FRACCION III DEL ACUERDO POR EL QUE SE DELEGAN ATRIBUCIONES PARA AUTORIZAR TRÁMITES MIGRATORIOS Y EJERCER DIVERSAS ATRIBUCIONES PREVISTAS EN LA LEY DE MIGRACIÓN Y SU REGLAMENTO A LOS SERVIDORES PÚBLICOS ADSCRITOS A LAS DELEGACIONES FEDERALES DEL INSTITUTO NACIONAL DE MIGRACIÓN, PÚBLICADO EN EL DIARIO OFICIAL DE LA FEDERACIÓN, EL 13 DE NOVIEMBRE 2012, ASI COMO SECCIÓN II, ARTICULO 124, ULTIMO PARRAFO DEL REGLAMENTO INTERIOR DE LA SECRETARIA DE GOBERNACIÓN, PUBLICADO EN EL DIARIO OFICIAL DE LA FEDERACIÓN, EL 31 DE MAYO 2019. CERTIFICÓ QUE LA PRESENTE CORRESPONDE Y SON COPIA FIEL DE SU DOCUMENTO, EN LOS ARCHIVOS DE LA OFICINA DE REPRESENTACIÓN DEL INSTITUTO NACIONAL DE MIGRACIÓN EN NAYARIT. LA PRESENTE CERTIFICACIÓN CONSTA DE UN LEGAJO DE TREINTA Y CINCO (35) FOJAS ÚTILES POR UNA Y AMBOS LADOS DE SUS CARAS.

SE EXPIDEN LAS PRESENTES COPIAS EN NUEVO VALLARTA, BAHIA BANDERAS, NAYARIT; EL DIA DIECISÉIS DE NOVIEMBRE DEL AÑO (2022) DOS MIL VEINTIDOS.

A T E N T A M E N T E
LIC. HECTOR SANTIAGO GOMEZ SOLORIO
JEFE DE DEPARTAMENTO DE ASUNTOS JUÍDICOS
DEL INSTITUTO NACIONAL DE MIGRACIÓN



# Appendix B

**NATIONAL MIGRATION INSTITUTE**
**REPRESENTATIVE OFFICE OF NAYARIT**

**Official Letter no. INM/ORN/DAJ/938/2022**

# ANNEX

# OF

# CERTIFIED COPIES

| Ministry of the Interior |  [Seal: The United Mexican States] | Ministry of the Interior National Migration Institute | MINISTRY OF THE INTERIOR NATIONAL MIGRATION INSTITUTE FEDERAL DISTRICT IN THE STATE OF NAYARIT Official Letter no.: INM/DFN/SCVM/0371/2018 Matter: A foreign person has been made available Nuevo Vallarta, Bahía de Banderas, Nayarit On March 25, 2018 |

**Mr. URIEL JIMÉNEZ MARTÍNEZ**
**SUBDIRECTOR OF IMMIGRATION CONTROL AND VERIFICATION**
**OF THE NATIONAL MIGRATION INSTITUTE IN NAYARIT**
**BY HAND.**

By means of an arising from formal letter of commission no. INM/DFN/DCM/0368/2018, dated 25 March 2018, which I attach to this document, by means of which Mr. Felipe de Jesús López Lizárraga and Francisco José Antonio Gonzalez Arzate were commissioned, pursuant to Arts. 92, 95, 98, and 100 of the Migration Law, which allows us to place the foreigner at your disposal who hereunder will be described, due to the fact that there was found one (1) foreigner due to a verification visit at the Casa Chocolate house which is a known domicile (AC-12-12) Chacala; Municipality of Compostela, Nayarit, with this foreigner not being able to substantiate his legal residency in the country, since he did not have identification on him, nor a migration document; and due to this fact the commissioned officers then proceeded to move the foreigner to the facilities of the Federal District of Nayarit, in order so that they may make use of their powers in order to resolve his migration status.

**MEN**

| No. | Name | Sex | Date of Birth | Age | Place of Birth | Nationality |
|-----|------|-----|---------------|-----|----------------|-------------|
| 1 | KEITH ALAN RANIERE | MAN | 08/26/1960 | 57 | BROOKLYN, NEW YORK | USA |

The above-mentioned data is given for all appropriate legal ends.

SINCERELY

THE COMMISSIONED OFFICER

[Signature: Illegible]
FRANCISO JOSÉ ANTONIO
GONZÁLEZ ARZATE
FEDERAL MIGRATION AGENT "B"

[Signature: Illegible]
FELIPE DE JESÚS LÓPEZ LIZARRAGA
COORDINATOR OF THE UNIT FOR
MIGRATION SERVICES MATTERS

[Stamp: 26 Mar, 18 S, Mexico]

001

**Ministry of the Interior**



[Seal: the United Mexican States]

Ministry of the Interior
National Migration
Institute

**MINISTRY OF THE INTERIOR**
**NATIONAL MIGRATION INSTITUTE**
**FEDERAL DISTRICT**
**IN THE STATE OF NAYARIT**
**DEPARTMENT OF MIGRATION CONTROL AND**
**VERIFICATION**
**Official Letter no.:** INM/DFN/SCVM/0368/2018
**Matter: Notice given of the appearance of a**
**United States national**
Nuevo Vallarta, Bahía de Banderas, Nayarit
On March 25, 2018

**Representative of the Consulate**
**of the United States of America, in Nuevo Vallarta**
**by Hand**

We cordially greet you and at the same time I would like to notify you in regards to the fact that pursuant to article 69 section IV of the Migration Law, article 1, 11, 19 section XV under which powers are delegated to authorize migration procedures and to exercise different powers that have been published in the Official Gazette of the Federation dated November 13, 2012; I therefore make a Consular Notification, due to the fact that a person who has stated he is a United States national, has appeared before this National Migration Institute, and furthermore that this person is subject to an administrative procedure due to having violated the Migration Law.

**Adults:**
**MEN:**

| No. | Name | Sex | Date of Birth | Age | Place of Birth | Nationality |
|-----|------|-----|---------------|-----|----------------|-------------|
| 1 | KEITH ALAN RANIERE | MALE | AUG., 26,1960 | 57 | BROOKLYN, NEW YORK | USA |

Furthermore, we inform you that the foreign person shall be transported to his place of origin and he will be provided with medical attention, basic utensils, and food while the migration situation is resolved.

Cordially,

**SINCERELY,**
**[Signature: Illegible]**
**URIEL JIMENEZ MARTÍNEZ**
**SUBDIRECTOR OF IMMIGRATION CONTROL AND**
**VERIFICATION**

Medical report in regards to lesions of: <u>Keith Alan Raniere</u>

Entry:_____

Sex: F [ ] M [X] Age: <u>57</u> Civil Status: <u>Single</u> Occupation: <u>Teaching</u>

Address: <u>No address in Puerto Vallarta</u>

Intoxicated: <u>No</u>

Hospitalization: <u>No</u>

Discharge:     <u>03/25/18</u> (Time, Month, day, year)     <u>23:04 hr</u>

Med. Report. Submitted: <u>03/25/18</u> (Time, Month, day, year)     <u>23:04 hr</u>

Sent to:

<div align="center">PATIENT PRESENTS WITH</div>

Detailed descriptions of lesions with no omissions: Characteristics, location, size, progress time, probably object that produced these, whether they place the person in danger of life and limb, if time to cure is greater or less than 15 days, probable sequelae

<div align="center"><u>There is no presentation of marks of physical violence, at this time [illegible]</u></div>

[Signature: Illegible]
[Seal: Dr. José de Jesús Cruz Pérez,
General Physician
DGP 5443980]

White:     Bright yellow:     Green:

[March 26, 18 s, Mexico]

003

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

**Ministry of the Interior**



Ministry of the Interior
National Migration
Institute

[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

<div align="center">

**INITIATION PROCEDURE**
</div>

In the city of Nuevo Vallarta, Bahía de Banderas, Nayarit, it being 18:30 of the 25th of March of the year two thousand and eighteen, the Sub-Director of Migration Control and Verification, of the Federal District of the National Migration Institute in the State of Nayarit, Mr. Uriel Jiménez Martínez, who legally acts in the presence of two witnesses that do sign hereunder, and who attest hereto. ----

<div align="center">

----**PLACES ON THE RECORD**----
</div>

That on the date of March 25, 2018, pursuant to an official letter regarding a person to be made available, which is numbered INM/DFN/DCM/0371/2018, which was signed by Federal Agents Felipe de Jesús López Lizarraga, and Francisco José Antonio González Arzate, commissioned for a Verification Visit at the address of **Casa Chocolate, known domicile, (AC-12-12) Chacala; Municipality of Compostela, Nayarit,** pursuant to which there was presented the individual, before Mr. Uriel Jiménez Martínez, Sub-Director of Migration Control and Verification, the person who stated he was named **Keith Alan Raniere** who had the nationality of the **United States of America,** due to the fact that he did not verify his regular residency status within the national territory.-------

<div align="center">

----**BE IT SO CERTIFIED**----
</div>

Pursuant to arts. 1, 11, 14, and 16 of the Political Constitution of the United Mexican States; 26, and 27 section XXXIII of the Organic Law of Federal Public Administration; 2, Letter C, Section III, 69, 70, 77, Section II, subparagraph C, 92, Section II of the Interior Regulations of the Ministry of the Interior; 1, 2, 5, 7, 11, 12, 13, sections I and III, 16, 19, 20, sections III and VII, 66, 67, 68, 70, 77, 79, 80, 99, 100 and 111 of the Migration Law; 1, 2, 55, 194, 222, 232, and 233 of its regulations; 1, 3, 9, 12, 13, 16, Sections I, III, IV, V, VI, IX, and X, 18, 19, 28, 29, 30, 32, 33, 35, Section I, 36, 38, 39, 44, and 49 of the Federal Law of Administrative Procedure; 1, 9, 11, 19 section XVII of the Agreement Pursuant to which Powers are Delegated to Authorize Migratory Procedures and Executing different powers under the Migration Law and its regulations, for those public servants who are assigned to federal districts, published in the Official Gazette of the Federation on November 13th, 2012; 18 of the agreement pursuant to which the headquarters and territorial areas of the federal districts and sub-districts were determined, as well as those of local districts and sub-districts of the National Migration Institute, which was published in the Official Gazette of the Federation on April 4, 2013, and 14 Section II of the Agreement pursuant to which regulations were issued for the functioning of Migration stations and provisional residences of the National Migration Institute, published in the Official Gazette of the Federation on November 8, 2012.

<div align="center">

----**RESOLVES**---
</div>

FIRST.- This matter is to be filed in the logbook under the file number E.A./1s.9/NAY/NAY/005/KEITH ALAN RANIERE/ 25-03-2018 and the corresponding Administrative Migration Proceeding is to be initiated, to the ends of resolving the migration status of the foreign person referenced previously.----

SECOND.- All formalities that are necessary for the due incorporation of the Migration Administrative Procedure where the individual is acting, are to be carried out.----

THIRD.- Personal notification is to be given under the terms of arts. 35, section I, and 36 of the Federal Law of Administrative Procedure for the foreign person of this current proceeding, with a practicing translator being incorporated in the case that this is needed, with the foregoing being carried out for those legal effects that are appropriate thereto.----

<div align="center">

----**IT IS ORDERED THAT THIS BE FULFILLED**----
</div>

It is so agreed on and signed, Subdirector of Migration Control and Verification, of the Federal District of the National Migration Institute, in the state of Nayarit, Mr. Uriel Jimenez Martinez, who legally acts and who is assisted by the witnesses who at the end thereof sign this present document for the record.----

Migration Authority
[Signature: Illegible]
Mr. Uriel Jimenez Martinez
Present Witness
[Signature: Illegible]
Mr. Felipe de Jesús López Lizárraga        [Stamp: Mar 26, 18 S, Mexico]

Declaring Party

Keith Alan Raniere
Present Witness
[Signature: Illegible]
Francisco José Antonio Gonzales Arzate



Ministry of the Interior
National Migration
Institute

[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

## APPEARANCE

In the city of Nuevo Vallarta, Bahía de Banderas, Nayarit; it being 18:30 o'clock of March 25, 2018 (Two thousand and eighteen), the Subdirector of Migration Control and Verification, of the Federal District of the National Migration Institute, in the state of Nayarit, Uriel Jiménez Martínez, who legally acts in the presence of two witnesses that do sign hereunder, and who attest hereto. ----

### ----BE IT SO CERTIFIED----

Whereas pursuant to arts. 1, 11, 14, and 16, of the Political Constitution of United Mexican States, 1, 2, 3, Section XX, 7, 12, 13, 20 sections VII and X, 66, 67, 68, 69, 70, 77, 79, 99, 101, 106, 107, 108, 109, 111, 121, and 144 of the Migration Law; 1, 2, 55, 58, 194, 222, 223, 226, 233, 234, and 235 of the Regulations of the Migration Law published in the Official Gazette of the Federation dated September 28 2012, which is effective from November 9 2012; 1, 3, 9, 12, 13, 16, sections I, III, IV, V, VI, IX, and X, 18, 19, 28, 29, 30, 32, 33, 35, 36, 38, 39, 44, 49, 50, 51, and 59 of the Federal Law of Administrative Procedure; 1st and 2nd sub-paragraph c) section III 77 last paragraph, 84, 132 applicable to the Interior Regulations of the Ministry of the Interior; articles 1, 9, 11, 19, section XIX of the agreement pursuant to which powers are delegated to authorize migration procedures and to exercise diverse powers provided for under the Migration Law and its regulations in regards to those public servants who are assigned to federal districts of the National Migration Institute, published in the Official Gazette of the Federation, on November 13, 2012; that authority:-----

### ----PLACES ON THE RECORD----

That the content of the documentary evidence that are included in the administrative folder that gives rise to the administrative action, it is noted that the person whose name is **KEITH ALAN RANIERE** of the nationality of the **UNITED STATES OF AMERICA** with his course of action; due to his history in Mexico or abroad, may compromise national security or public security, triggers the scenarios of article 144 section IV of the Migration Law, and this administrative authority:----

### ----RESOLVES---

FIRST.- The foreigner person whose name is **KEITH ALAN RANIERE** is temporarily domiciled, under an adequate provisional residence of the Federal District in the capacity of an appearing person, due to his conduct falling under the matter of subclause 68, 79, 98, 99, 100, and 144 section IV of the Migration Law, due to his history in Mexico or abroad, he may compromise national security or public security, and as a result of this he has been provided with maintenance, medical services, and sanitation, with his human rights being respected, until the authority is able to resolve his migration status on Mexican territory.----

SECOND.- A record is to be made to the effect that the foreign person referenced herein has been provided with access to telephonic communication.----

THIRD.- The foreign person **KEITH ALAN RANIERE** of the nationality of the **UNITED STATES OF AMERICA** is to be served notification personally so that all appropriate effects may take effect.----

### ----IT IS ORDERED THAT THIS BE FULFILLED----

It is so agreed on and signed, by the Subdirector of Migration Control and Verification, assigned to the Federal District of the National Migration Institute, in the state of Nayarit, Mr. Uriel Jimenez Martinez, who legally acts and who is assisted by the witnesses who at the end thereof sign this present document for the record.----

Migration Authority
[Signature: Illegible]
Mr. Uriel Jimenez Martinez
Present Witness
[Signature: Illegible]
Mr. Felipe de Jesus Lopez Lizarraga          [Stamp: Mar 26, 18 S]

Declaring Party

Keith Alan Raniere
Present Witness
[Signature: Illegible]
Fancisco Jose Antonio Gonzales Arzate



Ministry of the Interior
National Migration
Institute

[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

### Rights of those Domiciled in Migration Stations

Under the terms of articles 107, 108, 109, 110, and 111 of the Migration Law; 226, 227, 228, 229, 230, 232, 233, 234, 235, 236, 237, and 238 of its regulations, and 9, 12, 18, 20, 22, 24, and 25 of the Agreement pursuant to which the Regulations for the Functioning of Migration Stations and Provisional Stays of the National Migration Institute are issued, which was published in the Official Gazette of the Federation on November 8, 2012, those foreign persons that are housed in Migration Stations and Provisional Stays, of the National Migration Institute, due to not being able to verify their legal residence in the country have the following:

RIGHTS:

1. To receive humane treatment and treatment that is respectful of human rights from Public Servants that work in this migration station of the National Migration Institute.

2. To know about his migration status and the reason for his presence.

3. Receive his rights and obligations in writing, as well as instances when he may file complaints and grievances;

4. To receive medical and psychological care, as well as legal counsel, during entry and during his presence and stay;

5. To be notified in regards to the migration procedure, in regards to his rights to request recognition of his condition of being a refugee or the determination of statelessness; of his right to regularize his residency under the terms of the Migration Law and its Regulations, where appropriate, and of the possibility of voluntarily requesting assisted return to his country of origin, as well as the right of filing an appeal against resolutions of the Institute;

6. That information in regards to him being present be provided to his consular representation, if he opts for this. In the case that he wishes to receive protection from his consular representation, he will be facilitated with means of communication with the aforementioned as soon as possible;

7. That the process be verified by a competent authority and that he has the right to receive legal counsel, offer proofs, and to make pleas in regards to what is appropriate to his interests, as well as having access to evidence from the migration administrative file;

8. That the administrative act that is drawn up by the migration authority in regards to the facts that are imputed to him, be carried out in the presence of two witnesses and that therein his right to offer evidence be indicated, and to claim whatever is in his best interest, as well as to be assisted by a representative or a person he is confident in, and where appropriate, that he be provided with a translator or an interpreter for the execution of the formality;

9. To have a translator or interpreter to facilitate communication, in the even that he does not understand or speak Spanish;

10. To communicate via telephone with the person who he asks for at the time which he is placed at the disposal of the migration authority. Subsequent communications are to be carried out during times established for these ends by the Migration Station;

11. To know the location of the migration station where he is present and housed, and the applicable rules thereof and services that he will have access to;

12. That an inventory be made of the belongings he brings with him, as well as them being deposited for him, safeguarded, in the area established for him, and that they be returned on his release from the migration station;

13. To not be discriminated against by authorities due to his ethnic or national origin, sex, gender, age, disability, social condition or economic condition, health status, pregnancy, language, religion, opinions, sexual preferences, civil status, or any other circumstance that has the object of impeding or annulling the recognition or the exercise of his rights and real equality of opportunities of individuals;

14. To file charges before a competent authority during his stay or transit through national territory in the event that he has been the victim or the witness to any crime, so that he may be provided with the support that are appropriate thereto;

15. To receive dignified space during his stay, three meals per day, and basic utensils of personal hygiene;

16. To be visited by his spouse or domestic partner, family members, legal representatives, Consular Representative, competent authorities, non-governmental representatives, religious ministers that are accredited under the terms of the Migration Law and other related provisions, so long as he so expressly authorizes these.

**Ministry of the Interior**



[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

Ministry of the Interior
National Migration
Institute

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

17. To participate in recreational, educational, and cultural activities that are organized within the facilities;

18. That the Migration Stations have separate areas of residence for women and men, with a guarantee to the right of preservation of the family unit at all times, except in the cases where separation is considered appropriate in light of the superior interest of a child or adolescent;

19. That Migration stations and Provisional Stays have separate areas for children and adolescent migrants that are not accompanied, so that they may be accommodated and that they are directed to institutions where they are provided with adequate care;

20. To deposit his complaints or suggestions in mailboxes that are accessible, visible, and that have pens and other corresponding forms and;

21. To make requests of the migration authority in regards to whatever is in his best interest.

I have received and understood this information.

_____
**Keith Alan Raniere**

Nuevo Vallarta, Bahía de Banderas, Nayarit, March 25, 2018

[Stamp: Mar 26, 18S, Mexico]

007

**Ministry of the Interior**



[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

Ministry of the Interior
National Migration
Institute

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

**National Migration Institute**
**Federal District of Nayarit**
**Provisional Stay**

**INVENTORY OF BELONGINGS OR INSTRUMENTS**

**General information**

Date: 03/25/2017                                              SHEET: 005
Name of foreigner: KEITH ALAN RANIERE
Nationality: United States of America      SEX: (M) (F)      AGE: 57

| EQUIPMENT | QUANTITY | COLOR | OBSERVATIONS |
|---|---|---|---|
| Suitcase | --- | --- | --- |
| Backpack | --- | --- | --- |
| Handbag | --- | --- | --- |
| Plastic bag | --- | --- | --- |
| Electronic Devices | | Brand | Serial Number |
| Cell Phone | --- | --- | --- |
| MP3/Radio Device | --- | --- | --- |

Cash

Amount:_____                              Type of Currency:_____

Jewelry

Metal: XXXXXXX
Description: XXXXXXX

**DOCUMENTATION AND/OR OTHER OBJECTS**

**Description:**
XXXXXXXX

Mr. URIEL JIMENEZ MARTINEZ                              KEITH ALAN RANIERE

[Signature: Illegible]                              [Signature:            ]

[Stamp: Mar 26, 18 S, Mexico]


Ministry of the Interior
National Migration Institute

**FILIATION**

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

| | |
|---|---|
| Name and surname: **KEITH ALAN RANIERE** | |
| Nationality declared: **UNITED STATES OF AMERICA** | |
| Sex: **Male** | |
| Date of Birth: 08/26/1960 | |
| Age: **57** | |
| Place of birth: BROOKLYN, NEW YORK | |
| Residence: UNITED STATES | |
| Civil Status: SINGLE | |

| Occupation: Teacher | | | Level of education: UNIVERSITY | | |
|---|---|---|---|---|---|
| Father: JAMES RANIERE | | | Mother: VERA OSCHYPKO | | |
| Stature | 1.67 | Type of hair: | Wavy with gray hair | Forehead | Wide |
| Eyebrows | Thick | Mustache: | Yes, with gray hair | Eye color: | Blue |
| Nose | Big | Complexion | Regular | Mouth | Medium |
| Lips: | Thin | Particular marks: | None | | |

On consideration of the fact that return to his country may occasion a risk to his person, he will be provided with more information regarding the process of applying for refugee status. From today or in the event that he should have knowledge of some risk, he shall have 30 days to start the corresponding filing.

He also has the right to establish communication with his accredited consular representation in Mexico, which is the same as that which will be established through ordinary means.

Observations:

Fingerprints:

**Right Hand**

| | | | | |
|---|---|---|---|---|
| | | | | |
| Thumb | Index | Middle | Ring | Little finger |

**Left Hand**

| | | | | |
|---|---|---|---|---|
| | | | | |
| Thumb | Index | Middle | Ring | Little finger |

KEITH ALAN RANIERE

[Stamp: Mar 26, 18 S, Mexico]

Ministry of the Interior



[Seal: The United Mexican States]

Ministry of the Interior
National Migration
Institute

General Directorate of Migration Control
and Verification
Directorate of Migration Stations
Federal District of Nayarit
Event number: 0000000030641

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

INVENTORY OF BELONGINGS OR ASSETS

| INTAKE CARD FOR FOREINGER | | |
|---|---|---|
| **General Information** | | |

| | Name: KEITH ALAN RANIERE | |
|---|---|---|
| | Nationality: United States of America | Foreigner Number 0000000033801 |
| | Sex: Man | Date of Intake 03/25/2018 |
| | Date of Birth: 08/26/1960 | Age: 57 years | Identity document: Birth Certificate |

| Description of Belongings | | | |
|---|---|---|---|
| Baggage | Quantity | Color | Observations |
| Suitcase | ---- | ---- | ---- |
| Backpack | ---- | ---- | ---- |
| Handbag | ---- | ---- | ---- |
| Plastic Bag | ---- | ---- | ---- |

| Electronic Devices | Quantity | Brand | Serial Numbers |
|---|---|---|---|
| Cell phone | ---- | ---- | ---- |
| MP3/Radio Player | ---- | ---- | ---- |

| Cash | |
|---|---|
| Amount: ---- | Type of currency: ---- |

| Jewelry | |
|---|---|
| Metal: ---- | Description: ---- |

| Documentation and/or other objects |
|---|
| ---- |
| [Stamp: Mar 26, 18 S Mexico] |
| ---- |

| [Signature: illegible] | [                    ] |
|---|---|
| Name and signature of Migration Authority receiving the above | Name and signature of the foreign Person |

010

**Rights of those Domiciled in Migration Stations**

Under the terms of articles 107, 108, 109, 110, and 111 of the Migration Law; 226, 227, 228, 229, 230, 232, 233, 234, 235, 236, 237, and 238 of its regulations, and 9, 12, 18, 20, 22, 24, and 25 of the Agreement pursuant to which the Regulations for the Functioning of Migration Stations and Provisional Stays of the National Migration Institute are issued, which was published in the Official Gazette of the Federation on November 8, 2012, those foreign persons that are housed in Migration Stations and Provisional Stays, of the National Migration Institute, due to not being able to verify their legal residence in the country have the following:

**RIGHTS:**

1. To receive humane treatment and treatment that is respectful of human rights from Public Servants that work in this migration station of the National Migration Institute.

2. To know about his migration status and the reason for his presence.

3. Receive his rights and obligations in writing, as well as instances when he may file complaints and grievances;

4. To receive medical and psychological care, as well as legal counsel, during entry and during his presence and stay;

5. To be notified in regards to the migration procedure, in regards to his rights to request recognition of his condition of being a refugee or the determination of statelessness; of his right to regularize his residency under the terms of the Migration Law and its Regulations, where appropriate, and of the possibility of voluntarily requesting assisted return to his country of origin, as well as the right of filing an appeal against resolutions of the Institute;

6. That information in regards to him being present be provided to his consular representation, if he opts for this. In the case that he wishes to receive protection from his consular representation, he will be facilitated with means of communication with the aforementioned as soon as possible;

7. That the process be verified by a competent authority and that he has the right to receive legal counsel, offer proofs, and to make please in regards to what is appropriate to his interests, as well as having access to evidence from the migration administrative file;

8. That the administrative act that is drawn up by the migration authority in regards to the facts that are imputed to him, be carried out in the presence of two witnesses and that therein his right to offer evidence be indicated, and to claim whatever is in his best interest, as well as to be assisted by a representative or a person he is confident in, and where appropriate, that he be provided with a translator or an interpreter for the execution of the formality;

9. To have a translator or interpreter to facilitate communication, in the even that he does not understand or speak Spanish;

10. To communicate via telephone with the person who he asks for at the time which he is placed at the disposal of the migration authority. Subsequent communications are to be carried out during times established for these ends by the Migration Station;

11. To know the location of the migration station where he is present and housed, and the applicable rules thereof and services that he will have access to;

12. That an inventory be made of the belongings he brings with him, as well as them being deposited for him, safeguarded, in the area established for him, and that they be returned on his release from the migration station;

13. To not be discriminated against by authorities due to his ethnic or national origin, sex, gender, age, disability, social condition or economic condition, health status, pregnancy, language, religion, opinions, sexual preferences, civil status, or any other circumstance that has the object of impeding or annulling the recognition or the exercise of his rights and real equality of opportunities of individuals;

14. To file charges before a competent authority during his stay or transit through national territory in the event that he has been the victim or the witness to any crime, so that he may be provided with the support that are appropriate thereto;

15. To receive dignified space during his stay, three meals per day, and basic utensils of personal hygiene;

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

[Stamp: Mar 26, 18 S Mexico]

16. To be visited by his spouse or domestic partner, family members, legal representatives, Consular Representative, competent authorities, non-governmental representatives, religious ministers that are accredited under the terms of the Migration Law and other related provisions, so long as he so expressly authorizes these.

17. To participate in recreational, educational, and cultural activities that are organized within the facilities;

18. That the Migration Stations have separate areas of residence for women and men, with a guarantee to the right of preservation of the family unit at all times, except in the cases where separation is considered appropriate in light of the superior interest of a child or adolescent;

19. That Migration stations and Provisional Stays have separate areas for children and adolescent migrants that are not accompanied, so that they may be accommodated and that they are directed to institutions where they are provided with adequate care;

20. To deposit his complaints or suggestions in mailboxes that are accessible, visible, and that have pens and other corresponding forms and;

21. To make requests of the migration authority in regards to whatever is in his best interest.

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

_____
Name and signature of interested party of having received and understood the information

_____
Date

[Stamp: Mar 26, 18 S, Mexico]

**Ministry of the Interior**



[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

Ministry of the Interior
National Migration
Institute

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

**APPEARANCE**

In the city of Nuevo Vallarta, Bahía de Banderas, Nayarit, it being 18:30 of the 25th of March of the year two thousand and eighteen, the Sub-Director of Migration Control and Verification, of the Federal District of the National Migration Institute in the State of Nayarit, Mr. Uriel Jiménez Martínez, who legally acts in the presence of two witnesses that do sign hereunder, and who attest hereto. ----

--------------------------------------------------------------------------------------------------------------------------------------------------------------

Pursuant to arts. 1, 11, 14, and 16 of the Political Constitution of the United Mexican States; 26, and 27 section XXXIII of the Organic Law of Federal Public Administration; 2, Letter C, Section III, 69, 70, 77, Section II, subparagraph C, 92, Section II of the Interior Regulations of the Ministry of the Interior; 1, 2, 5, 7, 11, 12, 13, sections I and III, 16, 19, 20, sections III and VII, 66, 67, 68, 70, 77, 79, 80, 99, 100 and 111 of the Migration Law; 1, 2, 55, 194, 222, 232, and 233 of its regulations; 1, 3, 9, 12, 13, 16, Sections I, III, IV, V, VI, IX, and X, 18, 19, 28, 29, 30, 32, 33, 35, Section I, 36, 38, 39, 44, and 49 of the Federal Law of Administrative Procedure; 1, 9, 11, 19 section XVII of the Agreement Pursuant to which Powers are Delegated to Authorize Migratory Procedures and Executing different powers under the Migration Law and its regulations, for those public servants who are assigned to federal districts, published in the Official Gazette of the Federation on November 13th, 2012; 18 of the agreement pursuant to which the headquarters and territorial areas of the federal districts and sub-districts were determined, as well as those of local districts and sub-districts of the National Migration Institute, which was published in the Official Gazette of the Federation on April 4, 2013, and 14 Section II of the Agreement pursuant to which regulations were issued for the functioning of Migration stations and provisional residences of the National Migration Institute, published in the Official Gazette of the Federation on November 8, 2012.----

----**PLACES ON THE RECORD**----

That at the aforementioned time on the day of the date in question, a person appeared, due to **not being able to verify his regular residency in the country** before the migration authority, a person who responds to the name **KEITH ALAN RANIERE**, of the United States Nationality, for the ends of being present so that he might be available for administrative appearance; and as a result was put under oath under the terms of article 247 section I of the Federal Penal Code, so that he would proceed truthfully in this present procedure where he was going to participate and he was warned in regards to the penalties that are incurred by those who make false declarations and he was also advised of the contents of the article that was mentioned previous, the referenced foreign person, states that he will, under oath, be truthful in this appearance, and according to his general data stated that his name was **KEITH ALAN RANIERE**, and as of the United States Nationality, that he was 57 years old, with a date of birth of August 26, 1960, single civil status, with university education, an instructor by occupation, a native person of Brooklyn, New York; and did not know the addresses where he was inhabiting, one of those being in Guadalajara, Jalisco, and the other in Chacala, Compostela, Nayarit, son of Mr. James Raniere of the United States nationality, and Ms. Vera Oschypko, of the United States nationality, and in regards to whom, pursuant to article 36, section I subsection b) of the Vienna Convention on Consular Relations of 1963 and in relation to articles 13, 69, 70, 106 and 109 of the Migration Law, 222, and 226 of its Regulations; and 15, 17, 18, and 24 of the Agreement pursuant to which regulations are issued for the functioning of migration stations and provisional stays of the National Migration Institute, published in the official gazette of the federation, on November 8, 2012, he was informed that he has the right to communicate with his consular representation and to be assisted or represented by a person of trust; furthermore he was notified that he has the right to request recognition of refugee status or a determination of statelessness; of the right to regularize his residency under the terms of articles 132, 133, and 134 of the Migration Law, and to request assisted return to his country of origin, to file an appeal against decisions that are issued by this Institute, to offer evidence and to make pleas that are advisable to him, and in regards to this he states that it is NOT his desire to present evidence and pleas; it is mentioned that the foreign person does not understand and does not speak the Spanish language, and as a result if it is required he will be designated a practicing translator so that he may be assisted during this proceeding, and as a result the foreign person:-----

----**DECLARES**----

That my name is Keith Alan Raniere, I entered Mexico on approximately 10 November 2017 by airplane, and I believe that it was through American Airlines, to Monterrey, Nuevo Leon, where I remained for a few months, with Ms. Mariana Fernandez Aguilar, who is the mother of my son, I do not remember the name of the address, in that city, thereafter I moved to the south, and I have been vacationing in Guadalajara, Jalisco, and in Chacala in Compostela, Nayarit, moving from one place to another intermittently, however I refuse to provide information regarding

013


| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

the specific addresses. I am aware that in the United States I have been accused of various crimes, and I fear that in cooperating with the Mexican migration authority I may have problems, and from this time I refuse to cooperate in any way. I do not have any identification documents at the moment, or any migration document; nor do I have a cellular phone, since these are in my house, which I do not remember the address of. I do not wish to receive the food that they have offered me in this place, and I refuse to submit myself to medical examinations, signing, responding to questions, or cooperating in nay way. Furthermore, I wish to declare that at all times this migration authority has respected my human rights and individual guarantees and that I have not been the object of bad physical or verbal treatment. That is all that I wish to declare.---

---- In light of the foregoing, the following has been agreed to: -----

FIRST.- The statements of the foreign person KEITH ALAN RANIERE are deemed to have been made, the same which will be taken into account at the time which this administrative migration proceeding is resolved, which has been filed against him.----

SECOND.- Under the terms of Article 109, Section V, of the Migration Law and 32 of the Federal Law of Administrative Proceedings, the foreign person named **KEITH ALAN RANIERE** has been given a term of up to ten working days for presenting evidence in his favor.----

THIRD.- The fulfillment of the migration administrative proceeding that has been filed against the foreigner who is named **KEITH ALAN RANIERE** shall proceed.----

There being nothing further to record this present appearance is closed at 20:07 o'clock on the date it was initiated, with the participating individuals who have signed at the food and on the margins thereof. ----

<div align="center">

| Migration Authority | Informant |
|---|---|
| [Signature: Illegible] | _____ |
| Mr. Uriel Jiménez Martínez | Keith Alan Raniere |
| Attending Witness | Attending Witness |
| [Signature: Illegible] | [Signature: Illegible] |
| Felipe de Jesús López Lizárraga | Juan Carlos Ruíz Bernal |

[Stamp: Mar 26, 18 S, Mexico]

</div>

**Ministry of the Interior**



[Seal: The United Mexican States]

Ministry of the Interior
National Migration
Institute

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

**DEPORTATION DECISION**

In the city of Nuevo Vallarta, Bahía de Banderas, Nayarit, it being 18:30 of the **25th of March of the year 2018**, in view of the proofs used in order to resolve the migration status of the foreign person **KEITH ALAN RANIERE**, of the nationality of the **United States of America**, the following decision has been issued in regard to the subsequent matter. ----

----FINDINGS OF FACT----

1. That on the date of **MARCH 25, 2018** an official letter regarding a person to be made available that was numbered INM/DFN/DCM/0371/2018, that was signed by Mr. FELIPE DE JESUS LOPEZ LIZARRAGA and FRANCISCO JOSE ANTIONIO GONZALEZ ARZATE, in light of the individual not having a migration document that verified his legal stay in the country, a person who stated he was named **KEITH ALAN RANIERE** of the nationality of **the United States of America**.

2. On the same date, this authority also issued an Initiation Agreement, commencing the Migration Administrative Procedure that has the number E.A./1s.9/NAY/NAY/005/KEITH ALAN RANIERE/25-03-2018, as is indicated in the guidelines under which Public Servants of the National Migration Institute are instructed, in regards to the migration administrative procedure, the same which is attached to the present actions.

3. On that same date, the foreign person whose name is **KEITH ALAN RANIERE** of the nationality of the **United States of America,** in exercise of his right to a hearing, appeared for an administrative proceeding, before this migration authority of the National Migration Institute in Nayarit, which is attached to these proceedings.

4. On that same date, that migration authority, decreed an Agreement of Appearance to the foreign person **KEITH ALAN RANIERE** of the nationality of the **United States of America**, who shall be provisionally domiciled in the department of the Area of Control and Verification in the office of the National Migration Institute in the city of Tepic, Nayarit, the same that is governed by the agreement under which the regulations are issued for the functioning of migration stations and provisional stays of the National Migration Institute published in the Official Gazette of the Federation, on the date of November 8, 2012, until the resolution of the Migration Administrative Provision, on Mexican territory.

5. On the date of **March 25, 2018** by means of official letter INM/DFN/SCVM/0368/2018, the appearance and time in the Federal District of Nayarit of the foreign person **KEITH ALAN RANIERE** of the nationality of the **United States of America** was served as notification to the Diplomatic Representative of the Honorable Consulate of the UNITED STATES OF AMERICA, which is documentary evidence that is attached to these proceedings.

6.- On the date of **March 25, 2018** the certificate no. 156-60-336171 was received, by means of which the nationality and identity as a national of the **United States of America** was verified for the foreigner **KEITH ALAN RANIERE**, documentary evidence which is attached to these proceedings.

7.- On the date of **March 25, 2018**, the foreigner named **KEITH ALAN RANIERE**, of the nationality of the **United States of America**, he stated that it is not his wish to make use of the time period of days that were provided for presenting evidence and making pleas, in regards to the Migration Administrative Proceeding that has been initiated for him regarding the resolution of his migration status in the country, documentary evidence which is attached to these proceedings.

----WHEREAS----

1. Whereas based on arts. 1, 11, 14, and 16 of the Political Constitution of the United Mexican States; articles 26, and 27 section XXXIII of the Organic Law of Federal Public Administration; 1, 2, subparagraph C, Section III, 77 section II, subparagraph C, 92, and 132 of the Interior Regulations of the Ministry of the Interior; 1, 2, 3, section XVII, 7, 12, 14, 16, 20, 66, 67, 70, 77, and 109, section V, 111, 115, 118, 119, 121, 122, 123, 143, and 144, section I and IV, of the Migration Law; 1, 2, 55, 58, 193, 194, 205, 242, 243, and 244, of the Regulations of the Migration Law, Published in the Official Gazette of the Federation, dated September 28, 2012, which takes effect from the date of November 9, 2012; 1,3, 9, 12, 13, 16, sections 1, 111, IV, V, VI, IX, and X, 18, 19, 28, 29, 30, 32, 33, 35, 36, 38, 39, 49, 53, and 54, of the Federal Law of Administrative Procedures; 1 and 2, section C) section 111, 69, 70, 77, 84, 92, and other applicable sections of the Interior Regulations of the Secretary of the Interior, published in the Official Gazette of the Federation on the date of Tuesday April 02, 2013; articles 1, 2, and 3 section 18, under the agreement pursuant to which there were issued Regulations for the functioning of Migration Stations and Provisional Stays of the National Migration Institute, published in the Official Gazette of the Federation on November 8, 2012; articles 1, 11, and 19, section XVII of the AGREEMENT, pursuant to which there were delegated powers to authorize migration proceedings and to exercise diverse powers that were provided for under the Migration Law and its Regulations, to public servants attached to Federal Districts of the National Migration Institute, published in the Official Gazette of the Federation on Tuesday November 13, 2012, this authority [stamp: MEXICO]

**Ministry of the Interior**



[Seal: The United Mexican States]

Ministry of the Interior
National Migration
Institute

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

II. That the nationality and identity of the foreigner **KEITH ALAN RANIERE** was duly verified by means of certificate no. 156-60-336171, by means of which his identity and Nationality were verified as being from the **United States of America.**

III. That pursuant to an analysis of records that compose the record giving rise to the legal action, it was inferred that the foreigner **KEITH ALAN RANIERE** with the nationality of the **United States of America**, was behaving in such a matter so as to fall under the matter of section IV of article 144 of the Migration Law, which copied verbatim states:

**"Article 144 of the Migration Law.-** An appearing foreign person subject to the following shall be deported from national territory:

IV. Such person is subject to a penal proceeding or having been condemned for a serious crime pursuant to national laws in penal matters or provisions contained in international treaties and agreements to which the Mexican state is a party, or in regards to those individuals who due to their histories in Mexico or in foreign countries may compromise national security or public security;

The foregoing is duly verified by means of an appearance that has been rendered by the foreign person, before the SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION OF THE NMI IN NAYARIT, Mr. Uriel Jimenez Martinez, where once under oath (a) under the terms of article 247 section I of the Federal Penal Code, in the relevant part, he **STATED:** "That my name is **Keith Alan Raniere**, I entered Mexico approximately on November 10, 2017, by airplane and I believe that it was through American Airlines, to Monterrey, Nuevo Leon, where I remained for a few months, with Ms. Mariana Fernandez Aguilar, who is the mother of my son, I do not remember the name of the address, in that city, thereafter I moved to the south, and I have been vacationing in Guadalajara, Jalisco, and in Chacala in Compostela, Nayarit, moving from one place to another intermittently, however I refuse to provide information regarding the specific addresses. I am aware that in the United States I have been accused of various crimes, and I fear that in cooperating with the Mexican migration authority I may have problems, and from this time I refuse to cooperate in any way. I do not have any identification documents at the moment, or any migration document; nor do I have a cellular phone, since these are in my house, which I do not remember the address of. I do not wish to receive the food that they have offered me in this place, and I refuse to submit myself to medical examinations, signing, responding to questions, or cooperating in any way." (SIC). Sufficient evidentiary value has been given to this statement under the terms of articles 199 and 200 of the Federal Civil Procedure Code of Additional Applicable Law in regards to Migration matters, due to the presence therein of special circumstances that are established under article 199 of the legal system under consideration, which states:

**"Article 199.-** An express confession shall be conclusive evidence when it the following circumstances are all relevant thereto:

I. When the statement is made by a person who has the capacity to execute agreements;

II. That it is made with full understanding, with no coercion or violence, and

III. That it is made on the person's own volition, and where appropriate, that of the representative or of the assignor, and in regards to business." This is a behavior that pursuant to the relevant law is punished with deportation from national territory, as well as restrictions on entry into the same, pursuant to the next to left paragraph of article 144 of the Migration Law and 244 of its Regulations.----

IV. Furthermore it may be noted that this authority is attached to the principle of legality, and due process, which are contained in the Political Constitution of the United States (SIC), which is based on the unlimited respect of human rights of migrants, whatever their place of origin, nationality, gender, ethnicity, or migration situation may be, and the foreign person **KEITH ALAN RANIERE** of the **UNITED STATES** nationality during his stay in the Federal District of Nayarit, was provided with a humane dwelling for his stay, as well as maintenance and medical services, safeguarding his human rights at all times.

V.- Pursuant to the foregoing and based on arts. 1, 11, and 19, section XVII and XXII of the AGREEMENT, pursuant to which powers are to be delegated to authorize migration procedures and to execute different powers that are provided for under the Migration Law and its Regulations for Public Servants that are attached to Federal Districts of the National Migration Institute, which was published in the Official Gazette of the Federation on Tuesday November 13, 2012, this authority, does resolve and [text ends] [stamp: Mar 18 S, Mexico]



**Ministry of the Interior**

[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

Ministry of the Interior
National Migration
Institute

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

—IT IS RESOLVED—

**FIRST.-** That the deportation of the person KEITH ALAN RANIERE of the nationality of the **UNITED STATES OF AMERICA** is decided, due to his conduct meeting the scenario that is detailed under article 144 section IV of the Migration Law, and Article 244 section IV of the Regulations of the Migration law.

**SECOND.-** That the individual is warned in regards to a prohibition being placed in regards to his subsequent future presence within the National Territory, which is based on article 144 section IV and the last paragraph of the Migration law and article 244 section IV of its Regulations, pursuant to which a determination of *Final Deportation* is made, starting from notification being served in regards to this resolution, unless an agreement of re-admission is filed under the terms of article 18, section VII of the same legal system.

**THIRD.-** Assets are to be provided to the foreign person **KEITH ALAN RANIERE**, of the **United States** nationality, in the case that there are any, after acknowledgement with a receipt that is recorded in this file.

**FOUR.-** Notification is to be served to the person in charge of the shift of the Federal District of Nayarit, the place where he is currently staying, in regards to this decision, for the execution of the Deportation to his country of origin, in regards to the foreign person (a) KEITH ALAN RANIERE of the nationality of the **United States of America**, with the agreement of appearance that was decided on by this migration authority being rendered null and voice.

**FIVE.-** Pursuant to number 2, subparagraph B) of Memorandum INM/CCVM/01180/2008, notification is to be served to the National Alerts Center, so that by means of their legal representatives a corresponding record of migration control be issued, in the name of the foreign person mentioned previously, with reference to the content of the second resolution of this resolution.

**SIX.-** Notification is to be served to the foreign person who is involved in this determination so that all legal effects relevant thereto may take effect and inform him that in regards and against this resolution a review appeal may proceed under the Federal Administrative Proceeding Law, which may be filed before the competent authority in a time period of fifteen days from the day following that on which the effects of the notification of this resolution have begun, pursuant to article 83 and article 85 of the Federal Administrative Procedure Law.

**SEVEN.-** This file is to be sent to the archive for storage and safekeeping.-----

-----IT IS ORDERED THAT THIS BE FULFILLED----

It is so resolved and signed, the SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION OF THE NMI IN NAYARIT, attached to the Federal District of the National Migration Institute, in the State of Nayarit, Mr. Uriel Jimenez, Martinez, who legally acts in the presence of two witnesses that sign at the bottom hereof in agreement.

---BE IT SO CERTIFIED---

Migration Authority
[Signature: Illegible]
Mr. Uriel Jimenez Martinez
Present Witness
[Signature: Illegible]
Mr. Felipe de Jesus Lopez Lizarraga

[Stamp: Mar 26, 18 S, Mexico]

Declaring Party
[_____]
Keith Alan Raniere
Present Witness
[Signature: Illegible]
Fancisco Jose Antonio Gonzales Arzate

**Ministry of the Interior**



[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

Ministry of the Interior
National Migration
Institute

**NOTIFICATION
OF
RESOLUTION**

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

In the city of Nuevo Vallarta, Bahía de Banderas, Nayarit, it being 20:38 o'clock on **March 25, 2018,** the SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION OF THE NMI IN NAYARIT, who has duly identified himself before the foreigner (a) **KEITH ALAN RANIERE** of the nationality of the **United States of America**, compliance was executed in regards to point FOUR of the resolution of that same date, which was issued by the SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION OF THE NMI IN NAYARIT, attached to the Federal District of the National Migration Institute in the state of Nayarit, Mr. Uriel Jimenez Martinez.

And as a result of the foregoing, please be advised that, in regards to the resolution in question, reads as follows in regards to its points of resolution:

"**FIRST.-** The foreigner (A) KEITH ALAN RANIERE of the nationality of the UNITED STATES OF AMERICA shall be subject <u>to deportation, under the terms of article 144 Section IV of the Migration law, article 244 section IV of the Regulations of the Migration Law.</u>

<u>**SECOND.-**</u> Assets are to be delivered to the foreign person (a) **KEITH ALAN RANIERE**, of the **United States** nationality, in the case that there are any, after acknowledgement with a receipt that is recorded in this file.

<u>**THIRD.-**</u> The shift person in charge of the Federal District of Nayarit is to be notified, a place where he is currently lodged, in regards to this determination for the executing of deportation to his country of origin, of the foreigner (a) **KEITH ALAN RANIERE** of the nationality of the **UNITED STATES OF AMERICA**, which renders the agreement of appearance that was determined by this migration authority null and void.

<u>**FOUR.-**</u> Provide notification to the foreigner in regards to this determination so that all legal effects may arise, and advise him that there may be a review appeal filed against this resolution as provided for under the Federal Administrative Procedure Law, with this appeal being filed before the competent authority within a time period of fifteen days from the day after that on which the effects of the notification of this resolution begin, an appeal that will be resolved in a time period not greater than three months counted from the start of the date when the appeal is filed, pursuant to article 83 of the Federal Administrative Procedure Law.

<u>**FIVE.-**</u> This file is to be sent to the archive for storage and safekeeping."

The above is for your knowledge and appropriate legal effects.

After the foreigner was informed of the contents of the aforementioned resolution, he signs in agreement at the end of this document.

<table>
<tr><td align="center">**Migration Authority**<br>[Signature: Illegible]<br>**Uriel Jimenez Martinez**</td><td align="center">**Notified**<br>[          ]<br>**KEITH ALAN RANIERE**</td></tr>
</table>

[Stamp: 26 MAR 18 S, Mexico]

**Ministry of the Interior**



[Seal: The United Mexican States]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

Ministry of the Interior
National Migration
Institute

| Classification | Reserved |
|---|---|
| Reserved Time | 5 years, art. 101 general law of transparency and access to public information |
| Administrative Unit | NAYARIT FEDERAL DISTRICT |
| Date of Classification | MARCH 25, 2018 |
| Legal Basis | Art 78 to the Migration law, art. 113 section V, VI, and XI of the General Transparency and Access to Public Information Law |
| Holder of the Administrative and Signature | SUBDIRECTORATE OF MIGRATION CONTROL AND VERIFICATION |

**RECORD OF FACTS**

In the city of Nuevo Vallarta, Bahía de Banderas, Nayarit, it being 20:38 o'clock on **March 25, 2018,** the SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION OF THE NMI IN NAYARIT, who duly identified himself before the foreigner (a) **KEITH ALAN RANIERE** of the nationality of the **United States of America,** compliance was executed in regards to point FOUR of the resolution of that same date, which was issued by the SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION OF THE NMI IN NAYARIT, attached to the Federal District of the National Migration Institute in the state of Nayarit, Mr. Uriel Jimenez Martinez.

On the date of March 25, 2018, this migration authority issued an Initiation Agreement, opening an Administrative Migration Proceeding with the number E.A./1s.9/NAY/NAY/005/KEITH ALAN RANIERE/ 25-03-2018, as indicated in the guidelines under which Public Servants of the National Migration Institute are instructed in regards to Administrative Migration Proceedings.

On the same date, the foreigner (a) **KEITH ALAN RANIERE** of the nationality of the **United States of America,** in exercise of his right to a hearing, he made his administrative appearance, before this migration authority of the National Migration Institute, in Nayarit, which is added to these proceedings.

In the selfsame, he expressly stated his disagreement in regards to cooperating in regards to information, as well as in regards to not signing due to being afraid due to his record in the United States of America.

Information about his attendance was provided to the offices of the Federal District in Nayarit in order to fulfill the migration administrative procedure, wherein he was advised of his rights as a person who was made a residing person there.

He was notified in regards to the deportation resolution, which was taken due to his compromising of national security due to his history in foreign countries, however he refused to sign for the proceedings corresponding to his administrative migration procedure.

Pursuant to the foregoing, it was placed on the record that the foreigner **KEITH ALAN RANIERE** of the nationality of the **UNITED STATES OF AMERICA,** was provided with medical assistance, food, a telephone call, and accurate information in regards to the migration status he was involved in, however he refused to sign the corresponding proceedings.

I place on the record and provide my signature, the SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION OF THE NMI IN NAYARIT, attached to the Federal District of the National Migration Institute in the State of Nayarit, Mr. Uriel Jiménez Martínez, who legally acts in the presence of two witnesses that do sign hereunder, and who attest hereto.

Migration Authority
[Signature: Illegible]
Mr. Uriel Jimenez Martinez
Present Witness
[Signature: Illegible]
Mr. Felipe de Jesús López Lizárraga

[Stamp: Mar 26, 18 S, Mexico]

Declaring Party

Keith Alan Raniere
Present Witness
[Signature: Illegible]
Francisco José Antonio Gonzales Arzate

[Page 21 attached as separate document – horizontal orientation]

[Page 22 attached as separate document – horizontal orientation]

DIVISION OF RECORDS
DEPARTMENT OF HEALTH
BOROUGH OF BROOKLYN

# Certificate of Birth

FILED

1960 AUG 30 AM 11:00

Certificate No. 156-60-336171

| | | | |
|---|---|---|---|
| 1. Full name of child (print) | Keith | Alan | Reniere |
| | First name | Middle name | Last name |

| | | | | |
|---|---|---|---|---|
| 2. Sex | Male | 3. Number of children born of this pregnancy 1 | 5. Date of child's birth August 26, 1960 | 1a. Hour 4:40 A.M. |
| | | 4. If more than one, number of this child in order of birth | | |

6. PLACE OF BIRTH

(a) NEW YORK CITY: (b) Borough Brooklyn

(c) Name of Hospital or Institution Maimonides Hospital of Brooklyn

(d) If not in hospital, street address No.

7. USUAL RESIDENCE OF MOTHER:

(a) State New York

(b) Co. Kings   (c) City or Town Brooklyn

(d) No. 225 Ave., T

| FATHER | | MOTHER | |
|---|---|---|---|
| 8. Full name James Reniere | | 12. Full maiden name Vera Oschypko | |
| 9. Color or race White | 10. Age at time of this birth 28 (years) | 14. Color or race White | 15. Age at time of this birth 29 (years) |
| 11. Birthplace (city or place and State, or country) U.S.A. | | 16. Birthplace (city or place and State, or country) U.S.A. | |
| 12. Usual Occupation Artist | | 17a. Total number of children born ALIVE PREVIOUS to this pregnancy 0 | |
| 13. Kind of business or industry in which work was done Advertising Agency | | 17b. Number of children born PREVIOUS to this pregnancy and NOW LIVING 0 | |

I hereby certify that this child was born alive at the hour and on the date stated above, and that all the facts stated on this certificate and report of birth are true to the best of my knowledge, information and belief.

Date of Report _____ 19___

(Signed) Alex Mintzer    M.D.

Name of Signer ALEX MINTZER M.D.

Address 2020 CORTELYOU RD

| | |
|---|---|
| Given name added from a supplemental report. | (Date of) |
| | Borough Registrar |

Print here the mailing address of mother. Copy of this certificate will be mailed to her when it is filed with the Department of Health.

Name Mrs. Vera Reniere

Address 225 Ave., T    Apt.

City Brooklyn    State N.Y.

BUREAU OF RECORDS AND STATISTICS    DEPARTMENT OF HEALTH    THE CITY OF NEW YORK



Steven P. Schwartz, Ph.D. City Registrar



The City of New York

February 12, 2018

R 003890798

022

# UNITED STATES DISTRICT COURT

for the

Eastern District of New York

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| KEITH RANIERE, aka "The Vanguard," | ) | Case No. |
| | ) | [illegible] |
| | ) | |
| *Defendant* | ) | |

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

## ARREST WARRANT

To: Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*  KEITH RANIERE

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment  ☐ Superseding Indictment  ☐ Information  ☐ Superseding Information  ☑ Complaint
☐ Probation Violation Petition  ☐ Supervised Release Violation Petition  ☐ Violation Notice  ☐ Order of the Court

This offense is briefly described as follows:

Sex trafficking, conspiracy to commit sex trafficking and forced labor

Date: 02/14/2018

*Lois Bloom*
*Issuing officer's signature*

Lois Bloom  USMJ
*Printed name and title*

City and State:  Brooklyn, New York

## Return

| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
|---|
| at *(city and state)* _____ |
| Date: _____ |
| *Arresting officer's signature* |
| *Printed name and title* |

[Stamp: Mar 26, 118 S, MEXICO]

**This second page contains personal identifiers provided for law-enforcement use only and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender

Known aliases:

Last known residence

Previous addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers

Date of birth:
Place of birth:

Social Security number:

| | Weight: |
| Height: | Race: |
| Sex: | Eyes: |

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Close family, friends, and other associates *(name, relationship, address, phone numbers)*:

Phone number

Complete description of auto:

Medical service agency and address:

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

[Seal: United Mexican States, Ministry
of the Interior, National Migrations
Institute, Residency Nayarit]

[Stamp: Mar 26, 118 S, MEXICO]

[Page 26 attached as separate document – horizontal orientation]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute]



[Stamp: Mar 26, 118 S, MEXICO]

s

KEITH A. RANIERE

DOB 8/26/1960

HEIGHT: 5'6"

EYE COLOR: BLUE

PASSPORT # 487874523





026

RANIERE traveled to Monterrey, Mexico from the United States on 11/10/2017. RANIERE is believed to be living with MARIANNA FERNANDEZ AGUILAR, the mother of RANIERE's child.



[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute]

MARIANNA FERNANDEZ AGUILAR
DOB 11/15/1983
PASSPORT # G13453515

SUSPECTED RESIDENCE:
612 La Jolla 66225 San Pedro Garza Garcia, N.L. Mexico
RANIERE is known to walk several miles each day at odd times (generally in the late evening or early morning hours). Below is a photograph allegedly taken inside this gated community in December 2017. RANIERE and FERNANDEZ appear in the photograph.



[Stamp: Mar 26, 118 S, MEXICO]

## SUSPECTED RESIDENCE:
### 612 La Jolla 66225 San Pedro Garza Garcia, N.L. Mexico
### Residence is in a gated community.



[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute]

[Stamp: Mar 26, 118 S, MEXICO]

## PLACE OF WORK:

Executive Success Programs Center in Monterrey - Via Savotino 105, Fuentes del Valle, 66220 San Pedro Garza Garcia, N.L., Mexico

would be seen to frequent this location regularly. Still, the individuals at this location would likely know RANIERE's whereabouts.



[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute]



[Stamp: Mar 26, 118 S, MEXICO]

## ALSO KNOWN TO FREQUENT:

### RESTAURANT

Taller Veganico, Plutarco Elias Calles 420, Barrio Tampiquito, Tampiquito, 66240 San Pedro Garza Garcia, N.L., Mexico.

**Ministry of the Interior**



[Seal: The United Mexican States]

Ministry of the Interior
National Migration
Institute

Migration Management

Sunday 25, March [Cut off]

| Procedures | SIPIM | Visits and Reviews | Migration Stations | People | Incidents | My Account |
|---|---|---|---|---|---|---|

Search for people

Surnames: RANIERE                    First names: KEITH ALAN
Change to advanced search

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute]

**RESULTS**
Personal Information

Surnames: RANIERE
First names: KEITH ALAN
Nationality (Country): United States of America
Sex: Man
Date of birth: 08/26/1960

**ENTRIES**

| Date and Time | Type of Flow | Trip | Identification Document | Type | Migration Status | Authorized document | [cut off] |
|---|---|---|---|---|---|---|---|
| [Illegible] | Land | Passenger Bus | Type: Passport Number: 487874523 Country of issuance: USA | Type: FMM Number: 01113088535 | Type: Visitor Characteristics: not applied Modality: no permission for paid work | Not applicable | [cut off] |
| [Illegible] | Air | Delta Airlines [illegible] | Type: Passport Number: 487874523 Country of issuance: USA | Type: FMM Number: 01116026002 | Type: Visitor Characteristics: not applied Modality: no permission for paid work | Not applicable | [cut off] |

2013 NATIONAL MIGRATION INSTITUTE

[Stamp: Mar 26, 118
S, MEXICO]

030

Ministry of the
Interior



[Seal: The United Mexican
States]

Ministry of the Interior
National Migration
Institute

General Directorate of Migration Control
and Verification
Directorate of Migration Stations
Event number: 0000000030641

**RESOLUTION FOR FOREIGN PERSON**
**FEDERAL DISTRICT IN NAYARIT**

| General Information | |
|---|---|
| **Date of entry: 03/25/2018** | |
| **Number of foreigner: 0000000033801** | |
| **Nationality: United States of America** | |
| **Name of foreigner: KEITH ALAN RANIERE** | |
| **Date of Birth: 08/26/1960** | |
| **Age: 57 Years** | |
| **Sex: Male** | |
| **Proceeding** | |
| **Date of initiation agreement: 03/25/2018** | |
| **Appearance** | |
| **Date of appearance: 03/25/2018** | |
| **Resolution** | |
| **Date of resolution: 03/26/2018** | |
| **Reason for departure: Deportation** | |

**[Signature: Illegible]**

[Seal: United
Mexican States,
Ministry of the
Interior, National
Migrations
Institute]

_____

**Signature of Migration Authority granting approval**

**031**



[Seal: the United Mexican
States]

**MINISTRY OF THE INTERIOR**
**NATIONAL MIGRATION INSTITUTE**
**FEDERAL DISTRICT**
**IN NAYARIT**
**Official Letter no.:**
INM/DFN/SCVM/0374/2018
**Matter: Official letter of commission for**
**international transfer of foreigner(s)**
Bahía de Banderas, Nayarit
on March 26, 2018

Mr. FRANCISCO JOSE ANTONIO GONZALEZ ARZATE
FEDERAL MIGRATION AGENT "B"
Mr. JUAN CARLOS RUIZ BERNAL
MIGRATION SERVICES OFFICIAL
EMPLOYEES OF THE NMI IN THE STATE OF NAYARIT
BY HAND.

The aforementioned migration employees, who are attached to the Federal District of the National Migration Institute, in the State of Nayarit, on the 26th of March, of this year, are commissioned, so that they may transfer one (01) foreign person, **KEITH ALAN RANIEREL of the Nationality of the United States of America**, who must be handed over to the migration authorities of his country of origin (USA), in order to comply with the deportation resolution, which is based on the fact that he has a history in Mexico that may compromise public security, which is grounded in Art. 144 of the Migration Law, section IV.

In compliance with the granted commission, this must be carried out in strict adherence to law and with absolute respect for human rights. The itinerary to be followed shall be as stated below:
**Puerto Vallarta – Dallas Texas; Monday, March 26, 2018,** American Airlines flight number 396
**Dallas Texas – Puerto Vallarta; Monday, March 26, 2018,** American Airlines flight number 1467
The authorities who under the law have at their command the Federal, Local, or Municipal Public Forces, pursuant to article 96 of the Migration law, shall provide their collaboration to the bearers of this official letter, for compliance with this commission.

[Seal: United
Mexican States,
Ministry of the
Interior, National
Migrations Institute]

Sincerely,

[Signature: Illegible]

Mr. URIEL JIMENEZ MARTINEZ
SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION
OF THE NATIONAL MIGRATION INSTITUTE
IN THE STATE OF NAYARIT

[Stamp: MAR 26 18 S, MEXICO]

032

## Trip on Mar 26, 2018

Locator: **WMOBFG**    Date: Mar 25, 2018

| | |
|---|---|
| Traveler | **KEITH A RANIERE** |
| | DOJEZ |
| | FBI |
| | THIS IS YOUR OFFICIAL RECEIPT FOR TRAVEL PLEASE RETAIN FOR VOUCHERING OR REIMBURSEMENT PURPOSES. |
| Customer Number | 643SR7F |
| Agent | 13 |

NOTE A TMC FEE OF 34.41 WAS BILLED TO YOUR AGENCY.
DO NOT CLAIM THIS AMOUNT ON YOUR TRAVEL
VOUCHER. CLAIM ONLY THE TICKET COST TO YOUR
INDIVIDUAL TRAVEL CARD AS INDICATED BY THE
LAST FOUR DIGITS OF YOUR CREDIT CARD NUMBER.
**********************************************
FEES TOTALING 34.41PP CHARGED IN ADDITION TO TKT PRICE
FEE=USD34.41PP-AIR AGENT INITIATED INTL

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

---

### Monday, March 26, 2018

Confirmation **WMOBFG**



**Flight AMERICAN AIRLINES 396**

| DEPARTURE | ARRIVAL |
|---|---|
| **PTO VALLARTA** | **DALLAS/F.WORTH, TX** |
| 7:06 AM, Mar 26, 2018 | 10:44 AM, Mar 26, 2018 |

| | |
|---|---|
| Status | Confirmed |
| Class | Coach Class - Y |
| Duration | 02:38 (Non-stop) |
| Equipment | Boeing 737-800 |
| Meal Service | Food For Purchase |
| Notes | ARR-TERMINAL D |
| | ONEWORLD |

| Name | Invoice / Ticket / Date | Base | Tax 1 | Tax 2 | Tax 3 | Total |
|---|---|---|---|---|---|---|
| RANIERE KEITH A | 2281255/0017060942051/25MAR18 | USD 1,082.00 | 18.30US | 5.65YC | 87.23XT | 1,193.18 |
| RANIERE K | 2283255/000SFCFRF/25MAR18 | 34.41 | | | | 34.41 |

| | | |
|---|---|---|
| | **Total Amount** | 1,227.59 |

Form of Payment: CAXXXXXXXXXXXXX3237

### GENERAL INFORMATION
*********************************************
*******TO BOOK RESERVATIONS ONLINE PLEASE VISIT*******
****************CWTSATOTRAVEL.COM********************

INTERNATIONAL RESERVATIONS REQUIRE CHECK-IN AT LEAST
3 HOURS PRIOR TO DEPARTURE AND RE-CONFIRMATION WITH
THE AIRLINES AT LEAST 72 HOURS BEFORE YOUR SCHEDULED
RETURN.

VISAS / PASSPORTS MAY BE REQUIRED FOR INTERNATIONAL
TRAVEL. IF YOU DO NOT HAVE ALL NECESSARY DOCUMENTS
THE AIRLINES CAN AND WILL DENY YOUR BOARDING.
FOR DESTINATION VISA/PASSPORT INFORMATION SEE
*** TRAVEL.STATE.GOV/TRAVEL ****

NON-CONTRACT/NON-GOVERNMENT FARES ARE NOT GUARANTEED

UNTIL PURCHASED AND ARE SUBJECT TO CANCELLATION BY
THE AIRLINE WITHOUT NOTIFICATION.
EARLY TICKETING IS RECOMMENDED.

.......................................................
BAGGAGE RESTRICTIONS VARY BY CARRIER AND FLIGHT.

.......................................................
SOME COUNTRIES REQUIRE THE AIRLINES TO COLLECT AIRPORT
DEPARTURE TAX THAT MUST BE PAID IN LOCAL CURRENCY.

.......................................................
CAR RENTALS IN FOREIGN COUNTRIES, INCLUDING CANADA,
DO NOT INCLUDE GOVERNMENT CDW INSURANCE. YOU MUST
PURCHASE THE ADDITIONAL DAMAGE COVERAGE.

.......................................................

.......................................................
FOR INFORMATION ON THE TSA SECURE FLIGHT PROGRAM
PLEASE GO TO WWW.TSA.GOV

.......................................................

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

****** FLY AMERICA ACT JUSTIFICATION STATEMENT ******
THE FLY AMERICA ACT REQUIRES FEDERAL EMPLOYEES AND
OTHERS PERFORMING U.S. GOVERNMENT FINANCED TRAVEL TO
USE U.S. FLAG CARRIERS UNLESS U.S. CARRIERS ARE
UNAVAILABLE. A VALID JUSTIFICATION STATEMENT MUST
BE ATTACHED TO THE TRAVEL ORDER WHEN FOREIGN CARRIERS
ARE USED.

.......................................................
...... DON'T FORGET TO CALL THE VACATION CENTER ......
.... AT 1-877-698-2554 TO BOOK YOUR NEXT VACATION....
.......... GO TO SATOVACATIONS.COM TODAY .........
...... AND SIGN UP FOR THE VACATION NEWSLETTER......

.......................................................
U.S.CITIZENS AND LAWFUL PERMANENT RESIDENTS WHO TRAVEL
DIRECTLY BETWEEN PARTS OF THE UNITED STATES, WHICH
INCLUDES GUAM, PUERTO RICO, U.S. VIRGIN ISLANDS,
AMERICAN SAMOA, SWAINS ISLAND AND THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS-CNMI, WITHOUT
TOUCHING AT A FOREIGN PORT OR PLACE, ARE NOT REQUIRED
TO PRESENT A VALID U.S. PASSPORT OR U.S. GREEN CARD.
HOWEVER, IT IS RECOMMENDED THAT TRAVELERS BRING A
GOVERNMENT ISSUED PHOTO ID AND COPY OF BIRTH
CERTIFICATE.
........ THANK YOU FOR USING CWTSATOTRAVEL .......
.....YOUR REFERENCE CODE IS *** SABRE OV4C ......
********************************************************
PLEASE CALL LOCAL OFFICE DURING NORMAL BUSINESS HOURS
TOLL FREE NUMBER 800-696-7286 MON-FRI 600A-900P CST
OR AFTER HOURS EMERGENCY SERVICE IF TRAVEL IS WITHIN
24 HOURS CALL 1-800-696-7286 AND PRESS OPTION 1

.......................................................
****IF INTERNATIONAL 800 NUMBER DOES NOT WORK PLEASE***
******* CALL COLLECT TO 210-877-3362 *************

***DID YOU KNOW WE CAN ALSO BOOK YOUR HOTELS AND RENTAL CARS**

| Ministry of the Interior |  | Ministry of the Interior<br>National Migration<br>Institute |
|---|---|---|

[Seal: The United Mexican States]

*Date of Classification: March 26, 2018*
*Administrative Unit: Sub-Directorate of Control and Verification*
*Reserved:[      ]*
*Reserve Period: [      ]*
*Confidential: All [        ]*
*Legal Basis: Art. 78 of the Migration Law, 3,*
*Section II, 18 Section II, 20, 21, and 24 of the Federal Law of Transparency*
*And access to information; Regulations 12, 30, 32, 34, 35, 36, and 40*
*of the General Guidelines for Classification and Declassification of Information*
*of Dependencies and Entities of the Federal Public Administrations,*
*and the signature of the office holder of the Administrative Unit*
*Date of Declassification: Indefinite*
*Signature and post of Public Servant:*

<div style="border:1px solid">

**MINISTRY OF THE INTERIOR**
**NATIONAL MIGRATION INSTITUTE**
**FEDERAL DISTRICT IN NAYARIT**
**SUBDIRECTORATE OF MIGRATION**
**CONTROL AND VERIFICATION**
**Official Letter no.:**
**INM/DFN/SCVM/0375/2018**
**Matter:** A person with US Nationality is placed at the disposal of authorities
Bahía de Banderas, Nayarit, March 26, 2018

</div>

**IMMIGRATION AUTHORITY OF THE UNITED STATES OF AMERICA**
**BY HAND:**

Please receive our cordial greetings. In regards to the deportation that is being executed by this National Migration Institute, which is headquartered at the Federal District in Nayarit, a foreign person is to be placed at the disposal of the immigration authorities of the United States of America, a foreign person who is described in the preceding list, due to the fact that he was present in Mexico and in transit in an irregular manner.

**ADULT:**

| No. | Name | Sex | Date of Birth | Age | Place of Birth | Nationality |
|---|---|---|---|---|---|---|
| 1 | KEITH ALAN RANIERE | MALE | August 26, 1960 | 57 | Brooklyn, NY | USA |

Due to the aforementioned those authorities who under the law have Federal, Local, or Municipal forces under their command are requested to provide their collaboration to the holders of this document in the event that they are needed, pursuant to Art. 4 of the Migration law, and 239 of its Regulations.

**SINCERELY,**
**The SUBDIRECTOR OF MIGRATION CONTROL AND VERIFICATION OF THE NATIONAL MIGRATION INSTITUTE IN NAYARIT**
[Signature: Illegible]
Mr. **URIEL JIMENEZ MARTINEZ**

[Stamp: Mar 26, 18 S, MEXICO]

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]

Carbon Copy to [Illegible]
Carbon Copy to File

035

**Ministry of the Interior**



Ministry of the Interior
National Migration
Institute

[Seal: The United Mexican States]

## CERTIFICATION

PURSUANT TO ARTICLE 12, SUBPARAGRAPH C, SECTION III OF THE AGREEMENT PURSUANT TO WHICH POWERS ARE DELEGATED TO PUBLIC SERVANTS ATTACHED TO FEDERAL DISTRICTS OF THE NATIONAL MIGRATION INSTITUTEIN ORDER TO AUTHORIZE MIGRATION PROCEEDINGS AND TO EXERCISE DIVERSE POWERS PROVIDED FOR UNDER THE MIGRATION LAW AND ITS REGULATIONS, WHICH WAS PUBLISHED IN THE OFFICIAL GAZETTE OF THE FEDERATION, DATED NOVEMBER 13, 2012, AS WELL AS SECTION II, ARTICLE 124, LAST PARAGRAPH OF THE INTERNAL REGULATIONS OF THE MINISTRY OF THE INTERIOR, PUBLISHED IN THE OFFICIAL GAZETTE OF THE FEDERATION, DATED MAY 31 2019. IT WAS CERTIFIED THAT THIS DOCUMENT CORRESPONDS TO AND IS A FAITHFUL COPY OF ITS ORIGINAL DOCUMENT, WHICH IS FILED IN THE ARCHIVES OF THE REPRESENTATIVE OFFICE OF THE NATIONAL MIGRATION INSTITUTE IN NAYARIT. THIS CERTIFICATION IS COMPOSED OF A FILE OF THIRTY-FIVE USABLE SHEETS OF PAPER ON BOTH SIDES.

THESE COPIES ARE ISSUED IN NUEVO VALLARTA, BAHIA BANDERAS, NAYARIT, ON THE SIXTEENTH OF NOVEMBER OF THE YEAR (2022) TO THOUSAND AND TWENTY-TWO.

[Signature: Illegible]
Sincerely,
Mr. HECTOR SANTIAGO GOMEZ SOLORIO
CHIEF OF THE LEGAL MATTERS DEPARTMENT
OF THE NATIONAL MIGRATION INSTITUTE

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute, Residency Nayarit]



[Logo: Mexico, 2021, Year of Independence]

<u>Who can be a refugee?</u>

The law regarding Refugees and Complementary Protection states under article 13 that the status of refugee shall be recognized for all foreign persons who are on national territory under any of the following scenarios:

I. That due to reasonable fears of being pursued due to reasons of race, religion, nationality, gender, belonging to a particular social group or having particular political opinions, the individual is out of their country of nationality and cannot or due to the said fears, does not want to apply for the protection of the said company, or in the event of not having a nationality and being located, due to the said events, outside of their country where they previously had habitual residency, they cannot or, due to the said fears, do not want to return to the aforementioned;

II. That the individual has fled their country of origin, because their life, safety, or liberty have been threatened by general violence, foreign aggression, internal conflicts, massive violation of human rights, and other circumstances that have disturbed public order seriously, and

III. That due to circumstances that have arisen in the individual's country of origin or as a result of activities undertaken during their stay in national territory, they have reasonable fears of being pursued due to reasons of race, religion, nationality, gender, belonging to a particular social group or having particular political opinions, or his or her life, safety, or liberty may be threatened due to generalized violence, foreign aggression, internal conflicts, massive violation of human rights, or other circumstances that have disturbed public order seriously.

COMAR Contact:
Dinamarca 84, Floor 4, Col. Juárez, Del. Cuahtémoc
CP 06600, México, D.F. - Tel. (55) 5209-8800 Ext. 30133 and 30147
[Stamp: [Illegible] Mar 26, 18 S, Mexico]

[Logo: United Mexican States]
MINISTRY OF THE INTERIOR

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute]

[Logo: National Migration Institute]

| Foreigner Intake Card | | |
|---|---|---|
| General Information | | |
| Name: Keith Alan Raniere | | |
| Nationality: USA | Origin: Brooklyn, USA | |
| Sex: Male | Date of entry: 03/25/2018 | Time: 18:30 |
| Date of birth: 08/26/1960 | Age: 57 | Identification Document: Birth Certificate |
| Description of Belongings | | |
| Quantity: | Description: | Observations: |
| xx | xx | xx |
| xx | xx | xx |
| Description of Assets | | |
| xx | xx | xx |
| xx | xx | xx |
| xx | xx | xx |

Name and signature of receiving authority     Name and signature of foreigner

## OBLIGATIONS

1. To observe and respect the indications of public servants of the migration station.

2. Provide humane and respectful treatment to public servants that work in the migration station.

3. Respond truthfully to questions that are asked to be entered into your file.

4. Respect people who are in the same condition and domiciled without regard to their ethnic or national origin, sex, age, disability, social or economic condition, health status, language, religion, sexual preferences, civil status or any other condition.

5. To comply with hours established by the authorities to carry out the following activities.

Bed and bedroom cleaning

Personal hygiene

Breakfast

Medical services, receiving visits, making calls, participating in sports, recreation, educational, and cultural activities.

Food

Supper

Entry into an assigned sleeping space.

6. Comply with minimal rules of hygiene and healthfulness that are established by the authorities.

7. Depositing your belongings and other assets in the assigned area on entry into the station.

8. To obey the directions of the authorities during transfers or driving.

9. To take care of the facilities, furniture, and equipment, of the migration station, refraining from mistreating these and not provoking any disturbance, behaving with respect and order in order to safeguard the security of the installation and of those who are in the same in the event of any attempt to escape. As well as the same in regards to any act that risks safety, in which case the individual shall be liable to administrative or penal sanctions that are appropriate thereto, from the competent authority.

10.- To abstain from the introduction of alcoholic beverages, intoxicants, drugs, excitants, psychotropics, toxic substances, unauthorized medicine, illicit utensils, cutting or stabbing weapons, and explosives. Also, to abstain from carrying out acts of commerce, possession or use of telephony or radio communications that are not permitted by the migration station.

Art. 26 from the agreement pursuant to which the Regulations for the Functioning of Migration Stations and Provisional Stys of the NMI were issued.

I have read and understood the rights and obligations I must observe during my stay in the migration station.

_____

Name and signature of foreigner

[Seal: United Mexican States, Ministry of the Interior, National Migrations Institute]

During the time that you are to remain domiciled at this Migration Station, we have the following rights and obligations:

RIGHTS:

1. To receive humane and respectful treatment of your human rights from public servants that work in this migration station.

2.- To be informed in a timely manner regarding your migration situation.

3.-To receive medical attention, assistance, and legal representation from entry during your stay.

4.- To make statements by means of an administrative act in the presence of two witnesses, where you are made aware of the facts that are imputed to you, and your right to offer evidence, and to make argue what is most advisable for you, as well as to be assisted by your representative or person of trust and where appropriate, that a translator or interpreter be made available for you, for the fulfillment of the process.

5.- To the inventory of the belongings that you bring with you, as well as when they are deposited and held in safekeeping in an area established for this.

6.- That this authority notify your consular representation of your confinement, and if you desire, to request the assistance that may be given to you by the said representation.

Children and adolescents confined for some reason to a migration station will have the right to remain with their family or to rejoin them, to have activities that provide them with healthy cohabitation and stay with other children and adolescents and that their stay in adequate institutions for their healthy physical and emotional development is prioritized, with the superior interest of the child being vouchsafed at all times.

7. To request that the migration authority resolve your legal situation.

8. To request the migration station chief, in a peaceful and respectful manner, hold a meeting when this is necessary.

9. Receive three meals a day, space for sleeping, quilt or cover, and basic utensils of personal cleanliness

10.- To communicate by phone or any medium, with the person that you request, within the established hours for doing so.

11.-To be visited by family members, friendships, spouses or concubines, authorities, consular representatives, and non-governmental organizations, legal representatives, and accredited religious staff during the hours fixed for this effect after authorization.

12.That your taken property be returned, when the opportunity arises, and that your taken property be kept safe by the authority except for false documents that, where appropriate, has been presented.

13. To request information to obtain refugee status, due to a fear of persecution based on motives of race, religion, nationality, belonging to a particular social group, or having a political opinion, and due to being out of your country of nationality, and not being able to or, due to the said fears, not wanting to enjoy the protection of the country, or where appropriate, if you consider your safety to be at risk in your country of origin.

14.-To inform the responsible person of the migration station if during your stay or transit through this country your rights have been violated and that this be appropriated directed if a complaint is filed regarding the corresponding events.

15.- To file a criminal complaint before the competent authorities if during your stay or transit through this country you have been the victim or a witness to some crime, and in regards to this the responsible person of this migration station shall provide you with the facilities that he believes to be necessary. Furthermore, this may be considered in the regularization of your migration situation in the country.

16.- To file your complaints and/or suggestions in the respective mailbox which is both on the inside and outside of the migration station.

17. To not be discriminated against by authorities and detained due to ethnic or national origin, sex, age, disability, social or economic condition, health status, pregnancy, language, religion, opinions, sexual preferences, civil status, or anything else.

_Art. 109 of the Migration Law. Art. 24 of the Agreement pursuant to which the Regulations for the functioning of migration stations and Provisional Stays of the NMI are issued_

# Appendix C



We the People

*Of the United States, in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and secure the Blessings of Liberty to ourselves and our Posterity, do ordain and establish this Constitution for the United States of America.*

Keith Raniere

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

PASSPORT
PASSEPORT
PASAPORTE

USA

UNITED STATES OF AMERICA

Type / Type / Tipo: P
Code / Code / Código: USA
Passport No. / No. du Passeport / No. de Pasaporte: 487874523

Surname / Nom / Apellidos
RANIERE

Given Names / Prénoms / Nombres
KEITH ALAN

Nationality / Nationalité / Nacionalidad
UNITED STATES OF AMERICA

Date of birth / Date de naissance / Fecha de nacimiento
26 Aug 1960

Place of birth / Lieu de naissance / Lugar de nacimiento
NEW YORK, U.S.A.

Sex / Sexe / Sexo
M

Date of issue / Date de délivrance / Fecha de expedición
01 Sep 2011

Authority / Autorité / Autoridad
United States Department of State

Date of expiration / Date d'expiration / Fecha de caducidad
31 Aug 2021

Endorsements / Mentions Spéciales / Anotaciones
SEE PAGE 27

USA

P<USARANIERE<<KEITH<ALAN<<<<<<<<<<<<<<<<<<<<<
4878745234USA6008260M2108313244383909<589514

SEGOB INM

## ESTADOS UNIDOS MEXICANOS

FORMA MIGRATORIA MÚLTIPLE (FMM)
ESTA FORMA DEBE SER LLENADA DE MANERA INDIVIDUAL POR TODO EXTRANJERO QUE SE INTERNE A MÉXICO, INCLUIDO EL PERSONAL DIPLOMÁTICO/
This form must be completed individually by all foreigners entering Mexico, including diplomatic personnel.
REGISTRO DE ENTRADA/ENTRY REGISTRATION

| | | |
|---|---|---|
| 1. Nombre/First name: KEITH | 2. Apellido (s)/Last name: RANIERE | 3. Nacionalidad/Nationality: USA |
| 4. Fecha de Nacimiento/Date of birth: 26 08 1960 | 5. Sexo/Sex: ☐ Mujer/Female ☑ Hombre/Male | 6. No. Pasaporte/Passport No.: 48787452 3 |
| 7. Tipo de Viaje/Purpose of trip: ☑ Turismo/Tourism ☐ Negocios/Business ☐ Otro/Other ☐ Tripulación/Crew ☐ Aérea/Aircrew ☐ Marítimo/Maritime | 8. Vía de internación/Entering By: ☑ Aéreo/Air ☐ Marítimo/Sea ☐ Terrestre/Land | |
| 9. Nombre de la Aerolínea o embarcación/Airline or vessel name: DELTA | 10. Vuelo o matrícula de la aerolínea o embarcación/Flight No. vessel registration: 04347 | |

USO OFICIAL

ESTANCIA MÁXIMA HASTA 180 DÍAS

☑ Visitante Actividad No Remunerada ☐ Visitante Actividad Remunerada ☐

ESTANCIA MÁXIMA 30 DÍAS

☐ CANJE

☐ REPOSICIÓN

UNICAMENTE PARA EFECTOS ESTADÍSTICOS

☐ Pasaporte No Ordinario ☐ Tarjeta Residencia Temporal o FMM o FM3
☐ Tarjeta de Residente Permanente, FMM o FM2 de INMIGRADO ☐

Temporalidad 180 días/days

NUEVO LEÓN INM

10 NOV 17 E

SELLO DE ENTRADA

MÉXICO

01 116026002

# Exhibit B

DocuSign Envelope ID: 9FCEB8DF-A4D1-4EA2-A3BC-8470BE7C3FC9

# Evidentiary Presentation of Staging of Evidence in the FBI Search of 8 Hale in *US v. Raniere*

by Former FBI Evidence Specialist Kenneth DeNardo

# EXPERTISE

Kenneth DeNardo, with 23 years in the FBI, served as an Evidence Specialist and a photographer for the Evidence Response Team (ERT), documenting hundreds of searches.

As a senior member of the ERT, he was responsible for training new team members on conducting searches, procedures, and operations.

DocuSign Envelope ID: 9FCEB8DF-A4D1-4EA2-A3BC-8470BE7C3FC9

# INTRODUCTION

On March 27, 2018, FBI agents executed a search warrant on a townhouse, 8 Hale, used by Mr. Raniere, centered on suspected sex trafficking. **[1]**

Detailed post-trial analysis of the FBI search photographs and logs reveals that **<u>evidence was staged</u>** and subsequently photographed.

The staging, as depicted in this report, calls into question the authenticity and origin of the items collected and, more importantly, proves **<u>FBI evidence tampering and fabrication</u>** occurred.

NOTE: SOME PHOTOGRAPHS MAY BE BRIGHTENED, CROPPED, OR ANNOTATED FOR CLARITY. BELOW EACH PHOTOGRAPH IS THE PAGE NUMBER OF THE ORIGINAL IN THE GOVERNMENT'S TRIAL EXHIBIT 502A ("GX 502A").

**[1]** 8 Hale Search Warrant, United States v. Raniere, Eastern District of New York, 18-cr-204, ECF No. 534, Exhibit 1

# STAGING OF EVIDENCE

The bookshelf where a particular hard drive was purportedly collected was initially photographed showing three devices:



Government Exhibit ("GX") 502A, Pg. 26



**Three devices**

GX 502A, Pg. 34

Later in the search, the **same shelf** shows **different contents**: two of the devices are gone, the remaining device was moved, and new items have been added.



GX 5O2A, Pg. 72

**A jar containing a Rubik's Cube was added.**

**Two books were added.**

**A "STEM CELL" DVD was added.**

**This device was previously labeled #2.**

**Two CDs were added.**

While the angles of photos Item 2 and 37 are slightly different, we can verify they depict the same part of the bookshelf, using a wall bracket and computer monitor as reference points:



**BEFORE:**

GX 502A, Pg. 34

**AFTER:**

GX 502A, Pg. 72

GX 502A, Pg. 26

Below is a re-enactment of the necessary steps for this change, keeping in mind the different photo angles of the shelf between Items 2 and 37:

**STEP 1**
Three devices are photographed on the shelf.



GX 502A, Pg. 34

**STEP 2**
The devices were removed from their prior positions.



Re-enactment

**STEP 3**
New items were added to the shelf.



Re-enactment

**STEP 4**
A device, previously labeled as #2, was added back and labeled as #37, and photographed from a different angle.



GX 502A, Pg. 72

DocuSign Envelope ID: 9FCEB8DF-A4D1-4EA2-A3BC-8470BE7C3FC9

This new setting was used twice, to re-photograph two electronic devices, previously on the bookshelf, now re-labeled as Items 36 and 37.

**BEFORE:**   **AFTER:**



GX 502A, Pg. 34

GX 502A, Pg. 71

GX 502A, Pg. 72

The books added to the shelf were about sex trafficking, the central suspected crime of the search. Seven photos earlier, they were placed and photographed on the desk.



GX 502A, Pg. 72



GX 502A, Pg. 65

DocuSign Envelope ID: 9FCEB8DF-A4D1-4EA2-A3BC-8470BE7C3FC9

**Special Agent ("SA") Christopher Mills** photographed the search.



GX 502A, Pg. 1

**Task Force Officer ("TFO") Brett Hochron** collected Items 36 and 37.

| Preparer/Assistants: | SA XLCOT MCLAMS → | | | | |
|---|---|---|---|---|---|
| **Item #** | **Description** (e.g., One black Samsung flip phone; Serial #) | **Location** (e.g., Room) | **Specific Location** (e.g., Specific area w/in room) | **Collected by/ Observed by** (*First Name* and Last Name) | |
| 35 | OLYMPUS W (NOT TAKEN) | | | | |
| 36 | SONY DVD ANEW S/N 504 2648 | F | ON BOOK SHELF | BRETT HOCHRON CHRISTOPHER MELUS | |
| 37 | LACY HARDDRIVE S/N 154107441 | F | ON BOOKSHELF | BRETT HOCHRON CHRISTOPHER MELUS | |

3500-CM-1, Evidence Collected Item Log, Pg.5

This means that the following occurred:

1. Agents changed the bookshelf's contents and added back the device previously labeled as Item 2, now relabeled as Item 36.
2. **SA Mills** photographed that item.
3. **TFO Hochron** collected that item.
4. An Agent added back another device, labeling it as Item 37.
5. **SA Mills** photographed that item.
6. **TFO Hochron** collected that item.

Therefore, we can conclude:

- Items 36 and 37 were staged.
- They were photographed to present as genuine.
- This constitutes **evidence tampering and fabrication**.
- **SA Mills** and **TFO Hochron** are directly implicated in this conduct.

DocuSign Envelope ID: 9FCEB8DF-A4D1-4EA2-A3BC-8470BE7C3FC9

Interestingly, though the search warrant sought "sex trafficking paraphernalia," agents **did not collect** the sex trafficking books, despite photographing them.

## Excerpt from Search Warrant:

a. Records, things and other information that constitute evidence, fruits and instrumentalities of the Subject Offenses, including but not limited to, "collateral," as described in the affidavit, sex trafficking paraphernalia; evidence regarding the formation and structure of DOS; notes or writings related to DOS; communications between RANIERE and any DOS masters/slaves; evidence showing an attempt to dissociate RANIERE and/or Nxivm from DOS; and evidence of RANIERE's flight from prosecution;

8 Hale Search Warrant, United States v. Raniere, 18-cr-204, ECF No. 534, Exhibit 1 at Bates 005

Evidence is meant to be photographed "in place," to document where it was found.

SA Mills testified to this in the trial, when he claimed that the camera (Item 1) was photographed "in place", in the following excerpt from the trial:

## Excerpt from Trial:

```
AUSA HAJJAR:   And what's the point of
photographing where evidence is found?

SA MILLS: So we want to photograph -- we call
it "in place" to  photograph where this item
was found and in this case the item was found
directly below the desk or table.
```

Trial Transcript (June 10, 2019) at 4304:23-4305:2

DocuSign Envelope ID: 9FCEB8DF-A4D1-4EA2-A3BC-8470BE7C3FC9

However, the sex trafficking books were **<u>not</u>** photographed "in place."

The books weren't on the desk initially during the entry photographs.



GX 502A, Pg. 24

Later, they were placed on the desk and photographed.



GX 502A, Pg. 65

Given the relevance of these two sex trafficking books to the search, which centered around sex trafficking allegations, if they were genuinely found at the property, amongst the hundreds of books, they would have been:

- photographed "in place" (as per SA Mills' testimony)
- given an evidence number
- logged and collected.

The most plausible explanation for these actions not being taken, as well as these items being used to stage evidence photographs, is that they were not found at the scene but rather **were brought there by one or more agents.**

# 'ACCIDENTAL DISCOVERY' OCCURS 11 MONTHS AFTER SEARCH

Two significant items collected from this search were Item #1, a Canon camera, and Item #2, a Western Digital hard drive **[2]**, which were 'accidentally discovered' to contain evidence of alleged child pornography eleven months later, on February 21, 2019. (Second Lever Affidavit at ¶ 11)



GX 502A, Pg. 33



GX 502A, Pg. 34

[2] Seven forensic experts, including four former FBI CART examiners, concluded that camera's memory card and the hard drive were extensively and deliberately tampered with, and **the alleged child pornography was planted on the hard drive**. (ECF. No 1225-1.)

DocuSign Envelope ID: 9FCEB8DF-A4D1-4EA2-A3BC-8470BE7C3FC9

# BUT THESE TWO ITEMS WERE SPECIFICALLY TARGETED AND PRIORITIZED IN THE SEARCH

Agents collected the camera and hard drive as **the first two items collected** in the search, as Items #1 and #2. In doing so, agents skipped over computers and other hard drives on and under the desk that they later came back to collect.

**Item #1**



(Under the desk)





**Item #2**

(On the shelf)

Left: GX 502A, Pg. 32
Middle: GX 502A, Pg. 26
Right: Defense Exhibit ("DX")
961, FBI Computer Analysis
Response Team (CART)
Notes, Pg. 32

Item 2 was a Western Digital hard drive. The label in the photo is affixed to a different item, as Item 2 actually was the middle device.

**FBI CART photo of Item 2:**



Western Digital hard drive
DX 961, Pg. 32

**Item 2 label is on the wrong device:**



GX 502A, Pg. 34

**Actual Item 2**

**Item 2 is listed as the "Western Digital" in the 8 Hale search inventory:**

Description of Item(s): 1) Cannon Ultrasonic (camera with accessories) SN:1420908346 · 2) Western Digital SN: WCA591365334 · ) One book "History of Torture"; 4) 29 Mini DV (cassettes); 5) 1 Sony DVD

Agents prioritized **<u>only the middle</u>** device, collected as the 2nd item. They collected the other two devices only at the end of the search, after staging their photos, as the 36th and 37th items, as indicated by their labels:



**Collected 37th (final item)**    **Collected 2nd**    **Collected 36th**

Top left: GX 502A, Pg. 72
Top middle: DX 961, Pg. 32
Top right: GX 502A, Pg. 71
Bottom: GX 502A, Pg. 34

Moreover, the search warrant sought **digital photos** referred to as 'collateral', allegedly used as coercive material in the suspected sex trafficking:

a. Records, things and other information that constitute evidence, fruits and instrumentalities of the Subject Offenses, including but not limited to "collateral," as described in the affidavit; sex trafficking paraphernalia; evidence regarding the formation and structure of DOS; notes or writings related to DOS; communications between RANIERE and any DOS masters/slaves; evidence showing an attempt to dissociate RANIERE and/or Nxivm from DOS; and evidence of RANIERE's flight from prosecution;

8 Hale Search Warrant, United States v. Raniere, 18-cr-204, ECF No. 534, Exhibit 1 at Bates 005

Therefore, **digital cameras** would be especially relevant to the search, e.g. Item 1.

DocuSign Envelope ID: 9FCEB8DF-A4D1-4EA2-A3BC-8470BE7C3FC9

Yet agents intentionally chose **<u>not to collect</u>** a different digital camera – the only other camera, of two, found at the scene. This was even after labeling, photographing, and logging it, as shown by the Evidence Collection Log.



GX 502A, Pg. 37



**"SONY CYBERSHOT (NOT TAKEN)"**

3500-CM-1, Evidence Collected Item Log, Pg. 1

Prioritizing that particular camera and hard drive for collection, and intentionally not collecting another camera demonstrates that **an agent had prior knowledge of these two items specifically, and their precise locations**.

This contradicts the FBI's claim that they believed these two items had no particular significance until an 'accidental discovery' almost a year later, on February 21, 2019.

# CONCLUSION

- Multiple evidence items were staged, planted in specific locations to appear genuinely there, and then photographed. These photographs were then used at trial. This constitutes **evidence tampering and fabrication**, in which SA Mills and TFO Hochron are directly implicated.

- The camera and hard drive were targeted, showing foreknowledge of their significance, contradicting the FBI's later 'accidental discovery' narrative.

- Numerous irregularities, including agents' attempting to create an impression through the staging of evidence, corroborate that the search was pre-textual and, therefore not legitimate, and appears focused on the camera and hard drive.

- In my 23 years of service to the FBI and having photographed hundreds of searches, I have never seen intentional manipulation and staging of evidence in a search, which clearly occurred in the FBI search of 8 Hale.

I declare under penalty of perjury, pursuant to 28 U.S.C. 1746, that the above is true and correct.

Dated: 12/15/2023



Kenneth DeNardo

Former FBI Evidence Specialist, 23 years' service to the FBI